# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| United Capital Management of Kansas, Inc. and CHAD M. KOEHN<br><br>                Plaintiffs,<br>     v.<br>Michael Nelson<br><br>                Defendant<br>PRO-Se. | **DOCKET NO.:    5:22-CV-04008-JWB-GEB**<br>**CIVIL ACTION**<br>**Re-consideration of Objection<br>of Order in Doc 28<br>Under FRCP Rule 72<br>APPEAL from Magistrate Judge Ruling to<br>Lifetime Appointed Federal Jurist**<br>**[Jury Trial Demanded]** |
| --- | --- |

Defendant, makes "SPECIAL and Limited APPEARANCE" here and now for the purposes of presentation of Reconsideration of Order 28, under Federal Rules of Civil Procedure Rule 72, thus initial **APPEAL from Magistrate Judge Ruling to Lifetime Appointed Federal Jurist**, for de novo review, before necessitating an INTERLOCUTORY Appeal to the 10th Circuit for Cause with the applicable United States Supreme Court Rule 22 application given the seriousness of the matters made for re-consideration here under Federal Rules of Civil Procedure Rule 72 appeal in re-consideration of Order 28, an order issued by a Magistrate Judge in the above captioned matter at bar and does so herein state and allege as follows:

1.  On 18th February 2022, Magistrate Judge Birzer, issued an order with the command "shall" at 0813 am "no motions shall be filed", yet plaintiffs filed pro hac motion.

2. Minutes before close of business the same day, plaintiffs filed Pro Hac Vice motion

3. Plaintiff's Motion carries the statement by Attorney Larry G. Michel:  ***"I have verified that the information contained in the affidavit is true and accurate."*** see Document 24

4. An affidavit was attached with the Motion, document 24-1; which is materially false

5. Defendant emailed chambers and requested permission to file an objection to Doc. 24

6. Judge Birzer summarily denied the defendant's right to file a written objection to Doc. 24

7. Hearing was held on 3 March 2022, defendant objected orally to Pro Hac Vice motion

8. Limited oral argument briefly allowed regarding false Pro Hac Vice affidavit Doc24-1

==================================================================================
**5:22-CV-04008-JWB-GEB**  APPEAL of Order in Document 28 filed under Rule 72                                                  **- 1**

9. Magistrate Judge Birzer, recognized false swearing of affidavit Doc. 24-1, though only stating Craig Alan Brand **"played fast and loose with number (6)"** of the affidavit

10. Magistrate Judge Birzer ultimately granted Pro Hac Vice status of purported attorney Craig Alan Brand, resting NOT upon the motion or the affidavit Doc. 24-1 as submitted in documents 24 and 24-1, BUT rather upon MONEY PAID, the fact the sponsoring firm has never filed false affidavits in the past and enjoys a "good" reputation as a law firm.

11. A request for the transcript and recordings of the hearing was made same day

12. Hearing audio was paid for and received; Transcript of the hearing was requested

13. Transcriptionist for the Court will only accept payment via paper check, thereby fundamentally denying the defendant timely access to the transcript via court reporter

14. Defendant summarily denied rights under FRCP, Local Rules and general fairness in substantial justice to file Opposition Motions, written objections to Document 24, thus denying DUE PROCESS rights and file written evidentiary proof as to the FALSITY and materially misleading affidavit of Craig Alan Brand in Document 24-1, does so now.

15. The seriousness allegations as included herein and attached herewith, regarding the "partner in deception" CRAIG ALAN BRAND and the fraudulent and false statements made under oath and affirmation, and "verified" as to "true and accurate", by counsel for the plaintiffs' Attorney Larry G. Michel, Doc. 24 who has already had the need to state his "ERROR" and "FAIL" more than once within the pleadings to date. Demonstrates the grave injustice which will no doubt occur if Craig Alan Brand, known by the moniker the "Partner in Deception" is permitted admission to practice his unique "brand" of law.

The certain <u>detrimental effects</u> thereof upon the defendant, the plaintiff themselves (whether or not they are even being informed properly under the <u>Rules of Professional Conduct</u>), third parties, corporations, the public at large and certainly the Court itself, is evident to the reasoned mind. The added consternation, untoward delay and certain

detriment to justice posed by Craig Brand's appearance herein, is well demonstrated by the evidence, presented and affidavits attached herewith see Exhibits.

16. Defendant OBJECTS to Admission of Craig Alan Brand for CAUSE, as pleaded to here.

17. In accordance with Model ABA Rules Pro Hac Vice Admission, defendant submits OBJECTION to application of Craig Alan Brand for cause, Ex "A"

18. Defendant seeks the pro hac vice admission be <u>withdrawn immediately.</u>

19. In the alternative to withdrawal of pro hac vice of Craig Brand, he should be disqualified.

20. Standards for review of pro hac vice admission include, as reason for denial of admission in (a), "<u> may be detrimental to the prompt, fair and efficient administration of justice</u>"

21. Defendant submits due to Craig Alan Brand's numerous representations of parties involved and certain attachment herewith of involuntary plaintiffs, counter claims, cross complaints, Craig Brand will have extensive conflicts throughout the matter, thereby establishing an absolute detriment to the prompt, fair and efficient administration of justice, thereby creating a manifest injustice, thus requiring numerous interlocutory appeals, collateral order doctrine attachments, and generally causing extreme consternation, and untoward delays in the resolution of the matter at bar.

22. If it pleases the Court, will also find a reasoned mind would view Craig Alan Brand's admission as Pro Hac Vice counsel at bar "(b.) <u>may be detrimental to legitimate interests of parties to the proceedings</u> other than the client(s) the applicant proposes to represent".

23. The plaintiffs themselves cannot appreciate the risk which is presented by Brand's admission here, given the conflicting representations Brand has already engaged before courts in the related matters hereto; therefore under the rules: "(c.) <u>one or more</u> of the clients the <u>applicant proposes</u> to <u>represent</u> **may be at risk of receiving inadequate representation and** <u>cannot adequately appreciate that risk</u>".

24. It is a well settled fact Craig Alan Brand's representation of Anthem Vault Inc., a domestic NEVADA corporation, in proceedings in NEVADA before Judge Grimes, alone establishes great conflicts between the proposed representation here, the rights of the defendant, the rights of numerous corporate clients and individuals. The Defendant here has been asked for special waivers of protected materials under NRS 612.265, in NEVADA, as Paul Douglas Aubert, may face criminal and certain additional disciplinary action there and an investigation into the conduct of Craig Alan Brand is also in full swing, though it is not yet determined if that investigation is only a disciplinary investigation by the bar association or if in fact it is also criminal. The Case in Nevada is Case Number: V-21-A-01818; with Appellate Docket to Three (3) Justice panel Docket Number: V-21-B-00710; wherein Craig Brand committed subornation of PERJURY influencing another attorney to LIE under oath, then Brand filed a multiple page single spaced appeal, also claiming the same LIE, that a third man was an attorney, when in fact the third man is NOT an attorney and certainly not a California Attorney.

25. Brand represented Anthem Vault Inc. in formal appeal to a 3 (three) JUSTICE panel under NEVADA law, despite not being presented as admitted Pro Hac Vice in NEVADA, nor being a member, EVER of the Nevada Bar Association, Docket: V-21-B-00710

26. Brand presented Texas attorney Paul Douglas Aubert, as witness placed under oath, Brand questioned Aubert, conspiring therewith to LIE to the Court, regarding a third man, being an "attorney", when in fact the man is NOT. California charges: 21-NA-12968

27. Brand's conduct at bar in NEVADA, in case number: V-21-A-01818 is directly related hereto the underlying matter at bar, and so attaches collateral order and collateral estoppel doctrine. Brand will absolutely be a witness here, whether litigated here or elsewhere.

28. Craig Alan Brand is expected as a witness in a criminal matter directly related hereto, now pending in the 11th Judicial District of Oklahoma, and the plaintiff is listed on police

reports as a "subject" and "suspect", the criminal matter means the current matter here should be stayed and Brand should be denied entry of appearance in the matter here at bar

29. Craig Alan Brand remains under disciplinary, and law enforcement investigations in California, Florida, Massachusetts, New York and Nevada stemming in part from his behavior in court hearings on 12 August 2021 and subsequent written appeals, authored and signed by Brand, appealing Judge Grimes 3+ page single spaced written order and opinion, wherein Brand filed a lengthy single spaced multiple page appeal to a 3 Justice panel Appellate Docket V-21-B-00710 found UNANIMOUSLY for Defendant.

30. Craig Brand writing under his own hand with LIES to the 3 (three) Justice panel in NEVADA, V-21-B-00710 continuing to reference in material support (therefore subornation of perjury) the LIES made by Paul Douglas Aubert under oath, regarding a third man being an attorney, who is NOT an attorney nor a California Court Officer or Official, now resulting in civil and criminal cases: California: 21-NA-13023

31. Larry G. Michel's presentation of Craig Alan Brand for Pro Hac Vice counsel brings into question Michel's ethics and further supports violations of the Rules of Professional Conduct, supporting the illegal motion and application knowingly and willfully presenting a false affidavit of support signed by Brand himself, which Michel knows or should know is a **false declaration**. Michel often has used words like "ERROR" and "FAIL" in the course of representation in the matter at bar. Michel's motion presenting Brand, Pro Hac Vice MUST as a matter of substantial justice and in the prevention of manifest injustice be scrutinized, as is done here, fraud found upon the Court. Doc. 24

32. Brand states in his affidavit in support of his admission, via "MOTION" Pro Hac Vice, made by Counsel Michel, in defiance of the Order of Judge Birzer: See Number 6, of Document 24-1, the "Affidavit in Support of Motion for Leave to Appear Pro Hac Vice": **"I am in good standing in the all the bars of which I am a member" see Doc. 24-1**

The use of English in this statement within a serious affidavit, does not conform with the accepted understanding of English. In fact it creates a plausible deniability as to the accuracy of the statement made. The word "the", is most commonly used as an <u>article</u> in the English language. "THE" is NOT a pronoun, preposition, or conjunction, <u>it's an article, adjective, and an adverb;</u> it is this very type of hair splitting, purposeful plausible deniability to statements of fact, which Brand's brand (pun unintended) of law is known for, requiring extensive time, costs and delays in litigation. <u>Demonstrating via proof in the positive</u> the involvement of Craig Alan Brand is the most economically burdensome to the parties and certainly the most inefficient means to termination of the matter at bar. The extreme costs, delays, consternation and certain untoward delay caused by involvement of Craig Alan Brand's "brand" of law has dire costs to the parties and Court.

33. Brand's way of creating plausible deniability as to the truthfulness of the statement, continues with more than merely the double use of the English article, "the", in fact Brand states: **"all the bars"**, Brand uses this neuro linguistic trick of speech as to infer he is a member of more than one bar association, see Number 6, of Document 24-1.

34. Brand's use of **"all the bars"** brings up the question as to <u>truthfulness in statements to others</u>, one of the tenets of the **Rules of Professional Conduct** and certainly embodied within the <u>Pillars of Professionalism</u>, "coveted by the Court".

35. Brand goes on to double down on this trickery of words in the materially misleading affidavit orally in testimony to the Court in the 3 March 2022, hearing by stating: "if you want to hear how many different courts I've ProAct. into, or how many different members of bars, associations I am part of by the fact", see time 6:32 of the audio of the hearing 3 March 2022. This demonstrates clearly Brand actually believes he is a member of more than one bar association, yet only lists a single Bar Association number on the affidavit, despite having received many other bar numbers. Due to the FACT his status is withdrawn or otherwise not available in numerous jurisdictions, perhaps since he has been SANCTIONED in other jurisdictions including with fines more than $30,000!

36. Brand's affidavit should have simply read: **"I am in good standing in <u>the</u> bar of which I am a member.", if he insisted on changing the form which is NOT meant to be changed according to the instructions of the court. The form is prescribed to state:**

> 6. I am in good standing in all bars of which I am a member.

37. There can be no doubt that <u>BOTH Craig Alan Brand and Larry G. Michel</u>, knew with forethought exactly what they were presenting to the Court. BOTH "attorneys" conspired in the presentation of Brand's affidavit, via collusion to present an <u>inaccurate affidavit</u> in material support. The filing was made for no other purpose than intimidation of the defendant, as the defendant has been attacked ex parte, the entire weekend, prior, similarly as has been ongoing basis for years, by and through the harassers organized by and directed by Craig Brand. Specifically in this matter Logan Ryan Golema, who often presents himself as "Special Counsel", "Legal Advisor", "ESQ" and "Esquire", making outlandish claims throughout proceedings and in public facing advertisements, biographies all over the internet, collectively unauthorized practice of law, being supported by purported attorney Brand, separate new objection will also be made.

38. Brand may, at present be in "good standing" with the SINGLE bar association, to which Brand is actually a member, that being the Florida Bar Association. Brand furnishes only his Florida Bar Association Number on the affidavit, repetitively. Counsel Michel attaches Brand's Affidavit, whilst simultaneously claiming to have "verified" Brand's affidavit as to "true and accurate", see Michel's averment just before his signature Doc 24

39. Counsel Michel, often has requested the Pro Se defendant to be admonished for pleadings made, yet Michel has stated "ERROR" and "FAIL" in the pleadings he has made. Michel has disregarded the Federal Rules of Civil Procedure under FRCP Rule 7.1(b); by failing to file mandatory disclosure under FRCP Rule 7.1(a), filing after having one attorney: Quinn Robert Kendrick, make material address changes on the Federal docket on 2 February 2022, and then filing a materially misleading deficient notice of withdrawal with mens rea for the racial slur in the underlying petition. Kendrick's withdrawal is

separately objected to in document number 38, his withdrawal 3 February 2022, performing mea culpa with mens rea having read document number 5; Michel then filed a plethora of pleadings prior to filing the mandatory disclosure required under FRCP Rule 7.1(b); demonstrating clear "ERROR" and "FAIL", as he has throughout the short proceedings to date, it is obvious and evident to the reasoned mind Michel did not ever read nor even review the affidavit of Brand, yet filed a motion swearing he verified it.

40. Craig Brand's first appearance via presentation of an inaccurate affidavit. Demonstrates neither Brand nor Michel bother to read and proof-read their submissions to the Court thereby creating further delays, extreme costs, general consternation and untoward delay in resolution of the matter at bar, creating the most inefficient and judicially expensive litigation any reasonable mind can imagine, not interests of judicial economy.

41. Given the facts as well presented herein this OBJECTION, It should not surprise the Court, Craig Brand, has earned himself a distinctive moniker, within the Judiciary, and Law Enforcement Communities; known as the **"Partner in Deception"**.

42. By way of proof in the positive, an arrest affidavit filed by the **highest** Law Enforcement department in the **State of Florida**, the same State, where Brand has his SINGLE and ONLY bar association membership. Despite Brand's purposeful willful "mixing" of words to infer he is a member of more than one bar association. The Florida Department of Law Enforcement (FDLE), references Craig Brand as the "Partner in DECEPTION".

43. There can be no question, as to the questionable "brand" (pun unintended) of law practiced, by the Brand Law Firm, with it's sole practitioner, Ex "D", Craig Alan Brand, known more commonly by the legal and law enforcement community and even his clients as *the "PARTNER in DECEPTION"*. Allowing Pro Hac Vice admission of Craig Alan Brand, will be a detriment to the "PROMPT", "FAIR", and especially to the "EFFICIENT" administration of justice. The necessity for the Court, the parties and especially the defendant to spend 1,000 times the effort to review all filings made by, or in cooperation with the *"Partner in Deception"* aka Craig Alan Brand, creates a

detrimental situation to fairness, costs, expeditious resolution, and certainly will interfere substantially and materially in the administration of justice.

44. The defendant making attempt to comply substantially with Rule 408, without having the need to file 3,856 page counter and cross complaints, joinders, involuntary plaintiffs, third party attachments, interlocutory appeals, various writs. Instead the Pro Se defendant generally seeking **peace** and expeditious resolution of consternation without untoward delay and costs, is stopped short of resolution now Brand is involved.

45. Obviously what Craig Alan Brand seeks in this matter, is for ulterior purposes, Brand rejects mediation and has rejected settlement.

46. There cannot be litigation where the opposing parties have no means of communication, except through the Court and where opposing counsel to the pro se party purposefully does not notify the pro se party of filings made to the case. Whether or not the plaintiff's themselves are even consulted regarding settlement is undetermined. As Brand actually represents Anthem H. Blanchard and purported wife Cynthia D. French, and a series of dozens of companies all which have at their core the genesis corporation in NEVADA, known as ANTHEM VAULT INC., the subject of the legal cases in NEVADA.

47. It is evident a resolution is not in Craig Alan Brand's personal self serving interests. The interests of Brand are not aligned with those of the plaintiff. Given Brand's conflicting representations, the plaintiffs in this matter are not served by Brand's unique brand of "deception" in pleadings, affidavits, testimony or any part of litigation. Given Craig Alan Brand's LONG and STORIED History of DECEPTION to Courts, multiple, client's suing him, filing of frivolous litigations and general chaos, and SANCTIONS he receives, demonstrates clearly his nickname or moniker, the **"Partner in Deception".**

48. More-over the defendant having survived multiple attempts on his life believed at the direction of Craig Alan Brand, as being investigated by internal affairs and New Jersey law enforcement with support from Federal law enforcement. Craig Brand acts in conspiracy and collusion with other clients demonstrating clear conflicts within the

representation here. The Defendant has also been noticed by law enforcement Craig Brand is the possessor of a "concealed weapon permit", SEE EXHIBIT: "E", which is not surprising given his unusual choice of criminal "clients", as Brand is primarily a criminal defense attorney. The defendant has been further advised of Brand's connections to "underworld" mafia, laundering money stemming from the same above referenced case involving money laundering charges in the Bankruptcy Court in New York and cases against Brand by the Bankruptcy Trustee, where it is believed Brand is involved with laundered funds from the estate of "Handsome Johnny Roselli" a mafia boss, who immigrated from Italy to the United States through Boston, affiliated with the Chicago, "outfit", ran rackets in Los Angeles & Las Vegas, prior to his demise, found floating in a oil drum in Miami bay in the 1970's.

49. Given the fact Larry G. Michel, bar # 14067, made statement under oath:

   ***"I have verified that the information contained in the affidavit is true and accurate."***.
   It is evident and obvious to the reasoned mind, attorney Michel has neither read, nor verified ANY information contained in the affidavit Doc. 24-1 as "true and accurate". A simple search of the famed Internet search engine www.Google.com returns a result for "The Brand Law Firm PA", demonsting "the Brand Law Firm" is INACTIVE in the State of Florida, See Exhibit "D" attached herewith.

50. The admission pro hac vice in the US District of Kansas is a precise step by step process, which requires no thought in filing, UNLESS, whereas here there is something to HIDE, in material misrepresentation as does Craig Alan Brand in collusion and conspiracy with Larry G. Michel. The District provides instructions at: Attorney Resources – Practice –

51. Under the heading on the referenced link: Pro Hac Vice Admission: see D. Kan. Rules *83.5.4* and *5.4.2* the District of Kansas provides links: Local counsel must file the following documents:

a *written motion for admission of the attorney seeking admission* an *affidavit executed by the attorney seeking admission* (must be signed with a "wet" signature; no s/signatures allowed on affidavit) a *Pro Hac Vice Attorney Registration Form (*must be signed with a "wet" signature; no

s/signatures allowed on registration form)   a $50.00 pro hac vice fee per attorney must be paid through Pay.gov during the filing of the motion in CM/ECF either by credit card or DirectDebit (using a checking or savings account) *Note: pro hac vice attorneys receive electronic filing notifications but do not receive electronic filing privileges; local counsel must sign and file all documents in the case)* If you have any questions or concerns, please contact the court at 913-735-2229, or *ksd_attorney_registration@ksd.uscourts.gov*

52. In the document supplied by the Court, contains the "Motion" to be filed with precise wording which the motion in Document 24, largely conforms to AND is provide the precise Affidavit to file, together with PRECISE instructions for the filing; the Court even provides written instructions which are even more simple than a Mad Lib.  At (3) the verbiage provided is precise; even providing instructions in parenthesis, by stating: "here list the dates and places of admission to all bars, state or federal and any bar registration numbers"; the record so dictates, both in the written submission of the FALSE and Materially Misleading Affidavit and the ORAL testimony of Brand that this was NOT followed, as Brand even states orally the impression he is member of a vast number of bar associations, yet in truth he is NOT and only a member of a single bar association the State of Florida Bar Association, which is the ONLY bar number Brand lists in repetitive fashion in the submission he makes under oath in Document 24-1

(Rev. 10/03/2019)

3.    I have been admitted to practice in the following courts (here list the dates and places of admission to all bars, state or federal, and any bar registration numbers):

| Court | Date of Admission | Bar Number |
|---|---|---|

53. At (6) of the COURT Supplied Affidavit it states clearly a statement, which is to remain unchanged, but of course the "partner in deception" Ex. "F" Craig Alan Brand, materially changes this statement; see Document 24-1; example in Exhibit "H"

6.    I am in good standing in all bars of which I am a member.

54. The Affidavit provided by the Court Exhibit "H", is precise with precise instructions on what it is to say and how it is to read, in fact the Court even goes on to state:

[NOTE: To the extent that the applicant cannot truthfully affirm the statements contained in paragraphs 6 through 9, the applicant shall attach additional pages which state all relevant facts in connection with that matter. At a minimum, if disciplinary or grievance proceedings have been filed, or criminal proceedings have been commenced, the applicant shall identify the court, case name, docket number and disposition.]

[Affidavit must be notarized and/or contain a declaration that it is being signed under penalty of perjury in accordance with 28 U.S.C. § 1746 and served in accordance with D.Kan. Rule 5.1]

Attached herewith please find Exhibit: "H"; the EXACT motion and Affidavit provided.

55. At (7) and (8) the statements are precise and in BOTH cases the statements signed by Craig Alan Brand are UNTRUE. Brand has had disciplinary / grievance proceedings previously filed against him, including being SANCTIONED by a Federal Court; and complaints about stealing clients funds, complaints about stealing land, various complaints related to investment fraud, complaints upon complaints about Craig Brand's truthfulness in statements to others. The defendant in this matter along with other has even recently had the need to file complaints against Brand in MULTIPLE jurisdictions.

7.   No disciplinary or grievance proceedings have been previously filed against me.

8.   No disciplinary or grievance proceedings are pending against me in any jurisdiction.

56. The FACT is the Court has erred in granting pro hac vice status to Brand, not based on the untruthful woefully inaccurate affidavit, Doc24-1 or the motion made by Larry G. Michel, which is also entirely untrue as Michel, certainly never read, nor obviously "verified" the affidavit Doc 24-1 as "true and accurate"; the Court has erred by only granting the pro hac vice status based on MONEY (payment of fees) and the "good" reputation of the law firm Kennedy Berkley etAl; wherein the Judge Magistrate states: *"I can tell you that, you know, motions for pro hac vice are fairly routine" AND "so long as a person is in compliance with the federal rules. Typically, they are granted";* IF this is the case then WHY would a Court bother having a preformatted precise Motion to file and a pre-formatted PRECISE Affidavit to be signed under the penalties of perjury, if the Court is to ignore the obvious and evident untruthfulness of the affidavit, which dictates

clearly in proof positive of LIES to the Court, the parties and thus the public in general in the submission of the fraudulent affidavit. Doc 24 and 24-1 and Exhibit "B"

**57. The Magistrate Judge in making her determination to allow the pro hac vice status of Craig Alan Brand, known as the "partner in deception", was based NOT on the Motion or on the affidavit but rather the Magistrate Judge issued the following findings: "I will note the firm that is sponsoring, Mr. Brand, has practiced in federal court throughout Kansas and has a good reputation. And never once have I determined have found that that they submitted any affidavit under falsehoods or the light" CERTAINLY three is always a first time, as wherein here the law firm Kennedy Berkley Yarnevich and Williamson can no longer claim a "good reputation", nor can the Judge Magistrate in good faith in adherence to her Oath, believe the firm has never "submitted any affidavit under falsehoods or the light"; WHEREAS now the proof positive is the Affidavit Doc 24-1 is materially FALSE and certainly more than simply deficient it is ALTERED, contains bold faced LIES, the verbiage is MANIPULATED to be untruthful and unreadable in the English language, the statements on the affidavit are not accurate and are untrue.**

58. Before ruling on Document 24, the Judge Magistrate gave Craig Alan Brand the opportunity to add anything additional to the fraudulent affidavit Doc 24-1 he filed through attorney Michel's motion for the pro hac vice admission; Brand stated at 5:40 "Mr. Nelson has allegedly brought claims in the SEC and FINCEN, brought them falsely against the plaintiff's for which I am now defending. I am also representing other individuals and businesses." This demonstrates clear violation to FRCP, Local Rules, Rules of Professional Conduct, decorum in Court, as Brand's untruthful allegations *"sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the [trier of fact] or <u>unfairly hampering the presentation of the opposing party's claim or defense</u>." Cox, 706 So. 2d at 46 (quoting Aoude, 892 F. 2d at 1118).*

59. Defendant has had a chance to review the audio recording of the hearing and points out at 6:32, Craig Alan Brand stated: "how many different members of bars, associations I am part of by the fact, if you find that relevant, then I'll certainly go down my list."

60. Fact Craig A. Brand is only a member of a single bar association, despite lying to the presiding Magistrate, claiming membership in a "list" of different bars, this type of deceptive statement is why Craig Brand's well known moniker in the legal and law enforcement community is so well earned as the "Partner in Deception" EX. "I" and "H" first coined in the arrest affidavit of his law partner, subsequently disbarred, after he and Brand were SANCTIONED in Federal Court to the tune of more than $30,000 EACH!

61. At 13:04 Judge Magistrate recognizes Brand's, deception Ex. "F" within the affidavit stating: "you know, you play fast and loose with number six" [EMPHASIS ADDED]

62. Judge Magistrate erred in Judicial efficiency, due process, attorney witness doctrine, setting in motion a series of events for complex protracted costly litigation by not addressing the fraudulent affidavit Doc. 24-1 of Craig Brand, and the obvious lack of verification as to the truth and accuracy of the affidavit as sworn by attorney Michel; wherein the Magistrate rests upon the "good reputation" of the underlying firm, attorney Michel under master servant relationship, by stating orally at 15:40 of the recording: *"I will note the firm that is sponsoring, Mr. Brand has practiced in federal court throughout Kansas and has a good reputation. And never once have I determined that they submitted any affidavit under falsehoods or the light, I'm going to grant the motion."*

63. While it is generally held the Court has broad powers regarding pro hac vice status, to simply rubber stamp these submissions, creating a situation which will dramatically increase the time, costs and overall consternation of the matter at bar, creates a Judicial inefficiencies to cost the Courts and the parties extreme burdens, hardships and generally increase the time and costs to the litigation as well as to create unnecessary delay.

64. Defendant seeks independent de novo review of the affidavit Doc 24-1 of Craig Alan Brand, and Mr. Brand's obvious and evident multitude of conflicts of interest in the matter at bar including without limitation his self interest for pecuniary gain.

65. The Code of Professional Conduct **provides guidance regarding issues of conflicts of interest, client confidentiality, competent representation, conduct to the courts, prevention of the unauthorized practice of law, truthfulness in statements to others and the courts; [EMPHASIS ADDED]**

66. Defendant quite concerned the Court, refused to allow written objection to pro hac vice status of Craig Alan Brand, summarily denying the due process rights of the defendant to file written objection with evidence supporting the objection to Craig Alan Brand's participation pro hac vice, stated at 21:53 of the audio, further objection to Craig Alan Brand aka "the partner in deception", Ex "B" appearing pro hac vice in this matter for cause: "an interlocutory appeal under collateral order doctrine regarding the admission of Mr. Brand to the 10th circuit with a rule 22 service upon Associate Justice, Neil Gorsuch".

67. Judge Magistrate at 24:11 of the audio states: *"Whatever you feel like you need to do to take that further away from me, Mr. Nelson, I think you can figure out how to do that but that's not going to stop this train."*

68. Ergo the defendant now seeks de novo review of the motion and attached affidavit in document 24 and 24-1(affidavit Doc 24-1of Craig Alan Brand); defendant submits he doesn't know the legal meaning "...not going to stop this train." Legal Definition Stopping Train

69. Therefore the defendant now seeks de novo review of the Magistrate Judge's order allowing the pro hac vice status of the "partner in deception" Ex. "F" Craig Alan Brand to appear in the matter at bar, in the interests of substantial justice, in order to prevent manifest injustice, skyrocketing costs, ongoing consternation, untoward delays, obvious and evident conflicts of interest and general distrust in the Judiciary by the public.

70. Defendant's fundamental rights to be heard were trampled by the hearing procedures employed. "A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process." *See A.B. v. Y.Z., 184 N.J. 599, 604 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003).* The due process guarantee expressed in the 14th amendment to the United States Constitution requires assurance of fundamental fairness during legal proceedings. *U.S. Const. amend. XIV, § 1.* This includes the opportunity to be heard and requires "procedural safeguards including the right to cross-examine . . ." *Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005).*

71. The Kansas Supreme Court has suspended attorneys for less severe untruthful statements in their affidavits of for pro hac vice admission in the State of Kansas, for example the case of Kenton Hall, and subsequently also suspended in the State of Missouri stemming from the identical instance where Kenton Hall filed a materially FALSE and MISLEADING affidavit for admission pro hac vice in a case at bar.

72. **"RULE 4-3.3: CANDOR TOWARD THE TRIBUNAL** (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel;" WHEREAS here even the Judge Magistrate had to make a statement on the record that Craig Alan Brand "you know, you play fast and loose with number six"

73. Larry G. Michel, filing of Document 24, a motion to admit the "partner in deception" EX. "B", Craig Alan Brand pro hac vice, was neither true nor accurate despite Attorney Michel making a statement presumed under oath in the filing that he, Michel, had "verified" the affidavit submitted. Thus the actions of Attorney Michel clearly and woefully violate the Rules of Professional conduct: "**RULE 4-8.4: MISCONDUCT** It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the

acts of another;  (b) commit a act that <u>reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects</u>;"  It is the perception of the public to have TRUST in the actions of the Judiciary.

74. American Courts have agonized over the due process problems created in recent decades by the doctrine of judicial immunity. The Supreme Court, troubled by threats to judicial independence, has developed its own test that invests judges with immunity for any act performed in an official capacity. Under this approach, errors of Judges may easily shield even the most serious abuses behind a wall of immunity, and if the trier of appeal fails to act, leaves the victim unable to seek a remedy to protect his constitutional rights.

75. Yet a court's jurisdiction is limited by due process guarantees under the Fifth and Fourteenth Amendments to the Constitution, such as an opportunity for an impartial and complete hearing.  Ignoring this fact, the Supreme Court has misconceived the problem by basing judicial immunity purely on statutory concerns and distorted readings of common law history. immunity itself—<u>a judge-made doctrine</u>—**must be limited by due process**, which is of <u>constitutional dimension</u>. The supremacy clause unquestionably nullifies even the most ancient of common law principles and even the most popular of state statutes to the extent they are inconsistent with due process. No matter what the federal government or its courts might wish to do, it must stay within the boundaries of the Constitution.   The Fundamental right to fairness in proceedings must be held above all else in order for the general populace to have faith in the impartiality of the judiciary. *Pierson v. Ray, 386 U.S. 547, 554 (1967)*   If errors are committed, the proper remedy is appeal (emphasis added);  *Pulliam v. Allen, 466 U.S. 522 (1984)*

76. Larry G. Michel and Craig Alan Brand are "persons" as defined in 28 U.S.C. § 77b(a)(2)

77. In the District of Kansas, motions for leave to appear pro hac vice are governed by D. Kan. Rule 83.5.4. Under subsection (a) of that rule, upon motion by a member of the bar of the District of Kansas, accompanied by affidavit by the attorney seeking admission (**affidavit must be true and accurate**: ***EMPHASIS ADDED***) payment of fee, attorney who is not admitted to practice before this Court may be admitted for purposes of a particular case only.  By applying for admission pro hac vice, the attorney *consents to the*

*exercise of disciplinary jurisdiction* by this court over any misconduct occurring during the case *D. Kan. Rule 83.5.4(c)*.  There are no national standards on disqualification. *Obert v. Republic W. Ins. Co., 190 F. Supp. 2d 279, 298 (D.R.I. 2002)*.   The question of disqualification of counsel in Federal District courts is governed by that district's rule-making power over the conduct of their business *28 U.S.C. § 2071*.  <u>Admission to practice pro hac vice is a privilege and not a right</u> *Leis v. Flynt, 439 U.S. 438, 441 (1979)*. **Some courts have treated a response in opposition to a motion for admission pro hac vice as a motion for <u>disqualification of the attorney.</u>**  As the Court should do now.

    a.  *See NAACP v. N. Hudson Reg'l Fire & Rescue, Civ. A. No. 07-1683, 2008 WL 792613, at *1 (D.N.J. Mar. 25, 2008) (treating opposition to motion for pro hac vice admission as motion to disqualify counsel); Religious Tech. Ctr. v. F.A.C.T.Net, Inc., 945 F. Supp. 1470 (D. Colo. 1996); Quark, Inc. v. Power Up Software Corp., 812 F. Supp. 178, 179 (D. Colo. 1992) <u>(converting objection to admit out-of state counsel pro hac vice into a motion to disqualify;</u> it be would **futile to admit counsel only to have them disqualified later)**.*

78. **"At its discretion, the Court has the power to disqualify counsel for violations of professional ethics."** *Biocore Med. Tech., Inc. v. Khosrowshahi, 181 F.R.D. 660, 664 (D. Kan. 1998) (citing E.E.O.C. v. Orson H. Gygi Co., Inc., 749 F.2d 620, 621 (10th Cir.1984); Brown Mackie Coll. v. Graham, 1989 WL 48478 (D. Kan. Apr. 25, 1989)).*

79. "The <u>paramount concern must be to preserve public trust</u> [EMPHASIS ADDED] in the scrupulous administration of justice and <u>the integrity of the bar</u>…The important right to counsel of one's choice **<u>must yield to</u>** <u>ethical considerations</u> that affect the fundamental principles of our judicial process."  *Kennedy v. Eldridge, (2011)*

80. *"A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone. . . .* The dynamics of litigation are far too subtle, <u>the attorney's role in that process is far too critical</u>, and *<u>the public's interest in the outcome is far too great</u>* to leave room for even the <u>slightest doubt</u> concerning the *ethical propriety of a lawyer's representation* in a given case." Emle Indus. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973). **"Good faith is generally considered irrelevant in evaluating allegedly improper conduct pursuant to a motion to disqualify counsel."** *See, e.g., E.F. Hutton & Co. v. Brown, 305 F. Supp. 371, 400 (S.D. Tex. 1969); T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265, 271 (S.D.N.Y. 1953).*

81. **<u>"Concern for the integrity of the judicial system is of paramount importance to the court."</u>** [Emphasis Added] *Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975)*

(preservation of public trust paramount); *Emle Indus. v. Patentex, Inc., (2d Cir. 1973)* (court's duty owed to the public as well as to the parties).

82. ***"considerations of public policy, no less than the client's interests"***.

An attorney must not only fulfill his ethical responsibilities to his client, but **must** also **avoid conduct potentially damaging to his profession.** Cannon 4.

The court explicitly recognized its duty to protect the public interest by exercising its discretionary powers ***"to insure that nothing, not even the appearance of impropriety, is permitted to tarnish our judicial process." Emle 478 F.2d at 575.***

83. A disqualification motion poses a serious dilemma for a court. At least 3 competing interests can be clearly recognized: the litigant's interest in freely selecting the counsel of his choice; the former and/or current client's interest in preventing even inadvertent disclosure of confidential information acquired by the attorney; and the **public interest in maintaining the highest standards of professional conduct** and the scrupulous administration of justice. *See Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975); Emle Indus. v. Patentex, Inc., 478 F.2d 562, 564-65 (2d Cir. 1973).*

84. Disqualification examined: **interlocutory appealability** of grants and denials of disqualifications; simultaneous representation of conflicting interests; subsequent representation of an interest adverse to that of a former client. The Court's admonition to "avoid even the appearance of professional impropriety."

Hull v. Celanese Corp., 513 F.2d 568 (2d Cir. 1975); Meyerhofer v. Empire Fire & Marine Ins. Co., 497 F.2d 1190 (2d Cir. 1974), cert. denied, 419 U.S. 998 (1975); General Motors Corp. v. City of New York, 501 F.2d 639 (2d Cir. 1974); Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800 (2d Cir. 1974) (en banc); Emle Indus. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). Handelman v. Weiss, 368 F. Supp. 258 (S.D.N.Y. 1973); Motor Mart, Inc. v. Saab Motors, Inc., 359 F. Supp. 156 (S.D.N.Y. 1973); Estate Theatres, Inc. v. Columbia Pictures Indus., 345 F. Supp. 93

85. ***"The authority of a trial court to grant relief on a motion to disqualify counsel is based upon the court's broad supervisory powers over the general conduct of litigation."*** See Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 888 (5th Cir.), cert. denied, 392 U.S. 928 (1968) (inherent power of court to manage its own affairs necessarily includes authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it).

86. **The disposition of a disqualification motion, though interlocutory with regard to the entire controversy, should be directly appealable as a final decision under section 1291.** *28 U.S.C. § 1291 (1970) gives the courts of appeals jurisdiction only over final*

*decisions of the district courts;* <u>under the Supreme Court's collateral order off-shoot</u>
<u>doctrine.</u>  Interlocutory appeal of a collateral order was permitted in *Cohen v. Beneficial*
*Industrial Loan Corp.* because it was a "final disposition of a claimed right which [was]
not an ingredient of the cause of action and [did] not require consideration with it".

87. Despite the court's reversal and holding in *Fleischer, in the 1973 case of Emle*
*Industries v. Patentex, Inc.*, the Second Circuit accepted an appeal from an
order granting a motion to disqualify, basing its jurisdiction on *§ 1291 under*
*Cohen.* Ambiguity was further demonstrated in *Silver Chrysler Plymouth, Inc.*
*v. Chrysler Motors Corp.;* 496 F.2d 800 (2d Cir. 1974). Following the denial of
its motion to disqualify plaintiff's counsel, defendant *Chrysler sought to have*
*the district court judge amend his order to include a section 1292(b) statement*
*that an immediate appeal might* <u>*"materially advance the termination of the*</u>
<u>*litigation." Id. at 802.*</u>  Wherein here, the disqualification of Craig Alan Brand
will absolutely lead materially to the termination of litigation, as it is the
"partner in deception" Ex. "F" Craig Alan Brand, who criss crosses the globe
seeking the destruction of the lives of Federally Protected
WHISTLEBLOWERS.  Additionally, wherein here with Craig Alan Brand's
very first entry of a document in the matter at bar, Craig Alan Brand proffers a
woefully materially misleading, certain false declaration, and even as he begins
with his first utterances before the Court, Brand purposefully sets in motion a
scheme designed to unfairly influence the trier of fact.  Brand's own statements
on the record describe further Brand's liberties with the truth before the court,
wherein Brand at 6:32 of the audio recording Brand states:  " or <u>how many</u>
<u>different members of bars, associations I am part of</u> by the fact"; the affidavit
was clear for Brand to list "ALL bars" he is a member, yet brand simply lists

two supposed bars, and lists the same bar number for the bar in Florida as to

both.  It is evident based upon Brand's purposeful perhaps freudian slip and

certain hesitation which as Magistrate Judge Birzer, pronounced Brand you

know, "you play fast and loose with number six" of the affidavit, which is a

document provided by the Clerk of the Court, and is not meant to be changed at

all in numbers 6 through 9 see Exhibit "H"

88. "The order is collateral to the main proceeding yet has grave consequences to
the losing party; it is fatuous to suppose review of the final judgment will provide
adequate relief." 496 F.2d at 805.  ***Interlocutory appeal is a necessity.***
***Most courts have accepted direct appeals under the Cohen doctrine.***

Tomlinson v. Florida Iron & Metal, Inc., 291 F.2d 333 (5th Cir. 1961), in which the Fifth Circuit held that an order denying appellant's motion to
disqualify his opponent's counsel was appealable under the Cohen principle. Id. at 334. Accord, Uniweld Prod., Inc. v. Union Carbide Corp., 385 F.2d
992, 994 (5th Cir. 1967), cert. denied, 390 U.S. 931 (1968). See also United States v. Hankish, 462 F.2d 316 (4th Cir. 1972). Harmar Drive-In Theatre,
Inc. v. Warner Bros. Pictures, 239 F.2d 555 (2d Cir.), cert. denied, 355 U.S. 824 (1957), held that an order granting disqualification would be appealable
under Cohen and section 1291. Id. Petitioner, however, had filed no notice of appeal and therefore the court declined to take jurisdiction. The court
considered issuance of a writ of mandamus but declined to adopt that approach for effecting review.

89. Utilization of writs, including PROHIBITION and/or Mandamus, to effect review of
lower court decisions, when adverse to the public interest, given the obvious and evident
impropriety pro hac vice, as here, the "partner in deception" Exhibit "C", Craig Brand.
*Cord v. Smith, 338 F.2d 516 (9th Cir. 1964),* the court accepted appeal as a petition for a
writ under the All Writs Act, 28 U.S.C. § 1651 (1970), and reversed on the merits,
ordering disqualification. Accord, Chugach *Elec. Ass'n v. United States Dist. Ct. for the*
*Dist. of Alaska, 370 F.2d 441 (9th Cir. 1966)* (disqualification effected by mandamus after
denial thereof by the district court). In *Yablonski v. United Mine Workers, 454 F.2d 1036*
*(D.C. Cir. 1971), cert. denied, 406 U.S. 906 (1972)*, District of Columbia Circuit held
while denial of a disqualification motion was appealable, circumstances sufficiently
extraordinary to justify issuance of a writ of mandamus existed.

90. "...the integrity of the judicial process is to be maintained, and the appearance

of impropriety to be **scrupulously avoided,** the issue of an allegedly improper

representation should be resolved **at the outset**, *"lest a costly and protracted*

*trial be tainted on the merits by an issue collateral thereto."*  *Silver Chrysler*

*Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 803 (2dCir. 1974).*

91. A Federal Court sitting in Kansas deciding to disqualify for a conflict of interest looks to the Kansas Rules of Professional Conduct. See D. Kan. Rule 83.6.1 (adopting Kansas Rules of Professional Conduct as applicable standards of professional conduct); "(c) Standards of Conduct. Any of the following acts or omissions by an attorney <u>shall</u> constitute misconduct and shall be grounds for discipline: (1) Acts or omissions which violate standards of professional conduct; (2) Conduct violating applicable rules of professional conduct of another jurisdiction;  (3) **<u>Willful disobedience of an order of court requiring the attorney to do or forebear an act in the course of the practice of law;</u>** (4) *<u>Willful violation of the attorney's oath prescribed by these rules;</u>* *see also Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp., No. 08-1204-WEB, 2009 WL 3007125, at \*1 (D. Kan. Sept. 16, 2009)*

92. Ethical violations do not automatically trigger disqualification. *Chapman Eng'rs, Inc. v. Natural Gas Sales Co., Inc., 766 F. Supp. 949, 954 (D. Kan. 1991).* Because disqualification affects more than merely the attorney in question, the Court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question. *Koch v. Koch Indus., 798 F. Supp. 1525, 1530 (D. Kan. 1992). HOWEVER;*  wherein here litigation has not yet begun and in Brand's limited appearance in the matter at bar, Brand's "partner in deception" brand of law has already wielded its ugly head in Brand proffering testimony and allegations relating to SEC and FINCEN, having had Judge Magistrate Birzer, chastise and admonish his behavior before even addressing his pro hac vice affidavit, which as submitted the Court recognized the affidavit stating:  "you know, you play fast and loose with number six" the intention of the Court document to remain un-edited.

93. Federal Rules of Civil Procedure <u>permit disqualification of counsel</u> as a sanction for violations. *Biocore, 181 F.R.D. at 664.* At its discretion, for violations of local

rules, the Court can also apply the sanctions authorized under the Federal Rules of Civil Procedure. *D. Kan. Rule 11.1(b), (c).* In addition, the federal rules do not supplant **the Court's inherent power to disqualify counsel at its discretion.** *Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S. Ct. 2123 (1991).*

94. The Court must determine a motion to disqualify counsel by measuring the facts of the particular case. *Biocore, 181 F.R.D. at 664; Beck v. Bd. of Regents of State of Kan., 568 F.Supp. 1107, 1110 (D. Kan. 1983).* Where here the defendant more than meets the burden by demonstrable proof positive upon the record of false swearing in the affidavit submitted in support of Pro Hac Vice status. Craig Alan Brand, has previously been branded the "Partner in Deception" in arrest affidavits, involving criminal charges and disbarment of his law partner, stemming from a "ruse" he himself concocted. **Brand has also been SANCTIONED $31,500 in a Federal Bankruptcy Court proceeding**, though Brand claims in his affadvit at XXXXXX he has never had a grievance filed against him.

95. The essential issue is whether the alleged misconduct taints the lawsuit. *Id.* The Court should not disqualify unless the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation. *Id. (quoting Field v. Freedman, 527 F. Supp. 935, 940 (D. Kan.1981)).* Because the interests to be protected are critical to the judicial system, **the Court should resolve doubts in favor of disqualification.** *Id.* The Court must balance several factors, however, **including society's interest in ethical conduct,** plaintiff's right to choose his counsel and the hardship which disqualification would impose on the parties and the entire judicial process. *Id. (citing Lansing-Delaware Water Dist. v. Oak Lane Park, Inc., 248 Kan. 563, 571, 808 P.2d 1369, 1375 (1991)).*

96. Citing *State ex rel. Morgan Stanley & Co., Inc. v. MacQueen, 416 S.E. 2d 55 (W. Va. 1992)*, to support its argument that an attorney cannot represent a party and an adverse witness in the same litigation. In MacQueen, the Supreme Court of Appeals granted a writ of prohibition which required the lawyers to amend the pleadings to exclude specific allegations of wrongdoing against adverse witnesses and then to elect between representing the party and the adverse witnesses. In West Virginia state court, a party seeking to disqualify counsel from participating in a lawsuit after a conflict of interest has arisen must file a writ of prohibition to the

Supreme Court of Appeals, which has original jurisdiction. *MacQueen, 416 S.E. 2d at 57 n.3. Id. at 56.*

    a. "A directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit."

97. Certainly <u>Craig A. Brand</u>, has numerous conflicts of interest in the proposed representation; the number of underlying companies are too numerous to list all herein the limited 30 pages allowed by the local rules, as are the numerous conflicts of interest to the adverse parties to each other. "Anthem Holdings Co.", which appears to be created from a series of contested "short form mergers". The short form mergers are alleged to have been illegally consummated as they did not achieve the required 90% shareholder vote. The series of short form mergers of small private entities appear as a rudimentary form of money laundering, in furtherance of RICO criminal enterprise.

98. Brand has previously represented the genesis corporation Anthem Vault Inc. a Nevada domestic entity in the US District of Nevada. Brand represented Anthem Vault Inc. in proceedings at bar, in Nevada, it is alleged Brand suborned perjury of another attorney in Nevada; then doubled down on that perjury by swearing in an appeal. Brand also claims to represent Anthem Hayek Blanchard and Cynthia Diane French also sometimes known as Cynthia D. Blanchard. Both individuals will be cross complaints and could become involuntary plaintiffs.

99. Brand traditionally a criminal defense attorney, with the unique specialization in pedophile protection cases, has conflicts with the pedophile human trafficking ring operated by convicted felon Russ Albert Medlin, the alleged mastermind of the Bitclub (Bitcoin) Ponzi Scheme; Medlin is currently incarcerated in Indonesia on 3 charges of paid sex with minor children.

100. The concurrent representation of parties with differing interests substantially impairs the attorney's ability to effectively represent either client while fulfilling his <u>ethical obligations to both.</u> As seen herein Craig A. Brand, has numerous ethical violations of concern. *Canon 5, provides that "a lawyer should exercise independent judgment on behalf of a client,"; DR 5-105*

101. "Estates Theatres indicated that even had there been no objection, disqualification would have been required for <u>reasons of public policy.</u>" In the Estates Theatres situation, <u>one client was likely to be adversely affected by the</u>

<u>dual representation</u>, and the attorney was **ultimately disqualified** from the later suit.  The attorney contended the choice of which client he would continue to represent rested with him, the court held that under Ethical Consideration, and Disciplinary Rule, the attorney could not properly withdraw.

102.    The court in *Handelman* found the "considerations" of Canon 9; applicable and ***ordered the attorney <u>and his law firm disqualified</u>***.  *368 F. Supp. at 263-64. The court noted that the United States District Court for the Southern District of New York had not adopted the Code of Professional Responsibility, but determined the lawyer's disqualification to be required for the "same considerations" which necessitated the adoption of Canon 9. Id. at 263.*

103.    Disqualification or withdrawal "when the decision 'to forego the testimony of counsel appears obviously contrary to the client's interest'", *Mendel Kern, Inc. v. Workshop, Inc*., 400 Mass. 277, 281, 508 N.E.2d 853, 856 (1987), quoting *Borman v. Borman*, 377 Mass. 775, 791, 393 N.E.2d 847, 857 (1978), or where a client's advocate will be called by an adverse party concerning non-privileged matters "where the lawyer [was] intimately involved in the events in issue." *Serody v. Serody*, 19 Mass.App.Ct. 411, 415, 474 N.E.2d 1171, 1174 (1985). States courts have not hesitated to enter orders of disqualification under DR 5-102 against counsel for closely-held concerns in shareholder disputes. *See, e.g., Hitzig v. Borough-Tel Serv., Inc., 108 App.Div.2d 677, 678, 485 N.Y.S.2d 541, 542 (2d Dep't 1985)*(attorney disqualified from representing closely-held corporation in action brought by one of shareholders arising out of termination of employment).

104.    *See Mendel Kern, Inc., supra*, 400 Mass. at 282, 508 N.E.2d at 857 (observing in affirming denial of motion to disqualify that counsel "should have shown the good sense to step aside because his familiarity with the case led him to lead, suggest and almost testify while interrogating the witnesses."  Whereas here, before Brand's pro hac vice, was approved by the court, <u>Brand was testifying</u>.

105.    Brand publicly is declared as a "shareholder", himself and as such is privy to insider information from controlling interests including directors which he is bound, by law to

disclose to the minority, especially wherein the minority are "significant equity interest holders", greater than that of Brand himself, "attorneys retained by closely-held corporations may become privy to information concerning the conduct of the majority that they may be required to disclose to the minority". Brand has direct conflict of interest in personal pecuniary gain at the expense of "significant equity interest" holders who individually are in the minority but collectively are the majority.

106.    The record in this early, pre-answer / responsive pleading stage of litigation does not support a finding plaintiff's would suffer the "usual" hardship imposed on clients by disqualification. There is no evidence indicating Brand's disqualification would result in the duplication of litigation expenses, as Brand has yet to make any pleading, other than his FALSE and Materially Misleading affidavit. The defendant has yet to file a responsive pleading (answer) to the underlying petition. In fact the plaintiff's may very well be best served by removal of the "partner in deception", [Craig Alan Brand] prior to his tainting of the litigation. Brand has already been admonished by the presiding Magistrate Judge, when Brand began tainting the case with claims about FINCEN.

107.    Plaintiff's traditionally may have their choice of counsel, here Brand, is not a member of the Kansas bar association, nor a resident or citizen of Kansas, or any other connection to Kansas, the plaintiffs will not only not be burdened nor injured in any manner by disqualification and/or rejection of Craig Brand. The Court and the parties themselves may find expeditious resolution, without the "partner in deception", involved. Creating the necessity to review every written word, investigate even simplistic statements, like who is an attorney and who is not, given the evidence Brand, has suborned perjury and encouraged another bar member to lie under oath and even Brand himself has lied in writing to a 3 Justice panel in NEVADA, continuing the the perjury.

108.    The only document submitted in the case at bar, by Craig Alan Brand, to date, is his woefully inaccurate, untruthful affidavit, in support of Michel's illegal "motion" for Brand's pro hac vice admission. In short, the current record demonstrates, Brand has had

no role whatsoever in the litigation, though possibly suggests Brand has had an extremely limited role, ghost writing the multitude of illegally filed motions, filed without the required disclosure under Rule 7.1(b).   Therefore it is not possible to discern how plaintiffs would be burdened or otherwise disadvantaged by denying the "partner in deception", Craig A. Brand's admission pro hac vice, in these early days of litigation. Plaintiffs could potentially suffer hardship if the OBJECTION to Brand occurred later in the litigation, however, here Brand has yet to substantially participate in the proceedings.

109.    Denial of Brand's admission pro hac vice, eliminates additional motions and filings regarding Brand as a witness, and therefore being disqualified under the attorney-witness rule.   There is no doubt Brand will continue in his arts of "deception" behind the scenes as the "partner in deception" for the plaintiff's, therefore the plaintiffs again prove they will not be burdened by the Denial of Brand as pro hac vice counsel, thus further ameliorating any potential harm to Koehn EtAl.  Accordingly, the Court should find Koehn etAl. would not suffer hardship of any kind, when Brand's pro hac vice status is denied; or Brand is disqualified under the attorney-witness rule; however in the later the parties will be further burdened by costs, untoward delays, consternation, the Court will be further burdened, with many additional motions, hearings and pleadings to arrive at the same conclusion as the denial of Brand to serve pro hac vice would achieve.

110.    The record supports a finding that Brand's testimony is needed, should the Court necessitate additional motions regarding disqualification of Brand,  the "partner in deception", will certainly be forced to acknowledge the necessity of his testimony, demonstrating his dishonesty in the case in NEVADA, and his filings as they relate to the criminal matter in California and Oklahoma thus must concede he will be a witness.

111.    Motion for disqualification based on attorney-witness rule may not yet be ripe, because there is no trial at issue, no testimony at trial or any risk of confusing a jury, suggesting that Brand's disqualification can be delayed until the parties are closer to trial is an AVOIDABLE mistake.   The "partner in deception", Craig Alan Brand, certainly can and will burden the parties and the court thus being detrimental to the interests of justice.

The Court should not be persuaded for at least two reasons, 1) delaying Brand's disqualification would potentially increase the amount of harm the parties will suffer to the extent Brand would become active in the case; 2) At odds with any argument to allow Brand's participation only to later disqualify him, the fact defendant has made the OBJECTION to Brand's entrance pro hac vice, prior to Brand having any participation.

112. Courts have held that the act of subpoenaing opposing counsel as a trial witness, is deemed the "functional equivalent" of a motion to disqualify. *Williams v. District Court.*

113. Whether a motion to disqualify is filed, the subpoenaed or named attorney has a duty to promptly determine whether or not withdrawal is required under Rules of Professional Conduct & Rules of the Court, and to act appropriately. *Taylor v. Grogan, reversing Grogan v. Taylor.* As previously pleaded it is the option of a Court to treat an OBJECTION to Pro Hac Vice motion of an attorney as a motion to disqualify, as the court should now do, if not reject pro hac vice motion.

114. Craig Brand is acting with retaliation for WHISTLEBLOWER filings. Brand's actions are predatory collusion against minority shareholders, who are former board members, holding "significant equity interest", far exceeding Brand's current holdings. Brand's actions in COLLUSION are for personal pecuniary gain, ergo violating Rules of Professional Conduct, and quite possible criminal conduct acting as an agent of a criminal enterprise RICO, certainly attaching pinkerton issues arising out of violations of the Securities Act of 1933, entitling the defendant to seek relief against Craig Alan Brand and conspirators in collusion pursuant with 15 U.S.C. § 77l and 15 U.S.C. § 77o. 7.

115. Craig Alan Brand, to serve as witness: though certainly Brand's illegal unauthorized practice of law in NEVADA, during each phase of the NEVADA cases and his subornation of PERJURY in those matters, brings into question Brand's value as an honest witness, never-the-less, evident dishonesty even in his affidavit in support of Michel's illegal Motion for Pro Hac Vice counsel demonstrates this need.

116. "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: (1) The lawyer's testimony relates to an uncontested issue or matter; (2) The lawyer's testimony relates to the nature and value of legal services rendered in the case; or (3) The lawyer has obtained informed written consent from the client"

117. Prior to Brand's pro hac vice admission, Brand began testifying to the Court, specifically citing SEC (Securities and Exchange Commission) complaints, presumably protected under Federal Whistleblower Statutes. As well as making statements concerning: "FUNRA" or "FINCEN". Brand's proffered testimony, had to be stopped by the Magistrate Judge, although the damage was already done. Brand attempted as his "partner in deception" well observed brand of law, reared its ugly head, as he purposefully laid the foundation of fraud upon the court.

118. The Affidavit of Brand as submitted in Document 24-1 is woefully inaccurate, contains much untruthful information, is not in conformity with the instructions of the Court, the Kansas District Court, nor Federal Rules of Civil Procedure, does not follow the instructions of the prescribed form by the Clerk of the Court, contains false and materially misleading statements. The affidavit was obviously never "VERIFIED" as to "True and Accurate" by Attorney Larry G. Michel, though Michel filed a motion where he signed the motion stating he "VERIFIED" the affidavit as "true and accurate".

---

WHEREFORE, Defendant submits this prayer for relief, by sustaining this OBJECTION to the DENIAL of admission of Craig Alan Brand, known as the "partner in deception", from being admitted Pro Hac Vice, for all the given reasons herein above, paragraphs and evidence (exhibits) submitted in 1 through 118, above and the attached herewith Exhibits A through I.

Finding in the interests of substantial justice in the expeditious resolution of the above herein captioned case at bar, requested absent the Magistrate Judge finding sua sponte, to

disqualify or otherwise remove Craig Alan Brand's appearance, it is requested under Rule 72, for the lifetime appointed Federal Judge incharge of the Magistrate Judge to overrule and remove Brand forthwith so that the matter at bar can proceed without deception, consternation and untoward delay in its expeditious resolution within judicial economy for the Courts and parties.

By making this formal request for reconsideration under FRCP Rule 72, as in all previously filed, responses, and/or any pleadings whatsoever the Defendant does not waive and reserves all rights as to any available defenses it may assert against the petition. And so makes this appearance together with all previous filings now before the Court, without voluntarily submitting to the jurisdiction of this Court, as with this and all prior motions and filings are made via "special appearance", as well stated in the "Notice of Removal" in paper 1, filed on 1 Feburary 2022, removing the frivolous petition to US Federal Court for the district of Kansas.

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; and filed the same via Notice of Appeal in the Docket of the referenced case: **5:22-CV-04008-JWB-GEB**

Respectfully Submitted, this 17th day of March 2022.



Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

**EXHIBITS ATTACHED HEREWITH AND THEREFORE ANNEXED HERETO**