# EXHIBIT

# "A"

# TO FOLLOW . . .

**EXHIBIT A:**

These are the Model ABA Rules for Pro Hac Vice Admission, to the best of my memory:

## MODEL ABA RULES FOR PRO HAC VICE ADMISSION

Objection to Application. The [Disciplinary Counsel] or a party to the proceeding may file an objection to the application or seek the court's imposition of conditions to its being granted. The [Disciplinary Counsel] **or** *objecting party must file with its objection a verified affidavit containing or describing information establishing a factual basis for the objection*. The [Disciplinary Counsel] or objecting party may seek denial of the application or modification of it. If the application has already been granted, the [Disciplinary Counsel] or ***objecting party may move that the pro hac vice admission be withdrawn.***

## Standard for Admission and Revocation of Admission

"The courts and agencies of this state have discretion as to whether to grant applications for admission pro hac vice. An application ordinarily should be granted unless the court or agency finds reason to believe that such admission:

a. may be detrimental to the prompt, fair and efficient administration of justice,

b. may be detrimental to legitimate interests of parties to the proceedings other than the client(s) the applicant proposes to represent,

c. one or more of the clients the applicant proposes to represent may be at risk of receiving inadequate representation and cannot adequately appreciate that risk, or

d. the applicant has engaged in such frequent appearances as to constitute regular practice in this state.

4. Revocation of Admission. Admission to appear as counsel pro hac vice in a proceeding may be revoked for any of the reasons listed in Section above."

"Disciplinary Enforcement, Contempt, and Sanctions
1. Authority Over Out-of-State Lawyer and Applicant.
a. During pendency of an application for admission pro hac vice and upon the granting of such application, an out-of-state lawyer submits to the authority of the courts and the jurisdiction of [Disciplinary Counsel] of this state for all conduct arising out of or relating in any way to the application or proceeding in which the out-of-state lawyer seeks to appear, regardless of where the conduct occurs. An applicant or out-of-state lawyer who has pro hac vice authority for a proceeding may be disciplined in the same manner as an in-state lawyer.

b. The court's and the [Disciplinary Counsel's] authority includes, without limitation, the court's and the [Disciplinary Counsel's] rules of professional conduct, rules of disciplinary enforcement, contempt and sanctions orders, local court rules, and court policies and procedures.

2. Familiarity With Rules. An applicant shall become familiar with all applicable rules of professional conduct, rules of disciplinary enforcement, local court rules, and policies and procedures of the court before which the applicant seeks to practice."

# EXHIBIT

# "B"

# TO FOLLOW . . .

See Filing Number: 79044821; originally filed 10/09/2018; at 08:39:22 AM; in the Circuit Court of Orange County, STATE OF FLORIDA; under INFORMATION NUMBER: 2017-CF-6983-AO; Division 14 Regarding "Scheme to DEFRAUD OF $50,000 OR MORE (Fl-L7) AND "GRAND THEFT FIRST DEGREE ($100,000 OR MORE) (Fl-L7); known as The State of FLORIDA VS. Thomas Anthony Sadaka. In the attached therewith "Arrest Affidavit" Agency Care Number: 2015-460183; filed by the Orlando Police Department, emphasis as to ORLANDO, given the fact Craig Alan Brand, claims a law office in Orlando. From the Arrest Affidavit, in the above herein referenced matter:

```
Related Offenses :
  No.  Group/ORI  Statute                     Description
   1   State      812.014 1                   PETTY/GRAND THEFT

Informational      1  BRAND,CRAIG,A,          NO   Work  305-878-1477
                      3390 MARY ST 116
```

```
                        ORLANDO POLICE DEPARTMENT 8.0.11
Date 11/10/2015                                              Page    2
Time 10:33:28                                                      KLAYTON

Case Number : 2015-00460183                    ORI # : FL0480400 OPD 8.11
Description : Fraud

                 MIAMI, FL  33133                           At Occur :

  Race . . . . . : White       Sex  . . . . . : Male      Ethnicity  . . :

  Resident Type : N/A          Resident Status: N/A        Statement Type : None
  Injury Type 1 : NA           Injury Type 2  :            Injury Type 3  :
  Extent Injury : Not Appli    Transported To :

  Related Offenses :
    No.  Group/ORI  Statute                     Description
     1   State      812.014 1                   PETTY/GRAND THEFT

  Additional Contact Information :
    Cont Type   Entry Date   Phone #/E-mail
    Email Home  11/10/2015   CRAIG@THEBRANDLAWFIRM.COM
```

# EXHIBIT

# "C"

# TO FOLLOW . . .

See Filing Number: 79044821; originally filed 10/09/2018; at 08:39:22 AM; in the

Circuit Court of Orange County, <u>STATE OF FLORIDA</u>; under INFORMATION

NUMBER:  2017-CF-6983-AO; Division 14 Regarding "<u>Scheme to DEFRAUD</u> OF

$50,000 OR MORE (Fl-L7) AND "<u>GRAND THEFT FIRST DEGREE</u> ($100,000 OR

MORE) (Fl-L7); known as The State of FLORIDA VS. Thomas Anthony Sadaka.  In the

attached therewith "Arrest Affidavit" Agency Care Number:  2015-460183; filed by the

Orlando Police Department, emphasis as to ORLANDO, given the fact <u>Craig Alan</u>

<u>Brand, claims a law office in Orlando</u>.  From the Arrest Affidavit, in the above herein

referenced matter:

| NAME (L.F.M) | **BRAND**, CRAIG | | | Spoken: | | DOB: | Age: |
|---|---|---|---|---|---|---|---|
| ADDRESS (#, Street, City, State): | | | Whi | M | Zip: | Home Phone: | |
| Bus./School: 3390 MARY ST 116, MIAMI, FL | | | 33133 | | | Bus. Phone: 305-878-1477 | |

# EXHIBIT

# "D"

# TO FOLLOW . . .

# Detail by Entity Name

Florida Profit Corporation
THE BRAND LAW FIRM, P.A.

## Filing Information

| | |
|---|---|
| **Document Number** | P09000049736 |
| **FEI/EIN Number** | NONE |
| **Date Filed** | 06/08/2009 |
| **Effective Date** | 06/08/2009 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR ANNUAL REPORT |
| **Event Date Filed** | 09/24/2010 |
| **Event Effective Date** | NONE |

## Principal Address

2816 E. ROBINSON STREET
ORLANDO, FL 32803

## Mailing Address

2816 E. ROBINSON STREET
ORLANDO, FL 32803

## Registered Agent Name & Address

BRAND, CRAIG A
2816 E. ROBINSON ST.
ORLANDO, FL 32803

## Officer/Director Detail

### Name & Address

Title P

BRAND, CRAIG A
2816 E. ROBINSON STREET
ORLANDO, FL 32803

# EXHIBIT

# "E"

# TO FOLLOW . . .

| Permit Number | W 9624710 |
| --- | --- |
| Gender | M |
| Ethnicity | W |

## ☞ CONCEALED WEAPON PERMITS

### PERMIT NUMBER W 9624710

| | |
| --- | --- |
| Name | Craig A Brand |
| Address | 8000 Sw 160th St, Palmetto Bay, FL, 33157 |

# EXHIBIT

# "F"

# TO FOLLOW . . .

See Filing Number: 79044821; originally filed 10/09/2018; at 08:39:22 AM; in the Circuit Court of Orange County, STATE OF FLORIDA; under INFORMATION NUMBER: 2017-CF-6983-AO; Division 14 Regarding "Scheme to DEFRAUD OF $50,000 OR MORE (Fl-L7) AND "GRAND THEFT FIRST DEGREE ($100,000 OR MORE) (Fl-L7); known as The State of FLORIDA VS. Thomas Anthony Sadaka. In the attached therewith "Arrest Affidavit" Agency Care Number: 2015-460183; filed by the Orlando Police Department, emphasis as to ORLANDO, given the fact Craig Alan Brand, claims a law office in Orlando. From the Arrest Affidavit, in the above herein referenced matter:

"One such case is especially egregious. Mr. Sadaka, purportedly on behalf of the firm, represented "AB" for an involuntary Chapter 7 in the Eastern District of New York Bankruptcy Court. Mr. Sadaka, along with his ***partner in deception***, attorney **Craig Brand, concocted** a ruse in which Ne.Jame Law was only paid $35,000.00 in fees and $5,000.00 for trust. The investigation revealed that **The Brand Law Firm,** who contacted and referred the case to Mr. Sadaka, wired directly to the Sadaka Law Group account $81,920.00 of monies that should have been applied to the $66,568.12 balance reflected on NeJame law's books."

"client's husband paid $250k to retain **the Brand Law firm**"

"they learned that **Mr. Brand** and Mr. Sadaka created a **fabricated** story about Mr. Sadaka received $25,000.00 from **Mr. Brand** for designing a kitchen in a **feeble attempt** to outwardly justify payments made to Mr. Sadaka. Of course … Mr. Sadaka … had no legitimate proof whatsoever ."

"client's husband wired $1,545 .00 into **The Brand Law Firm** Account…an additional **Brand**-Sadaka scheme. Jame Law wrote off $1,500.00, again because of **another fabricated story** ..."

"Sadaka misrepresented…the case was pro bono, when in fact, he was sharing $5,000 in fees…once again being attorney Craig Brand"

Case: 2015-460183; same above referenced and attached herewith.
"client paid $35,000.00 and currently has a balance of $66,568.12. Messrs. Sadaka and **Brand** shared $250,000.00. "

"Client is in ProLaw as pro bono. The client at her 2004 Exam stated she paid $5,000.00 for the bankruptcy. NeJame Law was of record as representing her and was nearly sanctioned bv the U.S. Bankruptcy Court. Messrs. Sadaka and **Brand were sanctioned $31,500**"

"Additionally, Mr. Sadaka entered a Notice of Appearance of Co-Counsel for **Mr. Craig Brand**. I am unable to ascertain **if** *he was given any monies*…"

"financial institution to subpoena for records pertaining to **the Brand Law Firm** in which three ACH transfers were transferred to Sadaka Law Firms PNC account from **Craig A Brand**"

# EXHIBIT

# "G"

# TO FOLLOW . . .

**ABA Model Rule on Pro Hac Vice Admission**


**I.   Admission In Pending Litigation Before A Court Or Agency**

A.    Definitions

1.    An "out-of-state" lawyer is a person not admitted to practice law in this state but who is admitted in another state or territory of the United States or of the District of Columbia, and not disbarred or suspended from practice in any jurisdiction.

2.    An out-of-state lawyer is "eligible" for admission pro hac vice if that lawyer:

a. lawfully practices solely on behalf of the lawyer's employer and its commonly owned organizational affiliates, regardless of where such lawyer may reside or work; or

b. neither resides nor is regularly employed at an office in this state; or

c. resides in this state but (i) lawfully practices from offices in one or more other states and (ii) practices no more than temporarily in this state, whether pursuant to admission pro hac vice or in other lawful ways.

3.    A "client" is a person or entity for whom the out-of-state lawyer has rendered services or by whom the lawyer has been retained prior to the lawyer's performance of services in this state.

4.    An "alternative dispute resolution" ("ADR") proceeding includes all types of arbitration or mediation, and all other forms of alternative dispute resolution, whether arranged by the parties or otherwise.

5.    "This state" refers to [state or other U.S. jurisdiction promulgating this Rule]. This Rule does not govern proceedings before a federal court or federal agency located in this state unless that body adopts or incorporates this Rule.

B.    Authority of Court or Agency To Permit Appearance By Out-of-State Lawyer

1.    Court Proceeding. A court of this state may, in its discretion, admit an eligible out-of-state lawyer retained to appear in a particular proceeding pending before such court to appear pro hac vice as counsel in that proceeding.

2.    Administrative Agency Proceeding. If practice before an agency of this state is limited to lawyers, the agency may, using the same standards and procedures as a court, admit an eligible out-of-state lawyer who has been retained to appear in a particular agency proceeding to appear as counsel in that proceeding pro hac vice.

C.    In-State Lawyer's Duties. When an out-of-state lawyer appears for a client in a proceeding pending in this state, either in the role of co-counsel of record with the in-state lawyer, or in an advisory or consultative role, the in-state lawyer who is co-counsel or counsel of record for that client in the proceeding remains responsible to the client and responsible for the conduct of the proceeding before the court or agency. It is the duty of the in-state lawyer to advise the client of the in-state lawyer's independent judgment on contemplated actions in the proceeding if that judgment differs from that of the out-of-state lawyer.

D.    Application Procedure

1.    Verified Application. An eligible out-of-state lawyer seeking to appear in a proceeding pending in this state as counsel pro hac vice shall file a verified application with the court where the proceeding is filed.  The application shall be served on all parties who have appeared in the case and the [Disciplinary Counsel]. The application

shall include proof of service. The court has the discretion to grant or deny the application summarily if there is no opposition.

2.     Objection to Application. The [Disciplinary Counsel] or a party to the proceeding may file an objection to the application or seek the court's imposition of conditions to its being granted. The [Disciplinary Counsel] or objecting party must file with its objection a verified affidavit containing or describing information establishing a factual basis for the objection. The [Disciplinary Counsel] or objecting party may seek denial of the application or modification of it. If the application has already been granted, the [Disciplinary Counsel] or objecting party may move that the pro hac vice admission be withdrawn.

3.     Standard for Admission and Revocation of Admission. The courts and agencies of this state have discretion as to whether to grant applications for admission pro hac vice. An application ordinarily should be granted unless the court or agency finds reason to believe that such admission:

a.     may be detrimental to the prompt, fair and efficient administration of justice,

b.     may be detrimental to legitimate interests of parties to the proceedings other than the client(s) the applicant proposes to represent,

c.     one or more of the clients the applicant proposes to represent may be at risk of receiving inadequate representation and cannot adequately appreciate that risk, or

d.     the applicant has engaged in such frequent appearances as to constitute regular practice in this state.

4.     Revocation of Admission. Admission to appear as counsel pro hac vice in a proceeding may be revoked for any of the reasons listed in Section I(D)(3) above.

E.     Verified Application and Fees:

1.     Required Information. An application shall state the information listed on Appendix A to this Rule. The applicant may also include any other matters supporting admission pro hac vice.

2.     Application Fee. An applicant for permission to appear as counsel pro hac vice under this Rule shall pay a non-refundable fee as set by the [court or other proper authority] at the time of filing the application. The [court or other proper authority] shall determine for what purpose or purposes these fees shall be used.

3.     Exemption for Pro Bono Representation. An applicant shall not be required to pay the fee established by I(E)(2) above if the applicant will not charge an attorney fee to the client(s) and is:

a.     employed or associated with a pro bono project or nonprofit legal services organization in a civil case involving the client(s) of such programs: or

b.     involved in a criminal case or a habeas proceeding for an indigent defendant.

4.     Lawyers' Fund for Client Protection. Upon the granting of a request to appear as counsel pro hac vice under this Rule, the lawyer shall pay any required assessments to the lawyers' fund for client protection. This assessment is in addition to the application fee referred to in Section (E)(2) above.

F.     Authority of the [Disciplinary Counsel], the Court: Application of Rules of Professional Conduct, Rules of

Disciplinary Enforcement, Contempt, and Sanctions

    1.    Authority Over Out-of-State Lawyer and Applicant.

        a.    During pendency of an application for admission pro hac vice and upon the granting of such application, an out-of-state lawyer submits to the authority of the courts and the jurisdiction of [Disciplinary Counsel] of this state for all conduct arising out of or relating in any way to the application or proceeding in which the out-of-state lawyer seeks to appear, regardless of where the conduct occurs. An applicant or out-of-state lawyer who has pro hac vice authority for a proceeding may be disciplined in the same manner as an in-state lawyer.

        b.    The court's and the [Disciplinary Counsel's] authority includes, without limitation, the court's and the [Disciplinary Counsel's] rules of professional conduct, rules of disciplinary enforcement, contempt and sanctions orders, local court rules, and court policies and procedures.

    2.    Familiarity With Rules. An applicant shall become familiar with all applicable rules of professional conduct, rules of disciplinary enforcement, local court rules, and policies and procedures of the court before which the applicant seeks to practice.

II.    Out-of-State Proceedings, Potential In-State and Out-of-State Proceedings, and All ADR

A.    In-State Ancillary Proceeding Related to Pending Out-of-State Proceeding. In connection with proceedings pending outside this state, an out-of-state lawyer admitted to appear in that proceeding may render in this state legal services regarding or in aid of such proceeding.

B.    Consultation by Out-of-State Lawyer

    1.    Consultation with In-State Lawyer. An out-of-state lawyer may consult in this state with an in-state lawyer concerning the in-state's lawyer's client's pending or potential proceeding in this state.

    2.    Consultation with Potential Client. At the request of a person in this state contemplating a proceeding or involved in a pending proceeding, irrespective of where the proceeding is located, an out-of-state lawyer may consult in this state with that person about that person's possible retention of the out-of-state lawyer in connection with the proceeding.

C.    Preparation for In-State Proceeding. On behalf of a client in this state or elsewhere, the out-of-state lawyer may render legal services in this state in preparation for a potential proceeding to be filed in this state, provided that the out-of-state lawyer reasonably believes he is eligible for admission pro hac vice in this state.

D.    Preparation for Out-of-State Proceeding. In connection with a potential proceeding to be filed outside this state, an out-of-state lawyer may render legal services in this state for a client or potential client located in this state, provided that the out-of-state lawyer is admitted or reasonably believes the lawyer is eligible for admission generally or pro hac vice in the jurisdiction where the proceeding is anticipated to be filed.

E.    Services Rendered Outside This State for In-State Client. An out-of-state lawyer may render legal services while the lawyer is physically outside this state when requested by a client located within this state in connection with a potential or pending proceeding filed in or outside this state.

F.     Alternative Dispute Resolution ("ADR") Procedures. An out-of-state lawyer may render legal services in this state to prepare for and participate in an ADR procedure regardless of where the ADR procedure is expected to take or actually takes place.

G.     No Solicitation. An out-of-state lawyer rendering services in this state in compliance with this Rule or here for other reasons is not authorized by anything in this Rule to hold out to the public or otherwise represent that the lawyer is admitted to practice in this jurisdiction. Nothing in this Rule authorizes out-of-state lawyers to solicit, advertise, or otherwise hold themselves out in publications as available to assist in litigation in this state.

H.     Temporary Practice. An out-of-state lawyer will be eligible for admission pro hac vice or to practice in another lawful way only on a temporary basis.

I.     Authorized Services.  The foregoing services may be undertaken by the out-of-state lawyer in connection with a potential proceeding in which the lawyer reasonably expects to be admitted pro hac vice, even if ultimately no proceeding is filed or if pro hac vice admission is denied.

III.  Admission of Foreign Lawyer in Pending Litigation Before a Court or Agency

A.  A foreign lawyer is a person admitted in a non-United States jurisdiction and who is a member of a recognized legal profession in that jurisdiction, the members of which are admitted to practice as lawyers or counselors at law or the equivalent and are subject to effective regulation and discipline by a duly constituted professional body or a public authority, and who is not disbarred, suspended or the equivalent thereof from practice in any jurisdiction.

B. The definitions of "client" and "state" in paragraphs I(A)(3) and (5) are incorporated by reference in this Paragraph III.

C.  A court or agency of this state may, in its discretion, admit a foreign lawyer in a particular proceeding pending before such court or agency to appear pro hac vice in a defined role as a lawyer, advisor or consultant in that proceeding with an in-state lawyer, provided that the in-state lawyer is responsible to the client, responsible for the conduct of the proceeding, responsible for independently advising the client on the substantive law of a United States jurisdiction and procedural issues in the proceeding, and for advising the client whether the in-state lawyer's judgment differs from that of the foreign lawyer. See paragraph III(E).

D. In addition to the factors listed in paragraph I(D)(3) above, a court or agency in ruling on an application to admit a foreign lawyer pro hac vice, as a lawyer, advisor, or consultant, or in an advisory or consultative role, shall weigh factors, including:

1.  the legal training and experience of the foreign lawyer including in matters similar to the matter before the court or agency;

2.  the extent to which the matter will include the application of:

a. the law of the jurisdiction in which the foreign lawyer is admitted or

b. international law or other law with which the foreign lawyer has a demonstrated expertise;

3.  the foreign lawyer's familiarity with the law of a United States jurisdiction applicable to the matter before the court or agency;

4. the extent to which the foreign lawyer's relationship and familiarity with the client or with the facts and circumstances of the matter will facilitate the fair and efficient resolution of the matter;

5. the foreign lawyer's English language ability; and

6. the extent to which it is possible to define the scope of the foreign lawyer's authority in the matter as described in paragraph III(F) so as to facilitate its fair and efficient resolution, including by a limitation on the foreign lawyer's authority to advise the client on the law of a United States jurisdiction except in consultation with the in-state lawyer.

E. The court or agency shall limit the activities of the foreign lawyer or require further action by the in-state lawyer, as appropriate in its discretion in light of paragraph III(D). It may, for example, require the in-state lawyer to sign all pleadings and other documents submitted to the court or to other parties, to be present at all depositions and conferences among counsel, or to attend all proceedings before the court or agency.

F. The provisions of section I, paragraphs (D), (E), and (F) and Section II, paragraphs (G) and (H), applicable to out-of-state lawyers, also apply to foreign lawyers for purposes of the requirements of Paragraph III of this Rule.

## APPENDIX A

The out-of-state or foreign lawyer's verified application for admission pro hac vice shall include:

1. the applicant's residence and business address, telephone number(s), and e-mail address(es);

2. the name, address, telephone number(s), and e-mail address(es) of each client sought to be represented;

3. the U.S. and foreign jurisdictions in, and agencies and courts before which the applicant has been admitted to practice, the contact information for each, and the respective period(s) of admission;

4. the name and address of each court or agency and a full identification of each proceeding in which the applicant has filed an application to appear pro hac vice in this state within the preceding two years and the date of each application;

5. a statement as to whether, within the last [five (5)] years, the applicant (a) has been denied admission pro hac vice in any jurisdiction, U.S. or foreign, including this state, (b) has ever had admission pro hac vice revoked in any jurisdiction, U.S. or foreign, including this state, or (c) has ever been disciplined or sanctioned by any court or agency in any jurisdiction, U.S. or foreign, including this state. If so, specify the nature of the allegations; the name of the authority bringing such proceedings; the caption of the proceedings, the date filed, and what findings were made and what action was taken in connection with those proceedings. A certified copy of the written finding or order shall be attached to the application. If the written finding or order is not in English, the applicant shall submit an English translation and satisfactory proof of the accuracy of the translation;

6. whether any disciplinary proceeding has ever been brought against the applicant by a disciplinary counsel or analogous foreign regulatory authority in any jurisdiction within the last [five (5)] years and, as to each such proceeding: the

nature of the allegations; the date the proceedings were initiated, which, if any, of the proceedings are still pending, and, for those proceedings that are not still pending, the dates upon which the proceedings were concluded; the caption of the proceedings; and the findings made and actions taken in connection with those proceedings, including exoneration from any charges. A certified copy of any written order or findings shall be attached to the application. If the written order or findings is not in English, the applicant shall submit an English translation and satisfactory proof of the accuracy of the translation.

7. whether the applicant has been held in contempt by any court in a written order in the last [five (5)] years, and, if so: the nature of the allegations; the name of the court before which such proceedings were conducted; the date of the contempt order, the caption of the proceedings, and the substance of the court's rulings. A copy of the written order or transcript of the oral rulings shall be attached to the application. If the written finding or order is not in English, the applicant shall submit an English translation and satisfactory proof of the accuracy of the translation;

8. an averment as to the applicant's familiarity with the rules of professional conduct, rules of disciplinary enforcement, local or agency rules, and policies and procedures of the court or agency before which the applicant seeks to practice; and

9. the name, address, telephone number(s), e-mail address(es), and bar number of the active member in good standing of the bar of this state who supports the applicant's pro hac vice request, who shall appear of record together with the out-of-state lawyer, and who shall remain ultimately responsible to the client as set forth in Paragraph C of this Rule.

10. for applicants admitted in a foreign jurisdiction, an averment by the in-state lawyer referred to in Paragraph 9 above and by the lawyer admitted in a foreign jurisdiction that, if the application for pro hac vice admission is granted, service of any documents by a party or Disciplinary Counsel upon that foreign lawyer shall be accomplished by service upon the in-state lawyer or that in-state lawyer's agent.

11. Optional: the applicant's prior or continuing representation in other matters of one or more of the clients the applicant proposes to represent and any relationship between such other matter(s) and the proceeding for which applicant seeks admission.

12. Optional: any special experience, expertise, or other factor deemed to make it particularly desirable that the applicant be permitted to represent the client(s) the applicant proposes to represent in the particular cause.

# EXHIBIT

# "H"

# TO FOLLOW . . .

(Rev. 10/03/2019)

**NOTE:  The motion and affidavit shall be accompanied by payment of a registration fee in the sum of $50.00.  Payment of this fee will be accomplished by credit card payment during the filing of the motion in CM/ECF utilizing the pay.gov system.  Attorneys employed by any department or agency of the United States government shall not be required to pay a pro hac vice registration fee.**

**Each attorney requesting admission pro hac vice must complete and sign an Electronic Filing Registration Form.  It must be filed as an attachment to the motion.  The CM/ECF Electronic Filing Registration Form is available on the Court's website at www.ksd.uscourts.gov under Forms.**

(Rev. 10/03/2019)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| _____ , | ) | |
| | ) | |
| **Plaintiff(s),** | ) | **CIVIL ACTION** |
| | ) | **CASE NO.** _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| _____ , | ) | |
| | ) | |
| **Defendant(s). )** | | |

## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

Pursuant to D. Kan. Rule 83.5.4., I move that _____ be admitted to practice in the United States District Court for the District of Kansas, for purposes of this case only.

I certify that I am a member in good standing of the Bar of this Court and that in compliance with D. Kan. Rule 83.5.4(c), I will sign all pleadings and other papers which are signed and filed by said attorney. I also agree that I will participate meaningfully in the preparation and trial of this case, to the extent required by the Court.

Pursuant to D. Kan. Rule 83.5.4 (a), I have attached the required affidavit in support of this motion. I have verified that the information contained in the affidavit is true and accurate.

Dated this \_\_\_\_ day of _____, 20\_\_.

*[insert signature block]*

(Rev. 10/03/2019)

*[insert certificate of service]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| _____ , | ) |
| | ) |
| **Plaintiff(s),** | ) CIVIL ACTION |
| | ) CASE NO. _____ |
| **v.** | ) |
| | ) |
| _____, | ) |
| | ) |
| **Defendant(s). )** | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR LEAVE TO APPEAR PRO HAC VICE

Pursuant to D. Kan. Rule 83.5.4., I declare that the following facts are true, to the best of my knowledge, information and belief:

1.    My full name is:

2.    I practice under the following firm name or letterhead:

Name:

Address:

Telephone Number:

Fax:

Email address:

(Rev. 10/03/2019)

3.    I have been admitted to practice in the following courts (here list the dates and places of admission to all bars, state or federal, and any bar registration numbers):

      <u>Court</u>                          <u>Date of Admission</u>               <u>Bar Number</u>

4.    I have reviewed D. Kan. Rule 83.5.4.  Pursuant to that rule I have retained local counsel to assist in the representation in this case, and I agree that local counsel will sign all pleadings or other papers and participate meaningfully in the preparation and trial of the case or proceedings to the extent required by the Court.

5.    I consent to the exercise of disciplinary jurisdiction over any alleged misconduct that occurs during the progress of this case.

6.    I am in good standing in all bars of which I am a member.

7.    No disciplinary or grievance proceedings have been previously filed against me.

8.    No disciplinary or grievance proceedings are pending against me in any jurisdiction.

9.    I have not been charged in any court of the United States or of any state, territory or possession of the United States with the commission of a felony or unprofessional conduct.

10.     I have completed the Electronic Filing Registration Form for filing as an attachment

to this motion and affidavit.  I understand I will receive System-generated notices of

electronic filing.

[NOTE:   To the extent that the applicant cannot truthfully affirm the statements contained in paragraphs 6 through 9, the applicant shall attach additional pages which state all relevant facts in connection with that matter.   At a minimum, if disciplinary or grievance proceedings have been filed, or criminal proceedings have been commenced, the applicant shall identify the court, case name, docket number and disposition.]

[Affidavit must be notarized and/or contain a declaration that it is being signed under penalty of perjury in accordance with 28 U.S.C. § 1746 and served in accordance with D.Kan. Rule 5.1]

# EXHIBIT

# "I"

# TO FOLLOW . . .

IN THE CIRCUIT COURT OF ORANGE COUNTY, STATE OF FLORIDA

THE STATE OF FLORIDA

VS.

THOMAS ANTHONY SADAKA

INFORMATION # 2017 CF 6983-AO

DIVISION - 14

1. SCHEME TO DEFRAUD OF $50,000 OR MORE (F1-L7)

2. GRAND THEFT FIRST DEGREE ($100,000 OR MORE) (F1-L7)

---

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

      ARAMIS D. AYALA, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, or ARAMIS D. AYALA, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, by and through the undersigned Designated Assistant State Attorney, under oath, CHARGES that THOMAS ANTHONY SADAKA, between the 1st day of August, 2011 and the 11th day of November, 2014, in said County and State, did, in violation of Florida Statute 817.034(4)(a)(1), engage in a systematic, ongoing course of conduct with intent to defraud ONE (1) or more persons, to-wit: SHANNON McMAHON or NEJAME LAW, or to obtain property from said one (1) or more persons by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of a future act, and who so obtained property, to-wit: United States money current, which has an aggregate value of $50,000.00 or more, from one or more of said persons, to-wit: SHANNON McMAHON or NEJAME LAW.

EXHIBIT A

<u>COUNT TWO</u>

ARAMIS D. AYALA, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, or ARAMIS D. AYALA, State Attorney of the Ninth Judicial Circuit prosecuting for the State of Florida in Orange County, by and through the undersigned Designated Assistant State Attorney, under oath, CHARGES that THOMAS ANTHONY SADAKA, between the 1st day of August, 2011 and the 11th day of November, 2014, in said County and State, did, in violation of Florida Statute 812.014(2)(a), knowingly obtain or use, or endeavor to obtain or use United States money current, of a value of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) or more, the property of another, to-wit: SHANNON McMAHON or NEJAME LAW, as owner or custodian thereof, with the intent to temporarily or permanently deprive said owner or custodian of a right to the property or a benefit therefrom, or to appropriate the property to the defendant's own use or to the use of a person not entitled thereto.

STATE OF FLORIDA
COUNTY OF ORANGE

Personally appeared before me Sidney Robert Savitz, Assistant State Attorney of the Ninth Judicial Circuit of Florida, who being first duly sworn, says that he/she has received testimony under oath from the material witness or witnesses, which if true, would constitute the offense herein, and that he/she institutes the prosecution in good faith.

The foregoing instrument was acknowledged before me this 25th day of MAY, 20 17 by the aforementioned Assistant State Attorney who is personally known to me and who did take said oath.

_Shelley J. Holcomb_

ARAMIS D. AYALA, State Attorney
Ninth Judicial Circuit of Florida

By _____
Sidney Robert Savitz
Designated Assistant State Attorney
Florida Bar No. 516767

SHELLEY L. HOLCOMB
Notary Public, State of Florida
Commission No. FF 56408
My Commission Expires Sept. 22, 2017

SS/SS

# Orange County

# Arrest Affidavit

Arrested ☐   At Large ☒   JRA ☐

Date: 09/29/2016

| Location of Defendant's Vehicle: N/A | | Date-Time Booked: | Agency Case Number: | 2015-460183 |
|---|---|---|---|---|

(ORI) FL048: | 0 | 4 | 0 | 0 |   Agency Name: Orlando Police Department   FCIC/NCIC Check ☒   Date-Time of Arrest:

Address of Arrest:

## DEFENDANT

Adult ☒   Juvenile ☐     Jacket #:     Inmate #:     Language Spoken: English

NAME (L,F,M): SADAKA, THOMAS ANTHONY     A.K.A.:     Race: WHT   Sex: M   DOB: ▓▓▓   Age: 52

Height: 6'02   Weight: 245 lbs   Hair: BLK   Eyes: HAZ   P.O.B. City:   P.O.B. State: FLORIDA   P.O.B. Country: USA

RES. Street #: 3520   RES. Street Name: FOREST RIDGE   Road Designator: Ln.   Citizenship: USA

City: KISSIMMEE   State: FL   Zip: 34741   Home Phone: 407-566-2110   Other Phone:

Scars/Tattoos:     Ethnicity:

Driver's Lic/ State ID No.: S320821640820   State: FL   Year Expires: 2018   S.S. #: ▓▓▓

Next of Kin Name:   Address:   Phone:

Business and Occupation:

BUS. Street #:

City:   State:   Zip:   Business Phone:

AGGRAVATORS- Firearm ☐   Weapon ☐   Mask ☐   Vest ☐   Convicted Sex Offender ☐   Hate Crime ☐   special Victim: ☐   Domestic Violence? YES ☐ NO ☒

## OFFENSES

FELONY ☒   MISD. ☐   ORD. ☐   TRAFFIC ☐     Court Location: Circuit

| | GOC Code # | Description | Cts | FSS/Ord | FDLE Rec # | Drug Name | Citation # | Bond |
|---|---|---|---|---|---|---|---|---|
| 1 | | GRAND THEFT 1st DEGREE (>$100,000 SCHEME) | | 812.014(2)(A)-7 | | | | |
| 2 | | SCHEME TO DEFRAUD>$50,000 | | 817.034(4)(A)(1) | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |

☐ CHECK IF OFFENSES CONTINUED

| | NAME (L,F,M): | Arrested? | Juv. | Fel. | Misd. | Traf. | Ord. | NTA | Race: | Sex: | Age: | DOB: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| #1 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | |
| #2 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | |
| #3 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | |
| #4 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | |

DCF Notified?   By Whom?   On Probation?   Miranda Warning?   By Whom?   Invoked?

Sworn to and subscribed before me,

this 29 day of SEPT 2016

_signature_ 2889

Notary Public ☐   Law Enforcement or Corrections Officer ☒

Personally Known ☑   Produced Identification ☐

Type of Identification:

I swear/affirm the above statements are correct and true.

_signature_

OFFICER'S SIGNATURE

TRITT, JOHN   11103

Officer's Printed Name (L,F)   ID or Badge #

407 246-2470
Officer's Bus. Phone No.

Booking/Receiving Signature

1001A (8/07)

**Court Copy**

| Defendant's Name: | SADAKA, THOMAS ANTHONY | Case Number: | 2015-460183 | Page 2 of 6 |

**NARRATIVE**  The undersigned has probable cause to believe the above-named defendant, on the __15__ day of __MAY__, __2012__ at approximately __12:00__ ☐ a.m. ☒ p.m. at __189 S ORANGE AV__  (District: ____) in Orange County did:

On November 5, 2015, at 1300 hours, Sergeant Debra Chapman (4571) and I met with with Attorney Mark Nejame and NeJame's Office Manager/HR Director/Paralegal, Shannon McMahon, at 189 S. Orange Ave Suite 1800 reference to a Scheme to Defraud. Attorney Mark Nejame and Shannon McMahon stated that attorney Thomas Sadaka became a non equity partner with the Nejame Law firm on October 20, 2010 handling primarily civil cases and occasional criminal cases. Nejame provided an email regarding the terms that Sadaka agreed to work for the law firm. This email was dated August 31, 2010. Attorney Mark Nejame stated that during the time suspect Sadaka worked for the law firm he systemactically diverted and converted funds that were to go to Nejame law to his own accounts.

On 11/10/15, I, Detective Tritt, was assigned this case for further investigation. Sergeant Chapman (4571) and I met with the Mark Nejame and Shannon McMahon to discuss this case in further detail. McMahon provided me with a case file which included copies of correspondence regarding Thomas Sadaka, court documents, and documents reference Nejame's complainant against Sadaka to The Florida Bar.

On 11/10/15, I subpoenaed PNC Bank (account #▉▉▉▉▉▉), USAA Bank (account #▉▉▉▉▉▉), SunTrust Bank (account #▉▉▉▉▉▉), and TD Bank (account #▉▉▉▉▉▉) for certified copies of statements from January 1, 2012 through December 31, 2014 to include all credits, deposits, offsets, wire transfers, and withdrawals.

ı 12/21/15, I received records on CDs from PNC and USAA and forwarded to McMahon for review. I placed the ᴑriginal CD`s containing the records into evidence under HE6885A.

On 12/28/15, I received records on CDs from TD Bank and forwarded to McMahon for review. I placed the original CD containing the records into evidence under HE7068A.

On 01/08/16, McMahon provided Sgt. Chapman with a completed case binder reference the Bar Complaint (#2016-30,093 (7B)) against Thomas Sadaka.

On 01/14/16, I received records on CDs from SunTrust Bank and forwarded to McMahon for review. I placed the original CD containing the records into evidence under HE7593A.

On 05/05/16, another meeting was held with McMahon, NeJame, and FBI SA Debra Weyrauch. After a thorough review of the above bank records, McMahon was able to provide supporting documentation from the firm to show evidence that Mr. Sadaka did in fact divert funds on 34 occasions to his personal bank accounts which were intended for the business, NeJame Law, for a total loss amount of $231,260. McMahon provided a binder detailing the 34 occasions along with 3 cases involving refunds and a case involving the GMW lawsuit. NeJame Law will prosecute. McMahon provided a written, notarized statement as to the above.

Sworn to (or affirmed) and subscribed before me this __29__ day of __SEPT__, __2016__

Notary Public ☐  Law Enforcement or Corrections Officer ☒
Personally Known ☒   Produced Identification ☐
Type of Identification _____

I swear/affirm the above statements are correct and true.

OFFICER'S SIGNATURE

OFFICER'S PRINTED NAME (L.F)  **TRITT, JOHN**

Officer's Name Key  **11103**

Officer's Bus. Phone No.:  **407 246-2470**

On 06/23/16, I received certified records from Apple reference Sadaka's email account: tsadaka@me.com. These records contained thousands of business emails related to the NeJame Law Firm from January 1, 2011 to December 31, 2014. These records were submitted into OPD Property and Evidence under Item #1.

Mr. NeJame provided a Florida Bar Compliant against Mr. Sadaka stating the following: Mr. Sadaka began at NeJame Law on October 20, 2010 handling primarily civil cases and the occasional criminal case. On November 11, 2014, NeJame was contacted by Attorney, Tucker H. Byrd, informing that Mr. Sadaka had sent out an invoice, to "GMW", a former client of NeJame Law, that bore the name of "Thomas A. Sadaka, Attorney at Law" in the amount of $19,215.00. "PT" was the previous president of "GMW". Mr. Byrd informed that "PT" was dismissed for suspicious activity, which caused counsel to review various documents, transactions and relationships that "PT" held while employed by "GMW". Mr. Byrd informed his "GMW" clients that he personally knew NeJame and that he would be forthright with any inquiries. He agreed to meet with Mr. Byrd and his client from "GMW". He was provided with the aforementioned invoice, which was clearly fraudulent and did not emanate from NeJame Law. Apparently, NeJame Law received an initial $5,000.00 retainer from "GMW", which is properly reflected in their accounting system. Mr. Sadaka apparently took some of the time records he was keeping and transferred them to his personal billing. Further, in a meeting on December 8, 2014 to discuss the billing issue, Mr. Byrd provided NeJame with documents evidencing numerous wire transfers, from "GMW", that were sent directly the Sadaka Law Group account totaling $13,500.00. The invoice reflects secret and unknown payments made to Mr. Sadaka directly to his account. None of the payments, other than the initial $5,000.00 retainer were ever received by or known to NeJame Law. In a final act bravado Mr. Sadaka requested that that $2,053.60, which was reflected as a balance due in NeJame Law's books, be written off, lying to the firm about the reasons for the waiver. Additionally, Sadaka created an invoice which was presented to the client that clearly sought to hide his conduct. NeJame Law also confirmed, and was admitted to by Mr. Sadaka, that he worked out a scam with the former president of "GMW" where he received a motorcycle worth $19,000.00, two $3,000.00 payments that went to his Sadaka Law Group account and fabricated the bogus billing NeJame Law received from Mr. Byrd. It should be noted that Mr. Sadaka was provided a salary, a percentage of all cases he handled and benefits from the onset of 's employment until his termination.

Ironically, on November 21, 2014, a client came in with a check, made payable to Sadaka Law Group, to pay for additional fees of $2,500.00, wherein NeJame Law billing showed it to have a zero balance. Mr. Sadaka was not in the office when the client came in. When confronted with this Mr. Sadaka stated "[he] would take care of it" trying to leave the impression that it was simply a mistake. This was brought to NeJame's attention and he advised his accounting division to give him the check as NeJame wanted to see what he would do with it. Mr. Sadaka never submitted it back to accounting. It was discovered and determined that Mr. Sadaka pocketed the money and lied about it when NeJame later confronted him. Moreover, he stated that the money was for expenses on the client's case which he was handling. Being suspicious, NeJame asked him if he was putting trust money into his personal account as that it intended to be cost money. He then became nervous and attempted to retract and qualify his previous statement.

NeJame set up a surprise meeting with Mr. Sadaka, his accounting department and another one of his partners, Stephen J. Calvacca, to discuss this suspicious activity. They presented him with what they had found. At first, Mr. Sadaka's position was to deny everything. However, after further pressing and presenting the limited documentation we acquired to that point, he finally admitted that the evidence presented was correct. At that time, NeJame demanded his bank statements and asked if they would find any additional proof that he committed any additional theft, fraud or conversion. He was adamant that he had not. He only confessed to these two incidents. He swore that these were the only two and he was ashamed of himself.

| Sworn to (or affirmed) and subscribed before me this 29 day of SEPT, 2016 | I swear/affirm the above statements are correct and true. | |
|---|---|---|
| _signature_ 2989 | _signature_ | TRITT, JOHN |
| Notary Public ☐ Law Enforcement or Corrections Officer ☒ Personally Known ☒ Produced Identification ☐ | OFFICER'S SIGNATURE | OFFICER'S PRINTED NAME (LF) |
| Type of Identification _____ | Officer's Name Key 11103 | Officer's Bus. Phone No.: 407 246-2470 |

He later acknowledged it was more, but has routinely denied the full extent of his criminality. It was a couple of weeks later, or threat of a lawsuit, that NeJame finally relented and provided his bank statements. The Sadaka Law Group account had been a surprise to NeJame, as he advised him years ago he closed such after he joined NeJame Law.

Accordingly, NeJame directed an investigation into his bank statements and NeJame Law emails. Fortunately, when he had initial suspicions about him, he had one of their IT employees download years' worth of emails, sent and received, on his NeJame Law computer. NeJame later discovered that Sadaka was remotely wiping his emails that coincided with some of the transgressions that came to be discovered. To date, NeJame Law had found $140,367.00 in fees that were redirected to the Sadaka Law Group account that should have gone to NeJame Law. It also does not include lost revenue from NeJame Law by Mr. Sadaka's working on his own scams instead of the work for NeJame Law he was paid to do.

One such case is especially egregious. Mr. Sadaka, purportedly on behalf of the firm, represented "AB" for an involuntary Chapter 7 in the Eastern District of New York Bankruptcy Court. Mr. Sadaka, along with his partner in deception, attorney Craig Brand, concocted a ruse in which NeJame Law was only paid $35,000.00 in fees and $5,000.00 for trust. The investigation revealed that The Brand Law Firm, who contacted and referred the case to Mr. Sadaka, wired directly to the Sadaka Law Group account $81,920.00 of monies that should have been applied to the $66,568.12 balance reflected on NeJame Law's books. They further discovered that the client's husband paid $250,000.00 to retain the Brand Law firm and NeJame Law for which he was left displeased with the services provided. But for the $35,000.00 referenced above no further payment was made to NeJame Law, even though Mr. Sadaka was working on the case and traveled to New York on different occasions. It is important to note when NeJame regularly questioned Sadaka about when they were receiving more funds for this case, he continuously concocted excuses why no more money was forthcoming, in furtherance in his scheme to defraud. Also, they learned that Mr. Brand and Mr. Sadaka created a fabricated story about Mr. Sadaka received $25,000.00 from Mr. Brand for designing a kitchen in a feeble attempt to outwardly justify payments made to Mr. Sadaka. Of course, when NeJame questioned Mr. Sadaka about this he had no legitimate proof whatsoever.

Through further investigation it was found that one of NeJame's clients "JB" executed an engagement letter for $3,000.00 and paid NeJame Law $1,500.00 with the remaining balance due on or before November 28, 2014. On November 5, 2013, the client's husband wired $1,545.00 into The Brand Law Firm Account. This was apparently an additional Brand-Sadaka scheme. NeJame Law wrote off $1,500.00, again because of another fabricated story by Mr. Sadaka.

Additionally, in another matter Mr. Sadaka signed up "SO" for $3,500.00 wherein NeJame Law entered an appearance, however, the firm was not paid, and the engagement letter indicates "the firm" instead of NeJame Law. It was discovered that Mr. Sadaka was paid in cash, which he pocketed.

In yet another matter, Mr. Sadaka, diverted funds from a NeJame Law client, "JS/MN" where they executed a NeJame Law engagement letter and then Mr. Sadaka directed them to wire funds directly to his Sadaka Law Group account and then issue a separate check to NeJame Law trust. He further misrepresented to the firm that the file would be handled under another matter so not to raise suspicions. Furthermore, in another matter connected to these clients, he sent his wiring instructions to a client, however, the client called in his payment using his credit card.

Around mid-April of this year, NeJame received a Notice of Abandonment from the U.S. Trademark Office regarding a case where Mr. Sadaka failed to follow through with the trademark process. Additionally, this client "SB" was not entered into their system as Mr. Sadaka apparently bartered for services rendered and failed to report this.

| Sworn to (or affirmed) and subscribed before me this 29 day of SEPT , 2016 | I swear/affirm the above statements are correct and true. |
|---|---|
| _2889_ | |
| ~ary Public ☐ Law Enforcement or Corrections Officer ☒ | OFFICER'S SIGNATURE |
| Personally Known ☒ Produced Identification ☐ | Officer's Name Key 11103 |
| Type of Identification_____ | |

TRITT, JOHN
OFFICER'S PRINTED NAME (L,F)

Officer's Bus. Phone No.: 407 246-2470

| Defendant's Name: | SADAKA, THOMAS ANTHONY | Case Number: | 2015-460183 | Page of |

Furthermore, on May 15, 2015, NeJame was informed of a case in U.S. Bankruptcy Court, Southern District of Florida, where Sadaka misrepresented to NeJame Law that the case was pro bono, when in fact, he was sharing $5,000 in fees with the referring lawyer, once again being attorney Craig Brand. Moreover, it is anticipated that the U.S. Trustee in the stated bankruptcy case will be bringing sanctions against Mr. Sadaka for an inadequate list of unsecured and secured creditors and improper use of electronic signature for which the client did not authorize. Additionally, the client was led to believe she would be filing a chapter 11 so she could still operate her business; however, Mr. Sadaka filed a chapter 7 causing her to lose her business. NeJame further discovered that Mr. Sadaka kept this matter off our books even putting the filing fees on his personal credit card.

In addition, a conflict was created by Mr. Sadaka's diverting/embezzling funds. One of our partners made an appearance to help out Mr. Sadaka in a case he was handling. In this case, NeJame Law represented "EU"; however, it was not in their system as Mr. Sadaka was paid directly and no matter was opened in our files or accounting system due to his secreting information. Ironically, a few months later, NeJame was contacted by "MM" (the alleged victim/Petitioner in the referenced matter). NeJame drafted a demand letter to "EU", our former client, involving the same dispute on behalf of "MM". As there was nothing in their records showing a conflict, NeJame found out they were representing both the purported victim and the purported perpetrator in the same matter. Of course, when this was discovered NeJame immediately withdrew from any further representation. However, as a result of Mr. Sadaka's theft and trying to keep things off of the books no proper conflict check could have been done.

At this time and after carefully reviewing the facts, it is clear that the actions of Mr. Sadaka were not mistakes but, in fact, constituted outright theft, embezzlement and diversion of funds.

On 09/27/16, I received The Florida Bar File #2016-30,093 (7B), The Florida Bar v. Thomas Anthony Sadaka to include the Complaint, transcripts of Sadaka's deposition, documents pertaining to The Florida Bar Counsel (Carrie Constance Lee) investigation, and a copy of the Notice of Assignment of Investigating Member and/or Panel which was forwarded to Mr. Christopher Scott Ferebee, Chair for further investigation and disposition. The findings of possible rule violations were as follows: Rule 3-4.3, Misconduct and Minor Misconduct, Rule 4-1.5, Fees and Costs for Legal Services, and Rule 4-8.4, Misconduct.

Due to the findings by NeJame's Office, The Florid Bar, and subpoenaed records, probable cause was established to charge Thomas Anthony Sadaka with Grand Theft and Scheme to Defraud. Charges have been filed at large with the State Attorney's Office.

| Sworn to (or affirmed) and subscribed before me this 29 day of SEPT, 2016 | I swear/affirm the above statements are correct and true. |
| --- | --- |
| ☐ Notary Public ☐ Law Enforcement or Corrections Officer ☑ Personally Known ☑ Produced Identification ☐ | TRITT, JOHN |
| | OFFICER'S SIGNATURE    OFFICER'S PRINTED NAME (L,F) |
| Type of Identification_____ | Officer's Name Key 11103 | Officer's Bus. Phone No.: 407 246-2470 |

COURT COPY RECORD COPY STATE ATTORNEY COPY DOCKET COPY AGENCY/REPORT REVIEW COPY DEFENDANT COPY

# Witness Form

## WITNESSES  V – Victim  R – Reporter  W – Witness

| | NAME (L,F,M): | NEJAME LAW | Race: | Sex: | DOB: | Age: |
|---|---|---|---|---|---|---|
| **V** | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: 189 S ORANGE AV, ORLANDO, FL | | Zip: 32801 | | Bus. Phone: 407-500-0000 | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: English | |

| | NAME (L,F,M): | MCMAHON, SHANNON | Race: Wht | Sec F | DOB: | Age: |
|---|---|---|---|---|---|---|
| **I** | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: 189 S ORANGE AV, ORLANDO, FL | | Zip: 32801 | | Bus. Phone: 407-500-0000 | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: English | |

| | NAME (L,F,M): | NEJAME, MARK | Race: Wht | Sex: M | DOB: | Age: |
|---|---|---|---|---|---|---|
| **I** | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: 189 S ORANGE AV, ORLANDO, FL | | Zip: 32801 | | Bus. Phone: 407-500-0000 | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: English | |

| | NAME (L,F,M): | BRAND, CRAIG | Race: Wht | Sex: M | DOB: | Age: |
|---|---|---|---|---|---|---|
| **I** | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: 3390 MARY ST 116, MIAMI, FL | | Zip: 33133 | | Bus. Phone: 305-878-1477 | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: English | |

| | NAME (L,F,M): | | Race: | Sec: | DOB: | Age: 2016 |
|---|---|---|---|---|---|---|
| | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: | | Zip: | | Bus. Phone: | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: | |

| | NAME (L,F,M): | | Race: | Sec: | DOB: | Age: 2016 |
|---|---|---|---|---|---|---|
| | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: | | Zip: | | Bus. Phone: | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: | |

| | NAME (L,F,M): | | Race: | Sec: | DOB: | Age: 2016 |
|---|---|---|---|---|---|---|
| | ADDRESS (#, Street, City, State): | | Zip: | | Home Phone: | |
| | Bus/School: | | Zip: | | Bus. Phone: | |
| Testimony: | | | | | | |
| | | | | | Language Spoken: | |

STATE ATTORNEY/CHARGING AFFIDAVIT    RECORDS/INCIDENT REPORT    REFERRAL/NTA    AGENCY/REPORT REVIEW

# ORLANDO POLICE DEPARTMENT

Case #: 2015-460183

## Statement
Please fill out in full detail

| Date of Statement: | Month: 9 10 | Day: 30 | Year: 16 | Time: |
|---|---|---|---|---|

| Offense: | GRAND THEFT | | | |
|---|---|---|---|---|

| e of Offense: | Month: 05 | Day: 15 | Year: 12 | Time: / | Suspect (Last, First Middle): Sadaka, Thomas Anthony |
|---|---|---|---|---|---|

| Location of Offense: NeJame Law, P.A. 189 S. Orange Ave., Suite 1800, Orlando, FL 32801 | District: |
|---|---|

Person Code: **I**

| Name (Last, First Middle): Shannon McMahon | Age: | DOB | Race: W | Sex: F |
|---|---|---|---|---|

Address (Street Address, City, State) Residence:

Address (Street Address, City, State) Business: 189 S ORANGE AVE ORLANDO Zip: 32801 Phone: 407-500-0000

Email Address:

| Type of ID shown: | ID# if applicable: |
|---|---|

I, _____Shannon McMahon, Office Manager/HR Director of NeJame Law_____, do hereby voluntarily make the following statement without threat, coercion, offer of benefit, or favor by any persons whomsoever.

Thomas (Tom) Sadaka was a partner at NeJame Law from October 20, 2010 to December 31, 2014. On or about Late 2011 or early 2012, Tom started to divert funds from clients who were to be paying NeJame Law into his own account.

I began my investigation in January 2015 and concluded such in April 2016. I found the following:

Global Motor Werks, LLC
$14,500.00
Mr. Sadaka sent invoices from Sadaka Law for work performed by NeJame Law

Jairo Omar Mejia $2,500.00
Client was referred to Mr. Sadaka from a former client of NeJame Law. A NeJame Law Engagement Letter was sent to Mr. Mejia. Retainer was indicated at $2,500. Mr. Sadaka did not get the retainer agreement executed. The client did pay NeJame Law $2,500.00, however, the actual amount of the retainer was $5,000.00. The second check was sent to Mr. Sadaka.

Belmonte
$92,667.00
The client paid the firm $35,000.00 and currently has a balance of $66,568.12. Messrs. Sadaka and Brand shared an additional $250,000.00. NeJame Law entered a Notice of Appearance.

Jacqueline Barber
$1,500.00
Client executed a NeJame Law retainer agreement for $3,000.00. Client paid $1,500.00 and then paid the balance of the retainer to Craig Brand. NeJame Law wrote off $1,500.00.

Shea O'Conner
$3,500.00
Mr. Sadaka sent engagement letter as "Thomas Sadaka, Attorney at Law". Mr. Sadaka received the $3,500.00 retainer, however, NeJame Law entered Notice of Appearance.

Nordgren/Sugarman – MKA
$7,500.00
Client executed a NeJame Law retainer agreement. Mr. Sadaka sent wiring instructions for his account and asked for a trust check to be issued to NeJame Law.

Swamp Boys
$900.00
Client is not in ProLaw, however, NeJame Law is of record in the TM office as representing him.

Sworn to and subscribed before me, this 30th day of September 2016

| Notary Public ☐ | Law Enforcement Officer ☐ | Name Key |
|---|---|---|

Personally Known ☑ Produced Identification ☐ Type

I swear/affirm the above and/or attached statements are correct and true.

Signature:

My signature below means that I refuse to prosecute the person(s) named above for the alleged crime(s) that occurred to me or to the property under my control.

Victims' Rights Booklet provided? Yes ☐ No ☐

I will testify in court and prosecute criminally | Initials:

Signature_____ Date_____
(Departmental policy prohibits use of this section in domestic violence cases.)

Miranda Warning Read? Yes ☐ No ☐

Page 1 of 3

OPD P&P 1113.12 A Rev. 8/20/14    White: State Attorney    Yellow: Records

LISA JEAN MYERS
Commission # FF 052594
Expires October 5, 2017

| |
|---|
| Plantation Tire |
| $5,000.00 |
| Client is in ProLaw as pro bono. The client at her 2004 Exam stated she paid $5,000.00 for the bankruptcy. NeJame Law was of record as representing her and was nearly sanctioned by the U.S. Bankruptcy Court. Messrs. Sadaka and Brand were sanctioned $31,500 |
| Eric Ullrich |
| $5,000.00 |
| NeJame Law entered a Notice of Appearance on behalf of Mr. Ullrich. Client was not in ProLaw, Mr. NeJame wrote a demand letter to Mr. Ullrich in the same case we represented him in, as we had no record of him as our client. |
| Lauren Michelle Adan |
| Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Unable to ascertain how much Mr. Sadaka was compensated. |
| Glen Wilson |
| $10,000.00 |
| Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Mr. Sadaka was compensated. |
| Michael Ross |
| Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Unable to ascertain how much Mr. Sadaka was compensated. |
| Alexander Berger |
| Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Unable to ascertain how much Mr. Sadaka was compensated. |
| Katheryn Davidson |
| $3,000.00 |
| Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Mr. Sadaka was compensated. |
| Stephen Servis |
| $3,500.00 |
| Client was referred to NeJame Law. Client is not in ProLaw. NeJame Law entered a Notice of Appearance. Mr. Sadaka was compensated. |
| Adquotient; Algorithmic & Computational Marketing; Schooladvisor.com |
| $2,000.00 |
| Was a client of NeJame Law. Currently stills owes $32,849.00 in fees. NeJame Law is of record in the TM office as representing him. Mr. Sadaka was compensated for the TM's. |
| Papa's Country Kitchen – Hillis |
| Client is not in ProLaw. NeJame Law is of record in the TM office as representing him. Mr. Sadaka was compensated for the TM's. |
| Stephen Richnafsky |
| $5,000.00 |
| Client executed a NeJame Law retainer agreement with a retainer of $10,000. Mr. Sadaka elicited additional funds in the same matter and sent his wiring instructions. Check was written to "Thomas Sadaka Attorney at Law" |
| Allison Lieske |
| $3,500.00 |
| This is the first and only case that Mr. Sadaka sent his own engagement letter with his wiring instructions. Client paid $3,500.00 for which he wanted refunded due to subpar representation |
| Tina Brown |
| $3,500.00 |
| Client was sent engagement letter (no firm indicated) from Mr. Sadaka's personal account. However, Correspondence to opposing counsel is on NeJame Law letterhead. |
| Darlene Howard – 2012 |
| Client Pompano Helicopters is in ProLaw. NeJame Law entered a Notice of Appearance Unable to ascertain how much Mr. Sadaka was compensated. |
| Macaya (Sharon Rivera) |
| $10,000.00 |
| Client was referred to NeJame Law. NeJame Law entered two Notices of Appearance. Files went missing upon Mr. Sadaka's departure. |
| Savas |
| $4,000.00 |
| Client executed NeJame Law retainer agreement. NeJame was paid $1,000.00, Mr. Sadaka was paid $4,000.00. NeJame Law wrote off $4,000.00. |

Sworn to and subscribed before me, this 30th day of September 2016

Notary Public ☐   Law Enforcement Officer ☐   Name Key ☐

Personally Known ☑   Produced Identification ☐   Type

I swear/affirm the above and/or attached statements are correct and true.

Signature:

Page 2 of 3

LISA JEAN MYERS
Commission # FF 052594
Expires October 8, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Yellow: Records

Scott, Demetrius
$3,500.00
Client executed NeJame Law retainer agreement for $3,500.00. Mr. Sadaka received the $3,500.00.

McFadden
$43,560.00
A Co-Counsel Retainer Agreement was executed by the client and was to be executed by Mr. Sadaka on behalf of NeJame Law. A matter was opened in ProLaw as no charge. Mr. Sadaka received $43,560.00. NeJame Law received zero. Notice of Appearance was entered by NeJame Law.

Quinines
$3,500.00
Client executed NeJame Law retainer agreement for $3,500.00. Mr. Sadaka received compensation. Additionally, Mr. Sadaka enter a Notice of Appearance of Co-Counsel for Mr. Craig Brand. I am unable to ascertain if he was given any monies.

Rothenberg
Unknown Amount
Client executed NeJame Law retainer agreement for $2,000.00. Mr. Sadaka had his kitchen redone in exchange for legal services. Total amount of compensation is unknown.

Total Amount: $231,260.00

I, Shannon McMahon, as a representative of NeJame Law, wish to prosecute, Thomas A. Sadaka and will testify against him.

Sworn to and subscribed before me, this 30th day of September 2016

ary Public ☐   Law Enforcement Officer ☐   Name Key ☐

Personally Known ☑   Produced Identification ☐   Type_____

I swear/affirm the above and/or attached statements are correct and true.

Signature:

Page 3 of 3

LISA JEAN MYERS
Commission # FF 052594
Expires October 5, 2017

se Number : 2015-00460183                        ORI # : FL048O400 OPD 8.11
Description : Fraud

Case Details :
========================================================================
Location . . : 189 S ORANGE AV 1800          Reported . . : 11/09/2015  8:21
                                             Occured From : 05/15/2012  8:00
Common/Business . :                          Occured Thru : 11/26/2014  8:00
Grid/Subgrid  . . : 1346      / 1346D     District: D3

Reporting Officer : 4571 - CHAPMAN,DEBRA,M,   Scene Processed by: -
Assigned Bureau . : Econ Crime                Significant Event : No
Spec Circumstance :                           Shots Fired . . . : No
Approving Officer : 4571 - CHAPMAN,DEBRA,M,

Case Status . . . : FW INV REV 11/10/2015   Disposition . . . . :

No. of Offenses . : 1       No. of Offenders : 1       No. of Victims  . : 1


Offenses :
========================================================================
NO.  Group ORI  Statute              Crime Code  Stat Type  Atmpt/Commit  Counts
 1   State      812.014 1              0260A     Criminal    Committed     001
     PETTY/GRAND THEFT                          Offense Date : 05/15/2012

     Status . . . . :                Status Date  . :          Occupancy Code : N/A
     Location Type  : Comm/Bldg      Location Type 2:          Arson Type . . :
     Crim Activity 1: N/A            Crim Activity 2:          Crim Activity 3:
     Gang Releated  :                Domestic . . . : No       Hate Crime . . : No
     Property Damage:                Aband Structure: NO       Sub-Code . . . :
     Entry Method . : NA             Entry Point  . :          Premise Entered:
     Exit Method  . : NA             Exit Point . . :          Tool Used  . . :
     Off Alch Relatd: No             Off Drug Relatd: No       Off Comp Relatd:
     Weapon Code  . : N/A            Weapon Feature :          Adults Present :

Subjects :  (Current Information)
========================================================================
Subject Type    No.  Subject Name           Primary  Phone Number      D.O.B.    Age
Complainant      1   NEJAME,MARK,E,            NO    Work  407-245-1232  01/03/55  60
                     REFUSED

                                                              At Occur :  57

        Race . . . . . : White      Sex  . . . . . : Male     Ethnicity  . . :

        Resident Type  : N/A        Resident Status: N/A      Statement Type : Written
        Injury Type 1  : NA         Injury Type 2  :          Injury Type 3  :
        Extent Injury  : Not Appli  Transported To :

        Related Offenses :
          No.  Group/ORI  Statute                Description
           1   State      812.014 1              PETTY/GRAND THEFT

Informational    1   BRAND,CRAIG,A,            NO    Work  305-878-1477
                     3390 MARY ST 116

Case Number : 2015-00460183                          ORI # : FL0480400 OPD 8.11
Description : Fraud

                    MIAMI, FL  33133                             At Occur :

          Race . . . . . : White        Sex . . . . . : Male      Ethnicity . . :

          Resident Type  : N/A          Resident Status: N/A      Statement Type : None
          Injury Type 1  : NA           Injury Type 2  :          Injury Type 3  :
          Extent Injury  : Not Appli    Transported To :

          Related Offenses :
             No.  Group/ORI  Statute                Description
              1   State      812.014 1              PETTY/GRAND THEFT

          Additional Contact Information :
             Cont Type    Entry Date   Phone #/E-mail
             Email Home   11/10/2015   CRAIG@THEBRANDLAWFIRM.COM

Informational      2  MCMAHON,SHANNON,,              NO
                      ON FILE NEJAME LAW
                                                                 At Occur :

          Race . . . . . : White        Sex . . . . . : Female    Ethnicity . . :

          Resident Type  : N/A          Resident Status: N/A      Statement Type : Verbal
          Injury Type 1  : NA           Injury Type 2  :          Injury Type 3  :
          Extent Injury  : Not Appli    Transported To :

          Related Offenses :
             No.  Group/ORI  Statute                Description
              1   State      812.014 1              PETTY/GRAND THEFT

          School/Business Information :
             Name                  Address            City/State/Zip        Phone #
             NEJAME LAW FIRM,,,     189 S ORANGE AV    ORLANDO, FL 32801

Suspect         1  SADAKA,THOMAS,A,              YES  Work  407-566-2110  ██████   51
                   3520 RIDGE FOREST LN
                   KISSIMMEE, FL 34741                           At Occur :  48

          Race . . . . . : White        Sex . . . . . : Male      Ethnicity . . :
          Height . . . . : 6'02"        Weight . . . . :          Build . . . . :
          Hair . . . . . : Brown        Eyes . . . . . : Brown    Complexion . . :
          Soc Sec # . . : ████████      DL #/State . . : S320-821-64-082    /    FL

          Suspect Type . : Suspect
          Resident Type  : N/A          Resident Status: N/A      Statement Type : None
          Injury Type 1  : NA           Injury Type 2  :          Injury Type 3  :
          Extent Injury  : Not Appli    Transported To :

          Related Offenses :
             No.  Group/ORI  Statute                Description
              1   State      812.014 1              PETTY/GRAND THEFT

Case Number : 2015-00460183                         ORI # : FL0480400 OPD 8.11
Description : Fraud


        Victim            1   NEJAME LAW FIRM              YES   Work
                              189 S ORANGE AV
                              ORLANDO, FL  32801


            Victim Type  . : Business

            Related Offenses :
            No.  Group/ORI  Statute                  Description
             1   State      812.014 1                PETTY/GRAND THEFT

            Victim Offender Relationship :
            No.   Off Type    Name                    Relationship
             1    Suspect     SADAKA,THOMAS,A,         Not Applicable

Arrests :
=================================================================================

Suspect Vehicles :
=================================================================================

Property :
=================================================================================
Itm  Prop Type     Prop Code   Prop Class  Off #  Subj Type    Init Value   Tag #   Rec Date
 1   Stolen        Securities  Money        1     Victim       113,000.00           11/09/2015
     Assc Subject:   1  NEJAME LAW FIRM,,,
     Description : MONEY

     Quantity . . . :   113,000.000  Dollars       Model/Style  . :

     Associated Subjects :
        Entry Date/Time   Name                     Reason      Status    Status Date
        11/10/2015 10:29  NEJAME LAW FIRM,,,        Business

Case Narrative :
=================================================================================
        CASE NARRATIVE 11/10/2015 10:29 AM
        On November 5, 2015 , at 1300 hours, I Sgt Debra Chapman and
        Detective John Tritt met with with Attorney Mark Nejame and Shannon
        McMahon at 189 S. Orange Ave Suite 1800 reference to a Scheme to
        Defraud.

        Attorney Mark Nejame and Shannon McMahon stated that attorney Thomas
        Sadaka became a non equity partner with the Nejame Law firm on
        October 20, 2010 handling primarily civil cases and occasional
        criminal cases. Nejame provided an email regarding the terms that
        Sadaka agreed to work for the law firm. This email was dated August
        31, 2010.

        Attorney Mark Nejame stated that during the time that suspect Sadaka
        worked for the law firm he he systemactically diverted and converted
        funds that were to go to Nejame law to his own accounts.

Nejame provided copies of the Florida Bar Complaints, the employment
email and copies of the responses from attorney Sadaka and Brand.


*********************************************************************

```
| I Swear or affirm the above statements |Officer Name/ID# (Print)  |
| are correct and true.                  |                          |
| (Signature)_____ |                          |
|_____|_____|
|Sworn to and subscribed before me, the undersigned Authority,      |
|                                                                   |
|This_____day of _____,20____.  _____ |
|Notary Public |_|  Law Enforcement Officer |_|  Emp# ____ Orlando PD|
|_____|
```

Date/Time Reported: 11/09/15  8:21 Hrs.
Location Occurred : 189 S ORANGE AV 1800
Reporting Officer :     4571  CHAPMAN,DEBRA,M,
Primary Unit Assigned to Investigate: Econ Crime
Assigned Investigators:
              11103    TRITT,JOHN,,

---------------------------------------------------------------------------

EVIDENCE COLLECTED INFORMATION

The following Evidence Information was added to this case.
       Videotape

Narrative Name: NARRATIVE SUPPLEMENT 3/1/2016 6:26 AM
    On 11/10/15, I, Detective Tritt, was assigned this case for further
    investigation.

    Sgt. Chapman (4571) and I met with the Mark Nejame and Shannon
    McMahon to discuss this case in further detail.  McMahon provided me
    with a case file which included copies of correspondence regarding
    Thomas Sadaka, court documents, and documents reference Nejames
    complainant against Sadaka to The Florida Bar.

    On 11/10/15, I subpoenaed PNC Bank (account #▮▮▮▮▮▮▮▮ , USAA Bank
    (account #▮▮▮▮▮▮▮▮▮ , SunTrust Bank (account ▮▮▮▮▮▮▮▮▮▮ and
    TD Bank (account #▮▮▮▮▮▮▮▮ for certified copies of statements
    from January 1, 2012 through December 31, 2014 to include all
    credits, deposits, offsets, wire transfers, and withdrawals.

    I was unable to determine the financial institution to subpoena for
    records pertaining to the Brandon Law Firm in which three ACH
    transfers were transferred to Sadaka Law Firms PNC account from Craig
    A Brand in the amounts as follows:  11/05/15, $8,240; 11/13/15,
    $1,490; and 11/26/15, $747.  I had contacted PNC Bank for assistance
    with identifying this account; however, that was met with negative
    results.

    On 12/21/15, I received records on CDs from PNC and USAA and
    forwarded to McMahon for review.  I placed the original CD`s
    containing the records into evidence under HE6885A.

    On 12/28/15, I received records on CDs from TD Bank and forwarded to
    McMahon for review.  I placed the original CD containing the records
    into evidence under HE7068A.

    On 01/08/16, McMahon provided Sgt. Chapman with a completed case
    binder reference the Bar Complaint (#2016-30,093 (7B)) against Thomas
    Sadaka.

On 01/14/16, I received records on CDs from SunTrust Bank and
forwarded to McMahon for review.  I placed the original CD containing
the records into evidence under HE7593A.

As of 02/11/16, I am waiting on McMahons review of the subpoenaed
bank records to compare to their files and to produce a third party
financial audit.

Sgt. Chapman has subsequently advised that the FBI has expressed
interest in this case and may request that this investigation be
turned over to their agency.

This case is an on-going investigation.


Narrative Name: Property Receipt


*********************************************************************

```
 _____
|I Swear or affirm the above statements |Officer Name/ID# (Print)   |
|are correct and true.                  |                           |
| (Signature)_____|                           |
|_____|_____|
|Sworn to and subscribed before me, the undersigned Authority,      |
|                                                                   |
|This_____Day of _____,20____.  _____|
|Notary Public |_|  Law Enforcement Officer |_|  Emp# ____ Orlando PD|
|_____|
```


END OF SUPPLEMENT NUMBER   1

Date/Time Reported: 11/09/15  8:21 Hrs.
Location Occurred : 189 S ORANGE AV 1800
Reporting Officer :     4571  CHAPMAN,DEBRA,M,
Primary Unit Assigned to Investigate: Econ Crime
Assigned Investigators:
              11103     TRITT,JOHN,,


Narrative Name: NARRATIVE SUPPLEMENT 6/14/2016 8:02 AM
    On 05/05/16, I conducted a meeting with the FBI and Shannon McMahon
    to brief the FBI on the case.  The FBI advised they would take the
    case Federal.

    On 05/10/16, I received a call from the Florida Bar reference setting
    up a meeting on June 21, 2016 at 11 AM at 1000 Legion Place suite
    1625 with the FBI and Nejames office staff to discuss this case.
    Florida Bar attorney, Carrie Lee 407-515-3224, had taken a deposition
    with Sadaka as part of the Florida Bar complaint.  She will discuss
    releasing the transcript of the deposition at the meeting on June 21.


    Preservation letters and search warrants were prepared to obtain
    email content from several of Sadakas emails he used to commit the
    scheme to defraud.  An attempt to get the search warrants signed by a
    judge was initially met with negative results due to not having any
    exemplars showing a connection between the fraud and the specific
    email addresses.  McMahon will provide these exemplars on June 13,
    2016.

    This case is an ongoing investigation.



Narrative Name: Property Receipt


    ******************************************************************

    _____
    |I Swear or affirm the above statements |Officer Name/ID# (Print)  |
    |are correct and true.                  |                          |
    |(Signature)_____ |                          |
    |_____|_____|
    |Sworn to and subscribed before me, the undersigned Authority,     |
    |                                                                  |
    |This_____Day of _____,20____.  _____|
    |Notary Public |_|  Law Enforcement Officer |_| Emp# ____ Orlando PD|
    |_____|


END OF SUPPLEMENT NUMBER   2



# Orlando Police Department
## Field Report – Narrative Supplement



100 S Hughey Ave  Orlando, FL  32802  (407)246-2470

**Case Number: 2015-00460183**
Reporting Officer: 11103  TRITT, JOHN
Approving Officer:

**NARRATIVE SUPPLEMENT**

On November 5, 2015, at 1300 hours, Sergeant Debra Chapman (4571) and I met with with Attorney Mark NeJame and his Office Manager/HR Director/Paralegal, Shannon McMahon, at 189 S. Orange Ave Suite 1800 reference to a Scheme to Defraud.  Attorney Mark NeJame and Shannon McMahon stated that attorney Thomas Sadaka became a non equity partner with the NeJame Law firm on October 20, 2010 handling primarily civil cases and occasional criminal cases.  NeJame provided an email regarding the terms that Sadaka agreed to work for the law firm. This email was dated August 31, 2010.  Attorney Mark NeJame stated that during the time suspect Sadaka worked for the law firm he systematically diverted and converted funds that were to go to NeJame law to his own accounts.

On 11/10/15, I, Detective Tritt, was assigned this case for further investigation.  Sergeant Chapman (4571) and I met with the Mark NeJame and Shannon McMahon to discuss this case in further detail. McMahon provided me with a case file which included copies of correspondence regarding Thomas Sadaka, court documents, and documents reference NeJame's complainant against Sadaka to The Florida Bar.

On 11/10/15, I subpoenaed PNC Bank (account #⬛⬛⬛⬛⬛), USAA Bank (account #⬛⬛⬛⬛⬛), SunTrust Bank (account #⬛⬛⬛⬛⬛), and TD Bank (account #⬛⬛⬛⬛⬛ for certified copies of statements from January 1, 2012 through December 31, 2014 to include all credits, deposits, offsets, wire transfers, and withdrawals.

On 12/21/15, I received records on CDs from PNC and USAA and forwarded to McMahon for review. I placed the original CD`s containing the records into evidence under HE6885A.

On 12/28/15, I received records on CDs from TD Bank and forwarded to McMahon for review. I placed the original CD containing the records into evidence under HE7068A.

On 01/08/16, McMahon provided Sgt. Chapman with a completed case binder reference the Bar Complaint (#2016-30,093 (7B)) against Thomas Sadaka.

On 01/14/16, I received records on CDs from SunTrust Bank and forwarded to McMahon for review. I placed the original CD containing the records into evidence under HE7593A.

On 05/05/16, another meeting was held with McMahon, NeJame, and FBI SA Debra Weyrauch.  After a thorough review of the above bank records, McMahon was able to provide supporting documentation from the firm to show evidence that Mr. Sadaka did in fact divert funds on 34 occasions to his personal bank accounts which were intended for the business, NeJame Law, for a total loss amount of $231,260.  McMahon provided a binder detailing the 34 occasions along with 3 cases involving refunds and a case involving the GMW lawsuit.  NeJame Law will prosecute.

| I swear or affirm the above statements are correct and true. | Officer Name/ID # (Print) |
|---|---|
| Signature_____ | |
| Sworn to and subscribed before me, the undersigned authority,<br>This _____ day of _____, _____. _____ | |
| Notary Public ☐   Law Enforcement Officer ☐   Emp # _____   Orlando Police Department | |

Disclaimer:  This temporary field report should not be considered the final official police report on the incident described within.  This report is to be used only for proceedings requiring a report prior to the final report being completed.  Any information contained within is subject to verification and/or change.
Last Modified Date/Time  09/28/2016 15:59



# Orlando Police Department
## Field Report – Narrative Supplement



McMahon provided a written, notarized statement as to the above.

On 06/23/16, I received certified records from Apple reference Sadaka's email account: tsadaka@me.com. These records contained thousands of business emails related to the NeJame Law Firm from January 1, 2011 to December 31, 2014. These records were submitted into OPD Property and Evidence under Item #1.

Mr. NeJame provided a Florida Bar Compliant against Mr. Sadaka stating the following: Mr. Sadaka began at NeJame Law on October 20, 2010 handling primarily civil cases and the occasional criminal case. On November 11, 2014, NeJame was contacted by Attorney, Tucker H. Byrd, informing that Mr. Sadaka had sent out an invoice, to "GMW", a former client of NeJame Law, that bore the name of "Thomas A. Sadaka, Attorney at Law" in the amount of $19,215.00. "PT" was the previous president of "GMW". Mr. Byrd informed that "PT" was dismissed for suspicious activity, which caused counsel to review various documents, transactions and relationships that "PT" held while employed by "GMW". Mr. Byrd informed his "GMW" clients that he personally knew NeJame and that he would be forthright with any inquiries. He agreed to meet with Mr. Byrd and his client from "GMW". He was provided with the aforementioned invoice, which was clearly fraudulent and did not emanate from NeJame Law. Apparently, NeJame Law received an initial $5,000.00 retainer from "GMW", which is properly reflected in their accounting system. Mr. Sadaka apparently took some the time records he was keeping and transferred them to his personal billing. Further, in a meeting on December 8, 2014 to discuss the billing issue, Mr. Byrd provided NeJame with documents evidencing numerous wire transfers, from "GMW", that were sent directly the Sadaka Law Group account totaling $13,500.00. The invoice reflects secret and unknown payments made to Mr. Sadaka directly to his account. None of the payments, other than the initial $5,000.00 retainer were ever received by or known to NeJame Law. In a final act bravado Mr. Sadaka requested that that $2,053.60, which was reflected as a balance due in NeJame Law's books, be written off, lying to the firm about the reasons for the waiver. Additionally, Sadaka created an invoice which was presented to the client that clearly sought to hide his conduct. NeJame Law also confirmed, and was admitted to by Mr. Sadaka, that he worked out a scam with the former president of "GMW" where he received a motorcycle worth $19,000.00, two $3,000.00 payments that went to his Sadaka Law Group account and fabricated the bogus billing NeJame Law received from Mr. Byrd. It should be noted that Mr. Sadaka was provided a salary, a percentage of all cases he handled and benefits from the onset of his employment until his termination.

Ironically, on November 21, 2014, a client came in with a check, made payable to Sadaka Law Group, to pay for additional fees of $2,500.00, wherein NeJame Law billing showed it to have a zero balance. Mr. Sadaka was not in the office when the client came in. When confronted with this Mr. Sadaka stated "[he] would take care of it" trying to leave the impression that it was simply a mistake. This was brought to NeJame's attention and he advised his accounting division to give him the check as NeJame wanted to see what he would do with it. Mr. Sadaka never submitted it back to accounting. It was discovered and determined that Mr. Sadaka pocketed the money and lied about it when NeJame later confronted him. Moreover, he stated that the money was for expenses on the client's case which he was handling. Being suspicious, NeJame asked him if he was putting trust money into his personal

| I swear or affirm the above statements are correct and true. | Officer Name/ID # (Print) |
|---|---|
| Signature_____ | |
| Sworn to and subscribed before me, the undersigned authority, | |
| This _____ day of _____, _____ | |
| Notary Public ☐    Law Enforcement Officer ☐    Emp # _____    Orlando Police Department | |

Disclaimer: This temporary field report should not be considered the final official police report on the incident described within. This report is to be used only for proceedings requiring a report prior to the final report being completed. Any information contained within is subject to verification and/or change.
Last Modified Date/Time  09/28/2016 15:59



# Orlando Police Department
## Field Report – Narrative Supplement



*100 S Hughey Ave  Orlando, FL  32802  (407)246-2470*

**NARRATIVE SUPPLEMENT - CONTINUED**

Case Number: **2015-00460183**
Reporting Officer: 11103  TRITT, JOHN
Approving Officer:

account as that it intended to be cost money. He then became nervous and attempted to retract and qualify his previous statement.

NeJame set up a surprise meeting with Mr. Sadaka, his accounting department and another one of his partners, Stephen J. Calvacca, to discuss this suspicious activity. They presented him with what they had found. At first, Mr. Sadaka's position was to deny everything. However, after further pressing and presenting the limited documentation we acquired to that point, he finally admitted that the evidence presented was correct. At that time, NeJame demanded his bank statements and asked if they would find any additional proof that he committed any additional theft, fraud or conversion. He was adamant that he had not. He only confessed to these two incidents. He swore that these were the only two and he was ashamed of himself. He later acknowledged it was more, but has routinely denied the full extent of his criminality. It was a couple of weeks later, after threat of a lawsuit, that NeJame finally relented and provided his bank statements. The Sadaka Law Group account had been a surprise to NeJame, as he advised him years ago he closed such after he joined NeJame Law.

Accordingly, NeJame directed an investigation into his bank statements and NeJame Law emails. Fortunately, when he had initial suspicions about him, he had one of their IT employees download years' worth of emails, sent and received, on his NeJame Law computer. NeJame later discovered that Sadaka was remotely wiping his emails that coincided with some of the transgressions that came to be discovered. To date, NeJame Law had found $140,367.00 in fees that were redirected to the Sadaka Law Group account that should have gone to NeJame Law. It also does not include lost revenue from NeJame Law by Mr. Sadaka's working on his own scams instead of the work for NeJame Law he was paid to do.

One such case is especially egregious. Mr. Sadaka, purportedly on behalf of the firm, represented "AB" for an involuntary Chapter 7 in the Eastern District of New York Bankruptcy Court. Mr. Sadaka, along with his partner in deception, attorney Craig Brand, concocted a ruse in which NeJame Law was only paid $35,000.00 in fees and $5,000.00 for trust. The investigation revealed that The Brand Law Firm, who contacted and referred the case to Mr. Sadaka, wired directly to the Sadaka Law Group account $81,920.00 of monies that should have been applied to the $66,568.12 balance reflected on NeJame Law's books. They further discovered that the client's husband paid $250,000.00 to retain the Brand Law firm and NeJame Law for which he was left displeased with the services provided. But for the $35,000.00 referenced above no further payment was made to NeJame Law, even though Mr. Sadaka was working on the case and traveled to New York on different occasions. It is important to note when NeJame regularly questioned Sadaka about when they were receiving more funds for this case, he continuously concocted excuses why no more money was forthcoming, in furtherance in his scheme to defraud. Also, they learned that Mr. Brand and Mr. Sadaka created a fabricated story about Mr. Sadaka received $25,000.00 from Mr. Brand for designing a kitchen in a feeble attempt to outwardly justify payments made to Mr. Sadaka. Of course, when NeJame questioned Mr. Sadaka about this he had no legitimate proof whatsoever.

| I swear or affirm the above statements are correct and true. Signature_____ | Officer Name/ID # (Print) |
|---|---|
| Sworn to and subscribed before me, the undersigned authority, This _____ day of _____, _____.  Notary Public ☐   Law Enforcement Officer ☐   Emp # _____   Orlando Police Department | |

Disclaimer: This temporary field report should not be considered the final official police report on the incident described within. This report is to be used only for proceedings requiring a report prior to the final report being completed. Any information contained within is subject to verification and/or change.
Last Modified Date/Time  09/28/2016 15:59



# *Orlando Police Department*
## Field Report – Narrative Supplement



*100 S Hughey Ave  Orlando, FL  32802  (407)246-2470*

**NARRATIVE SUPPLEMENT - CONTINUED**

**Case Number:** **2015-00460183**
**Reporting Officer:** 11103  TRITT, JOHN
**Approving Officer:**

Through further investigation it was found that one of NeJame's clients "JB" executed an engagement letter for $3,000.00 and paid NeJame Law $1,500.00 with the remaining balance due on or before November 28, 2014. On November 5, 2013, the client's husband wired $1,545.00 into The Brand Law Firm Account. This was apparently an additional Brand-Sadaka scheme.  NeJame Law wrote off $1,500.00, again because of another fabricated story by Mr. Sadaka.

Additionally, in another matter Mr. Sadaka signed up "SO" for $3,500.00 wherein NeJame Law entered an appearance, however, the firm was not paid, and the engagement letter indicates "the firm" instead of NeJame Law. It was discovered that Mr. Sadaka was paid in cash, which he pocketed.

In yet another matter, Mr. Sadaka, diverted funds from a NeJame Law client, "JS/MN" where they executed a NeJame Law engagement letter and then Mr. Sadaka directed them to wire funds directly to his Sadaka Law Group account and then issue a separate check to NeJame Law trust. He further misrepresented to the firm that the file would be handled under another matter so not to raise suspicions. Furthermore, in another matter connected to these clients, he sent his wiring instructions to a client, however, the client called in his payment using his credit card.

Around mid-April of this year, NeJame received a Notice of Abandonment from the U.S. Trademark Office regarding a case where Mr. Sadaka failed to follow through with the trademark process.  Additionally, this client "SB" was not entered into their system as Mr. Sadaka apparently bartered for services rendered and failed to report this.

Furthermore, on May 15, 2015, NeJame was informed of a case in U.S. Bankruptcy Court, Southern District of Florida, where Mr. Sadaka misrepresented to NeJame Law that the case was pro bono, when in fact, he was sharing $5,000 in fees with the referring lawyer, once again being attorney Craig Brand. Moreover, it is anticipated that the U.S. Trustee in the stated bankruptcy case will be bringing sanctions against Mr. Sadaka for an inadequate list of unsecured and secured creditors and improper use of electronic signature for which the client did not authorize. Additionally, the client was led to believe she would be filing a chapter 11 so she could still operate her business; however, Mr. Sadaka filed a chapter 7 causing her to lose her business. NeJame further discovered that Mr. Sadaka kept this matter off our books even putting the filing fees on his personal credit card.

In addition, a conflict was created by Mr. Sadaka's diverting/embezzling funds.  One of our partners made an appearance to help out Mr. Sadaka in a case he was handling.  In this case, NeJame Law represented "EU"; however, it was not in their system as Mr. Sadaka was paid directly and no matter was opened in our files or accounting system due to his secreting information. Ironically, a few months later, NeJame was contacted by "MM" (the alleged victim/Petitioner in the referenced matter). NeJame drafted a demand letter to "EU", our former client, involving the same dispute on behalf of "MM". As there was nothing in their records showing a conflict, NeJame found out they were representing both the purported victim and the purported perpetrator in the same matter.  Of course,

| I swear or affirm the above statements are correct and true. Signature_____ | Officer Name/ID # (Print) |
| --- | --- |
| Sworn to and subscribed before me, the undersigned authority, This _____ day of _____, _____ Notary Public ☐   Law Enforcement Officer ☐   Emp # _____   Orlando Police Department | |

Disclaimer:  This temporary field report should not be considered the final official police report on the incident described within.  This report is to be used only for proceedings requiring a report prior to the final report being completed.  Any information contained within is subject to verification and/or change.
**Last Modified Date/Time** 09/28/2016 15:59




# Orlando Police Department
## Field Report – Narrative Supplement

when this was discovered NeJame immediately withdrew from any further representation. However, as a result of Mr. Sadaka's theft and trying to keep things off of the books no proper conflict check could have been done.

At this time and after carefully reviewing the facts, it is clear that the actions of Mr. Sadaka were not mistakes but, in fact, constituted outright theft, embezzlement and diversion of funds.

On 09/27/16, I received The Florida Bar File #2016-30,093 (7B), The Florida Bar v. Thomas Anthony Sadaka to include the Complaint, transcripts of Sadaka's deposition, documents pertaining to The Florida Bar Counsel (Carrie Constance Lee) investigation, and a copy of the Notice of Assignment of Investigating Member and/or Panel which was forwarded to Mr. Christopher Scott Ferebee, Chair for further investigation and disposition. The findings of possible rule violations were as follows: Rule 3-4.3, Misconduct and Minor Misconduct, Rule 4-1.5, Fees and Costs for Legal Services, and Rule 4-8.4, Misconduct.

Due to the findings by NeJame's Office, The Florid Bar, and subpoenaed records, probable cause was established to charge Thomas Anthony Sadaka with Grand Theft and Scheme to Defraud. Charges have been filed at large with the State Attorney's Office.

This case is Inactive Pending Arrest.

I swear or affirm the above statements are correct and true.
Signature

Officer Name/ID # (Print)  *TRLII  1110?*

Sworn to and subscribed before me, the undersigned authority.
This _28_ day of _SEPT_ _2016_

Notary Public ☐    Law Enforcement Officer ☒    Emp # *2884*    Orlando Police Department

Disclaimer: This temporary field report should not be considered the final official police report on the incident described within. This report is to be used only for proceedings requiring a report prior to the final report being completed. Any information contained within is subject to verification and/or change
Last Modified Date/Time  09/28/2016 15:59

Narrative Supplement  - Page 5 OF 5

In the Circuit Court of the
Ninth Judicial Circuit, in and
for Orange County, Florida

Division: Div 14

Case No: 2017-CF-006983-A-O

State of Florida,
        Plaintiff,

vs.

THOMAS ANTHONY SADAKA
        Defendant.

Date of birth: 

## JUDGMENT

The defendant, THOMAS ANTHONY SADAKA, being personally before this Court, represented by ,
and the state represented by The State of Florida:

| 2. GRAND THEFT 2ND DEGREE (20,000 OR MORE) | 812.014(2)(B) | Second Degree - Felony | | 1 - Adjudication Withheld |
|---|---|---|---|---|

Filed in Open Court on October 2, 2018

Deputy Clerk in Attendance: Pam B., Mary M
Office of Tiffany M. Russell, Orange County Clerk of the Circuit and County Courts

State of Florida

v.

Defendant: Thomas A. Sadaka

Case Number: 17CIF 6983

## **FINGERPRINTS OF DEFENDANT**

| 1. Right Thumb | 2. Right Index | 3. Right Middle | 4. Right Ring | 5. Right Little |
|---|---|---|---|---|
| | | | | |
| 1. Left Thumb | 2. Left Index | 3. Left Middle | 4. Left Ring | 5. Left Little |
| | | | | |

Fingerprints taken by: _____ 050/001/050
                                            Name                                    Title

The ___ I HEREBY CERTIFY that the above and foregoing are the fingerprints of
Thomas Anthony Sadaka and that they were placed thereon by
the defendant in my presence in open court this date.

DONE AND ORDERED in open court in **ORANGE** County, Florida, this ___ day of
Sept. , 20 18

_____
Judge

\* Adjudication @
the time of
sentencing

In the Circuit Court of the
Ninth Judicial Circuit, in and
For Orange County, Florida

State of Florida                                          Case number: 2017-CF-006983-A-O
                                                          Division: Div 14
vs.

THOMAS ANTHONY SADAKA

D.O.B.: ▮▮▮▮▮

## ORDER OF PROBATION

This cause coming on this day for: **Sentencing** with Asst State Attorney: **JONAH FARR** present and you,
the Defendant, **THOMAS ANTHONY SADAKA** being Present    (Counsel Present) **PRO SE**, you have:

**1. SCHEME TO DEFRAUD OF $50,000 OR MORE - 817.034(4)(A)(1) -  First Degree - Felony -**

   **Nolle Prosequi (NC)**

**2. GRAND THEFT 2ND DEGREE (20,000 OR MORE) - 812.014(2)(B) -  Second Degree - Felony -**

   **1 - Adjudication Withheld**

**CONFINEMENT:**
**You are hereby ordered to serve a term of 1 Days in the Orange County Jail with credit for 1 Days
time served.**

**X JAIL SENTENCE IS A CONDITION OF PROBATION**


**PROBATION:**
 **Now, therefore, it is ordered and adjudged that you be placed on Supervised Probation for a
period of 10 Years under the Florida Department of Corrections.**

**X Report to Probation: BY 4PM TODAY (10/2/18)**

X Probation may be terminated early upon approval from the Court.   **NO OBJECTION TO EARLY
TERMINATION OF PROBATION AFTER 1/2, SO LONG AS ALL CONDITIONS, RESTITUTION
SATISFIED WITH NO NEW LAW VIOLATIONS.**

**X NO PRACTICING LAW UNLESS FLORIDA BAR REINSTATES.**

**X PROVIDE PROOF OF RESTITUTION PAID IN FULL TO PROBATION OFFICER TO BEGIN MAKING
PAYMENTS TOWARDS COURT COSTS.**


**ALTERNATIVE COMMUNITY SERVICE:** Defendant to perform 100 hours.  **BEGIN 60 DAYS - 8
HOURS PER MONTH-TO BE COMPLETED 30 DAYS OF PROBATION ENDING.**

RESTITUTION:     Defendant Ordered to Pay $21,060.00 to: NeJame Law.     .
TO BE PAID DIRECTLY TO NEJAME LAW at the rate of $500.00 per month begin 30 days

| | |
|---|---|
| Court Minutes | *Fingerprints previously taken (FP)* |
| State Orally Announced a Nolle | as to Count: 1 |
| Prosequi in Open Court | |
| Conditions of Probation | Fines & Costs to be Paid through Probation as a Condition |
| | of the Defendant's Probation. |

State Witness Sworn and Testified    Shannon McMahon
                                     Mark NeJame

**FINES AND COSTS AS TO THIS CASE:**

Pay fine / costs totaling: $22,978.00

**IT IS FURTHER ORDERED** that you shall comply with the following standard conditions of supervision as provided by Florida law:

(1) You will report to the probation officer as directed.

(2) You will pay the State of Florida the amount of $20.00 per month, as well as 4% surcharge, toward the cost of your supervision in accordance with s. 948.09, F.S., unless otherwise exempted in compliance with Florida Statutes.

(3) You will remain in a specified place. You will not change your residence or employment or leave the county of your residence without first procuring the consent of your officer.

(4) You will not possess, carry or own any firearm. You will not possess, carry, or own any weapon without first procuring the consent of your officer.

(5) You will live without violating any law. A conviction in a court of law is not necessary for such a violation of law to constitute a violation of your probation, community control, or any other form of court ordered supervision.

(6) You will not associate with any person engaged in any criminal activity.

(7) You will not use intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician. Nor will you visit places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used.

(8) You will work diligently at a lawful occupation, advise your employer of your probation status, and support any dependents to the best of your ability, as directed by your officer.

(9) You will promptly and truthfully answer all inquiries directed to you by the court or the officer, and allow your officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions your officer may give you.

(10) You will pay restitution, court costs, and/or fees in accordance with special conditions imposed or in accordance with the attached orders.

(11) You will submit to random testing as directed by your officer or the professional staff of the treatment center where you are receiving treatment to determine the presence or use of alcohol or controlled substances.

(12) You will submit a DNA sample, as directed by your officer, for DNA analysis as prescribed in ss. 943.325 and 948.014, F.S.

(13) You will submit to the taking of a digitized photograph by the department. This photograph may be displayed on the department's website while you are on supervision, unless exempt from disclosure due to requirements of s. 119.07, F.S.

(14) You will report in person within 72 hours of your release from incarceration to the probation office in Orange County, Florida, unless otherwise instructed by the court or department. (This condition applies

only if section 3 on the previous page is checked.) Otherwise, you must report immediately to the probation office located at.

## Special Conditions

___ 1. You must undergo a Drug and Alcohol evaluation and, if treatment is deemed necessary, you must successfully complete the treatment, and be responsible for the payment of any costs incurred while receiving said evaluation and treatment, unless waived by the court.

___ 2. You will be required to pay for drug testing unless exempt by the court.

___ 3. You will enter the Department of Corrections Non-Secure Drug Treatment Program or other residential treatment program/Probation Restitution Center for a period of successful completion as approved by your officer. You are to remain until you successfully complete said Program and Aftercare. You are to comply with all rules and regulations of the Program. You shall be confined in the county jail until placement in said program, and if you are confined in the jail, the Sheriff will transport you to said program.

___ 4. You will abstain entirely from the use of alcohol and/or illegal drugs, and you will not associate with anyone who is illegally using drugs or consuming alcohol.

___ 5. You will submit to urinalysis testing on a monthly basis to determine the presence of alcohol or illegal drugs. You will be required to pay for the test unless exempt by the court.

___ 6. You will not visit any establishment where the primary business is the sale and dispensing of alcoholic beverages.

___ 7. You will remain at your residence between 10 p.m. and 6 a.m. due to a curfew imposed, unless otherwise directed by the court.

___ 8. You will submit electronic monitoring, follow the rules of electronic monitoring, and pay for the cost of the electronic monitoring service.

___ 9.You will not associate with the following person(s) during the period of supervision:

___ 10. You will have no contact (direct or indirect) with the victim or the victim's family during the period of supervision.

___ 11. You will have not contact (direct or indirect) the following person(s) during the period of supervision:

\_\_\_ 12. You will maintain full time employment or attend school/vocational school full time or a combination of school/work during the term of your supervision.

\_\_\_ 13. You will make a good faith effort toward completing basic or functional literacy skills or a high school equivalency diploma.

\_\_\_ 14. You will successfully complete the Probation & Restitution Program, abiding by all rules and regulations.

\_\_\_ 15. You will attend a support group with a focus on the below, at least monthly, unless otherwise directed by the court.

\_\_\_ 16. You must successfully complete Anger Management and be responsible for the payment of any costs incurred while receiving treatment, unless waived. If convicted of a Domestic Violence offense, as defined in s. 741.25, F.S., you must attend and successfully complete a batterer's intervention program, unless otherwise directed by the court.

\_\_\_ 17. You must successfully complete Batterer's Intervention Program and be responsible for the payment of any costs incurred while receiving treatment unless waived. If convicted of a Domestic Violence offense, as defined in s. 741.25, F.S., you must attend and successfully complete a batterer's intervention program, unless otherwise directed by the court.

\_\_\_ 18. You will attend an HIV/AIDS Awareness Program consisting of a class of not less than two (2) hours or more than four (4) hours in length, the costs for which will be paid by you.

\_\_\_ 19. If you have been found to have committed a crime on or after October 1, 2008 for the purpose of benefitting, promoting, or furthering the interests of a criminal gang, you are prohibited from knowingly associating with other criminal gang members or associates, except as authorized by law enforcement officials, prosecutorial authorities, or the court, for the purpose of aiding in the investigation of criminal activity.

\_\_\_ 20. You will successfully complete a Post-adjudicatory treatment-based drug court program, as provided in s.397.334 (3), F.S.

\_\_\_ 21. If you are required to register as a sexual predator under s. 775.21 or sexual offender under s. 943.0435, s. 944.606, or s. 944.607, F.S., you will undergo an evaluation, at your expense, by a qualified practitioner to determine whether you need sexual offender treatment. If the qualified practitioner determines that sexual offender treatment is needed and recommended, you must successfully complete and pay for the treatment as provided in s. 948.31, F.S.

22. Pay $1 a Month to First Step, Inc, pursuant to s. 948.039(2), F.S.

___ 23. If you are a veteran, as defined in s. 1.01, F.S. or service member, as defined in s. 250.01, F.S., you will participate in a treatment program capable of treating mental illness, traumatic brain injury, substance abuse disorder, or psychological problems.

___ 24. You will successfully complete a post-adjudicatory mental health court program under s. 394.47892, F.S.

___ 25. You will successfully complete a post-adjudicatory military veterans and service members court program under s. 394.47891, F.S.

___ 26. Other:

### Additional Conditions

___ Defendant not to have any Hostile Contact with Victim or Victim's Family.

___ Do not possess or consume illegal drugs or alcohol

___ Do not drive without valid Driver's License

___ Do not own or possess any firearms or weapons

___ Complete Impulse Control Class

___ Complete DUI Counter Attack School

___ Do not be in the vicinity of alcohol

___ Write a letter of apology

\_\_\_ No Contact with children under 18 years of age

\_\_\_ No return to scene of offense

\_\_\_ Submit to random urinalysis

\_\_\_ Complete the Victim Awareness Program

\_\_\_ Forfeit weapon seized in this case

\_\_\_ You may travel out of county while on probation

\_\_\_ Defendant must actively seek gainful employment or be enrolled in school full-time.

\_\_\_ Defendant must take HIV/STD test.

\_\_\_ The defendant is to complete the Phoenix House In-House treatment program.

\_\_\_ Defendant not to return to the prostitution mapping zone.

\_\_\_ Defendant to have no contact with co-defendant(s)

\_\_\_ Complete community service at non-profit community service.

**X** Probation supervision may terminate early upon approval from the Court.

As to Count 2          NO OBJECTION TO EARLY TERMINATION OF PROBATION AFTER 1/2, SO LONG AS ALL CONDITIONS, RESTITUTION SATISFIED WITH NO NEW LAW VIOLATIONS.

**Effective for offenders whose crime was committed on or after September 1, 2005,** there is hereby imposed, in additional to any other provision in this section, mandatory electronic monitoring as a condition of supervision for those who:

- Are placed on supervision for a violation of chapter 794, s. 800.04(4), (5), or (6), s. 827.071, or s. 847.0145 and the unlawful sexual activity involved a victim 15 years of age or younger and the offender is 18 years of age or older; or
- Are designated as a sexual predator pursuant to s. 775.21; or
- Has previously been convicted of a violation of chapter 794, s. 800.04(4), (5), or (6), s. 827.071, or s. 847.0145 and the unlawful sexual activity involved a victim 15 years of age or younger and the offender is 18 years of age or older.

**You are hereby placed on notice that should you violate your probation or community control, and the conditions set forth in s. 948.063(1) or (2) are satisfied,** whether your probation or community control is revoked or not revoked, you shall be placed on electronic monitoring in accordance with F.S. 948.063.

**Effective for offenders who are subject to supervision for a crime that was committed on or after May 26, 2010,** and who has been convicted at any time of committing, or attempting, soliciting, or conspiring to commit, any of the criminal offenses listed in s. 943.0435(1)(a)1.a.(I), or a similar offense in another jurisdiction, against a victim who was under the age of 18 at the time of the offense; the following conditions are imposed in addition to all other conditions:

- (a) A prohibition on visiting schools, child care facilities, parks, and playgrounds, without prior approval from the offender's supervising officer. The court may also designate additional location to protect a victim. The prohibition for the sole purpose of attending a religious service as defined in s. 775.0861 or picking up or dropping off the offender's children, grandchildren at a child care facility or school.
- (b) A prohibition on distributing candy or other items to children on Halloween; wearing a Santa Claus costume, or other costume to appeal to children, on or preceding Christmas; wearing a Easter Bunny costume, or other costume to appeal to children, on or preceding Easter; entertaining at children's parties; or wearing a clown costume; without prior approval from the court.

**Effective for offenders whose crime was committed on or after October 1, 2014,** and who is placed on probation or community control for a violation chapter 794, s. 800.04, s. 827.071, s. 847.0135(5), or s. 847.0145, in addition to all other conditions imposed, is prohibited from viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material unless otherwise indicated in the treatment plan provided by a qualified practitioner in the sexual offender treatment program. Visual or auditory material includes, but is not limited to, telephone, electronic media, computers programs, and computer services.

**YOU ARE HEREBY PLACED ON NOTICE** that the court may at any time rescind or modify any of the conditions of your probation, or may extend the period of probation as authorized by law, or may discharge you from further supervision. If you violate any of the conditions of your probation, you may be arrested and the court may revoke your probation, adjudicate you guilty if adjudication of guilt was withheld, and impose any sentence that it might have imposed before placing you on probation or require you to serve the balance of the sentence.

**IT IS FURTHER ORDERED** that when you have been instructed as to the conditions of probation, you shall be released from custody if you are in custody, and if you are at liberty on bond, the sureties thereon shall stand discharged from liability. (This paragraph applies only if section 1 or section 2 is checked.)

**IT IS FURTHER ORDERED** that the clerk of this court file this order in the clerk's office and provide certified copies of same to the officer for use in compliance with the requirements of law.

DONE, ORDERED and FILED in Open Court on October 2, 2018

Honorable Judge: _____

Leticia Marques

Deputy Clerk in Attendance: Pam B., Mary M
Office of Tiffany M. Russell, Orange County Clerk of the Circuit and County Courts

I acknowledge receipt of a copy of this order and that the conditions have been explained to me and I agree to abide by them.

Defendant Instructed by: _____

Supervising Officer

__X__ Defendant     ____ ACS     ___X_ State Atty     ____ Defense Atty
____ Dockets     ____ C.F.S.C.     __X__ Prob Email

**PAYMENT LOCATIONS (Monday – Friday)** If paying by check/money order, please make check/money order payable to Orange County Clerk of Courts.

| | | |
|---|---|---|
| **Downtown**<br>425 N. Orange Ave., Suite 250/410<br>Orlando, FL. 32801 | | **Northwest Branch**<br>1111 N. Rock Springs Rd.<br>Apopka, FL 32703 |
| **West Orange Branch**<br>475 Story Rd.<br>Ocoee, FL. 34761 | **Northeast Branch**<br>450 N. Lakemont Ave.<br>Winter Park, FL. 32792 | **Goldenrod Branch**<br>684 Goldenrod Road<br>Orlando, FL 32822 |