## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

United Capital Management of
Kansas, Inc. and Chad Koehn

    Plaintiffs,

  v.

Michael Nelson

    Defendant

PRO-Se

**DOCKET NO.:**
 **5:22-CV-04008-JWB-GEB**

**CIVIL ACTION**

**MOTION to DISMISS**
**FRCP Rule 12**
**& Other FRCP RULES Cited**

**[Jury Trial Demanded]**

### MOTION TO DISMISS

  Here Comes defendant Michael Nelson, via this "SPECIAL and Limited
APPEARANCE" as PRO SE defendant, having lawfully removed the petition (erroneously filed
to the wrong court) to the US District of Kansas and so does submit Pro Se, **Motion to Dismiss**
and other deficiencies, motion is fairly embodied under Rule 12 FRCP, collectively, among other
well plead reasons for immediate dismissal with prejudice:

The Defendant alleges the following specificity the Honorable Court <u>lacks</u> in:

1. **Personal jurisdiction**. <u>The lack of personal jurisdiction over the person of the defendant
   is discussed in detail herein below.</u> The lack of personal jurisdiction as the defendant
   *has no contacts with the suggested forum state, nor does the Plaintiff plead with any
   specificity as to the Defendants minimum voluntary contact.* Other than the juvenile
   attempt of the Plaintiff to now claim they are in the ownership of individuals, claiming in
   essence SLAVES, by stating "proprietary individuals". The Court has previously ordered
   the Plaintiff's to remove RACIAL SLUR from the petition, the Plaintiff's did not only
   remove the RACIAL SLUR, but the plaintiffs took the opportunity to make a once in a

course amendment, substantially changing the petition. During their once in a course amendment, see Plaintiff's "First Amended Complaint", the Plaintiff's made substantial changes to the petition, and added additional charges and phrases, including without limitation a claim of "proprietary individuals", which by definition legally as discussed herein below, means the Plaintiff's make claim to OWNERSHIP of PERSONS, against all State and Federal Laws, when Kansas was established as a State in 1861, it specifically abolished SLAVERY.

2. The Plaintiff's lack all and any slightest form of personal jurisdiction over the person of the defendant, certainly the Court cannot assert Personal Jurisdiction, **when the defendant does not even enjoy the basic protections at law from the forum state, since the defendant is not now and has never been a citizen of the forum state, nor as the defendant ever stepped foot into the State of Kansas.** The plaintiff's obvious bad faith filing of the State Petition so properly removed gives way to obvious and intentional attempts under bad faith to litigate via surprise and seek to unfairly and unjustly achieve a default judgment **to be used as a weapon against any other would be WHISTLEBLOWER** as they even use the State Petition to attempt to "out" any WHISTLEBLOWER, or perhaps even multiple. The Plaintiff's avail themselves of civil and criminal liability in the US District of NEVADA, where all underlying corporations have been incorporated, and where the PRO SE Defendant at all times was employed. The Court must not reward the venue shopping of the plaintiff's after they have lost their multitude of appeals in the US District of NEVADA, no matter the testimony under oath in a judicial court in Oklahoma by co-conspirator Cynthia D. Blanchard, claiming Craig Alan Brand has appealed to the NEVADA Supreme Court, which would be their 6th and final appeal. Plaintiff's cannot drag the PRO SE defendant to Kansas, as is their retaliation attempt in furtherance of their predatory collusion to misuse and abuse the justice system, against all interests in interstate commerce, trade and employment.

1.) **The venue is Improper.**

The Plaintiffs venue shopping and seeking personal jurisdiction where none exists is the Plaintiffs seek to re-litigate already settled matters and use the frivolous erroneously filed petition as an attempt to "steal" <u>"SIGNIFICANT EQUITY INTEREST"</u> stock in a vast number of corporations, all originating with the **genesis corporation in NEVADA**, where the defendant at all times worked, and the STATE OF NEVADA, has ruled already. Thus proving as they have with their improper service of the petition COLLUSION, with Cynthia D. Blanchard, and Anthem Vault Inc. etAl. THE PREDATORY COLLUSION is well established by the actions of the plaintiffs and their attorney Craig A. Brand, who represents apparently the Plaintiffs, HIMSELF, and EACH of the underlying corporations, all of which the Pro Se defendant is a SIGNIFICANT EQUITY INTEREST HOLDER; the obvious and evident extreme conflicts of interest rear their head here. The Plaintiffs acting in violation of Federal RICO statutes, especially wherein international drug detainments, money laundering and other crimes are on-going, without limitation CHAD Koehn's pedophile connections, with Russ Medlin, and the Bitclub Ponzi Scheme as prosecuted by US Attorneys in the US District of New Jersey.

"***if there is no district in which an action may otherwise be brought as provided in this section, any*** <u>***judicial district in which any defendant is subject to the court's personal jurisdiction***</u>***" with respect to such action.*** *[EMPHASIS ADDED]*

*OBVIOUSLY, the Defendant cannot be held under personal jurisdiction in the State of Kansas as the defendant is* <u>*NOT a resident nor citizen thereof , has had no significant contact nor has ever stepped foot into Kansas*</u> *AND* **the equal protection of the laws of the State of Kansas do not now and have been refused to protect the defendant.** <u>The Defendant has not entered upon Kansas,</u> and <u>all work conducted was in the US State of NEVADA</u>, the plaintiffs de facto were party to all suits in equity and at law in the US District of NEVADA, they had multitude of appeals in the US District of Nevada, ALL settled in favor of the PRO SE defendant. It is obvious and evident according to well settled Federal Law, that Chad Mitchell Koehn's possession and use of the Social Security Number of the PRO SE defendant on a variety

of affidavits and legal paperwork establishes clearly that Chad Mitchell Koehn believes himself to be the employer of the PRO SE defendant, otherwise Chad Mitchell Koehn would not be permitted to have knowledge nor possession of the PRO SE defendant's social security number and would thus have admitted to Federal Criminal Conduct.

If neither §1391(b)(1) or §1391(b)(2) are satisfied, then the fallback provision, §1391(b)(3), kicks in and courts will deem venue appropriate in any judicial district where any **defendant is subject to personal jurisdiction. [EMPHASIS ADDED]** *Jonathan Segal, "Federal Courts Jurisdiction and Venue Clarification Act of 2011," 36 AK Bar Rag 16, (2012).* The Defendant cannot have personal jurisdiction in a State which refuses to provide protections of the law to the Defendant, as the forum State cannot have it both ways to assert personal jurisdiction, yet DENY the defendant equal protection under the law, in violation of the 14th amendment. This Court has already ruled that the Laws of the State of Kansas do not operate to allow protection or right of the defendant to argue in regards to civil and CRIMINAL violations by the Plaintiffs in regards to "Red Neck High Tech Yacht Fund LP", therefore the Court certainly cannot choose to selectively enforce personal jurisdiction nor subject matter jurisdiction where the Court has already denied the PRO SE defendant protections under Kansas law. The defendant was employed in NEVADA, it was the courts and tribunals in NEVADA that held the trials, and hearings, it was the plaintiffs who have had ALL appeals summarily found in FAVOR of the defendant. JUSTICE does not then allow the plaintiffs to wield a weapon of malicious, frivolous petition in a State Court in a forum State where the defendant has never been, never stepped foot upon, has no contacts, no protection under Kansas law, no contact with, no possible connection to, has performed no work, made no trips, and has no contacts. The question of whether the defendant can be forced to appear and litigate the issue becomes circular: "**a court cannot decide whether a tort has been committed without jurisdiction, but it cannot determine whether jurisdiction exists without deciding whether there was a tort.**"; *Ann Althouse, The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis, 52 FORDHAM L. REV. 234, 247 (1983) (analyzing the "inextricable merits" problem in conspiracy-based jurisdiction); Kevin M. Clermont, Jurisdictional Fact, 91 CORNELL L. REV. 973, 978 (2006).* The plaintiffs seek to litigate via surprise against a defendant AFTER all their appeals in NEVADA, have now failed, having all appeals found in favor of the PRO SE defendant, and after their attempts in Predatory Collusion with others to lie to law enforcement and unlawfully detain and attempt to MURDER the Pro Se defendant in a detention facility in the US District of New Jersey, the exact same detention facility where the plaintiffs conspirators in the Bitclub Ponzi scheme were held for nearly a year prior to their Federal Convictions in the Bitcoin Bitclub Ponzi Scheme. Though the defendant submits the previously convicted, formerly incarcerated CHILD PREDATOR, business parter of CHAD MITCHELL KOEHN, Russ Albert Medlin, has yet to be extradited from Indonesia where he is incarcerated having been apprehended for multiple counts of paid sex with minor children. This is an abuse of process, and abuse of the law, just as plaintiffs create illegal spin-off corporations of the genesis corporation in NEVADA, and then perform illegal "short-form" mergers to create an illegal holding company, to then claim on federal documents to raise money for the illegally created

new holding company, **created to avoid and EVADE federal regulators, just as their plethora of foreign TAX EVASION jurisdiction corporations in GRAND CAYMAN ISLANDS etc,** claiming $5,000,000 invested by farmers in Florida, Nebraska, Nevada and Idaho, but then direct the money to yet another corporation, issuing press releases about the same, **in gross violation of SEC regulations**.  Plaintiffs by their own hand issued press releases regarding $5,000,000 being provided as a series A, for a new company, Hera Software and Development Inc. of the US District of Delaware, yet **no SEC regulatory documents are filed for the DELAWARE corporation Hera Software Development Inc.**, yet file federal documents that the raise, regulatory filing was for the illegally formed holding company, Anthem Holdings Company, also of DELAWARE, neither of which are in Kansas.  Now they seek to use improper forums having **EXHAUSTED all appeals in NEVADA,** whilst simultaneously attempting to avoid legal process to litigation in the US Districts of NEW YORK and MASSACHUSETTS, and county actions in Florida, Texas and Nevada.   All underlying companies to the suit Anthem Vault Inc. etAl are located in NEVADA.  Those corporations not located in Nevada are DELAWARE Corporations.  The scales tip in favor of the Defendant and not the Plaintiff with regards to venue.   The Plaintiffs are attempting venue shopping as a means to insure the PRO SE defendant is without the financial resources to defend nor litigate, all the while they conspire with their coconspirators to lie to law enforcement unlawfully detain the PRO SE defendant and attempt to MURDER the Pro Se defendant when in unlawful detention, all in hopes to cover the frauds in the US DISTRICT OF NEVADA, the Plaintiffs are operating in predatory collusion in a conspiracy to commit multiple acts in violation of Civil and CRIMINAL RICO statutes. Plaintiff's seek unfair advantage through racial divide. The plaintiffs' purposefully seek without limitatioin:  murder, intimidation, harassment, defamation, ridicule and malice to the person of the defendant where they attempt **litigation by surprise, laying in wait nearly a year with no attempts at all, at effecting any service of process in the matter, the service here is improper service, and insufficiency of service of process, the "RACIAL SLUR" in the name of the defendant, raises to that of racial bigorty, though plausible deniability <u>through admission of legal incompetence has been proferred by counsel Larry Michel and Quinn Robert Kendrick for the plaintiffs</u>.**

### <u>SLAVE OWNERSHIP or OWNERSHIP of Individuals OUT LAWED in Kansas:</u>

Though the Court has ordered the Plaintiffs to remove the RACIAL SLUR from the petition, the Plaintiff's have also materially altered the petition, significantly and dramatically changing the petition, as their once in Course of litigation Amendment in Course of litigation. The Plaintiffs certainly must not be able to further alter the petition / complaint without leave of the Court:  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." and the Court in the US DISCTRICTS of Massachusetts and NEVADA must conduct in depth hearings as to the necessity to further amend the complaint, as the Plaintiff's attempt in the complaint to assert "SLAVE OWNERSHIP", claiming

"proprietary individuals", which by legal definition is the ownership of other human beings.  The US District of Kansas, as the State of Kansas, has always been known as a "FREE STATE", never having authorized SLAVERY.  Therefore the Plaintiff's only attempt to plead claiming right to litigate in the US District of Kansas, via "PROPRIETARY INDIVIDUALS", is upon its face a violation of Federal Law, in no way shape or form has Kansas ever allowed the "OWNERSHIP" of Persons (HUMAN BEINGS), by one person to another.  No matter the context the phrase "proprietary individuals", is well settled as "OWNERSHIP" of "INDIVIDUALS.  "Proprietary Persons", has a singular definition well embodied within law, which is defined as "OWNERSHIP".  Even Black's Law Dictionary defines "PROPRIETARY" as:  "n. A proprietor or owner; one who lias the exclusive title to a thing; one who possesses or holds the title to a thing in his own right."  There is no question the frivolous and malicious petition is nothing more than harassment, intimidation and retaliation in PREDATORY COLLUSION of RICO conspiracy, having the plaintiffs MULTITUDE of appeals denied or found in favor of the defendant in the US DISTRICT of NEVADA.   The Plaintiff's only attempt to gain personal jurisdiction or otherwise plead is to claim "SLAVE OWNERSHIP" of other individuals by stating "PROPRIETARY INDIVIDUALS".   "PROPRIETARY is one that possesses, owns, or holds exclusive right [specifically a proprietor]", as defined by "merriam-webster", a dictionary which provides a similar definition as does Blacks Law Dictionary. "PROPRIETARY INDIVIDUAL" is defined as: "one that possesses, owns, or holds exclusive right".   The PRO SE defendant so submits that according to the Kansas Historical Society, "owning slaves was legal in Kansas Territory", this was when the US State of Kansas was a "TERRITORY", and not a STATE.   "The first Kansas Territorial Legislature passed an **Act to punish offences against slave property** in August 1855.  It was patterned after the Missouri slave code."

"The Act to Punish Offences Against Slave Property was passed by the Legislative Assembly of Kansas Territory on August 14, 1855, to take effect on September 15, 1855. The Speaker of the House was J. H. Stringfellow, and the President of the Council was Thomas Johnson. The act included a death penalty for persons causing or aiding in any "rebellion or insurrection of slaves, free negroes, or mulattoes" in Kansas Territory. Other provisions dealt with "speaking, writing, or printing" that encouraged slaves to rebel or that argued that the right to hold slaves did not exist in

Kansas Territory. Several sections of the act contained penalities for encouraging or assisting slaves to escape, and one stated that anyone opposed to the holding of slaves could not serve on a jury." - KHS

***"Slaves wanting freedom fled to Kansas from nearby Missouri…"***

It is well settled FACT that Kansas did not become a State until 29 January 1861, therefore no matter the Legislature actions while a Territory, the Plaintiff's here CHAD MITCHELL KOEHN etAl. cannot now claim "OWNERSHIP" of Individuals as a means to circumvent law and exercise personal jurisdiction over the person of the PRO SE defendant. SLAVERY is ABOLISHED in EVERY State and Territory of the United States of America, no person can have "proprietary individuals" in any way shape or form legally in the United States.

The Court must not reward the bigotry of the Plaintiff's in CHAD MITCHELL KOEHN's belief he has the exclusive right to OWNERSHIP of INDIVIDUALS as he himself has plead in his once in a course amendment, where Chad Mitchell Koehn etAl. has substantially changed the "petition", not simply removing the RACIAL SLUR from the petition, but **unilaterally taking the opportunity** ORDERED by the Court to remove the Racial SLUR from the petition and now claim among other things "OWNERSHIP" of "INDIVIDUALS", wherein Kansas as a US State since 1861, has NEVER allowed SLAVERY, or ownership of one individual by that of another. According to the Kansas Historical Society: "Slavery existed in Kansas Territory, [EMPHASIS ADDED] but on a much smaller scale than in the South. Most slaveholders owned only one or two slaves. Many slaves were women and children who performed domestic work rather than farm labor." **On February 23, 1860, the Territorial Legislature passed a bill over the governor's veto abolishing slavery in Kansas.** Therefore Kansas having ABOLISHED SLAVERY in February of 1860, whilst still a Territory, prior to acceptance as a STATE in the Union of these the United States of America, cannot now allow a bigoted plaintiff, who has previously used a RACIAL SLUR in the originating petition, and used bigoted phrase against those socio-economically disadvantaged in the naming convention of a **Crypto Currency Hedge Fund "RED NECK"**, targeting with malice those socio-economically disadvantaged individuals in the "southern states", CHAD MITCHELL KOEHN's only attempt to claim jurisdiction and venue in Kansas is by

way of a claim of OWNERSHIP of Individuals, demonstrating clearly his belief that SLAVERY continues today, in his eyes. For the Court to reward the bigotry of the plaintiff's and grant venue and jurisdiction based upon the only pleading made of "proprietary individuals", is allowing CHAD MITCHELL KOEHN to claim ownership of individuals against the MORAL, ETHICAL and SUPREME LAW of these the United States of America, such a reward of the illegal acts of ownership of individuals does not grant personal jurisdiction to the Court against the Kansas State Constitution and the Constitution of these the United States of America.

The Kansas–Nebraska Act created not only Kansas Territory, it repealed the venerated slavery expansion compromise of 1820 and upset the tenuous 1850 agreement. The Missouri Compromise of 1820 appeased Northern and Southern congressional interests by opening the door for the admission of Missouri as a slave state and prohibiting slavery west of Missouri above the 36º30' line. **The disallowed region included the area that became Kansas.** The Topeka Constitution prohibited slavery in the state. It also limited suffrage to white males and "every civilized male Indian who has adopted the habits of the white man." Congress rejected this constitution and the request for admission to the Union. While Kansas has had a long history of bigotry and certain factions within the State have continued their lineage of hate towards others, including proslavery and anti-native rallies, as well as membership in the domestic terrorist organization the Klu Klux Klan, as recently as the late 1990s with marches in Salina Kansas, where CHAD MITCHELL KOEHN attempted the filing of the incongruous malicious, and frivolous state petition replete with RACIAL SLUR in the originating petition, now in the First Amended petition CHAD MITCHELL KOEHN exclaims "PROPRIETARY INDIVIDUALS", claiming "OWNERSHIP" of "INDIVIDUAL" as defined by law CHAD MITCHELL KOEHN believes he has exclusive and sole right to ownership of other persons, against the interests of justice, the Kansas State Constitution and the US Constitution as SLAVERY has been outlawed among the several States since the passing by Congress on January 31, 1865, and ratified on December 6, 1865, the 13th Amendment abolished slavery in the United States.

**The 13th Amendment to the United States Constitution provides that:**

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

CHAD MITCHELL KOEHN, who first filed the originating petition replete with RACIAL SLUR, aimed at causing the Pro Se Defendant physical injury and had its intended consequence and then laid in wait nearly a year to effect service, without so much as mailing a copy of the petition, demonstrating clearly no intention to serve the petition, except under terms where he reasonably believed the PRO SE defendant could not respond, now files an Amended Petition by ORDER of the Court to REMOVE the Racial SLUR from the complaint, and takes the opportunity to substantially change the complaint adding that he has "OWNERSHIP" in the sense of Proprietary title in the owning of other individuals, [persons], despite the fact as a US State Kansas has NEVER condoned SLAVERY and against the interests of the 13th Amendment to the US Constitution which as pleaded to herein above ABOLISHED SLAVERY.

The Plaintiff's laid in wait and conspired with Anthem Hayek Blanchard to entrap via false and fraudulent inducement of evidence to law enforcement in violation of the Pro Se Defendant's civil rights, demonstrating clear RICO violations seeking the murder of the Pro Se Defendant during unlawful detention and ***sought to cause the defendant extreme bodily harm and attempted murder of the upon the person of the defendant***.  Service of process by surprise **when they, the plaintiffs collectively and s**everally via Predatory COLLUSION *had illegal knowledge of the defendants location* **and confirmation of the defendants injured status, having been subject of multiple violent attacks, performed at the behest of the plaintiffs, as it appears was and is their devious plan, to seek death of the defendant.**

CHAD M. KOEHN lost EVERY appeal in NEVADA CASE . . .     The fact all labor disputes all settled in **the favor of the Defendant** and the Plaintiffs having many multiple appeals all DENIED in the **Defendant's home State of Nevada**, where the pro se defendant was at all times employed, gives way to the obvious venue and forum shopping by the Plaintiffs at the direction of their "partner in deception" Craig Alan Brand.  The Facts are clear the Plaintiffs sought litigation via surprise in conspiracy with Anthem and Cynthia Blanchard, and improper service

provided upon the Defendant. While plaintiffs held status conferences with the state petition, each status conference was held within days or a single day of major milestones in the NEVADA CASE, the last status conference in this case 7 January 2022, when their devious planned litigation by surprise using a racial SLUR, they caused to be sent to a known highly racially charged, setting after they orchestrated multiple murder attempts, had failed, they hoped the RACIAL SLUR would spur further attacks **which it did**, yet the PRO SE defendant survived each murder attempt, this case proceeds HERE in a US Federal District Court, NOT because it was filed in Federal Court, but rather because the Pro Se Defendant REMOVED lawfully the incongruous malicious State Peition to the US Federal Court.

Just days after the status conference in January 2022, the defendant was served in the US District of New Jersey, in the same detention facility where Plaintiff's co conspirators in the Bitclub Ponzi scheme were held prior to their federal convictions. The State of Nevada 3 Justice Panel, handed down its first decision 2 to 1 in favor of the Defendant. The plaintiffs working in predatory collusion with others sought to keep the defendant locked away, while **they "hammered" the State of Nevada** over the decision in favor of the defendant, **on 12 January 2022, the State of NEVADA, made it official the decision was UNANIMOUS (3-0) in favor of the defendant!** Late that day the defendant was released from unlawful detention. The plaintiffs never intended the defendant to be able to defend the case here at bar, and have demonstrated they have been working to secure a default judgment. **On 1 February 2022, the defendant lawfully and correctly REMOVED the frivolous, malicious, RETALIATORY incongruous petition to the US FEDERAL COURT for the US District of Kansas.** It is evident the plaintiffs never intended the case to appear in the Federal Register on a Federal Docket, otherwise they would have filed in Federal Court, **but they purposefully did not.** Shining a large spotlight of justice on what had been nothing but injustice to date, the matter is now squarely in the public's eyes as the plaintiffs' operate with PREDATORY COLLUSION RETALIATION, against all Civil and CRIMINAL statutes relating to Whistleblower protections, availing themselves of Civil and CRIMINAL RICO charges and charges regarding Whistleblower Retaliation. The extreme harassment and overall intimidation tactics are well

recorded herein the US District Federal Court, as is the obvious and evident PERJURY via sworn affidavit filed by Craig Alan Brand in document 24-1, which caused the PERJURY by Larry Gene Michel in document 24, regarding the same PERJURY by CRAIG ALAN BRAND in document 24-1.  The plaintiffs attempt to litigate similar claims here in Kansas, a forum of their venue shopping, which cannot maintain personal jurisdiction over the person of the defendant, is intolerable abuse of the judicial system,  abuses which are well known to law enforcement and the Court's as CRAIG ALAN BRAND's long and storied history of deception and purposeful intentional false information to the Courts is well recorded, Brand even sets forth in the book he himself authored, "I don't care what Mom Says: LIFE SUCKS" **"I [Craig Alan Brand], for instance, have championed the art of disinformation. I intentionally provide people [COURTS] with false information..." page 118. [EMPHASIS ADDED]**  The defendant is not subject to personal jurisdiction, in Kansas and Kansas does not maintain subject matter jurisdiction, especially due to the venue being improper.

The Plaintiffs argue the venue is proper as they NEED a venue with 91+% WHITES "non-hispanics", to litigate as they formulate their initiating pleading in the state petition through the use of racial SLUR.   It is well settled FACT the initiating forum county of Saline County Kansas is made up of 91+% white non-hispanics, further it is well settled the US State of Kansas itself is made up for 85+% whites.  Having had litigation founded in favor of the defendant and denied on their constant appeals most recently via a 3 Justice panel in the Defendants home US State of Nevada, where the genesis corporation, **Anthem Vault Inc.** is located and has been domiciled, since 2011.  The Plaintiffs now seek via BAD FAITH to litigate via surprise, through bad faith, where they make no efforts to effect proper service upon the defendant in a forum state which is advantageous only to the BIGOTED Plaintiff's. At extreme disadvantage to the Defendant.  **The dates of each status conference in the underlying petition, coincide dramatically with the NEVADA Case hearings.**

**Make no mistake about it, IT GOES WITHOUT SAYING**:  Where's there's smoke there is fire, the plaintiffs hatched a devious plan of PREDATORY COLLUSION in retaliatory action against the defendant on the heels of multiple NEVADA Case hearings, regarding a

NEVADA domestic corporation, which the defendant was at all times employed and is a "significant equity interest holder", in the same and a multitude of "spin-off" corporations. The defendant has NEVADA as his legal US nexus. <u>Kansas is an improper forum,</u> cannot and must not have any personal jurisdiction over the person of the defendant. The venue is improper and <u>the abuse of the legal system is intolerable.</u> The plaintiffs conspired to unlawfully detain the PRO SE defendant, totally destroying the defendants life beyond any hope of repair, as the plaintiffs conspired with Anthem Hayek Blanchard to MURDER the defendant during the unlawful detainment, the Pro Se defendant has suffered severe injury as a result and now struggles with basic tasks. **PRO SE Defendant so notes notice of interlocutory appeal on adverse ruling, and respectfully requests a Stay of the matter.**

      <u>WHEREIN here the Plaintiff's wield total power and control s**eeking to obtain an unfair advantage while simultaneously using HATE SPEECH, having caused physical injury to the Pro Se defendant through their intentional use of RACIAL SLUR, also meant to INTIMIDATE**, DEFAME, HARASS, ANNOY, INSULT, both the Court and certainly the person of the Defendant</u> in this matter. Through their deliberate attempts to litigate via surprise and seek a default judgment **using unfair processes and confidential <u>information obtained illegally</u> in their improper service [emphasis added] of the pro se defendant while the defendant was being unlawfully detained through malicious prosecution using fraudulently induced evidence and false swearing orchestrated by Cynthia D. Blanchard**, who lied to police and law enforcement claiming a protective order was violated, when IPSO FACTO Cynthia D. Blanchard knew no protective order existed or ever did exist at the time of her false swearing in sworn report to law enforcement. Cynthia D. Blanchard co-conspirator of Plaintiffs set the wheels in motion for the <u>unlawful detainment and murder attempts of the PRO SE defendant WHISTLEBLOWER</u>, these actions are in predatory collusion in furtherance of RICO violations in conspiracy with CHAD MITCHELL KOEHN and United Captial Management of Kansas Inc. They collectively sought injury and death of the pro se defendant. Acting with reckless malice; they reasonably believed further injury or death to defendant, would occur through their use of RACIAL SLUR sending the same into a highly charged racial environment

where their previous murder attempts had failed.  Plaintiff's "special counsel", Craig Alan Brand filed an appeal of the NEVADA Judge's, ruling of the 12 August 2021 hearing, Brand had the **audacity to demand a new judge**, and a brand new hearing.   Craig Alan Brand wanted a new Judge and hearing as he laid out a case against the randomly assigned African American Female Judicial Officer in Nevada.  He (Craig Alan Brand) certainly laid out a case where the Judge erred by relying on a police report, he himself, Craig Alan Brand submitted, then argued the report was neither written by nor signed by the man submitting the report, yet stated in writing the man is a "California attorney" and "California court officer", yet the man is "not authorized to practice law" since 2006; resulting in further Bar Complaints against Craig Alan Brand, and the attorney witness he examined under oath who made similar claims that a man is an attorney who is NOT authorized to practice law.  Craig Alan Brand's long and storied history of allowing others to use his name and the plethora of law firms he claims to be the "senior partner" in, despite his providing of one name to this Court and appearing before this Court not under that name but rather Mystic Law and Ganja Law, it is noted "Ganja" marijuana is Federally controlled substance and is not legal under Kansas State Law, at this time.   [28 U.S. Code § 1391.]:  **Insufficient process**, Plaintiff's sought through bad faith to litigate via surprise, conspired with others especially Anthem H. Blanchard, alleged criminal mastermind to unlawfully detain Defendant, though the use of fraudulent inducements to law enforcement, now reported to and believed under Federal investigation by the FBI and the Plaintiffs seek to force improper and insufficient process in hopes to prevent a responsive pleading and instead seek default judgment as a **continuation of purposeful witness tampering and certain intimidation** to any other would be "WHISTLEBLOWERS' who the Plaintiff seek to "out their identities", in violation of Civil and CRIMINAL charges.   **Insufficient service of process**.  The service of process was certainly incomplete and without the customary and necessary forms as required to constitute fair and substantial justice allowing for responsive pleadings, therefore the service of process was insufficient especially wherein the Plaintiff's intention was to defame, ridicule, molest, harass and cause the defendant RACIAL HATE, as is well previously plead in "NOTICE of REMOVAL to the US District Federal Court", and subsequently in document 5. Plaintiff's

remove all doubt as to their bigotry and hatred causing a RACIAL SLUR of HATE SPEECH to appear on the first page of the petition, though counsel provides plausible deniability by stating "ERROR" and "FAILURE", demonstrating INCOMPETENCE in practice of law, yet their intention was physical injury and/or death of the PRO SE defendant after multiple murder attempts had failed.

The due process analysis in the determination of personal jurisdiction protects the defendant's due process right in **"not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.' _As where herein the Defendant has NO meaningful contacts, ties, or relationships with the forum proposed district of the US State of Kansas._** The **defendant has been DENIED equal protection under the laws of the State of Kansas**, ergo inter-alia the US District Court for the District of Kansas cannot enjoy personal jurisdiction over the defendant, additionally the defendant is denied the equal protections of law under the State Laws of Kansas, for not being a resident thereof the forum State. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945))*

The "principal inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign."; The Defendant was EMPLOYED, resided in and is a Citizen of the US State of Nevada, where underlying litigation has already taken place and the plaintiffs have been allowed a multitude of appeals (5) all found in favor of the Defendant. HOW can the defendant be held to personal jurisdiction if the defendant is denied protections of law by the State of Kansas? The answer is simple, plaintiffs seek retaliation via predatory collusion, having lost many multitude of appeals in NEVADA, and seek venue shopping, of a frivolous malicious prosecution in a new forum and venue, having lost in NEVADA. Operative violation of the 14th amendment to the US Constitution and gives rise to obvious lack of personal jurisdiction. **As the Court cannot both assert personal jurisdiction over the defendant, but deny the defendant equal protection under the law.** Kansas cannot assert it both ways in denial of protection under law and personal jurisdiction when "people" like the plaintiffs want to sue via proceedings instituted for no other reason than malicious prosecution,

RETALIATION and certain intimidation through COLLUSION in hopes to prevent testimony against them collectively in criminal proceedings and are commenced with a state petition replete with racially motivated epithets in writing on the first page of the petition.

Such egregious conduct is worthy of referral for immediate disbarment of BOTH attorneys and for costs to be levied against the **plaintiffs who have a long and storied history of racially motivated hate speech**. "The defendant generally manifests this intent by "purposefully avai[ling] itself of the privilege of conducting activities within the forum State, **thus invoking the benefits and protections of its laws.**" *Id. at 2787 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).* **WHEREAS here the Defendant is not eligible for protection in Kansas, NOR can the defendant re-litigate AGAIN the many times litigated disputes in NEVADA, where the defendant, lived, reside and was employed.** This Court must not reward the "partner in deception" Craig Alan Brand's intentional false information provided to the Court, nor the Plaintiff's certain willful violations of RICO civil and CRIMINAL statutes in their collective predatory collusion to violate the same, with allowing personal jurisdiction over the person of the pro se defendant here in the US District of Kansas.

**KANSAS cannot now exert jurisdiction after judiciary panels have ruled in favor of the defendant in NEVADA. Plaintiffs have exhausted all their appeals, and now seek to litigate in Kansas as RETALIATION for LOSING all cases in NEVADA. Defendant does not have** protections of the Laws of Kansas. Kansas cannot interpret the laws of California, Delaware, Florida, Massachusetts, and Nevada. Matters were settled in the courts of NEVADA, this is RETALIATION, in violation of Federal Criminal law in the protection of whistleblowers for the plaintiffs losing the cases in NEVADA. Furthermore, given the obvious proof positive of conspiracy and COLLUSION to abuse of process and participate substantially in malicious prosecutions of the defendant the P**laintiff's prove this by their advanced and personal knowledge of the precise location of the defendant in the US District of New Jersey; having information which was only available to select State Law Enforcement and Federal Department of Homeland Security and Federal Law Enforcement** and **thus readily admit to and provide proof positive beyond simply prima facie evidence** of **their illegal knowledge** of

**the defendants location.** Plaintiffs had a good USPS mailing address for the defendant yet chose not to use the address for its intended purpose to receive USPS mail, laying in wait nearly a year to plan a murder, in furtherance of their predatory collusion in violation of RICO.

There can be no doubt the plaintiffs in conspiracy and collusion had advanced knowledge of the location of the defendant prior to attacks against the defendant in New Jersey and those attempts on the life of the defendant. Plaintiffs readily admit to their association with criminal gangs with believed allegiance to "money laundering" activities involving crypto currencies, which the Plaintiffs are aligned and the Plaintiffs directed the attacks and provided financing thereof similar to the financing they provided to CRAIG ALAN BRAND during the bribery (RICO violation) in the United Arab Emirates to free Anthem H. Blanchard, from drug charges, the husband of Cynthia D. Blanchard, the mastermind of the alleged criminal conspiracy and certain predatory collusion to which the Plaintiffs are integral part in the continued RICO violations in NEVADA and New York involving illegal market manipulations of crypto currencies and crypto stock tokens on global exchanges. Plaintiffs regularly reference providing $5,000,000 of financing in the furtherance thereof RICO violations according to press releases issued and written by the Plaintiffs themselves, whilst simultaneously declaring conflicts of interest to a holding company named Anthem Holdings Company.

Relevant "minimum contacts" may include in-forum trips, sales, contracts, or other voluntary connections with the forum. See, e.g., Burger King, 471 U.S. at 462 (concluding that franchise and contract activities could give rise to jurisdiction); *Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)* (basing jurisdiction on in-state commercial activity). **WHEREAS here the Defendant has ZERO interaction with the state of Kansas, NO Sales, NO Contracts, no other voluntary connections knowingly with any entity in the forum state, nor ever stepped foot in Kansas. The Pro Se Defendant does not have contact sufficient for this Court to maintain personal jurisdiction nor subject matter jurisdiction in this matter.** Regardless of whether a court finds contacts by "direction" or "availment," jurisdiction **must still be reasonable**. The Supreme Court has identified five reasonableness factors that courts must weigh to determine whether the situational context would render jurisdiction so **unfair as to deprive**

**the defendant of <u>due process even when minimum contacts are otherwise satisfied</u>.** These factors are: "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies.":

<u>A Discussion of each of these 5 reasonableness factors:</u>

   1.) *<u>the burden on the defendant</u>*

The defendant is unfairly burdened to litigate in a State, the defendant has never entered upon and the plaintiff's purport to supposedly operate a ¼ billion dollar investment advisory located in more than half a dozen states. The defendant, a single sovereign native born American citizen, without the extensive resources available such a massive interstate investment advisory claim is unfairly and unduly burdened. Plaintiffs are venue shopping for RETALIATION, after losing many multiple appeals in NEVADA. Plaintiffs claim affiliations and endorsements by the United Nations, the US Army, the US AirForce, NASA and resources of each. <u>The docket reflects</u> the plaintiffs are in fact a governmental organization as defined by law, and therefore MUST litigate in the defendant's home state, NEVADA, where they have previously litigated and LOST. The Plaintiffs even make claims to be building a space station to mine asteroids and claim to be *<u>"trading with lunar and martian traders where applicable"</u>* in a variety of their UNregistered illegal Securities offerings, in NEVADA. The balance leans towards the defendant as the defendant is unfairly targeted and burdened by litigating in the forum State of Kansas, which the plaintiffs choose purposefully as retaliation.

   *2.) the interests of the forum State*

The forum state refuses to provide equal protection under the law, as is normally required of the 14th amendment, inter-alia the forum state <u>cannot then assert personal jurisdiction</u> over the person of the defendant in this civil matter, which is commenced via a state petition replete with, RETALIATORY, intimidating bigoted language, aimed at causing and has caused physical injury. **<u>The forum State has ZERO interests in the matter</u>** and conversely the forum State of Kansas would be damaged publicly of their reputation and judiciary by litigating a matter better suited

where the actual companies reside.  The forum State cannot undo binding law of another State, the matter at bar is improper in Kansas, which has no interest to assert.

### 3.) _the plaintiff's interest in obtaining relief [EMPHASIS ADDED]_

The _Plaintiff's obviously do not have a true interest in obtaining the relief sought as the docket and record in the matter from the State County Court, indicate the Plaintiff has taken no efforts to serve the defendant for nearly a year._  The Plaintiff's obviously and e**vidently take care to neglect and purposefully not attempt contact to the defendant concerning this lawsuit,** they do not seek waiver of service, or even a _colloquial "mail and nail order", to affect the process of service in the matter._  The **plaintiff's by and through their own actions <u>deliberately do not seek any interest in obtaining the relief sought.</u>**  Plaintiffs have zero interest in litigation and only serve the defendant AFTER having LOST the final appeal, in NEVADA, and the murder attempts having failed, having a THREE JUSTICE, panel finding in favor of the defendant.  And after the plaintiffs conspiracy in predatory collusion to have the PRO SE defendant murdered in a detention facility had failed, due the plaintiffs seek the service of the State Petition, which purposefully used RACIAL SLUR prominently on the bottom of the first page, sending the same uncovered into a racially charged environment attempting to phyiscally injure the defendant after multiple murder attempts had failed.  **Plaintiff's actions are to harass, intimidate, threaten, defame, annoy, RETALIATE against in violation of Civil and CRIMINAL statutes and generally stalk the defendant, as they work in predatory collusion with Anthem Hayek Blanchard in violation of RICO under the 1970 Organized Crime Control Act.**  The purposes of the Plaintiff's actions here are certainly anything but actually working to seek the relief they claim.  The facts are the Plaintiff's have conspired with others in predatory COLLUSION to entrap and unlawfully detain the person of the defendant and then through malicious prosecution and abuse of the legal system seek improper service, as they sought to obtain a default judgment, believing the defendant would not be able to respond.  The PRO SE defendant removed the case to Federal Court, the plaintiffs did not file the action in Federal Court, as the Plaintiffs sought county court action, and obviously had no intention that their

RICO violations would be made public in Federal Court. **Plaintiffs demonstrate zero interest in litigating the matter, as the** dockets so proves in the positive [EMPHASIS ADDED]

4.) *interstate judicial system's interest in obtaining the* <u>*most efficient resolution of controversies*</u> *[emphasis added]*

It is the interstate judicial system's interest to allow for fair and equal protection under the laws and to see to it both parties are afforded <u>equal protections under the law</u>. It is improper to allow "venue shopping" and allow re-litigation or use of litigation for RETALIATION and/or INTIMIDATION of witnesses, having previously reported lawfully the criminal conspiracy headed by Anthem and Cynthia Blanchard, after plaintiffs have lost multiple appeals in NEVADA. Though the Pro Se defendant does demur to the FACT, Cynthia D. Blanchard has recently testified under oath that CRAIG ALAN BRAND, has sought final appeal of the matter in Nevada, to the Nevada SUPREME Court. The unfair burden faced by the defendant is obvious and evident to the reasoned mind, especially given the THREE JUSTICE panel finding in the defendants favor in NEVADA. Just because plaintiffs make racially insensitive reference to the second to last Judicial Officer in Nevada, and refer to the PRO SE Defendant as a "SNITCH" in need of "STITCHES" and to be lured to Kansas and buried in a hole on a ranch, does not convey a right to interstate judicial process, by dragging the defendant from NEVADA to Kansas. The plaintiffs availed **themselves of NEVADA having corporations registered here** and the PRO SE defendant employed in NEVADA. The HATE speech, RACIAL SLUR in violations of civil rights and general abuse of the judicial processes to substantially deny justice to the Public, the Courts and the defendant and thus the American people, <u>does not convey a right of the interstate judicial system,</u> to be used, as it is being used here in CRIMINAL RETALIATORY method of harassment and intimidation via predatory collusion in furtherance of the RICO violations by the plaintiffs. The genesis corporation from which all spinoff's occurred and originating investments were made, Anthem Vault Inc. is located in Nevada, is incorporated in NEVADA, and as the pro se defendant was always employed in NEVADA, the corporation so located there. As are the papers, materials, accounts, witnesses, former employees, contractors and the dozens and dozens of witnesses in this action, **ALL are located in the US State of Nevada.** Therefore if it is in the interests of substantial and most efficient resolution of controversies, **then ONLY the US district of Nevada**, makes sense logically and

reasonably for the litigation between the parties as previous litigation was here!   Future litigation must be made in the US District of Massachusetts and/or Rhode Island where the plaintiffs admit to possession of the PRO SE defendants social security number on affidavits signed under penalties of perjury by Chad Mitchell Koehn and his attempts to gain access to protected retirement accounts with Fidelity, where Chad Mitchell Koehn has substantial ties to the forum of Massachusetts and Rhode Island through $20 million in management with Fidelity as per public disclosure documentation.   NEW YORK State and Connecticut are also ripe for future litigation as the Plaintiffs have significant ties to both jurisdictions and have multitude of corporations located in each, where they claim affiliation, direct endorsement by various resources of the United States Federal Government and the United Nations, which itself is located in New York City of the State of New York.

   5.) *"the shared interest of the several States in furthering fundamental substantive social policies."*

It is the interest of several States to this Union of these the United States of America to insure actions at law and filed via petitions to the Courts, are not continued to be used as RETALIATION (CRIMINAL acts in violation of RICO statutes), after the plaintiffs have LOST their multitude of appeals in NEVADA.  The fundamental substantive social policies do not allow under fairness nor the rule of law to constantly relitigate in various venues and forums as the bigoted plaintiffs seek the most disadvantageous forum to prevent the plethora of witnesses to testify, as well as making it cost prohibitive for the PRO SE defendant to participate in litigation in Kansas, therefore necessitating the filing of a multitude of additional Federal Litigations across the United States.  Cynthia D. Blanchard testified under oath on 29 March 2022, that the **plaintiffs have sought appeal to the Nevada Supreme Court**, however, to date the Pro Se Defendant has not been noticed of that appeal, <u>despite sworn testimony under oath by Cynthia D. Blanchard in the directly parallel criminal matters.</u>  It is evident the petition contained racial HATE SPEECH, via RACIAL SLUR purposefully hurled at the defendant through interstate commerce and interstate judicial process in furtherance of causing the pro se defendant physical and mental injury, as it had its intended consequence.  As it is evident the

plaintiffs not liking any of their multitude of appeals they themselves have filed in the US District of NEVADA, all of which being founded for the defendant. It is evident given the actions of the plaintiff and their purposeful unwillingness to serve via proper service the person of the defendant in the matter, the Plaintiff's cannot and should not be rewarded for attempts to litigate via surprise, after their MURDER attempts failed. Purposeful efforts in seeking to obtain a default judgment for the distinct purposes to attack, WHISTLEBLOWERS, the Plaintiffs demonstrate clearly continued RICO violations both Civil and CRIMINAL. As the Plaintiff's seek to out those said WHISTLEBLOWERS, whether one or more than one as indicated by the filing of the Plaintiff's own hand. IPSO FACTO the once in course amendment of the petition where the Plaintiff's not only removed the RACIAL SLUR as per the Court's ORDER they Plaintiff's unilaterally took the opportunity to substantially change the petition, wherein now they claim: "a whistleblower at UCM working with the government"; the pro se defendant so submits that based upon the statement by the Plaintiff's they have de facto admitted to seeking RETALIATORY action against a WHISTLEBLOWER seeking to "out" the WHISTLEBLOWER in violation of BOTH civil and CRIMINAL statutes. There can be no doubt now as CHAD MITCHELL KOEHN has IPSO FACTO admitted via the once in a course amended complaint to violation of long held WHISTLEBLOWER protection Stattutes thereby availing himself of self admitted violation to CRIMINAL STATUTES, carrying penalties in excess of 20 year imprisonment and fines to United Capital Managemnt of Kansas in excess of $10,000,000 ($10 MILLION). Just as the plaintiffs have repeatedly stated they will not burden the court with specificity in pleadings, they de facto purposefully violate civil and CRIMINAL statutes with regards to Dodd-Frank and Sarbnes Oxley Acts without limitation.

**"The contacts supporting jurisdiction cannot be merely fortuitously associated with the forum seeking to exercise jurisdiction."** Nicastro, 131 S. Ct. at 2801

The USSC (United States Supreme Court) released two personal jurisdiction opinions during the 2010 term, it denied two petitions for certiorari that it had been holding for resolution of those cases. Both of the denied petitions raised a similar question: *should a defendant who allegedly commits an intentional tort be subject to personal jurisdiction in the forum where the*

*aggrieved plaintiff lives and works*, AND "**where the effect of the harm was therefore felt, even if the defendant has no other connection with the forum state?**" The answer is astoundingly NO, the Defendant **CANNOT and SHALL NOT be forced to litigate or be the subject of personal jurisdiction** simply because the Plaintiff makes claim to be harmed in the forum state. To force the defendant to the forum state as proposed, creates a situation where one litigation continues to grow into many more, perhaps even warranting MDL as defined as Multi District Litigation; thereby creating a massive Complex web of Multi Jurisdictional Conflicts in numerous District Courts of the Federal Court System, thus within the interstate judiciary. Allowing the plaintiffs to hale the defendant into the forum state of Kansas, after the plaintiffs have lost numerous appeals in NEVADA, and do so for no other reason as is evident based on the docket to INTIMIDATE, HARASS and RETALIATE against the defendant through the use of COLLUSION with their "partners in deception" and "partners in crime", does not create either jurisdiction nor venue in the forum state, simply because the plaintiffs sought a "new Judge", in the NEVADA cases. Whereas here the Plaintiff's conduct interstate commerce in more than half a dozen different states NONE of which the Defendant resides, therefore the Court should not reward the Plaintiff's obvious "venue shopping" and evident shopping for jurisdiction and seeking to assert "personal jurisdiction" over the person of the defendant, without so much as a shred of evidence or assertion of the contacts within the contemplated forum State as surmised by the USSC. Especially given the fact the defendant is summarily denied equal protections under the laws of the forum State and the Plaintiff's readily admit on US Federal documents signed under the penalties of perjury to owe a fiduciary responsibility to corporations incorporated in the Defendant's home state, NEVADA.

Because effects-test jurisdiction requires that the defendant intentionally target a particular forum, there can typically only be effects-test jurisdiction in one forum — even though there may be personal jurisdiction in multiple. *See, e.g., Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2001)* ("[W]e held that the Calder 'effects test' requires the plaintiff to show that: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff

as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.") (emphasis removed). 5 See Calder v. Jones, 465 U.S. 783, 789 (1984)  (3d ed. 1998) "When a long-arm statute describes the basis for jurisdiction in terms of 'commission of a tortious act' or 'entering a contract,' the fact on which the defendant's susceptibility to jurisdiction depends also may be the ultimate substantive issue . . . . **The question of whether the defendant can be forced to appear and litigate the issue becomes circular: a court cannot decide whether a tort has been committed without jurisdiction, but it cannot determine whether jurisdiction exists without deciding whether there was a tort.")**; Ann Althouse,  The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis, 52 FORDHAM L. REV. 234, 247 (1983) (analyzing the "inextricable merits" problem in conspiracy-based jurisdiction); Kevin M. Clermont, Jurisdictional Fact, 91 CORNELL L. REV. 973, 978 (2006) (arguing that when jurisdictional facts are intertwined with substantive merits questions, the court should require more than a prima facie showing of jurisdiction).

None-the-less the Plaintiffs did as is evident receive confidential protected information through Cynthia D. Blanchard French's purposeful, willful, wanton abuse of a constitutional provision meant to protect actual victims as opposed the feigning Cynthia Blanchard, who achieved the information via fraudulent inducement.  The PROOF in the Positive, via the improper service of process in the State Petition affected by the Plaintiff's in this above herein captioned matter, serving the said improper notice upon the defendant while the defendant was purposefully entrapped, and so unlawfully detained, in the very SAME facility where the alleged co conspirators of the Plaintiff's and the Plaintiff's co conspirators Anthem and Cynhtia Blanchard, knew via a disputed constitutional authority location of the Defendant in this matter, demonstrating via Proof in the Positive, CRIMINAL Conspiracy perpetrated by the Plaintiff's and at least by the fraudulent inducement of unlawful detention by Cynthia D. Blanchard.

Alleged this CRIMINAL Conspiracy Cynhtia Blanchard misused the "victims rights" clauses to a contested and new constitutional authority to obtain for an illegal and non-permissible purpose said information on the PRO SE Defendant, to entrap the defendant in a facility where they had contacts, to have the PRO SE Defendant **MURDERED**, as evidence

indicates due to the **BITCLUB PONZI scheme indicted and now federal felons having been previously incarcerated**. The plaintiffs conspired to have the defendent murdered.

It is through this CRIMINAL conspiracy orchestrated by criminal mastermind Cynthia Blanchard, where the Plaintiffs materially participated as the evidence in the proof positive so indicate, to cause the Defendant in this captioned matter herein above, <u>extreme bodily harm and even attempts made upon the life of the Defendant, as is noticed by the level of injury suffered and the violence made to the defendant. The FACT the location of the defendant was provided to a multitude of third parties as is evidenced by the improper service of this matter in New Jersey at the specific part of the facility and even at the facility itself gives proof in the positive beyond prima facie evidence of misuse and abuse of the constitutionally protected confidential information and the methods and means for the acquisition of the information in order to attempt the IMPROPER Service of process, after MURDER attempts failed.</u>

The prima facie evidence is as such as not to simply suggest illegal and fraudulent use of confidential and protected information as to the location of the Defendant, but was done as a means to INTIMIDATE, harass a**nd murder the defendant in this action**, in order to prevent Federal testimony against the Plaintiff's and/or their alleged previously considered co conspirators to multiple "securities irregularities" as contemplated by the Plaintiff's own hand in their originating State Petition, AND as is evident by the Plaintiff's statements in the originating petition the purposeful willful attempts to violate Federal Criminal statututes in the attempts to "out the identity" of one or more "WHISTLEBLOWERS" within their own organization. Whilst Plaintiffs purposefully, willfully sought litigation via surprise present litigation, after receiving confidential information regarding defendants location and confirmation of the injured status of the defendant having survived multiple attempts on the life of the defendant, the Plaintiffs with malice of forethought as they have done with the use of racial SLUR in the originating petition.

For the court is simply look at the State Petition of the Plaintiff's and derive any sort of information as to the personal jurisdiction of the defendant in this above captioned matter, <u>is for the Court to focus on the fish bowl and miss the ocean,</u> of facts in the matter, wherein the Plaintiff's collectively sought to litigate via surprise and seek a default judgment in a County Court, when the issues raised must be litigated in US Federal District Court and certainly in

virtually any Federal US District other than the US District of Kansas, or any of the US Districts where the Plaintiff's purport to be licensed as per their Federal securities filings. The State Petition erroneously filed and so removed to the US Federal District Court via Notice of Removal lawfully filed under Federal Law, dictates that this matter should be immediately DISMISSED lack of personal jurisdiction over the person of the Defendant among other causes.

The Plaintiff's this above herein captioned matter should re-evaluate their claims of action, be forced to file in a proper jurisdiction, after first obtaining audited and detailed accounting of their purported $5 million investment via a "Series A" investment raise for a company which is neither located in Kansas, operated in Kansas NOR is registered with the Securities and Exchange Commission, despite the Plaintiff's in this matter by and through CHAD M. KOEHN a licensed and self purported "Chief Compliance Officer", "President", "CEO" and otherwise educated and informed securities professional, having forcefully issued multiple press releases claiming a "Series A" securities offering and raise made for a company referenced as either "DOE Corporation" or "Hera Vault" as referenced in litigation filed in the US District of Nevada labor courts.

The **grounds are fertile for an immediate Rule 12(b) MOTION to DISMISS**. As in here where the defendant has not resided within the State of Kansas, has no assets within Kansas and has made no substantive contact and business within the State of Kansas. The Plaintiff's in the originating petition merely suggest the Plaintiff has been harmed by some nebulous belief the Plaintiff has, perhaps in mens rea in the minds of the Plaintiff that they are now or have been actively engaging in "securities irregularities" and that the Plaintiff's may have one or more "WHISTLEBLOWERS", within the Plaintiff's organizations, wherein the Plaintiff styles their instant Petition as a means to "out" the identity of "WHISTLEBLOWERS" within the Plaintiff's organization by arbitrarily filing a petition against the person of the out of State Defendant, who has no contacts, business, family, or any contact with the forum State of Kansas. Defendant alleges he is a victim of the Plaintiff's alleged interstate and international criminal enterprise, together the Plaintiff's criminal associations, affiliations with alleged criminal organizations outside of the forum State of Kansas, where the Plaintiff states they are "headquartered".

The Plaintiff's are not harmed nor prevented from refiling their frivolous allegations presented in the State Petition which has been removed to this honorable Federal Court. In fact a dismissal for the lack of personal jurisdiction in this matter is correct and proper and provides the

Plaintiff's with a much needed opportunity to re-evaluate their claims, their personal joint and several liabilities, and perhaps retain effective counsel who do not utilize offensive racial epithets in public legal pleadings, no matter the personally held bigotry of the Plaintiff's themselves who regularly remove all doubt of their under educated backgrounds through their evident racial bias against people of different races, colors, creeds, national origin and even native born american citizens, the Supreme Law of the United States the US Constitution, even the Declaration of Independence so declared that "all men are created equal" [EMPHASIS ADDED].

The Defendant in this matter does so herein file this Motion to Dismiss timely and without delay from the date and moment of lawful Notice of Removal of the action to the US District Federal Court:   The simplicity and reasoning is both reasonable, and without any delay in the movant making this lawful motion for DISMISSAL. "Parties who opt to raise such a defense in a responsive pleading may ensure its preservation by moving to dismiss pursuant to rule 12 (b) (2) 'within a reasonable time, prior to substantially participating in discovery and litigating the merits of the case.'" *AIIC v. Ziabicki, 468 Mass. 109, 119 (2014), quoting Raposo v. Evans, 71 Mass. App. Ct. 379, 385 (2008) (Emphasis added).*

The Pro-Se non legally educated defendant, is at a material disadvantage to the MULTIPLE, seasoned attorneys (lawyers) who have signed the originating State Petition, though their educational limitation are well noted in their collective purposeful mens rea of malice with forethought in the use of HATE SPEECH, in writing within the originating pleading, "Petition", erroneously filed with the County of Saline district Court and so properly removed via Notice of Removal to the Federal Court in the US District of Kansas.  It is the movant of the person of the defendant that the defendant is forced by circumstance to present the defenses included herein without limitation as Pro-Per / Pro-Se and therefore so requests this Federal Court for leave to amend and refile this and any other motion or movement as necessitated in the interests of substantial justice hereto.  The Defendant further asks, requests and so states for this Honorable Federal Court, through only a lifetime Federal Jurist to broadly and widely interpret the filings, pleadings, motions, defenses, without limitation in the broadest means possible for the protection of the rights of the defendant in all matters of law in the US Federal Courts, and under the

constitutional rights of the defendant.  The defendant so submits he is of the age of majority or more and is capable of both reading and writing, though lacks certainly the vocabulary and any legal education to be held to any proper format or other styling or filing within the Federal Courts of the United States of America.  None-the-less in the interests of substantial justice and for the protection of the rights of the defendant in this matter the defendant so submits motions, pleadings without limitation in attempts to have the rule of law of these the United States of America to be applied fairly and equally as intended by the founding fathers of these the United States of America.  To this end the Defendant, must read and become familiar with and educated on other such matters for example subject matter jurisdiction, if the above captioned matter is not dismissed the Defendant so preserves without limitation the right to raise objection and dismissal of this matter at trial, by a Jury of 12 of his peers, post-trial or even appeal via INTERLOCUTORY APPEAL to the Federal Court of Claims, due to the issues at bar, with regards to the "subject matter" and Personal jurisdiction of his honorable court.  The Defendant is not intentionally upon oath or other affirmation nor lucre or malice not asserting an objection regarding the "subject matter jurisdiction", objection, but rather informing the Court and lifetime appointed Federal Jurist the Defendant is without the legal education nor knowledge to assert motion to dismiss for lack of "subject matter jurisdiction" at this time though as is obvious asserts motion for lack of personal jurisdiction against the person of the defendant in the forum State as well as to venue hereof.  Therefore the Defendant does so herein reserve any other objection, and/or motion to dismiss including without limitation the aforementioned.  Dismissal of this matter for lack of "personal jurisdiction" is correct and proper as to avoid unnecessary costs to the parties and to the courts by subjecting the parties and the courts to protracted litigation and allowing one litigation to grow to many, when it is evident the this Court lacks "personal jurisdiction" over the person of the defendant in this above herein entitled matter.

The US District of Kansas cannot unilaterally now enforce and interpret the laws of the US District of NEVADA, nor those of Massachusetts, Texas, California, Louisiana, Delaware, New Jersey, West Virginia, New York or Connecticut.  THE PLAIN MEANING OF 18 U.S.c. § 1964(c) CONVEYS STANDING TO PERSONS WHO ARE VICTIMIZED BY THEIR

ATTEMPTS TO DISCLOSE OR OPPOSE RACKETEERING ACTIVITIES UNDER THE CIVIL RICO PROVISIONS, Title ix of the Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations, ("RICO"), 18 USc. § 1964(c), **conveys standing to persons who are victimized by their attempts to disclose or oppose racketeering activities under civil RICO** provisions. As the PRO SE defendant has been VICTIMIZED by the RICO violations of the plaintiffs and their co-conspirators in Predatory Collusion Anthem Hayek Blanchard and wife Cyntia D. French - Blanchard. Under long-standing rules of statutory construction, as articulated in *Caminette v. United States, 242 US. 470, 490 (1917)*, if the plain meaning of the statute does not lead to an absurd or impracticable result, the plain meaning must be followed. Applying this rule to 18 USc. § 1964(c), the statute unquestionably conveys standing to persons "injured" in their "property" (**i.e., loss of employment),** and when they are victimized "by reason of**" exposing their employer's RICO violations.** This case concerns the interpretation of a civil defendants standing pursuant to Title ix of the Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations ("RICO"), which provides: **Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court 18 USc. § 1964(c).** The first step in interpreting legislation is to determine what the words of the statute say. *See Lewis v. United States, 445 U.s. 55, 58 (1980) ("The Court has stated repeatedly of late that in any case concerning the interpretation of a statute the 'starting point' must be the language of the statue itself.")* Unless defined otherwise, words should be given their plain meaning. This court enunciated the plain meaning doctrine in *Caminelte v. United States, 242 U.S. 470, 490 (1917)* when it stated "the language being plain and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." The US District of Kansas cannot undue the rulings of the US District of Nevada, nor can the US District of Kansas properly apply the plethora of Securities Laws, Rules, Regulations and Statutes towhich CHAD MITCHELL KOEHN etAl. are bound under the exchanges located in the US district of New York. Craig Brand done so here in Document 24-1, wherein he caused Michel to lie in document 24, has

demonstrated clearly the ongoing RICO which extends now to the attorneys appearing at bar in the US District of Kansas.

**A plaintiff bears the burden of showing that the Court has personal jurisdiction over the defendant.** *Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1025 (2d Cir. 1997); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996); Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp. 297, 299 (D. Vt. 1997).* **In such a case, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).** "It is generally held that assessment of venue merges into the personal jurisdiction analysis, and thus venue is proper anywhere there is personal jurisdiction." *Real Good Toys, Inc., 163 F. Supp. 2d at 425 (citations omitted); see also Microbrightfield, Inc. v. Boehringer, 2006 WL 306489, at \*5 (D. Vt. Feb. 8, 2006); Anichini, Inc. v. Campbell, 2005 WL*

**WHEREFORE Prayer for Relief** given overwhelming case law, precedents, certain facts, defendant requests and prays for relief the case at bar, be DISMISSED with prejudice:
(1) Lack of jurisdiction over the subject matter;
(2) Lack of jurisdiction over the person, of the Defendant
(3) Improper venue;
(4) Insufficiency of process;
(5) Insufficiency of service of process;

**WHEREAS this** properly filed Motion to Dismiss on the grounds so stated is filed TIMELY from the moment of "Notice of Removal ", and malicious petition at bar. An adverse finding or order adverse to the defendant is correct and proper in this matter to **request STAY** of the action pending the interlocutory appeal in regards to this motion of dismissal.

WHEREFORE, the Defendant respectfully, PRAYS and so Requests under this Demand for ruling upon the facts, relevant case law and precedents for IMMEDIATE DISMISSAL of the above entitled action, with prejudice, formed first on the erroneously filed State Petition.  Upon the good finding and grounds for Dismissal with prejudice of the Plaintiff's cause of action under the well established rules embodied in Federal Rules of Civil Procedure (FRCP) Rule 12 or 12(b) and Rule 12(b)(2), including without limitation those rules under FRCP 12b.

### *INTERLOCUTORY APPEAL - Motion of Stay on Adverse Ruling with Certification:*

The Pro Se defendant attempting best efforts as a native born american citizen, who is educated and can both read and write, the requirements under law to submit filings to this Honorable Court, requests, asks, and begs of this Honorable Court for an IMMEDIATE STAY,

upon any adverse finding. The Defendant will be <u>filing interlocutory appeal</u> in this matter, upon any adverse findings and/or order of this honorable court against the interests, substantial justice to the defendant. It is the belief of the defendant that an interlocutory appeal is: "**A party's application to an appellate court challenging a non-final trial court order that decides an issue but does not result in final judgment."  Bifurcated appeals to the District Court Judge and/or 10th Circuit Court of Appeals and the Federal Court of Claims is warranted given the implication that SLAVERY exists in some form according to the once in a course amendments made by Chad Mitchell Koehn, in the amended complaint which not only removed the RACIAL SLUR as required by the Court Order but made substantial changes to the complaint/petition to include verbiage of OWNERSHIP of Humanbeings by Chad Mitchell Koehn etAl., against the interests of Kansas and US Constitutions.**

Whereas here for the obvious reasons as plead in the interests of fairness and judicial equity, Kansas cannot enjoy personal jurisdiction over the defendant, the matter at bar is RETALIATORY, and demonstrates clear COLLUSION in conspiracy with the plaintiffs by and through the "partner in deception, Craig Alan Brand and <u>his various well documented conflicts of interest.</u>  The plaintiffs have not in good faith sought litigation, instead laid in wait to litigate via surprise, seeking default judgment only after they lost their final appeal to a 3 Justice panel in NEVADA, after the "partner in deception" attempted to get a new Judge.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285,* and "a pro se complaint [pleading], however inartfully pleaded, **must be held to less stringent standards than formal pleadings drafted by lawyers**," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* (***"All pleadings shall be so construed as to do substantial justice"***). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

<u>Respectfully Submitted, this 14th day of May 2022,</u>

<u>Michael Nelson - Pro Se</u>

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: <u>oklahomaremote</u> @ gmail.com