# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| United Capital Management of Kansas, Inc. and CHAD M. KOEHN<br><br>                     Plaintiffs,<br>        v.<br>Mike Nelson<br><br>                Defendant ;    PRO-Se. | DOCKET NO.:    5:22-CV-04008-JWB-GEB<br>## CIVIL ACTION<br>**Memorandum of Law in Support of Motion to Dismiss  FRCP Rule 12 & Other FRCP RULES Cited Case Precedents**<br>[Jury Trial Demanded] |

Here Comes defendant Michael Nelson, via this "SPECIAL and Limited APPEARANCE" PRO SE defendant, having lawfully removed the petition (erroneously filed to the wrong court) to the US District of Kansas and so does submit Pro Se, MEMORANDUM of Law in Support **Motion to Dismiss** and other deficiencies, motion is fairly embodied under Rule 12 FRCP, collectively, states and alleges:

28 U.S. Code § 1391  The federal courts' venue statute is **designed to protect the defendant against the risk that a plaintiff will select an inconvenient,** or even arbitrary, district to pursue a lawsuit.   [*Leroy v. Great W. United Corp.*, 443 U.S. 173, (1979).] Providing that venue in civil actions is proper in any of the following:

A.) *a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located*;  THE DEFENDANT DOES NOT RESIDE IN KANSAS, the Defendant has NO contracts or contacts in KANSAS;  The defendant is the SOLE defendant in the matter,  Defendant was at all times an EMPLOYEE in NEVADA, litigation in Kansas creates an undue hardship where at some point the defendant will be unable to continue defense and the plaintiffs will have achieved an unjustified victory against the interests of justice and to the detriment of the American People, the citizenry as a whole.  IN FACT the plaintiffs are using this frivolous, **malicious action as a weapon in predatory collusion of retaliation for findings against the plaintiffs collectively in employment judicial proceedings in the defendant's home state of NEVADA**.  Where the defendant was last employed by the genesis corporation, ANTHEM VAULT INC. which is the genesis of illegal spinoffs, and an illegal "short-form" merger created from corporations in NEVADA, texas and Delaware, which created a new corporation in Delaware, which the plaintiffs collectively list ADV **conflict of interest** regarding, see page 23 and 24 of Document 40-1, where the Court has taken Judicial Notice of

the legal document signed by CHAD MITCHELL KOEHN under the penalties of PERJURY and on behalf of United Capital Management of Kansas Inc. towit CHAD MITCHELL KOEHN publicly declares a conflict of interest between himself the signer and United Capital Management of Kansas Inc. and that of Anthem Holdings Company created to hold the NEVADA corporation Anthem Vault Inc.

https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.40.1.pdf

After having noticed the Court for Judicial Notice of the document above referenced in Document Number 40 above, CHAD MITCHELL KOEHN, then removed ANTHEM HOLDINGS COMPANY, from the new filing in March of 2022, demonstrating clearly FRAUD, wherein CHAD MITCHELL KOEHN spontaneously claims no conflict of interest exists after the evidence is entered into the FEDERAL DOCKET. Wherein Document 56-2 ADV from March of 2022, a true and correct copy is found in the Internet Archives, referencing this case: https://ia902500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.56.2.pdf

The Plaintiff's newest ADV filed in March of 2022, removes the conflict of interest between United Capital Management of Kansas Inc. and CHAD MITCHELL KOEHN, regarding the contested illegal holding company Anthem Holdings Company (a DELAWARE Corporation), and instead places a new conflict regarding RED NECK high tech yacht fund LP, as a CRYPTOCURRENCY HEDGE FUND, with CHAD MITCHELL KOEHN & JERRY HARRIS listed as "Manager of the Investment Manager of the Issuer.", where in the Court has previously taken judicial notice.  Demonstrating clear FRAUD and evidence spoliation.

https://www.sec.gov/Archives/edgar/data/0001885372/000183646021000038/xslFormDX01/primary_doc.xml
and then have issued press releases claiming investment in yet a third party corporation not so stated in the ADV's filed by plaintiffs; WHEREAS all corporations lead back to the genesis corporation and disputes arising in the US STATE of NEVADA, the defendant's home state. Anthem Holdings Company is an illegal SHORT FORM merger as an attempt by CHAD MITCHELL KOEHN and his PINKERTON criminal associates to commit MONEY LAUNDERING in the illegal combination of businesses including the hiding of CRYPTOCURRENCY market manipulations from the GRAND CAYMAN ISLANDS tax EVASION jurisdiction.  Certainly showing culpability in attempts to HIDE and otherwise CONCEAL the true relationship of the MONEY LAUNDERING and certain FRAUD now well demonstrated in the filings before the Court, demonstrating clearly how CHAD MITCHELL KOEHN and his co conspirators in predatory collusion to commit financial FRAUDS including mail and wire fraud, are willing to obsurfacate evidence now before the Court, having taken Judicial Notice of the same as CHAD MITCHELL KOEHN attempts to hide the facts which are clear on the record demonstrating clearly the US District of Kansas is not the correct venue for litigation given the hardships presented to the PRO SE defendant as CHAD MITCHELL KOEHN works in predatory conspiracy to continue the criminal RICO enterprise to which he is instrumental mastermind in the "SMURFING" of capital in and out of TAX EVASION
====================================================================================

jurisdiction to the detriment of investors in the US DISTRICT OF NEVADA and NEW YORK. Similar to the concealment of funds and nature of businesses which CHAD MITCHELL KOEHN continues in illegal operation in the State of Kansas, which maintain their nexus in other States or foreign TAX EVASION jurisdictions UCM Fund Advisors is listed as the General Manager (partner) of the RED NECK crypto currency hedge fund managed by CHAD MITCHELL KOEHN and JERRY HARRIS, which this Court has already denied WRIT regarding the illegal actions, said Order denying the issuance of the WRIT has been dutifully and timely appealed for cause, none-the-less the reasons so stated for the DENIAL included the PRO SE defendant not having standing nor protection of the laws of the State of Kansas as the PRO SE defendant is not a citizen or Kansas.  Ergo without the protections of law this Court cannot maintain personal jurisdiction over the person of the PRO SE defendant.

B.) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated*; In Accordance with Calder test or other below … Defendant submits there are no actions in Kansas, the Plaintiff must submit affidavits of witnesses, allowing Defendant to perform in depth investigations into said witnesses; AND the Plaintiff must provide the NAME, ADDRESS and other contact information for each and every client/customer of the Plaintiff Corporation and the amount of holdings for each and every client/customer together with revenue received from each, which should also be forwarded to the IRS-CI for use in the series audits being conducted and revisit this motion to dismiss as the FACTS, demonstrate clearly this is a continuation of already litigated matters in the US District of Nevada, specifically in the **Nevada** Court findings in FAVOR of the defendant, being appealed relentlessly by plaintiffs to their collective detriment, most recently 12 January 2022, THREE JUSTICE panel found AGAIN in favor of the defendant.

In determining where a "substantial part" of the claim occurred, courts will not merely look at the single triggering event prompting the action, but **rather at the entire sequence of events underlying the claim.** *Henderson v. Laser Spine Inst. LLC*, 815 F. Supp. 2d 353, (2011). In *Henderson v. Laser Spine Inst. LLC*, the federal court in the District of Maine held that it was

the proper venue for a dispute over fraud, negligence, and intentional infliction of emotional distress. The court looked at how the defendant company had years [emphasis added] of contact with the plaintiff in the state of Maine prior to his filing a lawsuit and determined that this was sufficient contact with Maine even if some of the alleged actions occurred elsewhere. *Henderson v. Laser Spine Inst. LLC*, 815 F. Supp. 2d 353, (2011). **WHEREAS** here the defendant's contact has always been in the US State of Nevada, where the defendant was employed **and the judicial proceedings occurred. The plaintiffs working in COLLUSION with others have appealed a multitude of times several Judicial findings and were recently denied their appeal to a three JUSTICE panel, EACH and EVERY Time being found in favor of the defendant!** The Defendant has NO contacts with forum State and is a **"SIGNIFICANT EQUITY INTEREST"** holder, as per the corporate counsel of the corporations, in the US District of NEVADA. The plaintiffs through collusion have continually LOST all appeals in the US District of Nevada.

If neither §1391(b)(1) or §1391(b)(2) are satisfied, then the fallback provision, §1391(b)(3), kicks in and courts will deem venue appropriate in any judicial district where any **defendant is subject to personal jurisdiction. [EMPHASIS ADDED]** *Jonathan Segal, "Federal Courts Jurisdiction and Venue Clarification Act of 2011," 36 AK Bar Rag 16, (2012).* The Defendant cannot have personal jurisdiction in a State which refuses to provide protections of the law to the Defendant, as the forum State cannot have it both ways to assert personal jurisdiction, yet DENY the defendant equal protection under the law, in violation of the 14th amendment. The defendant was employed in NEVADA, it was the courts and tribunals in NEVADA that held the trials, and hearings, it was the plaintiffs who have had ALL appeals summarily found in FAVOR of the defendant. JUSTICE does not then allow the plaintiffs to

wield a weapon of malicious, frivolous petition in a State Court in a forum State where the defendant has never been, has performed no work, made no trips, and has no contacts.

The question of whether the defendant can be forced to appear and litigate the issue becomes circular: "**a court cannot decide whether a tort has been committed without jurisdiction, but it cannot determine whether jurisdiction exists without deciding whether there was a tort.**"; *Ann Althouse, The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis, 52 FORDHAM L. REV. 234, 247 (1983) (analyzing the "inextricable merits" problem in conspiracy-based jurisdiction); Kevin M. Clermont, Jurisdictional Fact, 91 CORNELL L. REV. 973, 978 (2006)*

<u>By</u> moving to dismiss pursuant to rule 12 (b) (2) '<u>within a reasonable time</u>, prior to <u>substantially participating in discovery</u> and litigating the merits of the case.'" *AIIC v. Ziabicki, 468 Mass. 109, 119 (2014), quoting Raposo v. Evans, 71 Mass. App. Ct. 379, 385 (2008) (Emphasis added).* IF it pleases the Court astute readers will note the court's near miss on the theme: "<u>merits of the cause.</u>"   There has been no responsive pleadings as to the litigation of the <u>merits of the cause</u>, as the cause itself has NO MERITS.   There has yet to be any discovery, therefore there cannot have been "substantial" discovery, having no discovery at all, as the quoted case cites "substantial".  The petition is filed for use in harassing, **intimidation**, **<u>RETALIATION all via COLLUSION</u>**, it ia direct whistleblower retaliation harassment litigation, after many multiple appeals by plaintiffs have been settled in favor of the defendant! This is about wasting the time of the defendant, <u>wasting the time and money of the government</u> and for the explicit purposes of harassment, certain Defamation, SLANDER, Libel, and

INTIMIDATION of Witnesses (WHISTLEBLOWERS), as **plaintiffs act with PREDATORY RETALIATORY COLLUSION.**

A 1997 case, *Dee-K Enterprises v. Heveafil*, illustrates the fallback provision in action. Two American manufacturers sued a number of Malaysian, **Indonesian**, and Thai companies, alleging an international conspiracy to restrain trade for rubber products. *Dee-K Enters. v. Heveafil SDN. Bhd., 982 F. Supp. 1138, (1997).*

As a result, the venue was only proper in the Western District because **that's where the defendant was subject to the court's personal jurisdiction**. **WHEREAS here the Court cannot maintain or argue for personal jurisdiction of the defendant where the defendant is not a subject citizen of the forum state of Kansas and is not eligible for equal protections under the laws of the State of Kansas as has been previously summarily denied to the defendant.** This matter must be dismissed as a matter of law for lack of personal jurisdiction and/or removed to the DISTRICT OF NEW YORK, Nevada or Massachusetts.

Richard Broude, a highly respected bankruptcy attorney, once wrote, **"*Jurisdiction is about power; venue is about location.*"** Richard F. Broude, "Jurisdiction and Venue Under the Bankruptcy Act of 1973," 48 Am. Bankr. L.J. 231, (1974).

WHEREIN here the Plaintiff's wield total power and control s**eeking to obtain an unfair advantage while simultaneously using HATE SPEECH, to INTIMIDATE**, DEFAME, HARASS, ANNOY, INSULT, both the Court and certainly the person of the Defendant in this matter. Through their deliberate attempts to litigate via surprise and seek a default judgment **using unfair processes and confidential i**nformation obtained illegally **in their improper service [emphasis added] of the defendant while the defendant was being unlawfully detained through malicious prosecution using fraudulently induced evidence orchestrated by Cynthia D. Blanchard**, who lied to police and law enforcement claiming a protective order was violated, when IPSO FACTO Cynthia D. Blanchard knew no protective order existed or ever did exist at the time of her false swearing in sworn report to law enforcement. Cynthia D.

Blanchard co-conspirator of Plaintiffs set the wheels in motion for the unlawful detainment and murder attempts of the PRO SE defendant WHISTLEBLOWER. They collectively sought injury and DEATH of the defendant, acting with reckless malice; they reasonably believed injury or death to defendant, would occur through their use of RACIAL SLUR sending the same into a highly charged racial environment where their previous murder attempts had failed.

28 U.S. Code § 1391 The federal courts' venue statute is designed to **protect the defendant** against the risk that a *plaintiff will select an inconvenient, or even arbitrary, district to pursue a lawsuit. Leroy v. Great W. United Corp.*, 443 U.S. 173, (1979). PROTECTION of the Defendant is the very design of the venue in litigation. The Plaintiffs seek venue shopping after having lost multiple US State of Nevada appeals. Even as the plaintiff had the defendant served improper service of this petition, the 3 Justice board of review UNANIMOUSLY found AGAIN in favor of the defendant in NEVADA. Criminal defense attorney Craig Alan Brand, then took it upon himself and his law partner Logan Golema to harass telephonically and via cyber hacks and attacks the defendant. Craig Alan Brand has not only represented a plethora of underlying corporations, and holding companies, all of which the defendant is a SIGNIFICANT Equity Interest Holder (greater than 10% as defined by NEVADA LAW), but Craig Alan Brand, demonstrates CLEAR conflicts of interest, to his personal pecuniary gain, as a shareholder himself, representation of corporate interests in PREDATORY COLLUSION against the collective majority significant equity interest holders, inclusive of defendant.

[28 U.S. Code § 1391.]: **Insufficient process**, Plaintiff's sought through bad faith to litigate via surprise, conspired with others especially Anthem H. Blanchard, alleged criminal mastermind to unlawfully detain Defendant, though the use of fraudulent inducements to law

enforcement, now reported to and believed under Federal investigation by the FBI, the Plaintiffs seek to force improper insufficient process in hopes to prevent a responsive pleading and instead seek default judgment as a **continuation of purposeful witness tampering and  intimidation** to any other would be "WHISTLEBLOWERS' who the Plaintiff seek to "out their identities".

     **Insufficient service of process**.  The service of process was certainly incomplete and without the customary and necessary forms as <u>required to constitute fair and substantial justice allowing for responsive pleadings</u>, therefore the service of process was insufficient especially wherein the Plaintiff's intention was to defame, ridicule, molest, harass and cause the defendant RACIAL HATE, as is well previously plead in "NOTICE of REMOVAL to the US District Federal Court", and subsequently in document 5. Plaintiff's remove all doubt as to their bigotry and hatred causing a RACIAL SLUR of HATE SPEECH to appear on the first page of the petition, though counsel provides plausible deniability by stating "ERROR" and "FAILURE", demonstrating INCOMPETENCE in practice of law, yet their intention was physical injury and/or death of the PRO SE defendant after multiple murder attempts had failed.

     **The due process analysis in the determination of personal jurisdiction** <u>protects the defendant's due process right in</u> **"not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'** ***<u>As where herein the Defendant has NO meaningful contacts, ties, or relationships with the forum proposed district of the US State of Kansas.</u>***  The ***defendant has been DENIED equal protection under the laws of the State of Kansas***, <u>ergo inter-alia the US District Court for the District of Kansas cannot enjoy personal jurisdiction over the defendant, additionally the defendant is denied the equal protections of law under the State Laws of Kansas, for not being a resident thereof the forum State.</u>  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945))

The "principal inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign."; The Defendant was EMPLOYED, resided in and is a Citizen of the US State of Nevada, where underlying litigation has already taken place and the plaintiffs have been allowed a multitude of appeals (5) all found in favor of the Defendant. HOW can the defendant be held to personal jurisdiction if the defendant is denied protections of law by the State of Kansas?   The answer is simple, plaintiffs seek retaliation via predatory collusion, having lost many multitude of appeals in NEVADA, and seek venue shopping, of a frivolous malicious prosecution in a new forum/venue, having lost in NEVADA numerous times.

"The defendant generally manifests this intent by "purposefully avai[ling] itself of the privilege of conducting activities within the forum State, **thus invoking the benefits and protections of its laws.**" *Id. at 2787 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).* **WHEREAS here the Defendant is not eligible for protection in Kansas, NOR can the defendant re-litigate AGAIN the many times litigated disputes in NEVADA, where the defendant, lived, resides and was employed.**

**Relevant "minimum contacts"** may include in-forum trips, sales, contracts, or other voluntary connections with the forum.  See, e.g., Burger King, 471 U.S. at 462 (concluding that franchise and contract activities could give rise to jurisdiction); *Int'l Shoe Co. v. Washington, 326 (1945)* (basing jurisdiction on in-state commercial activity).   WHEREAS here the Defendant has ZERO interaction with the state of Kansas, NO Sales, NO Contracts, no other voluntary connections knowingly with any entity in the forum state, nor ever stepped foot in Kansas. Minimum contacts are some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thereby invoking the protection of those laws while at the same time creating the reasonable expectation that it could be haled into court to

answer to them. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).* Here the plaintiff's word cannot be taken as CHAD MITCHELL KOEHN a known PERJURER cannot be taken at face value in any affidavit as CRAIG ALAN BRAND so produces in his book, "I don't care what mom says: LIFE SUCKS: he authored his words:

"...**wham,** you are in court and the accused must go through a long, **lengthy, tiring,** *stressful* and *expensive process* **merely to prove his or her innocence.** In spite of what you have read about our system of justice, **we are all guilty until proven innocent**, and we are all **innocent until we run out of money...** people wind up **paying some form of legal extortion** just to get out of the drama. The bad guys and their shyster lawyers know it." id page 97

**"The contacts supporting jurisdiction cannot be merely fortuitously associated with the forum seeking to exercise jurisdiction."** *Nicastro, 131 S. Ct. at 2801*
U.S. Supreme Court Test Calder v. Jones:

In 1984, the U.S. Supreme Court established a three-part "effects" test to determine personal jurisdiction where a suit alleges the commission of an intentional tort. *See Calder v. Jones, 104 S.Ct. 1482 (1984).* Recently, the Supreme Court has sharpened the scope of *Calder*. *In Walden v. Fiore, 134 S.Ct. 1115, 1122-1123 (2014)* the Court held that a plaintiff cannot establish personal jurisdiction by claiming an intentional tort within a forum state *without more*; it is conduct and contact of a defendant the courts must look at:

**"First**, relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State. Due process limits on the State's adjudicative authority **principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties . . ."**

**Second**, our 'minimum contacts' analysis looks to defendant's contacts with the forum State itself, **not defendant's contacts with persons who reside there [EMPHASIS ADDED]**...

**Third**, [T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him . . . [EMPHASIS ADDED] Same principles

apply when intentional torts are involved . . . A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." ***Walden v. Fiore, 134 S.Ct. at 1122-1123. (Emphasis added.)***

Jurisdiction refers to a federal court's "power to adjudicate." *Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, (1939).* However the court here has neither the power to adjudicate, since it lacks in both personal jurisdiction and total universal jurisdiction in the forum State as contemplated by the Federal Rules and Venue in the matter is improper as the intention of the Plaintiff as the record dictates was to lay in wait, and litigate via surprise ONLY after all its appeals were exhausted in the State of NEVADA. Here it is the PRO SE Defendant who has REMOVED the incongruous malicious state petition replete with racial slur to the FEDERAL COURTS. Given the Plaintiff's collective refusal to attempt any service of process in the matter until they LOST all appeals including the THREE JUSTICE Panelization in NEVADA. And the plaintiff predatory retaliation in collusion to have the defendant murdered had failed. Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, 480 U.S. 102, 113 (1987). The plaintiffs used their illegally obtained knowledge of the location of the defendant to make improper service after murder attempts had failed. The plaintiffs then waited until they believed with their co-conspirators in collusion they had achieved their goal of entrapping and unlawfully detaining the person of the defendant. It is obvious and evident the Plaintiff's did not believe this matter would be removed for cause to the US Federal Courts, as is obvious through their use of HATE SPEECH, a juvenile written petition, in which they know would not be tolerated as norm within the US Federal Courts, otherwise they would have filed in the Federal Courts to begin with. The plaintiffs sought default judgment, believing the defendant would be unable to respond, the plaintiffs only sought service AFTER their final appeal in NEVADA. They laid in wait and

conspired with others in COLLUSION, all in attempts to secure a default judgment, seeking

MILLIONS of shares of stock in underlying corporations of the US District of NEVADA, as

their bonus during what is evident RETALIATORY, harassing, intimidation via the judicial

process, after not agreeing with the Judicial Officer in NEVADA, having lost their appeal to the

3 Justice Panel where they sought a new Judge, for a new hearing. The plaintiffs believed they

could achieve a default judgment against the defendant and then use the same to "out"

WHISTLEBLOWERS within their organisations using the default judgment and their mens rea

of litigation by surprise as a WEAPON against any would be WHISTLEBLOWER(s). Possibly

more than one given the wording used by the Plaintiffs. The Plaintiff's purposefully seek to

cause hatred, ridicule, contempt against the PRO SE defendant and others based on protected

classes and use the default judgment as a WEAPON, to intimidate any would-be witnesses in

their criminal enterprise RICO from speaking with or reporting to State and Federal Officials

their ongoing criminal enterprise. Venue rules determine where litigation may take place with

greater precision than that of jurisdiction. *Mitchell Page, "After the Judicial Improvements Act*

*of 1990: Does the General Federal Venue Statute Survive as a Protection for Defendants?," 74*

*U. Colo. L. Rev. 1153, (2003). Federal WHISTLEBLOWER protections attach.*

       Personal jurisdiction deals with whether it's proper to hail a defendant before any court in

a specific state, while determining venue deals with whether it's proper to hail a defendant before

a specific district court in a state with multiple districts or in a given county in a state court

proceeding. Mitchell Page, "After the Judicial Improvements Act of 1990: Does the General

Federal Venue Statute Survive as a Protection for Defendants?," *74 U. Colo. L. Rev., (2003).*

       Although federal courts had previously taken a narrow view of *Calder* (*see, e.g. Johnson*

*v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010), where the Eight Circuit stated "We therefore

construe the *Calder* effects test narrowly, and hold that, absent additional contacts, **mere effects in the forum state are insufficient to confer personal jurisdiction.**", the holding in *Walden* provided solid footing for other federal courts to adopt similar views. For instance, the Seventh Circuit has fully embraced the rationale behind *Walden*. *In Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc., 751 F.3d 796, 802 (7th Cir. 2014)*, the Court held: ***"The question whether harming a plaintiff in the forum state creates sufficient minimum contacts is more complex.*** Compare *Wallace v. Herron,* "We do not believe that the Supreme Court, in *Calder, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state,* where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." [EMPHASIS ADDED]  Although those two cases may be in some tension with one another, after *Walden* there can be no doubt that *'the plaintiff cannot be the only link between the defendant and the forum.'* Any decision that implies otherwise can no longer be considered authoritative." (*Emphasis added.*)"

The USSC (United States Supreme Court) released two personal jurisdiction opinions during the 2010 term, it denied two petitions for certiorari that it had been holding for resolution of those cases.  Both of the denied petitions raised a similar question: *should a defendant who allegedly commits an intentional tort be subject to personal jurisdiction in the forum where the aggrieved plaintiff lives and works*, AND "**where the effect of the harm was therefore felt, even if the defendant has no other connection with the forum state?"** The answer is astoundingly NO, the Defendant **CANNOT and SHALL NOT be forced to litigate or be the subject of personal jurisdiction** simply because the Plaintiff makes claim to be harmed in the forum state.  To force the defendant to the forum state as proposed, creates a situation where one litigation continues to grow into many more, perhaps even warranting MDL as defined as Multi District Litigation; thereby creating a massive Complex web of Multi Jurisdictional Conflicts in numerous District Courts of the Federal Court System, thus within the interstate judiciary.  Allowing the plaintiffs to hale the defendant into the forum state of Kansas, after the

plaintiffs have lost numerous appeals in NEVADA, and do so for no other reason as is evident based on the docket to INTIMIDATE, HARASS and RETALIATE against the defendant through the use of COLLUSION with their "partners in deception" and "partners in criminal enterprise" [RICO], does not create either jurisdiction nor venue in the forum state, simply because the plaintiffs sought a "new Judge", in the NEVADA cases. Whereas here the Plaintiff's conduct interstate commerce in more than half a dozen different states NONE of which the Defendant resides, therefore the Court should not reward the Plaintiff's obvious "venue shopping" and evident shopping for jurisdiction and seeking to assert "personal jurisdiction" over the person of the defendant, without so much as a shred of evidence or assertion of the contacts within the contemplated forum State as surmised by the USSC. Given the fact the defendant is summarily denied equal protections under the laws of the forum State and the Plaintiff's readily admit on US Federal documents signed under the penalties of perjury to owe a fiduciary responsibility to corporations incorporated in the Defendant's home state, NEVADA.

The plaintiffs appealed to a 3 Justice panel who found in favor once again of the defendant and supported the finds of the previous Judge, though the plaintiffs sought to have a new Judge assigned. Since the Plaintiff's did as the record so dictates lay in wait with purposeful willful guilty mind to litigate by surprise seeking to conspire to entrap the defendant, in COLLUSION with others and then provide improper service of process in part in hopes to achieve a default judgment against the defendant in furtherance of a larger plan of RETALIATION, harassment, intimidation, threats in hopes to silence the defendant's cooperation with US FEDERAL regulators, US Attorneys, US and Foreign criminal investigators and *See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2846 (2011); J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2780-84 (2011). 2 Clemens v. McNamee, 615 F.3d 374 (5th Cir. 2010), cert. denied, 131 S. Ct. 3091 (2011); Kauffman Racing Equip., L.L.C. v. Roberts, 126 Ohio St. 3d 81, 2010- Ohio-2551, 930 N.E.2d 784, cert. denied, 131 S. Ct. 3089 (2011).* The petition for certiorari in Kauffman Racing phrased the question as **"[w]hether the Due Process**

**Clause permits a State to exercise personal jurisdiction over a nonresident defendant based solely on a claim that the defendant committed an intentional tort on the Internet knowing that the plaintiff resided in the forum State."** *Petition for a Writ of Certiorari, Roberts v. Kauffman Racing Equip., L.L.C., 131 S. Ct. 3089, 3090 (2011) (No. 10-617), 2010 WL 4494141, at *i.* The cert petition in Clemens asked, "Does the Due Process Clause require that a defamatory statement refer to a state and be drawn from sources in the state to permit the state to exercise specific personal jurisdiction over a nonresident defamation defendant?" *Petition for a Writ of Certiorari, Clemens v. McNamee, 131 S. Ct. 3091 (2011) (No. 10-966), 2011 WL 291140, at *ii. 4 See Larry Dougherty, Does a Cartel Aim Expressly? Calder Personal Jurisdiction When Antitrust Goes Global, 60 FLA. L. REV. 915, 927 & n.2 (2008).*

Because effects-test jurisdiction requires that the defendant intentionally target a particular forum, there can typically only be effects-test jurisdiction in one forum — even though there may be personal jurisdiction in multiple. *See, e.g., Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2001)* ("[W]e held that the Calder 'effects test' requires the plaintiff to show that: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.") (emphasis removed). *5 See Calder v. Jones, 465 U.S. 783, 789 (1984)  (3d ed. 1998)* "When a long-arm statute describes the basis for jurisdiction in terms of 'commission of a tortious act' or 'entering a contract,' the fact on which the defendant's susceptibility to jurisdiction depends also may be the ultimate substantive issue . . . . **The question of whether the defendant can be forced to appear and litigate the issue becomes circular: a court cannot decide whether a tort has been**

**committed without jurisdiction, but it cannot determine whether jurisdiction exists without deciding whether there was a tort.")**; Ann Althouse, The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis, 52 FORDHAM L. REV. 234, 247 (1983) (analyzing the "inextricable merits" problem in conspiracy-based jurisdiction); *Kevin M. Clermont, Jurisdictional Fact, 91 CORNELL L. REV. 973, 978 (2006)* (arguing that when jurisdictional facts are intertwined with substantive merits questions, the court should require more than a prima facie showing of jurisdiction). Defendant cannot be forced to appear.

A court in a given federal district may have subject matter jurisdiction to adjudicate the dispute's content and may have personal jurisdiction over the disputing parties; it may still decide to not hear the case because it is not the proper venue. Determining a proper venue is an exercise in geography. Some states, like Nebraska, only have one federal district which would serve as the venue in all federal cases brought in the state, while other states, like California, can have as many as four federal districts, any of which could be a proper venue depending on the facts of a federal case. *John Lenich, "A Simple Question That Isn't So Simple: Where Do Entities Reside For Venue Purposes?," 84 Miss. L.J. 253, (2015). Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).*

The Plaintiff's are not harmed nor prevented from refiling their frivolous allegations presented in the State Petition which has been removed to this honorable Federal Court. In fact a dismissal for the lack of personal jurisdiction in this matter is correct and proper and provides the Plaintiff's with a much needed opportunity to re-evaluate their claims, their personal joint and several liabilities, and perhaps retain effective counsel who do not utilize offensive racial epithets in public legal pleadings, no matter the personally held bigotry of the Plaintiff's themselves who regularly remove all doubt of their under educated backgrounds through their evident racial bias

against people of different races, colors, creeds, national origin and even native born american citizens, wherein the Supreme Law of the United States the United States Constitution, and even the Declaration of Independence so declared that "all men are created equal" **[EMPHASIS ADDED];** The Defendant in this matter does so herein file this Motion to Dismiss timely and without delay from the date and moment of lawful Notice of Removal of the action to the US District Federal Court:  The simplicity and reasoning is both reasonable, and without any delay in the movant making this lawful motion for DISMISSAL. "Parties who opt to raise such a defense in a responsive pleading may ensure its preservation <u>by moving to dismiss pursuant to rule 12 (b) (2)</u> 'within a reasonable time, prior to substantially participating in discovery and litigating the merits of the case.'" **AIIC v. Ziabicki, 468 Mass. 109, 119 (2014), quoting Raposo v. Evans, 71 Mass. App. Ct. 379, 385 (2008) (Emphasis added).**

      The Pro-Se non legally educated defendant, is at a material disadvantage to the MULTIPLE, seasoned attorneys (lawyers) who have signed the originating State Petition, though their educational limitation are well noted in their collective purposeful mens rea of malice with forethought in the use of HATE SPEECH, in writing within the originating pleading, "Petition", erroneously filed with the County of Saline district Court and so properly removed via Notice of Removal to the Federal Court in the US District of Kansas.  It is the movant of the person of the defendant that the defendant is forced by circumstance to present the defenses included herein without limitation as Pro-Per / Pro-Se and therefore so requests this Federal Court for leave to amend and refile this and any other motion or movement as necessitated <u>in the interests of substantial justice</u> hereto.  The Defendant further asks, requests and so states for this Honorable Federal Court, through only a lifetime Federal Jurist to broadly and widely interpret the filings, pleadings, motions, defenses, without limitation in the broadest means possible for the protection

of the rights of the defendant in all matters of law in the US Federal Courts, and under the constitutional rights of the defendant. The defendant so submits he is of the age of majority or more and is capable of both reading and writing, though lacks certainly the vocabulary and any legal education to be held to any proper format or other styling or filing within the Federal Courts of the United States of America. None-the-less in the interests of substantial justice and for the protection of the rights of the defendant in this matter the defendant so submits motions, pleadings without limitation in attempts to have the rule of law of <u>these the United States of America to be applied fairly and equally as intended by the founding fathers of these the United States of America.</u> To this end the Defendant, must read and become familiar with and educated on other such matters for example subject matter jurisdiction, if the above captioned matter is not dismissed the Defendant so preserves without limitation the right to raise objection and dismissal of this matter at trial, by a Jury of 12 of his peers, post-trial or even appeal via INTERLOCUTORY APPEAL to the Federal Court of Claims, due to the issues at bar, with regards to the "subject matter" and Personal jurisdiction of his honorable court. The Defendant is not intentionally upon oath or other affirmation nor lucre or malice not asserting an objection regarding the "subject matter jurisdiction", objection, but rather informing the Court and lifetime appointed Federal Jurist the Defendant is without the legal education nor knowledge to assert motion to dismiss for lack of "subject matter jurisdiction" at this time though as is obvious asserts motion for lack of personal jurisdiction against the person of the defendant in the forum State as well as to venue hereof. Therefore the Defendant does so herein reserve any other objection, and/or motion to dismiss including without limitation the aforementioned. Dismissal of this matter for lack of "personal jurisdiction" is correct and proper as to avoid unnecessary costs to the parties and to the courts by subjecting the parties and the courts to protracted

litigation and allowing one litigation to grow to many, when it is evident the this Court lacks "personal jurisdiction" over the person of the defendant in this above herein entitled matter.

A plaintiff bears the burden of showing that the Court has personal jurisdiction over the defendant. *Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1025 (2d Cir. 1997); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996); Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp. 297, 299 (D. Vt. 1997).* When a case is pre-discovery, the plaintiff satisfies this burden with "legally sufficient allegations" that present prima facie evidence of jurisdiction. Chaiken, 119 F.3d at 1025; Tom and Sally's, 977 F. Supp. at 299. This showing must be made through <u>affidavits</u> and <u>supporting material</u>, "notwithstanding a controverting presentation by the moving party." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Personal jurisdiction must be proven by a preponderance of the evidence, at an evidentiary hearing. *A.I. Trade Fin., Inc. v. Petra Bank, F.2d 76, (2d Cir. 1993).*

To determine whether there is personal jurisdiction over the defendant, the court should make a two-part inquiry. *Metro. Life, 84 F.3d at 567.* First, the court should review the forum state's long-arm statute. *Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).* If state law supports jurisdiction, then the court reviews whether such jurisdiction violates due process, which in this case the **defendant's Due Process rights under the constitution would be violated.** Kansas law might allow long arm statute "to the full extent permitted by the Due Process Clause." Therefore, the inquiry is reduced to one part: whether jurisdiction over the defendant comports with the standards of due process. Due Process analysis personal jurisdiction has two parts, which must be examined by the Court.

First, the court needs to evaluate whether the defendant has sufficient "minimum contacts" with the forum state. Second, if such contacts exist, the court reviews whether

jurisdiction based on such contacts is "reasonable under the circumstances of the particular case."   In order for a defendant to have "minimum contacts" with the forum state, jurisdiction must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws." *Sollinger v. Nasco Int'l, Inc., 655 F. Supp. 1385, 1387 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).*   Jurisdiction based on such action is justified because the defendant "should reasonably anticipate being hauled into court there." *Artec Distrib., Inc. v. Video Case 8 Playback, Inc., 799 F. Supp. 1558, 1560 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).* Accordingly, jurisdiction usually is not proper unless the defendant "actively initiate[s] contacts in a state," or "creates 'continuing obligations' between itself and the forum State."   Under Calder v. Jones, 465 U.S. 783, 788 (1984), intentional actions "directed at the plaintiff and having sufficient impact upon it in the forum <u>may</u> give rise to jurisdiction." *IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254.*

Court's exercise of jurisdiction <u>**over a person must be reasonable**</u>, and may not offend "traditional notions of fair play and substantial justice." *<u>Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).</u>*

The Supreme Court has held that courts may consider "'<u>**the burden on the defendant**</u>,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several State in furthering fundamental substantive social policies.'" *Burger King, 471 U.S. at 477 (quoting Woodson, 444 U.S. at 292).* **Appearing in Kansas will impose a burden on Nelson, ipso facto allowing plaintiffs to win without litigating.**   Kansas has NO interests in allowing the plaintiff to achieve "convenient and effective relief." where Nelson has no contacts in Kansas, nor the means to

travel to a State where the defendant has NEVER been and as no contacts or availment, therefore necessitating bifurcation of litigation and creation of ever growing Federal Cases in the Country.

The Forum State of Kansas certainly "offend[s] traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.2    Defendant submits that venue in Kansas is improper, and that this case should be "removed" **if not dismissed.**

In such a case**, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a)**. "It is generally held that assessment of venue merges into the personal jurisdiction analysis, and thus venue is proper anywhere there is personal jurisdiction." *Real Good Toys, Inc., 163 F. Supp. 2d at 425 (citations omitted); see also Microbrightfield, Inc. v. Boehringer, 2006 WL 306489, at *5 (D. Vt. Feb. 8, 2006); Anichini, Inc. v. Campbell, 2005 WL 2464191*

WHEREFORE Prayer for Relief given overwhelming case law, precedents, certain facts, defendant requests and prays for relief the case at bar, **be DISMISSED:**

(1) Lack of jurisdiction over the subject matter;
(2) Lack of jurisdiction over the person, of the Defendant
(3) Improper venue;
(4) Insufficiency of process;
(5) Insufficiency of service of process;

**WHEREAS this** properly filed Motion to Dismiss on the grounds so stated is filed TIMELY from the moment of "Notice of Removal ", and malicious petition at bar. An adverse finding or order adverse to the defendant is correct and proper in this matter to **request STAY** of the action pending the interlocutory appeal in regards to this motion of dismissal.

WHEREFORE, the Defendant respectfully, PRAYS and so Requests under this Demand for ruling upon the facts, relevant case law and precedents for IMMEDIATE DISMISSAL of the above entitled action, with prejudice, formed first on the erroneously filed State Petition.  Upon the good finding and grounds for Dismissal with prejudice of the Plaintiff's cause of action under the well established rules embodied in Federal Rules of Civil Procedure (FRCP) Rule 12 or 12(b) and Rule 12(b)(2), including without limitation those rules under FRCP 12b.

**_INTERLOCUTORY APPEAL - Motion of Stay on Adverse Ruling with Certification:_**

The Pro Se defendant attempting best efforts as a native born american citizen, who is educated and can both read and write, the requirements under law to submit filings to this Honorable Court, requests, asks, and begs of this Honorable Court for an IMMEDIATE STAY, upon any adverse finding.  The Defendant will be <u>filing interlocutory appeal</u> in this matter, upon any adverse findings and/or order of this honorable court against the interests, substantial justice to the defendant. It is the belief of the defendant that an interlocutory appeal is:  "**A party's application to an appellate court challenging a non-final trial court order that decides an issue but does not result in final judgment."    With appeal under Rule 72 and/or direct appellate review to the 10th Circuit Court of Appeals, with subsequent USSC Rule 22 Motion and bifurcation to the Federal Court of Claims, given the SLAVERY issues. Therefore the PRO SE defendant herein requests a STAY of the Proceedings pending appeals upon any adverse ruling to this motion to Dismiss, especially given the once in a course amendments made substantially altering the petition beyond the scope as Ordered by the Court in the REMOVAL of the RACIAL SLUR from the petition, whereas CHAD MITCHELL KOEHN etAL. has made addition to claim of SLAVERY and/or OWNERSHIP of "Proprietary Individuals", which by definition is OWNERSHIP of Persons (individuals).**   No other means of "ownership" or trust ownership is allowed under law nor rules see Rule 3241, of the Financial Industry Regulatory Authority.  *SMALL v. SECRETARY OF HEALTH AND HUMAN SERVICES Docket No. 89-6031,892 F.2d 15* (1989) the Court held that a PRO SE that "attempted to locate the specific Federal Rules of Civil Procedure cited at the end of the magistrate's report, none of those rules would have informed [pro se] of the potential waiver of appellate review... To require a pro se … to wade through the case law of this Circuit

in order to preserve … right to appellate review would be an unreasonable burden."   Section 206 of the Advisers Act prohibits misstatements or misleading omissions of material facts and other fraudulent acts and practices in connection with the conduct of an investment advisory business. (a) Except as provided in subsection (b) and section 203A, it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser.  Reg S-P requires broker-dealers, investment advisers, and investment companies to notify customers of their privacy policies and establish sufficient safeguards for their personal and financial information.   At the federal level, the Federal Securities Laws control most aspects of the securities industry. **The Federal Securities Laws consists of The Securities Act of 1933, which addresses the issuance of securities by companies, and The Securities Exchange Act of 1934, which governs the trading, purchase and sale of securities. These laws also authorize the Securities and Exchange Commission ("SEC"), the federal governmental agency with oversight and control of the industry, to issue further regulatory controls. Additional federal legislation like the Private Securities Litigation Reform Act and the Sarbanes-Oxley Act of 2002 also impact the securities industry and claims related to its practices.**  Conduct Rule 2010 is perhaps one of the shortest rules, however, it's arguably the most powerful rule with the most far-reaching effects. Rule 2010 requires that all investment firms, in the conduct of business, observe the **"highest standards of commercial honor and just and equitable principles of trade."** This rule is viewed as somewhat of a "catch-all" rule and it can punish unethical behavior <u>as well as violations of federal securities laws by imposing monetary sanctions</u>.  Rule 476(a)(6)-the so-called "J & E Rule"-subjects registered members to disciplinary sanctions for engaging in **"conduct or proceeding inconsistent with just and**

**equitable principles of trade."** This rule incorporates "broad ethical principles," and focuses on the "ethical implications of the [a]pplicant's conduct." Given the implications of SLAVERY and ownership of individuals as now contemplated by CHAD MITCHELL KOEHN in his "ONCE in a COURSE" amendment of the originating petition, The NYSE is a national securities exchange registered with the SEC pursuant to section 6 of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. § 78f, see Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 51 (2d Cir.1996), and, as such, is a "self-regulatory organization" ("SRO"), see 15 U.S.C. § 78c(a)(26). It therefore has a duty to promulgate and enforce rules governing the conduct of its members. *See id. §§ 78f(b), 78s(g); see also Barbara, 99 F.3d at 51.* These rules are subject to SEC approval, see 15 U.S.C. § 78s(b); Barbara, 99 F.3d at 51, and must be "designed to . promote just and equitable principles of trade," 15 U.S.C. § 78f(b)(5). **The US District of New York, makes sense for removal** given the underlying corporations located therein the US District of New York, and the regulatory familiarity with the implication of violation of SEC and/or regulatory authority rules of conduct as it relates to illegal short-form mergers and/or "smurfing" money laundering activities involving Crypto Currencies inclusive thereof. In no case can the US District of Kansas maintain personal jurisdiction over the person of the pro se defendant, to do so necessitates and willfully violates the covenants charged with the Federal Courts, by mandating a multitude of Federal Court litigations in a multitude of other US Districts, including without limitation the US District of New York, where Chad Mitchell Koehn claims "endorsement" by the US Department of Defense, Army Logistics Command, NASA and the United Nations (also headquartered in the US District of New York), to name a few of the many seals, logos and claims of Chad Mitchell Koehn and his conspirators in predatory collusion to violate RICO statutes. While Congress enacted the Exchange Act to **prohibit fraudulent**

===================================================================================
Memorandum of Law in Support of Motion to Dismiss FRCP Rule 12 & Other FRCP RULES Cited - 24

**practices in the securities industry**, it recognized that such legislation "must be supplemented by regulation on an ethical plane in order 'to protect the investor and the honest dealer alike from dishonest and unfair practices by the submarginal element in the industry' and 'to cope with those methods of doing business which, while technically outside the area of definite illegality, are nevertheless unfair both to customer and to decent competitor, and are seriously damaging to the mechanism of the free and open market.' " *VI Louis Loss & Joel Seligman, Securities Regulation 2796 (3d ed.2002) (quoting S.Rep. No. 75-1455 at 3 (1938);  H.R. Rep. No. 75-2307 at 4 (1938));  see also Avery v. Moffatt, 55 N.Y.S.2d 215, 228, 187 Misc. 576, 592 (1945)* "[S]ecurities trading is a highly complex field in which it is not always feasible to define by statute or by administrative rules having the effect of law every practice which is inconsistent with the public interest or with the protection of investors.   As a result there is a large area for the operation of Exchange rules on the level of business ethics rather than law, and in that sphere the statute leaves it to the Exchanges to carry on the necessary work of prevention and discipline.").   Such "[r]egulation of the ethics of an industry means a substantial degree of self-regulation, properly supervised by government."   *Loss & Seligman, supra, at 2796;  see also Silver v. N.Y. Stock Exch., 373 U.S. 341, 352-53, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963)* (discussing Congress's intent for SROs to police the securities industry to reform unethical practices in the industry).   Thus, in accordance with the Exchange Act, 15 U.S.C. § 78f(b)(5), the NYSE adopted, with the approval of the SEC, the J & E Rule, which prohibits registered members from engaging in **"conduct or proceeding inconsistent with just and equitable principles of trade."; presumably this includes the OWNERSHIP of INDIVIDUALS (SLAVERY).**  It has long been the view that the J & E Rule is designed to enable SROs to regulate the ethical standards of its members.   See, e.g., Loss & Seligman, supra, at 2809 n. 30.

SEC precedent is clear on this point.   In In the Matter of Benjamin Werner, 44 S.E.C. 622, 1971 WL 120499 (July 9, 1971), the SEC rejected the petitioner's argument that NASD's J & E Rule 5 could only be violated by an unlawful act.   The SEC noted, "We have long recognized that [the J & E Rule] is not limited to rules of legal conduct but rather that it states a broad ethical principle which implements the requirements of Section 15A(b)" of the Exchange Act. Id. at *2 n. 9 (emphasis added).   It explained that "the NASD through its disciplinary powers can and should play an important role in improving the ethical standards of its members, subject always to their rights to obtain review by this Commission and the courts."   Id. at *2;  see also In the Matter of the Application of William F. Rembert, 51 S.E.C. 825, 1993 WL 483197, at * 1 n. 3 (Nov. 16, 1993) ("We have long recognized that [the NASD J & E Rule] states broad ethical principles . Section 15A(b)(6) of the Exchange Act empowers self-regulatory organizations, such as the NASD, to discipline their members for unethical behavior, as well as violations of law." (emphasis added));  In the Matter of the Application of Timothy L. Burkes, 51 S.E.C. 356, 1993 WL 119769, at *3 (Apr. 14, 1993) ("As the Commission has stated previously, disciplinary hearings to require compliance with 'high standards of commercial honor and just and equitable principles of trade' are ethical proceedings;  hence the concern is with ethical implications of the Applicant's conduct."). **Courts have echoed this principle.**   As early as 1966, Judge Friendly noted that the J & E Rule is "something of a catch-all which, in addition to satisfying the letter of the statute, preserves power to discipline members for a wide variety of misconduct, including merely unethical behavior."   *Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 182 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).   The Ninth Circuit has held the same.   See Erdos v. SEC, 742 F.2d 507, 508 (9th Cir.1984)* ("An NASD violation **does not require that the dealer act with scienter**.");  see also generally *Alderman v. SEC, 104 F.3d 285*

*(9th Cir.1997).* The J & E Rule's concern with unethical conduct is consistent with the NYSE rules' "special focus" on the "professionalization of the securities industry." *Gustafson v. Strangis, 572 F.Supp. 1154, 1158 (D.Minn.1983).* The Defendant is being "bullied" by "shyster" attorneys; [term "shyster" accredited to the "partner in deception" Craig Alan Brand in his book … "I don't care what Mom Says: LIFE SUCKS" page 97]. The term "shyster" means "word for someone who acts in a disreputable, unethical, or unscrupulous way, especially in the practice of law"; https://en.wikipedia.org/wiki/Shyster CRAIG ALAN Brand states: "Lady Justice is not only blind but corrupt and susceptible to biased pressures. The legal system, different than a justice system, works best for the wrongdoers, liars, extortionists, blackmailers, the wealthy, criminals and the insane." id page 98 "LIFE SUCKS". The pleadings are measured by well settled standards. An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325 (1989). CRAIG ALAN Brand's statements:* **"Lady Justice is truly blind, blind to justice."** *id. Page 26; as Craig A. Brand states:* **"Today's legal system protects the wicked and taxes the innocent."** *id. Page 26;* here the PRO SE defendant is truly the innocent WHISTLEBLOWER and obviously as the docket reflects Chad Mitchell Koehn etAl and his gaggle of attorneys from nearly half a dozen firms are the protected "wicked". In turn, a complaint fails to state a claim when it lacks "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).* Facial plausibility is present when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 678. The standard demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. Id From Craig Brand's Book: "...wham, *you are in court and the accused must go through a long, lengthy, tiring, stressful and expensive process merely to prove his or her innocence. In spite of what you have read about our*

system of justice, **we are all guilty until proven innocent, and we are all innocent until we run out of money**… *people wind up paying some form of legal extortion just to get out of the drama*. **The bad guys and their shyster lawyers know it.**" id page 97 "LIFE SUCKS" by PRO HAC VICE Counsel Craig Alan Brand, who filed the perjury riddled affidavit in Document 24-1 with the Court."I [Craig Alan Brand], for instance, have championed the art of disinformation. **I intentionally provide people [COURTS] with false information** [EMPHASIS ADDED] p.118 A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do. *Iqbal, 556 U.S. at 678*. Nor would it suffice if it tendered naked assertions devoid of further factual enhancement. Id Whistleblowers, or employees who report the illegal activities and violations of their companies, **cannot be punished**, harassed, demoted, and terminated by their employers. Federal law prohibits employers from retaliating against workers who will file a lawsuit against them. CRIMINAL PENALTIES are called for and available to the Courts regarding WHISTLEBLOWER retaliation, especially in furtherance of RICO violations Civil and Criminal, wherein CHAD MITCHELL KOEHN continues to be subject of the PINKERTON protocol at issue in the ongoing conspiracy via predatory collusion in the attack of whistleblowers and those who report criminal wrongdoing to the government. The plain meaning of Title ix of the Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations, ("RICO"), *18 USc. § 1964(c)*, conveys standing to persons who are **victimized by their attempts to disclose or oppose racketeering activities under civil RICO provisions.** Under long-standing rules of statutory construction, as articulated in *Caminette v. United States, 242 US. 470, 490 (1917)*, if the plain meaning of the statute does not lead to an absurd or impracticable result, the plain meaning must be followed. Applying this rule to 18 USc. § 1964(c), the statute unquestionably conveys standing to persons "injured" in their

=======================================================================

"property" (i.e., loss of employment), and when they are victimized **"by reason of" exposing**

**their employer's RICO violations.**   The docket to date already provides proof positive and

recognized judicial notice, necessary to meet RICO requirements, for adjudication to those

fostering Congress' intent to eradicate illegal racketeering, especially in investments. *Hagman v.*

*Washington Mutual Bank, Inc., 2005-SOX-73, 2006 WL 6105301, \*32 (Dec. 19, 2006).*

Whereas here for the obvious reasons as plead in the interests of fairness and judicial

equity, Kansas cannot enjoy personal jurisdiction over the defendant, the matter at bar is

RETALIATORY, and demonstrates clear PREDATORY COLLUSION in conspiracy with the

plaintiffs by and through the "partner in deception, Craig Alan Brand and his various well

documented conflicts of interest.   It is evident based on the docket and record the plaintiff's

working in predatory collusion have and continue to violate Civil and CRIMINAL RICO statutes

against the *Organized Crime Control Act of 1970, Pub. L. No. 91-452, 1970 USC.C.A.N. (84*

*Stat.) 922 (emphasis added).   In Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162 (3rd Cir.*

*1989),* the court of appeals found standing for an employee terminated for making disclosures

about her employer's alleged RICO violations.  It is not just the multiple murder attempts against

the defendant that form the basis of RICO violations, but as evidence the BRIBERY of foreign

officials in drug matters originating outside of the District of Kansas, DEATH THREATS made

by the RICO participants, MONEY LAUNDERING, SLAVERY (as already admitted to by the

plaintiffs own hand in their once in a course amendment to their petition).  The plaintiffs have

not in good faith sought litigation, instead laid in wait to litigate via surprise, seeking default

judgment **only after they lost their final appeal to a 3 Justice panel in NEVADA**, after the

"partner in deception" CRAIG ALAN BRAND attempted to get a new Judge, on basis of race, as

he disagreed with the African American Female Judge in NEVADA.   The case at bar is

predatory collusion in RETALIATION of employment related WHISTLEBLOWER in

NEVADA.  Pinkerton Doctrine so does attach to CHAD MITCHELL KOEHN etAl. in his

retaliatory styled frivolous petition, in a district which does not maintain personal nor subject

matter jurisdiction in the matter nor over the person of the defendant.

Notice No Actions Here shall Preclude Pro Se Defendant from joining Class Actions against any

now or future Plaintiffs and/or any and all Counter or Cross Defendants.  Pursuant to the Class

=======================================================================

Action Fairness Act 28 U.S.C. § 1332(d) ("CAFA"), and because upon information and belief the proposed Class Action consists:   (i) the proposed class consists of well over 10,000 Members;   (ii) the parties are minimally diverse, as Members of the proposed class, are citizens of states with different home states;   and (iii) the aggregate amount in controversy exceeds $350,000,000, exclusive of interest and costs.   PRO SE Defendant is ipso facto, de facto member of the Putative Class Members to said Class Action(s) lawsuits against including without limitation conspirators United Capital Management of Kansas Inc. and Chad Mitchell Koehn in regards to Anthem Holdings Company and HERC crypto stock currency token.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

Respectfully Submitted, this 16th day of May 2022,



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com