**UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS**

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD Mitchell KOEHN**<br><br>　　　　　　Plaintiffs,<br>　　v.<br>Michael Nelson<br><br>　　　　　Defendant ;　PRO-Se. | <mark>**DOCKET NO.:**<br>**5:22-CV-04008-JWB-GEB**</mark><br>**CIVIL ACTION**<br>**Preliminary ANSWER**<br>**with Cross and Counter Complaints and**<br>**Joiners**<br><br>**[Jury Trial Demanded]** |

<u>**COUNTER CLAIM AND CROSS COMPLAINT**</u>

This action arises under the whistleblower protection provisions of the Sarbanes-Oxley Act, 18

U.S.C. § 1514A et seq. and the whistleblower protection provisions of the Dodd-Frank Act, 15

U.S.C. § 17u-6 et seq. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, as well as under 28

U.S.C. § 1343(a)(4), and 28 U.S.C. §§ 2201 and 2202. This suit is authorized and instituted

pursuant to the above federal statutes. The jurisdiction of the FEDERAL COURTS, not

necessarily this US district federal court as the pro se defendant has filed motion to dismiss

and/or remove the underlying petition.  The District Federal Courts of the United States are

invoked to secure protection of and to redress deprivation of rights secured by the

Sarbanes-Oxley Act and the Dodd-Frank Act.


In addition thereto the False Claims Act and under the protections to whistleblowers as embodied

by the FINCEN (quoted by CRAIG ALAN BRAND the "partner in deception" in his oral

testimony before the Court even granted his application for Pro Hac Vice status by way of the

perjury in the affidavit in document 24-1 of this Federal docket).   This court has ancillary

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 1

jurisdiction of the state law claims (NEVADA) because they are sufficiently related to the federal

claims, though the Court has to date refused to extend the protections of law of the State of

Kansas under the fair business practices act to the person of the defendant as would normally be

required under the 14th Amendment to the United States Constitution, hence the defendant has

previously filed Motion to dismiss due to lack of personal jurisdiction and inclusive without

limitation lack of subject matter jurisdiction as to the claims of the plaintiff's collectively and

severally in this action.

The Racketeer Influenced and Corrupt Organizations Act (RICO) creates a civil cause of

action for "[a]ny person injured in his business or property by reason of a violation of section

1962." 18 U. S. C. § 1964(c). Subsection (d) of § 1962 forbids "any person to conspire to violate

any of the provisions of subsection (a), (b), or (c) of [§ 1962]." Petitioner is  the Counter

Claimant and therefore by reason the Counter Plaintiff in this action against CHAD MITCHELL

KOEHN and United Capital Management of Kansas Inc.   Respondents thus Counter Claim and

Cross Claim defendant's CHAD MITCHELL KOEHN and UNITED CAPITAL

MANAGEMENT OF KANSAS INC., did, engage in acts of racketeering.  The actions of CHAD

MITCHELL KOEHN and UNITED CAPITAL MANAGEMENT OF KANSAS INC. etAl and

John and Jane Doe's 1-15 and Doe Corporations 1-53 inclusive have and continue to engage in

violations of the RICO statutes of Federal Law. Petitioner alleges that after he discovered

respondents' unlawful conduct and contacted regulators, and government agents including with

out limitation the Securities and Exchange Commission (SEC) and Commodities Future Trading

Commission (CFTC) and the Federal Trade Commission (FTC) and the Internal Revenue

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 2

Service (IRS) inclusive without limitation of the Internal Revenue Service Criminal

Investigations (IRS-CI), as noted and previously provided to the Court in documented evidence

CHAD MITCHELL KOEHN claims to be "entrenched" in the Global Barter economy of

BITCOIN and makes other wild and outlandish claims regarding bartering and TAX EVASION

status in a variety of TAX EVASION jurisdictions world wide including without limitation:

Luxembourg, Liechtenstein, Mauritius, Seychelles, GRAND CAYMAN ISLANDS, Saudi

Arabia and even the US territory of Puerto Rico, respondents (cross and counter claim

defendants) orchestrated a scheme to remove and otherwise BLACKMAIL and EXTORT

significant equity interest from the person of the Pro Se defendant and others. Petitioner/Counter

Claim Plaintiff has now herein sued respondents[Counter claim defendants UNITED CAPITAL

MANAGEMENT OF KANSAS INC and CHAD MITCHELL KOEHN], asserting, among other

things, a § 1964(c) cause of action for respondents' alleged conspiracy to violate §§ 1962(a), (b),

and (c). Petitioner alleged that his injury was proximately caused by an overt act-namely, the

termination of his employment-done in furtherance of respondents' conspiracy, and that §

1964(c) therefore provided a cause of action.

To determine what it means to be "injured ... by reason of" a "conspir[acy]," this Court must look

to the common law of civil conspiracy. At common law, it was widely accepted that a

plaintiff/petitioner here (nelson) could bring suit for civil conspiracy only if he had been injured

by an act that was itself tortious. When Congress adopted RICO, it incorporated this principle.

As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury

caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury.

====================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

Rather, such counter plaintiff alleges injury from an act that is analogous to an "ac[t] of a tortious character," see 4 Restatement (Second) of Torts, § 876, Comment *b,* meaning an act that is independently wrongful under RICO, thus the counter defendants CHAD MITCHELL KOEHN and UNITED CAPITAL MANAGEMENT OF KANSAS INC have committed multitude and at least two or more acts in violation of RICO and are therefore subject to BOTH civil and CRIMINAL RICO charges together with their co conspirators therein their Criminal Enterprise. The specific type of act that is analogous to an act of a tortious character to the underlying substantive violation the defendants are alleged to have committed. Because respondents'/counter claim defendants CHAD MITCHELL KOEHN etAl are alleged to have acted in overt act in furtherance of their conspiracy is an act of racketeering and is independently wrongful under any substantive provision of the statute, petitioner/counter claimant Plaintiff DOES have a cause of action under § 1964(c). Pp. 500-507.

Congress enacted RICO as Title IX of the Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922, for the purpose of "seek[ing] the eradication of organized crime in the United States," *id.,* at 923. Congress found that "**organized crime in** the United States [had become] a highly sophisticated, diversified, and widespread activity that annually drain[ed] billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption." *Id.,* at 922.  The Pro Se counter claimant Plaintiff in this Counter Claim and Cross Complaint does now herein submit that the statement of "billions" is now believed to be in the TRILLIONS of US Dollars in fraud against the counter-plaintiff and the american citizenry as a whole as the United States government is unfairly burdened as a result of the wrongful acts of

====================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 4

the counter-defendants CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc.   The result of the actions of market manipulations, defamation per se, libel and slander, as well as the market manipulations of securitized and stable coin tokens in the crypto currency ecosystem was and is to "weaken the stability of the Nation's economic system, **harm innocent investors and competing organisations,** interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security [National Security Interests], and undermine the general welfare of the Nation and its citizens." *Id.,* at 923. Finding the existing "sanctions and remedies available to the Government [to be] unnecessarily limited in scope and impact," Congress resolved to address the problem of **organized crime** "by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Ibid.*

RICO attempts to accomplish these goals by providing severe criminal penalties for violations of § 1962, see § 1963, and also by means of a civil cause of action for any person "injured in his business or property by reason of a violation of section 1962," 18 U. S. C. § 1964(c) (1994 ed., Supp. IV) injury to business and property does include "loss of employment" and loss of future employment as by and through the actions of Chad Mitchell Koehn and United Capital Management of Kansas Inc and DOES and DOE corporations as included and incorporated herein by reference does confer a loss to the Counter-Plaintiff and thus infers a direct right to action including without limitation the right under the defamation, slander and libel inclusive without limitation of the actions of tortious interference with the rights and enjoyments of

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 5

seeking gainful employment after having "blown" the WHISTLE proverbially colloquially and actually against the wrongful illegal willful malice of conduct in violation of SEC, CFTC, FTC, IRS and other federal regulation and rule by the counter defendants inclusive without limitation of Chad Mitchell Koehn and United Capital Management of Kansas Inc. etAl.

Plaintiff has timely filed complaints with federal agencies.   More than 180 days have elapsed since filing those complaints. Plaintiff has therefore exhausted his administrative remedies, and therefore is conferred right of actions here.

Section 1962, in turn, consists of four subsections: Subsection (a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"; 2 subsection (b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"; subsection (c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"; and, finally, subsection (d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

========================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 6

**§1961. Definitions**

As used in this chapter—

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 7

vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

(2) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is

====================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 8

unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

(7) "racketeering investigator" means any attorney or investigator so designated by the Attorney General and charged with the duty of enforcing or carrying into effect this chapter;

(8) "racketeering investigation" means any inquiry conducted by any racketeering investigator for the purpose of ascertaining whether any person has been involved in any violation of this chapter or of any final order, judgment, or decree of any court of the United States, duly entered in any case or proceeding arising under this chapter;

(9) "documentary material" includes any book, paper, document, record, recording, or other material; and

(10) "Attorney General" includes the Attorney General of the United States, the Deputy Attorney General of the United States, the Associate Attorney General of the United States, any Assistant Attorney General of the United States, or any employee of the Department of Justice or any employee of any department or agency of the United States so designated by the Attorney General to carry out the powers conferred on the Attorney General by this chapter. Any department or agency so designated may use in investigations authorized by this chapter either the investigative provisions of this chapter or the investigative power of such department or agency otherwise conferred by law.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 941; amended Pub. L. 95–575, §3(c), Nov. 2, 1978, 92 Stat. 2465; Pub. L. 95–598, title III, §314(g), Nov. 6, 1978, 92 Stat. 2677; Pub. L. 98–473, title II, §§901(g), 1020, Oct. 12, 1984, 98 Stat. 2136, 2143; Pub. L. 98–547, title II, §205, Oct. 25, 1984, 98 Stat. 2770; Pub. L. 99–570, title I, §1365(b), Oct. 27, 1986, 100 Stat. 3207–35; Pub. L. 99–646, §50(a), Nov. 10, 1986, 100 Stat. 3605; Pub. L. 100–690, title VII, §§7013, 7020(c), 7032, 7054, 7514, Nov. 18, 1988, 102 Stat. 4395, 4396, 4398, 4402, 4489; Pub. L. 101–73, title IX, §968, Aug. 9, 1989, 103 Stat. 506; Pub. L. 101–647, title XXXV, §3560, Nov. 29, 1990, 104 Stat. 4927; Pub. L. 103–322, title IX, §90104, title XVI, §160001(f), title XXXIII, §330021(1), Sept. 13, 1994, 108 Stat. 1987, 2037, 2150; Pub. L. 103–394, title III, §312(b), Oct. 22, 1994, 108 Stat. 4140; Pub. L. 104–132, title IV, §433, Apr. 24, 1996, 110 Stat. 1274; Pub. L. 104–153, §3, July 2, 1996, 110 Stat. 1386; Pub. L. 104–208, div. C, title II, §202, Sept. 30, 1996, 110 Stat. 3009–565; Pub. L. 104–294, title VI, §§601(b)(3), (i)(3), 604(b)(6), Oct. 11, 1996, 110 Stat. 3499, 3501, 3506; Pub. L. 107–56, title VIII, §813, Oct. 26, 2001, 115 Stat. 382; Pub. L. 107–273, div. B, title IV, §4005(f)(1), Nov. 2, 2002, 116 Stat. 1813; Pub. L. 108–193, §5(b), Dec. 19, 2003, 117 Stat. 2879; Pub. L. 108–458, title VI, §6802(e), Dec. 17, 2004, 118 Stat. 3767; Pub. L. 109–164, title I, §103(c), Jan. 10, 2006, 119 Stat. 3563; Pub. L.

=================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

109–177, title IV, §403(a), Mar. 9, 2006, 120 Stat. 243; Pub. L. 113–4, title XII, §1211(a), Mar. 7, 2013, 127 Stat. 142; Pub. L. 114–153, §3(b), May 11, 2016, 130 Stat. 382.)

Section 102 of the Controlled Substances Act, referred to in par. (1)(A), (D), is classified to section 802 of Title 21, Food and Drugs.

Sections 2421–2424, referred to in par. (1)(B), are contained in chapter 117 of this title, which was amended by Pub. L. 99–628, §5(a)(1), by substituting "Transportation for Illegal Sexual Activity and Related Crimes" for "White Slave Traffic" as the heading.

The Currency and Foreign Transactions Reporting Act, referred to in par. (1)(E), is title II of Pub. L. 91–508, Oct. 26, 1970, 84 Stat. 1118, which was repealed and reenacted as subchapter II of chapter 53 of Title 31, Money and Finance, by Pub. L. 97–258, §4(b), Sept. 13, 1982, 96 Stat. 1067, the first section of which enacted Title 31.

The Immigration and Nationality Act, referred to in par. (1)(F), is act June 27, 1952, ch. 477, 66 Stat. 163, as amended, which is classified principally to chapter 12 (§1101 et seq.) of Title 8, Aliens and Nationality. Sections 274, 277, and 278 of the Act are classified to sections 1324, 1327, and 1328 of Title 8, respectively. For complete classification of this Act to the Code, see Short Title note set out under section 1101 of Title 8 and Tables.

The effective date of this chapter, referred to in par. (5), is Oct. 15, 1970.

### Amendments

**2016**—Par. (1). Pub. L. 114–153 inserted "sections 1831 and 1832 (relating to economic espionage and theft of trade secrets)," before "section 1951".

**2013**—Par. (1)(B). Pub. L. 113–4 inserted "section 1351 (relating to fraud in foreign labor contracting)," before "section 1425".

**2006**—Par. (1)(B). Pub. L. 109–177 inserted "section 1960 (relating to illegal money transmitters)," before "sections 2251".

Pub. L. 109–164 substituted "1581–1592" for "1581–1591".

**2004**—Par. (1)(B). Pub. L. 108–458 inserted "sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials)," before "(C) any act which is indictable under title 29".

**2003**—Par. (1)(B). Pub. L. 108–193, which directed amendment of par. (1)(A) of this section by substituting "sections 1581–1591 (relating to peonage, slavery, and trafficking in persons)." for "sections 1581–1588 (relating to peonage and slavery)", was executed by making the substitution in par. (1)(B) to reflect the probable intent of Congress.

========================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 10

**2002**—Par. (1)(G). Pub. L. 107–273 made technical amendment to directory language of Pub. L. 107–56. See 2001 Amendment note below.

**2001**—Par. (1)(G). Pub. L. 107–56, as amended by Pub. L. 107–273, which directed addition of cl. (G) before period at end, was executed by making the addition before the semicolon at end to reflect the probable intent of Congress.

**1996**—Par. (1)(B). Pub. L. 104–294, §604(b)(6), amended directory language of Pub. L. 103–322, §160001(f). See 1994 Amendment note below.

Pub. L. 104–294, §601(i)(3), substituted "2260" for "2258".

Pub. L. 104–208 struck out "if the act indictable under section 1028 was committed for the purpose of financial gain" before ", section 1029", inserted "section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers)," after "section 1344 (relating to financial institution fraud),", struck out "if the act indictable under section 1542 was committed for the purpose of financial gain" before ", section 1543", "if the act indictable under section 1543 was committed for the purpose of financial gain" before ", section 1544", "if the act indictable under section 1544 was committed for the purpose of financial gain" before ", section 1546", and "if the act indictable under section 1546 was committed for the purpose of financial gain" before ", sections 1581–1588".

Pub. L. 104–153 inserted ", section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks)" after "sections 2314 and 2315 (relating to interstate transportation of stolen property)".

Pub. L. 104–132, §433(1), (2), inserted "section 1028 (relating to fraud and related activity in connection with identification documents) if the act indictable under section 1028 was committed for the purpose of financial gain," before "section 1029" and "section 1542 (relating to false statement in application and use of passport) if the act indictable under section 1542 was committed for the purpose of financial gain, section 1543 (relating to forgery or false use of passport) if the act indictable under section 1543 was committed for the purpose of financial gain, section 1544 (relating to misuse of passport) if the act indictable under section 1544 was committed for the purpose of financial gain, section 1546 (relating to fraud and misuse of visas,

=================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

permits, and other documents) if the act indictable under section 1546 was committed for the purpose of financial gain, sections 1581–1588 (relating to peonage and slavery)," after "section 1513 (relating to retaliating against a witness, victim, or an informant),".

Par. (1)(D). Pub. L. 104–294, §601(b)(3), substituted "section 157 of this title" for "section 157 of that title".

Par. (1)(F). Pub. L. 104–132, §433(3), (4), which directed addition of cl. (F) before period at end, was executed by making the addition before the semicolon at end to reflect the probable intent of Congress.

**1994**—Par. (1)(A). Pub. L. 103–322, §330021(1), substituted "kidnapping" for "kidnaping".

Pub. L. 103–322, §90104, substituted "a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act)" for "narcotic or other dangerous drugs".

Par. (1)(B). Pub. L. 103–322, §160001(f), as amended by Pub. L. 104–294, §604(b)(6), substituted "2251, 2251A, 2252, and 2258" for "2251–2252".

Par. (1)(D). Pub. L. 103–394 inserted "(except a case under section 157 of that title)" after "title 11".

Pub. L. 103–322, §90104, substituted "a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act)" for "narcotic or other dangerous drugs".

**1990**—Par. (1)(B). Pub. L. 101–647 substituted "section 1029 (relating to" for "section 1029 (relative to" and struck out "sections 2251 through 2252 (relating to sexual exploitation of children)," before ", section 1958".

**1989**—Par. (1). Pub. L. 101–73 inserted "section 1344 (relating to financial institution fraud)," after "section 1343 (relating to wire fraud),".

**1988**—Par. (1)(B). Pub. L. 100–690, §7514, inserted "sections 2251 through 2252 (relating to sexual exploitation of children),".

Pub. L. 100–690, §7054, inserted ", section 1029 (relative to fraud and related activity in connection with access devices)" and ", section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), sections 2251–2252 (relating to sexual exploitation of children)".

Pub. L. 100–690, §7032, substituted "section 2321" for "section 2320".

=====================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 12

Pub. L. 100–690, §7013, made technical amendment to directory language of Pub. L. 99–646. See 1986 Amendment note below.

Par. (10). Pub. L. 100–690, §7020(c), inserted "the Associate Attorney General of the United States," after "Deputy Attorney General of the United States,".

**1986**—Par. (1)(B). Pub. L. 99–646, as amended by Pub. L. 100–690, §7013, inserted "section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant)," after "section 1511 (relating to the obstruction of State or local law enforcement),".

Pub. L. 99–570 inserted "section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity),".

**1984**—Par. (1)(A). Pub. L. 98–473, §1020(1), inserted "dealing in obscene matter," after "extortion,".

Par. (1)(B). Pub. L. 98–547 inserted "sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles)," and "section 2320 (relating to trafficking in certain motor vehicles or motor vehicle parts),".

Pub. L. 98–473, §1020(2), inserted "sections 1461–1465 (relating to obscene matter),".

Par. (1)(E). Pub. L. 98–473, §901(g), added cl. (E).

**1978**—Par. (1)(B). Pub. L. 95–575 inserted "sections 2341–2346 (relating to trafficking in contraband cigarettes),".

Par. (1)(D). Pub. L. 95–598 substituted "fraud connected with a case under title 11" for "bankruptcy fraud".

### Statutory Notes and Related Subsidiaries

### Effective Date of 2002 Amendment

Pub. L. 107–273, div. B, title IV, §4005(f)(1), Nov. 2, 2002, 116 Stat. 1813, provided that the amendment made by section 4005(f)(1) is effective Oct. 26, 2001.

### Effective Date of 1996 Amendment

Amendment by section 604(b)(6) of Pub. L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub. L. 104–294, set out as a note under section 13 of this title.

### Effective Date of 1994 Amendment

=================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 13

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under Title 11, Bankruptcy, before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of Title 11.

### Effective Date of 1978 Amendments

Amendment by Pub. L. 95–598 effective Oct. 1, 1979, see section 402(a) of Pub. L. 95–598, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

Amendment by Pub. L. 95–575 effective Nov. 2, 1978, see section 4 of Pub. L. 95–575, set out as an Effective Date note under section 2341 of this title.

### Short Title of 1984 Amendment

Pub. L. 98–473, title II, ch. III (§§301–322), §301, Oct. 12, 1984, 98 Stat. 2040, provided that: "This title [probably means this chapter, enacting sections 1589, 1600, 1613a, and 1616 of Title 19, Customs Duties and sections 853, 854, and 970 of Title 21, Food and Drugs, amending section 1963 of this title and sections 1602, 1605, 1606, 1607, 1608, 1609, 1610, 1611, 1612, 1613, 1614, 1615, 1618, 1619, and 1644 of Title 19, sections 824, 848, and 881 of Title 21, and section 524 of Title 28, Judiciary and Judicial Procedure, and repealing section 7607 of Title 26, Internal Revenue Code] may be cited as the 'Comprehensive Forfeiture Act of 1984'."

### Short Title of 1970 Amendment

Pub. L. 91–452, §1, Oct. 15, 1970, 84 Stat. 922, provided in part: "That this Act [enacting this section, sections 841 to 848, 1511, 1623, 1955, 1962 to 1968, 3331 to 3334, 3503, 3504, 3575 to 3578, and 6001 of this title, and section 1826 of Title 28, Judiciary and Judicial Procedure, amending sections 835, 1073, 1505, 1954, 2424, 2516, 2517, 3148, 3486, and 3500 of this title, sections 15, 87f, 135c, 499m, and 2115 of Title 7, Agriculture, section 25 of Title 11, Bankruptcy, section 1820 of Title 12, Banks and Banking, sections 49, 77v, 78u, 79r, 80a–41, 80b–9, 155, 717m, 1271, and 1714 of Title 15, Commerce and Trade, section 825f of Title 16, Conservation, section 1333 of Title 19, Customs Duties, section 373 of Title 21, Food and Drugs, section 161 of Title 29, Labor, section 506 of Title 33, Navigation and Navigable Waters, sections 405 and 2201 of Title 42, The Public Health and Welfare, sections 157 and 362 of Title 45, Railroads, section 1124 of former Title 46, Shipping, section 409 of Title 47, Telecommunications, sections 9, 43, 46, 916, 1017, and 1484 of former Title 49, Transportation, sections 792 and 4555 of Title 50, War and National Defense, and former sections 643a, 1152, and 2026 of the former Appendix to Title 50, repealing sections 837, 895, 1406, and 2514 of this title, sections 32 and 33 of Title 15, sections 4874 and 7493 of Title 26, Internal Revenue Code, section 827 of former Title 46, sections 47 and 48 of former Title 49, and sections 121 to 144 of Title 50, enacting provisions set out as notes under this section and sections 841, 1511, 1955, preceding 3331, preceding 3481, 3504, and 6001 of this title, and repealing provisions set out as

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 14

a note under section 2510 of this title] may be cited as the 'Organized Crime Control Act of 1970'."

Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 941, is popularly known as the "Racketeer Influenced and Corrupt Organizations Act". See also Short Title note below.

### Short Title

This chapter is popularly known as the "Racketeer Influenced and Corrupt Organizations Act".

### Savings Provision

Amendment by section 314 of Pub. L. 95–598 not to affect the application of chapter 9 (§151 et seq.), chapter 96 (§1961 et seq.), or section 2516, 3057, or 3284 of this title to any act of any person (1) committed before Oct. 1, 1979, or (2) committed after Oct. 1, 1979, in connection with a case commenced before such date, see section 403(d) of Pub. L. 95–598, set out as a note preceding section 101 of Title 11, Bankruptcy.

### Separability

Pub. L. 91–452, title XIII, §1301, Oct. 15, 1970, 84 Stat. 962, provided that: "If the provisions of any part of this Act [see Short Title of 1970 Amendment note set out above] or the application thereof to any person or circumstances be held invalid, the provisions of the other parts and their application to other persons or circumstances shall not be affected thereby."

### Congressional Statement of Findings and Purpose

Pub. L. 91–452, §1, Oct. 15, 1970, 84 Stat. 922, provided in part that:

"The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence-gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful

====================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

"It is the purpose of this Act [see Short Title of 1970 Amendment note above] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."

### Liberal Construction of Provisions; Supersedure of Federal or State Laws; Authority of Attorneys Representing United States

Pub. L. 91–452, title IX, §904, Oct. 15, 1970, 84 Stat. 947, provided that:

"(a) The provisions of this title [enacting this chapter and amending sections 1505, 2516, and 2517 of this title] shall be liberally construed to effectuate its remedial purposes.

"(b) Nothing in this title shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.

"(c) Nothing contained in this title shall impair the authority of any attorney representing the United States to—

"(1) lay before any grand jury impaneled by any district court of the United States any evidence concerning any alleged racketeering violation of law;

"(2) invoke the power of any such court to compel the production of any evidence before any such grand jury; or

"(3) institute any proceeding to enforce any order or process issued in execution of such power or to punish disobedience of any such order or process by any person."

### President's Commission on Organized Crime; Taking of Testimony and Receipt of Evidence

Pub. L. 98–368, July 17, 1984, 98 Stat. 490, provided for the Commission established by Ex. Ord. No. 12435, formerly set out below, authority relating to taking of testimony, receipt of evidence, subpoena power, testimony of persons in custody, immunity, service of process, witness fees, access to other records and information, Federal protection for members and staff, closure of meetings, rules, and procedures, for the period of July 17, 1984, until the earlier of 2 years or the expiration of the Commission.

### Executive Order No. 12435

========================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 16

Ex. Ord. No. 12435, July 28, 1983, 48 F.R. 34723, as amended Ex. Ord. No. 12507, Mar. 22, 1985, 50 F.R. 11835, which established and provided for the administration of the President's Commission on Organized Crime, was revoked by Ex. Ord. No. 12610, Sept. 30, 1987, 52 F.R. 36901, formerly set out as a note under section 14 of the Federal Advisory Committee Act in the Appendix to Title 5, Government Organization and Employees.

[1] *So in original.*

[2] *See References in Text note below.*

### §1962. Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 942; amended Pub. L. 100–690, title VII, §7033, Nov. 18, 1988, 102 Stat. 4398.)

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

**Editorial Notes**

**Amendments**

**1988**—Subsec. (d). Pub. L. 100–690 substituted "subsection" for "subsections".

#### §1963. Criminal penalties

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

(c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (l) that he is a bona fide purchaser

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 18

for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

(d)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

*Provided, however*, That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than fourteen days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time, and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

(e) Upon conviction of a person under this section, the court shall enter a judgment of forfeiture of the property to the United States and shall also authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following the entry of an order declaring the property forfeited, the court may, upon

===================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 19

application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to, or derived from, an enterprise or an interest in an enterprise which has been ordered forfeited under this section may be used to offset ordinary and necessary expenses to the enterprise which are required by law, or which are necessary to protect the interests of the United States or third parties.

(f) Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons. Any property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant, nor shall the defendant or any person acting in concert with or on behalf of the defendant be eligible to purchase forfeited property at any sale held by the United States. Upon application of a person, other than the defendant or a person acting in concert with or on behalf of the defendant, the court may restrain or stay the sale or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm or loss to him. Notwithstanding 31 U.S.C. 3302(b), the proceeds of any sale or other disposition of property forfeited under this section and any moneys forfeited shall be used to pay all proper expenses for the forfeiture and the sale, including expenses of seizure, maintenance and custody of the property pending its disposition, advertising and court costs. The Attorney General shall deposit in the Treasury any amounts of such proceeds or moneys remaining after the payment of such expenses.

(g) With respect to property ordered forfeited under this section, the Attorney General is authorized to—

(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this chapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this chapter;

(2) compromise claims arising under this section;

(3) award compensation to persons providing information resulting in a forfeiture under this section;

(4) direct the disposition by the United States of all property ordered forfeited under this section by public sale or any other commercially feasible means, making due provision for the rights of innocent persons; and

(5) take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition.

==================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 20

(h) The Attorney General may promulgate regulations with respect to—

    (1) making reasonable efforts to provide notice to persons who may have an interest in property ordered forfeited under this section;

    (2) granting petitions for remission or mitigation of forfeiture;

    (3) the restitution of property to victims of an offense petitioning for remission or mitigation of forfeiture under this chapter;

    (4) the disposition by the United States of forfeited property by public sale or other commercially feasible means;

    (5) the maintenance and safekeeping of any property forfeited under this section pending its disposition; and

    (6) the compromise of claims arising under this chapter.

Pending the promulgation of such regulations, all provisions of law relating to the disposition of property, or the proceeds from the sale thereof, or the remission or mitigation of forfeitures for violation of the customs laws, and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Such duties as are imposed upon the Customs Service or any person with respect to the disposition of property under the customs law shall be performed under this chapter by the Attorney General.

(i) Except as provided in subsection (l), no party claiming an interest in property subject to forfeiture under this section may—

    (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

    (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

(j) The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

(k) In order to facilitate the identification or location of property declared forfeited and to facilitate the disposition of petitions for remission or mitigation of forfeiture, after the entry of an order declaring property forfeited to the United States the court may, upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place, in the same manner as provided for the taking of depositions under Rule 15 of the Federal Rules of Criminal Procedure.

================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 21

(l)(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

(4) The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

(5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing

==================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 22

of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.

(m) If any of the property described in subsection (a), as a result of any act or omission of the defendant—

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 943; amended Pub. L. 98–473, title II, §§302, 2301(a)–(c), Oct. 12, 1984, 98 Stat. 2040, 2192; Pub. L. 99–570, title I, §1153(a), Oct. 27, 1986, 100 Stat. 3207–13; Pub. L. 99–646, §23, Nov. 10, 1986, 100 Stat. 3597; Pub. L. 100–690, title VII, §§7034, 7058(d), Nov. 18, 1988, 102 Stat. 4398, 4403; Pub. L. 101–647, title XXXV, §3561, Nov. 29, 1990, 104 Stat. 4927; Pub. L. 111–16, §3(4), May 7, 2009, 123 Stat. 1607.)

**References in Text**

The Federal Rules of Evidence, referred to in subsec. (d)(3), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### Amendments

**2009**—Subsec. (d)(2). Pub. L. 111–16 substituted "fourteen days" for "ten days".

**1990**—Subsec. (a). Pub. L. 101–647 substituted "or both" for "or both." in introductory provisions.

**1988**—Subsec. (a). Pub. L. 100–690, §7058(d), substituted "shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both." for "shall be fined not more than $25,000 or imprisoned not more than twenty years, or both".

Subsecs. (m), (n). Pub. L. 100–690, §7034, redesignated former subsec. (n) as (m) and substituted "act or omission" for "act of omission".

**1986**—Subsecs. (c) to (m). Pub. L. 99–646 substituted "(l)" for "(m)" in subsec. (c), redesignated subsecs. (e) to (m) as (d) to (l), respectively, and substituted "(l)" for "(m)" in subsec. (i) as redesignated.

====================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 23

Subsec. (n). Pub. L. 99–570 added subsec. (n).

**1984**—Subsec. (a). Pub. L. 98–473, §2301(a), inserted "In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds." following par. (3).

Pub. L. 98–473, §302, amended subsec. (a) generally, designating existing provisions as pars. (1) and (2), inserting par. (3), and provisions following par. (3) relating to power of the court to order forfeiture to the United States.

Subsec. (b). Pub. L. 98–473, §302, amended subsec. (b) generally, substituting provisions relating to property subject to forfeiture, for provisions relating to jurisdiction of the district courts of the United States.

Subsec. (c). Pub. L. 98–473, §302, amended subsec. (c) generally, substituting provisions relating to transfer of rights, etc., in property to the United States, or to other transferees, for provisions relating to seizure and transfer of property to the United States and procedures related thereto.

Subsec. (d). Pub. L. 98–473, §2301(b), struck out subsec. (d) which provided: "If any of the property described in subsection (a): (1) cannot be located; (2) has been transferred to, sold to, or deposited with, a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value by any act or omission of the defendant; or (5) has been commingled with other property which cannot be divided without difficulty; the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5)."

Pub. L. 98–473, §302, added subsec. (d).

Subsecs. (e) to (m). Pub. L. 98–473, §302, added subsecs. (d) to (m).

Subsec. (m)(1). Pub. L. 98–473, §2301(c), struck out "for at least seven successive court days" after "dispose of the property".

### Statutory Notes and Related Subsidiaries

### Effective Date of 2009 Amendment

Amendment by Pub. L. 111–16 effective Dec. 1, 2009, see section 7 of Pub. L. 111–16, set out as a note under section 109 of Title 11, Bankruptcy.

### Transfer of Functions

====================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

For transfer of functions, personnel, assets, and liabilities of the United States Customs Service of the Department of the Treasury, including functions of the Secretary of the Treasury relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see sections 203(1), 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under section 542 of Title 6. For establishment of U.S. Customs and Border Protection in the Department of Homeland Security, treated as if included in Pub. L. 107–296 as of Nov. 25, 2002, see section 211 of Title 6, as amended generally by Pub. L. 114–125, and section 802(b) of Pub. L. 114–125, set out as a note under section 211 of Title 6.

### §1964. Civil remedies [EMPHASIS ADDED]

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) **Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit**, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. **The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.**

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 25

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 943; amended Pub. L. 98–620, title IV, §402(24)(A), Nov. 8, 1984, 98 Stat. 3359; Pub. L. 104–67, title I, §107, Dec. 22, 1995, 109 Stat. 758.)

### Amendments

**1995**—Subsec. (c). Pub. L. 104–67 inserted before period at end ", except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final".

**1984**—Subsec. (b). Pub. L. 98–620 struck out provision that in any action brought by the United States under this section, the court had to proceed as soon as practicable to the hearing and determination thereof.

### Statutory Notes and Related Subsidiaries

### Effective Date of 1995 Amendment

Amendment by Pub. L. 104–67 not to affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) or title I of the Securities Act of 1933 (15 U.S.C. 77a et seq.), commenced before and pending on Dec. 22, 1995, see section 108 of Pub. L. 104–67, set out as a note under section 77l of Title 15, Commerce and Trade.

### Effective Date of 1984 Amendment

Amendment by Pub. L. 98–620 not applicable to cases pending on Nov. 8, 1984, see section 403 of Pub. L. 98–620, set out as an Effective Date note under section 1657 of Title 28, Judiciary and Judicial Procedure.

### Construction of 1995 Amendment

Nothing in amendment by Pub. L. 104–67 to be deemed to create or ratify any implied right of action, or to prevent Securities and Exchange Commission, by rule or regulation, from restricting or otherwise regulating private actions under Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), see section 203 of Pub. L. 104–67, set out as a Construction note under section 78j–1 of Title 15, Commerce and Trade.

### §1965. Venue and process

=================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 26

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 944.)

### §1966. Expedition of actions

In any civil action instituted under this chapter by the United States in any district court of the United States, the Attorney General may file with the clerk of such court a certificate stating that in his opinion the case is of general public importance. A copy of that certificate shall be furnished immediately by such clerk to the chief judge or in his absence to the presiding district judge of the district in which such action is pending. Upon receipt of such copy, such judge shall designate immediately a judge of that district to hear and determine action.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 944; amended Pub. L. 98–620, title IV, §402(24)(B), Nov. 8, 1984, 98 Stat. 3359.)

**1984**—Pub. L. 98–620 struck out provision that the judge so designated had to assign such action for hearing as soon as practicable, participate in the hearings and determination thereof, and cause such action to be expedited in every way.

### Effective Date of 1984 Amendment

Amendment by Pub. L. 98–620 not applicable to cases pending on Nov. 8, 1984, see section 403 of Pub. L. 98–620, set out as an Effective Date note under section 1657 of Title 28, Judiciary and Judicial Procedure.

=================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 27

### §1967. Evidence

In any proceeding ancillary to or in any civil action instituted by the United States under this chapter the proceedings may be open or closed to the public at the discretion of the court after consideration of the rights of affected persons.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 944.)

### §1968. Civil investigative demand

(a) Whenever the Attorney General has reason to believe that any person or enterprise may be in possession, custody, or control of any documentary materials relevant to a racketeering investigation, he may, prior to the institution of a civil or criminal proceeding thereon, issue in writing, and cause to be served upon such person, a civil investigative demand requiring such person to produce such material for examination.

(b) Each such demand shall—

(1) state the nature of the conduct constituting the alleged racketeering violation which is under investigation and the provision of law applicable thereto;

(2) describe the class or classes of documentary material produced thereunder with such definiteness and certainty as to permit such material to be fairly identified;

(3) state that the demand is returnable forthwith or prescribe a return date which will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying or reproduction; and

(4) identify the custodian to whom such material shall be made available.

(c) No such demand shall—

(1) contain any requirement which would be held to be unreasonable if contained in a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged racketeering violation; or

(2) require the production of any documentary evidence which would be privileged from disclosure if demanded by a subpena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged racketeering violation.

(d) Service of any such demand or any petition filed under this section may be made upon a person by—

(1) delivering a duly executed copy thereof to any partner, executive officer, managing agent, or general agent thereof, or to any agent thereof authorized by appointment or by law to receive service of process on behalf of such person, or upon any individual person;

(2) delivering a duly executed copy thereof to the principal office or place of business of the person to be served; or

=================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 28

(3) depositing such copy in the United States mail, by registered or certified mail duly addressed to such person at its principal office or place of business.

(e) A verified return by the individual serving any such demand or petition setting forth the manner of such service shall be prima facie proof of such service. In the case of service by registered or certified mail, such return shall be accompanied by the return post office receipt of delivery of such demand.

(f)(1) The Attorney General shall designate a racketeering investigator to serve as racketeer document custodian, and such additional racketeering investigators as he shall determine from time to time to be necessary to serve as deputies to such officer.

(2) Any person upon whom any demand issued under this section has been duly served shall make such material available for inspection and copying or reproduction to the custodian designated therein at the principal place of business of such person, or at such other place as such custodian and such person thereafter may agree and prescribe in writing or as the court may direct, pursuant to this section on the return date specified in such demand, or on such later date as such custodian may prescribe in writing. Such person may upon written agreement between such person and the custodian substitute for copies of all or any part of such material originals thereof.

(3) The custodian to whom any documentary material is so delivered shall take physical possession thereof, and shall be responsible for the use made thereof and for the return thereof pursuant to this chapter. The custodian may cause the preparation of such copies of such documentary material as may be required for official use under regulations which shall be promulgated by the Attorney General. While in the possession of the custodian, no material so produced shall be available for examination, without the consent of the person who produced such material, by any individual other than the Attorney General. Under such reasonable terms and conditions as the Attorney General shall prescribe, documentary material while in the possession of the custodian shall be available for examination by the person who produced such material or any duly authorized representatives of such person.

(4) Whenever any attorney has been designated to appear on behalf of the United States before any court or grand jury in any case or proceeding involving any alleged violation of this chapter, the custodian may deliver to such attorney such documentary material in the possession of the custodian as such attorney determines to be required for use in the presentation of such case or proceeding on behalf of the United States. Upon the conclusion of any such case or proceeding, such attorney shall return to the custodian any documentary material so withdrawn which has not passed into the control of such court or grand jury through the introduction thereof into the record of such case or proceeding.

(5) Upon the completion of—

==================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 29

(i) the racketeering investigation for which any documentary material was produced under this chapter, and

(ii) any case or proceeding arising from such investigation, the custodian shall return to the person who produced such material all such material other than copies thereof made by the Attorney General pursuant to this subsection which has not passed into the control of any court or grand jury through the introduction thereof into the record of such case or proceeding.

(6) When any documentary material has been produced by any person under this section for use in any racketeering investigation, and no such case or proceeding arising therefrom has been instituted within a reasonable time after completion of the examination and analysis of all evidence assembled in the course of such investigation, such person shall be entitled, upon written demand made upon the Attorney General, to the return of all documentary material other than copies thereof made pursuant to this subsection so produced by such person.

(7) In the event of the death, disability, or separation from service of the custodian of any documentary material produced under any demand issued under this section or the official relief of such custodian from responsibility for the custody and control of such material, the Attorney General shall promptly—

(i) designate another racketeering investigator to serve as custodian thereof, and

(ii) transmit notice in writing to the person who produced such material as to the identity and address of the successor so designated.

Any successor so designated shall have with regard to such materials all duties and responsibilities imposed by this section upon his predecessor in office with regard thereto, except that he shall not be held responsible for any default or dereliction which occurred before his designation as custodian.

(g) Whenever any person fails to comply with any civil investigative demand duly served upon him under this section or whenever satisfactory copying or reproduction of any such material cannot be done and such person refuses to surrender such material, the Attorney General may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of this section, except that if such person transacts business in more than one such district such petition shall be filed in the district in which such person maintains his principal place of business, or in such other district in which such person transacts business as may be agreed upon by the parties to such petition.

(h) Within twenty days after the service of any such demand upon any person, or at any time before the return date specified in the demand, whichever period is shorter, such person may file, in the district court of the United States for the judicial district within which such person resides, is found, or transacts business, and serve upon such custodian a petition for an order of such court modifying or setting aside such demand. The time allowed for compliance with the demand

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 30

in whole or in part as deemed proper and ordered by the court shall not run during the pendency of such petition in the court. Such petition shall specify each ground upon which the petitioner relies in seeking such relief, and may be based upon any failure of such demand to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person.

   (i) At any time during which any custodian is in custody or control of any documentary material delivered by any person in compliance with any such demand, such person may file, in the district court of the United States for the judicial district within which the office of such custodian is situated, and serve upon such custodian a petition for an order of such court requiring the performance by such custodian of any duty imposed upon him by this section.

   (j) Whenever any petition is filed in any district court of the United States under this section, such court shall have jurisdiction to hear and determine the matter so presented, and to enter such order or orders as may be required to carry into effect the provisions of this section.

(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 944.)

**Parties:**

1.   Michael Nelson as stated above herein. As enumerated by the Court as a Citizen of the State and thus Republic of Nevada.  The new information provided by the Plaintiffs in their Once in a Course revision and amendment to the complaint claiming the PRO SE defendant is a citizen of the State of Oregon is both inconsistent with the TRUTH and against the previous orders of the Court, the address for USPS mail for the Pro Se defendant is an electronic mail address located in the US state of Oregon it is explicitly NOT the "residence" of the Pro Se Defendant **as well known by the Plaintiffs and especially their "partner in deception" Craig Alan Brand** who as previously provided to the Court in statements orally and in writing it was Craig Alan Brand who suggested the services of the $2.5 BILLION PUBLIC Company LegalZoom who provides the electronic mail address for the PRO SE defendant.  As it is necessary given the fact the plaintiff's attorneys refuse to file to the PRO SE defendant copies of what they file to the

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 31

Court, therefore each piece of mail and envelope needs be individually accounted for, scanned and serial numbered to prove unequivocally the certain obvious and evident intention of the plaintiffs to DENY the PRO SE defendant the opportunity to respond to the filings they themselves make unilaterally to the court and refuse to provide copies of the same to the Pro Se defendant.

2.  United Capital Management of Kansas Inc. as stated herein above if it is considered a lawful and legal corporation and by and through all of its other names and fraudulent representations including its also known as Unitedcaptialmanagement of Kansas Inc. per Order of the Court in Document 31, of **5:22-CV-04008-JWB-GEB**

3.  Chad Mitchell Koehn as stated herein above, case: **5:22-CV-04008-JWB-GEB**

4.  John and Jane Does 1 through 25 inclusive

5.  Doe Corporations 1 through 53 inclusive

**Allegations of Fact**

6.  That Nelson is a business consulting professional, with expertise in a wide array of technology, investments, management, marketing and technology expertise.

7.  That Nelson is a "Significant Equity Interest" holder in a series a companies all originating in the US State of NEVADA, with the origin company ANTHEM VAULT INC.

8.  Koehn etAl. illegally combined Anthem Vault Inc. with a series of other corporations to create an entity known as Anthem Holdings Company out of the US State of Delaware.

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 32

9.  Koehn etAl. caused to be filed a SEC Regulation form D, in which materially misleading information was purposefully included therein; including without limitation affixing false names to the purported directors thereof, as one single example each and every board member was provided the middle name of "Hayek".

10. Koehn etAl. made these <u>purposely materially misleading statements on the SEC regulation forms</u> **in order to hide and otherwise obsurfacate the true identities and true nature of the company for reasons to materially misleading current and future investors.**

11. Koehn etAl. did purposefully and wrongfully state on the SEC regulatory form that the company Anthem Holdings Company and the raise of money was not a part of a business combination merger, when in fact the company Anthem Holdings Company, was formed from "targeted acquisition" companies created by similar names to the underlying companies located in DELAWARE, NEVADA and Texas, via "short-form mergers"

12. That by virtue of creation of like named companies and performing "short-form" mergers of the target acquisition companies, Koehn etAl. was required to notify all shareholders and take a vote as required by the laws of the States where such companies originated and achieve greater than 90% shareholder approval in order to combine the companies, which on form Regulation D, filed to the SEC it was stated under penalties of perjury that the raise of additional money for the new DELAWARE Holdings company:  Anthem Holdings Company was "NOT" a business combination merger.  This creates materially

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 33

false information together with other false information stated to the SEC on SEC documentation.

13. Chad Mitchell Koehn was a registered Broker and Registered Investment Advisor at the time of solicitation of investors to the illegally formed Anthem Holdings Company.   By virtue of his registration as a broker and the direct proof positive that solicitations and sales occurred while he was a licensed broker as indicated in the form Regulation D filed with the Securities and Exchange Commission, and the fact Chad Mitchell Koehn with mens rea of guilt attempted to back date his resignation.

14. Even in his, CHAD MITCHELL KOEHN's feeble attempts to back date resignation as a broker, thereby making the filing made on 11 November 2020, materially false filing to the SEC, Chad Mitchell Koehn self admits to violation of SEC regulations and thus securities fraud (possibly securities irregularities) in the statements and materially misleading information submitted on regulatory form D of the Securities and Exchange Commission regarding the illegally established holdings company:  Anthem Holdings Company.

15. In the statement on form Regulation D for Anthem Holdings Company it states clearly that NO Broker is involved and clearly that no registered representative with a CRD number is involved in the sale of the securities of Anthem Holdings Company the company created via the illegal series of "smurfing" in use of "short-form" mergers.

16. Additionally even Chad Mitchell Koehn's backdating of resignation of brokers license occurring on 30 October 2020, demonstrates clearly that he was in fact a broker when the

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

first solicitation and investment in the illegal holdings company occurred.  Proof positive in the regulatory form exists.

17. That Chad Mitchell Koehn in his role as a licensed investment and securities person did purposefully wrongfully with mens rea fail to provide material facts regarding the companies.

18. That Koehn EtAl. deliberately did not provide material information by which not providing said material information made other information provided categorically untrue and false.

19. That Chad Mitchell Koehn having violated Federal Securities laws did "resign" his brokers license less than two weeks prior to filing form Regulation D for the Anthem Holdings Company, however, had previously marketed, solicited investment to Anthem Holdings Company through the use of materially false and misleading information to the detriment of the counter-plaintiff and all other existing investors and those new and future investors solicited for investment to Anthem Holdings Company.

20. That Chad Mitchell Koehn failed to timely notify and amend filings regarding financial documents relating to the raise of funds for Anthem Holdings Company.

21. That Chad Mitchell Koehn failed to timely file documentation regarding Anthem Holdings Company, and failed to disclose the existence of litigation involving Anthem Holdings Company corporations especially Anthem Vault Inc. and lawsuits involving American Express Bank and the underlying companies which created Anthem Holdings

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 35

Company via a series of illegal "short-form" mergers used as a means of "smurfing" the true identity of those underlying companies and source of those funds.

22. That from approximately 2014 to 2019, the counter-plaintiff was employed by the originating genesis corporation Anthem Vault Inc. in the US State of NEVADA.

23. That the counter-plaintiff invested in both the STOCK equity of the company Anthem Vault Inc. and thus any "spinoff" companies of Anthem Vault Inc. and in cryptographic securities in the form of cryptocurrencies.

24. That by the nature of the actions of Chad Mitchell Koehn in materially false and misleading information concerning the cryptocurrencies and holding Company:  Anthem Holdings Company that Chad Mitchell Koehn etAl. activities were and are to a detriment of the existing shareholders of the originating company in the US State of Nevada.

25. That Chad Mitchell Koehn by and through his actions materially misled the existing shareholders and purposefully caused existing shareholders to lose significant equity holdings and significant equity interest, refusing to market nor operate the existing companies according to the charters thereof.

26. That Chad Mitchell Koehn has filed disclosure statements with regulatory authorities and publicly available online demonstrating clear conflict of interest between himself, CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. regarding Chad Mitchell Koehn's position with Anthem Holdings Company and compensation Chad Mitchell Koehn receives from Anthem Holdings Company.

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 36

27. That although Chad Mitchell Koehn attempted to mislead and misdirect US regulatory authorities by "resigning" a brokers license in order to make the statements made on form Regulation D, filed for the illegally established holdings company Anthem Holdings Company which filed the materially misleading Regulation D to the Securities Exchange Commission on November 11, 2020:

https://www.sec.gov/Archives/edgar/data/1830762/000183076220000001/xslFormDX01/primary_doc.xml

Chad Mitchell Koehn retroactively resigned his brokers license with a termination date of 30 October 2020, despite the fact that on SEC regulatory form it was clearly stated that the first sale occurred on 27 October 2020;

28. **When the form Regulation D was filed to the SEC on 11 November 2020 it stated that Anthem Holdings Company had already sold more than $1.5 MILLION** in stock in the newly established allegedly illegal business combination merger via the highly contested illegal "smurfing" of the underlying companies true identities and locations via a maneuver called "short-form" merger wherein under the direction and supervision of Koehn etAl. fake companies were created as "target acquisition" companies to effect a roll up of the underlying companies to the detriment of the shareholders therein.  It is believed through discovery the dates and times of wire payments and accounts and persons sending the same to Anthem Holdings Company or other holding account will clearly demonstrate Chad Mitchell Koehn was a broker with current license at the time making the form Regulation D even more materially false.

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 37

29. Through discovery and banking account information, wire transfers, constituting mail and wire fraud it is believed information will come to light through discovery detailing that investment to the illegally created Anthem Holdings Company happened while Chad Mitchell Koehn was a registered broker, long prior to the already in evidence proof positive CHAD MITCHELL KOEHN was a registered broker during the period of time when the first solicitations occurred as well stated and articulated in the materially false and materially misleading SEC regulatory D filing of Anthem Holdings Company, thus participating in the same and failing to provide materials and facts which therefore made other facts untrue, thus providing materially misleading information as to the true nature of the underlying securities and source of funds.

In order to placate existing investors "significant equity interest" holders the counter-plaintiff included, **Chad Mitchell Koehn invented fantastical stories including illegal claims to be contracted by the United States Federal government.**

30. Koehn etAl. made claims to be affiliated with and **ENDORSED by the United States Army and the United States Airforce,** specifically wrongfully and illegally using the logo for the Army Logistics Command and the United States Airforce Research Laboratories, in addition to using the logo and seal of the US Department of Defense, and seals and logos of divisions of the United Nations implying and stating to have a partnership with each referenced and many others including without limitation claims to be affiliated and endorsed by the ARTEMIS project of the US administration NASA (space exploration), though these actions constitute violations to  18 U.S. Code § 1017;

=================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 38

those actions are actionable by US Attorneys and each of the armed forces, and the US

Justice department regarding the utilization of the logo of the Department of Defense the

claim herein provided is in reference to materially misleading and fraudulent claims in

order to sell, recommend and otherwise transact in securities.

31. In other fantastical claims Koehn etAl. claimed and claims to be building a "Space

Station" to mine asteroids for gold, in a feeble attempt to justify the originating business

proposition of the company the counter-plaintiff was employed and invested in, Anthem

Vault Inc. of the US State of Nevada, the genesis corporation to which all roads lead from

the contested and illegal series of short form mergers which created Anthem Holdings

Company of the US State of Delaware.

32. The counter-plaintiff had previously rightfully contacted regulatory authorities to stop

illegal market manipulations of cryptocurrencies published and promulgated on globally

diverse exchanges, where the proverbial pump and dump was being orchestrated by

insiders to the detriment of the crypto currency investors inclusive of the

counter-plaintiff.  The counter-plaintiff is therefore ipso facto a WHISTLEBLOWER

against the illegal conduct and certain RICO style violations which continue through this

day, believed at the behest and mastermind of Chad Mitchell Koehn.

33. In order to mask and hide the identity of Anthem Holdings Company and the underlying

businesses created by illegal "smurfing" in the "short-form" mergers, Chad Mitchell

Koehn created, Hera Software Development Inc. out of the US State of DELAWARE,

and did write and cause to be globally disseminated claims to have raised money under a

====================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

"Series A" financial raise for the company Hera Software Development Inc. (HeraSoft) and made more wild and fantastical claims, including without limitation to be in business with "major sovereigns", to be financed in part by foreign regimes with adverse policies to those of the United States of America.

34. Claims of a "Series A" investment to create Herasoft despite the FACT Hera Software Development Inc. is NOT registered with the Securities and Exchange Commission, or any other regulatory authority as required.

35. Koehn etAl authored and created a series of fake news reports and press releases to further promote the idea that Hera Software Development Inc. was a new company with a Series A, which upon information and belief is actually the funds and capital raised originally through the sale of Anthem Holdings Company consisting of the underlying and originating company Anthem Vault Inc. of the US State of NEVADA.

36. Koehn etAl. in order to placate investors both past in the originating company and in the new illegally established Anthem Holdings Company, created a series of fake and false press releases claiming among other things to be in business with "major sovereign"

37. **Koehn etAl. makes wild and outlandish claims to be a direct partner with the Country of the Netherlands,** and through direct partnership with the country of the Netherlands and "Warburg Holland" of Warburg Pincus global investments to have created a "gold site" in order to placate the previous investors in Anthem Vault Inc. of the US State of NEVADA.

===================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 40

38. Fantastically Koehn etAl. also claims to have a contract with the Country of the Netherlands (Holland), "to verify all gold imports and exports for the entire nation", both stating and implying a direct relationship, partnership and contract with a foreign government, when it is believed no such contract with the government of the Netherlands exists now or has ever existed in the past.

39. Warburg Pincus is not believed to have a relationship with Koehn etAl either.

40. Koehn etAl, to further provide material misrepresentations, makes wild and outlandish fantastical claims to be in direct partnership and contract with the Country of Qatar in the middle east.  Claiming contracts of $10's of millions of dollars directly with the government of the Country of Qatar and claiming a direct relationship and partnership with the homogeneity of the ruling family and partnership with the Emir of the emirate of Qatar, in providing "Artificial Intelligence" and cyber security to the Nation of Qatar and their sovereign wealth fund, claiming to provide the security to the Emir directly and the entire homogeneity of the ruling family of Qatar.

41. Chad Mitchell Koehn etAl continues with fantastical claims to have government contracts with the United States Government and utilizes regularly including through the filing of this litigation via counter complaint, the seals, and logos to a vast array of US Federal and State resources both stating and implying direct government contracts, partnerships and even endorsements.

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 41

42. That defendants, inclusive of Chad Mitchell Koehn etAl. collectively and on behalf of each of the named non-person legal entities and legal entities have contacted individuals disparaging Nelson's reputation.

43. That Defendants knew the individuals and businesses were clients, partners or expected clients or partners or prospective employers of Nelson.

44. Furthermore, the actions and behavior of counter-defendants arises out of violations of basic human decency, bad faith, and unclean hands.

45. That defendants have contacted individuals and stated that Nelson is a <u>"convicted felon", emphasis on "convicted"</u>, in multiple cases CHAD MITCHELL KOEHN made direct statements to others that Nelson is a "convicted felon" for purposes and reasons to discredit Nelson and prevent Nelson from obtaining gainful employment.

46. That Defendant's have contacted individuals and businesses and stated and/or implied that Nelson is diseased.

47. That defendants have stated that Nelson is  "going to prison for life."

48. That Chad Mitchell Koehn has contacted third parties and made outlandish claims and stated he will "say whatever is necessary" to incarcerate Nelson.

49. That Defendant's have contacted individuals and published globally that Nelson's passport is "flagged" and Nelson is wanted by the FBI and interpol for acts of cyber terrosism, which has caused serious and real costs and expenses to numerous governments and persons.

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 42

50. That defendants have contacted individuals and businesses for the explicit purposes to spread <u>false defamatory statements, rumors and gossip</u> in order to prevent Nelson from gaining gainful employment, in malicious and certain tortious interference with the plaintiff Nelson's rights to gain gainful employment after illegal termination of employment by Anthem Hayek Blanchard having called Nelson "BITCH" and "MOTHERFUCKER" for Nelson's refusal to engage in market manipulations of public global markets through the issuance of cryptographic security tokens to act as a security under the direction of CHAD MITCHELL KOEHN etAL. in violation of Securities and Exchange Commission, IRS, Commodities and Futures Trading Commission, FTC and other federal regulatory acts, laws, statutes and rules to be amended with inclusion of precise US Federal Laws, Acts, Statutes and Codes inclusive without limitation those which the self proclaimed registered and licensed person Chad Mitchell Koehn and UNITED CAPITAL MANAGEMENT OF KANSAS Inc. is liable and so required to follow for the protection of the American consumer and investor including without limitation the counter plaintiff nelson.

51. That defendants have made outrageous claims that Nelson is a computer hacker and has plotted a murder against an Anthem Vault Inc, a corporation of the US State of NEVADA and Anthem Holdings Company a corporation of DELAWARE board of director, namely a man who goes by Mark Heatwole among other monikers and names, who has claimed he is a "California Court Officer" and a "California Attorney", when in fact he is NOT.

========================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 43

52.  Mark Heatwole is a man, Craig Alan Brand has claimed in writing in numerous testimony in the US State of Nevada that Mark Marion Heatwole is a "California Court Officer" and a "California Attorney" and where Craig Alan Brand has proffered testimony to the same and encouraged and placed Paul Douglas Aubert upon sworn testimony as a witness in judicial proceedings in Nevada, wherein Paul Douglas Aubert under sworn testimony has stated that Mark Marion Heatwole is a "California Attorney" and a "California Court Officer" when in fact Mark Marion Heatwole has not been entitled to the practice of law since approximately 2006 in the State of Illionios, according to authorities.

53. That defendants actions are directly and proximately aimed at prevention of Nelson from obtaining gainful employment and are targeted to businesses, individuals and organizations in Nelson's profession for the purposes to prevent Nelson from moving on away from the RICO organization of the defendants etal.

54. That the actions of the defendants violate RICO provisions and the defendants have repeatedly made BLACKMAIL and EXTORTION demands regarding sexual orientation, sex acts, and claims of disease in order to humiliate, ridicule and defame nelson per slander per se in furtherance of their Criminal Enterprise and RICO violations making EXTROTION and BLACKMAIL to gain "significant equity interest" among a variety of illegally established enterprises.

55. That defendant's statements are untrue and made to third parties.

================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 44

56. That defendant's statements are made with malice of forethought to cause nelson extreme financial hardship and difficulty in becoming re-employed.

57. That defendant's actions and statements are not only untrue but made with certain willful malice as a form of "blackballing" and "blacklisting" nelson throughout multiple industries as a form of RETALIATION for lawful whistleblowing reports regarding Anthem Vault Inc.; Anthem Gold and Hercules (HERC) crypto currency marketing scheme and pump and dump market manipulations of global financial markets.

58. Chad Mitchell Koehn etAl. have contacted Nelson and **made veiled threats identifying by name, address and/or location Nelson's elderly parents, sibling and minor child.** Indicating direct threat to life and safety.  Nelson has had the need to immediately report the same to authorities.  The actions and behavior of Koehn and defendant's gives rise to questions concerning mental stability especially given his purported role in management of capital and licenses he claims to hold regarding financial advisory services.

59. That Defendant's statements are untrue and said statements were made with malice and intent to damage the occupation and business prospects and future employment of Nelson.

60. That Defendant's statements are negatively reflecting on Nelson's profession and trade.

61. That counter Defendant's statements expose Nelson to hatred, contempt, and ridicule.

62. That counter Defendant's statements are slanderous per se.

63. That Chad Mitchell Koehn's statements were stated as "fact" and not opinion stating a person who at the time had never been charged with any crime ever, was a "convicted

===================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 45

felon" and a "federal felon fleeing memorandum from the FBI" and that nelson is the target of FBI criminal indictments all are categorically false and meant to prevent nelson from gaining gainful employment all in furtherance of RETALIATION and what is referred to as "blackballing" or "blacklisting" nelson for filing protected WHISTLEBLOWER communications regarding Anthem Vault Inc.etal. in NEVADA.

64. That Defendant's actions and statements are purposeful, willful and done with malice and on behalf of themselves each individually jointly severally and made on behalf and/or while representing all corporate defendant's and/or Trusts or Estates.

65. That Defendant's have worked in conspiracy in predatory collusion with each other forming a RICO enterprise to purposefully attack, molest, harass, stalk, intimidate Nelson for a specific purpose to discredit Nelson from testifying against them on behalf of the US and foreign governments and the defendants actions are EXTORTION, blackmail, mail and wire fraud and for the purposes to extort "significant equity interest" in securities held by Nelson personally.   Therefore CHAD MITCHELL KOEHN and UNITED CAPITAL MANAGEMENT OF KANSAS INC. are herein charged with EXTORTION, BLACKMAIL and SECURITIES FRAUD via mail and wire fraud, all constituting RICO violations.

66. That the actions and statements of the defendant's so herein complained Nelson reserves and so preserves the right to file additional Federal Litigations where harm was felt by the transnational and international actions of Chad Mitchell Koehn, filing additional litigations in Federal Courts, and where applicable County Courts and under the State

====================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 46

laws in each state where now or was created a series of companies and other entities or wherein defendants have spewed forth their incriminations and insinuations overall slander per se either at conferences or other gatherings and via social media and text messages.

67. Chad Mitchell Koehn etAl has used to attack and defame nelson in furtherance of Chad Mitchell Koehn's etAl. RICO violations to manipulate global securities in the crypto currency markets and make material misrepresentations in the sale of securities and other security like instruments of finance to the detriment of the underlying and originating business model towhich Nelson and other investors invested considerably.

68. Though the actions and harm are felt around the world and the pro se counter plaintiff herein reserves the right to file additional litigations in each and every US district where said actions have been directed and the harm is thus caused as well as file internationally where the counter-defendants actions have caused damages and slander and libel per se in their all out assault via predatory collusion and certain EXTORTION, BLACKMAIL, mail fraud, wire fraud, market manipulations of securities, generally believed to be alleged securities fraud (irregularities) as the docket now well represented in the actions of Chad Mitchell Koehn in furtherance of the criminal and civil RICO violations, and certain RETALIATION against nelson for filing whistleblower actions regarding Anthem Vault, Anthem Gold and the series of crypto currency projects inclusive of HERC crypto currency stock tokens.

===============================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 47

69. The creation and solicitation of investment to a Cryptocurrency hedge fund known as **Red Neck High Tech Yacht Fund LP,** created for the purposes to raise additional money for investment in crypto currencies including without limitation the HERC crypto stock token asset and stable coins **in violation of New York State law and the laws of a plethora of other states where Chad Mitchell Koehn has illegally, wrongfully and unlawfully conducted his market manipulations and securities fraud generally, though could possibly be "securities irregularities" as witnessed in the information in the docket of the matter at bar.**

70. That this cross and counter complaint specifically does not include any of the false criminal charges levied by any of the cross-defendants nor does this include any of the harm suffered by Nelson in other US Districts, States and/or territories or foreign lands, which each will be sought in the appropriate Courts within the jurisdiction where harm is alleged to have occurred, and under the laws of each jurisdiction as it relates to the larger RICO Criminal Enterprise the individuals and corporations and others are engaged together with the corporations and other companies as shall be sought through discovery according to law and right.

71. That the counter-plaintiff is without all information as to the precise dates and times of wire transfers, stock issuances, cryptocurrency contract addresses, though so submits to this Honorable Federal Court that the cryptocurrencies are each embodied in blockchains which are by their very nature public records, therefore upon in-depth discovery of the

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 48

market manipulations each of the contract addresses to be reviewed are believed to reveal additional parties to be attached hereto.

72. That Chad Mitchell Koehn etAl. acting with malice and forethought has wrongfully unlawfully RETALIATED against the pro se counter plaintiff in the filing of frivolous litigation as a means to prevent and retaliate against Nelson for exercising protected rights to notify federal authorities concerning illegal RICO activities at Anthem Vault Inc. and its progeny inclusive of HERC cryptocurrency and/or cryptocurrency stock token representing a self-created defacto security and in so listing said security on globally distributed exchanges and issuing press releases of the same while utilizing employees to artificially inflate the true value through what is proverbially referred to as a pump and dump scenario in violation of Securities laws.

73. That Chad Mitchell Koehn has stated crypto currencies are "the wild wild west" and have no regulation or laws, therefore he can do whatever he wants.

74. Chad Mitchell Koehn's etAl. conduct in directing attacks against nelson's reputation and rights to seek and obtain employment constitutes cause of action for RETALIATION *Hagman v. Washington Mutual Bank, Inc., 2005-SOX-73, 2006 WL 6105301, *32 (2006).*

75. Chad M. Koehn etAl. has acted in malice of forethought in RETALIATION and direct prevention of nelson and others from communicating wrongful and illegal conduct by Koehn etAl. to State and Federal Authorities.

====================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

76. That Chad Mitchell Koehn did conspire with others and purposefully with malice of forethought spew forth RACIAL SLUR in place of the name of Nelson in the originating petition, for the purposes to violate nelson's civil rights and liberties.

77. That Chad Mitchell Koehn did conspire to send a racial slur into a highly racially charged environment where nelson was being unlawfully detained for the distinct purposes to cause nelson physical damage and mental anguish.

78. That Chad Mitchell Koehn received protected information as to nelson's precise location in order to effect improper service of the originating petition at bar, in the hopes to cause nelson physical injury and secure a default judgment in the matter.

79. Chad Mitchell Koehn's actions were reckless and wanton and amount at a minimum to gross wanton negligence, though it is believed given the plethora of evidence Chad Mitchell Koehn is a BIGOT who purposefully spew forth the RACIAL SLUR against nelson as evidence in the docket indicates Chad Mitchell Koehn has used SLURS and phrases against protected classes, including in the naming convention of the above herein referenced cryptocurrency hedge fund named Red Neck High Tech Yacht Fund LP, wherein the term "RED NECK" is a reference and slur against those who are socio-econmically disadvantaged.

80. Wherein in Chad Mitchell Koehn's once in a course amendment of the originating petition Chad Mitchell Koehn now claims "proprietary individuals" indicating Chad Mitchell Koehn actually believes he is the proprietor of other individuals (humans)

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 50

indicating that Chad Mitchell Koehn believes he is a SLAVE MASTER and owns other humans in SLAVERY.

81. That Chad Mitchell Koehn did maliciously with insidious machinations dolus (dolo) materially mislead nelson and others with regards to securities he himself sold in violation of SEC and CFTC regulations and Chad Mitchell Koehn utilized the global deadly pandemic known as COVID19 to exact during the time of National and International emergency insidious machinations committing dolus (dolo) against all current, former and new investors into the series of companies.  Wherein Chad Mitchell Koehn did cause tremendous deflation in ownership and certain value, by purposefully pulling the companies from their original business models, for example friends and family of nelson who have invested, had invested in a gold vaulting company, NOT a space station, a lunar company, a global supply chain auditor, a game company, or cyber security company, not an electric company or gaming company or software company, as it is quite impossible to tell exactly what any of the companies do now as they appear to literally be in every imaginable business enterprise.

82. That Chad Mitchell Koehn did abuse and violate regulatory schemes designed to protect investors and the general public at large.

83. That Chad Mitchell Koehn etAl. did engage in knowingly willfully wrongful conduct in the sale of securities and the masking of the true nature and origin of funds and origin of products and services to the detriment of nelson and other investors.

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 51

84. Wherein Chad Mitchell Koehn etAl. did wrongfully and criminally use the seals, logos and names of the United States government and its resources to imply and directly state partnership to governmental entities in furtherance of the counter-defendant's collective RICO violations and violations of securities laws, indicating cause of action as both Whistleblower and for investment or securities fraud and/or irregularities.

85. All transactions made in all iterations of crypto currencies promulgated by counter-defendants must be examined as per the contract address provided:

   a. https://etherscan.io/token/0x2e91E3e54C5788e9FdD6A181497FDcEa1De1bcc1

86. Counter plaintiff shall file motion to leave and amend if necessary when in and/or if in the course Chad Mitchell Koehn and/or United Capital Management of Kansas Inc. fail to file proper disclosures as required by this counterclaim.

87. Evidencing the preliminary documentation of proof in the positive that the Anthem Holdings Company was actually a business combination merger which the filed form Regulation D, which uses repeatedly identical names in order to mask and hide true identities of persons listed, so states that the solicitation and sale of securities is "NOT" a business combination merger despite promulgated documentation to the opposite.

=====================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

**CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
AND INFORMATION STATEMENT OF
ANTHEM HOLDINGS COMPANY**





AnthemGold, Inc.          Anthem Vault, Inc.          AG HERC, Inc.

**AV Acquisition Corporation, a Nevada corporation
AGLD Acquisition Corporation, a Texas corporation
AGH Acquisition Corporation, a Delaware corporation
the ("*Merger Subs*")**

**An Exchange Offer for 21,000,000 Shares of Common Stock to All Current Equity Holders
and a Sales Offering of up to 7,000,000 Shares of Common Stock for $5,000,000**

This Confidential Private Placement Memorandum and Information Statement (the "*Memorandum*") relates to (i) the offering (the "*Exchange Offering*") to all current equity holders of Anthem Vault, Inc. ("*AV*"), a Nevada corporation, AnthemGold, Inc., a Texas corporation ("*AG*"), AG HERC, Inc., a Delaware corporation ("*AGH*", and collectively with AV and AG, the "*Exchange Subsidiaries*") for an aggregate of 21,000,000 shares (the "*Exchange Shares*") of common stock, par value $0.001 per share ("*Common Stock*"), of Anthem Holdings Company, a Delaware corporation (the "*Company*," "*we*," "*us*," or "*our*"), (ii) the "short-form" merger of each of the Exchange Subsidiaries into each of the Merger Subs (the "*Mergers*") pursuant to which the remaining shareholders of each of the Exchange Subsidiaries will receive shares of Common Stock in the same proportion as the shareholders receive in the Exchange Offering, and (iii) the offering (the "*Stock Offering*" and together with the Exchange Offering, the "*Offerings*") of up to 7,000,000 shares (the "*Sale Shares*" and together with the Exchange Shares, the "*Offered Shares*") of Common Stock. The offering price per Sale Share is $0.71 and the minimum individual subscription is $_____. We intend to close (the "*Exchange Closing*") on the Exchange Offering when we have received indications to exchange from shareholders owning at least ninety (90%) of each of the Exchange Subsidiaries in order to be able to complete the Mergers. Immediately after the Exchange Closing, we intend to complete the Mergers by making the appropriate state filings, and as soon thereafter as practicable, we intend to conduct a closing of the Stock Offering. We are offering the Offered Shares solely to accredited investors meeting the suitability standards set forth in this Memorandum.

The authorized capital stock of the Company consists of 50,000,000 shares of Common Stock and 1,000,000 shares of preferred stock, par value $0.001 per share. Upon the Exchange Closing and the completion of the Mergers, there will be 21,000,000 shares of Common Stock issued and outstanding. Upon the final closing of the Stock Offering, there will be an additional 7,000,000 shares of Common Stock issued and outstanding for an aggregate of 28,000,000 shares outstanding. Also, upon completion of the Mergers, we intend to grant options to current holders of options in AV and AG which shall be adjusted based on the relevant exchange ratio, and as a result, we should have approximately 3,361,140 shares underlying such options under the Company's 2019 Stock Incentive Plan, which will have an aggregate of 6,000,000 shares of Common Stock available for issuance.

88.

89. Chad Mitchell Koehn etAl clearly illegally claims a partnership with the United States

Department of Energy and illegally against US Federal Law uses the Logo and Official

SEAL of the US Department of Energy whilst simultaneously claiming partnership and

contracts with the US Department of Energy:

=================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 53



90.

91. IN the above example, Koehn etAl uses not only the US Department of Energy Seal improperly but commits misdemeanor crimes in the utilization of the Great Seal of the US State of California, as well as various felony crimes and certain proof positive beyond prima facie of utilization of State SEALS and US Federal Agency SEALS to infer and imply partnership and endorsement and contracts to materially mislead the general public and the investors.

92. Koehn etAl in furtherance of his deception and materially misleading information to investors claims affiliation and partnership with NASA's ARTEMIS project, the United Nations programs, the United States Airforce Research Laboratories:

====================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

93.

94. In further proof positive as soon as this counter complaint is filed Koehn by and through Craig Alan Brand the joint "Special Counsel" to all the companies and a shareholder in each will as has been done throughout the litigation to date, immediately remove content from websites and articles, demonstrating clear mens rea of culpability in the guilty mind, Koehn etAl will then hide behind CRAIG ALAN BRAND as attorney client privilege in all dealings making fair discovery in this matter all but impossible as long as Craig Alan Brand continues in this matter, demonstrating again clearly where there are PINKERTON Doctrine issues at play and Craig Alan Brand is actively involved in the management and multi-pronged litigation, as the originating litigation and much of the legal entanglements created by Craig Alan Brand, inclusive of the originating petition is filed as a means to discover what information is already in the hands of Federal and State Regulators and other authorities.

95. Example of the Space State that is claimed by Koehn, to appease Anthem Vault Inc. investors, though no space station is believed to be being built.

================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.



96.

97. Anthem Gold claims to have gold in vault and at Anthem Bunker but in like kind fashion Anthem Bunker website no longer exists:

98.

99. In similar fashion to the Hera Soft self created news articles the counter-defendants created a plethora of news articles to pump and dump the HERC crypto stock token as shall be further expounded upon and complained of in additional litigation in the US District of New York:

100.     Puerto Rico address was used again to avoid linking and connections between all the different companies and different raises of money:

101.     https://coinmarketcap.com/currencies/hercules/

102.     https://coinpaprika.com/coin/herc-hercules/

103.     https://www.businesswire.com/news/home/20181112005826/en/HERC-Token-Listed-on-Sistemkoin

104.     https://www.businesswire.com/news/home/20181115006130/en/HERC-Token-Listed-on-LATOKEN

105.     https://medium.com/@herc_token/herc-token-lists-on-la-token-deposits-now-open-eb539fb9b14c

106.     https://medium.com/dobitrade-exchange/hercules-coin-herc-9aafc60d6d9f

107.     https://cryptocurrencyalerting.com/coin/HERC

========================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

108.  https://www.aa.com.tr/en/p/duyurular/1002/herc-token-listed-on-sistemkoin
109.  https://steemit.com/herc/@herctoken/herc-token-lists-on-la-token-deposits-now-open
110.  https://cryptorank.io/price/hercules/holders
111.  https://www.issuewire.com/hercules-highly-anticipated-supply-chain-protocol-lists-on-idax-16171417445
      00632

112.  On page 13 of the revised white paper and thus PPM (PRIVATE PLACEMENT

      MEMORANDUM) for HERC Crypto Currency, which was revised on 13 December

      2019, in order to remove references to the marketing manager indicted in the BITCLUB

      alleged Ponzi Scheme as prosecuted by US Attorneys:

      https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3442330  It clearly shows the

      distribution and burn dictating the number of tokens (cryptocurrency units) sold during

      public crowd funding.

113.  Koehn etAl continue through the date of this filing to illegally use nelson's

      photograph and information in the marketing of this crypto currency:

114.  https://s3.us-east-2.amazonaws.com/hercmedia/Hercules-Whitepaper-Russian.pdf

115.  Koehn etAl. although publicly state they will not sell the "HERC" crypto currency

      stock token in Russia, do obviously still through the filing of this counter complaint

      market in Russia and utilize subversive means to allow for "SWAPS" and marketing of

      the crypto currency in violation of US regulatory environment and trade bans.

===================================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.



116.

117.    Though on the website Herc.one you cannot even purchase the HERC crypto

currency stock token as Koehn regularly directs sites be taken off line, as it would appear

the companies have little to no actual sales and are simply company after company to

raise money from new investors to repay or placate old investors.

118.    https://purchase.herc.one/

119.    Persons cannot even purchase gold any longer on AnthemGold despite raising untold

millions via non-registered non-licensed securities raises.

120.    https://buy.anthemgold.com/

121.    Anthem Gold website through the date of this instant complaint materially misleads

investors by stating "16 Bars in Vault" yet as the Court and regulators can certainly see

and official screen captures taken there are only 14 Bars in the purported Vault, clearly

demonstrating materially misleading information to the general public, indicative of

fraud, especially wherein combined with the fact no audits are available:



122.

123.   On yet other websites Koehn etAl clearly utilize the logo and Great Seal of the United

States Department of Defense, United States Patent and Trademark Office, the United

States Army Logistics Command, all in illegal use to placate and materially mislead

investors in the companies.

========================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.
                                                                        - 59



124.

125.    That Koehn etAl. has deliberate materially misled past investors and used materially

misleading statements, logos and marketing materials on a repeated basis to materially

mislead future investors in Ponzi styled sale of securities to repay former investors in

crypto graphic token purchases and investments.

126.    As the docket in the matter at bar already so indicates via proof positive Chad

Mitchell Koehn claims a direct conflict of interest with United Capital Management Inc.

in the sale of securities for Anthem Holdings Company, see document number 40-1 pages

23 and 24 found in in the docket of this matter at bar and in the internet archives:

https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013

.40.1.pdf

127.    So demonstrating clearly the mens rea of Chad Mitchell Koehn after the filing of

document 40 and attached exhibit in 40-1 Chad Mitchell Koehn has removed the

references to Anthem Holdings Company in a revised ADV regulatory filing and

====================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 60

replaced it with "Red Neck High Tech Yacht Fund LP" see document number: 56-2 also

found in the docket and the Internet Archives at:

https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.56.2.pdf

128.    That Koehn etAl has used series of materially misleading statements logos and

materials in the materially misleading press releases and news articles in order to pump

and dump stock and other financial instruments to the detriment of public financial

markets.

129.    That defendants collectively have referred to Nelson as a "diseased faggot", Chad

Mitchell Koehn applied for a protective order based on FRAUD, claiming to have a need

of protection from Nelson when CHAD MITCHELL KOEHN is "incapable of giving

consent" to sexual intercourse with Nelson, seemingly as a continuation to claim nelson

is a "diseased faggot".

130.    Chad Mitchell Koehn is upon information and belief a male, though has invoked laws

for the protection of women, indicating that perhaps Chad Mitchell Koehn appears by

appearance to be male, and has signed sworn affidavits he is a "male" yet has invoked

Interstate protection from domestic violence Women's Act, in his application for

protective orders in order to materially interfere with the pro se counter plaintiff's ability

to conduct fair and reasonable discovery in this matter, among other reasons surmised to

discredit and overall make the pro se defendant's life challenging.

=================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

131.    Chad Mitchell Koehn perhaps is considered "intersexed" and/or Transgendered given the orders he himself Chad Mitchell Koehn has sought and have been so ordered. Nelson so submits he has NEVER been in a domestic relationship or any other sexual relationship of any nature whatsoever with Chad Mitchell Koehn and Chad Mitchell Koehn's claims in protective orders for protection from engaging in sexual relations with nelson are outrageous and in furtherance of the defamation, slander pre se spewed forth by Chad Mitchell Koehn.

132.    CHAD MITCHELL KOEHN demanded protection from nonconsenual sex acts with Nelson, wherein CHAD MITCHELL KOEHN continued in asking for protection against being human trafficked and CHAD MITCHELL KOEHN in delusional fantasy of wanting a sexual interlude with Nelson has caused sworn affidavits to be filed where Chad Mitchell Koehn has demanded protection from sexual intercouse with Nelson, despite the FACT Chad Mitchell Koehn has never met nor engaged in any of the fantansical delusions he has in his fantasies of sexual intercourse with Nelson.

133.    Nelson has NEVER met Chad Mitchell Koehn, and Nelson has no sexual interest in Chad Mitchell Koehn whatsoever, Nelson has no interest in any sexual interlude with any person who appears by appearance to be a male human being, as CHAD MITCHELL KOEHN appears in his appearances to date to be a male human, yet CHAD MITCHELL KOEHN has sought protection from sexual acts when CHAD MITCHELL KOEHN is "incapable of giving consent" wherein Chad Mitchell Koehn believes he himself is often "incapable" to providing consent to sexual realtions.

============================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 62

134. Thus sought erroneously a protective order from having sexual intercouse and sexual relations with the person of the counter claimant Plaintiff, even though the Counter Plaintiff has never met CHAD MITCHELL KOEHN nor stepped foot into the US District of Kansas and thus the State of Kansas, therefore indicating mental diesease or defect of Chad Mitchell Koehn in his belief the counter plaintiff Nelson wants any sort of sexual intercourse or sexual penetration or sexual relationship of any nature whatsoever with the person of Chad Mitchell Koehn.

135. Chad Mitchell Koehn's seeking of protection from sexual acts with Nelson is a continuation of his defamation per se against nelson.

136. While the claims against Chad Mitchell Koehn and United Capital Management of Kansas Inc. are little at present, the counter-plaintiff believes as time allows, as the pro se counter-plaintiff has not the time to devote to fully plead the vastness of the claims against United Capital Management of Kansas Inc. and Chad Mitchell Koehn, given the onslaught of legal proceedings orchestrated by Craig Alan Brand, though once the Appellete Court or District Court reviews the Appeals and Motions for Stay, the pro se counter-plaintiff believes his CONSTITUTIONAL RIGHTS will be restored, and a Stay of this Matter granted allowing for parallel criminal matters to be resolved, via trial in the favor of nelson then allowing for nelson to fully and completely materially participate in discovery where the Court will realize what is presented is just the tip of the proverbial ice-berg as to the amount of other litigation and claims to be presented to the US District Federal Courts and a multitude of County Courts, and Territorial Courts.

===================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

137.    Even recently, Prominent internet pundits and news media with 100k's of followers

and millions of readers have recognized that Chad Mitchell Koehn's etAl. companies are

what those pundits and media personalities view as "scams" see the publicly available

information, people who are well versed in Bitcoin and Crypto Currencies and garnish

the support and following of MILLIONS of Americans and 100's of MILLIONS of

global citizens see and read the truth regarding Chad Mitchell Koehn's companies:



138.

139.    The testnets and protocols for the so-called HERC crypto currency are all missing and

non-existent indicating fraud in the issuance of the crypto currency issued by Chad

Mitchell Koehn etAl. Not Found - Request ID: 01G3ABB2CRQKRBT5DAFSRN0VC1

140.    In accordance with the PCRAM Alpha TestNetsNFTS is not found in regards to the

HERC crypto currency contract:

=======================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 64

141. The sub-domain addressing and the marketed materials by Chad Mitchell Koehn etAl. are missing and result in an error 404 page:

https://github.com/hercone/hercigvc-subdomain-factory



142.

143. Chad Mitchell Koehn etAl. have materially misled the investors 10's of thousands of investors in the HERC crypto currency although now due to so many investors losing EVERYTHING there now exists just 14,800 "suckers" the counter-plaintiff included holding the bag on the "scam" as stated by Crypto Currency expert and pundit Peter McCormack. And an additional nearly 3,000 "suckers" the counter-plaintiff included holding the bag on the initial iteration of the crypto currency HERC which now CHAD MITCHELL KOEHN declares is run by Hera Software Development Inc. aka HeraSoft and "not to worry, Herasoft, counts as its clients the United States Federal Government, the Department of Defense, NASA, the SEC, the US DOJ, the State of California, the

===================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

Department of Energy, the United States Army and United States Airforce, ARTEMIS of

NASA, the NSA, the CIA, and even the United Nations !"

144.    None of the statements of Chad Mitchell Koehn etAl are true.  They are all false.

Chad Mitchell Koehn etAl despite claiming wild and fantastical claims of endorsement

and affiliation with and contracts with and Government Resources Agencies,

Departments, and Administrations having contracts with HeraSoft and other companies

Chad Mitchell Koehn etAl PUBLICLY exclaims none of it is true.  These are collectively

all material misrepresentations and in any other US District where the counter-plaintiff

actually would have standing under State Law the claims of Chad Mitchell Koehn would

be considered violations of the Fair Business Practices Act and other State laws, however

in the US District of Kansas where State law does not apply to and is not applicable to

protection to the pro se counter-plaintiff as previously enumerated by the Court in the

denial of writ of mandamus and in other orders of the Court, the pro se counter-defendant

seeks BI-FURCATION of the litigation to a US District where both Federal Law and

State law will apply to the pro se counter-plaintiff if not then total removal to a US

district where the pro se counter-plaintiff has standing in both State and Federal Law.

145.    Chad Mitchell Koehn utilizing free reign as he states that the crypto currency world is

the "wild wild west" and he can "do whatever he wants" as there are in his words "no

laws, rules or regulations governing anything in bitcoin or cryptocurrencies" is simply

WRONG and Unlawful, amounting to securities "irregularities" but in actuality what

Chad Mitchell Koehn etAl are engaged in is out right "securities fraud" and certain mail

===================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

and wire fraud against the interests of the American Investor and the Financial markets in the United States of America and around the globe.

146.     Chad Mitchell Koehn etAl working in conspiracy with the other defendants as listed herein above inclusive without limitation of United Capital Management of Kansas Inc. and its other principals are believed to have continued to commit a vast array of deliberate and willful material misrepresentations in their securities filings with SRO's (Self Regulatory Organizations) and the Securities Exchange Commission (SEC) all for the purposes to hide and conceal the true identity and nature of the business reporting to the regulatory authorities.  Upon information and belief CHAD Mitchell KOEHN has directed Ryan Kozlow and others to file materially misleading documents for a number of years to the SEC and other regulatory authorities for the purposes to EVADE federal regulators and authorities in the EDGAR (Electronic Data Gathering Analysis and Retrieval) System of the Securities and Exchange Commission.  All to the detriment of investors and shareholders in the variety of private and PUBLIC entities which they trade upon in the PUBLIC FINANCIAL MARKETS.


WHEREFORE counter-plaintiff Nelson asks for judgment against the defendants, collectively and individually (severally) for defamation, slander, libel, tortious interference with business and profession, **Securities Fraud**, insidious machinations dolus (dolo), **RETALIATION** and other to be pleaded and amended charges based upon the facts to be discoverable in the course of discovery, in the examination and depositions of each and every claimed client and/or customer

=================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 67

of United Capital Management of Kansas Inc. and discovery in depositions of each and every current and former employee of United Capital Management of Kansas Inc. and/or UCM Advisors LLC or other moniker or name used by Chad Mitchell Koehn etAl. in furtherance of their conspiracy to commit RICO violations and generally violate the rights of nelson, in an amount in excess of $75,000 that the Court enter a temporary and permanent injunction barring the Chad Mitchell Koehn etAl counter-defendants from committing further tortious acts and defamation purposefully interfering in nelson's rights to seek and gain gainful employment, that the cause of this action be charged against Chad Mitchell Koehn etAl. and such other and further relief the Court deems just and proper.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

TRIAL BY JURY OF 12 SO DEMANDED PURSUANT WITH 7th Amendment RIGHTS.

Respectfully Submitted, this 17th day of May 2022.

==================================================================================
Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.

- 68



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

====================================================================

Preliminary Answer, with First Counter Complaints Cross Complaints and Joinders CHAD
MITCHELL KOEHN and United Capital Management of Kansas Inc. etAl.