## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD Mitchell KOEHN**<br><br>And John and Jane Doe's 1-15<br><br>And<br><br>Doe Corporations 1 - 15<br><br>       Counterclaim Defendants, and<br>Cross Claim Defendants<br>     v.<br>Michael Nelson<br><br>    CounterClaim and CrossClaim Plaintiff PRO-Se. | <mark>**DOCKET NO.:**   **5:22-CV-04008-JWB-GEB**</mark><br><br><br><u>**CIVIL ACTION**</u><br><br><br>**First Amended CounterClaim and CrossClaims with joinders John and Jane Doe's and Doe Corporations**<br><br><br><br>**[Jury Trial Demanded]** |

### <u>First Amended COUNTERCLAIM AND CROSS COMPLAINT</u>

The counter claimant and cross claimant, counter-plaintiff, (Nelson), files this once in course amended counter complaint and cross complaint, under protection of Safe Harbor provisions, within the time limits and allowed amendments and in accordance with right under Rule 15(A)(1)(a), within 21 days after serving, wherein service was made the date entered to the docket via electronic service to opposing counsel on 17 May 2022; the Counterclaim and cross complaint and in response to the motion to dismiss by the counter-defendants collectively Chad M. Koehn (Koehn) and United Capital Management of Kansas Inc. (UCM). The Counter Plaintiff reevaluates in the interests of justice, conservation of judicial resources, judicial economy and to lessen burdens to the parties and the number of needed potential needed joinders. The amended counterclaim and cross complaints are so made herein filed 6 June 2022.

     This action arises under counter-defendants' bad faith, unclean hands in litigation strategy, deemed a SLAPP lawsuit, aimed at silencing dissenting "significant equity interest"

holder rights, as RETALIATION for complaints filed lawfully regarding CRYPTO CURRENCY

HERC Initial Coin Offering (ICO), and underregistered unlicensed securities offerings AnthemGold

and those actions to take the intellectual property developed in NEVADA and

MISAPPROPRIATE it to companies located around the US and foreign Tax EVASION

jurisdictions, and the associated SECURITIES FRAUD.   Those issues presented in the SELF

dealing in **market manipulation of CRYPTO CURRENCY HERC stock COIN** to detriment

of the global public financial markets.  The issues stem directly from multiple cases found in

favor of the pro se defendant in the employment matters in NEVADA, wherein the plaintiffs

have recently had a THREE (3) Justice Panel find once more in favor of the Pro Se Defendant

here, and now the plaintiffs proceed according to their Anthem Vault Inc. (NEVADA

Corporation) president, testifying under oath in the parallel criminal matters, that they continue

with NEVADA appeals to presumably the NEVADA SUPREME COURT.

	The now counter-defendants have laid in wait nearly a year before attempting any service

of process of the state petition they filed, which was removed hereto the Federal Court for cause

by the pro se counter-plaintiff here.  The counter-defendant's materially and strategically have

caused numerous litigations aimed at dissuading whistleblowers, from communicating with

authorities, preventing public free speech, rights of the people to be free in their association and

rights to petition in the face of issues of National and International public concern.  This

counterclaim and crossclaim includes without limitation issues of grave PUBLIC concern,

including without limitation:  alleged securities fraud, **RETALIATION**, tortious interference

with right to gain gainful employment, defamation, slander, libel, tortious acts in prevention of

right to employment, **abusive litigation practices aimed to deter cooperation and reporting**
**to law enforcement and regulatory authorities in violation of law**, civil rights violation,

illegal litigation bullying by the plaintiffs in their SLAPP suit designed as a Strategic Lawsuit Against Public Participation, defamation, slander, libel and continuation of harassment aimed at the weakest person they can identify in order to wrestle away through judicial abuses, defamation, tortious interference in right to earn a living and thus unlawfully take "significant equity interest" in a number of corporations, via the fraudulent inducements, constructive fraud, fraud, insidious machinations dolus committed by Chad M. Koehn, UCM and the counter-defendants collectively and severally whilst simultaneously purposefully, wrongfully and illegally trading using in commerce and trading upon the SEALS, LOGOS and Names of US Federal Resources, Armed Forces, Departments, Commissions and Agencies of the United States Federal Government to the detriment of the public's confidence in the government thus committing rampant fraud against the government and the public at large to their collective detriment inclusive of counter-plaintiff.

Counter-Plaintiff has timely filed complaints internally as an employee to corporate counsel for Anthem Vault Inc., and to various federal agencies and again externally as an ex-employee and "significant equity interest" holder together with other shareholders. The counter-plaintiff is not now here submitting to the US District Court for resolution of those administrative and regulatory whistleblower complaints, regarding Anthem Vault, Anthem Gold, AG Herc, HERC crypto currency stock COIN ICO (Initial Coin Offering). Due to the lapse in the "kick-out" provisions and ongoing investigations regarding the complaints filed in regards to those filed complaints of the aforementioned inclusive of and specifically relating to the ICO (Initial Coin Offering) of crypto currency "stock" COIN: HERC.

The unprecedented COVID19 International Health emergency has caused serious delays in the ability to communicate and confer regarding the whistleblower filings and the "kickout"

provisions of Federal law do not apply here, though the pro se counter-plaintiff is still never-the-less entitled to protection from RETALIATION and entitled to be free to pursue gainful employment and earn a living free from harassment, defamation, slander, libel and tortious interference with those rights.  The counter-defendant's collective purposeful interference in the rights of the pro se counter-plaintiff to provide basic human needs, like food, shelter, and clothing to himself and family including through the justified request for help from the government during the global deadly pandemic COVID19.  The counter-defendants have abused the COVID19 situation in forceful acts of threats, tortious interference and certainly extreme defamation, whilst using insidious machinations amounting to dolus, in their efforts to deny dividends, and wrestle "significant equity interest" in a number of corporations from the pro se counter-plaintiff, while they have pulled the assets and intellectual property created in NEVADA to other jurisdictions against all basic interests of fair play and to create as much burden, expense, embarrassment, mental anxiety, stress, emotional distress and overall destruction to the life of the pro se counter-plaintiff.  Each of the cases in NEVADA, with regards to the rights of the counter-plaintiff have been adjudicated in favor of the counter-plaintiff to have assistance in obtaining new employment, and be free from tortious interference with those rights to employment and earning a living.  Additionally the pro se counter-plaintiff should be protected and free to participate in public debate, free to association with whom ever and free to petition for redress including discussions with other shareholders of the companies which contain the life's work, of the pro se counter-plaintiff a "significant equity interest" holder therein those corporations.  Regardless of the insidious machinations made during the COVID19 global health emergency to force via threats and tortious interference the pro-se counter-plaintiff and others to accept shares of stock in a holding company created

without shareholder notice, votes, nor providing of plans of business combination merger via triangular reverse short-form mergers, hiding and otherwise concealing the origin companies their rightful jurisdictions and intellectual property and designs, all to the detriment of the shareholders and against all basic interests of fairness.

Until such time Counter-Plaintiff has exhausted his administrative remedies, and therefore is conferred right of action, in addition to the protections afforded a whistleblower under NEVADA State Law (NOSHA) and US Federal Law, the laws still afford the pro se counter-plaintiff implied protections against RETALIATION. All roads lead to NEVADA, where I invested, was employed and the company which was to have all assets and intellectual property is located and was incorporated. Regardless of the insidious machinations and efforts to remove, rebrand, take corporate assets out of NEVADA, it is NEVADA where all actions remain.

The RETALIATION by the counter-defendants pending review pursuant with kick-out provisions, wherein due to COVID19 delays and issues, while simultaneously defending a multitude of appeals in the US State of NEVADA, in regards to employment and my right to seek assistance through the global deadly pandemic COVID19, I have had the need to fend off tortious interference with my rights to obtain gainful employment, fend off reputation assaults and protect my general interests in "significant equity interest" in an ever growing number of companies. Even as these SLAPP litigations by Koehn etAl. continue, Anthem Vault Inc. supposedly continues appeals, as the counter-defendant's, president of Anthem Vault Inc. testified under sworn testimony in the parallel criminal matter in the 11th Judicial District of Oklahoma, presumably **now appealing those underlying cases only to the NEVADA SUPREME COURT, by purported Nevada Attorney, Craig Brand**.

A whistleblower may not invoke the kick-out provision if the delay in the case is caused by bad faith. In *Wagner,* Grand Trunk argued that Mr. Wagner engaged in bad faith by participating in the administrative process while knowing he could exercise the kick-out provision if he received a bad result.  <u>The court flatly rejected this argument, noting that no court had ever found that merely exercising or not exercising the kick-out rights conferred under § 20109(d)(3) constituted bad faith</u>.  Whereas here the counter-plaintiff continues in communication with SEC, CFTC, FTC and government investigators and attorneys, in regards to the originating whistleblower filings regarding Anthem Vault Inc, Anthem Gold and HERC crypto currency Initial Coin Offering, cryptographic stock token.  Whereas Koehn has admitted to possession of the counter-plaintiff's social security number, his possession can only be inferred that he was the de facto employer, as in no other circumstance may Koehn have possession of the counter-plaintiff's social security number, other than attempting financial fraud against nelson.

The counter-defendants have been using every dirty trick possible, insidious machinations, dolus, to take by force and threat of force "significant equity interest" in corporations and intellectual property, and via fraud and inducement of fraud in the issuance and distribution of securities placement memorandums, and prevention of the counter-plaintiff from gaining gainful employment, and wasting resources during the global deadly pandemic COVID 19.  While they claim the counter-plaintiff is not entitled to work in a host of different industries and occupations and has confidentiality agreements that prevent disclosures and prevent notices regarding a host of financial market manipulations by the counter-defendants regarding crypto currencies.  A May 2020 decision in the case of ***Erhaft v. Bofi Holdings*** concluded that employer confidentiality agreements **do not supersede** federal whistleblower rights. The decision also held that whistleblowers can take company documents to disclose unlawful

conduct. The counter-plaintiff was at all times employed in NEVADA. There in NEVADA is where all plans and programming and management took place, and it is here in NEVADA where the counter-defendant's purportedly continue with presumably final appeal to the NEVADA SUPREME COURT under the direction of purported NEVADA attorney Craig A. Brand.

The False Claims Act (FCA) is America's first whistleblower law and one of the strongest whistleblower laws in the United States. In recent years, the False Claims Act has been applied in a new way: to instances in which a wrongdoer, as here has illegally, wrongfully and unlawfully implied contracts and partnerships with the Federal Government, abusing and misusing United States Federal SEALS and Logos against the interests of shareholders and the public at large. Committing FRAUD against State governments and the US Federal govt.

The Foreign Corrupt Practices Act has proven to be one of the most powerful and effective transnational anti corruption laws in the world. It has two main provisions, centered around **anti-bribery** and proper accounting. Whistleblowers exposing tax fraud have looked to the US Treasury whistleblower provisions, and reports concerning international money transfers and money laundering via reports to FINCEN, which was referenced in the first hearing in this matter, by Craig Brand, even before discussion on Brand's pro hac vice status. The counter-plaintiff has RIGHTS, among them the right to obtain gainful employment free from malicious purposeful tortious interference, slander, defamation and libel by former employers who seek the destruction of the counter-plaintiff in furtherance of their RETALIATION for the counter-plaintiff refusal to participate in global financial market manipulations and deception.

Jurisdiction is proper to the US Federal Courts, and as per employment and the corporations to the US Districts of New York and Nevada.

Venue is proper in the US District of New York or Nevada.

**Parties:**

1.  Michael Nelson as stated above herein. As enumerated by the Court as a Citizen of the State and thus Republic of Nevada.

2.  United Capital Management of Kansas Inc. (UCM) is a co-plaintiff in the originating petition, and has been adjudicated by the Court as being also known as Unitedcaptialmanagement of Kansas Inc. per Order of the Court in Document 31, of **5:22-CV-04008-JWB-GEB**

3.  Chad Mitchell Koehn (Koehn) is a citizen of the State of Kansas, as per order of the Court in case: **5:22-CV-04008-JWB-GEB**

4.  **Jane and John Doe's 1 - 15 inclusive as counter and cross defendants.**

5.  **Doe Corporations 1 - 15 inclusive as counter and cross defendants.**

●   **As used herein counter-defendant is inclusive of CHAD MITCHELL KOEHN, UNITED CAPITAL MANAGEMENT OF KANSAS INC. AND all Jane and John Doe's and Doe Corporations 1-15 respectively to each as counter claims and cross claims.**

**Allegations of Fact**

6.  Nelson is a business consulting professional, with expertise in a wide array of technology, investments, management, marketing and technology expertise.

7.  Nelson was, until the actions of the counter-defendants, a respected consummate professional, having spent his life building a positive reputation.

8.  Nelson is a "significant equity interest" holder in a number of companies, Anthem Vault Inc., Anthem Gold, AmagiMetals, Anthem Hayek LLC, AG Herc Inc., Hercules SECZ, Hercules LLC, ipso facto via insidious machinations, dolus, Anthem Holdings Company, Hera Software Development Inc. and others yet to be discovered.

9. Use of Counter-defendants is inclusive of Chad Mitchell Koehn [Koehn], United Capital Management of Kansas Inc. [UCM], AND Jane and John Does 1 - 15 and Doe Corporations 1 - 15, collectively as cross defendants.

10. Counter-Defendant Chad Mitchell Koehn is a member of the board of directors and presents himself across the internet through self-created press releases as the lead investor and founder of Hera Software Development Inc. Chad M. Koehn has failed to disclose his numerous roles on board of directors to numerous companies and investments, including without limitation Hera Software Development Inc.

11. Counter-Defendant Chad Mitchell Koehn has listed himself as a board member of Anthem Holdings Company and directly conflicting Hera Software Development Inc.

12. Counter-Defendant Chad Mitchell Koehn has listed himself as having a conflict of interest between himself, co-counter-defendant United Capital Management of Kansas Inc. and Anthem Holdings Company.

13. Counter-Defendant Chad Mitchell Koehn lists himself as a "Director" for Hera Software Development Inc. & Anthem Holdings Company; **asserting he [Chad Mitchell Koehn] has been "entrenched" in BITCOIN the <u>Largest Barter Economy in the World.</u>**

14. Counter-defendants have used insidious machinations amounting to *dolus* in order to force Nelson and other shareholders to accept stock shares in a new Delaware holding company, Anthem Holdings Company, created from a purported business combination triangular reverse short-form merger, as a means to hide and otherwise conceal the ICO (Initial Coin Offering) of CRYPTO CURRENCY COIN: HERC.

15. Counter-defendants now claim the HERC coin cryptocurrency is the "proprietary protocol" of Hera Software Development Inc. thereby directly competing against the

interests of the INVESTMENT Memorandum of HERC ICO CRYPTO CURRENCY stock Coin, which was MANIPULATED on Global Financial Markets to the detriment of the investors and investing public.

16. Chad Mitchell Koehn is a director of Hera Software Development Inc.

17. Craig Brand is listed as "Special Cyber and Legal Counsel Herasoft / Hercules"

18. Chad Mitchell Koehn is a member of the board of directors of HeraSoft

19. Chad M. Koehn is a member of the board of directors of Anthem Holdings Company

20. Counter-defendants have previously issued placement memorandums and sold HERC CRYPTOCURRENCY COIN as stock to investors at $.20 each and then $.40 each while simultaneously SELF DEALING, on globally distributed public financial exchanges.

21. Counter-defendants now have more than 145000 "INVESTOR" addresses in the HERC Crypto Currency stock COIN, the counter-plaintiff included.

22. The HERC Crypto Currency stock COIN is on a public blockchain, where all transactions are public and fully auditable by any member of the public the Court included, and can be discovered via an Ethereum based Blockchain Explorer:

https://etherscan.io/token/0x2e91E3e54C5788e9FdD6A181497FDcEa1De1bcc1

23. The original contract address with all COIN holders of HERC cryptocurrency COIN is found at the etherscan address:

https://etherscan.io/token/0x6251583e7d997df3604bc73b9779196e94a090ce

24. HERC crypto currency COIN, according to the public block chain, has more than 14,500 wallet addresses indicating individual investors, with just over 15,000 total transfers.

25. Counter-defendants have purposefully refused to provide dividends, accounting, shareholder reports, notices of meetings, votes, and general information concerning the

"significant equity interest" rights of Nelson and other similarly situated shareholders and "significant equity interest holders" in the underlying companies and the newly established purported, business combination triangular reverse merger, creating Anthem Holdings Company, from AnthemVault, AnthemGold and AG Herc Inc.'s.

26. Counter-Defendants have wrongfully and materially falsified SEC regulatory filings to claim securities sold in the new Anthem holdings company are not a business combination merger, in fact documents promulgated state it is a business combination merger.

27. Counter-Defendants have wrongly contacted businesses and individuals with which Nelson has had business relationships and has sought new employment.

28. Counter-Defendants knew the individuals and businesses were prospective clients and/or prospective employers of Nelson.

29. Counter-Defendants knew some individuals contacted were also shareholders in Anthem Holdings Company and its purported subsidiaries, thus also shareholders in Hera Software Development Inc.

30. That counter-defendants have contacted individuals and potential business partners and companies, during 2020 and 2021 and 2022 and stated that Nelson is a "convicted felon".

31. CHAD MITCHELL KOEHN made direct statements to individuals, potential employers, and business partners that Nelson is a "multiple convicted felon".

32. Chad M. Koehn deliberately and wrongfully for purposes and reasons to discredit Nelson and prevent Nelson from obtaining gainful employment, stated nelson is a "Criminal"

33. Counter-Defendant's have contacted individuals and businesses and stated and/or implied that Nelson is "diseased".

34. That counter-defendants have stated that Nelson is "going to prison for life."

35. United Capital Management of Kansas Inc. (UCM) is registered with the State of Florida as of 5 January 2021; Koehn and at least one other UCM licensed professional "identified as licensed securities professionals, have maliciously spread inaccurate, unfounded information damaging to Mr. Nelson's personal and professional character, stating he is a "criminal" a "convicted felon fleeing prosecution".

36. The knowing extreme malice caused by their actions on behalf of pecuniary gain to their employer United Capital Management of Kansas Inc. and United Capital Insurance and its affiliates, constitutes slander per se, by way of making statements including without limitation that Mr. Nelson "has a criminal background", and "is a felon", and is "a convicted felon fleeing prosecution".

37. Counter-defendant's act under the titles: "principal", president and chief compliance officer of United Capital Management of Kansas Inc. and United Capital Insurance; other statements made by them are that they "represent StoneX, a $53 billion dollar public securities company".

38. Slander per se is illegal behavior, which is criminal in the State of Florida, the slander per se has been directed at third parties via intrastate communication, coming directly from the phone number: 785-823-7900, a phone number registered to the Broker Dealer, United Capital Management of Kansas Inc. [counter and cross defendant]

39. Phone calls have been made to phones in the US State of Florida, received by third parties in the US State of Florida and made with willful wanton reckless disregard for the truth, made purposefully with the intent to cause financial losses, including without limitation malicious tortious interference in occupation, profession, investments, as well as to further pecuniary gain via collusion on behalf of United Capital Management of Kansas Inc. and its affiliates.

40. Counter-plaintiff additionally believes upon information and belief counter-defendant's have caused letters and other written communications to be sent to third parties with the intent to damage Nelson's reputation, profession, ability to obtain gainful employment.

41. Under the laws of the State of Florida, it is unlawful for an individual to make deliberate statements intended to harm the reputation of another, without factual evidence or based solely on hearsay.

42. Counter-Plaintiff has had the need to demand the actions, slander and defamation committed by the counter-defendants CEASE and DESIST immediately.

43. Counter-Plaintiff has sent the Counter-defendants a pre-suit demand letter, in January of 2021, after enduring slanderous and tortious interference with rights to gain employment during the global deadly pandemic COVID19; in part that letter stated:

   a. *"Defamatory statements include, but are not limited to slander per se, this shall serve as a pre-suit letter, demanding you and the firm United Capital Management of Kansas Inc. provide written assurances not later than 14 February 2021, that you and your firm United Capital Management of Kansas Inc. and its associated companies, subsidiaries and affiliates CEASE and DESIST from making further factually untrue statements."*

   b. *"**Under Border Collie Rescue v. Ryan, 418 F.Supp.2d 1330, 1348 (M.D.Fla. 2006)**. Proving statements amount to at least negligence, would be an understatement, as both individuals are highly educated and licensed professionals. These individuals knowingly and willfully sought maximum personal and professional damage making multiple false statements, for the purposes to cause extreme emotional distress, personal and professional damage and pecuniary gain to themselves and their employer, a broker dealer and investment advisor registered and licensed in the US State of Florida."*

   c. *"**Smith v. Russell, 456 So.2d 462 (Fla. 1984)** dealing with public vs. private individuals, the person of Mr. Nelson is not a public official, on the other hand Mr. Nelson, is a witness in several dozen whistleblower actions involving alleged securities fraud, unjust enrichment, market manipulation, money laundering and other alleged federal crimes under investigation by federal, state and international authorities for a number of years."*

   d. *"**Rudloe v. Karl, No. 1D03-4651 (Fla. Dist. Ct. App. Nov. 5, 2004)**, removed the single publication rule with regards to the statute of limitations, none-the-less United Capital Management, a registered broker dealer in the State of Florida, acting on behalf of itself and by and through its executive leadership did willfully with wanton purposeful actions commit including without limitation **witness intimidation** in ongoing investigations involving alleged securities fraud, money laundering and false representations involving securities, issuance of crypto stock tokens, listing of crypto stocks on global exchanges, pumping those crypto stocks and dumping them causing a stock token pre-sold at 20 cents and ICO (initial coin offering) sold at 40 cents, while pump and dump operations were being commenced by the same issuers of the crypto stock token."*

e. *"**Lawnwood Medical Center, Inc. v. Sadow, 43 So.3d 710, 729 (Fla. 4th DCA 2010).** The malice is presumed and, thus, the statements are presumed harmful as a matter of law. Id. Especially wherein here we have a registered broker dealer, investment advisory firm in the State of Florida, acting by and through its principal, president and chief compliance officer, together with other executive management, making public statements, in a systematic series of phone calls INTO and through publications directed at the US District of Florida and the US State of Florida, to large shareholders, former board members, other unassociated persons, making statements of fact through positions of authority as licensed professionals; that "[Michael Eric Nelson], has a criminal background"; "[Michael Eric Nelson] is a convicted felon"; "[Michael Eric Nelson] is a felon fleeing law enforcement", among slanderous and defamatory statements and publications."*

f. *"United Capital Management and its executives have and continue through the date of this demand to CEASE and DESIST, to commit systematic **Libel, Slander and general defamation per se** via anonymous and overt under their names written communications, as libel per se concerns the written publication of false statements. **Dunn v. Air Line Pilots Ass'n, 193 F.3d 1185, 1191 (11th Cir. 1999) EMPHASIS ADDED."***

44. That counter-Defendant's have contacted individuals and published globally that Nelson's passport is "flagged" and Nelson is wanted by the FBI and interpol for acts of cyber terrosism, and hacking.

45. Counter Defendants have promulgated it is believed written materials and publications that Nelson "is fleeing explicit memorandum of the FBI".

46. Counter-Defendant's had a duty to CEASE and DESIST their slander, libel and defamation per se and to mitigate the damages they created.

47. Counter Defendants did not cease and desist their slander, libel and defamation and only increased their frequency and wide distribution of defamation against Nelson.

48. That counter-defendants have harassed and intimidated Nelson in RETALIATION for Nelson standing up for himself and other investors who are abused in the scheme

perpetrated against their collective interests and without their consent as shareholders and investors in a number of corporations which the counter-defendants seek to unlawfully combine, conceal and hide counter defendants malfeasances and use insidious machinations amounting to dolus to force Nelson and other "significant equity interest" holders to take shares of a holding company and other companies which have material misleading misrepresentations in their filed and unfiled documents with SEC including claim Anthem Holdings Co. is not part of a business combination merger.

49. Counter Defendants have not properly filed SEC documentation on Hera Software Development Inc.

50. Counter Defendants have improperly claimed a "Series A" raise on Hera Software Development Inc.

51. Counter-defendants claim on Regulation D, for Anthem Holdings Company, that no broker dealer is involved in the sale of its securities. When in fact this is not true.

52. Counter-defendants claim that no CRD number is associated with the sale of its securities, for Anthem Holdings Company. When in fact this is not true.

53. United Capital Management of Kansas Inc. by and through Chad M. Koehn issued public disclosure documents that Chad M. Koehn has a conflict of interest with co-counter-defendant United Capital Management of Kansas Inc. and himself by virtue of Chad Mitchell Koehn's role as a member of the board of directors with Anthem Holdings Company and he [KOEHN] is compensated from Anthem Holdings Company, yet he may recommend and sell stock and other investmetns in Anthem Holdings Company to clients and affiliates of United Capital Management of Kansas Inc.

54. Disclosure statements filed by Chad Mitchell Koehn signed under penalties of perjury and/or oath or affirmation state in part KOEHN receives shares of stock and warrants in Anthem Holdings Company and other compensation and that United Capital Management of Kansas Inc. "will not **change** fees charged" for holdings with Anthem Holdings Company through recommendations and direct stock sales.

55. Counter-defendants have misappropriated intellectual property and programming from NEVADA corporation Anthem Vault Inc. and contributed it to what is believed dozens of newly established corporations across the United States and foreign countries, in order to deprive Nelson and other "significant equity interest" holders of value.

56. Anthem Holdings Company SEC Form Regulation D:

https://www.sec.gov/Archives/edgar/data/0001830762/000183076220000001/xslFormD X01/primary_doc.xml

57. That defendants have contacted individuals and businesses for the explicit purposes to spread false defamatory statements, rumors and gossip in order to prevent Nelson from gaining gainful employment, in malicious and certain tortious interference with counter plaintiff Nelson's rights to gain gainful employment after illegal termination of employment with Anthem Vault Inc., by Anthem H. Blanchard having called Nelson "BITCH" and "MOTHERFUCKER" for Nelson's refusal to engage in global market manipulations of public global FINANCIAL markets through the issuance of cryptographic stock COINS acting as a security.

58. Believed under the direction of CHAD KOEHN etAL. in violation of Securities and Exchange Commission (SEC), IRS, Commodities and Futures Trading Commission (CFTC), FTC and other federal regulatory acts, laws, statutes and rules inclusive without

limitation those which the self proclaimed registered and licensed person Chad Koehn and UNITED CAPITAL MANAGEMENT OF KANSAS Inc. is liable and so **required to follow for the protection of the American consumer and investor** including without limitation the counter plaintiff nelson, Chad M. Koehn and UCM have violated securities laws and Chad Koehn believes CRYPTO CURRENCY which he states he is "entrenched" in Bitcoin the Worlds Largest Barter Economy, "has no rules and is the wild wild west" when it comes to any financial regulatory oversight.

59. That counter-defendants have stated publicly that "Nelson is a joke", and "cannot be trusted" and **"is a snitch in need of stitches"**, all in furtherance of RETALIATION against Nelson and for purposes of wrestling away "significant equity interest" in various companies and crypto currencies owed to Nelson, including without limitation HERC crypto currency stock coin, Anthem Vault Inc., Anthem Gold, Lunargistics, HayekMetals, AmagiMetals, HayekGold, AnthemBunker, Anthem Hayek LLC, Hercules LLC, Hercules SECZ, AG Herc Inc., Anthem Holdings Company, Hera Labs, Hera Soft, Hera Software Development Inc., AHCRE LLC and many others yet to be determined.

60. Counter-defendants have made claims nelson is "sick" and "diseased" in order to humiliate, ridicule and defame nelson in furtherance of their extortion and blackmail to have nelson walkway from significant equity interest in a variety of companies.

61. Numerous former employees of NEVADA based Anthem Vault Inc., besides nelson have been subjected to similar outrageous and certainly tortious overt acts, establishing a pattern of abuse of former employees for the purposes of discrediting any person who speaks up and will not be a party to illegal, immoral and unethical business operations.

62. That counter-defendant's statements negatively reflecting on Nelson's reputation, trade and profession are untrue and made repetitively and wrongfully to third parties.

63. That counter-defendant's statements are made with malice of forethought to cause nelson extreme financial hardship and difficulty in becoming re-employed or making a living.

64. That counter-defendant's actions and statements are not only untrue but made with certain willful malice and reckless disregard for the truth as a form of "blackballing" and "blacklisting" nelson throughout multiple industries as a form of RETALIATION for lawful reports regarding Anthem Vault Inc.; Anthem Gold and Hercules (HERC) crypto currency stock COIN, marketing schemes and pump and dump market manipulations of global financial markets to lure unsuspecting investors to invest in cryptocurrency coins which appear to have trading volume on exchanges when trading is being performed by insiders, working for the companies thus creating a self dealing security. All of these actions are known to Chad M. Koehn and thus United Capital Management of Kansas.

65. Chad Mitchell Koehn etAl. have contacted Nelson and **made veiled threats identifying by name, address and/or location Nelson's elderly parents, sibling and minor child.** Indicating direct threat to life and safety. Nelson has had the need to immediately report the same to authorities. The actions and behavior of Koehn and counter-defendant's gives rise to questions concerning mental stability, especially given Koehn's purported role in management of capital and licenses he claims in financial services.

66. That counter-Defendant's statements are untrue and said statements were made with malice and intent to damage the occupation and business prospects and future employment of Nelson in prevention of nelson from earning a living and surviving the pandemic COVID-19.

67. CounterDefendant's statements are negatively reflecting on Nelson's profession & trade.

**68. Counter Defendant's statements expose Nelson to hatred, contempt, and ridicule.**

69. Counter Defendant's statements are slanderous per se and per quod.

70. Counter-defendant's statements were stated as "fact" and not opinion stating a person who at the time had never been charged with any crime ever, was a "convicted felon", a "multiple convicted felon", a "federal felon fleeing memorandum from the FBI" and that nelson is the 'target of FBI and interpol criminal indictments' all are categorically false and meant to prevent nelson from gaining gainful employment all in furtherance of RETALIATION as a form of "blackballing" or "blacklisting" for filing protected communications internally and externally as an employee to regulatory authorities.

71. Counter-Defendant's actions, statements are purposeful, willful, done with malice, on behalf of themselves each individually, jointly, severally and made on behalf and/or while representing all **corporate defendant's and/or Corporations, Trusts or Estates.**

72. That the actions and statements of the counter-defendant's so herein complained, Nelson reserves and so preserves the right to file additional Federal Litigations where harm was felt by the transnational and international actions of Chad Mitchell Koehn, filing additional litigations in Federal Courts, and where applicable County Courts and under the State laws in each state where now or was created a series of companies and other entities or wherein defendants have spewed forth their incriminations and insinuations overall slander at conferences or other gatherings and via other communications.

73. Koehn etAl. made purposely materially misleading statements on the SEC regulation forms **in order to hide and otherwise obsurfacate the true identities and true nature of the company for reasons to materially mislead current and future investors, as is**

**evident in the press releases issued by Koehn etAl. Themselves. Wherein potential money laundering has occurred as referenced by Craig Alan Brand even before ruling was made on his pro hac vice status in this litigation Brand proffered testimony to the presiding jurist he is currently defending actions by FINCEN, presumably as stated against the counter-defendants Chad Mitchell Koehn and United Capital Management of Kansas Inc.**

74. That Koehn on behalf of himself and UCM used insidious machinations, *dolus* to force Nelson and other "significant equity interest" holders, to accept new shares of stock in "Anthem Holdings Company", in place of their "significant equity interests" in a host of underlying companies including Hera Software Development Inc and Anthem Holdings.

75. Counter-defendant's have caused insidious machinations, dolus, constituting deceit including false promises, regarding stock swaps and transfers and the nature, origin and intention of Crypto Currency Stock Coin, HERC crypto currency stock, in the placement memorandums and have wrongfully, purposefully and illegally misrepresented the sale of said crypto currency HERC and then misappropriated the programming to now claim Hera Software Development Inc. has "hercules a proprietary protocol" without having availability to those INVESTORS, some more than 14,500 wallet addresses, the counter-plaintiff included, accepting the exaggeration of hopes and benefits of the crypto graphic contract stock COIN in the ICO and holdings companies and now HeraSoft.

76. The insidious machinations by counter-defendants is clear abuse of confidence, excessive use of fictitious names, as well articulated herein as to use by counter-defendant UCM and Chad Mitchell Koehn etAl. in the SEC Regulatory D filings made through use of materially misleading statements, purposeful omissions and fraudulent names.

77. Insidious machinations include abuse of confidence in qualifications and authority, all the thousand and one forms of deception; which may influence the consent of the contracting parties, some more than 14,500 investor addresses without limitation and inclusive of the counter-plaintiff, all in furtherance of fraudulent inducement in placement memorandum.

78. The counter-defendant's without necessarily constituting estafa or some offense under the penal laws, have used the insidious machinations in order to defraud the investors, numbering at least 14,500 addresses; counter-plaintiff included.

79. That Koehn and UCM purposefully mis-stated via material misrepresentations the origins and material facts on SEC Regulatory Forms for Anthem Holdings Company and then purposefully misappropriated NEVADA corporation assets to a new company Anthem Holdings Company and Hera Software Development Inc.

80. That counter-defendants filed materially false and misleading form Regulation D for Anthem Holdings Company, and Hercules SECZ and others, including lack of any filings whatsoever for Anthem Gold and Hera Software Development Inc. which counter-defendants claim held a $5,000,000.00 "Series A".

81. That counter-defendants solicited and accepted funds for the sale of securities not reported correctly as to dates on SEC or other regulatory bodies.

82. Koehn and UCM arranged the formation of Anthem Holdings Company via a business combination merger, in a series of triangular reverse "short-form" mergers without the requisite 90%+ shareholder approval as per the laws in NEVADA, TEXAS and DELAWARE. Failing to report the same to SEC and other regulatory bodies.

83. That counter-defendants failed to provide plan of merger in the contested illegal triangular reverse short-form mergers of merger subs using targeted fake acquisition merger corporations to hide and conceal malfeasances they committed in the "smurfing" of origin funds, capital, currencies in furtherance of a criminal enterprise.

84. Anthem Holdings Company filed Form 611 in Texas, as required by law and refused to provide the "plan of merger" to Nelson and other "significant equity interest" holders.

85. That Chad M. Koehn, in March of 2022, after removal of the incongruous frivolous SLAPP styled state petition, removed to Federal Court, removed Anthem Holdings Company from public disclosure documents in order to hide and conceal public statements he himself has made and did so replace it with false and materially misleading statements regarding RED NECK HIGH TECH YACHT FUND LP, a purported hedge fund for investment in Crypto Currencies and Crypto Assets.  In the filing in March of 2022 Koehn signed under penalties of perjury false statements in violation of securities regulations and to materially mislead past, current and future investors in the "hedge fund" he himself has filed SEC regulatory documents concerning, including without limitation false statements as to persons involve having certifications and licenses which they do not.

86. Counter-defendants did then both purposefully conceal material facts on SEC regulatory forms, miss-stating the true names and identities of the directors, addresses, and the dates of solicitation and registration of new shareholders.   Concealing wire transfers and movements of funds constituting money laundering, illegal movement of assets and funds against the interests of the investors, the rule of law and the proper accounting of records.

87. That Chad Mitchell Koehn did direct Carlee Underturf aka now known as Carlee Kendrick, the admitted wife of former attorney Quinn Robert Kendrick, who assisted and signed the incongruous state petition with Larry Gene Michel replete with purposeful racial slur aimed and directed at the pro se counter-plaintiff, to make wire transfers and payments which assisted indirectly and directly with BRIBERY of foreign officials relating directly to money laundering and drug possession, distribution and smuggling operations in the United Arab Emirates, concerning Anthem Holdings Company and Hera Software and Development Inc.

88. Chad Mitchell Koehn was a registered broker and registered securities representative both with CRD numbers, specifically and purposefully not filed on SEC Regulation Form D, with regards to Anthem Holdings Company filings. Chad Mitchell Koehn then filed statements to conflicts of interest concerning direct conflicts with co-defendant United Capital Management of Kansas Inc. and did sell and recommend stock sales in Anthem Holdings Company to a variety of persons and retirement accounts, which they themselves are governed under strict US Federal law as to retirement accounts.

89. Chad Mitchell Koehn and UCM claimed a direct conflict of interest with each other and Anthem Holdings Company on disclosure filings, yet solicited investors to Anthem Holdings Company to form the business combination merger, yet checked off on SEC documents that there was no business combination merger.

90. That Chad Mitchell Koehn knowingly and wrongfully solicited investments and forced Nelson and others to accept new terms and stock of the holdings company against their collective interests in the underlying companies. Using insidious machinations during the global deadly pandemic known as COVID19, abusing the US National and International

Emergencies and the emotional state of investors, the counter-plaintiff included in order to materially mislead through fraudulent inducement in insidious machinations committing dolus against the interests of the investors, the courter-plaintiff included.

91. Counter-defendants sold securities in Anthem Holdings Company while Chad Mitchell Koehn was a registered Broker, as defined by the SEC and a registered investment representative, although did not so self identify as such on the SEC regulatory forms filed. Koehn in direct contravention admitted to a conflict with Anthem Holdings Company on filed public disclosure documents.

92. Both Chad Mitchell Koehn and UCM directed funds to create a new corporation Hera Software Development Inc. a DELAWARE corporation, on the heels of closing Anthem Holdings Company questionable stock sale; removing intellectual property and assets of Anthem Vault Inc. a NEVADA corporation, by and through a series of transfers to HERC crypto stock coin, to the new company Hera Software Development Inc. claiming publicly in self created press releases: Hera Software Development Inc. had completed a "Series A" and HERC crypto currency stock COIN ICO is "proprietary protocol".

93. Hera Software Development Inc. has no SEC registration nor any filings with any regulatory agency of the US government or State registrations as required, of a company who publicly claims a "Series A", through the self created press releases of Koehn.

94. Hera Software Development Inc. claims HERC crypto currency stock COIN, sold as a decentralized software key, as "proprietary protocol" to Hera Software Development Inc. thereby denying all purchasers of HERC crypto currency stock COIN, ability to access software which the coin was intended to run.

95. Counter-defendant's statements are untrue and said statements were made with malice and intent to damage the business relationships and job prospects of Nelson.

96. Counter-defendant's statements negatively reflect on Nelson's profession and trade.

97. Counter-defendants in efforts to justify materially false statements in securities filings, and justify proper use of funds for corporations have purposefully and willfully and wrongfully used SEALS, LOGOS and NAMES of US Federal Resources.

98. Counter-Defendants do not have "ENDORSEMENT" or "AFFILIATION" with the US Federal Agencies, Commissions, Administrations, and Armed Forces they claim.

99. Counter-Defendants have wrongfully implied partnership with US States.

100. That counter-defendant's have wrongfully stated they are ENDORSED by: the United States Airforce and United States Airforce Research Laboratories.

101. That counter-defendants have wrongfully used the official SEAL's of the United States Department of Defense and other divisions of the Armed Forces.

102. That counter-defendant's have wrongfully implied partnership with the governments of US States and the Federal Government of the United States of America.

103. That counter-defendant's have wrongfully implied partnership with US States.

104. Intellectual property developed by Anthem Vault Inc. in the US State of NEVADA was misappropriated to Anthem Gold and **an unregistered, unlicensed securities sale** was conducted requiring American Citizens to wire funds to numbered accounts overseas, in Luxembourg and the Netherlands and then funneled to the GRAND CAYMAN ISLANDS, tax EVASION jurisdiction, who has since filed legal action.

105. Koehn etAl. illegally combined Anthem Vault Inc. with a series of other corporations which were created around the US and the globe, all originating from Anthem Vault Inc.,

of NEVADA creating an alleged illegal entity; Anthem Holdings Company out of the US State of Delaware, via short-form mergers where Nelson and other shareholders were not notified nor included in voting as required by law, thus the corporations could not have achieved the requisite 90%+ vote in order to consummate any contemplated merger.

106.    The obscure triangular reverse "short-form" merger technique was orchestrated to materially mislead investors and operates as a means to hide underlying malfeasances by the counter-defendants, in <u>material breach of fiduciary trust</u> regarding the operation of the business models nelson and others invested considerably in the creation.

107.    Nelson and many other minority shareholders collectively comprising far more than 10% of all classes of stock have been deliberately not included in shareholder meetings, dividend payments, shareholder votes, and all customary shareholder notices.

108.    That Nelson as a "significant equity interest" holder as stated by Paul Douglas Aubert in writing, holds in excess of 10% of all classes of stock, given the legal definition under NEVADA law regarding "significant equity interest" holder (owner).

109.    Koehn etAl. caused to be filed a SEC Regulation form D, which contains materially misleading information, regarding Anthem Holdings Company.  The Regulation D purposefully, included false and misleading information including without limitation affixing false names and addresses to the purported directors thereof and addresses stated.

110.    The Regulation D for Anthem Holdings Company erroneously claimed no broker dealer or investment advisor or financial advisory involvement, no CRD number, yet Chad Koehn and United Capital Management of Kansas Inc., filed disclosure statements listing Anthem Holdings Company as a conflict of interest between Koehn and UCM.

111.    Koehn etAl. made these <u>purposely materially misleading statements on the SEC regulation forms</u> **in order to hide and otherwise obsurfacate the true identities and true nature of the company for reasons to materially mislead current and future investors, as is evident in the press releases issued by Koehn etAl. themselves.**

112.    Koehn etAl. did purposefully and wrongfully state on the SEC regulatory form that the company Anthem Holdings Company and the raise of money was not a part of a business combination merger, when in fact the company Anthem Holdings Company, was formed from "targeted acquisition" companies created by similar names to the underlying companies, via a contested and allegedly illegal operation known as triangular reverse "short-form" mergers <u>without the requisite shareholder notice nor vote.</u>  The alleged "smurfing" of the identities of companies, and capital raised and expended involved companies located in DELAWARE, NEVADA and Texas, via the triangular reverse "short-form mergers", hiding origin and identity of assets to each merged entity.

113.    By virtue of creation of like-named companies and performing "short-form" mergers of the target acquisition companies, Koehn etAl. was required to notify all shareholders and take a vote as required by the laws of the States where such companies originated.

114.    Requirement under law to achieve said triangular reverse "short-form" mergers is for shareholder votes greater than 90% of all classes of stock in accordance with NEVADA, Delaware and Texas law, which the counter-defendants failed to consummate.

115.    The Counter-defendants refused to provide any plan of the contemplated triangular reverse short-form mergers nor information as required under Form 611 in Texas or forms in Nevada and Delaware respectively concealing origins and money laundering.

116.    The counter-plaintiff being a significant equity interest holder, as defined under
        NEVADA Law, holding in excess of 10% of all classes of stock was never notified of any
        shareholder vote, nor were a host of other signifcant minority shareholders, thereby
        violating the rights of the shareholders, to their collective detriment.

117.    Form Regulation D, filed to the SEC it was stated under penalties of perjury that the
        raise of additional money for the new DELAWARE Holdings company:  Anthem
        Holdings Company was "NOT" a business combination merger.  However, in the
        allegedly illegal creation of Anthem Holdings Company without 90% shareholder vote
        and approval as required, claimed the issuance of shares with a raise of $5 million in
        order to effect the business combination merger.  This created materially false
        information together with other false information stated and purposefully removed and
        left out to make other information untrue, to the SEC on SEC documentation, thus
        creating materially false information provided to existing and future shareholders.

118.    Chad Mitchell Koehn was a registered Broker and Registered Investment Advisor at
        the time of solicitation of investors to the allegedly illegally formed Anthem Holdings
        Company.   Koehn's own attempts to retroactively resign his brokers authorization
        demonstrates clearly via his brokers designation in direct conflict with the statements
        made in Regulation D filing by the allegedly illegally created Anthem Holdings
        Company; wherein Koehn proceeded with illegal stock sales violating the interests of
        current shareholders counter-plaintiff included and to the detriment of future investors.

119.    By virtue of his registration as a broker and the direct proof positive solicitations and
        sales occurred while he was a licensed broker as indicated in the form Regulation D filed

with the Securities and Exchange Commission (SEC), and the fact Chad Mitchell Koehn

with mens rea of guilt attempted to back date his resignation, demonstrates alleged fraud.

120.    Even in his, CHAD MITCHELL KOEHN's feeble attempts to back date resignation

as a broker, thereby making the filing made on 10 November 2020, materially false filing

to the SEC, Chad Mitchell Koehn self admits to violation of SEC regulations and thus

possibility of securities fraud (possibly securities irregularities or abnormalities) in the

statements and materially misleading and false information submitted on regulatory form

D of the Securities and Exchange Commission regarding the allegedly illegally

established holdings company:  Anthem Holdings Company.

121.    In the statement on form Regulation D for Anthem Holdings Company it states

clearly that NO Broker is involved and clearly that no registered representative with a

CRD number is involved in the sale of the securities of Anthem Holdings Company the

company created via the illegal series of "smurfing" in use of "short-form" mergers.

122.    That Chad Mitchell Koehn and UCM did materially mislead investors both current

(past) including the counter-plaintiff and future investors solicited by Chad Mitchell

Koehn, by and through illegal fraudulent statements of affiliation, endorsement and

connection to StoneX $50 billion, Public entity.  Creating materially false and misleading

statements and information to negatively affect US public financial markets.

123.    Chad Koehn did file public disclosure statements that he sits on the Board of

Directors for Anthem Holdings Company, and has a direct conflict of interest with

recommending and selling securities in Anthem Holdings Company.

124.    Counter-Defendant Chad Mitchell Koehn is listed as a director of the Board of

Directors for conflicting company Hera Software Development Inc. a/k/a HeraSoft

125.    Pro Hac Vice purported attorney Craig Brand misled the Chambers of the presiding

jurisit and the pro se counter-plaintiff by using an email address @herasoft.com   A

conflict of interest exists between Craig Brand, Anthem Holdings, UCM, Chad Koehn,

and Hera Software Development Inc.  Both Koehn and Brand knew what Brand was

doing by attempting to mislead the pro se counter-plaintiff and the Chambers of the

presiding jurist as complained in Documents 52 and 57 of the docket at bar.

126.    Chad Koehn caused during the early days of this litigation in March of 2022, the

removal of Anthem Holdings Company, conflict between himself and United Capital

Management of Kansas Inc. in order to hide, conceal and otherwise spoil evidence.  In an

attempt to mask his involvement and conceal evidence after it was placed in this Federal

docket as attached evidence regarding Red Neck High Tech Yacht Fund LP, a crypto

currency hedge fund presumably created to hide the underlying issues with HERC

cryptocurrency Initial Coin Offering.  All HERC transfers are public in the blockchain.

127.    Even Chad Mitchell Koehn's backdating of resignation of brokers license occurring

on 30 October 2020, demonstrates clearly that he was in fact a broker when the first

solicitation and investment in the allegedly illegal holdings company occurred.  Proof

positive in the regulatory form exists, both in regulatory filings and in the docket of this

matter.

128.    Chad Mitchell Koehn in his role as a licensed investment and securities person did

purposefully wrongfully with mens rea failed to provide material facts regarding the

companies, their issuance of stock, the business combination merger contemplated by the

offering documents, the failure to notice all shareholders in votes, underlying allegedly

illegal pumping and dumping of crypto currency under the tagline "HERC".

129.    That Koehn EtAl. deliberately did not provide material information by which not providing said material information, made other information provided categorically untrue and false.  Demonstrating clear violations to fiduciary responsibilities and certain allegedly illegal securities sales, market manipulations of crypto currencies, false information on Regulatory forms.

130.    That Chad Mitchell Koehn having allegedly violated Federal Securities laws did "resign" his brokers license retroactively, less than two weeks prior to filing form Regulation D for the Anthem Holdings Company, however, had previously marketed, solicited investment to Anthem Holdings Company through the use of materially false and misleading information to the detriment of the counter-plaintiff and all other existing investors and those new and future investors solicited.

131.    That Chad Mitchell Koehn failed to timely notify and amend filings regarding financial documents relating to the raise of funds for Anthem Holdings Company.

132.    That Chad Mitchell Koehn failed to timely file documentation regarding Anthem Holdings Company, and failed to disclose the existence of litigation involving Anthem Holdings Company and the corporations which made up the allegedly illegal business combination merger, via the "smurfing" of origin in the "short-form" mergers contemplated in the offering memorandum.

133.    That the counter-plaintiff invested in both the STOCK equity of the company Anthem Vault Inc. and thus any "spinoff" companies of Anthem Vault Inc. and in cryptographic securities in the form of cryptocurrencies issued including HERC initial coin offering, and did so according to the promulgated placement memorandum for HERC coin offering, which stated all crypto currency coins not sold would be destroyed (burned).

134.    The "burn" or destruction of HERC crypto currency stock coin, was commenced in a fashion in which the number of HERC crypto currency stock coins, became precisely 180 million.   Counter-defendants then in direct CONTRAVENTION of the securities placement memorandum claimed this was a "marketing move", thus purposefully, knowingly and maliciously denying the more than 14,500 INVESTOR addresses the claims they themselves made in the securities placement memorandums.

135.    Counter-defendant's claimed this was a "marketing move", whereas the original placement memorandum provided for no such "marketing move", thus demonstrating clearly manipulation and violation to the rights and fairness of those who invested in the crypto currency stock coin, which was supposed to operate as a supply chain token.

136.    That by the nature of the actions of Chad Mitchell Koehn and counter-defendants in materially false and misleading information concerning the cryptocurrencies and holding Company:  Anthem Holdings Company that Chad Mitchell Koehn etAl. activities were and are to a detriment of the existing shareholders of the originating company in the US State of Nevada, Anthem Vault Inc., where all employees were employed.

137.    That Chad Mitchell Koehn by and through his actions materially misled the existing shareholders and purposefully caused existing shareholders to lose significant equity holdings and significant equity interest, refusing to market nor operate the existing companies according to the charters thereof.   Including failing to operate Anthem Vault Inc. HayekMetals, HayekGold, AmagiMetals, etc.

138.    That Chad Mitchell Koehn has filed disclosure statements with regulatory authorities and publicly available online demonstrating clear conflict of interest between himself, CHAD MITCHELL KOEHN and United Capital Management of Kansas Inc. regarding

Chad Mitchell Koehn's position with Anthem Holdings Company and compensation Chad Mitchell Koehn receives from Anthem Holdings Company, while he was also a licensed broker and registered investment representative.

139. That although Chad Mitchell Koehn attempted to mislead and misdirect US regulatory authorities by "resigning" a brokers license in order to make the statements made on form Regulation D, filed for the illegally established holdings company Anthem Holdings Company which filed the materially misleading Regulation D to the Securities Exchange Commission on November 11, 2020:

https://www.sec.gov/Archives/edgar/data/1830762/000183076220000001/xslFormDX01/primary_doc.xml

Chad Mitchell Koehn retroactively resigned his brokers license with a termination date of 30 October 2020, despite the fact that on SEC regulatory form it was clearly stated that the first sale occurred on 27 October 2020; thereby self admitting to securities abnormalities.

140. **When the form Regulation D was filed to the SEC on 11 November 2020 it stated that Anthem Holdings Company had already sold more than $1.5 MILLION** in stock in the newly established allegedly illegal business combination merger via the highly contested illegal "smurfing" of the underlying companies true identities and locations via a maneuver called "short-form" merger wherein under the direction and supervision of Koehn etAl. fake companies were created as "target acquisition" companies to effect a roll up of the underlying companies to the detriment of the shareholders therein. It is believed through discovery the dates and times of wire payments and accounts and persons sending the same to Anthem Holdings Company or

other holding account will clearly demonstrate Chad Mitchell Koehn was a broker with current license at the time making the form Regulation D even more materially false.

141.    Through discovery and banking account information, wire transfers, constituting mail and wire fraud it is believed information will come to light through discovery detailing that investment to the illegally created Anthem Holdings Company happened while Chad Mitchell Koehn was a registered broker, long prior to the already in evidence proof positive CHAD MITCHELL KOEHN was a registered broker during the period of time when the first solicitations occurred as well stated and articulated in the materially false and materially misleading SEC regulatory D filing of Anthem Holdings Company, thus participating in the same and failing to provide materials and facts which therefore made other facts untrue, thus providing materially misleading information as to the true nature of the underlying securities and source of funds.

142.    Upon investment into Anthem Holdings Company to consummate the contemplated allegedly illegal "smurfing" of underlying companies to create Anthem Holdings Company without operation of the requisite shareholder notices and votes, to obtain 90%+ shareholder approval.  Koehn etAl. Redirected the funds raised for Anthem Holdings Company, and issued press releases claiming a "Series A" investment round to a newly formed company Hera Software Development Inc.

143.    According to the website www.Herasoft.com for the newly established Delaware Company Hera Software Development Inc. which Koehn etAl. Claimed the $5 million raised for Anthem Holdings Company, was actually a "Series A" raise for Hera Software Development Inc. at times claiming the company is separate and at times claiming the

company is owned by Anthem Holdings Company shareholders, the website publicly states Craig A. Brand is a shareholder of Hera Software Development Inc.

144. In order to placate existing investors, especially "significant equity interest" holders the counter-plaintiff included, **Chad Mitchell Koehn etAl. invented fantastical stories including illegal claims to be contracted by the United States Federal government and having "partnerships" with foreign governments. It is believed no such partnership exists nor any contracts or partnerships or endorsements with US States or the US Federal Government or the armed forces of the US Federal Government, despite utilization of US State Seals, US Federal Resources seals, logos and names in violation of law and to the detriment of the American Citizenry.**

145. Koehn etAl. made claims to be affiliated with and **ENDORSED by the United States Army and the United States Airforce,** specifically wrongfully and illegally using the logo for the Army Logistics Command and the United States Airforce Research Laboratories, in addition to using the logo and seal of the US Department of Defense, and seals and logos of divisions of the United Nations implying and stating to have a partnership with each referenced and many others including without limitation claims to be affiliated and endorsed by the ARTEMIS project of the US administration NASA (space exploration), claims to be building a space station to mine asteroids, these actions constitute violations to 18 U.S. Code § 1017; those actions are actionable by US Attorneys and each of the armed forces, and the US Justice department (DOJ) regarding the utilization of the logo of the Department of Defense the claim herein provided is in reference to materially misleading and fraudulent claims in order to sell, recommend and otherwise transact in securities and crypto currency coins.

146.    In other fantastical claims Koehn etAl. claimed and claims to be building a "Space Station" to mine asteroids for gold, in a feeble attempt to justify the originating business proposition of the company the counter-plaintiff was employed and invested in, Anthem Vault Inc. of the US State of Nevada, the genesis corporation to which all roads lead from the contested and illegal series of short form mergers which created Anthem Holdings Company of the US State of Delaware, where the funds raised there were then used to claim a "Series A" investment in Hera Software Development Inc. which in turn claims to use the "proprietary Hercules Protocol", presumably of the HERC crypto currency, thus publicly stating the HERC cryptocurrency is not decentralized as advertised in its sale, nor is the HERC cryptocurrency a token that can be freely used, as it is tied now to a "proprietary protocol" for the exclusive use of Hera Software Development Inc. which Koehn etAl. Claims to have raised $5 million as a "Series A", to the detriment of all existing shareholders and investors who believed they invested in Anthem Vault Inc. of NEVADA a gold vaulting service.

147.    The counter-plaintiff had previously rightfully contacted regulatory authorities to stop illegal market manipulations of cryptocurrencies published and promulgated on globally diverse exchanges, where the proverbial pump and dump was being orchestrated by insiders to the detriment of the crypto currency COIN investors inclusive of the counter-plaintiff. The counter-plaintiff is therefore ipso facto a WHISTLEBLOWER against the illegal conduct, market manipulations and certain RICO style violations which continue through this day, believed at the behest and mastermind of the scheme Chad M. Koehn and UCM.

148. During the creation of the HERC crypto currency COIN, the counter-plaintiff was also solicited and tricked into investing in Bitclub, to supposedly earn bitcoin through virtual mining machines, which was made as a condition of employment with Anthem Vault Inc. Counter-plaintiff never received any return nor ability to remove funds from Bitclub.

149. In order to mask and hide the identity of Anthem Holdings Company and the underlying businesses created by illegal "smurfing" in the "short-form" mergers, Chad Mitchell Koehn etAl. created, Hera Software Development Inc. out of the US State of DELAWARE, and did write and cause to be globally disseminated claims to have raised money under a "Series A" financial raise for the company Hera Software Development Inc. (HeraSoft) and made more wild and fantastical claims, including without limitation to be in business with "major sovereigns", to be financed in part by foreign regimes with adverse policies to those of the United States of America. Hera Software Development Inc. was not listed in the placement memorandum claiming the business combination of the series of questionable short-form mergers of Anthem Vault Inc. and its supposed subsidiaries who raised money in unregistered and unlicensed sales of securities, including without limitation wiring of funds to Luxembourg and Grand Cayman Islands.

150. Claims of a "Series A" investment to create Herasoft despite the FACT Hera Software Development Inc. is NOT registered with the Securities and Exchange Commission, or any other regulatory authority as required, though public news reports, press releases promulgated by Koehn etAl. claim $5 million investment in a "Series A" investment on the heels of the raise documented by the materially misleading Regulation D filing for Anthem Holdings Company.

151.    That defendants have contacted individuals and businesses for the explicit purposes to spread <u>false defamatory statements, rumors and gossip</u> in order to prevent Nelson from gaining gainful employment, in malicious and certain tortious interference with the plaintiff Nelson's rights to gain gainful employment after illegal termination of employment by Anthem Blanchard having called Nelson "BITCH" and "MOTHERFUCKER" for Nelson's refusal to engage in market manipulations of public global markets through the issuance of cryptographic stock COINS acting as a security under the direction of CHAD KOEHN etAL. in violation of Securities and Exchange Commission, IRS, Commodities and Futures Trading Commission (CFTC), FTC and other federal regulatory acts, laws, statutes and rules inclusive without limitation those which the self proclaimed registered and licensed person Chad Koehn and UNITED CAPITAL MANAGEMENT OF KANSAS Inc. is liable and so **required to follow for the protection of the American consumer and investor** including without limitation the counter plaintiff nelson.

152.    Koehn etAl authored and created a series of fake news reports and press releases to further promote the idea that Hera Software Development Inc. was a new company with a "Series A", investment and he is a member of the Board of Directors for that corporation as well, which upon information and belief is actually the funds and capital raised originally through the sale of Anthem Holdings Company consisting of the underlying and originating company Anthem Vault Inc. of the US State of NEVADA.  Thus materially misleading all investors especially those original investors having invested in Anthem Vault Inc. of NEVADA, where the counter-plaintiff and all employees were employed, and where the counter-plaintiff created the plans and programming for HERC.

153.    Koehn etAl. in order to placate investors both past in the originating company Anthem Vault Inc. and in the new illegally established Anthem Holdings Company, created a series of fake and false press releases claiming among other things to be in business with "major sovereign[s]", contracts with governments, sovereign wealth funds, Warburg Pincus, working relationships implying partnerships and misuse of US Federal Seals to US Federal Departments and misuse of State Seals and logos and names of US Federal Resources and even the United Nations, all of which are materially false statements and materially false designations claiming endorsements by US governments.

154.    **Koehn etAl. makes wild and outlandish claims to be a direct partner with the Country of the Netherlands,** and <u>through direct partnership with the country of the Netherlands and "Warburg Holland" of Warburg Pincus</u> global investments to have created a "gold site" in order to placate the previous investors in Anthem Vault Inc. of the US State of NEVADA.

155.    Chad Mitchell Koehn has failed in disclosure of all conflicts and failed to disclose all business interests by not disclosing he is a board member of Hera Software Development Inc. which by its very nature is directly conflicting to those INVESTORS who have purchased the HERC crypto currency stock COIN, in a Initial Coin Offering (ICO), or other name for example as used Initial Token Generating Event (TGE).

156.    In failing to disclose in regulatory filings including without limitation those filings with SEC, Chad Mitchell Koehn has violated securities regulations, by not disclosing his position on the board of directors of Hera Software Development Inc.

157.    Chad Mitchell Koehn and UCM have violated the Care Obligation, in so much as they must exercise **reasonable diligence**, **care, and skill** when making a

recommendation, especially wherein said recommendation is in material conflict with the "board seats" Chad Mitchell Koehn publicly declares to Anthem Holdings Company and public advertisements as a board member of Hera Software Development Inc. which claims "proprietary protocol" HERC, which was previously sold to INVESTORS in the HERC crypto currency stock COIN, Initial Coin Offering (ICO).

158.    According to public blockchain records the HERC crypto currency stock Coin, generated from the Initial Coin Offering (ICO) for the HERC cryptographic contract, now has more than 14,500 wallet address INVESTORS and just over 15,000 total transactions:

https://etherscan.io/token/0x2e91E3e54C5788e9FdD6A181497FDcEa1De1bcc1

159.    Fantastically Koehn etAl. also claims to have a contract with the Country of the Netherlands (Holland), "to verify all gold imports and exports for the entire nation", both stating and implying a direct relationship, partnership and contract with a foreign government.  It is believed no such contract with the government of the Netherlands (Holland) exists now or has ever existed.   Demonstrating clear materially false claims, thus materially false misrepresentations to defraud investors and the public at large.

160.    Warburg Pincus is not believed to have a relationship with Koehn etAl either.

161.    Chad Mitchell Koehn and UCM must establish, maintain and enforce written policies and procedures reasonably designed to achieve compliance with Regulation Best Interest.

162.    Chad Mitchell Koehn and UCM are in direct violation of the capacity disclosure requirements of the SEC (Commission).

    a.   The Commission presumes that the use of the terms "adviser" and "advisor" in a name or title by (i) a broker-dealer that is not also registered as an investment

adviser or (ii) an associated person that is not also a supervised person of an investment adviser **to be a violation** of the capacity disclosure requirement under Regulation Best Interest.

163.    Koehn etAl, to further provide material misrepresentations, makes wild and outlandish fantastical claims to be in direct partnership and contract with the Country of Qatar in the middle east.  Claiming contracts of $10's of millions of dollars directly with the government of the Country of Qatar and claiming a direct relationship and partnership with the homogeneity of the ruling family and partnership with the Emir of the emirate of Qatar, in providing "Artificial Intelligence" and cyber security to the Nation of Qatar and their sovereign wealth fund, claiming to provide the security to the Emir directly and the entire homogeneity of the ruling family of Qatar, and their tourism boards.  These are believed to be further stretches of the truth and materially false and misleading statements, in order to deceive the general public.

164.    Counter-defendant UCM uses trickery and deception in material false and misleading regulatory filings, making it virtually impossible to track the variations of names used as the "nerve center" test suggests for the entity UCM.  Wherein as described United Capital Management of Kansas Inc. varies the use of its name to include: Unitedcapitalmanagement of Kansas Inc. in its Secretary of State registration, the Court has previously recognized this as a DBA (Doing Business As), they also regularly abbreviate the name as UCM and at times only reference themselves as United Capital Management, making it increasingly difficult for other shareholders, both minority and "Significant Equity Interest" holders in a vast array of corporations, and investment vehicles to identity in SEC (SECURITIES and EXCHANGE COMMISSION) and other

regulatory systems the true origin and identity of counter-defendant UCM for example in SEC systems: EDGAR [**Electronic Data Gathering, Analysis, and Retrieval system**], which is the primary system for companies and others submitting documents under the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, and the Investment Company Act of 1940; a public access portal to allow the PUBLIC to verify documents filed by those entities with responsibilities in the public financial markets.

165.    UCM purposefully has since at least 2018 employed trickery and certain willful, purposeful, wrongful and illegal deception in order to hide and evade detection within EDGAR [**Electronic Data Gathering, Analysis, and Retrieval system**], to the detriment of the public at large and the US Financial Markets, making it not possible for members of the public to identify the origin of counter-defendant UCM's filings.

166.    The knowingly, purposeful and wrongful abnormalities and illegalities within the filings made by counter-defendant UCM in filings made and signed by its purported registered principal Ryan J. Kolzow, defeats purposes of regulatory forms filed by UCM.

167.    When filing required SEC documents in EDGAR the signer is required to affix signature and sign the following statement:

    a.   **"The institutional investment manager filing this report and the person by whom it is signed hereby represent that the person signing the report is authorized to submit it, that all information contained herein is true, correct and complete, and that it is understood that all required items, statements, schedules, lists, and tables, are considered integral parts of this form."**

168.    Counter-defendant UCM by and through a person identified as:  Ryan J. Kolzow

Utilizing the title:  Registered Principal has signed multiple SEC regulatory forms under the oath and testament as referenced herein 147(a) above.

169.    In at least 15 filings filed to the SEC (SECURITIES EXCHANGE COMMISSION) and made public for the protection of the public at large and the US Financial Markets, UCM has filed materially false and misleading filings to the detriment of the public.

170.    In at least 15 filings made materially false by counter-defendant UCM are filed on:

| |
|---|
| 2022-03-31 |
| 2022-01-18 |
| 2021-10-27 |
| 2021-07-26 |
| 2021-04-27 |
| 2021-01-21 |
| 2020-10-19 |
| 2020-07-17 |
| 2020-05-04 |
| 2020-01-24 |
| 2019-10-15 |
| 2019-07-25 |
| 2019-05-01 |
| 2019-01-10 |
| 2018-10-09 |

171.    In 1975, Congress enacted Section 13(f) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78m(f), to increase the public availability of information regarding the securities holdings of institutional investors. According to the legislative history for Section 13(f), Congress intended to create in the Securities and Exchange Commission (SEC or the Commission) a centralized repository of historical and current data regarding the activities of institutional investment managers in order to improve the body of publicly available factual data and thereby increase investor confidence in the integrity of the U.S. securities markets.

172.    Section 13(f) and the Commission's implementing regulation require institutional investment managers that exercise investment discretion with respect to accounts holding certain equity securities having an aggregate fair market value of $100 million or more on

the last trading day in a calendar year to file quarterly reports of their holdings with the SEC on Form 13F electronically through the Commission's Electronic Database Gathering and Retrieval (EDGAR) system. Under Commission Rule 13f-1, 17 C.F.R. § 240.13f-1, the Form 13F reports must be filed within 45 days after the last day of such calendar year and within 45 days after the last day of each of the first three calendar quarters of the subsequent calendar year. Section 13(f)(3) mandates that the Commission tabulate the information contained in the quarterly reports and disseminate that information to the public.

173.    The purposes of EDGAR system by the SEC (Securities and Exchange Commission) is stated by the Commission itself as: "Its primary purpose is to increase the efficiency and fairness of the securities market for the benefit of investors, corporations, and the economy by accelerating the receipt, acceptance, dissemination, and analysis of time-sensitive corporate information filed with the agency."

174.    Chad Mitchell Koehn and UCM and believed control entity UCM Advisors are listed on various SEC regulatory form D, securities filings for RED NECK HIGH TECH YACHT FUND LP, billed under such regulatory filings and disclosure documentation as a CRYPTO CURRENCY "hedge fund", investing in alternative assets in CRYPTO GRAPHIC contracts, currency and assets.

175.    According to evidence in the docket of the referenced herein above matter at bar, public disclosure documentation in Document 40-1:

https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013 .40.1.pdf lists "Anthem Holdings Company" as a direct conflict of interest between counter-defendants Chad Mitchell Koehn and United Capital Management of Kansas Inc.

176. Chad Mitchell Koehn has since the SLAPP petition was removed from county court to the US Federal Courts, under a variety of Federal questions by the then pro se defendant now appearing here as the pro se counter-plaintiff, has removed the conflict of interest between Chad Mitchell Koehn and UCM from disclosure documentation, in having Disclosure documents filed publicly in mid MARCH of 2022, approximately six weeks (6 weeks) after removal to the Federal Court; in docket number 56-2 https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013 .56.2.pdf Disclosure documentation dated MARCH 2022

177. Chad M. Koehn and UCM counter-defendants are required by SEC: *"The recent Regulation D amendments do not alter a firm's responsibility to conduct adequate due diligence on its offerings to ensure any recommendations to purchase securities in a private placement are suitable."*

178. Counter-defendants Chad M. Koehn and UCM are required by SEC: *"Under the Securities Act of 1933, any offer to sell securities must either be registered with the SEC or meet an exemption. Issuers and broker-dealers most commonly conduct private placements under Regulation D of the Securities Act of 1933, which provides three exemptions from registration."*

179. Counter-defendants UCM and Chad M. Koehn are required per SEC: *"Firms must also understand their obligations to comply with Regulation BI in connection with its due diligence and suitability responsibilities."*

180. In disclosure documentation as referenced as docket number 56-2 https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013 .56.2.pdf Chad Mitchell Koehn signing on behalf of co-counter defendant UCM, now

discloses **RED NECK** HIGH TECH YACHT FUND LP, stated as a CRYPTO CURRENCY "hedge fund" and alternative asset, crypto graphic contract fund. Koehn states:

   a. "Chad Koehn, President of United Capital Management is the principal of UCM Fund Advisors, LLC which is the General Partner of the Red Neck High Tech Yacht Fund, LP. and the principal of United Capital Management. Thomas Jerry Harris, CFA is an Investment Advisor Representative and Chief Strategy Analyst of United Capital Management. Based upon these relationships they have an incentive to recommend Red Neck High Tech Yacht Fund, LP. This is a conflict of interest, and consequently the investment advice provided by United Capital Management will be biased when recommending investments in the fund." page 25 of Disclosure Brochure, already in the docket of the matter at bar, document 56-2: https://ia802500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.56.2.pdf

181.    On information and belief; INVESTOR operated Discord Server for HERC crypto currency stock COIN, ICO (Initial Coin Offering), the statement in 180(a) above specifically: *"Thomas Jerry Harris, CFA is an Investment Advisor Representative"* is in direct VIOLATION of SEC (SECURITIES AND EXCHANGE COMMISSION) regulations. The posting to the Discord server for HERC Coin Crypto Currency stock Coin demonstrates clearly that "Thomas Jerry Harris, CFA is an Investment Advisor Representative" **is a materially false statement by Counter-defendants UCM and Chad Mitchell Koehn**. Chad Mitchell Koehn signed a regulatory disclosure statement under penalties of perjury, in docket Document 56-2, that all information contained therein is true. IN DEED and FACT the posting demonstrates clearly the statement: "*Thomas Jerry Harris, CFA is an Investment Advisor Representative"*, is categorically FALSE and in Direct Contravention of Securities and Exchange Commission (SEC) documentation, thereby is a material misrepresentation in securities offering, concerning RED NECK HIGH TECH YACHT FUND LP, which has replaced the conflict of interest between counter-defendants Chad Mitchell Koehn and UCM, in regards to Anthem Holdings Company. Specifically the posting in the HERC crypto currency stock Coin forum on Discord, demonstrates via Securities and Exchange Commission Information:

https://adviserinfo.sec.gov/individual/summary/710732 that Thomas Jerry Harris, "an Investment Advisor Representative" has NOT been registered as an "Investment Advisor Representative" since 26 October 2021, demonstrating clearly that as the above herein referenced matter at bar has proceeded Chad Mitchell Koehn has purposefully caused continuation of spoliation of evidence and in his feeble attempts to hide and otherwise conceal possible securities violations (irregularities or abnormalities) collectively misrepresentations, and/or abnormalities the replaced conflicts of interest regarding CRYPTO CURRENCIES have within in them material misrepresentations as to facts, purposefully, wrongfully omitted. SEC (Securities and Exchange Commission) regulations require any person working with an Investment Advisory as counter-defendant UCM is stated by the counter-defendants themselves in the underlying removed hereto State petition, stating: "That UCM is a financial consulting firm", as such and with both registered "Investment Advisor Representative"(s) and "Brokers", they are required by LAW and RULE to actually be registered with the government for the protection of the american investor and the public financial markets.

182. According to the "The North American Securities Administrators Association": "*The Uniform Securities Act includes anyone "who solicits, offers, or negotiates for the sale of or sells investment advisory services" within the definition of investment adviser representative"*; **KANSAS requires REGISTRATION of <u>Investment Advisor Representatives</u> Uniform Securities Act, K.S.A. 17-12a411(d).**

183. The Investment Adviser Registration Depository (IARD) system. IARD is an electronic filing system that facilitates investment adviser registration.

184. Information about investment advisers for the investing public can be found on the Investment Adviser Public Disclosure (IAPD) website.

185. The website for counter-defendant UCM https://www.ucmofkansas.com/resource-center/tax references the State of California and directly references California State Act: California Privacy Rights Act (CPRA) of 2020 https://www.caprivacy.org/ indicating UCM directs its offerings into the State of California, Chad Mitchell Koehn actively implies a partnership and working relationship with the State of California by and through his misuse of the Great Seal of the State of California in materially false and misleading public advertisements.

186.    On information and belief based on posting on 1 June 2022, to the HERC crypto currency stock coin, investor forum on Discord Server, believed operated by HERC crypto currency stock Coin core team, which now Hera Software Development Inc. claims "HERC is a proprietary protocol" and no public github programming exists enabling use of HERC crypto currency "stock" Coin; the CFA designation listed for Thomas Jerry Harris on public disclosure documentation signed by Chad Mitchell Koehn, "designates via third party institute, CFA as used by Koehn is a "registered trademark" similar to the use of "REALTOR" as a professional trade designation."   AND provides link to CFA directory:  https://directory.cfainstitute.org/

187.    Thomas Jerry Harris is not listed in the provided directory by the CFA Institute.

188.    The CFA Institute states:  "The Member Directory does not reflect individuals whose CFA Institute membership has lapsed, been **suspended, or revoked**"

189.    IN DEED a search of the CFA Institute for the city of Salina, Kansas, results provide: https://directory.cfainstitute.org/search?event=memberDirectorySearch&event=memberDirectorySearchResultsView&name=&location=Salina%2C+Kansas ONLY a single CFA present and not that of Thomas Jerry Harris.

190.    The PRO SE counter-plaintiff concedes he is not a financial industry participant, and does not understand all the postings made by some of the more than 14,500 investor wallet addresses in the HERC crypto currency stock Coin investor forum.  The CFA designation appears to be a type of "education" and is stated by the CFA Institute as a form of or akin to a "masters degree", however the designation CFA is constantly referenced as a "Registered Trademark", therefore it is conceivable that a person could have once received a CFA designation and is no longer registered with the institute or has disciplinary or other sanctions against them regarding the use of CFA registered trademark, inter alia a person using the CFA designation may according to the CFA Institute only use the CFA mark in they are in fact a "dues paying member" therefore included in the membership directory, reading the information posted on the link: https://www.cfainstitute.org/en/about/governance/policies/trademark-usage-guide-for-cfa-charterholders#:~:text=CFA%20Marks%20can%20only%20be,earned%20the%20prestigious%20CFA%20charter.

a. "CFA Marks can only be used by charterholders who are dues paying members of CFA Institute not subject to certain Professional Conduct violations and whose rights to use the CFA designation have not been suspended or revoked. Use of the CFA Marks signifies that you have earned the prestigious CFA charter."

191. Chad M. Koehn is a "fiduciary" under the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code of 1986.

192. Counter-defendant UCM is required as are its employees and affiliated persons as control persons to have current registrations with the State of Kansas and within the IARD as required by K.A.R. 81-14-7 and K.A.R. 81-14-2(c).

193. 17-12a403. Investment adviser registration requirement; dictates that a person who uses Investment Advisor Representative is REQUIRED to be registered in Kansas and thus by the SEC [SECURITIES AND EXCHANGE COMMISSION]; in that Chad Mitchell Koehn has removed conflicts of interest regarding himself and co-counter-defendant United Capital Management of Kansas Inc. from public disclosure registered documents signed under penalties of perjury and replaced such with RED NECK HIGH TECH YACHT FUND LP, a self reported and purported CRYPTO CURRENCY "hedge fund" and makes reference to Thomas Jerry Harris as an "Investment Advisor Representative" and a "CFA", when in fact Mr. Harris appears not registered as either, demonstrates clear material misrepresentations and omissions, certain securities abnormalities in SEC disclosure documents signed under penalties of perjury by co-defendant cross defendant Chad Mitchell Koehn.

194. Chad Mitchell Koehn etAl makes fantastical claims to have government contracts with the United States Government utilizing regularly including through the filing of this litigation via counter and cross complaints, the SEALS, and LOGOS to a vast array of US Federal and State resources BOTH making statements and implying direct government contracts, partnerships, affiliations and endorsements. These actions constitute materially misleading statements in advertisements demonstrating clear fraud.

195. Counter-defendants, including Chad Mitchell Koehn etAl. collectively and on behalf of each of the named non-person legal entities and legal entities have contacted

individuals disparaging Nelson's reputation, in furtherance of their conspiracy to abuse

processes and make up stories and gossip to prevent Nelson from obtaining gainful

employment "ever again" and to "destroy [nelson's] life permanently". Upon

information and belief counter-defendants have also caused writings and communications

to a multitude of people via email and other documentation in writing disparaging nelson,

with false and defamatory statements upon examination of software architecture and

email systems and other communications systems of the counter-defendants it is believed

additional acts of defamation, slander and libel will be found through the course of

discovery in this matter and shall be moved to amend as each act of defamation, libel and

slander is discovered.

196.    That Defendants knew the individuals and businesses were clients, partners or

expected clients or partners or prospective employers of Nelson.

197.    The actions and behavior of counter-defendants arise out of violations of basic human

decency, bad faith, and unclean hands.

198.    That counter-defendant's have wrongfully implied partnership with foreign Nations.

199.    That counter-defendant's have wrongfully misappropriated Official US government

SEALS, misusing the SEALS in order to claim ENDORSEMENT, implied partnerships

and contracts with governmental bodies, both misleading investors and the public.

200.    Counter-defendant's have wrongfully stated they have "partnered with" the Country

of the Netherlands, to create a for profit website selling gold.

201.    That counter-defendant's have wrongfully stated they have partnered with Warburg

Holland of Warburg Pincus a global investment firm, in order to defraud investors in all

the companies, the counter-plaintiff included, and to materially mislead the public.

202.    Counter-Defendants have materially misled the counter-plaintiff and the public with

false and materially misleading public advertisements stating and implying affiliation,

partnership and contracts with US government and foreign nations.

203.    That counter-defendant's have wrongfully stated they have direct contracts with

foreign governments and "sovereigns".


## COUNT I - DEFAMATION (Slander, Libel and ASSAULT)

204. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through

203 above herein this counterclaim and counter complaint against the counter defendants

collectively and severally as counterclaims and cross complaints.

205. Counter-defendant's actions and statements are untrue and made to multiple third parties.

206. Counter-defendant's statements have harmed the reputation of Nelson, and interfered with

his professional pursuits in hopes to earn a living and provide for self and family.

207. Counter-defendant's statements were made with reckless disregard and/or malice, causing

harm and difficult in becoming re-employed and earning a living disrupting business deals.

208.  No "qualified privilege" exists as to Chad Koehn or any other counter-defendant, as the

counter-plaintiff was not employed in an investment role and is not a licensed person under any

investment scheme.  Fifteen states, including Kansas, have adopted the 2002 version of the

Uniform Securities Act providing qualified immunity to persons who make defamatory

statements in connection with a filing required by law or industry rules.  The defamation made

by Koehn etAl has not been made in connection with any required communication and not

"qualified immunity" exists, as to defamation against a former employee, of a non-investment

company, without any licenses and Koehn etal was not required to make any of the forms of

communication he chose to make, making them to third persons and companies purposefully defaming and spreading false information concerning Nelson, with intent, malice and reckless disregard in order to attack nelson's trade and profession and prevent nelson from obtaining gainful employment and furthering business relationships in order to make a living to provide the basic sustenance, shelter, clothing and medical care to himself and family.

209.  WHEREFORE, counter-plaintiff, Nelson, asks for judgment against the counter-defendants, for defamation, slander, possible libel to be discovered in due course of discovery, in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Counter-Defendant's from committing further tortious acts; that the cause of this action be charged against Counter-Defendant's; and such other and further relief the Court deems just and proper

**COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS PROSPECTS and RIGHT of EMPLOYMENT**

210. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 209 above.

211. Individuals and businesses contacted by Koehn on behalf of United Capital Management have or may have a business relationship or expectation of future business relationship with Nelson.

222. That Koehn and thus UCM had knowledge of the relationship(s) or expectation of the relationship(s) between the individuals and businesses and Nelson.

223. That Koehn's statements or acts have interfered with said business relationships and employment prospects.

224. That Nelson has been harmed by Koehn's and UCM's conduct.

225. "Ryan Kozlow and Chad M. Koehn representing themselves and the registered Broker Dealer: United Capital Management of Kansas Inc. Business Entity ID Number: 3266426, have and continue to make systematic character assination under the authority as licensed investment professionals, and as to Koehn as a member of the board of directors of Anthem Holdings Company Hera Software Development Inc."

226. WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., for tortious interference with business and prospective employment in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## COUNT III - Unfair and Deceptive Trade Practices

**False Claims of Endorsement and affiliation with US Federal Resources**

227. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 227 above

228. In establishing the claim for unfair and deceptive trade practices, the pro se defendant must have committed an unfair or deceptive act, the action in questions must have affected commerce, and the act must have proximately caused injury to the counter-plaintiff, wherein their (counter defendants) purposeful and willful material misrepresentations and deceptions have caused nelson a "significant equity interest" holder damages in value of stock and

crypto currencies through their deliberate market manipulations and false statements implying and stating various governmental partnerships, affiliations and ENDORSEMENTS where none actually exist. The purposeful and willful misuse of Federal SEALS, LOGOS, and names constitutes fraud against the government and the American people the counter plaintiff included therein and harm directed at counter-plaintiff through the counter defendants fraudulent claims of ENDORSEMENT and AFFILIATION and Contracts with governmental authorities through the use of their respective LOGOS and SEALS, through which insidious machinations were made as a means to threaten and intimidate the counter plaintiff and others that the counter-defendants have undue influence over US Federal and State authorities and governmental entities, to be wielded as power and corruption against any dissenting shareholder (Stockholder) and especially those "significant equity interest" holders who would rather not have the companies miss-state and abuse US Federal and State resources as the counter-defendants sought unfair advantage and threats of violence against the counter-plaintiff and others through their material misrepresentations of affiliations, endorsements and governmental contracts and relationships were none existed.

229. Violation of 17-12a403; KANSAS. Investment adviser registration requirement; dictates that a person who uses Investment Advisor Representative is REQUIRED to be registered in Kansas and thus by the SEC [SECURITIES AND EXCHANGE COMMISSION]; in that Chad Mitchell Koehn has removed conflicts of interest regarding himself and co-counter-defendant United Capital Management of Kansas Inc. from public disclosure registered documents signed under penalties of perjury and replaced such with RED NECK HIGH TECH YACHT FUND LP, a self reported and purported CRYPTO CURRENCY "hedge fund" and makes reference to Thomas Jerry Harris as an "Investment Advisor Representative" and a "CFA", when in fact Mr. Harris appears not registered as either, demonstrates clear material misrepresentations and omissions, certain securities abnormalities

in SEC disclosure documents signed under penalties of perjury by co-defendant cross defendant Chad Mitchell Koehn.

230. That Nelson has been harmed by Koehn's and UCM's conduct and that of the counter-defendants and cross defendants collectively and severally.

231. WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., FALSE CLAIMS, DECEPTIVE TRADE PRACTICES, FINANCIAL MARKET MANIPULATIONS, FALSE SWEARING, MISAPPROPRIATION OF GOVERNMENT SEALS AND LOGOS for tortious interference with business and prospective employment in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.


**COUNT IV - Threats of Violence to force relinquishment of Stock**

232. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 231 above.

233. By identifying by name and address counter-plaintiffs elderly parents and sibling and minor child they have inferred danger and threats of violence in efforts to force counter-plaintiff to relinquish control and ownership of "significant equity interest" in a number of corporations.

234. That Nelson has been harmed by counter-defendant's conduct.

235. WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., for tortious interference with business and prospective employment in an amount in excess of $75,000.00;

that the Court enter a temporary and permanent injunction barring counter-defendants from

committing further tortious acts; that the cause of this action be charged against

counter-defendants; and such other and further relief the Court deems just and proper.


**COUNT V - SECURITIES FRAUD - Violations of section 10(b) of the Securities Exchange Act of 1934 and SEC rule I0b-5 and other violations proposed as claims of action included without imitation, an initial synopsis is included herein with this COUNT, and under the regulations to which Chad Mitchell Koehn etAl. had and has an on-going duty to adhere:**

236. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 235 above

**237.** Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Securities

Exchange Commission (SEC) Rule 10b-5 (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5). This

cause of action has been described as a catch-all anti-fraud provision for securities claims based

primarily on misstatements, omissions, and other deceptive conduct affecting the market price of

publicly traded securities. In almost every instance, the complaint also alleges control person

claims under Section 20(a) of the Exchange Act. That provision provides joint liability for those

who control a company liable for fraud. Because the liability provisions of the federal securities

laws frequently overlap, liability under one provision or act usually does not preclude liability

under another. Most plaintiffs assert a Section 10(b) and Rule 10(b) claim asserts claims under

Sections 11 and 12 of the Securities Act of 1933 (Securities Act) based on alleged violations in

the documents used to offer securities to the market, meaning in an initial public offering.

Plaintiffs may also assert control person liability claims under Securities Act Section 15.

238.  Counter-defendant's failed to disclose certain conflicts of interest and made material misrepresentations and omissions in furtherance of the business combination merger of multiple corporations into Anthem Holdings Company to the underlying corporations in NEVADA, Delaware and Texas, together failing also to provide Form 611 and the required merger plan that form 611 requires to be provided, in Texas as required in a short-form merger.

239.  COUNTER-DEFENDANTS, CHAD MITCHELL KOEHN, personally and as CEO and Chief Compliance Officer of United Capital Management of Kansas Inc.;  HAVE ENGAGED IN **A PONZI-LIKE SCHEME BY USING INVESTOR FUNDS** TO PAY DISTRIBUTIONS BACK TO INVESTORS AND BUY OUT PREVIOUS INVESTORS WITH INTEREST USING NEW INVESTOR FUNDS; constituting FRAUD, Constructive FRAUD, Misappropriation, Market Manipulations of Securities and security like products created from CRYPTO CURRENCIES, self dealing of from Initial Coin Offering (ICO) HERC crypto currency STOCK COIN, self listed on global financial public markets and manipulated through self trading of the same.

240. While consistently creating new corporations and misappropriating the intellectual property and assets created by the counter-plaintiff for the NEVADA corporation, Anthem Vault Inc. to new corporations for self pecuniary gain, dragging along the counter-plaintiff "significant equity interest" to an ever growing list of "new corporations" in venue shopping format, shopping for new venues as to jurisdiction, when in fact the counter-plaintiff was always employed in NEVADA and for Anthem Vault Inc. which all programming and assets were created.

241.  On June 5, 2019, the Securities and Exchange Commission ("Commission") adopted **Regulation Best Interest,** which establishes a new standard of conduct under the **Securities**

**Exchange Act of 1934 ("Exchange Act")** for broker-dealers and **natural persons who are associated persons of a broker-dealer** ("associated persons")

242.  By placing his personal conflicts and personal interests ahead of existing and future investors Chad M. Koehn etAl. violated with extreme prejudice the Best Interest Regulation, under the new standard of the Securities Exchange Act of 1934, towhich he as a Broker and Registered Investment Adviser owed a fiduciary responsibility to ALL shareholders, both those newly solicited by them [Chad M. Koehn etAl.]] personally and those existing inclusive without limitation the counter-plaintiff.  By placing their collective financial interests ahead of the existing retail shareholders and of the newly solicited retail investors, to the detriment of both. Without making any reasonable care of due diligence into the underlying issues of the triangular reverse short-form mergers and those merger-subs, Chad M. Koehn violated the Acts, Rules, and Regulations including without limitation those cited herein above and below.

243.  This *general obligation* is satisfied only if Chad M. Koehn etAl. had complied with the four (4) specified component obligations, which it is charged they etAl. Did NOT.

- *Disclosure Obligation*: provide certain required disclosure before or at the time of the recommendation, about the recommendation and the relationship between Chad M. Koehn etAl., the investment corporation towhich stock was sold, the intent of the sale of the stock and the qualification of the history of the legitimacy of the corporation inwhich the sale was made.
- *Care Obligation*: **exercise reasonable diligence**, **care**, and **skill** in making the recommendations as to the known conflicts of interest and intention of the capital raised
- *Conflict of Interest Obligation*: establish, maintain, and enforce written policies and procedures reasonably designed to address conflicts of interest; which Chad M. Koehn etAl. had publicly disclosed exist and therefore each investor would have had to sign accepting, wherein the counter-plaintiff has not been provided nor provided the plan of business combination merger as required in Texas form 611, nor the requirements of NEVADA State Law nor the laws of Delaware.
- *Compliance Obligation*: establish, maintain, and enforce written policies and procedures reasonably designed to achieve compliance with Regulation Best Interest.

Which only upon detailed discovery, investigation into each existing and new shareholder and inquiry as to each were so presented and signed accepting and acknowledging the best interest regulation which Chad M. Koehn etAl. did not and has not provided to the counter-plaintiff.

244. Record-making and Recordkeeping: Chad M. Koehn must also have complied with new record-making and recordkeeping requirements, as required by each of the rules under the Exchange Act and Investment Advisers Act, with relation to the "series A" unlicensed and unregistered securities raise and sale nor with the materially false information submitted on SEC Regulation D as to Anthem Holdings Company

245. Pro Se Counter-Plaintiff is without all material information as to accounting, wire transfers, checks, crypto currency wallet addresses and transfer or otherwise wire directions according to and under rule by SEC and to SEC guidance, however, upon information and belief that the counter-defendants, especially and specifically the "Principle" of UCM and the Chief Compliance Officer known as counter-defendant Chad Mitchell Koehn, did cause funding and financial wire transactions on dates outside the dates provided on regulatory filings.

246. The Pro se Counter-Plaintiff submits the need for discovery in accordance with SEC regulatory ruling: "that the date of first sale is the date on which the investor is irrevocably contractually committed to invest, which, depending on the terms and conditions of the contract, could be the date on which the issuer receives the investor's subscription agreement or check." *(See SEC Release 33-8891 (February 6, 2008). See also SEC Release No. 33-6455, at Question 82 (March 4, 1983)).*

247. Regulation Best Interest (BI) is a Securities and Exchange Commission (SEC) rule to help safeguard investors and standardize the conduct standards for broker-dealers and financial advisors.

248. For purposes of Regulation Best Interest, "material facts" is interpreted consistent with the standard articulated in *Basic, Inc. v. Levinson, 485 U.S. 224 (1988)*.

249. It is not yet determined if Chad M. Koehn etAl qualify under the "solely incidental" prong test of the Securities and Exchange Commission Interpretation Regarding the Solely Incidental

Prong of the Broker-Dealer Exclusion from the Definition of Investment Adviser, whether or not

such applies can only be determined through discovery and examination of the books and records

relating to both Anthem Holdings Company its purported included merger-subs and the claimed

"Series A" for Hera Software Development Inc. and how those transactions affect negatively the

investors some 14,500 wallet addresses according to the Ethereum Blockchain etherscan of the

newest contract iteration and the PLACEMENT MEMORANDUM circulated as to the sale of

the CRYPTO CURRENCY Security COIN in the Initial Coin Offering of the "ticker" symbol:

HERC, as opposed to the now claims of Chad M. Koehn etAl that the HERC stock COIN sold in

the Initial Coin Offering of the CRYPTO CURRENCY, is now a "proprietary protocol" of Hera

Software Development Inc. another new corporation of the State of Delaware arising from

Hercules Software Company, a presumed division of Hercules LLC of Hercules SECZ controlled

by AG Herc Inc. a purported merger-sub of Anthem Holdings Company, which Chad M. Koehn

is publicly listed as a member of the Board of Directors of BOTH Anthem Holdings Company

and Hera Software Development Inc.

250.  Counter-defendants misstatements in the context of shareholder votes under Section 14(a)
of the Exchange Act, tender offers under Section 14(e) of the Exchange act did violate the rights
of the shareholders and significant equity interest holders to their collective detriment the
counter-plaintiff included therein.


251.  17 C.F.R. § 240.10b-5 (1975): It shall be unlawful for any person, directly or indirectly, by

the use of any means or instrumentality of interstate commerce, or of the mails or of any facility

of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b)

To make any untrue statement of a material fact or to omit to state a material fact necessary in

order to make the statements made, in the light of the circumstances under which they were

made, not misleading, or (c) To engage in any act, practice, or course of business which operates

or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

252.  Exchange Act Section 20(d)(5) [15 U.S.C. § 78u(d)(5)] and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)]; and (d) ordering any other and further relief the Court may deem just and proper.

> The court of appeals reversed, finding … short form merger gives rise to a federal cause of action for minority shareholders when the merger is performed without … prior notice, and when there is an inordinately low valuation of the stock. The court held that in such a case no allegation of misrepresentation or non-disclosure is required for stating a cause of action under rule lOb-5.6

253.  That Nelson has been harmed by Koehn etAl's and UCM's and John and Jane Doe's and Doe Corporations as included herein above, and their collective conduct.

Counter-Defendants have been in Aiding and Abetting Violations of Section 17(a) of the Securities Act; Both violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] by manipulating the financial statements and marketed securities in the form of a **crypto currency stock COIN issued as an Initial Coin Offering.  And the Subsequent materially FALSE and materially MISLEADING SEC Form Regulation D filings for Anthem Holdings Company and the misdirection of those proceeds to a unlicensed and unregistered, non-reported new corporation known as Hera Software Development Inc. (HeraSoft) and those in crypto currency placement memorandum circulated for HERC Crypto Currency Initial Coin Offering, including violations without limitation** under  the investment adviser act and , under Section 202(11) of the Advisers Act [15 U.S.C. § 80b].  Civil monetary penalties under

Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)]  Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], Exchange Act Section 21(d) [15 U.S.C. § 78u(d)], and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d) and 80b9(e)]. Violations Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; and b. **Violated Section 10(b) of the Exchange Act** [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)]; or c. In the alternative, violated Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] and Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], for aiding and abetting UCM and Koehn's etAl. Together with all counter-defendants and cross defendants inclusive violations of Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)].   Violations Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; and b. Violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)]. Violations Sections 206(1), 206(2) and 206(4) of <u>the Investment Advisers Act</u> of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2) and (4)] and Rules 206(4)-2 and 206(4)-7 thereunder [17 C.F.R. §§ 275.206(4)-2 and 206(4)-7]; b. Violated Sections 17(a)(1), (2), and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; and c. Violated Sections 10(b), 21F and 12(g) of the Exchange Act [15 U.S.C. §§ 78j(b), 78u-6, and 78l(g)], and Rules 10b-5(a), (b) and (c), and 21F-17(a) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c), and 240.21F-17(a)].

254.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., etAl. for the above referenced in Count V, without limitation as stated and that they be referred to State and Regulatory authorities and for damages in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## COUNT VI - Insidious Machinations Dolus - FRAUD in the inducement dolus

255.   Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 254 above

256.  There is fraud when, through insidious words or machinations of one of the contracting parties, the other is induced to enter into a contract which, without them, he would not have agreed to.

257.  Fraud is every kind of deception, whether in the form of insidious machinations, manipulations, concealments, or misrepresentations, for the purpose of leading another party into error and thus executing a particular act.  Fraud produces qualified error; it induces in the other party an inexact notion of facts. The will of another is maliciously misled by means of false appearance of reality. "Insidious words or machinations" include false promises; exaggeration of hopes or benefits; abuse of confidence; and fictitious names, qualifications, or authority. Kinds of fraud: 1) dolo causante—which determines or is the essential cause of the consent; 2) dolo incidente— which does not have such a decisive influence and by itself cannot cause the giving of consent, but refers only to some particular or accident of the obligation. Dolo causante can be

a ground for annulment; dolo incident cannot be a ground for annulment. The result of fraud is error on the part of the victim.

258. That Nelson has been harmed by Koehn's and UCM's conduct.

259. WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., for INSIDIOUS MACHINATIONS DOLUS in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

**COUNT VII - Constructive Fraud**

260. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 259 above.

261. As an alternative to the alleged actual and direct FRAUD, as complained and obviously committed by Chad M. Koehn and UCM collectively the counter-defendats. Constructive Fraud occurs when Chad Koehn and UCM gains an unfair advantage over nelson and other "significant equity interest" holders through unjust means, by lying or omitting important details, making material misrepresentations, using false promises and insidious machinations. Constructive fraud differs from actual fraud because the elements of constructive fraud require intent, wherein Chad Koehn intended to falsely submit documents to the SEC and other regulatory authorities and certainly had actual knowledge of the lies and purposeful omissions.

262.  This was not simply a Breach of Fiduciary Duty by Chad Koehn as the Board of Directors at Anthem Holdings Company and Hera Software Development Inc and Hercules Software Company, this constitutes Constructive Fraud in his and co-counter-defendants purposeful knowing willful wrongful intent to deceive.

263.  That Nelson has been harmed by Koehn's and UCM's and the cocounter and cross defendants actions and conduct.

264.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, Chad M. Koehn and United Capital Management of Kansas Inc., etAl.. for tortious interference with business and prospective employment, insidious machinations, fraud and CONSTRUCTIVE FRAUD in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## VIII - **Fraud and Fraud in the Inducement**

265. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 264 above.

266.  **Where co counter defendants Chad M. Koehna and UCM** have satisfied the elements for fraud and fraud in the inducement, counter-plaintiff having showed (i) there was false representation or concealment of a material fact(s); (ii) reasonably calculated to deceive; (iii) made with the intent to deceive; (iv) which does in fact deceive; (v) and results

in damage to nelson and others; *McGahren v. Saenger, 649, 654, 456 S.E.2d 852, 855, desc. Review denied, 340, N.C. 568, 460 S.E.2d 318-19 (1995).*

267.    Co counter defendants inclusive of Chad M. Koehn and UCM made multiple misrepresentations and, as such, "[p]roof of fraud in the inducement necessarily constitutes a violation" for unfair and deceptive trade practices and shifts the burden of proof from the plaintiff to the defendant. Thereby constituting a violation of unfair and deceptive trade practices previously complained herein above in the allegations of fact and recites again those in 1 through 266 above.

268.  That Nelson has been harmed by Koehn's and UCM's etAl. conduct.

269.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for unfair and deceptive trade practices and fraud in the inducement, and tortious interference with business and prospective employment in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.


IX - **Breach of the Implied Covenant of Good Faith and Fair Dealing**

270. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 269 above.

271.   Whenever a court finds a breach of fiduciary duty occurred, the court may also find there was a breach of the implied covenant of good faith and fair dealing.  *Lackey v. Bressler, 86 App. 486, 493, 358 S.E.2d 560, 564 (1987)*.

272.   The relationship between these two causes of action is similar to a lesser included offense in criminal law.   The acts and statements of co counter defendants inclusive of Chad M. Koehn and UCM constitute a breach of the implied covenant of good faith and fair dealing constituting their breach of fiduciary duty and covenant of good faith in their dealings having committed the acts as complained and recited in the factual allegations 1 through 272 above and through deception and indisoud machinations have caused damages through their unethical and without good faith dealings as continually shown.

273.  That Nelson has been harmed by Koehn's and UCM's conduct.

274.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Breach of the Implied Covenant of Good Faith and Fair Dealing**, for tortious interference with business and prospective employment in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

**X. Negligence**

275. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 274 above.

276.   As an alternative claim that of negligence claim is established, in the above herein paragraphs 1 through 274: (i) counter defendants owed nelson a duty of care; (ii) the counter defendants breached that duty of care; and (iii) the counter defendant's breach was

the actual and proximate cause of the plaintiff's injury.  *Cowan v. Laughridge Construction Co., 321, 323-24, 291 S.E.2d 287, 289 (1982).*

277.   The duty of care encompasses numerous legal obligations outside of fiduciary duties.

278.   As such, it is entirely possible counter plaintiff alleges negligence without a breach of fiduciary duty, in the alternative.  In a case eerily similar hereto the Court has found a real estate agent had a fiduciary duty to "exercise reasonable care, skill, and diligence in a transaction of business entrusted to him, [and] he will be responsible to his principal for any loss resulting from his negligence in failing to do so."  *Brown v. Roth, (1999).*  There, the "fiduciary duty" was used to describe a duty to exercise **care** generally, rather than an actual breach of fiduciary duty claim.

279.   As here Chad M. Koehn and UCM inclusive of the counter defendants have a legal obligation to "care" as above herein complained in factual allegations and well outlined as to the care owed all parties to the fiduciary care without limitation as members of board of directors and directors to a host of corporations as well articulated in paragraphs 1 through 278 herein above.  Chad M. Koehn and UCM despite their conflicts of interest to one another owed care to the shareholder and especially those significant equity interest holders like the counter-plaintiff nelson.

280.   That Nelson has been harmed by Koehn's and UCM's conduct.

281.   WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **NEGLIGENCE as another count** in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further

tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## XI. Gross Negligence

282. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 281 above.

283. Gross Negligence goes beyond mere negligence, as committed here by Counter-Defendants Chad M. Koehn and UCM etAl. In addition to the elements for negligence as referenced above in allegations 1 through 282, required in addition to wanton conduct with conscious or reckless disregard for the rights and safety of others. The Counter-defendants "wanton," gross negligence is obvious given the mindset of the counter defendants INCLUSIVE of CHAD MITCHELL KOEHN etAl. committing the actions of FRAUD and as done with a **wicked purpose** and with **reckless disregard for the safety and rights of others**. *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 2104 App. LEXIS 1015 (2014) (unpublished). Koehn and UCM etAl have aggravating factors surrounding this willful and wanton conduct, therefore treble damages sought and so sought.

284. That Nelson has been harmed by Koehn's and UCM's conduct.

285. WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Gross Negligence** in an amount in excess of $75,000.00; that the Court enter a

temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.


## XII.  Negligent Misrepresentation

286. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 285 above.

287.  In conjunction with breach of fiduciary duty is negligent misrepresentation.   Negligent misrepresentation occurs when: (i) a party justifiable relies; (ii) to his detriment; (iii) on information prepared without reasonable care; (iv) by one who owed the relying party a duty of care.  *Simms v. Prudential Life Ins. Co. of Am., 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000).*   As here the counter plaintiff has been so damaged.   The first element, "justifiable reliance," means the counter-plaintiff actually relied on false information and it was reasonable for him to rely upon such information.   *Brinkman v. Barrett Kays & Associs. P.A., 155 App. 529, 532, 537 S.E.2d 237, 240 (2003).*   **Here the counter-plaintiff like the more than 14,500 other crypto currency investors relied upon false information and failure of the collective and several counter-defendants who placed materially false and misleading self created press releases into the public** in order to artificially pump the price of the securitized crypto currency stock COIN, HERC and then the subsequent false statements in press releases concerning Hera Software Development Inc. creation and "Series A" securities sale on the heels of supposed completion of securities sale of Anthem Holdings Company, which purports to consist of the merger-subs of the contested as illegal series of triangular reverse short-form mergers, constituting a business combination and in the filings made in form Regulation D, for Anthem Holdings Company

which contains materially false and misleading information constituting purposeful material misrepresentations.

288.  That Nelson has been harmed by Koehn's and UCM's conduct.

289.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Negligent Misrepresentation** in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## XIII.  Unjust Enrichment

290. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 289 above.

291.   Unjust enrichment occurred where the counter defendants Chad Mitchell Koehn inclusive and without limitation, unfairly benefitted from their actions, BOTH in the denial of dividends to the "Significant Equity Interest" holders and in MARKET MANIPULATIONS to their Own pecuniary benefit without limitation.   Chad Koehn etAl the counter-defendants meet all three essential elements: (i) a measurable benefit was conferred on the counter-defendants; (ii) the counter-defendants consciously accepted the benefit; and (iii) the benefit was not conferred officiously or gratuitously, *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, (2011), so denying the same to the "significant equity interest holders" the counter-plaintiff included.

292.   Unjust enrichment generally exists when a trustee or personal representative engages in self-dealing.   As it was certainly SELF-DEALING, by both issuing a Market Secuity and then MANIPULATING the price of that market securities on Global Financial Public Markets, in the colloquial and proverbial PUMP N DUMP, fashion at the detriment of the investors and to the self and personal benefit of the counter-defendants, who then unjustly removed all public programming and after their SELF DEALING, in the SELF issuance of press releases and self dealing inside of manipulating the STOCK COIN from the ICO, more than six months later placed a disclaimer on the website after their SELF DEALING for personal benefit had concluded.   The counter-defendants then claimed and now claim the HERC ICO stock COIN is "proprietary protocol" of a newly formed Hera Software Development Inc. claiming a SERIES A financial raise which is neither registered nor licensed, and Chad M. Koehn is integrally involved as both a director and member of the board of directors publicly though Chad M. Koehn does not so disclose in direct violation of securities regulations.   For example, if a trustee chooses an investment option that generates significant fees for the corporate fiduciary, as here in the case of CHAD M. KOEHN and UCM with regards to Anthem Holdings Company and Hera Software Development Inc and the market manipulations of the HERC Crypto Currency Stock COIN, manipulated for self pecuniary gain on global public financial markets to the detriment of the investing public at large. Thus confers a relatively low return on investment for the beneficiaries, the beneficiaries have a strong claim for unjust enrichment, as do the counter-plaintiff a "significant equity interest" holder, in the merger-subs alleged illegally merged via Triangular Reverse Short-form merger wherein the counter-plaintiff and others were forced via insidious machinations to accept the lesser amount of stock and the false material misrepresentations were made on offering documents submitted to the SEC for Anthem Holdings Company which then the money was diverted to Hera Software Development Inc. and the investors in the merger

subs and the CRYPTO CURRENCY HERC stock COIN were then defrauded the counter-plaintiff inclusive in those defrauded.

293.  That Nelson has been harmed by Koehn's and UCM's conduct.

294.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Unjust Enrichment** in an amount in excess of $500,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.


**XIV.  Professional Malpractice, Deceptive Trade Practices, FRAUD, Misappropriation**

295. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 294 above.

296.  Professional malpractice claims can be brought against a professional by anyone who is a party to a contract or where that professional uses the professionals experience licenses and standing within society and the community, in the same and exact fashion as done by Chad M. Koehn and United Capital Management of Kansas Inc. where the counter-plaintiff and other similarly situated "Significant Equity Interest" holders the third-party beneficiary of the fiduciary responsibility owed to them by Chad M. Koehn as a director and member of the board of directors thereof.  *United Leasing Corp. v. Miller*, 45 App. 400, 263 S.E.2d 313 (1980).  Professional malpractice claims have four basic requirements, where here the unlawful, wrongful actions of Chad M. Koehn meet each and every: (i) the plaintiff was owed a duty for the professional to act with the reasonable

standard of care for that profession; (ii) the professional breached that duty by failing to act as he/she should or committed an act in violation of that duty; (iii) this breach harmed the counter-plaintiff and caused injury; and (iv) the injury sustained is compensable. *Wall v. Stout*, 310 184, 200, 311 S.E.2d 571, 581 (1984)

297.    When third-parties, the counter-plaintiff included assert a  professional malpractice claim, the third party must show (i) the extent to which the transaction was intended to affect the third party; (ii) the foreseeability of harm to the third party; (iii) the degree of certainty the third party suffered injury; the moral blame attached to such conduct; and the policy of preventing future harm.  *Leary v. N.C. Forest Prods., Inc., (2003).*  Here in sections 1 through 298 herein above the counter-plaintiff meets each and every assertion for professional malpractice by Chad M. Koehn inclusive of each of the licensed professionals as counter-defendants hereto this complaint.

298.  That Nelson has been harmed by Koehn's and UCM's etal counter defendats conduct.

299.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Professional Malpractice**  in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

## XV.  Breach of Contract

300. Nelson realleges and incorporates herein the allegations contained in paragraphs 1 through 299 above.

301.   Breach of contract claim, counter-plaintiff alleges through insidious machinations dolus as described in 1 through 300 above meets each of the standards committed by Chad M. Koeh and UCM without limitation the counter-defendants collectively (i) a valid contract existed; and (ii) there was a breach of the terms of that contract *Woolard v. Davenport*, App. 129, 134, 601 S.E.2d 319, 322 (2004)   Especially in the INVESTMENT memorandum issued in the issuance of the CRYPTO CURRENCY STOCK COIN, HERC and those global public market MANIPULATIONS in violation of the implied and actual contract in the INVESTOR Memorandums.   It is not always necessary for counter-plaintiffs to prove actual damages, however here were the significant investment and dividends of the HERC crypto currency COIN were owed and denied for the self pecuniary benefit of the counter and cross defendants Chad M. Koehn and UCM inclusive, the damages are extreme to the counter-plaintiff as a significant equity interest holder. Similarly to professional malpractice claims, breach of contract claims are available to third-party beneficiaries of a contract, which the counter-plaintiff is certainly among.   These third-party beneficiaries must show (i) the existence of a contract between two other people; (ii) the contract was valid and enforceable; and (iii) the contract was entered into for the third party's direct, and not incidental, benefit.   *Timothy L. Hardin v. York Mem'l Park*, 730 S.E.2d 768, 775 (2012). Wherein here and the proceeding 1 through 300 the counter-plaintiff meets the burdens of the Count as charged against Chad M. Koehn and UCM etaL inclusive of the counter defendants collectively and severally.

302.  That Nelson has been harmed by Koehn's and UCM's etAl inclusive of all counter and cross defendants conduct.

303.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **Breach of Contract** in excess of $75,000.00; that the Court enter a temporary and

permanent injunction barring counter-defendants from committing further tortious acts; that the cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

304.   The Certain False Claims and Fraud perpetrated by the counter-defendants and cross defendants, entitles the counter-plaintiff under statute to treble damages – an amount triple that of the actual or compensatory damages – which is the collective value of all "significant equity interest" in the corporations and the crypto currencies, at their market highest, wherein the counter-plaintiff should have in possession 870,000+ HERC crypto currency stock coins, at a price of 56 cents each = $487,200 plus the shares of stock in each of the merger-subs and the holding companies and conflicting software companies, estimated at approximately $3,563,000 yielding more than $4 million in value which has been illegally defrauded entitling treble damages the pro se counter-plaintiff to recover more than $12 million in damages from the counter-defendants and cross defendants.

305.  That Nelson has been harmed by Koehn's and UCM's conduct.

306.  WHEREFORE, counter-plaintiff, Michael Nelson, asks for judgment against the counter-defendants, inclusive of Chad M. Koehn and United Capital Management of Kansas Inc., for **each and all of the above Counts and those implied counts by the allegations referenced herein above in the factual allegations**, and for tortious interference with business and prospective employment, the defamation, slander and libel together with each count and those implied counts in this pro se counter-plaintiffs counter claim and cross claim in an amounts in excess of $75,000.00 on each and every count individually both those listed and those implied by the allegations referenced herein above; that the Court enter a temporary and permanent injunction barring counter-defendants from committing further tortious acts; that the

cause of this action be charged against counter-defendants; and such other and further relief the Court deems just and proper.

307.  A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("**All pleadings shall be so construed as to do substantial justice**"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)*   Wherein the pro se counter-plaintiffs has attempted in good faith to provide the factual allegations and the counts as above herein referenced and does so say as to those not specifically accounted for in the counts for those implied counts as to the factual allegations as complained herein above.  Without difference to any factual allegation that the counter defendants seek to strike or otherwise remove the rest of the allegations of fact constitute wrongs against the counter-plaintiff nelson entitling the counter-plaintiff to relief upon those allegations of fact and the counts as remunerated and without limitation, as the PRO SE counter-plaintiff is without the legal knowledge and experience to list all the counts towhich the pro se counter-plaintiff is entitled to relief and with this complaint as in all pleadings before the court it is the implication of FRCP 8(f) as stated herein above "All pleadings shall be so construed as to do substantial justice", where nelson as counter-plaintiff has been wronged, willfully and purposefully by the counter-defendants inclusive of Chad M. Koehn and United Capital Management of Kansas Inc. inclusive of the counter-defendants as above herein charged.  Wherein upon information and belief through the

course of discovery other wrongfulness of torts committed by Chad M. Koehn and UCM inclusive of all counter-defendants in the cross and counter claims shall be found and request for leave to amend and include hereupon those additional torts committed against the pro se counter-plaintiff nelson.

308.  TRIAL BY JURY OF 12 SO DEMANDED PURSUANT WITH 7th Amendment RIGHTS, and pursuant with Federal Rules of Civil Procedure Rule 38 (a) and (b).

Respectfully Submitted, this 6th day of June 2022.



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

## DEMAND FOR TRIAL BY JURY

TRIAL BY JURY OF 12 SO DEMANDED PURSUANT WITH 7th Amendment RIGHTS, and pursuant with Federal Rules of Civil Procedure Rule 38 (a) and (b); that all issues of fact be tried to a jury.

Respectfully Submitted, this 6th day of June 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

## Certificate of Service:

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn. In NO way shape or form is the undersigned suggesting nor inferring that any filing, pleading or notice be provided, shown or communicated in any way to the person of Chad Mitchell Koehn, pursuant with court order, nothing contained herein is meant to in anyway shape or form be an attempt to communicate with Chad Mitchell Koehn in contravention of any Court Order.

Respectfully Submitted, this 6th day of June 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com