# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. and **CHAD M. KOEHN** <br><br> Plaintiffs, <br><br> v. <br><br> Michael Nelson <br><br> Defendant ;    PRO-Se. | <mark>**DOCKET NO.:    5:22-CV-04008-JWB-GEB**</mark> <br> **CIVIL ACTION** <br><br> **Motion to Dismiss SLAPP Suit/petition by Plaintiff's in violation of Law Motion to STRIKE and Dismiss** <br><br> **[Jury Trial Demanded]** |

<u>Defendant, makes "SPECIAL & LIMITED APPEARANCE"</u> here and now for the

purposes of filing **Motion to Dismiss and Strike the Claims of the plaintiffs in their SLAPP**

**[Strategic Lawsuit Against Public Participation] state petition, removed hereto**, defendant

pro se, out of necessity does so herein now MOVE TO DISMISS plaintiffs SLAPP litigation:

"A court will dismiss a cause of action pursuant to Rule 12(b)(6) under three

circumstances.  First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v.*

*Williams*. Second, dismissal is appropriate where the factual allegations fail to 'state a claim to

relief that is plausible on its face.' *Bell Corp. v. Twombly*.   Third, A claim is facially plausible  if

its factual allegations allow a court to draw reasonable belief the defendant is liable for the

alleged misconduct, however, must not offend traditional Constitutional Rights.  The Plaintiff's

petition offends all three reasons for Dismissal.  Especially wherein the plaintiff's have filed

abusive litigation for the purposes to harass, intimidate, abuse the legal process, and generally

strategically file multiple litigations aimed at silencing shareholders, through shareholder

oppression, silence the pro se defendant and others, from speaking out regarding issues of

regional, and national public concern and debate.   The plaintiff's fail to state claims upon which

they are entitled to relief.

===============================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                                                        - 1

**Kansas adopted a strong anti-SLAPP law in 2016**. Known as the Public Speech Protection Act, it allows a party to move to strike a claim that is in response to "a party's exercise of the right of free speech, **right to petition** or right of association." Kan. Stat. Ann. § 60-5320(d) (2019).   The pro se defendant shows that the claims of the plaintiff's are based on these constitutional rights herein.  Therefore the burden shifts to the plaintiff "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." *Id*.  **Upon filing a motion to strike, under Kansas's strong anti-SLAPP (Strategic Lawsuit Against Public Participation) protection Act: "all discovery, motions or other pending hearings shall be stayed." § 60-5320(e)(2); FRCP 81(d)(1).**

Yes, the Criminal Antitrust Anti-Retaliation Act, which was signed into law on December 23, 2020, protects whistleblowers against retaliation for disclosing evidence of criminal cartel activity, **including those of RICO violations civil and CRIMINAL.**

Judge J. Nicholas Colabella wrote in *Gordon v. Marrone* (N.Y . 1992),

**"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."**

Professors George W. Pring and Penelope Canan coined the term SLAPP suit in the 1980s after noting a surge in lawsuits filed to silence public criticism by citizens.

In 1991 the Supreme Court established in *Columbia v. Omni Outdoor Advertising* (1991) that a defendant is entitled to immunity unless the plaintiff can

prove that the defendant's petitioning was a "sham." To prove a sham, the plaintiff

must show that the petitioning was objectively baseless, and that it was not genuinely

aimed at attaining some favorable government action (or inaction).

Not only does the immunity defense put this burden on the plaintiff, but the

Court also indicated that this analysis must be done on an expedited basis. Allowing

the plaintiff to proceed with discovery or otherwise exhaust the defendant's resources,

the Court opined, **would only exacerbate the "chilling effect" that such lawsuits**

**have on public participation.**

The *Omni* decision did much to safeguard the First Amendment right to petition

the government.

However, the nonlegal effect of SLAPP suits remains. A defendant in such a

suit may succeed legally but lose nevertheless, having expended large amounts of time

and money in defending against the lawsuit.

**More damaging is the effect that such suits can have on those who have not**

**yet been targeted [EMPHASIS ADDED]:** the desire to avoid being sued translates

into a reluctance to participate in public debate.

Here the insidious actions of the plaintiff's are felt even stronger, in that the

plaintiffs have successfully dissuaded multiple current whistleblowers from

cooperating further with Federal investigators.  Craig Brand even before discussion on his pro hac vice status, proffered testimony, to the presiding jurisist in a deliberate, planned, attack to influence unjustly the trier of fact, by stating he [Craig Brand] is defending actions by FINCEN (a Dept. of the US Treasury) and the SEC (Securities and Exchange Commission).  The plaintiff's in their once in a course amendment to their petition, made substantial changes to the underlying state petition including removal of the known racial slur, and the addition of several other phrases.  Those additions give rise to areas of local, regional, and national PUBLIC CONCERN, they also dictate constitutional protections regarding the freedom of association and petition of redress of grievances to the government.

Even more specifically the plaintiffs state:  "that there was a whistleblower at UCM working with the government" at (10) on page two of the plaintiff's First Amended Complaint.  A whistleblower who is "working with the government", dictates an area of public and national concern, additionally "working with the government" dictates a petition for redress of grievances.

To form a basis of a defamation or tortious interference with business claims as the plaintifffs now make, they cannot use protected speech, right to association or right to petition, for example "working with the government" as a basis for such claim of damages.  Especially wherein the plaintiffs self admit to being licensed and

regulated on a State and Federal level in the financial industry. The public financial markets are areas of local, regional and national concern. The fair and equitable management of the public financial markets and protection of the National Interests and the public concern to be protected from bad actors, in the public financial markets is an area of National Concern. Public debate, freedom of association, and right to petition ["working with the government"] are all PROTECTED activities within the meaning of the Kansas and US Constitutions. To say otherwise as the plaintiffs attempt in their certain SLAPP (Strategic Lawsuit Against Public Participation), is to allow ANY corporation who believes they are being investigated and/or prosecuted for violations of law or rules to attack any person in society in order to mount a defense to such violations.

Citizens of the United States of America, must be protected against the litigation abuses of large corporations and their attorneys from attacking citizens engaged in areas of public concern and especially those in areas of National Public Concern, like the protection of the public financial markets, especially wherein a person or organization is licensed in the area of public financial markets. A detrimental activity to the public financial system is an area of local, regional and national public debate and concern. When "a party's exercise of the right of free speech, **right to petition** or right of association." Kan. Stat. Ann. § 60-5320(d) (2019) is directly attacked as it is here in the plaintiff's petition, the rights of the public at large are violated. The plaintiffs must not be afforded the opportunity to continue to attack, embarass, dissuade and otherwise INTIMIDATE citizens from stepping forward and petitioning for redress of

grievances, "working with the government", nor should the mere concern of the public with "securities irregularities" or abnormalities be the basis by which a State and Federally licensed and regulated financial services entity or individual be able to seek judicial harassment, SLAPP styled petitions, or any other judicial abuses. The plaintiffs seeking the best defense is a great offense mentality attacking the weakest and most impoverished person they can identify, in order to dissuade other shareholders, members of the public from "working with the government" is the exact type of judicial abuse which the legislatures State and Federal have sought to prevent in establishing laws preventing SLAPP litigation abuses. Here the plaintiff's have already caused whistleblowers and others to refuse further communication to Federal authorities, the plaintiff's have already won significantly in preventing the reporting of criminal behaviors, have won against the public interests in the public's protection of the public financial markets.

The plaintiff's entire proposed cause in their state petition against the single pro se defendant consists of the following five claims, none of which entitles the plaintiffs to the relief they seek and demonstrate clearly the petition is just another legal entanglement aimed at a goal to silence shareholders rights, illegally prevent public participation, generally interfere as the US Constitution and Kansas Constitution seeks to prevent judicial abuses by the goalith's of business against the "David's" of the Public, when the public seeks as is their right: "a party's exercise of the right of free speech, **right to petition** or right of association." Kan. Stat. Ann. § 60-5320(d) (2019): The Plaintiff's state in their Amended Petition: at (7) "wrongfully contacted proprietary individuals"; no individual can be considered the property of another, especially the property of a corporation, SLAVERY is abolished in these the United States of America, and slavery has always been abolished in the State of Kansas. The plaintiffs l claim at (8) the pro se defendant:

====================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                    - 6

"knew the individuals were clients or expected clients of UCM."; there is no way for the pro se defendant to "know" what individuals are considered the "property" of UCM, nor can UCM claim ownership or property control over others. The statement is wrong on its face, and is another means to attempt illegally and against the US and Kansas constitutions to prevent "a party's exercise of the <u>right of free speech</u>, **right to petition** or <u>right of association</u>." Kan. Stat. Ann. § 60-5320(d) (2019); the RIGHT OF ASSOCIATION, is inviolate and cannot be waived simply because the plaintiff's claim of ownership of individuals. If businesses are able to claim ownership of people, then the right of the public to protest (redress grievances) would no longer be allowed, this could be deemed any person going to a business would be a "client" and therefore protected as an owned person, inconsistent with the Constitutions.

The docket and record of the matter at bar already demonstrates clearly multiple abnormalities in public disclosures filed by the State and Federally licensed plaintiffs. Discussions and "a party's exercise of the <u>right of free speech</u>, **right to petition** or <u>right of association</u>." Kan. Stat. Ann. § 60-5320(d) (2019) cannot be considered illegal. In fact the US and Kansas Constitutions, as cited herein provide for the RIGHT of the people to be free in their association, and the right to petition. As the record indicates, including with judicial notice taken, that Federally filed public disclosures available via EDGAR (Electronic Data Gathering Analysis Retrieval) systems of the US government, demonstrate clearly abnormalities (irregularities) in the securities filings, the right of the public to "free speech", the "RIGHT to Petition" and the "RIGHT of ASSOCIATION" allows individuals to contact each other in society and discuss issues of public concern, debate, and certain local, regional and National public concern, inter alia the statements by the plaintiffs are not a claim upon which relief may

be granted:  at (9) "contacted individuals and stated that there are security irregularities at

UCM."; the record already dictates irregularities in public securities disclosures.  Meaning the

plaintiffs have no standing nor grounds to any relief whatsoever, especially as State and

Federally licensed entities and individuals.

The public and therefore "a party's exercise of the <u>right of free speech</u>, **right to petition**

or <u>right of association</u>." Kan. Stat. Ann. § 60-5320(d) (2019) are inviolate, the right to petition

presumably includes the right to "working with the government"  an implication of engagement

in illegal activity is not out of the ordinary with public debate, in addition WHISTLEBLOWERS

are protected class, and protected against the form of judicial abuse and retaliation contemplated

by the plaintiffs in their SLAPP styled petition:  at (10) "contacted individuals and stated that

there was a whistleblower at UCM working with the government, implying that UCM is

engaging in illegal activity."   There is no claim here upon which relief may be granted given the

claims made by the plaintiffs, and the plaintiff's have already successfully prevented a multitude

of individuals from petitioning for redress of grievances, and illegally dissuaded a multitude of

shareholders, members of the public, employees and others from cooperating with the

government in "working with the government" as would be their right and obvious moral

obligation in society to report harmful conduct which could be a detriment to public financial

markets therefore an area of public National concern.

Speaking of public debate and concern the right to free speech and the right of people to

be free in their association with each other and discussions of opinions, the claim that Chad

and/or UCM executives are "going to prison for 30-40" as stated in (11), must be stated as an

opinion or private public debate, as there is no allegation that the pro se defendant was at the

================================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff** - 8

time a member of law enforcement, nor a prosecutor, ergo any allegation of the kind has to be that of an opinion if any at all, and certainly any person making an opinion in public debate cannot be defamation nor any sort of claim upon which any relief can be granted.  To say otherwise to to stifle all public debate about issues.   There is no claim presented which any relief can be granted and therefore each and every allegation of the plaintiffs must be stricken.

The claims of the plaintiff's suffer from obvious lack of information and cannot achieve any of the relief sought by the plaintiffs. Fed. R. Civ. P. 12(b)(6), AND d. Kan. Rule 7.1(a) and 7.6 and under the Kansas SLAPP (Strategic Lawsuits Against Public Participation) state statutes. Kansas like many other States of the Union of the United States of America, has adopted strong laws against the very type of Strategic Lawsuit, issued by the plaintiff's to dissuade the public, shareholders of corporations, employees, contractors and others from noticing law enforcement, regulators and the public at large of issues of Regional, National and Global PUBLIC Concern.

Here the plaintiff's have as the docket so indicates laid in wait and conspired to entrap and serve the pro se defendant with improper service in an improper forum a frivolous, incongruous, state petition, which included a known RACIAL SLUR, and serve the same to a highly dangerous racially divided detention facility, when the plaintiff's believed the racial slur would have maximum physical damage impact, and only after they learned the murder attempts against the pro se defendant had failed.

The plaintiff's in obvious and willful attempts to mislead and misdirect the Court have continued with their Strategic Lawsuit Against Public Participation (SLAPP) litigation aimed squarely as the state petition both in its original form and in its once in a course amendments so dictates to the Court and the public at large, its intention to a**buse and misuse the American**

**Judicial system as a means to dissuade, intimidate, harass and otherwise obstruct any would be "whistleblower" from reporting possible illegal or unlawful conduct.** The petition as filed by the plaintiffs certainly gives rise to a belief the plaintiff's seek to "out" the identity of one or more "WHISTLEBLOWERS" and to justify what the plaintiff's themselves refer to as "securities irregularities" within the plaintiff's own organization, as the co-plaintiff is apparently the organization which the state petition accuses the pro se defendant of an erroneous claim to having "securities irregularities", however the docket to date demonstrates clearly issues within disclosure documents filed by the plaintiff's themselves. The docket further dictates not only conflicts of interest stated by the plaintiff's themselves against each other and a third entity, but the docket reflects clearly that the plaintiff's collectively during the course of the litigation have materially changed public disclosure documents to remove the conflicts from the public eye. This alone demonstrates clearly the issues which are squarely within the PUBLIC's right to know and clearly within the public eye as to public debate. The fact the plaintiff's state petition was erroneously filed to a state county court, when they themselves knew the petition should have been filed to the Federal Court, demonstrates again why the issue of the plaintiff's bad faith and certain willful and purposeful actions are against Public Interests.

The plaintiff's seek to use a state petition to exact RETALIATORY REVENGE, in predatory collusion with their co conspirators against the weaker pro se non-legally educated defendant and prevent public participation and thus public debate on public issues. For example the plaintiff's misuse and claims to be in "partnership" with the US Federal Government and Foreign Governments, the claim of the plaintiff's to have ENDORSEMENTS of US Federal

Resources including the US Armed Forces, US Departments and Agencies and even claims to be affiliated with each aforementioned and endorsed and affiliated with the United Nations.

In order to withstand a motion to dismiss for failure to state a claim, and/or for the SLAPP litigation as filed as a State petition replete with a racial slur against the pro se defendant, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).* All well pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008).* **Conclusory allegations, however, have no bearing upon the court's consideration.** *Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6)* "does not require that Plaintiff establish a prima facie case in her complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States, 790 F.3d 1143, 1171 (10th Cir. 2015) (internal citations omitted).*

HOWEVER, here in this Motion to STRIKE and thus DISMISS, based on protected speech and CONSTITUTIONAL RIGHTS, including those to speech, right to association, and right to petition.

The **plaintiff's bear the BURDEN to prove their allegations BEYOND a prima facie evidence standard**, as the pro se defendant has certainly demonstrated, where the plaintiff's state petition lacks and it is the defense herein this Motion to Strike and DISMISS that the plaintiff's state petition amounts to a SLAPP litigation, against the interests of the PUBLIC, in the prevention of right of association, where the plaintiff's claim ownership of other individuals

claiming them as "proprietary individuals", and plaintiffs make outlandish, admission in the PAST TENSE that there "was" a whistleblower working with the government, this alone provides prima facie evidence against the plaintiff's themselves given the proof in the positive of the plaintiff's misuse and illegal assertions they are ENDORSED, and affiliated with US Federal Resources, wherein the utilization of US FEDERAL SEALS and LOGOS is against the law no matter the circumstances.

   **In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff's are entitled to offer evidence to support his claims.** *Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). See Kelp v. B & B Lumber Co., Inc., No. 18- 1103-JWB, 2018 WL 3831525, at \*1 (D. Kan. Aug. 13, 2018).*

   Filing a lawsuit without a sufficient factual basis to dissuade a whistleblower or discrimination plaintiff from engaging in protected conduct can constitute actionable retaliation. *See, e.g., Darveau v. Detecon, Inc., 515 F.3d 334, 340-341 (4th Cir. 2008); Gortat v. Capala Bros., 2011 U.S. Dist. LEXIS 149731 (E.D.N.Y. Dec. 30, 2011); Pinkett v. Apex Communs. Corp., 2009 U.S. Dist. LEXIS 34053, 9-12 (E.D. Va. Apr. 21, 2009). Sham litigation is not protected by the First Amendment. Rosania v. Taco Bell of Am., Inc., 303 F. Supp. 2d 878, 883 (N.D. Ohio 2004). See also Gill v. Rinker Materials Corp., No. 3:02-CV-13, 2003 U.S. Dist. LEXIS 2986 (E.D. Tenn. Feb. 24, 2003)* (c**laim brought "not in good faith and instead motivated by retaliation,** can be the basis for a claim under Title VII"); *Gliatta v. Tectum Inc., 211 F. Supp. 2d 992, 1009 (S.D. Ohio 2002)* (lawsuit brought in bad faith with retaliatory motivation prohibited by Title VII); *Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)* ("baseless claims or **lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions,** even though they do not arise strictly in an employment context"); *Stanerson v. Colorado Boulevard Motors, Inc., No. 06-cv-00856, 2006 U.S. Dist. LEXIS 80124 (D. Colo. Nov. 2, 2006); Nesselrotte v. Allegheny Energy, Inc., No. 06-01390, 2009 U.S. Dist. LEXIS 20767, 39-43; 45-46 (W.D. Pa. Mar. 16, 2009)* (counterclaims

====================================================================

**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                                        - 12

and **lawsuit against plaintiff's spouse's company can constitute retaliation under Burlington Northern standard**); *Rosania v. Taco Bell of America, Inc., 303 F.Supp.2d 878 (N.D. Ohio 2004)* (employer's filing of counterclaim was adverse employment action for purpose of retaliation); *E.E.O.C. v. Outback Steakhouse of Florida, 75 F. Supp. 2d 756 (N.D. Ohio 1999).* <u>Indeed, threatening to sue a whistleblower can be actionable retaliation.</u> *See Brach v. Conflict Kinetics Corp.,* Case No. 1:16-cv-978 (E.D. Va. Dec. 1, 2016).

Wherein the plaintiff's here allege in their complaint that the defendant has: "That Nelson has wrongfully contacted <u>proprietary individuals,</u>"; wherein no person or entity can "own" another as their "property" as a "proprietor" of said "individuals", **to allow otherwise to is to dramatically stifle public debate and the free exercise of protected speech**. Regardless of the issue that the claim has been denied by the pro se defendant, even if for not protected speech of opinion is protected under both the Kansas and United States Constitutions since the founding of this Nation and long before the establishment of the Judiciary. Whether or not there exists now or as the plaintiff's claim in their petition "was" as in the past tense a "whistleblower" within the plaintiff's organization, is an issue of PUBLIC CONCERN and thus qualifies as public debate, especially where the pro se defendant is a "significant equity interest" holder in corporations and <u>therefore ASSOCIATION</u> with others, who are also then or now shareholders in the same. **Bringing to bear the question as to right of association, and right of petition and of public participation in public debate over a "whistleblower" or as stated multiple which is squarely within the meaning of PUBLIC PARTICIPATION in debate.** Especially given the overwhelming proof in the positive that the plaintiff's have both individually and collectively declared they have ENDORSEMENTS, AFFILIATIONS and even "PARTNERSHIPS" with foreign regimes (countries) and US Federal Resource, including without limitation as the

===============================================================================

**MOTION to Dismiss SLAPP Lawsuit by Plaintiff** - 13

pleading so dictate the US Armed Forces, US Administrations, Departments and Agencies and even the United Nations.

Businesses and persons engaged in business who in themselves present themselves as public figures, warrant vigorous and open public debate. Allowing a plaintiff wherein here the plaintiff seeks to stifle public debate and criticism through the use of a **public nuisance Strategic Lawsuit Against Public participation**, {SLAPP} as well articulated by the complaint itself without any basis as to information which is slander per se or otherwise unlawful, is for the Courts to open the flood gates to additional frivolous litigation by businesses and others who wish to stifle public debate and discussions.

Here in this matter, it is impossible for the pro se defendant to have at any time known prior which persons are specifically "clients" of the plaintiff, nor does the plaintiff's own state petition adequately articulate facts regarding its claims, in order to overcome the prima facie evidence standard, this alone clearly shows the plaintiffs intent here is to stifle public debate, conversations between shareholders and persons solicited for unregistered stock sales and/or persons whom have had underlying facts hidden from them in the solicitation of stock sales in materially misleading SEC documents, filed under Regulation D. The plaintiffs entire case is built upon one overwhelming premise, and that is to unlawfully "out" the identity of one or more potential whistleblowers within their organization, by attacking a known whistleblower in the underlying companies, which formed the allegedly illegal holdings company, which the plaintiffs collectively have solicited unknowing investors to invest in, without presentation of all the facts. While using insidious machinations dolus to force the pro se defendant and others to accept new shares of stock in the "Anthem Holdings Company", in place of their "significant equity

interests" in a host of underlying companies, supposedly which make up the new Delaware company as a holdings company formed via a business combination merger, in a series of triangular reverse "short-form" mergers without the requisite 90%+ shareholder approval as per the laws in NEVADA, TEXAS and DELAWARE.

This is even more important here wherein the Pro Se defendant is a "significant equity interest" holder in a tremendous number of companies many of which may have overlapping rights for public discussion regarding Chad Koehn and/or others who publicly are listed on disclosure statements as directors or members of board of directors. **Wherein they themselves the plaintiff's etAl. publicly declare partnerships, contracts and endorsements by the resources of the United States Federal Government, especially wherein here no company is allowed to use the Official Seals, Logos, Names and make the statements they have made, claiming endorsements by States and the resources of the US Federal Government including without limitation the Armed Forces, NASA and the Department of Defense.** Fitting squarely in the public eye are the abuses and misuse of US Federal Resources by private enterprise to claim affiliation, endorsement and even contracts with US Federal Resources, the Armed Forces, State Governments and independent sovereign nations f**or the sole purpose to materially mislead investors, past, current and future, the governments of States and the US Federal Government**. **materially mislead clients and customers overall causing extreme detriment to the public at large**.

The actions of the plaintiffs in their SLAPP litigation must not go unnoticed by the US Federal Court and there must be consequences to the SLAPP suits initiated by the plaintiffs. Where herein the defendant respectfully moves the Court to DISMISS with Prejudice the action,

===============================================================================

dismissing the action without the possibility for leave to amend, as it is evident based upon the allegations made in the suit itself, and the hastily fashion in which the suit was drafted to even include a racial slur, whether purposeful as believed or through wanton reckless disregard as the plaintiffs attorneys would have the Court believe, the fact the lawsuit was hastily drawn up and is used in conjunction with other legal entanglements to silence critics of the outlandish and fantastical claims made by the plaintiffs, during their course of solicitation of investment capital.

The plaintiff's have issued an illegal and frivolous petition which on its face is a SLAPP lawsuit against the interests of the defendant, the PUBLIC at large and certainly the US and the State of Kansas State Constitutions and certainly against Kansas' tough stance on SLAPP lawsuits. Disguised as a defamation claim, the plaintiffs abuse of the legal process is well articulated even more so in their once in a course amendment where they add in language, for example, "proprietary individuals", as if to say they own the exclusive right to individuals and no other person has a right to contact the "secret" hidden list of individuals they claim as property. The plaintiffs also add language to the effect a "whistleblower" is "working with the government", a whistleblower by their very nature is defined as "A whistleblower is a person, often an employee, who reveals information about activity within a private or public organization that is deemed illegal, immoral, illicit, unsafe or fraudulent. Whistleblowers can use a variety of internal or external channels to communicate information or allegations." (wikipedia) Whether or not a "whistleblower" or multiple are or as stated in the once in a course amendment "was" as the plaintiffs use the past tense, demonstrates clearly the plaintiffs seek unlawful outing of the identity of a person who may have reported "immoral", "unsafe", "illicit", or even "fraudulent", activities in the organization of the plaintiff. It is unlawful for the plaintiff's to use the

possibility of a whistleblower existing in their organization as a means to support any sort of allegation of defamation.   To do so is to allow the Courts to be used as a weapon to out the identity of whistleblowers, to the detriment of the government and the public at large.  Allowing the plaintiffs here to continue to engage in evident overt RETALIATION and engage in broad discovery seeking to silence critics and out the identity of possible whistleblowers, does a disservice to the public at large, the government and the Courts, providing the proverbial GREEN LIGHT, to corporations across the country to find the weakest link and exploit them through frivolous litigation, in Strategic Lawsuits to PREVENT Public Participation or debate, criticism or even in this matter to prevent or out the identity of a whistleblower or multiple regarding what could be unsafe, illicit, fraudulent, or immoral activities.  This is beyond scary prospect for the Court here to allow the suit to continue given the claims made by the plaintiffs in their petition.

The plaintiffs cannot and must not enjoy the right of litigation on the claim of "securities irregularities" when so much proof exists that securities irregularities or abnormalities exist in the filings of the PUBLIC filings of the plaintiffs.  For the court to grant the right of petition or litigation regarding such a claim, is to allow any corporation anywhere to stifle and quiet its critics through similar wastes of judicial resources.   Craig Brand even lays out his blueprint for how to destroy others, including the stifling of public debate in the book he authored "I don't care what mom says, LIFE SUCKS", where Craig Brand lays out exactly what a defendant must go through to prove innocence and thus demonstrates clearly for the court the intention Brand has in misuse and abuse of the legal system with SLAPP lawsuits against "significant equity interest" holders in companies.

**"I [Craig Alan Brand], for instance, have championed the art of disinformation. I intentionally provide people [COURTS] with false information..."** page 118. [EMPHASIS ADDED] From CRAIG ALAN BRAND's book "I don't care what mom says 'LIFE SUCKS'" by Craig A. Brand, ESQ.

If such terminology was ever uttered in public debate, this is the only way for investors, past, current and future to ask the right questions. The information in the docket to date already indicates strongly with proof positive via SEC regulatory forms filed by the Plaintiffs themselves with the Securities and Exchange Commission (SEC), that regulation D, securities offerings have materially false information contained therein, additionally as well articulated in the docket to date, new securities filings of the Plaintiffs demonstrate material changes to their public disclosures which have been made during the course of the litigation establishing proof in the positive of mens rea of guilt to previous public disclosures.

The Court has taken judicial notice of publicly filed securities documents as they relate to the known Regulation D filings made to a number of companies to the disclosure documents publicly available and filed by the plaintiffs to various regulatory bodies and authorities, and made available publicly. The disclosure documents and SEC regulatory filings both are filed and signed by Chad M. Koehn under the pains and penalties of perjury or other oath or affirmation towit the statements and materials he has submitted are truthful and accurate. Proof in the positive exists within the record indicating abnormalities with dates and claims within those filings. Thus a reasoned mind would conclude there exists evidence of abnormal filings which amount to material misrepresentations in the sale of securities, whether or not actually stated or said in passing by the defendant is besides the point, where proof in the positive exists

==============================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                             - 18

demonstrating if actually said the statements would be truthful.  This alone indicates that the plaintiffs claims are frivolous and lacking in specificity required to be a legitimate claim of action against the defendant.  The only conclusion to draw for the reasons behind the litigation is as a form of INTIMIDATION, harassment and certainly to stifle and silence critics of the plaintiffs organizations.

IF not for "whistleblowers" many billions or even trillions in fraud, unsafe practices, immoral, and illicit dealings would go unreported.  Whether or not there exists one or more whistleblowers within the organization of the plaintiffs is a confidential matter between that whistleblower or multiple whistleblowers and the law enforcement and/or regulatory authorities to which they report.   Whether or not the defendant believes there to be a whistleblower or multiple within the plaintiffs organizations is irrelevant, as the defendant is a private citizen and a "significant equity interest" holder in a number of underlying corporations to the allegedly illegally organized "holdings" company, allegedly created as a means to "smurf" the identities, origin and funds (capital) in the underlying corporations to the allegedly illegally formed holding company, supposedly created via "short-form" mergers.

By and through those very securities filings as filed and appearing in the docket, the right of the citizenry to QUESTION whether or not "securities irregularities" exist in a licensed and Federally regulated entity is the right of the people to exercise free speech.   It is the RIGHT of shareholders, stockholders, stakeholder, especially "significant equity interest" holders to question the legitimacy of "short-form" mergers created without shareholder notices, votes and the selective disbursement of dividends from those underlying companies.  It is the right of shareholders in privately held corporations to know of each others existence and to have

communication with one another regarding issues of mutual concern. The plaintiffs would have the court believe they have "proprietary individuals" which they seek to keep separated from any shareholder dissent and keep separated from knowing of each others existence and knowing the background of the corporations who file Regulatory filings with the SEC, which by their nature are public documents. Especially wherein those PUBLIC documents filed with the SEC and other regulatory bodies are PUBLIC in their very nature, and wherein here the plaintiffs PUBLICLY state that various US Federal Resources have supposedly ENDORSED the products and companies which they solicit investment capital. The very use of US Government SEALS, Logos, and names to the Armed Forces, Agencies, Bureaus, Commissions, Departments, Laboratories gives rise to a PUBLIC issue open for PUBLIC DEBATE. The plaintiff's lawsuit (petition) even as amended screams SLAPP as a Strategic Lawsuit Against Public Participation.

The believed incorrectness and denial of the allegation by the plaintiffs aside, the plaintiffs do not enjoy a right to sue based on the public questioning of the prima facie evidence that appears on Regulation D filings or within public disclosure documents. To allow the litigation of the plaintiffs to proceed is in direct contravention to the rights of shareholders and the public at large to have meaningful public debate as to the legality of the claims of the plaintiffs themselves. When here the plaintiffs themselves hold licenses to practice a specific form of investment management and publicly declare to have conflicts of interest and seats on boards of companies which are alleged to not be properly formed, and have "significant equity interest" holders who dissent to the legality of the organization of via "smurfing" in SHORT Form Mergers. Nor does it provide the means for the plaintiffs to sue for "defamation" when their allegation involves questions as to "irregularities" or the possible existence of a

======================================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                                    - 20

PROTECTED CLASS of Persons specifically that of a "whistleblower", and even more so when the Plaintiff's in their once in a course of litigation amendment add the words "working with the government", as if to say that a whistleblower or as written multiple have no right to work with the government.   The existence in the very documents they themselves have filed under the penalties of perjury and that they themselves sign stating they have conflicts of interest with each other and to the company listed on Regulation D filings, which obviously and evidently has materially misleading and false information contained within the document.  Information which screams abnormalities with the claims of the plaintiffs themselves, demonstrates clearly via proof in the positive that there exists BOTH irregularities and materially false and misleading information which is of PUBLIC concern and therefore entitled to PUBLIC Debate.  The Strategic Lawsuit Against Public Participation as the state petition well demonstrates the plaintiffs willingness to follow Craig A. Brand's school of thought with regards to judicial abuse demonstrates clearly why the plaintiff's lawsuit must as a matter of law be dismissed without the right for leave to amend.   SLAPP litigations are a scourge upon the American Judicial System and the rights of the general public.

The entire litigation by the plaintiffs is a "fishing expedition" disguised as litigation to harass, intimidate, retaliate and be used as a weapon against shareholders, stakeholders, "significant equity interest" holders, whistleblowers, in a vast number of investment vehicles. The actions of the plaintiff cumulatively are against the interests of the public at large, the government and are certainly strategic, indicating only one conclusion that the lawsuit as written and issued, especially in the plaintiff's once a course revision, **dictates the litigation is frivolous and made Strategically as a Lawsuit Against Public Participation.**  Worse yet the litigation as

issued takes direct aim at "securities irregularities", the outing of the identity of a

"whistleblower", the outing of the identity of a person allegedly working with the government,

the allegation that statements of opinion or hearsay are some how defamatory enough to give rise

to litigation in a fashion allowing for the litigation "fishing expedition" launched by the

plaintiffs, which has already had its intended negative effects scaring any other shareholder,

stakeholder, and the public at large from PUBLIC debate regarding their wild claims.

The Pro Se defendant having shown clearly and convincingly by the nature of the

plaintiffs suit and the allegations as alleged which have been denied, even if they were not denied

as they have been, demonstrate clear error by the plaintiffs in organizing a frivolous litigation

aimed at preventing public participation concerning investors investment in the sale of securities

made by the plaintiffs themselves in direct contravention and certain willful materially false

statements made on the very government documents and regulatory forms, they themselves, have

filed under the penalties of perjury and under oath and affirmation.

The Pro Se defendant's motion herein to strike the claims of the plaintiffs is made for

cause and further made that the claims as presented are certain direct attacks against investors,

shareholders and others concerned including member of the PUBLIC.  Members of the Public

must as a matter of law be protected against STRATEGIC LAWSUITS AGAINST PUBLIC

PARTICIPATION, used as a means of INTIMIDATION, HARASSMENT in order to stifle

public debate and discussions on the nature of the claims, made by the plaintiffs in their sale of

securities.  The Plaintiffs themselves directly contradict their own publicly filed statements on

securities documents they themselves have issued.   The motion herein to dismiss the litigation as

a SLAPP lawsuit, is the only lawful and correct and only course of action given the outlandish

allegations as pleaded to by the plaintiffs.  Whether as a motion to dismiss or motion to strike in doing so the Pro Se defendant makes a motion therefore to "strike a claim(s) that is in response to "a party's exercise of the right of free speech, right to petition or right of association." Kan. Stat. Ann. § 60-5320(d) (2019).   The US constitution also protects citizens in their right to assembly and to free speech, especially wherein speech is truthful, for instance the docket already demonstrates clearly where "securities irregularities" (abnormalities) exist, and even provides proof in the positive of materially false and misleading statements filed on US Securities and Exchange Commission documents.

"Once the defendant shows that the claim is based on one of these constitutional rights, the burden shifts to the plaintiff "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case."   The plaintiffs cannot present any evidence to support a claim that "securities irregularities" do not exist, as proof positive of abnormalities in filings already exists on the docket, and the plaintiffs have already demonstrated via mens rea of guilty the removal of conflicts of interest from their disclosure documents during the course of the litigation at bar.  The pro se defendant so submits there can be no "substantial" and "competent" evidence supporting the claims as alleged by the Plaintiffs wherein they have made allegations which are neither slanderous nor can be considered slander per se, when even liberally viewed the plaintiffs claims of statements which sound as though they are opinions and well situated in public discourse as to discussions on investments and investment vehicles which are in material dispute.  The plaintiff's as previously well demonstrated in the pleadings cannot make claim to ownership of individuals nor can they prevent individuals in the several states from having meaningful discussions public or private or

other discourse regarding the wild and outlandish claims made by the plaintiffs, who themselves claim in public disclosure documents to have conflicts of interest between themselves and third parties including as it directly relates to a third party holding company, alleged to have been illegally organized in contravention to the laws of other states than the state of Kansas. Specifically wherein here the allegation as stated references laws in the States of Delaware, Nevada and Texas. Wherein the plaintiffs even in their disclosures acknowledge direct conflicts of interest and suggest discussions with outside persons prior to investments or after making an investment and shareholders have a right to communicate with each other.

The plaintiff's want the court to believe that each shareholder is independent and each is "owned" by the plaintiffs directly and no two shareholders can communicate with each other nor should any member of the public be allowed to communicate issues of concern regarding claims of partnership and endorsement by US Federal Resources, including Department of Defense, NASA, the US Army, US Airforce, Departments of the US Federal Government, and the use of the SEALS and logos of those aforementioned to imply endorsement, partnership and contracts where none can exist as the utilization of the Seals, logos and names is banned by LAW. The petition makes claims which even as "stated" by the plaintiffs themselves, sound and appear to the reasonable person to be "opinions" and thus protected speech, although as stated in the petition have been previously denied by the pro se defendant. Even if somehow shown with substantial evidence as being true, they are certainly well embodied within free speech protection as public participation. A person solicited for an investment or a person who has made an investment in a company which the defendant and/or other similarly situated persons are already invested and/or have been similarly "pitched" marketed information which upon its face is

materially misleading, fraudulent, and outright lies in order to "smurf" the underlying origin of investment securities, the establishment of holding companies and/or directly state and/or imply governmental affiliations where none exist, is the RIGHT of the people solicited and invested therein to have open discussions and even open public discussions as to whether or not a person should blow the whistle or if a person has a "whistleblower", or as used in the amended complaint the Plaintiff's use the word "was" to indicate that the allegation of a whistleblower inside the plaintiffs company is "past tense" as having previously been employed by the company.

The plaintiff's entire action ais as stated a SLAPP lawsuit designed to deter any person from speaking **"about a possible securities law violation" [EMPHASIS ADDED].** In addition to being an obvious attempt to deter any "whistleblower" or informant from "working with the government", or speaking opinions on securities sold, offered, or the claims relating to those securities, for example claims to have US government contracts, use of US Federal Resource SEALS, LOGOS and names in contravention of US law; the plaintiffs entire litigation is aimed at a person who has previously made protected reports regarding the underlying companies which are alleged to have been illegally "smurfed" into a holding company, via "short-form" mergers without shareholder voting. The plaintiff's actions are in direct contravention to the Regulation D securities filing made and then promulgated by the plaintiffs collectively who have publicly declared they have conflicts of interest between each other, and was signed by Chad M. Koehn on behalf of himself and his co-plaintiff, as both having conflicts of interest with each other and the third party Anthem Holdings Company. This demonstrates clearly with the preponderance of the evidence that IF there is or as stated by the allegation of the plaintiffs

"was" a whistleblower or other type of informant "working with the government", that person's identity would be protected as a matter of law. The attempts by the plaintiff's in their incongruous lawsuit to prevent cooperation between shareholders and law enforcement is a petition obvious and evident to the reasoned person the plaintiff's seek to out the identity of any person who is a "whistleblower" or "informant" or perhaps multiple as written by the plaintiffs.

A shareholder, especially a "significant equity interest" holder, has the unalienable right and duty to share with others similarly situated in investments they mutually are invested in. It is not without reason that the claims of the plaintiffs are actually mis-stated as claims against the pro se defendant, when in fact may have been statements and claims by a third party, not attached and not sued. As the plaintiff's seek to attack the weakest person in their grand fishing expedition where they seek to discover information which may or may not even exist regarding who or more specifically what Federal, and/or State regulators and law enforcement or elected officials know about their series of different investment vehicles, they publicly disclose as having direct conflicts with each other and which they directly and materially have misrepresented publicly. It is the RIGHT of the People to be free in their association, this includes association as shareholders in companies, as investors, as interested tax payers in the wild and outlandish claims of the plaintiffs to have government partnerships and contracts. Especially wherein they are jointly shareholders within the same entities, although as herein entities which are not governed by the State of Kansas, nor located in the State of Kansas, even as foreign registered organizations. Regardless of the public display as to the "nerve center" as formally complained and requested in Writ of Mandamus before the Court, regarding information discovered in the course of litigation. SLAPP or Strategic Lawsuits Against Public

Participation are becoming increasingly common in the american judicial system, especially their use by attorneys, who publicly commit self defamation claiming they are "shyster"(s), and that their clients are "bad guys" wherein here Craig Alan Brand has publicly laid out his "blueprint" for creation of SLAPP lawsuits against weaker members of society in order to protect the "wealthy" "insane", thus scaring any other would be whistleblower from cooperating with the government or shareholders sharing information with each other or the public at large:

**"...wham, you are in court and the accused must go through a long, lengthy, tiring, stressful and expensive process merely to prove his or her innocence. In spite of what you have read about our system of justice, we are all guilty until proven innocent, and we are all innocent until we run out of money… people wind up paying some form of legal extortion just to get out of the drama. The bad guys and their shyster lawyers know it."** id page 97 book: "I don't Care What Mom Says: LIFE SUCKS" by Craig A. Brand, ESQ.

Certainly this US Federal Court cannot ignore the fact that the pro hac vice counsel brought into the case, which as the record indicates has been behind the scenes since the beginning. Who has even purposefully and maliciously laid before the Court his own affidavit for admission, Doc. 24-1 where the Court has recognized Craig A. Brand "played fast and loose at number six", and the docket reflects Craig Brand's continual self admissions to a host of false information he has submitted in his affidavit for admission before the Court. All the while Brand appears at bar under a name, other than the name he submitted as the name of his law firm on his affidavit as the Court record dictates, even having the Federal Magistrate have to exclaim and ask "who Mystic Law is…" in the start of hearings in the matter. The abuse of the legal system and its use to silence critics and shareholder dissent in investment vehicles which claim illegally

====================================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff** - 27

and use illegally the US Federal and State resources to imply partnerships and contracts, is untenable and must not be allowed to stand in the US Federal Courts. The public at large must as a matter of law be protected against frivolous Strategic Lawsuits Against Public Participation, SLAPP as these lawsuits are known are misuse and abuse of the legal system to the detriment of the American People as taxpayers and citizens.

Plaintiff's First Amended Complaint defamation suffers from defects and as such no relief can be granted. Plaintiff's complaint fails to identify any third-party or specific person(s) to whom the alleged defamatory statements <u>were made, when they were made, whether they were oral or written, and the manner in which the specific statement was intended to damage</u> either Mr. Koehn or United Capital Management of Kansas Inc. reputations or interfere with their business. Kansas does not differentiate between defamation per se and defamation per quod. *Polson v. Davis, (10th Cir. 1990).*

The memorandum in support of this motion will demonstrate the Plaintiff's failure to state a cause of action for the respective counts based upon lack of standing and/or failure to state a claim upon which relief may be granted, as is evident in the SLAPP styled petition the plaintiffs filed replete with racial slur ordered to be removed.

**WHEREFORE, defendant, Michael Nelson. respectfully prays that this Court will dismiss Plaintiff's, Chad M. Koehn and United Capital Management of Kansas Inc.'s First Amended Complaint and send a clear message SLAPP litigations will not be tolerated.**

===============================================================================

Upon filing a motion to strike, for SLAPP litigation: **"all discovery, motions or other pending hearings shall be stayed."** § 60-5320(e)(2). However, the court may allow limited discovery relevant to the motion to strike. § 60-5320(e)(1). If the court denies the motion to strike, **the defendant may file an immediate appeal.** § 60-5320(f). Wherein here the defendant therefore would respectfully once again request a Motion to STAY the proceedings pending appeal if any adverse finding in regards to this lawful and certainly well supported motion to Strike and Dismiss based upon the obvious and evident SLAPP (Strategic Lawsuit Against Public Participation) as filed by the plaintiffs.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

This MOTION to DISMISS based on the Anti-SLAPP suit of the Plaintiffs and requesting this motion, notice and all other filings as in all previously filed motions and requests, responses, ojections, notices and/or any pleadings whatsoever the Defendant does not waive and reserves all rights as to any available defenses it may assert against the petition. And so makes this appearance together with all previous filings now before the Court, without voluntarily or involuntarily submitting to the jurisdiction of this Court, as with this and all prior motions and filings are made via "special appearance", as well stated in the "Notice of Removal" in paper 1,

filed on 1 Feburary 2022, removing the malicious, frivolous and incongruous petition to this US Federal Court for the district of Kansas.


Respectfully Submitted, this 1st day of July 2022.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn. Nothing contained herein or hereby shall be considered nor availment hereof any notice or request to communicate in any manner or nature whatsoever with the person of CHAD MITCHELL KOEHN, and/or any of the aliases used by CHAD MITCHELL KOEHN.

Respectfully Submitted, this 1st day of July 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com