# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, Inc. and CHAD M. KOEHN<br><br>Plaintiffs,<br><br>v.<br><br>Michael Nelson<br><br>Defendant ;    PRO-Se. | <mark>DOCKET NO.:    5:22-CV-04008-JWB-GEB</mark><br>**CIVIL ACTION**<br><br>**Memorandum in support of Motion to Dismiss SLAPP Suit/petition by Plaintiff's in violation of Law Motion to STRIKE**<br><br>**[Jury Trial Demanded]** |

Defendant, makes "SPECIAL & LIMITED APPEARANCE" here and now for the purposes of filing **Memorandum in Support of Motion to Dismiss Based on SLAPP [Strategic Lawsuit Against Public Participation] lawsuit by Plaintiffs, Motion to Strike all claims for cause** , defendant so herein now alleges and states:

**Kansas adopted a strong anti-SLAPP law in 2016.** Known as the Public Speech Protection Act, it allows a party to move to strike a claim that is in response to "a party's exercise of the right of free speech, **right to petition** or right of association." Kan. Stat. Ann. § 60-5320(d) (2019).   The pro se defendant shows that the claims of the plaintiff's are based on these constitutional rights herein.  Therefore the burden shifts to the plaintiff "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." *Id*.  **Upon filing a motion to strike, under Kansas's strong anti-SLAPP (Strategic Lawsuit Against Public Participation) protection Act: "all discovery, motions or other pending hearings shall be stayed." § 60-5320(e)(2); FRCP 81(d)(1).**

Yes, the Criminal Antitrust Anti-Retaliation Act, which was signed into law on December 23, 2020, protects whistleblowers against retaliation for disclosing evidence of criminal cartel activity, **including those of RICO violations civil and CRIMINAL.**

==============================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                                                                 - 1

Judge J. Nicholas Colabella wrote in *Gordon v. Marrone* (N.Y . 1992), **"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."**

Professors George W. Pring and Penelope Canan coined the term SLAPP suit in the 1980s after noting a surge in lawsuits filed to silence public criticism by citizens.

In 1991 the Supreme Court established in *Columbia v. Omni Outdoor Advertising* (1991) that a defendant is entitled to immunity unless the plaintiff can prove that the defendant's petitioning was a "sham." To prove a sham, the plaintiff must show that the petitioning was objectively baseless, and that it was not genuinely aimed at attaining some favorable government action (or inaction).

Not only does the immunity defense put this burden on the plaintiff, but the Court also indicated that this analysis must be done on an expedited basis. Allowing the plaintiff to proceed with discovery or otherwise exhaust the defendant's resources, the Court opined, would only exacerbate the "chilling effect" that such lawsuits have on public participation.

The *Omni* decision did much to safeguard the First Amendment right to petition the government.

However, the nonlegal effect of SLAPP suits remains. A defendant in such a suit may succeed legally but lose nevertheless, having expended large amounts of time and money in defending against the lawsuit.

More damaging is the effect that such suits can have on those who have not yet been targeted: the desire to avoid being sued translates into a reluctance to participate in public debate.

The plaintiff's entire proposed cause in their state petition against the single pro se defendant consists of the following five claims, none of which entitles the plaintiffs to the relief they seek and demonstrate clearly the petition is just another legal entanglement aimed at a goal to silence shareholders rights, and illegally prevent public participation:

at (7) "wrongfully <u>contacted proprietary individuals</u>, clients of UCM and Chad, disparaging Chad and UCM's reputations."

at (8) "knew the individuals were clients or expected clients of UCM."

at (9) "contacted individuals and stated that there are security irregularities at UCM."

at (10) "contacted individuals and stated that there was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity."

at (11) "stated that UCM executives and Chad are "going to prison for 30-40 years." '

The claims of the plaintiff's suffer from obvious lack of information and cannot achieve any of the relief sought by the plaintiffs. Fed. R. Civ. P. 12(b)(6), AND d. Kan. Rule 7.1(a) and

===============================================================================

7.6 and under the Kansas SLAPP (Strategic Lawsuits Against Public Participation) state statutes. Kansas like many other States of the Union of the United States of America, has adopted strong laws against the very type of Strategic Lawsuit, issued by the plaintiff's to dissuade the public, shareholders of corporations, employees, contractors and others from noticing law enforcement, regulators and the public at large of issues of Regional, National and Global PUBLIC Concern.

Here the plaintiff's have as the docket so indicates laid in wait and conspired to entrap and serve the pro se defendant with improper service in an improper forum a frivolous, incongruous, state petition, which included a known RACIAL SLUR, and serve the same to a highly dangerous racially divided detention facility, when the plaintiff's believed the racial slur would have maximum physical damage impact, and only after they learned the murder attempts against the pro se defendant had failed.

The plaintiff's in obvious and willful attempts to mislead and misdirect the Court have continued with their Strategic Lawsuit Against Public Participation (SLAPP) litigation aimed squarely as the state petition both in its original form and in its once in a course amendments so dictates to the Court and the public at large, its intention to a**buse and misuse the American Judicial system as a means to dissuade, intimidate, harass and otherwise obstruct any would be "whistleblower" from reporting possible illegal or unlawful conduct.** The petition as filed by the plaintiffs certainly gives rise to a belief the plaintiff's seek to "out" the identity of one or more "WHISTLEBLOWERS" and to justify what the plaintiff's themselves refer to as "securities irregularities" within the plaintiff's own organization, as the co-plaintiff is apparently the organization which the state petition accuses the pro se defendant of an erroneous claim to having "securities irregularities", however the docket to date demonstrates clearly issues within

disclosure documents filed by the plaintiff's themselves.  The docket further dictates not only

conflicts of interest stated by the plaintiff's themselves against each other and a third entity, but

the docket reflects clearly that the plaintiff's collectively during the course of the litigation have

materially changed public disclosure documents to remove the conflicts from the public eye.

This alone demonstrates clearly the issues which are squarely within the PUBLIC's right to know

and clearly within the public eye as to public debate.  The fact the plaintiff's state petition was

erroneously filed to a state county court, when they themselves knew the petition should have

been filed to the Federal Court, demonstrates again why the issue of the plaintiff's bad faith and

certain willful and purposeful actions are against Public Interests.

　　　　The plaintiff's seek to use a state petition to exact RETALIATORY REVENGE, in

predatory collusion with their co conspirators against the weaker pro se non-legally educated

defendant and prevent public participation and thus public debate on public issues.  For example

the plaintiff's misuse and claims to be in "partnership" with the US Federal Government and

Foreign Governments, the claim of the plaintiff's to have ENDORSEMENTS of US Federal

Resources including the US Armed Forces, US Departments and Agencies and even claims to be

affiliated with each aforementioned and endorsed and affiliated with the United Nations.


　　　　In order to withstand a motion to dismiss for failure to state a claim, and/or for the

SLAPP litigation as filed as a State petition replete with a racial slur against the pro se defendant,

<u>a complaint must contain enough allegations of fact to state a claim to relief that is plausible on</u>

<u>its face</u>. *Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v.*

*Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).*   All well pleaded facts and the

reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.

*Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008).* **Conclusory allegations, however,**

**have no bearing upon the court's consideration.** *Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6) "does not require that Plaintiff establish a prima facie case in her complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." Pueblo of Jemez v. United States, 790 F.3d 1143, 1171 (10th Cir. 2015) (internal citations omitted).*

HOWEVER, here in this Motion to STRIKE and thus DISMISS, based on protected speech and CONSTITUTIONAL RIGHTS, including those to speech, right to association, and right to petition. The **plaintiff's bear the BURDEN to prove their allegations BEYOND a prima facie evidence standard**, as the pro se defendant has certainly demonstrated, where the plaintiff's state petition lacks and it is the defense herein this Motion to Strike and DISMISS that the plaintiff's state petition amounts to a SLAPP litigation, against the interests of the PUBLIC, in the prevention of right of association, where the plaintiff's claim ownership of other individuals claiming them as "proprietary individuals", and plaintiffs make outlandish, admission in the PAST TENSE that there "was" a whistleblower working with the government, this alone provides prima facie evidence against the plaintiff's themselves given the proof in the positive of the plaintiff's misuse and illegal assertions they are ENDORSED, and affiliated with US Federal Resources, wherein the utilization of US FEDERAL SEALS and LOGOS is against the law no matter the circumstances.

   **In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff's are entitled to offer evidence to support his claims.** *Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). See Kelp v. B & B Lumber Co., Inc., No. 18- 1103-JWB, 2018 WL 3831525, at *1 (D. Kan. Aug. 13, 2018).*

Filing a lawsuit without a sufficient factual basis to dissuade a whistleblower or discrimination plaintiff from engaging in protected conduct can constitute actionable retaliation.

*See, e.g., Darveau v. Detecon, Inc., 515 F.3d 334, 340-341 (4th Cir. 2008); Gortat v. Capala Bros., 2011 U.S. Dist. LEXIS 149731 (E.D.N.Y. Dec. 30, 2011); Pinkett v. Apex Communs. Corp., 2009 U.S. Dist. LEXIS 34053, 9-12 (E.D. Va. Apr. 21, 2009). Sham litigation is not protected by the First Amendment. Rosania v. Taco Bell of Am., Inc., 303 F. Supp. 2d 878, 883 (N.D. Ohio 2004). See also Gill v. Rinker Materials Corp., No. 3:02-CV-13, 2003 U.S. Dist. LEXIS 2986 (E.D. Tenn. Feb. 24, 2003)* (c**laim brought "not in good faith and instead motivated by retaliation,** can be the basis for a claim under Title VII"); *Gliatta v. Tectum Inc., 211 F. Supp. 2d 992, 1009 (S.D. Ohio 2002)* (lawsuit brought in bad faith with retaliatory motivation prohibited by Title VII); *Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)* ("baseless claims or **lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions,** even though they do not arise strictly in an employment context"); *Stanerson v. Colorado Boulevard Motors, Inc., No. 06-cv-00856, 2006 U.S. Dist. LEXIS 80124 (D. Colo. Nov. 2, 2006); Nesselrotte v. Allegheny Energy, Inc., No. 06-01390, 2009 U.S. Dist. LEXIS 20767, 39-43; 45-46 (W.D. Pa. Mar. 16, 2009)* (counterclaims and **lawsuit against plaintiff's spouse's company can constitute retaliation under Burlington Northern standard**); *Rosania v. Taco Bell of America, Inc., 303 F.Supp.2d 878 (N.D. Ohio 2004)* (employer's filing of counterclaim was adverse employment action for purpose of retaliation); *E.E.O.C. v. Outback Steakhouse of Florida, 75 F. Supp. 2d 756 (N.D. Ohio 1999)*.

Indeed, threatening to sue a whistleblower can be actionable retaliation. *See Brach v. Conflict Kinetics Corp.,* Case No. 1:16-cv-978 (E.D. Va. Dec. 1, 2016).

Wherein the plaintiff's here allege in their complaint that the defendant has: "That Nelson has wrongfully contacted proprietary individuals,"; wherein no person or entity can "own" another as their "property" as a "proprietor" of said "individuals", **to allow otherwise to is to dramatically stifle public debate and the free exercise of protected speech**. Regardless of the issue that the claim has been denied by the pro se defendant, even if for not protected speech of opinion is protected under both the Kansas and United States Constitutions since the founding of this Nation and long before the establishment of the Judiciary. Whether or not there

exists now or as the plaintiff's claim in their petition "was" as in the past tense a "whistleblower" within the plaintiff's organization, is an issue of PUBLIC CONCERN and thus qualifies as public debate, especially where the pro se defendant is a "significant equity interest" holder in corporations and <u>therefore ASSOCIATION</u> with others, who are also then or now shareholders in the same. **Bringing to bear the question as to right of association, and right of petition and of public participation in public debate over a "whistleblower" or as stated multiple which is squarely within the meaning of PUBLIC PARTICIPATION in debate.** Especially given the overwhelming proof in the positive that the plaintiff's have both individually and collectively declared they have ENDORSEMENTS, AFFILIATIONS and even "PARTNERSHIPS" with foreign regimes (countries) and US Federal Resource, including without limitation as the pleading so dictate the US Armed Forces, US Administrations, Departments and Agencies and even the United Nations.

Businesses and persons engaged in business who in themselves present themselves as public figures, warrant vigorous and open public debate. Allowing a plaintiff wherein here the plaintiff seeks to stifle public debate and criticism through the use of a **public nuisance Strategic Lawsuit Against Public participation**, {SLAPP} as well articulated by the complaint itself without any basis as to information which is slander per se or otherwise unlawful, is for the Courts to open the flood gates to additional frivolous litigation by businesses and others who wish to stifle public debate and discussions.

Here in this matter, it is impossible for the pro se defendant to have at any time known prior which persons are specifically "clients" of the plaintiff, nor does the plaintiff's own state petition adequately articulate facts regarding its claims, in order to overcome the prima facie

evidence standard, this alone clearly shows the plaintiffs intent here is to stifle public debate, conversations between shareholders and persons solicited for unregistered stock sales and/or persons whom have had underlying facts hidden from them in the solicitation of stock sales in materially misleading SEC documents, filed under Regulation D.   The plaintiffs entire case is built upon one overwhelming premise, and that is to unlawfully "out" the identity of one or more potential whistleblowers within their organization, by attacking a known whistleblower in the underlying companies, which formed the allegedly illegal holdings company, which the plaintiffs collectively have solicited unknowing investors to invest in, without presentation of all the facts. While using insidious machinations dolus to force the pro se defendant and others to accept new shares of stock in the "Anthem Holdings Company", in place of their "significant equity interests" in a host of underlying companies, supposedly which make up the new Delaware company as a holdings company formed via a business combination merger, in a series of triangular reverse "short-form" mergers without the requisite 90%+ shareholder approval as per the laws in NEVADA, TEXAS and DELAWARE.

This is even more important here wherein the Pro Se defendant is a "significant equity interest" holder in a tremendous number of companies many of which may have overlapping rights for public discussion regarding Chad Koehn and/or others who publicly are listed on disclosure statements as directors or members of board of directors.  **Wherein they themselves the plaintiff's etAl. publicly declare partnerships, contracts and endorsements by the resources of the United States Federal Government, especially wherein here no company is allowed to use the Official Seals, Logos, Names and make the statements they have made, claiming endorsements by States and the resources of the US Federal Government**

**including without limitation the Armed Forces, NASA and the Department of Defense.**
Fitting squarely in the public eye are the abuses and misuse of US Federal Resources by private enterprise to claim affiliation, endorsement and even contracts with US Federal Resources, the Armed Forces, State Governments and independent sovereign nations f**or the sole purpose to materially mislead investors, past, current and future, the governments of States and the US Federal Government**, **materially mislead clients and customers overall causing extreme detriment to the public at large**.

The actions of the plaintiffs in their SLAPP litigation must not go unnoticed by the US Federal Court and there must be consequences to the SLAPP suits initiated by the plaintiffs. Where herein the defendant respectfully moves the Court to DISMISS with Prejudice the action, dismissing the action without the possibility for leave to amend, as it is evident based upon the allegations made in the suit itself, and the hastily fashion in which the suit was drafted to even include a racial slur, whether purposeful as believed or through wanton reckless disregard as the plaintiffs attorneys would have the Court believe, the fact the lawsuit was hastily drawn up and is used in conjunction with other legal entanglements to silence critics of the outlandish and fantastical claims made by the plaintiffs, during their course of solicitation of investment capital.

The plaintiff's have issued an illegal and frivolous petition which on its face is a SLAPP lawsuit against the interests of the defendant, the PUBLIC at large and certainly the US and the State of Kansas State Constitutions and certainly against Kansas' tough stance on SLAPP lawsuits. Disguised as a defamation claim, the plaintiffs abuse of the legal process is well articulated even more so in their once in a course amendment where they add in language, for example, "proprietary individuals", as if to say they own the exclusive right to individuals and no

other person has a right to contact the "secret" hidden list of individuals they claim as property. The plaintiffs also add language to the effect a "whistleblower" is "working with the government", a whistleblower by their very nature is defined as "A whistleblower is a person, often an employee, who reveals information about activity within a private or public organization that is deemed illegal, immoral, illicit, unsafe or fraudulent.   Whistleblowers can use a variety of internal or external channels to communicate information or allegations." (wikipedia)   Whether or not a "whistleblower" or multiple are or as stated in the once in a course amendment "was" as the plaintiffs use the past tense, demonstrates clearly the plaintiffs seek unlawful outing of the identity of a person who may have reported "immoral", "unsafe", "illicit", or even "fraudulent", activities in the organization of the plaintiff.   It is unlawful for the plaintiff's to use the possibility of a whistleblower existing in their organization as a means to support any sort of allegation of defamation.   To do so is to allow the Courts to be used as a weapon to out the identity of whistleblowers, to the detriment of the government and the public at large.  Allowing the plaintiffs here to continue to engage in evident overt RETALIATION and engage in broad discovery seeking to silence critics and out the identity of possible whistleblowers, does a disservice to the public at large, the government and the Courts, providing the proverbial GREEN LIGHT, to corporations across the country to find the weakest link and exploit them through frivolous litigation, in Strategic Lawsuits to PREVENT Public Participation or debate, criticism or even in this matter to prevent or out the identity of a whistleblower or multiple regarding what could be unsafe, illicit, fraudulent, or immoral activities.  This is beyond scary prospect for the Court here to allow the suit to continue given the claims made by the plaintiffs in their petition.

=================================================================================
**MOTION to Dismiss SLAPP Lawsuit by Plaintiff**                                         - 11

Though the defendant has DENIED the statement in the plaintiffs originating petition, alleging the defendant has "stated that there are security irregularities at UCM". None-the-less the existence of "securities irregularities" does not indicate criminal wrongdoing specifically. The facts the docket of the matter at bar, definitely indicates via proof positive or abnormal or irregularities in securities filings, demonstrates clearly that even if said, in passing in public debate, proof positive exists in the docket at bar, of irregularities or abnormalities in securities filings, as additional evidence would come to light, demonstrating clearly that it is well formulated in the public interest and for public debate a question as to whether or not other persons listed or stated as "shareholders" of an allegedly illegally formed holding company should be made aware of allegations regarding the untruthfulness of the fantastical claims made by the plaintiffs in the operation of said holding company and the underlying companies of the allegedly illegal holdings company. The plaintiffs cannot and must not enjoy the right of litigation on the claim of "securities irregularities" when so much proof in the positive exists that securities irregularities or abnormalities exist in the filings of the PUBLIC filings of the plaintiffs. For the court to grant the right of petition or litigation regarding such a claim, is to allow any corporation anywhere to stifle and quite its critics through similar wastes of judicial resources. Craig Brand even lays out his blueprint for how to destroy others, including the stifling of public debate in the book he authored "I don't care what mom says, LIFE SUCKS", where Craig Brand lays out exactly what a defendant must go through to prove innocence and thus demonstrates clearly for the court the intention Brand has in misuse and abuse of the legal system with SLAPP lawsuits against "significant equity interest" holders in companies.

**"I [Craig Alan Brand], for instance, have championed the art of disinformation. I intentionally provide people [COURTS] with false information..."** page 118. [EMPHASIS ADDED] From CRAIG ALAN BRAND's book "I don't care what mom says 'LIFE SUCKS'" by Craig A. Brand, ESQ.

If such terminology was ever uttered in public debate, this is the only way for investors, past, current and future to ask the right questions. The information in the docket to date already indicates strongly with proof positive via SEC regulatory forms filed by the Plaintiffs themselves with the Securities and Exchange Commission (SEC), that regulation D, securities offerings have materially false information contained therein, additionally as well articulated in the docket to date, new securities filings of the Plaintiffs demonstrate material changes to their public disclosures which have been made during the course of the litigation establishing proof in the positive of mens rea of guilt to previous public disclosures.

The Court has taken judicial notice of publicly filed securities documents as they relate to the known Regulation D filings made to a number of companies to the disclosure documents publicly available and filed by the plaintiffs to various regulatory bodies and authorities, and made available publicly. The disclosure documents and SEC regulatory filings both are filed and signed by Chad M. Koehn under the pains and penalties of perjury or other oath or affirmation towit the statements and materials he has submitted are truthful and accurate. Proof in the positive exists within the record indicating abnormalities with dates and claims within those filings. Thus a reasoned mind would conclude there exists evidence of abnormal filings which amount to material misrepresentations in the sale of securities, whether or not actually stated or said in passing by the defendant is besides the point, where proof in the positive exists

===============================================================================

demonstrating if actually said the statements would be truthful. This alone indicates that the plaintiffs claims are frivolous and lacking in specificity required to be a legitimate claim of action against the defendant. The only conclusion to draw for the reasons behind the litigation is as a form of INTIMIDATION, harassment and certainly to stifle and silence critics of the plaintiffs organizations.

IF not for "whistleblowers" many billions or even trillions in fraud, unsafe practices, immoral, and illicit dealings would go unreported. Whether or not there exists one or more whistleblowers within the organization of the plaintiffs is a confidential matter between that whistleblower or multiple whistleblowers and the law enforcement and/or regulatory authorities to which they report. Whether or not the defendant believes there to be a whistleblower or multiple within the plaintiffs organizations is irrelevant, as the defendant is a private citizen and a "significant equity interest" holder in a number of underlying corporations to the allegedly illegally organized "holdings" company, allegedly created as a means to "smurf" the identities, origin and funds (capital) in the underlying corporations to the allegedly illegally formed holding company, supposedly created via "short-form" mergers.

By and through those very securities filings as filed and appearing in the docket, the right of the citizenry to QUESTION whether or not "securities irregularities" exist in a licensed and Federally regulated entity is the right of the people to exercise free speech. It is the RIGHT of shareholders, stockholders, stakeholder, especially "significant equity interest" holders to question the legitimacy of "short-form" mergers created without shareholder notices, votes and the selective disbursement of dividends from those underlying companies. It is the right of shareholders in privately held corporations to know of each others existence and to have

communication with one another regarding issues of mutual concern. The plaintiffs would have

the court believe they have "proprietary individuals" which they seek to keep separated from any

shareholder dissent and keep separated from knowing of each others existence and knowing the

background of the corporations who file Regulatory filings with the SEC, which by their nature

are public documents. Especially wherein those PUBLIC documents filed with the SEC and

other regulatory bodies are PUBLIC in their very nature, and wherein here the plaintiffs

PUBLICLY state that various US Federal Resources have supposedly ENDORSED the products

and companies which they solicit investment capital. The very use of US Government SEALS,

Logos, and names to the Armed Forces, Agencies, Bureaus, Commissions, Departments,

Laboratories gives rise to a PUBLIC issue open for PUBLIC DEBATE. The plaintiff's lawsuit

(petition) even as amended screams SLAPP as a Strategic Lawsuit Against Public Participation.

The believed incorrectness and denial of the allegation by the plaintiffs aside, the

plaintiffs do not enjoy a right to sue based on the public questioning of the prima facie evidence

that appears on Regulation D filings or within public disclosure documents. To allow the

litigation of the plaintiffs to proceed is in direct contravention to the rights of shareholders and

the public at large to have meaningful public debate as to the legality of the claims of the

plaintiffs themselves. When here the plaintiffs themselves hold licenses to practice a specific

form of investment management and publicly declare to have conflicts of interest and seats on

boards of companies which are alleged to not be properly formed, and have "significant equity

interest" holders who dissent to the legality of the organization of via "smurfing" in SHORT

Form Mergers. Nor does it provide the means for the plaintiffs to sue for "defamation" when

their allegation involves questions as to "irregularities" or the possible existence of a

PROTECTED CLASS of Persons specifically that of a "whistleblower", and even more so when the Plaintiff's in their once in a course of litigation amendment add the words "working with the government", as if to say that a whistleblower or as written multiple have no right to work with the government.   The existence in the very documents they themselves have filed under the penalties of perjury and that they themselves sign stating they have conflicts of interest with each other and to the company listed on Regulation D filings, which obviously and evidently has materially misleading and false information contained within the document.  Information which screams abnormalities with the claims of the plaintiffs themselves, demonstrates clearly via proof in the positive that there exists BOTH irregularities and materially false and misleading information which is of PUBLIC concern and therefore entitled to PUBLIC Debate.  The Strategic Lawsuit Against Public Participation as the state petition well demonstrates the plaintiffs willingness to follow Craig A. Brand's school of thought with regards to judicial abuse demonstrates clearly why the plaintiff's lawsuit must as a matter of law be dismissed without the right for leave to amend.

The Plaintiff's themselves admit to receiving compensation based upon sales of stock, to a company which has filed a Regulation D, filing on 11 November 2020, a document which contains materially false and misleading information.  It is even more serious consequence of public concern when the document states its first sale being conducted 27 October 2020 and the plaintiff himself Chad Mitchell Koehn, did not retroactively resign his "brokers" license until 30 October 2020.   Especially here wherein the Regulation D, filed for Anthem Holdings Company is replete with multiple materially false statements, filed incorrectly on a company alleged to have been illegally organized under the laws of other States, namely NEVADA, Texas and

Delaware.   PUBLIC concern is established when licensed persons and companies publicly

disclose information which "significant equity interest" holders in the underlying companies

which the plaintiffs claim conflicts of interest, seek open public debate with fellow shareholders,

ESPECIALLY when the company and the plaintiff's make claims which are wild, outlandish and

certainly rises to question the mental sanity of the plaintiffs themselves, when they claim US

Federal contracts, Endorsements, and even have the audacity to use SEALS, Logos and names of

United States Federal resources, both stating and implying partnerships against Federal and State

Law, where no partnership, or claim can exist nor use of the SEALS and Logos of US Federal

Resources, by any company in any circumstance "whatsoever" according to law.

Plaintiff's even go as far as to allege the defendant stated:  "that there was a

whistleblower at UCM working with the government, implying that UCM is engaging in illegal

activity."  First a whistleblower's existence and/or report does not necessarily imply illegal

activity, a whistleblower report is made by an individual who believes something to not be in

compliance with the law, OR "immoral" or "unsafe", not necessarily illegal as in criminal.   Not

all "whistleblowers" report criminal conduct, and no person who uses the term "whistleblower"

believes that the existence of "whistle-blower" "impl[ies] illegal activity".   Secondly, an

individual working with the government is protected, under a host of whistleblower protection

laws.  Thirdly, a person working with the government as an informant, has protections.  Certainly

shareholders, especially "significant equity interest" holders of the stock in companies should as

a matter of right, and a matter of PUBLIC DEBATE have and enjoy the right to have open and

free public discussions relating to companies in which they are invested, and inwhich market

themselves as having government contracts and regularly use US Federal Resources like the

SEALS, Logos and Names to US Federal and even States to imply partnerships, contracts and working relationships. To do otherwise and prevent stockholders or shareholders from communicating is against the right of public participation. The lawsuit (petition) as issued and RE-amended, as they plaintiff's have done now in their "once in a course" revision of the litigation, the plaintiffs added the statement "working with the government" and "proprietary individuals", both demonstrate clearly that the plaintiffs KNOW, their lawsuit (petition) is groundless and does not warrant relief they seek, other than as a weapon against public participation in areas of debate regarding materially false and misleading information which rises to that of "securities fraud" not simply securities irregularities. The implication of the plaintiffs that they seek to use the litigation as filed as a harassment, INTIMIDATION, including RETALIATION against the defendant and any person who their paranoia in mens rea of guilty mind believe could be "working with the government", or has information that is worthy of blowing the whistle as a whistleblower, on the substantive issues already raised and appearing in the docket including without limitation the certain "irregularities" (abnormalities) as well articulated in the request for Writ of Mandamus as filed by the defendant here, having discovered information in public documents through the course of the very litigation at bar, demonstrates clearly that the plaintiffs fail to provide prima facie evidence or facts warranting the relief they seek. The entire litigation by the plaintiffs is a "fishing expedition" disguised as litigation to harass, intimidate, retaliate and be used as a weapon against shareholders, stakeholders, "significant equity interest" holders, whistleblowers, in a vast number of investment vehicles. The actions of the plaintiff cumulatively are against the interests of the public at large, the government and are certainly strategic, indicating only one conclusion that the lawsuit as written

and issued, especially in the plaintiff's once a course revision, **dictates the litigation is frivolous and made Strategically as a Lawsuit Against Public Participation.** Worse yet the litigation as issued takes direct aim at "securities irregularities", the outing of the identity of a "whistleblower", the outing of the identity of a person allegedly working with the government, the allegation that statements of opinion or hearsay are some how defamatory enough to give rise to litigation in a fashion allowing for the litigation "fishing expedition" launched by the plaintiffs, which has already had its intended negative effects scaring any other shareholder, stakeholder, and the public at large from PUBLIC debate regarding their wild claims.

The Pro Se defendant having shown clearly and convincingly by the nature of the plaintiffs suit and the allegations as alleged which have been denied, even if they were not denied as they have been, demonstrate clear error by the plaintiffs in organizing a frivolous litigation aimed at preventing public participation concerning investors investment in the sale of securities made by the plaintiffs themselves in direct contravention and certain willful materially false statements made on the very government documents and regulatory forms, they themselves, have filed under the penalties of perjury and under oath and affirmation.

The Pro Se defendant's motion herein to strike the claims of the plaintiffs is made for cause and further made that the claims as presented are certain direct attacks against investors, shareholders and others concerned including members of the PUBLIC. Members of the Public must as a matter of law be protected against STRATEGIC LAWSUITS AGAINST PUBLIC

PARTICIPATION, used as a means of INTIMIDATION, HARASSMENT in order to stifle public debate and discussions on the nature of the claims, made by the plaintiffs in their sale of securities. The Plaintiffs themselves directly contradict their own publicly filed statements on securities documents they themselves have issued. The motion herein to dismiss the litigation as a SLAPP lawsuit, is the only lawful and correct and only course of action given the outlandish allegations as pleaded to by the plaintiffs. Whether as a motion to dismiss or motion to strike in doing so the Pro Se defendant makes a motion therefore to "strike a claim(s) that is in response to "a party's exercise of the right of free speech, right to petition or right of association." Kan. Stat. Ann. § 60-5320(d) (2019). The US constitution also protects citizens in their right to assembly and to free speech, especially wherein speech is truthful, for instance the docket already demonstrates clearly where "securities irregularities" (abnormalities) exist, and even provides proof in the positive of materially false and misleading statements filed on US Securities and Exchange Commission documents.

"Once the defendant shows that the claim is based on one of these constitutional rights, the burden shifts to the plaintiff "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." The plaintiffs cannot present any evidence to support a claim that "securities irregularities" do not exist, as proof positive of abnormalities in filings already exists on the docket, and the plaintiffs have already demonstrated via mens rea of guilty the removal of conflicts of interest from their disclosure documents during the course of the litigation at bar.

The anti-retaliation provision of the AMLA affords robust protection to whistleblowers disclosing **money laundering,** but it does not apply to employees at credit unions and FDIC-insured depository institutions.

If a provision in an employment agreement or severance agreement bars a person from reporting information to the SEC, that gag clause is unlawful and unenforceable. In particular, Rule 21F-17 prohibits companies from using gag clauses in agreements or policies to prevent whistleblowers from providing information to the SEC:

> "No person may take any action to impede an individual from communicating directly with the Commission staff about a **possible** **securities law violation,** including enforcing, or threatening to enforce, a confidentiality agreement . . . with respect to such communications."

The plaintiff's entire action ais as stated a SLAPP lawsuit designed to deter any person from speaking **"about a possible securities law violation" [EMPHASIS ADDED].** In addition to being an obvious attempt to deter any "whistleblower" or informant from "working with the government", or speaking opinions on securities sold, offered, or the claims relating to those securities, for example claims to have US government contracts, use of US Federal Resource SEALS, LOGOS and names in contravention of US law; the plaintiffs entire litigation is aimed at a person who has previously made protected reports regarding the underlying companies which are alleged to have been illegally "smurfed" into a holding company, via "short-form" mergers without shareholder voting. The plaintiff's actions are in direct contravention to the Regulation D securities filing made and then promulgated by the plaintiffs collectively who have

publicly declared they have conflicts of interest between each other, and was signed by Chad M. Koehn on behalf of himself and his co-plaintiff, as both having conflicts of interest with each other and the third party Anthem Holdings Company.  This demonstrates clearly with the preponderance of the evidence that IF there is or as stated by the allegation of the plaintiffs "was" a whistleblower or other type of informant "working with the government", that person's identity would be protected as a matter of law.  The attempts by the plaintiff's in their incongruous lawsuit to prevent cooperation between shareholders and law enforcement is a petition obvious and evident to the reasoned person the plaintiff's seek to out the identity of any person who is a "whistleblower" or "informant" or perhaps multiple as written by the plaintiffs.

A shareholder, especially a "significant equity interest" holder, has the unalienable right and duty to share with others similarly situated in investments they mutually are invested in.   It is not without reason that the claims of the plaintiffs are actually mis-stated as claims against the pro se defendant, when in fact may have been statements and claims by a third party, not attached and not sued.  As the plaintiff's seek to attack the weakest person in their grand fishing expedition where they seek to discover information which may or may not even exist regarding who or more specifically what Federal, and/or State regulators and law enforcement or elected officials know about their series of different investment vehicles, they publicly disclose as having direct conflicts with each other and which they directly and materially have misrepresented publicly.  It is the RIGHT of the People to be free in their association, this includes association as shareholders in companies, as investors, as interested tax payers in the wild and outlandish claims of the plaintiffs to have government partnerships and contracts. Especially wherein they are jointly shareholders within the same entities, although as herein

entities which are not governed by the State of Kansas, nor located in the State of Kansas, even as foreign registered organizations. Regardless of the public display as to the "nerve center" as formally complained and requested in Writ of Mandamus before the Court, regarding information discovered in the course of litigation. SLAPP or Strategic Lawsuits Against Public Participation are becoming increasingly common in the american judicial system, especially their use by attorneys, who publicly commit self defamation claiming they are "shyster"(s), and that their clients are "bad guys" wherein here Craig Alan Brand has publicly laid out his "blueprint" for creation of SLAPP lawsuits against weaker members of society in order to protect the "wealthy" "insane", thus scaring any other would be whistleblower from cooperating with the government or shareholders sharing information with each other or the public at large:

> "...**wham, you are in court and the accused must go through a long, lengthy, tiring, stressful and expensive process merely to prove his or her innocence.** In spite of what you have read about our system of justice, we are all guilty until proven innocent, and we are all innocent until we run out of money… **people wind up paying some form of legal extortion just to get out of the drama.** The **bad guys and their shyster lawyers know it.**" id page 97 book: "I don't Care What Mom Says: LIFE SUCKS" by Craig A. Brand, ESQ.

**Lawsuits filed with the intent to punish or dissuade employees from exercising their statutory rights are a well- established form of adverse action.** *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 531 (2002) (Finding that a lawsuit that was both objectively baseless and subjectively motivated by an unlawful purpose could violate the National Labor Relations Act's prohibition on retaliation); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472

(S.D.N.Y. 2008) ("Courts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions."); *Spencer v. Int'l Shoppes, Inc.*, 902 F. Supp. 2d 287, 299 (E.D.N.Y. 2012) (Under Title VII, the filing of a lawsuit with a retaliatory motive constitutes adverse action).

Upon filing a motion to strike, for SLAPP litigation: **"all discovery, motions or other pending hearings shall be stayed."** § 60-5320(e)(2). However, the court may allow limited discovery relevant to the motion to strike. § 60-5320(e)(1). If the court denies the motion to strike, **the defendant may file an immediate appeal.** § 60-5320(f).   Wherein here the defendant therefore would respectfully once again request a Motion to STAY the proceedings pending appeal if any adverse finding in regards to this lawful and certainly well supported motion to Strike and Dismiss based upon the obvious and evident SLAPP (Strategic Lawsuit Against Public Participation) as filed by the plaintiffs.  For the obvious and evident purposes to engage in an extended "fishing expedition" through abuses of discovery, in order to out the identity of a "whistleblower", which they use in the past tense, and/or any other type of informant "working with the government".

Plaintiff's First Amended Complaint defamation suffers from defects and as such no relief can be granted.  Plaintiff's complaint fails to identify any third-party or specific person(s) to whom the alleged defamatory statements <u>were made, when they were made, whether they were oral or written, and the manner in which the specific statement was intended to damage</u> either Mr. Koehn or United Capital Management of Kansas Inc. reputations or interfere with their business.   Kansas does not differentiate between defamation per se and defamation per quod. *Polson v. Davis, (10th Cir. 1990).*

Plaintiff's have failed to allege sufficient ultimate facts to link the alleged defamatory statements to specific dates, places, individuals resulting in damages they claim to have suffered. Therefore, Count I and II of the Plaintiff's First Amended Complaint alleging defamation and tortious interference in business **must be dismissed for failure to state a cause of action upon which relief may be granted.** The Court should send a clear message to the plaintiff's that their form of judicial abuses in the filing of SLAPP litigation shall not be tolerated by the Court.

Nowhere in the Plaintiff's First Amended Complaint does Mr. Koehn or United Capital Management of Kansas Inc. identify the persons or entities who they purport to be prospective or actual clients, nor do they allege they were reasonably certain to have obtained the business nor do they allege they have lost business, in fact the plaintiffs merely offer a conclusory statement, which is not to the legal standards, enabling the plaintiff's to seek the relief they have stated. The Plaintiffs as is obvious have filed the malicious incongruous state petition as a SLAPP litigation meant to harass, annoy, and certainly intimidate both the pro se defendant and other concerned citizens from speaking out regarding "securities irregularities" which the plaintiff's complaint, yet the docket of the record clearly demonstrates a multitude of "abnormalities" in the securities filings, misleading statements of the plaintiffs. The US Constitution is inviolate as to the rights of the people to be free in their choice of assembly, association, speech, and to have open discussions on areas of public concern. The plaintiff's must not be rewarded with discovery or any other relief they seek in order to continue their campaign of harassment and INTIMIDATION in violation of Civil and Criminal Statutes and Codes, as they attempt to stifle public debate and generally violate BOTH the Kansas and US Constitutions.

As a result, Plaintiff's fail to state a cause of action of tortious interference with potential business, and Count II of their First Amended Complaint must be dismissed as a matter of law. Now leaving the Plaintiff's First Amended Complaint deficient of any claims upon which relief can be granted and thus mandating that the Plaintiff's complaint (petition) be dismissed with prejudice in its entirety.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

This MOTION to dismiss based on the Anti-SLAPP suit of the Plaintiffs and requesting this motion, notice and all other filings as in all previously filed motions and requests, responses, ojections, notices and/or any pleadings whatsoever the Defendant does not waive and reserves all rights as to any available defenses it may assert against the petition.   And so makes this appearance together with all previous filings now before the Court, without voluntarily or involuntarily submitting to the jurisdiction of this Court, as with this and all prior motions and filings are made via "special appearance", as well stated in the "Notice of Removal" in paper 1, filed on 1 Feburary 2022, removing the malicious, frivolous and incongruous petition to this US Federal Court for the district of Kansas.

The multiplicity of weakly pleaded counts by the plaintiffs is demonstrative of a mere fishing expedition, to attempt to unlock the doors of discovery to conduct harassment and

furtherance of their judicial abuses, which Craig Brand well lays out in his book on how to destroy other people through such things as the SLAPP litigation the plaintiffs have filed.

Upon filing a motion to strike, for SLAPP litigation: **"all discovery, motions or other pending hearings shall be stayed."** § 60-5320(e)(2). However, the court may allow limited discovery relevant to the motion to strike. § 60-5320(e)(1). If the court denies the motion to strike, **the defendant may file an immediate appeal.** § 60-5320(f).

WHEREIN here the pro se defendant does so herein make request for STAY pending interlocutory appeal and bifurcation of appeal to either the District Court under Rule 72 and/or 10th Circuit Court of Appeals and the Federal Court of Claims, with Rule 22 Motion before the United States Supreme Court, as SLAPP litigations and the abuses of the American Judiciary by the Plaintiff's cannot be tolerated in light of the US Constitution.

Respectfully Submitted, this 1st day of July 2022.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn. To the extent any communication to the counsel of the plaintiffs NOT be communicated to directly or indirectly the person of CHAD MITCHELL KOEHN; Nothing contained herein or hereby shall be considered nor availment hereof any notice or request to communicate in any manner or nature whatsoever with the person of CHAD MITCHELL KOEHN, and/or any of the aliases used by CHAD MITCHELL KOEHN.

Respectfully Submitted, this 1st day of June 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com