## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD M. KOEHN**<br><br>                    Plaintiffs,<br><br>        v.<br>Michael Nelson<br><br>                Defendant ;    PRO-Se. | <mark>**DOCKET NO.:**<br>**5:22-CV-04008-JWB-GEB**</mark><br><u>**CIVIL ACTION**</u><br><br>**Motion to Disqualify Counsel:**<br>**pro hac vice**<br>**CRAIG ALAN BRAND**<br><br>**[Jury Trial Demanded]** |

<u>Defendant, makes "SPECIAL & LIMITED APPEARANCE"</u> here and now for the purposes of filing **Motion to Disqualify Counsel**, Craig Alan Brand, currently appearing pro hac vice. Defendant so herein now alleges and states, the following regarding Disqualification of Attorney Craig Alan Brand for cause:

This motion comes before the Court after the pro se defendant has according to the rules conferred with opposing Counsel on multiple dates regarding BOTH the behavior at bar and extra judicial of purported Attorney Craig Alan Brand, AND due to direct cause regarding Craig Alan Brand's multiple conflicting representations of individuals and a myriad array of corporations involved in these series of disputes.

This motion for Disqualification of Counsel is well founded in the Federal Rules of Civil Procedure, Local Rules of this Court, the Rules of Professional Conduct and the pillars of professionalism which the Court has stated are coveted by this Court.

.     **"A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone. . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning**

the ethical propriety of a lawyer's representation in a given case.” *Emle Indus. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973).* “Good faith is generally considered irrelevant in evaluating allegedly improper conduct pursuant to a motion to disqualify counsel.” *See, e.g., E.F. Hutton & Co. v. Brown, 305 F. Supp. 371, 400 (S.D. Tex. 1969); T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265, 271 (S.D.N.Y. 1953).*

     **“The paramount concern must be to preserve public trust** [EMPHASIS ADDED] in the scrupulous administration of justice and the integrity of the bar…The important right to counsel of one's choice **must yield to ethical considerations that affect the fundamental principles of our judicial process.”** *Kennedy v. Eldridge, (2011)*

     Simultaneous Conflicting Representations by Craig Brand, all at issue here, all with conflicts to each other and with pecuniary gain to Brand on multiple fronts as a shareholder, crypto currency holder, only human shareholder to one corporation Hera Software Development Inc. (where Chad Koehn was listed as a Board member and director, until 72 hours AFTER the First Amended Counter and Cross Complaint demonstrating mens rea of guilt and Brand using the proceedings here to ferret out information in SLAPP fashion to create defenses in cases involving his multitude of dual representations:

1. CHAD MITCHELL KOEHN

2. Hera Software Development Inc. aka HeraSoft

3. United Capital Insurance LLC

4. UCM Advisors LLC

5. Red Neck High Tech Yacht Fund LP

6. United Capital Management of Kansas Inc. and employees

7. Anthem Vault Inc.

8.  Independence COIN

9.  Anthem Gold Inc.

10. AG Herc Inc.

11. Hercules LLC

12. Anthem Station

13. Anthem Hayek LLC

14. Lunargistics

15. Anthem Bunker LLC

16. Anthem Holdings Company

17. Hercules Crypto Currency Stock COIN

18. HERC ICO (Initial Coin Offering) and existing crypto graphic contract

19. Cynthia D. French - Blanchard

20. AHCRE LLC

21. Hayek Metals

22. HeraLabs

23. Anthem Hayek Blanchard

24. Hayek Gold

25. Ant Holdings

26. AmagiMetals

27. Hercules SECZ

28. Cooper H. Collins

29. Mark H. Heatwole

30. Logan R. Golema

Each of the above 30 listed representations have conflicts with one another, **Craig Brand cannot represent parties adverse to each other**, he cannot keep separate each parties rights and in his representation of a number of the corporations, he himself is also listed as a shareholder, and defendant Nelson is a "significant equity interest" holder therein as well, therefore he has dual agency for personal pecuniary gain. This combined with the fact he proclaims to the world he has "Championed the art of disinformation" and he Craig A. Brand "intentionally provides … false information"; as a purported officer of the Court, how are any of the parties to believe anything that Craig Brand says, any argument he makes, any statement regarding any of the conflicting representations? Especially as Craig A. Brand proclaims to the world "he [Craig Brand] intentionally provides people with false information".

It is additionally important for the Court to understand the dynamics of the HERC crypto currency stock COIN emanating from the contested as illegal ICO (Initial Coin Offering) and the promises and statements made therein the investment placement memorandum promulgated.

Brand's representation of "Hercules", and various companies connected to the HERC crypto currency, and thus also HERC crypto currency itself, also puts at risk not only the pro se defendant and counter-plaintiff but also **the Court must be concerned with the more than 14,500 INVESTOR addresses**. Combined with Brand's dual representation of Hera Software Development Inc. (aka Herasoft) which now claims the formerly sold as decentralized public ware (software) key COIN, of the HERC crypto currency stock COIN, is "proprietary protocol" of HeraSoft, which is also represented by Brand.

The stock COIN, HERC as a crypto currency cannot have investors in the stock COIN as a crypto currency, whilst simultaneously no publicly available software and then claim it is also "proprietary" and non-available to the public, while also raising money via SEC regulatory

filings for Anthem Holding(s) Company, another Craig A. Brand representation, which is stated

by Chad M. Koehn to have a conflict between Anthem Holding(s) Company and United Capital

Management of Kansas Inc. and then Craig Brand represents Hera Software Development Inc.

which the Anthem Holding(s) Company regulatory D filings, misappropriated the funds from

Chad Koehn via diversion to fund Hera Software Development Inc.   What of the investors in

HERC crypto currency stock COIN, or those in Anthem Vault Inc. and Anthem Gold which all

intellectual property was created in NEVADA, where Craig Brand continues in representation in

NEVADA, representing Anthem Vault Inc. for final appeal presumably to the NEVADA

SUPREME COURT, while not being a member of the NEVADA bar association but having

already appeared on behalf of Anthem Vault Inc. and filed appeals on behalf of Anthem Vault

Inc. where Brand now presumably is appealing to the NEVADA SUPREME COURT, though not

appearing pro hac vice nor as a member of any bar association other than the purported

membership he had in good standing a certificate issued to in February of 2022.

**The Fundamental right to fairness in proceedings must be held above all else in**

**order for the general populace to have faith in the impartiality of the judiciary.** *Pierson v.*

*Ray, 386 U.S. 547, 554 (1967)*  If errors are committed, the proper remedy is appeal (emphasis

added); *Pulliam v. Allen, 466 U.S. 522 (1984)*   Thus the pro se defendant shall seek appeal if this

matter is to continue at all in light of the numerous motions to dismiss, based on cause regarding

the plaintiffs obvious SLAPP litigation they have filed frivolously to harass, and further

antagonize and cause multiple simultaneous legal entanglements, where they laid in wait nearly a

year prior to attempting any service of process at all.  Lining up there many SLAPP suits

together in concert with the corporations Brand is a shareholder and represents conflicts.

The investors in Anthem Vault Inc. are being defrauded through this myriad of companies all which Craig Brand is claiming and appearing in various roles as a personal investor, a shareholder, a stock coin holder, and as the counsel for each entity and individual person. The pro se defendant and counter-plaintiff is an investor, and so stated as a "significant equity interest" holder who is unfairly disadvantaged in being a former member of the Board of Directors of Anthem Vault Inc., the creator of the programming and intellectual property at dispute, an investor and "significant equity interest" holder in all the companies, which are continually formed dragging intellectual property to more and more jurisdictions and are all also represented by Craig Brand.

**Chad M. Koehn and United Capital Management of Kansas Inc, each have conflicts with each other and Anthem Holding(s) Company, yet Craig Brand represents all these parties as well.** Who is to represent the corporate interests which are inclusive of the pro se defendant and counter-plaintiff who is a "significant equity interest" shareholder, and as defined by law owning greater than 10% of all classes of stock in those underlying companies? **Craig Brand's representation here has so many conflicts he cannot possibly provide fair representation and respect the canons of ethics, fiduciary responsibility, to so many differing investor, employee, director, officers and shareholder interests.**

Chad Koehn and UCM cannot receive fair representation nor can Nelson, as a "significant equity interest" holder in the companies and crypto currencies stock COINS, nor the **more than 14,500 INVESTOR addresses to the HERC crypto currency COIN,** especially now where Craig A. Brand also represents the holding company Anthem Holding(s) Company and Hera Software Development Inc. (HeraSoft) and the investors therein inclusive of Koehn, Nelson and presumably UCM, and/or UCM employees, directors, representatives and officers

and Craig Brand himself holding Coins and as a minority shareholder, creates pecuniary gain issues of ethics and confidentiality of information to each of the companies, which in the end in order for Koehn and UCM to mount any defense they inevitably conflict with the other representations of Craig Brand to each of the companies and then the other individuals therein as officers, directors and other shareholders.

**"Concern for the integrity of the judicial system is of paramount importance to the court."** [Emphasis Added] *Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. 1975)* (preservation of public trust paramount); *Emle Indus. v. Patentex, Inc., (2d Cir. 1973)* **(court's duty owed to the public as well as to the parties).**

The court explicitly recognized its duty to protect the public interest by exercising its discretionary powers **"to insure that nothing, not even the appearance of impropriety, is permitted to tarnish our judicial process.**" *Emle 478 F.2d at 575.* **"considerations of public policy, no less than the client's interests"**. **An attorney must not only fulfill his ethical responsibilities to his client, but must also avoid conduct potentially damaging to his profession. Cannon 4.**

**As Craig Alan Brand publicly declares to the world he (Craig Brand) "has championed the art of disinformation" and he (Craig Brand) goes on to exclaim to the world he (Craig Brand) "intentionally provides people with false information".** It is the ethical integrity of Craig Brand which the Court must now turn its attention. An attorney who publicly declares themselves to have "championed the art of disinformation" and publicly states they "intentionally provide people with false information", screams violations to the Rules of Professional Conduct, and brings into question all which that **attorney does in their**

**representation at Bar and in other affairs.** Therefore bringing tremendous questions as to fairness and due process in proceedings before the Court. As if it is not bad enough that Craig A. Brand declares publicly to **"intentionally provide people with false information",** Brand also goes on to publicly declare that <u>**"Lady Justice is Blind. Blind to Justice"**</u> <u>and even brings</u> <u>disgrace upon this Court by declaring that</u> **"Lady Justice is "blind to justice" and "susceptible" to "corruption",** Brand's actions and statements bring disrepute and disdain upon the Judiciary and the practice of law, brining into question all matters before the Court which Mr. Craig A. Brand appears as counsel. "At its discretion, the Court has the power to disqualify counsel for violations of professional ethics." *Biocore Med. Tech., Inc. v. Khosrowshahi, 181 F.R.D. 660, 664 (D. Kan. 1998) (citing E.E.O.C. v. Orson H. Gygi Co., Inc., 749 F.2d 620, 621 (10th Cir.1984); Brown Mackie Coll. v. Graham, 1989 WL 48478 (D. Kan. Apr. 25, 1989)).* **As the Court should do now, preventing a miscarriage of justice and eliminating future complaints and certain mistrials having the matters before the bar tainted by the representation of Brand.**

"At its discretion, the Court has the power to disqualify counsel for violations of professional ethics." *Biocore Med. Tech., Inc. v. Khosrowshahi, 181 F.R.D. 660, 664 (D. Kan. 1998) (citing E.E.O.C. v. Orson H. Gygi Co., Inc., 749 F.2d 620, 621 (10th Cir.1984);* ***Brown Mackie Coll. v. Graham, 1989 WL 48478 (D. Kan. Apr. 25, 1989))***

Fed. R. Civ. P. 1 mandates the "just, speedy, and inexpensive" determination of all civil cases, this is an impossibility having the many multitude of conflicting representations of Brand and Mr. Brand's public statements that he [Craig Alan Brand] "intentionally provides people with false information", the Court here as no Court can now do, take anything stated by the purported Officer of the Court Craig A. Brand as to be true, as Craig Brand declares he

**"intentionally provides people with false information."** Additionally, Craig Brand's public declarations go on to call into question the Judiciary as a whole wherein Brand publicly declares a many multitude of statements all of which are not just "potentially damaging to his profession" but actually does "tarnish our judicial process". Brand goes on to exclaim: <u>"Lady Justice is not only blind but corrupt and susceptible to biased pressures. The legal system, different than a justice system, works best for the wrongdoers, liars, extortionists, blackmailers, the wealthy, criminals and the insane." id page 98 of his book.</u>

An attorney is supposedly bound by special rules referred to as the "Rules of Professional Conduct", which in part bestow responsibilities upon attorneys to be professional and specifically call for attorneys to be **"TRUTHFUL in STATEMENTS TO OTHERS"**, certainly Craig A. Brand's public exclamation that he [Craig Alan Brand] "intentionally provides people with false information", calls into question how anything Brand says either at bar, before the Court, or in public in general can be believed as true as he states he "intentionally provides people with false information". The role of the Court's in protecting the public's perception of fairness and protecting the Court against actions and statements which "tarnishes" the role of the Courts in society and the public's interest in fair and equal judicial practice is further called into question with Craig Brand's statements: <u>"Lady Justice is truly blind, blind to justice." i</u>d. Page 26; when an attorney states that the Court (Lady Justice) is "corrupt", this calls disfavor upon the Courts in the eyes of the general public. Craig Brand's statement: "Lady Justice is not only blind but corrupt and susceptible to biased pressures.", is exactly the sort of conduct which Craig Brand has brought upon the Court in his representation thus far, as he himself has sought to **"sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the**

**[trier of fact] or unfairly hampering the presentation of the opposing party's claim or defense."** *Cox, 706 So. 2d at 46 (quoting Aoude, 892 F. 2d at 1118)*

It is the conduct of attorneys both at bar and extra judicially which should concern the Court as the public in society must look to the Courts, for fairness, due process and balance of power of the government; when as here purported attorney Craig A. Brand has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially to adjudicate a matter…" and Craig Brand's own statements in writing that he "intentionally provides people with false information", brings into question all the proceedings of the Court, and every instance where Craig Brand appears before this Court in the representation of any of the many multitude of conflicting interests which he purports to represent all to the detriment of each of the conflicting parties and to the Court and its responsibilities of due process itself.

Given the fact that Craig Brand declares publicly to "intentionally provide false information to others" calls into question all proceedings at bar where Craig Brand is allowed to speak, thus calling into question the fairness of hearings and the imbued protections of due process of law, in that an attorney appearing at bar publicly declares a disdain for the very system of justice and search for truth which the US judicial system embodies. "A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process." *See A.B. v. Y.Z., 184 N.J. 599, 604 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003)*. The due process guarantee expressed in the 14th amendment to the United States Constitution requires assurance of fundamental fairness during legal proceedings. U.S. Const. amend. XIV, § 1. This includes the opportunity to be heard and requires "procedural safeguards including the right to cross-examine . . ." *Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005)*

A court's jurisdiction is limited by due process guarantees under the Fifth and Fourteenth Amendments to the Constitution, such as an opportunity for an impartial and complete hearing. Ignoring this fact, the Supreme Court has misconceived the problem by basing judicial immunity purely on statutory concerns and distorted readings of common law history. immunity itself—a judge-made doctrine—must be limited by due process, which is of constitutional dimension. The supremacy clause unquestionably nullifies even the most ancient of common law principles and even the most popular of state statutes to the extent they are inconsistent with due process. No matter what the federal government or its courts might wish to do, it must stay within the boundaries of the Constitution. The Fundamental right to fairness in proceedings must be held above all else in order for the general populace to have faith in the impartiality of the judiciary. *Pierson v. Ray, 386 U.S. 547, 554 (1967)* If errors are committed, the proper remedy is appeal (emphasis added); *Pulliam v. Allen, 466 U.S. 522 (1984)*

Craig Alan Brand has since his appearance in this matter demonstrated behavior which is unbecoming of a Court Officer or member of any bar association, as well witnessed by the presiding Jurist and certain as well laid out via proof in the positive concerning those behaviors even witnessed by the Chambers of the Presiding Jurist as articulated in Document 52, together with the exhibits made therewith, demonstrating clearly where Craig Brand attempted to mislead and misdirect both the opposing pro se party and the Chambers of the Presiding Jurist.

A disqualification motion poses a serious dilemma for a court.   At least 3 competing interests can be clearly recognized: the litigant's interest in freely selecting the counsel of his choice; the former and/or current client's interest in <u>preventing even inadvertent disclosure of confidential information acquired by the attorney</u>; and **the public interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice.** *See*

*Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975); Emle Indus. v. Patentex, Inc., 478 F.2d 562, 564-65 (2d Cir. 1973).*

<u>Disqualification examined</u>**: interlocutory appealability** of grants and denials of disqualifications; simultaneous representation of conflicting interests; subsequent representation of an interest adverse to that of a former client. The Court's admonition to **"avoid even the appearance of professional impropriety**." *Hull v. Celanese Corp., 513 F.2d 568 (2d Cir. 1975); Meyerhofer v. Empire Fire & Marine Ins. Co., 497 F.2d 1190 (2d Cir. 1974), cert. denied, 419 U.S. 998 (1975); General Motors Corp. v. City of New York, 501 F.2d 639 (2d Cir. 1974); Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800 (2d Cir. 1974) (en banc); Emle Indus. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). Handelman v. Weiss, 368 F. Supp. 258 (S.D.N.Y. 1973); Motor Mart, Inc. v. Saab Motors, Inc., 359 F. Supp. 156 (S.D.N.Y. 1973); Estate Theatres, Inc. v. Columbia Pictures Indus., 345 F. Supp. 93*

"The authority of a trial court to grant relief on a motion to disqualify counsel is based upon the court's broad supervisory powers over the general conduct of litigation." *See Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 888 (5th Cir.), cert. denied, 392 U.S. 928 (1968)* (inherent power of court to manage its own affairs necessarily includes authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it).

The disposition of a disqualification motion, though interlocutory with regard to the entire controversy, should be directly appealable as a final decision under section *1291. 28 U.S.C. § 1291 (1970)* gives the courts of appeals jurisdiction only over final decisions of the district courts; under the Supreme Court's collateral order off-shoot doctrine.  Interlocutory appeal of a collateral order was permitted in *Cohen v. Beneficial Industrial Loan Corp.* because it was a "final disposition of a claimed right which [was] not an ingredient of the cause of action

and [did] not require consideration with it".   Wherein here in the interests of justice the pro se

defendant shall seek appeal to each higher authority of the issues presenting themselves as such

that the continuation of Craig Brand as legal counsel pro hac vice, is to say there is no other

attorney more suited to the plaintiffs than the man orchestrating the many simultaneous legal

entanglements and who he himself exclaims publicly a great number of statements about how

**"The bad guys and their shyster lawyers know it"** in regards to how to destroy others through

the abuses and misuse of the American legal system, like the SLAPP suit here.

The Plaintiffs and Counter-defendants collectively claim Anthem Gold is spinoff of

Anthem Vault Inc. of NEVADA, and it is Anthem Vault Inc. which purchased AmagiMetals, a

purported DBA (Doing Business As) of Anthem Vault Inc. a NEVADA Corporation.   Yet,

Anthem Gold ran a securities placement that is neither registered nor licensed via a third party

foreign country website located in the UK and regulated under the FCA, in cooperation with the

SEC, wherein American Investors apparently were targeted and instructed by Brand's other

clients to wire US Funds to foreign numbered accounts in Luxembourg, where the funds and

crypto currencies were then funneled to the Grand Cayman Islands.   Those funds were used

apparently by NEVADA, based Anthem Vault Inc. employees, including payment of salaries to

the pro se defendant and counter-plaintiff and in creating a larger web of companies.   The claim

is that HERC crypto currency stock COIN, initial public coin offering was promulgated from

Grand Cayman Islands, via a Regulation D filing for Hercules SECZ, Hercules LLC in Puerto

Rico where addresses to mailbox stores in Puerto Rico are used on that Regulatory filing.

*See, e.g., People v. Shari*, 204 P.3d 453, 457 (distinguishing between duties to current

clients and to former clients); however, here Brand proposes he continues in simultaneous legal

representation against a host of different conflicting parties, wherein the common thread creating

increasing conflict is Brand's creation of conflicts and disputes for pecuniary gain.

*People v. Nozolino*, 298 P.3d 915, 919 (Colo. 2013) ("Disqualification of a party's chosen

attorney is an extreme remedy and is only appropriate **where required to preserve the integrity**

**and fairness of the judicial proceedings.")**

Certainly is clear there are many conflicting parties and conflicting interests, where Craig

Brand also has pecuniary gain in the outcome, and Chad M. Koehn has during the course of this

Federal Litigation to date made efforts to hide and conceal his involvement in both Anthem

Holdings Company and Hera Software Development Inc. the Court must at a minimum have

within the docket and thus a permanent waiver by Chad M. Koehn and UCM and each of the

other involved corporations such waivers to both protect the corporations, their confidentialities

and the underlying investors and thus public at large, certainly when there appears more than

14,500 crypto currency wallet addresses as INVESTORS to the HERC crypto currency stock

Coin created via Initial Coin Offering in a securities styled placement memorandum.

Despite the court's reversal and holding in Fleischer, in the 1973 case of Emle Industries

v. Patentex, Inc., the Second Circuit accepted an appeal from an order granting a motion to

disqualify, basing its jurisdiction on *§ 1291 under Cohen*. Ambiguity was further demonstrated

in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.; 496 F.2d 800 (2d Cir. 1974)*.

Following the denial of its motion to disqualify plaintiff's counsel, defendant Chrysler sought to

have the district court judge amend his order to include a section *1292(b)* statement that an

immediate appeal might "materially advance the termination of the litigation." Id. at 802.

Wherein here, the disqualification of Craig Alan Brand will absolutely lead materially to the

termination of litigation, as Craig Brand is even referenced by the Florida Department of Law Enforcement as the "partner in deception" in multiple arrest affidavits.

Craig Brand has also proffered testimony before the Court, prior to discussion on his pro hac vice admission that he is defending actions with the SEC and FINCEN (a division of US Treasury) presumably to do with J5 (Joint Global Tax Chiefs) investigations and the plethora of foreign tax evasion jurisdictions which Chad M. Koehn and UCM are affiliated, including without limitation Grand Cayman Islands, Liechtenstein, Luxembourg, Mauritius, Seychelles and the US Territory of Puerto Rico where Hercules LLC is located.

Frequently, a former client accuses the attorney of having "insider information" regarding the client that does not rise to the level of a client's confidence. Indeed, even if the attorney does not possess any direct information regarding the present lawsuit or transaction, the client may say that the attorney understands how the client thinks and acts. The attorney may know the client's bottom line for settlement or how the client prefers to approach litigation. This is often referred to as "playbook knowledge"—the attorney knows the client's paths and approaches.

<u>A screen is not enough to avoid the ramifications of an imputed conflict.</u>  *See People ex rel. Peters v. Dist. Ct.*, 951 P.2d 926, 930 (Colo. 1998).

[I]f the attorneys choose to employ a screen, it is important that it be erected before the involvement of the conflicted attorney in the new representation.  *See People v. Perez*, 201 P.3d 1220, 1246 n.11 (Colo. 2009)

Certainly as Craig Brand appears pro hac vice, without bar membership in any 10th Circuit bar association or to any other protection to the underlying investors to which he himself also maintains conflict of interest for self pecuniary gain in the outcome of the litigation here, there must be equal protection to each of the purported corporations and that of each of the challenged and thus affected investors who are by the very nature of the securities placement memorandums those both registered, unregistered, unreported, and unlicensed and those of the

14,500 plus wallet addresses INVESTORS, Nelson inclusive and that of the conflicting shareholders of the plethora of companies, both as merger-subs, members of boards of directors and former board of directors and that to Chad M. Koehn and UCM which declare publicly conflicts of interest to each other. Thus minimally requiring the providing notice of a potential circumstances to the legal malpractice insurer protecting the investors in each. Certainly given the behaviors and certain alleged "deceptions" by Brand thus far in the matter at bar grievance(s) and/or a variety of legal malpractice claims, have or certainly will be made. Additionally it is the perspective of fairness and not appearing evidence of impropriety by members of the public which should at all times be so avoided.

Nelson is a former member of the Board of Directors at Anthem Vault Inc., an investor and a former employee, with protections under Federal whistleblower statutes, stemming from actions involving Anthem Vault Inc., Anthem Gold and Hercules HERC crypto currency stock COIN Initial Coin Offering and its stock Coin placement memorandum.

HERC crypto currency stock COIN, has now more than 14,500 individual wallet addresses as INVESTORS therein the Crypto Currency Stock COIN, issued via Initial Coin Offering, and is publicly available as to traceability, and each of the just more than 15,000 transfers within the current iteration of the Crypto Currency Stock COIN, HERC

The disposition of a disqualification motion, though interlocutory with regard to the entire controversy, should be directly appealable as a final decision under section 1291. 28 U.S.C. § 1291 (1970) gives the courts of appeals jurisdiction only over final decisions of the district courts; under the Supreme Court's collateral order off-shoot doctrine. Interlocutory appeal of a collateral order was permitted in *Cohen v. Beneficial Industrial Loan Corp.* because it was a "final disposition of a claimed right which [was] not an ingredient of the

cause of action and [did] not require consideration with it". As it is here, the claimed right to a fair judicial process free from the obvious continual conflicting interests all represented by a single purported attorney, who exposes to the world he (Craig A. Brand) "intentionally provides people with false information"; the claimed right of the defendant and counter-plaintiff is to have his interests fairly and duly protected in the multitude of corporation towhich Mr. Nelson is a "significant equity interest" holder, and towhich Craig A. Brand is the "special counsel" representing those multitude of corporations, who now is representing minority shareholder interests at a detriment to other minority shareholders, whilst being in possession of protected and confidential information from Officers and majority shareholders, seeking as no Court has ever allowed an attorney to abuse their attorney client privilege for self pecuniary gain while disadvantaging the majority minority shareholders of the same conglomerate of corporations, formed in a contested "holding company" via a business combination merger, which is then sworn under oath and affirmation not to be a business combination merger on SEC documents, while specifically singling out specified shareholders wherein oppressive shareholder actions are taken by Brand in the denial of dividends and seeking to push out those singled out shareholders for Brand's personal pecuniary gain, against all interests of law, rule, statute, and certainly the Rules of Professional Conduct to which attorneys are sworn.

Craig Brand is neither a SEC licensed attorney, nor a member of the bar associations in Kansas, Nevada, Texas nor Delaware, thus his knowledge of the laws of each simply cannot be relied upon by the Court nor the parties, especially wherein fiduciary responsibilities still extend to that of the pro se defendant and counter-plaintiff in regards to Anthem Vault Inc. and thus

Anthem Holdings Company, all of which have publicly disclosed conflicts of interest with Chad M. Koehn who has a publicly disclosed conflict with UCM and Anthem Holdings Company

As the evidence proffered and currently at dispute within the matter well demonstrates those purchasers of the Initial Coin Offering (ICO) for HERC crypto currency stock COIN, are at direct odds with those stockholders in Anthem Holdings Company and the newly established Hera Software Development Inc. which Chad M. Koehn is publicly advertised as a member of the board of directors at all material times hereto in BOTH Anthem Holdings Company and publicly advertised as the same in Hera Software Development Inc.

Craig Brand is publicly advertised as a shareholder in Hercules and Hera Software Development Inc. while simultaneously the "Special Cyber and Legal Counsel" for "Herasoft / Hercules" and Chad M. Koehn at all material times is a member of the board of directors at HeraSoft and Anthem Holdings Company.

It is suggested it is a virtual impossibility to locate and identify each of the subs and investors to the HERC Crypto Currency Stock Coin, created from the Initial Coin Offering (ICO) and the fiduciary requirements of each of the programmers, board members and to that of each of the shareholders of the conflicting corporations, and that of Anthem Vault Inc. of NEVADA.

Craig Brand has as clients he has already represented Anthem and Cynthia Blanchard fiduciaries in most likely all of the aforementioned corporations, as individuals and in a variety of the aforementioned corporations who each have various responsibilities and fiduciary and otherwise to the investors and employees in each, wherein the employees have all been employed by Anthem Vault Inc.

WHEREFORE defendant and Counter-Plaintiff Michael Nelson, submits now given the aforementioned arguments, case law, the Federal Rules of Civil Procedure, the case

precedents, and well embodied within the Rules of Professional Conduct as well as even the Pillars of Professionalism which are said to be coveted by this very Court, that this Court must as a matter of fairness, equity, justice, case precedents, its own Local Rules the Federal Rules of Civil Procedure thus ipso facto laws of the US Congress, and under the Rules of Professional Conduct, disqualify Craig A. Brand from further representation of any party in the matter currently before the Court.

WHEREFORE Prayer for Relief: in the interests of Justice, the preservation of the Court's reputation in the eyes of the public and for the protection of the interests of all parties to the matter at bar this Court must now disqualify Craig Alan Brand from further representation of the parties in the matter at bar, having now properly before the Court this Motion to Disqualify Craig Alan Brand from representation of any party in the matter before the Court. The Memorandum of Law filed separately sets forth even further reasons and case precedents as well as expounding upon the Rules of Professional Conduct and the necessity for disqualification in light of the multitude of conflicting representations, interests and duties owed by Craig A. Brand to corporations which the defendant, appearing here pro se is a significant equity interest holder, thereby Craig A. Brand owes a duty to the corporations which the pro se defendant is an owner.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings

generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct.

L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

Respectfully Submitted, this 22nd day of July 2022.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn. Nothing contained herein or hereby shall be considered nor availment hereof any notice or request to communicate in any manner or nature whatsoever with the person of CHAD MITCHELL KOEHN, and/or any of the aliases used by CHAD MITCHELL KOEHN. IN NO way shape or form is the defendant suggesting nor inferring that any filing, pleading or notice be provided, shown or communicated in anyway to the person of Chad Mitchell Koehn.

Respectfully Submitted, this 22nd day of July 2022.



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com