# EXHIBIT

# "B"

# To Follow . . .

==========================================================================
*OBJECTION as to False statements made by Plaintiff's in the document titled:*
*"PLAINTIFF'S INITIAL DISCLOSURES"; Clear Violation of Rules of Professional*
*Conduct requiring TRUTHFULNESS in Statements to Others and Truthfulness and*
*Candor to the Court by Attorneys Licensed to Appear before the Court;  MOTION*
*FOR ORDER preventing further untruthfulness in filings*

## Memorandum of ESI (Electronically Stored Information) for Discovery:

## Cases:

Chad M. Koehn and United Capital Management of Kansas Inc. v. Michael Nelson

AND Cross and Counter Complaints Counter-Plaintiff Nelson v. Counter and Cross Defendants Chad Koehn and United Capital Managment of Kansas Inc. and Jane and John Does 1 - 15 and Doe Corporations 1 - 15

## Respectfully submitted for discussion.

## Submitted by: the Pro Se Defendant and Pro Se Counter-Plaintiff, nelson:

In preparation of the Conference and for discussions on the ESI (Electronically Stored Information) which shall constitute a large portion of the discovery herein this matter and each of the subsequent Federal and State Cases to be filed and proceeded with from this matter as the cases and disputes continue to grow on an accelerated basis based on the involvement of Craig Brand and the various conflicting interests and dozens of corporations in simultaneous representation and those continuing appeals to the NEVADA SUPREME COURT by brand representing a half a dozen entities to one of three merger subs of the disputed and contest Triangular Reverse Short-form mergers of the Anthem Holdings Company from which on the heels sprang Hera Software Development Inc. and towhich Chad Mitchell Koehn sits upon the boards of each and as a director of each with the conflicts to that of United Capital Management of Kansas Inc. and those of the 14,500 more than investors to the ICO (Initial Coin Offering) of the CRYPTO CURRENCY stock COIN known as HERC under said ticker with just more than 15,000 transactions thereto.

=======================================================================

ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions

ESI (Electronically Stored Information) discussion for conference and inclusion in the reports to be filed, this is submitted under good faith efforts by the pro se defendant and pro se counter-plaintiff, during the first week of June 2022, prior to the holding of any rule 26f conference:

This matter will involve voluminous productions of ESI (Electronically Stored Information). Plaintiff and Counter-defendant United Capital Management of Kansas Inc. (UCM) is regulated under both State and Federal Laws, with extensive disclosure requirements and extensive discoverable information from both corporate and personal electronic devices.

UCM has known about this litigation for some time, having waited nearly one year prior to any attempt at service of the state petition. As UCM had a duty prior to filing of litigation and certainly since litigation was filed to have "issuance of litigation holds" and "litigation notices", presumably under responsibilities in accordance with FRCP, Local Rules, Orders and under the Rules of Professional Conduct the attorneys in representation of UCM, had a duty ethically, morally and under law to issue said "litigation holds" and "litigation notices", company wide to each and every employee and through its client base, the number of clients which is required to be reported to Federal Authorities and is publicly disclosed, therefore UCM may not be able to assert otherwise as to the full and complete notification to its number of purported clients. UCM has referenced "clients" within their once in a course amended petition.

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
2

In accordance with conducting a fully informed rule 26(f) conference and due to the voluminous nature of the ESI both in possession of UCM, its employees and publicly disclosed number of clients, the duty of attorneys representing UCM was to make "issuance of litigation holds" and "litigation notices", said notices must have been issued either prior to litigation or immediately following the filing of their state petition in February of 2021. It is requested by the pro se defendant for production of copies of the "litigation holds" and "litigation notices" and all follow up litigation hold statements, processes and notices.

It is conceivable that ESI will include any and all electronically stored and/or transmitted information across both stationary and computer networks involving UCM, the location of this ESI is believed to include both personal electronic devices of employees, customers and those owned or otherwise controlled by UCM.

In order to eliminate the burdens upon UCM, its employees and its purported customers, it is proposed that UCM identify all computer systems, cellular phones, networks of cellular phones, phone numbers, email addresses, TLD's (Top Level Domains), OS (Operating Systems), internal IT managers and all external IT SaaS and vendors.

UCM should provide and so identify the following persons for examination of their personal electronic devices, computers, laptops, desktops, cellular phones, tablets, computer systems and phone systems; due to the self proclaimed large scale of UCM the custodians of the potentially relevant information, are vast and very including without limitation: .employees,

===========================================================================

consultants, family members, vendors, agents, affiliated companies, all companies which UCM executives have communication, board of director seats, directorships, during all times relevant from July 2017 through February 2021, and non-party custodians of ESI inclusive of all customer prospects, past customers and current customers given the time frame with which ESI will be sought, referenced herein above.

UCM will need to identify where custodians' potentially relevant ESI may be located, such
as computers, tablets, cell phones, e-mail accounts, cloud-based repositories, messaging applications, internal and external instant and delayed messaging platforms, social media platforms, phone systems and service providers.

It is necessary for the defendant to have access to via third party forensic analysis onsite copying of all ESI related to or in the possession, custody or control of UCM, its employees, vendors, contractors and customers with identification of all past and current customers.
Defendant believes potentially relevant ESI is not all in the possession, custody, or
control of a particular individual, but vary throughout many employees of UCM both in UCM equipment and the personal electronic equipment of UCM employees as used by them in course of business and in relation to the issues in the matter at bar.

Online or Cloud Databases are one example of such "non-custodial" ESI, which separate notices and direct productions will be necessary.  UCM maintains offices in more than half a dozens States, examination of each

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
4

office will be burdensome upon the defendant, therefore identification of the computer network and/or both extranet and ethernet utilized by UCM in order to adequately review and copy all relevant ESI is necessary. The defendant shall propose a non-invasive disk imaging copying protocol for all cellular devices of each UCM employee and shall separately seek similar copy of the cellular devices and computer systems of the selected customers which materially support UCM's claims as well as taking an nTH record sampling via an MD-5 Hash file randomized sampling for ESI examination of electronic devices of the provided complete current customer lists, as well as all previous customers in the date time frame as referenced herein above.

Since UCM is Federally regulated and must as a matter of law keep volumes of data, wire transfers, customer account information and all and any communications to customers must as matter of rule and law be provided to third parties prior to dissemination or within the time frames as required by rule and law after dissemination, in order to lessen the burdens upon UCM the defendant proposes UCM identify each of these regulatory authorities and disclosure documentation as to all customer communications which occurred during the time period above herein referenced.

UCM has had to by this stage determine their information storage framework and interview key custodians for a detailed view of what potentially relevant information exists and where and how it is stored, providing the same with regards to the names and contact information for each IT personnel within UCM, who will need to be examined and to provide information under Rule 30b(6), interrogatories and depositions.

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
5

Since UCM is a regulated entity it may not destroy data and information stored in its systems nor may the licensed persons who are in the employ of UCM make any destructions in the course of business, therefore UCM will need to provide to the defendant data-retention and disposal practices (in accordance with Statute, rule and law both under Federal regulations and any SRO or Self Regulatory Organization or body towhich UCM is required to maintain licenses or any employee of UCM is required to maintain licenses in the course of UCM's purported business and functions, including e-mail purging cycles (and rule and law Federal, State and SRO with which said purging is allowed), text-message retention settings, cell-phone backup practices, other automated processes (such as auto-deletion features in accordance with regulatory standards State, Federal and SRO). Defendant understands that UCM in accordance with litigation holds and notices must have as a matter of course mandated all purging and deletion or retention settings have been turned off since prior to the filing of the petition, and have since and continue to be suspended in regards to ESI.

As a regulated entity UCM has superior data sources, that are the most reasonably accessible pursuant to R. 26(b), as a Federally regulated entity UCM has back-ups/disaster-recovery systems, system logs, it may have deleted files, and requirements to maintain all hard-drives and other file formats from file fragments and ephemera, legacy databases, and so forth. All the back-ups, disaster recovery suites and cloud systems including those deletions if any and file fragments, ephemera, legacy databases will need to be discoverable by the defendant due to the claims of UCM and Chad Mitchell Koehn as well as those counter claims enumerated.

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
6

Publicly available information via blockchain, can be determined by the parties pursuant with blockchain explorers and crypto currencies and asset traceability in the number of transactions occurring on those public blockchains at issue and each of the contract iterations of the cryptographic crypto currencies and crypto assets in each chain and side chains to each for reference and authentication of the same.

In assistance with discovery and the voluminous ESI involved in this matter and its potential complexities the pro se defendant has learned it would have been the responsibility of a Federally regulated financial services entity in accordance with State, Federal and SRO rules, regulations and practices that litigation hold notice, notices must have been issued prior to filing of the state petition and have been in place ever since. Counsel for UCM is the same counsel who have filed the initiating state petition therefore the defendant does not foresee any excuse as to the litigation holds and litigation notices having been issued. The defendant will be requesting copies of each litigation hold, and each litigation notice together with the names, addresses, phone numbers and email addresses of each person (human) and each corporation, vendor and State, Federal and SRO to which litigation holds and notices have been duly issued in accordance with the professional responsibilities of each licensed person both for UCM and the bar licensed attorneys representing UCM.

Defendant and Counsel for UCM will have need to discuss the content, recipients, and processes used in the issuance of the mandated litigation holds and notices. The hold notices, issued must have been issued a multitude of times over the course of the nearly year prior to UCM seeking any

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
7

sort of attempt at service of the petition, those notices to be provided to the defendant with the persons and corporations who did receive the mandated notices and holds will no doubt list documents and the categories and sources of information to be preserved as well as the individuals responsible for the preservation within each of the noticed individuals and corporations both internally and externally as well as all employees both licensed and unlicensed of UCM. The litigation holds and notices must as a matter of rule and law and regulation have the sufficient factual detail to guide recipients' decision-making and actions, the defendant will use said information in the course of issuance of interrogatories and depositions as well as individual productions of ESI both corporate and personal for each licensed and those unlicensed current and former employees, and customers. Defendant submits in accordance with generally accepted practices, court ruling, orders, case precedents and each of the State, Federal and SRO requirements of UCM and those ethical and moral responsibilities under the Rules of Professional Conduct the counsel for UCM has had as a matter of law, rule and professional responsibility to issue follow up and on-going litigation hold and notices to all recipients in receipt thereof including without limitation all employees current and past ensuring the compliance as mandated responsibilities of the counsel of record for UCM and UCM compliance procedures and compliance practices according to State, Federal and SRO rules, laws, statutes and regulations inclusive without limitation.

=====================================

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
8

Defendant submits that counsel for UCM as a matter of the rules, and professional responsibilities in the issuance of its above herein referenced litigation holds and notices to each person and corporation as required part of their preservation efforts has maintained in accordance with SRO and governmental regulations each of the following, prior to and on an ongoing and regular basis since the filing of its state petition:

• Fact witnesses and records custodians, including UCM's IT (information technology) personnel, human resources personnel, compliance teams and officers, principals, all licensed persons, persons non-licensed who handle customer data and communications, third party vendors and affiliated corporations must have received litigation hold notices, the defendant believes in accordance with professional responsibilities and obligations.
• The defendant seeks the detail provided to each and the extent to which individuals were permitted to determine relevance.
• When and how often the updates and/or reissue of the hold notices occurred especially here where the plaintiffs did not attempt any form of service of the state petition for nearly one year.
Defendant seeks how often or frequently after new claims, defenses, issues and/or relevant facts arose and continue to arise that new litigation holds and notices have been issued and the relevant proof of the issuance of said litigation holds and notices.
• To ensure that departing employees' potentially relevant content both on work and personal devices is preserved the methods of preservation and location of disk imaging.
• To ensure that potentially relevant content is preserved before a device

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
9

such as a cellphone or computer is replaced where said disk images are stored and in the file formats those images are stored, receipts for any replaced devices, volume serial numbers, and relevant data recovery and systems storage the defendant seeks UCM as a regulated entity to provide. Defendant knows that in accordance with professional responsibilities and compliance responsibilities BOTH UCM and its counsel in order to substantially comply with ESI retention collection and routine backups must as a matter of rule, regulations, and law have been made with certification as to date and time with date and time stamps for each relevant data backup and disaster recovery backups of the data within UCM and its relevant vendors, and employees both current and past.

Defendant submits do to the self proclaimed large scope of UCM that UCM and its counsel has issued not only litigation holds and notices to employees, customers, vendors, carriers, family members, agents, but to a host of third-parties in the form of preservation requests and demands, both privately sent and certified to the same and made through court action due to the lengthy amount of time between filing of the petition and making of any attempted service of the petition.

Defendant believes again the involvement of pro hac vice counsel Craig Alan Brand to be of deep and grave concern, as Chad Mitchell Koehn serves as an investor, employee, director and board member of a number of underlying affiliated and owned entities.  The severe conflicts of interest which are prevalent in Craig Brand's dual representation of clients with competing interests and defenses presents a serious problem as to discovery and mandates that discovery is necessary of communications with counsel and by

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
10

and between the competing interests and conflicts of interest in the dual representation and employment of multiple legal entities.

In preparation for the Rule 26(f) conference, defendant has prepared the document about and below and is working to delivery an early Rule 34 Request for Production which this document substantially is believed to also comply and so said and make those requests for production from UCM of the information and personnel sought with regards to the extensive ESI reliance in this matter.  Herein below the defendant attempts at identifying the types and sources of relevant information and data believed to be in the possession, custody, or control of UCM ensuring that information has been timely preserved by UCM in accordance with the professional responsibilities of each of the various types of licensed persons and the regulatory framework and methods under rules, statutes, laws and codes relevant to UCM's purported trade and licenses as well as those employees both licensed and unlicensed in the employ past and present with UCM.

Defendant submits so that the parties can explore cost-saving techniques to cull the scope
of collection, and the burdens during on site examination of corporate computers, systems, cellular phones, data bases, disk imaging both corporate and personal for each employee presently employed and seeking out all backups made of any terminated or otherwise no longer affiliated or connected or employed with former employee of UCM; that defendant submits the parties should agree to the date ranges which are presumably already included in the regularly issued litigation holds and notices, which again the defendant so seeks during the 26(f) conference so the parties can

===========================================================================

substantially agree in the interests of judicial economy and to conserve judicial resources and the costs upon the parties in the litigation:

• date ranges,
• de-duplication at the collection phase, or
• domain exclusion or isolation (for e-mail sources)

Defendant and UCM counsel should also look into any potential obstacles to collection, review, or production. For example, whether the has discoverable information that may be subject to a third-party right of confidentiality that requires notification to that third party before the information can be disclosed in discovery. Determination whether any potentially relevant ESI (stored in the U.S. or elsewhere globally) is subject to state, federal, or international privacy laws that could restrict or constrain collection, review, or production. Discussions on whether the potentially relevant ESI will include foreign-language documents, which the defendant submits it may reasonably be presumed it will be given the broad use of foreign tax Evasion jurisdictions and corporations by UCM and Chad Mitchell Koehn as alleged.

Keyword search is the search of ESI content and file metadata that identifies documents and files containing one or more key terms, key term combinations, or key phrases from a predetermined list, which the defendant and counsel for UCM should reasonably agree in advance to lessen the burdens upon UCM and the defendant with regards to time spent in the collection on site at UCM offices of the disk images necessary for production

=========================================================================

and which documents are then further reviewed for relevance and responsiveness.

Defendant shall employ a variety of Technology Assisted Review ("TAR"), also referred to as "Predictive Coding." in keyword analysis searches of systems and computers, cellular phones and other devices of UCM its executives, employees, licensed and non-licensed personnel and any and all devices used by each whether personally or professionally in connection with any business of UCM.

Defendant submits counsel for UCM and the defendant should seek to lessen burdens by examining the different methods to be deployed for different categories of ESI, what should be considered each of the different categories of ESI.  The defendant seeks copies of the disk imaging of all relevant possible ESI, different requests for ESI, different custodians or time periods, should be mutually agreed.

Since the defendant shall utilize as referenced herein above TAR and a variety of TAR related AI systems for analysis and examination of ESI both transmitted via File Transfer Protocols in a secured system environment and via third party forensic on site examinations; the defendant submits the model to the relevant topics in August 2019, the ABA adopted Resolution 112, which resolved that "the American Bar Association urges courts and lawyers to address the emerging ethical and legal issues related to the usage of artificial intelligence ("AI") in the practice of law including: (1) bias, explainability, and

=======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
13

transparency of automated decisions made by AI; (2) ethical and beneficial usage of AI; and (3) controls and oversight of AI and the vendors that provide AI." The defendant submits it is important for the parties to come to mutual agreement as to uses of TAR and AI as to not negatively affect the merits of the action and again the defendant raises the issue regarding Craig Alan Brand and his multiple employments, law firms (all of which are not known to the defense nor even the Court), and his varying dual representations of a host of intertwined and related corporations.

Rule 34 permits a requesting party to "specify the form or forms in which electronically
stored information is to be produced." If no form of production is specified, or if the
responding party objects to the requested form, the responding party must specify the
form it intends to use, and in any event it must produce ESI "in a form or forms in which
it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P.
34(b)(1)(C), (b)(2)(E)(ii).

In preparation for the Rule 26(f) conference, given the vastness of the ESI which will be mandated to be produced and to be examined in onsite examinations it is appropriate for counsel for the plaintiffs and the DEFENDANT to discuss the following topics and develop relevant positions of mutual agreement to lessen the costs and burdens upon the parties:

• default production format,

==========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions

• provision of load files and metadata,

• handling of track changes and hidden data,

• production of color content,

• use of Bates numbering,

• manner of redactions and making of objections to those redactions

• use of de-duplication and e-mail threading, and

• delivery factors, including encryption, passwords, and delivery methods

Defendant submits so that there is no confusion regarding the "load files" to what is believed to be a comprehensive computer system and network within UCM in accordance with UCM's licenses and regulatory framework both SRO and governmental.  The term or phrase "a load file" is generally held to be considered is a structured file — containing metadata and other production-related data— which may be used to load productions into a document-review system or to inspect the metadata of a specific file, and/or disk imaging using TAR and AI.

Defendant submits that since UCM has the extensive ESI needed for the issues at bar and UCM is licensed and regulated requiring the backups and disaster recovery of all the ESI, that Reliance upon the 2015 Amendments to the Federal Rules of Civil Procedure provide a new tool to enhance the Rule 26(f) meet-and-confer process: which includes the early "delivery" of Rule 34 requests for production. Thus allowing parties to send out production requests as early as 21 days after the summons and complaint have been served. While this "delivery" does not
constitute formal service for purposes of Rule 34(b)(2)(A) (Time to Respond), it allows

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions

parties to analyze discovery targets and expectations ahead of the Rule 26(f) conference, thereby facilitating a more substantive and meaningful conference.

DEFENDANT suggests back and forth email conversation regarding informal Rule 34 requests regarding UCM allowing the parties to be better informed and to consider the focus on the ESI necessary in the matter, and the fact UCM had the legal obligations by and through a variety of licensed persons both prior to commencement of the state petition filing and thereafter inclusive of the nearly one year UCM laid in wait and attempted no service of process whatsoever of the underlying state petition therefore utilization of informal Rule 34 discussions will allow counsel for UCM and the defendant to come to a mutual agreement as to file loads and formats and to lessen the burdens upon UCM and its personnel during on site examination and copy of disk images of all electronic devices.

===============================================

Defendant submits that since the Rule 26(f) conference is intended, in part, to help the parties "develop a proposed discovery plan." Fed. R. Civ. P. 26(f)(2). As part of that process, the parties should engage in a transparent and cooperative dialogue in hopes of reducing later discovery disputes. Defendant submits his reading has discovered, Rule 26 was amended in 2015 to provide: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

====================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
16

and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

DEFENDANT submits the parties should choose a specified protocol and discuss and prepare a specified "ESI Protocol" outlining an agreed-upon process for some or all of the issues discussed in this brief memorandum regarding ESI and UCM and the defendant.

The Defendant Nelson and UCM need mutually agree in order to lessen expenses and burdens upon the parties in the extensive ESI discovery processes in preparation of the various interrogatories, subsequent motions to compel production of documents, to both UCM and variety of State and Federal Regulators and perhaps SRO's and purported clients of UCM

Defendant believes it to be prudent to review the already multitude of issued litigation holds and notices issued by UCM to its past and current employees and past and current vendors, and purported customers.  The entry of a Court Order regarding the agreed upon ESI Protocol as a stipulated order, seems to Defendant Nelson to be the preferred method to insure that UCM does not waiver from its required responsibilities under the licenses it holds nor those employees and affiliated persons and the licenses they hold.  IN doing so this may avoid the unpleasantness of having this litigation continue to grow into protracted multitude of demand requests and notices to Regulatory Bodies both governmental and SRO

A) Preservation

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, parties are to "discuss any issues about preserving discoverable information" at the conference. The parameters and usefulness of that discussion will depend

===========================================================================

largely on the information exchanged in pre-conference discussions, as the Defendant Nelson does so do so now in good faith in regards to the extensive ESI within UCM's purview, control, custody and/or possession and that of each of its past and current employees under master servant relationships and those of the required licensees of UCM. Potential topics at the Rule 26(f) conference may include preservation issues identified to date, the scope of preservation, preservation options, the cost of preservation, defendant Nelson submits that upon securing of disk images and imaging of the necessary ESI sought Nelson will bear the costs of preservation of UCM disk images for his own personal defense and prosecution of UCM in the counter and cross complaints and that UCM should also bear its own expense for the continued safeguarding of those original disk images and those then submitted and identified as to be used during interrogatories, depositions and eventual trial.

===============================================

Defendant Nelson submits that the parties should approach this discussion with the goal of finding agreement on where preservation efforts can be narrowed or expanded, as appropriate.  And for informal delivery of early Rule 34 Requests for Production, to help provide a helpful framework for discussions regarding preservation and on site review and copying of the disk images for the voluminous and necessary ESI involved in the claims and counter and cross claims.    Identification of Potentially Relevant ESI Data Sources; Rule 26(f) conference provides an opportunity for the parties to exchange basic information about the ESI sources believed to potentially contain relevant information, examples defendant Nelson submits are e-mails, instant messages, phone systems, phone applications, databases, exchange

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
18

servers, computer OS (operating systems), computer networks, intra and inter and extra nets, and social media and advertisement or other communication platforms.   Defendant Nelson submits that exchange of such information may assist the parties in crafting more accurate and tailored discovery requests.

Rather than formal pre-delivery of Rule 34 requests and demands perhaps the parties should engage in informal examples of those requests to be made under Rule 34 in order to identify within the complexities of the ESI complexities the sources of UCM's extensive ESI, including without limitation:
• data custodians,
• non-custodial data sources, and
• non-party custodians (e.g., service providers, agents, contractors)
Non-party custodians, the parties discussion should be focused to any objections or limitations to each party's right of access to such data, and the proposed method for collection and production.
Collection is proposed to be via secure server upload and Defendant Nelson foresees the need according to the rules to conduct extensive on site copying and disk imaging of both computer systems, networks, and cellular devices both owned by UCM and those personal devices used by any employee which have dual use in any communication of any nature whatsoever with customers of UCM or other UCM related claims in their petition.  Proposed search and collection processes, the tools intended to utilize, and the metadata the parties intend to capture, thereby allowing the parties to explore cost-saving techniques to reduce scope, including limits according to:
• date ranges, as Nelson profers above from 2017 through February 2021, unless UCM intends to increase the scope of litigation then further expansion of the date ranges should be discussed.

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
19

• sources from which to collect,

Agreement that certain types of ESI sources, even if accessible, need not be searched, for example the burden of the search is greater than the likelihood that relevant, non-cumulative information may be retrieved. If inadequate information is available at the time of the Rule 26(f) conference, it will not be from a lack of good faith upon the part of the pro se defendant who is submitting multiple reports such as this one included here in order to properly prepare and have meaningful agreements where agreements may be made; the defendant Nelson does not believe it to be prudent to search the dating profile histories and personal communications except where those communications concern the business of UCM and/or Chad Mitchell Koehn.

• de-duplication, at the collection phase, and

• domain exclusion (for e-mail sources).

Defendant Nelson believes an early Rule 30(b)(6) deposition of UCM's IT architecture and information systems could further guide discovery efforts and focus subsequent discovery requests, as well as to prepare for the on site examinations and copying necessary. The parties should jointly agree to the defendant Nelson's requesting the same from the Court during the Rule 16 conference.  UCM unlike natural persons cannot assert any fifth amendment protection privilege and thus must submit to depositions, perhaps a couple of hours of depositions of the IT architecture and information systems should be the basis to then formulate the extensive discovery demands and motions to compel for production as well as to focus the on site copying and examination of computer disk systems and cellular devices.

=======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
20

The Search/Review Process, The parties should choose to disclose their anticipated search and review process for each ESI source, and collectively discuss the least invasive means for the examination of the software architecture, emails systems, phone systems, databases and compliance systems of UCM and Chad M. Koehn and the UCM employees who will need to submit personal and professional devices for examination. While disclosure, discussion, and agreement on each of the issues below is not a requirement, the search methodology may benefit from input of both parties the Pro Se defendant suggests, and agreements on some or all of these issues can enhance efficiency and minimize disputes now and during discovery. However, the producing party has ultimate responsibility for complying with that party's discovery obligations to identify and locate relevant and responsive ESI. The Pro Se defendant proposes 2 common search and review processes:

Keyword searching. Keyword searching is the search of ESI content and file metadata that identifies ESI containing one or more key terms, key term combinations, or key phrases from a predetermined list, which the Pro Se defendant suggests the parties agree in advance to allow for the comprehensive searching of all available sources of Koehn and UCM. Keyword searching, in and of itself, does not determine relevance or responsiveness, but is just one way to cull the universe of ESI to make the review for relevance and responsiveness more cost-effective.

As stated previously herein above the PRO SE defendant shall use a Technology Assistant Review ("TAR") together with AI (Assimilated Intelligence) also referred to as "Predictive Coding." Technology-assisted

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
21

review (TAR) as defined by the EDRM (Electronic Discovery Reference Model)  is "a process of having computer software electronically classify ESI based on input from reviewers, in an in an effort to expedite the organization and prioritization of the document collection."

In good faith efforts to discover the best uses and to lessen the burdens upon the parties the PRO SE defendant has discovered:  www.edrm.net https://edrm.net/resources/white-paper-series/ Through the use of EDRM techniques and processes together with proprietary predictive coding and the vast ESI universe of UCM which must be examined given the allegations made on both sides in the SLAPP petition and the counter and cross claims necessitates the use of EDRM and AI systems to assist in discovery of all related information and financial transactions, regardless of the level of compliance or audits claimed by Koehn and UCM.

ESI types/sources, or date ranges for instance can be agreed upon by the parties, the PRO SE defendant so submits a discussion should be held on the date ranges and sources of the tremendous volumes of ESI from each of the UCM offices and personnel needing be examined.  For ESI to determine should be reviewed using keywords, the Pro Se party suggests a full day of discussions on the following:
• What data sources will be subjected to the keyword search? And likewise which subject to the AI and injection coding of the predictive coding softwares throughout the UCM networks.
• Should different keywords be used for different custodians, for different time periods, or different categories of information?
• What will be the process for proposing, reviewing, and revising the list of

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
22

custodians whose data will be subject to the search?

• What will be the process for proposing, reviewing, and revising the keywords that will be used?

• What are the systems' search capabilities (i.e. search syntax)?

• What will be the process for testing, sampling, and auditing of proposed keywords, such as the exchange of hit count reports?

• What will be the process for resolving disputes over the process?

• What validation process will be used to test the sufficiency of the search terms?

• Under what circumstances will additional keywords be run later in discovery?

For ESI that the Pro Se Defendant believes should be reviewed using technology-assisted review (TAR) along with AI (Assimilated Intelligence) and injected predictive coding, discussing the following will be helpful the Pro Se Defendant Nelson suggests:

• What data sources will be subjected to TAR?

• What information about the process will the parties exchange or agree to? Will there by a specified and agreed upon software platform, the pro se defendant will not share proprietary injected predictive coding AI as it will be deemed proprietary work product of the Pro Se defendant, another software platform will be used to confirm injection and retraction after search and by which vendor could the parties agree?

• How will the software be trained including all AI and predictive coding methodologies?

• How large are the document populations?

• What quality control measures will be implemented?

• Will the reviewing party disclose sample rates, precision rates, recall rates,

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
23

and responsiveness rates?

• What will be the process for resolving disputes over the processes?

• What validation process will be used to test the sufficiency of the review?

The pro se defendant also suggests to address how to handle foreign-language documents if such documents may be present. AND to consider developing a translation protocol and potentially to stipulate on a joint translator or translation software system of AI by third party. Discussion which party (or parties) should bear the cost for such translations, as here the pro se defendant is indigent, however, has discovered some sources and persons who shall perform onsite data extraction, disk image copying and non-invasive NFC and bluetooth data relay for all cellular devices of all employees at UCM.

Forms of Each Party's Production Rule 34 permits the Pro Se defendant to request and so "specify the form or forms in which electronically stored information is to be produced." If no form of production is specified, or UCM and Koehn responding objects to the requested form, in responding koehn and UCM must in any event produce ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(1)(C), (b)(2)(E)(ii).

To preclude disputes, the Pro Se defendant suggests stipulation at the Rule 26(f) conference or in an ESI protocol to the form of production for anticipated ESI sources.  Format for discussion of ESI production, such as native, static-image (e.g., TIFF or PDF), or hybrid (e.g., static-image productions with native-format.

The Pro Se defendant suggests a hybrid form of production and via the contemplated onsite forensic examination with keyword and TAR and AI searches via injected computer network predictive coding and search

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
24

functionalities the pro se defendant suggests a boolean search method of the machine code of the computer systems, cellular devices and computer networks, resulting in targeted file locations and information then in production and extraction of actual and original disk images of each of those systems together with a third party obtainment and possession as counter check to the files and any deleted information by Koehn etAl or UCM of the data or data fragments within the computer systems and networks inclusive of all mobile devices.  The production of metadata on each and every file from the origination disk imaging is essential in this indepth discovery processes necessary given the SLAPP petition and the counter and cross complaints. Native-format files will be identified and authenticated for use in depositions, motions, or trial and shall be confirmed via third party who shall take possession of a copy of the disaster backups and compliance backup files for authentication of all data from UCM.

Discussion whether text files and load files (defined by the pro se defendant herein above) will accompany the production and extraction of the original disk imaging at time of examination onsite at each of the UCM offices.

Agreement to carve out certain types of ESI from the default production type would be helpful to lessen the burdens upon either party.  For example, agreement to produce only Microsoft Excel and PowerPoint files as Natives, though the pro se defendant believes first a 30b(6) deposition and examination of the System IT Manager and Software and Computer network IT Personnel and CFO of UCM is essential for the pro se defendant to have a full knowledge and breath of the vast computers and computer systems necessary for search and obtainment of original disk images.  Discussion the

==========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions

appropriate format of production for ESI that might not be useful when imaged, such as audio/video recordings or structured data, though the Pro Se defendant insists that original disk imaging of any used "voicemails" MUST as a matter be accompanied by the PIN report data including all RBOC and BOC PIN reports respectively in order to confirm authenticity of any recordings or audio or video files being produced, the exact and precise PIN data with Geo local must confirm the originating disk images produced, including all PIN and PIN reporting at the RBOC and BOC levels.

Discussion how to produce paper documents if there are any paper documents which need be produced in the ESI collection processes.  Will the documents be scanned and produced electronically? If so, will the scan MUST implement Optical Character Recognition (OCR) to make the images text searchable, as such all Load Files and Metadata must as a matter contain the original disk imaging.  As stated, the Pro se defendant seeks productions that will be accompanied by a load file and which metadata will be included in the file, as it is essential to confirm the load file from the originating disk imaging. Common load file formats are delimited by commas or other characters could even include those spaced, hyphenated or pipe delimited.   Load files tell where a document begins and ends and origianted. The load file may also identify custodians, which attachments relate to which e-mails, and which e-mails are related by a thread therefore necessitating original disk imaging. Load files also provide metadata for the content being produced, subject to the availability of the metadata. For instance, precise metadata fields to be produced, depending on the ESI format and the data source.  For example, "to", "from", "cc" metadata may be limited to e-mail productions whereas other precise metadata fields for those Fed Wires and wire transfers and financial

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
26

transfers may coincide with that promulgated information from the Federal Reserve Bank and wire systems. . If productions will contain incomplete metadata, for example because of the storage or transmission method, an early discussion about that with the system architects and IT personnel at UCM is essential to retrieval of all originating disk imaging.

Alternatively, the pro se defendant may agree to simply preserve metadata, and produce it only if later requested. Track Changes & Hidden Data. When agreeing to non-native productions, the pro se defendant looks to specify whether track changes in a Microsoft Word or other document of word processing document or hidden columns/rows in an Excel spreadsheet will be visible when that content is imaged, or if UCM uses any form of encryption systems, which must be identified prior to examination and collection from UCM network and individual computers and cellular or other mobile devices and databases. Where paper or other imaging consists of any Color other than black and white the pro se defendant shall specify whether productions will be in color or black-and-white and here so requests all to be in the native color as shown in the originating disk images sought during onsite forensic computer and computer network examinations.

Pro Se defendant suggests use of Bates Numbering. Under agreement to a numbering scheme or prefix to uniquely identify each page (or native file) produced. The Bates number for each page (or native file) may be found on the corresponding image, referencing the originating and original disk image from each hard-drive, flash device or cloud servicing account (or native file name) and the load file as required and discussed herein above.

======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
27

Redactions. The pro se defendant shall seek agreement where necessary for the redactions either manual or automatic of those pieces of information which shall as a matter of law require said redactions inclusive of social security numbers, tax ID numbers, except in the case of any tax id number related to any non-natural person meaning those accounts related to corporations or other artificial entities.  ABA Routing numbers are necessary for identification of each banking source though the corresponding bank numbers the pro se defendant would agree could be redacted automatically.  The pro se defendant suggests a procedure for additional redactions where permissible redactions and to precisely the reasons behind each requested redaction by KOEHN or UCM and/or by UCM on behalf of identified employees to be searched, so then pro se defendant does request that UCM and/or Koehn identify the reason/s for each redaction on the produced image itself or in a separate load file or log inclusive of all system logs.  The pro se defendant is open to discussions on the format of products and the format to each redaction agreed or later requested in proper format by UCM as it relates to each classification of ESI.

Deduplication. A process for de-duplicating ESI prior to production and or during the onsite physical examinations of the computer systems and computer networks.

De-duplication may be done globally, i.e., by retaining only one copy of a particular file even when it is possessed by multiple custodians, or it may be done locally, i.e., by eliminating duplicate copies within a single custodian's collection only (and retaining one duplicate copy for each other custodian who has that same file in their collection).   Though the pro se defendant submits

======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
28

that deduplication must be done as a joint effort by EDRM personnel and with TAR and AI assisting in the deduplication processes during the mandated onsite examination as contemplated by FRCP.

E-mail Threading.  An e-mail "thread" includes the original message, responses, forwards, and accompanying attachments, the originating disk images of the email.  E-mail threading groups related messages together. Providing for the original metadata and service provider imagining.

The pro se defendant may agree to the use of e-mail threading, so that (for instance) only one complete thread (e.g., the last e-mail in a chain) is produced for each unique e-mail chain.  Encryption, Passwords, and Delivery with the original disk images must be provided as a completed load file with all metadata so included, without edit by UCM demonstrating the original disk images with 25 emails before and after each email thread with the service provider image stamping.

A discussion of the security of discovery productions, including specifying encryptions to be used, whether passwords will be required, and whether the productions will be exchanged physically as the pro se defendant shall so require with third party to have possession of a complete disaster recovery backup of all UCM files as UCM a regulated entity is required to possess and so retain and thus provide to a third party for original disk image authentication.

Timing of Production; At the Rule 26(f) conference, it is appropriate for the parties to discuss timing. The pro se defendant therefor suggests discovery be

======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
29

conducted in phases, focusing on certain issues, agreed in advance by UCM and the pro se defendant.   Wherein a rolling basis for the content on a rolling basis be so provided after the first onsite injection of predictive coding and EDRM with AI for the search parameters agreed upon for keyword and TAR analysis of the computer systems and networks.

Validation Process; as discussed herein above the pro se defendant suggests that the parties agree on a third party custodian of the original backups and disaster recovery files to authenticate and thus validate the validity of all produced and discovered data pertinent under the onsite computer forensic investigations.  We should discuss the verifying and validating of ESI culling and review methodology.

The pro se defendant suggests that a variety of methodologies, inclusive of a number of factors — including disparate sizes of document populations, the nature of the responsive ESI, and how UCM maintains and organizes their ESI — may make one methodology appropriate for UCM but not for the pro se defendant in order to lessen the burdens and expenses upon both parties and the need for judicial intervention thus conservation of judicial resources in light and view of judicial economy to the complex litigation, it is suggested the parties agree on a single methodology.
.
This could include sharing which populations of ESI will be part of the validation process (e.g., all ESI or just e-mail) and which ESI will be excluded from the process.

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
30

Privilege Log, wherein UCM may seek to invoke some sort of privilege log in addition to the Pro Se defendants suggested redaction of certain information and where the pro se defendant and UCM could agree on said privilege log but certainly not the originating system log files on the original disk imaging. Whether UCM will produce privilege logs in connection with their productions at time of onsite investigations and forensic examanitation or only upon request. If the former, the following details should as a matter of law and to reduce costs to the pro se defendant and especially to UCM be discussed:

• Timing. When will privilege logs be produced, with or shortly after each production or after the production is substantially complete?  But, certainly at time of onsite forensic examination and extraction of copies of original disk imaging.

• Detail. What information will be contained on the log and how much detail will describe the privilege asserted and content withheld/redacted?  The pro se defendant will demand that specified information be provided as to the information proposed to be redacted and open to separate lengthy argument and discussion as to the necessity to withhold and/or redact specified information under specific reasoning, approved by the court and subject to all levels of appeal there under.

• Exclusions/Date Limitations. Will certain categories or date ranges of communications be excluded, e.g., communications with outside litigation counsel, or privileged documents or ESI dated on or after the date of the Complaint?  Certainly any and all communications with Hera Softareware Development Inc. and/or Anthem Holdings Co. the officers and directors there under inclusive of any and all in writing or phone conversations on corporate or personal devices with Craig Alan Brand must be discoverable as Brand represents multiple competing interests and a host of corporations and their

==========================================================================

subs including more than dozen different competing and conflicting interest entities, especially wherein here we have more than 14,500 investor addresses to the underlying crypto currency ICO stock COIN issued under ICO mandating public information and publicly available on blockchain yet the code has been hidden from the public and non accessible by the investors therein and now a Regulatory Regualtion D filing to the SEC has been made for Anthem Holdings Company and on the heels thereof Chad M. Koehn and UCM have created and caused to be filed a host of press releases regarding a "Series A" raise for Hera Software Development Inc. which Chad Koehn is stated as a member of the board of directors thereby directly competing with the some 14,500 investors more than with more than 15,000 separate transactions of the underlying crypto currency STOCK coin used and thus promulgated on global public financial markets and as alleged manipulated thereupon.  Therefore any conversations or discussions notices or documentation which involves the conflicting representations of Craig Brand and that of the person Chad M. Koehn or that of UCM must not be privileged in any manner or fashion and must be open to fair discovery as documents, otherwise the contamination of the conflicting and cross representations again damages the public financial markets to the detriment of the public at large and against the interests of the regulatory schema developed by the CFTC and SEC under mandate from the United States Congress and the enforcement of the Federal Courts of the US District of New York.

================================================

Format and formatting. Will the log be provided as a spreadsheet containing agreed-upon metadata from the load file as discussed herein above along

=============================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
32

with the privilege rationale with description and reasoning behind any asserted privilege to each and every category and item selected as discoverable in the ONSITE forensic disk imaging?

E-mail Logging. Will e-mail threads be logged as a single entry or multiple entries on the privilege log, which each email must be logged individually with the stated reasons as to privilege being asserted thereto, so says the pro se defendant in this objection and thus request.

• Consolidated Entries/Categorical Logging. Can the log contain certain categories of privileged documents or ESI as a single entry, rather than Individually, the answer is astoundingly NO, as the pro se defendant so now shall herein require that each be stated individually pursuant with need of discoverable ESI e.g., communications with outside litigation counsel, especially wherein that outside counsel pro hac vice counsel Brand has multiple conflicting interests and conflicting current simultaneous representations which opens himself personally to liability against the some more than 14,500 separate investor addresses to the underlying ICO (Initial Coin Offering) CRYPTO CURRENCY stock COIN named HERC and that of Anthem Holdings Company and the dozen or so affiliated companies to the main three merger subs of the highly contested Triangular Reverse Short-form mergers of those merger subs not correctly accounted for under the disclosures of the SEC form Regulation D filing of Anthem Holdings Company and the subsequent claims of Chad Mitchell Koehn and UCM to a "Series A" raise for Hera Software Development Inc. which is directly conflicting and competing therewith the underlying more than 14,500 investor addresses the pro se defendant and counter-plaintiff included therein.

=======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
33

Rule 502 Order and Other Privilege Issues; pro se defendant and UCM may also discuss the handling of privileged material that is produced and so examined during onsite forensic examination injection coding and extraction of disk imaging copies, including:

Rule 502(d) Order. Possibility of request that the Court enter a stipulated order under Rule 502(d) of the Federal Rules of Evidence, finding that privilege "is not waived by disclosure connected with the litigation pending before the court." "Quick Peek" Reviews. The pro se defendant and UCM may decide to allow "quick peek" reviews of content not yet reviewed for privilege while also allowing the producing party either independently or during the onsite review, coding injection and extraction of copies of the disk images to reserve the right to demand the return of privileged documents and ESI without risking waiver. Claw-back Procedure. Should each allow and thus so discuss the timing and procedures for demanding and returning privileged documents or ESI, including how quickly a demand must be made after learning of the disclosure, whether the materials must be returned or destroyed (and what "destroyed" means), especially in light of how the plaintiffs and counter-defendants viewed the word "destroyed" in their now infamous INVESTOR memorandum regarding the Crypto Currency stock COIN known colloquially and proverbially under the ticker HERC.

How replacement media will be produced, whether a privilege log will be exchanged for returned content, and the procedure for motions to compel production of the clawed-back content.

The Need for Follow-up Discussions; Finally, the pro se defendant and UCM should consider whether in view of the discovery demands in the current matter and the dozens of proceeding matters stemming and thus caused to be

======================================================================

causes of actions in state and Federal Courts as a result of the ever growing need of continuing litigation in various other districts and county courts that whether it would be beneficial for the Court to schedule periodic discovery-status conferences, given the overwhelming amount of discovery needed in multiple offices and to multiple personnel of UCM and the various levels of appeals needed to ensure full disclosure of the relevant materials in light of the SLAPP petition filed and the allegations included in the counter and cross complaints. Regardless of Court involvement, the pro se defenant herein demonstrates UCM and pro se defendant should meet-and-confer throughout the lengthy and complex discovery process to discuss the above issues. Both should consider setting deadlines for accomplishing the relevant discussions above. The following are additional conversations that are more likely to take place in subsequent discovery discussions rather than at the Rule 26(f) conference:

Discovery Costs. The pro se defendant must rely upon third party non-profits and volunteers as the pro se defendant is impoverished and indigent therefore EDRM and other discovery needs to happen via volunteers and experts available especially given the erroneously filed protective order by the plaintiff Chad Koehn and the reciprocal 15 year protective order issued against Koehn and the pro se defendant and family for protection against violence. Both UCM and the pro se defendant should discuss the likely costs for collecting, searching, and producing ESI and explore whether **cost-sharing** is appropriate and under what circumstances. Through these discussions the exploration on whether additional cost-saving measures may be appropriate, such as use of a common vendors or a shared document repository, the pro se defendant has previously suggested the use of a document exchange

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
35

portal however the Federal Magistrate in a previous order as deemed the document exchange portal a cost prohibitive option at approximately $40 per month per user, as a result the volunteer onsite EDRM code insertion and extraction of the disk imaging by the pro se defendant seems the preferred alternative to the Court issued order that $40 per month for the document transfer secure document sharing discovery e-discovery portal is not in conformity with the intention as enumerated time and time again by the plaintiffs through Larry Michel's complaining of the intention of FRCP Rule 1. Taxation of eDiscovery costs may be another point of discussion, as the pro se defendant certainly will seek to recoup all costs to discovery upon winning the case and or the dozens of subsequent federal and state actions arising from the current multifaceted action at bar here. Certain eDiscovery costs may be taxed to the prevailing party under  Fed. R. Civ. P. 54 and 28 U.S.C. § 1920; though the pro se defendant is as is obvious indigent and without the financial resources to pay any costs as contemplated by the rules and since it is the certain actions and intention of the the plaintiffs as complained by the pro se defendant of using the SLAPP petition as filed as a means of judicial abuse to wrestle away significant equity interest in the underlying holding companies and conflicting corporations and conflicts of interest in the merger subs so complained as contest illegal and unethical Triangular reverse short-form mergers to the detriment of the underlying investors therein.  The pro se defendant could be persuaded to consider stipulating about how potentially taxable eDiscovery costs will be allocated at the conclusion of the case.  Forensic Preservation or Extraction. The pro se defendant may discover that forensic analysis may be appropriate in given circumstances and may meet and confer to discuss such forensic preservation and extraction as discussed herein above with the suggestion that all data disaster recovery

===========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
36

backups and asset of information backups required by Federal regulation be secured by a third party vendor agreed upon for authentication purposes of those necessary LOAD files as to the authentication and validation of such:

• the choice of vendor to undertake forensic efforts;

• the vendor's role (e.g., jointly retained neutral, court expert, or retained by one party at their sole cost of UCM though with approval and third party to any now existing vendor of UCM and with approved status to confirm existence and validity of the ESI for providing the same to Federal and State regulatory authorities at the conclusion or during the process of discovery and litigation as may be necessary in subsequent prosecutions by State or Federal regulators or by various SRO's towich the plaintiff's Chad Mitchell Koehn and UCM are so regulated);

• collection protocols and limitations;

• search protocols and limitations;

• review of the producing party's search results (and timing of that review); without exception to the onsite certain forensic examination, injection coding predictive AI and TAR pursuant with rights under FRCP and for the exacting of the disk imaging of the same.

• production of search results;

• format of that production;

• retention of searched information; and

• costs and cost-sharing for all of the above.


The Pro Se defendant and UCM and Chad Mitchell Koehn under THE COURT: THE RULE 16(F) CONFERENCE

An Order for Rule 16(f) Conference is issued by the Magistrate Judge

========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
37

who will hold the conference. The Orders includes guidance and preferred forms. Pro se defendant and UCM and Chad Mitchell Koehn separate counsels should review the Orders carefully, along with the judge's preferences as posted on the Court's website. Considering memorializing our ESI agreement within our joint 26(f) report or a separate stipulation for ESI protocol and plan pursuant with the suggestions and some which are unwavering demands upon the complexities of the ESI at issue within the Federally and State regulated UCM and under the guidance of the SRO's to which UCM is so regulated and required to maintain in accordance with SRO protocols with regards to the ESI so discoverable and necessary in this matter.

LINKS and REFERENCES CONSULTED including an older memorandum and discussion from nearly one and half DECADES ago from the US District of Kansas, see links in the hyper links below so herein referenced and so hyper linked herewith:

EDRM (Electronic Discovery Reference Model) – EDRM offers several practical resources relating to electronic discovery and information governance, including a White Paper Series.
www.edrm.net
https://edrm.net/resources/white-paper-series/

Association of Certified E-Discovery Specialists (ACEDS) – ACEDS is an organization of professionals in the private and public sectors who work in the field of electronic discovery. http://www.aceds.org

=======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions

The Electronic Discovery Institute (EDI) – EDI conducts studies of litigation processes that incorporate modern technologies. www.ediscoveryinstitute.org

Legal Document Review and Examining the Limitations of Algorithmic Approaches to Discovery, 2020.

https://jolt.richmond.edu/files/2020/10/Keeling-FE.pdf

Robert Keeling, Nathaniel Huber-Fliflet, Separating the Privileged Wheat from the Chaff – Using Text Analytics and Machine Learning to PRIVLEGE

https://jolt.richmond.edu/separating-the-privileged-wheat-from-the-chaff-using-text-analytics-and-machine-learning-to-protect-attorney-client-privilege/

• Hon. Elizabeth D. Laporte (ret.) and Jonathan M. Redgrave, A Practical Guide to Achieving Proportionality

https://www.fclr.org/fclr/articles/pdf/Laporte-RedgraveFinalPublicationVol9Issue2.pdf

THE FEDERAL COURTS LAW REVIEW

https://www.fclr.org/fclr/articles/html/2009/facciolaredgrave.pdf

www.e-discoveryteam.com

See also the companion sites "Electronic Discovery Best Practices"

www.edbp.com   and "E-discovery Team Training"

www.craigball.net

www.ediscoveryjournal.com

www.cloudnine.com/education/daily-blog/

=========================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
39

Example Check lists discovered:

http://www.nhd.uscourts.gov/pdf/ESIChecklist.pdf

https://www.njd.uscourts.gov/sites/njd/files/2016SEPTEMBEROrderAmd26.pdf

https://www.ded.uscourts.gov/default-standard-discovery

https://www.mdd.uscourts.gov/sites/mdd/files/ESI-Principles.pdf

https://www.pawd.uscourts.gov/ed-information

An older methodology listing of a check list of Craig Ball is available in the guidance from the US District of Kansas on ESI … which is also herein referenced by the Pro Se defendant and counter-plaintiff a link is provided herein below, though the guidance from the US District of Kansas appears to be a bit outdated as it discusses in depth analysis from a Craig Ball checklist Circa 2008, nearly a decade and half ago, as technology in EDRM and AI with TAR has advanced considerably since this creation, none the less as a reference to the current Court it is included herein for reference by the Pro Se defendant and counter-plaintiff.

http://ksd.uscourts.gov/wp-content/uploads/2015/10/Guidelines-for-cases-involving-ESI-July-18-2013.pdf

https://www.tnmd.uscourts.gov/sites/tnmd/files/AO%20174-1%20entered%209-12-18.pdf

https://www.ediscoverycouncil.com/sites/default/files/7thCircuitESIPilotProgramPrinciplesSecondEdition2018.pdf

https://www.cand.uscourts.gov/forms/e-discovery-esi-guidelines/

======================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
40

So Respectfully Submitted by the Pro Se defendant and Pro Se counter-plaintiff:

/s/


Michael Nelson
Pro Se
Defendant
And
Cross and Counter Complaints Counter-Plaintiff


In good faith efforts seeking where possible agreement in the interests of the parties for smooth complex discovery efforts involving the ESI (Electronically Stored Information).


**SEE ATTACHED DOCUMENT FROM THE US DISTRICT OF KANSAS ON ESI**

====================================================================
ESI = Electronically Stored Information discussion and agreements for Rule 26f
Pro Se Defendant submitted and recommendations for discussions
41

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**GUIDELINES FOR CASES INVOLVING ELECTRONICALLY STORED**
**INFORMATION [ESI]**

**These guidelines are intended to facilitate compliance with the provisions of Fed. R. Civ. P. 1, 16, 26, 33, 34, 37, and 45 relating to the discovery of electronically stored information ("ESI") and the current applicable case law.  In the case of any asserted conflict between these guidelines and either the referenced rules or applicable case law, the latter should control.**

## INTRODUCTION

1. **Purpose**

   The purpose of these guidelines is to facilitate the just, speedy, and inexpensive resolution of disputes involving ESI, and to promote, whenever possible, the resolution of disputes regarding the discovery of ESI without Court intervention.  Parties should consider proportionality, now an express component of the scope of discoverable evidence.  *See* Fed. R. Civ. P. 26(b)(1); *see also* 26(g)(1)(B)(iii).

2. **Principle of Cooperation**

   An attorney's representation of a client is improved by conducting discovery in a cooperative manner.  The failure of counsel or the parties in litigation to cooperate in facilitating and reasonably limiting discovery requests and responses increases litigation costs and contributes to the risk of sanctions.  For a more complete discussion of this principle, please review the Sedona Conference Cooperation Proclamation,[1] generally endorsed by the District, and "*Cooperation—What Is It and Why Do It?*" by David J. Waxse.[2]

## DEFINITIONS

3. **General**

   To avoid misunderstandings about terms, all parties should consult the most current edition of The Sedona Conference® Glossary[3] and "The Grossman-Cormack Glossary of Technology-Assisted Review."[4]  In addition, references in these guidelines to counsel include parties who are not represented by counsel.

4. **Form of Production**

---

[1] http://www.thesedonaconference.org/dltForm?did=proclamation.pdf.
[2] David J. Waxse, *Cooperation— What Is It and Why Do It?*, 18 Rich. J.L. & Tech. 8 (2012) at http://jolt.richmond.edu/v18i3/article8.pdf.
[3] https://thesedonaconference.org/publication/The%20Sedona%20Conference%C2%AE%20Glossary.
[4] Federal Courts Law Review, Vol. 7, Issue 1 (2013).

Parties and counsel should recognize the distinction between format and media. Format, the internal structure of the data, suggests the software needed to create and open the file (i.e., an Excel spreadsheet, a Word document, a PDF file). Media refers to the hardware containing the file (i.e., a flash drive or disc).

Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the "native format" of the document.[5] Native format refers to the document's internal structure at the time of the creation. In general, a file maintained in native format includes any metadata embedded inside the document that would otherwise be lost by conversion to another format or hard copy. In contrast, a "static format," such as a .PDF or .TIF, creates an image of the document as it originally appeared in native format but usually without retaining any metadata. Counsel need to be clear as to what they want and what they are producing.

Counsel should know the format of the file and, if counsel does not know how to read the file format, should consult with an expert as necessary to determine the software programs required to read the file format.

5.    **Meta and Embedded Data**

"Metadata" typically refers to information describing the history, tracking, or management of an electronic file. Some forms of metadata are maintained by the system to describe the file's author, dates of creation and modification, location on the drive, and filename. Other examples of metadata include spreadsheet formulas, database structures, and other details, which in a given context, could prove critical to understanding the information contained in the file. "Embedded data" typically refers to draft language, editorial comments, and other deleted or linked matter retained by computer programs.

Metadata and embedded data may contain privileged or protected information. Litigants should be aware of metadata and embedded data when reviewing documents but should refrain from "scrubbing" either metadata or embedded data without cause or agreement of adverse parties.

**PRIOR TO THE FILING OF LITIGATION**

6.    **Identification of Potential Parties and Issues**

When there is a reasonable anticipation of litigation or when litigation is imminent,[6] efforts should be made to identify potential parties and their counsel to such litigation to facilitate early cooperation in the preservation and exchange of ESI that may be relevant to a potential claim or defense and proportional to the needs of the case. To comply with Rule 26(b)(1), counsel should consider determining the issues that will likely arise in the litigation. As soon as practicable and without waiting for a court order, counsel should discuss with opposing counsel which issues are actually in dispute and which can be

---

[5] http://www.thesedonaconference.org/dltForm?did=glossary2010.pdf.
[6] The Tenth Circuit has not yet addressed the relevant standard on when parties should take action regarding ESI prior to litigation being initiated but has said action should have been taken when litigation is "imminent" in the general litigation context. Judges in the District of Kansas have used both that standard and the standard of when litigation is "reasonably anticipated" in the context of litigation involving ESI.

resolved by agreement. Agreement that an issue is not disputed can reduce discovery costs.

7. **Identification of Electronically Stored Information**

In anticipation of litigation, counsel should become knowledgeable about their client's information management systems and its operation, including how information is stored and retrieved. Counsel also should consider determining whether discoverable ESI is being stored by third parties, for example, in cloud-storage facilities or social media. In addition, counsel should make a reasonable attempt to review their client's relevant and/or discoverable ESI to ascertain the contents, including backup, archival, and legacy data (outdated formats or media).

8. **Preservation**

In general, electronic files are usually preserved in native format with metadata intact.

Every party either reasonably anticipating litigation or believing litigation is imminent[7] must take reasonable steps to preserve relevant ESI within the party's possession, custody, or control.[8] Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues immediately, and should continue to address them as the case progresses and their understanding of the issues and the facts improves. If opposing parties and counsel can be identified, efforts should be made to reach agreement on preservation issues. The parties and counsel should consider the following:

(a)     the categories of potentially discoverable information to be segregated and preserved;

(b)     the "key persons" and likely witnesses and persons with knowledge regarding relevant events;

(c)     the relevant time period for the litigation hold;

(d)     the nature of specific types of ESI, including email and attachments, word processing documents, spreadsheets, graphics and presentation documents, images, text files, hard drives, databases, instant messages, transaction logs, audio and video files, voicemail, Internet data, computer logs, text messages, backup materials, or native files, and how it should be preserved; and

(e)     data maintained by third parties, including data stored in social media and cloud servers. Because of the dynamic nature of social media, preservation of this data may require the use of additional tools and expertise.

---

[7] *Ibid.*, p. 2.
[8] Counsel should become aware of the current Tenth Circuit law defining "possession, custody and control."

# INITIATION OF LITIGATION

9.  **Narrowing the Issues**

    After litigation has begun, counsel should attempt to narrow the issues early in the litigation process by review of the pleadings and consultation with opposing counsel. Through discussion, counsel should identify the material factual issues that will require discovery.  Counsel should engage with opposing counsel in a respectful, reasonable, and good-faith manner, with due regard to the mandate of Rule 1 that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  In addition, counsel should comply with their professional and ethical obligations including candor to the court and opposing counsel.  Note that the issues discussed will need to be revisited throughout the litigation.

10.  **E-Discovery Liaison**

    To promote communication and cooperation between the parties, each party to a case with significant e-discovery issues may designate an e-discovery liaison for purposes of assisting counsel, meeting, conferring, and attending court hearings on the subject. Regardless of whether the liaison is an attorney (in-house or outside counsel), a third-party consultant, or an employee of the party, he or she should be:

    •   familiar with the party's electronic information systems and capabilities in order to explain these systems and answer relevant questions;

    •   knowledgeable about the technical aspects of e-discovery, including the storage, organization, and format issues relating to ESI; and

    •   prepared to participate in e-discovery dispute resolutions.

    The attorneys of record are responsible for compliance with e-discovery requests and, if necessary, for obtaining a protective order to maintain confidentiality while facilitating open communication and the sharing of technical information.  However, the liaison should be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

# AT THE RULE 26(f) CONFERENCES

11.  **General**

    At the Rule 26(f) conference or prior to the conference if possible, a party seeking discovery of ESI should notify the opposing party of that fact immediately, and, if known at that time, should identify as clearly as possible the categories of information that may be sought.  Parties and counsel are reminded that, under Rule 34, if the requesting party has not designated a form of production in its request, or if the responding party objects

to the designated form, the responding party must state the form it intends to use for producing ESI.  In cases with substantial ESI issues, counsel should assume that this discussion will be an ongoing process and not a one-time meeting.[9]

12.     **Reasonably Accessible Information and Costs**

a.      The volume of, and ability to search, ESI means that most parties' discovery needs will be satisfied from reasonably accessible sources.  Counsel should attempt to determine if any responsive ESI is not reasonably accessible, i.e., information that is only accessible by incurring undue burdens or costs.  If the responding party is not searching or does not plan to search sources containing potentially responsive information that is not reasonably accessible, it must identify the category or type of such information.  If the requesting party intends to seek discovery of ESI from sources identified as not reasonably accessible, the parties should discuss: (1) the burden and cost of accessing and retrieving the information, (2) the needs that may establish good cause for requiring production of all or part of the information, even if the information sought is not reasonably accessible, and (3) conditions on obtaining and producing this information such as scope, time, and allocation of cost.

b.      Absent a contrary showing of good cause, the parties should generally presume that the producing party will bear all costs for reasonably accessible ESI.  The parties should generally presume that there will be cost sharing or cost shifting for ESI that is not reasonably accessible.

13.     **Creation of a Shared Database and Use of a Single Search Protocol**

In appropriate cases, counsel may want to attempt to agree on the construction of a shared database, accessible and searchable by both parties.  In such cases, they should consider both hiring a neutral vendor and/or using a single search protocol with a goal of minimizing the costs of discovery for both sides.[10]

14.     **Removing Duplicated Data and De-NISTing**

Counsel should discuss the elimination of duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians, also known as vertical and horizontal views of ESI.

In addition, counsel should discuss the de-NISTing of files which is the use of an automated filter program that screens files against the NIST list of computer file types to separate those generated by a system and those generated by a user. [NIST (National Institute of Standards and Technology) is a federal agency that works with industry to develop technology measurements and standards.]  NIST developed a hash database of

---

[9] For a more detailed description of matters that may need to be discussed, see Craig Ball, *Ask and Answer to Right Questions in EDD,* LAW TECHNOLOGY NEWS, Jan. 4, 2008, reprinted in these Guidelines with permission at Appendix 1.

[10] Vice Chancellor Travis Laster recently ordered, *sua sponte*, counsel to retain a single discovery vendor to be used by both sides and to conduct document review with the assistance of predictive coding. *EORHB, Inc., v. HOA Holdings, LLC,* C.A. No. 7409-VCL (Del. Ch. Oct. 15, 2012). Vice Chancellor Laster later modified these requirements. *See EORHB, Inc. v HOA Holdings, LLC*, No. CIV.A. 7409-VCL, 2013 WL 1960621, at *1 (Del. Ch. May 6, 2013).

computer files to identify files that are system generated and generally accepted to have no substantive value in most cases.[11]

15.     **Search Methodologies**

If counsel intend to employ technology assisted review[12] (TAR) to locate relevant ESI and privileged information, counsel should attempt to reach agreement about the method of searching or the search protocol. TAR is a process for prioritizing or coding a collection of documents using a computerized system that harnesses human judgments of one or more subject matter expert(s) on a smaller set of documents and then extrapolates those judgments to the remaining document collection.[13]

If word searches are to be used, the words, terms, and phrases to be searched should be determined with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. In addition, any attempt to use word searches should be based on words that have been tested against a randomly-selected sample of the data being searched.

Counsel also should attempt to reach agreement as to the timing and conditions of any searches, which may become necessary in the normal course of discovery. To minimize the expense, counsel may consider limiting the scope of the electronic search (e.g., time frames, fields, document types) and sampling techniques to make the search more effective.

16.     **E-Mail**

Counsel should attempt to agree on the scope of e-mail discovery and e-mail search protocol. The scope of e-mail discovery may require determining whether the unit for production should focus on the immediately relevant e-mail or the entire string that contains the relevant e-mail. In addition, counsel should focus on the privilege log ramifications of selecting a particular unit of production.[14]

17.     **Deleted Information**

Counsel should attempt to agree on whether responsive deleted information still exists, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration.

18.     **Meta and Embedded Data**

Counsel should discuss whether "embedded data" and "metadata" exist, whether it will be requested or should be produced, and how to handle determinations regarding privilege or protection of trial preparation materials.

---

[11] http://www.thesedonaconference.org/dltForm?did=glossary2010.pdf.
[12] The Grossman-Cormack Glossary of Technology-Assisted Review.
[13] There is no current agreement on what to call the searches that are performed with the assistance of technology. Some currently used other terms include: (CAR) computer assisted review, predictive coding, concept search, contextual search, boolean search, fuzzy search and others.
[14] *In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005).

19.     **Data Possessed by Third Parties**

Counsel should attempt to agree on an approach to ESI stored by third parties. This includes files stored on a cloud server and social networking data on services such as Facebook, Twitter, and Instagram.

20.     **Format and Media**

The parties have discretion to determine production format and should cooperate in good faith to promote efficiencies. Reasonable requests for production of particular documents in native format with metadata intact should be considered.

21.     **Identifying Information**

Because identifying information may not be placed on ESI as easily as bates stamping paper documents, methods of identifying pages or segments of ESI produced in discovery should be discussed.[15] Counsel is encouraged to discuss the use of a digital notary, hash value indices, or other similar methods for producing native files.

22.     **Priorities and Sequencing**

Counsel should attempt to reach an agreement on the sequence of processing data for review and production. Some criteria to consider include ease of access or collection, sources of data, date ranges, file types, and keyword matches.

23.     **Privilege**

Counsel should attempt to reach an agreement regarding what will happen in the event of inadvertent disclosure of privileged or trial preparation materials[16] If the disclosing party inadvertently produces privileged or trial preparation materials, it must notify the requesting party of such disclosure. After the requesting party is notified, it must return, sequester, or destroy all information and copies and may not use or disclose this information until the claim of privilege or protection as trial preparation materials is resolved.

    A.      To accelerate the discovery process, the parties may establish a "clawback agreement," whereby materials that are disclosed without intent to waive privilege or protection are not waived and are returned to the responding party, so long as the responding party identifies the materials mistakenly produced. Counsel should be aware of the requirements of Federal Rule of Evidence 502(d) to protect against waivers of privilege in other settings.

    B.      The parties may agree to provide a "quick peek," whereby the responding party provides certain requested materials for initial examination without waiving any privilege or protection.

---

[15] For a viable electronic alternative to bates stamps, see Ralph C. Losey, *HASH: The New Bates Stamp*, 12 J. Tech. L. & Pol'y 1 (2007).

[16] In addition, counsel should comply with current rules and case law on the requirement of creating privilege logs.

Other voluntary agreements should be considered as appropriate. Counsel should be aware that there is an issue of whether such agreements bind third parties who are not parties to the agreements. Counsel are encouraged to seek an order from the Court pursuant to Rule 502(d). However, the Court may enter a clawback arrangement for good cause even if there is no agreement. In that case, third parties may be bound but only pursuant to the court order.[17]

## DISCOVERY PROCESS

24. **Timing**

Counsel should attempt to agree on the timing and sequencing of e-discovery. In general, e-discovery should proceed in the following order.

(a)     **Mandatory Disclosure**

Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) must include any ESI that the disclosing party may use to support its claims or defenses (unless used solely for impeachment). To determine what information must be disclosed pursuant to this rule, counsel should review, with their clients, the client's ESI files, including current, back-up, archival, and legacy computer files. Counsel should be aware that documents in paper form may have been generated by the client's information system; thus, there may be ESI related to that paper document. If any party intends to disclose ESI, counsel should identify those individuals with knowledge of their client's electronic information systems who can facilitate the location and identification of discoverable ESI prior to the Rule 26(f) conference.

(b)     **Search of Reasonably Accessible Information**

After receiving requests for production under Federal Rule Civil Procedure 34, the parties shall search their ESI, other than that identified as not reasonably accessible due to undue burden and/or substantial cost, and produce responsive information in accordance with Rule 26(b).

(c)     **Search of Unreasonably Accessible Information**

Electronic searches of information identified as not reasonably accessible should not be conducted until the initial search has been completed, and then only by agreement of the parties or pursuant to a court order. Requests for electronically stored information that is not reasonably accessible must be narrowly focused with good cause supporting the request. *See* Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment (good cause factors).

(d)     **Requests for On-Site Inspections**

---

[17] *See Rajala v. McGuire Woods, LLP*, No. 08-2638-CM-DJW, 2010 WL 2949582 (D. Kan. July 22, 2010).

Requests for on-site inspections of electronic media under Federal Rule of Civil Procedure 34(b) should be reviewed to determine if good cause and specific need have been demonstrated.

25.    **Discovery Concerning Preservation and Collection Efforts**

Discovery concerning the preservation and collection efforts of another party, if used unadvisedly, can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matters. Routine discovery into such matters is therefore strongly discouraged and may be in violation of Rule 26(g)'s requirement that discovery be "neither unreasonable nor unduly burdensome or expensive." Prior to initiating any such discovery, counsel shall confer with counsel for the party from whom the information is sought concerning: (i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Discovery into such matters may be compelled only on a showing of good cause considering these aforementioned factors. However, deponents who provide testimony on the merits are not exempt from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

26.    **Duty to Meet and Confer When Requesting ESI from Non-Parties (Fed. R. Civ. P. 45)**

Counsel issuing requests for ESI from non-parties should attempt to informally meet and confer with the non-party (or counsel, if represented). During this meeting, counsel should discuss the same issues regarding ESI requests that they would with opposing counsel as set forth in Paragraph 11 above.

December 1, 2015

**APPENDIX 1**

## Ask and Answer the Right Questions in EDD

Craig Ball
*Law Technology News*
January 4, 2008

Sometimes it's more important to ask the right questions than to know the right answers, especially when it comes to nailing down sources of electronically stored information, preservation efforts and plans for production in the FRCP Rule 26(f) conference, the so-called "meet and confer."

The federal bench is deadly serious about meet and confers, and heavy boots have begun to meet recalcitrant behinds when Rule 26(f) encounters are perfunctory, drive-by events. Enlightened judges see that meet and confers must evolve into candid, constructive mind melds if we are to take some of the sting and "gotcha" out of e-discovery. Meet and confer requires intense preparation built on a broad and deep gathering of detailed information about systems, applications, users, issues and actions. An hour or two of hard work should lie behind every minute of a Rule 26(f) conference. Forget "winging it" on charm or bluster and forget "We'll get back to you on that."

Here are 50 questions of the sort I think should be hashed out in a Rule 26(f) conference. If you think asking them is challenging, think about what's required to deliver answers you can certify in court. It's going to take considerable arm-twisting by the courts to get lawyers and clients to do this much homework and master a new vocabulary, but, there is no other way.

These 50 aren't all the right questions for you to pose to your opponent, but there's a good chance many of them are . . . and a likelihood you'll be in the hot seat facing them, too.

1.      What are the issues in the case?
2.      Who are the key players in the case?
3.      Who are the persons most knowledgeable about ESI systems?
4.      What events and intervals are relevant?
5.      When did preservation duties and privileges attach?
6.      What data are at greatest risk of alteration or destruction?

7.      Are systems slated for replacement or disposal?
8.      What steps have been or will be taken to preserve ESI?
9.      What third parties hold information that must be preserved, and who will notify them?
10.      What data require forensically sound preservation?
11.      Are there unique chain-of-custody needs to be met?
12.      What metadata are relevant, and how will it be preserved, extracted and produced?
13.      What are the data retention policies and practices?
14.      What are the backup practices, and what tape archives exist?
15.      Are there legacy systems to be addressed?

16.      How will the parties handle voice mail, instant messaging and other challenging ESI?
17.      Is there a preservation duty going forward, and how will it be met?
18.      Is a preservation or protective order needed?
19.      What e-mail applications are used currently and in the relevant past?
20.      Are personal e-mail accounts and computer systems involved?
21.      What principal applications are used in the business, now and in the past?
22.      What electronic formats are common, and in what anticipated volumes?
23.      Is there a document or messaging archival system?
24.      What relevant databases exist?
25.      Will paper documents be scanned, and if so, at what resolution and with what OCR and metadata?
26.      What search techniques will be used to identify responsive or privileged ESI?
27.      If keyword searching is contemplated, can the parties agree on keywords?
28.      Can supplementary keyword searches be pursued?
29.      How will the contents of databases be discovered? Queries? Export? Copies? Access?
30.      How will de-duplication be handled, and will data be re-populated for production?
31.      What forms of production are offered or sought?
32.      Will single- or multipage .tiffs, PDFs or other image formats be produced?
33.      Will load files accompany document images, and how will they be populated?
34.      How will the parties approach file naming, unique identification and Bates numbering?
35.      Will there be a need for native file production? Quasi-native production?
36.      On what media will ESI be delivered? Optical disks? External drives? FTP?
37.      How will we handle inadvertent production of privileged ESI?
38.      How will we protect trade secrets and other confidential information in the ESI?
39.      Do regulatory prohibitions on disclosure, foreign privacy laws or export restrictions apply?
40.      How do we resolve questions about printouts before their use in deposition or at trial?
41.      How will we handle authentication of native ESI used in deposition or trial?
42.      What ESI will be claimed as not reasonably accessible, and on what bases?
43.      Who will serve as liaisons or coordinators for each side on ESI issues?
44.      Will technical assistants be permitted to communicate directly?
45.      Is there a need for an e-discovery special master?
46.      Can any costs be shared or shifted by agreement?
47.      Can cost savings be realized using shared vendors, repositories or neutral experts?
48.      How much time is required to identify, collect, process, review, redact and produce ESI?
49.      How can production be structured to accommodate depositions and deadlines?
50.      When is the next Rule 26(f) conference (because we need to do this more than once)?