# EXHIBIT

# "C"

# To Follow . . .

===========================================================================
*OBJECTION as to False statements made by Plaintiff's in the document titled: "PLAINTIFF'S INITIAL DISCLOSURES"; Clear Violation of Rules of Professional Conduct requiring TRUTHFULNESS in Statements to Others and Truthfulness and Candor to the Court by Attorneys Licensed to Appear before the Court; MOTION FOR ORDER preventing further untruthfulness in filings*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

## GUIDELINES FOR CASES INVOLVING ELECTRONICALLY STORED INFORMATION [ESI]

**These guidelines are intended to facilitate compliance with the provisions of Fed. R. Civ. P. 1, 16, 26, 33, 34, 37, and 45 relating to the discovery of electronically stored information ("ESI") and the current applicable case law. In the case of any asserted conflict between these guidelines and either the referenced rules or applicable case law, the latter should control.**

## INTRODUCTION

1. **Purpose**

   The purpose of these guidelines is to facilitate the just, speedy, and inexpensive resolution of disputes involving ESI, and to promote, whenever possible, the resolution of disputes regarding the discovery of ESI without Court intervention. Parties should consider proportionality, now an express component of the scope of discoverable evidence. *See* Fed. R. Civ. P. 26(b)(1); *see also* 26(g)(1)(B)(iii).

2. **Principle of Cooperation**

   An attorney's representation of a client is improved by conducting discovery in a cooperative manner. The failure of counsel or the parties in litigation to cooperate in facilitating and reasonably limiting discovery requests and responses increases litigation costs and contributes to the risk of sanctions. For a more complete discussion of this principle, please review the Sedona Conference Cooperation Proclamation,[1] generally endorsed by the District, and "*Cooperation—What Is It and Why Do It?*" by David J. Waxse.[2]

## DEFINITIONS

3. **General**

   To avoid misunderstandings about terms, all parties should consult the most current edition of The Sedona Conference® Glossary[3] and "The Grossman-Cormack Glossary of Technology-Assisted Review."[4] In addition, references in these guidelines to counsel include parties who are not represented by counsel.

4. **Form of Production**

---

[1] http://www.thesedonaconference.org/dltForm?did=proclamation.pdf.
[2] David J. Waxse, *Cooperation— What Is It and Why Do It?*, 18 Rich. J.L. & Tech. 8 (2012) at http://jolt.richmond.edu/v18i3/article8.pdf.
[3] https://thesedonaconference.org/publication/The%20Sedona%20Conference%C2%AE%20Glossary.
[4] Federal Courts Law Review, Vol. 7, Issue 1 (2013).

Parties and counsel should recognize the distinction between format and media. Format, the internal structure of the data, suggests the software needed to create and open the file (i.e., an Excel spreadsheet, a Word document, a PDF file). Media refers to the hardware containing the file (i.e., a flash drive or disc).

Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the "native format" of the document.[5] Native format refers to the document's internal structure at the time of the creation. In general, a file maintained in native format includes any metadata embedded inside the document that would otherwise be lost by conversion to another format or hard copy. In contrast, a "static format," such as a .PDF or .TIF, creates an image of the document as it originally appeared in native format but usually without retaining any metadata. Counsel need to be clear as to what they want and what they are producing.

Counsel should know the format of the file and, if counsel does not know how to read the file format, should consult with an expert as necessary to determine the software programs required to read the file format.

5. **Meta and Embedded Data**

"Metadata" typically refers to information describing the history, tracking, or management of an electronic file. Some forms of metadata are maintained by the system to describe the file's author, dates of creation and modification, location on the drive, and filename. Other examples of metadata include spreadsheet formulas, database structures, and other details, which in a given context, could prove critical to understanding the information contained in the file. "Embedded data" typically refers to draft language, editorial comments, and other deleted or linked matter retained by computer programs.

Metadata and embedded data may contain privileged or protected information. Litigants should be aware of metadata and embedded data when reviewing documents but should refrain from "scrubbing" either metadata or embedded data without cause or agreement of adverse parties.

**PRIOR TO THE FILING OF LITIGATION**

6. **Identification of Potential Parties and Issues**

When there is a reasonable anticipation of litigation or when litigation is imminent,[6] efforts should be made to identify potential parties and their counsel to such litigation to facilitate early cooperation in the preservation and exchange of ESI that may be relevant to a potential claim or defense and proportional to the needs of the case. To comply with Rule 26(b)(1), counsel should consider determining the issues that will likely arise in the litigation. As soon as practicable and without waiting for a court order, counsel should discuss with opposing counsel which issues are actually in dispute and which can be

---

[5] http://www.thesedonaconference.org/dltForm?did=glossary2010.pdf.
[6] The Tenth Circuit has not yet addressed the relevant standard on when parties should take action regarding ESI prior to litigation being initiated but has said action should have been taken when litigation is "imminent" in the general litigation context. Judges in the District of Kansas have used both that standard and the standard of when litigation is "reasonably anticipated" in the context of litigation involving ESI.

resolved by agreement. Agreement that an issue is not disputed can reduce discovery costs.

7. **Identification of Electronically Stored Information**

    In anticipation of litigation, counsel should become knowledgeable about their client's information management systems and its operation, including how information is stored and retrieved. Counsel also should consider determining whether discoverable ESI is being stored by third parties, for example, in cloud-storage facilities or social media. In addition, counsel should make a reasonable attempt to review their client's relevant and/or discoverable ESI to ascertain the contents, including backup, archival, and legacy data (outdated formats or media).

8. **Preservation**

    In general, electronic files are usually preserved in native format with metadata intact.

    Every party either reasonably anticipating litigation or believing litigation is imminent[7] must take reasonable steps to preserve relevant ESI within the party's possession, custody, or control.[8] Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues immediately, and should continue to address them as the case progresses and their understanding of the issues and the facts improves. If opposing parties and counsel can be identified, efforts should be made to reach agreement on preservation issues. The parties and counsel should consider the following:

    (a) the categories of potentially discoverable information to be segregated and preserved;

    (b) the "key persons" and likely witnesses and persons with knowledge regarding relevant events;

    (c) the relevant time period for the litigation hold;

    (d) the nature of specific types of ESI, including email and attachments, word processing documents, spreadsheets, graphics and presentation documents, images, text files, hard drives, databases, instant messages, transaction logs, audio and video files, voicemail, Internet data, computer logs, text messages, backup materials, or native files, and how it should be preserved; and

    (e) data maintained by third parties, including data stored in social media and cloud servers. Because of the dynamic nature of social media, preservation of this data may require the use of additional tools and expertise.

---

[7] *Ibid.*, p. 2.
[8] Counsel should become aware of the current Tenth Circuit law defining "possession, custody and control."

# INITIATION OF LITIGATION

9. **Narrowing the Issues**

   After litigation has begun, counsel should attempt to narrow the issues early in the litigation process by review of the pleadings and consultation with opposing counsel. Through discussion, counsel should identify the material factual issues that will require discovery. Counsel should engage with opposing counsel in a respectful, reasonable, and good-faith manner, with due regard to the mandate of Rule 1 that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." In addition, counsel should comply with their professional and ethical obligations including candor to the court and opposing counsel. Note that the issues discussed will need to be revisited throughout the litigation.

10. **E-Discovery Liaison**

    To promote communication and cooperation between the parties, each party to a case with significant e-discovery issues may designate an e-discovery liaison for purposes of assisting counsel, meeting, conferring, and attending court hearings on the subject. Regardless of whether the liaison is an attorney (in-house or outside counsel), a third-party consultant, or an employee of the party, he or she should be:

    • familiar with the party's electronic information systems and capabilities in order to explain these systems and answer relevant questions;

    • knowledgeable about the technical aspects of e-discovery, including the storage, organization, and format issues relating to ESI; and

    • prepared to participate in e-discovery dispute resolutions.

    The attorneys of record are responsible for compliance with e-discovery requests and, if necessary, for obtaining a protective order to maintain confidentiality while facilitating open communication and the sharing of technical information. However, the liaison should be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

# AT THE RULE 26(f) CONFERENCES

11. **General**

    At the Rule 26(f) conference or prior to the conference if possible, a party seeking discovery of ESI should notify the opposing party of that fact immediately, and, if known at that time, should identify as clearly as possible the categories of information that may be sought. Parties and counsel are reminded that, under Rule 34, if the requesting party has not designated a form of production in its request, or if the responding party objects

to the designated form, the responding party must state the form it intends to use for producing ESI. In cases with substantial ESI issues, counsel should assume that this discussion will be an ongoing process and not a one-time meeting.[9]

12. **Reasonably Accessible Information and Costs**

   a. The volume of, and ability to search, ESI means that most parties' discovery needs will be satisfied from reasonably accessible sources. Counsel should attempt to determine if any responsive ESI is not reasonably accessible, i.e., information that is only accessible by incurring undue burdens or costs. If the responding party is not searching or does not plan to search sources containing potentially responsive information that is not reasonably accessible, it must identify the category or type of such information. If the requesting party intends to seek discovery of ESI from sources identified as not reasonably accessible, the parties should discuss: (1) the burden and cost of accessing and retrieving the information, (2) the needs that may establish good cause for requiring production of all or part of the information, even if the information sought is not reasonably accessible, and (3) conditions on obtaining and producing this information such as scope, time, and allocation of cost.

   b. Absent a contrary showing of good cause, the parties should generally presume that the producing party will bear all costs for reasonably accessible ESI. The parties should generally presume that there will be cost sharing or cost shifting for ESI that is not reasonably accessible.

13. **Creation of a Shared Database and Use of a Single Search Protocol**

   In appropriate cases, counsel may want to attempt to agree on the construction of a shared database, accessible and searchable by both parties. In such cases, they should consider both hiring a neutral vendor and/or using a single search protocol with a goal of minimizing the costs of discovery for both sides.[10]

14. **Removing Duplicated Data and De-NISTing**

   Counsel should discuss the elimination of duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians, also known as vertical and horizontal views of ESI.

   In addition, counsel should discuss the de-NISTing of files which is the use of an automated filter program that screens files against the NIST list of computer file types to separate those generated by a system and those generated by a user. [NIST (National Institute of Standards and Technology) is a federal agency that works with industry to develop technology measurements and standards.] NIST developed a hash database of

---

[9] For a more detailed description of matters that may need to be discussed, see Craig Ball, *Ask and Answer to Right Questions in EDD,* LAW TECHNOLOGY NEWS, Jan. 4, 2008, reprinted in these Guidelines with permission at Appendix 1.

[10] Vice Chancellor Travis Laster recently ordered, *sua sponte*, counsel to retain a single discovery vendor to be used by both sides and to conduct document review with the assistance of predictive coding. *EORHB, Inc., v. HOA Holdings, LLC*, C.A. No. 7409-VCL (Del. Ch. Oct. 15, 2012). Vice Chancellor Laster later modified these requirements. *See EORHB, Inc. v HOA Holdings, LLC*, No. CIV.A. 7409-VCL, 2013 WL 1960621, at *1 (Del. Ch. May 6, 2013).

computer files to identify files that are system generated and generally accepted to have no substantive value in most cases.[11]

15. **Search Methodologies**

If counsel intend to employ technology assisted review[12] (TAR) to locate relevant ESI and privileged information, counsel should attempt to reach agreement about the method of searching or the search protocol. TAR is a process for prioritizing or coding a collection of documents using a computerized system that harnesses human judgments of one or more subject matter expert(s) on a smaller set of documents and then extrapolates those judgments to the remaining document collection.[13]

If word searches are to be used, the words, terms, and phrases to be searched should be determined with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. In addition, any attempt to use word searches should be based on words that have been tested against a randomly-selected sample of the data being searched.

Counsel also should attempt to reach agreement as to the timing and conditions of any searches, which may become necessary in the normal course of discovery. To minimize the expense, counsel may consider limiting the scope of the electronic search (e.g., time frames, fields, document types) and sampling techniques to make the search more effective.

16. **E-Mail**

Counsel should attempt to agree on the scope of e-mail discovery and e-mail search protocol. The scope of e-mail discovery may require determining whether the unit for production should focus on the immediately relevant e-mail or the entire string that contains the relevant e-mail. In addition, counsel should focus on the privilege log ramifications of selecting a particular unit of production.[14]

17. **Deleted Information**

Counsel should attempt to agree on whether responsive deleted information still exists, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration.

18. **Meta and Embedded Data**

Counsel should discuss whether "embedded data" and "metadata" exist, whether it will be requested or should be produced, and how to handle determinations regarding privilege or protection of trial preparation materials.

---

[11] http://www.thesedonaconference.org/dltForm?did=glossary2010.pdf.
[12] The Grossman-Cormack Glossary of Technology-Assisted Review.
[13] There is no current agreement on what to call the searches that are performed with the assistance of technology. Some currently used other terms include: (CAR) computer assisted review, predictive coding, concept search, contextual search, boolean search, fuzzy search and others.
[14] *In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005).

19. **Data Possessed by Third Parties**

    Counsel should attempt to agree on an approach to ESI stored by third parties. This includes files stored on a cloud server and social networking data on services such as Facebook, Twitter, and Instagram.

20. **Format and Media**

    The parties have discretion to determine production format and should cooperate in good faith to promote efficiencies. Reasonable requests for production of particular documents in native format with metadata intact should be considered.

21. **Identifying Information**

    Because identifying information may not be placed on ESI as easily as bates stamping paper documents, methods of identifying pages or segments of ESI produced in discovery should be discussed.[15] Counsel is encouraged to discuss the use of a digital notary, hash value indices, or other similar methods for producing native files.

22. **Priorities and Sequencing**

    Counsel should attempt to reach an agreement on the sequence of processing data for review and production. Some criteria to consider include ease of access or collection, sources of data, date ranges, file types, and keyword matches.

23. **Privilege**

    Counsel should attempt to reach an agreement regarding what will happen in the event of inadvertent disclosure of privileged or trial preparation materials[16] If the disclosing party inadvertently produces privileged or trial preparation materials, it must notify the requesting party of such disclosure. After the requesting party is notified, it must return, sequester, or destroy all information and copies and may not use or disclose this information until the claim of privilege or protection as trial preparation materials is resolved.

    A. To accelerate the discovery process, the parties may establish a "clawback agreement," whereby materials that are disclosed without intent to waive privilege or protection are not waived and are returned to the responding party, so long as the responding party identifies the materials mistakenly produced. Counsel should be aware of the requirements of Federal Rule of Evidence 502(d) to protect against waivers of privilege in other settings.

    B. The parties may agree to provide a "quick peek," whereby the responding party provides certain requested materials for initial examination without waiving any privilege or protection.

---

[15] For a viable electronic alternative to bates stamps, see Ralph C. Losey, *HASH: The New Bates Stamp*, 12 J. Tech. L. & Pol'y 1 (2007).

[16] In addition, counsel should comply with current rules and case law on the requirement of creating privilege logs.

Other voluntary agreements should be considered as appropriate. Counsel should be aware that there is an issue of whether such agreements bind third parties who are not parties to the agreements. Counsel are encouraged to seek an order from the Court pursuant to Rule 502(d). However, the Court may enter a clawback arrangement for good cause even if there is no agreement. In that case, third parties may be bound but only pursuant to the court order.[17]

## DISCOVERY PROCESS

24. **Timing**

    Counsel should attempt to agree on the timing and sequencing of e-discovery. In general, e-discovery should proceed in the following order.

    **(a)** **Mandatory Disclosure**

    Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) must include any ESI that the disclosing party may use to support its claims or defenses (unless used solely for impeachment). To determine what information must be disclosed pursuant to this rule, counsel should review, with their clients, the client's ESI files, including current, back-up, archival, and legacy computer files. Counsel should be aware that documents in paper form may have been generated by the client's information system; thus, there may be ESI related to that paper document. If any party intends to disclose ESI, counsel should identify those individuals with knowledge of their client's electronic information systems who can facilitate the location and identification of discoverable ESI prior to the Rule 26(f) conference.

    **(b)** **Search of Reasonably Accessible Information**

    After receiving requests for production under Federal Rule Civil Procedure 34, the parties shall search their ESI, other than that identified as not reasonably accessible due to undue burden and/or substantial cost, and produce responsive information in accordance with Rule 26(b).

    **(c)** **Search of Unreasonably Accessible Information**

    Electronic searches of information identified as not reasonably accessible should not be conducted until the initial search has been completed, and then only by agreement of the parties or pursuant to a court order. Requests for electronically stored information that is not reasonably accessible must be narrowly focused with good cause supporting the request. *See* Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment (good cause factors).

    **(d)** **Requests for On-Site Inspections**

---

[17] *See Rajala v. McGuire Woods, LLP*, No. 08-2638-CM-DJW, 2010 WL 2949582 (D. Kan. July 22, 2010).

> Requests for on-site inspections of electronic media under Federal Rule of Civil Procedure 34(b) should be reviewed to determine if good cause and specific need have been demonstrated.

25. **Discovery Concerning Preservation and Collection Efforts**

    Discovery concerning the preservation and collection efforts of another party, if used unadvisedly, can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matters. Routine discovery into such matters is therefore strongly discouraged and may be in violation of Rule 26(g)'s requirement that discovery be "neither unreasonable nor unduly burdensome or expensive." Prior to initiating any such discovery, counsel shall confer with counsel for the party from whom the information is sought concerning: (i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Discovery into such matters may be compelled only on a showing of good cause considering these aforementioned factors. However, deponents who provide testimony on the merits are not exempt from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

26. **Duty to Meet and Confer When Requesting ESI from Non-Parties (Fed. R. Civ. P. 45)**

    Counsel issuing requests for ESI from non-parties should attempt to informally meet and confer with the non-party (or counsel, if represented). During this meeting, counsel should discuss the same issues regarding ESI requests that they would with opposing counsel as set forth in Paragraph 11 above.

December 1, 2015

# APPENDIX 1

# Ask and Answer the Right Questions in EDD

Craig Ball
*Law Technology News*
January 4, 2008

Sometimes it's more important to ask the right questions than to know the right answers, especially when it comes to nailing down sources of electronically stored information, preservation efforts and plans for production in the FRCP Rule 26(f) conference, the so-called "meet and confer."

The federal bench is deadly serious about meet and confers, and heavy boots have begun to meet recalcitrant behinds when Rule 26(f) encounters are perfunctory, drive-by events. Enlightened judges see that meet and confers must evolve into candid, constructive mind melds if we are to take some of the sting and "gotcha" out of e-discovery. Meet and confer requires intense preparation built on a broad and deep gathering of detailed information about systems, applications, users, issues and actions. An hour or two of hard work should lie behind every minute of a Rule 26(f) conference. Forget "winging it" on charm or bluster and forget "We'll get back to you on that."

Here are 50 questions of the sort I think should be hashed out in a Rule 26(f) conference. If you think asking them is challenging, think about what's required to deliver answers you can certify in court. It's going to take considerable arm-twisting by the courts to get lawyers and clients to do this much homework and master a new vocabulary, but, there is no other way.

These 50 aren't all the right questions for you to pose to your opponent, but there's a good chance many of them are . . . and a likelihood you'll be in the hot seat facing them, too.

1. What are the issues in the case?
2. Who are the key players in the case?
3. Who are the persons most knowledgeable about ESI systems?
4. What events and intervals are relevant?
5. When did preservation duties and privileges attach?
6. What data are at greatest risk of alteration or destruction?
7. Are systems slated for replacement or disposal?
8. What steps have been or will be taken to preserve ESI?
9. What third parties hold information that must be preserved, and who will notify them?
10. What data require forensically sound preservation?
11. Are there unique chain-of-custody needs to be met?
12. What metadata are relevant, and how will it be preserved, extracted and produced?
13. What are the data retention policies and practices?
14. What are the backup practices, and what tape archives exist?
15. Are there legacy systems to be addressed?

16. How will the parties handle voice mail, instant messaging and other challenging ESI?
17. Is there a preservation duty going forward, and how will it be met?
18. Is a preservation or protective order needed?
19. What e-mail applications are used currently and in the relevant past?
20. Are personal e-mail accounts and computer systems involved?
21. What principal applications are used in the business, now and in the past?
22. What electronic formats are common, and in what anticipated volumes?
23. Is there a document or messaging archival system?
24. What relevant databases exist?
25. Will paper documents be scanned, and if so, at what resolution and with what OCR and metadata?
26. What search techniques will be used to identify responsive or privileged ESI?
27. If keyword searching is contemplated, can the parties agree on keywords?
28. Can supplementary keyword searches be pursued?
29. How will the contents of databases be discovered? Queries? Export? Copies? Access?
30. How will de-duplication be handled, and will data be re-populated for production?
31. What forms of production are offered or sought?
32. Will single- or multipage .tiffs, PDFs or other image formats be produced?
33. Will load files accompany document images, and how will they be populated?
34. How will the parties approach file naming, unique identification and Bates numbering?
35. Will there be a need for native file production? Quasi-native production?
36. On what media will ESI be delivered? Optical disks? External drives? FTP?
37. How will we handle inadvertent production of privileged ESI?
38. How will we protect trade secrets and other confidential information in the ESI?
39. Do regulatory prohibitions on disclosure, foreign privacy laws or export restrictions apply?
40. How do we resolve questions about printouts before their use in deposition or at trial?
41. How will we handle authentication of native ESI used in deposition or trial?
42. What ESI will be claimed as not reasonably accessible, and on what bases?
43. Who will serve as liaisons or coordinators for each side on ESI issues?
44. Will technical assistants be permitted to communicate directly?
45. Is there a need for an e-discovery special master?
46. Can any costs be shared or shifted by agreement?
47. Can cost savings be realized using shared vendors, repositories or neutral experts?
48. How much time is required to identify, collect, process, review, redact and produce ESI?
49. How can production be structured to accommodate depositions and deadlines?
50. When is the next Rule 26(f) conference (because we need to do this more than once)?