## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <br><br> <u>and</u> <br><br> **CHAD M. KOEHN** <br><br>         Plaintiffs, counter-defendants <br>     v. <br> Michael Nelson <br><br>         Defendant; Counter-Plaintiff <br> PRO-Se. | <span style="background:yellow">DOCKET NO.:    5:22-CV-04008-JWB-GEB</span> <br> **CIVIL ACTION** <br><br> **Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022** <br><br> **[Jury Trial Demanded]** |

    <u>Counter-Plaintiff and Defendant ("Nelson"), makes "LIMITED APPEARANCE"</u> to

file **Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for**

**Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad**

**Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google**

**30 July 2022** in Response to Chad Koehn ("KOEHN") & United Capital Management of

Kansas Inc. (UCMK):

    Once again IF not for THIRD party non-profits monitoring the case here at bar,

Mister Nelson would be absent the ability to response with a response to the frivolous

objections and copied and pasted case laws and copied and pasted regurgitation of objections

made by Chad M. Koehn and UCMK and their document 131, Memorandum in Opposition

to the dutiful in the interests of Judicial Conservation of Resources and providing for Judicial

Economy filing for Judicial Notice so therein made in document 116, by Mister Nelson.   As

================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

of this date 14 August 2022, Koehn and UCMK have yet again set forth a certificate of service and failed to provide the document they claim to have noticed and thus sent to the opposing party, the undersigned pro se, peon, Mister Nelson.  It is utterly unfair, immoral, unethical, should be illegal, absolutely against fairness, a violation of the Federal Rules of Civil Procedure, Local Rules, Pillars of Professionalism, and certainly violates the Rules of Professional Conduct, for Koehn and UCMK each and their attorneys to continually make filings to the Court and not provide the same to the opposing party, as they have done throughout the litigation ad nauseum, requiring the pro se, pedestrian peon Mister Nelson to rely upon THIRD PARTY not for profit entities that monitor court filings in order to be given the opportunity to respond to the filings made by Koehn and UCMK in this matter.

Response to Koehn and UCMK "Discussion":  It is evident and apparent to the reasoned mind operating from logic, reason and truth that Chad M. Koehn and UCMK, neither understand the meaning nor historical context of Judicial Notice, and its long standing application upon issues before the bar.  Judicial notice has long-standing roots. Based on the ancient adage *manifesta non indigent probatione*, or **"what is known need not be proved,"** judicial notice is one of the oldest doctrines in common law. Originally, judicial notice was a tool of convenience, used by judges with broad authority based on their own common knowledge.

Federal Rule 201 paved the way for judicial notice to focus less on the common knowledge of judges, and more on the source of the fact. This seemingly slight change has

====================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 2

broadened the application of the rule, and, coupled with the technological revolution, opened the door to an infinite amount of noticeable material. The use of judicial notice at trial developed as a matter of common sense and convenience. The opportunity to save time, work, and money made judicial notice a valuable resource, in line with Conservation of Judicial Resources and providing for Judicial Economy. As John Henry Wigmore explained:

"The object of this rule is to *save time, labor, and expense in securing and introducing evidence on matters which are not ordinarily capable of dispute and are actually not* bona fide *disputed*, and the tenor of which safely be assumed from the tribunal's general knowledge or from slight research on its part. . . It thus becomes a useful expedient for *speeding trials and curing informalities*." *JOHN HENRY WIGMORE, THE POCKET CODE OF THE RULES OF EVIDENCE IN TRIALS AT LAW § 2120 (1910)* **[Emphasis Added].**

Wigmore identified three general classes of matters that were authorized to be judicially noticed:

A. Matters which are necessary for exercising the judicial functions and are therefore likely to be already known to the judge by virtue of his office;

B. Matters which are actually so notorious evidence would be unnecessary;

C. Matters not either necessary for the judge to know nor actually notorious, but are capable of such positive and exact proof, if demanded, that no party would be likely to

===================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 3

impose upon the tribunal of a false statement in the presence of an intelligent adversary ***Id.* at § 2130.**

Without argument as to the "intelligence" of the adversarial process, certainly what can be readily and easily observed by the Court, and provides for Conservation of Judicial Resources, of matters which materially moves the litigation towards substantial resolution or determination and is therefore within the scope of FRCP Rule 1, must be considered for Judicial Notice and so noticed upon request of a party and the Court being supplied with the evidence to do so thereby being in alignment with both *FRE 201 and FRCP Rule 1.*

Chad Mitchell Koehn and UCMK say: "The ten paragraphs are not the proper subject of judicial notice.", page 4, Doc. 131; to back up their argumentative statement Chad Koehn states: "The ten paragraphs requested to be judicially noticed by the Court are simply arguments made by Mr. Nelson resulting from the search results he ascertained on July 30, 2022." page 4 Doc. 131. What seemingly escapes Koehn and UCMK's argument is the fact the, statements as made in the request for Judicial Notice, are searches for 10 randomized phrases, covering largely a sampling of possible phrases one could search regarding both those complained of subject matter in the SLAPP (Strategic Lawsuit Against Public Participation) suit filed by Koehn and UCMK, and the Court is so provided with the search term and/or phrase, as well as a link, to confirm the search results, as well as the Court is provided with the results themselves, as found on the date, the Court can surely make Judicial Notice as to the search results appearing upon the day when the Court takes the

===============================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 4

Judicial Notice so requested, and attach therewith those results if at all different from those previously presented to the Court in Document 116, by Mister Nelson.

Chad Mitchell Koehn and UCMK, as has been a repeated file woefully deficient persistent objections to the Judicial Notices sought by Mister Nelson.   Koehn and UCMK have engaged in patterned and repeated copy and paste objection filings for no other reason than to frustrate the legal proceedings, increase costs to the parties and the Court, thus the public at large and generally as a means to delay and create more work than is necessary in the proceedings.  The actions and behavior of Chad Mitchell Koehn and UCMK are not in conformity with Federal Rules of Civil Procedure Rule 1, as the copied and pasted broad based objections without any foundation nor legal ground simply provides for increased expenses, thus making the litigation not inexpensive, certain delay in resolution and/or determination, therefore not making the litigation speedy, and given the repeated woefully deficient in foundation, causation, nexus and standing of the copied and pasted objections without any direct evidence nor argument regarding the material to be so Judicially Noticed, provide for an unjust determination; thereby violating all three principles as laid out in Federal Rules of Civil Procedure Rule 1, providing for just, speedy and inexpensive determination of every matter before the Court.  Mister Nelson on the other hand has sought where appropriate to find issues and matters which are proper and well positioned for Judicial Notice, as their accuracy and proof cannot be reasonably challenged in the face of an intelligent adversary.  Here Koehn and UCMK seemingly request the Court to deem them

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 5

both and their counsel unintelligent adversaries, incapable of seeking cooperation and their attempt to claim the proof absolute of any person whether a Court Clerk, a Judge or Koehn and/or UCMK personnel being able to click a link provided to the precise Search Term and/or phrase presented, is an action which Koehn and UCMK cannot complete. This is utter nonsense, Koehn and UCMK simply seek to copy and paste the exact same argument over and over and over again, in similar fashion as their previous pleadings in the matter so dictate where Koehn and UCMK began the litigation with filing repetitive woefully deficient motions to strike, without complying first with FRCP Rule 7.1(a) or Rule 7.1(b), and instead believe by berating and badgering the Court with repetitive woefully deficient filings, which are simply copied and pasted recycled arguments and sending them to the Court, and purposefully and maliciously not sending them to the person of the opposing pro se party, thereby effectively engaging in ex parte communication with the Court and violating the Due Process rights of the pro se party somehow provides them some form of personal relief and/or spiteful woefully unprofessional filings, which are neither aimed at the subject matter of the requests for Judicial Notice, nor have a foundation and basis in law or case precedents they cite in their woefully deficient and repetitive copy and pasted legal precedents and citation of law.

Koehn and UCMK fall into the same pitfall that is bestowed upon all persons who believe by simply copying and pasting the same argument over and over it will somehow fit into the shoes of an argument without providing more. Here Koehn and UCMK regurgitate

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 6

their go to legal argument why the Court should not grant Judicial Notice, by constantly

citing a case from the Ninth Circuit; *Khoja v. Orexigen Therapeutics, 899 F.3d 988, 999 (9th*

*Cir. 2018), cert. denied U.S., (2019)..* The Ninth Circuit has made clear that "[a] court must

also consider—and identify—which fact or facts it is noticing from ... [a document. Just

because the document itself is susceptible to judicial notice does not mean that every

assertion of fact within that document is judicially noticeable for its truth." Id.

Koehn and UCMK, miss entirely the request made by the pro se, non-legally

educated, pedestrian, proletarian Mister Nelson, who has well articulated the material to be

so Judicially Noticed, by demonstration of the preponderance of evidence and direct

correlation to the issues at bar, in the SLAPP petition filed by Koehna and UCMK, wherein

Mister Nelson, points to the facts and provides with them direct links for the Court to

confirm the search results for the 10 (ten) randomized sampling of phrases presented for

Judicial Notice. Mister Nelson has neither expounded upon nor expanded the request for

Judicial Notice, outside the scope of what is logical and reasonable for the Court to find as

irrefutable fact for Judicial Notice, and since the SLAPP petition even the reworded and

added to SLAPP petition void now of the racial slur of hate. Mister Nelson asks not for any

irrelevant information to be so noticed and instead Mister Nelson asks only for the

information as factual as it is and directed as it is for the Court to so be moved to Judicially

Notice, as the Court here should do now, in the interests of conservation of Judicial

Resources and in the interests of the still now pending Motions to Dismiss whether under

=================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 7

12(b)(6) and/or Motions to Strike as the SLAPP petition filed by Koehn and UCMK is exactly as charged a SLAPP petition aimed squarely at preventing protected speech and thus allowing Koehn and UCMK to escape the serious consequences of what is now evident within the docket and record including all exhibits thereto of serious securities irregularities possibly even securities fraud and nefarious criminal activities.

"Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.* , 692 F.Supp.2d 1174, 1178 (N.D.Cal.2010) (citation omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.* , 442 F.3d 741, 746 n.6 (9th Cir.2006) (The court "may take judicial notice of court filings and other matters of public record."). While "[a] court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. San Diego Cnty.* , 432 F.Supp.2d 1035, 1043 (S.D.Cal.2006).

"[t]he district court obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material." *Charles Alan Wright et al., 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2016) (citing Ott v. Home Sav. & Loan Ass'n , 265 F.2d 643, 646–48 (9th Cir.1958) ).*

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to

=================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 8

respond." *United States v. Ritchie* , 342 F.3d 903, 907–08 (9th Cir.2003) (citing Fed. R. Civ. P. 12(b) ; *Parrino v. FHP, Inc.* , 146 F.3d 699, 706 n.4 (9th Cir.1998) ). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN* , 284 F.3d 977, 980 (9th Cir.2002) ; *Barron v. Reich* , 13 F.3d 1370, 1377 (9th Cir.1994) ; 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 1999)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (citing *Van Buskirk* , 284 F.3d at 980 ; *Branch v. Tunnell* , 14 F.3d 449, 453–54 (9th Cir.1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara* , 307 F.3d 1119 (9th Cir.2002) ; *Venture Assoc. Corp. v. Zenith Data Sys. Corp.* , 987 F.2d 429, 431 (7th Cir.1993) ). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* ; *see also Marder v. Lopez* , 450 F.3d 445, 448 (9th Cir.2006) ("The court may treat ... a document [incorporated by reference] as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).' ") *(citing Ritchie , 342 F.3d at 908 ).*

   The United States Supreme Court in *Brown v. Piper*, 91 U.S. 37 (1875) provides a good example of judicial notice during the early common law period. In that case, Piper filed

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 9

an action to prevent Brown from infringing on his patent for preserving fish using a freezing mixture. Brown denied that Piper held a patent on the freezing mixture, and further denied the novelty of the invention. The circuit court upheld the validity of Piper's patent.   The Supreme Court reversed. Relying on judicial notice, the Court held that evidence of what is old and in general use at the time of an alleged invention is admissible. I*d.* at 38.   In this instance, the Court noted that the freezing mixture was already well-known and used frequently at the time, for example, in preserving a corpse, or in animals which were found undecomposed in the ice of Siberia and "which must have been embalmed in ice for ages." *Id. at 43 (quoting Tit. "Antiseptic," 1 AMER. ENCYCLO. 570).*   The Court added that to require proof of every fact "would be utterly and absolutely absurd," and that "[c]ourts will take notice of whatever is generally known within the limits of their jurisdiction; and, if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper." *Id.* at 42.  This case illustrates a classic example of the benefits of judicial notice, and the obvious results that stem from its application: a freezing mixture used to preserve fish is not novel when anyone can look around to see ice has been used for years to preserve other items.

The facts requested for Judicial Notice in Mister Nelson's Document 116, matter squarely and fairly to the subject matter of the SLAPP petition that was filed by Koehn and UCMK, claiming among other things supposed defamation, relating to "securities irregularities".  Federal Rule of Evidence 201 allows courts to take judicial notice of

==================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 10

adjudicative facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The "adjudicative fact" requirement refers to facts "that relate to the parties." *FED. R. EVID. 201(b) Advisory Committee's Notes.* Which here the facts are directly relevant to the parties in the claims of Chad Mitchell Koehn and UCMK claiming defamation for "securities irregularities" and a whistleblower who in the first amended complaint Koehn and UCMK add the phrase "working with the government" which is absent in the originating SLAPP petition replete with the racial slur, which was ORDERED by the Court to be removed in Koehn and UCMK's first amended complaint where they add a variety of phrases for example "proprietary persons" and "working with the government". The request for judicial notice is well formulated in the subject matter of the SLAPP petition by Chad Mitchell Koehn & UCMK.

First, judicial notice can be used as a substitute for the presentation of evidence. Generally, a party asserting a fact bears the burden of proving the fact with evidence. Evidence must be supported by authentication. *FED. R. EVID. 901.* Judicial notice allows the parties to skip this burden in certain instances. S*ee Castillo-Villagra* v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992) (Stating "[n]otice is a way to establish the existence of facts without evidence," and holding that to deny aliens an opportunity to be heard on facts of which the Board of Immigration Appeals took notice, that political group Sandinistas were

===============================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 11

out of power in Nicaragua and that any fear of persecution which aliens might have had could no longer be well-founded, denied aliens due process).   If the appropriate opportunity presents itself, instead of spending time authenticating a document or laying the foundation for a witness, consider whether judicial notice would apply.

Second, judicial notice is not merely one way to establish a fact. Many have argued it is the *most* efficient and powerful way to establish a fact.  As Leonard M. Niehoff suggests in his article "Judicial Notice: The *Deus Ex Machina* of Evidence":

> [J]udicial notice is an aspiring star of unfulfilled potential. Its stage presence is extremely powerful because a notice fact is a *conclusively established fact*. Successfully invoke judicial notice and *Voila!* The fact in question is not merely supported, it is settled.  27 Litigation 31 (Fall 2000).

A judge and jury have a special relationship. In most courtroom settings, the judge is the first person who greets the jury in the morning, and dismisses them at the end of the day. The judge acts as the gatekeeper for evidence the jury can hear, sets the rules by which the trial is performed, provides instructions to the jury and the law on which to base their decisions, and in most instances, is the only unbiased party in the courtroom at any given time. Any opportunity to have the judge tell the jury they should "accept this fact as conclusively established" is a powerful one that should not be underestimated.

================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 12

Third, judicial notice can be used as a workaround for the exclusion of evidence. Generally, courts cannot consider evidence outside the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co. 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)* (holding judgment should not have been entered against party who was not named in amended complaint). However, facts subject to judicially notice can be considered at this stage. *Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987)* (holding that bankruptcy judges are entitled to judicial immunity from civil liability for damages arising from their judicial acts, and taking judicial notice of entries on the docket of underlying bankruptcy case as evidence that party had alternative remedies through appeal or extraordinary writ).

Computers are now a common sight in courtrooms. *Verizon Directories Corp. v. Yellow Book USA, Inc., 331 F. Supp. 2d 136, 142 (E.D.N.Y. 2004)* ("Technology in litigation has changed enormously since the adoption of the Federal Rules of Evidence in 1975. . . . As one commentator put it, '[d]esktop portable computers now bedeck courtrooms like dandelions in May and, like dandelions, their number, use and application continue to grow.'" *(quoting Edward A. Hannan, Computer-Generated Evidence: Testing the Envelope, 63 DEF. COUNS. J. 353, 362 (1996).* Participants in the fact-finding process can now access a reliable, factually accurate answer by "Googling" it or using equivalent electronic search technology. The term "Google search" as a generic term for a search on any Internet

================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 13

search engine.   Google is the number one search engine in the world.   To "Google" a

subject for inquiry has become recognized as a verb in the English language. See Google,

DICTIONARY.COM, http://dictionary.reference.com/browse/google?s=t ("[T]o use a search

engine such as Google to find information, a website address, etc., on the Internet.").   In

assessing whether, in the language of Rule 201, a source proffered as worthy of judicial

notice is one whose "accuracy cannot reasonably be questioned," courts should look to three

factors: (1) the source's knowledge of the subject matter, (2) the source's independence from

relevant bias, and (3) the source's motivation to ensure accuracy of the posted information.

infra Parts III & IV.

This new framework is needed because judges and litigants are already relying on

search engines to find facts, investigate witnesses, and prepare their cases before trial, even

in the absence of a cohesive theory.  *See RICHARD A. POSNER, REFLECTIONS ON*

*JUDGING 141–42 (2013)* ("The Internet is not going away. The quality and quantity of

online material that illuminates the issues in federal litigation will only grow. Judges must

not ignore such a rich mine of information."). See generally Thaddeus Hoffmeister,

Investigating Jurors in the Digital Age: One Click at a Time, 60 U. KAN. L. REV. 611,

611–12 (2012) (discussing how litigants use the Internet and social media to investigate

jurors during voir dire); Amy J. St. Eve & Michael A. Zuckerman, Ensuring an Impartial

Jury in the Age of Social Media, *11 DUKE L. & TECH. REV. 1, 20–24 (2012)* (surveying

================================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 14

jurors on their use of social media during trials); Lior Jacob Strahilevitz, Reputation Nation:

Law in an Era of Ubiquitous Personal Information, 102 NW. U. L. REV. 1667, 1688–94

(2008) (describing the global availability of personal information on the Internet); Ebony

Nicolas, Note, A Practical Framework for Preventing "Mistrial by Twitter," *28 CARDOZO*

*ARTS & ENT. L.J. 385, 386 (2010)* (discussing the impact of Twitter on juries and jury

trials); Caren Myers Morrison, Can the Jury Survive Google?, *CRIM. JUST., Winter 2011,* at

4, 8 (discussing the problem of jurors conducting their own factual research through Internet

sources).

Judges have been known to resolve questions through independent Internet research.

*See, e.g., Thaddeus Hoffmeister, Google, Gadgets, and Guilt: Juror Misconduct in the Digital*

*Age, 83 U. COLO. L. REV. 409, 449 (2012); Caren Myers Morrison, Jury 2.0, 62 HASTINGS*

*L.J. 1579, 1582 (2011); Elizabeth G. Thornburg, The Curious Appellate Judge: Ethical*

*Limits on Independent Research, 28 REV. LITIG. 131, 159 (2008); Amanda McGee, Note,*

*Juror Misconduct in the TwentyFirst Century: The Prevalence of the Internet and Its Effect*

*on American Courtrooms, 30 LOY. L.A. ENT. L. REV. 301, 303–04 (2010)*

The Federal Rules of Evidence were designed to adapt to changing trial realities, and

they offer useful insights into how a particular trial judge should evaluate a particular fact.

See FED. R. EVID. 102 ("These rules should be construed so as to . . . promote the

development of evidence law . . . .").  Judicial notice has an ancient pedigree. Although it

====================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 15

was first referenced in treatises in 1824, *JAMES BRADLEY THAYER, A PRELIMINARY TREATISE ON EVIDENCE AT THE COMMON LAW 279 & n.1 (1898)* ("We are the less surprised, therefore, to find that it was not until Starkie printed his book on evidence, in 1824, that any special mention of this subject occurs in legal treatises on evidence; and that [Starkie] has very little to say about it. . . . He concludes, inter alia, that a judge should be allowed 'at the instance of either party to pronounce, and, in the formation of the ground of the decision, assume, any alleged matter of fact as notorious,' subject to the right of the other party to deny the notoriety and call for proof."); *John T. McNaughton, Judicial Notice—Excerpts Relating to the Morgan–Wigmore Controversy, in ESSAYS ON PROCEDURE AND EVIDENCE 56, 59* (Thomas G. Roady Jr. & Robert N. Covington eds., 1961) ("The expression 'judicial notice' is of obscure origin. Bentham discusses the subject in his works written between 1802 and 1812 but does not use the phrase 'judicial notice.' A variation of it appears, perhaps for the first time, in the sideheads of a treatise by Starkie in 1824." (citing Jeremy Bentham, Rationale of Judicial Evidence, in *THE WORKS OF JEREMY BENTHAM 208, 276–78 (John Bowring ed., 1843).*

The concept of judicial notice emerged from a judge-centered, common-law tradition in order to make fact-finding more efficient and accurate. Examples of courts taking notice of generally accepted facts can be found as far back as the fourteenth century. See THAYER, supra note 24, at 282 ("In 1302, in an assize of novel disseisin against John de Wilton and

===============================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 16

others, a plea in abatement for misnomer was put forward: . . . [']Sir John answers and says that his name is John de Willington; judgment of the writ . . . . He is known through all England as Willington, and by no other name, and that well know we; and therefore as to John you shall take nothing by your writ.' This, as we have it, is giving judgment upon a point of ordinary fact as being notorious.").

The object of this rule is to save time, labor, and expense in securing and introducing evidence on matters which are not ordinarily capable of dispute and are actually not bona fide disputed, and the tenor of which can safely be assumed from the tribunal's general knowledge or from slight research on its part. . . . It thus becomes a useful expedient for speeding trials and curing informalities. *JOHN HENRY WIGMORE, A POCKET CODE OF THE RULES OF EVIDENCE IN TRIALS AT LAW § 2120 (1910)*. Initially arising as a means to soften strict pleading rules, in which the omission of a fact could result in the dismissal of a complaint, *Lewis W. Beilin, Comment, In Defense of Wisconsin's Judicial Notice Rule, 2003 WIS. L. REV. 499, 503* ("James Bradley Thayer located the origins of judicial notice in summary judgment procedure under the early, strict pleading rules. According to Thayer, early American courts occasionally noticed obvious facts omitted from a pleading in order to avoid having to dismiss the claim outright." (citing THAYER, supra note 24, at 279)) judicial notice became a useful shortcut in the ordinary course of trial. Kenneth Culp Davis, *Judicial Notice, 55 COLUM.*

===============================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 17 -

*L. REV. 945, 951 (1955)* ("[J]udicial notice 'is an instrument of great capacity in the hands of a competent judge; and it is not nearly as much used . . . as it should be. . . . [T]he failure to exercise it tends daily to smother trials with technicality and monstrously lengthens them out.'" (quoting *THAYER*, supra note 24, at 309)).   Central to the legitimacy of the shortcut, however, was the correctness of the judicially noticed fact. *Warren F. Schwartz, A Suggestion for the Demise of Judicial Notice of "Judicial Facts," 45 TEX. L. REV. 1212, 1212 (1967)* (Judicial notice is understood to be facts that are "so indisputably settled that although normally in the province of the fact finder (usually a jury) it can be resolved by the judge without hearing evidence. . . . The test for permitting judicial notice is whether the facts 'are so generally known or of such common notoriety within the territorial jurisdiction . . . that they cannot reasonably be the subject of dispute. . . . [or] are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.'" (quoting *UNIF. R. EVID. 9(2))).*

Judicially noticed facts were either "notorious"  *WIGMORE, supra note 30, § 2130 (internal brackets omitted)* ("The classes of matters which are authorized to be judicially noticed are as follows: A. Matters which are necessary for exercising the judicial functions and are therefore likely to be already known to the judge by virtue of his office; B. Matters which are actually so notorious in the community that evidence would be unnecessary; C. Matters which are not either necessary for the judge to know

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 18

nor actually notorious, but are capable of such positive and exact proof, if demanded, that

no party would be likely to impose upon the tribunal a false statement in the presence of

an intelligent adversary."); *JOHN HENRY WIGMORE, A TREATISE ON THE*

*ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 2571*

*(2d ed. 1923)* ("The scope of facts that may be noticed includes: (1) Matters which are so

notorious to all that the production of evidence would be unnecessary; (2) Matters which

the judicial function supposes the judge to be acquainted with, either actually or in

theory; (3) Sundry matters not exactly included under either of these heads; . . . neither

actually notorious nor bound to be judicially known, yet they would be capable of such

instant and unquestionable demonstration, if desired, that no party would think of

imposing a falsity on the tribunal in the face of an intelligent adversary."); (meaning

obvious) or verifiable. *McNaughton, supra note 24, at 65* ("It should be clear that the

desirability of confining decision to evidence offered by the parties must give way when

the fact is patently indisputable. This is because adherence to the general adversary

principle risks an obviously erroneous finding arguably leading to injustice in the

particular case and certainly making the court appear ridiculous.").

Search Engine results are by literal definition the result of mathematical equations

as such they are scientific in nature. Scientific Facts.—Common law courts judicially

noticed scientific facts that encompassed both the working of nature56 (e.g., "[t]he law of

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 19

gravitation, certain qualities and properties of matter, the nature and effects of heat, cold, light, etc."), *MCKELVEY, supra note 52, at 30; see also 1 FRANCIS WHARTON, A COMMENTARY ON THE LAW OF EVIDENCE IN CIVIL ISSUES, § 335 (3d ed. 1888) (footnotes omitted)* ("[T]he courts will take notice of the demonstrable conclusions of science. Thus a court will take notice of the movements of the heavenly bodies; of the graduations of time by longitude; . . . of the coincidence of days of the month with days of the week, of the order of the months . . . ."); other scientifically based conclusions…, supra note 38, at 208 (recognizing "that the court will take judicial notice, as a matter of common knowledge, that a great majority of medical writers and practitioners advocate vaccination as an efficient means of preventing smallpox"); *In re Holthausen's Will, 26 N.Y.S.2d 140, 142 (Sur. Ct. 1941)* (taking judicial notice that human pregnancy is nine months).

The Search Engine results as provided by Mister Nelson in Document 116, are not only scientific results but factual in the results as presented to the search phrases so requested for Judicial Notice therein, thus are Commonly Known Facts.—Perhaps the most amorphous category of judicial notice involves facts considered to be "general knowledge." *MCKELVEY, supra note 52, at 31* ("There is another group of facts of such a nature that courts are bound to judicially notice them. They relate to the language, customs, habits, actions, and lives of mankind."); Lester B. Orfield, Judicial Notice in

========================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 20

Federal Criminal Procedure, *31 FORDHAM L. REV. 503, 513 (1963)* ("Judicial notice is taken of matters of common knowledge. It has been held that the common knowledge concept may be extended to knowledge common to those in a particular trade. Thus, the maritime practice of making up manifests from bills of lading has been judicially noticed." (citing United States v. Rappy, 157 F.2d 964, 966 (2d Cir. 1946))).   For example, one Colorado court in the TENTH Circuit found "[i]t is a matter of common knowledge that boys occasionally do fall from bicycles." *Orman, supra note 74, at 2535 n.3 (citing Widefield Homes, Inc. v. Griego, 416 P.2d 365, 366 (Colo. 1966))*.  The addition of Rule 201(b)(2) alters the focus of judicial notice from the fact to the source of the fact. Whereas Rule 201(b)(1) focuses on whether a fact is generally known, Rule 201(b)(2) provides an alternative judicial notice mechanism based on the source involved. A judge may have no idea of a particular fact, but if an undisputable source is available, the provision allows for (or even mandates) judicial notice of that fact. *See 29 AM. JUR. 2D Evidence § 26 (2008)* (footnote omitted) ("Since judicial notice is not limited by the actual knowledge of the individual judge, judges may refresh their memories of matters properly subject to judicial notice from encyclopedias, textbooks, dictionaries, or similar publications of established authenticity.").

"The boundless avenues for fact-finding presented by the novel combination of an expansive judicial notice rule and the Internet's vast repository of information are already

=================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 21

on display in American courts. The ubiquitous practices of "Googling" unfamiliar people and things, checking weather and geography online, and seeking supplemental information on any topic through a click of a mouse are predictably moving from our personal lives onto the pages of judicial reports."  Allison Orr Larsen, Confronting Supreme Court Fact Finding, *98 VA. L. REV. 1255, 1291 (2012)* (describing digital revolution as "a game changer" for courts that brings information "just fingertips and a Google search away"); *Thornburg, supra note 19, at 159.*  "The importance of judicial notice to this phenomenon is its ability to sweep away a series of evidentiary hurdles that might otherwise frustrate efforts to bring information obtained on the Internet into the courtroom."

The first hurdle to presenting online sources to jurors is authentication.  A website can only be introduced into evidence if it is "authentic." At its core, authentication is "a special aspect of relevancy"; *FED. R. EVID. 901(a) Advisory Committee's Note.*  As here Mister Nelson simply requests Judicial Notice of search results and the specific phrases used to determine the scientific evidence of the search results resulting from the input of the phrases as specified in Document 116.  "A website is only relevant if it "is what the proponent claims it is", *Id. 901(a).*   Although much is made of this hurdle in the Information Age, it is, as with any relevance question, an easy one to surmount.  Jeffrey Bellin, eHearsay, *98 MINN. L. REV. 7, 20 n.55, 27 n.77, 50–51 & n.167 (2013)*

========================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 22

(discussing authentication of electronic evidence); Aviva Orenstein, Friends,

Gangbangers, Custody Disputants, Lend Me Your Passwords, *MISS. C. L. REV. 185,*

*222–24 (2012)* (discussing authentication of online sources); Ira P. Robbins, Writings on

the Wall: The Need for an AuthorshipCentric Approach to the Authentication of

Social-Networking Evidence, *MINN. J.L. SCI. & TECH. 1, 16–35 (2012)* (discussing

authentication of online social media evidence).

    A litigant offering a website as evidence can establish that the site is "authentic"

by relying on the usual forms of proof: testimony of a witness who explains how the

website was located. *FED. R. EVID. 901(b)(1)*. For example, if the website address is

advertised on television ("click or call"). However, here Mister Nelson provides the

direct links, hyperlinked within the document of the Motion for Judicial Notice of the

facts as requested and the directed links to Google as search engine itself. Google's

search engine as mentioned is scientific in nature and is referenced here as to the facts

requested for Judicial Notice of the results returned by Google for the search phrases as

demonstrated in Document 116 the request for Judicial Notice of specified search phrases

to Google as referenced in the document. In recognizing the authenticity of Google as

the Search Engine so requested the court can easily and readily surmise "distinctive

characteristics of the site such as a logo or web address" Id. 901(b)(4).

===================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 23

"Authentication of online sources is an evidentiary hurdle that primarily necessitates an expenditure of resources (sometimes great, sometimes meager) and court time for little purpose. It is hard to imagine many good faith disputes about whether proffered evidence really is a page from Google Maps or WebMD. Malfeasance would be foolish. The opposing party can simply go to the website to verify its authenticity, and if fraud is detected, the consequences for the offering party are dire. Wigmore's views on judicial notice fit quite neatly here. Wigmore opined that facts are appropriate for judicial notice when they are "capable of such instant and unquestionable demonstration . . . that no party would think of imposing a falsity on the tribunal in the face of an intelligent adversary." *WRIGHT & GRAHAM, supra note 9, § 5106.1 (quoting 9 WIGMORE, supra note 34, § 2571).*

The SLAPP petition as filed by Chad Mitchell Koehn and UCMK relies upon nothing more than hearsay, in order to effectively use the "Gun to the Head" as opined referenced herein above, here Mister Nelson proffers authenticated evidence for Judicial Notice in Document 116, of the search results for the phrases referenced and that of Google, and those results which Google so then has provided as scientific results of the Search algorithms of the engine Google.  The other evidentiary hurdle to the admission of online sources is the prohibition of hearsay.  *FED. R. EVID. 801,802*

========================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*
- 24 -

Most websites, like other written documents, consist of "out-of-court statements", Id. 801(c), this is simply NOT the Case with the Search Engine GOOGLE. As Google can be authenticated, and the Judicial Notice being so requested are the scientific results of Google itself. Mister Nelson is NOT proferring results from "Wikipedia" as Judicial Notice, instead the scientific results of the Search Engine Google itself is proffered for those scientific results for the search engine itself, thus the facts of those search results from the corporation providing the results themselves. Wikipedia on the other hand …—Opposite Google Maps on the spectrum of online sources accepted by courts is Wikipedia. "Citing Wikipedia is as controversial as it is common." *Fire Ins. Exch. v. Oltmanns, 285 P.3d 802, 807 (Utah Ct. App. 2012) (Voros, J., concurring)* Wikipedia is a user-generated online encyclopedia, which means that, with limited exceptions, anyone can edit its entries; About, WIKIPEDIA, http://en.wikipedia.org/wiki/Wikipedia   Though courts often cite Wikipedia to support their reasoning, they have generally declined requests to take judicial notice of facts found within its entries. Lee F. Peoples, The Citation of Wikipedia in Judicial Opinions, *YALE J.L. & TECH. 1, 7–13 (2009)* ("Most courts have wisely refused to take judicial notice of Wikipedia content.")  Although written analysis is sparse, courts may be concluding that Wikipedia is not a "source[] whose accuracy cannot reasonably be questioned." F*ED. R. EVID. 201(b)(2).* At least one commentator agrees. *Peoples, supra note 154, at 14–15* ("Wikipedia entries are not proper subjects for judicial notice under Federal Rule of Evidence 201(b) because they are not indisputable.")  Several factors make the prospect of more widespread and rational

===============================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 25

judicial notice of online sources attractive. Most obviously, the exercise can bring reliable information into the decision-making process, leading to more accurate determinations. In addition, online information is available to everyone and easy to access. *See LEE RAINIE, PEW INTERNET & AM. LIFE PROJECT, THE INTERNET AS A DIVERSION AND DESTINATION 6 (2011), available at* http://www.pewinternet.org/files/2011/12/PIP_Logging-on-forfun.pdf; *cf. Plyler v. Doe, 457 U.S. 202, 216 n.14 (1982)* (expressing "constitutional understanding that each person . . . is entitled to equal justice under the law"). The Court need not worry about whether the Internet will cooperate, assert a Fifth Amendment privilege, or slant its story when approached by one party or the other or the Court itself to litigation.

Rule 201 requires a court to take judicial notice upon request if the fact sought to be noticed "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). Judicial notice is also required if the fact is not subject to reasonable dispute and "is generally known within the trial court's territorial jurisdiction." Id. 201(b)(1). Certainly the Court going to the well known Search Engine GOOGLE and using the search phrases as listed in the Document 116, can easily determine what the scientific results coming solely and only from the search Engine Google so demonstrate upon the date when the Court takes said requested Judicial Notice, as made in the request

================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 26

with the information so therein provided. "The Federal Rules of Evidence do not

mandate any set procedure to judicially notice a fact." The only requirements in the

Rules involve: (1) how the court should take judicial notice, id. 201(c); (2) when the

court should take judicial notice, id. 201(d); and (3) a provision allowing the opposition

to be heard, id. 201(e).

Judicial notice, of course, will never replace the adversarial process, nor should it.

The phenomenon of "Trial by Google" will merely be a **timesaving mechanism** for

particular points of fact. Mirroring real life, search engines will be tools that assist

fact-finders in determining pertinent, discrete facts, but will not replace other forms of

information gathering and analysis. The judicial notice doctrine, encapsulated in Rule

201, already reflects the requisite balance between efficiency and fairness. Judicial

notice of information contained within <u>Internet sources offers an efficient and accurate</u>

<u>shortcut to resolve many issues</u> in trial. Courts should embrace this new innovation on an

old subject. Indeed, many courts are already taking judicial notice of Internet sources, and

this trend will only accelerate over time. Jurors, too, will be increasingly tempted to

(improperly) access online sources during trial as they do in their everyday lives. The real

question, then, is not whether to allow online information to influence legal outcomes,

but how to regulate the inevitable flow of that information to fact-finders. Here Mister

Nelson simply requests and so provides the information to do so for the Judicial Notice of

===============================================================================

*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice*
*regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M.*
*Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 27

the specified randomized search phrases as presented in Document 116, the request for

Judicial Notice of those scientific results of the searches for the search phrases as

presented in Document 116 and its exhibits thereto.

**WHEREFORE**, PRAYER FOR RELIEF… for the reasons, case law, Rules and

evidence as provided for in Document 116, Mister Nelson appearing pro se, as nothing

more than a pedestrian, member of the proletariat class, a peon, so herein and now does

request pursuant with the law and requirements thereunder for this Honorable United

States Federal Court for the US District of Kansas to take the Judicial Notice as to the

scientific search results provided by the Internet Search Engine GOOGLE itself, for those

specified Search Phrases as enumerated therein document number 116, and dismiss the

objections made by Chad Mitchell Koehn and UMCK for what they are nothing more

than copied and pasted objections made for no other reason than to cause delay, increased

costs and provide for unjust determination of this matter at bar, in so much as the

frivolous objections do not speak to the matters being so requested for Judicial Notice

made therein document 116 of this matter at bar.  The results of the Search Engine itself,

which can be so ascertained by the Court itself and on its own accord, navigating thereto

and authenticating the website as GOOGLE.com and taking with the search phrases duly

appointed and demonstrated within the enumerated numbering within document 116,

recording the same and the results therefrom the known Internet Search Engine Google,

================================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 28

which is by far the number one and most referenced scientific search results known by all mankind as of this day and time in our information age. The Judicial Notice so requested strikes at the heart of the SLAPP petition filed by Chad Mitchell Koehn and UCMK who make a claim of defamation regarding a "whistleblower, working with the government" and a claim regarding "securities irregularities" though now existing hereupon the record of the filings, pleadings, notices, exhibits, writs, documents in general upon the docket of the above herein referenced matter at bar, there exists a multitude of "securities irregularities" or abnormalities existing within UCMK and certainly the previously so requested Judicial Notices of the disclosures and documentations filed and signed under the pains and penalties of PERJURY by none-other-than Chad Mitchell Koehn himself; inter alia such ergo the claims of Chad M. Koehn and UCMK are without any merit whatsoever, and are filed as nothing more than to be used as a WEAPON against the pro se, peon, proletarian and any other investor, shareholder, stockholder, equity interest holder in investments controlled by Koehn and UCMK etAl. in order to prevent protected speech and discussions amongst shareholders and the public as they relate to matters of public, health, welfare and safety. The fact that a claim of defamation has been made yet no proof is proffered nor offered in any way shape or form having the Court here and now present for Judicial Notice those search phrases as are articulated in Document 116 of this matter demonstrates clearly where at present there upon appears no negative

======================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 29

search results within the scientific results provided by the Search Engine giant the largest and most used on planet Earth, GOOGLE.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).

<u>Respectfully Submitted, this 14th day of August 2022.</u>

<u>Michael Nelson - Pro Se</u>

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: <u>oklahomaremote</u> @ gmail.com |

========================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*

- 30

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail:  **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;  filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn, per Court order of Saline County Court Judge Paul J. Hickman.

Respectfully Submitted, this 14th day of August 2022.



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

===============================================================================
*Sur-Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022*