# UNITED STATES FEDERAL DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc.** <u>and</u>  **CHAD M. KOEHN** <br><br> Plaintiffs, Counter-defendants <br> v. <br> Michael Nelson <br><br> Defendant, Counter-Plaintiff PRO-Se. | **DOCKET NO.:    5:22-CV-04008-JWB-GEB** <br><br> <u>CIVIL ACTION</u> <br><br> **Objections and Appeal of Order of Federal Magistrate issuance of Scheduling Order Appeal under Rule 72** <br><br> **ERRORS IN LAW, Procedure, Misapplied State Statutes Constitutional Rights** <br> **[Jury Trial Demanded]** |

<u>Defendant Counter-Plaintiff ("Nelson"), makes "SPECIAL & LIMITED APPEARANCE"</u> here and now for the purposes of filing **Objection Appeal of Order of Federal Magistrate issuance of Scheduling Order, document number: 122 and does so say**:

Defendant and Counter-Plaintiff, Nelson, formally <u>objects</u> to the Scheduling Order as entered by the Federal Magistrate and now seeks de novo review as follows herein below.  As stated by Koehn and UCM, their submission of the report of the parties rule 26(f) conferences held on 11 and 12 July 2022, for one hour each day was filed unilaterally, without signature of Nelson.  Koehn & UCM have engaged in an ongoing pattern of Judicial harassment, purposeful evasion of Federal Rules of Civil Procedure, Local Rules and Rules of Professional Conduct.  Their violations began with their first filings in this matter, making secretive ex parte filings to the Court and neither noticing nor providing copies of what they filed to the Court to the person of Nelson, ergo purposeful evasion, willful disobedience to the Federal Rules of Civil Procedure.  APPEAL as follows to the enumerated numbers in the Scheduling Order:

1.  <u>Alternative Dispute Resolution (ADR)</u> "the court determined that settlement would not be enhanced by early mediation."  This determination was made unilaterally, Nelson requested mediation as he has all along in order to avoid the necessity of growing litigation, as it is a Judges job to avoid growing one litigation into many.  Additionally, while Nelson would be willing to mediate at this stage at a later stage mediation may not make any sense for Nelson, due to the parallel criminal matters, the reason for which a stay of this action has been requested by formal motion multiple times, to no avail the district Court has yet to rule, resulting in further delays, consternation, costs and growing litigation in other districts.

2.  <u>DISCOVERY:</u>  Nelson explained he is UNABLE to comply with disclosures because of the pending criminal matters and the fact that documents and materials are in storage and not able to be retrieved without Nelson physically being present with his finger prints, eye balls, and wrist

================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

- 1

veins, additionally Nelson is unable to obtain an Apostille at present due to the parallel criminal matters, another reason which makes a STAY pending resolution of the parallel criminal matters a necessity to comply with the order as written currently. It is materially, physically and actually IMPOSSIBLE to comply with the Order of the Court as written. The Court here through Magistrate Judge Birzer has ERRORED in the Order issued, by demanding an Order which cannot be possibly complied with due to the parallel Criminal matters.

   a. As stated herein above, the order as written cannot be physically, materially or in anyway complied with because of the pending criminal matters. Nelson CANNOT comply with the order because of the pending criminal matters.

   b. The cut off date for Discovery is inordinately short, given the fact Nelson cannot access materials needed, requiring much greater extensive discovery of ESI systems and burdens upon the Plaintiffs

   c. Comparative Fault analysis cannot be reasonably accomplished by the date set in the scheduling order due in part to time constraints of other trials and due to the fact Nelson is without all documents in order to comply as the parallel criminal matters persist onward, though recently more charges have been dropped.

   d. Expert disclosures do not take into account the motion for leave for Chad Koehn and UCMK to TRIPLE the size and scope of the litigation by 31 October 2022, which Craig Alan Brand has certified to the Federal Magistrate Judge his intention to "at least TRIPLE" the number of counts and size and scope of the litigation.

   e. Physical and mental examinations cut off is directly after the popular holiday "Three Kings Day" wherein it is increasingly difficult to achieve medical appointments due to the holidays and the thousands of miles between the parties.

   f. Problems with Discovery anticipations "Plaintiffs may desire protective orders, Defendant disagrees with the need for protective orders and feels it indicates a coverup;" Koehn and UCMK promised a 2-3 page protective order and instead sent a 10+ page protective order. Nelson does not believe a protective order should be warranted in the degree and fashion sought by Koehn and UCMK. As well articulated until conclusion of the PARALLEL hereto criminal matters Discovery will not be possible as written in the discovery order; the Court cannot order changes to the physical constructs of the world in which humans reside and as such disclosures and other discovery is a shear IMPOSSIBILITY until resolution of the parallel hereto criminal matters which a STAY of this matter remains pending, District Court action and invokes Constitutional Protections, which the scheduling order totally and completely ignores in violation of the US Constitution.

   g. The Magistrate Judge ordered: "Each party shall submit a proposed ESI protocol, no longer than 3 pages, to the court by August 31, 2022. Upon reviewing the separate proposals, the court will enter an appropriate ESI protocol that will govern this case." This is not reasonable as the fact remains Koehn and UCMK treated the Rule 26(f) conference as a perfunctory "drive-by" event of simply plugging in some dates and they refused all

discussion on ESI (electronically stored information) all together. The Order of the Federal Magistrate for a "no longer than 3 pages" proposal on ESI is entirely not enough room to describe the particularities of ESI, even the US District of Kansas's own ESI GUIDELINES which were created, are curated and are promulgated by the Court are far greater than 3 pages, this matter involves intensive ESI and Chad Mitchell Koehn has signed an affidavit to the effect he has information which is not available to Nelson, nor any governmental attorney or law enforcement regarding a computer that was "stripped" from Nelson, therefore it is an IMPOSSIBILITY in the physical constructs of the world in which we live for the complexities of an ESI discovery plan to fit in less than half the number of pages as the Courts own ESI guidelines. The proposed ESI discovery plan must be greater than the 3 pages being allowed by the Federal Magistrate as a result this is currently reversible error which soon may become irreversible error tainting the merits of the litigation as a whole. The parties, the public and the Courts in accordance with FRCP Rule 1, are negatively affected and the merits of the trial will be tainted by an improper ESI plan, which simply cannot be effectively put together in just 3 pages.

h. Their remains a motion to DISQUALIFY purported still lawfully licensed to practice law CRAIG ALAN BRAND who has a multitude of simultaneous and consecutive representations here and throughout the parties, Brand's continued involvement MANDATES that discovery of client communications can no longer be protected as attorney client work product. Additionally given the fact of Brand's simultaneous representations and conflicting fiduciary responsibilities and interests as well as his personal pecuniary gain financially in the out come of the litigation as it relates to third parties not yet attached hereto who have direct publicly known conflicts of interest to Chad Mitchell Koehn and UCMK wherein Chad M. Koehn has publicly disclosed conflicts of interest between himself KOEHN and that of UCMK and that of involved herewith Anthem Holdings Company which Craig Alan Brand also represents as well as Craig Alan Brand represent all those merger subs and subsidiaries which make up the Business Combination Merger created via the so-called "triangular reverse short form merger" of those identified merger subs, means that no client communication of privilege nor attorney work product can be protected given the conflicting interests and conflicting representations in violation of the Rules of Professional Conduct and certainly the FRCP.

i. The proposed limitation on discovery disputes is in material disagreement and the Magistrate Judge fails to understand the complexities as they regard a variety of protective orders including against Craig A. Brand who continues to be the thorne in the side of the parties, the Court and thus the public providing for neither a just, nor speedy and certainly not an inexpensive determination of this matter.

    i. Email, simply will not work for resolving discovery disputes, especially now that Attorney kellogg has refused for over one week to return reply to an email sent regarding the necessity of use of the Walsh Act regarding foreign located witnesses,

and Kellogg's email address is part of a law firm which is now tied to other litigation involving purposeful racial slur included in the underlying petition originating the removal hereto the US Federal Court. Kellogg's failure to return reply to polite emails as outlined in the pleadings demonstrates Kellogg's unwillingness to abide by this Order thus far, therefore the Order is in failure as the licensed attorney Kellogg refuses for over a week to return reply to email.

    ii. Service via USPS mail is fine although cost prohibitive when dealing with the extensive ESI requiring quite possibly 100's of thousands of printed pages of machine and computer coding.

    iii. Nelson is unsure as to what this means and has requested previously from the Court the name and contact information for the ADA coordinator which the Court is required to have to assist Nelson with the accessing this Federal Resource of this United States Federal Court which is in effect a US Federal Resource therefore must provide reasonable accommodations under the ADA including understanding what is meant by language in an order of the Court, a federal service.

j. No issue taken. Other than the fact Craig Alan Brand has certified he will seek to more than TRIPLE the size and scope of the litigation by tripling the number of counts so charged, therefore requiring more interrogatories than the limit provided for here.

k. This should state a party seeking to take greater than 10 depositions has the right to seek leave of the Court to do so, this order of the court unfairly limits the parties especially Nelson who is expected to be on the receiving end of further expansion of the SLAPP petition including TRIPLING size of the SLAPP petition as stated by Craig Alan Brand.

l. The Order of the Court is not in conformity with Federal Rules; the Court has abused discretion and overreached by ORDERING a protective order, when in fact protective orders by their very nature under the Federal Rules of Civil procedure require a statement of reason why, and here in this matter the reason provided is "Because the Court Ordered a Protective Order" by stating: "Discovery will be governed by a protective order. If the parties agree on the need for, scope, and form of such a protective order, they must confer and then submit a jointly proposed protective order by August 31, 2022." It will be an impossibility for the parties to agree on a protective order because CRAIG ALAN BRAND is insisting on a protective order which enables Craig Alan Brand to come after the pro se peon Nelson for eternity, seeking an open ended never ending infinity perpetual protective order in a case where there is no need for such complex protective orders, and especially where Brand seeks a unilateral order which protects NOT the pro se party and provides for the greatest of flexibility to Koehn and UCMK to share all information with virtually anyone on or off planet earth they wish, especially since Koehn claims to be building a space station one of his many fantastical claims in order to convince people to part with their money for his investment schemes like Red Neck High Tech Yacht fund lp. The Order is contradicting stating first there WILL BE a Protective Order, because the Court

has Ordered it and then later stating: "At a minimum, such proposed orders must include a concise but sufficiently specific recitation of particular facts that provide the court with an adequate basis upon which to make the required good cause finding pursuant to Fed. R. Civ. P. 26(c)" Ergo how can there be a minimum "concise but sufficiently specific recitation of particular facts that provide the court with an adequate basis upon wich to make the required good cause finding pursuant to FRCP 26(c)", WHEN in FACT the Court begins "l" with the directive: "Discovery will be governed by a protective order." The Concise fact for a protective order is given, it is the fact the Court in the Order so Orders it by Stating: "Discovery will be governed by a protective order", this is not in line with FRCP.

m. Nelson agrees that the case has already become bogged down and will become even more bogged down by a never ending line of Fifth Amendment invocations given the parallel criminal matters, and the inability of Nelson to access materials needed for disclosures nor ability to answer virtually most any query asked, at this present time due to the parallel hereto criminal matters as well explained in the Motion for Stay which is appealed hereto the District Court and remains pending. Additionally, Nelson is proceeding pro se, without representation due to necessity and without experience nor education in the law as is obvious, as a result many words, phrases and acronyms or meanings of those words phrases and/or acronyms are not known to Nelson, ergo the Order of the Court at (m) errors in not providing the substantial justification and explanations as necessary for a party proceeding pro se to understand, yet also threatens the pro se party with "sanctions" for non-compliance with FRCP Rule 26(g) and then makes an explanation stating: " (e.g., overbroad discovery requests, boilerplate objections, etc.)" Nothing which Nelson propounds can possibly be considered "overbroad" as Nelson has never conducted discovery, nor can Nelson understand what is "boilerplate" if to Nelson having never conducted nor answered discovery there cannot be any known "boilerplate objections" as all objections so made by Nelson if necessary are objections which Nelson shall be making for the first time ever, therefore they cannot be considered either boilerplate nor broad as the court suggests since Nelson has never propounded any such task ever before. Additionally Nelson has already so inquired to the Court for the name and contact information of the ADA coordinator which the Court must have as a Federally run service and therefore to accommodate a person under the ADA as envisioned by the Congress and enforced by many of the Courts to date. Ergo Nelson objects vehemently to the threatened punishments and "sanctions" for subjects which Nelson has never propounded EVER before therefore how can Nelson be held to something being nebulous as "boilerplate" or broad to a function which Nelson is void any experience?

3. <u>MOTIONS</u>

=====================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

- 5

a. 31st of October is right in the middle or towards the end of the lengthy proposed trial of the parallel criminal proceedings, therefore this puts Nelson at considerable disadvantage and shall require a many multitude of additional appeals due to the timing and due to the parallel hereto criminal matters as such it appears directed error in its scheduling.

b. The scheduling for the trial is not in conformity with the laws of physics to allow the voluminous discovery necessary given the parallel hereto criminal matters and thus necessitating further continual litigation now in other Districts and States. It should be the job of the Courts as the COKE states that a Good Judge shall seek to limit litigation so that one action does not grow from another, yet here the limitations are such to mandate that a multitude of other litigations will now be necessary.

c. This appears a statement of laws, to which the pro se peon Nelson has not read and does not understand and therefore needs time to read and understand in order to properly object.

d. Nelson again is unable to comment nor understand what is said in the Order absent clarification and again requests an ADA coordinator.

e. Nelson will do best to comply with the status conferences though makes this OBJECTION in good faith and cannot see how he can materially participate in discovery given the plethora of motions pending before the Court and the various Appeals still pending. Additionally as seen to through this date, Mister Kellogg refuses reply to email communication, and if Nelson places more than a single phone call to Kellogg's office they Craig Alan Brand will have Nelson charged with Stalking as Brand has orchestrated in Oklahoma, since Nelson has already during Rule 26(f) conferences made phone calls to Mister Kellogg's office Nelson may NEVER again EVER be the one to initiate telephone conversation with Mister kellogg therefore requiring Mister Kellogg to phone Mister Nelson, this again is now an impossibility given the fact for well over a week Mister Kellogg refuses any sort of telephone or return email to an email sent outlining discovery issues and asking specifically for a phone conversation, wherein as now Mister Kellogg blatantly refuses to communicate and refuses to make a reply as noted Mister Kellogg is already in material breach and thus violation of the Court Order now herein being OBJECTED to and requested for De Novo review by the District Court pursuant with the Rules. The Magistrate Judge Sets forth in the Order hereto now being Appealed under Rule 72 to the District Court the following all in "BOLD" type fact font in the Order of the Federal Magistrate: "**For purposes of complying with the "meet and confer" requirements, the Court construes the term "confer" to require more than mere email communication. The parties, Mr. Kellogg for Plaintiffs and Mr. Nelson, shall have verbal communications with each other; that is, they must first actually talk with each other about their discovery disputes, and then raise the issue at the monthly status conference, before filing a motion to compel or similarly related discovery motion.**" ERGO Nelson cannot possibly comply with the Order as stated given the fact Christopher Kellogg refuses to comply with the Order and refuses at present for more than

a week now not to return reply to an email sent with discovery issues specifically requesting and even multiple times "BEGGING" for Mister Kellogg to exude some form of professionalism in this matter, and be professional even invoking the fact his father was a lawyer who Nelson is told was well respected and would want his son Mister Christopher J. Kellogg to act with some semblance and form of professionalism in this matter at bar, considering as well that Mister Christopher J. Kellogg is a fellow EagleScout the same as Mister Nelson, therefore both have enjoyed and are both so bound to the Boy Scout Oath and Law as well as whatever Oath and Rules binds those who are legal professionals to act before the Courts, yet Mister Kellogg still through the date of this filing has YET to return the email sent, nor has Mister Christopher Kellogg made a single telephonic attempt to communicate with Mister Nelson, ergo how can the parties especially Mister Nelson who has tried to communicate thus communicate per the order of the Court if now Mister Kellogg blatantly refuses to obey the order of the Court, therefore the Order of the Court must be at fault given the fact Mister Kellogg is an Officer of the Court and should therefore obey a lawful order of the Court. Because of all the aforementioned communication breakdown, the LIES told by Kellogg in multiple pleadings, files of false certificates, this order of the court is already not followed and therefore is OBJECTED to for cause by Mister Nelson.

    f.   Mister Nelson objects to this order as to regurgitate all prior hereto Objections that Nelson simply cannot physically comply with the time constraints and inability to access materials needed to comply with all the previous herein so demanded in the Order as Nelson simply does not have access to so comply, therefore the case is set for protracted dispute and continual appeals, wherein as discussed herein below there remain pending a variety of motions including those to stay the proceedings pending the resolution of the parallel hereto criminal matters.

    g.   Nelson has attempted to keep all filings under 30 pages or less and where the Court has Ordered the parties to not exceed a specified number of pages Nelson shall comply with the Order, though points out already Kellogg exceeds the limitations placed by Order of the Court, as a result Kellogg's motions should in a perfect world where Orders of the Court are upheld have his Kellogg's motions summarily denied.

4.  <u>Pretrial Conference, Trial, and Other Matters</u>

    a.   Nelson shall attempt to be at any scheduled conference which Nelson can physically be present for except in those cases where the parallel criminal matter must take precedence over this Civil Litigation, Nelson cannot physically be in two places at one time and cannot participate in matters concerning this here Civil Matter when issues, hearings or meeting so ocurr relating to the parallel hereto criminal proceedings another reason why the Motion for Stay of these proceedings has been made repeatedly and is still pending with the District Court. Additionally, the Court orders the plaintiffs (Koehn and UCMK) to be

prepared to discuss Rule 11, motion(s), yet does not provide any instructions to Nelson, and therefore Nelson finds this to be an unfair ruling demonstrating clearly AMBUSH of Nelson a pro se party without the legal knowledge nor understanding as to the obvious and evident AMBUSH being prepared to entrap Nelson.

b. This Order is unfair and since as the history of the matter has demonstrated Plaintiffs (Koehn and UCMK) have made filings repeatedly and neither noticed nor provided copies to Nelson and even made reports to the Court "unilaterally" therefore how can it be fair that only Koehn and UCMK get to prepare a proposed pretrial order in this matter? The order says the "parties" yet historically in this matter Koehn and UCMK have unilaterally made reports and have refused to include Nelson in basic planning functions. As is noted in the 17 page Motion to Seal filed by Koehn and UCMK although the Order of the Court limited the filing to just ten pages, again Nelson must follow Orders, FRCP, Local Rules NONE of which are followed in any substantial way by Koehn and UCMK, providing for obvious and evident violations to the due process rights of Nelson and obvious evident unfairness in the proceedings mandating Judicial Review, further appeals as the matter & its merits are already tainted by the MISCONDUCT by Koehn and UCMK.

c. No comment.

d. The order errors in not stating that Nelson consents to Trial by a Federal Magistrate. Koehn and UCMK stated through Attorney Christopher J. Kellogg in Rule 26(f) Conference to the effect Federal Magistrates are NOT "real" Judges and they have "zero powers" they can only make recommendations, and their words and orders are regularly ignored by "real" attorneys, Kellogg went on to explain nothing which a Federal Magistrate does or says can be believed nor can anyone be held to account for any actions, statements, orders of a Federal Magistrate. Given this thought process of Koehn and UCMK it is no wonder their attorneys follow NOT a single ORDER or follow any demand of the Federal Magistrate, take case in point for example the Federal Magistrate ORDERED a limit of ten pages to the motion to Seal, yet in line with the statements of Christopher J. Kellogg, he and Koehn and UCMK directly ignored the page limitation set by the Federal Magistrate and went ahead and filed a SEVENTEEN [17] page motion 170% or 1.7 TIMES LARGER motion than authorized by the Federal Magistrate, proving they can ignore any Order of the Federal Magistrate.

e. Nelson seeks leave to modify Scheduling order per the objections made herein above and below in this lawful dutiful appeal under Rule 72.

5. Miscellaneous

a. At (2) of 5(a)(2) the Federal Magistrates ORDER states: " 2) Plaintiffs' motion for leave to seal. Plaintiffs' motion for leave to seal shall be filed no later than August 12, 2022 with responsive pleadings served as per local rule. The motion and response are limited to ten pages, with any reply limited to 5 pages. Any other motions filed will be summarily

denied." Yet, already in direct CONTRAVENTION of the ORDER, without filing an appeal of the ORDER, just plain "IGNORING" the ORDER of the Federal Magistrate, just as Koehn and UCMK through attorney Christopher J. Kellogg stated that a Federal Magistrates Orders mean nothing and can be ignored in their entirety as all lawyers/attorneys regularly do, Christopher J. Kellogg filed Document Number 140, in this matter a Motion to have all future filings of Nelson filed under Seal, a largely biased, untrue motion riddled with direct LIES, misquotes, purposeful insightful, dangerous speech, seeking prior restraint in violation of the US Constitution and more, the number of LIES in the Motion are too many to count nor report here, yet the largest thing to jump out at the pro se, pedestrian member of the proletariat peon Nelson, is the fact that the ORDER allowing the filing of the Motion to "seal" files was limited by the Federal Magistrate to just TEN PAGES, and the Motion filed and signed by Christopher J. Kellogg is 1.7 TIMES larger, 170% larger than the limit, it is seventeen (17) pages and the limit set by the Federal Magistrate in the Order is clearly stated as TEN PAGES, wherein the Magistrate Judge states:  <u>"The motion and response are limited to ten pages."; yet again in Direct Contravention of the ORDER and the granting of leave to file the Motion Kellogg files 17 pages, yet Nelson is limited to the ten pages cause Nelson is forced to follow all Court Orders and those who are supposed to lead by example as supposed "Officers of the Court" can and do IGNORE all Federal Magistrate Orders just as they state that Federal Magistrates have no power and their words and orders are of no consequence, as Federal Magistrates are NOT "real" Judges so says Koehn and UCMK.</u>

    b.  Nelson objects, cause UCMK already has the discovery and CRAIG ALAN BRAND LIED to the COURT claiming he is unable to receive documents via GOOGLE, even though Nelson provided SEVEN Different file formats for him (BRAND) or any other lawyer to download.  Now the Court is mandating that the impoverished pro se proletarian peon Nelson expend more money to send interrogatories to UCMK, when discovery per KANSAS Law is supposed to be STAYED and LIMITED per Kansas ANTI-SLAPP suit legislation which this Court is in the State of Kansas as the US District Court for Kansas, therefore Kansas State Law so applies, yet the Federal Magistrate Errors in not following Kansas Law.

For all the reasons as stated herein above in the enumerated corresponding numbering and lettering as to the Order of the Court as filed in document 122, the scheduling order is hereby so formally appealed for cause for De Novo review by the District Court, and for request that the Motion of the plaintiffs CHAD M. KOEHN and UCMK be summarily DENIED as they failed to follow the ORDER of the Court in Document 122, far exceeding the allowed number of pages.  There has NEVER been fairness nor due process of law in the litigation as KOEHN and UCMK get to IGNORE every order and refuse to follow

every Rule Local and Federal of Procedures of the Court, making up their own set of rules and facts all along during the way. The fact that Koehn and UCMK through Kellogg do not follow the Order and go ahead and file a motion to seal and otherwise cause a Constitutional Crisis seeking prior restraint without cause and make motion through LIES, innuendo, misquotes, and certain fraud upon the Court, demonstrates clearly where Koehn and UCMK are allowed to FLOUT in flagrant style every Rule form Local Rules to Professional Conduct to Federal Rules of Civil Procedure not following a single ORDER of the Court and acting any way they wish at bar, having total disrespect for the Court and certainly the Federal Magistrate who they have also sought the recusal and thus resignation by NOT accusing the Federal Magistrate of being related to a party in the litigation nor accusing the Federal Magistrate of financially gaining from the result of the litigation, but rather the direction of attack is directly at the OATH of the Officer towhich the Federal Magistrate has been duly appointed. Koehn and UCMK have filed demanding the Federal Magistrate recuse herself for bias in favor of the pro se undersigned, while it is the pro se undersigned who has filed all appeals to date, and in just two denied motions one which was neither noticed nor discussed with the pro se Nelson, and cries out from the tallest mountains of PROCRASTINATION!

      According to Chad Mitchell Koehn and UCMK in their lengthy 17 page Motion to Seal filings, though the Court Ordered their Motion to not exceed ten pages, setting a limit to the filing which they blatantly ignored as they do EVERY Order and All the Rules Both Federal and Local of Procedure and flout the Rules of Professional Conduct, none the less without having the legal understanding as Chad M. Koehn and UCMK obviously do, as they state the Court has before it according to them:

      Additional filings pending before the Court are: A. Mr. Nelson's objection (D. 81) of the Magistrate Judge's May 16, 2022, Order Regarding Planning and Scheduling (D. 70), Plaintiff's May 31, 2022, Memorandum in Opposition (D. 82) and Mr. Nelson's June 10, 2022, Reply (D. 84); B. Mr. Nelson's Objection (D. 91, 91-1) and Plaintiffs' Response in Opposition (D.93) to the Magistrate Judge's Order (D. 88) denying of his Motion to Stay Discovery (D. 87); C. Mr. Nelson's July 22, 2022, Motion to Disqualify Craig A. Brand as Plaintiffs' Pro Hac Vice Counsel (D. 94, 95), Plaintiffs' July 27, 2022, Response in Opposition (D. 108) and Mr. Nelson's August 6, 2022, Reply (D. 133); D. Mr. Nelson's July 24, 2022 Motion for Judicial Notice of Statements Made by Chad M. Koehn (D. 96 through 96-7, Plaintiffs' August 4, 2022, Response in Opposition (D. 129); E. Mr. Nelson's July 26, 2022, Motion for Judicial Notice of Chad Mitchell Koehn being issued a ticket for a Saline County Burn Permit violation on January 8, 2022, alleged to be destruction of evidence (D. 99, 99-1, 99-2), Plaintiffs' August 4, 2022, Response in Opposition (D. 99); F. Mr. Nelson's August 1, 2022, Motion for Judicial Notice of No

====================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

Defamatory Listings Concerning Chad Mitchell Koehn (D. 188 through 116-10, Plaintiffs' August 4, 2022, Response in Opposition (D. 131); G. Mr. Nelson August 1, 2022, Motion for Judicial Notice of Regulatory Filings, Secretary of State Filings, Disclosures and Lawsuits (D. 117 through 117-12), and Plaintiffs' August 5, 2022, Response in Partial Opposition (D. 132); Mr. Nelson's August 1, 2022, Emergency Subpoena Request for Depositions, Discovery Files and Sexual Settlements which are believed demonstrate misogyny tendencies of Chad Mitchell Koehn being a misogynist (D. 118), Plaintiffs' August 3, 2022, Response in Opposition (D. 126) and Mr. Nelson's August 11, 2022, Reply (D. 137); I. Mr. Nelson's August 1, 2022, Motion for Judicial Notice of Hiding and Concealing facts by Craig Alan Brand and Chad Mitchell Koehn as they relate to Hera Software Development Inc. a/k/a Hera Soft (D. 119, 119-1), Plaintiffs' August 3, 2022, Response in Opposition (D. 125, Duplicate filed as D. 127) and Mr. Nelson's August 8, 2022, Reply (D. 135 through 135-11) claiming that The location where Koehn was cited is "the location of his "other" crimes involving sexual aggressions," "Koehn has entered into multiple sexual aggressions settlements," "Koehn was destroying evidence via fire" and "Koehn's attorneys instructed him to destroy evidence." D. 137, at *3. J. Mr. Nelson's August 1, 2022 (D. 120, 120-1), Emergency Motion for Subpoena Request for Chad Mitchell Koehn's Criminal Records (relating to the January 8, 2022, Saline County Burn Permit violation citation alleging "that the unauthorized fire is upon information and belief to have been held at the instructions of Chad Mitchell Koehn's attorneys for the purposes to destroy evidence, which could relate to evidence including without limitation office files and computers (harddrives) in this case and other cases, which were pending at the time involving BOTH plaintiff's to this above herein referenced matter: CHAD MITCHELL KOEHN and UNITED CAPITAL MANAGEMENT OF KANSAS INC.".

Nelson objected in multiple filings to not receiving copies of what Koehn and UCM file to the Court. Nelson had the need to file document 42, outlining the lengths towhich Chad M. Koehn and UCM have gone to deny basic fundamental due process rights and their purposeful willful evasion and violations of the Federal Rules of Civil Procedure. The Magistrate Judge, had the unusual necessity to SUSTAIN the Objection filed in document 42, and formally ORDER the supposed licensed attorneys to follow the Federal Rules of Civil Procedure and Local Rules of the Court, having the need to ORDER Federal and State licensed educated attorneys to follow FRCP Rule 5 without limitation and to cease having SECRETIVE ex parte communications with the Court and neither noticing nor providing copies of what they file to the Court to the opposing party, Nelson. Koehn and UCM in DIRECT CONTRAVENTION of the standing ORDER of the Court, the Local Rules and the Federal Rules of Civil

Procedure, especially Rule 5, continued with filing a multitude of filings to the Court and neither noticing nor providing copies of their filings to the person of the opposing party, Nelson, directly violating due process rights, due process of law, fundamental fairness, in direct disobedience to standing orders of the Court, in Direct CONTRAVENTION of Local Rules and Federal Rules of Civil Procedure, purposefully, and maliciously increasing the cost of litigation beyond imagine. Neither Koehn nor UCM participated in good faith in Rule 26(f) conference, neither preparing nor providing ample time for discussions, and purposefully refusing to discuss basic issues involving the limited discovery envisioned by the Court and the Kansas State Statutes as they relate to the MOTION TO DISMISS the SLAPP (Strategic Lawsuit Against Public Participation) Styled petition filed by Koehn and UCM which initiated these proceedings.

The ACLU says: *"Our court system should be a place where we are all treated equally in the eyes of the law. It should not be a place where the powerful use their abundance of resources to enact revenge on those who see the world through different eyes. What future is there for freedom of speech if we allow those who speak out to be bled dry and turned into an example of what happens when you stand up to speak your mind? SLAPP suits pervert our legal system by turning it into a war of attrition, a place where who is right and who is wrong does not matter nearly as much as who has the most resources."*

There sits now several motions before the Court, which would bring this matter to its rightful conclusion, thus being in conformity with FRCP Rule 1, providing for the just, speedy and inexpensive determination of the matter at bar. Several motions to dismiss, which among them include a motion to strike and Dismiss with prejudice the originating State SLAPP Petition removed hereto the US Federal Court, for cause that the SLAPP state petition as drafted, even after removal of the racial slur from the originating petition per Order of the Court, constitutes a SLAPP (Strategic Lawsuit Against Public Participation) litigation in violation of Kansas laws. Nelson timely within 60 days of the amended complaint ordered by the Court, removing the Racial SLUR, filed the timely and correct motion citing before the Court the Kansas Statutes demanding that the SLAPP petition be deemed what it is a SLAPP petition and thus stricken and dismissed with prejudice. According to the guide to the Magistrate Justice

====================================================================================

System: "in appropriate cases, district judges have construed a magistrate judge's order as a report and recommendation basis, subject to de novo review." The Supreme Court addressed this issue recently in Exec. *Benefits Ins. Agency v. Arkison, 193 134 S. Ct. 2165 (2014);* see:

https://www.fedbar.org/wp-content/uploads/2019/10/FBA-White-Paper-2016-pdf-2.pdf

"A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Kansas adopted a strong anti-SLAPP law (Statatue) in 2016. Known as the Public Speech Protection Act, it allows a party to move to strike a claim that is in response to "a party's exercise of the right of free speech, right to petition or right of association." *Kan. Stat. Ann. § 60-5320(d) (2019).* Nelson shows and demonstrates clearly that the claims of the plaintiff's Chad Mitchell Koehn and UCM are based on these constitutional rights herein above so articulated to the Court. Therefore the burden shifts to the plaintiff(s) Chad Mitchell Koehn and UCM "to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." Id.

   Upon filing a motion to strike, under Kansas's strong anti-SLAPP (Strategic Lawsuit Against Public Participation) protection Act: "all discovery, motions or other pending hearings shall be stayed." § 60-5320(e)(2); FRCP 81(d)(1).**

   The Federal Magistrates Scheduling Order errors in not applying Federal Rules of Civil Procedure under FRCP 81(d)(1) inclusive without limitation, to the fact the Court here is the US District of Kansas Federal Court and therefore Kansas Laws (statutes) are applicable here, especially as complained and so rightfully and dutifully motioned for dismissal with prejudice within the 60 day time frame, recognized, from which an answer or other responsive pleading was due, Nelson filed for dismissal so citing *Kan. Stat. Ann. § 60-5320(e)(2)* thus requiring "all discovery, motions or other pending hearings shall be stayed." § 60-5320(e)(2).

The SLAPP petition of Chad M. Koehn and UCM should be dismissed now, this is assuming the Court is not going to Dismiss based on lack of Subject Matter and Personal Jurisdiction, which is also pending before the Court. The parties cannot engage in any form of discovery while the Court here is void of personal and subject matter jurisdiction. If the Court is to find personal and subject matter jurisdiction, then the Court must as a matter of law recognize the application for DEFAULT JUDGMENT, sum certain, as filed for counter-defendants failure to answer the first amended counter complaint, this is in addition to the collateral order doctrine appeal to the 10th Circuit Court of Appeals as interlocutory appeal regarding the issue of Personal and Subject matter jurisdiction.

Turning next to the Motion to Dismiss the certain SLAPP basis of the first amended complaint of the Koehn and UCM, which has been articulated and demonstrated for what it is a SLAPP (Strategic Lawsuit Against Public Participation), it was originally filed in State County Court, and Kansas laws so apply to the US District of Kansas, wherein the Court must STAY all discovery, allowing if applicable limited discovery on the issues of Constitutional Rights so addressed therein the Motion to DISMISS the SLAPP petition filed by Koehn and UCM. The Magistrate Judge errors in not applying Kansas Statutes in the US District of Kansas, so requiring a stay pending resolution of the Motion to Dismiss the SLAPP petition of Koehn and UCM. Under the cited Statute, the defendant, Nelson, has the RIGHT to immediate collateral doctrine interlocutory appeal, and as a matter of law a Stay of the action pending 10th Circuit Court of Appeals review of the SLAPP litigation filed. Magistrate Judge errors again in not applying the case precedents, the laws, statutes as meant to be applied when motions remain pending.

The fact Nelson, has filed the motion to dismiss the action under the strong anti-SLAPP legislation of Kansas, other motions to dismiss the action as dispositive motions exist upon the docket and must be ruled upon enabling collateral order doctrine to so attach prior to any commencement of discovery, other

than the limited discovery as permitted under the rule and Kansas State Statute. That limited discovery

allowed under the statute allows for discovery only as it relates to the Motion to Dismiss the SLAPP

petition, based on the allegation as rightfully and dutifully charged that the state petition <u>even after</u>

<u>removal of the racial slur from the petition</u> is a SLAPP petition thus <u>requiring UCM and Koehn to meet</u>

<u>the specified burdens thus shifting the burden to UCM and Koehn to prove and so "to establish a</u>

<u>likelihood of prevailing</u> on the claim by presenting substantial competent evidence to support a prima

facie case." That "substantial competent evidence to support a prima facie case" must then be so ruled

upon and entered into an order of the Court, and as the Statute dictates Nelson, has the right to

IMMEDIATE appeal with a Stay of the Action pending the decision of the Appellate Court in the matter,

if the Court here in the US District of Kansas, chooses based upon the evidence presented to set forth in

writing the evidence so relied upon establishing the prima facie case as required in the Statute. Nelson,

contends Koehn and UCM will be unable to present <u>"substantial competent evidence to support a prima</u>

<u>facie case"</u> for the cause of their action, as no evidence exists, other than fantastical paranoia of Chad

Mitchell Koehn who has been described as a paranoid schizophrenic possibly suffering from early onset

paraphrenia, but most certainly malignant narcissism as described by the many multitude of sexual assault

victims of Koehn, and Kansas attorneys and trustees of the Kansas Bar Association, who have witnessed

first hand Chad Mitchell Koehn's behavior and actions. Upon information and belief most of Chad

Mitchell Koehn's sexual aggession settlements were made with employees who were employed by UCM

at the time of Chad Mitchell Koehn's sexual aggressions towards those employees, as sought in the

judicial records of the case: Chad Mitchell Koehn and UCM vs. Christopher Giroux, a pending motion

for Federal subpoena to issue, in material support of the Motion to Dismiss based on the SLAPP nature of

the petition. The fact Chad Mitchell Koehn has had the need to enter into a mutltitude of so-called

confidential settlements stemming from his sexual aggressions, leads the reasoned mind to believe <u>Chad</u>

<u>Mitchell Koehn presents a clear and present danger to both men and women who may be in the employ of</u>

<u>UCM.</u>  It is armed with information and belief that multiple depositions, a multitude of confidential

settlements exist, and multiple Kansas Lawyers have referred to Chad Mitchell Koehn as a sexual predator

who needs to: "stop fucking his secretaries" and employees children.   Though not directly mentioned in

the SLAPP petition filed by Chad Mitchell Koehn and UCM, it is evident from the nature of the SLAPP

petition, that Koehn and UCM seek out a "witch hunt" for the whistleblower or as used whistleblowers

who may exist inside of UCM, and have informed on Chad Mitchell Koehn's sexual agressioins, which

are confirmed by the fact Chad Mitchell Koehn has entered into a plethora of so-called confidential

settlements regarding his sexual harassment, sexual assaults, and over all sexual aggressions towards

people in his employ, who are employed by UCM.   Believed both male and female and the children of his

employees have been victimized by Chad Mitchell Koehn.  The SLAPP Petition is filed seeks to out the

identity of one or more whistleblowers, thereby activating various requirements of Civil and Criminal law

regarding the protection of WHISTLEBLOWERS.   Koehn and UCM also charge in their SLAPP styled

petition that there is an allegation of "securities irregularities", however, here within the pages of the

pleadings and the docket itself of this litigation presents clear and convincing evidence that existing on the

public record and within the litigation at bar, is proof beyond a reasonable doubt and certainly with clear

and convincing evidence that a plethora of "securities irregularities" exist both at UCM and within

so-called hedge funds of UCM as well as within companies who Chad Mitchell Koehn has publicly

declared he holds a conflict of interest between himself UCM and Anthem Holdings Company a company

in material dispute which Chad Mitchell Koehn publicly with ADV filings of disclosures, so does disclose

publicly to have a conflict of interest between himself, UCM and Anthem Holdings Company.  Of further

====================================================================================

concern is that Chad Mitchell Koehn and UCM are both represented by an attorney who also represents Anthem Holdings Company, demonstrating clear and convincingly that a strong conflict of interest in representation exists, certainly rising to not just direct contravention to the Rules of Professional Conduct by violations to the Federal Rules of Civil Procedure and certainly taints the entire case. Ironically the reason Nelson, appearing pro se is unable to engage in electronic service is due to the MISCONDUCT of the very same attorney who has conflicts between Anthem Holdings Company, each of its so-called merger subs, who he also represents, and continues in representation of, the principles of those merger subs, and their employees, as well he (Craig Brand) is appearing on behalf of BOTH UCM and Koehn who both claim conflicts of interest with each other as they relate to Anthem Holdings Company. Given the fact there is also a motion to disqualify the pro hac vice attorney Craig Alan Brand, the case is tainted by Brands continued involvement given just those conflicts of interest as articulated here. Matters are further worsened in that Brand publicly declares himself a shareholder and "special counsel" to a Crypto Currency called HERC a crypto stock coin, issued via a questionable ICO (Initial Coin Offering) under investigation, AND Craig Brand also declares himself "special counsel" to HeraSoft, the moniker of another Delaware Company, Hera Software Development Inc. which Chad M. Koehn claims he is the lead investor, together with UCM, though HeraSoft claims to own the proprietary protocol of HERC crypto currency stock Coin, which was sold to at least 14,500 individual investors as a decentralized stock coin, which trades on global financial markets. Craig Brand also represents HeraSoft which de facto has a conflict to HeraSoft and a certain conflict within AG HERC Inc. and Hercules SECZ (Grand Cayman Islands), Hercules LLC (Puerto Rico) and spin off Lunargistics Corporation (Luxembourg). Mister Brand's multitude of conflicts of interest must be immediately addressed even prior to the Court considering the pending Motions to dismiss. Whether or not Chad Mitchell Koehn's various sexual

aggressions constitutes the claim regarding "securities irregularities" a reasoned mind in the public would conclude that it is irregular for a licensed professional in the securities industry to have a multitude of so-called confidential sexual aggressions settlements with employees and/or their children. Certainly whistleblowers are entitled to special protections under law, the "witch hunt" for whistleblower or whistleblowers within UCM is bad faith litigation and constitutes violations to BOTH civil intentional torts and certainly criminal behavior, or as stated by DOJ Criminal Conduct, in attacking whistleblowers, seeking to prevent them from reporting wrongdoing. Seeking out the identity of a confidential whistleblower or whistleblowers (multiple) violates both State and Federal Law and constitutes acts detrimental to the whistleblower programs under State and Federal Law, constituting torts and criminal conduct. The originating petition seems not to address the series of sexual aggressions of Chad Mitchell Koehn, but instead chooses to attack the proletarian pro se pedestrian defendant making just two claims, first a claim of defamation, stemming from what Chad Mitchell Koehn claims is a WHISTLEBLOWER or as written multiple WHISTLEBLOWERS working inside one of his companies presumably coplaintiff United Capital Management of Kansas Inc. (UCM) and under the first amended complaint which removed the RACIAL SLUR from the originating state SLAPP petition, UCM and Koehn now claim *the whistleblower is working with the government*, which is apparently by definition what a whistleblower or multiple does when blowing the whistle proverbially on some issue of grave public concern and safety. It is conceivable to believe that an employer engaged in multiple acts of sexual aggression towards employees, who has had the need to enter into multiple so-called confidential settlements regarding his (Chad Mitchell Koehn's) sexual aggressions and misogny towards women is an area of grave public concern for public safety. Most women and even men in society would believe that being warned of a sexual predator may actually save their life. Others in society would believe that an employer in the

securities industry who has multiple charges and so-called confidential settlements regarding sexual

aggressioins to be an issue which sounds like an irregularity within a securities company. Though the

docket and the pleadings in the matter already well demonstrate via both proof positive and negative,

beyond a reasonable doubt, though certainly with the preponderance of clear and convincing evidence by

Chad M. Koehn's own hand filing and signing sworn statements under the penalties of perjury that he

Chad M. Koehn has committed a number of acts which any reasonable person would view even in the

best of light CRIMINAL, but most certainly are "securities irregularities" a/k/a abnormalities.

IN this case Chad Mitchell Koehn charges that the whistleblower is blowing the whistle

proverbially regarding in Koehn and UCM's words "securities irregularities", as mentioned it seems

irregular for a securities industry company and executive to have multiple sexual aggressive charges with

so-called confidential settlements. It is also prudent and reasonable to believe that a whistleblower may

also be a leaker of these confidential sexual aggression settlements. Yet the docket and pleadings to date

demonstrate a vast number of abnormalities also known as irregularities, in a vast variety of securities

forms and documents and disclosures filed by Chad Mitchell Koehn under the pains and penalties of

perjury. Therefore it is difficult to understand how discussion in public about a Whistleblower and

securities abnormalities (irregularities) rises to that of merits for litigation. In fact a State and Federally

licensed and regulated entity and person such as Chad Mitchell Koehn and UCM must be able to stand up

to general conversation amongst the public speculating on securities irregularities and whether a

whistleblower exists or not within UCM. Certainly sexual aggressions settlements exist, and given the

multitude of conflicts of interest between UCM and Chad Mitchell Koehn and purported good standing

attorney Craig Alan Brand who represents dozens of corporations, holding companies, crypto currency

projects, software companies each of who have conflicting interests with each other and certainly with and

between Chad Mitchell Koehn and UCM, given the fact Chad Mitchell Koehn swears under penalty of perjury he has a conflict with UCM and that of Anthem Holdings Company. Chad M. Koehn claims hundreds of mutual clients with stock ownership in Anthem Holdings Company and investments held with UCM. Though as the evidence in the docket and pleadings suggests and proves via proof positive with clear and convincing evidence the merger subs underpinning Anthem Holdings Company to which Craig Alan Brand has represented in legal proceedings and certainly has inside confidential information, begs the serious ethical and legal questions before the Court to whose allegiance does Craig Alan Brand owe fiduciary duty? Is it to himself as a shareholder of Anthem Holdings Company, is it to the shareholders of the crypto currency HERC stock Coin, or to himself again as a shareholder of HeraSoft, or is to Anthem Vault Inc who he continues in representation to the NEVADA SUPREME COURT, or does he owe a duty to Chad Mitchell Koehn but not to UCM or is it UCM and not Koehn or neither Koehn nor UCM since each are minority shareholders in AG Herc Inc., HeraSoft, Anthem Vault, Anthem Holdings Company, Lunargistics Corporation in Luxembourg, Hercules SEZC in Grand Cayman Islands, Anthem Holdings Company, or some other considering Craig Alan Brand is both a "special counsel" and a shareholder in the corporations which have conflicts to Chad M. Koehn and UCM, inclusive without limitation Herc crypto stock coin and Anthem Holdings.

Though Nelson submits that perhaps the real reason Chad Mitchell Koehn is on the hunt for the whistleblower or leaker who may be inside UCM and hates him so much they are leaking out information on Chad Mitchell Koehn's multitude of sexual harassment and sexual assault, collectively sexual aggressions so-called "confidential settlements". Perhaps one of the many multitude of women or men who Chad Mitchell Koehn has sexually aggressed has decided to provide details on Chad Mitchell Koehn's sexual aggressions and securities irregularities existing within UCM as a public service to warn and protect other women and men in society. Perhaps as the record and docket so indicate the vast number of securities irregularities (abnormalities) within the documents filed by Chad Mitchell Koehn

under the pains and penalties of perjury warrants further investigation by persons who entrust their life savings to Chad Mitchell Koehn. Perhaps employees who hate Chad Mitchell Koehn so much have leaked information or are working with the government to stop what some Kansas lawyers describe Chad Mitchell Koehn as a sexual predator. Perhaps Christoper Giroux and others have specified knowledge of Chad Mitchell Koehn's sexual aggressions towards others and feel the public should be warned. Perhaps people who are common shareholders in the same corporations where Chad Mitchell Koehn has sold them stocks in questionable private placement memorandums, as outlined already in the docket have decided to have discussions about the grave public concern of securities irregularities, material misrepresentations as are already plentiful within the docket of the matter at bar. Certainly the known depositions, interrogatories and other case files of the case of Chad Mitchell Koehn and UCM against Christopher Giroux must be examined as part of the limited discovery envisioned by the Kansas anti-SLAPP legislation, as those files, depositions and interrogatories are said to contain some of the so-called confidential settlements entered into by Chad Mitchell Koehn relating to his sexual aggressions. Those files also may materially lead to other information of grave public concern for public safety and health, including the protection of women, men and the youth from Chad Mitchell Koehn, whom a multitude of former employees describe as a sexual predator.

It is well established within the docket that Chad Mitchell Koehn was or is involved in companies with a direct connection to Bitclub ponzi scheme prosecuted by the US Attorney's Office, and officers within the companies which Chad Mitchell Koehn sits upon the boards of directors, though having conflicts of interest between Chad Mitchell Koehn and UCM and those companies, have been indicted and convicted of federal crimes stemming from the Bitclub Ponzi scheme. The Bitclub Ponzi scheme had at its helm a known formerly incarcerated, convicted CHILD SEXUAL PREDATOR, named Russell Albert Medlin, given the information and victims now coming forward regarding so-called confidential settlements entered into by Chad Mitchell Koehn stemming from his own sexual aggressions towards employees and their children as alleged by informants, who have read the pleadings in this matter and are now coming forward in droves, indicates issues of grave public concern for safety, health and general welfare of society and the public at large, all things a person would typcially believe a WHISTLEBLOWER would be involved with, and certainly a whistleblower "working with the government" sounds as to exactly what a WHISTLEBLOWER description actually is. Typically whistleblowers come forward to State and Federal Officials when they reasonably believe unethical,

immoral and/or illegal activity to be taking place in violation of rules, regulations, policies, and sometimes even in violation of statutes and laws, though a whistleblower working with the government does not always confer the idea that wrongful illegal conduct occurring, nor does it infrer some nefarious plot of criminal conduct, though some whistleblowers simply use both internal and external mechanisms in order to substantially protect themselves and others from harm.

According to the National Prevalence of Sexual Violence by a Workplace-Related Perpetrator, report as written by Kathleen C. Basile, PhD, Ashley S. D'Inverno, PhD, and Jing Wang, MD, MPH; "Workplace sexual violence is not a new phenomenon but has received increased attention recently with the re-emergence of the #metoo movement. Gaps exist in the understanding of the prevalence of this problem in the U.S., its perpetrators, and its impacts." In the U.S., 5.6% of women (almost 7 million) and 2.5% of men (nearly 3 million) reported some type of sexual violence by a workplace-related perpetrator. Almost 4% of women (3.9%) reported sexual violence by nonauthority figures and 2.1% reported authority figures; 2.0% of men reported sexual violence by nonauthority figures, and 0.6% reported authority figures. For women, the most commonly reported sexual violence type was unwanted sexual contact (3.5% of women); for men, it was noncontact unwanted sexual experiences (1.3% of men). An estimated 1 million women (0.8%) have been raped by a workplace-related perpetrator. For women and men, fear was the most commonly reported impact of workplace-related sexual violence. Certainly 5.6% of all women experience some sort of work place related sexual aggressions, given this data, one could reasonable surmise that it is irregular for an employer especially an owner to have multiple so-called confidential settlements for sexual aggressions in the work place. Though the whistleblower may also have additional information as it relates to securities irregularities other than the obvious given irregularities of multiple accusations against Chad Mitchell Koehn and obviously UCM as a company has done nothing to curb the sexual aggression charges being levied agaisnt Chad Mitchell Koehn.

The Docket to date also references a vast number of securities irregularities as they relate to various conflicts of interest between Chad Mitchell Koehn and UCM and many out side and inside companies or example RED NECK High Tech Yacht Fund LP and Anthem Holdings Company and Hercules SEZC (Grandy Cayman Islands), Lunargistics Corporation (LUXEMBOURG) all of which are regularly referenced throughout the pleadings in this matter. All demonstrate clear irregularities within the publicly filed securities documents, or the fact SEC is void of filings on the companies all together, which again in the negative points to securities irregularities. Perhaps a whistleblower working with the

government is working on issues relating to Chad Mitchell Koehn's sexual agressions or perhaps working with governmental officials relating to issues relating to the abnormalities existing within UCM, a question for the Court is to consider an abnormality or irregularity that the owner of a securities company has multiple sexual agression charges and so-called confidential settlements.  Is it a security irregularity that documents, disclosures and SEC regulatory filings contain false and materially misleading information?  These are the questions which must be answered as they relate to the motion to strike and dismiss based on SLAPP state petition, even absent the Racial Slur now filed being a SLAPP lawsuit.

Judge J. Nicholas Colabella wrote in *Gordon v. Marrone (N.Y . 1992)*, **"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."** Professors George W. Pring and Penelope Canan coined the term SLAPP suit in the 1980s after noting a surge in lawsuits filed to silence public criticism by citizens. In 1991 the Supreme Court established in *Columbia v. Omni Outdoor Advertising (1991)* that a defendant is entitled to immunity unless the plaintiff can prove that the defendant's petitioning was a "sham." To prove a sham, the plaintiff must show that the petitioning was objectively baseless, and that it was not genuinely aimed at attaining some favorable government action (or inaction). Not only does the immunity defense put this burden on the plaintiff, but the Court also indicated that this analysis must be done on an expedited basis. Allowing the plaintiff to proceed with discovery or otherwise exhaust the defendant's resources, the Court opined, would only exacerbate the **"chilling effect"** that such lawsuits have on public participation. The Omni decision did much to safeguard the First Amendment right to petition the government.   Kansas Anti-Slapp legislation (Statutes) are among the most fair and widely used in the Country, Nelson has filed for dismissal under these rights and statutes, IF the court is to hold first personal and subject matter jurisdiction then the default judgment against the frist amended counter complaint must issue and the Motion to Dismiss with prejudice the frist amended complaint by Chad M. Koehn and UCM must withstand first scrutiny under the statute, thereby staying proceedings and limiting discovery to the issues of the SLAPP petition dismissal only.

The nonlegal effect of SLAPP suits remains. A defendant in such a suit may succeed legally but lose nevertheless, having expended large amounts of time and money in defending against the lawsuit. More damaging is the effect that such suits can have on those who have not yet been targeted: the desire to avoid being sued translates into a reluctance to participate in public debate!  Therefore the damages of the SLAPP petition are felt stronger throughout society.

===================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

The claims of the plaintiff's suffer from obvious lack of information and cannot achieve any of the relief sought by the plaintiffs. Fed. R. Civ. P. 12(b)(6), AND d. Kan. Rule 7.1(a) and 7.6 and under the Kansas SLAPP (Strategic Lawsuits Against Public Participation) state statutes. Kansas like many other States of the Union of the United States of America, has adopted strong laws against the very type of Strategic Lawsuit, issued by the plaintiff's to dissuade the public, shareholders of corporations, employees, contractors and others from noticing law enforcement, regulators and the public at large of issues of Regional, National and Global PUBLIC Concern.  Second an application for Default Judgment, sum certain, which means the Court here now longer has controlling jurisdiction as a matter of law to the merits of the first amended counter complaint, due to the fact UCM and Koehn refused to follow FRCP and have not timely filed an answer as required following the Rules in the Federal Rules of Civil Procedure therefore now entitling Nelson to default judgment as a matter of law.The Third issue not addressed in the Scheduling Order is the fact that Nelson has filed multiple requests for a stay pending resolution of the parallel criminal matters, which are being narrowed on a weekly basis, and we are less than a month away from multiple trials.  Allowing any discovery apart from the limited discovery to dismiss the SLAPP petition, violates the fifth amendment rights of Nelson.  Additionally, allowing any amendments to the existing petition, is not proper and violates the laws in Kansas relating to the Motion for Dismissal of the SLAPP litigation.  To allow a plaintiff to file a SLAPP litigation, only to then later amend the SLAPP litigation is to work against the intent and very purpose of Kansas's strong anti-slapp litigation laws.  The scheduling order fails to take into account the fact that many documents and evidence are out of the immediate reach of Nelson, and therefore places Nelson at further unfair advantage in this litigation having to defend against a SLAPP litigation and having only the evidence that can be collected from the plaintiffs UCM and Chad Mitchell Koehn available to Nelson in this frivolous SLAPP litigation filed by UCM and Koehn.   Other evidence may exist in the form of interrogatories and depositions and case files in the case of Chad Mitchell Koehn and UCM vs. Christopher Giroux, wherein it is believed those case files shall demonstrate and ongoing pattern of sexual aggression committed by Chad Mitchell Koehn, it is yet to be determined if that sexual aggression is only limited to Chad Mitchell Koehn being sexual aggressive towards females or towards males as well, nor is it determinable at this time the ages of those victims of Chad Koehn's sexual aggressions.

Nelson must rely upon third party non-profits who monitor cases of grave public concern, like the case here which originated via a state SLAPP petition replete with racial slur, formulated as alleged a

================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

- 24

SLAPP (Strategic Lawsuit Against Public Participation). UCM and Koehn by and through the well known long and storied history of Craig Alan Brand, continue to regularly <u>deny basic due process rights</u> to the pro se defendant and counter-plaintiff Nelson. The fact the memorandum in opposition to the dutiful motion to disqualify Craig Alan Brand from representation here needs now be replied to, not because UCM and Koehn have properly provided a copy of their memorandum in opposition, but only because Nelson must rely upon Judicial Watch, ACLU, Free.law, Reporters Rights, Intl. Coalition of Free Speech and other non-profits who monitor Federal Cases so that Nelson can at times be so noticed of the SECRETIVE Ex Parte communications with the Court filed by UCM and Koehn who continue to flout the basic fundamental due process as outlined in the Federal Rules of Civil Procedure and which the Court have previously multiple times ORDERED that Chad M. Koehn and UCM adhere to FRCP Rule 5, and provide copies (thus notice) of what they file to the Court to the opposing party, Nelson. Koehn and UCM continue to flout the basic fundamental concepts of litigation in providing notice and copies of what they file to the Court to the person of Nelson. Irreversible error has already been committed by the MISCONDUCT of Koehn and UCM at bar. It is upon information and belief that it is the litigation strategy of Craig Alan Brand and his long and storied history of judicial abuses to continue to abuse the legal processes here and deny fundamental due process rights to Nelson, frustrating BOTH the Court and the pro se Nelson in the matter before the Court, as Brand continues with purposeful, willful, wrongful and illegal DECEPTION in the filings, and attempts to mislead the court in emails see Docs 52 & 57.

The Court must be skeptical of anything Craig A. Brand states to the Court, as Craig A. Brand publicly declares: <u>I [CRAIG BRAND], for instance have **championed the art of disinformation.** I intentionally provide</u> people [courts] with <u>false information…</u>" pages 118 and 119 id. Craig A. Brand's book, "Life Sucks".

### *Motion for the DISQUALIFICATION OF CRAIG BRAND STILL PENDING:*

In a matter eerily similar hereto a Federal Court sitting in Kansas deciding to disqualify for a conflict of interest looks to the Kansas Rules of Professional Conduct. See D. Kan. Rule 83.6.1 (adopting Kansas Rules of Professional Conduct as applicable standards of professional conduct); "(c) Standards of Conduct. Any of the following acts or omissions by an attorney shall constitute misconduct and shall be grounds for discipline: (1) Acts or omissions which violate standards of professional conduct; (2) Conduct violating applicable rules of professional conduct of another jurisdiction; (3) Willful disobedience of an order of court requiring the attorney to do or forebear an act in the course of the practice of law; (4)

====================================================================

Willful violation of the attorney's oath prescribed by these rules; *see also Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp., No. 08-1204-WEB, 2009 WL 3007125, at *1 (D. Kan. Sept. 16, 2009)*

**CRAIG ALAN BRAND VIOLATES EVERY SINGLE ONE OF THE STANDARDS FOR DISQUALIFICATION:** (1) Brand's actions during the litigation have included purposeful, knowing, willful, illegal attempts to mislead the Chambers of Judge Birzer and opposing pro se party Nelson, in his wrongful illegal response email from craig.brand@herasoft.com demonstrating Brand is an employee with email address at HeraSoft the moniker for Hera Software Development Inc. this was complained of to the Court at length in documents 52 and 57. (2) Craig Brand's actions at bar have included filing of a false affidavit under penalties of perjury, having the Court acknowledge on the record he (Craig Brand) "played fast and loose"; Craig Brand has purposefully mislead the Chambers of Judge Birzer and opposing party Nelson, purposefully trying to have Nelson violated for contact with the HeraSoft.com email address as complained of in Documents 52 and 57; Craig Brand has proffered shameful disparagements against the Judiciary and presiding Judges of the District; Craig Brand regularly proclaims his disdain for the American Judiciary in public statements which bring shame, negative thoughts and certain tarnish upon the system of Jurisprudence in the United States as demonstrated in the Attached herewith Exhibit "A" (3) Craig Brand's litigation strategy has included orchestration of a plan to prevent Nelson from receiving electronic service in this litigation, thus now causing formal application for default judgment against Koehn and UCM (4) Craig Brand has violated his oath to his profession through his words of hate sewn in public and in his multitude of conflicts of interest as previously well articulated in pleadings and articulated herein above in limited recap format.

Craig Alan Brand's unethical, immoral, knowing, purposeful, willful illegal conduct has even included shameless attempts to mislead the Chambers of the presiding jurist and mislead the opposing party, Nelson, wherein as described in Documents 52 and 57, Craig Brand purposefully replied from an email address craig.brand@herasoft.com when he was emailed by Chambers to the email address on file with the Court, an email address at a domain name for Craig A. Brand's purported Law Corporation Partnership, where he claims to be the Senior Partner, @thebrandlawfirm.com The Court has the inherent power to disqualify an attorney for ethics violations, *Biocore, 181 F.R.D. at 664*.

IF not for Craig A. Brand's deliberate attempts to get Nelson to inadvertently have communication with an email address at www.herasoft.com thereby violating another Court's Order then perhaps the parties could engage in email correspondence, Nelson would be able to receive electronic notifications

===================================================================================

and service in the matter at bar would have dramatically lower costs, increased speed and provide for just determination consistent with FRCP Rule 1. Due directly and in part to both Craig Alan Brand's ex parte extra judicial email harassment campaign as complained of by Nelson in document 35; and again Craig Brand's purposeful, willful, knowing, wrongful and illegal conduct in the misleading of Chambers for Judge Birzer and the person of Nelson, in unethical attempts to get Nelson to inadvertently violate an underlying order of an inferior Court in another State, then the matter at bar would have dramatically less stresses, to the parties and burdens upon the parties, the Court and the public. Due to Craig Alan Brand's unethical, immoral, illegal and certainly wrongful conduct at bar, collectively MISCONDUCT the parties, public and Court are deprived of just, speed and inexpensive determination of the matter before the Court.

The Magistrate Judge's Scheduling Order is not in conformity with Local Rules, Federal Rules of Civil Procedure, Kansas Laws and Statutes, the Motions for dismissal as filed, the fact the Court lacks both subject matter and personal jurisdiction, there remain applications for default judgment, Motions to Dismiss and Strike the first amended complaint which is now void the racial slur, where the Court had the necessity to ORDER the removal of the known racial slur. The Court has before it motions which require the Court to follow FRCP, Local Rules, Kansas Statutes, and case precedents. The District Court must conduct de novo review of the errors which have occurred to determine if errors are reversible or as they appear irreversible error. Make ruling upon the pending motions, as they require a STAY of the action as a matter of law, and provide for only limited discovery of the matter as it pertains to the Motion to dismiss the SLAPP styled petition of Koehn and UCM now void of the racial slur ordered to be removed after 3 months of pleadings where Koehn and UCM refused to do the expeditious thing and move on their own to remove the known racial slur from the pleadings, thus causing immense additional damages.

**PRAYER FOR RELIEF UPON THE RULES of the COURT:**

WHEREFORE the Defendant and Counter-Plaintiff Nelson, prays this Honorable United States District Court will suspend the scheduling order to re do the scheduling order in light of all which is so complained of above herein. That the District Court will follow the Local Rules, Federal Rules of Civil Procedure the laws and statutes of the State which the District is located the US State of Kansas in accordance with the Statutes of Kansas as the Court here is the US District of Kansas Federal Court. Further to stay the proceedings in accordance with LAW and for the protection of constitutional rights as previously so appealed and so sought for relief in pending Appeals before the District Court. That the

===================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

district court will look to materially move the matter towards resolution in the removal and disqualification of Craig Alan Brand in conformity with FRCP Rule 1, thus providing for just, speedy and inexpensive determination of the action, given the gross MISCONDUCT at bar committed by Craig Brand, in misleading Nelson and Chambers through purposeful willful fraudulent emails and his continued MISCONDUCT before the Court, which provides for neither speedy nor inexpensive determination and certainly not just, given Craig Brand's multitudes of conflicting interests and his certain MISCONDUCT against the interests of Justice as so rightfully and dutifully complained.   If the Courts do not uphold the law, when asked and so required, who do we in society have to look towards to uphold the rule of law?   Who will uphold the rule of law when the Courts turn a blind eye to the very rules of law upon which motion is made and they are called upon to serve and so rule.   Craig Brand whats the Court here to declare ipso facto:  **"Lady Justice is Blind.  Blind to Justice."** and <u>"Lady Justice is not only blind but corrupt and susceptible to biased pressures."</u> says Craig Brand in his book, Brand goes on to bring public disdain, distrust, and certainly tarnishes the image of the Court, lawyers and the legal profession in the minds and hearts of the public at large, causing even further damages to the American Judicial Machine, by stating:  "Most falsely accused people wind up paying some form of legal extortion just to get out of the drama. **The bad guys and their shyster lawyers know it.**"id page 97.

The Court here in the US DIstrict of Kansas Federal Courts is called upon in a Motion to dismiss the action under well founded principles of law and Kansas State Statute, the Court is called upon to issue notice of stay and limited discovery in accordance with Kansas State Law which the Court must as a matter of right uphold, wherein the Kansas State Statutes regarding SLAPP litigation are well founded within BOTH the Kansas State Constitution and the United States Constitution.  To do otherwise is as Judge J. Nicholas Colabella wrote in *Gordon v. Marrone (N.Y . 1992)*, **"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."**

IF "...the integrity of the judicial process is to be maintained, and the appearance of impropriety to be scrupulously avoided, the issue of an allegedly improper representation should be resolved at the outset, "lest a costly and protracted trial be tainted on the merits by an issue collateral thereto." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 803 (2dCir. 1974).*

WHEREFORE, given all the facts, the pending Motions to Dismiss and the application for default fixed squarely and properly within the Court under Federal Rules of Civil Procedure Rule 55 without limitation, it is in the interests of the PUBLIC, the COURT, the parties and in accordance with the Federal

====================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

- 28

Rules of Civil Procedure for the District Court to rule now upon the multitude of pending and piling up motions, which would materially bring the matter at bar to resolution in accordance with Kansas Statutes which the Court must support and follow as well as those rules embodied within the Federal Rules of Civil Procedure, including disqualification of the attorney Craig Brand who continues to make a mockery out of the American Jurisprudence System (the Courts) and his MISCONDUCT at bar has caused the litigation to become protracted, and necessitated the only form of communication between the parties to be conducted by US Mail, and the Local Rules of the Court do not take into consideration the material changes to First Class US Mail Service, thus now dictating many multitude of additional litigaitons will grow from this litigation to litigate the failure of the Local Rules and even FRCP to keep up to date with both technology and the changes to the United States Postal Service, services, thus denying to the parties basic and fundamental fair due process rights under law.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see *Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)*.

Respectfully Submitted, this 15th day of August 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

===================================================================================
Objections/Appeal of Order of Federal Magistrate issuance of Scheduling Order Doc # 122 - Rule 72 Errors in Law

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I electronically filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1; filed to the extent this filing is expressly not to be shared communicated to or provided in anyway shape or form to the person of Chad Mitchell Koehn, per Court order of Saline County Court Judge Paul J. Hickman.

Respectfully Submitted, this 15th day of August 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com