# EXHIBIT

# "A"

# To Follow . . .

---

**Appeal of Order Doc 63 (replacement of Doc 68 per Order Doc 183) with attached Exhibit "A"** in case 5:22-CV-04008-JWB-GEB

https://fingfx.thomsonreuters.com/gfx/legaldocs/klvykjdwwvg/frankel-woodsvcantrell--DOJbrief.pdf

2021 WL 2526518 (C.A.5) (Appellate Brief)
United States Court of Appeals, Fifth Circuit.

Anthony J. WOODS, Plaintiff-Appellant,

v.

Latoya CANTRELL, Mayor, Officially; New Orleans City, Officially; French Market Corporation, Officially; Rhonda Sidney, Officially and Individually; N'gai Smith, Officially and Individually; Robert Matthews, Officially; Elizabeth S. Robins, Officially and Individually, Defendants-Appellees.

No. 21-30150.
June 16, 2021.

On Appeal from the United States District Court
for the Eastern District of Louisiana

**Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellant on the Issues Addressed Herein**

Gwendolyn Young Reams, Acting General Counsel, Jennifer S. Goldstein, Associate General Counsel, Elizabeth E. Theran, Assistant General Counsel, Susan R. Oxford, Attorney, Equal Employment Opportunity Commission, Office of General Counsel, 131 M St. NE, Fifth Floor, Washington, D.C. 20507, (202) 921-2706; Kristen Clarke, Assistant Attorney General, Erin H. Flynn, Katherine E. Lamm, Attorneys, Department of Justice, Civil Rights Division, Appellate Section, Ben Franklin Station, P.O. Box 14403, Washington, D.C. 20044-4403, (202) 616-2810.

**\*i TABLE OF CONTENTS**

| | |
|---|---|
| INTEREST OF THE UNITED STATES | 1 |
| STATEMENT OF THE ISSUE | 2 |
| STATEMENT OF THE CASE | 3 |
| *1. Facts Relevant To Plaintiff's Hostile Work Environment Claim* | 3 |
| *2. Administrative And District Court Proceedings* | 5 |
| SUMMARY OF ARGUMENT | 8 |
| ARGUMENT | |
| THE DISTRICT COURT COMMITTED SIGNIFICANT LEGAL ERRORS IN ANALYZING WHETHER WOODS' COMPLAINT WAS SUFFICIENT TO STATE A HOSTILE WORK ENVIRONMENT CLAIM | 9 |
| *A. Legal Standard* | 9 |
| *B. In Analyzing The Sufficiency Of Woods' Hostile Work Environment Claim, The District Court Failed To Consider The Severity Of The Harassing Incident And The Totality Of The Circumstances Alleged* | 12 |
| *1. One Instance Of Discriminatory Workplace Harassment, If Severe, May Support A Plausible Hostile Work Environment Claim* | 12 |
| *2. The District Court Improperly Ignored Considerations Relevant To The Sufficiency Of The Complaint, Such As The Egregiousness Of The Epithet Alleged And The Context In Which It Was Used* | 14 |
| *\*ii 3. The District Court Failed To Consider The Totality Of The Circumstances By Discounting Other Alleged Conduct That May Support A Hostile Work Environment Claim* | 22 |
| CONCLUSION | 24 |
| CERTIFICATE OF COMPLIANCE | |
| CERTIFICATE OF SERVICE | |

**\*iii TABLE OF AUTHORITIES**
**CASES:**

| | |
|---|---|
| *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240 (11th Cir. 2014) | 13 |
| *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405 (6th Cir. 1999) | 17 |
| *Allen v. Potter*, 152 F. App'x 379 (5th Cir. 2005) | 16 |

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ..................... 13, 15, 21
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 11
*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (en banc) .................................................................................................. 13, 16
*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) .......................... 20
*Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53 (2006) ............. 24
*Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) ........................... 12-13, 19, 21
*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ........................ 19
*Cicalese v. University of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) .................................................................................................. 3, 11-12
*Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373 (5th Cir. 2020), cert. denied, 2021 WL 1952066 (May 17, 2021) ..................................... 15, 18-19
*Conner v. Orleans Parish Sheriff's Off.*, No. 19-561, 2019 WL 4393137 (E.D. La. Sept. 13, 2019) .................................................................... 7
*Cooper v. Paychex, Inc.*, 163 F.3d 598 (4th Cir. 1998) (unpublished) .... 17
*Curry v. Lou Rippner, Inc.*, No. 14-1908, 2015 WL 2169804 (E.D. La. May 8, 2015) ......................................................................................... 7, 18
*Dailey v. Shintech, Inc.*, 629 F. App'x 638 (5th Cir. 2015) ..................... 19
*iv *EEOC v. WC&M Enters.*, 496 F.3d 393 (5th Cir. 2007) ................... 13, 22
*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ........................... 13, 19
*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996) ... 21
*Frazier v. Sabine River Auth.*, 509 F. App'x 370 (5th Cir.), cert. denied, 571 U.S. 857 (2013) ............................................................................ 19
*Gates v. Board of Educ. of the City of Chi.*, 916 F.3d 631 (7th Cir. 2019) .................................................................................................. 20
*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ..................................... passim
*Harvill v. Westward Comms, L.L.C.*, 433 F.3d 428 (5th Cir. 2005) ......... 13
*Henry v. CorpCar Servs. Houston*, 625 F. App'x 607 (5th Cir.), cert. denied, 577 U.S. 822 (2015) ............................................................... 13, 16
*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir.), cert. denied, 568 U.S. 817 (2012) ............................................................................ 10, 20-21
*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006) ....... 23
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ...................................... 11
*La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206 (2d Cir. 2010) .................................................................................................. 17
*Lauderdale v. Texas Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157 (5th Cir. 2007) ............................................................................................ 10, 13
*McGinest v. GTE Serv.*, 360 F.3d 1103 (9th Cir. 2004) ......................... 15
*Melvin v. Barr Roofing Co.*, 806 F. App'x 301 (5th Cir. 2020) ............... 11-13
*v *Mendoza v. Helicopter*, 548 F. App'x 127 (5th Cir. 2013) ................. 13
*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) ......................... 6, 9
*Mosley v. Marion Cnty.*, 111 F. App'x 726 (5th Cir. 2004) ..................... 18
*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998) .................. 11, 20, 23
*Raj v. Louisiana State Univ.*, 714 F.3d 322 (5th Cir. 2013) ................... 11-12
*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002) ............................ 10
*Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971) ..................................... 12
*Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993) ................... 13, 15, 20
*Smelter v. Southern Home Care Servs.*, 904 F.3d 1276 (11th Cir. 2018) . 17
*Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) .............. 15-16, 20
*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) .............................. 11
*Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982) ................... 19
*Walker v. Thompson*, 214 F.3d 615 (5th Cir. 2000), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ............................................................................................ 16
*Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936 (8th Cir. 2010) ........ 22

**STATUTES:**

Civil Rights Act of 1964, Title VII,

| | |
|---|---|
| 42 U.S.C. 2000e *et seq* | 9 |
| 42 U.S.C. 2000e-2(a) | 1 |
| 42 U.S.C. 2000e-2(a)(1) | 9 |
| 42 U.S.C. 2000e-5(a) | 2 |
| *vi 42 U.S.C. 2000e-5(f)(1) | 1-2 |

**RULE:**

| | |
|---|---|
| Fed. R. App. P. 29(a) | 2 |

**MISCELLANEOUS:**

| | |
|---|---|
| *EEOC Compliance Manual* (2006) | 14-16 |

***1 INTEREST OF THE UNITED STATES**

The United States has a strong interest in the proper interpretation of the antidiscrimination provision of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. 2000e-2(a). The Attorney General enforces Title VII against public employers, 42 U.S.C. 2000e-5(f)(1), and the Equal Employment Opportunity Commission (EEOC) enforces the statute against private employers, **\*2** 42 U.S.C. 2000e-5(a) and (f)(1). At issue in this case is whether the district court erroneously held that a complaint alleging that a supervisor used a racial epithet (consisting of several highly offensive terms) toward a subordinate on one occasion is never sufficient to state a claim of hostile work environment in violation of Title VII. Because of the federal government's interest in the proper interpretation of Title VII, the United States offers its views under Federal Rule of Appellate Procedure 29(a).

**STATEMENT OF THE ISSUE**

Plaintiff Anthony Woods, a Black former employee of the City of New Orleans, filed suit against defendants (the city and several city officials and employees) claiming that defendants are liable for a discriminatory hostile work environment based on race and color in violation of Title VII. Woods alleges that during his employment, his supervisor called him a "Lazy Monkey A ___ N _____" in the presence of co-workers and that the supervisor and other senior officials engaged in additional hostile behavior. Doc. 27, at 5 (Am. Compl.); Doc. 1, at 10 (Compl.). [1] We address the following question only:

**\*3** Whether the district court erred in holding that "a single utterance of a racial epithet, despicable as it is, cannot support a hostile work environment claim" under Title VII. Doc. 74, at 28 (Order). [2]

**STATEMENT OF THE CASE**

*1. Facts Relevant To Plaintiff's Hostile Work Environment Claim*

We construe the allegations in the complaint as true, as the court must on a motion to dismiss. See *Cicalese v. University of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019).

Woods, who is Black, is a former employee of French Market Corporation, an entity that operates markets for the City of New Orleans and whose employees are part of the city's civil service. Compl. 3; Order 2 n.6. Woods began his employment as a laborer and then was assigned to the role of painter. Compl. 3. Kathleen Turner was Executive Director of French Market and defendant Rhonda Sidney was its Director of Human Resources. Compl. 3-4. Defendant N'Gai Smith was Woods' immediate supervisor. Compl. 3.

**\*4** Woods claims that defendants discriminated against him based on his race, color, and religion in violation of Title VII by subjecting him to a hostile work environment, failing to promote him, and terminating him. Relevant to the hostile work environment claim, Woods alleges that Smith called him a "Lazy Monkey A ___ N _____" in front of his co-workers while on a job site and that no one took corrective action against Smith. [3] Am. Compl. 5; see also Compl. 10. Woods further alleges that Smith "continued his abusive behavior against [Woods] due to his favored position with management" by falsifying allegations

against Woods and urging his termination. Am. Compl. 5. Additionally, Woods states that Smith "subjected him to intimidating and threatening employment tactics in structuring his work schedule," but the complaint indicates that Smith's motivation as to these particular acts was to harm Woods by interfering with his religious observances and his care of his infirm wife. Am. Compl. 5; see also Compl. 9.

**\*5** In support of his hostile work environment claim Woods alleges that Turner, also, "monitored and criticized * * * his work performance as being sloppy." Am. Compl. 5. Woods was forced to complain (successfully) about improper suspensions he received from Turner and Smith, which Sidney approved. Compl. 9-10; Am. Compl. 4. Turner and Smith also required Woods to work alone but formed a paint crew to fill his role after his termination. Compl. 9-10. Woods' complaint does not provide additional details about these allegations, but it states that Turner and Smith (as well as Sidney) "are very light skinned people who are bias[ed] and prejudice[d] against [Woods] because he is dark skinned" and that they discriminated against him for this reason. Compl. 9-10; see Am. Compl. 6. [4]

### 2. Administrative And District Court Proceedings

After filing a charge of discrimination and retaliation with the EEOC and receiving a right-to-sue letter (Compl. 3, 15-17), Woods filed a complaint *pro se* in the Eastern District of Louisiana (Compl.). Woods brought claims against Mayor LaToya Cantrell, the City of New Orleans, the French Market Corporation, Turner, Sidney, Smith, an acting supervisor, and a city attorney for violations of the First and Fourteenth Amendments to the U.S. Constitution, Titles VI and VII of the **\*6** Civil Rights Act of 1964, and state law. Compl. 1-2. Following an initial motion to dismiss (Doc. 9), which the district court denied (Doc. 26), Woods filed an amended complaint with the assistance of counsel (Am. Compl.).

All defendants except Turner filed a motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted. [5] Doc. 28. Defendants argued, in relevant part, that Woods failed to state a claim of hostile work environment under Title VII because his complaint referenced only one instance in which he was called a racial epithet without "specific details or facts * * * including that the harassment affected a term, condition or privilege of his employment." Doc 28, at 11. Use of the offensive epithet alone, defendants argued, did not sufficiently affect the conditions of employment to implicate Title VII. Doc 28, at 11-12 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). Woods, in opposition, pointed to allegations of hostile behavior from Smith, Turner, and Sidney--including being "compelled to tolerate racial epithets by N'Gai Smith"--which he claimed was based on race and color. Doc. 64, at 22-23.

**\*7** The district court dismissed Woods' hostile work environment claim (as well as his other claims). The court stated that to bring such a claim, "a plaintiff must allege that an employer has created a working environment heavily charged with . . . discrimination." Order 25 (citing *Conner v. Orleans Parish Sheriff's Off.*, No. 19-561, 2019 WL 4393137, at \*3 (E.D. La. Sept. 13, 2019)) (internal quotation marks and citation omitted). The court held that Woods' complaint failed to state a claim because "a single utterance of a racial epithet, despicable as it is, cannot support a hostile work environment claim." Order 28 (citing *Curry v. Lou Rippner, Inc.*, No. 14-1908, 2015 WL 2169804, at \*4 (E.D. La. May 8, 2015)). The court also held that other conduct Woods included among his allegations--that Smith was abusive toward him, that Turner monitored and criticized his work, and that Smith and Turner improperly suspended him with Sidney's approval--was insufficient to support his claim. Order 28. The allegations regarding Smith's abusive behavior, the court said, were too vague. Order 28. The other allegations "offer no hint of an unlawful hostile work environment based on Woods's color or race, particularly given Turner and Smith's supervisory roles, Sidney's role as a human resources professional, and Woods's employment as a painter." Order 28-29.

**\*8** The court entered judgment in favor of defendants on all counts in the amended complaint. Doc. 75. Woods filed a timely notice of appeal and is proceeding *pro se* before this Court. Doc. 76.

### SUMMARY OF ARGUMENT

The district court made at least two errors in analyzing the sufficiency of Woods' complaint to state a Title VII hostile work environment claim. First, the court incorrectly stated that "a single utterance of a racial epithet * * * cannot support a hostile work environment claim." Order 28. This contradicts clear and consistent precedent--including cases from this Court--stating that even one use of a severe epithet in the workplace may alter the conditions of a plaintiff's employment such that the environment is abusive in violation of Title VII. Thus, Woods' complaint alleging that he was subjected to egregious racially derogatory language--here, an epithet consisting of several highly offensive terms--on one occasion was by no means categorically deficient to state a plausible claim for relief.

Second, the district court failed to give adequate weight to the seriousness of the epithet alleged or the context in which it was used. Numerous courts have acknowledged the egregious nature of the racist language recounted in Woods' complaint and the possibility that it may form the basis of a hostile work environment. Moreover, although courts must consider the totality of the **\*9** circumstances in assessing a hostile work environment claim, the court here ignored or discounted potentially significant aspects of Woods' allegations--namely, that the epithet was uttered by a supervisor, in front of co-workers, and that this incident may have been part of a broader course of discriminatory conduct.

## ARGUMENT

## THE DISTRICT COURT COMMITTED SIGNIFICANT LEGAL ERRORS IN ANALYZING WHETHER WOODS' COMPLAINT WAS SUFFICIENT TO STATE A HOSTILE WORK ENVIRONMENT CLAIM

### *A. Legal Standard*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, prohibits several forms of employment discrimination. The statute has been interpreted to protect an employee's right "to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). As relevant here, Title VII makes it an "unlawful employment practice" for an employer to discriminate "because of such [employee's] race, color, religion, sex, or national origin" with respect to "terms, conditions, or privileges of employment." 42 U.S.C. 2000e-2(a)(1). Courts have interpreted this provision to proscribe the creation of a hostile work environment based on an employee's membership in a protected class, such as race or color. See *Meritor*, 477 U.S. at 65.

**\*10** To prevail on a claim of hostile work environment perpetrated by a supervisor, a plaintiff must prove four elements, the last of which is most relevant here: (1) membership in a protected group; (2) unwelcome harassment; (3) harassment based on the protected characteristic; and (4) harassment affecting a term, condition, or privilege of employment. *Lauderdale v. Texas Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 162-163 (5th Cir. 2007). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)), cert. denied, 568 U.S. 817 (2012).

Courts consider the totality of the circumstances in deciding whether harassment alters the victim's conditions of employment and creates an abusive work environment. See, *e.g.*, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Hernandez*, 670 F.3d at 651. Determining if harassment is sufficiently severe or pervasive requires assessing factors that may include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *Hernandez*, 670 F.3d. at 651. This inquiry "requires careful consideration of the social context in **\*11** which particular behavior occurs." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 81-82.

In order to survive a motion to dismiss, a complaint simply must "state a claim to relief that is plausible on its face." *Cicalese v. University of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "need not make out a prima facie case of discrimination," but instead must "plead sufficient facts on all of the ultimate elements of [the] claim to make [their] case plausible." *Id*. at 766 (citation, emphasis, and internal quotation marks omitted). The purpose of this requirement is to put the defendant on notice of the basis of the plaintiff's claims, regardless of whether the legal theory is articulated precisely. See *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 308 (5th Cir. 2020) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-512 (2002), and *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)).

A plaintiff's burden of pleading, therefore, is to put forth facts that plausibly demonstrate harassment that is based on a protected characteristic and that is sufficiently severe or pervasive to alter the plaintiff's conditions of employment. See *Melvin*, 806 F. App'x at 308; **\*12** *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017); cf. *Cicalese*, 924 F.3d at 765-766.[6] A complaint containing plausible factual allegations that a plaintiff experienced severe harassment because of race would put the defendant "on notice of the plaintiff's legal theory" and thus would "sufficiently allege[] a hostile work environment claim." *Melvin*, 806 F. App'x at 308.

### B. In Analyzing The Sufficiency Of Woods' Hostile Work Environment Claim, The District Court Failed To Consider The Severity Of The Harassing Incident And The Totality Of The Circumstances Alleged

#### 1. One Instance Of Discriminatory Workplace Harassment, If Severe, May Support A Plausible Hostile Work Environment Claim

The district court incorrectly held that Woods' complaint failed to state a claim upon which relief could be granted because "a single utterance of a racial epithet, despicable as it is, cannot support a hostile work environment claim." Order 28. To the contrary, clear and authoritative precedent demonstrates that a **\*13** single incident may be the basis of an actionable hostile work environment. The Supreme Court has held that, considering the totality of the circumstances, an isolated incident that is "extremely serious" may constitute a discriminatory alteration of the terms of employment in violation of Title VII, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), even though "mere utterance of an epithet which engenders offensive feelings" will not by itself violate the statute, *Harris*, 510 U.S at 21 (citation and internal quotation marks omitted).

This Court has acknowledged this principle repeatedly, explaining that "[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim." *EEOC v. WC&M Enters.*, 496 F.3d 393, 400 (5th Cir. 2007); see also *Melvin*, 806 F. App'x at 309; *Henry v. CorpCar Servs. Houston*, 625 F. App'x 607, 611-612 (5th Cir.), cert. denied, 577 U.S. 822 (2015); *Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013); *Lauderdale*, 512 F.3d at 163; *Harvill v. Westward Comms, L.L.C.*, 433 F.3d 428, 435-436 (5th Cir. 2005).

Numerous other courts of appeals have affirmed the same rule. See, *e.g.*, *Castleberry*, 863 F.3d at 264-266; *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc); *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993); *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1254 (11th Cir. 2014); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013). **\*14** Additionally, the EEOC, which has primary enforcement responsibility for Title VII, has adopted this same principle in its guidance: "[A] single, extremely serious incident of harassment may be sufficient to constitute a Title VII violation." *EEOC Compliance Manual* § 15-VII.A.2 (2006).

It is certainly plausible, then, that a supervisor's use of a very severe epithet on one occasion would render a work environment abusive to the point of altering that employee's conditions of employment, rather than merely prompting "offensive feelings." The district court erred in basing its dismissal of Woods' complaint before discovery on the *number* of instances in which Woods alleges he was subjected to racially derogatory language.

*2. The District Court Improperly Ignored Considerations Relevant To The Sufficiency Of The Complaint, Such As The Egregiousness Of The Epithet Alleged And The Context In Which It Was Used*

Because the district court erroneously believed that a single racial epithet could never provide the basis for a hostile environment claim, it failed to analyze factors such as the egregiousness of the particular epithet and the context in which it was uttered. This too was error.

a. First, the district court failed to account for the severity of the harassment alleged in Woods' complaint in determining whether Woods stated a plausible claim for relief. The phrase Smith used to insult Woods was not simply "despicable," as the district court acknowledged (Order 28), but in fact was **\*15** comprised of the most offensive terms that may be used to denigrate African Americans--words that are capable of altering the conditions of employment.

Use of the term "n _____" is, by itself, extremely serious. As this Court acknowledged only last year, many courts of appeals "have found instances where the use of the N-word itself was sufficient to create a hostile work environment." *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 377 (5th Cir. 2020) (citing *Ayissi-Etoh*, 712 F.3d at 580 and *Rodgers*, 12 F.3d at 675), cert. denied, 2021 WL 1952066 (May 17, 2021). The word is "pure anathema to African-Americans." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). As the Ninth Circuit has explained, it is "highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination," and "is perhaps the most offensive and inflammatory racial slur in English, a word expressive of racial hatred and bigotry." *McGinest v. GTE Serv.*, 360 F.3d 1103, 1116 (9th Cir. 2004) (citation and internal quotation marks omitted). Similarly, now-Justice Kavanaugh observed that the term "powerfully [and] instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African-Americans." *Ayissi-Etoh*, 712 F.3d at 580 (Kavanaugh, J., concurring). The EEOC, as well, has stated that the use of "an unambiguous racial epithet such as the 'N-word' " may establish a hostile work environment. *EEOC Compliance Manual* § 15-VII.A.2 (2006).

**\*16** Smith also used the term "monkey" in disparaging Woods, a slur against African Americans that has been recognized as "about as odious as the use of the word [n _____ ]." *Boyer-Liberto*, 786 F.3d at 280. "To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." *Spriggs*, 242 F.3d at 185. It is not surprising, then, that "courts have repeatedly found that intentionally comparing African-Americans to apes is highly offensive such that it contributes to a hostile work environment." *Henry*, 625 F. App'x at 612. In *Henry*, this Court noted--consistent with its observations in several other cases--that an employer's comparison of African-American employees to gorillas was more than "a mere offensive utterance" and contributed to the severity of the harassment in question. 625 F. App'x at 613 (quoting *Harris*, 510 U.S. at 23); see also, *e.g.*, *Walker v. Thompson*, 214 F.3d 615, 619-622 (5th Cir. 2000) (use of the term "monkey" contributed to the sufficiency of hostile work environment allegations to survive summary judgment), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Allen v. Potter*, 152 F. App'x 379, 382-383 (5th Cir. 2005) (finding that comments such as "[l]ook at the monkeys" and "[d]on't feed the [m]onkeys" could constitute severe or pervasive harassment); see also *EEOC Compliance Manual* § 15-VII.A.2 (2006) **\*17** ( "racial comparison to an animal" may support claim of hostile work environment).

Further, Smith's insult included the term "lazy," a racial stereotype of African Americans that enhances the severity of the alleged incident. Several courts of appeals have acknowledged the offensive nature of such language. See, *e.g.*, *Smelter v. Southern Home Care Servs.*, 904 F.3d 1276, 1286 (11th Cir. 2018) (comment that Black men are "lazy" was among several "obvious racial slurs conveying highly offensive derogatory stereotypes of black people" that plaintiff endured); *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210-211 (2d Cir. 2010) (complaint alleging "racial comments about black men being lazy," among other insults, was sufficient to survive motion to dismiss); *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410-411 (6th Cir. 1999) (comments including supervisor's remark that African-American plaintiff was "lazy like the rest of [your] people" "clearly constitute racial harassment"); *Cooper v. Paychex, Inc.*, 163 F.3d 598, at \*5-6 (4th Cir. 1998) (unpublished) (discussing use of the phrase "lazy black ass" as evidence of racial bias).

In light of this precedent, the district court should have analyzed whether Woods' complaint alleged the sort of egregious racial epithet that may, on its own, establish a hostile work environment.

**\*18** b. Second, the district court also failed to appreciate the context in which Woods was subjected to this highly offensive language, as well as the early posture of the case in which the court was called upon to assess its severity.

In coming to its conclusion, the district court cited no binding Fifth Circuit precedent on whether a complaint alleging a supervisor's use of a disparaging comment laden with racial slurs as serious as those here should survive a motion to dismiss.[7] In fact, and contrary to the district court's holding, this Court recently acknowledged in *Collier* that use of a severe term like "n_____" *could* support a hostile work environment claim. 827 F. App'x at 377. This Court's affirmance of summary judgment to the defendant came only after discovery, which produced a concession by the plaintiff that the incidents in question had "one percent" impact on his work, did not humiliate him, and "did not unreasonably interfere with [his] work performance." *Id.* at 377-378.[8]

**\*19** The Third Circuit, however, has addressed whether a complaint alleging a supervisor's use of a severe racial epithet on one occasion, like the instant one, may survive a motion to dismiss. In *Castleberry v. STI Grp.*, the court held that "[a]lthough the resolution of that question is context-specific, it is clear that one such instance [of a supervisor using the n-word] can suffice to state a claim." 863 F.3d at 264 (citing *Faragher*, 524 U.S. at 788, and *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). The court went on to conclude that a supervisor's use of the n-word in front of African-American plaintiffs while threatening termination, in the presence of co-workers, constituted "severe conduct that could create a hostile work environment" (and that other instances of racial epithets and unfavorable treatment also might constitute pervasive harassment). *Id.* at 265-266. The court also noted that the complaint satisfied the *prima facie* elements of a hostile work environment claim and thus "should not have been dismissed at this early stage of the litigation." *Id.* at 266.

**\*20** The analysis in *Castleberry* is particularly apt here because of similarities between some of the facts of that case and the present one, *i.e.*, that the egregious racial insult was used by a supervisor in the presence of other employees. Among the factors that courts consider to determine if harassment is actionable are whether the conduct is "humiliating" and "whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *Hernandez*, 670 F.3d. at 651. This inquiry "requires careful consideration of the social context in which particular behavior occurs." *Oncale*, 523 U.S. at 81.

The use of the word "n_____" by a supervisor, specifically, is crucial context that the district court below disregarded. The Supreme Court has explained that a "supervisor's power and authority invests his or her harassing conduct with a particular threatening character" and can make such harassment more serious. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). The Seventh Circuit in *Rodgers* stated that "no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor." 12 F.3d at 675 (internal citation and internal quotation marks omitted); see also *Gates v. Board of Educ. of the City of Chi.*, 916 F.3d 631, 640-641 (7th Cir. 2019) (same); *Spriggs*, 242 F.3d at 185 (following *Rodgers*). Then-Judge Kavanaugh also wrote in his concurrence in *Ayissi-Etoh* that "being called the n-word by a supervisor [on **\*21** one occasion] * * * suffices by itself to establish a racially hostile work environment." 712 F.3d at 580. It is unsurprising, then, that *Castleberry* concluded that allegations of a supervisor's use of the n-word were sufficient to render plausible plaintiffs' hostile work environment claim. 863 F.3d at 266.

The district court also should have taken into consideration Woods' allegation that Smith subjected him to an insult comprised of multiple derogatory terms in front of co-workers, a fact that may have rendered the incident particularly "humiliating." See *Harris*, 510 U.S. at 23; *Hernandez*, 670 F.3d. at 651. Whether offensive comments were made in public is a factor this Court has examined when assessing whether harassment was severe or pervasive. See *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (finding that evidence was sufficient to support jury verdict for plaintiff on hostile work environment claim where supervisor made sexual comments in front of plaintiff's co-workers). Indeed, *Castleberry* gave weight to the fact that plaintiffs' supervisor used a racial epithet in front of co-workers. 863 F.3d at 265. The district court here, too, should have

considered the humiliating nature of the incident Woods alleged in assessing whether the complaint should survive a motion to dismiss.

### *22 3. The District Court Failed To Consider The Totality Of The Circumstances By Discounting Other Alleged Conduct That May Support A Hostile Work Environment Claim

The district court also erred by discounting other alleged conduct which, although not expressly based on race, may have been part of the same discriminatory course of conduct.

"[C]ourts consider the totality of the circumstances" in assessing a hostile work environment claim. *WC&M Enters.*, 496 F.3d at 399. This Court has recognized that a single course of discriminatory harassment may include both explicit discriminatory behavior, such as the use of epithets, as well as other harassing behavior that is not explicitly race-based but nevertheless motivated by racial bias. See *id.* at 400 (explaining that a reasonable juror could conclude that a colleague who called the plaintiff an "Arab" also was motivated by bias when he banged on the plaintiff's office partition); see also, *e.g.*, *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 944 (8th Cir. 2010) ("It is well established that all instances of harassment need not be stamped with signs of overt discrimination if they are part of a course of conduct which is tied to evidence of discriminatory animus.") (citation, alterations, and internal quotation marks omitted). As the Supreme Court explained in *Oncale*, the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and *23 relationships which are not fully captured by a simple recitation of the words used or the physical acts." 523 U.S. at 82.

In pleading his hostile work environment claim, Woods claimed not only that Smith used a racial epithet toward him, but also that Smith made false accusations against him, urged his termination, and (with Turner) got him suspended unfairly and forced him to work alone to perform duties later assigned to a whole crew. Compl. 9-10; Am. Compl. 4-5. Woods also alleged that Turner monitored and criticized him for being "sloppy." Am. Compl. 5. Woods claimed that his race and color were the reason for the alleged harassment. Am. Compl. 6. The district court did not address Woods' allegations about Smith's false accusations or being forced to work alone. Although the court did address the suspensions and Turner's criticism of Woods' work as "sloppy," the court dismissed the relevance of these allegations to Woods' harassment claim because they "offer no hint of an unlawful hostile work environment based on Woods's color or race." [9] Order 28.

It was error to ignore or to consider in isolation Woods' allegations about defendants' conduct that was not expressly biased. See, *e.g.*, *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) ("[W]e have deemed it improper to isolate incidents *24 of facially neutral harassment and conclude, one by one, that each lacks the required discriminatory animus"), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 67-68. In doing so, the district court failed to consider the totality of the circumstances and the possible interplay between Smith's words and other alleged conduct that might lend plausibility to Woods' discriminatory harassment claim.

### CONCLUSION

For the foregoing reasons, the complaint should be analyzed consistent with the above analysis.

Respectfully submitted,

GWENDOLYN YOUNG REAMS

Acting General Counsel

JENNIFER S. GOLDSTEIN

Associate General Counsel

ELIZABETH E. THERAN

Assistant General Counsel

SUSAN R. OXFORD

Attorney

Equal Employment Opportunity Commission

Office of General Counsel

131 M St. NE, Fifth Floor

Washington, D.C. 20507

(202) 921-2706

KRISTEN CLARKE

Assistant Attorney General

*s/ Katherine E. Lamm*

ERIN H. FLYNN

KATHERINE E. LAMM

Attorneys

Department of Justice

Civil Rights Division

Appellate Section

Ben Franklin Station

P.O. Box 14403

Washington, D.C. 20044-4403

(202) 616-2810

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 10

**Footnotes**

1 "Doc. ___, at ___" refers to the docket entry and page number of documents filed in the district court. "Br. ___" indicates the page number of Woods' opening brief.

2 The United States offers its views in connection with the third issuez presented in Woods' opening brief (Br. 9): "Whether the original and amended and supplemental complaints set forth sufficient facts to state a cause of action entitling relief?" See also Woods Br. 38-40 (arguing the sufficiency of the original and amended complaints). Our discussion is limited to the district court's analysis of the hostile work environment claim. The United States takes no position on any other issue before the Court.

3 In Woods' original complaint, he claimed that Smith "called him and another employee lazy shiftless N words in the presence of other employees, and neither Turner nor Sidney took any corrective action after being informed of the incident." Compl. 10. It is not entirely clear whether the original and amended complaints are describing the same incident or two different incidents in which Smith used the n-word to refer to Woods, although we read the filings below to suggest the former. Woods' opposition to the motion to dismiss relates a single episode in which Smith used the term "n_____" (Doc. 36, at 7), and the district court also addresses this allegation as if one incident (see Order 28). Woods' opening brief simply indicates that Smith harassed, discriminated, and used "profanity" toward him rather than reiterating the details offered in the district court. Br. 11-12, 23. Because the amended complaint purports to quote rather than paraphrase Smith's language, we focus on this language in our analysis.

4 Ultimately, French Market terminated Woods for an alleged assault that he committed on an acting supervisor, Robert Matthews. Compl. 4-5, 9. Woods asserts that the basis for his termination was false, and that the termination was orchestrated by Turner, Sidney, Smith, and a city attorney. Compl. 5-6; Am. Compl. 3.

5 Turner had not been served at the time defendants filed their motion. She later filed a separate motion to dismiss that adopted the arguments made in the other defendants' motion. Doc. 39. Turner's motion went unopposed and the district court granted it as such. Doc. 48. She is no longer a named defendant in the lawsuit.

6 In *Raj*, the Fifth Circuit stated that a hostile work environment claim "necessarily rests on an allegation that an employer has created 'a working environment heavily charged with discrimination.' " 714 F.3d at 330-331 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)). The Supreme Court's decision in *Harris*, however, superseded *Rogers*, the case on which *Raj* relied. Moreover, *Rogers* itself stated that "a working environment heavily charged with discrimination *may constitute* an unlawful practice"--not that such an allegation is *necessary* to survive a motion to dismiss. 454 F.2d at 239 (emphasis added). Notably, the district court below, citing an unpublished district court case, invoked the above language from *Raj* in articulating the standard necessary to state a claim of hostile work environment. Order 25. This, too, was error.

7 The primary case on which the district court relied was an unpublished district court decision, *Curry v. Lou Rippner, Inc.*, No. 14-1908, 2015 WL 2169804 (E.D. La. May 8, 2015). Order 28. In *Curry*, the district court held that the comment "we can't have you people doing these things in our store," attributed vaguely to "the employer," was insufficient to support a claim of race discrimination on a motion to dismiss. *Curry*, 2015 WL 2169804, at *4. The district court also cited *Mosley v. Marion Cnty.*, 111 F. App'x 726, 728 (5th Cir. 2004), an unpublished decision in which this Court held that "three incidents involving the use of racial slurs" (not specified in the opinion) were insufficient to create an issue of material fact to survive summary judgment.

8 The hostile work environment claim dismissed at summary judgment in *Collier* involved "two instances of racial graffiti and being called 'boy' " by a non-supervisor. *Id*. at 377-378. In several other cases, too, this Court has affirmed post-discovery judgments for the defendant on hostile work environment claims premised on the use of racial epithets. See, e.g., *Dailey v. Shintech, Inc.*, 629 F. App'x 638 (5th Cir. 2015) (summary judgment); *Frazier v. Sabine River Auth.*, 509 F. App'x 370 (5th Cir.) (summary judgment), cert. denied, 571 U.S. 857 (2013); *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982) (post-trial motion for judgment). In contrast, this case requires only that the Court consider what

|   | |
|---|---|
|   | constitutes a plausible claim for hostile work environment, not whether Woods would be entitled to go to trial on his factual allegations. |
| 9 | The district court also dismissed as vague Woods' allegation that Smith engaged in abusive conduct toward him. Order 28. |

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.