### UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, Inc. (UCMK) <u>and</u> CHAD M. KOEHN (Koehn) plaintiffs, counter-Defendants<br><br>v.<br>Michael Nelson ["Nelson"]<br><br>Defendant ;    PRO-Se. | **DOCKET NO.:**    **5:22-CV-04008-JWB-GEB**<br>**CIVIL ACTION**<br><br>**Memorandum in Opposition to Motion to Quash Subpoena to Donald Hoffman for Reconsideration**<br><br>**[Jury Trial Demanded]** |

<u>Nelson, makes "SPECIAL APPEARANCE"</u> to file **Reconsideration of** Memorandum in

**Opposition to Motion to Quash Subpoena to Donald Hoffman for Reconsideration**:

<u>**Personal Conversation with Donald Hoffman & his representation in Opposition to Koehn**</u>

Prior to Noticing Intent to Subpoena Donald Hoffman, ESQ, regarding files relating to *Chad M. Koehn and UCMK vs. Christopher Giroux*, I discovered the existence of these records having phone conversations with Mr. Hoffman, <u>who volunteered the information,</u> when he phoned me. Mr. Hoffman described Koehn as passive aggressive, refusing to mediate multiple times, engaging in bad faith mediation at least twice.

<u>**Seeking permission for the records and further investigation in good faith with Mr. Giroux:**</u>

Mr. Giroux phoned me and we spoke at length, we discussed Koehn, UCMK and the litigation Mr. Giroux had with Mr. Koehn.  Mr. Giroux agreed the case files in possession of his attorney Donald Hoffman are relevant and even stated opinions and information on other litigation engaged in by Koehn, that Koehn is <u>extremely litigious, seeking to extort money from others, to finance his lifestyle</u> **and failing business.**  Due to instability, racism, sexism, sexual aggressions, bad personal and business ethics, bad returns, Giroux like many state they need to distance themselves from Chad Koehn and UCMK, all of which is relevant to the case at bar.

<u>**Seeking of Intent to Subpoena Donald Hoffman files relating to Christopher Giroux:**</u>

After conversations with both Donald Hoffman and his client Chris Giroux I took the suggestion to seek the Federal Subpoena for relevant evidence maintained by Hoffman.  On 29

August 2022, I filed document 165, NOTICE OF INTENT TO ISSUE SUBPOENA *notice to opposing parties Fed. R. Civ. P. 45(a)(4)).* On 6 September 2022, <u>Judge Birzer held a status conference on discovery and provided plaintiffs with an extension of opportunity to quash</u> the subpoena notice of intent to issue to Donald Hoffman, document 165, in Order of the Court document 218, filed 8 September 2022, Judge Birzer had also directed Plaintiffs to file the motion to quash not later than 13 September 2022 during the 6 September 2022, status conference, <u>plaintiffs were noticed multiple times extensions to file motion to quash or modify.</u>

The end of the day on Thursday September 15th 2022, Deputy Clerk Melinda Barnes, forwarded a signed and officially sealed stamp of the US District of Kansas Federal Court subpoena to Donald Hoffman. I discussed the subpoena with Ms. Barnes, she stated she conducted her procedural checks and had issued the subpoena with signature and official seal. I forwarded the email with the subpoena to Mr. Donald Hoffman. It was suggested to be fully "executed" and legal that I have him served the subpoena by process service as well. On 19 September 2022, Mr. Hoffman was served the subpoena by a third party process server. On 20 September 2022, I dutifully filed with the Court the return service document 237.

**<u>Bad Faith Conduct and LIES told in writing to the Court by Plaintiffs</u>**

Plaintiffs had multiple opportunities to quash or otherwise modify the subpoena to Mr. Donald Hoffman. Mr. Kellogg wrote an email to Judge Birzer, attached as Exhibit "A". **<u>Kellogg LIED</u>** to the Court stating Donald Hoffman is the former counsel of the plaintiffs, <u>this is UNTRUE, **See Ex. "A"**</u> Kellogg states: *"Mr. Nelson has had the Clerk issue at least one subpoena to a third-party **(prior counsel for Plaintiffs not appearing in this matter)** without filing a Rule 45(a)(4) notice"* attached as exhibit "A", the email thread that Attorney Christopher J. Kellogg made the LIES in writing to the Court, <u>Kellogg's statement of fact is UNTRUE!</u>

Donald Hoffman has NEVER been prior counsel of the Plaintiffs.  In fact Donald Hoffman represented Chris Giroux in opposition to the plaintiffs.  **Kellogg LIED to Judge Birzer to receive an extension,** to file a motion to quash, which itself contains FALSEHOODS like the FALSEHOOD made before the Court to a US Federal Magistrate Judge, that Donald Hoffman is **"prior counsel for Plaintiff's not appearing in this matter"**.

Donald Hoffman made it clear in phone calls he does not like Koehn, and would never again deal with any case involving Koehn.  Donald Hoffman most certainly could never have represented the plaintiffs, as it would have been a conflict of interest for him to represent Mr. Giroux, these are facts known by Christopher Kellogg, **when he (KELLOGG) set out to LIE to the Federal Magistrate Judge in writing in order to effectively achieve extension** to file motion to quash or modify AFTER the fact the subpoena was lawfully, officially issued and served Doc. 237

**LEGAL STANDING TO MOVE TO QUASH A SUBPOENA ISSUED AND SERVED:**

A "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed." *Martley v. City of Basehor, Kansas, 19-cv-02138-DDC-GEB, 2022* Relevance at the discovery stage is broad, [ See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc., *No. 08-212-KHV, 2008 WL 2309011 at *3* (D. Kan. June 3, 2008)] and does not mean the information obtained would necessarily be admitted at trial.  Though the information sought from Hoffman is **believed more than relevant but worthy of evidentiary evidence**.  "When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance." *19-02138-DDC-GEB*  Plaintiffs fail to establish lack of relevance, plaintiffs additionally fail to request a protective order.  Discussions with Mr. Hoffman regarding the subpoena have been made.  I represent to the Court, I seek not any attorney client work product, nor any information which Attorney Hoffman and Mr. Giroux is considered privileged.  In fact Mr. Giroux has written into the conversations:  *"I'm in agreement to release any documents that are*

*allowed via the subpoena. I have nothing to hide in my case".*  Plaintiffs once again LIE to the Court, claiming sexual misconduct settlements are "made-up", when both Giroux and Hoffman state they have and there exists these settlements.  Plaintiffs do not cite, embarrassment, annoyance or burden, as they cannot, wherein there is no burden, to them and obviously no burden behalls Attorney Hoffman who voluntarily phoned me and voluntarily provided the information on the case. IF NOT for Attorney Hoffman's telephone call and descriptions of Koehn, UCMK and the case files including settlements and deposition of Koehn, I would not know they exist and therefore would not be seeking them. <u>Plaintiff's lack legal standing to challenge the subpoena,</u> which has been lawfully issued, served and thus executed Doc 237.

The overlapping lawsuit of the identical plaintiffs here, suing Mr. Giroux for identical claims as plaintiffs purport to make against me, and so state in their opposition memorandum:  "Intentional Interference with UCM's business relations", demonstrate alone relevance to the case.   The documents sought are not just completely relevant here, but they support a multitude of defenses, including the fact Koehn does not enjoy now or in the past a good reputation.  Koehn and UCMK have entered into sexual harassment/agreesion settlements, the fact Hoffman believes the deposition of Koehn is not only relevant but certainly helpful and **contains evidentiary evidence to my case.**

 I have **not** <u>sought a subpoena, for every one of the</u> **plethora of lawsuits** <u>Koehn and UCMK have filed</u>.  I have sought a subpoena <u>for a specified lawsuit,</u> seeking specified documents suggested by the opposing counsel in that lawsuit, Mr. Hoffman, <u>that are both relevant and evidentiary evidence, and go directly to already established defenses, and limitation on damages claimed</u>.   The lawsuit with Mr. Giroux overlaps the lawsuit filed against me and makes identical counts, including "Intentional Interference with UCM's business relations".   The deposition of Chad Koehn is sought foremost as it will likely lead to additional evidence, and the sexual aggression/harassment settlements which Hoffman stated he has are also sought, as well as other records and files obtained

during the <u>nearly identical litigation filed by the identical plaintiffs here.</u>   While Hoffman's files

may contain some harassment settlements, Hoffman stated he certainly does not have them ALL.

Mr. Hoffman freely volunteered the information and opinions as a legal professional

regarding Mr. Koehn.  Mr. Hoffman identified the deposition of Koehn, documents he obtained

**including sexual agression settlements**, Mr. Hoffman did not need to spend the lengthy time,

calling me nor spend time on the phone describing in detail the various files,  settlements, **poor**

**reputation of Koehn in the community**, the deposition of Koehn, his poor reputation from

multiple failed marriages, the deep debts Koehn has the need to file a plethora of shakedown

lawsuits to finance his lifestyle.  <u>Hoffman voluntarily gave up his time to describe in detail the case</u>

<u>with Mr. Giroux</u>, information about Mr. Koehn and UCMK and Mr. Hoffman's thoughts and mental

impressions on Koehn and the **dirty, shady, nasty business practices of Koehn**.  Hoffman

suggested the files, deposition of Koehn and sexual agression settlements would be of **extreme**

**interest, extremely relevant and helpful in my case,** voluntarily stating they provide evidentiary

evidence.  IF Mr. Hoffman did not think the case files or lawsuit with Mr. Giroux would be of

assistance in this case, **Mr. Hoffman would have simply** <u>not phoned me</u>**!.**   Hoffman would not

have suggested a subpoena to have the records become evidentiary evidence, if subpoenaing the

records were any burden upon Mr. Hoffman.

**<u>Plaintiffs JUDICIAL ABUSE, Undue Burdens, Harassment, Misuse of Courts:</u>**

Attorney Christopher J. Kellogg, **LIED, passing an absolute FALSEHOOD upon the**

**Court and** to US Federal Magistrate Judge Birzer as referenced stating that Hoffman is ***"prior***

***counsel for Plaintiffs not appearing in this matter"***  this statement is categorically untrue and a

direct LIE, certain FALSEHOOD in writing before the Court.  See Exhibit "A"

Koehn attempted a harassment restraining order against me in March of this year to be used

as a <u>procedural weapon in this civil litigation.</u>  That restraining order was dismissed by the Judge.

After Mr. Hoffman was served with a subpoena, and notice of intent to issue more subpoenas were entered into the Court docket on 19 September 2022. **Mr. Koehn in retaliation filed** a new restraining order on **19 September 2022,** as a **procedural weapon i**n this litigation. Mr. Koehn cites NO new information in his retaliatory seeking of a protective order. The use of extra judicial protective orders in order to stifle discovery in this matter is obvious and evident given the FALSEHOODS presented before the Court by Koehn and UCMK and the timing of this new protective order request with no new information.

The Plaintiff's claim, the subpoena to Hoffman for relevant files, is somehow harassing or retaliatory because of the dismissed, restraining order, is fantasy. I was served with the new restraining order sought by Koehn after Hoffman was served, 19 September 2022 on 22 September 2022, at my parents residence, more than 1,500 miles from Koehn. Approximately five (5) hours after service of the new restraining order, I was noticed Chad Koehn filed a motion for leave to amend litigation, and attach my elderly father a Stage IV Head Neck Cancer survivor, stating my own Dad should disassociate himself with me, seeking to further rip my family apart and **seeking to usher my elderly parents to an early grave** through Judicial abuses. My Dad has never been sued in his life, he has NOTHING to do with this dispute. **Koehn is seeking to starve my family, attacking my Dad, whose only crime is apparently being my father, is unforgivable.**

Chad Koehn lacks all human decency, acting with callus, vengeful, spiteful, shameless, actions to **TERRORIZE,** my entire family and this time instead of targeting an infant child, Chad M. Koehn **directly targets my elderly parents, seeking to usher** them to an early grave.

Plaintiffs have provided emails to the prosecutor in Oklahoma, stating I am trying to depose persons I have never met, and illegally emailing Christopher J. Kellogg who is apparently an associate of Cynthia and Anthem Blanchard, according to filings there. Emailing Christopher Kellogg is ORDERED by this Court, now it is claimed in Oklahoma, that emailing Kellogg is

illegal.   I have only proposed depositions of Plaintiffs witnesses identified on their disclosures.  I have emailed Christopher J. Kellogg seeking depositions through communication with Mr. Kellogg pursuant with ORDERS of the United States District of Kansas FEDERAL COURT and Chambers of Judge Birzer of the same US Federal Court, I have NOT contacted ANY witness listed on Plaintiffs Disclosures!

**SEXUAL AGGRESSION SETTLEMENTS entered into by Koehn and UCMK:**

Plaintiff's in their motion to quash state:  *"Defendant appears singularly focused on alleged **(made up)**, sexual harassment issues*,";  I would not know of the sexual agression settlements other than being informed by Donald Hoffman, Mr. Giroux, other attorneys in Kansas and citizens engaging in this litigation provide information.  Separately from Hoffman and Giroux, Andrea K. Swisher a local attorney, I contacted about representation, voiced concern and knowledge of **Koehn's poor reputation in the community committing sexual misconduct**.  Miss Swisher stated she is not a fan of Chad Koehn, nor are many people in Kansas, she even state young people have come to her with concerns regarding "aggressions" (sexual harassment) at **the hands** of Koehn. Miss Swisher's comments were unsolicited, as were Mr. Hoffman's and Mr. Giroux's.  I would not know the sexual agression settlements exist had it not been for the community engaging reporting such AND the FACT settlements exist, as stated by Donald Hoffman an esteemed member of the Kansas Bar, Trustee of the Kansas Bar Foundation, who voluntarily provided information on the EXISTENCE of the sexual agression settlements and that he has some but certainly not all. Multiple respected Kansas Attorneys, members of the public and at least one former employee has stated the existence of these sexual aggression settlements and harasment claims.  As such seeking them under official, lawfully, already issued and already executed Federal Subpoena is necessary, relevant and certainly evidentiary evidence supporting defenses in this current litigation.   Plaintiffs have not standing to challenge the subpoena to Hoffman already issued, served and executed.

**NO Focus on solely SEXAUL AGGRESSION SETTLEMENTS entered by Koehn/UCMK:**

Chad Koehn and UCMK do not enjoy a good reputation at all throughout Kansas, or throughout the investment industry as a whole, is directly relevant to established defenses and is directly relevant to both cases here and multiple unrelated persons have offered unsolicited information on Koehn's sexual aggressions, bigotry, sexism, misogyny.  Mr. Donald Hoffman offered up information on Koehn's apparently well known sexual aggressions, adultery, racism, bigorty, misogyny, this was only part of the conversation regarding Mr. Koehn, it is certainly NOT the focus.   The fact the plaintiffs believe this is the only focus provides credible information as to the Plaintiffs seeking to conceal, hide and otherwise mask the **SEXUAL AGRESSION Settlements entered into by Koehn and UCMK**.   More now than ever seeking these settlements which are known to exist, is important to established defenses.  Mr. Hoffman offered voluntarily much information on Mr. Koehn **stating he believes the depositions of Koehn and other materials to be relevant to my case,** reducing efforts and eliminating duplication of efforts in Court proceedings.   Koehn is incapable of telling the truth, and does not enjoy a good reputation both generally have bearing on this case, as does the existence of sexual harassment settlements.

**NO BURDENS Upon Attorney Donald Hoffman:**

Attorney Donald Hoffman certainly **will not be burdened by the subpoena** as Mr. Hoffman already voluntarily expended a lengthy time on the telephone with me, explaining in detail Mr. Koehn's poor reputation, his propensity to file "shakedown" litigations, describing in detail a number of documents and materials he obtained in his litigation with Koehn.   The Court should take special note that **neither** Giroux nor Hoffman has not sought to quash the subpoena.

***Evidentiary Value, demonstrate patterned conduct by Koehn, eliminate duplication of efforts***

Koehn and UCMK invoke: Fed. R. Civ. P. 26(b)(1).   To the extent it is necessary to explain the ways which the underlying information bears on the issues as I personally understand them, is

that <u>Koehn does not enjoy a good reputation</u> to begin with, that Koehn often initiates "shakedown" style litigation or threats to extort money, when he perceives the TRUTH regarding his behavior and illegal actions may be exposed.  **BOTH Giroux and Hoffman believe the information they have is pertinent, relevant, and has evidentiary value in litigation here.** Hoffman believes the deposition of Koehn has particular value to reduce duplication of efforts in the Courts, that the <u>sexual aggression settlements of Koehn and UCMK exist</u> and Hoffman has some**, but certainly not all**.  The fact is many, many people have chosen to take their business elsewhere including to Mr. Giroux, given Koehn's colorful past decisions, sexual aggressions he displays throughout the community.  The litigation with Mr. Giroux only settled after this litigation was removed to Federal Court.   The materials sought from Hoffman are relevant, and evidentiary in value and are calculated to lead to more evidence, all within the purview of limited discovery.

<u>**WHEREFORE:**</u> in the interests of Justice, conservation of judicial resources, judicial economy <u>in elimination of duplication of efforts</u>, for the PROTECTION of the Public At Large this Court should not DENY the motion to quash <u>**the already lawfully issued and executed subpoena,**</u>

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("**All pleadings shall be so construed as to do substantial justice**"). Courts generally reviewed "filings generously and with the leniency due pro se litigants", see *Andrews v. Heaton, 483 F.3d (10th Cir.2007)*

<u>Respectfully Submitted, this 3rd day of October 2022;</u>

*[signature: Michael Nelson]*

<u>Michael Nelson - Pro Se</u>

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: <u>oklahomaremote</u> @ gmail.com |

## Certificate of Service:

The undersigned hereby certifies that, on this same date, sent the foregoing to the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> upon filing which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

Michael Nelson