# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, Inc. <u>and</u> CHAD M. KOEHN plaintiffs, counter-Defendants<br><br>    v.<br><br>Michael Nelson ["Nelson"]<br><br>          Defendant ;    PRO-Se. | <mark>**DOCKET NO.:    5:22-CV-04008-JWB-GEB**</mark><br>**CIVIL ACTION**<br>**MOTION in OPPOSITION to Plaintiff's Motion and Memorandum for Leave to Amend a now <u>Second Amended Petition</u>**<br>**[Jury Trial Demanded]** |

**OPPOSITION to Plaintiff's Motion & Memorandum for Leave to Amend Second Amended Petition,**

    <u>Plaintiff's should NOT be allowed leave to amend and attach my elderly father to this dispute</u>, as he has nothing to do with this dispute, the bad faith dilatory motives are obvious.

    First Plaintiffs are seeking to amend in " bad faith or [with a] dilatory motive", a pro se defendant's parent alleging no specific facts to support the bad faith motive to attach a parent to the conclusory allegations made.  Clearly demonstrating Bad Faith and dilatory motive. Secondly, <u>Plaintiff's offer nothing but conclusory allegations which are futile under a 12b(6) motion to dismiss, as such the Court should DENY plaintiff's attachment of my elderly father to this dispute.</u>  Federal Rules prohibit the attachment of my father to this dispute as the pleading standards in Federal Court are heightened and do not allow for dilatory motives, conducted in bad faith, without any supporting pleading, or fact or evidence other than <u>conclusory statements which lack any foundation in fact or law.</u>

    <u>Both the Law and the Rules of this Court are clear, as are the case precedents:</u>

"<u>A district court should refuse</u> leave to amend 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Wilkerson v. Shineski, 606 F.3d 1256, 1267 (10th Cir. 2010)(citing Duncan v. Manager, Dep't of Safety,Denv,(10th Cir. 2005).*

Plaintiff's act in BAD FAITH, and certain DILATORY MOTIVES, to attach a man for simply being my father. **Plaintiff's are attempting to add a pro-se defendant's elderly father and the only facts they cite in doing so is that:**

> " At all times material hereto, the Defendant PETER NELSON knew of his son's wrongful conduct, his propensity to scorch earth at any cost and without care or reason as to the harm caused, and encouraged and assisted through his support, monies, efforts, omissions, and cooperation."

Plaintiff's seek to claim they know what is on the mind of my father and what knowledge my father has or has not. I am my fathers son, and I know not what is on my fathers mind. The statements even in the best possible light to that of the plaintiff's is nothing more than conclusory allegations without any pleadings as to any facts. As the plaintiffs cannot have any facts as they are not mind readers and know not any facts to support their outrageous futile allegations seeking to make new law to claim that any person's parent must be liable for any allegation made against them for nothing more than as the Plaintiff's allege that "Peter Nelson knew of his son's [alleged] wrongful conduct". The allegations of wrongful conduct are exactly that, allegations, unproven and without any facts. My father is without knowledge of Chad Koehn nor UCMK's defrauding of 100's of victims of the financial fraud which is ongoing and continuing with Anthem Holdings Co., Hera Software Development Inc., Anthem Vault Inc, Lunargistics Corp, SILICON RANCH, etc. My father is without knowledge of the fact Chad M. Koehn is a director and sits upon the board of directors for Anthem Holdings Company, Hera Software Development Inc, Silicon Ranch LLC, etc. The fact that 100's of persons have been defrauded in a financial swindle of epic proportions and the fact that I and other shareholders seek communication regarding investments we are collectively invested, is not evidence of wrongdoing nor is it evidence of improper communication as investors collectively invested in

the same entity have are right and in many cases an obligation morally and ethically, to communicate malfeasances of the officers and directors of those corporations which Chad M. Koehn is both.

<u>I have no acceptance of my father's conduct nor does he of mine</u>. The plaintiff's allegations are both without facts and without knowledge to assert any facts, as they assert not any facts, as they are without any knowledge of my thoughts or that of my Dad's, nor are plaintiffs with any knowledge as to the interpersonal relationship of father and son. Plaintiffs allegations are not only not plausible but are without the pleading standards to allow litigation:

> "At all times material hereto, Peter Nelson knowingly and intentionally, and with full knowledge that he was aiding and abetting Michael Nelson's activities, including, but not limited to, providing Michael Nelson (a) financial support in order to carry out his tortious activities, (b) a place or comfort from which Michael Nelson would continue his tortious activities, (c) encouraging Michael Nelson to pursue his wrongful interference with Plaintiffs' existing and expected continuing business relationships, and/or, (d) knowingly and intentionally failing to stop or alert the Plaintiffs or law enforcement to the wrongful conduct engaged in by Michael Nelson, or, disassociate himself from Michael Nelson and the scorched earth conduct Michael Nelson was engaged in against the Plaintiffs and in fact continued his support by action or omission of his son Michael Nelson."
> "The actions of Peter Nelson were made in concert with and with the acceptance of Michael Nelson."

I know not what is on my father's mind at any given time, and certainly the plaintiff's cannot know either, to reason otherwise is to claim the ability to read minds, which the plaintiffs cannot and do not assert any meaningful facts <u>offering nothing but conclustory language</u> to claim knowledge when there is no foundation in fact or law to assert such absurdities. My father provides me no financial support, my father is not involved in this dispute, the argument of plaintiffs is in bad faith, it attempts to punish persons for simply being related.

**Plaintiff's are attempting to punish a father for the <u>alleged</u> sins of the son**. Under this <u>conclusory reasoning</u>, any parent providing support for their child, or sharing a meal or

living nearby, at any stage of life, would be at risk for simply supporting their child, for what any evil deranged Plaintiff has alleged as their child has committed tortious conduct. Such an absurd premise <u>opens the floodgates of litigation to any deranged plaintiff to attack any child of any parent with any unfounded allegation</u> in order to harass and intimidate any parent anywhere in the United States. Likewise this circular reasoning to add a parent to litigation for the alleged acts of an adult child, means an adult child cannot care for their dying parents otherwise they risk their dying parents will be attacked by a deranged plaintiff seeking to accuse the dying parent of being liable for any alleged wrongdoing of the adult child. Parents cannot be held liable for alleged wrongdoing of their children, in the course of their lifetimes. I left home at 17 years of age, more than 30 years ago, I am an adult, my parents are not liable for any alleged wrongdoing of me, nor am I have them, I am independent of them. <u>Under this logic parents will no longer seek to care for their children.</u> <u>Adult Children would seek not to care for their parents in their old age.</u> Even more so an adult child seeking to care for his elderly parents needs fear that their elderly parents will become victims of overzealous litigious persons seeking to attach their parents to any perceived allegation of wrongdoing of the adult child of the parent. **A Nation which allows its Courts to be abused to the point where children are afraid to care for their dying parents or parents are afraid to care for their adult children is a Nation doomed to extinction.** The Plaintiff's evil deranged intentions without any facts, void any plausible evidence even in the most favorable light, cannot and should not be allowed to attach my dear old dying, stage IV head neck cancer surviving father to their ridiculous allegations not based in reality nor fact, simply for <u>their conclusory pleadings</u> as mind readers of what is on my or my Dad's mind or mine. The plaintiffs cannot be allowed to attach my dying father to this

incongruous frivolous SLAPP litigation under their obvious insufficient pleadings, which would never survive a Rule 12b(6) motion and are therefore futile.

The distinction between factual allegations and those that are merely conclusory will often determine whether a given complaint survives a 12(b)(6) motion, which as pleaded the plaintiff's attempt to attach my father to this dispute is futile and will not survive the heightened pleading requirements of the Federal Courts under foremost Rule 12(b)(6), as conclusory allegations of wrongdoing by a parent towards their child is wrong, bad faith, dilatory motive which is FUTILE as plead.

**Chad Mitchell Koehn and UCMK seek as no parties in litigation should ever tear a family apart**, stripping me from my family, seeking to have my own father "dissociate" himself from me and our family. The shameful and certainly improper motives scream to the Court and the Public at Large BAD FAITH MOTIVES, which are certainly dilatory as well, Koehn and UCMK seeking to tear a family apart as means to justify their vitriol attacks against me.

Twombly held that a complaint that merely states the legal theory of the claim is not sufficient. Id. at 561. "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, a complaint alleging conspiracy must include "enough factual matter (taken as true) to suggest that an agreement was made." Id. at 556. The Court emphasized the enormous cost of discovery in antitrust suits and the impossibility of alleviating such costs through careful management of discovery or summary judgment. Id. at 557–59. Plaintiffs offer only conclusory pleadings to say that because Peter Nelson is my father and because I have stayed in or around the same dwelling as he, that my father should be liable for

the alleged wrongdoings Plaintiffs allege I have committed. There is no conspiracy here, there are no material facts or accord demonstrating a conspiracy worthy of attachment of my father. *Twombly* held that a complaint that merely states the legal theory of the claim is not sufficient. Id. at 561. "While a complaint … does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, a complaint alleging conspiracy must include "enough factual matter (taken as true) to suggest that an agreement was made." Id. at 556. The Court emphasized the enormous cost of discovery in antitrust suits and the impossibility of alleviating such costs through careful management of discovery or summary judgment. Id. at 557–59. There is no agreement between a father and a son simply for one being the parent of another. The plaintiffs offer no facts, of agreement, dates, accord, nor fcts of acceptance that a father and son are in a conspiracy simply by virtue of one having raised the other more than 30 years ago. Plaintiffs offer no facts, and only conclusory allegations, not based in reality. "Whether the complaint contains sufficient non conclusory factual allegations to support a reasonable inference that the conduct occurred. See *Ashcroft v. Iqbal, No. 07-1015, slip op. at 14 (U.S. May 18, 2009)*.

It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. As there is no truth, facts or material support in law or relevance to support my father being "vicariously liable" for my alleged wrongdoings in business or life, decades after I have left home. I have a moral and ethical duty to care for my parents in elder age, just like my parents had in providing me food and shelter as an infant. Plaintiff's seek to criminalize compassion, caring, moral and ethical duties of a child to care for their parents when they suffer the horrors of elder age. Iqbal,

elaborating on Twombly, sets out a two-pronged approach for evaluating whether a complaint satisfies Rule 8's pleading requirement. <u>First, the court must "identify[] the allegations in the complaint that are not entitled to the assumption of truth."</u> Iqbal, slip op. at 16. That is, the court must separate pleadings of <u>fact from pleadings of conclusion</u>. Next, the court must evaluate the factual assertions to determine whether "they plausibly suggest an entitlement to relief." Id. at 17

<u>The First Prong:</u> Separating Facts From Conclusions. How to differentiate fact from conclusion is unclear. Iqbal majority easily found that the allegation that Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to" the unconstitutional policies pursuant to which Iqbal was detained was too conclusory to be entitled to the presumption of truth. The four-Justice dissent— written by Justice Souter, the author of Twombly—just as easily viewed the same as allegation of fact. Lower courts have pointed to the tension between the Twombly pleading standard and Federal Rule of Civil Procedure 84, which provides that certain form pleadings set forth in the Appendix to the Federal Rules "suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." *See, e.g., CBT Flint Partners, LLC v. Goodmail Sys., Inc., 529 F. Supp. 2d 1376, 1379–80 (N.D. Ga. 2007)* (relying on Rule 84 to conclude that Twombly did not affect the pleading standard in patent cases). Many of these form pleadings contain direct allegations similar to those found insufficient in Iqbal and Twombly.

<u>The Second Prong:</u> Do the Facts Plausibly Suggest an Entitlement to Relief? With respect to the second prong of the analysis, the Court made clear that the "plausibility" required under Rule 8 demands more than the "mere possibility of misconduct" and that if the facts in the complaint are "not only compatible with, but indeed … **more likely explained by lawful … behavior," then the pleading will be insufficient.** See Iqbal, slip op. at 15–16

Plaintiff's allegations against my father are conclusory and lack in facts sufficient to overcome the fact my father acting as a parent, and I caring for him in his final years of life, do not rise to the plausibility that my father is "aid and abetting" nor that my father has any obligations to the plaintiffs, whom he knows not has no relationship or knowledge or contact to. The plaintiffs reciting formulaic law and attempts to claim a conspiracy between a father and a son simply based upon family relationship, sharing of a meal or living in close proximity provides not the plausibility nor probability of any conspiracy to exist between the allegations against me and my father being my parent. The Iqbal decision marks a welcome and significant stiffening of the federal pleading standard. By requiring sufficient specificity and plausible allegations of misconduct or malfeasance in all civil actions, <u>the Supreme Court has made clear that nonspecific "notice" pleadings can no longer unleash costly litigation.</u>  Nor should they here where plaintiff's offer no specific facts or allegations to support the absurdity that my father should be liable or otherwise attached to the allegations of civil wrongdoing the plaintiffs attempt to make against me, my father's son.

Guilt by association is illegal in every court in the US. Sharing a meal, or a roof with another person is not evidence that a person is subject to guilt by association. I am innocent, my loving father, has no knowledge of and has never met Chad Mitchell Koehn, UCMK is a tiny company which my father knows not. My father provides no financial support to this dispute, my father provides no encouragement to engage with Chad Koehn and/or UCMK which my father knows nothing of.

Plaintiff's provide a misleading not entirely factual statement regarding Rhody Inc. a corporation which has not been in operation since 2015, sometime in 2007 or 2008, my Dad had a passive role with Rhody Inc. and attended a single conference in passive role to see me speak

at a conference in 2008, in San Francisco. I did not know Chad Koehn, UCMK, Anthem or Cynthia Blanchard and the companies HeraSoft, Hercules, Anthem Vault, Silicon Ranch etc. did not exist in 2008, as I did not even know any of these people then.

**<u>Plaintiffs failed to cure deficiencies when previously allowed amendments are futile</u>**

The proposed complaint seeks to overturn through words the well established law and findings of the Courts in Nevada. <u>Wherein the reason for my termination was the questioning of where $3 MILLION of investor money went</u>, NOT the made up story which Craig Brand regurgitates, the employment with Anthem Vault was has already been adjudicated, in NEVADA, the fact of termination by Anthem H. Blanchard, NOT for cause but rather for simply asking <u>where more than $3 MILLION in investor monies had disappeared.</u> Craig Brand represented Anthem Vault Inc., and should not be allowed to use bad faith in rewriting history wherein he himself <u>Craig Alan Brand illegally appeared in Nevada and those matters were adjudicated there.</u> Brand remains under investigation for his illegal practice of law in Nevada and California.

At (11) statements are false, at all times as an employee of Anthem Vault Inc, I was located in NEVADA, where I owned a home, I had originally invested in Anthem Vault Inc., which was founded and incorporated in NEVADA and I was also a member of the Board of Directors. I was present in Nevada, at the time of unlawful discharge from employment, for asking where $3 million had disappeared. Craig Brand represents Anthem Vault Inc., Brand appeared as representation in hearings and court in Nevada, as well as numerous appeals. The Judge in the employment case found an adjudication of my employment with Anthem Vault was terminated by text message of Anthem Blanchard, stating "You're Fired!" after I asked, where $3 million had gone missing. Craig Brand appealed the finding of fact, regarding my termination, to a three justice panel which affirmed the lower court ruling in my favor. Cynthia Blanchard

has testified under oath Brand continues with appeals presumably now only to the Nevada Supreme Court.   Brand improperly asserts a made up story not based in fact or law.

I am a significant equity holder of stock in Anthem Vault Inc., Anthem Gold, AG Herc Inc., Amagi Metals, Hayek Gold, Hayek Metals, Hercules, HERC crypto stock coin, Hera Software Development Inc., Lunargistics, SILICON RANCH and many others, including the disputed Anthem Holdings Company, purportedly created as a business combination merger, via what Brand describes as a "triangular reverse short-form merger of self dealing merger subs"; created all leading back to Anthem Vault Inc. of NEVADA.  Chad M. Koehn was at all times material thereto a Director, Officer and member of the board of directors of Anthem Holdings Company and Hera Software Development Inc.  All employees worked for Anthem Vault Inc, in Nevada, all technology was created by Anthem Vault.  Regardless of the misappropriation of technology to other entities created across the US and across the globe all technology belongs to the Nevada Corporations.   Anthem Vault, Anthem Gold, AG Herc and all subsidiaries of each conducted a so-called:  "triangular reverse short form merger of targeted acquisition merger subs", in order to hide, conceal, mask, malfeasances committed against shareholder interests in the merger subs.  Without the requisite shareholder voting, meetings, and requirements of Nevada, Texas and Delaware laws, a disputed business combination merger as described herein created Anthem Holdings Company, a Delaware Corporation.  Shell corporations were created through self-dealing against the law, creating non-operating target acquisition companies to hide the existence of the underlying merger subsidiaries, which are contested as unlawful laundering of the underlying corporations, the hiding of the malfeasances of those merger subs.

Chad M. Koehn through Cynthia Blanchard, President and majority shareholder (less than 27%), and her husband Anthem Blachard began a campaign to malign and defame me, and

others for engaging in protected Whistleblower complaints, while I was still employed in Nevada, with Anthem Vault Inc. for disagreeing with the double selling of my technology to competing investors, and reporting as a Whistleblower illegal public financial market manipulations of the crypto currency HERC, which was pumped and dumped on unsuspecting investors. I continue with rights in Nevada, under whistleblower retaliation protections. The campaign against me has continued uninterrupted for years, Chad Koehn is engaged in the campaign to malign and defame me, wherein Koehn has stated to multiple third parties I am a "multiple convicted felon" and a "criminal" and has generally sought to discredit me and seek to prevent me from gaining new employment and moving on with my life. The Blanchard's using Craig Brand have sought to discredit me and malign me, as I have attempted to move away from them and what can only be described as a Ponzi, where new investors (victims) are solicited and sold stock by Chad M. Koehn, UCMK, to pay off older complaining investors.

To best of knowledge and information and belief Chad Koehn has never personally invested in Anthem Holdings Company. Koehn has stated in public disclosures he is a Director of Anthem Holdings Co. and receives stock, warrants, options for his fiduciary responsibilities to the disputed as illegally created holdings company. Hera Software Development Inc. is a company said to be a spin-off (subsidiary) of Anthem Gold or Anthem Vault, but contains the exact same technology created for Anthem Vault, by me and others working for Anthem Vault, in NEVADA, and was misappropriated to AG Herc Inc. and sold as a decentralized crypto currency project, which is now claimed as proprietary by Hera Software Development Inc. a company that Koehn publicly claims to have led a "Series A" sale of stock, effectively against the interests of the investors sold the decentralized HERC crypto currency. Koehn's self created press releases for HeraSoft "Series A" stock sale is unregistered, unlicensed sale of stock in Hera Software

Development Inc. (HeraSoft) a Delaware corporation, selling the same exact technology as HERC decentralized crypto currency investors invested in and tech created in Nevada for Nevada founded and based Anthem Vault Inc.

I have NEVER committed any such action as described as a "black hat" attack. I am not a hacker, I have intercepted no lists. All new investors (victims) sold the disputed Anthem Holdings Co. stock, were publicly listed online, were provided to all other investors dragged along to the disputed Anthem Holdings Co. Plaintiff's are accusing me of a crime and committing both defamation and libel against me, separate action shall be forthcoming if this litigation is accepted. All persons who are invested in a shared or common interest company, must as a matter of law be provided each other's names, contact information. The claim investors (VICTIMS) cannot be known by each other, as stated by Koehn and UCMK is wrongful and illegal (criminally and civilly). Koehn and UCMK now admit to criminal violation of securities laws, breach of fiduciary responsibilities, and certain breach of professional ethics, morals, and State and Federal law.

The amended complaint at (18) is false, futile, demonstrative of bad faith, failure to previously amend the complaint during the nearly one year it sat with regular reviews without any amendments. Plaintiffs were also provided an opportunity to amend the complaint when they were instructed to remove the racial insult. Plaintiff's DID take the opportunity to substantially change the complaint when they were instructed to remove the racial insult from the original SLAPP petition. Given the opportunity to make the substantial changes, which Plaintiffs did make, to the complaint, **Plaintiffs failed to amend curing deficiencies in the complaint.** Plaintiffs now seek leave to amend adding incredible undue burden and delay to the litigation, dramatically increasing its size and scope, creating a situation wherein the scheduling

order MUST be expanded by months if not years, to accommodate the massive undertaking of depositions and interrogatories necessary which far exceed the 10 depositions currently allowed. Plaintiffs seek now to extend by doubling the statute of limitations through failure to previously amend.   Plaintiffs should be barred from further amendments for failure to amend previously.

Amended complaint seeks improperly to claim contact to Financial Fraud VICTIMS for the preparation of subpoenas for information held by those Financial FRAUD VICTIMS is improper and some how is tortious interference.   Discovery is broad and the rules allow for litigants to obtain discoverable information even from persons who are VICTIMS of the financial fraud, Koehn and UCMK have perpetrated upon them.  No emails have been sent to the listed persons at (19) of proposed amended complaint.  The ONLY emails sent to anyone regarding subpoenas is to DONALD HOFFMAN, who was only emailed AFTER the subpoena had been signed, stamped and issued by the Court, the email sent to Donald Hoffman was a forward of the email from the Deputy Clerk of the Court for the US District of Kansas.   Plaintiffs seek improper and bad faith motive to amend the complaint charging that engaging in discovery allows the addition of grounds for charges, when in fact discovery is proper and seeking **subpoenas of the Financial FRAUD VICTIMS** and the information which they possess is correct and proper to discovery.  Craig Piercy is a shareholder and financial fraud victim of Anthem Holdings Co. and Hera Software Development Inc. determining his role and information he possesses prior to requesting subpoena duces tecum is correct and proper in discovery, so that third parties are not unfairly burdened by this litigation, especially when those third parties as here are financial FRAUD VICTIMS.  Plaintiff's attempt to amend the complaint to include actions taken in the course of discovery is improper, futile, demonstrative of bad baith, and certain intimidation.  **A litigant has a right to contact persons who have discoverable**

**information and a right to seek subpoenas for discoverable information to the litigation.**

Rules of Professional Conduct Rule 3.4(a) states, a lawyer shall NOT:

> "(a) unlawfully obstruct another party' s access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;"

I have no reason, need or want to defame Koehn or UCMK. I had and have no motive to injure Koehn and UCMK in any way shape or form. I have a RIGHT to speak with other shareholders who are invested mutually in the same entities to which I am so invested. By claiming lawful discovery practice is in some way wrongful, Koehn and UCMK seek through licensed attorneys to <u>obstruct me from accessing evidence</u>, **in violation of Rule 3.4(a) of the Professional Rules**. The actions to seek amendment of the complaint to include seeking discovery are clear violations of Rule 3.4(f), when persons are VICTIMS of Koehn and UCMK's financial fraud against third party victims. Worse under Rule 3.4(f), a lawyer shall not;

> "request a person other than a client to refrain from voluntarily giving relevant information to another party unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

The proposed amended complaint seeks to circumvent the Rules of Professional Conduct, by seeking to <u>obstruct discovery of the financial fraud Victims</u>, by making false assertions and claiming discovery in and of itself is tortious interference, when in actuality what Koehn and UCMK's attorneys are doing is preventing their own financial fraud victims from <u>"giving relevant information to another party"</u> Financial fraud victims are exactly that <u>VICTIMS, of Koehn and UCMK's business practices and solicitations and sale of Stock to them in companies which Chad M. Koehn is a director, officer and board member</u>. I have no malicious intent or premediation to injure Koehn or UCMK. All persons who are commonly invested in the same

enterprise, have a right and some would say an ethical and moral duty to discuss and warn others commonly invested in the same entity of the disputes, and claims of illegal and unethical operations and claims against the officers operating the common entity to which all are commonly invested.

**WHEREFORE Prayer for Relief:** in the interests of Justice, the preservation of the Court's reputation in the eyes of the public, for Judicial Conservation of Resources and Judicial Economy **the Plaintiffs motion for leave to amend the complaint as proposed should be DENIED, and plaintiffs should be barred from including my family members like my ailing elderly father who have nothing to do with this dispute,** having no knowledge, and are nothing more than my parent.  **It is bad faith and dilatory motive which is futile to add a pro se litigants father for the alleged wrongdoings of his son.**

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

Respectfully Submitted, this 6th day of October 2022.

*[signature: Michael Nelson]*

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105