**UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS**

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. and **CHAD M. KOEHN**<br><br>          Plaintiffs, and Counter Defendants<br>     v.<br>Michael Nelson<br><br>          Counter Plaintiff, Defendant ;<br>PRO-Se. | **DOCKET NO.:     5:22-CV-04008-JWB-GEB**<br>**<u>CIVIL ACTION</u>**<br><br>**Appeal of Report of Magistrate in Document 298**<br><br>**[Jury Trial Demanded]** |

Now Here Comes, Counter Plaintiff and defendant Michael Nelson, making special appearance and who makes Appeal of Magistrate Report in Document 298 an Order of the Court (Report of the Magistrate), <u>as it is void an email address which I can use to communicate with the plaintiffs</u> in this matter, yet the "report" (Order) directs:  *"the parties shall each submit to the undersigned's chambers <u>and the opposing party/counsel</u> **an email** with topics to be discussed at the status conference"*.  The Court had previously Ordered in document 67, that communication between the parties would be:

> *"Communications between the parties shall take place by email. Christopher Kellogg shall act as the point of communication on behalf of Plaintiffs and their counsel, with Mr. Kellogg using the email address ckellogg@kenberk.com and Mr. Nelson using the email address oklahomaremote@gmail.com."*   See Document 67, at page 1, Number (2).

As previously Appealed to the District Court, in document number 292, I have communicated with the person I was instructed by Order of the Federal Magistrate to communicate, Christopher Jon Kellogg at ckellogg@kenberk.com see Order (report) of the Magistrate in Document 67.  <u>Despite the fact of the Order (report) of the Magistrate and having regular communication with Christopher J. Kellogg per the Order of the Federal Magistrate,</u> when I sought, as is proper to have meaningful communication with Kellogg regarding the taking of deposition of one of the plaintiff's identified

witness, a person who Plaintiff's purposefully mis-identify as "Gil Gilliam", in their initial disclosures.

**First, Kellogg objected** to my use of limited scope representation, and he included the Federal Magistrate in our email discussions on taking deposition of the person plaintiff's claim is named "Gil Gilliam" (actual name HOWARD LAVON GILLIAM). Then after Kellogg is "schooled" by the Federal Magistrate as to FRCP and Local Rules regarding limited scope representation and my rights to take the deposition of an identified witness, identified in the plaintiff's initial disclosures, **see Exhibit in Doc 292,** the plaintiff's initial disclosures.

Kellogg then proceeded to state he would seek "protective orders" and seek to "quash" the request to take the deposition of the identified witness "Gil Gilliam", then when Kellogg and/or CRAIG ALAN BRAND realized I may actually be correct, that I should have had the right to limited scope representation to take the deposition of an identified witness in the plaintiff's initial disclosures.

NEXT in order to prevent discovery, Kellogg and/or **CRAIG ALAN BRAND's next move was to run to the prosecutor in the directly parallel hereto criminal proceedings**, providing copies of the email and making claims he is "an associate", of the Blanchard's, the plaintiff's co conspirators in the alleged investment fraud.

Kellogg and/or CRAIG ALAN BRAND (it is Brand who admitted to regular communications with the prosecutor in the parallel criminal matter during the 1 November 2022 Status Conference) provided the email correspondence with Kellogg and presumably the Federal Magistrate to the prosecutor in the parallel hereto criminal proceedings, wherein the prosecutor proceeded to take actions against me, placing me in jail, for violating the Orders of the Court in Oklahoma, which also include other unconstitutional commands including "banishment" from areas of the United States.

The prosecutor in Oklahoma filed a Motion in the parallel hereto criminal proceedings wherein the Motion states:

> "…on September 15th, 2022 the defendant, using the email address oklahomaremote@gmail.com, **sent an email to an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville, Oklahoma.** In the email, the defendant **indicates that he will have a special counsel take the deposition of Gil Gilliam [not a legal name] in Bartlesville, Oklahoma** at the local courthouse for six to seven hour deposition. Mr. Gilliam works for HerSoft which is located solely in Bartlesville and has never had any dealing with the defendant. In his email he indicates "it might be easier for Federal Officials and given the natura [SIC] of the situation that it be held at the Federal court building itself…". Once again the defendant is attempting to intimidate the victim's by contacting associates of the victim's and threatening to have federal officials take depositions of their employees who have never met the defendant" SEE EXHIBIT F in Document 292

I emailed Christopher Kellogg, who is the attorney referenced in the motion made by the prosecutor in the parallel case, known to an associate of "Cynthia and Anthem Blanchard", as per the filing made by the State of Oklahoma, who considered my conduct emailing with Kellogg to be in violation of my bail conditions, which also include unconstitutional conditions like "banishment". Nonetheless my civil rights, liberties and constitutional right to defend this Federal Litigation, as well as to prosecute my counter and cross complaints **are currently restricted** by Order of the Court in Oklahoma. The Cour in Oklahoma has made it clear that the case in Oklahoma must control and the case in Kansas, though in Federal Court cannot control.

    The Prosecutor in Oklahoma made the issue clear: "I believe, on the Federal lawsuit in Kansas. This all goes back to I'm sorry if you have spent a lot of your money paying for three attorneys in the State of Oklahoma bonding out in the State of Oklahoma, and you can't— or no one will take your case in Kansas -- because that's the other rumor I've heard. But just because you don't have anyone to represent you in Kansas, **doesn't mean you get to violate a Judge's order in the**

**State of Oklahoma and contact people associated with the business of HeraSoft in Bartlesville, Oklahoma.**"

**The Court in Oklahoma has made it clear that it must CONTROL and supersede the Orders of this Federal Court in this civil litigation.**

Therefore I can no longer have any communication in any form with Christopher J. Kellogg or the lawyers of his firm, many of whom it is believed are stockholders and the firm itself are investors (stock and shareholders) the legal entities in which the Oklahoma Court has stated I cannot have communication under threat of incarceration for an indeterminate period of time.

CRAIG ALAN BRAND, who is an EMPLOYEE of **Hera Software Development Inc., the company which Chad Mitchell Koehn, proudly authored and released press releases claiming he and UCMK led a "Series A" sale of stock which is unlicensed and unregistered in violation of Federal Law.** As I am now under threat of incarceration for an indeterminate period of time awaiting trial in the parallel proceedings, if I am to have communication with any attorney who is an associate of Anthem H. Blanchard or Cynthia D. Blanchard, as Kellogg and CRAIG ALAN BRAND have already achieved in October of this year 2022, my incarceration for having communications with KELLOGG seeking as is proper and legal to take deposition of an identified witness of the plaintiff's.

There also exists a motion to dismiss the plaintiff's allegations, even their more enhanced allegations, made in their amended petition which substantially amended their original complaint which now void the racial insult in their original petition. Wherein the plaintiff's allegations involve: 1.) allegation of "securities irregularities" and 2.) "a whistleblower working with the government". **This lawsuit is an attempt to harass Defendant and chill protected speech on matters of public concern**. Pursuant to the Kansas Public Speech Protection Act, the defendant has moved to strike the

Plaintiffs claim—defamation and that of tortious interference. Because (1) claim is "based on, relates to or is in response to [Defendant's] exercise of the right of free speech, the right to petition, or the right of association," **(KSA §60-5320(d))**, and (2) Plaintiffs cannot "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case" of their claim, the Court must grant this motion and strike the claim. Alternatively, there exists motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Thirty-two states and the District of Columbia have enacted laws to address what are called "strategic lawsuits against public participation" or "SLAPPs," which have a chilling effect on free speech. "The hallmark of these statutes is the ability of a defendant to file an early 'motion to strike' so the court can make an initial determination whether the lawsuit has been filed to harass the defendant or to stifle the defendant's right of free speech." *T&T Fin. of Kansas City, LLC v. Taylor, 408 P.3d 491, 2017 WL 6546634, at *3 (Kan. App. 2017)*

Kansas passed the Public Speech Protection Act to protect against "meritless lawsuits that chill free speech." *Caranchini v. Peck, 355 F.Supp.3d 1052, 1055 (D. Kan. 2018)*. "The stated purpose of the statute is to 'encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issues of public interest … while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." **Id. at 1055 (citing KSA §60-5320(b))**. The Kansas Legislature expressed its intent that courts apply and <u>liberally construe the Kansas anti-SLAPP statute</u> **"to effectuate its general purposes." KSA §60-5320(k)**

Where a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition, or right of association, the Public Speech Protection Act allows the

defendant to move to strike the claim. KSA §60-5320(d). The burden shifts to the plaintiff to "establish a likelihood of prevailing on the claim by <u>presenting substantial competent evidence</u> to support a prima facie case" on its claim. Id. If the plaintiff is unable to meet this burden, the court must grant the motion to strike, dismiss the claim, and award costs, fees, and sanctions where warranted to deter similar conduct. KSA §60-5320(g).

The Kansas Public Speech Protection Act Applies in Federal Diversity Actions In *Caranchini,* in an issue of first impression, Judge Murguia held that the Kansas Public Speech Protection Act "applies in federal diversity actions because it 'exist[s] to influence substantive outcomes, and … is so bound up with a state-created right or remedy that it defines the scope of that substantive right or remedy." 355 F.Supp.3d at 1061. In reaching this holding, Judge Murguia extensively analyzed decisions from the Tenth Circuit and other circuit courts of appeal. The *Caranchini* court noted that the only decision from the Tenth Circuit on this issue, *Los Lobos Renewable Power, LLC v. Americulture, Inc., 885 F.3d 659, 668 (10th Circ. 2018)*, addressed the applicability of the New Mexico anti-SLAPP statute, which the court observed is "unlike many other states' anti-SLAPP statutes that shift substantive burdens of proof or alter substantive standards," and thus is "not binding on whether this court can apply the Kansas Act in a federal diversity action. *355 F.Supp.3d at 1057.*

In the opinion, Judge Murguia stated the court's belief that "the Tenth Circuit would agree with this outcome based on its dicta in Los Lobos": there, the Tenth Circuit noted that anti-SLAPP statutes "that shift substantive burdens of proof or alter substantive standards" are unlike the New Mexico anti-SLAPP statute, "which has no bearing on the suit's merits determination and is strictly procedural." Id. at 1061 (emphasis added). Judge Murguia concluded "[t]herefore, statutes that shift

burdens of proof—like the Kansas Act—are more substantive in nature than the New Mexico statute, and are more likely to apply in a federal diversity action." Id. at 1061. (emphasis added).

The Kansas Public Speech Protection Act protects three general classes of protected speech:

> 1. Exercise of the right of free speech, defined as "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1) "Public issue or issue of public interest" includes an issue related to (A) health or safety (B) environment, economic, or community well-being, (C) the government, (D) a public official or public figure, or (E) a good, product, or service in the marketplace. **KSA §60-5320(c)(7).**
> 2. Exercise of the right to petition, which includes 13 categories of protected communications, including "a communication in connection with an issue under consideration or review by a … judicial … proceeding." KSA §60-5320(c)(5)(A), (5)(B)-(E).
> 3. Exercise of the right of association, defined as "a communication between individuals who join together to collectively express, promote, pursue or defend common interests." **KSA §60-5320(c)(5)(A).**

Plaintiff's Defamation Claim Concerns Right of Free Speech The Act defines "exercise of the right of free speech" to mean "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1). An "issue of public interest" includes issues related to "a good, product or service in the marketplace." Id. at (c)(7). In interpreting the "exercise of the right of free speech," **Kansas courts broadly interpret the Act's protections, as the legislature intended.**

CHAD MITCHELL KOEHN has accepted SUSPENSION and substantial fine(s), from a Regulator in the Securities sale of stock industry. In doing so this provides proof in the positive of abnormalities (irregularities) which is the allegation of the plaintiff's, the agreement for Chad M. Koehn to be SUSPENDED in "ALL CAPACITIES" from association with any stock broker is stated as information developed by the regulator based upon "TIPS", providing proof positive of a whistleblower, **evidentially working with the government.** The Court is now with proof positive of both "securities irregularities" and perhaps the existence or previous existence of a whistleblower

who was apparently working with the government, as the regulatory authority developed its information based upon "TIPS", which is exactly what a whistleblower does.

Chad Mitchell Koehn on 14 October 2022, consenting to a judgment of a hefty regulatory fine and <u>mandatory SUSPENSION from association with any stock broker or advisor for a period of at least one year.</u>    The Court is now herein supplied with the hyperlink to the document titled:  **"FINANCIAL INDUSTRY REGULATORY AUTHORITY LETTER OF ACCEPTANCE, WAIVER, AND CONSENT NO. 2021069470101".**  Plaintiff's have continually FAILED and REFUSED to provide any documents of discovery in this matter, the plaintiff's should have provided a copy of this consent judgment and **<u>SANCTIONS including SUSPENSION signed by Chad M. Koehn on 14 October 2022</u>** and accepted by the <u>ENFORCEMENT Attorney with a Federal Regulatory Body on 21 October 2022, with the SUSPENSION of Koehn going into effect on 7 November 2022,</u> pursuant with the decree and findings of "<u>FACTS AND VIOLATIVE CONDUCT</u>", as found on page 2 (two) of the five page Department of Enforcement agreement to the substantial FINE and **SUSPENSION for the VIOLATIONS of Securities Regulations**, are in fact "securities irregularities" the original allegation made by the plaintiffs in both their originating state petition replete with racial insult AND **in their amended complaint void of the racial insult, filed many months later.**

https://www.finra.org/rules-guidance/oversight-enforcement/finra-disciplinary-actions?search=2021069470101

The Document is supplied here for the Court's edification and **<u> taking of Judicial Notice of the consent judgment, for "securities irregularities" (VIOLATIONS), to Regulatory regime by the individual Chad M. Koehn, which JUDICIAL NOTICE is now requested.</u>**

https://www.finra.org/sites/default/files/fda_documents/2021069470101%20Chad%20M.%20Koehn%20CRD%202216169%20AWC%20gg.pdf

*The Internet Archives as of 4 November 2022*, has cached a copy of the Order entered into by **Chad Mitchell Koehn which SUSPENDS him from association in "ALL CAPACITIES" with stock brokers.** Though plaintiff's had a legal obligation to provide such critical information and have deliberately failed to provide the information as well as failing to update their disclosures as required and as they signed they would.

https://web.archive.org/web/20221104184746/https://www.finra.org/sites/default/files/fda_documents/2021069470101%20Chad%20M.%20Koehn%20CRD%202216169%20AWC%20gg.pdf

**JUDICIAL NOTICE is therefore Requested of a US Federal Regulator action SUSPENDING Chad Mitchell Koehn from the securities brokerage industry for abnormalities (irregularities).**

The plaintiffs have not met their burden in the amended complaint void the racial insult, and now their allegations are supported by the plaintiff, **Chad M. Koehn, has been SUSPENDED in "ALL CAPACITIES" from association with any stock broker**. The allegations of the plaintiff "would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint." *Doe, 61 Kan. App. 2d at 148 (quoting DuPont Merck Pharm. Co. v. Superior Ct., 78 Cal. App. 4th 562, 568 (2000),* as modified (Jan. 25, 2020)). Importantly, baseless opinions and conclusory statements by the plaintiff will not suffice. *See Fisher, 58 Kan. App. 2d at 423.* As here the plaintiff's offer no specific facts other than "securities irregularities" and "a whistleblower working with the government", on both points given Chad M. Koehn's SUSPENSION and substantial fine(s) it appears the information to be truthful.

Under Kansas law, the elements of a defamation claim are (1) false and defamatory words, (2) communicated to a third person, (3) which result in harm to the reputation of the person defamed. *Lloyd v. Quorum Health Resources, LLC, 31 Kan. App. 2d 943, 945, 77 P.3d 993 (2003)*. A

defamation plaintiff must allege and prove actual damages and cannot rely on the theory of presumed damage. *Zoeller v. American Family Mut. Ins. Co.*, 17 Kan. App. 2d 223, 229, 834 P.3d 391 (1992). Further, "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017)

Here, plaintiffs fail to meet their burden on two fronts. First, a bare bones petition, unsupported by verification, affidavit, or any evidence, offers nothing in the way of specific facts to support defamation claim. Instead, the petition consists of generalities and generic statements that the alleged statements were "false" and "defamatory" without more. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *Smith-Utter v. Kroger Co.*, 2009 WL 790183, at *3 (D. Kan. March 24, 2009)("Plaintiff's unsupported allegations are insufficient to demonstrate that her reputation was harmed.").

Second, compounding this fatal lack of detail is the plaintiff's failure to offer any factual specifics to support allegations of "reputational damages." Instead, relying solely on conclusory allegations that "personal and business reputations" have been harmed, with no support. Kansas courts have repeatedly held that such conclusory allegations fail to establish a valid claim for defamation. *See, e.g., Ablulimir v. U-Haul of Kansas*, 2011 WL 2731774, at *3 (D. Kan. July 13, 2011); *Doe*, 61 Kan. App. 2d at 150; *Rx Sav., LLC v. Besch*, 2019 WL 8014669, at *4 (D. Kan 2019); *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 103, 864 P.2d 744 (1993) ("injuries to one's sensitivities alone is not enough to support a claim for defamation. The plaintiff must show how his or her true reputation in the community of his or her residence has been affected."); *Davis v. Hildyard*, 34 Kan. App. 2d 22, 30, 113 P.2d 827 (2005) ("Broad and factually unsupported allegations of patient cancellations do not support a claim for damages for alleged defamation."); *Snyder v.*

*American Kennel Club, 661 F.Supp.2d 1219, 1239 (D. Kan. 2009)*("Under Kansas law, a plaintiff in a defamation action **cannot rest on presumed damages,** but must prove damages.")(emphasis added).

Plaintiff's problems do not end there: even if they were able to provide substantial competent evidence, the communications alleged are subject to a qualified privilege under Kansas law since they were made in the course of mutual investment by the parties privileged to the communications. The Kansas Supreme Court has made clear that the qualified privilege applies to communications similar to those at issue: One such qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding **interest or duty in the subject matter of the communication.** Here, the defendant is a substantial equity interest holder in the same corporations as the other investors (new VICTIMS) are so invested.

## STAY OF DISCOVERY PENDING RESOLUTION

KSA §60-5320(e)(2) provides that "all discovery, motions or other pending hearings shall be stayed upon the filing of the motion to strike" and "stay of discovery **shall remain in effect until entry of the order ruling on the motion except that the court, upon motion and for good cause shown, may order that specified discovery, motions or other pending hearings be conducted.**" The defendant has made said requests that the Court stay all discovery and motions pending resolution of this Motion consistent with the statute.

## CONCLUSION

The Kansas Public Speech Protection Act protects the defendant from unsupported and unsupportable allegations of "defamation" intended to chill his protected speech and entitles him to an early dismissal of the plaintiffs claim. Defendant has met his burden of establishing that the alleged statements are protected activities under the Kansas Public Speech Protection Act, and (2) plaintiffs lack the requisite substantial competent evidence of the elements of his defamation claim,

including the alleged damages.   The statute is clear as to discovery.  Even if the Court is to allow limited discovery as per the statute, said discovery cannot subject the unrepresented pro se party to indeterminate incarceration for participating in the defense of the SLAPP litigation.  Here, plaintiff's attorneys have used the parallel proceedings as a procedural weapon to exact incarceration of the unrepresented pro se defendant for simply emailing as per the Orders of the Court in document 67, wherein Kellogg and/or CRAIG ALAN BRAND have run to the prosecutor in the parallel matter and sought to have the defendant incarcerated for emailing Kellogg to take a deposition of an identified witness for the plaintiffs.  This violates my constitutional rights.

The Order of the Federal Magistrate in Order (report) document 67, can no longer be followed, because Kellogg and/or **CRAIG ALAN BRAND proceeded to "RUN TO THE PROSECUTOR" in the parallel hereto proceedings and had me taken into custody for communications with Kellogg or any attorney for the plaintiff as currently appearing.**

**WHEREFORE,** <u>due to my inability to communicate with the plaintiff's due to the Orders of the Court in Oklahoma</u> in the directly parallel hereto proceedings, I am without an email to comply with the Order (REPORT) of the Federal Magistrate in her Order (report) document 298.

This Court should be STAYING all proceedings and discovery pursuant with the KSPA.  Therefore I request that this Honorable US Federal Court STAY these proceedings until such time as the parallel hereto proceedings conclude, AND in accordance with the Motion to Strike under KSPA OR otherwise fashion a means upon which I can lawfully communicate with the plaintiffs counsel in this matter without being in violation of the Court's Orders in the parallel hereto proceedings.

**Subjecting me to incarceration without trial for following the orders of this Court violates my constitutional rights.**  I cannot comply with the Order of the Court in Document 298, **<u>as compliance is to sentence me to imprisonment for an indefinite period without trial.</u>**    Absent a

STAY, until the conclusion of the parallel matters, or enforcement of the KSPA which mandates a STAY to Discovery, I would request the ability to file for immediate interlocutory Appeal to the 10th Circuit Court of Appeals to protect my constitutional rights, preventing my incarceration without a trial.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

Respectfully Submitted, this 16th day of November 2022.

*[signature]*

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com

**Certificate of Service:**
The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

*[signature]*