IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED CAPITAL MANAGEMENT OF KANSAS, INC. and
CHAD M. KOEHN

        Plaintiffs,

v.                                                                                                Case No. 22-4008-JWB

MICHAEL E. NELSON,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiffs' motion for leave to amend complaint. (Doc. 242.) The motion is fully briefed. (Docs. 243, 276, 279.) For the reasons stated herein, the motion is GRANTED IN PART and DENIED IN PART. Defendant's motions to dismiss (Docs. 73, 222) are DENIED as MOOT. Defendant's motion to strike (Doc. 222) is DENIED.

**I.    Background**

This contentious litigation began in state court when Plaintiffs filed their petition against Defendant alleging defamation and tortious interference with business expectations. (Doc. 1-1.) Defendant removed the case to this court (Doc. 1), and in less than a year Plaintiffs and Defendant have filed more than 300 entries on the docket.

Plaintiffs were directed by Magistrate Judge Birzer to file a first amended complaint (Doc. 63), and Plaintiffs did just that on April 26, 2022. (Doc. 64.) Defendant then filed a motion to dismiss Plaintiffs' first amended complaint on May 17, 2022. (Doc. 73.) On September 9, 2022, Defendant filed a second motion to dismiss, also asking the court to strike Plaintiffs' complaint against him under freedom of speech principles as recognized by Kansas law. (Docs. 222, 223.)

This second motion to dismiss and motion to strike was a re-filing of an earlier motion which was struck for failure to comply with page limitations. (Doc. 89.)

## II. Standard

Because Plaintiffs have already filed a first amended complaint at the direction of Magistrate Judge Birzer, they must seek leave of the court to file a second amended complaint. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Generally, a district court will grant leave to amend unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (internal quotation omitted).

"Under the [Kansas Public Speech Protection Act[1] ("KPSPA")], a defendant may move to strike a claim if it is 'based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association.'" *Zaid v. Boyd*, Case No. 22-1089-EFM, 2022 WL 4534633, at *1 (D. Kan. Sept. 28, 2022) (quoting K.S.A. § 60-5320(d)). The KPSPA sets a standard for motions to strike:

> A party bringing the motion to strike has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association. If the moving party meets the burden, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case. If the responding party meets the burden, the court shall deny the motion.

K.S.A. § 60-5320(d). The KPSPA requires that a motion to strike be brought within 60 days of service of the most recent complaint or at a later time if the court deems it proper. *Id.*

---

[1] This court recently held that the KPSPA applies in federal court. *Zaid v. Boyd*, Case No. 22-1089-EFM, 2022 WL 4534633, at *5 (D. Kan. Sept. 28, 2022). The court analyzed the *Erie* doctrine and relevant precedents to reach its conclusion. *Id.* at *2–*5.

Because Defendant is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Defendant's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

III. **Analysis**

**A. Plaintiffs' Motion for Leave to Amend (Doc. 242)**

Plaintiffs request to file their second amended complaint. (Doc. 242.) Plaintiffs' first amended complaint included a count of defamation and a count of tortious interference with business expectations against Defendant. (Doc. 64 at 3.) The proposed second amended complaint includes those same counts with additional factual allegations. (Doc. 242 at 7–9.) It also adds an additional claim against Defendant's father, Peter Nelson, for aiding and abetting Defendant's tortious interference with business expectations. (*Id.* at 9–10.)

Defendant opposes the amendment. (Doc. 276.) Defendant argues the amended complaint, particularly the claim against Defendant's father, shows Plaintiffs' bad faith and dilatory motive. (*Id.* at 1.) Defendant also argues that the amended complaint increases the size and scope of the litigation and would require the scheduling order to be modified, adding burden and delay. (*Id.* at 12–13.) Plaintiffs argue that the claim against Defendant's father is not futile or asserted in bad faith. (Doc. 279 at 1–3.)

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017) (quoting *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011)). The court determines futility under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* at 643. This requires the court to accept all well-pleaded factual

allegations as true and view them in the moving party's favor to determine whether the claim for relief is plausible on its face. *Id.* It is permissible for a court to determine amendment of one claim is futile while permitting amendment of other claims. *Acker v. Burlington N. & Santa Fe Ry. Co.*, 215 F.R.D. 645, 653 (D. Kan. 2003) (permitting amendment of three claims and denying amendment of three claims).

Plaintiffs' proposed amended complaint adds numerous factual allegations against Defendant to flesh out the claims for defamation and tortious interference with business expectations. What Plaintiffs' proposed amended complaint does not do is provide factual allegations against Defendant's father which support a claim for relief. In the introduction of the complaint, Plaintiffs include one paragraph addressing Defendant's father:

> At all times material hereto, the Defendant PETER NELSON knew of his son's wrongful conduct, his propensity to scorch earth at any cost and without care or reason as to the harm caused, and encouraged and assisted through his support, monies, efforts, omissions, and cooperation.

(Doc. 242 at 9, ¶20.) The actual claim against Defendant's father similarly does not include many facts, if any. The closest Plaintiffs get to describing the actual conduct by Defendant's father is found in Paragraph 37:

> At all times material hereto, Peter Nelson knowingly and intentionally, and with full knowledge he was aiding and abetting Michael Nelson's activities, including but not limited to, providing Michael Nelson (a) financial support in order to carry out his tortious activities, (b) a place or comfort from which Michael Nelson would continue his tortious activities, (c) encouraging Michael Nelson to pursue his wrongful interference with Plaintiffs' existing and expected continuing business relationships, and/or, (d) knowingly and intentionally failing to stop or alert the Plaintiffs or law enforcement to the wrongful conduct engaged in by Michael Nelson, or, disassociate himself from Michael Nelson and the scorched earth conduct Michael Nelson was engaged in against the Plaintiffs and in fact continued his support by action or omission of his son Michael Nelson. The actions of Peter Nelson were made in concert with and with the acceptance of Michael Nelson.

(*Id.* at 12, ¶37.)

The court does not find that these allegations nudge the claim over the line of plausibility. Even if the court accepts as true the factual allegations that Defendant's father has provided Defendant financial support and a place to stay, Plaintiffs fail to explain what conduct Defendant's father has allegedly committed to encourage the tortious activity beyond the support any parent might provide to their child.

The court also questions whether a claim for aiding and abetting tortious interference with business expectations exists under Kansas law. Plaintiffs cite *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 937, 811 P.2d 1220, 1232 (1991) for the elements of aiding and abetting. (Doc. 279 at 2–3.) But that case involved an aiding and abetting tort theory in the context of securities fraud. *Ridenhour*, 811 P.2d at 1234 ("We find that the aiding and abetting theory can be used to find an individual liable for the sale of an unregistered security under the Kansas Securities Act."). Plaintiffs do not cite, and the court has not identified, any Kansas case recognizing an aiding and abetting tortious interference with business expectations claim.

Nevertheless, without deciding whether this is a viable cause of action, the court finds that Plaintiffs have failed to state a claim upon which relief can be granted because they have not provided factual allegations which state a plausible claim for relief on Count III against Defendant's father. The court finds that Plaintiffs' motion to amend should be granted in part to allow Plaintiffs to file the first two amended counts against Defendant. The court finds that the claim against Defendant's father would be futile and denies Plaintiffs' motion to amend to add that claim.

### B. Defendant's Motion to Strike (Doc. 222)

Defendant moves to strike Plaintiffs' first amended complaint under the KPSPA. (Doc. 222.) Defendant argues that Plaintiffs' first amended complaint provides only conclusory

allegations and does not offer specific facts which would entitle Plaintiffs to relief. (*Id.* at 8.) Plaintiffs argue that Defendant's motion is deficient because it fails to state the elements necessary to establish defamation and interference with business expectations. (Doc. 247 at 1.) Without conceding that Defendant's motion shows a deficiency in Plaintiffs' first amended complaint, Plaintiffs also note that they filed a motion for leave to file a second amended complaint, which this court grants in part and denies in part. (*Id.* at 2; Docs. 242, 243.)

It is Defendant's initial burden to show that the KPSPA provisions apply to the alleged defamatory statements. *Zaid*, 2022 WL 4534633, at *6 (citing K.S.A. §§ 60-5320(c)(4), 60-5320(c)(7)). Speech about a "public issue or issue of public interest" is protected. K.S.A. § 60-5320(c)(4). "Public issue or issue of public interest" is defined as "an issue related to: (A) Health or safety; (B) environmental, economic or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace." *Id.* § 60-5320(c)(7).

In his motion, Defendant does not explain why his comments are protected, merely asserting without explanation that the allegations in the complaint on their face show they are based on Defendant's rights. According to the allegations in the second amended complaint, Defendant's comments include:

> claim[ing] he was an investigator for the Securities Exchange Commission ("SEC"), that the FBI and other law enforcement agencies were investigating Chad Koehn and UCM for criminal actions, that Mr. Koehn was the subject of multiple sexual harassment claims, that Mr. Koehn was a pedophile, that Mr. Koehn was involved in a human tracking [SIC] ring, that Mr. Koehn had been involved in an international money laundering scheme for Anthem Holdings, Anthem Blanchard, and/or Cynthia Blanchard, that Mr. Koehn had falsified documents filed with the SEC, that Mr. Koehn was under criminal investigation, that lawsuits were being filed against Mr. Koehn throughout the United States, that Mr. Koehn had hired a hit team to kill Mr. Nelson, Mr. Nelson's children and his parents, that Plaintiffs' client, whom Mr. Nelson contacted, figured prominently in the ongoing investigations and would be a named party in any pending SEC and/or criminal

actions against the Plaintiffs, and that the Plaintiffs were somehow engaged in criminal activities adverse to the United States of America.

(Doc. 242 at 7–8, ¶18.) Defendant's comments also allegedly include telling UCM's clients that their names have come up in documents in lawsuits against Mr. Koehn, that Plaintiffs stole Defendant's proprietary software, and that Defendant represented to the individual he was contacting that he "had researched the client's on-line history, secretary of state filings and use of twitter and other social media applications, and that in the case of male clients, stating that their name is associated with 'young women' and [Defendant] would like to talk to you 'man-to-man.'" (*Id.* at 8, ¶19.)

The majority of these comments are directed at Mr. Koehn personally. Defendant does not argue that Mr. Koehn is a public official or public figure, and the court does not find that he is. These allegations are strikingly similar to those in *T & T Financing of Kansas City, LLC v. Taylor*, 408 P.3d 491 (Table), 2017 WL 6546634, at *6 (Kan. Ct. App. 2017). In that case, the court questioned whether allegations that an individual was "an abuser of women and children, a narcissistic sociopath, and a sex porn addict, even if true, [were] in any way related to a good, product or service in the marketplace." *Id.* The court remanded for further proceedings consistent with its findings. *Id.* at *7. This court finds that the allegations against Mr. Koehn are not related to a good, product, or service in the marketplace, nor do they fall under any other category identified in the KPSPA, making the majority of Defendant's alleged defamatory comments not protected speech.

Some of the comments allegedly made by Defendant are about UCM. UCM is a business which provides financial services available to the public marketplace. This potentially brings some of Defendant's comments within the protection of the KPSPA because they may relate to a good, product, or service in the marketplace. Defendant's comments about UCM generally implicate

UCM in some type of criminal wrongdoing alongside Mr. Koehn. But it is not clear how that alleged wrongdoing relates to the financial services UCM provides to the marketplace. In fact, any specific allegations about criminal wrongdoing are directed at Mr. Koehn rather than UCM and it is unclear how the entity UCM is implicated at all. Defendant has not explained in any way why his speech about UCM is considered protected public speech. While the court may liberally construe Defendant's arguments as a pro se party, it cannot construct arguments on his behalf. *Whitney*, 113 F.3d at 1173–74.

Ultimately, the court concludes that the scandalous speech of which Defendant is accused in the pleadings is not the sort of protected speech on public issues that the KPSPA was intended to protect. Moreover, the court finds that Defendant has not carried his burden at this initial step to show that this speech, or any other speech affected by this lawsuit, is protected by the KPSPA. Accordingly, Defendant's motion to strike is denied.

### C. Defendant's Motions to Dismiss (Docs. 73, 222)

Defendant's motions to dismiss are directed at the sufficiency of the allegations in the first amended complaint. Because the court grants in part Plaintiffs' motion to amend, the court finds that Defendant's motions to dismiss (Docs. 73, 222) are rendered moot.

### IV. Conclusion

Plaintiffs' motion to amend (Doc. 242) is GRANTED IN PART and DENIED IN PART. Plaintiffs may file their second amended complaint including Counts I and II against Defendant but shall not file Count III against Defendant's father. Defendant's motion to strike (Doc. 222) is DENIED. Defendant's motions to dismiss (Docs. 73, 222) are DENIED as MOOT.

IT IS SO ORDERED.  Dated this 12th day of  December 2022.

                                                         s/ John W. Broomes  
                                                        JOHN W. BROOMES  
                                                        UNITED STATES DISTRICT JUDGE