11/01/2022    UNITED CAPITAL v. NELSON    22-4008    1

1                     IN THE UNITED STATES DISTRICT COURT
                              DISTRICT OF KANSAS
2

3   UNITED CAPITAL MANAGEMENT OF
    KANSAS, INCOPORATED,
4   and CHAD KOEHN,

5              Plaintiffs,

6        vs.                            District Court
                                        Case Number
7   MICHAEL NELSON,                     22-4008

8              Defendant.

9

10                    TRANSCRIPT OF PROCEEDINGS

11

          On the 1st day of November, 2022 at 8:30 a.m. came
12  on to be heard in the PRETRIAL CONFERENCE HEARING in the
    above-entitled and numbered cause before the HONORABLE
13  GWYNNE E. BIRZER, Magistrate Judge of the United States
    District Court for the District of Kansas, Sitting in
14  Wichita.
          Proceedings recorded electronically.
15        Transcript produced by mechanical stenography and
    computer.

16

17
    APPEARANCES
18
          The Plaintiff appeared in person and by and
19  through:
          Mr. Craig Brand
20        Mr. Larry Michel
          Kennedy, Berkley, Yarnevich & Williamson
21        119 West Iron Ave, 7th Floor
          PO Box 2567
22        Salina, Kansas 67402

23

24

25

11/01/2022   UNITED CAPITAL v. NELSON   22-4008      2

1         (The following proceedings were electronically

2  recorded and have been requested transcribed:)

3         THE COURT:  All right.  Looks like we have a

4  full house again today.

5      Good morning to all of you gentlemen.

6         UNIDENTIFIED SPEAKER:  Good morning.

7         THE COURT:  Good morning.

8      We'll go ahead and call the matter of United

9  Capital Management of Kansas, Inc., and Chad M. Koehn as

10 plaintiffs and counter-defendants versus Michael Nelson

11 who is pro se.

12      Just so that we can open the record, can we have

13 appearances for the plaintiff.

14         MR. BRAND:  For the plaintiff, Your Honor, Craig

15 Brand and Larry Michel as counsel.

16      And then appearing on behalf of the plaintiff also

17 is Chad Koehn.

18         THE COURT:  Okay.

19         UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

20         THE COURT:  Good morning.  And so appearances

21 on -- Mr. Nelson, can you state your appearance on the

22 record, please, just so that we can know that for the

23 record that you are present.

24         MR. NELSON:  Yes, Michael Nelson for -- present.

25         THE COURT:  Okay.  All right.  So this is our

1 second-ish I guess status conference that we've set here

2 so that we could kind of get in front of any issues to

3 keep the case moving along.

4      I have reviewed in preparation for this conference

5 here the 24 pleadings that's been filed on the docket

6 since our last conference and that's something that we're

7 going to talk about.  Some were anticipated, and

8 permissive, and some not so much.

9      I've also reviewed the topics for discussion

10 provided by the parties for this conference.  I've looked

11 at the applicable federal rules, specifically 26(c) for

12 context on these topics, and some case law, just to put

13 me in the spirit of what's kind of going on with this

14 particular session.

15      So the first thing that I would like to address

16 before we kind of get into the meat of the topics today

17 is the time for submission of the topics to discuss.

18 Initially, I indicated that you folks could submit your

19 topics the Friday before the Tuesday hearing but it's

20 difficult to get to them with the breadth of the topics

21 that are going on that are submitted, especially with the

22 topics.

23      I don't like to change horses in the middle of the

24 stream, I really don't but to be honest, I'm not sure

25 that these status conferences, while I do think that

1  they're valuable, they don't seem to be moving the case

2  along so I guess I'm a little frustrated about that

3  because I figured that this would kind of help the

4  parties move discovery along and I -- and I don't think

5  that it's moving along at the pace that I anticipated.

6        So and then you know the topics that we're

7  addressing here, they're more weighty than I anticipated

8  that they would be and so I am thinking that when you

9  submit the topics for discussion for the upcoming

10 conferences, I would like to have them seven days

11 beforehand because that gives me an opportunity to look

12 at them, consider them, look at any case law in-depth as

13 I need to, and then kind of get to the heart of it.

14       And then the next -- the second thing -- there any

15 questions about that?

16       From the plaintiffs?

17       MR. BRAND:  I don't believe so, Your Honor.

18       THE COURT:  Okay.  And that -- if it gets to be

19 too taxing on you folks, then talk to me about it.  You

20 know those are -- we want to use these conferences for

21 that, too, but, quite frankly, I need a little more space

22 in between because if you submit your topics Friday at

23 the very end of the day, and I'm gone you know and we're

24 off, you know then it would be -- you know it's just

25 difficult to deal with this many topics on these kinds of

1  subjects in a day or in a day and a half, so I can

2  promise you that my law clerks and I, we are taking this

3  work home every evening just about to try to stay on top

4  of it.  And so it's not like we don't want to have extra

5  work, it isn't that.  It's just that it's getting to be a

6  little weighty.

7          So, Mr. Nelson, do you have any questions about

8  having the requirement to submit your topics or your

9  issues for discussion seven days before the conference?

10          MR. NELSON:  No, ma'am.

11          THE COURT:  Okay.  Very well.

12          So the next thing that I'm going to discuss is the

13  motion for reconsideration of the language in my order

14  regarding the ESI.

15          And so, um, Mr. Nelson, you know, you filed a

16  motion for reconsideration of the ESI protocol and

17  it -- the main complaint to me is that it refers to

18  language from one of the motions which has been stricken

19  and so you asked that the language from the stricken

20  docket be removed or it set forth alternative facts.

21          And so I guess we can discuss that, that's ECF

22  number 295, and obviously this was a motion that you know

23  you -- that was filed outside of my prohibition of filing

24  motions and so, you know, that's the first thing that we

25  have to deal with because you know it's harder for me to

11/01/2022    UNITED CAPITAL v. NELSON    22-4008    6

1  get to the pending motions, I will say, if you folks

2  continue to file pleadings.

3         And as I said at the beginning, 24 pleadings

4  collectively.  And I'm not counting the orders that I

5  entered or filed on the docket since our last hearing

6  within a month.  And, to me, that's not grownup, I will

7  say that.

8         So in terms of this motion for reconsideration, it

9  doesn't seem to me, Mr. Nelson, that you plead

10  appropriate grounds for reconsideration, quite frankly.

11  There has been no intervening change in the controlling

12  law, there is no new evidence that was previously

13  unavailable, and there is -- I don't see that there is a

14  need to correct clear error to prevent manifest

15  injustice.  I really don't see that here.

16         So, what is it you know other than the fact that

17  it just -- it uses language that you say has been

18  stricken?  Do you have additional argument?

19         MR. NELSON:  I'm confused and I thought if a

20  document is stricken from the record it's no longer a

21  part of the record and it becomes a nullity.

22         If that's not the way this Court is viewing, then

23  all of the documents which the District Court has

24  stricken should be part of the record and should be open

25  to directed appeal then.

1          I don't understand.  And I -- I -- I'm not an

2   attorney and the plaintiffs have filed motions for

3   reconsideration and you've ruled on their motions for

4   reconsideration so I filed a motion for reconsideration,

5   following the lead of the plaintiffs.  And it has to do

6   with documents being stricken.

7          If the documents are not stricken, then

8   I -- I -- I don't understand what it means to strike a

9   document then.

10          THE COURT:  So -- so then to the plaintiffs, do

11   you have -- you have a response here?

12          Again, you know there's certain things that you

13   have to meet, Mr. Nelson, to plead appropriate grounds

14   for reconsideration, none which of you have addressed.

15          And so, again, you didn't talk about any change in

16   the controlling law; you didn't talk about any evidence

17   that was previously unavailable; and you certainly you

18   know while you talk about the opposing party, that -- to

19   me that isn't the spirit of the problem of clear err to

20   prevent a manifest injustice.  I just don't see that

21   here.

22          So I guess what I'm saying is I would like to try

23   to get us to try to think about the case law and how it

24   applies to the case as opposed to throwing shade on each

25   other in these conferences.

1          So I guess do the plaintiffs, do you have a

2   response?

3          MR. BRAND:  Your Honor, I think we set forth our

4   response in writing.  I believe we stand by that.

5          THE COURT:  So I -- you know, there's a -- quite

6   frankly, you know, there's a couple of options that we

7   could do here.  I mean, my inclin -- my initial

8   inclination is to deny Mr. Nelson's motion because, quite

9   frankly, it's meritless.  I mean it doesn't -- it's

10  without merit.  And so that's my first inclination.

11         But the other alternative is to perhaps amend my

12  order regarding the discovery of the ESI and which

13  removes the language at issue, and then enter an order

14  finding it moot.

15         And so I guess you know Mr. Nelson in some ways

16  does have a point because the language -- you know the

17  motion was stricken but, again, you know these are the

18  kind of things that take up our time from getting to

19  the -- the more -- the motions that have more merit.

20         So, Mr. Brand, I guess I would ask you, would you

21  be opposed to me entering an amended order regarding the

22  discovery of the electronically stored information that

23  removes the language that is at issue?

24         Do you have any opposition to that?

25         MR. BRAND:  Your Honor, I think it's more

1  frustration than opposition.

2          THE COURT:  Yes.

3          MR. BRAND:  It's -- I think if Your Honor

4  considers the plaintiffs' position, we have to respond.

5          As Your Honor correctly stated, this 24

6  affirmative motions that were filed by the defense, if

7  you want to issue an order stating that those affirmative

8  motions should not have been filed to begin with, then we

9  have the defendant, doesn't matter what goes on the

10 docket, whether it comes from the Court or whether it

11 comes from us, he challenges it.  Irrespective of the

12 case law, irrespective of it, he just has to challenge

13 it, which creates more work.

14          And so my answer is, Your Honor, yes, under normal

15 circumstances I would not be opposed to it.  Under these

16 circumstances I am opposed to it because he filed a

17 motion that is completely void of the elements for

18 reconsideration and that -- and he didn't -- and he went

19 against your order as to filing these motions to begin

20 with so I think on those two grounds alone, it just

21 shouldn't even be an issue in this case or for us to be

22 addressing right now and having our time like this.

23          THE COURT:  Okay.

24          MR. BRAND:  So I think, Your Honor -- I don't

25 know, Your Honor.  It's just frustration.

11/01/2022   UNITED CAPITAL v. NELSON   22-4008   10

1          THE COURT:  Okay, I understand.

2          MR. BRAND:  And I --

3      (Indiscernible crosstalk.)

4          THE COURT:  I understand, Mr. Brand, but that's

5  not necessarily a legal basis for objection.

6          So what I would like to do is -- is I am going to

7  enter an amended order that will remove the language that

8  is at issue here, and then enter an order that

9  Mr. Nelson's motion will then be moot.  Okay?

10         So that -- I mean if neither -- if your -- if each

11 of you, if your responses are going to be to -- to bear

12 out your frustrations, which I totally understand,

13 because I feel it, too, you know, rather than on legal

14 basis, then you know these are going to be the kinds of

15 results that we have to see.

16         So once the -- you know, I -- as I'm going to

17 reiterate that I'm going to enter an amended order

18 regarding the discovery of the ESI and remove the

19 language that is at issue here and then enter an order

20 that finds Mr. Nelson's motion moot, and we can close

21 that one.

22         Next I want to turn to the topics that you folks

23 submitted and the first topic from the plaintiff is leave

24 to move for order to show cause why Mr. Nelson should not

25 be held in contempt for refusal to answer any medical

1  information and the interrogatories.

2       So, Mr. Nelson, we talked about this and I

3  understand that you had a problem, you know, anyway so I

4  guess I'm not surprised that you would file an appeal in

5  that -- in this regard.  So I can tell you that, you

6  know, since you have chosen to take this course,

7  depending on what happens, you know, what Judge Broomes

8  decides based upon your appeal, I -- I -- you -- I don't

9  appreciate the fact that you were trying to circumvent my

10  orders.  Okay?

11       I recognize that you have every right to appeal

12  and -- and I want you to know that I don't construe

13  responding to the discovery and providing medical

14  documents to Mr. Kellogg or to any of the parties in any

15  way violative of any type of orders from you in the

16  criminal case in this Court.  So I want you to know that

17  I can see through this.

18       But, unfortunately, since you have filed an appeal

19  we have to let this play out but I can tell you that I do

20  not construe this -- your response to these

21  interrogatories in any way violative, as you have

22  suggested.  So I'm just putting you on notice about that.

23       I'm not really inviting a response from you but

24  I'm just letting you know that that's not the way that I

25  construe this.

```
1            Mr. Brand, and Mr. Michel, as you know, I'm
2    not -- you know, my hands are tied, quite frankly, in
3    issuing a show cause order because the order that I
4    issued with regard to the medical information is on
5    appeal with Judge Broomes.  Now when he decides that, I
6    guess we can move on from there but as you know the law
7    precludes me from taking any kind of action while this
8    issue, or at least this issue right here, is on appeal.
9            But, again, Mr. Nelson, you should know that I'm
10   not construing your responding to this discovery and
11   providing medical documents violative of any order.
12           So, let's go ahead and move on to the --
13           MR. BRAND:  I'm sorry, Your Honor, Craig Brand.
14           Did you -- is that then an implied stay as to him
15   having to provide the discovery?
16           THE COURT:  Well, I mean -- I mean, I'm not
17   going to stay anything but you know, as you know, once an
18   appeal is on file there's very little we can do.
19           I'm not anticipating you to come forward with any
20   additional motions, I can tell you that and I -- nor do I
21   expect you to, Mr. Brand, and so -- but as you know, you
22   know, an appeal on it would preclude me from issuing any
23   orders until this is resolved and, quite frankly, I think
24   that's the better course and so you know that's just
25   where we are.  I mean unless you can tell me I should do
```

1 otherwise.

2      But I'm not -- you know, I'm not going to issue

3 any stays in this case.  Not formally.  But you know the

4 effect of an appeal.

5      MR. BRAND:  I do.  But it goes back, Your Honor,

6 to, again, the plaintiffs' frustration, my client's

7 frustration.  We can't -- every time Your Honor issues an

8 order, Mr. Nelson has an appeal to it and then we're back

9 in this same situation where we're waiting, waiting,

10 waiting, and the case doesn't move.

11      THE COURT:  I understand that, Mr. Brand, I do.

12 I understand -- I'm frustrated, too.  But Mr. Nelson

13 isn't the only one that is filing motions.  You know, you

14 are, too.  And I granted the ones that you have filed are

15 permissive, and I'm sorry that you and your client are

16 frustrated, you know, I -- but I'm not going to

17 circumvent the law as you have asked me, on occasion, to,

18 you know.  Just so that I -- you know, I'm not going to

19 do that.  So I do -- I understand your frustration.  I

20 do.

21      Did you have any comments, Mr. Nelson, directly

22 related to your appeal?

23      And, quite frankly, you shouldn't because you've

24 said enough.

25      MR. NELSON:  I -- I -- I guess the Court is

11/01/2022    UNITED CAPITAL v. NELSON    22-4008    14

1  saying that I don't so I don't.

2          THE COURT:  So let's move to the leave to move

3  to seal document 249-19 that was filed September 2nd.

4          Mr. Brand, you know, it took me a little -- it

5  took me a little while to kind of get to where you really

6  kind of wanted to go.  ECF Number 249, as I understand

7  it, is Mr. Nelson's memorandum in opposition to your

8  motion to quash the subpoena to Mr. Hoffman.  That only

9  has two attachments, from what I could see.  Therefore,

10 there is -- I didn't see a 249-19.

11         But on my own motion, I sealed the memo in

12 opposition with both exhibits on September 30th and then

13 Mr. Nelson filed a second memo in opposition on October

14 3rd, where he withdrew his initial response so ECF Number

15 249 is already sealed.  No motion, no leave to seal would

16 be necessary in that instance.

17         Now the only document filed on September 2nd is

18 ECF Number 212 and that was the notice of intent to issue

19 the subpoena to Heather Jantz.  And Mr. Nelson has also

20 withdrawn that pleading and public access to that

21 document has also been restricted so there's no need

22 to -- you know, that wouldn't be necessary, either, any

23 leave to move to seal.

24         So the only document that we could find with 19

25 attachments was ECF Number 246 and that was filed on

1  September 22nd.

2       And so is this the document that you are referring

3  to?  It's Mr. Nelson's comparative fault identification

4  and analysis of affirmative defenses and joinder of

5  involuntary defendants.  Is that the document?

6       Because it does have a 19 and it's Exhibit S, that

7  is the one.

8            MR. BRAND:  I'm looking at that now, Your Honor.

9  Yes, I apologize.

10           THE COURT:  Okay.  And so and I -- you know,

11  just the language in it, you know, and it's the same

12  email although in a different format, it's ECF Number

13  249-2, which is already sealed so I don't think that

14  a -- you know, a leave to file a motion to seal is

15  necessary.

16       I mean, I can -- I'm -- I think I can enter an

17  oral motion and, you know, and just kind of grant it

18  substantially for the same reasons that I sealed number

19  249.  I mean I know that it -- you know, I know that I

20  sealed it on my own motion because, quite frankly, it was

21  totally inappropriate, Mr. Nelson.

22       So I just want to make sure that we're on the same

23  page with that, Mr. Brand?

24           MR. BRAND:  Yes, we are, Your Honor.

25           THE COURT:  Okay.  Very well.

1              And then leave to file motion for protective order

2     is the third thing, and this is you know what we were

3     really going to have to talk about, Mr. Brand, because I

4     guess these are notices, you know, on -- back in

5     September Mr. Nelson -- from what I could glean

6     Mr. Nelson filed notices of intent to issue subpoenas to

7     Mr. Ritter, Mr. Aubert, Mr. Piercy, I think, and then

8     Mr. Angel.

9              Although, you know, Mr. Brand, you've both

10    included in your topics for discussion at the October 4th

11    status conference you know that you sought leave to file,

12    you did not ask for leave to file any motions for a

13    protective order.  Okay?

14             And so in a -- you know, I mean I guess I would

15    give you the same admonition that I gave to Mr. Nelson.

16    That you know you folks filing these motions without

17    permission, you know, it keeps us from having to move the

18    case along but on October 10th you know I -- you know,

19    those motions were filed and they are documents 280, 282,

20    and 284 for the subpoenas of Mr. Ritter, Mr. Aubert, and

21    Mr. Piercy, and so I did enter an order below, you know,

22    denying without prejudice to refiling those protective

23    orders and, you know, basically said it's because you're

24    restrained from filing any affirmative motions.

25             I do understand, Mr. Brand, why you felt you

1  needed to file protective orders but my question is you

2  know, first of all, I know that you folks are having

3  difficulty communicating with Mr. Nelson but you still

4  have to try to confer and from what I could tell you know

5  that you said you know we are planning -- Mr. Kellogg

6  said we're planning to file motions for protective orders

7  on several of the subpoena requests, I assume you object.

8  That's not the spirit of conferral.  It's not, and I

9  think you know that.

10      And then my second question or topic, you know,

11  thing that I want to try to talk through with you is why

12  are you bringing these motions instead of Mr. Ritter,

13  Mr. Aubert, Mr. Piercy, and Mr. Angel?

14      So, I mean you know Rule 26 says for good cause,

15  you know, I can enter a protective order but it's got to

16  meet certain qualifications for that and so I mean

17  there's got to be where either United Capital Management

18  or Mr. Koehn would suffer a nuisance, embarrassment,

19  oppression, or a burden.  And with regard to Ritter,

20  Aubert, and Piercy, I'm not seeing that.

21      So you're going to have to talk to me -- talk me

22  through that.

23          MR. BRAND:  So these are out of town depositions

24  that have nothing to do -- none of these individuals have

25  anything to do with my clients.  This is Mr. Nelson's

11/01/2022   UNITED CAPITAL v. NELSON   22-4008   18

1  attempt at getting at a nonparty, which is Anthem Holding

2  Company, through Anthem Holding.  This has zero -- as far

3  as relevance I mean there is no tie at all.

4       Remember Mr. Nelson doesn't know my clients.

5  Mr. Nelson has never worked for my clients.  Mr. Nelson

6  has never had anything at all to do with my clients.

7            THE COURT:  But as you know, Mr. Brand -- sorry.

8  As you know, I mean, if you're going to continue to argue

9  to me about relevancy for a protective order, relevancy

10  is not the test.  And that's where I need help here.

11            MR. BRAND:  Okay.

12            THE COURT:  Okay?

13            MR. BRAND:  So I guess -- so -- so one of

14  those -- one of those individuals moved within a hundred

15  miles of the courthouse, so we're talking about if these

16  depositions are to take place, having to go fly to

17  another state, incur costs, incur burden to sit there for

18  no legitimate purpose whatsoever having zero to do with

19  this case, and zero ability to have anything to do with

20  this case.

21       So this case -- those -- those notices of intent

22  filed by Mr. Nelson, when he meant it solely as a means

23  to harass Mr. Koehn and United Capital Management,

24  dealing with a nonparty, and where nothing more than

25  expenses and prejudice would fall to my client for having

 1  to go through the hassles, trials, and tribulations of

 2  having to go to another state and having to have these

 3  depositions taken --

 4          THE COURT:  But isn't --

 5          MR. BRAND:  -- it's done on purpose.

 6          THE COURT:  But isn't that an argument for the

 7  subpoenaed persons?  The people that are under subpoena?

 8      So I -- I guess I don't see -- I mean, I -- I get

 9  that they are your clients but I'm not sure that you've

10  made a case where it would be oppressive, you know,

11  harassment, embarrassment, you know, or a burden to

12  United Capital Management or Chad Koehn.

13      I think that these individuals could probably make

14  that case but that -- I'm not sure that that's your

15  motion to make.  You see what I mean?

16      And I know that you're saying that they have

17  nothing to do with it, you know, but relevance isn't the

18  test for a protective order and you know that so, again,

19  you know, I -- again, I do understand your frustration, I

20  understand -- you know, I do get that but you know you

21  have got to stop suggesting that I circumvent the law,

22  Mr. Brand.

23      You know you're going to have to not do that.

24          MR. BRAND:  I have no intent on that at all on

25  that ask, Your Honor, no disrespect and no intent at all.

```
 1              THE COURT:  Okay.

 2              MR. BRAND:  It's -- I know these individuals, I

 3  know -- I -- I'm hearing you, I understand what you're

 4  saying with regard to relevance.  However, the flip side

 5  to that is your -- Mr. Nelson is asking that Mr. Koehn

 6  and Mr. [inaudible] have to fly to another state, bear

 7  that burden of cost, bear that burden of the harassment

 8  at hand.  He's going to have to -- we're going to have to

 9  go to another deposition for the purposes of nothing.

10       So when we talk about harassment, think of it from

11  my client's position.  My client is now burdened and

12  prejudiced by having to bear those resources, bear those

13  expenses, and have to sit there and will not -- and have

14  somebody else be deposed by Mr. Nelson's representative

15  because Mr. Nelson is no longer allowed to take these

16  depositions.

17              THE COURT:  But, Mr. Brand -- but, Mr. Brand,

18  I'm looking at the subpoenas and they are requesting

19  documents.  I mean these are there for -- they're not for

20  depositions.  This says you know, You are commanded to

21  produce.  This is a document production subpoena that

22  says that he wants all of these communications.

23       So I'm not sure where there would be any expense

24  to Mr. Koehn or United Capital Management.  I mean I'm

25  looking at each one of the subpoenas and they're saying
```

1  to produce certain documents.

2      Now I don't see where anybody is subpoenaed for a

3  deposition at this time.  So, again, you know, I don't

4  know.  I mean I -- I don't know what your argument is.

5      Now, the subpoena to Mr. Angel seems a little bit

6  different because I know that he's a member of

7  Mr. Michel's firm, and it looks like the subpoena to

8  Mr. Angel is seeking harassment, settlements, inclusive

9  of, you know, the things that Mr. Nelson is requesting,

10  entered into by United Capital Management or Mr. Koehn.

11      And so why do you want a protective order in this

12  instance?  Because I can -- I don't see it in the other

13  three.

14      Now Mr. Angel may be a little different because of

15  his capacity working with the firm.

16          MR. BRAND:  So, Your Honor, as to Mr. Angel,

17  you're correct in that stance.

18      As to the others, they just reached out and

19  they're going to file their own individual motions

20  effectively.  Takes care of that.

21          THE COURT:  Okay.  Well, all right.  So then I

22  think --

23          MR. BRAND:  I withdraw -- withdraw -- except for

24  Mr. Angel, given the fact of his connection with

25  Mr. Michel's law firm.

1            MR. MICHEL:  May we address that also, Your

2  Honor?

3            THE COURT:  Mr. Michel, you may address that.  I

4  would have expected that you would.

5            MR. MICHEL:  Okay, you know, part of the issue

6  here, too, Your Honor, is procedurally it's

7  inappropriate.

8        Our firm represents Chad Koehn and United Capital

9  Management.  If Mr. Nelson wants information he needs to

10 do it through the normal discovery processes.  You don't

11 do discovery by subpoenaing the opposing parties'

12 attorney.  So I think that's a big problem that I see

13 with this method, as well as it's just procedurally

14 inappropriate.

15           THE COURT:  Okay.

16        Mr. Nelson?

17           MR. NELSON:  Yes, Your Honor.

18           THE COURT:  Do you have any comments?

19           MR. NELSON:  I -- I have received initial

20 disclosures from the plaintiff and the initial

21 disclosures that they don't relate to something from 17

22 or 20 years ago, they relate directly to Anthem Holdings,

23 Hercules Cryptocurrency, HeraSol or HeraSoft.  That is

24 all of the plaintiffs' disclosures, that's what they

25 entail.

1      So their argument that I'm asking for something

2  that's not relevant is -- is a nonargument because that's

3  what they are providing to me and that's what I have been

4  able to actually access, which is only about 35 percent

5  of what they sent.  And they have answered no questions,

6  they have provided me no documents that I have requested

7  of them.  I've received zero discovery from them as of

8  this point.

9      Seeking -- there's one per -- one party, one party

10  that is out of state.  Mr. Brand keeps saying that

11  they're all out of state, they're all hundreds of miles

12  away.  They're not.  Mr. Brand's just simply providing

13  false information to the Court.

14      I'm not allowed to receive any documents that he

15  even shows that there should be a case here.  I -- I -- I

16  don't even understand what the purpose of discovery is if

17  they're going to fight literally every single request

18  that I make.

19      So, yeah, I'm not asking for things that are

20  outside of the scope of anything, I'm asking for

21  documents.  And it takes two people to -- here's the

22  documents I have.  You know, they want it to be -- they

23  want to litigate showing that I'm just a horrible person

24  and that they should be able to attach money that I make

25  for the rest of my life, that they can go after my

1 elderly father and go to hospital beds and take

2 depositions of people.  This is about destruction of my

3 life and all that I'm trying to do is get some basic

4 information.  Just basic information.

5           THE COURT:  Mr. Nelson -- well, Mr. Nelson, I

6 will tell you that if all you were trying to do is get

7 basic information, I think that basic information would

8 come to you but when the Court on its own motion has to

9 seal documents with the information that you tried to

10 publically slip by about a party in this case, is it any

11 wonder?

12         And so it does -- I'm not going to listen to the

13 arguments that you make because they don't, quite

14 frankly, address the question.  But you know you're not

15 any better.  You know you talk about you know your family

16 and all of that.  Look at the pleading that you filed

17 that I had to seal on my own motion that was so repulsive

18 that it shocked my conscience.

19         So you know it's one thing -- so if you don't do

20 it maybe the other side won't do it.  And if the other

21 side won't do it, maybe you won't do it.  But your hands

22 are not clean in this case, Mr. Nelson.  And they have

23 never been from the beginning of this case.

24         So I think with regard to the, you know, seeking

25 leave to you know -- just your -- this topic of

1  discussion, Mr. Brand, I'm not inclined to give you leave

2  to file a protective order against the document subpoenas

3  for Mr. -- for the three individuals that we talked

4  about, Mr. Ritter, Mr. Aubert, and Mr. Piercy because you

5  just, you don't meet the -- you know not even the

6  qualifications for a protective order.

7        You have not established that United Capital

8  Management or Mr. Koehn would suffer a nuisance,

9  embarrassment, oppression, or burden by production of

10  these documents.

11        Mr. Angel, however, is another matter and I do

12  think that I am convinced based upon the arguments by you

13  and Mr. Michel that this is strictly for harassment and

14  so I -- I think issuance of a subpoena to Mr. Angel is

15  strictly to annoy or embarrass Mr. Koehn and to find -- I

16  think I can find good cause to enter a protective order

17  prohibiting the issuance of a subpoena to Mr. Angel, and

18  so that's my inclination in this instance.

19        So, I am prepared to move on to topic Number 4 and

20  that is the status of the motion to dismiss via your

21  amended -- the counter -- plaintiff's amended complaint.

22  That's going to be for Judge Broomes to decide.  Okay?

23        But I can tell you, you know, I mean I don't know

24  what his calendar is like but if it's anything like mine

25  with regard to this case, the more pleadings that are

1  sent up to him, it's going to be difficult for him to get

2  to them.  Okay?

3        And that may not be your fault.  Mr. Nelson is

4  mainly the one that's sending, you know, appeals up to

5  Judge Broomes, but that's his right you know and it just

6  is.  So that's up to Judge Broomes as to when that motion

7  to dismiss the amended complaint -- I mean the -- your

8  motion to dismiss will be decided, not the amended

9  complaint.

10        And then the status of motion for leave to file

11  the amended second complaint, you know typically you know

12  this motion became ripe with your reply on October 10th.

13        Mr. Nelson filed a surreply, which I am striking

14  because you have to have permission to do that and you

15  didn't have permission to file a surreply, so I'm going

16  to strike that.

17        But typically you know on average, counsel, just

18  so that you know, typically on motions like this, it

19  usually just working it in would take around 60 days.  I

20  like to have a decision 60 days from when the motion is

21  ripe.  It became ripe on October 10th.  I do expect to

22  issue a decision prior to the 60 days that the motion

23  became ripe, but it doesn't hold up your ability to move

24  forward in this case.

25        As I said, you know if you keep filing documents

1  and everything that comes in that is filed since

2  our -- since our conference a month ago, there have been

3  24 different pleadings by both of you collectively that

4  have been filed in this case, and we review everything

5  that comes in at the time that it comes in, and so if you

6  want me to hurry up and enter a decision on the second

7  amended -- you know, your leave to file the second

8  amended complaint, you know, you're going to have to

9  help, counsel.

10       And these kinds of motions, you know, none of them

11  that we have addressed today were really and truly

12  appropriate, legal, or even necessary so having to cut

13  through that, if I didn't have to cut through that I

14  could get to your motions -- you know your more

15  meaningful and substantive motions sooner.

16       I again reviewed the motion for leave to file a

17  second amended complaint and the basis for which and none

18  of it is holding up your discovery.  I mean I'm not

19  saying that I'm not going to rule on it because of that

20  but I -- you know, I'm just saying that as a matter of

21  course that I don't believe that any of it is slowing and

22  holding you up from conducting the discovery that you can

23  conduct in this case and it is frustrating to me that out

24  of 296 entries on this case that discovery is moving at

25  this pace.

1          And so I'll help you -- all of you, Mr. Nelson,

2     Mr. Brand, and Mr. Michel, I'll help you all get

3     decisions quicker if you'll help me.  Okay?  And so

4     that's kind of where I want to leave that.  Okay?

5     Whatever that means to you.  I'll help you but you have

6     to help me, too.  All right?

7          So I think that I've covered the topics that you

8     want to address, Mr. Brand, and Mr. Michel.

9          Is that right?  Okay.

10          MR. BRAND:  That's correct, Your Honor.

11          THE COURT:  So now I want to move to

12     Mr. Nelson's topics where, you know, a lot of --

13     Mr. Nelson, from what I can tell your topics overlap.

14     Okay?

15          So for the best way for me to manage them is to

16     kind of group them together and so your topic one, three,

17     and ten, the fact that you cannot access the documents

18     plaintiffs produced and then leave to move to compel and

19     then the documents produced don't support your claims of

20     defamation and the like, you argued that the plaintiffs

21     produce 414 files, many of which are redundant and cannot

22     be accessed.

23          Now how do you know they are redundant if you

24     can't access them is another question that I don't even

25     want to know the answer to.

```
1           But looking at the ESI protocol, Mr. Brand, that

2  you folks proposed and that you know was entered with

3  some modification, there is no duty to de-duplicate,

4  Mr. Nelson.

5           So but there is, Mr. Brand, a duty to produce all

6  documents in PDF format.  Okay?

7           So what I would like to do is set a guideline for

8  you to reproduce the files in PDF format as agreed,

9  because you agreed to that.  I don't think you should

10 de-duplicate them and, you know, Mr. Nelson, you

11 can -- if you want the files to be de-duplicated, you can

12 pay for that.  And so I don't think that there's a need

13 for leave to file the motion to compel.  Okay?

14          If you want to have them de-duplicated you can do

15 that and you can pay for that on your own but I do think,

16 Mr. Brand, you're going to have to reproduce the files in

17 PDF format as you agreed.

18          So how much time do you need to do that?

19              MR. BRAND:  Fourteen days, Your Honor.

20              THE COURT:  Did you say 14 days?

21              MR. BRAND:  Yes.

22              THE COURT:  Okay.  That's fine.

23          So looking at my calendar, this is November 1st.

24 So November -- do you want -- how about November 18th?

25 That's a Friday, you know, and it's kind of just before
```

1  we start to -- you know things start to slow down for the

2  Thanksgiving holiday.  So how about by November 18th.

3  That sound good?

4          MR. BRAND:  Thank you, Your Honor.

5          THE COURT:  Okay.  Mr. Nelson, do you have any

6  other comments with regard to the documents that are

7  going to be reproduced in PDF format?

8          MR. NELSON:  No, Your Honor, other than the fact

9  that I was able to access 35 percent of the documents and

10  of that 35 percent, a number of those documents are

11  duplicates, so to make it sound as though I -- I cannot

12  access documents that are executable files.  Period.

13      So I don't know if those are duplicates but all

14  the documents I'm able to access, or certainly a number

15  of them, are duplicates, just direct duplicates.  Just to

16  further frustrate the process.

17          THE COURT:  Okay.

18          MR. NELSON:  So in complaining about that

19  is -- it is my right and is dutiful to do so.

20      They're -- they're just duplicative files, just

21  renamed something else just to take up time to frustrate

22  the process.  I certainly have not done that to them.

23          THE COURT:  Okay.  So, Mr. Brand, you know, as

24  you produce the files in PDF format, you know, I

25  understand that there -- you know, largely emails and the

```
 1  like and how you know an email chain can also duplicate,
 2  you know, the first sent email, you know, I understand if
 3  that is that.  But I don't -- you know, I hope that
 4  you're not purposefully papering up the case.  And I'm
 5  not suggesting that you are but why don't you look at
 6  the -- the discovery that you're going to send and
 7  reproduce in PDF to make sure that you're not sending any
 8  unnecessary paperwork.  Okay?
 9        All right.  The second topic, Mr. Nelson, your
10  topic number three, and then number ten here.  You
11  both -- you know, they both allege that the documents
12  produced to date don't support, you know, the plaintiffs'
13  claims that you defamed Mr. Koehn or United Capital
14  Management or that you tortuously interfered with their
15  business.
16        You know, discovery is being made on a rolling
17  basis.  Discovery is not complete so this is kind of a
18  nonissue to me.  I mean this is not a topic -- I mean
19  because you're in the throes of discovery so you may not
20  see it now but perhaps you'll see it later and if you
21  don't see it, then you know there is things that you can
22  do about that.
23        So I don't think that that's an issue that
24  requires additional discussion.  I just wanted you to
25  know that I saw that topic.
```

1          The next topics for discussion are two, four,

2   seven, 11, and 12 and have to do with the case in

3   Oklahoma and you not being permitted to communicate with

4   counsel and then you not having access to computers.

5          Now these topics seem to relate to your continuing

6   request that this case be stayed pending resolution of

7   your criminal case and I'm just not inclined to do that.

8   I mean the issues with the Oklahoma case, you know, this

9   Oklahoma case is not going to drive this case and I told

10  you that from the beginning and I haven't changed my mind

11  about that.

12         I am mindful that discovery may need to be

13  extended in some fashion just because of the slow pace

14  that is going now but I'm not going to decide that today.

15  Okay?

16         So, you know, on your topic number two, I guess

17  you want to make me aware that you cannot be present at

18  any depositions, have any contact with any of the Anthem

19  Holdings and Harris Software people, or the

20  cryptocurrency stock coin and all of that so, I mean, I

21  don't know what to say about that.  You know, that's -- I

22  don't mean that that's your problem but that doesn't have

23  any bearing to me in this instance.

24         So I think that just a word of caution is that if

25  your communications are anything like the communication

1  that you made where the Court had to seal the document on

2  its own motion, then you probably won't be able to have

3  any contact with these folks.  But if you have legitimate

4  questions that -- that really and truly go to the heart

5  of the litigation that you're involved in, and your

6  effort is to get through that, then you know perhaps you

7  might.

8        But as long as you communicate like that, and make

9  the type of inappropriate and sexual innuendos that you

10  have made here, I don't -- I'm not sure that you -- that

11  anything will change.  So maybe you can think about that.

12        But you know and so then I think that you claim

13  that you know your constitutional rights to confront

14  witnesses has been limited or violated but again you know

15  you indicated to me previously that you have attorneys to

16  take depositions, so any depositions could

17  seeming -- seem like they could go forward if you need

18  them to because you said that you weren't going to do

19  them, you have people set up to do that.  So I mean

20  that's just my recollection.  I don't -- you know I may

21  be remembering that wrong but I thought at our last

22  conference you said that.

23        Then I think topics four, and 11, you talk about

24  your inability to communicate with plaintiffs' counsel

25  via mail or email.  As far as I knew, Mr. Michel or

1  Mr. Kellogg I -- you know, I mean I tried to look at the

2  Oklahoma docket just to kind of see you know what you

3  meant by that and I wasn't able to deduce anything but I

4  didn't think that you were prohibited from communicating

5  with Mr. Kellogg.  Are you?  Because that's who you've

6  been communicating.

7        I mean that's who we designated you to communicate

8  with and so have you been -- have you been precluded from

9  communicating with Mr. Kellogg?

10         MR. NELSON:  Apparently if -- I provided to the

11  Court a copy of the State of Oklahoma's motion which

12  directly references Mr. Kellogg, as he's the only

13  attorney that I have had communication with per order of

14  this Court via email, and Mr. Kellogg provided that email

15  to the Oklahoma prosecutor who, in turn, said that

16  communication with Mr. Kellogg is an associate of the

17  Blanchards and I'm precluded from it, and then the Court

18  in Oklahoma found that I was in violation of the bail for

19  having communications with Mr. Kellogg.

20         It's in the minutes.

21         So I don't -- I don't -- and I would have no

22  problem with mailing to them the interrogatories, other

23  than the fact that literally my hands are being tied and

24  that is the reason for the appeal.  There would be no

25  appeal, they would have copies of whatever medical

1  documents they would want if I was allowed to just -- but

2  Mr. Brand has created all of this mess in order to make

3  certain that some -- one way or another, somebody puts me

4  back in jail.

5       They already put me back in jail for having

6  communications with Mr. Kellogg, so I'll be damned if

7  I'll ever email someone or send them a letter to put

8  myself into jail.  I will just keep appealing the things

9  until somebody decides -- the few FBI agents look at

10 this.  The Tenth Circuit Court of Appeals needs to look

11 at this.

12      It -- they are literally --

13         THE COURT:  Mr. Nelson -- Mr. Nelson --

14      (Indiscernible crosstalk.)

15         MR. NELSON:  -- mailing them stuff --

16         THE COURT:  Mr. Nelson, I have had enough.

17      I -- you know, that's not how -- any materials

18 that you have sent to me, that's not how I review them.

19      Mr. Brand?

20         MR. BRAND:  Yes, Your Honor.

21         THE COURT:  Do you have comment?

22         MR. BRAND:  Your Honor, I -- as far as I know,

23 in speaking to the prosecutor in Oklahoma, none of what

24 Mr. Nelson said is correct.

25      And Mr. Kellogg is not prohibited from talking to

1  Mr. Nelson.

2         THE COURT:  Yeah.

3         MR. BRAND:  We -- we all know that Mr. Kellogg

4  has nothing to do with anything involving Anthem.  And

5  Mr. Nelson -- I certainly am not going to complain,

6  Mr. Kellogg is not going to complain if Mr. Nelson has

7  communications with Mr. Kellogg.

8         We just heard from Mr. Nelson he's going to keep

9  filing appeals, which that's exactly what the point this

10 is talking about.  It is just a frustration of the

11 process --

12        THE COURT:  Yes.

13        MR. BRAND:  -- to take anything -- anything Your

14 Honor does, he is just going to keep filing appeals,

15 whether it is meritorious or not.  He's just going to

16 keep doing it.  And the case just continues to burden and

17 harass my client because my clients have to pay for all

18 this and this is just not right.

19        MR. NELSON:  Your Honor, give me a way in order

20 to provide them documents without them running to the

21 prosecutor in Oklahoma.  This is --

22     (Indiscernible crosstalk.)

23        THE COURT:  Hey, hey, hang on.  Hang on.  Hang

24 on.

25        We're not -- no, you know, this is where you talk

1  to me.

2      And I will just say, Mr. Nelson, I don't

3  review -- I don't view anything that you have sent me,

4  there was nothing that I could find that I would construe

5  your inability to communicate with Mr. Kellogg.  And so

6  if you are going to try to hide behind that to keep from

7  moving forward in this case, it is not going to work and

8  that at the end of the day, that's all I'm going to say

9  about that.

10      I'm not inviting comment from you about that.  But

11  I'm telling you that that's not the way I construe it.

12      On to your topic number 12.  Again, you claim that

13  the criminal case involves threats made to you and your

14  family and that somehow involves Mr. Takio, and

15  Mr. Brand, and that you filed a sworn affidavit and

16  sought a protective order on September 19th and, again, I

17  tried to look at the Oklahoma records, you know, and I

18  didn't see anything filed on September 19th and I don't

19  find, quite frankly, any other cases involving you so you

20  know, I -- you know, I -- that's no issue.

21      I'm not going -- the Oklahoma case and what you're

22  facing in the Oklahoma case, it has no place here, so you

23  need to stop bringing it up here.  Okay?

24      So I'm just not -- and I'm not going to stay this

25  case until that's done.  Okay?  I think that you can

1  continue to produce documents.  I think, quite frankly,

2  think that you could have produced the medical records

3  and you just didn't and so you know, so your --

4          MR. NELSON:  I'd be in jail.

5          THE COURT:  Mr. Nelson, when I ask you to talk,

6  that's when you talk.

7          Now, on your leave to refile the motion to strike,

8  this motion again was filed in violation of my order that

9  there would be no affirmative motions filed until further

10 order of the Court.  And it's not to silence you all, you

11 know, from filing motions and proceeding with the case,

12 it's so that I can get to the motions that are pending.

13 Okay?

14         If you continue to file motions and back up the

15 docket, it's going to be difficult for me to get to the

16 motions that are pending and that goes to my comment is

17 that I will help you if you will help me.

18         So Mr. -- so you -- so, Mr. Nelson, you sought to

19 strike the memorandum in support of the motion for leave

20 for -- because the second amended complaint included the

21 offensive word being in it that you have indicated, and

22 just you know as I look at the complaint, it seems to me

23 that the plaintiffs were simply explaining why they

24 needed leave under Rule 15 to file the amended complaint.

25         I know that you contend that that is racial

1  epithet, and I have dealt with that but, quite frankly,

2  you know, Mr. Nelson, this is really light, you know, and

3  especially as plaintiffs intended it to be filed so I am

4  not giving you leave to file this motion.  I'm going to

5  deny your request on this because we have dealt with it.

6          Leave to file application on -- under Rule 72.1.

7  You're asking to -- application for stay -- 72.1 is

8  application for stay of magistrate judge's order.  So

9  it's an application for stay of any order pending review

10 of objections.  So you have got to first make those to

11 me, but you didn't indicate what order you would like me

12 to stay so I wasn't sure which order you were referring

13 to under your topic number six.

14          So which order are you talking about?

15          MR. NELSON:  The order regarding providing

16 documents to the plaintiff.

17          If I could provide documents to the plaintiff

18 without being thrown in jail I would absolutely provide

19 documents to the plaintiff.

20          If they --

21          THE COURT:  Okay.

22          MR. NELSON:  They will throw me in jail for

23 having email communication with Mr. Kellogg.  They

24 literally run to the prosecutor, and Mr. Brand just

25 admitted on this taped recording that he has had

1  conversations with the prosecutor, so that obviously

2  means the prosecutor lied to the judge on the record in

3  Oklahoma.

4         THE COURT:  But, Mr. Nelson, I'm not -- I don't

5  know why you want to continue to talk to me about

6  Oklahoma.  I -- you're not going to put me, any of my

7  rulings against the Court's rulings in Oklahoma.  You're

8  just not going to do that.

9        So anything that has to do with Oklahoma is going

10 to stay in Oklahoma, but this case right here, I'm not

11 staying anything so --

12        MR. NELSON:  And I can't provide any documents

13 to the plaintiffs if -- because that's the ruling of the

14 Court in Oklahoma.

15        THE COURT:  Well, I mean then you know if that's

16 how you see that, then that's how you see that but that's

17 not how I see that and so you know I guess I mean we'll

18 cross that bridge once we really and truly got this but

19 you have got to be obligated to respond to discovery

20 requests in this case.

21       Now you said you want to take the depositions.

22 The eighth topic I think you said is you want to take the

23 depositions of Mr. Koehns' ex-wives.  You said if they

24 will have information about Mr. Koehn's reputation in the

25 community and whether you know their employees or

1  shareholders of Anthem Holding Company, or Harris

2  Software and I don't think that, quite frankly, you need

3  to take -- need leave to take those depositions.

4  Discovery is open and no discovery has been taken so far.

5  You're not over your ten deposition limit that is

6  permitted under Rule 30 and agreed to in the scheduling

7  order.

8       Then if you notice them up then obviously

9  Mr. Koehn would seek leave -- you know, has the option of

10 seeking leave for a motion to protect -- for protective

11 order and we'd have to determine whether the depositions

12 would cause a nuisance or an embarrassment to Mr. Koehn,

13 which is what I would have to determine.

14      But to me I think that these depositions, just

15 knowing what I know about the history of the case,

16 is -- it would be a fishing expedition by you.  So I

17 caution you not to be wanting to do that and so I'm

18 thinking that if you're going to -- if you are wanting to

19 depose these individuals perhaps think about submitting

20 deposition questions for the limited purpose of

21 determining whether or not they're employees of any of

22 these shareholders.  Okay?  In these companies that you

23 have.

24      And so that's -- that's kind of my thought.

25 Because coming face-to-face with Mr. Koehn's you know

1   ex-wives, that just feels like harassment to me.  I

2   haven't seen everything, I'm not as in-tune to the

3   discovery as you are -- you folks are, but I think that

4   if I were to permit such a thing, it would be that you

5   would have to submit a limited number of deposition

6   questions, which I would give you what that number is,

7   determining whether they are employees or shareholders in

8   the Anthem or Harris Software Companies, and so and it

9   will be that purpose only.

10        Not to ask about any of this other stuff that you

11   have submitted to the Court where on my own motion I had

12   to seal.  And, you know, I -- I really am bothered by

13   that, Mr. Nelson.  I will tell you that.  I mean I really

14   am bothered by the content of the motions and just the

15   paper that you have submitted to this Court.

16        These kinds of allegations and this language, it

17   has no -- it shouldn't even be in this litigation,

18   especially considering why you are being sued.  And I

19   want it -- and I want it to stop and if you do that again

20   I'm going to issue a sanction.

21        Okay.  So --

22         MR. NELSON:  Your Honor?

23         MR. BRAND:  Your Honor, Craig Brand.

24   Can I go off camera for two minutes, please?

25         THE COURT:  You may.

1           MR. BRAND:  Thank you.

2           THE COURT:  Let's just take, let's take a five

3  minute recess.  We'll just come back in five.

4           MR. BRAND:  Thank you, Your Honor.

5       (Recess taken.)

6           THE COURT:  All right.  All right.  We're ready

7  to go back on the record in the matter of United Capital

8  Management of Kansas and Chad Koehn versus Michael

9  Nelson?

10      The parties that have previously entered their

11 appearance are present, with the exception of Mr. Koehn.

12 I don't see him.

13      But as I was -- as we are moving to the final

14 topic for Mr. Nelson, Mr. Nelson indicates that

15 plaintiffs have not produced certain information, and

16 that being a complete list of all the proprietary persons

17 owned by Koehn or United Capital Management of Kansas, or

18 a list of persons who are shareholders.

19      You know, it's not -- [inaudible] completely

20 clear, Mr. Nelson, but it seems like you want me to

21 compel the production of certain documents but I don't

22 have enough information to make a decision about that.  I

23 mean, you -- you know, on one hand you indicate you're

24 not able to communicate with these folks and that you're

25 not going to respond to any discovery, you're not going

 1  to produce certain discovery, yet you complain you're not

 2  getting discovery.  So I mean there's going to have to be

 3  a middle road that we're going to have to get to with

 4  this.

 5       I think, you know, I think this might be something

 6  that we would have to discuss at our December conference.

 7  I mean, if you want to raise that then you know you're

 8  going to have to provide me copies of the discovery

 9  requests and the responses so that I can see what any of

10  those objections are.

11       So I -- one statement I will make is your deadline

12  to move to compel until the December status conference if

13  you, you know, if you need that.

14       But I don't think that I have enough information

15  but just in reviewing some of the documents you know,

16  again, Mr. Nelson, my concern is that you are

17  going -- you're trying to use this case to get

18  information in that case in Oklahoma and that's not what

19  I want this to be.  I want you to stick to the

20  information that is in your counterclaims, and to be able

21  to defend the allegations made by the plaintiff in this

22  case.

23       And I think if we stick to the information that's

24  in our -- in this case here, instead of going all out and

25  all over the place, then I think that we'll be able to

1  move forward.

2       The discovery is going to entail written

3  discovery.  It's going to entail depositions.  It's going

4  to entail you folks having to email each other to

5  schedule depositions.  Things are going to need to occur.

6       And, Mr. Nelson, you know if you continue to

7  conduct yourself in the way that you are conducting

8  yourself in this case it's going to be difficult to get

9  any of that done.  It's going to be very difficult.  And

10 so you know my -- just my prayer to you, if you will, is

11 to engage yourself in discovery with your communications,

12 you know with the folks that you can communicate with,

13 such as Mr. Kellogg.  And to -- to be able to get

14 discovery in this case.

15       Now if you feel like that is a -- that is a

16 violation of your order, your prior order, you know,

17 I -- you know, I -- that's not the way I review it and so

18 you know you're going to be ordered to compel, you know

19 that could be -- and if you don't then sometimes that

20 will result in sanctions.  I don't want to have to do

21 that, Mr. Nelson, I don't, because I know that would be a

22 hardship on you.

23       MR. NELSON:  And -- and, Your Honor, I would

24 absolutely like to be able to mail the documents, I would

25 like to be able to email with Mr. Kellogg.

1          However, you see -- you see right in the state's

2     motion to increase my bond where they put me in jail for

3     having email communications with Mr. Kellogg.

4          And I just emailed the clerk to get a recording of

5     this hearing where Mr. Brand admits -- admits to having

6     communication with the prosecutor in Oklahoma.  So --

7               THE COURT:  But, Mr. Nelson --

8               MR. NELSON:  -- how am I to feel like I can

9     provide documents without going to jail?

10         Literally, I am under threat of imprisonment if I

11    provide them any documents.  That's not correct.

12    Somebody needs to hear it.

13              THE COURT:  Well, Mr. Nelson, you know, I'm

14    sorry that you feel that way.  I am.  But that's not how

15    I review this information and you know once we get back

16    on track and to finally to being able to move forward in

17    an affirmative way in this case, and you're not producing

18    the documents that they are requesting within the time

19    period that the law allows, then you're going to have a

20    problem.  You know that's all I can say.  I don't know

21    what that --

22              MR. NELSON:  Your Honor --

23              THE COURT:  I don't know what that problem is

24    but you're going to have a problem and so you're going to

25    have to --

1          MR. NELSON:  Then -- then I would --

2          THE COURT:  -- figure out how to communicate

3   with somebody in this case.

4          And we designated Mr. Kellogg because you can't

5   communicate with anybody else.  And you can barely

6   communicate with the Court because of the -- because of

7   the content of the pleadings that you filed before the

8   Court.  It's repulsive, Mr. Nelson.

9          And so I'm -- I think we have addressed all of

10  your topics and I hope you're taking what -- you know,

11  the directives I'm giving you to heart because I mean

12  them and I think that that's all that I have got to say

13  about that.

14         I'm prepared to close the record.

15         Our next big -- your next status conference will

16  be December.

17         Counsel, I will expect you to file any topics that

18  you want to address seven days prior to the conference so

19  that I can have an opportunity to review even if

20  it -- and you know, if you don't have any topics, let me

21  know and we can cancel the hearing, we don't have to have

22  the hearing you know in that instance.

23         But if you all just need some time to get to them,

24  Friday -- Friday afternoon is too much, okay, for me to

25  give it the consideration that you need to because I have

1  to flip back through the docket, flip back through the

2  pleadings, and you send attachments and it's just a lot.

3  Okay?

4        So, I think that this status conference is over

5  and we are adjourned.

6        Good day.

7           MR. BRAND:  Your Honor --

8           THE COURT:  Yes, Mr. Brand.

9           MR. BRAND:  Your Honor, I was just going to

10 bring up Rule 26(a) discovery disclosures and we're

11 still -- plaintiff is still waiting for defendant's.

12          THE COURT:  Plaintiff is --

13          MR. NELSON:  Your Honor, I provided discovery

14 disclosures along with the first time that I provided the

15 interrogatories.

16          THE COURT:  I didn't --

17          MR. NELSON:  In September I noticed the report.

18          THE COURT:  Mr. Nelson, hang on, I didn't even

19 hear what Mr. Brand said.

20      Mr. Brand, can you repeat that?  You said the

21 26(a) disclosures -- what did you say about them?

22          MR. BRAND:  Correct.  If they were provided,

23 then I don't have a copy of it, then it goes back to that

24 whole mailing versus being able to email all of counsel.

25          But sitting here today, I don't have the

1  defendant's Rule 26(a) disclosures.

2        THE COURT:  Okay.  And Mr. Nelson, I'm sorry

3  that I cut you off, I didn't hear Mr. Brand's question.

4     But you said that you provided the Rule 26(a)

5  disclosures.  Who did you provide them to?

6        MR. NELSON:  I provided them to that Kennedy

7  Berkley Donovan whatever law firm that Mr. Kellogg works

8  for --

9        THE COURT:  Okay.

10        MR. NELSON:  -- and I provided notice to the

11  Court that I did so.

12        THE COURT:  Mm-hmm.

13        MR. NELSON:  And they went certified mail so I

14  know that they received them because they have made

15  comments about the interrogatories that were included in

16  that package information.

17        THE COURT:  Were they amended --

18        MR. NELSON:  And --

19        THE COURT:  Were they amended?  Or let me see if

20  I have them.

21     And so if you have them, if I have them, I'm not

22  sure why you wouldn't have them.

23     So many things have been filed in this case.  I

24  have the parties' initial disclosures and I have

25  plaintiffs' initial disclosures that are -- yeah, I have

1  them.

2        And so maybe you should get with Mr. Kellogg,

3  Mr. Brand, to see if you have them.

4        Let's see, I don't know if there is -- no,

5  I -- these are dated July 27th.  Should there be some

6  additional ones?

7          MR. BRAND:  Are those the plaintiffs' or the

8  defendant's, Your Honor?

9          THE COURT:  They are the defendant's and it's

10  about 33 pages of them.  And it is dated July 26th.

11        So I have his first initial disclosures here.  I'm

12  looking at them.

13        Okay.  So check with Mr. Kellogg and see, you

14  know, if he can provide those to you and that way you

15  have them.

16        Anything else, Mr. Nelson, about the topics that

17  we have discussed and anything --

18          MR. NELSON:  Yes, Your Honor.

19          THE COURT:  -- anything more to the case?

20          MR. NELSON:  I would like permission to file the

21  surreply against their motion to leave to attach my

22  father.

23          THE COURT:  Okay.  The second amended complaint?

24          MR. NELSON:  Yes.

25          THE COURT:  I don't -- I have got enough

```
 1  information to -- I don't -- denied.  I don't see any

 2  reason that you need to do that.  Okay?

 3        So I'm going to strike that because you didn't get

 4  -- for one thing, you didn't -- you know, I'm just

 5  not -- I don't think I need that.  I think I have got

 6  enough information to be able to decide this issue

 7  because the 24 motions that you folks -- or 24 pleadings,

 8  not motions -- the 24 pleadings that you filed since that

 9  conference and our last conference and this one, it

10  should provide me with more than enough of anything that

11  I need.

12        So denied.

13        Anything else?

14        All right.  We'll be in recess.

15          MR. NELSON:  Um --

16          THE COURT:  Go ahead.

17          MR. NELSON:  I would like permission to file a

18  Rule 5 to the appellate court.  I -- I really need to

19  have some way of communicating with the plaintiffs and

20  Mr. Brand has admitted that he is having regular

21  communication with the prosecutor in Oklahoma.  I cannot

22  possibly put myself in jail by sending documents to the

23  plaintiffs, so I would like permission to file a Rule 5

24  appellate procedure to the Tenth Circuit Court of

25  Appeals.
```

1          THE COURT:  Denied.

2          MR. BRAND:  Your Honor, Mr. Brand did not make

3  that admission.

4          THE COURT:  Again, I mean we have plowed that

5  ground.  We have been over that.  And I just,

6  Mr. -- that's not the way I review that and so I think

7  that you can communicate with Mr. Kellogg.  I think you

8  can respond to discovery appropriately and I think that

9  this case could move forward if you folks would just you

10  know keep this stuff on a legal basis as opposed a

11  personal basis.

12          And that goes for both sides.

13          So Mr. Kellogg was the person we thought would be

14  the go-between that we all agreed on at the beginning of

15  this case who could exchange the information and so I'm

16  not inclined -- I see no reason to change that.  I see no

17  reason at all to change that.  So anything else other

18  than that is -- I'm not necessarily in favor of.  I'm not

19  interested in it.

20          So nothing else, we'll be adjourned.

21          MR. NELSON:  So I'm not allowed to go to the

22  Tenth Circuit Court of Appeals to request review?

23          THE COURT:  We are -- we are adjourned.

24          I already told you.  I already mentioned that.  So

25  we're -- this Court is adjourned.

1       Turn it off.

2          MR. BRAND:  Thank you, Your Honor.

3          (Proceedings conclude at 9:56 a.m.)

4       **********************************************

5                  C E R T I F I C A T E

6

7       I, Jana L. McKinney, certified shorthand reporter,

8   certify that the foregoing is a correct transcript from

9   the official electronic sound recording of the

10  proceedings in the above-entitled matter.

11      Dated this 6th day of January, 2023.

12

13

14                  s/ Jana L. McKinney_____

15                  Jana L. McKinney
                    United States Court Reporter
16

17

18

19

20

21

22

23

24

25

1                            I N D E X

                                              PAGE
2

3
        REPORTER'S CERTIFICATE                        53
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25