# EXHIBIT

# "G"

# To Follow . . .

## INTERLOCUTORY APPEAL

FINRA DISCIPLINARY POSTING REGARDING Plaintiff Chad Mitchell Koehn

# Disciplinary and Other FINRA Actions

## Firm Sanctioned, Individual Sanctioned

**E1 Asset Management, Inc. (CRD #46872, Jersey City, New Jersey) and Ron Yehuda Itin (CRD #2344151, Tenafly, New Jersey)**

October 18, 2022 – A Letter of Acceptance, Waiver and Consent (AWC) was issued in which the firm was censured, ordered to pay $37,629.82, plus prejudgment interest, in restitution to customers and required to certify that its written supervisory procedures (WSPs) and supervisory system are reasonably designed to achieve compliance with FINRA Rule 2121. FINRA imposed no fine against the firm after considering, among other things, the firm's revenues and financial resources, as well as its agreement to pay full restitution plus prejudgment interest to the affected customers. Itin was fined $5,000, suspended from association with any FINRA member in any principal capacity, with the exception of activities requiring registration as a Financial and Operations Principal (FINOP), for one month and required to attend and satisfactorily complete 20 hours of continuing education concerning supervisory responsibilities. Without admitting or denying the findings, the firm and Itin consented to the sanctions and to the entry of findings that they failed to reasonably supervise the fairness of mark-ups the firm charged to retail customers through a registered representative. The findings stated that the firm's WSPs, which Itin approved, designated Itin as the principal responsible for reviewing the reasonableness of mark-ups on customer trades. The WSPs identified factors relevant to that review, including the price and availability of the security and the expense of executing and filling the order. In practice, however, the firm and Itin reviewed mark-ups primarily to determine whether they exceeded the five percent guideline. The firm and Itin did not reasonably consider the factors listed in the firm's WSPs, such as the type, availability and price of the security being sold and the firm's expense in executing and filling the order. As a result, the firm and Itin failed to identify that the firm charged mark-ups that were not fair and reasonable on corporate bond transactions, when trading for its own account. For such transactions, the firm charged mark-ups of 3.75 percent even though the underlying security was widely available, and the firm incurred minimal expenses executing and filling the customer orders. Moreover, the firm and Itin reviewed monthly reports from FINRA's Trade Reporting and Compliance Engine (TRACE), which compared mark-ups charged by the firm on particular trades with mark-ups charged by other broker-dealers for similar products. Nonetheless, the firm and Itin did not take any steps to investigate whether the mark-ups charged by the firm were fair or reasonable. Collectively, these mark-ups caused customers to pay $37,629.82 in excessive fees.

The suspension is in effect from November 21, 2022, through December 20, 2022. (FINRA Case #2018059121201)

## Reported for December 2022

FINRA has taken disciplinary actions against the following firms and individuals for violations of FINRA rules; federal securities laws, rules and regulations; and the rules of the Municipal Securities Rulemaking Board (MSRB).

### Search for FINRA Disciplinary Actions

All formal disciplinary actions are made available through a publicly accessible online search tool called FINRA Disciplinary Actions Online shortly after they are finalized.

Visit www.finra.org/disciplinaryactions to search for cases using key words or phrases, specified date ranges or other criteria.



## Firms Fined

**UBS Securities LLC (CRD #7654, New York, New York)**
October 3, 2022 – An AWC was issued in which the firm was censured and fined
a total of $520,000, of which $173,334 is payable to FINRA. Without admitting
or denying the findings, the firm consented to the sanctions and to the entry of
findings that it included securities positions of a foreign affiliate when calculating
the net positions of independent trading units. The findings stated that the firm
organized the accounts used by its traders into aggregation units (AGUs) based
on trading strategy and without regard to whether the accounts were owned by a
foreign affiliate. The firm automatically netted the securities positions in the trading
accounts of each AGU—including the foreign affiliate accounts—to calculate the
AGU net position, which it then used to determine whether the AGU's sale orders
should be marked long or short. However, the foreign affiliate's positions should
not have been included in the firm's AGU net positions because it was not subject to
examination by the Securities and Exchange Commission (SEC). As a result, the firm
did not accurately calculate the net positions of, or assess long and short sales by,
four AGUs. The findings also stated that the firm's supervisory system and written
procedures were not reasonably designed to achieve compliance with Rule 200(f)
of Regulation SHO of the Securities Exchange Act of 1934 (Exchange Act). The firm's
supervisory system, including its written procedures, failed to require the exclusion
of foreign affiliate accounts used by the firm's traders from the net positions of
its AGUs. The firm determined, based on prior FINRA disciplinary actions involving
improper inclusion of certain affiliate accounts in AGUs' net positions, that it needed
to remove the foreign affiliate accounts from its AGUs. The firm failed, however,
to take reasonable steps to implement these changes in a timely manner. The
firm began to work on a remediation plan for removing affiliate accounts from its
AGUs' net positions. However, the firm improperly added another foreign affiliate
account to its AGUs. Only after FINRA raised the issue directly with the firm did it
remove the foreign affiliate accounts from its AGUs' net positions. The firm removed
the accounts over the course of eight months. The firm provided AGU supervisors
with separate monthly reports listing AGU accounts and non-AGU foreign affiliate
accounts and instructed them to review the reports as part of their monthly AGU
reviews. However, the firm failed to update its written procedures to prohibit the
inclusion of foreign affiliate accounts in the net positions of its AGUs and to require
supervisors to verify that only firm accounts were included in AGUs. (**FINRA Case
#2017053779201**)

**Scotia Capital (USA) Inc. (CRD #2739, New York, New York)**
October 12, 2022 – An AWC was issued in which the firm was censured and fined
$300,000. Without admitting or denying the findings, the firm consented to the
sanctions and to the entry of findings that it overreported its short interest positions.

The findings stated that the firm erroneously included non-reportable short positions reflected in omnibus accounts in the firm's short interest reports. The short positions in these accounts were not reportable because they did not result from "short sales" as defined in Rule 200(a) of Regulation SHO of the Exchange Act and were not transactions that were marked long due to the firm's or the customer's net long position at the time of the transaction. The findings also stated that the firm failed to have a reasonably designed supervisory system for accurate short interest reports. The firm's supervisory system did not include a process to determine whether its short interest report included non-reportable short positions and did not have a reasonable reconciliation process to identify potential inaccurate reporting. The firm has since implemented new processes to its short interest reporting and supervision to remediate these issues. (FINRA Case #2019061945201)

**Dealerweb Inc. (CRD #19662, Jersey City, New Jersey)**
October 17, 2022 – An AWC was issued in which the firm was censured and fined $100,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it inaccurately reported transactions in TRACE-eligible securities to TRACE without the required "No Remuneration" (NR) indicator. The findings stated that the firm operated an alternative trading system (ATS) and a voice interdealer trading desk that its customers paid a non-transaction-based subscription fee to trade on. This meant that the price of the transactions on the ATS or trading desk did not include a commission, mark-up, or mark-down. Because the majority of the firm's subscribers were other broker-dealers, most of the firm's transactions were subject to the inter-dealer exception to the NR indicator requirement. In transactions with non-broker-dealer (e.g., bank) customers, however, the firm was required, but failed, to report the transactions using the NR indicator. The firm was unaware of the NR indicator reporting issues until FINRA notified it. The findings also stated that the firm's supervisory system was not reasonably designed to achieve compliance with its transaction reporting obligations for TRACE-eligible securities. The firm failed to establish and maintain a supervisory system, including WSPs, reasonably designed to achieve compliance with FINRA Rule 6730(d). Although the firm performed supervisory reviews of its TRACE reporting to identify late reported transactions, its supervision was not reasonable because it did not have a process to check the accuracy of transaction information reported, including the NR indicator and other modifiers and indicators required by FINRA. Ultimately, the firm implemented a new process that included a daily review for accurate reporting of transaction information, including the NR indicator. Subsequently, the firm updated its WSPs to reflect that review. (FINRA Case #2020067548401)

**Janney Montgomery Scott LLC (CRD #463, Philadelphia, Pennsylvania)**
October 19, 2022 – An AWC was issued in which the firm was censured, fined $100,000 and ordered to pay $145,019, plus prejudgment interest, in restitution to customers. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it failed to reasonably supervise registered representatives who recommended that their customers invest an unsuitably high percentage of their assets in energy-sector securities. The findings stated that the representatives recommended that customers purchase additional energy-sector securities even after their accounts were already concentrated in that sector. Because these investments focused on the energy sector, their value was sensitive to shifts in oil and gas prices and subjected investors with concentrated positions to a high risk of loss if oil and gas prices declined. The firm used automated alerts to identify trading activity that warranted further review by the firm, including alerts that identified accounts whose holdings were concentrated in a particular market sector. Although trades recommended in the customers' accounts generated many such alerts, the firm failed to take reasonable steps to understand the potential risks and rewards associated with these recommendations or to determine whether the recommendations were suitable in light of these customers' investment profiles. Moreover, the firm did not prevent the representatives from recommending that the customers further concentrate their accounts in securities in the energy sector. As a result, the customers suffered realized losses on certain positions even after accounting for the income the investments generated. The firm has already paid restitution to eight of the 11 customers who suffered losses. The amount of ordered restitution reflects the losses incurred by the customers to whom the firm has not yet paid restitution. (FINRA Case #2016051156903)

**Raymond James & Associates, Inc. (CRD #705, St. Petersburg, Florida) and Raymond James Financial Services, Inc. (CRD #6694, St. Petersburg, Florida)**
October 20, 2022 – An AWC was issued in which Raymond James & Associates, Inc. was censured and fined $300,000 and Raymond James Financial Services, Inc. (RJFS) was censured, fined $800,000, ordered to pay $48,574.79, plus interest, in restitution to customers and required to certify that it has completed its review of its policies, procedures, and systems regarding monitoring of electronic communications and they are reasonably designed to achieve compliance with applicable securities laws, regulations and FINRA rules. Without admitting or denying the findings, the firms consented to the sanctions and to the entry of findings that they failed to have a qualified and registered principal authorize changes to the account name or designation on equity orders. The findings stated that the unapproved changes resulted in customer losses for a customer in the approximate amount of $100,000. A former registered representative at RJFS changed the account designation on certain orders from (or to) the customer to (or from) his own account without principal review. After its self-report, the firms hired a third-party consultant to

conduct a backward-looking review of transactions over a multi-year period. That review resulted in RJFS identifying, and subsequently reimbursing, the losses identified herein. The firms have since designated registered principals on the trade desks to review and authorize changes to account name and designation on orders. The findings also stated that RJFS failed to reasonably supervise registered representatives who engaged in a scheme to overcharge commissions to institutional customers that they serviced as part of a team. The representatives overcharged institutional customers by calling the trading desk after placing orders and instructing the trading desk to increase the commission being charged prior to execution and/or while the orders were being worked by the desk. To conceal their misconduct from their customers, the representatives created their own trade confirmations that they then emailed to customers. These confirmations contained misleading information, including understating commissions. In total, the representatives overcharged customers approximately $2.4 million. Most of the customers were previously paid back and additional restitution is being ordered in this AWC. The scheme ended when RJFS flagged and reviewed an unusually large order for one of the customers. Furthermore, RJFS' email surveillance system electronically flagged for manual review hundreds of emails sent to customers by the representatives that contained the misleading trade confirmations as attachments. RJFS' communications surveillance team reviewed these flagged emails but failed to examine the attached confirmations. Had the team done so, it would have discovered that the representatives were misrepresenting commissions charged on trades, as well as misstating the share price. In addition, during a branch inspection, RJFS compliance staff identified and escalated the representative-created confirmations, but no one at the firm checked the confirmations for accuracy. (**FINRA Case #2018058633501**)

**BNP Paribas Securities Corp. (CRD #15794, New York, New York)**
October 24, 2022 – An AWC was issued in which the firm was censured and fined $375,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it over-reported transactions in U.S. Treasury securities to TRACE. The findings stated that the over-reporting occurred because the firm incorrectly relied upon a data field that did not contain full and complete firm affiliated entity information. As a result, certain internal trades within the firm and transfers between affiliates' portfolios where no change in beneficial ownership occurred were erroneously reported to TRACE. The findings also stated that the firm incorrectly appended the ".S" modifier, which is applied when a transaction was part of a series of transactions and may not have been priced based on the current market, to Treasury transactions it reported to TRACE. The inaccurate reporting resulted because the firm's reporting logic did not interpret the data correctly. The findings also included that the firm's supervisory system was not reasonably designed to achieve compliance with FINRA rules regarding

the accuracy of TRACE reporting. The firm had no procedures designed to achieve compliance with TRACE reporting requirements concerning the over-reporting of transactions with affiliates or the accurate use of the ".S" modifier. None of the reviews or exception reports used by the firm addressed either over-reporting of transactions to affiliates or the accurate use of the ".S" modifier. Accordingly, the firm's supervisory system was not reasonably designed to achieve compliance with its transaction reporting obligations for TRACE-eligible treasury transactions. (**FINRA Case #2019063673101**)

**RBC Capital Markets, LLC (CRD #31194, New York, New York)**
October 31, 2022 – An AWC was issued in which the firm was censured and fined $360,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it failed to have in place a supervisory system, including WSPs, reasonably designed to timely review paper statements from employees' outside brokerage accounts. The findings stated that the firm had no prescribed timeframe to track, reconcile and review statements. Due to the manual nature of the paper statement review process, personnel turnover, and outdated technology systems, the firm had a backlog of approximately 8,950 unreviewed account statements. In addition, the firm manually tracked receipt of paper statements, had no system in place to notify the firm or employees that statements were missing, and had no procedure for following up on missing statements. In some instances, the firm did not receive paper statements for review. Furthermore, the firm's process to review paper statements was not reasonably designed. As a result, the firm failed to timely or reasonably monitor thousands of employee outside brokerage account statements for compliance with the firm's trading restrictions, including pre-clearance, holding period, and watch and restricted list policies. (**FINRA Case #2020067000501**)

## Individuals Barred

**Timothy Patrick Higgins (CRD #2282547, Bethpage, New York)**
October 17, 2022 – An Office of Hearing Officers (OHO) decision became final in which Higgins was barred from association with any FINRA member in all capacities. The sanction was based on the findings that Higgins failed to appear and provide testimony requested by FINRA in connection with an investigation that it initiated after finding evidence indicating that Higgins may have traded excessively in customer accounts. The findings stated that the information FINRA sought to elicit from Higgins was important and necessary to the investigation and his failure to testify stymied the investigation. (**FINRA Case #2018056490303**)

**Mitchell Scott Biernick (CRD #2690172, East Northport, New York)**
October 18, 2022 – An AWC was issued in which Biernick was barred from association with any FINRA member in all capacities. Without admitting or denying the findings, Biernick consented to the sanction and to the entry of findings that he refused to appear for on-the-record testimony requested by FINRA in connection with its investigation into the suitability of certain securities transactions he recommended to his customers while he was associated with his member firm. (FINRA Case #2019060645002)

**Richard Marion Blosser (CRD #1676712, Thousand Oaks, California)**
October 19, 2022 – An AWC was issued in which Blosser was barred from association with any FINRA member in all capacities. Without admitting or denying the findings, Blosser consented to the sanction and to the entry of findings that he refused to appear for on-the-record testimony requested by FINRA in connection with its investigation into his trading in customer accounts, including purchasing and selling preferred stock and closed-end funds, and his member firm's supervision of such activity. (FINRA Case #2019061442701)

**Carlos Leston (CRD #3021614, Maywood, New Jersey)**
October 19, 2022 – An AWC was issued in which Leston was barred from association with any FINRA member in all capacities. Without admitting or denying the findings, Leston consented to the sanction and to the entry of findings that he refused to provide information and documents requested by FINRA. The findings stated that this matter originated from a tip to FINRA. (FINRA Case #2022076103601)

**Keith Todd Ashley (CRD #4096004, Allen, Texas)**
October 21, 2022 – An Order Accepting Offer of Settlement was issued in which Ashley was barred from association with any FINRA member in all capacities. Without admitting or denying the allegations, Ashley consented to the sanction and to the entry of findings that he failed to respond to FINRA's requests for information made in connection with its investigation into, among other things, the circumstances of his termination from his member firm. The findings stated that Ashley's member firm filed a Uniform Termination Notice for Securities Industry Registration (Form U5) stating that it had terminated him for cause. Subsequently, Ashley was indicted by a federal grand jury on six counts of wire fraud, and he was arrested and detained in the Bowie County Correctional Center in Texarkana, Texas pending trial. Thereafter, FINRA began investigating the allegations set forth in the federal indictment. (FINRA Case #2020068470002)

## Individuals Suspended

**Stacee Lei Bradley (CRD #7320122, Queensbury, New York)**
October 4, 2022 – An AWC was issued in which Bradley was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Bradley consented to the sanctions and to the entry of findings that she willfully failed to disclose on her Uniform Application for Securities Industry Registration or Transfer (Form U4) that she had been charged with felonies. The findings stated that Bradley was charged with two felonies for grand larceny and falsifying business records. After learning of the charges, Bradley filed a Form U4 for the purpose of registering with FINRA through an association with her member firm, in which she falsely responded to a question regarding whether she had ever been charged with any felony. As a result, Bradley filed inaccurate and misleading information with FINRA. Bradley did not disclose the felony charges until several years later.

The suspension is in effect from October 17, 2022, through April 16, 2023. (**FINRA Case #2021072713001**)

**Robert Paul Barberis (CRD #1772762, Scotia, New York)**
October 6, 2022 – An AWC was issued in which Barberis was fined $2,500 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Barberis consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by changing the representative code for trades, which caused the trade confirmations to show an inaccurate representative code. The findings stated that Barberis entered into an agreement through which he agreed to service certain customer accounts, including executing trades for those accounts, under joint representative codes that he shared with a retired representative. The agreement set forth what percentages of the commissions Barberis and the retired representative would earn on trades placed using the joint representative codes. Although the firm's system correctly prepopulated the trades with the applicable joint representative codes, Barberis entered the transactions under his personal representative code. Barberis negligently failed to verify whether the transactions at issue were subject to the joint production agreement. As a result, the firm's trade confirmations inaccurately reflected Barberis' personal representative code instead of the joint representative code that Barberis shared with the retired representative. Barberis' actions resulted in his receiving higher commissions from the trades than what he was entitled to receive pursuant to the agreement. The firm has since reimbursed the retired representative.

The suspension was in effect from November 7, 2022, through December 6, 2022. (**FINRA Case #2021071531701**)

**Charles Vincent Malico (CRD #1507282, Centerport, New York)**
October 11, 2022 – An AWC was issued in which Malico was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Malico is not required to pay restitution to the customer because his member firm has already compensated the customer in connection with the settlement of an arbitration claim filed by the customer. Without admitting or denying the findings, Malico consented to the sanctions and to the entry of findings that he willfully violated the Best Interest Obligation under Rule 15l-1 of the Exchange Act (Reg BI) by recommending a series of transactions in a retail customer's account that was excessive in light of the customer's investment profile. The findings stated that in doing so, Malico placed his and his firm's interests ahead of the interests of the customer. The trades that Malico recommended in the customer's account resulted in an annualized cost-to-equity ratio exceeding 158 percent—meaning that the customer's account would have had to grow by more than 158 percent annually just to break even. Malico's recommendations caused the customer to pay more than $54,000 in commissions and other trading costs and made it virtually impossible for the customer to realize a profit. In fact, the customer lost more than $17,500 as a result of Malico's recommendations.

The suspension is in effect from October 17, 2022, through April 16, 2023. (**FINRA Case #2021069405501**)

**Amit Kumar Bhatia (CRD #5305020, Laredo, Texas)**
October 12, 2022 – An AWC was issued in which Bhatia was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Bhatia consented to the sanctions and to the entry of findings that he executed and issued purported letters of credit and an amendment for each of these purported letters of credit for a customer, totaling approximately $3 million in credit, without his member firm's knowledge or authorization. The findings stated that the customer, a former senior executive of the firm's investment banking division, asked Bhatia to sign the letters of credit in support of his business activities. The customer told Bhatia that he could sign the documents in his capacity as senior vice president in the investment banking division. However, the firm did not provide letters of credit to firm customers and Bhatia never confirmed with the firm that he had its authorization to sign letters of credit on its behalf. The customer provided these letters of credit and amendments to a lender. When the firm discovered the unauthorized letters of credit, it advised the customer that the letters of credit he had provided to the lender were not valid. The firm was never required to meet any obligations under the purported letters of credit. Bhatia did not receive any compensation in exchange for signing the purported letters of credit.

The suspension is in effect from October 17, 2022, through January 16, 2023. (**FINRA Case #2020068346501**)

**Steven Albert Bellino (CRD #1278531, Huntington Station, New York)**
October 13, 2022 – An AWC was issued in which Bellino was assessed a deferred fine of $7,500 and suspended from association with any FINRA member in all capacities for 14 months. Without admitting or denying the findings, Bellino consented to the sanctions and to the entry of findings that he participated in a private securities transaction without providing prior written notice to, and receiving approval from, his member firm. The findings stated that Bellino solicited a family member to invest $750,000 in a privately held company with which he was affiliated in exchange for a 50 percent ownership interest. In connection with this investment, Bellino met with the company's sole owner, a customer at the firm, on behalf of the family member and provided information to the family member about the company, including advising the family member on the amount of money to invest and the ownership interest that the family member would receive in exchange for his investment. Bellino facilitated the investment by effectuating wire transfers totaling $750,000 from the family member to the company to purchase 50 percent ownership shares in the company. Bellino did not notify or receive prior written approval from the firm to participate in the family member's investment. The findings also stated the Bellino engaged in an outside business activity (OBA) without providing prior written notice to, or seeking approval from, his firm prior to doing so. Bellino operated the company with its owner by opening commodities trading accounts to conduct trades, providing trading and financial consulting services, and effectuating trades in gold futures and physical gold investments, commodities, and foreign currencies on behalf of the company. Bellino also traveled to metal refineries on behalf of the company to establish trading relationships for which he received expense reimbursement and $10,000 in compensation from the company. In addition, Bellino falsely attested on an annual compliance questionnaire that his previous OBA disclosures submitted to the firm, which stated that he did not participate in any OBAs, were accurate.

The suspension is in effect from October 17, 2022, through December 16, 2023. (FINRA Case #2020068564101)

**Efrain Balderrama Trujillo (CRD #3106482, West Hills, California)**
October 14, 2022 – An AWC was issued in which Trujillo was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for eight months. Without admitting or denying the findings, Trujillo consented to the sanctions and to the entry of findings that he borrowed approximately $335,000 from customers of his member firm without providing prior written notice to, or obtaining written approval from, the firm. The findings stated that the customers were retail customers who were not immediate family members of Trujillo or in the business of lending money. The amounts of the loans ranged from $5,000 to $50,000 and Trujillo primarily used the funds to pay for personal expenses. Although Trujillo

signed promissory notes memorializing the terms, including repayment schedules, for seven of the 15 loans, he did not provide the customers with promissory notes or repayment schedules for the remaining loans. To date, Trujillo has repaid nine of the loans and he is continuing to repay the remaining loans. In addition, Trujillo falsely affirmed on compliance questionnaires that he had never received a loan from his customers.

The suspension is in effect from October 17, 2022, through June 16, 2023. (FINRA Case #2021072406801)

**Terry Tzagarakis (CRD #2796055, Bay Ridge, New York)**
October 14, 2022 – An AWC was issued in which Tzagarakis was assessed a deferred fine of $10,000, suspended from association with any FINRA member in all capacities for 12 months and ordered to pay $246,780, plus interest, in deferred restitution to customers. Without admitting or denying the findings, Tzagarakis consented to the sanctions and to the entry of findings that he excessively traded in customer accounts. The findings stated that Tzagarakis engaged in quantitatively unsuitable trading. Tzagarakis recommended high frequency trading in the customer accounts and his customers routinely followed his recommendations. As a result, Tzagarakis exercised de facto control over the customers' accounts. Tzagarakis' trading resulted in high turnover rates ranging from 17.3 to 33.4, and cost-to-equity ratios ranging from 67 percent to 175 percent. As a result of Tzagarakis' excessive trading, the customers suffered collective realized losses of $842,240, while paying total trading costs of $278,964, including commissions of $246,780.

The suspension is in effect from October 17, 2022, through October 16, 2023. (FINRA Case #2018056490305)

**Mihir Jaimini Patel (CRD #5000904, Pittstown, New Jersey)**
October 17, 2022 – An AWC was issued in which Patel was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for four months. Without admitting or denying the findings, Patel consented to the sanctions and to the entry of findings that he inaccurately recorded (primarily by failing to update) daily marks on corporate bonds in his proprietary trading book, thereby overstating the value of his portfolio ultimately by more than $2.6 million, and as a result, caused his member firm to maintain inaccurate books and records. The findings stated that Patel was responsible for managing a trading book with a nominal value of approximately $20 million. As part of his duties, Patel was responsible for accurately marking to market each of the corporate bonds in his trading book on a daily basis. Volatile market conditions contributed to a decline in the value of various positions in Patel's book, particularly certain short positions in the energy sector. At that time, Patel largely stopped updating his

marks on certain bonds to accurately reflect current fair market values and, to a lesser extent, he updated his marks at incorrect valuations. Patel's discrepant marks generally undervalued the current fair market valuations of bonds he was short and overvalued the current fair market valuations of bonds he was long, at times substantially understating his trading losses on short bond positions by hundreds of thousands of dollars. Patel caused the firm to incorrectly compute its net capital and thus it filed inaccurate monthly Financial and Operational Combined Uniform Single (FOCUS) reports. Patel obtained no renumeration or other financial gain as a result of the inaccurate marks.

The suspension is in effect from October 17, 2022, through February 16, 2023. (**FINRA Case #2020068495401**)

**Robert Shane Sevcik (**CRD #5597558**, Medford, Oregon)**
October 18, 2022 – An AWC was issued in which Sevcik was fined $2,500 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Sevcik consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by changing the representative code for trades, which caused the trade confirmations to show an inaccurate representative code. The findings stated that Sevcik entered into an agreement with a retired representative through which he agreed to service certain customer accounts, including executing trades for those accounts, under a joint representative code that he shared with the retired representative. Sevcik also entered into a separate agreement with another retired representative through which he agreed to service additional customer accounts, including executing trades for those accounts, under a joint representative code that he shared with the other retired representative. Each agreement set forth what percentages of the commissions each representative would earn on trades placed using the applicable joint representative code. Although the firm's system correctly prepopulated the trades with the applicable joint representative codes, Sevcik entered the transactions under different representative codes through which he received a higher percentage of commissions than what he was entitled to receive pursuant to the agreements. Sevcik negligently failed to verify whether the transactions at issue were subject to his agreements with the retired representatives. As a result, the firm's trade confirmations inaccurately reflected Sevcik's personal representative code or another representative code instead of the joint representative codes that Sevcik shared with the retired representatives. The firm has since reimbursed the retired representatives.

The suspension was in effect from November 7, 2022, through December 6, 2022. (**FINRA Case #2021072096101**)

**Chad Mitchell Koehn (CRD #2216169, Salina, Kansas)**
October 21, 2022 – An AWC was issued in which Koehn was assessed a deferred fine of $10,000 and suspended from association with any FINRA member in all capacities for one year. Without admitting or denying the findings, Koehn consented to the sanctions and to the entry of findings that he participated in private securities transactions without providing written notice to, or receiving prior approval from, his member firm. The findings stated that these transactions involved investments by at least 59 individuals in a company that purported to own software development and blockchain technology businesses. Koehn discussed the private placement offering of the company's common stock with the individuals, told them that he intended to invest in the company's private placement, introduced the individuals to the company's founder, and invited the individuals to meetings that Koehn hosted, where the founder delivered presentations regarding the company's business and the private placement. Subsequently, the individuals, approximately 34 of whom were firm customers, invested approximately $1,475,000 in the company's stock. Koehn did not receive selling compensation.

The suspension is in effect from November 7, 2022, through November 6, 2023. (FINRA Case #2021069470101)

**Stephen James Sullivan (CRD #3123249, Massapequa Park, New York)**
October 21, 2022 – An AWC was issued in which Sullivan was fined $10,000, suspended from association with any FINRA member in all capacities for nine months and ordered to pay $49,696.46, plus interest, in restitution to customers. Without admitting or denying the findings, Sullivan consented to the sanctions and to the entry of findings that he engaged in quantitatively unsuitable trading in customer accounts. The findings stated that Sullivan recommended a pattern of high-cost, high-frequency, in-and-out trading in customers' accounts. Sullivan's customers routinely followed his recommendations and, as a result, he exercised de facto control over the customers' accounts. Sullivan's trading resulted in annualized turnover rates ranging from 12.93 to 30.4 and cost-to-equity ratios ranging from 42.61 percent to 135.11 percent. As a result, the customers suffered collective realized losses of $72,476, while paying total trading costs of $49,696, including commissions of $39,996.

The suspension is in effect from November 7, 2022, through August 6, 2023. (FINRA Case #2019061952601)

**Deborah Alonso (CRD #7376473, Miami, Florida)**
October 24, 2022 – An AWC was issued in which Alonso was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for 18 months. Without admitting or denying the findings, Alonso consented to the

sanctions and to the entry of findings that she had access to unauthorized materials while taking the General Securities Representative (Series 7) examination. The findings stated that prior to the examination, Alonso attested that she read and would abide by the Rules of Conduct for representative and principal examinations, which, among other things, require candidates to store all personal items in the locker provided by the test vendor and prohibit accessing, using, or attempting to use any personal items, including notes or study materials, during the examination. However, during an unscheduled break, Alonso had access to study materials that she left in the restroom prior to taking the examination.

The suspension is in effect from November 7, 2022, through May 6, 2024. (**FINRA Case #2021073484401**)

**Dennis David Karjala (CRD #5918770, Gig Harbor, Washington)**
October 24, 2022 – An AWC was issued in which Karjala was assessed a deferred fine of $10,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Karjala consented to the sanctions and to the entry of findings that he provided a guarantee against loss to a customer of his member firm. The findings stated that Karjala's customer made an inquiry via text message about a mutual fund investment Karjala had recommended. In his response, which Karjala sent to the customer via text message using his personal cell phone, he stated that he would give the customer money to guarantee against any future losses in the investment. The findings also stated that Karjala sent the customer text messages that violated the content standards for registered representatives' communications with the public. Karjala stated that a mutual fund in which the customer invested charged only an upfront fee, rather than any additional fees, even though the mutual fund charged ongoing fees. Karjala also stated that the customer already lost 30 percent by holding cash, without providing a basis for calculation. In addition, Karjala stated that he was certain the customer would make plenty of money before retirement and that the customer's investment should double. These statements were false, exaggerated, unwarranted, promissory and/or misleading. The findings also included that Karjala caused his firm to maintain incomplete books and records. Karjala exchanged text messages related to securities business with the customer using his personal cell phone and outside of any firm-approved application. Karjala did not provide copies of these communications to the firm. As a result, the firm did not capture or preserve these messages.

The suspension is in effect from November 7, 2022, through February 6, 2023. (**FINRA Case #2021072708801**)

**Robert Louis Takacs (CRD #2954611, Johns Creek, Georgia)**
October 24, 2022 – An AWC was issued in which Takacs was fined $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Takacs consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by falsifying the representative code for trades in the firm's order entry system, causing the firm's trade confirmations to show an inaccurate representative code. The findings stated that Takacs entered into agreements through which he agreed to service certain customer accounts, including executing trades for those accounts, under joint representative codes that he shared with another registered representative, a senior member of his team. Each agreement set forth the percentages of the commissions that each representative would earn on trades placed using the applicable joint representative code. Although the firm's system correctly prepopulated the trades with the applicable joint representative code, Takacs changed the code for the trades to his personal representative code or another joint representative code. As a result, the firm's trade confirmations for the trades reflected an inaccurate representative code and Takacs received a higher percentage of commissions than what he was entitled to receive pursuant to the joint production agreements. Takacs did not ask the other representative whether he could change the representative code on the trades at issue prior to each trade. Rather, Takacs mistakenly believed that the other representative had previously agreed that he could change the representative codes so that Takacs would receive higher percentages of commissions than what was set forth in the joint production agreements. The firm has since paid restitution of approximately $63,000 to the other representative, which is the approximate amount of additional commissions Takacs received as a result of changing the representative code on the trades.

The suspension is in effect from November 21, 2022, through May 20, 2023. (FINRA Case #2020065354801)

**Heather S. Skipper (CRD #2126799, Kenhorst, Pennsylvania)**
October 25, 2022 – An AWC was issued in which Skipper was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Skipper consented to the sanctions and to the entry of findings that she forged the electronic signature of her supervisor on commission adjustment letters, reflecting changes to representative codes on customers' annuity accounts, by either copying and pasting the supervisor's electronic signature or signing the supervisor's name electronically. The findings stated that Skipper then caused the letters to be transmitted to the annuity carriers. The supervisor did not give Skipper prior permission to sign their name. In addition, Skipper forged the electronic signature of another supervisor on an internal document used to verify customer information. A customer had failed to

provide certain information on a form designating the beneficiary of the customer's individual retirement account (IRA) at Skipper's member firm. After obtaining the missing information from the customer, Skipper completed a Document Verification Form that the firm required to be signed by a qualified supervisor. Rather than obtaining a supervisor's signature, Skipper affixed a scanned, electronic copy of the other supervisor's signature on the form and submitted it to the firm for processing. The firm rejected the form from processing because Skipper had neglected to sign her name to the form as the submitter. The other supervisor did not give Skipper prior permission to sign their name.

The suspension is in effect from November 7, 2022, through May 6, 2023. (**FINRA Case #2021073064901**)

**Trent J. Davis (CRD #5523922, Lehi, Utah)**
October 26, 2022 – An AWC was issued in which Davis was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for four months. Without admitting or denying the findings, Davis consented to the sanctions and to the entry of findings that he forged documents by cutting and pasting customer signatures from documents previously signed by those customers. The findings stated that although Davis' customers did not give prior permission for the use of their signatures, they authorized the activity set forth on the forms in question. The findings also stated that by forging the documents, Davis caused his member firm to maintain inaccurate books and records.

The suspension is in effect from November 7, 2022, through March 6, 2023. (**FINRA Case #2021071333401**)

**Teresa Watkins Douberly (CRD #2477566, North Lauderdale, Florida)**
October 26, 2022 – An AWC was issued in which Douberly was assessed a deferred fine of $5,000, suspended from association with any FINRA member in any principal capacity for four months and required to attend and satisfactorily complete 20 hours of continuing education concerning supervisory responsibilities. Without admitting or denying the findings, Douberly consented to the sanctions and to the entry of findings that she failed to reasonably supervise recommendations to purchase variable interest rate structured products (VRSPs). The findings stated that Douberly was aware that registered representatives recommended VRSPs, including steepeners, to customers. Nonetheless, Douberly, as the designated principal responsible for supervising the representatives, did not take any steps to confirm whether the recommendations were suitable, such as reviewing the customers' investment objectives and risk tolerances or speaking with the customers to confirm they understood the risks of VRSPs. Nor did Douberly complete an attestation form certifying that she reviewed the recommendations and confirmed they were suitable in light of the customers' risk tolerances and investment objectives. In fact,

the recommendations were not suitable for the customers given their investment objectives and risk tolerances. The customers suffered significant realized losses as a result of their VRSP positions, even after accounting for the income they earned from the investments.

The suspension is in effect from November 7, 2022, through March 6, 2023. (**FINRA Case #2020066723301**)

**Nigel Ronald James (CRD #4490687, Huntington, New York)**
October 26, 2022 – An AWC was issued in which James was fined $5,000 and suspended from association with any FINRA member in all capacities for six months. James is not required to pay restitution because his member firm has agreed to pay as restitution the commissions and other fees charged to customers as a result of his unsuitable securities recommendations. Without admitting or denying the findings, James consented to the sanctions and to the entry of findings that he engaged in excessive and unsuitable trading in customer accounts. The findings stated that the trades that James recommended resulted in annual cost-to-equity ratios ranging from more than 21 percent to more than 45 percent and annual turnover rates ranging from nearly six to more than 14. As a result, the customers collectively had losses in their accounts of approximately $52,000 and paid $77,933.24 in commissions and fees based on the trades James recommended. James' recommendations were excessive and unsuitable in light of the customers' investment profiles.

The suspension is in effect from November 21, 2022, through May 20, 2023. (**FINRA Case #2019063821608**)

**Penny S. Morgan (CRD #2153652, Topeka, Kansas)**
October 28, 2022 – An AWC was issued in which Morgan was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Morgan consented to the sanctions and to the entry of findings that she engaged in OBAs that were outside the scope of her relationship with her member firm without providing prior written notice to the firm. The findings stated that Morgan provided services to senior firm customers in connection with the preparation of their house for sale and their transitioning to an independent-living facility. Morgan sent the customers an invoice for her services, which the customers paid. Morgan also provided services to another customer in connection with the removal of a customer's property from a duplex the customer owned and rented out to others. Morgan also sent that customer an invoice for her services, which the customer paid. Morgan did not disclose either of these business activities to the firm. On the contrary, Morgan also completed annual compliance questionnaires for the firm in which she attested that she had disclosed all of her OBAs when, in fact, she had not.

The suspension was in effect from November 7, 2022, through December 6, 2022. (**FINRA Case #2021070708401**)

**M B Schreiber (CRD #1032600, Holmdel, New Jersey)**
October 31, 2022 – An AWC was issued in which Schreiber was fined $5,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Schreiber consented to the sanctions and to the entry of findings that he exercised discretionary trading authority when he executed securities transactions in customer accounts without the customers providing prior written authorization, and without his member firm approving the accounts as discretionary. The findings stated that Schreiber caused the firm to make and preserve inaccurate and incomplete books and records. Schreiber improperly marked order tickets as "unsolicited" when in fact he had solicited them by recommending the transactions to the customers. In addition, Schreiber used his personal email address to communicate with firm customers about securities transactions in their firm accounts. Schreiber did not disclose his use of his personal email to the firm or provide the firm with copies of his electronic correspondence with the customers. Further, Schreiber falsely stated on multiple firm annual compliance questionnaires that he did not exercise discretionary authority in any customer accounts and that he did not use a personal email address for business-related communications.

The suspension is in effect from November 21, 2022, through February 20, 2023. (**FINRA Case #2020065693301**)

**Scott Graham Warnock (CRD #2764181, Clearwater, Florida)**
October 31, 2022 – An AWC was issued in which Warnock was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Warnock consented to the sanctions and to the entry of findings that he prepared and signed documents that purported to be letters of credit issued by his member firm, totaling approximately $6 million in credit, without his firm's knowledge or authorization. The findings stated that a customer asked Warnock to prepare the letters of credit to obtain financing for his business activities. Warnock's job responsibilities at the time included providing brokerage account-related services to corporate and executive customers. However, the firm did not provide letters of credit to firm customers. Warnock did not receive remuneration or otherwise profit from this conduct. The customer provided these letters of credit to lenders. When the firm discovered the unauthorized letters of credit, it advised the customer that the letters of credit he had provided to the lenders were not valid. The customer then provided alternative letters of credit to the lenders.

The suspension is in effect from November 7, 2022, through February 6, 2023. (**FINRA Case #2020068885201**)

## Complaint Filed

**FINRA issued the following complaint. Issuance of a disciplinary complaint represents FINRA's initiation of a formal proceeding in which findings as to the allegations in the complaint have not been made, and does not represent a decision as to any of the allegations contained in the complaint. Because this complaint is unadjudicated, you may wish to contact the respondent before drawing any conclusions regarding these allegations in the complaint.**

**Yoon Sik Chung (CRD #5978168, Buena Park, California)**
October 7, 2022 – Chung was named a respondent in a FINRA complaint alleging that he engaged in unethical conduct when he accepted approximately $14,000 from individuals whom he met online but never met in person or spoke to over the phone. The complaint alleges that Chung, acting at the individuals' direction, transferred most of those funds to third parties he did not know, along with additional funds totaling approximately $3,000 that he previously accepted, despite believing that the funds were proceeds of illicit activities and that he was facilitating money laundering. Chung engaged in this activity at least in part to obtain funds to pay for his personal expenses and business expenses at his member firm. (**FINRA Case #2020067734201**)

**Individuals Barred for Failure to Provide Information or Keep Information Current Pursuant to FINRA Rule 9552(h)**

**(If the bar has been vacated, the date follows the bar date.)**

**Jay Conan Dougall (CRD #4482425)**
Wilmington, North Carolina
(October 24, 2022)
FINRA Case #2021073518601

**Beth A. Landwehr (CRD #6065758)**
Hilliard, Ohio
(October 3, 2022)
FINRA Case #2022074297901

**Jamie Lemon (CRD #6839775)**
Pawtucket, Rhode Island
(October 17, 2022)
FINRA Case #2021069421302

**Linda Chih Ling Leong (CRD #2202858)**
Rancho Santa Fe, California
(October 31, 2022)
FINRA Case #2021072264101

**Michael Ryan Richie (CRD #7302281)**
Aurora, Colorado
(October 24, 2022)
FINRA Case #2022073752601

**Edward Michael Von Der Schmidt (CRD #5735379)**
New York, New York
(October 17, 2022)
FINRA Case #2022074027701

**Cedric Matthew Wade (CRD #2550876)**
Mesa, Arizona
(October 11, 2022)
FINRA Case #2021072237001

**Individuals Suspended for Failure to Provide Information or Keep Information Current Pursuant to FINRA Rule 9552(d)**

**(The date the suspension began is listed after the entry. If the suspension has been lifted, the date follows the suspension date.)**

**Albert Luis Aviles (CRD #1949853)**
New York, New York
(October 3, 2022)
FINRA Case #2018056490304

**Ruth Annma Chambers (CRD #5103433)**
Gulfport, Florida
(October 7, 2022)
FINRA Case #2022074490601

**Seymour Cohen (CRD #2007478)**
Brookville, New York
(October 7, 2022)
FINRA Case #2021073510001

**Anthony Ciro DiLullo (CRD #6088412)**
Wappingers Falls, New York
(October 7, 2022)
FINRA Case #2021072877201

**John Michael Fabiano (CRD #4576720)**
Mechanicsburg, Pennsylvania
(October 11, 2022)
FINRA Case #2020067438301

**Samuel Nicholas Heavrin (CRD #6996924)**
Arvada, Colorado
(October 17, 2022)
FINRA Case #2022073912001

Austin Michael Lazarus (CRD #7088814)
Anaheim, California
(October 17, 2022)
FINRA Case #2022073963901

Jason Brett Long (CRD #6058331)
Lafayette, Georgia
(October 11, 2022)
FINRA Case #2022074634301

Pamelia C. Owensby (CRD #2078784)
Como, Mississippi
(October 28, 2022)
FINRA Case #2021073531801

Alexandra Smith (CRD #6584319)
Saint Petersburg, Florida
(July 22, 2022 – October 11, 2022)
FINRA Case #2021072535401

---

Individuals Suspended for Failure to
Comply with an Arbitration Award
or Related Settlement or an Order of
Restitution or Settlement Providing for
Restitution Pursuant to FINRA
Rule Series 9554

(The date the suspension began is
listed after the entry. If the suspension
has been lifted, the date follows the
suspension date.)

Christ Elias Baltas (CRD #2570499)
Hicksville, New York
(October 7, 2022)
FINRA Arbitration Case #21-01716

Matthew Michael Beaver
(CRD #5592864)
St. Louis, Missouri
(May 15, 2020 – October 14, 2022)
FINRA Arbitration Case #18-00515

Seymour Cohen (CRD #2007478)
Brookville, New York
(October 31, 2022)
FINRA Arbitration Case #22-01440

James Gordon Kirschner
(CRD #1445822)
Wellington, Florida
(October 31, 2022)
FINRA Arbitration Case #21-02630

Justin Peter Lowe (CRD #3114310)
Celigny, Switzerland
(October 31, 2022)
FINRA Arbitration Case #21-00086

Keith Wakefield (CRD #3250539)
Evanston, Illinois
(October 26, 2022)
FINRA Arbitration Case #22-00910

Jamie John Worden (CRD #4637404)
Lloyd Harbor, New York
(October 7, 2022)
FINRA Arbitration Case #21-01931

## FINRA Fines UBS Securities $2.5 Million for Regulation SHO Violations and Supervisory Failures

FINRA announced that it has fined UBS Securities LLC (UBS) $2.5 million for Regulation SHO (Reg SHO) violations and supervisory failures spanning a period of nine years.

Reg SHO is intended to address concerns regarding persistent failures to deliver and potentially abusive "naked" short selling (the sale of securities that an investor does not own or has not borrowed). The rule requires firms to take affirmative action to close out "failure to deliver" positions resulting from short sales in equity securities by borrowing or purchasing the securities by the beginning of regular trading hours the day after the settlement date. Limit orders or other delayed orders do not satisfy the close-out requirement. When a firm does not close out a failure to deliver, the rule prohibits the firm from accepting additional short sale orders in the security without first borrowing or arranging to borrow the security (commonly known as the "penalty box").

FINRA found that, from 2009 to 2018, UBS did not timely close out at least 5,300 failure to deliver positions and routed or executed more than 73,000 short sales in securities with an unsatisfied close-out requirement without first borrowing or arranging to borrow the shares.

UBS's violations of Rule 204 of Reg SHO stemmed from several long-running issues, including:

▶ Using revocable volume weighted average price (VWAP) transactions or limit orders to address buy-in obligations for failures to deliver;

▶ Considering shares released from segregation in connection with customer long sales available to close out a failure to deliver; and

▶ Certain order management systems not always restricting short sales in securities with an unsatisfied close-out requirement.

From 2009 to August 2022, UBS's supervisory systems, including its written procedures, were not reasonably designed to achieve compliance with the requirements of Rule 204 of Reg SHO. Although UBS conducted annual reviews of its Rule 204 systems, it failed to identify its improper treatment of shares associated with a customer long sale. UBS also failed to detect red flags present in the firm's books and records indicating that its VWAP algorithm routed certain buy-in orders as limit orders. UBS also identified its failure to fully enforce Rule 204's "penalty box" only after a system malfunctioned.

"The short sale obligations imposed by Reg SHO afford critical protection to the markets and investors," said Jessica Hopper, Executive Vice President and Head of

FINRA's Department of Enforcement. "Effective supervision focuses on every stage of a firm's Rule 204 compliance and includes testing to confirm that systems and programming operate as intended, without unplanned consequences."

In settling this matter, UBS consented to the entry of FINRA's findings without admitting or denying the charges.

## FINRA Fines Barclays Capital Inc. $2 Million for Best Execution Violations

FINRA announced that it has fined Barclays Capital Inc. (Barclays Capital) $2 million for failing to comply with its best execution obligations in connection with its customers' electronic equity orders.

From January 2014 through February 2019, Barclays Capital owned and operated an alternative trading system known as LX. Barclays Capital routed all its customers' marketable orders to LX, prior to routing to any competing venue, if the order could be filled in LX completely or partially at the National Best Bid and Offer or better, unless customers opted out of this routing preference.

Barclays Capital failed to conduct reasonable reviews of execution quality for its customers' orders. The firm did not review price improvement data for orders routed to LX. The firm also did not review speed of execution for any of the venues to which it routed customers' orders or consider whether the firm could have obtained better execution speed from competing markets.

Barclays Capital also failed to consider alternate routing arrangements even when the firm's own data showed that fill rates in LX were inferior to fill rates at some competing venues. Specifically, the reports reviewed by the firm's Best Execution Working Group indicated that marketable orders routed to LX received lower fill rates as compared to certain competing venues. These reports showed that LX delivered a lower fill rate than the average fill rate of competing venues for every quarter from 2015 to the first quarter of 2019.

In addition, Barclays Capital's supervisory system was not reasonably designed to achieve compliance with its best execution obligations because the firm failed to reasonably review for price improvement for orders routed to LX and speed of execution for any venue. The firm's WSPs also failed to provide reasonable guidance on the factors the firm should consider in determining whether to modify its routing practices.

"FINRA continues to prioritize broker-dealers' compliance with best execution requirements when handling their customers' orders," said Jessica Hopper, Executive Vice President and Head of FINRA's Department of Enforcement. "Firms must continuously monitor their reviews of execution quality and make changes accordingly."

FINRA Rule 5310—Best Execution—requires firms to seek the most favorable terms reasonably available for their customers' orders. To meet this obligation, firms must conduct reviews to evaluate the order execution quality their customers receive under the firm's current routing arrangements, as well as the execution quality their customer orders could receive through different routing arrangements. Rule 5310 lists several factors that firms should consider when conducting these reviews, including price improvement opportunities and speed of execution.

FINRA included best execution as a topic in its 2022 and 2021 FINRA Examination and Risk Monitoring Program reports, as well as its 2020 and 2019 Annual Risk Monitoring and Examination Priorities letters.

In settling this matter, Barclays Capital consented to the entry of FINRA's findings without admitting or denying them.