## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, Inc. <u>and</u> CHAD M. KOEHN <br><br>          Plaintiffs, counter-defendants <br><br>    v. <br> Michael Nelson <br><br>          Defendant; counter-plaintiff <br> PRO-Se. | <span style="background:yellow">**DOCKET NO.:    5:22-CV-04008-JWB-TJJ**</span> <br> **CIVIL ACTION** <br><br> **NOTICE of INTERLOCUTORY APPEAL REQUEST FOR STAY** <br> **Preliminary Brief - Request of Writ of Mandamus and/or Prohibition for the Protection of US Constitutional Rights** <br><br> **[Jury Trial Demanded]** |

COMES NOW, Michael Nelson, makes "SPECIAL APPEARANCE" for the purposes of filing NOTICE and initial brief of INTERLOCUTORY APPEAL, from Orders of the District Court Judge in Order, for plain error, in ability to travel for the hearing due to restrictions, in a directly parallel criminal matter(s). I believe this notice and initial brief are filed in compliance with *FRAP 32(a)(7)(B)*. <u>I seek a STAY of this Civil proceedings until the conclusion of the parallel criminal proceedings.</u> This Court should "in accord with common practice, [] **stay the civil action until the criminal case** or the likelihood of a criminal case is **ended.**" *Wallace v. Kato, 549 U.S. 384, 393-94 (2007)*. A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], <u>however inartfully pleaded</u>, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("<u>All pleadings shall be so construed as to do substantial justice</u>"). This interlocutory appeal is to prevent further manifest injustice and apprise the Courts of misconduct.

**I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of documents 254, 255, 266, 289, 292; for plain error as I seek STAY of this matter.**

**Complications of Orders appealed** to the District Court from a US Federal Magistrate who has since recused herself, via contrite recusal and "kneecapping" see Ex. B the Federal Magistrate:

     The Plaintiffs are engaged in **"SCORCHED EARTH" litigation against an impoverished pro se, WHISTLEBLOWER having inordinately complicated their SLAPP**

**petition weaponizing the legal system through judicial abuses of processes.** This matter is further complicated by the fact the Plaintiffs have previously moved for the RECUSAL of US Federal Magistrate Judge G.E. Birzer, in a verified motion for recusal Documents 113 and 114. US Federal Magistrate Judge DENIED the verified motion for recusal in document 182. Plaintiffs next move was to add Spencer Angell, the son of the US Federal US Chamber Counsel, Samantha Parks Angell, as a material witness with knowledge of the SLAPP complaint they filed as a means of contrite recusal of the Federal Magistrate Judge Birzer. When plaintiffs filed their mandated rule 26(a), disclosures in July of 2022, Spencer Angell was in their employ SEE ATTACHED resume of Spencer James Angell, Exhibit "A", yet NOT noticed, within their Rule 26(a) disclosures [https://www.linkedin.com/in/spencer-angell/]

**ISSUES REGARDING SPENCER JAMES ANGELL:   UNCONTROVERTED FACTS:**

1.  Samantha Parks Angell is the "Chamber Counsel" of Magistrate Judge G.E. Birzer

2.  James R. Angell is the managing partner of the firm representing the plaintiffs

3.  Spencer J. Angell is the college enrolled child of Samantha and James Angell

4.  Spencer James Angell is a student at Arizona State University & has a HONOR CODE

5.  SPENCER ANGELL has PLEDGED to UPHOLD the Honor Code of ASU "**We pledge to act with integrity and honesty and to promote these values among our peers.**"

6.  Spencer James Angell has publicly disseminated a resume attached as Exhibit "A"

7.  SPENCER JAMES AGNELL WAS NOT IDENTIFIED BY PLAINTIFFS IN RULE 26(a) disclosures

8.  Spencer Angell was in employ of UCMK & Koehn when Rule 26(a) disclosures were made

9.  VERIFIED RECUSAL MOTION by CHAD MITCHELL KOEHN of Federal Magistrate was DENIED

10. Plaintiff's then added SPENCER ANGELL as a material witness, just weeks after submission of their Rule 26(a) disclosures, after their RECUSAL attempt of the Magistrate was denied

11. Magistrate Judge Birzer has entered the following in an ORDER of the Court Document 335:

    "In reviewing Plaintiffs' interrogatory answers in preparation for Defendant's argument to compel further response to be heard at the December 6, 2022 Status Conference, the Court became aware of

**an individual, related to the undersigned's chamber's staff, identified in the discovery response who Plaintiffs "believe has knowledge regarding the facts of this lawsuit."** This individual was not initially identified in any party's Rule 26(a) disclosures as a person likely to have discoverable information submitted in July 2022."

12. It is **SPENCER ANGELL** who is the "individual related to … chamber's staff, identified in the discovery response who Plaintiffs 'believe has knowledge regarding the facts of this lawsuit", per the RECUSAL Order of the Federal Magistrate, who the plaintiffs had previously sought to RECUSE in a bizarre series of events demonstrating clear misogyny.

13. Plaintiff's then claimed in Court that SPENCER ANGELL has no knowledge of the lawsuit, demonstrating clearly they are backdooring RECUSAL of a US Federal Judge

14. Attorneys for the Plaintiffs are using me as a pawn as well as SPENCER ANGELL in order to exact some sort of twisted revenge upon Samantha Parks Angell a US Federal Chambers Counsel stemming from a nasty divorce with James Ryan Angell.

15. Subpoenas for harassment settlements entered into by Koehn and UCMK which are held by James Angell separately from the law firm books were denied.

16. James Angell pays Samanatha Angell more than $10,000 per month

17. Both James Angell & Samantha Angell were aware as demonstrated by Spencer Angell's resume, Spencer Angell worked for the law firm managed by James Angell see Ex. "A"

18. Both James and Samantha Angell and plaintiffs Koehn and UCMK were aware Spencer Angell worked for Koehn and UCMK at the time Rule 26(a) disclosures were made

19. Plaintiffs have been allowed to "backdoor" a recusal of a US Federal Judge via contrite addition of Spencer Angell to a material witness list demonstrating lying under oath.

US Federal Magistrate Judge G.E. Birzer's chambers counsel Samantha Parks Angell is the former spouse of the managing partner of the law firm for the plaintiffs, James Angell. A subpoena had been sought for "settlements" entered into by plaintiffs Chad M. Koehna and/or UCMK, kept by James Angell, behind a "Chinese wall" within the law firm. That subpoena was

denied by the US Federal Magistrate. Judicial notice and evident knowledge by the mother, Samantha Parks Angell that her son Spencer Angell was in the employ of plaintiffs UCMK and Chad M. Koehn, see <u>Resume of Spencer Angell Exhibit A</u>, was obviously known during the course of the litigation, as was the fact known, Spencer Angell was in the employ of the plaintiffs when they made their rule 26(a) disclosures. In fact Spencer Angell is also a former employee of the law firm representing the plaintiffs in the matter at bar. Yet during the hearing 14 December 2022, when US District Court Judge John W. Broomes, pressed the issue as to the addition of Spencer Angell to a list of material witnesses, with knowledge of the facts of the litigation and likely to be a material witness, the responses are alarming to the Court and certainly to the Court of Appeals. See Exhibit B, after much dialogue back and forth between the US District Court Judge and attorneys for the plaintiffs represented by Christ Kellogg and Larry Michel (who had filed the Rule 26(a) disclosures Ex. F and filed further disclosures adding Spencer Agnell), both who were present in the Court room on 14 December 2022 hearing:

> <u>THE COURT:</u> So do you think Mr. Angell has material knowledge that's going to be important to this case that he's going to be a likely witness or have something substantial to contribute in the litigation of this matter?
> <u>MR. KELLOGG:</u> **I don't believe so, Your Honor. <u>My client tells me no.</u>"**
> See page 8 lines 7 through 13*

* FURTHER NOTED Chad M. Koehn signed the additional material witness list adding Spencer Angell and then tells the District court "NO" regarding Spencer Angell, however their Judge Shopping was already completed, forcing the recusal of the Federal Magistrate who they had previously demanded recusal via Chad M. Koehn verified motion for recusal.

Having had their verified motion for recusal of US Federal Magistrate Judge G.E. Birzer was denied by the US Federal Magistrate Judge. The **<u>next move to "judge shop"</u>** within the US District of Kansas exerting unfair and unethical control over choices of randomly assigned Judges the plaintiffs' addition of Spencer Angell was made in a discovery notice they filed, also <u>signed by Larry G. Michel, as initial disclosures were as well</u>, see Exhibit F, in order to "kneecap" the US

Federal Magistrate Judge via a contrite recusal, see statements by District Judge John W. Broomes in transcript Exhibit B.  US Federal Magistrate Judge G.E. Birzer had then to file an Order recusing herself from the litigation in document 335.   None-the-less prior orders of the US Federal Magistrate Judge G.E. Birzer came for hearing before the District Court, see Exhibit B. The plaintiffs were previously ordered to amend their SLAPP petition to **remove the known racial slur they placed in the originating complaint in place of the defendants given name,** and making other substantial changes.  The Plaintiffs then moved to amend their complaint yet again a second amended complaint, attacking the pro se defendants elderly father, who the district court refused the request to add the pro se defendants elderly father to the litigation filing Order of the Court in Document Order 330, however has now allowed the complaint to be entirely changed though will be subject of a new motion to dismiss.

Despite the sworn declarations by Chad M. Koehn plaintiff and the counter signature of one of his plethora of attorneys, Larry G. Michel, who was present and on the record in the Courtroom on 14 December 2022, hearing, wherein both Larry G. Michel and Chad M. Koehn swore that Spencer Angell, the son of US Federal Magistrate Judge G.E. Birzer's chamber counsel Samantha Parks Angell has material knowledge of the facts of the SLAPP petition filed by the plaintiffs and obviously both Larry Michel and Chad M. Koehn who are friends with James Angell, the ex-spouse of Samantha Parks Angell. Chamber counsel (law clerk) for US Federal Magistrate Judge G.E. Birzer, all knew at the time the Rule 26(a) disclosures (Exhibit F) were made that Spencer Angell was in the employ of the plaintiffs chose to keep this information private, and furthermore chose not to include Spencer Angell in the Rule 26(a) disclosures.

**I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of documents 254, 255, 266, 289, 292**

**First,** in Order of the Court Document 334, I have complied under protest with Pro Se registration of notice, by the date which the Court Ordered, yet my emails to the Court have continually gone

to junk folders and I have either not received at all or emails from the Court have gone to a variety of junk folders and/or have been deleted, thus requiring me to continue to rely upon third party nonprofits to receive notice of documents filed, and I am unable to retrieve "free" or no-charge documents which are filed in this case, until after third party non-profits such as Judicial Watch and CourtListener and/or others have retrieved the documents. I have dutifully in attempted compliance had the need to take inordinate time of the Courts personnel and the DOJ, even communicating various Chambers, specialists within the Court **Andrea Schreyer,** Division Manager, US District of Kansas, see attached Exhibit "L", email from Ms. **Schreyer.**

**Second,** the Court ordered a show cause regarding travel restrictions in the parallel criminal matter(s) in Oklahoma. The *pro hac vice* counsel Craig Alan Brand's deliberate and intentional misleading of Chambers of US Federal Magistrate Birzer and myself by replying not from the email address he was sent email as per his affidavit of perjury filed in document 24-1, which the Court stated he "played fast and loose" meaning was dishonest. In documents 52 and 57, it is clearly demonstrated to the Court and now the Tenth Circuit Court of Appeals *pro hac vice*, attorney Craig Brand, intentionally misled me and the Court as to a false designation email, as trickery to have been inadvertently violate the conditions in the parallel criminal case(s). I have also followed orders of the Court in Document 67, emailing with attorney Chris Kellogg to take deposition of an identified witness in plaintiff's initial disclosures under Rule 26(a) which has seen the prosecutor in the parallel criminal case take me into custody for doing so. Given the fact the Oklahoma Court has had constant communication with the attorneys representing the plaintiffs in this Civil matter, and the criminal matter is being used as a weapon to prevent proper procedures in the civil matter as is noted, in the States request to increase bond, wherein the State of Oklahoma states: *"... on September 15th, 2022, the defendant using the email address* *oklahomaremote@gmail.com, sent an email to an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville,*

*Oklahoma."* See 3rd page of Exhibit D.   It is evident that this civil proceedings is being

"kneecapped" see Exhibit B, to use the term used by District Court Judge Broomes by the parallel

criminal proceedings.   I cannot interpret the conditions placed upon me in the parallel case

liberally and therefore must interpret them conservatively to avoid incarceration for my

participation in defense of the SLAPP SCORCHED EARTH litigation being pursued by the now

SANCTIONED plaintiff Chad M. Koehn etAl.  I did timely in accordance with Order in

Document 334, file response reply to the show cause, attached as Exhibit "M", document 337:

https://ia902500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.337.0.pdf

 See Exhibit E Attached motion by my criminal defense attorney regarding the "violation"

of bond as I await trial, for more than a year now in the directly parallel hereto criminal

proceedings being used as a weapon in these civil proceedings.   "Mr. Nelson has good reason to

believe that the Blanchard's **are running a Ponzi scheme.**  The dispute between Mr. Nelson and

the Blanchard's began while he was employed by one of their many companies **over a crypto**

**currency named "HERC",** Mr. Nelson received an email from a fellow shareholder who

informed him that a group of **investors had purchased three million dollars of the crypto**

**currency** and w<u>anted to know where the money was</u>.   "In a document explaining "HERC"

produced by the Blanchard's (see attached Exhibit H, "HERC" White Paper) the Blanchard's are

listed as CEO and President on page 14 and on page 18 is an individual know as Joby Weeks.  Mr.

Weeks is listed as a member of the "Advisory Board".  Mr. Weeks was indicted out of United

States District Court in New Jersey, in the United States of America v. Matthew Brent Goettsche

et al. 18-CR-877-CCC<u>, for conspiracy to engage in wire fraud in connection with his role in</u>

<u>BitClub Network.</u>  Mr. Weeks ultimately entered a plea in that case."  AND "It is not just that the

Blanchard's had a member of the "advisory Board" that was indicted for the "Bitclub

Conspiracy", while Mr. Nelson worked for the Blanchard's he personally witnessed Anthem

Blanchard recruit for and invest money into BitClub." AND "The Blanchard's have also started

multiple companies in recent years and make **astounding claims such as their company is securing the energy gird in California**, claim to be in partnership with the country of the Netherlands, **claim to securing all gold imports and exports to the country of the Netherlands.**" AND "The issue concerning whether or not the Blanchard's **are involved in a "Ponzi scheme"**, and whether or not they are **being assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues involved in the federal litigation in Kansas. AND "What has occurred between these two cases is a board member of Anthem Holdings Company sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District Attorney's office to try and stop Mr. Nelson from defending the federal case. Mr. Nelson as a constitutional right to participate in the federal litigation pending in the United States District Court of Kansas and he has done nothing wrong by doing so." See Generally Exhibit E.

The parallel criminal case involves largely threats from *pro hac vice*, attorney Craig Alan Brand who is at the center of the parallel criminal case, having threats issued regarding, a DEAD whistleblower, in another criminal case involving Dale Takio, an employee of the companies controlled by the plaintiffs, who is also identified as a witness in the *Rule 26(a)* disclosures. I am a significant equity interest holder in the companies at dispute and **one of many WHISTLEBLOWERS who reported securities violations** regarding PUMP and DUMP of CRYPTO CURRENCIES. This entire SLAPP litigation is nothing but an invidious harassment lawsuit to prevent disclosures about potential securities violations to regulators. "Mr. Nelson has a constitutional right to participate in the defense of the lawsuit filed against him by an associate of the state's complaining witness." See Generally Exhibit E

> "The right to offer the testimony of witnesses, and to compel their attendance if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own

witnesses to establish a defense,  This right is a fundamental right of due process of law.  ***Washington v. Texas, 388 US 14, 19 (1976)"***  See Generally exhibit E, Motion.

The defendant/counter-plaintiff is proceeding pro se out of necessity in lack of funds, having to fend off the SLAPP (Strategic Lawsuit Against Public Participation) filed by the plaintiffs whilst simultaneously defending criminal charges relating from the same nexus.  The plaintiffs in this SLAPP litigation are directly related to the criminal proceedings.  I APPEAL the District Court Judge John W. Broomes, relating to STAYING this civil case to allow the parallel criminal case to conclude. I have also attempted compliance with all other Orders of the US District of Kansas Federal Court including without limitation registration for pro se notification via email, *see above* though I am not receiving timely notices nor are my emails to the Court being timely processed ever since approximately 13 December 2022, nonetheless using inordinate time of the Court personnel I have been able to get them to find my emails in junk folders, though I still have no way of getting court emails not to go to junk folders or be auto deleted.  I believe my filings have complied substantially and to the best of my ability with those Orders of the Court to register for pro se notification of filings and reply with copies of Order from the Oklahoma criminal court which has dictated where I can reside and am allowed to return. See generally Exhibit "M".   I replied timely to the District Court, providing the order from the Oklahoma Court, dictating where I can reside and where I must return.

**On page 3, of the Appealed Order, the District Court states:**   "Defendant's motions are not models of clarity. The motions are rambling diatribes attempting to ascribe some error to Judge Birzer's previous orders.**"**   Equally the orders and verbal instructions of the parallel criminal case in Oklahoma **are not clear** and **IF** travel to Kansas is permitted, as well as inherent fear that any wrong step will lead to incarceration.   Emailing per Order of the Court in Doc. 67, attorney Chris Kellogg, had **Craig Alan Brand run to the prosecutor in the parallel criminal proceedings** and subsequently I was taken into custody in part for emailing Kellogg, in

accordance with ORDERS of US District of Kansas Federal Court.   **One Court cannot order me to do something, which in turn another court then incarcerates me for** following Orders. I will NOT follow orders which I believe will incarcerate.  **I seek APPEAL to address the "SCORCHED EARTH" litigation policy being pursued by Chad Koehn, a now SANCTIONED former stockbroker who is SUSPENDED by a US Federal Regulator.**

   **Doc. 254, brings matters to the Court for Objection** of the Court not reviewing of documents 52 and 57, regarding a false designation email sent by Craig Alan Brand, *pro hac vice*, where Brand intentionally sent email from an email address other than he was emailed to by Chambers of the Magistrate, Brand's actions intentional were to have me involuntarily violate the orders of the parallel criminal proceedings, see Generally Documents 52 and 57.   Also bringing to attention of the *District Court Gliatta v. Tectum Inc., 211 F. Supp. 2d 992, 1009 (S.D. Ohio 2002)* **(lawsuit brought in bad faith with retaliatory motivation prohibited)**; *Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)* ("baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions"); *Stanerson v. Colorado Boulevard Motors, Inc., No. 06-cv-00856, 2006 U.S. Dist. LEXIS 80124 (D. Colo. Nov. 2, 2006);* Indeed, threatening to sue a whistleblower can be actionable retaliation. *Brach v. Conflict Kinetics Corp.,(2016).*Retaliation is prohibited even if it is undertaken at the request of a government official. *10 USC § 2409 (a)(3)(B).*

   I removed the SLAPP (Strategic Lawsuit Against Public Participation) state petition filed by the plaintiffs and served me in Essex County, New Jersey, which contained **a KNOWN Racial Insult in place of my given name.**  "The Magistrate report again does not take seriously enough the use of the RACIAL SLUR / INSULT.  **My concern is how the Racial INSULT** was used, the FACT two licensed attorneys proof-read and signed the petition and the plaintiff's reviewed the petition for form and substance as required by law**. All of them KNEW** the term was included and ALL of them allowed it to remain unchecked in the SLAPP petition.

**See page 6, of Doc. 254**

"Magistrate FAILS to lay out all the facts, which include the Magistrate ordered the parties not to file motions/answer until further notice, I unlike the licensed attorneys followed the orders of the Court. At each and every step I am barred from filing motions/answer but the bar licensed **attorneys are allowed to violate the Rules of Professional Conduct, Local and Federal Rules and even ORDERS with impunity.** **See generally page 8:**
"On page 11 of Order 63 at Footnote (9) the Magistrate Report references a unique, yet brilliantly written document referred to as the "Pillars of Professionalism". Concern is brought forth to the Court, that this document seems to replace and effectively lessen the responsibilities of Licensed Attorneys. Nowhere within the document entitled "The Pillars of Professionalism" **am I adequately protected**. The document appears to give **licensed attorneys a "pass" at their regular violations to the Rules of Professional Conduct."**

"At (E) of Doc 63, the Magistrate errors in the application of the law, only referencing the Atty. General and NOT the SEC (Securities Exchange Commission) a FEDERAL ENTITY.  I respectfully remind the Court that the SEC (Securities and Exchange Commission) is a Federal Commission and as such the Court has the Power to issue writs as granted under the US Constitution and All Writs Act, especially when a matter of law is cited and reason provided given the **material misrepresentations as to "nerve center" to the highly bigoted naming convention of the CRYPTOCURRENCY Hedge Fund "RED NECK High Tech Yacht Fund LP**", obvious and evident material misrepresentations **proof positive of on-going violations to Federal Law**. A writ should be issued to the Securities and Exchange Commission (SEC) a Federal entity, if not also notice of the Attorney General for the State of Kansas, whilst I may not be a citizen of the State of Kansas, I deserve no less protection under the 14th amendment than citizens of the several states."

This matter involves issues with the Advisers Act, Exchange Act, and issues of material misrepresentations, omissions and illegal trading upon US Federal Resources and States, including the use of US MILITARY LOGOS, SEALS by the plaintiffs to imply partnerships where none exist.  I have also requested in February for financial disclosures of the Jurists as I have a right to ensure given the issues involving public companies that no conflicts of interest are present.  Craig Brand's threatens criminal prosecution to gain unfair advantage, he uses his minions to imply the ability to improperly influence Judge's, making wild public claims to be a "policy expert" on a wide range of issues, implying presiding Judge Broomes.  **Brand's** claims WHISTLEBLOWERS, windup DEAD, like the DEAD whistleblower in the Dale Takio criminal

case involving <u>Public Company Simon Properties</u>.  <u>Craig Brand is known for his public statements he</u> **"[CRAIG ALAN BRAND] intentionally provides people false information"** and has **"championed the art of disinformation".**  The Federal Magistrate declared <u>**CRAIG ALAN BRAND to have "played fast and loose", meaning was DISHONEST**</u>, in his affidavit for *pro hac vice* status.  Requests for financial disclosure reports have been denied despite the new <u>**"Courthouse Ethics and Transparency Act**</u> <u>requiring federal judges' financial disclosure reports be made publicly available online</u> and mandates that federal judges submit periodic reports of securities transactions..."  The first amendment to such laws since 1978.  Larry G. Michel refused initially to comply initially with FRCP Rule 7.1(a)&(b), and now given the contrite recusal of a US Federal Magistrate Judge, via addition of the son of the managing member of the plaintiffs law firm and that of Chambers Counsel Samantha Parks Angell, it is more important now than ever that transparency of fair unbiased Judges be demonstrated to the public at large.   The successful JUDGE SHOPPING via lies to the Court in writing demands that the public be protected as well as the undersigned unrepresented pro se litigant.

<u>**See generally page 10, Doc. 254; 14th Amendment Rights not equally applied:**</u>

> "The Court has had the unusual and non-conformity with the rules need to ORDER: "the Court ORDERS Plaintiffs to provide Defendant with a hard copy of any future filings via regular mail and to certify service of same." Each and every filing of the licensed attorneys filed a certificate of service, however, did purposefully and maliciously in bad faith refuse to provide a copy or notice to me PRO SE, indicating proof positive of bad faith, even the Court has found: "The same cannot be said of the represented litigant, for we expect counsel to know the pleading rules of the road without being given personal notice of them by the district court. Our concern here is with the pro se litigant unschooled in the law." *See Erickson, 127 S.Ct. at 2200; Andrews, 483 F.3d at 1076-78*. FOUR (4) different lawyers all working against me, apparently know not the FRCP and are ORDERED time and again to follow FRCP, licensed professional should **"know the pleading rules of the road without being given personal notice of them by the district court" id., conversely as I am PRO SE without legal education** and learning as quickly as possible and has yet to be given any direction from the Court as to what I have done wrong or what is not permitted by the rules, <u>the Court should have "concern here is with the pro se litigant unschooled in the law"</u> id. …conversely the role models providing

leadership, opposing counsel … continue to flagrantly flout the very rules at bar including Professional Conduct, Local and Federal"

**Doc. 255, involves violations to rights under: 4th, 5th, 6th, 8th, 14th:**

"The pro se defendant should not have his civil rights further eroded nor constitutional rights under the fifth amendment. Plaintiffs filed the frivolous incongruous SLAPP petition to state court and then laid in wait nearly a year, conspiring as the record and facts so dictate with the claimed "victims" in the parallel criminal matter… both Plaintiffs United Capital Management of Kansas Inc. and Chad Koehn have extensive business ties, and have conducted extensive business interactions. All the while Craig Brand is proceeding to the NEVADA SUPREME COURT, according to the sworn testimony of Cynthia Blanchard, president of Anthem Holdings Company, to further appeal the employment matters there in NEVADA, relating to the genesis corporation Anthem Vault Inc. Anthem Holdings Company, did not and sold instead unregistered, unlicensed securities. The "holding company" of Anthem Holdings Company is in material dispute as to a legitimate "reverse short form mergers", … never had shareholder votes, and the regulation D filing stated no "business combination merger", yet the offering documents state a combination merger to effect and consummate the series of "smurfing" in the reverse "short form mergers", subject of multiple parties whistleblower complaints. The plaintiffs here claim tortious interference in the business of UCMK which is apparently in the business as it claims publicly of leading investments into a variety of investment vehicles, some registered and some not, some in compliance and some not as the record indicates. All the claims of the plaintiffs reference directly back to Anthem Holdings Company and Hera Software Development Inc. which is the company of the moniker Herasoft www.herasoft.com the SAME company and TLD used by *pro hac vice* purported attorney **Craig Alan Brand to mislead the Chambers of Magistrate Judge Birzer and the Pro Se defendant in hopes to get the Pro Se defendant on a technical violation of a bonding in the underlying parallel criminal matter**.."

I have laid out the issues for de novo review of the Magistrate's Report consistent with my

Constitutional rights in the face of the parallel criminal proceedings; *SEE page 14*:

"Matter of *Seper, 705 F.2d 1499 (9th Cir. 1983)* The mere implication of PRO SE defendant's FIFTH Amendment Rights; **Warrants A Stay of this Action Pending Completion of the Criminal Proceedings.** Twice recently stays in civil proceedings pending the resolution of criminal proceedings have been granted, as the fundamental rights of the parties must be protected as a matter of Constitutional Law. *Continental Insurance Co. v. Cota 2008 WL 4298372 (ND Cal. J. Conti presiding); Jones v. Conte 2005 WL 1287017*; as set forth in both cases: "[t]he decision western to stay civil proceedings in the face of a parallel criminal proceeding should be determined based on the circumstances and competing interests involved in the case". Keating v. Office of Thrift Supervision 45 F. 3d 322 (9th Cir. 1995) **When faced with the issue of either allowing a civil action to proceed or protecting the Fifth Amendment rights of individual defendants against self incrimination, the majority of courts have consistently chosen the latter."**

Craig Alan Brand has throughout the course of the contentious litigation used extra judicial harassment, use other proceedings as procedural weapons, he has even used intentional false designation emails to Chambers and Nelson in order to have Nelson involuntarily violate another Court's Order placing Nelson in prison, *See generally Documents 52 & 57*.

**Doc. 289:**

1. "Plaintiffs have directly tied the Criminal pending matter to this case in a way which makes discovery impossible and thus the scheduling order not able to be followed and the orders of this court in direct contravention to the Orders in the criminal proceedings. In the INTERESTS OF JUSTICE THIS CASE MUST BE STAYED pending resolution of the parallel criminal matters to that ALL PARTIES can be properly and legally JOINED herewith this Civil Matter." See page 14 of Doc. 289

IF **"...the integrity of the judicial process is to be maintained, and the appearance of impropriety to be scrupulously avoided, the issue of an allegedly improper representation should be resolved at the outset, "lest a costly and protracted trial be tainted on the merits by an issue collateral thereto."** *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 803 (2dCir. 1974).* The US District Court continues with a motion for the disqualification of pro hac vice, attorney Craig Alan Brand, which would dramatically reduce the circus act environment of this case and end the SCORCHED EARTH litigation tactics being pursued by the plaintiffs orchestrated by Craig Alan Brand, who publicly in the books he has authored: "LIFE SUCKS" claims to have "championed the art of disinformation" and that he Craig Alan Brand "intentionally provides people with false information".

**Doc. 292:**

1. The Court errors in plain error, by failing to do substantial justice, wherein I am prohibited from all contact with the attorneys for plaintiff, as they have already run to the prosecutor in the parallel criminal case for emailing to take a deposition of an identified witness,

though they purposefully miss identify the witness as Gil Gilliam when in fact the witnesses true identity is HOWARD LAVON GILLIAM, demonstrating further scorched earth litigation tactics being pursued by *pro hac vice* attorney Craig Brand.

2. In Order to prevent discovery in the matter, plaintiffs have run to the prosecutor in an ongoing directly related parallel criminal case involving substantially all the same parties and events, claiming that emailing with Chris Kellogg as per the Orders of the Court in document 67, violates the bond conditions in the parallel criminal matter(s).

3. The Prosecutor was provided emails between myself, and attorneys for the plaintiffs

4. My criminal defense attorney filed a response:  *"Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit. The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard"* See Ex. E

5. **Prosecutor:** "You cannot violate the bond conditions in Oklahoma just because you have a civil lawsuit pending in Kansas. **That is a legal rodeo you have to figure out on your own** if you're going to represent yourself pro se in Kansas." *Lines 21 - 23, p. 12 Ex. "C"*

6. **Prosecutor:** "I believe, on the Federal lawsuit in Kansas. This all goes back to I'm sorry if you have spent a lot of your money paying for three attorneys in the State of Oklahoma bonding out in the State of Oklahoma, and you can't — or no one will take your case in Kansas — **because that's the other rumor I've heard**. But just because you don't have anyone to represent you in Kansas, doesn't mean you get to violate a Judge's order in the State of Oklahoma"  *Page 24 lines 14-23; Exhibit "C"*

7. Doc. 292, also involves the issue of the plaintiffs constantly demanding sanctions for my resisting violating the plethora of conditions placed upon me by the same parties suing me. The court is making new law, and overriding case precedents *Brickwood, 369 F.3d at 389 (emphasis added); see also Hamlin v. TD Bank, No. 1:13-CV-00200-MR-DSC, 2014 WL 3101942, at *3, n.2 (W.D.N.C. July 4, 2014)*

8. The use of the directly parallel criminal proceedings to exact inordinate punitive punishments against the US Constitution for the constitutionally protected activity of defense of the SLAPP lawsuit here, is demonstrable constitutional crisis, must be addressed in separate briefs now requested.   Especially where the constant pursuit of sanctions has the Court here to seek alternative means to punitively sanction an unrepresented pro se party, and overturn its own rulings *Mellott v MSN 4 Communications*

*Inc., 492 Fed. Appx. 887, 888 (2012) (emphasis added); see also Peoples v Wichita State University, No. 18-1010-JWB, 2019*

The attorneys representing the plaintiffs in the civil case above herein referenced have <u>continually run to the prosecutor in the parallel criminal case to prevent, discovery, prevent depositions, and have even succeeded in jailing the undersigned appearing pro se for participation in this civil matter.</u>  To say the two cases are joined as essentially one would be an understatement.  The plaintiff's even list all their witnesses which are conspicuously absent Spencer Angell, as the employees of Hera Soft aka Hera Software Development Inc. with the identical address in Bartlesville Oklahoma, see Exhibit F, their 26(a) disclosures which are conspicuously void the name Spencer Angell.   Kevin Adams my criminal defense attorney made the matter well known the response to the State of Oklahoma, see Exhibit "E", wherein Mr. Adams states:   "Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit.  The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard" & *"TO BE CLEAR:  Chad Mitchell Koehn, is a member of the board of directors of Anthem Holdings Company.  He has even listed himself in SEC Disclosure statements as having a conflict with UCMK in the referral and sale of securities in Anthem Holdings Company."*   See Exhibit E.

To further complicate matters, when plaintiff Chad M. Koehn learned on 13 October 2022, that I was bailed out of jail after being taken into custody, in part for following Orders of the Court in Doc. 67, the very next day 14 October 2022, Chad M. Koehn submitted an offer in compromise for a judgment **order against him to a US Federal Regulator, accepting SANCTIONS against plaintiff Chad M. Koehn.**  <u>See Exhibit G.</u>   The coincidences occurring in this civil litigation in tandem with the criminal prosecution in Oklahoma are not just uncanny, they are nefarious.  Now securities fraud attorneys from Coast to Coast are searching for victims, case in point Exhibit H, Carlson Law Group: <u>Salina Advisor Chad Koehn: FINRA Investigates Ex-SA</u>

Stone Rep  Broker Check regarding stock brokers, now carries a "WARNING" regarding Chad M. Koehn, see Exhibit "i" [https://brokercheck.finra.org/individual/summary/2216169] Broker Blogs carry stern headlines *"Chad Koehn Suspended by FINRA Following Alleged Unapproved Securities Transactions"* Kurta Law Chad Koehn Violations See Exhibit "J".

Plaintiff Chad M. Koehn is a FORMER stock broker, currently SANCTIONED by a US Federal Regulator for volatile conduct in violation of securities laws, rules and regulations, **see Exhibits G, H, i, K** attached herewith.   Fantastically Koehn etAl. also claims to have a contract with the Country of the Netherlands (Holland), "to verify all gold imports and exports for the entire nation", implying a direct partnership with the Netherlands, see Exhibit E  Koehn also regularly advertises using the Great Seal of the State of California and the US Department of Energy directly implying a working relationship and contract with the US Federal Government and the State of California.   Demonstrating clear materially false claims, thus materially false misrepresentations to defraud investors and the public at large  "The issue concerning whether or not the Blanchard's are involved in a **"Ponzi scheme",** and whether or not **they are being assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues involved in the federal litigation in Kansas." See Generally exhibit E, Motion.

"What has occurred between these two cases is a board member of Anthem Holdings Company sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District Attorney's office to try and stop Mr. Nelson from defending the federal case.  Mr. Nelson as a constitutional right to participate in the federal litigation pending in the United States District Court of Kansas and he has done nothing wrong by doing so."  See Generally exhibit E, Motion.

Beginning with a separate entity Chad M. Koehn and UCM are involved with that of BitClub, an alleged high tech Ponzi scheme, bilking at least $722 million from 10's of thousands of investors, being prosecuted by US Attorneys in the US District of New Jersey.   Including

previously convicted child sex predator Russ Albert Medlin, currently incarcerated in Indonesia, on further child sex charges, again, see Exhibit "K":  "American wanted by FBI arrested in Indonesia for suspected child sex crimes" from REUTERS

https://www.reuters.com/article/us-indonesia-crime/american-wanted-by-fbi-arrested-in-indonesia-for-suspected-child-sex-crimes-idUSKBN23N1KB   Joby Weeks, who has plead guilty to charges including "knowingly and intentionally conspired and agreed with each other and others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x."  See Generally:

https://storage.courtlistener.com/recap/gov.uscourts.njd.422880/gov.uscourts.njd.422880.1.0.pdf

https://www.justice.gov/usao-nj/bitclub & https://www.justice.gov/usao-nj/page/file/1489316/download

As noted by DOJ Press Releases, see Exhibit "N";   If it pleases the Court to take Judicial Notice that the de facto PPM (Public Placement Memorandum) issued for HERC crypto stock coin, has on page 18, as the advisor Joby Weeks, the same individual referenced herein above in the Bitclub Ponzi scheme as prosecuted by US Attorneys.  A copy of the PPM (Public Placement Memorandum) distributed by Koehn in Exhibit H of Exhibit E.

The Court should also take Judicial Note, that Joby Weeks is described as:

> "As the Prime Minister of Atlantis and Founding Father of Liberland Joby Weeks has found himself in bitcoin since it began as well as has worked in digital currencies since before 2009. Finding himself at the helm of Liberty Dollar his project minted more than $100mm worth of gold rounds.  Joby is known to be the defender of personal rights and the protector of peace across nations."

If it pleases the Court and for the benefit of the United States of America, as this is an Article III, Constitutional Federal Court, that the Court recognizes that the United States Government neither recognizes "Atlantis" nor "Liberland" as legitimate nation states.

Proceeding pro se out of necessity I have pleaded and begged the Court to stay the matter before the Court of the above herein referenced case, especially given the circumstances and fact.  **I am a whistleblower who is being beaten up in multiple courts while Koehn and crew seek to fight various charges as is evident.**   The Criminal proceedings in Oklahoma, charging me with

stalking, have been levied and have continued in tandem to these civil proceedings where the criminal case and its restrictions are used as a procedural weapon to prevent under threat of incarceration my defense of the SLAPP complaint by Koehn etAl.

**The court in Oklahoma is a criminal state Court, which has stated it must control.**

**JUDGE:** "A criminal case is superior to the civil case. The conditions — the bond conditions in the criminal case are in place for a reason and remain effective throughout this criminal case and until and unless they're changed." *Lines 24 - 24 page 27 & lines 1 - 3 page 28; Exhibit "C"*

The Prosecutor:  "I'd like to respond to some of that, seeing as how I have now been apparently accused of collusion. I think the word would be "prosecutorial misconduct." And I would like to set the record straight. I have never had any – well, I take that back. Mr. Koehn did call me back in December of '21" … "…I have not spoken to Mr. Koehn at all."     "In fact, I find him kind of a jerk, so I don't particularly like Mr. Koehn."  "…some silly civil lawsuit that is happening in a Federal court in Kansas."  See Exhibit C

**The Orders Appealed should be determined "De Novo" not otherwise:**

In Order of the Court by the Honorable United States District Judge John W. Broomes, he writes:  *In reviewing an order by a magistrate judge, the district court "applies a more deferential standard [than de novo review] by which the moving party must show that the magistrate's order is 'clearly erroneous or contrary to law.'" Burton v. R.J. Reynolds Tobacco Co., 177 F.R.D. 491, 494 (D. Kan. 1997) (quoting 28 U.S.C. § 636(b)(1)(A)). The clearly erroneous standard requires that the district court affirm unless on the evidence the district court is left with a definite and firm conviction that the magistrate judge's decision was in error."* See id See generally page 2 of Order of US District Judge John W. Broomes in Document 334.

**Legal Standard for Review of Magistrate Report:**

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  *See Fed. R. Civ. P. 72(b)(1)*  When resolving objections to a Magistrate Judge's

proposal, "[t]he district judge **must determine de novo** any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." **Fed. R. Civ. P. 72(b)(3)**.   **Similarly, 28 U.S.C. § 636 provides:**

> **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

**28 U.S.C. § 636(b)(1)(c).**  "'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)*("One Parcel") (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). **As the United States Court of Appeals for the Tenth Circuit** has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." *One Parcel, 73 F.3d at 1059* (*Niehaus v. Kan. Bar Ass'n,* (10th Cir. 1986), superseded by statute on other grounds as stated in *De Vargas v. Mason & Hanger-Silas Mason Co., (10th Cir. 1990); United States v. Walters, (6th Cir. 1981))*.

**The Tenth Circuit has held** "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue **for de novo review** by the district court or for appellate review." *One Parcel, 73 F.3d at 1060.* "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" *One Parcel, 73*   This is NOT the case, here where timely objections have been raised of specific issues with the Magistrate Judge's Report, and this issue is further complicated by the

FACT the US Federal Magistrate has now recused herself, based upon the appearance of impropriety as referenced herein above regarding the nepotism related to that of one SPENCER ANGELL the son of US Federal Chambers Counsel SAMANTHA PARKS ANGELL.

**The Tenth Circuit has noted,** "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" *One Parcel, 73 F.3d at 1060 (quoting Moore v. United States (10th Cir. 1991)* ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")). *Cf. Thomas v. Arn, 474 U.S. at 154* (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review … *sua sponte* or at the request of a party, under a de novo")

In *One Parcel,* **the Tenth Circuit** also noted that the district judge had decided *sua sponte* to conduct a de novo review despite the lack of specificity in the objections. Here not only is the undersigned a appearing pro se, out of necessity while a parallel criminal proceeding continue, unabated but no order entered by the Magistrate Judge Birzer, who has now recused herself from the proceedings, carried upon any Magistrate Judge Order the appraisal of the pro se litigant to the effect of the Magistrate Judge's Order(s), nor was the undersigned appearing pro se, permitted to travel for hearing before the US Federal District Court Judge, given the travel restrictions, as noted, as to where the pro se undersigned may reside and return, as fully answered per the show cause in document 337 and its attachments, attached as Exhibit "M".

Nelson a whistleblower regarding far reaching detrimental impacts to the US economy and financial system, including the US Dollar, presented by clear and present danger to the investing public, by a series of CRYPTO CURRENCIES, alleged **"Ponzi like" schemes to defraud and undermine the US Financial System**. **Koehn is a SUSPENDED** securities

broker, recently **SANCTIONED, and FINED** for Violative Conduct by a US Federal Regulator, is using this litigation & criminal proceedings in Oklahoma to SILENCE the pro se, Nelson.

## Legal Standard REGARDING STAYING of a Civil Case in light of a Criminal One

Courts have discretion in determining whether to grant a motion to stay. *Landis v. North Am. Co., 299 U.S. 248, 254 (1936)*. As the Supreme Court recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* The determination of whether to stay a proceeding "calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Popoola v. MDIndividual Practice Ass'n., Inc., No. DKC-00- 2946, 2001 WL 579774, at \*2 (D. Md. May 23, 2001) (quoting United States v. Georgia Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977)); Landis, 299 U.S. at 254-55 (noting that the decision as to whether to stay a proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); see also, e.g., In re Mutual Funds Investment Litigation, MDL No. 1568, 2011 WL 1540134, at \*1 (D. Md. Apr. 20, 2011)* (assessing a request for a stay pending appeal and noting that, in striking the balance *Landis* envisioned, courts look to such factors as the length of the stay, the hardship to the movant were the action to proceed, the burden a stay would impose on the non-moving party and **whether the stay would promote judicial economy by avoiding duplicative litigation**).

**A Stay of All Civil Proceedings Until Resolution of the Pending Criminal Matter is Warranted.** Where the same incident gives rise to a civil lawsuit for damages and a criminal prosecution, the civil case ordinarily should be stayed until the criminal proceedings have concluded. *See Estes-El v. Long Island Jewish Med. Ctr., 916 F. Supp. 268, 269 (S.D.N.Y. 1995)* (explaining "[i]t is well-settled that the Court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."); *Guillory v. Wheeler,*

*303 F. Supp. 2d 808, 811 (M.D. La. 2004)* (observing that where criminal charges remain pending, "the better course is to proceed as strongly suggested by the Fifth Circuit Court of Appeals--to stay proceedings ... until the pending criminal case has run its course"); see also, *e.g., Peyton v. Burdick, 358 F. App'x 961, 962 (9th Cir. 2009)* Gallipeau v. Mitchell, No. 07-3522, 2009 WL 539947, at *1 (D.S.C. Mar. 4, 2009)

The Supreme Court, in discussing claim accrual, noted: If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and **in accord with common practice**, **to stay the civil action until the criminal case or the likelihood of a criminal case is ended.** *Wallace, 549 U.S. at 393-94.*

Courts, relying on Wallace, **routinely stay civil actions** pending resolution of ongoing criminal proceedings when those civil suits. *e.g., Dickerson v. City of Charleston Police Dep't, No. 10-1625, 2011 WL 3880958 (D.S.C. Aug. 10, 2011), adopted by 2011 WL 3881041 (D.S.C. Sept. 2, 2011)* Cameron v. Wise, No. 09-967, 2009 WL 3755093 (S.D.N.Y. Nov. 2, 2009); Crooker v. Burns, 544 F. Supp. 2d 59, 60 (D. Mass. 2008); Motley v. Wolf, (E.D. Mo. Dec. 3, 2007).

Even prior to *Wallace*, courts recognized that staying the civil action until resolution of the criminal matter makes sense in most instances because the resolution of the criminal action could contribute significantly to the narrowing of issues in dispute in the civil case, **would avoid potential Fifth Amendment issues and other discovery problems that may arise in parallel proceedings, and should prevent inconsistent rulings.**

*See Estes-El, 916 F. Supp. at 270* (identifying concerns created by proceeding simultaneously in criminal and civil actions); *Guillory, 303 F. Supp. 2d at 810-11 (same)*. Other courts, including state courts, have frequently stayed discovery in civil proceedings when a related criminal prosecution may be undermined by a criminal defendant's use of the broad discovery rules available in the civil case. Yet, here the plaintiff's seek to constantly bombard the

pro se litigant in multiple courts simultaneously while refusing to provide any discovery themselves. *See, e.g., State v. Deal, 740 N.W.2d 755 (Minn. 2007); State v. Tomasso, 49 Conn.Supp. 327, 878 A.2d 413 (Conn. Super. 2004); Turley v. U.S., 2002 WL 31097225 (W.D. Mo. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Sup.2d 6, 10 (D. Conn. 2002).* The rationale behind such a stay is that a litigant should not be allowed to use the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery and obtain documents he would not otherwise be entitled to for use in his criminal suit. *Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir.1962), cert. denied, 371 U.S. 955 (1963):*

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. But these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. *Id. at 487-88*

In this particular case, the weight of the various interests tip heavily in favor of issuing a temporary stay until the parallel criminal proceedings are resolved. First, were the civil action permitted to move forward prior to resolution of the criminal matter, individual defendants would be forced to defend claims that might ultimately be barred by *Heck v. Humphrey, 512 U.S. 477 (1994).* As the Supreme Court recognized in *Wallace*, it is possible that a conviction in a related criminal case will bar some, if not all, of the claims in the civil action. *Wallace, 549 U.S. at 393-94 (citations omitted)* civil suit would impugn that conviction, Heck [v. Humphrey] will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."); *see also Quinn v. Guerrero, No. 09- 166, 2010 WL 412901, at *3 (E.D. Tex. Jan 28, 2010), adopted by 2010 WL 653477 (E.D. Tex. Feb. 23, 2010) (same); Cameron, 2009 WL 3755093, at *3 (same).* Although litigating claims that may ultimately be barred burdens all parties as well as the Court, the burden is disproportionately borne by Defendant.

**In addition, the interests of the United States are at issue**, to ensure that the government's interest in vindicating justice in the criminal case are recognized, as well as in those investigations initially brought by the whistleblower(s), here the defendant among them for the CRYPTO CURRENCY financial market manipulations to the detriment of public financial markets regarding HERC stock coin and other crypto currencies. This case, to proceed simultaneously with the criminal action, the defendant would be forced to respond to and defend claims that might otherwise be resolved by a threshold legal motion. More importantly, the overriding interest of the United States in ensuring a fair resolution of the pending criminal charges would be impaired, as well as the defendant's right to a fair defense.

Even in instances in which it is unclear whether the claims a plaintiff has raised in a civil case will necessarily be barred by *Heck* if the plaintiff is convicted, the better course is to stay the civil action in its entirety while the criminal action is ongoing. *Crooker, 544 F. Supp. 2d at 65* (noting that the criminal disposition will permit the court to better assess whether *Heck* applies to claims and rule consistently on any constitutional issues); *Motley, 2007 WL 4270569, at \*1* (determining that a stay was justified because otherwise the parties would be left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict" *(quoting Wallace, 549 U.S. at 393)); Guillory, 303 F. Supp. 2d at 811* (explaining that the better course is to stay the civil case in part because it is difficult to determine without resolution of the criminal proceedings how excessive force claim would be affected by the criminal matter). Second, while the temporary stay may impose a slight burden on Plaintiff, who like all Defendant, ostensibly seeks expeditious resolution, the proposed stay would not be unduly burdensome because there is no matter imminent and there has been no indication by other than the plaintiff consistently looking to "JUDGE SHOP" and structure the Court to their liking, while seeking in person hearings which the undersigned pro se is barred from attending based upon the underlying criminal proceedings. Thus **impairing fundamental**

**civil rights of those of due process of law and constitutional rights to defend the SLAPP litigation**.   Moreover, because the incidents at issue in this lawsuit is purportedly from the Plaintiffs' perspective a long running matter and dispute dating back well before the present, there is no danger of lost evidence or a sudden shift in the facts underlying the civil claims on either side, barring plaintiff Chad Koehn being further criminally cited for another fire, as he was just hours prior to service of the originating petition which sat for nearly a year with no attempted service, of the SLAPP petition containing **a known racial insult in the place of the name of the undersigned appearing pro se.**

Perhaps the most compelling reason to stay the pending civil matter is that a temporary stay of the civil matter may serve to protect the defendant, who can avoid the potential for self-incrimination. *See, e.g., Shaw v. Hardberger, No. 06-751, 2007 WL 1465850, at \*1-2 (W.D. Tex. May 16, 2007)* (granting plaintiff's motion to stay in part based on potential Fifth Amendment concerns because the civil case arose from the same set of operative facts as the criminal charges and thus "there is a danger of self incrimination"); *Estes-El, 916 F. Supp. at 270* (explaining that permitting the civil action to go forward may prejudice the plaintiff because of "potential Fifth Amendment issues"). The minimal harm a short postponement of the civil matter occasions does not appreciably tip the scales against a stay.

**Third, a stay will promote judicial economy.**   While a stay temporarily will defer the Court's assessment of claims, awaiting the resolution of the criminal matter likely will foster a more efficient evaluation. *Cf., Wallace, 549 U.S. at 394* (noting that "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."). In particular, the postponement of the civil case may streamline review by potentially eliminating some (or all) of the issues in the civil case. *See Quinn, 2010 WL 412901, at \*3* (noting "it would be a waste of the Court's limited time and resources to handle claims which may ultimately be barred"); *Cameron,*

*2009 WL 3755093, at \*3* (observing that the "interest of judicial economy is served by waiting for the outcome of plaintiff's criminal proceeding"); *Estes-El, 916 F. Supp. at 270* (noting that "[t]he interest of judicial economy strongly supports a stay" because disposition of the criminal charges "may well be determinative" of plaintiff's civil claims).

Even if the defendant is ultimately absolved of all charges or avoids criminal prosecution altogether and Plaintiff is able to surmount a *Heck* challenge, courts acknowledge it is still more efficient to await final resolution of the criminal action before proceeding in the civil case. *E.g., Crooker, 544 F. Supp. 2d at 65* (staying Bivens claims and reasoning, "[t]hough it is conceivable that some of the allegedly [improper conduct might] ... escape the *Heck bar*, **conservation of judicial resources dictates a single determination** as to the applicability of *Heck* at the conclusion of all criminal proceedings."). A stay ensures that this Court is not simultaneously adjudicating the same issues as those before another court in the criminal matter. *Id. at 64* Therefore, under either scenario (i.e., defendant is found guilty or acquitted), **proceeding seriatim rather than simultaneously is <u>likely to promote judicial economy.</u>**

A stay of the civil action likewise serves the interest of judicial economy because it eliminates the need for the Court to structure civil discovery to account for (or to resolve any discovery disputes that may affect) the pending criminal case. *E.g., Quinn, 2010 WL 412901*, at \*3 (staying the civil case in part because "[t]he Court simply cannot fathom how it could construct a discovery plan that would balance the need to protect the interests and rights of all parties in the criminal matter with the need to have productive and relevant discovery in the civil matter"); *Shaw, 2007 WL 1465850, at \*2* (citation omitted) (observing, "[i]f this civil action is stayed until the conclusion of the criminal proceedings, there is no need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case.").

Finally, the United States has an interest in preserving the integrity of criminal proceedings and investigation(s) and not jeopardizing an ongoing federal criminal investigation

with civil depositions and discovery and ensuring that criminal defendants do not circumvent the more limited scope of the criminal discovery rules by obtaining discovery through a civil lawsuit, especially wherein here now Plaintiff Chad M. Koehn has been SANCTIONED by a US Federal Regulator and as the exhibits attached herewith indicate he or UCMK may be subject to other investigations, especially given Koehn's ties to Anthem Holdings Company and HERC crypto currency among others, wherein at least one directly connected person has plead guilty in the Bitclub alleged Ponzi scheme and the US awaits extradition of Koehn associate Russ A. Medlin. The party pursuing the civil matter need not intend to defeat the strictures of criminal discovery. *Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).* Courts nonetheless recognize the real risk that, when the issues in the civil and criminal proceedings overlap. In other words, regardless of a party's motives, there are inherent risks in allowing civil discovery to proceed while a criminal case is pending. *Id.; Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)* (observing that allowing civil discovery to proceed would afford criminal defendants access to evidence not accessible under the criminal discovery rules "and, thereby, prejudice the proceedings").

*Bristol v. Nassau County, No. 08-3480, 2010 WL 1660238, at \*1-2 (E.D.N.Y. Apr. 22, 2010); Combs v. Nelson, No. 09-329, 2009 WL 2044413, at \*2 n.3 (E.D. Ark. July 10, 2009)* (observing that "[i]n some cases the government seeks postponement of the noncriminal proceeding, to prevent the criminal defendant from broadening his rights of criminal discovery against the government") cf., Shaw, 2007 WL 1465850, at \*2 (stating that **"the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"** (quoting Javier H., 218 F.R.D. at 75)). Accordingly, it is in the interest of justice to stay the civil case until the criminal case ends provides for Judicial Economy and prevents further manifest injustices.

**IV. CONCLUSION** For the reasons stated above, all of which establish good cause for the relief sought, the defendant and counter-plaintiff appearing pro se, so requests that the 10th

Circuit Court of Appeals, overrule the District of Kansas, issuing a writ of prohibition to prevent further erosion of constitutional rights and mandating a stay in the Civil proceedings pending the resolution of the criminal case less than 30 days until trial. **Procedural Due Process Civil**

https://law.justia.com/constitution/us/amendment-14/05-procedural-due-process-civil.html

> "SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

WHEREFORE Appeal, with briefs and oral arguments is requested to the 10th Circuit Court of Appeals on grounds of violations to DUE PROCESS of Law, plain error, violations to the Federal Rules of Civil Procedure, Local Rules and certainly Rules of Professional Conduct, by attorneys for the plaintiffs who have continually abused process in this civil matter, continually making filings to the Court and neither noticing nor providing copies of the filings they have made.   Civil proceedings are used as a weapon in criminal proceedings and any attempt to have fairness under due process of law in these civil proceedings are met with inordinate punitive punishments in the criminal proceedings, demonstrating clearly why these civil proceedings must be stayed in light of the criminal proceedings.  This is a SLAPP litigation:  **"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."** Judge J. Nicholas Colabella wrote in  *Gordon v. Marrone (N.Y . 1992)*.

## WHEREFORE PRAYER FOR RELIEF FROM THE US COURT OF APPEALS FOR THE TENTH CIRCUIT;  Without a STAY of these civil proceedings my rights to defend are

prevented by orders in the parallel case, thus MANDATING additional and growing litigations, once those proceedings conclude:

1. Filing of additional briefs as determined by the Court of Appeals

2. ISSUANCE of STAY of the Current pending matter in the US District of Kansas pending resolution of the parallel criminal proceedings in Oklahoma

3. ISSUANCE of WRIT to PREVENT FURTHER MANIFEST INJUSTICE

4. ORDER that I NOT be required to "Consent to electronic service of all documents" mandating I receive service via electronic delivery, as such service is unreliable.

5. ORDER that My Constitutional Rights be restored; that the US District of Kansas Court be Prohibited via Writ of Prohibition from further erosion of my constitutional rights including the Constitutional Right to DEFEND, in light of the parallel proceedings.

6. INVESTIGATION of MISCONDUCT and SANCTIONS for VIOLATIONS of RULES OF PROFESSIONAL CONDUCT by attorneys for the Plaintiffs (SEE TRANSCRIPT of hearing held 14 December 2022) Attached herewith, as Exhibit B as opposed to Exhibit F.

I further certify that this initial notice and brief complies with Federal Rules of Appellate Procedure Rule 32(a)(7)(B), containing less than 11,500 words (excluding certificate of service).

Respectfully Submitted, this 13th day of December 2023.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

phone: 702.932.3434   chadkoehnlawsuit@nosoybean.com

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;  I also further certify that this Notice and initial brief is in compliance with Federal Rules of Appellate Procedure Rule 32(a)(7)(B)