# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: <u>5:22−cv−04008−JWB−TJJ</u>

United Capital Management of Kansas, Inc. et al v. Nelson
Assigned to: District Judge John W. Broomes
Referred to: Magistrate Judge Teresa J. James
Demand: $75,000
 Case in other court:  Saline Co, KS District Court,
                  2021−CV−000038−TI
Cause: 28:1441 Petition for Removal Libel,Assault,Slander

Date Filed: 02/01/2022
Jury Demand: Both
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**<u>Plaintiff</u>**

**United Capital Management of Kansas, Inc.**

represented by **Christopher J. Kellogg**
Kennedy Berkley Yarnevich & Williamson, Chtd. − Salina
119 West Iron Avenue, 7th Floor
PO Box 2567
Salina, KS 67402−2567
785−825−4674
Fax: 785−825−5936
Alternative Phone: 913−709−3743
Cell Phone:
Email: ckellogg@kenberk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
The Brand Law Firm, PA
4650 Indian Creek Road
Loveland, CO 80538
305−878−1477
Alternative Phone:
Cell Phone:
Email: craig@thebrandlawfirm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
Kennedy Berkley
P.O. Box 2567
Salina, KS 67402
785−825−4674
Fax: 785−825−5936

Alternative Phone:
Cell Phone:
Email: lmichel@kenberk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
319 Seitz Drive
Salina, KS 67401
620–428–1183
Alternative Phone:
Cell Phone:
Email: qrkendrick@gmail.com
 *TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

**Plaintiff**

**Chad M. Koehn**                    represented by    **Christopher J. Kellogg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
(See above for address)
 *TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

V.

**Defendant**

**Michael E. Nelson**
*ECF Notifications Only*

represented by **Michael E. Nelson**
9450 SW Gemini Drive
PMB 90924
Beaverton, OR 97008−7105
702−932−3434
Email: oklahomaremote@gmail.com
PRO SE
*Bar Number:*
*Bar Status:*

**Counter Claimant**

**Michael E. Nelson**

represented by **Michael E. Nelson**
9450 SW Gemini Drive
PMB 90924
Beaverton, OR 97008−7105
Email:
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Counter Defendant**

**United Capital Management of Kansas, Inc.**

represented by **Christopher J. Kellogg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
(See above for address)
 *TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

**Counter Defendant**

**Chad M. Koehn**                      represented by  **Christopher J. Kellogg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
(See above for address)
*TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

**Counter Defendant**

**John and Jane Does 1–15**

**Counter Defendant**

**Doe Corporations 1–15**

**Counter Defendant**

**John and Jane Does 1–25**
*TERMINATED: 06/06/2022*

**Counter Defendant**

**Doe Corporations 1–53**
*TERMINATED: 06/06/2022*

**Cross Claimant**

**Michael E. Nelson**                  represented by  **Michael E. Nelson**
(See above for address)
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Cross Defendant**

**Doe Corporations 1–53**
*TERMINATED: 06/06/2022*

**Cross Defendant**

**John and Jane Does 1–25**
*TERMINATED: 06/06/2022*

**Cross Defendant**

**United Capital Management of Kansas, Inc.**                    represented by   **Christopher J. Kellogg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
(See above for address)
*TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

**Cross Defendant**

**Chad M. Koehn**                    represented by   **Christopher J. Kellogg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21651*
*Bar Status: Active*

**Craig Alan Brand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Larry G. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14067*
*Bar Status: Active*

**Quinn Robert Kendrick**
(See above for address)
 *TERMINATED: 02/03/2022*
*Bar Number: 28455*
*Bar Status: Active*

**Cross Defendant**

**Doe Corporations 1–15**

**Cross Defendant**

**John and Jane Does 1–15**

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/01/2022 | 1 | | NOTICE OF REMOVAL from Saline Co, KS District Court, case number 2021–CV–000038–TI Trial location of Wichita, filed by Michael E. Nelson. (Attachments: # 1 State Court Records) (jsh) (Entered: 02/01/2022) |
| 02/01/2022 | 2 | | CIVIL COVER SHEET re 1 Notice of Removal by Defendant Michael E. Nelson. (jsh) (Entered: 02/01/2022) |
| 02/01/2022 | | | FILING FEE PAID: in the amount of $ 402, receipt number T4631015437. (jsh) (Entered: 02/01/2022) |
| 02/01/2022 | 3 | | MOTION for Electronic Notification and Filing by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (jsh) Modified filer on 2/2/2022. (jsh) (Entered: 02/02/2022) |
| 02/01/2022 | 7 | | ALIAS SUMMONS RETURNED EXECUTED –– Personal Service upon Michael Nelson on 1/10/2022 (originally filed in Saline Co, KS District Court on 1/21/2022). (jsh) (Entered: 02/03/2022) |
| 02/02/2022 | 4 | | NOTICE in Compliance by Michael E. Nelson. (kas) (Entered: 02/02/2022) |
| 02/02/2022 | 5 | | MOTION for Orders (titled Memorandum & Motion of Concerning Use of Hate Speech in Originating State Petition, Motion for Referral to BAR Association for Disbarment) by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (jal) (Entered: 02/02/2022) |
| 02/03/2022 | 6 | | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Quinn Robert Kendrick as to All Plaintiffs (Kendrick, Quinn) (Entered: 02/03/2022) |
| 02/03/2022 | 8 | | |

| | | MOTION for extension of time (titled: MOTION to Enlarge Time in Contemplation of Filing Dispositive Motions, Dismissal or Answer with Counter and Cross Claims or other Responsive Pleadings) by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (ca) (Entered: 02/03/2022) |
|---|---|---|
| 02/03/2022 | 9 | MEMORANDUM IN OPPOSITION by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 5 MOTION for Order (Michel, Larry) (Entered: 02/03/2022) |
| 02/04/2022 | 10 | MOTION to Strike 8 MOTION for extension of time by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Michel, Larry) (Entered: 02/04/2022) |
| 02/04/2022 | 11 | NOTICE OF SERVICE (titled: Motion for Order Notice of Compliance with Rule) by Michael E. Nelson. (ca) (Entered: 02/04/2022) |
| 02/07/2022 | 12 | MOTION (titled "MOTION for Judicial Notice in support of Paper 5 and continued DEROGATORY SLURS by Plaintiffs as 'Equal Opportunity Bigots'") by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (jal) Modified text to include complete title of document on 4/12/2022. (jsh) (Entered: 02/07/2022) |
| 02/07/2022 | 13 | MOTION to Amend/Correct 8 MOTION for extension of time by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (jal) (Entered: 02/07/2022) |
| 02/08/2022 | 14 | CERTIFICATE OF COMPLIANCE (titled: Notice of Compliance in regards to Notice of Removal as to United Capital Management of Kansas Inc.) by Defendant Michael E. Nelson. (ca) (Entered: 02/08/2022) |
| 02/08/2022 | 15 | Second MOTION to Strike 12 MOTION for Judicial Notice in support of Paper 5 DEROGATORY SLUR by Plaintiffs naming convention of companies – Demonstrating Plaintiffs as 'Equal Opportunity Bigots', 13 MOTION to Amend/Correct 8 MOTION for extension of time by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Michel, Larry) (Entered: 02/08/2022) |
| 02/08/2022 | 16 | MOTION for Order (titled "Writ of Mandamus Command to Kansas Attorney General Material Misrepresentations S.E.C. and Kansas State Law") by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (ca) Modified text to include complete title of document on 4/12/2022. (jsh) (Entered: 02/08/2022) |
| 02/09/2022 | 17 | MOTION for Order (titled: Defendant's First Motion for Definitive Statement Under Rule 12(e) as to Papers 10 & 15 ) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (ca) (Entered: 02/09/2022) |
| 02/11/2022 | 18 | CERTIFICATE OF COMPLIANCE by Defendant Michael E. Nelson. (ca) (Entered: 02/11/2022) |
| 02/11/2022 | 19 | MOTION for Order on Compliance with Rule and Judicial Notice Bad Faith Litigation by Attorneys for Plaintiff Refusal to Accept Notice of Removal by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachment: # 1 Exhibit A – List of Delivery Attempts)(msb) (Entered: 02/11/2022) |

| 02/14/2022 | 20 | | NOTICE OF SERVICE (titled "NOTICE of Delivery Of Removal Notice to the SALINE County District Court via USPS Certified Mail – EXHIBIT A & B attached hereto") by Michael Nelson of Notice of removal of state case. (Attachments: # 1 Exhibit A – Receipt of Delivery to Saline County District Court, # 2 Exhibit B – USPS Receipt to Saline County District Court)(msb) Modified to correct name of filer and modified text to include complete title of document on 4/12/2022. (jsh) (Entered: 02/14/2022) |
|---|---|---|---|
| 02/17/2022 | 21 | | Third MOTION to Strike *and Memorandum in Opposition to Defendant's Motion for More Definite Statement (Document 17)* by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Michel, Larry) (Entered: 02/17/2022) |
| 02/17/2022 | 22 | | CORPORATE DISCLOSURE STATEMENT by United Capital Management of Kansas, Inc. identifying None as corporate parent . (Michel, Larry) (Entered: 02/17/2022) |
| 02/17/2022 | 23 | | MOTION for Order (Compelling Plaintiffs to Comply with Required Rule under FRCP) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (hw) (Entered: 02/18/2022) |
| 02/18/2022 | 24 | | MOTION for attorney Craig Alan Brand to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5718711.) by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Affidavit of Craig A. Brand, # 2 ECF Registration Form)(Michel, Larry) (Entered: 02/18/2022) |
| 02/23/2022 | 25 | | NOTICE of Hearing:  <span style="color:red">THIS IS AN OFFICIAL NOTICE FOR THIS HEARING</span> 3 Re: MOTION for Electronic Notification and Filing; 5 MOTION for Order; 8 MOTION for extension of time; 10 MOTION to Strike; 12 MOTION for Judicial Notice in support of Paper 5; 13 MOTION to Amend/Correct; 15 Second MOTION to Strike; 16 MOTION for Order; 17 MOTION for Order; 19 MOTION for Order; 21 Third MOTION to Strike *and Memorandum in Opposition to Defendant's Motion for More Definite Statement;* 23 MOTION for Order; and 24 MOTION for attorney Craig Alan Brand to appear pro hac vice. Motion Hearing before Magistrate Judge Gwynne E. Birzer is set for 3/3/2022 at 01:30 PM by Video Conference – Zoom. A Zoom invitation will be sent to counsel and parties via email. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Sent to pro se party Michael E. Nelson via regular mail, 9450 SW Gemini Drive, PMB 90924, Beaverton, OR 97008–7105 and via email at oklahomaremote@gmail.com. (kf) Modified text (mls). (Entered: 02/23/2022) |
| 02/24/2022 | 26 | | ENTRY OF APPEARANCE by Christopher J. Kellogg on behalf of Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 02/24/2022) |
| 03/03/2022 | 27 | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: MOTION HEARING held on 3/3/2022 re 24 MOTION for attorney Craig Alan Brand to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5718711.) filed by United Capital Management of Kansas, Inc., Chad M. Koehn. (Tape #1:35–2:05.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/03/2022) |

| 03/03/2022 | 28 | | ORDER granting <u>24</u> Motion to Appear Pro Hac Vice of Craig Alan Brand for Chad M. Koehn and United Capital Management of Kansas, Inc. pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 3/3/22. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ala) (Entered: 03/03/2022) |
|---|---|---|---|
| 03/03/2022 | | | NOTICE Re: Pro Se Mailing: Docket Entry 28 , Order on Motion to Appear Pro Hac Vice, mailed to Michael E. Nelson at 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 on 3/3/2022 by regular mail. (ala) (Entered: 03/03/2022) |
| 03/03/2022 | 29 | | ORDER. The Court held a motion hearing in this matter. Plaintiffs appeared through counsel Christopher Kellogg and Craig Brand. Defendant Michael Nelson appeared, pro se. After discussion regarding diversity jurisdiction issues, the Court enters the following orders. Defendant, shall file an amended Notice of Removal no later than 3/14/2022. In the amended Notice of Removal Defendant shall allege 1) the citizenship of United Capital Management of Kansas, Inc. as discussed during the conference including its state of incorporation and principal place of business; 2) Chad Koehn is a citizen of Kansas; and 3) the state where Defendant is a citizen. If an amended Notice of Removal is not timely filed, an Order to Show Cause shall issue as to why the Court should not recommend this case be remanded to the District Court of Saline County, Kansas. No further motions shall be filed until there is a determination on jurisdiction in this matter. Any motions filed will be summarily denied without prejudice to refiling at a later time. Signed by Magistrate Judge Gwynne E. Birzer on 3/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/03/2022) |
| 03/13/2022 | <u>30</u> | | AMENDED Notice of Removal by Michael E. Nelson. Amendment to <u>1</u> Notice of Removal. (Attachments: # <u>1</u> Exhibit A)(ca) (Entered: 03/14/2022) |
| 03/14/2022 | <u>33</u> | | AMENDMENT to <u>2</u> Civil Cover Sheet (titled "Amended Civil Cover Sheet Per Court Order in Document Number 29") by Defendant Michael E. Nelson. (jsh) (Entered: 03/15/2022) |
| 03/14/2022 | <u>34</u> | | AMENDMENT (titled "Amendment to Time for Responsive Pleading to Petition Documents 8 & 13") re <u>8</u> MOTION for extension of time, <u>13</u> MOTION to Amend/Correct by Defendant Michael E. Nelson. (jsh) (Entered: 03/15/2022) |
| 03/15/2022 | 31 | | ORDER. Based upon the assertions of counsel at the March 3, 2022 conference, the Court's verification of filings with the Kansas Secretary of State, and review of Defendant's Amended Notice of Removal (ECF No. 30) and state court Petition (ECF No. 1–1), the Court makes the following findings regarding the citizenship of the parties: 1) Plaintiff United Capital Management of Kansas, Inc. a/k/a UnitedCapitalManagement of Kansas, Inc. is incorporated in the state of Kansas with its principal place of business in Salina, Kansas; 2) Plaintiff Chad Koehn is a citizen of the state of Kansas; and 3) Defendant Michael Nelson is a citizen of the state of Nevada. The Court FINDS Defendant has now alleged facts sufficient to establish diversity jurisdiction under 28 U.S.C. § 1332. Signed by Magistrate Judge Gwynne E. Birzer on 3/15/2022. Mailed to pro se party Michael E. Nelson 9450 SW |

| | | | |
|---|---|---|---|
| | | | Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/15/2022) |
| 03/15/2022 | 32 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 3 MOTION for Electronic Notification and Filing; 5 MOTION for Order; 8 MOTION for extension of time; 10 MOTION to Strike; 12 MOTION for Judicial Notice; 13 MOTION to Amend/Correct; 15 Second MOTION to Strike; 16 MOTION for Order; 17 MOTION for Order; 19 MOTION for Order; 21 Third MOTION to Strike and Memorandum in Opposition to Defendant's Motion for More Definite Statement; 23 MOTION for Order. Motion Hearing before Magistrate Judge Gwynne E. Birzer is set for 4/5/2022 at 01:30 PM by Zoom. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/15/2022) |
| 03/15/2022 | 35 | | NOTICE of Withdrawal of Document Number 3 by Michael E. Nelson re 3 MOTION for Electronic Notification and Filing. (jsh) (Entered: 03/15/2022) |
| 03/15/2022 | 36 | | NOTICE of Withdrawal of Document Number 23 by Michael E. Nelson re 23 MOTION for Order (Compelling Plaintiffs to Comply with Required Rule under FRCP). (jsh) (Entered: 03/15/2022) |
| 03/15/2022 | 37 | | NOTICE of Limited Withdrawal of Document Number 19 by Michael E. Nelson re 19 MOTION for Order on Compliance with Rule and Judicial Notice Bad Faith Litigation by Attorneys for Plaintiff Refusal to Accept Notice of Removal. (jsh) (Entered: 03/15/2022) |
| 03/16/2022 | 38 | | OBJECTION to 6 Notice of Withdrawal of Appearance (titled "OBJECTION – DEFICIENT Filing made in Document Number 6 By Quinn R. Kendrick Judicial Notice Per Rule 201b(2) and 201c(2) and 201(d) and 201(e)") by Michael E. Nelson. (ca) Modified title per plaintiff on 7/11/2022. (jsh) (Entered: 03/16/2022) |
| 03/16/2022 | 39 | | OBJECTION to 26 Entry of Appearance by Christopher J. Kellogg (titled "Deficient Filing made in Document Number 26 Failure of Counsel to Notice Pro Se Defendant") by Michael E. Nelson. (jsh) (Entered: 03/16/2022) |
| 03/17/2022 | 40 | | SUPPLEMENT to 30 AMENDED Notice of Removal (titled "Supplemental Evidence Rule 201 to Document 30 Amendment to Notice of Removal") by Defendant Michael E. Nelson. (Attachments: # 1 Exhibit A) (jsh) (Entered: 03/17/2022) |
| 03/17/2022 | 41 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Michael E. Nelson re 28 ORDER on 24 Motion to Appear Pro Hac Vice. (Attachments: # 1 Exhibits A – I) (jsh) (Entered: 03/18/2022) |
| 03/18/2022 | 42 | | NOTICE of Objection (titled "Objection Defendant Not Receiving Filings/Pleadings Made by Opposing Counsel") by Michael E. Nelson (jsh) (Entered: 03/18/2022) |
| 03/23/2022 | 43 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 3 MOTION for Electronic Notification and Filing; 5 MOTION for Order; 8 MOTION for extension of time; 10 MOTION to Strike; 12 MOTION |

| | | | |
|---|---|---|---|
| | | | for Judicial Notice in support of Paper 5; <u>13</u> MOTION to Amend/Correct; <u>15</u> Second MOTION to Strike; <u>16</u> MOTION for Order; <u>17</u> MOTION for Order; <u>21</u> Third MOTION to Strike *and Memorandum in Opposition to Defendant's Motion for More Definite Statement;* <u>23</u> MOTION for Order. Motion Hearing before Magistrate Judge Gwynne E. Birzer is rescheduled for <u>4/11/2022 at 10:00 AM</u> by Zoom. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive, PMB 90924, Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/23/2022) |
| 03/24/2022 | <u>44</u> | | NOTICE of Filing of Certificate of Good Standing by Chad M. Koehn, United Capital Management of Kansas, Inc. (Michel, Larry) (Entered: 03/24/2022) |
| 03/24/2022 | <u>45</u> | | NOTICE of Filing the Declaration of Mark E. Nejame by Chad M. Koehn, United Capital Management of Kansas, Inc. (Michel, Larry) (Entered: 03/24/2022) |
| 03/25/2022 | <u>46</u> | | OBJECTION(S) to <u>41</u> Appeal of Magistrate Judge Decision to District Court by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Michel, Larry) (Entered: 03/25/2022) |
| 03/27/2022 | <u>47</u> | | OBJECTION(S) to <u>44</u> Notice of Filing of Certificate of Good Standing by Michael E. Nelson. (jsh) (Entered: 03/28/2022) |
| 03/27/2022 | <u>48</u> | | RESPONSE to <u>45</u> Notice of Filing the Declaration of Mark E. Nejame (titled "NOTICE as to Document 45 and 45–1 (Exhibit 'A'") by Defendant Michael E. Nelson. (jsh) (Entered: 03/28/2022) |
| 03/29/2022 | <u>49</u> | | RESPONSE (titled: Defendant's SUR–REPLY and MEMO IN OPPOSITION to Plaintiff's Document 44, 45, 46) to <u>44</u> NOTICE of Filing of Certificate of Good Standing, <u>45</u> NOTICE of Filing the Declaration of Mark E. Nejame, <u>46</u> OBJECTION(S) to 41 Appeal of Magistrate Judge Decision to District Court, by Defendant Michael E. Nelson. (Attachments: # <u>1</u> Exhibit A)(ca) (Entered: 03/29/2022) |
| 03/31/2022 | <u>50</u> | | NOTICE TO THE COURT (titled, "NOTICE Defendant has NEVER had a sexual relationship with plaintiff Chad Mitchell Koehn") by Michael E. Nelson. (sz) Modified text to include complete title of document on 4/12/2022. (jsh) (Entered: 03/31/2022) |
| 03/31/2022 | <u>51</u> | | SUPPLEMENT to <u>41</u> Appeal of Magistrate Judge Decision to District Court by Defendant Michael E. Nelson. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F)(ca) (Entered: 03/31/2022) |
| 04/01/2022 | <u>52</u> | | NOTICE to the Court (titled, "Memorandum Regarding illegal, materially misleading email by Craig Alan Brand, Ethics & Law Violations OBJECTION to Unethical, Illegal, Immoral, Conduct at Bar by Craig Alan Brand") by Michael E. Nelson. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O, # <u>16</u> Exhibit P, # <u>17</u> Exhibit Q) (jsh) Modified on 4/4/2022 o update docket text (jal). (Entered: 04/01/2022) |
| 04/01/2022 | <u>53</u> | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Filing of Defendant's Notice of Non−Availability and Absolute Refute by the U.S. Attorney's Office in Contradiction to Defendant's Representation to the Court on March 15, 2022 by Chad M. Koehn, United Capital Management of Kansas, Inc. (Michel, Larry) (Entered: 04/01/2022) |
| 04/01/2022 | 54 | | MOTION Plaintiff's Emergency Motion Pursuant to Rule 11, Fed.R.Civ.P. and D. Kan. Rule 11.1(a)(2), for Waiver of the 21−day Waiting Period Referred to in Rule 11(c)(2), Federal Rules of Civil Procedure, Thereby Authorizing Plaintiffs to File a Motion for Sanctions Against Defendant, Michael Nelson, Instanter by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Michel, Larry) (Entered: 04/01/2022) |
| 04/01/2022 | 55 | | MEMORANDUM IN SUPPORT of 54 MOTION Plaintiff's Emergency Motion Pursuant to Rule 11, Fed.R.Civ.P. and D. Kan. Rule 11.1(a)(2), for Waiver of the 21−day Waiting Period Referred to in Rule 11(c)(2), Federal Rules of Civil Procedure, Thereby Authorizing Plaintiffs to File a Mo by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.(Michel, Larry) (Entered: 04/01/2022) |
| 04/01/2022 | 56 | | NOTICE of Spoliation of Evidence by Chad Mitchell Koehn at direction of Craig Alan Brand by Michael E. Nelson (Attachments: # 1 Exhibit A, # 2 Exhibit B)(msb) (Entered: 04/01/2022) |
| 04/04/2022 | 57 | | NOTICE (titled, "Memorandum HeraSoft email of Craig Brand Email Analysis") by Michael E. Nelson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(heo) (Entered: 04/04/2022) |
| 04/05/2022 | 58 | | OBJECTIONS (titled: Objection to Non Lawyer Non Party; Non Pro Se person receiving electronic notice not covered under Local Rules or FRCP Suspected Unauthorized Practice of Law) by Michael E. Nelson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(ca) (Entered: 04/05/2022) |
| 04/07/2022 | 59 | | OBJECTION (titled "OBJECTION To Craig Alan Brand et al Videotaping & Retaining Images & Likeness of Defendant in violation of Protected First Amendment Rights") by Michael E. Nelson. (jsh) (Entered: 04/07/2022) |
| 04/08/2022 | 60 | | RESPONSE (titled: Civil Objection to Motion in Violation of Order of Court "No Motions" With Preliminary Response in Opposition to Motion for Sanctions Document #54) by Defendant Michael E. Nelson re 54 Motion for Miscellaneous Relief. (ca) (Entered: 04/08/2022) |
| 04/11/2022 | 61 | | RESPONSE (titled "Response Memorandum in Support of preliminary Response in Opposition to illegal Motion for Sanctions Document #54 & 55") by Defendant Michael E. Nelson re 54 Plaintiff's Emergency Motion Pursuant to Rule 11 and 55 Memorandum in Support. (jsh) (Entered: 04/11/2022) |
| 04/11/2022 | 62 | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: MOTION HEARING held on 4/11/2022 re 3 MOTION for Electronic Notification and Filing, 5 MOTION for Order, 8 MOTION for extension of time, 10 MOTION to Strike, 12 MOTION for Judicial Notice, 13 MOTION to Amend/Correct, 15 Second MOTION to Strike, 16 MOTION for Order, 17 MOTION for Order, 19 MOTION for Order, 21 Third MOTION to Strike and Memorandum in Opposition to Defendant's Motion for More Definite |

| | | | Statement (Document 17), and <u>23</u> MOTION for Order. (Tape #10:05–11:40.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 04/11/2022) |
|---|---|---|---|
| 04/18/2022 | <u>63</u> | | ORDER. Defendant's Pro Se Electronic Notification and Filing Motion (ECF No. <u>3</u> ) is FOUND as MOOT. Defendant's Motion Concerning Hate Speech (ECF No. <u>5</u> ) is DENIED. However, the Court ORDERS Plaintiffs to file an Amended Complaint, removing the name "Bean" from paragraph 3 and consistently referring to Defendant as Nelson, no later than May 3, 2022. Defendant's Motion to Enlarge Time (ECF No. <u>8</u> ) is GRANTED. Defendant shall file an answer or other responsive pleading to Plaintiff's Amended Complaint no later than 21 days after service of the Amended Complaint. The Court deems the date of service for the Amended Complaint as the date when it is filed in CM/ECF. Plaintiffs' Motion to Strike (ECF No. <u>10</u> ) is DENIED. Defendant's Motion for Judicial Notice in Support of Paper 5 (ECF No. <u>12</u> ) is GRANTED in part and DENIED in part. Defendant's Motion to Amend (ECF No. <u>13</u> ) is FOUND as MOOT. Plaintiffs' Second Motion to Strike (ECF No. <u>15</u> ) is DENIED. Defendant's [Motion for] Writ of Mandamus – Command to Kansas Attorney General Material Misrepresentations S.E.C. and Kansas State Law (ECF No. <u>16</u> ) is DENIED. Defendant's Motion for More Definitive Statement (ECF No. <u>17</u> ) is FOUND as MOOT. Defendant's Motion for Order on Compliance with Rule (ECF No. <u>19</u> ) is FOUND as MOOT. Plaintiff's Third Motion to Strike and Memorandum in Opposition to Defendant's Motion for More Definite Statement (ECF No. <u>21</u> ) is DENIED. Defendant's Motion for Order Compelling Plaintiffs to Comply with Required Rule Under FRCP (ECF No. <u>23</u> ) is FOUND as MOOT. Although no motion was filed regarding these issues, to the extent necessary, the Court OVERRULES Defendant's Objection Deficient Filing Made in Document Number 6 filed by Quinn Robert Kendrick (ECF No. <u>38</u> ) and Defendant's Objection to Document Number 26 Entry of Appearance by Christopher J. Kellogg (ECF No. <u>39</u> ). Defendant's Supplement to Document Number 30 Amended Notice of Removal (ECF No. <u>40</u> ) is FOUND as MOOT. After further discussion with the Court Clerk's office regarding service of pleadings, the Court SUSTAINS Objection Defendant Not Receiving Filings Made by Opposing Counsel (ECF No. <u>42</u> ). Although the Court encourages Defendant to register for electronic notification, the Court ORDERS Plaintiffs to provide Defendant with a hard copy of any future filings via U.S. mail and to certify service of same. Plaintiffs' counsel and Defendant shall separately submit a proposed solution regarding communications and necessary conferral to chambers at KSD_Birzer_Chambers@ksd.uscourts.gov no later than April 19, 2022. No further ruling is necessary on Notice to the Court (ECF No. <u>50</u> ). Plaintiffs' did not file a motion, no ruling is necessary on Plaintiffs' Notice of Filing Defendant's Notice of Non–Availability and Absolute Refute by the US Attorney's Office in Contradiction to Defendant's Representation to the Court on March 15, 2022 (ECF No. <u>53</u> ). No reply or further pleading in support or opposition to Plaintiff's Emergency Motion Pursuant to Rule 11, Fed.R.Civ.P. and D. Kan. Rule 11.1(a)(2), for Waiver of the 21–day Waiting Period Referred to in Rule 11(c)(2), Federal Rules of Civil Procedure, Thereby Authorizing Plaintiffs to File a Motion for Sanctions Against Defendant, Michael Nelson, Instanter (ECF No. <u>54</u> ) will be permitted. Defendant's Notice of Spoliation of Evidence by Chad Mitchell Koehn at direction of Craig Alan Brand (ECF No. <u>56</u> ) is FOUND as MOOT. Although no motion was filed |

| | | | regarding these issues, to the extent necessary, the Court OVERRULES Objection to Non Lawyer Non Party; Non Pro Se Person Receiving Electronic Notice not Covered under Local Rules or FRCP Suspected Unauthorized Practice of Law (ECF No. 58 ). A Status Conference is scheduled in this case for 4/26/2022 at 11:00 a.m. via Zoom. A Zoom invitation will be sent to counsel and parties prior to the conference. The parties shall not file any additional pleadings until after the Status Conference on April 26, 2022 is held. Signed by Magistrate Judge Gwynne E. Birzer on 4/18/2022. Mailed to pro se defendant Michael E. Nelson at 9450 SW Gemini Dr. PMB 90924 Beaverton, OR 97008−7105 by regular mail. (mam) (Entered: 04/18/2022) |
|---|---|---|---|
| 04/18/2022 | | | **Status Conference set for 4/26/2022 at 11:00 AM before Magistrate Judge Gwynne E. Birzer by Zoom. (mam)** (Entered: 04/18/2022) |
| 04/26/2022 | 64 | | FIRST AMENDED COMPLAINT against Michael E. Nelson, filed by United Capital Management of Kansas, Inc., Chad M. Koehn. (Kellogg, Christopher) (Entered: 04/26/2022) |
| 04/26/2022 | 65 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Plaintiffs' First Amended Complaint (Kellogg, Christopher) (Entered: 04/26/2022) |
| 04/26/2022 | 66 | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 4/26/2022. (Tape #11:00−11:30.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 04/26/2022) |
| 04/27/2022 | 67 | | ORDER – The parties shall not file any additional pleadings until Defendant files his responsive pleading to Plaintiffs' Amended Complaint. Defendant's deadline to file a responsive pleading is May 17, 2022. See Order for details. Signed by Magistrate Judge Gwynne E. Birzer on 4/27/2022. Mailed to pro se party Michael E. Nelson by regular mail. (kas) (Entered: 04/27/2022) |
| 05/02/2022 | 68 | | (VIEW RESTRICTED Document stricken per DE 183) Objection to Order of Magistrate Judge re 63 ORDER (titled "Appeal of Order Document Number 63") by Defendant Michael E. Nelson. (jsh) Modified text on 9/1/2022 (msb). (Entered: 05/02/2022) |
| 05/14/2022 | 69 | | (VIEW RESTRICTED – Stricken per DE 183) MOTION to Dismiss by Defendant Michael E. Nelson. (Attachments: # 1 Certificate of Service) (jsh) Modified text on 9/1/2022 (msb). (Entered: 05/16/2022) |
| 05/16/2022 | 70 | | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: A Scheduling Conference before Magistrate Judge Gwynne E. Birzer is set for 8/2/2022 at 10:00 AM by Video Conference – Zoom. A Zoom invitation will be sent via email to counsel and parties prior to the conference. Rule 26 Planning Conference Deadline 7/12/2022. Report of Parties Planning Conference and Rule 26 Initial Disclosures Deadline due 7/26/2022. See Initial Order for additional details. Signed by Magistrate Judge Gwynne E. Birzer on 5/16/2022. (kf) (Entered: 05/16/2022) |
| 05/16/2022 | 71 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN SUPPORT of 69 MOTION to Dismiss by Defendant Michael E. Nelson. (Attachments: # 1 Certificate of Service) (jsh) Modified text on 9/2/2022 (msb). (Entered: 05/17/2022) |

| 05/17/2022 | 72 | | ANSWER to 64 Amended Complaint (titled, Preliminary Answer with Preliminary Cross and Counter Complaints Third Party Attachments) by Michael E. Nelson. (Attachments: # 1 Certificate of Service)(heo) (Entered: 05/18/2022) |
|---|---|---|---|
| 05/17/2022 | 73 | | MOTION to Dismiss (titled "MOTION to Dismiss Rule 12b(6) No relief cannot be granted OWNERSHIP of SLAVES is Prohibited in the United States of America") by Defendant Michael E. Nelson (jsh) (Entered: 05/18/2022) |
| 05/17/2022 | 74 | | COUNTERCLAIM against United Capital Management of Kansas, Inc., Chad M. Koehn, Doe Corporations 1–53, John and Jane Does 1–25, CROSSCLAIM against United Capital Management of Kansas, Inc., Chad M. Koehn, Doe Corporations 1–53, John and Jane Does 1–25, filed by Michael E. Nelson. (Attachments: # 1 Certificate of Service)(heo) (Modified on 6/17/2022 to correct counter/cross defendant. (heo)) (Entered: 05/18/2022) |
| 05/18/2022 | 75 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) OBJECTION(S) to *Defendant's Objection Appealing the Magistrate Judge's Order* by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Michel, Larry) Modified text on 9/2/2022 (msb). (Entered: 05/18/2022) |
| 05/23/2022 | 76 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) OBJECTION(S) to 69 MOTION to Dismiss *Plaintiff's Memorandun in Opposition* by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Michel, Larry) Modified text on 9/2/2022 (msb). (Entered: 05/23/2022) |
| 05/23/2022 | 77 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled "Sur–Reply to Plaintiffs Opposition Memorandum in Doc 75, stated as an objection to Rule 72 Appeal in Doc 68") by Defendant Michael E. Nelson re: 68 Objection to Order of Magistrate Judge. (jsh) Modified text on 9/2/2022 (msb). (Entered: 05/23/2022) |
| 05/26/2022 | 78 | | ORDER: After reviewing the Magistrate Judge's order (Doc. 28) and Plaintiff's Filing of a Certificate of Good Standing (Doc. 44), the court DENIES Defendants objections (Doc. 41) as meritless. Entered by District Judge John W. Broomes on 05/26/2022.Mailed to pro se party Michael E. Nelson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(jmr) (Entered: 05/26/2022) |
| 05/26/2022 | 79 | | MOTION to Dismiss *Counterclaims and Crossclaims* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (Michel, Larry) (Entered: 05/26/2022) |
| 05/26/2022 | 80 | | MEMORANDUM IN SUPPORT of 79 MOTION to Dismiss *Counterclaims and Crossclaims* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc.(Michel, Larry) (Entered: 05/26/2022) |
| 05/30/2022 | 81 | | (VIEW RESTRICTED – Stricken per DE 183) Objection to Order of Magistrate Judge (titled "Appeal of Order Document Number 70") re 70 Initial Order Regarding Planning and Scheduling by Defendant Michael E. Nelson. (jsh) Modified text on 9/1/2022 (msb). (Entered: 05/31/2022) |
| 05/31/2022 | 82 | | (VIEW RESTRICTED – Stricken per DE 183) MEMORANDUM IN OPPOSITION by Plaintiffs Chad M. Koehn, United Capital Management of |

| | | | |
|---|---|---|---|
| | | | Kansas, Inc. re <u>81</u> Objection to Order of Magistrate Judge re <u>70</u> Initial Order Regarding Planning and Scheduling by Defendant Michael E. Nelson (Michel, Larry) Modified text on 9/2/2022 (msb). (Entered: 05/31/2022) |
| 06/06/2022 | <u>83</u> | | FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM COMPLAINT against John and Jane Does 1–15, Doe Corporations 1–15, Chad M. Koehn, United Capital Management of Kansas, Inc., filed by Michael E. Nelson.(ca) (Modified on 6/17/2022 to correct cross/counter defendant. (heo)) (Entered: 06/08/2022) |
| 06/10/2022 | <u>84</u> | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION re: <u>81</u> Objection to Order of Magistrate Judge (titled "Sur–Reply to Document 82 objection to Defendants Rule 72 Appeal in Document 81") by Defendant Michael E. Nelson. (jsh) Modified text on 9/2/2022 (msb). (Entered: 06/13/2022) |
| 06/13/2022 | <u>85</u> | | MOTION to Dismiss *Counter–Plaintiffs First Amended Counterclaims and Crossclaims (D. 83)* by Cross Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (Michel, Larry) (Entered: 06/13/2022) |
| 06/13/2022 | <u>86</u> | | MEMORANDUM IN SUPPORT of <u>85</u> MOTION to Dismiss *Counter–Plaintiffs First Amended Counterclaims and Crossclaims (D. 83)* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc.(Michel, Larry) (Entered: 06/13/2022) |
| 06/16/2022 | <u>87</u> | | MOTION to Continue Scheduling Conference and MOTION to Stay Discovery (titled "Motion for Resetting of proceedings scheduled for 2 August 2022 and postponement of Rule 26f conference for cause") by Defendant Michael E. Nelson. Response deadline 6/30/2022. (referred to Magistrate Judge Gwynne E. Birzer) (jsh) (Entered: 06/17/2022) |
| 06/21/2022 | 88 | | ORDER denying <u>87</u> Motion to Continue and denying <u>87</u> Motion to Stay Discovery. The undersigned Magistrate Judge acknowledges there could be changes to the parties' claims based upon the pending motions to dismiss and anticipated motion for leave to amend complaint. However, the parties engaged the Court in extensive motion practice before Defendant filed a responsive pleading allowing an Initial Order Regarding Planning and Scheduling to be entered. It is important to the goals of Fed. R. Civ. P. 1 to keep the case moving forward. The Scheduling Conference set for 8/2/2022 at 10:00 a.m. by Zoom will proceed as scheduled. Mailed to pro se defendant Michael E. Nelson at 9450 SW Gemini Dr. PMB 90924 Beaverton, OR 97008–7105 by regular mail. Signed by Magistrate Judge Gwynne E. Birzer on 6/21/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 06/21/2022) |
| 07/01/2022 | <u>89</u> | | (VIEW RESTRICTED – Stricken per DE 183) MOTION to Dismiss <u>64</u> First Amended Complaint (titled "Motion to Dismiss SLAPP Suit/petition by Plaintiff's in violation of Law Motion to STRIKE and Dismiss") by Defendant Michael E. Nelson. (ca) Modified title on 8/8/2022. (jsh) Modified text on 9/1/2022 (msb). (Entered: 07/01/2022) |
| 07/01/2022 | <u>90</u> | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN SUPPORT of <u>89</u> MOTION to Dismiss (titled "Memorandum in support of Motion to Dismiss SLAPP Suit/petition by Plaintiff's in violation of Law Motion to STRIKE") by Defendant Michael E. Nelson. (ca) Modified title on |

| | | | |
|---|---|---|---|
| | | | 8/8/2022. (jsh) Modified text on 9/2/2022 (msb). (Entered: 07/01/2022) |
| 07/06/2022 | 91 | | (VIEW RESTRICTED – Stricken per DE 183) Objection to Order of Magistrate Judge (titled: Appeal of Magistrate Judge Denial of Motion for Stay and Resetting Hearing Appeal Under Rule 72) re 88 Order on Motion to Continue, Order on Motion to Stay Discovery, by Defendant Michael E. Nelson (Attachments: # 1 Memorandum in Support of Objection)(ca) Modified text on 9/1/2022 (msb). (Entered: 07/06/2022) |
| 07/06/2022 | 92 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) RESPONSE by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 89 Motion to Dismiss (Michel, Larry) Modified text on 9/2/2022 (msb). (Entered: 07/06/2022) |
| 07/08/2022 | 93 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) RESPONSE by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 91 Objection to Order of Magistrate Judge, (Michel, Larry) Modified text on 9/2/2022 (msb). (Entered: 07/08/2022) |
| 07/22/2022 | 94 | | (VIEW RESTRICTED – Stricken per DE 183) MOTION to Disqualify Counsel: pro hac vice CRAIG ALAN BRAND by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (hw) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/1/2022 (msb). (Entered: 07/22/2022) |
| 07/22/2022 | 95 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN SUPPORT (titled, Memorandum of Law on Motion to Disqualify Counsel: CRAIG ALAN BRAND) of 94 MOTION to Disqualify Counsel by Defendant Michael E. Nelson.(hw) (Modified on 8/3/2022 to add title. (heo)) Modified text on 9/2/2022 (msb). (Entered: 07/22/2022) |
| 07/24/2022 | 96 | | (VIEW RESTRICTED – Stricken per DE 183) Motion for Judicial Notice under Federal Rule 201, pursuant with the codified law of Congress under Rule 201c(2) without limitation as to the Statement of Fact NOTICED HEREIN, regarding filings signed under PENALTY of PERJURY by CHAD MITCHELL KOEHN on behalf of himself and UNITED CAPITAL MANAGEMENT OF KANSAS INC. and as to other statements of FACT concerning the attached Exhibits A through G incorporated herein Request for Judicial Notice under Rule 201 by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(sz) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/1/2022 (msb). (Entered: 07/25/2022) |
| 07/25/2022 | 97 | | MOTION for extension of time *to complete initial disclosures and file report of parties' planning conference* by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Michel, Larry) (Entered: 07/25/2022) |
| 07/25/2022 | 99 | | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Judicial Notice under FRCP Rule 201 without limitation regarding CRIMINAL CHARGES against CHAD MITCHELL KOEHN 8 January 2022; alleged by Informant as: DESTRUCTION of EVIDENCE ordered by CHAD MITCHELL KOEHN's ATTORNEYS by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A, # 2 Exhibit B)(ca) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/1/2022 (msb). (Entered: 07/26/2022) |
| 07/26/2022 | 98 | | ORDER finding as moot 79 Motion to Dismiss in light of the filing of the amended counterclaim (Doc. 83). Signed by District Judge John W. Broomes on 7/26/22.Mailed to pro se party Michael Nelson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (rs) (Entered: 07/26/2022) |
| 07/26/2022 | 100 | | ORDER denying 97 Plaintiffs' Motion for Extension of Time. The undersigned is not inclined to extend the deadlines. Plaintiffs shall submit the report of the parties' planning conference, along with copies of the parties' Rule 26(a) initial disclosures, to chambers today as previously ordered. The Scheduling Conference will remain on August 2, 2022 at 10:00 a.m. by video conference – Zoom. Signed by Magistrate Judge Gwynne E. Birzer on 7/26/2022. Order e–mailed to pro se party Michael E. Nelson. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 07/26/2022) |
| 07/26/2022 | 101 | | (VIEW RESTRICTED – Stricken per DE 183) Application/MOTION of demand for Default Judgment by Counter Claimant Michael E. Nelson. (heo) Modified text on 9/2/2022 (msb). (Entered: 07/26/2022) |
| 07/26/2022 | 102 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN SUPPORT of 101 Application/MOTION of demand for Default Judgment by Counter Claimant Michael E. Nelson. (heo) Modified text on 9/2/2022 (msb). (Entered: 07/26/2022) |
| 07/26/2022 | 103 | | CERTIFICATE OF SERVICE regarding delivery of First Limited Discovery by Defendant Michael E. Nelson. (heo) Modified on 7/27/2022 to update event (jal). (Entered: 07/26/2022) |
| 07/26/2022 | 104 | | (VIEW RESTRICTED – Stricken per DE 183) CERTIFICATE OF SERVICE regarding delivery of DISCLOSURES per Rule 26 and in accordance with Rule 26(f)conference and ORDER of the Court by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (ca) Modified on 7/27/2022 to update event (jal). Modified text on 9/2/2022 (msb). (Entered: 07/27/2022) |
| 07/26/2022 | 105 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2)NOTICE OF SERVICE of of Rule 26 disclosures and REQUEST for Order of Compliance by Michael E. Nelson (msb) Modified text on 9/2/2022 (msb). (Entered: 07/27/2022) |
| 07/27/2022 | | | NOTICE OF DOCKET TEXT MODIFICATION by Deputy Clerk regarding Docket Entries 103 & 104 : These entries have been changed from pending motions to Certificates of Service at the direction of chambers. (jal) (Entered: 07/27/2022) |
| 07/27/2022 | 106 | | OBJECTION(S) to 103 MOTION for Order by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 07/27/2022) |
| 07/27/2022 | 107 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital |

| | | | Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 101 MOTION for Default Judgment (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 07/27/2022) |
|---|---|---|---|
| 07/27/2022 | 108 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 94 MOTION to Disqualify Counsel (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 07/27/2022) |
| 07/27/2022 | 109 | | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Order (titled: OBJECTION as to False statements made by Plaintiff's in the document titled: "PLAINTIFF'S INITIAL DISCLOSURES"; Clear Violation of Rules of Professional Conduct requiring TRUTHFULNESS in Statements to Others and Truthfulness and Candor to the Court by Attorneys Licensed to Appear before the Court; MOTION FOR ORDER preventing further untruthfulness in filings) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A – Plaintiff's Initial Disclosures, # 2 Exhibit B – Memorandum of ESI for Discovery, # 3 Exhibit C – Guidelines for Cases Involving ESI, # 4 Exhibit D – Pillars of Professionalism)(msb) Modified text to place full title of pleading on 8/3/2022 (msb). Modified text on 9/1/2022 (msb). (Entered: 07/28/2022) |
| 07/28/2022 | 110 | | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Judicial Notice regarding Seach Engine 'GOOGLE' Results for Plaintiff: UNITED CAPITAL MANAGEMENT OF KANSAS INC. as to fact no "defamatory" listings appear anywhere within the results as of PRESENT: 28 July 2022; nor do any negative search results appear in the past by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(sz) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/2/2022 (msb). (Entered: 07/28/2022) |
| 07/29/2022 | 111 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Plaintiffs' Initial Disclosures (Kellogg, Christopher) (Entered: 07/29/2022) |
| 07/29/2022 | 112 | | ORDER denying 54 Plaintiffs' Emergency Motion Pursuant to Rule 11, Fed.R.Civ.P. and D. Kan. Rule 11.1(a)(2), for Waiver of the 21–day Waiting Period Referred to in Rule 11(c)(2), Federal Rules of Civil Procedure, Thereby Authorizing Plaintiffs to File a Motion for Sanctions Against Defendant, Michael Nelson, Instanter. Signed by Magistrate Judge Gwynne E. Birzer on July 29, 2022. Mailed to pro se party Michael E. Nelson by regular mail. (mls) (Entered: 07/29/2022) |
| 07/29/2022 | 113 | | MOTION for Recusal by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (Attachments: # 1 Motion Verified by Chad Koehn)(Kellogg, Christopher) (Entered: 07/29/2022) |
| 07/29/2022 | 114 | | MEMORANDUM IN SUPPORT of 113 MOTION for Recusal by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.(Kellogg, Christopher) (Entered: 07/29/2022) |
| 07/31/2022 | 116 | | |

| | | |
|---|---|---|
| | | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Order (titled, "Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022) by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(heo) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/2/2022 (msb). (Entered: 08/01/2022) |
| 08/01/2022 | 115 | ORDER REFERRING MOTION to Magistrate Judge Gwynne E. Birzer re 113 MOTION for Recusal filed by United Capital Management of Kansas, Inc., Chad M. Koehn. Entered by District Judge John W. Broomes on 08/01/2022.Mailed to pro se party Michael E. Nelson by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(jmr) (Entered: 08/01/2022) |
| 08/01/2022 | 117 | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Order (titled, "Motion for Judicial Notice as to Regulator Filings, Secretary of State Filings, Disclosures and LAWSUITS regarding UCM and Chad M. Koehn and their affiliates (conspirators)") by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(heo) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/2/2022 (msb). (Entered: 08/01/2022) |
| 08/01/2022 | 118 | MOTION for Miscellaneous Relief (titled,"EMERGENCY Subpoena Request as to Depositions, Discovery Files and Sexual Settlements which are belived demonstrate misogyny tendencies of: CHAD MITCHELL KOEHN being a misogynist; these records are needed immediately to avoid a miscarriage of Justice involving a Recusal Motion filed by Chad M. Koehn and UCM against presiding Federal Magistrate Birzer who is identifiable as a female, INSTANTER") by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (heo) (Modified on 8/3/2022 to correct title. (heo)) (Entered: 08/01/2022) |
| 08/01/2022 | 119 | (VIEW RESTRICTED – Stricken per DE 183) MOTION for Order (titled, "Motion for Judicial Notice regarding Deliberate "HIDING" and Concealing of Material FACTS, by Craig Alan Brand and Chad Mitchell Koehn as the relate to HERA SOFTWARE DEVELOPMENT INC. a/k/a Hera Soft") by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A)(heo) (Modified on 8/3/2022 to correct title. (heo)) Modified text on 9/2/2022 (msb). (Entered: 08/01/2022) |
| 08/01/2022 | 120 | MOTION for Miscellaneous Relief (titled, "EMERGENCY Subpoena Request as to CRIMINAL RECORDS of CHAD MITCHELL KOEHN relating to alleged incident 8 January 2022 involving alleged Destruction of Evidence via fire REQUEST for Subpoena Issuance INSTANTER) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A)(heo) (Modified on 8/3/2022 to correct title. (heo)) (Entered: 08/01/2022) |
| 08/02/2022 | 121 | |

| | | | |
|---|---|---|---|
| | | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: SCHEDULING CONFERENCE held on 8/2/2022. (Tape #10:00–11:20.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 08/02/2022) |
| 08/03/2022 | 122 | | SCHEDULING ORDER: Jointly proposed Protective Order 8/31/2022. Parties separate proposed ESI protocols 8/31/2022. First monthly status conference before Magistrate Judge Gwynne E. Birzer is set for 9/6/2022 at 08:30 AM by Zoom. Production of documents identified in initial disclosures 9/30/2022. Mediation Notice due 2/7/2023. Discovery deadline 3/10/2023. Mediation deadline 3/17/2023. Proposed Pretrial Order due by 3/29/2023. Final motions Conference before Magistrate Judge Gwynne E. Birzer. is set for 4/5/2023 at 11:00 AM by Zoom. Dispositive motion deadline 4/19/2023. The parties shall refrain from filing any affirmative motions until further order of the court. The only exceptions are: 1) any motion for leave to amend filed on or before the deadline set forth in this order; and 2) Plaintiffs' motion for leave to seal. Plaintiffs' motion for leave to seal shall be filed no later than 8/12/2022 with responsive pleadings served as per local rule. The motion and response are limited to ten pages, with any reply limited to 5 pages. Any other motions filed will be summarily denied. Defendant shall serve a hard copy of his initial requests for admission and requests for production of documents to United Capital Management of Kansas, Inc. on counsel via U.S. Mail. He shall file a Certificate of Service as discussed during the conference. Per Fed. R. Civ. P. 5(b)(2)(C), United Capital Management of Kansas, Inc.'s 30–day response time will begin to run on the date the discovery requests are mailed. SEE ORDER FOR ADDITIONAL DETAILS. Signed by Magistrate Judge Gwynne E. Birzer on 8/3/2022. Mailed to pro se party Michael E. Nelson by regular mail. (kf) (mam). (Entered: 08/03/2022) |
| 08/03/2022 | 123 | | ORDER. At the 8/2/2022 Scheduling Conference, the Court discussed electronic notification, registration as a filing user, and service of discovery with the parties. During the conference the Court indicated it would not require Plaintiffs to serve discovery via mail. Following the conference the Court further considered this issue. At this time, Defendant has not registered as a filing user with the Court therefore he has not consented to the electronic service of documents. See D. Kan. R. 5.4.2(e). Plaintiffs shall serve hard copies of all pleadings filed with the Court as well as all discovery and disclosures identified in D. Kan. R. 26.3(a) on Defendant via U. S. Mail at the address Defendant provided to the Court and certify same to the Court per D. Kan. R. 5.1(g), 5.4.9(c), and 26.3(c). IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 8/3/2022. Mailed to pro se party Michael E. Nelson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 08/03/2022) |
| 08/03/2022 | 124 | | DOCKET ANNOTATION re 122 Scheduling Order: Document is attached for noticing purposes. (mam) (Entered: 08/03/2022) |
| 08/03/2022 | 125 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re: 119 Motion for Order, (Kellogg, Christopher) DISREGARD – WRONG EVENT USED. (mls) Modified text on 9/2/2022 (msb). (Entered: 08/03/2022) |

| 08/03/2022 | 126 | | RESPONSE by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 120 Motion for Miscellaneous Relief, (Kellogg, Christopher) (Entered: 08/03/2022) |
|---|---|---|---|
| 08/03/2022 | 127 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. and Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 119 MOTION for Order. RE–DOCKETED – 125 was incorrectly docketed with the wrong event REPLY TO RESPONSE TO MOTION. (mls) Modified text on 9/2/2022 (msb). (Entered: 08/04/2022) |
| 08/04/2022 | 128 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Plaintiff/Counter–Defendants' First Interrogatories to Defendant/Counter–Plaintiff Michael Nelson (Kellogg, Christopher) (Entered: 08/04/2022) |
| 08/04/2022 | 129 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 96 MOTION (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/04/2022) |
| 08/04/2022 | 130 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 99 MOTION for Order (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/04/2022) |
| 08/04/2022 | 131 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 116 MOTION for Order (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/04/2022) |
| 08/05/2022 | 132 | | (VIEW RESTRICTED – Stricken per DE 183) RESPONSE by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 117 Motion for Order,, (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/05/2022) |
| 08/06/2022 | 133 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION by Defendant Michael E. Nelson re: 94 Motion to Disqualify Counsel. (Document titled "Sur–Reply Response to the Opposition Memorandum filed against the Motion to Disqualify lawyer Craig Alan Brand") (Attachments: # 1 Exhibit)(sz) Modified text on 9/2/2022 (msb). (Entered: 08/08/2022) |
| 08/08/2022 | 134 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION by Defendant Michael E. Nelson re: 101 Motion for Default Judgment (Document titled "Response to Doc. 107 Opposition Memorandum to DEMAND Application of Default Judgment Pursuant With Federal Rules of Civil Procedure Inclusive Without Limitation Rule 55') (Attachments: # 1 Exhibit)(sz) Modified text on 9/2/2022 (msb). (Entered: 08/08/2022) |

| 08/08/2022 | 135 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled: Sur–Reply to Response Regarding HeraSoftCoding for Judicial Notice; this sur–reply is to doc. 125 a response to initially Filed Request for Judicial Notice made in doc. 119 Deliberate "HIDING" and Concealing of Material FACTS, by Craig Alan Brand and Chad Mitchell Koehn as the relate to HERA SOFTWARE DEVELOPMENT INC. a/k/a Hera Soft) by Defendant Michael E. Nelson: Re: 119 Motion for Order (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(msb) Modified text on 9/2/2022 (msb). (Entered: 08/09/2022) |
| 08/09/2022 | 136 | | RESPONSE (titled, "RESPONSE to Motion for Recusal of Federal Magistrate Birzer as demanded by Chad Mitchell Koehn and United Capital Management of Kansas Inc. in Documents 113, 113–1 and 114") by Defendant Michael E. Nelson re 113 Motion for Recusal. (heo) (Entered: 08/10/2022) |
| 08/11/2022 | 137 | | REPLY TO RESPONSE TO MOTION (titled: Sur–Reply to Doc. 126 Memo in Opposition to Doc. 120 Motion for EMERGENCY Subpoena Regarding CRIMINAL RECORDS of Chad Mitchell Koehn – Destruction of Evidence via fire; REQUEST for Subpoena Issuance INSTANTER) by Defendant Michael E. Nelson: Re: 120 Motion for Miscellaneous Relief, (msb) (Entered: 08/11/2022) |
| 08/11/2022 | 138 | | OBJECTION to 128 Notice of Service (titled, "OBJECTION to Notice of Service of Process filed 4 August 2022 filed as: "NOTICE OF SERVICE OF DISCOVERY REQUESTS" Document 128") by Michael E. Nelson. (heo) (Entered: 08/12/2022) |
| 08/11/2022 | 139 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled, "Sur–Reply to Document 129 Memo in Opposition to Document 96; Motion for Judicial Notice under Federal Rule 201, pursuant with the codified law of Congress under Rule 201c(2) without limitation as to the Statements of Fact NOTICED HEREIN, regarding filings signed under PENALTY of PERJURY by CHAD MITCHELL KOEHN on behalf of himself and UNITED CAPITAL MANAGEMENT OF KANSAS INC. and as to other statements of FACT concerning the attached Exhibits A through G incorporated herein Request for Judicial Notice under Rule 201") by Defendant Michael E. Nelson re: 96 Motion for Judicial Notice. (heo) Modified text on 9/2/2022 (msb). (Entered: 08/12/2022) |
| 08/12/2022 | 140 | | MOTION for Order *to Seal Future Court Filings to be Made by Defendant/Counter–Plaintiff, Michael Nelson, Incorporating Memorandum of Law* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Kellogg, Christopher) (Entered: 08/12/2022) |
| 08/12/2022 | 141 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled, "Sur Reply to Doc 132 Memorandum in Opposition to Document 117; Motion for Judicial Notice as to Regulatory Filings, Secretary of State Filings, Disclosures and LAWSUITS regarding UCM and Chad M. Koehn and their affiliates (conspirators)") by Defendant Michael E. Nelson re: 117 Motion for Order. (heo) Modified text on 9/2/2022 |

| | | | |
|---|---|---|---|
| | | | (msb). (Entered: 08/12/2022) |
| 08/14/2022 | 142 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled, "Sur Reply to Document 130 Memo in Opposition to Document 99; Motion for Judicial Notice under FRCP Rule 201 without limitation regarding CRIMINAL CHARGES against CHAD MITCHELL KOEHN stemming from INCIDENT 8 January 2022; alleged by Informant as: DESTRUCTION of EVIDENCE ordered by CHAD MITCHELL KOEHN's ATTORNEYS") by Defendant Michael E. Nelson re: 99 Motion for Judicial Notice. (heo) Modified text on 9/2/2022 (msb). (Entered: 08/15/2022) |
| 08/14/2022 | 143 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled, "Sur–Reply to Document 131 Memo in Opposition to Document 116; Motion for Judicial Notice regarding Search Engine 'GOOGLE' Results for Plaintiff: Chad Mitchell Koehn a/k/a Chad M. Koehn to fact no "defamatory" listings appear in Google as of PRESENT: 30 July 2022") by Defendant Michael E. Nelson re: 116 Motion for Order. (heo) Modified text on 9/2/2022 (msb). (Entered: 08/15/2022) |
| 08/15/2022 | 144 | | (VIEW RESTRICTED – Stricken per DE 183) Objections and MOTION for Review (titled, "Objections and Appeal of Order of Federal Magistrate issuance of Scheduling Order Appeal under Rule 72 ERRORS IN LAW, Procedure, Misapplied State Statutes Constitutional Rights") re: 122 Scheduling Order by Defendant Michael E. Nelson. (heo) Modified text on 9/2/2022 (msb). (Entered: 08/15/2022) |
| 08/17/2022 | 145 | | OBJECTION(S) to 138 Objection(s) *to Plaintiffs' Notice of Service of Process Filed August 4, 2022 (Docket No. 128)* by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Attachments: # 1 Exhibit "A")(Kellogg, Christopher) (Entered: 08/17/2022) |
| 08/17/2022 | 146 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) OBJECTION(S) to 144 MOTION for Review by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/17/2022) |
| 08/18/2022 | 147 | | OBJECTION(S) to *Defendant's Improperly Emailed July 26, 2022, First Limited Requests for Admissions and Production of Documents, and Request for Statements of United Capital Management of Kansas, Inc.* by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 08/18/2022) |
| 08/19/2022 | 148 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) RESPONSE by Plaintiff United Capital Management of Kansas, Inc., Counter Defendant United Capital Management of Kansas, Inc. re 144 Motion for Review, *(Redocketed)* (Kellogg, Christopher) Modified text on 9/2/2022 (msb). (Entered: 08/19/2022) |
| 08/19/2022 | 149 | | RESPONSE (titled, "Memorandum in Opposition, incorporating Memorandum of Law to Motion to Seal Future Filings Document 140") by Defendant Michael E. Nelson re 140 Motion for Order. (heo) (Entered: 08/19/2022) |
| 08/19/2022 | 150 | | |

| | | | CERTIFICATE OF SERVICE of <u>149</u> Memorandum in Opposition, incorporating Memorandum of Law to Motion to Seal Future Filings Document 140 by Michael E. Nelson. (heo) (Entered: 08/19/2022) |
|---|---|---|---|
| 08/19/2022 | <u>151</u> | | OBJECTIONS (titled, "Objections to UCMK's flouting of FRCP in the Early Rule 34 Demands/Requests confirmed by UCMK they are in receipt and MUST produce not later than 26 August 2022") by Michael E. Nelson. (heo) (Entered: 08/19/2022) |
| 08/22/2022 | <u>152</u> | | (VIEW RESTRICTED – Stricken per DE 183) NOTICE of Violations to Rule 83.6.1 Committed Ad Nauseum by attorney: Lawrence ("Larry") Gene Michel Bar # 14067 by Michael Nelson. (sz) Modified on 8/23/2022 to correct title. (mam) Modified text on 9/2/2022 (msb). (Entered: 08/22/2022) |
| 08/23/2022 | <u>153</u> | | (VIEW RESTRICTED – Stricken per DE 183) NOTICE of Formal Written Complaint Under Rule 83.6.3 by Michael E. Nelson. (Attachments: # <u>1</u> Envelope)(gw) Modified text on 9/2/2022 (msb). (Entered: 08/23/2022) |
| 08/23/2022 | <u>154</u> | | OBJECTION(S) to <u>147</u> Objection(s) by Michael E. Nelson. (ca) (Entered: 08/23/2022) |
| 08/23/2022 | <u>155</u> | | (VIEW RESTRICTED – Stricken per DE 183) NOTICE of Violations to Rule 83.6.1 committed ad nauseum by attorney Christopher Jon Kellogg by Michael E. Nelson. (ca) Modified text on 9/2/2022 (msb). (Entered: 08/23/2022) |
| 08/23/2022 | <u>156</u> | | (VIEW RESTRICTED – Stricken per DE 183) NOTICE to CEASE and DESIST slander, defamation, libel and famacide Directed at Michael Nelson by tortfeasors Chad Mitchell Koeh and UCMK, and their employees, agents, directors, officers, and contractors by Michael E. Nelson. (ca) Modified text on 9/2/2022 (msb). (Entered: 08/23/2022) |
| 08/24/2022 | <u>157</u> | | Objections to Motion to Seal Future Filings by Defendant Michael E. Nelson re <u>140</u> Motion for Order. (Attachments: # <u>1</u> Ex. A, # <u>2</u> Ex. B) (ca) (Entered: 08/24/2022) |
| 08/26/2022 | <u>158</u> | | NOTICE (titled, "NOTICE OF CORRECTION Defendant, Counter–Plaintiff Nelson may have visited Kansas 45 plus years in the past when either an infant or of gestational age as a human still within the womb, the visit would have been to his Grandfather having resided in Kansas City, Kansas") by Michael E. Nelson. (heo) (Entered: 08/26/2022) |
| 08/28/2022 | <u>159</u> | | NOTICE of Request for Production of all communications with FINCEN or any other State or Federal Regulatory or Law Enforcement Body or entity in the proceeding 5 years from this date as to Chad M. Koehn and UCMK and/or any agent, employee, officer, director, affiliate, contractor, attorney, vendor by Michael E. Nelson (msb) (Entered: 08/29/2022) |
| 08/28/2022 | <u>160</u> | | NOTICE of REQUEST for Production of ALL FOIA Confidential Treatment Requests under Rule 83 of SEC's rules and regulations made by UCMK or Chad Mitchell Koehn in the preceding 5 years from this date by Michael E. Nelson (msb) (Entered: 08/29/2022) |
| 08/28/2022 | <u>161</u> | | NOTICE of Request for Production of all SEC produced ESI with copies of all SEC subpoenas or other enforcement or regulatory requests made for theproduction of all ESI relating to UCMK, Koehn, Anthem Holdings Company, HeraSoft, or Hera Software Development Inc, Anthem Vault Inc, |

| | | | Red N eek High Tech Yacht Fund, or any other entity affiliated with Chad Mitchell Koehn in the proceeding 5 years from this date including any and all agent, employee, officer, director, affiliate, contractor, attorney, vendors as to Chad M. Koehn and UCMK by Michael E. Nelson (msb) (Entered: 08/29/2022) |
|---|---|---|---|
| 08/29/2022 | 162 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) NOTICE OF CORRECTION To document 156 NOTICE to CEASE and DESIST as to tortfeasors CHAD MITCHELL KOEHN and UCMK Having been noticed that upon the docket the title Reads: "Chad Mitchell Koeh" (sic) and the "n" has been inadvertently left off therefore this is a NOTICE to Correct the Title and the Legal Notice as to CHAD MICTHELL KOEHN by Michael E. Nelson.(msb) Modified text on 9/2/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 163 | | OBJECTION to Document 145 filed by UCMK and Chad Mitchell Koehn by Michael E. Nelson. (msb) (Entered: 08/29/2022) |
| 08/29/2022 | 164 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: Candice Schultz In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Candice Shultz. (Attachment: # 1 Exhibit A – Candice Shultz Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 165 | | NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: Donald F. Hoffman, ESQ In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Donald F. Hoffman (Attachment: # 1 Exhibit A – Donald F. Hoffman Subpoena)(msb) (Entered: 08/29/2022) |
| 08/29/2022 | 166 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: ERICA JENSEN In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Erica Jensen (Attachment: # 1 Exhibit A – Erica Jensen Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 167 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENATo Issue to: Jared Schamberger In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Jared Schamberger (Attachment: # 1 Exhibit A – Jared Schamberger Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 168 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: Kelly L. Lyons In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: |

| | | | |
|---|---|---|---|
| | | | Kelly L. Lyons (Attachment: # 1 Exhibit A – Kelly L. Lyons Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 169 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (NOTICE OF FEDERAL SUBPOENA To Issue to:Kylee Anne Kolzow (DUTTON) In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Kylee Ann Kolzow (Attachment: # 1 Exhibit A – Kylee Anne Kolzow)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 170 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: Paul Douglas Aubert In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Paul Douglas Aubert (Attachment: # 1 Exhibit A – Paul Douglas Aubert Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/29/2022) |
| 08/29/2022 | 171 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: STEPHEN PLOTT In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Stephen Plott (Attachment: # 1 Exhibit A – Stephen Plott Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |
| 08/29/2022 | 172 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled NOTICE OF FEDERAL SUBPOENA To Issue to: Tresea Matney a/k/a Tresa Matney In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Tresa Matney (Attachment: # 1 Exhibit A – Tresa Matney Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |
| 08/29/2022 | 173 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: ASHLEY HOWARD In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Ashley Howard (Attachment: # 1 Exhibit A – Ashley Howard)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |
| 08/29/2022 | 174 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: CHRISTOPHER KEITH In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Christopher Keith (Attachment: # 1 Exhibit A – Christopher Keith Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |

| | | | |
|---|---|---|---|
| 08/29/2022 | 175 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: DALE DOUGLAS TAKIO In accordance with FRCP According to the Clerks of the Court provided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Dale Douglas Takio (Attachment: # 1 Exhibit A – Dale Douglas Takio Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |
| 08/29/2022 | 176 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA (titled: NOTICE OF FEDERAL SUBPOENA To Issue to: GIL GILLIAM In accordance with FRCP According to the Clerks of the Courtprovided herewith Ex. "A" notice to opposing parties Fed. R. Civ. P. 45(a)(4)) by Michael E. Nelson. Subpoena to be issued to: Gil Gilliam (Attachment: # 1 Exhibit A – Gil Gilliam Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 08/30/2022) |
| 08/30/2022 | 177 | | (VIEW RESTRICTED – Stricken per DE 183; Footnote 2) REPLY TO RESPONSE TO MOTION (titled: OBJECTION to Document 146 and reply response in opposition to objections in Document 146) by Defendant Michael E. Nelson re: 146 OBJECTIONS to 144 Motion for Review. (msb) Modified text on 9/2/2022 (msb). (Entered: 08/30/2022) |
| 08/30/2022 | 178 | | NOTICE of Update on Notice of Correction regarding Nelson being possibly in Kansas 45 plus years in the past; also correction as to visit was NOT Nelson's Grandfather, but rather his GREAT Grandfather, a statesman, attorney and banker who was dying in a hospital in Kansas City, Kansas, while Nelson was of a gestational age, the gestational age is not yet determined if considered life under Kansas Law by Michael E. Nelson. (msb) (Entered: 08/30/2022) |
| 08/31/2022 | 179 | | NOTICE to CEASE and DESIST slander, defamation, libel and famacide Directed at Michael Nelson by tortfeasors: Chad Mitchell Koehn, UCMK, Red Neck High Tech Yacht Fund, HeraSoft, Anthem Holdings Co. and UCM Advisors LLC and their employees, agents, directors, officers, and contractors by Michael E. Nelson (msb) (Entered: 08/31/2022) |
| 08/31/2022 | 180 | | NOTICE of Tampering with Counsel and violation of the OATH of attorneys making for unfair and unjust litigation denying the pro se party ability to find legal representation or legal help in the litigation Notice of Subpoena Intent to issue as to ANDREA K. SWISHER, ESQ by Michael E. Nelson. (msb) (Entered: 08/31/2022) |
| 08/31/2022 | 181 | | NOTICE of VIOLATIONS TO LOCAL RULES BY CHRISTOPHER JON KELLOGG continuing Violations of Rules of the Court under 26.3 and 83.6.1 without limitation negatively affecting and tainting the merits of the litigation being allowed toviolate the Local Rules of the Court with total impunity by Michael E. Nelson (msb) (Entered: 08/31/2022) |
| 09/01/2022 | 182 | | MEMORANDUM AND ORDER denying 113 Motion for Recusal. Signed by Magistrate Judge Gwynne E. Birzer on 9/1/2022. Mailed to pro se party Michael E. Nelson by regular mail. (kas) (Entered: 09/01/2022) |
| 09/01/2022 | 183 | | ORDER striking (SEE ORDER FOR FURTHER DETAILS) 68 Objection to Order of Magistrate Judge, 69 Motion to Dismiss, 81 Objection to Order of |

| | | | Magistrate Judge, 89 Motion to Dismiss, 91 Objection to Order of Magistrate Judge, 94 Motion to Disqualify Counsel, 96 Motion for Judicial Notice, 99 Motion for Judicial Notice, 101 Motion for Default Judgment, 109 Motion for Order, 110 Motion for Judicial Notice, 116 Motion for Order, 117 Motion for Order, 119 Motion for Order, 144 Objections and Motion for Review, 104 Certifcate of Service/Motion for Compliance, 152 Notice of Violations to rule 83.6.1, 153 Notice of Formal Written Complaint Under rule 83.6.3, 155 Notice of Violations to Rule 83.6.1 & 156 Notice to Cease and Desist. Defendant shall have 14 days from the date this order is filed to refile any motions and supporting and/or responsive briefs. Signed by District Judge John W. Broomes on 9/1/22. Mailed to pro se party Michael Nelson by regular mail. (msb) (Entered: 09/01/2022) |
|---|---|---|---|
| 09/01/2022 | 184 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Eric & Valorie Everhart. (Attachment: # 1 Exhibit A – Eric & Valorie Everhart Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 185 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Darrell & Norma Griffin. (Attachment: # 1 Exhibit A – Darrell & Norma Griffin Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 186 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Brad & Trisha Hake. (Attachment: # 1 Exhibit A – Brad & Trisha Hake Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 187 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Brad & Christine Harding. (Attachment: # 1 Exhibit A – Brad & Christine Harding Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 188 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Brian L. & Sally Keeler. (Attachment: # 1 Exhibit A – Brian L. & Sally Keeler Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 189 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Douglas & Sharon Loewen. (Attachment: # 1 Exhibit A – Douglas & Sharon Loewen Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 190 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Bob Ott. (Attachment: # 1 Exhibit A – Bob Ott Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 191 | | |

| | | | |
|---|---|---|---|
| | | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Craig & Melissa Piercy. (Attachment: # 1 Exhibit A – Craig & Melissa Piercy Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 192 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Charlotte M. Regan. (Attachment: # 1 Exhibit A – Charlotte M. Regan Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 193 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Debra Shirack. (Attachment: # 1 Exhibit A – Debra Shirack Subpoena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 194 | | ORDER. Defendant's motions asked the Court to issue certain Rule 45 subpoenas for records. Fed. R. Civ. P. 45(a)(4) requires the provision of notice and the service of a copy of the subpoena on each party. The motions do not attach the subpoena to be issued. Based upon a review of the docket, Defendant has now filed a Notice of Intent for the subpoena sought in his motion at 118 . See ECF No. 165. He may file a Notice of Intent for the subpoena sought in 120 . Therefore the Court finds as moot 118 Motion Issuance of Subpoena for Records and finds as moot 120 Motion Issuance of Subpoena for Records. Signed by Magistrate Judge Gwynne E. Birzer on 9/1/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/01/2022) |
| 09/01/2022 | 195 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Charles & Marsha Weaver (Attachments: # 1 Exhibit A – Charles & Marsha Weaver Suboena)(msb) Modified text on 9/7/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 196 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Curtis & Lisa Weninger. (Attachment: # 1 Exhibit A – Curtis & Lisa Weninger Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 197 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson. Subpoena to be issued to: Charles & Sandra Worden. (Attachment: # 1 Exhibit A – Charles & Sandra Worden Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/01/2022) |
| 09/01/2022 | 198 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Jerry Short. (Attachment: # 1 Exhibit A – Jerry Short Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 199 | | |

| | | | |
|---|---|---|---|
| | | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Jerry & Diana Mihm. (Attachment: # 1 Exhibit A – Jerry & Diana Mihm Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 200 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: John Horacek. (Attachment: # 1 Exhibit A – John Horacek Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 201 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Joyce A. Barkman. (Attachment: # 1 Exhibit A – Joyce A. Barkman Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 202 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Laura Nelson. (Attachment: # 1 Exhibit A – Laura Nelson Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 203 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Marion & Susan Dome. (Attachment: # 1 Exhibit A – Marion & Susan Dome Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 204 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Mark & Connie. (Attachment: # 1 Exhibit A – Mark & Connie Cole Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/02/2022) |
| 09/01/2022 | 205 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Michael & Roselene Braxmeyer. (Attachment: # 1 Exhibit A – Michael & Roselene Braxmeyer Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/01/2022 | 206 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Jim & Sherri Fouts. (Attachment: # 1 Exhibit A – Jim & Sherri Fouts Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/01/2022 | 207 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Joey & Alison Errington. (Attachment: # 1 Exhibit A – Joey & Alison Errington Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/01/2022 | 208 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Kelly & Rebecca Leon. (Attachment: # 1 Exhibit A – Kelly & Rebecca Leon)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |

| 09/01/2022 | 209 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Mark Lofing. (Attachment: # 1 Exhibit A – Mark Lofing Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
|---|---|---|---|
| 09/01/2022 | 210 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Douglas W. Rempp (Attachment: # 1 Exhibit A – Douglas W. Rempp Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/01/2022 | 211 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Glenn Brands. (Attachment: # 1 Exhibit A – Glenn Brands Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/02/2022 | 212 | | (VIEW RESTRICTED – WITHDRAWN PER DE 214) NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to: Heather Jantz. (Attachment: # 1 Exhibit A – Heather Jantz Subpoena)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/06/2022) |
| 09/06/2022 | 213 | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 9/6/2022. (Tape #8:35–9:40.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/06/2022) |
| 09/06/2022 | 214 | | NOTICE of Withdrawal of Subpoenas which do not comport with the Orders of Judge Birzer for having more than 1 name or not having the home address of person being Subpoenaed by Michael E. Nelson: Docket Entries 164, 166–176, 184 through 193, 195 through 212 (msb) (Entered: 09/06/2022) |
| 09/06/2022 | 215 | | MOTION for Writ (EMERGENCY REQUEST of WRIT of coram nobis, concerning Local Rule 83.6.3) by Defendant Michael E. Nelson (Attachment: # 1 Exhibit A – Letter Chief Judge Eric Melgren)(msb) (Entered: 09/06/2022) |
| 09/06/2022 | 216 | | NOTICE of Compliance Refile of Document 104 & 105 by Michael E. Nelson (msb) (Entered: 09/06/2022) |
| 09/07/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 215 MOTION for Writ. The motion will be resolved by the District Judge.** (kf) (Entered: 09/07/2022) |
| 09/07/2022 | 220 | | RESPONSE (titled: Memorandum of Response to Document 183 Order from DistrictCourt Judge Broomes and Preliminary Request for Extension of Time to Respond with refiling of documents) by Defendant Michael E. Nelson: Re 183 Order by District Judge John W. Broomes (msb) (Entered: 09/09/2022) |
| 09/07/2022 | 221 | | (DUPLICATE TO DE 220 – TWO PART PLEADING) MOTION for extension of time to respond with refiling of documents (titled: Memorandum of Response to Document 183 Order from District Court Judge Broomes and Preliminary Request for Extension of Time to Respond with refiling of documents) by Defendant Michael E. Nelson (msb) (Entered: 09/09/2022) |
| 09/08/2022 | 217 | | PROTECTIVE ORDER. Signed by Magistrate Judge Gwynne E. Birzer on 9/8/2022 .Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (kf) (Entered: |

| | | | 09/08/2022) |
|---|---|---|---|
| 09/08/2022 | 218 | | ORDER. The Court conducted a Zoom Status Conference in this case on 9/6/2022. Plaintiffs appeared through counsel, Christopher Kellogg and Craig Brand. Defendant, pro se, appeared by Zoom. After a thorough discussion, the Court enters the following orders. Defendant's deadline to respond to Plaintiff/Counter–Defendants' First Interrogatories to Defendant/Counter–Plaintiff Michael Nelson is extended up to and including 9/19/2022. This deadline will not be further extended. Plaintiffs shall file any motion to quash as discussed during the conference no later than 9/13/2022. The next Status Conference before Magistrate Judge Gwynne E. Birzer is set for 10/4/2022 at 08:30 AM by Zoom. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/8/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/08/2022) |
| 09/08/2022 | 219 | | ORDER. At the 9/6/2022 Status Conference, the Court and parties further discussed electronic notification and service. At this time, Defendant still has not registered as a filing user with the Court therefore he has not consented to the electronic service of documents. See D. Kan. R. 5.4.2(e). Plaintiffs shall serve hard copies of all pleadings identified in Fed. R. Civ. P. 7(a); any motion, response, or reply thereto; any notice, certificate, or objection; or any other document filed with the Court as well as all discovery and disclosures identified in D. Kan. R. 26.3(a) on Defendant via U. S. Mail at the address Defendant provided to the Court and certify same to the Court per D. Kan. R. 5.1(g), 5.4.9(c), and 26.3(c). The Court recognizes it has continued to discuss service with the parties and therefore clarifies this order supersedes its prior orders regarding service at ECF Nos. 63 and 123. It additionally supersedes the Court's order at ECF No. 67 to the extent it addresses service of discovery. The Court's orders regarding the communications between the parties addressed in ECF No. 67 remain in effect. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/8/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/08/2022) |
| 09/09/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 221 MOTION for extension of time. The motion will be resolved by the District Judge. (kf)** (Entered: 09/09/2022) |
| 09/09/2022 | 222 | | MOTION to Dismiss plaintiff's 64 first amended complaint by Defendant Michael E. Nelson (Attachment: View restricted: # 1 Memorandum in Support filed separately as DE 223 per request of party)(msb) Modified text on 9/9/2022 (msb). (Entered: 09/09/2022) |
| 09/09/2022 | 223 | | MEMORANDUM IN SUPPORT of 222 MOTION to Dismiss SLAPP [Strategic Lawsuit AgainstPublic Participation] lawsuit by Defendant Michael E. Nelson(msb) (Entered: 09/09/2022) |
| 09/12/2022 | 224 | | NOTICE OF SERVICE by Michael E. Nelson of Interrogatory Answers, Disclosures, Requests for Production, Requests for Admission, with copies of Docs. 159, 160, 161 as to UCMK and Chad Koehn together with Interrogatories, Requests for Admission to Anthem Hayek Blanchard. (msb) |

| | | | (Entered: 09/12/2022) |
|---|---|---|---|
| 09/12/2022 | <u>225</u> | | ORDER denying in part and granting in part <u>221</u> MOTION for extension of time to respond with refiling of documents. Signed by District Judge John W. Broomes on 9/12/2022. See order for details. Mailed to pro se party Michael E. Nelson by regular mail. (kas) (Entered: 09/12/2022) |
| 09/13/2022 | <u>226</u> | | MOTION for Order (titled: Motion for Judicial Notice under Federal Rule 201(refile of Doc. 96)) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit A – For Profit Coroporation Annual Report – United Capital Management of Kansas, Inc., # <u>2</u> Exhibit B – Uniform Application for Investment Adviser Registration & Report by Exempt Reporting Advisers, # <u>3</u> Exhibit C – United Capital Management of Kansas, Inc. Brochure, # <u>4</u> Exhibit D – Website of United Capital Management of Kansas, Inc. – Meet the Team)(msb) (Entered: 09/13/2022) |
| 09/13/2022 | <u>227</u> | | MOTION for Order (titled: Motion for Judicial Notice under FRCP Rule 201 without limitation regarding CRIMINAL CHARGES against CHAD MITCHELL KOEHN Refile of Doc 99) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit A – Saline County District Court Notice to Appear & Complaint, # <u>2</u> Exhibit B – Docket Sheet of Saline County District Court #2022–CR–000043)(msb) (Entered: 09/13/2022) |
| 09/13/2022 | <u>228</u> | | MOTION for Order (titled: Refile of Doc 117 Motion for Judicial Notice as to Regulatory Filings, Secretary of State Filings, Disclosures and LAWSUITS regarding UCM and Chad M. Koehn) by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit A – Brochure for United Capital Management of Kansas, Inc., # <u>2</u> Exhibit B – SEC Form D, # <u>3</u> Exhibit C – IAPD Report Chad Mitchell Koehn, # <u>4</u> Exhibit D – Uniform Application for Investment Adviser Registration & Report by Exempt Reporting Advisers, # <u>5</u> Exhibit E – Document Tree of XML File, # <u>6</u> Exhibit F – Pages on BrokerCheck Regarding Chad Mitchell Koehn, # <u>7</u> Exhibit G – Hercules (HERC) Token Tracker Etherscan, # <u>8</u> Exhibit H – Petition in Travis County District Court, TX Case #D–1–GN–20–005322, # <u>9</u> Exhibit I – Inquiry Page of Corporation Service Company d/b/a CSC–Lawyers Incorporating Service Company, # <u>10</u> Exhibit J – Inquiry Page on HayekGold, Inc & AnthemGold, Inc., # <u>11</u> Exhibit K – Inquiry Page of Paul Aubert, # <u>12</u> Exhibit L – Inquiry Page of AGLD Acquisition Corporation)(msb) (Entered: 09/13/2022) |
| 09/16/2022 | 229 | | ORDER denying as moot <u>215</u> Motion for Writ. This matter will be handled pursuant to Local Rule 83.6.3. Entered by District Judge John W. Broomes on 09/16/2022.Mailed to pro se party Michael E. Nelson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 09/16/2022) |
| 09/17/2022 | <u>230</u> | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to Paul Douglas Aubert (msb) (Entered: 09/19/2022) |
| 09/17/2022 | <u>231</u> | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to James Ryan Angell. (msb) (Entered: 09/19/2022) |
| 09/17/2022 | <u>232</u> | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to Craig Allen Piercy. (msb) (Entered: 09/19/2022) |
| 09/17/2022 | 234 | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to Kelly Ryan Dunn. (msb) (Entered: 09/19/2022) |
| 09/17/2022 | 235 | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to Ronald Andrew Stratman. (msb) (Entered: 09/19/2022) |
| 09/17/2022 | 236 | | NOTICE OF INTENT TO ISSUE SUBPOENA by Michael E. Nelson: Subpoena to be issued to Mark Joseph Ritter. (msb) (Entered: 09/19/2022) |
| 09/19/2022 | 233 | | MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 226 MOTION for Order (Kellogg, Christopher) (Entered: 09/19/2022) |
| 09/20/2022 | 237 | | RETURN OF SERVICE of subpoena filed by Defendant Michael E. Nelson executed upon Donald Hoffman on 9/19/22 by Personal service. (msb) (Entered: 09/20/2022) |
| 09/20/2022 | 238 | | ORDER denying 226 , 227 and 228 Motions for Judicial Notice. Signed by Magistrate Judge Gwynne E. Birzer on 9/20/2022. Mailed to pro se party Michael E. Nelson by regular mail. (mam) (Entered: 09/20/2022) |
| 09/21/2022 | 239 | | NOTICE OF of DELIVERY of Answers to Interrogatories, Disclosures, Interrogatories, Requests for Admission and Production to Koehn and UCMK by Michael E. Nelson (msb) (Entered: 09/21/2022) |
| 09/21/2022 | 240 | | REPLY TO RESPONSE TO MOTION (titled: Response to Document 233 Memo inOpposition to Request for Judicial Notice Doc. 226) by Defendant Michael E. Nelson. (msb) (Entered: 09/21/2022) |
| 09/21/2022 | 241 | | ORDER. After review of correspondence from the parties, the Court extends the deadline for Plaintiffs to file any motion to quash the subpoena noticed at ECF No. 165 with proof of service at ECF No. 237 up to and including 9/26/2022. No further extension of this deadline will be granted without a conference with the Court. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/21/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/21/2022) |
| 09/22/2022 | 242 | | MOTION for Leave to Amend Complaint re 64 Amended Complaint by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (Kellogg, Christopher) (Entered: 09/22/2022) |
| 09/22/2022 | 243 | | MEMORANDUM IN SUPPORT of 242 MOTION for Leave to Amend Complaint re 64 Amended Complaint by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.(Kellogg, Christopher) (Entered: 09/22/2022) |
| 09/22/2022 | 244 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Quash *Subpoena to Donald F. Hoffman, Esq. (Doc. 165 and 165−1) and Proof of Service of Subpoena (Doc. 237)* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Kellogg, Christopher) (Entered: 09/22/2022) |
| 09/22/2022 | 245 | | MEMORANDUM IN SUPPORT of 244 MOTION to Quash *Subpoena to Donald F. Hoffman, Esq. (Doc. 165 and 165−1) and Proof of Service of Subpoena (Doc. 237)* by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.(Kellogg, Christopher) (Entered: 09/22/2022) |
| 09/22/2022 | 246 | | DESIGNATION OF COMPARATIVE FAULT by Defendant Michael E. Nelson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W)(ca) (Sealed per DE 304). (Entered: 09/23/2022) |
| 09/23/2022 | 247 | | MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 222 MOTION to Dismiss (Kellogg, Christopher) (Entered: 09/23/2022) |
| 09/25/2022 | 249 | | (RESTRICTED VIEW − WITHDRAWN PER de 265) MEMORANDUM IN OPPOSITION by Defendant Michael E. Nelson to 244 MOTION to Quash *Subpoena to Donald F. Hoffman, Esq. (Doc. 165 and 165−1) and Proof of Service of Subpoena (Doc. 237)* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(msb) (Modified on 9/30/2022 − per 260 Order, main document and its attachments are sealed. (heo)) Modified text on 10/4/2022 (msb). (Entered: 09/26/2022) |
| 09/26/2022 | 248 | | ORDER. On 9/20/2022 the Court entered its Order denying Defendant/Counter−Plaintiffs, Michael E. Nelson's Motions for Judicial Notice (ECF No. 238 ). After receiving the Court's Order, Nelson filed a reply in support of the Motion for Judicial Notice at ECF No. 226 . The Court has reviewed the reply (ECF No. 240 ) and its Order denying Defendant/Counter−Plaintiffs, Michael E. Nelson's Motions for Judicial Notice (ECF No. 238 ) stands. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 9/26/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008−7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 09/26/2022) |
| 09/28/2022 | 250 | | MOTION to Disqualify Counsel: pro hac vice Craig Alan Brand by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(msb) (Entered: 09/29/2022) |
| 09/28/2022 | 251 | | MEMORANDUM IN SUPPORT of 250 MOTION to Disqualify Counsel: pro hac vice Craig Alan Brand by Defendant Michael E. Nelson (Attachments: # 1 Exhibit A − Plaintiff's Initial Disclosures, # 2 Exhibit B − Hercules Blockchain Powered Supply Chain Protocol, # 3 Exhibit C − Attorney Complaint to |

| | | | |
|---|---|---|---|
| | | | Florida Bar Association, # 4 Certificate of Service)(msb) (Entered: 09/29/2022) |
| 09/28/2022 | 252 | | MOTION for Default Judgment (titled: Application demand Default Judgment againstthe Counter Defendants for Failure to Answer timely First Amended Counter Complaint) by Defendant Michael E. Nelson (Attachment: # 1 Certificate of Service)(msb) (Entered: 09/29/2022) |
| 09/28/2022 | 253 | | MEMORANDUM IN SUPPORT of 252 MOTION for Default Judgment (titled: Application for Default Judgment against Counter Defendants Chad M. Koehn and United Capital Management of Kansas Inc. for failure to timely Answer First Amended Counter Complaint) by Defendant Michael E. Nelson (Attachments: # 1 Exhibit A – List of Cases Consulted Re: Requested and Demanded Default Judgment, # 2 Certificate of Service)(msb) (Entered: 09/29/2022) |
| 09/29/2022 | 254 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court made under Rule 72For De Novo Review by Michael E. Nelson: Re 63 Order on Motions (Attachment: # 1 Exhibit A – Woods vs. Cantrell, Et al.)(msb) Modified event on 10/11/2022 (msb). (Entered: 09/29/2022) |
| 09/29/2022 | 255 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court Under Rule 72Replacement to Doc. 81 per Order 183 by Michael E. Nelson: Re 70 Initial Order Regarding Planning and Scheduling. (msb) Modified event on 10/11/2022 (msb). (Entered: 09/29/2022) |
| 09/30/2022 | 256 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Plaintiffs'/Counter–Defendants' Initial Disclosures (Michel, Larry) (Entered: 09/30/2022) |
| 09/30/2022 | 257 | | (VIEW RESTRICTED – DUPLICATION TO DE 230) NOTICE OF INTENT TO ISSUE SUBPOENA to Paul Douglas Aubert General Counsel Anthem Holdings Co. by Michael E. Nelson (msb) Modified text on 9/30/2022 (msb). (Entered: 09/30/2022) |
| 09/30/2022 | 258 | | (VIEW RESTRICTED – DUPLICATION TO DE 232) NOTICE OF INTENT TO ISSUE SUBPOENA to CRAIG ALLEN PIERCY by Michael E. Nelson (msb) Modified text on 9/30/2022 (msb). (Entered: 09/30/2022) |
| 09/30/2022 | 259 | | (VIEW RESTRICTED – DUPLICATION TO DE 236) NOTICE OF INTENT TO ISSUE SUBPOENA to MARK JOSEPH RITTER by Michael E. Nelson (msb) Modified text on 9/30/2022 (msb). (Entered: 09/30/2022) |
| 09/30/2022 | 260 | | ORDER – Defendant's Memorandum in Opposition to Motion to Quash Subpoena to Donald Hoffman, together with its exhibits (ECF No. 249 ) be sealed. Signed by Magistrate Judge Gwynne E. Birzer on 9/30/2022. Mailed to pro se party Michael E. Nelson by regular mail. (heo) (Entered: 09/30/2022) |
| 10/03/2022 | 261 | | MEMORANDUM IN OPPOSITION by Defendant Michael E. Nelson: Re 244 MOTION to Quash Subpoena to Donald F. Hoffman, Esq. (Doc. 165 and 165–1) and Proof of Service of Subpoena (Doc. 237) (Attachment: # 1 Exhibit A in Support of Memorandum in Opposition)(msb) (Entered: 10/03/2022) |
| 10/03/2022 | 262 | | AFFIDAVIT of Donald Hoffman re 249 Memorandum in Opposition to Motion, by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 10/03/2022) |

| Date | No. | Description |
|---|---|---|
| 10/03/2022 | 263 | AFFIDAVIT of Andrea Swisher re 249 Memorandum in Opposition to Motion, by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 10/03/2022) |
| 10/04/2022 | 264 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 10/4/2022. (Tape #8:30–10:00.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/04/2022) |
| 10/04/2022 | 265 | NOTICE of Withdrawal of Document 249 Memorandum in Opposition to Motion by Michael E. Nelson (msb) (Entered: 10/04/2022) |
| 10/04/2022 | 266 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court and REQUEST for Writ of Mandamus to issue to the Securities and Exchange Commission For Enforcement of Law by Michael E. Nelson: Re 238 Order on Motion for Order (msb) Modified event on 10/11/2022 (msb). (Entered: 10/04/2022) |
| 10/04/2022 | 267 | RESPONSE to 254 Appeal of Magistrate Judge Decision to District Court by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 10/04/2022) |
| 10/04/2022 | 268 | ORDER: The Court directs Plaintiffs to address topics 1 & 2 in one motion and to address topic 3 in a separate motion. Both motions are to be filed no later than October 21, 2022. Defendant shall supplement his answer to Interrogatory 1(a)–1(h), as discussed during the conference, no later than October 21, 2022 and certify timely service of same. Defendant is allowed to serve amended requests for admissions on UCMK and Koehn, as discussed during the conference. UCMK's and Koehn's deadline to respond to any interrogatories and request for production of documents served on or about September 10, 2022 is extended up to and including November 10, 2022. Status Conference set for 11/1/2022 at 08:30 AM by Video Conference – Zoom before Magistrate Judge Gwynne E. Birzer. Signed by Magistrate Judge Gwynne E. Birzer on October 4, 2022. Mailed to pro se party Michael E. Nelson by regular mail. (mls) (Entered: 10/04/2022) |
| 10/04/2022 | 269 | MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 250 MOTION to Disqualify Counsel (Kellogg, Christopher) (Entered: 10/04/2022) |
| 10/04/2022 | 270 | REPLY TO RESPONSE TO MOTION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re: 244 Motion to Quash, (Attachments: # 1 Exhibit Composite Exhibit "A")(Kellogg, Christopher) (Entered: 10/04/2022) |
| 10/05/2022 | 271 | MOTION for Reconsideration re 268 Order, Set Hearings, by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Kellogg, Christopher) (Entered: 10/05/2022) |
| 10/05/2022 | 272 | |

| | | | MEMORANDUM IN SUPPORT of <u>271</u> MOTION for Reconsideration re <u>268</u> Order, Set Hearings, by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.(Kellogg, Christopher) (Entered: 10/05/2022) |
|---|---|---|---|
| 10/05/2022 | <u>273</u> | | RESPONSE to <u>266</u> Appeal of Magistrate Judge Decision to District Court by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc.. (Kellogg, Christopher) (Entered: 10/05/2022) |
| 10/06/2022 | <u>274</u> | | AMENDED ORDER. This Order supersedes the Court's prior Order at <u>268</u> . The Court directs Plaintiffs to address topics 1 & 2 in one motion and to address topic 3 in a separate motion. Both motions are to be be served on Defendant under Rule 5 no later than October 21, 2022. The motions may then be filed 21 days after service, if necessary, as allowed per Fed. R. Civ. P. 11. Defendant shall supplement his answer to Interrogatory 1(a)−1(h), as discussed during the conference, no later than October 21, 2022 and certify timely service of same. After discussion, Defendants' First Set of Request for Admission, including any "special" request for admission, to UCMK and Koehn are withdrawn. Defendant is allowed to serve amended requests for admissions on UCMK and Koehn, as discussed during the conference. UCMK's and Koehn's deadline to respond to any interrogatories and request for production of documents served on or about September 10, 2022 is extended up to and including November 10, 2022. The next Status Conference before Magistrate Judge Gwynne E. Birzer is set for 11/1/2022 at 08:30 AM by Zoom. A link to the conference will be sent via email. Signed by Magistrate Judge Gwynne E. Birzer on 10/6/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008−7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/06/2022) |
| 10/06/2022 | 275 | | ORDER. After entry of its Amended Order at <u>274</u> , the Court finds as moot <u>271</u> MOTION for Reconsideration re <u>268</u> Order. Signed by Magistrate Judge Gwynne E. Birzer on 10/6/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008−7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/06/2022) |
| 10/06/2022 | <u>276</u> | | MEMORANDUM IN OPPOSITION by Defendant Michael E. Nelson: Re <u>242</u> MOTION for Leave to Amend Complaint: Re <u>64</u> Amended Complaint. (Attachment: # <u>1</u> Certificate of Service)(msb) (Entered: 10/06/2022) |
| 10/07/2022 | <u>277</u> | | MOTION for Reconsideration of <u>268</u> Order During 4 October 2022 SchedulingConference regarding Application for Default Judgment and mandating answering interrogatories, claiming Counter Defendant's made filings 13 June 2022 which I am without by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (msb) (Entered: 10/07/2022) |
| 10/07/2022 | 278 | | ORDER. Defendant seeks reconsideration of the undersigned Magistrate Judge's ruling on his Motion for Default <u>252</u> purportedly made during the 10/4/2022 Status Conference. Although the Court and parties discussed Defendant's discovery objection based on his pending Motion for Default, the undersigned Magistrate Judge made no ruling on Defendant's Motion. Said Motion will be decided by the District Judge after it is ripe. Where no ruling |

| | | | |
|---|---|---|---|
| | | | on Defendant's Motion for Default was made, the Court finds as moot <u>277</u> MOTION for Reconsideration re <u>268</u> Order. Signed by Magistrate Judge Gwynne E. Birzer on 10/7/2022. Per Defendant's request a copy of Plaintiffs' Motion to Dismiss (ECF No. 85 & 86) will be mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail together with a copy of this order. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/07/2022) |
| 10/08/2022 | <u>286</u> | | MOTION to Strike and Objection to Overuse of Racial INSULT by Chad Mitchell Koehn and UCMK PURPOSEFULLY to Cause Damage in Intentional Infliction of Distress by Defendant Michael E. Nelson. (referred to Magistrate Judge Gwynne E. Birzer) (msb) (Entered: 10/11/2022) |
| 10/10/2022 | <u>279</u> | | REPLY TO RESPONSE TO MOTION by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. re <u>242</u> Motion for Leave to Amend Complaint. (Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>280</u> | | MOTION for Protective Order *Mark Ritter* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit A)(Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>281</u> | | MEMORANDUM IN SUPPORT of <u>280</u> MOTION for Protective Order *Mark Ritter* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>282</u> | | MOTION for Protective Order *Paul Aubert* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit "A")(Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>283</u> | | MEMORANDUM IN SUPPORT of <u>282</u> MOTION for Protective Order *Paul Aubert* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>284</u> | | MOTION for Protective Order *Craig Piercy* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # <u>1</u> Exhibit "A")(Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/10/2022 | <u>285</u> | | MEMORANDUM IN SUPPORT of <u>284</u> MOTION for Protective Order *Craig Piercy* by Plaintiffs/Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc. (Kellogg, Christopher) (Entered: 10/10/2022) |
| 10/14/2022 | 287 | | ORDER denying without prejudice to refiling <u>280</u> <u>282</u> <u>284</u> Motions for Protective Order. Pursuant to the Scheduling Order (ECF No. 122), the parties are to refrain from filing any affirmative motions until further order of the Court. Plaintiffs failed to seek leave to file these motions at the 10/4/2022 Status Conference. Leave to refile these motions will be discussed at the 11/1/2022 Status Conference. Defendant shall not serve the subpoenas on Mark Ritter, Paul Aubert, and Craig Piercy prior to the next Status Conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 10/14/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This |

| | | | |
|---|---|---|---|
| | | | is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/14/2022) |
| 10/14/2022 | 288 | | ORDER. Due to the excessive filing in this matter, the undersigned Magistrate Judge in the Scheduling Order (ECF No. 122) ordered the parties to refrain from filing any affirmative motions until further order of the Court. The parties are able to raise potential motions for discussion at monthly status conferences. After each conference, the Court enters an order setting deadlines to file any motion it grants a party leave to file. The Court did not grant Defendant leave to file the current motion. Therefore, the Court denies without prejudice 286 Motion to Strike. Leave to refile this motion will be discussed at the 11/1/2022 Status Conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 10/14/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 10/14/2022) |
| 10/16/2022 | 289 | | MOTION for Review (titled: Objection Appeal of Order of Federal Magistrate issuance of Scheduling Order, document number: 122 and 124) by Defendant Michael E. Nelson (msb) (Entered: 10/17/2022) |
| 10/17/2022 | 292 | | MOTION for Review (titled: Appeal of Order of Magistrate Judge in Document 268 ) by Defendant Michael E. Nelson (Attachments: # 1 Exhibit A – Gretchen Welk Letter, # 2 Exhibit B – Plaintiffs' Initial Disclosures, # 3 Exhibit C – Gil Gilliam Emails, # 4 Exhibit D – Case No. CF–2021–304 Objection to States Bond Increase, # 5 Exhibit E – DE 67 Order by the Court, # 6 Exhibit F – Case No. CF–2021–2 Motion to Increas Bond, # 7 Exhibit G – New Articles Koehn HeraSoft, # 8 Exhibit H – Hercules PPM Private Placement Memorandum)(msb) (Entered: 10/18/2022) |
| 10/18/2022 | 290 | | RESPONSE by Plaintiff United Capital Management of Kansas, Inc., Counter Defendant United Capital Management of Kansas, Inc. re 289 Motion for Review (Kellogg, Christopher) (Entered: 10/18/2022) |
| 10/18/2022 | 291 | | ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION. Signed by Magistrate Judge Gwynne E. Birzer on 10/18/2022. (heo) (Entered: 10/18/2022) |
| 10/18/2022 | | | NOTICE Re: Pro Se Mailing. Document 291 ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION mailed to Michael E. Nelson on 10/18/2022 by regular mail. (heo) (Entered: 10/18/2022) |
| 10/20/2022 | 293 | | (VIEW RESTRICTED – STRICKEN PER DE 315) SURREPLY (titled: Response Reply to 279 regarding leave to amend complaint to attach my eldery Dad who has not provided support for me for more than 30 years!) by Defendant Michael E. Nelson. Re: 242 MOTION to Amend Complaint (Attachments: # 1 Exhibit A – HeraSoft News Articles Unregistered Unlicensed Stock Sales, # 2 Exhibit B – UCMK Disclosures November 2020)(msb) Modified text on 11/8/2022 (msb). (Entered: 10/20/2022) |
| 10/20/2022 | 294 | | REPLY TO RESPONSE TO MOTION (titled: Reply to All Plaintiff's Responses including without limitation Doc. 289 to Refiled Documents per Order of the Court in Documents 183 & 225) by Defendant Michael E. Nelson. Re: 289 Motion for Review (msb) (Entered: 10/20/2022) |

| 10/25/2022 | <u>295</u> | | MOTION for Reconsideration of Order of the Court on ESI Protocols due to Referencing Documents Previously STRICKEN from the Record by Order of the Court in Document <u>183</u> by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (msb) (Entered: 10/25/2022) |
|---|---|---|---|
| 10/25/2022 | <u>296</u> | | MEMORANDUM IN SUPPORT of <u>295</u> MOTION for Reconsideration of the Court on ESI Protocols due to Referencing Documents Previously STRICKEN from the Record by Order of the Court in Document <u>183</u> by Defendant Michael E. Nelson.(msb) (Entered: 10/25/2022) |
| 11/01/2022 | 297 | | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: STATUS CONFERENCE held on 11/1/2022. (Tape #8:30–10:00.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/01/2022) |
| 11/03/2022 | 298 | | ORDER. After discussion during the 11/1/2022 Status Conference, the Court established a new deadline for the submission of topics for its monthly status conferences. The monthly status conferences are set for the first Tuesday of the month at 8:30 a.m. via Zoom. No later than 7 days prior to each conference, the parties shall each submit to the undersigned's chambers and the opposing party/counsel an email with topics to be discussed at the status conference. The email request must include a brief, nonargumentative statement of the nature of the dispute. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 299 | | Oral MOTION for Protective Order by Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. (referred to Magistrate Judge Gwynne E. Birzer). (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 300 | | ORDER granting in part and denying in part 299 Plaintiffs' Oral Motion for Protective Order. During the status conference, Plaintiffs sought leave to file motions for protective order regarding the Notices of Intent to Issue Subpoenas to Paul Aubert (ECF No. 230), James Angell (ECF No. 231), Craig Piercy (ECF No. 232), and Mark Ritter (ECF No. 236). After discussion, Plaintiffs withdrew their request as to the subpoenas to Paul Aubert, Craig Piercy, and Mark Ritter. The Court therefore denies Plaintiffs' motion as to these subpoenas. The Court, however, for the reasons discussed during the conference finds good cause for the entry of a protective order regarding the subpoena to James Angell. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR, 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 301 | | Plaintiffs' Oral MOTION for Leave to Move for Order to Show Cause (referred to Magistrate Judge Gwynne E. Birzer). (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 302 | | ORDER denying without prejudice 301 Plaintiffs' Oral Motion for Leave to Move for Order to Show Cause why Defendant should not be held in contempt for refusal to answer Interrogatory 1(a)–1(h) as ordered. As discussed during the conference, Plaintiffs may, if appropriate, raise the issue at a future status |

| | | | |
|---|---|---|---|
| | | | conference after resolution of Defendant's Appeal of Order of Magistrate Judge in Document 268 (ECF No. 292) by the District Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 303 | | Plaintiffs' Oral MOTION to Seal Document 246 Comparative Fault Designation (referred to Magistrate Judge Gwynne E. Birzer) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 304 | | ORDER granting 303 Plaintiffs' Oral Motion to Seal 246 Comparative Fault Designation. The Court previously sua sponte ordered Defendant's Memorandum in Opposition to Motion to Quash Subpoena to Donald Hoffman, together with its exhibits (ECF No. 249) be sealed. The Court in its Order (ECF No. 260) made it clear the derogatory language and unsupported allegations contained in the memorandum and it exhibits must be sealed. Defendant, in his Designation of Comparative Fault, attached the very same email (ECF No. 246–19) which caused his Memorandum in Opposition to be sealed. For the reasons cited in its prior Order, the Court, in its discretion orders Defendant's Designation of Comparative Fault, together with its exhibits (ECF No. 246) be sealed. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 305 | | Defendant's Oral MOTION to Compel Production of Documents in PDF Format (referred to Magistrate Judge Gwynne E. Birzer). (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 306 | | ORDER granting 305 Defendant's Oral Motion to Compel Production of Documents in PDF Format. Plaintiffs shall reproduce the documents discussed during the conference in PDF format, as per the terms of the parties' ESI protocol, no later than 11/18/2022 and certify service of same. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 307 | | Defendant's Oral MOTION for Leave to Refile Motion to Strike (referred to Magistrate Judge Gwynne E. Birzer). (kf) (Entered: 11/03/2022) |
| 11/03/2022 | 308 | | ORDER. Defendant previously filed a Motion to Strike Plaintiffs' Memorandum in Support of their Motion for Leave to File Second Amended Complaint (ECF No. 243) in violation of the Court's order prohibiting the filing of any affirmative motion until further order of the Court. See ECF No. 286. The Court denied the motion without prejudice and gave Defendant the opportunity to seek leave to refile the motion at the next Status Conference (ECF No. 288). During the conference, Defendant made an oral motion for leave to refile his motion to strike. The Court finds Plaintiffs used the term "Bean" in their Memorandum in Support of Plaintiffs' Motion for Leave to File |

| | | | Second Amended Complaint not as a racial epithet, but only to explain the procedural history of its complaints in this action and the need for the Court's leave to amend. Therefore, the Court denies 307 Defendant's Oral Motion for Leave to Refile Motion to Strike. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
|---|---|---|---|
| 11/03/2022 | 309 | | ORDER. Defendant sought to compel Plaintiffs to produce certain information regarding shareholders and other information related to Anthem Holdings Company, Hera Software Development Inc., and other related companies. Defendant, however, provided neither the Requests for Production at issue nor Plaintiffs' objections and responses to same. Defendant will be allowed to raise the topic at the December 6, 2022 Status Conference and provide the Court with the necessary information to decide the issue. The Court stays Defendant's deadline to file any motion to compel related to these requests until the December 6, 2022 Status Conference. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022.Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/03/2022) |
| 11/04/2022 | <u>310</u> | | AMENDED ORDER Regarding the Discovery of Electronically Stored Information. This Order supersedes the Court's Order at <u>291</u> . Signed by Magistrate Judge Gwynne E. Birzer on 11/4/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (kf) (Entered: 11/04/2022) |
| 11/04/2022 | 311 | | ORDER. After entry of its Amended Order Regarding the Discovery of Electronically Stored Information at <u>310</u> , the Court finds as moot <u>295</u> MOTION for Reconsideration. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/4/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/04/2022) |
| 11/04/2022 | 312 | | NOTICE OF STATUS CONFERENCE: A Status Conference before Magistrate Judge Gwynne E. Birzer is set for <u>12/6/2022 at 08:30 AM</u> by Zoom. An email with a link to the conference will be sent prior to the conference. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/04/2022) |
| 11/04/2022 | 313 | | Defendant's Oral MOTION Pursuant to D. Kan. R. 72.1.4.(d) (referred to Magistrate Judge Gwynne E. Birzer). (kf) (Entered: 11/04/2022) |
| 11/04/2022 | 314 | | ORDER. During the 11/1/2022 Status Conference Defendant sought an oral motion for stay of the Court's Order at ECF No. 274 requiring he supplement his answer to Interrogatory 1(a)–1(h) no later than October 21, 2022. For the reasons discussed during the conference, the Court denies 313 Defendant's Oral Motion Pursuant to D. Kan. R. 72.1.4.(d). IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/4/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf |

| | | | document associated with this entry.) (kf) (Entered: 11/04/2022) |
|---|---|---|---|
| 11/04/2022 | 315 | | ORDER. During the November 1, 2022 status conference, the Court and parties discussed Plaintiffs' pending Motion for Leave to Amend Complaint (ECF No. 242) and Defendant's Sur–reply (ECF NO. 293). Where Defendant did not seek leave to file his sur–reply, the Court orders it be stricken. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/4/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/04/2022) |
| 11/04/2022 | 316 | | ORDER. After Defendant's sur–reply (ECF No. 293) to Plaintiffs' Motion for Leave to Amend Complaint was ordered stricken, during the conference Defendant sought leave to refile the sur–reply which is denied. Defendant further sought permission pursuant to Fed. R. App. P. 5 to file an appeal of the order striking the sur–reply. Having failed to comply with the requirements of Fed. R. App. P. 5, Defendant's request is therefore denied. Signed by Magistrate Judge Gwynne E. Birzer on 11/4/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton, OR 97008–7105 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/04/2022) |
| 11/10/2022 | 317 | | ORDER denying 252 Motion for Default Judgment. Defendant argues that he is entitled to default judgment because Plaintiffs (Counter–Defendants) have failed to file an answer to his first–amended counterclaims and crossclaims. Defendant misunderstands Fed. R. Civ. P. 12(b), which allows a defendant or counter–defendant to assert certain defenses by motion in lieu of filing an answer. The court notes that Plaintiffs timely filed a motion to dismiss Defendant's first–amended counterclaims and crossclaims. Defendant's motion for default judgment is therefore DENIED. Entered by District Judge John W. Broomes on 11/10/2022. Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton OR 97008–7105 by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 11/10/2022) |
| 11/10/2022 | 318 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Discovery Answers. (Michel, Larry) (Entered: 11/10/2022) |
| 11/10/2022 | 319 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Discovery Requests. (Michel, Larry) (Entered: 11/10/2022) |
| 11/16/2022 | 320 | | NOTICE of Hearing: An in–person hearing is set for 12/14/2022 at 09:00 AM in Wichita Courtroom 238 (JWB) before District Judge John W. Broomes to hear argument on Defendant's motions THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 254 MOTION for Review, 292 MOTION for Review, 255 MOTION for Review, 266 MOTION for Review, and 289 MOTION for Review pursuant to this court's previous order (Doc. 183). Plaintiffs and Defendant are ordered to appear in person or by counsel. If Defendant fails to appear, Plaintiffs may be granted leave to seek their fees for the appearance. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Mailed to pro se party Michael E. Nelson 9450 SW Gemini Drive PMB 90924 Beaverton OR 97008–7105 (jmr) (Entered: 11/16/2022) |

| | | | |
|---|---|---|---|
| 11/16/2022 | 321 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court (Titled: Appeal of Order (amended report) in Document 310 & 311 an Order of the Federal Magistrate as a Report of the Magistrate) re 310 Order, 311 Order on Motion for Reconsideration, by Defendant Michael E. Nelson (referred to Magistrate Judge Gwynne E. Birzer) (ca) Modified event and title per chambers on 11/17/2022 (ca). (Entered: 11/16/2022) |
| 11/16/2022 | 322 | | NOTICE OF CHANGE OF EMAIL ADDRESS (Titled: NOTICE of Change in contact Information due to Security Breach on 12 October 2022) by Michael E. Nelson. (ca) (Entered: 11/16/2022) |
| 11/16/2022 | 323 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court (Titled: Appeal of Order in Document 304 Report of the Federal Magistrate Sealing of the entire filing in document 246 rather thannarrowly sealing the single Exhibit requested for sealing by the Plaintiffs) re 304 Order on Motion to Seal Document, by Defendant Michael E. Nelson (ca) Modified event and title per chambers on 11/17/2022 (ca). (Entered: 11/16/2022) |
| 11/16/2022 | 324 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court (Titled: Appeal of Report in Document 300 as to subpoena to James Ryan Angell for the limited scope to obtain the harassment settlements entered into by Chad M. Koehn and/or UCMK) by Defendant Michael E. Nelson (ca) Modified title per chambers on 11/17/2022 (ca). (Entered: 11/16/2022) |
| 11/17/2022 | 325 | | MOTION to Stay Proceedings AND Appeal of 298 Report of Magistrate, by Defendant Michael E. Nelson. (ca) (Entered: 11/17/2022) |
| 11/17/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 323 MOTION for Review and 321 MOTION for Review. These motions will be resolved by the District Judge. (kf)** (Entered: 11/17/2022) |
| 11/17/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 325 MOTION to Stay Discovery. The motion will be resolved by the District Judge. (kf)** (Entered: 11/17/2022) |
| 11/18/2022 | 326 | | RESPONSE by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 323 Motion for Review, (Kellogg, Christopher) (Entered: 11/18/2022) |
| 11/29/2022 | 327 | | MEMORANDUM IN OPPOSITION by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 321 MOTION for Review (Kellogg, Christopher) (Entered: 11/29/2022) |
| 11/29/2022 | 328 | | RESPONSE by Counter Defendants Chad M. Koehn, United Capital Management of Kansas, Inc., Plaintiffs Chad M. Koehn, United Capital Management of Kansas, Inc. re 325 Motion to Stay Discovery (Kellogg, Christopher) (Entered: 11/29/2022) |
| 12/05/2022 | 329 | | NOTICE OF CANCELLED HEARING: The Status Conference before Magistrate Judge Gwynne E. Birzer for 12/6/2022 at 8:30 a.m. is cancelled until after the hearing before District Judge John W. Broomes on 12/14/2022 at 9:00 a.m. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 12/05/2022) |

| | | | |
|---|---|---|---|
| 12/08/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 242 MOTION for Leave to Amend Complaint re 64 Amended Complaint. The motion will be resolved by the District Judge. (kf)** (Entered: 12/08/2022) |
| 12/12/2022 | 330 | | MEMORANDUM AND ORDER granting in part and denying in part 242 Motion for Leave to Amend Complaint; denying 222 Motion to Strike; denying as moot 73 & 222 Motions to Dismiss. See order for further details. Signed by District Judge John W. Broomes on 12/12/22. Mailed to pro se party Michael Nelson by regular mail (msb) (Entered: 12/12/2022) |
| 12/13/2022 | 331 | | MOTION to Continue 12/14/2022 Hearing (Titled: Emergency Motion to Postpone or reschedule "hearing" before US District Court Judge Broomes in light Administrative Order and other Court Orders restricting communication, travel and banishment INSTANTER by Defendant Michael E. Nelson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (ca) (Entered: 12/13/2022) |
| 12/13/2022 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 331 MOTION to Continue 12/14/2022 Hearing (Titled: Emergency Motion to Postpone or reschedule "hearing" before US District Court Judge Broomes in light Administrative Order and other Court Orders restricting communication, travel and banishment. The motion will be resolved by the District Judge. (kf)** (Entered: 12/13/2022) |
| 12/13/2022 | 332 | | ORDER denying 331 Defendant Nelson's Motion to Continue. Signed by District Judge John W. Broomes on 12/13/2022. The court orders Defendant to notify this court at KSD_Broomes_Chambers@ksd.uscourts.gov by 6:00 pm CST today, December 13, 2022, whether he will attend the in–person hearing tomorrow, 12/14/2022 at 9:00 am CST. Mailed to pro se party Michael E. Nelson by regular mail. (mam) (Entered: 12/13/2022) |
| 12/14/2022 | 333 | | MINUTE ENTRY for proceedings held before District Judge John W. Broomes: MOTION HEARING held on 12/14/2022 re 255 MOTION for Review filed by Michael E. Nelson, 289 MOTION for Review filed by Michael E. Nelson, 254 MOTION for Review filed by Michael E. Nelson, 292 MOTION for Review filed by Michael E. Nelson, 266 MOTION for Review filed by Michael E. Nelson. Written order to follow.. (Court Reporter Jana McKinney.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 12/14/2022) |
| 12/14/2022 | 334 | | MEMORANDUM AND ORDER. Defendant's motions (Docs. 254 , 255 , 266 , 289 , 292 ) are DENIED. Defendant is ordered to submit his completed Pro Se Electronic Notice form so that he is receiving electronic notifications of filing from the CM/ECF system by 12/20/2022. Defendant is ordered to show cause on or before 12/31/2022, why he should not be sanctioned for making false statements in his recent motion to continue hearing (Doc. 331 at 3.) regarding alleged travel restrictions imposed by the Oklahoma criminal court. If Defendant fails to show cause on or by 12/31/2022, Defendant may be subject to sanctions for his lack of candor to the court. Signed by District Judge John W. Broomes on 12/14/2022. Mailed to pro se party Michael E. Nelson by regular mail. (mam) (Entered: 12/14/2022) |
| 12/16/2022 | 335 | | ORDER OF RECUSAL. Magistrate Judge Gwynne E. Birzer recused. Case reassigned to Magistrate Judge Teresa J. James for all further proceedings. |

| | | | Signed by Magistrate Judge Gwynne E. Birzer on December 16, 2022. Mailed to pro se party Michael E. Nelson by regular mail. (mls) (Entered: 12/16/2022) |
|---|---|---|---|
| 12/19/2022 | 336 | | TRANSCRIPT of Hearing held December 14, 2022 before Judge John W. Broomes, Court Reporter Jana McKinney, 316–315–4268, jana_mckinney@ksd.uscourts.gov. Transcript purchased by: Mr. Michael Nelson.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the reporter or through PACER. Release of Transcript Restriction set for 3/20/2023. (jlm) (Entered: 12/19/2022) |
| 12/20/2022 | | | DOCKET ANNOTATION: Defendant Michael E. Nelson is a registered pro se participant with ECF notifications only. (gw) (Entered: 12/20/2022) |
| 12/30/2022 | 337 | | RESPONSE by Defendant Michael E. Nelson: Re 334 Order (Attachments: # 1 Exhibit Index, # 2 Exhibit A – Case No. CF–2021–304; Objection to State's Motion to Increase Bond, # 3 Exhibit B – Transcript of Motion Hearing Held 10/12/22)(msb) (Entered: 01/03/2023) |
| 01/04/2023 | 338 | | NOTICE OF SERVICE by Chad M. Koehn, United Capital Management of Kansas, Inc. of Discovery Requests. (Kellogg, Christopher) (Entered: 01/04/2023) |
| 01/05/2023 | 339 | | ORDER SETTING STATUS CONFERENCE: Status Conference set for 1/18/2023 at 11:00 AM by Telephone before Magistrate Judge Teresa J. James. To join the conference, please dial CONFERENCE LINE 1–888–363–4749 and enter ACCESS CODE 4901386. Signed by Magistrate Judge Teresa J. James on 1–5–2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(hmg) (Entered: 01/05/2023) |
| 01/06/2023 | 340 | | TRANSCRIPT of Status Conference held November 1, 2022 before Judge Gwynne E. Birzer, Court Reporter Jana McKinney, 316–315–4268, jana_mckinney@ksd.uscourts.gov. Transcript purchased by: Mr. Michael Nelson.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the reporter or through PACER. Release of Transcript Restriction set for 4/6/2023. (jlm) (Entered: 01/06/2023) |
|---|---|---|---|
| 01/06/2023 | 341 | | SECOND AMENDED COMPLAINT against Michael E. Nelson, filed by Chad M. Koehn, United Capital Management of Kansas, Inc.. (Attachments: # 1 Exhibit A)(Michel, Larry) (Modified on 1/9/2023 to correct title. (heo)) (Entered: 01/06/2023) |
| 01/06/2023 | 342 | | NOTICE OF SERVICE by Michael E. Nelson of Discovery Requests for Admissions (msb) (Entered: 01/09/2023) |
| 01/07/2023 | 343 | | NOTICE OF SERVICE by Michael E. Nelson of Second requests for production as to Chad M. Koehn and UCMK (msb) (Entered: 01/09/2023) |
| 01/07/2023 | 344 | | NOTICE of expert disclosures by Michael E. Nelson (msb) (Entered: 01/09/2023) |
| 01/09/2023 | 345 | | NOTICE OF SERVICE by Michael E. Nelson of interrogatory answers (msb) (Entered: 01/09/2023) |
| 01/10/2023 | 346 | | ORDER denying without prejudice 140 Plaintiffs' Motion to Seal Future Court Filings to be Made by Defendant. Plaintiffs have not shown sufficient justification for their motion requesting a peremptory global order directing the Clerk to docket all future filings by pro se Defendant provisionally under seal and setting forth a process for the filing of a motion to seal or redact the filings. At this time, the Court finds Plaintiffs' request to be unnecessarily burdensome and contrary to the public's right of access to judicial records. Signed by Magistrate Judge Teresa J. James on 1/10/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (byk) (Entered: 01/10/2023) |
| 01/10/2023 | 347 | | REVISED NOTICE OF SERVICE by Michael E. Nelson of interrogatory answers (msb) (Entered: 01/10/2023) |
| 01/11/2023 | 348 | | ORDER SETTING STATUS CONFERENCE: Status Conference set for 1/18/2023 at 11:00 AM will now be held by Zoom Video Conference before Magistrate Judge Teresa J. James. Counsel and Defendant will receive instructions to connect to the conference via email. Signed by Magistrate Judge Teresa J. James on 1/11/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(hmg) (Entered: 01/11/2023) |
| 01/12/2023 | 349 | | ORDER re 334 Memorandum and Order ordering Defendant to show cause why he should not be sanctioned for making false statements in his motion to continue hearing. Defendant has failed to show cause as to why he should not be sanctioned for his lack of candor to the court, the court finds that he should be subject to monetary sanctions. The court orders Defendant to pay for Plaintiffs' reasonable attorneys' fees and expenses incurred for attendance at the December 14 hearing. Plaintiffs may file a statement documenting their attorney fees and travel expenses for attendance at the December 14 hearing within 14 days of the filing of this order. Such statement should only include fees and expenses for travel and attendance at the hearing, not preparation, as the court finds that the sanction as described is sufficient for the conduct being |

| | | | |
|---|---|---|---|
| | | | punished. Signed by District Judge John W. Broomes on January 12, 2023. Mailed to pro se party Michael E. Nelson by regular mail. (mls) (Entered: 01/12/2023) |
| 01/12/2023 | 350 | | NOTICE OF INTERLOCUTORY APPEAL as to 334 Order on Motion for Review by Defendant Michael E. Nelson: (Attachments: # 1 Exhibit Index, # 2 Exhibit A – Spencer James Angell Credentials, # 3 Exhibit B – Transcript of Motion Hearing Held 12/14/22, # 4 Exhibit C – Motion to Increase Bond Hearing, # 5 Exhibit D – State's Motion to Increase Bond and Set Hearing, # 6 Exhibit E – Objection to State's Motion to Increase Bond, # 7 Exhibit F – Plaintiff's Initial Disclosures, # 8 Exhibit G – Disciplinary and Other FINRA Actions, # 9 Exhibit H – Carson Law Article, # 10 Exhibit I – Broker Check: Re Chad Mitchell Koehn, # 11 Exhibit J – Kurta Law Article: Re Chad Mitchell Koehn, # 12 Exhibit K – Reuters Article: Re Russ Albert Medlin, # 13 Exhibit L – Email Dated 1/9/23, # 14 Exhibit M – Response to Show Cause Regarding Travel Restrictions, # 15 Exhibit N – Department of Justice Memo: Re Fraud Scheme)(msb) (Entered: 01/13/2023) |

## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, **Inc**. and **CHAD M. KOEHN**<br><br>　　　　　Plaintiffs, counter-defendants<br>　　v.<br>Michael Nelson<br>　　　　　Defendant; counter-plaintiff<br>PRO-Se. | **DOCKET NO.:   5:22-CV-04008-JWB-TJJ**<br>**CIVIL ACTION**<br><br>**NOTICE of INTERLOCUTORY APPEAL**<br>**REQUEST FOR STAY**<br>**Preliminary Brief - Request of Writ of**<br>**Mandamus and/or Prohibition for the**<br>**Protection of US Constitutional Rights**<br><br>**[Jury Trial Demanded]** |

COMES NOW, Michael Nelson, makes "SPECIAL APPEARANCE" for the purposes of filing

NOTICE and initial brief of INTERLOCUTORY APPEAL, from Orders of the District Court

Judge in Order, for plain error, in ability to travel for the hearing due to restrictions, in a directly

parallel criminal matter(s).   I believe this notice and initial brief are filed in compliance with

*FRAP 32(a)(7)(B)*.   I seek a STAY of this Civil proceedings until the conclusion of the parallel

criminal proceedings.   This Court should "in accord with common practice, [] **stay the civil**

**action until the criminal case** or the likelihood of a criminal case is **ended.**" *Wallace v. Kato,*

*549 U.S. 384, 393-94 (2007)*.   A document filed pro se is "to be liberally construed," *Estelle, 429*

*U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must

be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule*

*Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice").   This

interlocutory appeal is to prevent further manifest injustice and apprise the Courts of misconduct.

**I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of**

**documents 254, 255, 266, 289, 292; for plain error as I seek STAY of this matter.**

**Complications of Orders appealed** to the District Court from a US Federal Magistrate who has

since recused herself, via contrite recusal and "kneecapping" see Ex. B the Federal Magistrate:

　　　The Plaintiffs are engaged in **"SCORCHED EARTH"** litigation against an

**impoverished pro se, WHISTLEBLOWER having inordinately complicated their SLAPP**

**petition weaponizing the legal system through judicial abuses of processes.**  This matter is

further complicated by the fact the Plaintiffs have previously moved for the RECUSAL of US

Federal Magistrate Judge G.E. Birzer, in a verified motion for recusal Documents 113 and 114.

US Federal Magistrate Judge DENIED the verified motion for recusal in document 182.

Plaintiffs next move was to add Spencer Angell, the son of the US Federal US Chamber Counsel,

Samantha Parks Angell, as a material witness with knowledge of the SLAPP complaint they filed

as a means of contrite recusal of the Federal Magistrate Judge Birzer.  When plaintiffs filed their

mandated rule 26(a), disclosures in July of 2022, Spencer Angell was in their employ SEE

ATTACHED resume of Spencer James Angell, Exhibit "A", yet NOT noticed, within their Rule

26(a) disclosures [https://www.linkedin.com/in/spencer-angell/]

### ISSUES REGARDING SPENCER JAMES ANGELL:   UNCONTROVERTED FACTS:

1.  Samantha Parks Angell is the "Chamber Counsel" of Magistrate Judge G.E. Birzer

2. James R. Angell is the managing partner of the firm representing the plaintiffs

3. Spencer J. Angell is the college enrolled child of Samantha and James Angell

4. Spencer James Angell is a student at Arizona State University & has a HONOR CODE

5. SPENCER ANGELL has PLEDGED to UPHOLD the Honor Code of ASU "**We pledge to act with integrity and honesty and to promote these values among our peers."**

6. Spencer James Angell has publicly disseminated a resume attached as Exhibit "A"

7. SPENCER JAMES AGNELL WAS NOT IDENTIFIED BY PLAINTIFFS IN RULE 26(a) disclosures

8. Spencer Angell was in employ of UCMK & Koehn when Rule 26(a) disclosures were made

9. VERIFIED RECUSAL MOTION by CHAD MITCHELL KOEHN of Federal Magistrate was DENIED

10. Plaintiff's then added SPENCER ANGELL as a material witness, just weeks after submission of their Rule 26(a) disclosures, after their RECUSAL attempt of the Magistrate was denied

11. Magistrate Judge Birzer has entered the following in an ORDER of the Court Document 335:

> "In reviewing Plaintiffs' interrogatory answers in preparation for Defendant's argument to compel
> further response to be heard at the December 6, 2022 Status Conference, the Court became aware of

**an individual, related to the undersigned's chamber's staff, identified in the discovery response who Plaintiffs "believe has knowledge regarding the facts of this lawsuit."** This individual was not initially identified in any party's Rule 26(a) disclosures as a person likely to have discoverable information submitted in July 2022."

12. It is **SPENCER ANGELL** who is the "individual related to … chamber's staff, identified in the discovery response who Plaintiffs 'believe has knowledge regarding the facts of this lawsuit", per the RECUSAL Order of the Federal Magistrate, who the plaintiffs had previously sought to RECUSE in a bizarre series of events demonstrating clear misogyny.

13. Plaintiff's then claimed in Court that SPENCER ANGELL has no knowledge of the lawsuit, demonstrating clearly they are backdooring RECUSAL of a US Federal Judge

14. Attorneys for the Plaintiffs are using me as a pawn as well as SPENCER ANGELL in order to exact some sort of twisted revenge upon Samantha Parks Angell a US Federal Chambers Counsel stemming from a nasty divorce with James Ryan Angell.

15. Subpoenas for harassment settlements entered into by Koehn and UCMK which are held by James Angell separately from the law firm books were denied.

16. James Angell pays Samanatha Angell more than $10,000 per month

17. Both James Angell & Samantha Angell were aware as demonstrated by Spencer Angell's resume, Spencer Angell worked for the law firm managed by James Angell see Ex. "A"

18. Both James and Samantha Angell and plaintiffs Koehn and UCMK were aware Spencer Angell worked for Koehn and UCMK at the time Rule 26(a) disclosures were made

19. Plaintiffs have been allowed to "backdoor" a recusal of a US Federal Judge via contrite addition of Spencer Angell to a material witness list demonstrating lying under oath.

US Federal Magistrate Judge G.E. Birzer's chambers counsel Samantha Parks Angell is the former spouse of the managing partner of the law firm for the plaintiffs, James Angell.  A subpoena had been sought for "settlements" entered into by plaintiffs Chad M. Koehna and/or UCMK, kept by James Angell, behind a "Chinese wall" within the law firm.  That subpoena was

denied by the US Federal Magistrate.  Judicial notice and evident knowledge by the mother,

Samantha Parks Angell that her son Spencer Angell was in the employ of plaintiffs UCMK and

Chad M. Koehn, see <u>Resume of Spencer Angell Exhibit A</u>, was obviously known during the

course of the litigation, as was the fact known, Spencer Angell was in the employ of the plaintiffs

when they made their rule 26(a) disclosures.    In fact Spencer Angell is also a former employee

of the law firm representing the plaintiffs in the matter at bar.  Yet during the hearing 14

December 2022, when US District Court Judge John W. Broomes, pressed the issue as to the

addition of Spencer Angell to a list of material witnesses, with knowledge of the facts of the

litigation and likely to be a material witness, the responses are alarming to the Court and certainly

to the Court of Appeals.  See Exhibit B, after much dialogue back and forth between the US

District Court Judge and attorneys for the plaintiffs represented by Christ Kellogg and Larry

Michel (who had filed the Rule 26(a) disclosures Ex. F and filed further disclosures adding

Spencer Agnell), both who were present in the Court room on 14 December 2022 hearing:

> <u>THE COURT:</u> So do you think Mr. Angell has material knowledge that's going to
> be important to this case that he's going to be a likely witness or have something
> substantial to contribute in the litigation of this matter?
> <u>MR. KELLOGG:</u> **I don't believe so, Your Honor.   <u>My client tells me no.</u>"**
> See page 8 lines 7 through 13*

* FURTHER NOTED Chad M. Koehn signed the additional material witness list adding Spencer
Angell and then tells the District court "NO" regarding Spencer Angell, however their Judge
Shopping was already completed, forcing the recusal of the Federal Magistrate who they had
previously demanded recusal via Chad M. Koehn verified motion for recusal.

Having had their verified motion for recusal of US Federal Magistrate Judge G.E. Birzer

was denied by the US Federal Magistrate Judge.  The **<u>next move to "judge shop"</u>** within the US

District of Kansas exerting unfair and unethical control over choices of randomly assigned Judges

the plaintiffs' addition of Spencer Angell was made in a discovery notice they filed, also <u>signed by</u>

<u>Larry G. Michel, as initial disclosures were as well</u>, see Exhibit F, in order to "kneecap" the US

5

Federal Magistrate Judge via a contrite recusal, see statements by District Judge John W. Broomes

in transcript Exhibit B.  US Federal Magistrate Judge G.E. Birzer had then to file an Order

recusing herself from the litigation in document 335.   None-the-less prior orders of the US

Federal Magistrate Judge G.E. Birzer came for hearing before the District Court, see Exhibit B.

The plaintiffs were previously ordered to amend their SLAPP petition to **remove the known**

**racial slur they placed in the originating complaint in place of the defendants given name,**

and making other substantial changes.  The Plaintiffs then moved to amend their complaint yet

again a second amended complaint, attacking the pro se defendants elderly father, who the district

court refused the request to add the pro se defendants elderly father to the litigation filing Order of

the Court in Document Order 330, however has now allowed the complaint to be entirely changed

though will be subject of a new motion to dismiss.

Despite the sworn declarations by Chad M. Koehn plaintiff and the counter signature of

one of his plethora of attorneys, Larry G. Michel, who was present and on the record in the

Courtroom on 14 December 2022, hearing, wherein both Larry G. Michel and Chad M. Koehn

swore that Spencer Angell, the son of US Federal Magistrate Judge G.E. Birzer's chamber

counsel Samantha Parks Angell has material knowledge of the facts of the SLAPP petition filed

by the plaintiffs and obviously both Larry Michel and Chad M. Koehn who are friends with James

Angell, the ex-spouse of Samantha Parks Angell. Chamber counsel (law clerk) for US Federal

Magistrate Judge G.E. Birzer, all knew at the time the Rule 26(a) disclosures (Exhibit F) were

made that Spencer Angell was in the employ of the plaintiffs chose to keep this information

private, and furthermore chose not to include <u>Spencer Angell</u> in the Rule 26(a) disclosures.

**<u>I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of</u>**

**<u>documents 254, 255, 266, 289, 292</u>**

**<u>First,</u>** in Order of the Court Document 334, I have complied under protest with Pro Se registration

of notice, by the date which the Court Ordered, yet my emails to the Court have continually gone

to junk folders and I have either not received at all or emails from the Court have gone to a variety of junk folders and/or have been deleted, thus requiring me to continue to rely upon third party nonprofits to receive notice of documents filed, and I am unable to retrieve "free" or no-charge documents which are filed in this case, until after third party non-profits such as Judicial Watch and CourtListener and/or others have retrieved the documents.  I have dutifully in attempted compliance had the need to take inordinate time of the Courts personnel and the DOJ, even communicating various Chambers, specialists within the Court **Andrea Schreyer,** Division Manager, US District of Kansas, see attached Exhibit "L", email from Ms. **Schreyer.**

     **Second,** the Court ordered a show cause regarding travel restrictions in the parallel criminal matter(s) in Oklahoma.  The *pro hac vice* counsel Craig Alan Brand's deliberate and intentional misleading of Chambers of US Federal Magistrate Birzer and myself by replying not from the email address he was sent email as per his affidavit of perjury filed in document 24-1, which the Court stated he "played fast and loose" meaning was dishonest.  In documents 52 and 57, it is clearly demonstrated to the Court and now the Tenth Circuit Court of Appeals *pro hac vice*, attorney Craig Brand, intentionally misled me and the Court as to a false designation email, as trickery to have been inadvertently violate the conditions in the parallel criminal case(s).  I have also followed orders of the Court in Document 67, emailing with attorney Chris Kellogg to take deposition of an identified witness in plaintiff's initial disclosures under Rule 26(a) which has seen the prosecutor in the parallel criminal case take me into custody for doing so.  Given the fact the Oklahoma Court has had constant communication with the attorneys representing the plaintiffs in this Civil matter, and the criminal matter is being used as a weapon to prevent proper procedures in the civil matter as is noted, in the States request to increase bond, wherein the State of Oklahoma states:   *"... on September 15th, 2022, the defendant using the email address* oklahomaremote@gmail.com*, sent an email to an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville,*

*Oklahoma."* See 3rd page of Exhibit D.   It is evident that this civil proceedings is being

"kneecapped" see Exhibit B, to use the term used by District Court Judge Broomes by the parallel

criminal proceedings.   I cannot interpret the conditions placed upon me in the parallel case

liberally and therefore must interpret them conservatively to avoid incarceration for my

participation in defense of the SLAPP SCORCHED EARTH litigation being pursued by the now

SANCTIONED plaintiff Chad M. Koehn etAl.  I did timely in accordance with Order in

Document 334, file response reply to the show cause, attached as Exhibit "M", document 337:

https://ia902500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.337.0.pdf

See Exhibit E Attached motion by my criminal defense attorney regarding the "violation"

of bond as I await trial, for more than a year now in the directly parallel hereto criminal

proceedings being used as a weapon in these civil proceedings.   "Mr. Nelson has good reason to

believe that the Blanchard's **are running a Ponzi scheme.**  The dispute between Mr. Nelson and

the Blanchard's began while he was employed by one of their many companies **over a crypto**

**currency named "HERC",** Mr. Nelson received an email from a fellow shareholder who

informed him that a group of **investors had purchased three million dollars of the crypto**

**currency** and w<u>anted to know where the money was</u>.   "In a document explaining "HERC"

produced by the Blanchard's (see attached Exhibit H, "HERC" White Paper) the Blanchard's are

listed as CEO and President on page 14 and on page 18 is an individual know as Joby Weeks.  Mr.

Weeks is listed as a member of the "Advisory Board".  Mr. Weeks was indicted out of United

States District Court in New Jersey, in the United States of America v. Matthew Brent Goettsche

et al. 18-CR-877-CCC<u>, for conspiracy to engage in wire fraud in connection with his role in</u>

<u>BitClub Network.</u>  Mr. Weeks ultimately entered a plea in that case."  AND "It is not just that the

Blanchard's had a member of the "advisory Board" that was indicted for the "Bitclub

Conspiracy", while Mr. Nelson worked for the Blanchard's he personally witnessed Anthem

Blanchard recruit for and invest money into BitClub." AND "The Blanchard's have also started

multiple companies in recent years and make **astounding claims such as their company is securing the energy gird in California**, claim to be in partnership with the country of the Netherlands, **claim to securing all gold imports and exports to the country of the Netherlands.**" AND "The issue concerning whether or not the Blanchard's **are involved in a "Ponzi scheme"**, and whether or not they are **being assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues involved in the federal litigation in Kansas. AND "What has occurred between these two cases is a board member of Anthem Holdings Company sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District Attorney's office to try and stop Mr. Nelson from defending the federal case.  Mr. Nelson as a constitutional right to participate in the federal litigation pending in the United States District Court of Kansas and he has done nothing wrong by doing so." See Generally Exhibit E.

The parallel criminal case involves largely threats from *pro hac vice*, attorney Craig Alan Brand who is at the center of the parallel criminal case, having threats issued regarding, a DEAD whistleblower, in another criminal case involving Dale Takio, an employee of the companies controlled by the plaintiffs, who is also identified as a witness in the *Rule 26(a)* disclosures.  I am a significant equity interest holder in the companies at dispute and **one of many WHISTLEBLOWERS who reported securities violations** regarding PUMP and DUMP of CRYPTO CURRENCIES.  This entire SLAPP litigation is nothing but an invidious harassment lawsuit to prevent disclosures about potential securities violations to regulators.   "Mr. Nelson has a constitutional right to participate in the defense of the lawsuit filed against him by an associate of the state's complaining witness."  See Generally Exhibit E

"The right to offer the testimony of witnesses, and to compel their attendance if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own

witnesses to establish a defense,  This right is a fundamental right of due process of law.   ***Washington v. Texas*, 388 US 14, 19 (1976)"**  See Generally exhibit E, Motion.

The defendant/counter-plaintiff is proceeding pro se out of necessity in lack of funds, having to fend off the SLAPP (Strategic Lawsuit Against Public Participation) filed by the plaintiffs whilst simultaneously defending criminal charges relating from the same nexus.  The plaintiffs in this SLAPP litigation are directly related to the criminal proceedings.  I APPEAL the District Court Judge John W. Broomes, relating to STAYING this civil case to allow the parallel criminal case to conclude. I have also attempted compliance with all other Orders of the US District of Kansas Federal Court including without limitation registration for pro se notification via email, *see above* though I am not receiving timely notices nor are my emails to the Court being timely processed ever since approximately 13 December 2022, nonetheless using inordinate time of the Court personnel I have been able to get them to find my emails in junk folders, though I still have no way of getting court emails not to go to junk folders or be auto deleted.  I believe my filings have complied substantially and to the best of my ability with those Orders of the Court to register for pro se notification of filings and reply with copies of Order from the Oklahoma criminal court which has dictated where I can reside and am allowed to return. See generally Exhibit "M".   I replied timely to the District Court, providing the order from the Oklahoma Court, dictating where I can reside and where I must return.

**On page 3, of the Appealed Order, the District Court states:**  "Defendant's motions are not models of clarity. The motions are rambling diatribes attempting to ascribe some error to Judge Birzer's previous orders.**"**   Equally the orders and verbal instructions of the parallel criminal case in Oklahoma **are not clear** and **IF** travel to Kansas is permitted, as well as inherent fear that any wrong step will lead to incarceration.   Emailing per Order of the Court in Doc. 67, attorney Chris Kellogg, had **Craig Alan Brand run to the prosecutor in the parallel criminal proceedings** and subsequently I was taken into custody in part for emailing Kellogg, in

accordance with ORDERS of US District of Kansas Federal Court.  **One Court cannot order me to do something, which in turn another court then incarcerates me for** following Orders. I will NOT follow orders which I believe will incarcerate.  **I seek APPEAL to address the "SCORCHED EARTH" litigation policy being pursued by Chad Koehn, a now SANCTIONED former stockbroker who is SUSPENDED by a US Federal Regulator.**

 **Doc. 254, brings matters to the Court for Objection** of the Court not reviewing of documents 52 and 57, regarding a false designation email sent by Craig Alan Brand, *pro hac vice*, where Brand intentionally sent email from an email address other than he was emailed to by Chambers of the Magistrate, Brand's actions intentional were to have me involuntarily violate the orders of the parallel criminal proceedings, see Generally Documents 52 and 57.   Also bringing to attention of the *District Court Gliatta v. Tectum Inc., 211 F. Supp. 2d 992, 1009 (S.D. Ohio 2002)* **(lawsuit brought in bad faith with retaliatory motivation prohibited)**; *Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)* ("baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions"); *Stanerson v. Colorado Boulevard Motors, Inc., No. 06-cv-00856, 2006 U.S. Dist. LEXIS 80124 (D. Colo. Nov. 2, 2006);* Indeed, threatening to sue a whistleblower can be actionable retaliation. *Brach v. Conflict Kinetics Corp.,(2016).*Retaliation is prohibited even if it is undertaken at the request of a government official. *10 USC § 2409 (a)(3)(B).*

 I removed the SLAPP (Strategic Lawsuit Against Public Participation) state petition filed by the plaintiffs and served me in Essex County, New Jersey, which contained **a KNOWN Racial Insult in place of my given name.**  "The Magistrate report again does not take seriously enough the use of the RACIAL SLUR / INSULT.  **My concern is how the Racial INSULT** was used, the FACT two licensed attorneys proof-read and signed the petition and the plaintiff's reviewed the petition for form and substance as required by law**. All of them KNEW** the term was included and ALL of them allowed it to remain unchecked in the SLAPP petition.

See page 6, of Doc. 254

"Magistrate FAILS to lay out all the facts, which include the Magistrate ordered the parties not to file motions/answer until further notice, I unlike the licensed attorneys followed the orders of the Court. At each and every step I am barred from filing motions/answer but the bar licensed **attorneys are allowed to violate the Rules of Professional Conduct, Local and Federal Rules and even ORDERS with impunity.** See generally page 8:
"On page 11 of Order 63 at Footnote (9) the Magistrate Report references a unique, yet brilliantly written document referred to as the "Pillars of Professionalism". Concern is brought forth to the Court, that this document seems to replace and effectively lessen the responsibilities of Licensed Attorneys. Nowhere within the document entitled "The Pillars of Professionalism" **am I adequately protected**. The document appears to give **licensed attorneys a "pass" at their regular violations to the Rules of Professional Conduct."**

"At (E) of Doc 63, the Magistrate errors in the application of the law, only referencing the Atty. General and NOT the SEC (Securities Exchange Commission) a FEDERAL ENTITY.  I respectfully remind the Court that the SEC (Securities and Exchange Commission) is a Federal Commission and as such the Court has the Power to issue writs as granted under the US Constitution and All Writs Act, especially when a matter of law is cited and reason provided given the **material misrepresentations as to "nerve center" to the highly bigoted naming convention of the CRYPTOCURRENCY Hedge Fund "RED NECK High Tech Yacht Fund LP"**, obvious and evident material misrepresentations **proof positive of on-going violations to Federal Law**. A writ should be issued to the Securities and Exchange Commission (SEC) a Federal entity, if not also notice of the Attorney General for the State of Kansas, whilst I may not be a citizen of the State of Kansas, I deserve no less protection under the 14th amendment than citizens of the several states."

This matter involves issues with the Advisers Act, Exchange Act, and issues of material

misrepresentations, omissions and illegal trading upon US Federal Resources and States,

including the use of US MILITARY LOGOS, SEALS by the plaintiffs to imply partnerships

where none exist.  I have also requested in February for financial disclosures of the Jurists as I

have a right to ensure given the issues involving public companies that no conflicts of interest are

present.  Craig Brand's threatens criminal prosecution to gain unfair advantage, he uses his

minions to imply the ability to improperly influence Judge's, making wild public claims to be a

"policy expert" on a wide range of issues, implying presiding Judge Broomes.  **Brand's** claims

WHISTLEBLOWERS, windup DEAD, like the DEAD whistleblower in the Dale Takio criminal

case involving <u>Public Company Simon Properties</u>.  <u>Craig Brand is known for his public</u>

<u>statements he</u> **"[CRAIG ALAN BRAND] intentionally provides people false information"**

and has **"championed the art of disinformation".**  The Federal Magistrate declared **<u>CRAIG</u>**

**<u>ALAN BRAND to have "played fast and loose", meaning was DISHONEST</u>**, in his affidavit

for *pro hac vice* status.  Requests for financial disclosure reports have been denied despite the

new **"<u>Courthouse Ethics and Transparency Act</u>** <u>requiring federal judges' financial disclosure</u>

<u>reports be made publicly available online</u> and mandates that federal judges submit periodic

reports of securities transactions..."  The first amendment to such laws since 1978.  Larry G.

Michel refused initially to comply initially with FRCP Rule 7.1(a)&(b), and now given the

contrite recusal of a US Federal Magistrate Judge, via addition of the son of the managing

member of the plaintiffs law firm and that of Chambers Counsel Samantha Parks Angell, it is

more important now than ever that transparency of fair unbiased Judges be demonstrated to the

public at large.   The successful JUDGE SHOPPING via lies to the Court in writing demands that

the public be protected as well as the undersigned unrepresented pro se litigant.

**<u>See generally page 10, Doc. 254; 14th Amendment Rights not equally applied:</u>**

> "The Court has had the unusual and non-conformity with the rules need to ORDER: "the
> Court ORDERS Plaintiffs to provide Defendant with a hard copy of any future filings via
> regular mail and to certify service of same." Each and every filing of the licensed
> attorneys filed a certificate of service, however, did purposefully and maliciously in bad
> faith refuse to provide a copy or notice to me PRO SE, indicating proof positive of bad
> faith, even the Court has found: "The same cannot be said of the represented litigant, for
> we expect counsel to know the pleading rules of the road without being given personal
> notice of them by the district court. Our concern here is with the pro se litigant unschooled
> in the law." *See Erickson, 127 S.Ct. at 2200; Andrews, 483 F.3d at 1076-78*. FOUR (4)
> different lawyers all working against me, apparently know not the FRCP and are
> ORDERED time and again to follow FRCP, licensed professional should **"know the
> pleading rules of the road without being given personal notice of them by the district
> court" id., conversely as I am PRO SE without legal education** and learning as quickly
> as possible and has yet to be given any direction from the Court as to what I have done
> wrong or what is not permitted by the rules, <u>the Court should have "concern here is with
> the pro se litigant unschooled in the law"</u> id. …conversely the role models providing

leadership, opposing counsel … continue to flagrantly flout the very rules at bar including Professional Conduct, Local and Federal"

**Doc. 255, involves violations to rights under: 4th, 5th, 6th, 8th, 14th:**

"The pro se defendant should not have his civil rights further eroded nor constitutional rights under the fifth amendment. Plaintiffs filed the frivolous incongruous SLAPP petition to state court and then laid in wait nearly a year, conspiring as the record and facts so dictate with the claimed "victims" in the parallel criminal matter… both Plaintiffs United Capital Management of Kansas Inc. and Chad Koehn have extensive business ties, and have conducted extensive business interactions. All the while Craig Brand is proceeding to the NEVADA SUPREME COURT, according to the sworn testimony of Cynthia Blanchard, president of Anthem Holdings Company, to further appeal the employment matters there in NEVADA, relating to the genesis corporation Anthem Vault Inc. Anthem Holdings Company, did not and sold instead unregistered, unlicensed securities. The "holding company" of Anthem Holdings Company is in material dispute as to a legitimate "reverse short form mergers", … never had shareholder votes, and the regulation D filing stated no "business combination merger", yet the offering documents state a combination merger to effect and consummate the series of "smurfing" in the reverse "short form mergers", subject of multiple parties whistleblower complaints. The plaintiffs here claim tortious interference in the business of UCMK which is apparently in the business as it claims publicly of leading investments into a variety of investment vehicles, some registered and some not, some in compliance and some not as the record indicates. All the claims of the plaintiffs reference directly back to Anthem Holdings Company and Hera Software Development Inc. which is the company of the moniker Herasoft www.herasoft.com the SAME company and TLD used by *pro hac vice* purported attorney **Craig Alan Brand to mislead the Chambers of Magistrate Judge Birzer and the Pro Se defendant in hopes to get the Pro Se defendant on a technical violation of a bonding in the underlying parallel criminal matter**.."

I have laid out the issues for de novo review of the Magistrate's Report consistent with my

Constitutional rights in the face of the parallel criminal proceedings; *SEE page 14*:

"Matter of *Seper, 705 F.2d 1499 (9th Cir. 1983)* The mere implication of PRO SE defendant's FIFTH Amendment Rights; **Warrants A Stay of this Action Pending Completion of the Criminal Proceedings.** Twice recently stays in civil proceedings pending the resolution of criminal proceedings have been granted, as the fundamental rights of the parties must be protected as a matter of Constitutional Law. *Continental Insurance Co. v. Cota 2008 WL 4298372 (ND Cal. J. Conti presiding); Jones v. Conte 2005 WL 1287017*; as set forth in both cases: "[t]he decision western to stay civil proceedings in the face of a parallel criminal proceeding should be determined based on the circumstances and competing interests involved in the case". Keating v. Office of Thrift Supervision 45 F. 3d 322 (9th Cir. 1995) **When faced with the issue of either allowing a civil action to proceed or protecting the Fifth Amendment rights of individual defendants against self incrimination, the majority of courts have consistently chosen the latter."**

Craig Alan Brand has throughout the course of the contentious litigation used extra judicial

harassment, use other proceedings as procedural weapons, he has even used intentional false

designation emails to Chambers and Nelson in order to have Nelson involuntarily violate another

Court's Order placing Nelson in prison, *See generally Documents 52 & 57.*

## Doc. 289:

1. "Plaintiffs have directly tied the Criminal pending matter to this case in a way which

   makes discovery impossible and thus the scheduling order not able to be followed and the

   orders of this court in direct contravention to the Orders in the criminal proceedings.   In

   the INTERESTS OF JUSTICE THIS CASE MUST BE STAYED pending resolution of

   the parallel criminal matters to that ALL PARTIES can be properly and legally JOINED

   herewith this Civil Matter."  See page 14 of Doc. 289

 IF **"...the integrity of the judicial process is to be maintained, and the appearance of**

**impropriety to be scrupulously avoided, the issue of an allegedly improper representation**

**should be resolved at the outset, "lest a costly and protracted trial be tainted on the merits**

**by an issue collateral thereto."** *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496*

*F.2d 800, 803 (2dCir. 1974).*   The US District Court continues with a motion for the

disqualification of pro hac vice, attorney Craig Alan Brand, which would dramatically reduce the

circus act environment of this case and end the SCORCHED EARTH litigation tactics being

pursued by the plaintiffs orchestrated by Craig Alan Brand, who publicly in the books he has

authored:  "LIFE SUCKS" claims to have "championed the art of disinformation" and that he

Craig Alan Brand "intentionally provides people with false information".

## Doc. 292:

1. The Court errors in plain error, by failing to do substantial justice, wherein I am prohibited

   from all contact with the attorneys for plaintiff, as they have already run to the prosecutor

   in the parallel criminal case for emailing to take a deposition of an identified witness,

though they purposefully miss identify the witness as Gil Gilliam when in fact the witnesses true identity is HOWARD LAVON GILLIAM, demonstrating further scorched earth litigation tactics being pursued by *pro hac vice* attorney Craig Brand.

2. In Order to prevent discovery in the matter, plaintiffs have run to the prosecutor in an ongoing directly related parallel criminal case involving substantially all the same parties and events, claiming that emailing with Chris Kellogg as per the Orders of the Court in document 67, violates the bond conditions in the parallel criminal matter(s).

3. The Prosecutor was provided emails between myself, and attorneys for the plaintiffs

4. My criminal defense attorney filed a response:   *"Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit. The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard"* See Ex. E

5. **Prosecutor:** "<u>You cannot violate the bond conditions in Oklahoma just because you have a civil lawsuit pending in Kansas</u>. **That is a legal rodeo you have to figure out on your own** if you're going to represent yourself pro se in Kansas." *Lines 21 - 23, p. 12 Ex. "C"*

6. **Prosecutor:** "I believe, on the Federal lawsuit in Kansas. This all goes back to I'm sorry if you have spent a lot of your money paying for three attorneys in the State of Oklahoma bonding out in the State of Oklahoma, and you can't — or no one will take your case in Kansas — **because that's the other rumor I've heard**. But just because you don't have anyone to represent you in Kansas, doesn't mean you get to violate a Judge's order in the State of Oklahoma"   *Page 24 lines 14-23; Exhibit "C"*

7. Doc. 292, also involves the issue of the plaintiffs constantly demanding sanctions for my resisting violating the plethora of conditions placed upon me by the same parties suing me. <u>The court is making new law, and overriding case precedents</u> *Brickwood, 369 F.3d at 389 (emphasis added); see also Hamlin v. TD Bank, No. 1:13-CV-00200-MR-DSC, 2014 WL 3101942, at \*3, n.2 (W.D.N.C. July 4, 2014)*

8. The use of the directly parallel criminal proceedings to exact inordinate punitive punishments against the US Constitution for the constitutionally protected activity of defense of the SLAPP lawsuit here, is <u>demonstrable constitutional crisis,</u> must be addressed in separate briefs now requested.   Especially where the constant pursuit of sanctions has the Court here to seek alternative means to punitively sanction an unrepresented pro se party, and overturn its own rulings *Mellott v MSN 4 Communications*

*Inc., 492 Fed. Appx. 887, 888 (2012) (emphasis added); see also Peoples v Wichita State University, No. 18-1010-JWB, 2019*

The attorneys representing the plaintiffs in the civil case above herein referenced have continually run to the prosecutor in the parallel criminal case to prevent, discovery, prevent depositions, and have even succeeded in jailing the undersigned appearing pro se for participation in this civil matter. To say the two cases are joined as essentially one would be an understatement. The plaintiff's even list all their witnesses which are conspicuously absent Spencer Angell, as the employees of Hera Soft aka Hera Software Development Inc. with the identical address in Bartlesville Oklahoma, see Exhibit F, their 26(a) disclosures which are conspicuously void the name Spencer Angell. Kevin Adams my criminal defense attorney made the matter well known the response to the State of Oklahoma, see Exhibit "E", wherein Mr. Adams states: "Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit. The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard" & *"TO BE CLEAR: Chad Mitchell Koehn, is a member of the board of directors of Anthem Holdings Company. He has even listed himself in SEC Disclosure statements as having a conflict with UCMK in the referral and sale of securities in Anthem Holdings Company."* See Exhibit E.

To further complicate matters, when plaintiff Chad M. Koehn learned on 13 October 2022, that I was bailed out of jail after being taken into custody, in part for following Orders of the Court in Doc. 67, the very next day 14 October 2022, Chad M. Koehn submitted an offer in compromise for a judgment **order against him to a US Federal Regulator, accepting SANCTIONS against plaintiff Chad M. Koehn.** See Exhibit G. The coincidences occurring in this civil litigation in tandem with the criminal prosecution in Oklahoma are not just uncanny, they are nefarious. Now securities fraud attorneys from Coast to Coast are searching for victims, case in point Exhibit H, Carlson Law Group: Salina Advisor Chad Koehn: FINRA Investigates Ex-SA

Stone Rep  Broker Check regarding stock brokers, now carries a "WARNING" regarding Chad M.

Koehn, see Exhibit "i" [https://brokercheck.finra.org/individual/summary/2216169] Broker Blogs

carry stern headlines *"Chad Koehn Suspended by FINRA Following Alleged Unapproved*

*Securities Transactions"* Kurta Law Chad Koehn Violations See Exhibit "J".

    Plaintiff Chad M. Koehn is a FORMER stock broker, currently SANCTIONED by a US

Federal Regulator for volatile conduct in violation of securities laws, rules and regulations, **see**

**Exhibits G, H, i, K** attached herewith.   Fantastically Koehn etAl. also claims to have a contract

with the Country of the Netherlands (Holland), "to verify all gold imports and exports for the

entire nation", implying a direct partnership with the Netherlands, see Exhibit E  Koehn also

regularly advertises using the Great Seal of the State of California and the US Department of

Energy directly implying a working relationship and contract with the US Federal Government

and the State of California.   Demonstrating clear materially false claims, thus materially false

misrepresentations to defraud investors and the public at large  "The issue concerning whether or

not the Blanchard's are involved in a **"Ponzi scheme",** and whether or not **they are being**

**assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues

involved in the federal litigation in Kansas." See Generally exhibit E, Motion.

"What has occurred between these two cases is a board member of Anthem Holdings Company

sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the

Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District

Attorney's office to try and stop Mr. Nelson from defending the federal case.  Mr. Nelson as a

constitutional right to participate in the federal litigation pending in the United States District

Court of Kansas and he has done nothing wrong by doing so."  See Generally exhibit E, Motion.

    Beginning with a separate entity Chad M. Koehn and UCM are involved with that of

BitClub, an alleged high tech Ponzi scheme, bilking at least $722 million from 10's of thousands

of investors, being prosecuted by US Attorneys in the US District of New Jersey.   Including

previously convicted child sex predator Russ Albert Medlin, currently incarcerated in Indonesia, on further child sex charges, again, see Exhibit "K":  "American wanted by FBI arrested in Indonesia for suspected child sex crimes" from REUTERS

https://www.reuters.com/article/us-indonesia-crime/american-wanted-by-fbi-arrested-in-indonesia-for-suspected-child-sex-crimes-idUSKBN23N1KB   Joby Weeks, who has plead guilty to charges including "knowingly and intentionally conspired and agreed with each other and others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x."  See Generally:

https://storage.courtlistener.com/recap/gov.uscourts.njd.422880/gov.uscourts.njd.422880.1.0.pdf
https://www.justice.gov/usao-nj/bitclub & https://www.justice.gov/usao-nj/page/file/1489316/download

As noted by DOJ Press Releases, see Exhibit "N";   If it pleases the Court to take Judicial Notice that the de facto PPM (Public Placement Memorandum) issued for HERC crypto stock coin, has on page 18, as the advisor Joby Weeks, the same individual referenced herein above in the Bitclub Ponzi scheme as prosecuted by US Attorneys.  A copy of the PPM (Public Placement Memorandum) distributed by Koehn in Exhibit H of Exhibit E.

The Court should also take Judicial Note, that Joby Weeks is described as:

> "As the Prime Minister of Atlantis and Founding Father of Liberland Joby Weeks has found himself in bitcoin since it began as well as has worked in digital currencies since before 2009. Finding himself at the helm of Liberty Dollar his project minted more than $100mm worth of gold rounds.  Joby is known to be the defender of personal rights and the protector of peace across nations."

If it pleases the Court and for the benefit of the United States of America, as this is an Article III, Constitutional Federal Court, that the Court recognizes that the United States Government neither recognizes "Atlantis" nor "Liberland" as legitimate nation states.

Proceeding pro se out of necessity I have pleaded and begged the Court to stay the matter before the Court of the above herein referenced case, especially given the circumstances and fact.  **I am a whistleblower who is being beaten up in multiple courts while Koehn and crew seek to fight various charges as is evident.**  The Criminal proceedings in Oklahoma, charging me with

stalking, have been levied and have continued in tandem to these civil proceedings where the

criminal case and its restrictions are used as a procedural weapon to prevent under threat of

incarceration my defense of the SLAPP complaint by Koehn etAl.

**The court in Oklahoma is a criminal state Court, which has stated it must control.**

**JUDGE:** "A criminal case is superior to the civil case. The conditions — the bond conditions in

the criminal case are in place for a reason and remain effective throughout this criminal case and

until and unless they're changed." *Lines 24 - 24 page 27 & lines 1 - 3 page 28; Exhibit "C"*

The Prosecutor:  "I'd like to respond to some of that, seeing as how I have now been apparently

accused of collusion. I think the word would be "prosecutorial misconduct." And I would like to

set the record straight. I have never had any – well, I take that back. Mr. Koehn did call me back

in December of '21" … "…I have not spoken to Mr. Koehn at all."    "In fact, I find him kind of a

jerk, so I don't particularly like Mr. Koehn."  "…some silly civil lawsuit that is happening in a

Federal court in Kansas."  See Exhibit C

**The Orders Appealed should be determined "De Novo" not otherwise:**

In Order of the Court by the Honorable United States District Judge John W. Broomes, he

writes:  *In reviewing an order by a magistrate judge, the district court "applies a more deferential*

*standard [than de novo review] by which the moving party must show that the magistrate's order*

*is 'clearly erroneous or contrary to law.'" Burton v. R.J. Reynolds Tobacco Co., 177 F.R.D. 491,*

*494 (D. Kan. 1997) (quoting 28 U.S.C. § 636(b)(1)(A)). The clearly erroneous standard requires*

*that the district court affirm unless on the evidence the district court is left with a definite and*

*firm conviction that the magistrate judge's decision was in error."* See id See generally page 2 of

Order of US District Judge John W. Broomes in Document 334.

**Legal Standard for Review of Magistrate Report:**

District courts may refer dispositive motions to a Magistrate Judge for a recommended

disposition.  *See Fed. R. Civ. P. 72(b)(1)*  When resolving objections to a Magistrate Judge's

proposal, "[t]he district judge **must determine de novo** any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." **Fed. R. Civ. P. 72(b)(3)**.   **Similarly, 28 U.S.C. § 636 provides:**

> **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

**28 U.S.C. § 636(b)(1)(c).**  "'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)*("One Parcel") (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). **As the United States Court of Appeals for the Tenth Circuit** has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." *One Parcel, 73 F.3d at 1059* (*Niehaus v. Kan. Bar Ass'n,* (10th Cir. 1986), superseded by statute on other grounds as stated in *De Vargas v. Mason & Hanger-Silas Mason Co., (10th Cir. 1990); United States v. Walters, (6th Cir. 1981)).*

     **The Tenth Circuit has held** "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue **for de novo review** by the district court or for appellate review." *One Parcel, 73 F.3d at 1060.* "To further advance the policies behind the Magistrate's Act,  [the Tenth Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" *One Parcel, 73*   This is NOT the case, here where timely objections have been raised of specific issues with the Magistrate Judge's Report, and this issue is further complicated by the

FACT the US Federal Magistrate has now recused herself, based upon the appearance of impropriety as referenced herein above regarding the nepotism related to that of one SPENCER ANGELL the son of US Federal Chambers Counsel SAMANTHA PARKS ANGELL.

**The Tenth Circuit has noted,** "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" *One Parcel, 73 F.3d at 1060 (quoting Moore v. United States (10th Cir. 1991)* ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")). *Cf. Thomas v. Arn, 474 U.S. at 154* (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review … *sua sponte* or at the request of a party, under a de novo")

In *One Parcel,* **the Tenth Circuit** also noted that the district judge had decided *sua sponte* to conduct a de novo review despite the lack of specificity in the objections. Here not only is the undersigned a appearing pro se, out of necessity while a parallel criminal proceeding continue, unabated but no order entered by the Magistrate Judge Birzer, who has now recused herself from the proceedings, carried upon any Magistrate Judge Order the appraisal of the pro se litigant to the effect of the Magistrate Judge's Order(s), nor was the undersigned appearing pro se, permitted to travel for hearing before the US Federal District Court Judge, given the travel restrictions, as noted, as to where the pro se undersigned may reside and return, as fully answered per the show cause in document 337 and its attachments, attached as Exhibit "M".

Nelson a whistleblower regarding far reaching detrimental impacts to the US economy and financial system, including the US Dollar, presented by clear and present danger to the investing public, by a series of CRYPTO CURRENCIES, alleged **"Ponzi like" schemes to defraud and undermine the US Financial System**. **Koehn is a SUSPENDED** securities

broker, recently **SANCTIONED, and FINED** for Violative Conduct by a US Federal Regulator, is using this litigation & criminal proceedings in Oklahoma to SILENCE the pro se, Nelson.

## **Legal Standard REGARDING STAYING of a Civil Case in light of a Criminal One**

Courts have discretion in determining whether to grant a motion to stay. *Landis v. North Am. Co., 299 U.S. 248, 254 (1936)*. As the Supreme Court recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* The determination of whether to stay a proceeding "calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Popoola v. MDIndividual Practice Ass'n., Inc., No. DKC-00- 2946, 2001 WL 579774, at \*2 (D. Md. May 23, 2001) (quoting United States v. Georgia Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977)); Landis, 299 U.S. at 254-55 (noting that the decision as to whether to stay a proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); see also, e.g., In re Mutual Funds Investment Litigation, MDL No. 1568, 2011 WL 1540134, at \*1 (D. Md. Apr. 20, 2011)* (assessing a request for a stay pending appeal and noting that, in striking the balance *Landis* envisioned, courts look to such factors as the length of the stay, the hardship to the movant were the action to proceed, the burden a stay would impose on the non-moving party and **whether the stay would promote judicial economy by avoiding duplicative litigation**).

**A Stay of All Civil Proceedings Until Resolution of the Pending Criminal Matter is Warranted.**   Where the same incident gives rise to a civil lawsuit for damages and a criminal prosecution, the civil case ordinarily should be stayed until the criminal proceedings have concluded. *See Estes-El v. Long Island Jewish Med. Ctr., 916 F. Supp. 268, 269 (S.D.N.Y. 1995)* (explaining "[i]t is well-settled that the Court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."); *Guillory v. Wheeler,*

*303 F. Supp. 2d 808, 811 (M.D. La. 2004)* (observing that where criminal charges remain pending, "the better course is to proceed as strongly suggested by the Fifth Circuit Court of Appeals--to stay proceedings ... until the pending criminal case has run its course"); *see also*, *e.g.*, *Peyton v. Burdick, 358 F. App'x 961, 962 (9th Cir. 2009)* Gallipeau v. Mitchell, No. 07-3522, 2009 WL 539947, at *1 (D.S.C. Mar. 4, 2009)

The Supreme Court, in discussing claim accrual, noted: If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and **in accord with common practice**, **to stay the civil action until the criminal case or the likelihood of a criminal case is ended.** *Wallace, 549 U.S. at 393-94.*

Courts, relying on Wallace, **routinely stay civil actions** pending resolution of ongoing criminal proceedings when those civil suits. *e.g.*, *Dickerson v. City of Charleston Police Dep't, No. 10-1625, 2011 WL 3880958 (D.S.C. Aug. 10, 2011), adopted by 2011 WL 3881041 (D.S.C. Sept. 2, 2011)* Cameron v. Wise, No. 09-967, 2009 WL 3755093 (S.D.N.Y. Nov. 2, 2009); Crooker v. Burns, 544 F. Supp. 2d 59, 60 (D. Mass. 2008); Motley v. Wolf, (E.D. Mo. Dec. 3, 2007).*

Even prior to *Wallace*, <u>courts recognized that staying the civil action until resolution of the criminal matter makes sense</u> in most instances because the resolution of the criminal action could contribute significantly to the narrowing of issues in dispute in the civil case, **would avoid potential Fifth Amendment issues and other discovery problems that may arise in parallel proceedings, and should prevent inconsistent rulings.**

*See Estes-El, 916 F. Supp. at 270* (identifying concerns created by proceeding simultaneously in criminal and civil actions); *Guillory, 303 F. Supp. 2d at 810-11 (same)*. Other courts, including state courts, have frequently stayed discovery in civil proceedings when a related criminal prosecution may be undermined by a criminal defendant's use of the broad discovery rules available in the civil case.  Yet, here the plaintiff's seek to constantly bombard the

pro se litigant in multiple courts simultaneously while refusing to provide any discovery themselves. *See, e.g., State v. Deal, 740 N.W.2d 755 (Minn. 2007); State v. Tomasso, 49 Conn.Supp. 327, 878 A.2d 413 (Conn. Super. 2004); Turley v. U.S., 2002 WL 31097225 (W.D. Mo. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Sup.2d 6, 10 (D. Conn. 2002).* The rationale behind such a stay is that a litigant should not be allowed to use the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery and obtain documents he would not otherwise be entitled to for use in his criminal suit. *Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir.1962), cert. denied, 371 U.S. 955 (1963):*

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. But these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. *Id. at 487-88*

In this particular case, the weight of the various interests tip heavily in favor of issuing a temporary stay until the parallel criminal proceedings are resolved. First, were the civil action permitted to move forward prior to resolution of the criminal matter, individual defendants would be forced to defend claims that might ultimately be barred by *Heck v. Humphrey, 512 U.S. 477 (1994).* As the Supreme Court recognized in *Wallace*, it is possible that a conviction in a related criminal case will bar some, if not all, of the claims in the civil action. *Wallace, 549 U.S. at 393-94 (citations omitted)* civil suit would impugn that conviction, Heck [v. Humphrey] will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."); *see also Quinn v. Guerrero, No. 09- 166, 2010 WL 412901, at *3 (E.D. Tex. Jan 28, 2010), adopted by 2010 WL 653477 (E.D. Tex. Feb. 23, 2010) (same); Cameron, 2009 WL 3755093, at *3 (same).* Although litigating claims that may ultimately be barred burdens all parties as well as the Court, the burden is disproportionately borne by Defendant.

**In addition, the interests of the United States are at issue**, to ensure that the government's interest in vindicating justice in the criminal case are recognized, as well as in those investigations initially brought by the whistleblower(s), here the defendant among them for the CRYPTO CURRENCY financial market manipulations to the detriment of public financial markets regarding HERC stock coin and other crypto currencies.  This case, to proceed simultaneously with the criminal action, the defendant would be forced to respond to and defend claims that might otherwise be resolved by a threshold legal motion.  More importantly, the overriding interest of the United States in ensuring a fair resolution of the pending criminal charges would be impaired, as well as the defendant's right to a fair defense.

Even in instances in which it is unclear whether the claims a plaintiff has raised in a civil case will necessarily be barred by *Heck* if the plaintiff is convicted, the better course is to stay the civil action in its entirety while the criminal action is ongoing. *Crooker, 544 F. Supp. 2d at 65* (noting that the criminal disposition will permit the court to better assess whether *Heck* applies to claims and rule consistently on any constitutional issues); *Motley, 2007 WL 4270569, at *1* (determining that a stay was justified because otherwise the parties would be left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict" *(quoting Wallace, 549 U.S. at 393)); Guillory, 303 F. Supp. 2d at 811* (explaining that the better course is to stay the civil case in part because it is difficult to determine without resolution of the criminal proceedings how excessive force claim would be affected by the criminal matter).   Second, while the temporary stay may impose a slight burden on Plaintiff, who like all Defendant, ostensibly seeks expeditious resolution, the proposed stay would not be unduly burdensome because there is no matter imminent and there has been no indication by other than the plaintiff consistently looking to "JUDGE SHOP" and structure the Court to their liking, while seeking in person hearings which the undersigned pro se is barred from attending based upon the underlying criminal proceedings.  Thus **impairing fundamental**

**civil rights of those of due process of law and constitutional rights to defend the SLAPP litigation**.   Moreover, because the incidents at issue in this lawsuit is purportedly from the Plaintiffs' perspective a long running matter and dispute dating back well before the present, there is no danger of lost evidence or a sudden shift in the facts underlying the civil claims on either side, barring plaintiff Chad Koehn being further criminally cited for another fire, as he was just hours prior to service of the originating petition which sat for nearly a year with no attempted service, of the SLAPP petition containing **a known racial insult in the place of the name of the undersigned appearing pro se.**

Perhaps the most compelling reason to stay the pending civil matter is that a temporary stay of the civil matter may serve to protect the defendant, who can avoid the potential for self-incrimination. *See, e.g., Shaw v. Hardberger, No. 06-751, 2007 WL 1465850, at \*1-2 (W.D. Tex. May 16, 2007)* (granting plaintiff's motion to stay in part based on potential Fifth Amendment concerns because the civil case arose from the same set of operative facts as the criminal charges and thus "there is a danger of self incrimination"); *Estes-El, 916 F. Supp. at 270* (explaining that permitting the civil action to go forward may prejudice the plaintiff because of "potential Fifth Amendment issues"). The minimal harm a short postponement of the civil matter occasions does not appreciably tip the scales against a stay.

**Third, a stay will promote judicial economy.**   While a stay temporarily will defer the Court's assessment of claims, awaiting the resolution of the criminal matter likely will foster a more efficient evaluation. *Cf., Wallace, 549 U.S. at 394* (noting that "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."). In particular, the postponement of the civil case may streamline review by potentially eliminating some (or all) of the issues in the civil case. *See Quinn, 2010 WL 412901, at \*3* (noting "it would be a waste of the Court's limited time and resources to handle claims which may ultimately be barred"); *Cameron,*

*2009 WL 3755093, at \*3* (observing that the "interest of judicial economy is served by waiting for

the outcome of plaintiff's criminal proceeding"); *Estes-El, 916 F. Supp. at 270* (noting that "[t]he

interest of judicial economy strongly supports a stay" because disposition of the criminal charges

"may well be determinative" of plaintiff's civil claims).

      Even if the defendant is ultimately absolved of all charges or avoids criminal prosecution

altogether and Plaintiff is able to surmount a *Heck* challenge, courts acknowledge it is still more

efficient to await final resolution of the criminal action before proceeding in the civil case. *E.g.,*

*Crooker, 544 F. Supp. 2d at 65* (staying Bivens claims and reasoning, "[t]hough it is conceivable

that some of the allegedly [improper conduct might] ... escape the *Heck bar*, **conservation of**

**judicial resources dictates a single determination** as to the applicability of *Heck* at the

conclusion of all criminal proceedings.").  A stay ensures that this Court is not simultaneously

adjudicating the same issues as those before another court in the criminal matter. *Id. at 64*

Therefore, under either scenario (i.e., defendant is found guilty or acquitted), **proceeding**

**seriatim rather than simultaneously is <u>likely to promote judicial economy.</u>**

      A stay of the civil action likewise serves the interest of judicial economy because it

eliminates the need for the Court to structure civil discovery to account for (or to resolve any

discovery disputes that may affect) the pending criminal case. *E.g., Quinn, 2010 WL 412901*, at

\*3 (staying the civil case in part because "[t]he Court simply cannot fathom how it could

construct a discovery plan that would balance the need to protect the interests and rights of all

parties in the criminal matter with the need to have productive and relevant discovery in the civil

matter"); *Shaw, 2007 WL 1465850, at \*2* (citation omitted) (observing, "[i]f this civil action is

stayed until the conclusion of the criminal proceedings, there is no need to make rulings regarding

potential discovery disputes involving issues that may affect the criminal case.").

      Finally, the United States has an interest in preserving the integrity of criminal

proceedings and investigation(s) and not jeopardizing an ongoing federal criminal investigation

with civil depositions and discovery and ensuring that criminal defendants do not circumvent the

more limited scope of the criminal discovery rules by obtaining discovery through a civil lawsuit,

especially wherein here now Plaintiff Chad M. Koehn has been SANCTIONED by a US Federal

Regulator and as the exhibits attached herewith indicate he or UCMK may be subject to other

investigations, especially given Koehn's ties to Anthem Holdings Company and HERC crypto

currency among others, wherein at least one directly connected person has plead guilty in the

Bitclub alleged Ponzi scheme and the US awaits extradition of Koehn associate Russ A. Medlin.

The party pursuing the civil matter need not intend to defeat the strictures of criminal discovery.

*Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).* Courts

nonetheless recognize the real risk that, when the issues in the civil and criminal proceedings

overlap.  In other words, regardless of a party's motives, there are inherent risks in allowing civil

discovery to proceed while a criminal case is pending.  *Id.; Javier H. v. Garcia-Botello, 218*

*F.R.D. 72, 75 (W.D.N.Y. 2003)* (observing that allowing civil discovery to proceed would afford

criminal defendants access to evidence not accessible under the criminal discovery rules "and,

thereby, prejudice the proceedings").

*Bristol v. Nassau County, No. 08-3480, 2010 WL 1660238, at \*1-2 (E.D.N.Y. Apr. 22,*

*2010); Combs v. Nelson, No. 09-329, 2009 WL 2044413, at \*2 n.3 (E.D. Ark. July 10, 2009)*

(observing that "[i]n some cases the government seeks postponement of the noncriminal

proceeding, to prevent the criminal defendant from broadening his rights of criminal discovery

against the government") cf., Shaw, 2007 WL 1465850, at \*2 (stating that **"the public's interest**

**in the integrity of the criminal case is entitled to precedence over the civil litigant"** (quoting

Javier H., 218 F.R.D. at 75)). Accordingly, it is in the interest of justice to stay the civil case until

the criminal case ends provides for Judicial Economy and prevents further manifest injustices.

IV. CONCLUSION For the reasons stated above, all of which establish good cause for

the relief sought, the defendant and counter-plaintiff appearing pro se, so requests that the 10th

Circuit Court of Appeals, overrule the District of Kansas, issuing a writ of prohibition to prevent

further erosion of constitutional rights and mandating a stay in the Civil proceedings pending the

resolution of the criminal case less than 30 days until trial. **Procedural Due Process Civil**

https://law.justia.com/constitution/us/amendment-14/05-procedural-due-process-civil.html

> "SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are
> citizens of the United States and the State wherein they reside. No State shall make or enforce any law
> which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive
> any person of life, liberty, or property, without due process of law; nor deny to any person within its
> jurisdiction the equal protection of the laws."

WHEREFORE Appeal, with briefs and oral arguments is requested to the 10th Circuit Court of

Appeals on grounds of violations to DUE PROCESS of Law, plain error, violations to the Federal

Rules of Civil Procedure, Local Rules and certainly Rules of Professional Conduct, by attorneys

for the plaintiffs who have continually abused process in this civil matter, continually making

filings to the Court and neither noticing nor providing copies of the filings they have made.   Civil

proceedings are used as a weapon in criminal proceedings and any attempt to have fairness under

due process of law in these civil proceedings are met with inordinate punitive punishments in the

criminal proceedings, demonstrating clearly why these civil proceedings must be stayed in light

of the criminal proceedings.  This is a SLAPP litigation:  **"Short of a gun to the head, a greater**

**threat to First Amendment expression can scarcely be imagined."** Judge J. Nicholas Colabella

wrote in  *Gordon v. Marrone (N.Y . 1992)*.

**<u>WHEREFORE PRAYER FOR RELIEF FROM THE US COURT OF APPEALS FOR</u>**

**<u>THE TENTH CIRCUIT;</u>**  Without a STAY of these civil proceedings my rights to defend are

prevented by orders in the parallel case, thus MANDATING additional and growing litigations,

once those proceedings conclude:

1. Filing of additional briefs as determined by the Court of Appeals

2. ISSUANCE of STAY of the Current pending matter in the US District of Kansas pending

   resolution of the parallel criminal proceedings in Oklahoma

3.   ISSUANCE of WRIT to PREVENT FURTHER MANIFEST INJUSTICE

4.   ORDER that I NOT be required to "Consent to electronic service of all documents"

     mandating I receive service via electronic delivery, as such service is unreliable.

5.   ORDER that My Constitutional Rights be restored; that the US District of Kansas Court

     be Prohibited via Writ of Prohibition from further erosion of my constitutional rights

     including the Constitutional Right to DEFEND, in light of the parallel proceedings.

6.   INVESTIGATION of MISCONDUCT and SANCTIONS for VIOLATIONS of RULES

     OF PROFESSIONAL CONDUCT by attorneys for the Plaintiffs (SEE TRANSCRIPT of

     hearing held 14 December 2022) Attached herewith, as Exhibit B as opposed to Exhibit F.

I further certify that this initial notice and brief complies with Federal Rules of Appellate

Procedure Rule 32(a)(7)(B), containing less than 11,500 words (excluding certificate of service).

Respectfully Submitted, this 13th day of December 2023.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

phone: 702.932.3434   chadkoehnlawsuit@nosoybean.com

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;  I also further certify that this Notice and initial brief is in compliance with Federal Rules of Appellate Procedure Rule 32(a)(7)(B)

## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD M. KOEHN** <br><br>              Plaintiffs, counter-defendants <br>    v. <br> Michael Nelson <br><br>              Defendant; counter-plaintiff <br> PRO-Se. | <mark>**DOCKET NO.:**    **5:22-CV-04008-JWB-TJJ**</mark> <br> <u>**CIVIL ACTION**</u> <br><br> <u>**INDEX OF EXHIBITS**</u> <br><br> **NOTICE of INTERLOCUTORY APPEAL REQUEST FOR STAY** <br> **Request of Writ of Mandamus and/or Prohibition in accordance with US Constitutional Rights** <br><br> **[Jury Trial Demanded]** |

## INDEX OF EXHIBITS NOTICE OF INTERLOCUTORY APPEAL

Exhibit "A" =  RESUME of SPENCER ANGELL

Exhibit "B" =  TRANSCRIPT of HEARING 14 December 2022 before Judge Broomes

Exhibit "C" =  TRANSCRIPT of Hearing 12 October 2022, Oklahoma Criminal Court

Exhibit "D" =  Oklahoma State Motion to Increase Bond

Exhibit "E" =  Defense Attorney Kevin Adams Motion against State Bond Increase

Exhibit "F" =  Initial Disclosures by Plaintiff's UCMK and Chad Koehn Rule 26(a)

Exhibit "G" = FINRA DISCIPLINARY REGARDING Plaintiff Chad Mitchell Koehn

Exhibit "H" = Carlson Law Group Seeking victims to Chad M. Koehn investigation

Exhibit "i"  = Stock Broker Check WARNING Regarding Chad M. Koehn

Exhibit "J" = Chad Koehn Suspended Unapproved Securities Transactions

Exhibit "K" = DOJ Press Release regarding Joby Weeks and Bitclub

Exhibit "L" = Email from **Andrea Schreyer;** Division Manager US District Kansas

Exhibit "M" = Reply Response to Order to Show Cause, doc 337

Exhibit "N" =  Press Release of the US DOJ regarding Joby Weeks and BitClub

A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally reviewed "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007)

Respectfully Submitted, this 10th day of December 2022.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com     702.932.3434

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

# EXHIBIT

# "A"

# To Follow . . .

## INTERLOCUTORY APPEAL

## RESUME of SPENCER ANGELL

https://www.linkedin.com/in/spencer-angell/overlay/1635503532682/single-media-viewer/?profileId=ACoAADhlGVYBQC3miGx2GoPq7OQmf1DSQJZdEY0



# Spencer James Angell

spencerangell02@gmail.com | (785) 577-5659 | linkedin.com/in/spencer-angell

## EDUCATION

**University of Arizona - Honors College & Eller College of Management**          **Tucson, Arizona**
*Bachelor of Science in Business Administration*                                                              May 2025
- **Major:** Finance
- **Minors:** French | Philosophy
- **Cumulative GPA:** 4.0
- **Honors:** National Merit Scholar | College Board Rural Scholar | Dean's List with Distinction | Dean's Exemplary Award | Highest Academic Distinction Honor | Salina Central Valedictorian

## PROFESSIONAL EXPERIENCE

**United Capital Management of Kansas**                                                            **Salina, Kansas**
*Summer Analyst*                                                                              *May 2022 – August 2022*
- Engaged in dozens of equity analyses for proprietary portfolios at RIA with AUM of over 300mm
- Learned from professionals about securities analysis, portfolio management, and client relations

**International Thespian Society**                                                                  **Cincinnati, Ohio**
*International Thespian Officer*                                                *September 2019 – September 2021*
- Twice elected to board of six to represent the International Thespian Society's 135,000 students
- Created Thespian Student Leadership Council with 30 represented states & 3 countries

**Kennedy Berkley, Attorneys at Law**                                                        **Salina, Kansas**
*Legal Runner*                                                                                  *May 2017 – March 2020*
- Gained exposure to banking at firm focused on banking transactions, totaling over $250mm yearly
- Attained the interpersonal skills necessary to excel with clients & colleagues in a professional setting

**Other Professional Activities:** C.A.T.S Academics Student Tutor | Concrete Laborer

## LEADERSHIP & PROFESSIONAL DEVELOPMENT

**Financial Modeling Club**                                                                        **Tucson, Arizona**
*Director of Membership*                                                                    *August 2022 – Present*
- Attend weekly workshops on excel skills, keyboard shortcuts, and financial modeling
- Network with professionals, gaining pragmatic modeling skill through collaborative workshops

**Investments Club**                                                                                **Tucson, Arizona**
*Active Member*                                                                              *August 2021 – Present*
- Discuss investment strategy, economic conditions, and stock & derivatives analysis with peers
- Keep up to date with weekly presentations on the latest market trends and M&A deal flow

**Other Leadership & Professional Development Activities:** E.L.I.T.E | City of Salina Youth Board

## SKILLS, ACTIVITIES & INTERESTS

**Skills:** Client Relations | Microsoft Excel | Project Planning | Public Speaking | Securities Analysis
**Certifications & Training**: Series 65 License | JP Morgan Sophomore Spotlight Participant | JP Morgan Investment Banking Virtual Experience (2022) | Envestnet Wealth Management Certificate
**Activities:** Phi Delta Theta Deputy Treasurer | Phi Delta Theta Philanthropy Committee
**Interests:** Absurdist Philosophy | Catholic Theology | Classic Country Music | Competitive Rocket League | Greco-Roman Literature | Intramural Tennis | Options Trading | Western Political History

# EXHIBIT

# "B"

# To Follow . . .

## INTERLOCUTORY APPEAL

### Transcript of 14 December 2022 hearing before the Honorable US Federal District Judge John W. Broomes

12/14/2022   UNITED CAPITAL v. NELSON   22-4008      1

1                    IN THE UNITED STATES DISTRICT COURT
                            DISTRICT OF KANSAS
2

3  UNITED CAPITAL MANAGEMENT OF
   KANSAS, INCOPORATED,
4  and CHAD KOEHN,

5             Plaintiffs,

6       vs.                          District Court
                                     Case Number
7  MICHAEL NELSON,                   22-4008

8             Defendant.

9

10                 TRANSCRIPT OF PROCEEDINGS

11

        On the 14th day of December, 2022 at 9:13 a.m.
12  came on to be heard in the MOTION HEARING in the
    above-entitled and numbered cause before the HONORABLE
13  JOHN W. BROOMES, Judge of the United States District
    Court for the District of Kansas, Sitting in Wichita.
14       Proceedings recorded by mechanical stenography.
         Transcript produced by computer.
15

16

   APPEARANCES
17

        The Plaintiff appeared in person and by and
18  through:
        Mr. Mr. Chris Kellogg
19      Mr. Larry Michel
        Kennedy, Berkley, Yarnevich & Williamson
20      119 West Iron Ave, 7th Floor
        PO Box 2567
21      Salina, Kansas 67402

22

23

24

25

12/14/2022   UNITED CAPITAL v. NELSON   22-4008   2

```
 1          (The following proceedings commenced at 9:15 a.m.
 2  and have been requested transcribed:)
 3          THE COURT:  This is Case Number 22-4008, United
 4  Capital Management, Incorporated -- United Capital
 5  Management of Kansas, Incorporated, versus Nelson.
 6          May I have appearances, please.
 7          MR. KELLOGG:  Your Honor, if it please the
 8  Court.  Chris Kellogg and Larry Michel of the law firm
 9  Kennedy Berkley.
10          And Chad Koehn, the plaintiff, appears as well.
11          THE COURT:  Thank you.
12          Let the record reflect that the defendant Michael
13  Nelson has failed to appear.
14          Mr. Nelson filed a motion to continue at 1:00 p.m.
15  yesterday afternoon.  The Court spent considerable time
16  yesterday afternoon addressing the allegations in that
17  motion and determined that Mr. Nelson had failed to meet
18  his burden to show that his reasoning provided in that
19  motion had a sound basis in law.
20          He claimed that he was prohibited from coming to
21  Kansas for this hearing because of restraints on his
22  travel in his Oklahoma criminal case.  He also asserted
23  that he had fears of catching COVID-19.  The Court
24  determined that Mr. Nelson provided no evidence of any
25  travel restrictions.  The Court reviewed the record, such
```

12/14/2022    UNITED CAPITAL v. NELSON    22-4008    3

1   as we have on the Oklahoma criminal case, found bond

2   conditions in the record that did not include travel

3   restrictions.  The Court further concluded that, in any

4   event, Mr. Nelson would have been aware of these the

5   moment this hearing was scheduled, and that it was

6   untimely to interpose his request for a continuance 20

7   hours before the hearing is set to begin.

8       So I denied the motion and directed him to inform

9   the Court by email to chambers' email by 6:00 p.m. local

10  time whether or not he intended to attend this hearing

11  today.  And I watched that email box diligently all

12  evening because my hopes were that even if he didn't meet

13  that deadline specifically, if I had sufficient warning I

14  would inform plaintiffs and plaintiffs' counsel that he

15  wasn't going to attend, and so there wasn't any need to

16  have this hearing today.

17      Nothing showed up, but I was informed on my way to

18  work this morning that, in fact, he emailed chambers at

19  5:59 p.m. last night and his email went to junk mail.

20      Now I get a lot of junk in that mailbox that

21  doesn't go to the junk mail folder.  I am going to get to

22  the bottom of why the one email that I was looking for

23  last night ends up in junk mail but I think the fact is

24  that at least with respect to the deadline I gave him, it

25  has every appearance that he complied with that and told

12/14/2022    UNITED CAPITAL v. NELSON    22-4008    4

```
 1  me he wasn't coming.  So, that's where we find ourselves
 2  today.
 3        Now I called this hearing because I had a prior
 4  order informing Mr. Nelson that if I got the impression
 5  that any of the motions that he filed were frivolous,
 6  vexatious, or been presented for an improper purpose,
 7  that I would require him to appear in person to present
 8  and argue those motions.  Thereafter he filed a number of
 9  motions, some of which I have taken under advisement, and
10  might have ruled on one or two by now, several are in the
11  works, so there are several of them that I did not find
12  met that requirement for having him come here personally,
13  but I identified a few that did give me the impression
14  that they were frivolous, vexatious, or filed for
15  improper purposes and I set those for hearing this
16  morning.
17        And those are his appeals of the Magistrate Judge
18  Birzer's orders filed at -- the appeal documents are
19  filed at Docket 254, 255, 266, 289, and 292, as near as I
20  can tell.  That's one of the reasons I had this hearing
21  is these are not a model of clarity.  They are rambling
22  diatribes which only appear to touch in the most
23  tangential ways the underlying orders.
24        But as near as I can tell, Docket 254 was an
25  appeal from Judge Birzer's appeal at Docket 23.
```

12/14/2022   UNITED CAPITAL v. NELSON   22-4008   5

1        Docket 295 appeals an order at Docket Entry 70.

2        Docket 266 appeals her order at Docket 238.

3        Docket 289 appeals a scheduling order that was

4  entered at Dockets 122 and 124.

5        And Docket 292 was an appeal of an order that was

6  entered at Docket 268, and then amended at Docket 274.

7        I've reviewed those orders.  I can't find anything

8  wrong with them.

9        This was the defendant's opportunity to come

10  explain to me what he thinks is wrong with them.  He's

11  forcing me to proceed without his assistance in this

12  matter and, therefore, I will act accordingly.  That

13  takes care of that.

14        One of the things I want to know from plaintiff,

15  who is Spencer Angell, and what does he know about this

16  case?

17        MR. KELLOGG:  I'm sorry, Your Honor, who is

18  that?

19        THE COURT:  Spencer -- is it Angel, Angell?

20  (Pronouncing.)

21        MR. KELLOGG:  Spencer Angell?

22        THE COURT:  A-n-g-e-l-l.

23        Who is he and what does he know about this case.

24        MR. KELLOGG:  Spencer Angell is the son of one

25  of our law firm partners, Jim Angell.  My guess is he

12/14/2022   UNITED CAPITAL v. NELSON   22-4008   6

1  knows nothing about this case.  He hasn't been involved

2  in it.

3        THE COURT:  He better know a lot.

4        MR. KELLOGG:  I'm sorry, Judge?

5        THE COURT:  He better know a lot because he's

6  been disclosed in this case as someone with knowledge.

7        MR. KELLOGG:  Are you talking about --

8        THE COURT:  It is my understanding he is the son

9  of Magistrate Judge's -- Judge Birzer's law clerk.

10       Now if I get the chance, the impression that

11  someone is trying to kneecap my magistrate judge with a

12  contrite conflict of interest, there is going to be

13  trouble.

14       And if you're telling me he doesn't know anything,

15  there's going to be trouble.

16        MR. KELLOGG:  I can --

17        THE COURT:  So you want to talk to your client

18  there?

19       Do you want to talk to your client?  He seems to

20  want to talk to you.

21        MR. KELLOGG:  Yes, sir, are you talking about

22  James Angell, or Spencer Angell?

23        THE COURT:  Spencer.  He is listed in a

24  disclosure that was filed in this case, Plaintiffs'

25  Answers to Defendant's Interrogatories, I don't know what

1  the Docket Entry number is, but on the third page he's

2  identified as person number 21 with knowledge about this

3  case.

4        And this document is signed by Chad Koehn.  The

5  certificate is signed out by Larry Michel.  It's dated

6  November 10th, 2022.

7           MR. KOEHN:  Your Honor, all I want to add --

8           THE COURT:  I don't want to hear from you, I

9  want to hear from your lawyer.

10        (Sotto voce discussion had.)

11           MR. KELLOGG:  Your Honor, so my client informs

12 me that Spencer Angell was a summer intern at his

13 investment firm and was listed as a witness as possibly

14 having information about the harassment Mr. Nelson has

15 committed against Mr. Koehn and his company.

16           THE COURT:  So you think that is something that

17 is material to this case?

18           MR. KELLOGG:  The harassment, sir, or

19 Mr. Angell?

20           THE COURT:  Mr. Angell's knowledge.

21           MR. KELLOGG:  Mr. Angell's knowledge?

22           THE COURT:  Mr. Angell's knowledge about it.

23        I am worried, I know you all have tried to get

24 Judge Birzer to recuse from this case, and what I am

25 telling you is if I think that this is some effort to

12/14/2022    UNITED CAPITAL v. NELSON    22-4008    8

1  backdoor that recusal, that's not going to go well.

2          MR. KELLOGG: No, absolutely not, Your Honor,

3  we're not intending to play games with the court in any

4  way.

5          We accepted Judge Birzer's order that she wasn't

6  recusing and we have moved on from that.

7          THE COURT: So do you think Mr. Angell has

8  material knowledge that's going to be important to this

9  case that he's going to be a likely witness or have

10 something substantial to contribute in the litigation of

11 this matter?

12         MR. KELLOGG: I don't believe so, Your Honor.

13 My client tells me no.

14         THE COURT: All right. Very well. I have the

15 things in front of me that I need to deal with, which are

16 these five motions I set for hearing.

17         Is there something you want to talk about since

18 we're here today?

19         MR. KELLOGG: Your Honor, the only item I would

20 like to bring up, outside of dealing with our potential

21 fees and these motions themselves, you recently ruled on

22 our motion to amend the -- amend our complaint and we

23 were wondering if you would consider giving us 14 days to

24 cure any defects in that potential amendment?

25         THE COURT: Nope.

 1          MR. KELLOGG:  Okay.

 2      Thank you, Judge.

 3          THE COURT:  You had your chance.

 4      Look, this case is a train wreck.  All right?

 5  This darn thing has been on file, what?  Less than a

 6  year?

 7      It's got more docket entries than cases that have

 8  been on file for years.  I know this has been a difficult

 9  problem for Judge Birzer to manage because this is -- the

10  beginning phases of this case are so much more burdensome

11  on the magistrate judge.

12      And, you know, she's a thoughtful, kind person.

13  I'm not necessarily that way and I'm not going to waste

14  time on this case.  We are going to get this done, and if

15  I have to haul people in here to work through this stuff

16  like I did today, then that's what I am going to do.

17      But we're going to litigate this in an orderly and

18  civilized manner, and lets restore some dadgum regular

19  order to this case.  It's in shambles.  You don't know --

20  or maybe you do know, 90 percent of our time gets wasted

21  on crazy people and crazy cases.  The good stuff really

22  flows through here rather smoothly.

23      So this thing has a lot of moving parts.  It's one

24  of the reasons I wanted to get Mr. Nelson here today, but

25  he didn't show up, so I'm going to deal with that.  But

12/14/2022    UNITED CAPITAL v. NELSON      22-4008      10

1   as for your part in it, I expect everyone to conduct

2   themselves professionally and try to get this thing

3   resolved as promptly as possible.

4          Ultimately, what is your goal here?

5          What relief are you requesting?

6          Are you trying to get money out of this man?

7          Does he have any money, or are you just after

8   injunctive relief?

9          I haven't pulled up your line pleading.

10         MR. KELLOGG:  Yes, sir -- I'm sorry, Your Honor.

11         We are requesting monetary relief against

12  Mr. Nelson.

13         THE COURT:  Does he have any money?

14         MR. KELLOGG:  That remains to be seen, Judge.

15  In one breath he claims he doesn't have any money, and

16  then in another breath claims to have access to a great

17  deal of funds.

18         THE COURT:  All right.  Is that the only thing

19  you're asking for, or are you asking for injunctive

20  relief?

21         MR. KELLOGG:  We're also requesting, Your Honor,

22  that he be ordered to cease and desist his activities

23  against Mr. Koehn and United Capital Management of

24  Kansas.

25         THE COURT:  Okay.  I mean, let's get to the

12/14/2022   UNITED CAPITAL v. NELSON   22-4008   11

1 practical order of this.  Now I'm not going to impose

2 myself in settlement negotiations but I really think as

3 unwieldy as this is you all are going to have to be

4 intelligent about how you approach this.

5       What can you really get out of it?  And is there a

6 way to get there in a -- in an efficient manner?  Because

7 what we have here, this scorched earth litigation stuff,

8 if he doesn't have any money, you guys are wasting a ton

9 of money dealing with it and whatever you actually

10 practically hope to get out of it, if you can wrap your

11 minds around how to get there without continuing this

12 unbelievable litigious process in this case, I think

13 everyone would be better off.

14       That's up to you.  But just sitting here 50,000

15 feet looking at this thing it looks like a mess.  It

16 looks like a money pit.  And on the plaintiffs' side of

17 this case there's -- I have to wonder is there really any

18 real judgment to be had at the end for damages, so if

19 there is something else we want that might be achievable,

20 certainly would be doing your client a service thinking

21 creatively how to get there.

22       But that's your business, it's not my role in the

23 case.  But I just offer that as fair commentary.

24       Now anything else?

25       MR. KELLOGG:  No, Your Honor.

```
 1        As I said, we are simply awaiting your rulings on
 2  the motions, as well as we would like to make a request
 3  for our fees for today.
 4        THE COURT:  Well, if he had not responded last
 5  night like I told him to, I would be more inclined to do
 6  that but you know the best laid plans of mice and men,
 7  somehow this ends up in junk email.
 8        I basically told him if -- you need to let me know
 9  by the end of the day yesterday, and as far as I can
10  tell, he did that.  So I think I have set it up so that
11  if he timely responded, he wasn't going to be looking at
12  your fees to come down here because I was going to call
13  this off and save all that.
14        I am going to deal with his motions.  I'm also
15  tired of seeing these games -- what I perceive as games
16  played with service, so I'm ordering him onto ECF in this
17  order, and you will be authorized to serve him by ECF
18  going forward so that I'm not left with situations like
19  yesterday where I am e-mailing orders out hoping that he
20  gets them because he's on some sort of paper service
21  regime where he has the potential to hide behind the idea
22  that he never got it in the mail until the end of the
23  week.  I have seen enough of that.  I'm putting a stop to
24  it.
25        So that will be in an order that is forthcoming.
```

12/14/2022   UNITED CAPITAL v. NELSON   22-4008   13

1          I think that's all I have today.

2          If you have nothing else, sorry you had to make

3   this trip, but hopefully we can move this along from

4   here.

5          MR. KELLOGG:  Thank you, Judge.

6          MR. MICHEL:  Thank you, Your Honor.

7          (Proceedings conclude at 9:30 a.m.)

8          ***********************************************

9                    C E R T I F I C A T E

10         I, Jana L. McKinney, United States Court

11   Reporter in and for the District of Kansas, do hereby

12   certify:

13         That the above and foregoing proceedings were

14   taken by me at said time and place in stenotype;

15         That thereafter said proceedings were

16   transcribed under my discretion and supervision by means

17   of transcription, and that the above and foregoing

18   constitutes a full, true and correct transcript of

19   requested proceedings;

20         That I am a disinterested person to the said

21   action.

22         IN WITNESS WHEREOF, I hereto set my hand on

23   this, the 16th day of December, 2022.

24              s/ Jana L. McKinney
                Jana L. McKinney, RPR, CRR, CRC, RMR
25              United States Court Reporter

```
 1                            I N D E X

                                                  PAGE
 2

 3
       REPORTER'S CERTIFICATE                       13
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

REPORTER'S CERTIFICATE     13

# EXHIBIT

# "C"

# To Follow . . .

## INTERLOCUTORY APPEAL

<u>**Transcript of**</u> TRANSCRIPT of Hearing 12 October 2022, Oklahoma Criminal Court

```
 1        IN THE DISTRICT COURT IN AND FOR WASHINGTON COUNTY
                         STATE OF OKLAHOMA
 2

 3   STATE OF OKLAHOMA              )
                                    )
 4   v.                            )     Case No. CF-2021-304
                                    )
 5   MICHAEL ERIC NELSON            )

 6

 7

 8

 9   --------------------------------------------------------

10                MOTION TO INCREASE BOND HEARING

11   --------------------------------------------------------

12

13

14

15

16

17

18

19

20        On the 12th day of October, 2022, the following

21   proceedings came on to be heard in the above-entitled

22   cause before the Honorable Linda S. Thomas, District

23   Judge presiding, in the City of Bartlesville, County of

24   Washington, State of Oklahoma:

25           Proceedings reported by machine shorthand.
```

1                    A P P E A R A N C E S:

2    FOR THE STATE OF OKLAHOMA:

3         MS. ZOE GULLETT
          OFFICE OF THE DISTRICT ATTORNEY
4         420 South Johnstone, Room 222
          Bartlesville, Oklahoma 74003
5

6    FOR THE DEFENDANT:

7         MR. KEVIN D. ADAMS
          ATTORNEY AT LAW
8         36 E Cameron Street, Suite 16
          Tulsa, Oklahoma 74103
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    I N D E X

 2   MOTION TO INCREASE BOND HEARING

 3   October 12, 2022                        Page

 4   Proceedings.................................    5

 5   Reporter's Certificate.....................   38

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        EXHIBIT INDEX
 2   State's Exhibits                    Offered   Admitted
 3       1      Affidavit of Craig Piercy    16      16
 4       2      Affidavit of Howard Gilliam  16      16
 5       3      Audio CD audio               16      16
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

P R O C E E D I N G S

1    THE COURT:  We are now on the record in

2    Washington County District Court, Case Number

3    CF-2021-304.  State of Oklahoma versus Michael Eric

4    Nelson.  Present with Mr. Nelson is Mr. Kevin Adams, and

5    present for the State of Oklahoma is Zoe Gullett.  This

6    matter comes on for hearing today on the State's motion

7    to increase the bond and set a hearing.  And then I have

8    also received the Defense objection to the State's

9    motion to increase the bond.

10    Mr. Adams, I noticed it was filed yesterday.  I

11    will tell you that I had an opportunity to read the

12    objection itself, but the number of attachments that you

13    had to it, I did not have time to read those.  They are

14    quite voluminous and would have taken me a lot longer

15    from when I got it this morning to today, to right now.

16    So, Ms. Gullett, it's your motion.  You may

17    proceed.

18    MS. GULLETT:  Thank you, Judge.  So, Your

19    Honor, we somewhat had a slight impromptu hearing on

20    this motion a bit on 9-23 whenever we -- when I first

21    filed this motion and asked for this hearing to be set.

22    So the Court has heard a bit about what the State's

23    motion was about, but I will reiterate some the reasons

24    -- or the reasons why the State filed this motion.

1    As the State's motion indicates, this has to do

2 with about three different contacts that Mr. Nelson has

3 had.  One is with a Mr. Ritter, one is with a Craig

4 Piercy, and one is with a -- kind of a secondhand

5 contact with a Mr. Gil Gilliam.  So at this time the

6 State would direct the Court's attention, first of all,

7 to the docket sheet in this case, to specifically

8 January 11th of '22, where myself, Judge Sigler, and

9 Mark Kane, who at the time was representing the

10 Defendant, as well as the Defendant, who was in custody

11 at the time, where this motion -- or this matter came on

12 for a bond reduction hearing where the State of Oklahoma

13 had filed a motion to increase the Defendant's bond to

14 -- it was actually his bond had been increased to a

15 hundred thousand and the Defendant had asked for a bond

16 reduction.  Mr. Kane and myself, as well as the

17 Defendant, had come to an agreement that the bond would

18 be amended to $50,000, which was my understanding at the

19 time that that was how much the Defendant's family could

20 make, allowing the Defendant to bond out, not remain in

21 jail, with the conditions specifically listed in the

22 court minute of no contact with the alleged victims or

23 businesses.  The Defendant is to surrender his passport.

24 Defendant must have an ankle monitor.  Defendant is not

25 to reside in Washington County.  Defendant must also

1    serve -- was also served with a PO, and he was order

2    back in front of Your Honor later on in January for a

3    status docket.

4            I understand that the defense counsel has, in

5    his motion, put a copy of the agreed to order that was

6    later filed on March 7th of '22, or court minute, the

7    agreed to court minute where Mr. Newman and myself

8    agreed, because I believe -- so Mr. Newman approached me

9    because Mr. Nelson was living in the Tulsa area and

10   having a very financially difficult time living in

11   another state away from his family in a state where he

12   did not have a job and had no connections, asking --

13   Mr. Newman asked me if I would have an objection to

14   Mr. Nelson returning to Rhode Island to reside.  And

15   after a bit of back and forth between myself and

16   Mr. Newman, we agreed that he could return to reside in

17   Rhode Island, that the ankle monitor could be removed by

18   agreement.  And, again, this is a handwritten court

19   minute so not everything we talked about is necessarily

20   dictated in this court minute.  That there was

21   conversations about him and his bonds person having an

22   app to -- her be able to check in on him every day --

23   it's a GPS app -- so that she would actually know where

24   he was.  It actually works better than an ankle monitor

25   because those don't -- you don't have a constant ID of

1   where he's at.  The Defendant can return to Oklahoma to

2   consult with his attorney and for court appearances.

3   And then there is a very important word here where it

4   says "continued" no contact with the victims.  Defendant

5   to return for preliminary hearing March 29th at 9:00

6   a.m.  Defendant to check in daily with bonds person.

7          So this court minute does not supersede the

8   bond conditions that were put into place in January of

9   2022.  It just say continue no contact with the victims.

10  So we didn't spell out continue no contact with the

11  victims and the victims' businesses, and we didn't say

12  that the condition of no contact with the victims'

13  businesses was lifted.  We just say continue no contact

14  with the victims.  We didn't change any of Judge

15  Sigler's orders.  And Judge Sigler signed that as well.

16  So if he had wanted to change it to say he could have

17  contact with the businesses, then he could have done so.

18  But he did not.  His orders remain the same up until

19  today.

20          So that brings us to what occurred in September

21  of this year.  So on or about September 6th, the

22  Defendant began contacting various people associated

23  with the victims in this case, Anthem and Cynthia

24  Blanchard, and their businesses.  Specifically a

25  business here Bartlesville that is physically located

1  here in Washington County, which is called HeraSoft.

2  And he -- and as the State will show he contacted

3  Mr. Ritter with -- through a voice mail, which I'm going

4  to ask to play for the Court here in a minute, where he

5  talks about he is going to subpoena Mr. Ritter and he

6  talks about him being a shareholder in both Anthem

7  Holdings as well as HeraSoft, again a company that's

8  physically here.  And talks about having filed 16

9  subpoenas in other courts up and down the eastern

10  seaboard.  And then he insinuates that Mr. Ritter's name

11  continues popping up in all sorts of documents and all

12  sorts of claims of young women; and then he says

13  something like he wants to have a conversation man to

14  man with Mr. Ritter, which sounds intimidating.  Then he

15  contacts a Mr. Craig Piercy, who has written out an

16  affidavit.

17          And would Your Honor like for me to put State's

18  exhibit stickers on these?

19              THE COURT:  I think so.  That would

20  probably keep the record clear.

21              MS. GULLETT:  So I reached out to

22  Mr. Craig Piercy and asked him to write out an affidavit

23  because none of these individuals live in Oklahoma.  So

24  I requested that Mr. Piercy write out an affidavit of

25  his interaction with Mr. Nelson.  So this would be

1  State's Exhibit 1, and this is Mr. Piercy's affidavit of

2  his interaction with Mr. Nelson.

3              THE COURT:  Okay.

4              MS. GULLETT:  So, Your Honor, as you can

5  see in this affidavit, Mr. Nelson reached out to a

6  shareholder of the Blanchards' company and stated things

7  like that the Blanchards are con artists who operate

8  Ponzi schemes, that he specifically stated that Anthem

9  Blanchard is broke, that he's burned through his

10  inheritance, that he's scheming investors out of money,

11  specifically referenced their home in Bartlesville,

12  apparently.  Goes on to disparage the victims to a

13  shareholder of their company and a shareholder

14  specifically of the company, again, here in

15  Bartlesville, Oklahoma.

16              So the issue that we have here, and as you'll

17  hear in the voice mail, is that this case started

18  because Mr. Nelson contacted the City Manager of

19  Bartlesville, Oklahoma, as soon as he found out that the

20  Blanchards were here starting a business and said do you

21  have any idea of who started a business here in

22  Bartlesville, these are horrible, terrible people, the

23  Blanchards, they're Ponzi scheme scam artists, they're

24  terrible people, this is who they are.

25              So that's what this case is about, is him

1  following these people around sending messages to

2  people, such as the manager -- or the City Manager of

3  Bartlesville, and attempting to disparage the Blanchards

4  to other people.  And he's doing the exact same thing,

5  once again, but he is doing it now through a

6  shareholder, when he has been instructed by the Court to

7  have no contact with the businesses that have to do with

8  the Blanchards.  To contact a shareholder of that

9  business is to have contact with that business.

10       Then there is Mr. Gil Gilliam, and he also did

11  an affidavit.  And I apologize.  He -- I'll mark this as

12  State's Exhibit 1.

13       When I spoke to Mr. Gilliam, he informed me

14  that he would be doing this affidavit and putting the

15  original in the mail.  And at this present time, I do

16  not have the original, but he emailed me a copy of the

17  original that he is supposed to have put in the mail.

18  So I do have this copy, and once I get the original, I

19  can substitute it.

20            THE COURT:  Okay.

21            MS. GULLETT:  So Mr. Gilliam and I spoke

22  over the phone; and the important parts of this

23  affidavit is that, first of all, Mr. Gilliam is employed

24  with HeraSoft, which is located, again, here in

25  Bartlesville, Oklahoma.  And he has been an employee

1  with HeraSoft since March 1st of 2021.  He has worked

2  for HeraSoft during -- at no time during the same time

3  as Mr. Nelson.

4          So my understanding, from reading the

5  Defendant's motion, is that the argument that is going

6  to be made is that the Defendant is currently wrapped up

7  defending himself pro se in a civil lawsuit in a Federal

8  case in Kansas with an individual named Chad Koehn.  And

9  it seems like the theme in the motion is that because

10  the Defendant has a Federal case pending and he's

11  representing himself pro se, that he should be able to

12  contact individuals associated with the HeraSoft

13  company, maybe the HeraSoft company itself, and it

14  appears almost as if he thinks he should be able to

15  contact the victims because they have been listed as

16  possible witnesses in that civil lawsuit.  The State's

17  argument is that even though they're listed as possible

18  witnesses in a civil lawsuit in Kansas, does not trump

19  the orders of a District Judge in Oklahoma.  You cannot

20  violate the bond conditions in Oklahoma just because you

21  have a civil lawsuit pending in Kansas.  That is a legal

22  rodeo you have to figure out on your own if you're going

23  to represent yourself pro se in Kansas.

24          So while there might be witnesses listed, you

25  still can't violate your bond condition to contact them.

1    And, at this time, to threaten to contact Gil Gilliam,

2    and as I wrote in my motion, take a -- will have special

3    counsel take the deposition of him in Bartlesville,

4    where Mr. Nelson is not supposed to be except for court

5    appearances or to have met with his original attorney,

6    who was Mark Kane, now none of his most recent attorneys

7    reside in Bartlesville or have offices in Bartlesville,

8    and has -- and at the local courthouse for a six to

9    seven hour deposition, was the indication in that email.

10           So none of that would be appropriate.  He's not

11   supposed to be in Bartlesville, and having contact with

12   Mr. Gilliam is an extension of having contact with the

13   business because he is employed solely by HeraSoft.  So

14   that is a concern for the State.

15           So what this appears to be is reaching out to

16   the shareholders, reaching out and saying these

17   disparaging things, reaching out to an attorney

18   representing someone in this civil case and threatening

19   to depose for six or seven hours an employee of the

20   business here in Bartlesville, and by extension,

21   expecting to be able to depose the victims in this case.

22   Sounds like threatening the victims in the State of

23   Oklahoma's case.  It sounds like it's an intimidation

24   tactic.

25           And so at this time, the State would ask to

1  play the voice mail that the Defendant left for

2  Mr. Ritter so that you can hear some of the language

3  Mr. Nelson used when talking to Mr. Ritter about the

4  victims in this case so you can understand some of the

5  things he is saying, as well, about the victims.

6             THE COURT:  Mr. Adams.

7             MR. ADAMS:  Judge, I don't have an

8  objection to that.  I don't have an objection.  I think

9  it's admissible under Title 12-2103B2, because of the

10 bail hearing.  I just would ask that all of these --

11 these affidavits and the voice mail be introduced into

12 the record and made exhibits.

13            THE COURT:  Yes, Ms. Gullett, you may.

14            (Exhibit Number 1 audio CD published in

15            open court)

16            MS. GULLETT:  So, Your Honor, as you can

17 hear in that voice mail, he references Anthem Holdings

18 and HeraSoft a couple of times.  He is talking to

19 Mr. Ritter, who is, again, a shareholder in the HeraSoft

20 and Anthem Holdings company.  And he says a lot of stuff

21 in there, like I have filed subpoenas in 16 other

22 courts, I'm going to subpoena you one way or another, a

23 lot of things are going to come out.  Specifically talks

24 about names keep coming up, coming out having to do with

25 young women.  All of that is very threatening.  So that

1   has to do -- he's using all these threatening terms

2   while also referencing my victim's company and the name

3   Anthem, which is one of my victim's names.  It's Anthem

4   Blanchard.  And Anthem Holdings is one of his companies.

5   It appears like the Defendant is once again attempting

6   to call, harass, and use this information that he thinks

7   he has in an attempt to intimidate people around the

8   victims, associated with their business, or having

9   something to do with the victims, just like he did with

10  the City of Bartlesville, just like what we're here on.

11  As soon as the victims got here, as soon as they opened

12  HeraSoft, he called the City of Bartlesville -- or

13  emailed the City of Bartlesville and started his, you

14  know, beginnings of a tirade with the City of

15  Bartlesville sending them emails and telling them what

16  terrible, awful people the Blanchards were.

17          So at this time the State of Oklahoma would

18  request that you increase his bond since he can't follow

19  through with his bond conditions.  We ask that you

20  increase his bond to $150,000.  The State had requested

21  a hundred thousand.  We came to an agreement with

22  Mr. Kane for $50,000 because of the situation that

23  Mr. Kane told us that he was in.  We attempted to be

24  very amenable to allow him to go back to Rhode Island,

25  to not have an ankle monitor, and this is the behavior

1    that is in response.

2         And I don't -- I do not believe that this is

3    the only stuff that has occurred.  There are emails out

4    there that are from various pseudonyms and things like

5    that.  If I could prove that those were from Mr. Nelson,

6    I would happily have attached those as well.  I am not

7    able to exactly pinpoint that those are exactly from

8    him, but we're pretty darn sure they are.  So at this

9    time it appears that Mr. Nelson has gone right back to

10   the behavior that he did whenever this case was filed.

11        Thank you, Judge.

12             THE COURT:  Mr. Adams.  And before you

13   begin, Mr. Adams, I don't know that I addressed your

14   request that the State's Exhibit 1, 2 -- and then we'll

15   count the audio recording as 3 -- be admitted into the

16   record, but I'm assuming the State has no objection to

17   that.

18             MS. GULLETT:  I would move to admit those,

19   Judge.  I apologize.

20             THE COURT:  So as a matter of

21   housekeeping, we will admit those three exhibits.

22             MR. ADAMS:  Specifically, Judge, and

23   neither one of us addressed this in our motions, but I

24   just want to cite for the record what the statute is

25   that controls the request to increase certain

1   (inaudible).

2            THE COURT:  You're going to have to speak

3   up.  When you look down, it's very difficult for her to

4   hear you.

5            MR. ADAMS:  It's Title 22, Section 1109,

6   is the statute from the Oklahoma statutes that require

7   that the State is requesting better security, and that

8   specifically references the petition of Humphrey, which

9   is 601 P.2d 103, just so I'm making a reference in the

10  record.

11           A witness -- a lawyer has an opportunity to

12  interview the witnesses, to talk to the witnesses.

13  That's in our OUJI's.  I'm sure the Court instructs that

14  regularly during jury trials, that, hey, a lawyer has an

15  opportunity to interview the witnesses.  And just so

16  that it's clear, and I put it in the motion, I just want

17  to be clear, Chad Koehn, who is a member of the board of

18  directors of Anthem Holding, okay, which is actually a

19  Texas corporation, but they have HeraSoft here, which is

20  a company that Mr. Nelson has interest in -- and I

21  attached the stock certificate -- sued Mr. Nelson in

22  Kansas.  Mr. Nelson removed it to Federal court because

23  he is a resident of Rhode Island.  The Judge in that

24  case directed -- and the case is -- I mean, it's like

25  270 filings in there.  I mean, they're just pounding him

1   with motions.  There is a time where the Court said stop

2   filing motions until he's had an opportunity to answer,

3   you know.  So he's trying to do what he can to defend

4   himself in the case, which he doesn't have the money to

5   hire it otherwise, so that's what he's doing.  But this

6   is a board of directors of the company that the

7   Blanchards are in control of.  They listed the

8   Blanchards as witnesses.  And, now, he's never contacted

9   them, never said that he could, and the subpoenas --

10  that we actually had the subpoenas issued, but I

11  attached a notice of subpoenas filed in court because it

12  had the file stamp across the top of it that didn't come

13  through very good, because that's the file stamp that

14  you get in Federal court.

15          Through the Court's process, he issued these

16  notices of subpoena and made arrangements to have a

17  lawyer take the depositions in Kansas.  And I listed in

18  F -- or, no, I'm sorry -- G, their initial disclosures,

19  they list Mr. Gilliam, that she was talking about, as a

20  witness as somebody having knowledge and information

21  about the case.  In Federal court when you file a civil

22  case, by rule you've got to give notice to the other

23  side of everybody that you know that would have

24  information and notice of the documents because it

25  speeds up the discovery that way.  And I believe

1    Mr. Gilliam is Number 9, but he listed him as a witness.

2    This is a guy that has witnesses.  So he emailed per

3    direction of the judge -- or magistrate, which is found

4    in Exhibit Number F, okay?  Using that email address

5    Oklahoma remote, he emailed C. Kellogg, who is one of

6    the lawyers representing the board member of Anthem

7    Holding, and said I plan on taking the deposition of

8    this person.  He's completely following the Court's

9    orders.  That's what he's doing.  Same issue with Ritter

10   and Piercy, is he actually -- and I attached those

11   notices, D and E there, that he issued the notice to

12   issue the subpoena which is what you do in Federal

13   court.  You file the notice that you intend to issue the

14   subpoena.  They have so long to object.  If they don't

15   object, then the clerk's office issues the actual

16   subpoenas, which we've got them here.  This is all

17   within the point of the lawsuit, a board of director of

18   that company sued him, okay?

19            They control the company, okay?  You know, the

20   other thing is there seems to be somewhat of a

21   coordination here between what's going on with the

22   lawsuit and what's going on with the District Attorney's

23   office.  And I say that because of this.  They filed a

24   request to be able to amend and be allowed to sue

25   Mr. Nelson's father, who is here in the courtroom,

1  because he's providing a roof over Mr. Nelson's head.

2            THE COURT:  I'm sorry.  When you said

3  "they," who were you referring to?

4            MR. ADAMS:  Okay.  The Plaintiffs in

5  Kansas filed a motion to ask the Court to be allowed to

6  amend to sue Mr. Nelson's father.  And their theory for

7  saying that he should be a co-defendant of Mr. Nelson is

8  because he's basically providing food and shelter and

9  clothing for his son.  That's what they want to be --

10  that's what they want to be able to add for it.  And

11  it's like they're trying to remove any support that

12  Mr. Nelson has.

13            THE COURT:  How is that relevant to --

14            MR. ADAMS:  Well, because now the State's

15  doing the same thing.  They're asking to put an ankle

16  monitor on him which would remove any support that he

17  has.  And so I'm saying it happens here and then it

18  happens over here.  And I can't tell you that it's

19  coordinated, but it seems like it's a coincidence.  Now

20  the State's saying, hey, let's put an ankle monitor on

21  the guy.  You know, like they say they want him -- first

22  the conditions was, oh, well, he can't leave the State

23  of Oklahoma because he's got the ankle monitor, but he

24  can't reside in Bartlesville.  You can't have

25  restrictions -- geographic restrictions like that, like

1  an entire county, you know.  He doesn't drive.  So

2  anywhere -- you know, to live outside of Bartlesville

3  and have to get to court and everything, is difficult.

4  I don't think they even have Ubers that can take you

5  around, but maybe they do.  I don't know.

6          THE COURT:  Well, I'm struggling with how

7  that has anything to do with the motion to increase his

8  bond.

9          MR. ADAMS:  Because it seems like they're

10  doing the bidding of the Plaintiffs in the Federal case

11  in Kansas, and this is a coordinated effort between the

12  Anthems and Mr. Koehn, who is one of their board of

13  directors of their company, to cause him as much grief

14  as possible.  And he has a right -- he's not doing

15  anything with their businesses.  He is defending the

16  lawsuit that was filed against him, and he's following

17  the directions of the Federal Magistrate in how he's

18  going about doing it.  I mean, it would certainly be

19  preferable if he had a lawyer, but he is a lot less

20  likely to be able to come up with money to have a lawyer

21  if he has to post another $10,000 in bond.  And if he

22  has to provide his own place to live because he's no

23  longer allowed to live with his parents and it just

24  exasperates the whole problem.

25          And so we don't believe that he has violated

1    the terms of his probation.  He's not doing anything

2    specifically with the business.  He's trying to defend

3    his lawsuit, maybe inartfully so.  And we don't think he

4    violated the conditions of the bond to begin with.  We

5    don't think they've met the requirements of Title 22,

6    Section 11 or of Humphreys.

7            And if I could have just one minute, let me

8    inquire.

9            Judge, the only other point is that there has

10   -- the lawyer -- one of the lawyers representing them

11   has -- I'm told by Mr. Nelson has actually tried to get

12   him to contact the Blanchards, which he has refused to

13   do so --

14            THE COURT:  I'm sorry.  You said one of

15   the lawyers representing --

16            MR. ADAMS:  One of the lawyers

17   representing the Plaintiffs in Kansas actually suggested

18   that contact the Blanchards, and he has declined to do

19   so.  He has stayed completely away from them.  And the

20   reason he is supposed to contact the witnesses before

21   issuing the subpoenas is because they're telling him

22   that he's got to do background to show the relevance of

23   why he's trying to subpoena a particular person in the

24   Federal case.

25            So we would ask the Court to deny the State's

1  request.

2              THE COURT:  Ms. Gullett, your response.

3              MS. GULLETT:  Thank you, Judge.  I'd like

4  to respond to some of that, seeing as how I have now

5  been apparently accused of collusion.  I think the word

6  would be "prosecutorial misconduct."  And I would like

7  to set the record straight.  I have never had any --

8  well, I take that back.  Mr. Koehn did call me back in

9  December of '21, when we were attempting to figure out

10 where Mr. Nelson was when there was a warrant active for

11 him.  And then we found out he was being held on a

12 warrant on our bond in New Jersey, and he was picked up

13 attempting to get on an airplane for Spain.  However,

14 after that, I have not spoken to Mr. Koehn at all.  In

15 fact, I find him kind of a jerk, so I don't particularly

16 like Mr. Koehn.  So I'm taking a bit of offense to the

17 fact that it is the belief the State of Oklahoma is

18 being used to put Mr. Nelson back in jail for some silly

19 civil lawsuit that is happening in a Federal court in

20 Kansas.

21          My issue is with Mr. Nelson and his behavior

22 towards the shareholders of the HeraSoft Company,

23 specifically Mr. Ritter and Mr. Piercy.  And as far as

24 his contact of them, they are not listed on this witness

25 list that was given to Mr. Nelson as possible witnesses,

1   my understanding, in the Federal lawsuit.

2          Also, as far as the filings go in the Federal

3   lawsuit, from my victims, Cynthia and Anthem Blanchard,

4   my understanding is that out of those 270 filings,

5   because they're aware of those filings because they keep

6   referencing Cynthia and Anthem Blanchard, that there

7   have been over 180, I believe, filed by the Defendant on

8   his own pro se motions; and that there's something like

9   2,000 pages filed by him.  So I don't believe that he's

10  having any difficulty in responding or filing on his

11  own.  He writes a pretty significant amount of things on

12  his own, albeit, they don't make a whole lot of sense,

13  but they are definitely written by him.

14          So, Your Honor, we're getting in the weeds, I

15  believe, on the Federal lawsuit in Kansas.  This all

16  goes back to I'm sorry if you have spent a lot of your

17  money paying for three attorneys in the State of

18  Oklahoma bonding out in the State of Oklahoma, and you

19  can't -- or no one will take your case in Kansas --

20  because that's the other rumor I've heard.  But just

21  because you don't have anyone to represent you in

22  Kansas, doesn't mean you get to violate a Judge's order

23  in the State of Oklahoma and contact people associated

24  with the business of HeraSoft in Bartlesville, Oklahoma.

25  That does not change Judge Sigler's order.

1        So at this time the State of Oklahoma is asking

2   that you increase the Defendant's bond because he has

3   violated his bond condition.  I'm not asking for an

4   ankle monitor, Judge.  I'm asking that you increase his

5   bond amount, and that if he has to post bond, he posts

6   bond; and that we keep all the other conditions still

7   intact.  If he wants to go back to Rhode Island, he goes

8   back to Rhode Island.  That's fine with me.  I would ask

9   that we reiterate that he cannot have any contact with

10  victims or their businesses.  That includes -- I guess

11  we have to spell it out -- shareholders and disparaging

12  the company to people, like the shareholders, which is

13  calling them and saying that Anthem and Cynthia are

14  involved in a Ponzi scheme.  Because if he really has

15  concern, he can call, like, the SEC or whoever.

16  Apparently there's something about the Department of

17  Justice investigated someone on the advisory board of

18  one of their companies at one point.  Call them.  Let

19  them know.  If you really think that, call them.

20        Thank you, Judge.

21            THE COURT:  One last shot, Mr. Adams.

22            MR. ADAMS:  Judge, it's sounds like the

23  State's just asking to increase the bond.  That's a

24  punitive action.  It's just basically going to cost him

25  more money, okay?  We object to it.  I will just tell

1    you from any standpoint, no, I don't want my clients

2    discussing anything that can be used in a criminal case

3    with anybody, okay?  But I don't see how this Court can

4    order him not to be able to depose people and

5    participate in the litigation in a Federal District

6    court in Kansas.

7           And then the last issue is, is, no, Mr. Piercy

8    and Mr. Ritter were not listed on the initial

9    disclosures by the Plaintiffs in the Federal lawsuit.

10   But in the Federal lawsuit, you're not required --

11   you're not restricted to just deposing people that the

12   Plaintiffs tell you about.  You can depose anybody that

13   has any relevant information which is why he had to do

14   the background to be able to testify to the Court to

15   issue the subpoenas in the first place.

16          And so these two cases are interconnected, and

17   he has to be -- and he's got a constitutional right to

18   participate in the system.  And he's got to be allowed

19   to participate in the system there.  And I would love

20   for him to get a lawyer up there anyway, because it

21   would make things a lot easier for me.

22          THE COURT:  I'm not really concerned about

23   the lawsuit that's going on in the state of Kansas

24   except, Mr. Adams, I do agree with you that he does have

25   a right to defend himself in a lawsuit that had been

1   filed against him.  However, he has chosen to represent

2   himself in that case, and it's pretty common knowledge

3   that a litigant who chooses to represent themselves in a

4   case does so at their own peril.  He's still held to the

5   same standard that a lawyer would be held to even though

6   he's a pro se litigant.

7          The conversation that I heard, the voice mail

8   that I heard, goes way beyond contacting someone to let

9   them know that they're going to get a subpoena or went

10  way beyond what was, in my opinion, allowed under the

11  bond condition in this case.  And while I understand

12  that he has a right to represent himself, he's got this

13  lawsuit, it's just unfortunate that he's been charged

14  with a crime here that has as his bond condition some

15  limits on his contact with the people that he believes

16  may be necessary for him to contact.

17         Taking your theory, Mr. Adams, that he should

18  have the right to contact the witnesses without this

19  Court considering it to be a bond violation, if you take

20  that just one step further then it would also be he

21  could contact the alleged victims in this case and still

22  not violate his bond condition as long as it's part of

23  the case in Kansas.  Well, I just don't believe that to

24  be true.  A criminal case is superior to the civil case.

25  The conditions -- the bond conditions in the criminal

1  case are in place for a reason and remain effective

2  throughout this criminal case and until and unless

3  they're changed.

4          Now, I think it's clear, by looking at the

5  court minute from January of 2022, that the Defendant

6  was to have no contact with the alleged victims, the

7  Blanchards, or their businesses.  Well, if you take it

8  literally, that business is a stone and brick building

9  and maybe some paper and some computers.  And I don't

10  think that's what the Court meant at all.  So it's clear

11  to me that his contact with those people has gone way

12  beyond just the necessity of contacting them for the

13  purpose -- Mr. Ritter, Mr. Koehn, and Mr. Piercy, way

14  beyond what's necessary just to effectuate the process

15  of his civil lawsuit in Kansas.

16          The other issue is he had a $100,000 bond.  The

17  State agreed to reduce it with some conditions due to

18  some apparently monetary constraints.  I don't know.

19  But that certainly freed up several thousand dollars for

20  him to get an attorney to represent him in the case in

21  Kansas.

22          It is clear to me that Mr. Nelson has violated

23  his bond condition of no contact with the victims and

24  their businesses.  And just because that minute order,

25  which was filed in, I believe, March -- the one,

1  Mr. Adams, that you attached.

2              MR. ADAMS:  Judge, that would be B,

3  Exhibit B, because A was the January 11th order.  B is

4  the March order.

5              THE COURT:  March the 7th of 2022, is --

6  no minute order fully reflects what was said in court

7  and what the judge's full order was, but it's clear to

8  me that Judge Sigler did not lift the bond condition

9  that he have no contact with the businesses themselves,

10  even though he specifically -- or at least the minute

11  order specifically referenced the victims.

12              At this time I am going to grant the State's

13  motion to enhance his bond, or increase his bond, but I

14  am going to only increase it to $100,000 rather than

15  $150,000 and would reiterate to Mr. Nelson that while I

16  understand that there's some -- there may be some

17  necessity for him to contact some people that are

18  somewhat related to the businesses here, there is proper

19  communication and there is improper communication.

20  Obviously the improper communication would violate his

21  bond condition.  And I guess what I'm saying is just

22  simply if he had contacted one of those three men and

23  not gone into detail about what's going on in the

24  Blanchards' company or I know your wife has done this

25  and here's all this contact about maybe suggestions of

1    underaged children, none of that has anything to do with

2    that lawsuit nor does it have anything to do with

3    anything other than an attempt to intimidate the

4    Blanchards through people that they're closely connected

5    with in their companies.  Completely inappropriate.

6          So you did mention, Mr. Adams, that you thought

7    they were asking to increase -- or an excuse to put an

8    ankle monitor on him.  I didn't see that anywhere in

9    their order, and then Ms. Gullett reiterated that they

10   are not asking for a ankle monitor.

11          MR. ADAMS:  Okay.  Well, I'm pleased that

12   they are not.

13          THE COURT:  That was originally a bond

14   condition, that he wear an ankle monitor.  They

15   graciously agreed to lift that condition, along with

16   some other things, so long as Mr. Nelson abided by his

17   end of the agreement.  And I don't believe that he has

18   done that, and I believe that he has purposely attempted

19   to intimidate the Blanchards through people in --

20   closely related to their company.

21          I do want to address the -- I guess the best

22   way I can put it -- insinuation that the State of

23   Oklahoma is in collusion with the Plaintiff in the

24   Kansas case, that was a really far stretch.

25          And, Mr. Adams, I'm not exactly sure what you

1  were trying to get the Court to understand or believe

2  with respect to that, but it was just a far stretch and

3  hard for me to imagine that the State of Oklahoma,

4  knowing how busy they are, would have time to collude

5  with the Plaintiffs in that Federal lawsuit to try to

6  have an economic impact on Mr. Nelson.  I think they're

7  just simply trying to protect their -- who they believe

8  to be victims in this case and to prosecutor what they

9  believe to be a crime in this case.

10           So, anything further, Ms. Gullett?

11           MS. GULLETT:  Your Honor, I believe we

12  need to set a date for this case.  I believe we're set

13  for status docket for the jury sounding docket.

14           THE COURT:  Okay.  Anything further from

15  you, Mr. --

16           MR. ADAMS:  I didn't hear what Ms. Gullett

17  said.

18           THE COURT:  I think it's currently set on

19  December the 16th.  Am I correct?

20           MS. GULLETT:  Yes.  As long as that's

21  still our date, yes, Judge.

22           THE COURT:  December 16th is the jury

23  sounding docket for the winter and spring term.  And

24  that's the date that it's set on now.

25           MS. GULLETT:  Is that at 2:00 or at 9:00?

1  We're at 9:00, right?

2           THE COURT:  It's at 9:00 -- let me make

3  sure.  12-16 at 2:00 p.m.

4           MR. ADAMS:  Judge, is that supposed to be

5  at 9:00?

6           THE COURT:  No.  It was previously set at

7  2:00.  That's my jury sounding docket is at 2:00.  My

8  regular felony docket is at 9:00 a.m., and to try to do

9  those two things on the same docket is too hectic.

10          MR. ADAMS:  And so the record is clear --

11 one is Misty -- Mr. Nelson's bond person wanted me to

12 ask if they could just write the bond down at the court

13 clerk's office, the additional bond or -- basically, I

14 think what she's asking is does he have to go into

15 custody and get bonded out at the jail or can we just

16 write the bond at the court clerk's office?

17          THE COURT:  We're going to follow the

18 proper procedure.  He's got to go to the jail and go

19 through the proper procedure.

20          MR. ADAMS:  And the other question I have

21 is -- that I just want to be clear on, so there's no

22 misunderstanding, is if he were to make bond, can he

23 appear virtually, since he lives in Rhode Island, or

24 does the State want him to return to Washington County?

25          MS. GULLETT:  I have no objection on that

1  day that he return -- or that he do virtual because it

2  will be just us setting dates.

3  THE COURT:  So what we're going to do,

4  Mr. Adams, and I know that we do it different in this

5  small county than you do in Tulsa County where you

6  primarily practice, but on December the 16th at 2:00,

7  it's basically a setting where we actually set at that

8  time whomever wants a jury trial, says they want a jury

9  trial, and we set it on the next docket -- or the -- we

10  set it on the first day of the first of the jury term in

11  January.  So there is no reason for Mr. Nelson to

12  personally appear on that day because it's basically a

13  date to get a date.

14  MR. ADAMS:  It's something that I can show

15  up and he can appear virtually?

16  THE COURT:  Yes.

17  MR. ADAMS:  Do I need to do it on my

18  computer or whatever, like that, I mean?  Or does he

19  call in or what?

20  THE COURT:  Well, you can handle that

21  however you want to.  I don't care.  It can either be by

22  phone.  It could be by Facetime, if you prefer to do

23  that.  If you want to get him on some kind of Zoom

24  meeting, as long as you have the equipment to do it, so

25  long as you're not relying on the Court to do that.

1          MR. ADAMS:  Okay.

2          THE COURT:  I want to make clear that the

3  bond condition is no contact with the victim.

4          And, Mr. Adams, you can explain this to

5  Mr. Nelson.

6          But no contact with the alleged victim also

7  means no contact with a third party in an effort to get

8  to the victim or an effort to get a message or

9  intimidate the victim.  So, no contact with the victim;

10 no email, no social media, all those things that we

11 lawyers know what no contact means, okay?  No contact

12 with the alleged victim.

13         MR. ADAMS:  Just in -- this might satisfy.

14 You can't do indirectly what you're not allowed to do

15 directly.

16         THE COURT:  Correct.

17         MR. ADAMS:  Okay.  But just so we're clear

18 on the Court's orders, we're not saying that if he gets

19 a lawyer that can do a deposition of a witness and the

20 lawyer asking the witness depositions [sic] that the

21 lawyer believes is related to the lawsuit in Kansas, the

22 Court, and hopefully the State, doesn't have any problem

23 with that?

24         THE COURT:  I don't have a problem with

25 that so long as Mr. Nelson understands that he can have

1   no contact with that victim.  He can't be at that

2   deposition.  And if he wants to listen in and have -- he

3   just can't have any contact with the victim.  But I

4   believe it would be preferable for him to have an

5   attorney there that can do what he believes he should be

6   able to do in the civil case.  And I'm confident that a

7   lawyer would know within which boundaries he or she

8   needs to stay.

9        So no contact with the alleged victim.  No

10  contact with the businesses that the victims are

11  involved in or own, which we understand that that means

12  not their shareholders.  Don't go down and talk to the

13  secretary.  Don't, you know, picket out in front of

14  their business, all those kind of things.  I just want

15  to be clear on that.

16        MR. ADAMS:  Yes.

17        THE COURT:  And then with respect to being

18  in Bartlesville, that was something that you referenced,

19  Ms. Gullett.

20        And while you referenced it, too, Mr. Adams,

21  the bond condition that was set by Judge Sigler was he

22  cannot be in Bartlesville except to come to court and

23  visit with his attorney.

24        Now, Mr. Adams, I understand you have an office

25  in Tulsa.  So he has no restriction as far as coming to

1   visit you in Tulsa.  I guess if you wanted to come to

2   Bartlesville, he could come here to visit you.  But

3   other than that, the other bond conditions set be Judge

4   Sigler remain in full for force and effect.

5           No contact with the alleged victims or their

6   businesses.  He is to surrender his passport.  No longer

7   has the requirement of an ankle monitor.  He cannot

8   reside in Washington County.

9           What about check in with his bondsman every

10  day?

11              MS. GULLETT:  He is still supposed does do

12  that.

13              THE COURT:  And check in with the

14  bondsman.  I think that's in lieu of having an ankle

15  monitor.

16              MS. GULLETT:  Correct.  And that's with

17  Misty.

18              THE COURT:  Did I miss anything?

19              MS. GULLETT:  No, Judge.

20              THE COURT:  Is there anything that we're

21  unclear about?

22              MR. ADAMS:  No, Your Honor.

23              THE COURT:  Anything else for the record,

24  Ms. Gullett?

25              MS. GULLETT:  No, Judge.  Thank you.

```
1                    THE COURT:  Mr. Adams?

2                    MR. ADAMS:  No.

3                    THE COURT:  That will then conclude the

4       record.

5                    (End of proceedings)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    STATE OF OKLAHOMA        )

2    COUNTY OF WASHINGTON     )

3        I, Kara L. Rowell, court reporter in and for the

4    District Court of Washington County, State of Oklahoma,

5    do hereby certify that the above and forgoing contains a

6    true and correct transcription of all portions of

7    proceedings and evidence requested in the above-styled

8    and -numbered cause, CF-2021-304, all of which occurred

9    in open court or in chambers and were reported by me on

10   October 12, 2022.

11       I further certify that this reporter's record of the

12   proceedings truly and correctly reflects the exhibits,

13   if any, offered by the respective parties.

14       WITNESS my hand this 3rd day of November, 2022.

15

16                            _____
                             KARA L. ROWELL, CSR
17                           Court Reporter
                             Washington County
18                           District Court
                             420 S. Johnstone Avenue
19                           Bartlesville, Oklahoma 74003
                             CSR #1600
20                           Expiration:  12/31/22

21

22

23

24

25
```

# <u>EXHIBIT</u>

# **"D"**

# To Follow . . .

# <u>INTERLOCUTORY APPEAL</u>

Oklahoma State Motion to Increase Bond

## IN THE DISTRICT COURT OF THE ELEVENTH JUDICIAL DISTRICT OF THE STATE OF OKLAHOMA SITTING IN AND FOR WASHINGTON COUNTY

THE STATE OF OKLAHOMA,
    Plaintiff,

vs.

MICHAEL ERIC NELSON

    Defendant.



Case No.  CF-2021-2

### STATE'S MOTION INCREASE BOND AND SET HEARING

COMES NOW the State of Oklahoma, by and through Zoe Gullett, Assistant District Attorney, in the above styled case, and moves this Court to enhance or increase the defendants bond for the following reasons:

The Defendant's bond was set by agreement on January 11th, 2022 at an amount of $50,000 with the condition that the defendant have no contact with the victims or the victim's businesses. The State of Oklahoma is requesting this Court increase the defendant's current bond to $125,000 given the defendant's current behavior and violation of the Court's bond condition from January 11th, 2022.

On or about September 6th, 2022 the defendant contacted Mark Ritter who is a known associate and shareholder in a business owned by the victim's. The defendant identifies himself by name and mentions the name of the businesses owned by the victim's specifically Anthem Holdings and HeraSoft. HeraSoft is located physically within the borders of Washington County, Oklahoma.

He states that he is going to subpoena Mr. Ritter and that he has filed subpoenas in sixteen (16) other courts "up and down the eastern seaboard". He also insinuates that Mr. Ritter's name continues popping up on all sorts of documents and "all sorts of claims of young women". He says that he would like to have a conversation "man to man". It is clear the defendant is attempting to associate the name of the victim's companies with his threats to intimidate Mr. Ritter with legal action.

On or about September 6th, 2022 the defendant called Craig Piercy, a shareholder and associate of Cynthia and Anthem Blanchard, and asked if Mr. Piercy was a shareholder of Anthem Holding, Inc.

When Mr. Piercy was able to have a full conversation with the defendant on September 7th, the defendant asked if Mr. Piercy knew Mr. Ritter and if he knew Anthem and Cynthia Blanchard.

The defendant told Mr. Piercy that the Blanchard's were con-artists who operated Ponzi schemes, that they used their companies to hide money and steal money from investors. He mentioned specific companies such as Anthem Vault and HeraSoft. The defendant indicated to Mr. Piercy that he got his name from SEC filings and that Mr. Piercy was listed as a shareholder.

The defendant stated that the victim, Anthem Blanchard, stole all of the defendant's technology to start the company HeraSoft. The defendant is clearly attempting to contact a shareholder, who he knows is a shareholder in an attempt to cause problems for the victim's and further his damage to them personally and their businesses.

Finally, on September 15th, 2022 the defendant, using the email address oklahomaremote@gmail.com, sent an email to an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville, Oklahoma. In the email, the defendant indicates that he will have a special counsel take the deposition of Gil Gilliam in Bartlesville, Oklahoma at the local courthouse for a six to seven hour deposition. Mr. Gilliam works for HeraSoft which is located solely in Bartlesville and has never had any dealing with the defendant. In his email he indicates "it might be easier for Federal Officials and given the natura of the situation that it be held at the Federal Court building itself…". Once again the defendant is attempting to intimidate the victim's by contacting associates of the victim's and threatening to have federal officials take depositions of their employees who have never met the defendant.

The defendant is charged with Violation of the Computer Crimes Act by Stalking the victims and it appears that he has continued to engage in his behaviors by contacting known associates of the victims instead of the victim's themselves. He has contacted two shareholders that we know of and he has written emails indicated his intention to deposition an employee who physically works in Washington County while eluding to using Federal resources if necessary.

The State of Oklahoma is also in possession of other emails that appear to be fabricated to slander the victim as well as associates that are being investigated by the Bartlesville Police Department and the Salina Police Department.

Based upon the above reasons the State of Oklahoma is requesting that the Defendant's Bond be increased to $125,000 and that if he were to make bond and the Defendant be placed on an ankle monitor as it is apparent the defendant is unable to comply with the orders of the Court as they were previously put into place.

Respectfully Submitted,

Zoe Gullett
Assistant District Attorney

## CERTIFICATE OF MAILING OR DELIVERY

I do hereby certify that on the 23rd day of September, 2022, I hand delivered a true and correct copy of the above and foregoing motion, to the attorney of record, Perry Newman at the Washington County Courthouse, 420 Johnstone, Bartlesville, OK 74003.

Zoe Gullett
Assistant District Attorney

# EXHIBIT

# "E"

# To Follow . . .

# INTERLOCUTORY APPEAL

Defense Attorney Kevin Adams Motion against State Bond Increase

IN THE DISTRICT IN AND FOR WASHINGTON COUNTY
STATE OF OKLAHOMA

DISTRICT COURT WASHINGTON CO. OK
JILL L. SPITZER, COURT CLERK

F
I
L    OCT 1 1 2022
E
D
BY _____ DEPUTY.

THE STATE OF OKLAHOMA,

Plaintiff,

vs.                                                    Case No. CF-2021-304

MICHAEL ERIC NELSON,
Defendant.

## OBJECTION TO STATE'S MOTION TO INCREASE BOND

Comes now Michael Eric Nelson, by and through undersigned counsel and

objects to the state's requested bond increase  and offers the Court the following:

### Relevant Procedural Background

1. Michael Nelson stands accused of one felony (count 1) and one misdemeanor

   (count 3)[1]. In count one it is alleged that Mr. Nelson violated the *Oklahoma*

   *Computer Crimes Act,* 21 O.S. § 1958, a felony. In the Second Amended

   Information filed April 7, 2022 the state alleges that Mr. Nelson "on or between

   the 24th day of February, 2019 and the 1st day of October, 2021, did unlawfully

   communicate by email, a computer system, for the purpose of using such access

   for Stalking in violation of Oklahoma Statute Title 21 0.S. § 1173."

2. In count three Mr. Nelson is charged  with *Unlawful Use of Computer System*,

   21 O.S. § 1953 (8), a misdemeanor. In count 3 the state alleged that Mr. Nelson

   "on or about the 20th day of October, 2021, by willfully using a computer,

---

[1] Count 2 was dismissed by the state on August 5, 2022, see August 5, 2022 court minute.

1

computer system, or computer network to annoy, abuse, threaten or harass another person by sending an email to Cynthia Blanchard."

3. This case is set on the Jury Sounding Docket for December 16, 2022 at 2:00 pm.

4. On September 22, 2022 the state filed the "*State's Motion To Increase Bond and Set Hearing*". In the State's motion the state alleges that Mr. Nelson violated the conditions of his release by contacting **Mark Ritter**, **Craig Piercy** and "*an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville, Oklahoma.*"

### The Basis for the Objection

### Mr. Nelson Did Not Violate the Conditions of His Bond

The written court minute filed in this case on January 11, 2022 list the bond conditions as "no contact w/alleged victim, ankle monitor, surrender passport, not reside in Washington Co." (See attached   Exhibit A, January 11, 2022 *Court Minute*) On March 7, 2022 the bond conditions were modified, "State and defendant agree defendant can return and reside in Rhode Island, ankle monitor can be removed by agreement. Defendant can return to Oklahoma to consult with Attorney and for court appearances. Continued no contact with victims." (See attached Exhibit B, *March 7, 2022 Court Minute*)

In the state's motion to increase Mr. Nelson's bond the state **claims** that the condition of bond was "…that the defendant have no contact with the victims or **the victim's businesses including 505 Silas St. Bartlesville, OK 74033**" The state's claims regarding the conditions of Mr. Nelson's bond are not reflected in the

2

court minute, the court's minute only prohibits Mr. Nelson from contacting the alleged victims.

### Mr. Nelson Contacted the Individuals the State Complains of for Legitimate Litigation Purposes

On the first page of the state's motion the state complains that "**He [Mr. Nelson] states that he is going to subpoena Mr. Ritter...**" and that "**On or about September 6, 2022 the defendant call Craig Piercy, a shareholder and associate of Cynthia and Anthem Blanchard...**".

Mr. Nelson took the action the state complains of during the course of litigation while defending himself, *pro se*, in a pending federal lawsuit. The lawsuit was filed <u>against him by a board member of the company controlled by Cynthia Blanchard</u>, that lawsuit is currently pending in the United States District Court of Kansas.

The lawsuit is captioned *United Capital Management of Kansas, Inc. and Chad M. Koehn vs. Michael E. Nelson*, 22-4008-JWB-GEB. The plaintiff in that lawsuit Mr. Koehn disclosed in a public SEC disclosure that he is a member of the board of directors of **Anthem Holding Company**.

**Chad Koehn, President of United Capital Management is a member of the Board of Directors of Anthem Holdings Company**. In his position as a member of the Board of Directors <u>he is compensated by Receiving shares of stock and/or warrants to obtain shares in the company</u>. <u>Mr. Koehn has an incentive to recommend Anthem Holdings Company</u>. <u>This is a conflict of interest, and consequently the investment advice provided by Mr. Koehn is biased.</u>

Mr. Koehn will only recommend that a client invest a portion of client's portfolio in Anthem Holdings Company if believes that it is in client's best

interest. (Under no circumstances will Mr. Koehn and/or United Capital Management exercise any investment discretion with respect to whether to invest a client in Anthem Holdings Company.)

(See June 2021 SEC Disclosure https://static.fmgsuite.com/media/documents/6c9c702c-f1da-437b-a466-cceab07e50d8.pdf)

Chad Koehn the plaintiff in the federal lawsuit, is a member of the board of directors of Anthem Holdings Company, and that company is controlled by the complaining witness and her husband[2]. Mr. Nelson owns a significant portion of Anthem Holdings Company[3]. (In the preliminary hearing of this matter Cynthia Blanchard testified that Mr. Nelson was a shareholder in the company her and her husband controlled[4].) So the relationships are clear, Chad Koehn a board member is suing Eric Nelson a shareholder and the state's complaining witness Cynthia Blanchard is the president of the company.

In defending the lawsuit in federal district court, Michael Nelson subpoenaed two witnesses Mark Ritter and Craig Piercy[5].

Mr. Nelson has a constitutional right to participate in the defense of the lawsuit filed against him by an associate of the state's complaining witness.

The right to offer the testimony of witnesses, and to compel their attendance, if[8] necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the

---

[2] (See March 29, 2022 Preliminary Hearing transcript in this matter page 38 lines 2- 5)

[3] (See attached as Exhibit C- Anthem Holdings Company stock certificate issued to Mr. Nelson for 509,419 shares of common stock of Anthem Holdings Company, a Texas Corporation).

[4] (See March 29, 2022 Preliminary Hearing transcript in this matter page 38 line 5)

[5] (See Attached Exhibit D Notice of Subpoena for Mark Ritter and Exhibit E Notice of Subpoena for Mark Ritter filed in the United States District Court for Kansas)

prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967)

On page three of the state's motion the state complains that "**Finally, on September 15th 2022 the defendant, using the email address oklahomaremote@gmail.com, sent an email to an attorney known to an associate of Cynthia and Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville, Oklahoma. In the email, the defendant indicates that he will have a special counsel take the deposition of Gil Gilliam in Bartlesville, Oklahoma at the local courthouse for a six to seven hour a deposition.**"

Mr. Nelson has been ordered by United States Magistrate Judge Gwynn's Birzer to communicate with attorney Christopher Kellogg, counsel for Chad Koehn, using the email "oklahomaremote@gmail.com" concerning the pending litigation in the *United Capital Management of Kansas, Inc. and Chad M. Koehn vs. Michael E. Nelson*, 22-4008-JWB-GEB. (See Attached Exhibit F, April 27, 2022 Order issued by Magistrate Birzer Document 67)

The lawsuit that Mr. Nelson is defending involves the state's complaining witness Cynthia Blanchard and Gil Gilliam. Mrs. Blanchard and Gil Gilliam are listed as potential witnesses in Chad Koehn's initial disclosures in that lawsuit. (See Attached Exhibit G, Plaintiff's Initial Disclosures, page 3 numbers 6 and 8)

The state also complains that during a conversation with Mr. Piercy that "**The defendant told Mr. Piercy that the Blanchard's were con-artists who operated Ponzi schemes, that**

they used their companies to hide money and steal money from investors. He mentioned specific companies such as Anthem Vault and HeraSoft."

Mr. Nelson has good reason to believe that the Blanchard's are running a Ponzi scheme. The dispute between Mr. Nelson and the Blanchards began while he was employed by one of their many companies over a crypto currency named "Herc", Mr. Nelson received an email from a fellow share holder who informed him that a group of investors had purchased three million dollars of the crypto currency and wanted to know where the money was.

In a document[6] explaining "Herc" produced by the Blanchard's (See Attached Exhibit H, "Herc" White Paper) the Blanchard's are listed as CEO and President on page 14 and on page 18 is an individual know as Joby Weeks. Mr. Weeks is listed as a member of the "Advisory Board". Mr. Weeks, was indicted out of United States District Court in New Jersey, in *United States of America v. Matthew Brent Goettsche et al., 18-CR-877-CCC*, for conspiracy to engage in wire fraud in connection with his role in BitClub Network. Mr. Weeks ultimately entered a plea in that case.

In the Department of Justice Press Release[7] concerning the case, federal prosecutors said the following:

Defendants Goettsche, Balaci, and Weeks have been charged with conspiracy to engage in wire fraud in connection with their roles in BitClub Network. From April 2014 through December 2019, BitClub Network was a fraudulent scheme that solicited money from investors in exchange for shares of purported cryptocurrency mining pools and rewarded investors for recruiting new investors into the scheme. Goettsche, Balaci,

---

[6] https://s3.us-east-2.amazonaws.com/hercmedia/herc_2018_whitepaper.pdf

[7] https://www.justice.gov/usao-nj/bitclub

Weeks, and others conspired together to solicit investment in BitClub Network through fraudulent means, including by providing false and misleading figures that BitClub investors were told were "bitcoin mining earnings" purportedly generated by BitClub Network's bitcoin mining pool.   Goettsche, Balaci, Weeks, and others obtained the equivalent of at least $722 million from BitClub Network investors.

Defendants Goettsche, Balaci, Weeks, and Abel also conspired to sell BitClub Network shares—which were securities—notwithstanding that BitClub Network did not register the shares with the U.S. Securities and Exchange Commission.  Weeks and Abel created videos and traveled around the United States and the world to promote BitClub Network and recruit others to invest.

It is not just that the Blanchard's had a member of the "Advisory Board" that was indicted for the "BitClub Conspiracy", while Mr. Nelson worked for the Blanchard's he personally witnessed Anthem Blanchard recruit for and invest money into BitClub.

The Blanchard's have also started multiple companies in recent years and make astounding claims such as their company is securing the energy grid in California, claim to be in partnership with the country of the Netherlands, claim to be securing all gold imports and exports to the country of the Netherlands.

The issue concerning whether or not the Blanchard's are involved in a "Ponzi Scheme", and whether or not they are being assisted by Chad Koehn the board member of Anthem Holdings Company, are all the issues involved in the federal litigation in Kansas.

What has occurred between these two cases is a board member of Anthem Holdings Company sues Mr. Nelson, lists the Blanchards and their employees as witnesses against Mr. Nelson in a federal civil case and then when Mr. Nelson wants to depose witnesses associated with the Blanchards to defend the federal lawsuit, the

Blanchards run to the Washington County District Attorney's office to try and stop Mr. Nelson from defending the federal case. Mr. Nelson has a constitutional right to participate in the federal litigation pending in the United States District Court of Kansas and he has done nothing wrong by doing so.

## CONCLUSION

Therefore, for all the reasons stated above. Counsel request the Court deny the state's request to increase bond.

Respectfully Submitted,

Kevin D. Adams, OBA# 18914
Attorney at Law
36 East Cameron Street, #16
Tulsa, OK 74103
O (918) 582-1313

## CERTIFICATE OF DELIVERY

I hear by certify that a copy of the foregoing instrument was mailed or delivered on October 11, 2022 to the office of the following:

Washington County District Attorney's Office

Kevin Adams

8



**IN THE DISTRICT COURT OF WASHINGTON COUNTY**
**STATE OF OKLAHOMA**
**COURT MINUTE (DISTRICT COURT ARRAIGNMENT)**

DISTRICT COURT WASHINGTON CO. OK
JILL L. SPITZER, COURT CLERK

F
I   JAN 1 1 2022
L
E
D   _Sarah Murphy_  DEPUTY

JUDGE: _Sigler_

DATE: _1-11-22_

CASE #: _CF-21-304_

STATE OF OKLAHOMA vs. _Michael Eric Nelson_

STATE PRESENT BY: _Gullett_

✓ Deft is present in person ✓ In custody
___ Without attorney
✓ With attorney _M. Kane_

___ Deft Arrested on Warrant w/$_____ Bond

___ Deft failed to appear. Bench warrant/Bond forfeiture authorized in the amount of $_____

✓ Probable Cause Affidavit reviewed by Court      ✓ Court finds probable cause for arrest

___ Deft advised of his/her constitutional rights ___ How & when to apply for Court appt attorney

✓ Deft in receipt of Information/App to Revoke/Motion to Accel ___ Waives/does not waive 20 days

___ Information read   ✓ Waives reading ___ Deft acknowledges his/her name and address are correct.

✓ Deft name or address amended to: _33 Hartford Ave, Wakefield RI_

___ Deft enters plea of NOT GUILTY.
___ Court enters plea of NOT GUILTY for deft.

___ Deft enters plea of GUILTY.
___ Deft withdraws plea of NOT GUILTY and pleads GUILTY.
___ Deft enters plea of NO CONTEST and the Court finds the Deft GUILTY.

✓ Bond is set at $ _100,000.00_
___ Deft is out on bond

✓ Case set for _1-21-22_ at _9:00_ am/pm

With _Thomas_ for _Status_

Bond Condition: _No contact w/alleged victim; ankle monitor, surrender passport, not reside in Washington Co._

___ It is Order, Judgment & Decree of the Court the Defendant be & hereby is sentenced/revoked to:
_____
_____

___ The Defendant is ordered to pay the Court Costs, together with the following:
___ $_____ Fine          ___ $_____ VCA

___ The Defendant is to receive credit for time served at the rate of $25.00 per day or until the amount of $_____ is paid into case(s): _____

Other Action: _Deft asks for bond reduction - Hearing held @ 3:30 pm._

B

IN THE DISTRICT COURT OF WASHINGTON COUNTY, STATE OF OKLAHOMA

State

Plaintiff(s)

Zoe Gillett (33184)

Attorney(s) for Plaintiff(s)

-vs-

Michael Eric Nelson

Defendant(s)

Case No. CF-21-304

Perry Newman

Attorney(s) for Defendant(s)

DISTRICT COURT WASHINGTON CO OK
JILL L SPITZER COURT CLERK

**COURT MINUTE**

Date: March 17/2022

Judge: Sie W

Court Reporter: None

MAR 07 2022

_____ DEPUTY

State + D agree D can return to reside
in Rhode Island, ankle monitor can be
removed by agreement. D can return
to Oklahoma to consult with Attorney
+ for Court Appearances. Continued
No contact with victims. D to return
for PH on 3/29/2022 9:00 am A to check
in daily with bondsperson.

Set for further hearing on _____ at ____ .M.

Judge of the District Judge   3/7/2022

12861

C



No. of Certificate
**CS-9**

# Anthem Holdings Company

INCORPORATED UNDER THE LAWS OF THE STATE OF TEXAS

This is to certify that

## Michael Nelson

is the record holder of FIVE HUNDRED NINE THOUSAND, FOUR HUNDRED NINETEEN (509,419) shares of Common Stock of ANTHEM HOLDINGS COMPANY, a Texas corporation (the "Corporation"), transferred to the shareholder on October 22nd, 2019, transferable only on the books of the Corporation by the holder, in person, or by duly authorized attorney, upon delivery of a properly endorsed stock power. Such shares are issued and shall be held subject to all the provisions of the Certificate of Incorporation, Bylaws of the Corporation and any amendments thereto, and any other governing documents, copies of which are on file at the principal office of the Corporation and made a part hereof.



550 Club Drive, #445 Montgomery, Texas 77316

Shares
**509,419**

_____
**Cynthia Blanchard**
Co Founder & President

_____
**Anthem Hayek Blanchard**
Chief Executive Officer

# D

1

## UNITED STATES FEDERAL DISTRICT COURT - DISTRICT OF KANSAS

| United Capital Management of Kansas, Inc. | DOCKET NO.: |
|---|---|
| **& CHAD M. KOEHN** | 5:22-CV-04008-JWB-GEB |
| | CIVIL ACTION |
| Plaintiffs, counter-Defendants | NOTICE of Intent to |
| v. | Issue Subpoena to: |
| Michael Nelson | **MARK JOSEPH RITTER** |
| defendant; Counter-Plaintiff | **Country Club Heights** |
| *pro se* | **2035 E IRON AVE STE 107R** |
| | **SALINA, KS, 67401** |
| | **[Jury Trial Demanded]** |

Counter-Plaintiff / Defendant ("Nelson"), makes "LIMITED APPEARANCE" to file

**NOTICE OF INTENT TO ISSUE SUBPOENA as Stated attached herewith** so states to

counter-defendants, plaintiffs etAl. As Chad Koehn, United Capital Management of Kansas Inc.

("UCMK") & lawyers collectively ("KOEHN") and to the COURT:

### NOTICE OF INTENT TO ISSUE SUBPOENA

Please take notice that Mister Nelson, intends to issue the Subpoena attached herewith to **NOTICE**

**of Intent to Issue Subpoena to: MARK JOSEPH RITTER; Country Club Heights 2035 E**

**IRON AVE STE 107R SALINA, KS, 67401; please see attached herewith subpoena.** Pursuant

to Federal Rules of Civil Procedure Rule 45(d)(1) and (2)(A) subpoena is to produce electronically

stored information as stated, does not require appearance nor costs or burdens.

Pursuant to Federal Rules of Civil Procedure Rule 45(a)(4); NOTICE is herein so tendered,

TAKE NOTICE, upon the expiration of 7 (seven) days, from the date of service of this notice, with

entry upon the docket of this matter above herein referenced. Mister Nelson will apply to the clerk of

this court for issuance of the attached herewith subpoena directed to **MARK JOSEPH RITTER**

2

Who is not a party at present and whose address is **Country Club Heights 2035 E IRON AVE STE 107R SALINA, KS, 67401; please see attached herewith subpoena** To produce documents and electronically stored information as stated on subpoena. Any objection not timely made shall be deemed a waiver of all future objections not so stated and well pleaded to the Court.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S.* "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so **construed as to do substantial justice**"). "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

Respectfully Submitted, this 17th day of September 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

**2**

**Certificate of Service as to:**

 **NOTICE of Intent to Issue Subpoena to:  MARK JOSEPH RITTER; Country Club Heights**

**2035 E IRON AVE STE 107R   SALINA, KS, 67401; please see attached herewith subpoena**

The undersigned hereby certifies that, on this same date, filed the **above Notice of INTENT TO ISSUE SUBPOENA Attached herewith** with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, for the opposing parties as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

Respectfully Submitted, this 17th day of September 2022.



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### KANSAS

| | |
|---|---|
| unitedcaptialmanagementofkansas inc & chad koehn | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 5:22-CV-04008-JWB-GEB |
| michael nelson | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       MARK JOSEPH RITTER
Country Club Heights ... 2035 E IRON AVE STE 107R, SALINA, KS, 67401

*(Name of person to whom this subpoena is directed)*

✒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All communications with UCMK, Chad M. Koehn, Anthem Blanchard relating to Anthem Holdings Company or Hera Software Development Inc. with all account statements, subscriptions, shareholder communications.

| Place: Via email or eletronic file transfer Apeearance not required at this time | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       _____

        *CLERK OF COURT*
                                            OR

        _____          _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 5:22-CV-04008-JWB-GEB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



## UNITED STATES FEDERAL DISTRICT COURT - DISTRICT OF KANSAS

| United Capital Management of Kansas, Inc. & CHAD M. KOEHN<br><br>Plaintiffs, counter-Defendants<br>v.<br>Michael Nelson<br><br>defendant; Counter-Plaintiff<br>*pro se* | **DOCKET NO.:**<br>**5:22-CV-04008-JWB-GEB**<br>**CIVIL ACTION**<br>NOTICE of Intent to<br>Issue Subpoena to:<br><br>**CRAIG ALLEN PIERCY**<br>**1308 SHORELINE DR W, SALINA, KS, 67401 or**<br>**300 S 9th St, Salina, KS, United States, Kansas or**<br>**PIERCYCRAIG@GMAIL.com**<br><br>**[Jury Trial Demanded]** |
|---|---|

Counter-Plaintiff / Defendant ("Nelson"), makes "LIMITED APPEARANCE" to file **NOTICE OF INTENT TO ISSUE SUBPOENA as Stated attached herewith** so states to counter-defendants, plaintiffs etAl. As Chad Koehn, United Capital Management of Kansas Inc. ("UCMK") & lawyers collectively ("KOEHN") and to the COURT:

### NOTICE OF INTENT TO ISSUE SUBPOENA

Please take notice that Mister Nelson, intends to issue the Subpoena attached herewith to **NOTICE of Intent to Issue Subpoena to: CRAIG ALLEN PIERCY 1308 SHORELINE DR W, SALINA, KS, 67401 or 300 S 9th St, Salina, KS, United States, Kansas, PIERCYCRAIG@GMAIL.com; please see attached herewith subpoena.** Pursuant to Federal Rules of Civil Procedure Rule 45(d)(1) and (2)(A) subpoena is to produce electronically stored information as stated, does not require appearance nor costs or burdens.

Pursuant to Federal Rules of Civil Procedure Rule 45(a)(4); NOTICE is herein so tendered, TAKE NOTICE, upon the expiration of 7 (seven) days, from the date of service of this notice, with

2

entry upon the docket of this matter above herein referenced. Mister Nelson will apply to the clerk of this court for issuance of the attached herewith subpoena directed to **CRAIG ALLEN PIERCY** Who is not a party at present and whose address is **1308 SHORELINE DR W, SALINA, KS, 67401 or 300 S 9th St, Salina, KS, United States, Kansas, PIERCYCRAIG@GMAIL.com** please see **attached herewith subpoena** To produce documents and electronically stored information as stated on subpoena. Any objection not timely made shall be deemed a waiver of all future objections not so stated and well pleaded to the Court.

    A document filed pro se is "to be liberally construed," *Estelle, 429 U.S.* "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so **construed as to do substantial justice"**). "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

Respectfully Submitted, this 17th day of September 2022.



Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

2

**Certificate of Service as to:**

**NOTICE of Intent to Issue Subpoena to: CRAIG ALLEN PIERCY 1308 SHORELINE DR W,**

**SALINA, KS, 67401 or 300 S 9th St, Salina, KS, United States, Kansas,**

**PIERCYCRAIG@GMAIL.com ; please see attached herewith subpoena**

      The undersigned hereby certifies that, on this same date, filed the **above Notice of INTENT TO ISSUE SUBPOENA Attached herewith** with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, for the opposing parties as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

Respectfully Submitted, this 17th day of September 2022.

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

| | | |
|---|---|---|
| unitedcaptialmanagementofkansas inc & chad koehn | ) | |
| _____ | ) | |
| *Plaintiff* | ) | Civil Action No. 5:22-CV-04008-JWB-GEB |
| v. | ) | |
| michael nelson | ) | |
| _____ | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

CRAIG ALLEN PIERCY

To:
1308 SHORELINE DR W, SALINA, KS, 67401 or 300 S 9th St, Salina, KS, United States, Kansas

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All communications with UCMK, Chad M. Koehn relating to Anthem Holdings Company or Hera Software Development Inc. (HeraSoft) with all account statements, subscriptions, shareholder communications.

| Place: Via email or eletronic file transfer Apeearance not required at this time | Date and Time: |
|---|---|
| | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 5:22-CV-04008-JWB-GEB

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |
|---|---|---|---|---|

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED CAPITAL          )
MANAGEMENT OF KANSAS, INC., )
and CHAD M. KOEHN,       )
                      )
       Plaintiffs,    )
                      )
       v.           )    **Case No. 22-4008-JWB-GEB**
                      )
MICHAEL E. NELSON,     )
                      )
       Defendant.   )
_____)

## <u>ORDER</u>

The Court conducted a Status Conference in this matter. Plaintiffs appeared through Christopher Kellogg and Craig Brand. Defendant Michael Nelson appeared, pro se. After a thorough discussion with the parties and counsel regarding communications between the parties and the course of proceedings in this matter, the Court enters the following orders.

1.    The exchange portal recommended by Defendants for communications and exchange of documents in this matter would be ideal, but the Court finds the expense of such a portal is not consistent with the ideals of Fed. R. Civ. P. 1 regarding the just, speedy, and inexpensive determination of every action.

2.    Communications between the parties shall take place by email. Christopher Kellogg shall act as the point of communication on behalf of Plaintiffs and their counsel, with Mr. Kellogg using the email address ckellogg@kenberk.com and Mr. Nelson using the email address oklahomaremote@gmail.com.

3.      For substantive communications, such as the service of discovery, the parties shall file a Certificate of Service regarding the communication, identifying the email addresses used.

4.      The parties shall not file any additional pleadings until Defendant files his responsive pleading to Plaintiffs' Amended Complaint. Defendant's deadline to file a responsive pleading is **May 17, 2022**. No extensions to this deadline will be granted.

5.      After Defendant files his responsive pleading, the Court will enter an Initial Order Regarding Planning and Scheduling setting out deadlines including a deadline for the parties to conduct their Fed. R. Civ. P. 26(f) conference. Mr. Kellogg and Mr. Nelson shall confer by telephone and the conference may be recorded, if necessary.

6.      Plaintiffs will not file any Motion for Leave to Amend Complaint until after the Court holds the Scheduling Conference where a deadline for any such motion will be set.

        IT IS SO ORDERED.

        Dated April 27, 2022, at Wichita, Kansas.


                                        s/ Gwynne E. Birzer
                                        GWYNNE E. BIRZER
                                        U.S. Magistrate Judge

# G

KENNEDY BERKLEY
119 West Iron, 7th Floor
P.O. Box 2567
Salina, KS  67402-2567
(785) 825-4674 [Telephone]
(785) 825-5936 [Fax]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHAD M. KOEHN, ET AL. | ) |
| Plaintiffs | ) |
| vs. | )  Case No. 22-CV-04008-JWB-GEB |
| | ) |
| MICHAEL NELSON | ) |
| Defendant | ) |
| | ) |

## PLAINTIFF'S INITIAL DISCLOSURES

Plaintiffs hereby unilaterally submits the following initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1), and states that this submission had to be unilateral given the Defendants failure to comply with the Court's non-disparagement ruling, failure to engage in a cost efficient determination of this action, failure to jointly work on this initial disclosures based on Nelson's non-cooperation, including that Nelson demanded Plaintiffs counsel set aside 18 hours to confer on the 26(a) issues and placing an unreasonable and unconscionable burden of disclosure on the Plaintiff including time, money and interference with ongoing business operations. Plaintiffs' counsel attempted to explain to Mr. Nelson that a planning conference should take about an hour. Counsel gave Mr. Nelson three hours of time yet that still was not enough time to complete the conference because Mr. Nelson insisted on discussing matters outside the purview of the

conference, including disparaging Mr. Koehn and Mr. Brand, as well as arguing the merits of his position to counsel.

### A.   **WITNESSES**

1.   Chad Koehn; Mr. Koehn has general knowledge regarding the claims made by Plaintiffs against Defendant;

2.   The following former or current employees of Plaintiffs have knowledge regarding Defendant's actions:

    i.   Ryan Kolzow;

    ii.   Kylee Kolzow;

    iii. Erica Jensen;

    iv. Steven Plott;

    v.   Tresa Matney; and

    vi. Other potential current and past employees to be disclosed as discovery proceeds.

3.   Defendant.

4.   Dale Takio. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the hacks and false IDs established by the Defendant while defaming the Plaintiff.

5.   Michael Moran. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Expertise involving the Defendants use or mis-use

2

of electronic devices in order to hack and falsely establish Ids for mis-use against the Plaintiff.

6.  Cynthia Blanchard. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as the Defendant's defamatory conduct against the Defendant.

7.  Anthem Blanchard. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct against the Defendant.

8.  Gil Gilliam. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct and damages caused to the Plaintiff.

9.  Josh Gunter, 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct and damages caused to the Plaintiff.

10.  Logan Golema, 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626.

11.  Any and all law enforcement and prosecutors who are either conducting investigations against the Defendant or are working on law enforcement causes of action against the Defendant.

12.  Governmental entities that the Defendant has claimed to be working with in the form of a valid whistle blower action against the Plaintiff.

13.  Any witnesses identified by Defendant in his initial disclosures.

3

14. Any and all further witnesses learned of by and through the taking of discovery in this matter.

15. Plaintiffs reserve the right to amend these disclosures.

**B.   EXHIBITS**

1. Any and all documents and communications pertaining to any and all defamation and tortious interference by Defendant;

2. Any and all documents pertaining to Defendant's criminal cases which may be relevant to Plaintiffs' causes of action;

3. Plaintiffs' client records, to the extent relevant to demonstrate Defendant's actions;

4. Defendant's criminal records and records of orders against him; and

5. Documents listed by Defendant.

6. Plaintiffs reserve the right to amend this Exhibit List.

**C.   DAMAGES**

Plaintiffs claim damages in excess of $75,000.00 for defamation by the Defendant. Plaintiffs also claim damages in excess of $75,000.000 against the Defendant for tortious interference with a business relationship, including but not limited to treble damages, costs and reasonable attorney fees. Plaintiffs further seek an injunction against the Defendant from committing further tortious acts.

4

**D.   INSURANCE AGREEMENT**

Not applicable to the Plaintiff.

RESPECTFULLY SUBMITTED,

   /s/ Larry G. Michel            
Larry G. Michel     #014067
Chris J. Kellogg     #21651
KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, KS  67402-2567
(785) 825-4674
lmichel@kenberk.com
ckellogg@kenberk.com
ATTORNEYS FOR PLAINTIFFS

5





## Blockchain Powered
## Supply Chain Protocol

Whitepaper V5

# Table of Contents

Executive Summary                                    3
The Problem                                          4
The Hercules Solution                               5
The Hercules Blockchain                             7
The Hercules DApp                                   8
Decentralized Storage and Data Management           9
The Herc Token                                      10
HIPR Verification Process                           11
Herc Token Metrics                                  13
The Hercules Team                                   14

# EXECUTIVE SUMMARY

## What is Hercules?

Hercules, a Special Economic Zone Company (SEZC) is a software development company that provides supply chain management software that utilizes public blockchains. The Hercules platform is decentralized and powered by HERC tokens which are required to record and validate the supply chain data. Hercules software is fully open source.

## Hercules Simplified

Users on the Hercules platform can create a custom supply chain by defining the items to be tracked and the information to be recorded about each item as it passes through the supply chain. In addition to text-based data, photos and video files can also be stored. The Hercules mobile application then allows authorized users to record and track the user-configured data for each item in the supply chain. The data is encrypted and stored securely and immutably on third-party decentralized storage platforms incorporated into Hercules.

To further secure the information, cryptographic hashes of the data are created, stored and indexed utilizing the Factom protocol. The indexing works in a manner similar to library indexing cards, but instead of being stored in a filing cabinet, the indexing information is written to the Factom blockchain, where it is subsequently anchored by the Bitcoin blockchain. These indexing entries cannot be altered in any way, are completely transparent, and publicly viewable. However, the underlying data remains completely private, viewable only by authorized users through our 2nd layer identity solution Edge Secure (edgesecure.co).

In addition to intra-company supply chain management, Hercules is even more powerful when utilized for more complex supply chains with multiple entities contributing data. Since Hercules is blockchain-based, the supply chain data is a common, shared ledger accessible by all the participants. Therefore, instead of each party in the supply chain maintaining its own records, which creates inconsistencies in traditional supply chain management environments, the Hercules protocol enables all participants in any given supply chain to share data transparently which helps reduce many of the problems plaguing complex supply chains today.

## HIPR - PoHW

To validate the information and to ensure the integrity of data in the system, we created the Hercules validating protocol called Human Initiated Performance Reporting (HIPR pronounced hyp-er) which validates transactions through proof of human work (PoHW). For every supply chain data entry a smart contract running on the Ethereum network compares the information to previous entries to ensure nothing has changed, and that information is being recorded in both instances about the same item. Comparison of any two data sets can also be initiated by users about any item on demand. If the data entries do not match, the user knows that the supply chain has been compromised or an item has been altered. Furthermore, once data is entered into the system, it can be checked on a regular basis to ensure that the data has not been altered.

## The Utility of HERC

HERC tokens are ERC777 tokens that act as "software keys" to access and unlock the information on the Hercules protocol. By staking 1,000 HERCs in their wallet, the user can create a Hercules supply chain. HERC tokens are also required to record data to the supply chain and to review the indexing information stored by the platform, at the cost of ~$.001 per kB of indexing information or $.000032 per Hercules entry, and to pay the third-party decentralized storage platform fees. Finally, HERC tokens are also used to incentivize participation in the HIPR validation process.

# THE PROBLEM

Supply chain management presents many challenges, which arise from the method by which companies input, store, and validate data about their supply chain in their management software.

The problem is significant. It is difficult to find specific data on the amount of supply chain losses in most industries, but the following information on the global food industry provides perspective on the magnitude of the problem.

*[The British Standards Institute has said in a report that losses caused by global supply chain disruptions totaled $56 billion in 2015, reported The Loadstar. Extreme weather, terrorist threats, crime and the European migrant crisis hit the global supply chain in 2015, BSI said. About $22.6 billion was lost globally due to cargo crime, the report said." (Source: https://www.businessinsurance.com/article/20160325/NEWS09/160329854/global-supply-chain-disruption-cost-56-billion-in-2015-report)]*

Additionally, as per a recent article in Forbes:

*Shared Data Enables Collaboration. Problem solving requires access to reliable information as a basis for generating ideas and making decisions. But it can be difficult to get partners on the same page as far as where that data should come from, how much to share, and how to manage it. 47% of B2B company leaders in a recent Forrester survey indicated that the biggest thing preventing them from creating actionable insights from their data was data quality; managing data from multiple sources was a challenge for 43% of those surveyed."*
*(Source: https://www.forbes.com/sites/larrymyler/2017/09/11/data-sharing-can-be-a-catalyst-for-b2b-innovation/)*

As evidence of the importance placed on supply chain issues, a June 2017 report from Gartner, Inc., and S&P 500 research and advisory company, indicates that companies will have spent $13 billion by the end of 2017 just on supply chain management software, and they estimate annual sales to exceed $19 billion by 2021. The report references the rapid shift to digitalization as a main factor in the increase in demand for such software as such "technology [is] more attractive to small and midsize businesses and organizations in emerging markets, therefore expanding the addressable market and increasing overall spending."

What are some of the main causes of supply chain problems that lead groups to spend so much money on trying to fix it? Well, the 2016 BCI Supply Chain Resilience Report, which was produced in association with Zurich Insurance Group (with 526 respondents in 64 countries participating) revealed that "66% do not have full visibility of supply chains, 70% experienced at least 1 supply chain disruption, 41% of disruptions occur at Tier 1, and 40% do not analyze the source of disruption." They listed the three top causes of supply chain disruption as:

- unplanned IT and telecommunications outage.
- loss of talent or skill.
- cyber attack and data breach.

All three deficiencies endure as a systemic shortcoming of today's centralized information technology systems. Information does not get flawlessly shared between the different participants because of human error (a result of turnover in the talent pool), lack of data interconnectivity (from IT problems and data breaches), and lack of transparency (a result of all three). Information continues to "fall through the cracks" causing great cost to all involved.

# THE HERCULES SOLUTION

## The Inspiration

The Hercules technology was inspired by a company owned by the HERC Executive team, the company is developing a gold-backed crypto token called (AGLD). After collaborative efforts between both entities, AGLD happens to be the first client of the Hercules blockchain protocol which helps prove and validate the gold content, purity, existence, and location of the gold bars backing each AGLD token along the supply chain. Hercules SEZC, was incorporated in November, 2017 and is headquartered in Grand Cayman. Although gold validation is the first use case for Hercules, this blockchain data management software technology can and will be used for many other use cases such as other precious metals, retail verticals, B2B enterprises, petro chemicals, automotive and food industries, just to name a few.

The Hercules platform leverages its blockchain technology by offering a supply chain management solution that provides:

1. Flexibility, by enabling users to define the items to be tracked and the data elements to be entered for each item.
2. User-definable permissioned-level sharing of data both inside an organization and with partner enterprises in the supply chain.
3. Fully decentralized solution with no single point of failure.
4. Secure and immutable data storage.
5. Data validation on an ongoing basis and on-demand.

## Flexibility

Through the Hercules protocol, users can define the items to be tracked in a given supply chain, as well as the type of information that will be tracked for each item. The information can include data elements (e.g. serial number, weight, etc.), as well as photographs and video files. While the Hercules software currently only supports certain data types, it is fully open source and can be customized and adapted to fit the needs of a particular supply chain. Once a supply chain has been created and defined, the Hercules platform can be used to gather the user-defined information at any desired stage in the supply chain, from raw components to finished retail goods.

## Configurable Data Entry and Sharing

The supply chain creator defines who has access to their Hercules supply chain data. Specific users can be authorized to record information relating to items in the supply chain and/or to access the data. Access can be given to users within an enterprise and/or any other participants in the supply chain. The Hercules blockchain infrastructure allows all of users in a supply chain to share a single, common set of data, which significantly reduces the myriad of problems that result from different parties in the same supply chain - maintaining separate - and often conflicting records regarding the items in the supply chain. Integrating the Hercules supply chain management tool as an internal control shifts the traditional channel arrangements from loosely linked groups of independent businesses to a coordinated initiative - which increases market impact and reduces risk.

## Decentralization

Unlike legacy supply chain management solutions, there is no central store of data in the Hercules platform. Instead, all of the information created and tracked through the Hercules platform is stored on third-party decentralized storage platforms such as STORJ and IPFS.

Since the core Hercules software runs on the Ethereum network, the participants in a multi-party supply chain do not have to rely on a single participant to operate the Hercules platform. Because both the data storage and the core processor are decentralized, there are no single points of failure in the Hercules ecosystem.

## Secure and Immutable Data Storage

The decentralized data storage solutions that Hercules leverages (IPFS and STORJ) adds an additional layer of security on the supply chain data. Whenever data is written to the platform, a time-stamped hash of the data is stored in a Factom data chain, where it is ultimately anchored into the Bitcoin blockchain for even greater data integrity enabling "provable immutability." Therefore, data can be hashed at any time, and that hash can be compared to the time-stamped hash of the data stored by the Hercules platform. If the two hashes are not the same, then it is not the same data.

## Validation

Once data is recorded on the Hercules platform, anyone with the permissions can access this information for validation at anytime. The Hercules validation process utilizes the assetValidation.sol  smart contract running on the Ethereum blockchain to compare two data sets relating to an item recorded at different stages in the supply chain to confirm that the data is the same, and confirming it's the same asset. Moreover, through the HIPR system, supply chain creators can crowdsource ongoing validation of their supply chain data, to proactively flag inconsistent data.

# The Hercules Blockchain

## Why Blockchain?

Due to Blockchain's immutability and distributed data integrity - it places a digital fingerprint on data, there-fore, any attempt to change data would become apparent and be immediately known to the rest of the distrib-uted network.

A multi-layered Blockchain solution enables the technology that allows for immediate approval through third-party audits the moment a transaction occurs. Through IPFS, STORJ, and Factom, the Hercules platform allows digital layers of defined trusted information to be shared among specific parties in an open community that shares and supports the Hercules ecosystem by staking and utilizing the HERC token.

Unlike centralized traditional systems of data recording (handwritten or computer-generated tables), Hercules will allow for the uploading of pertinent documents to decentralized storage solutions along the supply chain. This will allow specific items attached to a data set to be monitored along the supply chain immutably.

## How Hercules works



**(Figure 1): An illustration of the utilization of Hercules platform**

The Hercules platform is a decentralized application, built on the Ethereum blockchain. Its core components include:

1. The Hercules mobile application, which allows users to define and track items through user-config urable supply chains.
2. Ethereum smart contracts that manage and validate user-entered data.
3. Third-party blockchain platforms that provide storage solutions through which user-entered data is stored securely and immutably.
4. The HERC token, an ERC777 token, which is required to access the platform.

# The Hercules Decentralized Application

The Hercules decentralized application is the user interface for the multi-layered HERC blockchain protocol platform. It will be available for both Android and iOS devices in the respective app stores and in the form of a web3 decentralized application. It is a DApp utilising the HERC protocol that interacts with the core Hercules smart contracts, as well as, the various third-party decentralized storage solutions incorporated into the Hercules solution.

In addition to the flexibility the user gets from creating a custom supply chain with predefined tracking items and information, the application can be customized as necessary to meet the requirements of a given supply chain. Users can do this development themselves, or, can evoke the Hercules software development team to build a supply chain for them.

The supply chain creator also determines who can record data to the supply chain. Once a user is authorized, they are able to use the Hercules application to enter text and numerical data about items in the supply chain, as well as, photographs and videos of items, if those elements have been specified for the supply chain in question.

Participants in the supply chain can also use the Hercules application to view information about items as they pass through the supply chain and to validate the data. In order to protect proprietary information, the ability to view specific information elements can be limited to authorized users only through the encrypted identity environment provided by Edge Secure.

## Hercules Core Smart Contracts

The core of the Hercules platform is composed of Ethereum smart contract sets that manage the process of tracking items through a supply chain. When a Hercules user initially defines a new supply chain, the Hercules application configures, creates, and deploys a unique set of the smart contracts for that particular supply chain.

**The core smart contracts consist of the following:**

**assetTracking.sol** This smart contract creates a structure for the items to be tracked in the supply chain and manages the identification of each unique instance of an item in the supply chain.

**assetMeasure.sol** This smart contract manages the interface between the Ethereum network and the third-party storage solutions - utilized by the Hercules platform. The HERC token is the medium of exchange between multiple different protocols within the Hercules platform. The assetMeasure contract weighs the data cost for uploading and retrieving information in the value chain. As well as, handling the movement of HERCs that the supply chain manager needs to register a new value chain and the amount for the digital viewer.

**assetValidation.sol** This smart contract provides the ability to verify items in the supply chain. It compares the data recorded about an item at different stages in the supply chain process to ensure that the data is the same, confirming the identity of the item and that it has not been altered. Authorized users can initiate the verification process for an item at any point during the item's passage through the supply chain. The asset-Validation contract is also utilized by HIPR, the Hercules solution component that provides ongoing verification of items in the supply chain.

## Decentralized Storage and Data Management

While Hercules uses the Ethereum protocol to create the framework for managing and recording data about supply chain items, the data itself is not stored on the Ethereum blockchain. Rather, depending on the file-type, the data is written to one of the third-party decentralized data storage platforms integrated into the Hercules platform. Currently, IPFS is used for text-based data elements, while photo and video files are stored in STORJ.

Hercules can also be easily configured to work with other solutions. The data is encrypted before being written and is further protected by being stored on a distributed basis.

The Hercules software (apart from the Ethereum core contracts) is entirely "client-side," i.e. there is no central server to, and from, which the Hercules application writes and reads data. Instead, the application writes organizing data to IPFS, allowing coordination among various users. Therefore, IPFS plays a significant role in the Hercules platform that helps make its unique architecture possible.



**(Figure 2): An illustration of Data Storage on the Hercules Platform**

# The HERC Token

The HERC utility token is the engine that powers the Hercules platform. HERC tokens are required to create a supply chain and to write or read data to and from the supply chain. They can be thought of as "software keys" to access and unlock information.

In order to create a supply chain on the Hercules platform, the Hercules user is required to obtain and "stake" 1,000 HERCs. Thereafter, data can be recorded or viewed at a cost of ~$.001 per kB of data or $.000032 per entry as each Hercules hash into Factom is 32 bytes, plus, in the case of recording, the costs of the third-party storage provider and Factom. The user pays the total amount in a single HERC payment, as calculated by the Hercules platform. Moreover, the exchange contract converts the appropriate amount of the paid HERC to the protocol token utilized by the storage solution, e.g. STORJ coins for STORJ or Factoids for Factom (there is currently no cost for using IPFS as intended in the Hercules platform), and automates the process of paying the third-party protocol. The remainder of the HERC, i.e. the payment for the Hercules ~$.001/kB read/write charge is burned. No portion of the payment is received by Hercules as revenue.

# ERC 777

Aiming to continuously be up to date with the latest blockchain technologies, we have taken the initiative to make the HERC tokens issued as ERC777 tokens, which is the latest Ethereum based standard that aims to resolve the problems of the ERC20. Since 2016, millions of dollars were lost from the Ethereum ecosystem due to the lack of transaction handling mechanisms in the ERC20 standard.

Ethereum lacks the ability to know what functions its contracts implement, ERC777 uses contract interface recognition, which allows anyone to enforce address registry to make sure that it supports a specific function. ERC777 also utilizes mint and burn function, making it easier to be adopted, especially in the supply chain industry.

# HERC Token Use Case Example

For example, consider the use of HERC in connection with recording information about a gold bar in the AGLD supply chain. For the verification of a 1kg bar in the Hercules Platform a verification system has been implemented. First, the variables that define the AGLD supply chain (i.e. the purity, weight, date processed, mint, supplier, location in the vault, bar serial, and bar-id) are uploaded into IPFS at 128 bytes with a zero cost associated. Next, the pictures of the bar are uploaded to Storj's decentralized file system at a live rate of Storj with a cost associated being ~$0.00000002 / kb or an average ~$0.0003516 for all 6 photos at 17,580 kb average. Last, the hashes associated with the location of the Storj and IPFS uploads are encrypted into the HERC - Factom Sidechain for later reference. The Factoids necessary for the Entry Credits will be at a live rate; however, the cost associated with the action of 4 hash files being 128 bytes at ~$0.001/kb is equal to ~$0.000128. All in all, the cost associated with wholly verifying a 1kg bar from origin to destination is ~$0.0004796 and will be managed at a live rate per HERC token price.

Please refer to the end of the whitepaper to see the full case study.

## HIPR Verification Process

Human Initiated Performance report (HIPR), is HERCs unique way of validating transactions - through proof of human work (PoHW). This Consensus model is new and effective and the process goes as follows: when information is being sent to HERC on the blockchain, for example, two receipts are sent to the Hercules platform, "supposedly" two identical receipts, one from the supply chain manager and the other from the item provider, the receipts are not validated until an actual human goes to HIPR, plays the game, earnsa Herc token for playing and verifying. Only then does the smart contract get approved if identical or in the case of invalidity, an error comes up and the contract is not executed. The smart contracts are randomly assigned from the backend, and any player that decides to mine, is capable of doing so, by playing HIPR and approving a transaction. The assetValidation.sol smart contract reads the metric arrays (lists) and does a checksum on both. The assetValidation smart contract will then send the supply chain managers a Performance Report of the asset.

From a technology standpoint, HIPR is the one of the most secure and efficient ways to approve transactions on the blockchain, without wasting energy, time, or physical resources since transactions have to be validated by actual humans and not - bots, machines, or rigs. HIPR serves as a transaction validator as well as a CAPTCHA. The HIPR game is built on Unity3D, with C# and targeting WebGL.

**The PoHW validation via HIPR introduced by Hercules is a further modified and enhanced consensus protocol of the PoW, which utilizes the human intelligence and the blockchain capability to prevent network abuses, spam and service attacks, introducing a breakthrough in the future of secured supply chain records and transactions.**

For more details, please click **here**. If interested in trying HIPR please click **here**.

### HIPR INTERNAL CONTROL
### Encrypted Perfomance Report



**(Figure 3): An illustration of HIPR ongoing validation on the Hercules Platform**

To further elaborate, HIPR utilizes a steganography script to make the Hercules protocol cryptographically secure. Due to the open source nature of the project any Nethereum Unity game created by the Hercules community whereby the human motions of a player's actions create a fun, interactive "I am not a robot/Captcha" could be voted into the internal control protocol. This sophisticated feature protects against bad actors while maintaining the core function of comparing data sets on an ongoing basis. Not wanting the contract running continuously, we impose the HIPR game as a PoHW (Proof of Human Work) style device to make it arbitrarily difficult to run the contract. When the puzzle is solved, the underlying technology triggers the sending of data to the assetValidation.sol contract.

In order to incentivize participation in HIPR, game players are awarded with HERC tokens as a reward. The Hercules team is working with the Edge Security wallet team, which is the same team behind the Airbitz wallet to ensure the maximum security for the Hercules wallets.

# HUMAN INITIATED PERFOMANCE REPORTING DATA FLOW



**(Figure 4): An illustration of HIPR Data Flow on the Hercules Platform**

# HERC Token Metrics



| | |
|---|---|
| Total tokens to be generated | 234,259,085 |
| Retained tokens | (58,564,771) |
| Shareholder/founder tokens | (35,138,863) |
| Total pre-launch sales as of Oct. 29 @ $0.20 | (12,246,806) |
| Total available for remaining pre-launch sales and crowdsale* | 128,308,645 |

* This remainder will continue to be sold at $0.20 per token until the anticipated launch of Hercules and the HERC token in late-October through our pre-launch sales. All that remains at launch will be offered in our crowdsale at $0.40 per token for up to 12 months after launch. Any tokens left unsold in the crowdsale twelve months after the beginning of the crowdsale will be destroyed.

# THE HERCULES CORE TEAM

## Executive Team



**ANTHEM BLANCHARD**
Chief Executive Officer

Anthem is the Co-Founder and CEO of Hercules. He also co-founded precious metals/fintech company Anthem Vault, Inc., and also serves as their CEO. He has hands-on fintech experience and comes from precious metals backgrounds. Anthem is the son of the legendary goldbug and precious metals pioneer, James U. Blanchard III, who helped restore Americans' right to own gold and also founded rare coin and bullion company, Blanchard & Company. Anthem served as Director of Strategic Development and Marketing with GoldMoney and helped develop and implement their current business model, overseeing marketing and product development efforts which resulted in an increase of total value held by the company from $1 million in 2002 to $368 million by 2008. Between 2010-2013 Anthem served as an independent director and member of the audit committee, compensation committee, and nominating committee at Pernix Therapeutics Holdings Inc. Anthem holds a Bachelor of Business Administration from Goizueta Business School at Emory University.



**CYNTHIA BLANCHARD**
President

Cynthia is the Co-Founder and President of Hercules. She is also the Co-Founder and President of the precious metals fintech company Anthem Vault, Inc., which has successfully been in business for over seven years. Prior to delving into the fintech and blockchain industry, Cynthia owned and operated Harry Max Music Publishing Company in Nashville, TN. and is an accomplished singer who has contributed background vocals on numerous country albums including by artists Reba McEntire and the late Mindy McCready. Cynthia is also the author of the novel titled Humanville which focuses on helping individuals overcome eating disorders. She helped start the Eating Disorders Coalition of Tennessee (EDCT), and has been a national public speaker on related issues. Cynthia holds Bachelor of Science and Masters in Arts Administration degrees from Oklahoma State University.



**LOGAN GOLEMA**
Chief Technology Officer

At 26, Logan been heralded as a Blockchain Developer and Educator, FinTech Innovator, and seen as highly skilled in object based coding and distributed networking both in enterprise and private applications. With a lifetime of coding experience Logan finds his place in Blockchain due to his incredibly early adoption of the technology. For years Logan has sought out jobs that pay directly in Bitcoin as well as has invited Bitwage to handle his payroll accounts. Day to day transactions from groceries to car insurance are done in Bitcoin with all personal and professional projects stemming from the perspective of a Digital Pioneer.



**GREY JABESI**
Chief Visual Officer

Grey is responsible for directing and managing the brand visuals of HERC. Prior to joining HERC, Grey worked for various companies in South Africa as a CGI Specialist in the Film and Animation industry. He later started Imojimotion, a studio which provided 3D rendering for Architects; Visual Effects; Motion Graphics, as well as, Web Development services. Growing up in Malawi, Africa in his early years, he encountered real life problems which he later realized could be solved by the Blockchain technology. He has since decided to dedicate and focus his efforts on getting involved in meaningful projects within the Blockchain space.



**PAUL AUBERT**
Senior Vice President & General Counsel

Paul has served as the sole Shareholder and General Counsel of a private law practice since June 2014. Prior to that, Paul served as General Counsel of Pernix Therapeutics Holdings, Inc., a Nasdaq-listed specialty pharmaceutical company. Before that, he was a Shareholder in the Corporate and Securities practice group at Winstead PC, a national law firm headquartered in Dallas, Texas, from 2007 to 2012. Paul also served as an attorney in the Corporate and Securities practice groups of several national and international law firms prior to joining Winstead in 2004, including at Andrews Kurth LLP, Weil, Gotshal & Manges LLP, and Jones Walker LLP. He holds a Juris Doctor and an M.B.A. from Tulane University in New Orleans, Louisiana and a B.A. in History from Louisiana State University - Baton Rouge.

## ADVISORY BOARD



**MICHAEL TERPIN**
Founder and Chairman of BitAngels

Michael has spent his career innovating in public relations and across technology platforms after exiting multiple startups as a co-founder. As head of Transform Group, he has led PR for leading blockchain projects including Augur, Bancor, Dash, Ethereum, Factom, Golem, Gnosis, Lisk, Qtum, SALT Lending and WAX. Michael also runs CoinAgenda, the leading conference series in Las Vegas connecting mainstream investors with blockchain and cryptocurrency investments



**BILL BARHYDT**
Founder and Chief Executive Officer of Abra

Bill's passion is information technology and how it can be used to improve people's lives. Prior to Abra, he co-founded Boom Financial, where he also serves as Chairman. He gave the first TED talk on Bitcoin in 2012, and serves as an advisor and mentor to Boost.VC, a Bitcoin-focused incubator fund. Bill won the Technology Pioneer Award from the World Economic Forum in 2000 for his work at WebSentric, the first online meeting service that required no software install, and has consulted to federal and international regulators on the impact of digital currencies and decentralized transaction systems. In addition to co-founding and advising multiple start-ups, including m-Via, Sennari, Plaxo and KnowNow, Bill worked for Goldman Sachs, NASA and the CIA.



**STEVEN DAKH**

Founder of Rubix Consulting and Co-Founder and Former CTO of Jaxx Steve's experience in the blockchain software development industry spans half a decade with his development and co-founding of Bitcoin wallet Kryptokit in December 2013, now known as Jaxx wallet. Steve is a founding member of Ethereum, which launched in January 2014. Steve went on to build the Rush Wallet in 2014. Steve joined Crypto Consortium (C4) advisory board in 2014 as well. Steve is a cofounder of non-profit Unsung that distributes leftover food to the hungry in late 2015 and launched in 2016. Steve began development of Smartwallet multi-currency app in mid 2017 with plans to release later in 2018. Steve is also an advisor for Aeternity, PO.ET, Polymath, U.CASH, AnthemGold, and Academy school of Blockchain (all in 2017), and Theta (in 2018).



**JOBY WEEKS**
Chief Marketer for BitClub Mining

As the Prime Minister of Atlantis and Founding Father of Liberland Joby Weeks has found himself in bitcoin since it began as well as has worked in digital currencies since before 2009. Finding himself at the helm of Liberty Dollar his project minted more than $100mm worth of gold rounds. Joby is known to be a defender of personal rights and the protector of peace across nations.



**ANDREW YASCHUK**
Vice President, Product Development for Factom Inc

Andrew has been building software since the late 90's. Andrew has helped build four companies; two have been sold, and the other two are still in operation. He is also a trusted advisor in the healthcare and block-chain community. He has acted as an adviser for Factom, Storj, and HealthNautica. Andrew also supported Bitcoin mining companies, in the early days, with ASIC mining hardware. He is active in his community and has served as a Healthcare Judge for the Dupage County Election Commission.



**DOMINIK ZYNIS WINGS**
Co-founder and Head of Communications at WINGS Foundation

Dominik is the former Head of Communications at Mastercoin (Omni) Foundation. He also serves as an advisor at DomRaider and MedicalChain.



**JEFF RAMSON**
Founder and Chief Executive Officer of PCG Advisory Group

Jeff Ramson is the Chief Executive Officer of PCG Advisory Group which he founded in 2008. He is well regarded as a business entrepreneur and innovator, with a proven track record of more than 25 years' experience on Wall Street, raising capital and providing strategic guidance for emerging public and private companies in various stages of development. Jeff's passion and understanding of transformative technologies and how they affect current and future business trends has informed his whole career. He is known as an innovator in the intelligent use of social media to raise awareness in the investment community and represented the first Reg A+ offering listed on the NYSE. He has been a student of, and an early participant in, the emerging blockchain and cryptocurrency sector for several years. Most recently, he established Proactive Capital Partners, LLC, a private investment firm focused on capital appreciation through investment in next generation technology opportunities. Jeff is a director of EV Blockchain Corp. and an advisor to CG Blockchain.

## BOARD OF DIRECTORS
CYNTHIA BLANCHARD and ANTHEM BLANCHARD - LISTED ABOVE



**PETER BUCKLEY**

Peter Buckley is a financial industry veteran focusing on capital markets, trading and financial technologies. Peter was an early-stage investor and Board Member in BATS Trading. He served as the Head of New Business for Brokertec; Managing Director and Head of N.A. Clearing and Professional Trading Groups at Newedge; and oversaw new business, strategy and investment opportunities at Tower Research LLC. In 2006, Peter founded Tower's London aliate and served as Spire Europe's CEO, expanding their footprint into emerging markets. Peter was selected by the CFTC to participate on the Technology Subcommittee on Automated and High Frequency Trading (TAC) in Washington DC. He is a graduate of Lehigh University and the Lawrenceville School and has consulted for Delta Strategy Group. Most recently, Peter invested in and has been advising Funding University LLC, a P2P student loan project financed by Jeff Bezos' Amazon Ventures.

# AnthemGold (AGLD)

## A CASE STUDY FOR THE HERCULES PLATFORM

AnthemGold is developing the AGLD, a token providing access to the company's gold-backed cryptocurrency. Hercules provides a solution to the AGLD problem of inconsistent and nonimmutable proof of the gold's purity, weight, existence, and location.

## Background of the precious metals industry

The precious metals industry has a standard of transparency and auditing (Proof of Verification) of the underlying assets that must be met for clients to use any vendor. Scientifically proven methods are used at each stage in the chain of custody to ensure that the purity and weight of the precious metals that are used by a gold bullion manufacturer are the same as the purity and weight of the bar when received by the consumer. The information gathered in these tests needs to be readily available to any clients who wish to validate the chain of custody their bar has gone through.

## AGLD

An AGLD is simply a unit of cryptocurrency that will be represented by one gram of pure gold. The grams will be stored in the form of one kilogram gold bars purchased from certified manufacturers and securely shipped to a private vault in Texas (referred to as the "bunker") managed by third party custodian. When received in the bunker, the bars will be tested and documented by a certified bunker custodian before being added to the vault. These bars will be regularly audited while they are being vaulted.

## Hercules improves the AGLD Currency

When a bar is ordered from a manufacturer and/or dealer, information concerning the bar that is being shipped will be entered into and stored by the Hercules software. This information will include the dealer, the manufacturer, the gross weight, the results of a composition assay that validates the fineness of the gold bar, and the bar's serial number.

When a bar is received at the bunker, it will be tested by a sonic gauge that sends a sound frequency through the bar at multiple points and measures the time it takes for the wave to pass through the bar to confirm density. This returns storable readings that can be used to confirm the purity of the bar. Existing identifiers such as manufacturer, dealer (if separate from manufacturer), gross weight, assay (Fineness), and serial number will be taken from the bar for documentation. Lastly, images of the bar from all sides will be cataloged to document the visual state of the bar as it enters the vault. The individual performing the test and documentation will have a unique identifier that is recorded with the bar upon entering the vault. Thus, the Hercules software will store the following information:

- Results of sonic bar tests in 3 locations
- Manufacturer
- Supplier
- Gross Weight
- Assay (Fineness)
- Serial Number on bar
- Certified Individual's Identifier
- 3 Documenting Images
- Spectrometer Readings in a .CSV format

In addition to the information entered when bars are delivered to the vault, a high definition controllable video of the vault will be available in the Hercules Digital Viewer and will cost HERC tokens to view.





**(Figures 5 and 6): An illustration of how AGLD works with HERC**

# <u>EXHIBIT</u>

# "F"

# To Follow . . .

# <u>INTERLOCUTORY APPEAL</u>

Initial Disclosures by Plaintiff's UCMK and Chad Koehn under Rule 26(a)

**SIGNED BY ATTORNEY:  LARRY GENE MICHEL #14067**

KENNEDY BERKLEY
119 West Iron, 7th Floor
P.O. Box 2567
Salina, KS  67402-2567
(785) 825-4674 [Telephone]
(785) 825-5936 [Fax]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHAD M. KOEHN, ET AL.** | ) | |
| **Plaintiffs** | ) | |
| **vs.** | ) | **Case No. 22-CV-04008-JWB-GEB** |
| | ) | |
| **MICHAEL NELSON** | ) | |
| **Defendant** | ) | |
| | ) | |

## PLAINTIFF'S INITIAL DISCLOSURES

Plaintiffs hereby unilaterally submits the following initial disclosures pursuant to Fed.R.Civ.P.

26(a)(1), and states that this submission had to be unilateral given the Defendants failure to

comply with the Court's non-disparagement ruling, failure to engage in a cost efficient

determination of this action, failure to jointly work on this initial disclosures based on Nelson's

non-cooperation, including that Nelson demanded Plaintiffs counsel set aside 18 hours to confer

on the 26(a) issues and placing an unreasonable and unconscionable burden of disclosure on the

Plaintiff including time, money and interference with ongoing business operations. Plaintiffs'

counsel attempted to explain to Mr. Nelson that a planning conference should take about an hour.

Counsel gave Mr. Nelson three hours of time yet that still was not enough time to complete the

conference because Mr. Nelson insisted on discussing matters outside the purview of the

conference, including disparaging Mr. Koehn and Mr. Brand, as well as arguing the merits of his position to counsel.

A.   **WITNESSES**

1.   Chad Koehn; Mr. Koehn has general knowledge regarding the claims made by Plaintiffs against Defendant;

2.   The following former or current employees of Plaintiffs have knowledge regarding Defendant's actions:

   i.   Ryan Kolzow;

   ii.  Kylee Kolzow;

   iii. Erica Jensen;

   iv.  Steven Plott;

   v.   Tresa Matney; and

   vi.  Other potential current and past employees to be disclosed as discovery proceeds.

3.   Defendant.

4.   Dale Takio. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the hacks and false IDs established by the Defendant while defaming the Plaintiff.

5.   Michael Moran. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Expertise involving the Defendants use or mis-use

of electronic devices in order to hack and falsely establish Ids for mis-use against the Plaintiff.

6.  Cynthia Blanchard. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626,  Knowledge as the Defendant's defamatory conduct against the Defendant.

7.  Anthem Blanchard. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct against the Defendant.

8.  Gil Gilliam. 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct and damages caused to the Plaintiff.

9.  Josh Gunter, 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626, Knowledge as to the Defendants defamatory conduct and damages caused to the Plaintiff.

10. Logan Golema, 501 E. Frank Phillips, Suite 102, Bartlesville OK, 74003, Office : 702-966-0626.

11. Any and all law enforcement and prosecutors who are either conducting investigations against the Defendant or are working on law enforcement causes of action against the Defendant.

12. Governmental entities that the Defendant has claimed to be working with in the form of a valid whistle blower action against the Plaintiff.

13. Any witnesses identified by Defendant in his initial disclosures.

3

14.    Any and all further witnesses learned of by and through the taking of discovery in this matter.

15.    Plaintiffs reserve the right to amend these disclosures.

**B.     EXHIBITS**

1.    Any and all documents and communications pertaining to any and all defamation and tortious interference by Defendant;

2.    Any and all documents pertaining to Defendant's criminal cases which may be relevant to Plaintiffs' causes of action;

3.    Plaintiffs' client records, to the extent relevant to demonstrate Defendant's actions;

4.    Defendant's criminal records and records of orders against him; and

5.    Documents listed by Defendant.

6.    Plaintiffs reserve the right to amend this Exhibit List.

**C.     DAMAGES**

Plaintiffs claim damages in excess of $75,000.00 for defamation by the Defendant. Plaintiffs also claim damages in excess of $75,000.000 against the Defendant for tortious interference with a business relationship, including but not limited to treble damages, costs and reasonable attorney fees. Plaintiffs further seek an injunction against the Defendant from committing further tortious acts.

4

**D.**      **INSURANCE AGREEMENT**

Not applicable to the Plaintiff.

RESPECTFULLY SUBMITTED,

   /s/ Larry G. Michel
Larry G. Michel          #014067
Chris J. Kellogg          #21651
KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, KS  67402-2567
(785) 825-4674
lmichel@kenberk.com
ckellogg@kenberk.com
ATTORNEYS FOR PLAINTIFFS

5

# EXHIBIT

# "G"

# To Follow . . .

## INTERLOCUTORY APPEAL

FINRA DISCIPLINARY POSTING REGARDING Plaintiff Chad Mitchell Koehn

# Disciplinary and Other FINRA Actions

## Firm Sanctioned, Individual Sanctioned

**E1 Asset Management, Inc. (**CRD #46872**, Jersey City, New Jersey) and Ron Yehuda Itin (**CRD #2344151**, Tenafly, New Jersey)**
October 18, 2022 – A Letter of Acceptance, Waiver and Consent (AWC) was issued in which the firm was censured, ordered to pay $37,629.82, plus prejudgment interest, in restitution to customers and required to certify that its written supervisory procedures (WSPs) and supervisory system are reasonably designed to achieve compliance with FINRA Rule 2121. FINRA imposed no fine against the firm after considering, among other things, the firm's revenues and financial resources, as well as its agreement to pay full restitution plus prejudgment interest to the affected customers. Itin was fined $5,000, suspended from association with any FINRA member in any principal capacity, with the exception of activities requiring registration as a Financial and Operations Principal (FINOP), for one month and required to attend and satisfactorily complete 20 hours of continuing education concerning supervisory responsibilities. Without admitting or denying the findings, the firm and Itin consented to the sanctions and to the entry of findings that they failed to reasonably supervise the fairness of mark-ups the firm charged to retail customers through a registered representative. The findings stated that the firm's WSPs, which Itin approved, designated Itin as the principal responsible for reviewing the reasonableness of mark-ups on customer trades. The WSPs identified factors relevant to that review, including the price and availability of the security and the expense of executing and filling the order. In practice, however, the firm and Itin reviewed mark-ups primarily to determine whether they exceeded the firm percent guideline. The firm and Itin did not reasonably consider the factors listed in the firm's WSPs, such as the type, availability and price of the security being sold and the firm's expense in executing and filling the order. As a result, the firm and Itin failed to identify that the firm charged mark-ups that were not fair and reasonable on corporate bond transactions, when trading for its own account. For such transactions, the firm charged mark-ups of 3.75 percent even though the underlying security was widely available, and the firm incurred minimal expenses executing and filling the customer orders. Moreover, the firm and Itin reviewed monthly reports from FINRA's Trade Reporting and Compliance Engine (TRACE), which compared mark-ups charged by the firm on particular trades with mark-ups charged by other broker-dealers for similar products. Nonetheless, the firm and Itin did not take any steps to investigate whether the mark-ups charged by the firm were fair or reasonable. Collectively, these mark-ups caused customers to pay $37,629.82 in excessive fees.

The suspension is in effect from November 21, 2022, through December 20, 2022. (**FINRA Case #2018059121201**)

## Reported for December 2022

FINRA has taken disciplinary actions against the following firms and individuals for violations of FINRA rules; federal securities laws, rules and regulations; and the rules of the Municipal Securities Rulemaking Board (MSRB).

### Search for FINRA Disciplinary Actions

All formal disciplinary actions are made available through a publicly accessible online search tool called FINRA Disciplinary Actions Online shortly after they are finalized.

Visit **www.finra.org/ disciplinaryactions** to search for cases using key words or phrases, specified date ranges or other criteria.



## December 2022

## Firms Fined

**UBS Securities LLC (CRD #7654, New York, New York)**
October 3, 2022 – An AWC was issued in which the firm was censured and fined a total of $520,000, of which $173,334 is payable to FINRA. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it included securities positions of a foreign affiliate when calculating the net positions of independent trading units. The findings stated that the firm organized the accounts used by its traders into aggregation units (AGUs) based on trading strategy and without regard to whether the accounts were owned by a foreign affiliate. The firm automatically netted the securities positions in the trading accounts of each AGU—including the foreign affiliate accounts—to calculate the AGU net position, which it then used to determine whether the AGU's sale orders should be marked long or short. However, the foreign affiliate's positions should not have been included in the firm's AGU net positions because it was not subject to examination by the Securities and Exchange Commission (SEC). As a result, the firm did not accurately calculate the net positions of, or assess long and short sales by, four AGUs. The findings also stated that the firm's supervisory system and written procedures were not reasonably designed to achieve compliance with Rule 200(f) of Regulation SHO of the Securities Exchange Act of 1934 (Exchange Act). The firm's supervisory system, including its written procedures, failed to require the exclusion of foreign affiliate accounts used by the firm's traders from the net positions of its AGUs. The firm determined, based on prior FINRA disciplinary actions involving improper inclusion of certain affiliate accounts in AGUs' net positions, that it needed to remove the foreign affiliate accounts from its AGUs. The firm failed, however, to take reasonable steps to implement these changes in a timely manner. The firm began to work on a remediation plan for removing affiliate accounts from its AGUs' net positions. However, the firm improperly added another foreign affiliate account to its AGUs. Only after FINRA raised the issue directly with the firm did it remove the foreign affiliate accounts from its AGUs' net positions. The firm removed the accounts over the course of eight months. The firm provided AGU supervisors with separate monthly reports listing AGU accounts and non-AGU foreign affiliate accounts and instructed them to review the reports as part of their monthly AGU reviews. However, the firm failed to update its written procedures to prohibit the inclusion of foreign affiliate accounts in the net positions of its AGUs and to require supervisors to verify that only firm accounts were included in AGUs. (FINRA Case #2017053779201)

**Scotia Capital (USA) Inc. (CRD #2739, New York, New York)**
October 12, 2022 – An AWC was issued in which the firm was censured and fined $300,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it overreported its short interest positions.

The findings stated that the firm erroneously included non-reportable short positions reflected in omnibus accounts in the firm's short interest reports. The short positions in these accounts were not reportable because they did not result from "short sales" as defined in Rule 200(a) of Regulation SHO of the Exchange Act and were not transactions that were marked long due to the firm's or the customer's net long position at the time of the transaction. The findings also stated that the firm failed to have a reasonably designed supervisory system for accurate short interest reports. The firm's supervisory system did not include a process to determine whether its short interest report included non-reportable short positions and did not have a reasonable reconciliation process to identify potential inaccurate reporting. The firm has since implemented new processes to its short interest reporting and supervision to remediate these issues. (FINRA Case #2019061945201)

**Dealerweb Inc. (CRD #19662, Jersey City, New Jersey)**
October 17, 2022 – An AWC was issued in which the firm was censured and fined $100,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it inaccurately reported transactions in TRACE-eligible securities to TRACE without the required "No Remuneration" (NR) indicator. The findings stated that the firm operated an alternative trading system (ATS) and a voice interdealer trading desk that its customers paid a non-transaction-based subscription fee to trade on. This meant that the price of the transactions on the ATS or trading desk did not include a commission, mark-up, or mark-down. Because the majority of the firm's subscribers were other broker-dealers, most of the firm's transactions were subject to the inter-dealer exception to the NR indicator requirement. In transactions with non-broker-dealer (e.g., bank) customers, however, the firm was required, but failed, to report the transactions using the NR indicator. The firm was unaware of the NR indicator reporting issues until FINRA notified it. The findings also stated that the firm's supervisory system was not reasonably designed to achieve compliance with its transaction reporting obligations for TRACE-eligible securities. The firm failed to establish and maintain a supervisory system, including WSPs, reasonably designed to achieve compliance with FINRA Rule 6730(d). Although the firm performed supervisory reviews of its TRACE reporting to identify late reported transactions, its supervision was not reasonable because it did not have a process to check the accuracy of transaction information reported, including the NR indicator and other modifiers and indicators required by FINRA. Ultimately, the firm implemented a new process that included a daily review for accurate reporting of transaction information, including the NR indicator. Subsequently, the firm updated its WSPs to reflect that review. (FINRA Case #2020067548401)

December 2022

**Janney Montgomery Scott LLC (CRD #463, Philadelphia, Pennsylvania)**
October 19, 2022 – An AWC was issued in which the firm was censured, fined $100,000 and ordered to pay $145,019, plus prejudgment interest, in restitution to customers. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it failed to reasonably supervise registered representatives who recommended that their customers invest an unsuitably high percentage of their assets in energy-sector securities. The findings stated that the representatives recommended that customers purchase additional energy-sector securities even after their accounts were already concentrated in that sector. Because these investments focused on the energy sector, their value was sensitive to shifts in oil and gas prices and subjected investors with concentrated positions to a high risk of loss if oil and gas prices declined. The firm used automated alerts to identify trading activity that warranted further review by the firm, including alerts that identified accounts whose holdings were concentrated in a particular market sector. Although trades recommended in the customers' accounts generated many such alerts, the firm failed to take reasonable steps to understand the potential risks and rewards associated with these recommendations or to determine whether the recommendations were suitable in light of these customers' investment profiles. Moreover, the firm did not prevent the representatives from recommending that the customers further concentrate their accounts in securities in the energy sector. As a result, the customers suffered realized losses on certain positions even after accounting for the income the investments generated. The firm has already paid restitution to eight of the 11 customers who suffered losses. The amount of ordered restitution reflects the losses incurred by the customers to whom the firm has not yet paid restitution. (FINRA Case #2016051156903)

**Raymond James & Associates, Inc. (CRD #705, St. Petersburg, Florida) and Raymond James Financial Services, Inc. (CRD #6694, St. Petersburg, Florida)**
October 20, 2022 – An AWC was issued in which Raymond James & Associates, Inc. was censured and fined $300,000 and Raymond James Financial Services, Inc. (RJFS) was censured, fined $800,000, ordered to pay $48,574.79, plus interest, in restitution to customers and required to certify that it has completed its review of its policies, procedures, and systems regarding monitoring of electronic communications and they are reasonably designed to achieve compliance with applicable securities laws, regulations and FINRA rules. Without admitting or denying the findings, the firms consented to the sanctions and to the entry of findings that they failed to have a qualified and registered principal authorize changes to the account name or designation on equity orders. The findings stated that the unapproved changes resulted in customer losses for a customer in the approximate amount of $100,000. A former registered representative at RJFS changed the account designation on certain orders from (or to) the customer to (or from) his own account without principal review. After its self-report, the firms hired a third-party consultant to

conduct a backward-looking review of transactions over a multi-year period. That review resulted in RJFS identifying, and subsequently reimbursing, the losses identified herein. The firms have since designated registered principals on the trade desks to review and authorize changes to account name and designation on orders. The findings also stated that RJFS failed to reasonably supervise registered representatives who engaged in a scheme to overcharge commissions to institutional customers that they serviced as part of a team. The representatives overcharged institutional customers by calling the trading desk after placing orders and instructing the trading desk to increase the commission being charged prior to execution and/or while the orders were being worked by the desk. To conceal their misconduct from their customers, the representatives created their own trade confirmations that they then emailed to customers. These confirmations contained misleading information, including understating commissions. In total, the representatives overcharged customers approximately $2.4 million. Most of the customers were previously paid back and additional restitution is being ordered in this AWC. The scheme ended when RJFS flagged and reviewed an unusually large order for one of the customers. Furthermore, RJFS' email surveillance system electronically flagged for manual review hundreds of emails sent to customers by the representatives that contained the misleading trade confirmations as attachments. RJFS' communications surveillance team reviewed these flagged emails but failed to examine the attached confirmations. Had the team done so, it would have discovered that the representatives were misrepresenting commissions charged on trades, as well as misstating the share price. In addition, during a branch inspection, RJFS compliance staff identified and escalated the representative-created confirmations, but no one at the firm checked the confirmations for accuracy. (**FINRA Case #2018058633501**)

**BNP Paribas Securities Corp. (CRD #15794, New York, New York)**
October 24, 2022 – An AWC was issued in which the firm was censured and fined $375,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it over-reported transactions in U.S. Treasury securities to TRACE. The findings stated that the over-reporting occurred because the firm incorrectly relied upon a data field that did not contain full and complete firm affiliated entity information. As a result, certain internal trades within the firm and transfers between affiliates' portfolios where no change in beneficial ownership occurred were erroneously reported to TRACE. The findings also stated that the firm incorrectly appended the ".S" modifier, which is applied when a transaction was part of a series of transactions and may not have been priced based on the current market, to Treasury transactions it reported to TRACE. The inaccurate reporting resulted because the firm's reporting logic did not interpret the data correctly. The findings also included that the firm's supervisory system was not reasonably designed to achieve compliance with FINRA rules regarding

## December 2022

the accuracy of TRACE reporting. The firm had no procedures designed to achieve compliance with TRACE reporting requirements concerning the over-reporting of transactions with affiliates or the accurate use of the ".S" modifier. None of the reviews or exception reports used by the firm addressed either over-reporting of transactions to affiliates or the accurate use of the ".S" modifier. Accordingly, the firm's supervisory system was not reasonably designed to achieve compliance with its transaction reporting obligations for TRACE-eligible treasury transactions. (**FINRA Case #2019063673101**)

**RBC Capital Markets, LLC (CRD #31194, New York, New York)**
October 31, 2022 – An AWC was issued in which the firm was censured and fined $360,000. Without admitting or denying the findings, the firm consented to the sanctions and to the entry of findings that it failed to have in place a supervisory system, including WSPs, reasonably designed to timely review paper statements from employees' outside brokerage accounts. The findings stated that the firm had no prescribed timeframe to track, reconcile and review statements. Due to the manual nature of the paper statement review process, personnel turnover, and outdated technology systems, the firm had a backlog of approximately 8,950 unreviewed account statements. In addition, the firm manually tracked receipt of paper statements, had no system in place to notify the firm or employees that statements were missing, and had no procedure for following up on missing statements. In some instances, the firm did not receive paper statements for review. Furthermore, the firm's process to review paper statements was not reasonably designed. As a result, the firm failed to timely or reasonably monitor thousands of employee outside brokerage account statements for compliance with the firm's trading restrictions, including pre-clearance, holding period, and watch and restricted list policies. (**FINRA Case #2020067000501**)

## Individuals Barred

**Timothy Patrick Higgins (CRD #2282547, Bethpage, New York)**
October 17, 2022 – An Office of Hearing Officers (OHO) decision became final in which Higgins was barred from association with any FINRA member in all capacities. The sanction was based on the findings that Higgins failed to appear and provide testimony requested by FINRA in connection with an investigation that it initiated after finding evidence indicating that Higgins may have traded excessively in customer accounts. The findings stated that the information FINRA sought to elicit from Higgins was important and necessary to the investigation and his failure to testify stymied the investigation. (**FINRA Case #2018056490303**)

**Mitchell Scott Biernick (CRD #2690172, East Northport, New York)**
October 18, 2022 – An AWC was issued in which Biernick was barred from
association with any FINRA member in all capacities. Without admitting or denying
the findings, Biernick consented to the sanction and to the entry of findings that he
refused to appear for on-the-record testimony requested by FINRA in connection
with its investigation into the suitability of certain securities transactions he
recommended to his customers while he was associated with his member firm.
(FINRA Case #2019060645002)

**Richard Marion Blosser (CRD #1676712, Thousand Oaks, California)**
October 19, 2022 – An AWC was issued in which Blosser was barred from association
with any FINRA member in all capacities. Without admitting or denying the findings,
Blosser consented to the sanction and to the entry of findings that he refused to
appear for on-the-record testimony requested by FINRA in connection with its
investigation into his trading in customer accounts, including purchasing and selling
preferred stock and closed-end funds, and his member firm's supervision of such
activity. (FINRA Case #2019061442701)

**Carlos Leston (CRD #3021614, Maywood, New Jersey)**
October 19, 2022 – An AWC was issued in which Leston was barred from association
with any FINRA member in all capacities. Without admitting or denying the findings,
Leston consented to the sanction and to the entry of findings that he refused to
provide information and documents requested by FINRA. The findings stated that
this matter originated from a tip to FINRA. (FINRA Case #2022076103601)

**Keith Todd Ashley (CRD #4096004, Allen, Texas)**
October 21, 2022 – An Order Accepting Offer of Settlement was issued in which
Ashley was barred from association with any FINRA member in all capacities. Without
admitting or denying the allegations, Ashley consented to the sanction and to the
entry of findings that he failed to respond to FINRA's requests for information made
in connection with its investigation into, among other things, the circumstances of
his termination from his member firm. The findings stated that Ashley's member
firm filed a Uniform Termination Notice for Securities Industry Registration (Form U5)
stating that it had terminated him for cause. Subsequently, Ashley was indicted by a
federal grand jury on six counts of wire fraud, and he was arrested and detained in
the Bowie County Correctional Center in Texarkana, Texas pending trial. Thereafter,
FINRA began investigating the allegations set forth in the federal indictment. (FINRA
Case #2020068470002)

## Individuals Suspended

**Stacee Lei Bradley (CRD #7320122, Queensbury, New York)**
October 4, 2022 – An AWC was issued in which Bradley was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Bradley consented to the sanctions and to the entry of findings that she willfully failed to disclose on her Uniform Application for Securities Industry Registration or Transfer (Form U4) that she had been charged with felonies. The findings stated that Bradley was charged with two felonies for grand larceny and falsifying business records. After learning of the charges, Bradley filed a Form U4 for the purpose of registering with FINRA through an association with her member firm, in which she falsely responded to a question regarding whether she had ever been charged with any felony. As a result, Bradley filed inaccurate and misleading information with FINRA. Bradley did not disclose the felony charges until several years later.

The suspension is in effect from October 17, 2022, through April 16, 2023. (**FINRA Case #2021072713001**)

**Robert Paul Barberis (CRD #1772762, Scotia, New York)**
October 6, 2022 – An AWC was issued in which Barberis was fined $2,500 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Barberis consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by changing the representative code for trades, which caused the trade confirmations to show an inaccurate representative code. The findings stated that Barberis entered into an agreement through which he agreed to service certain customer accounts, including executing trades for those accounts, under joint representative codes that he shared with a retired representative. The agreement set forth what percentages of the commissions Barberis and the retired representative would earn on trades placed using the joint representative codes. Although the firm's system correctly prepopulated the trades with the applicable joint representative codes, Barberis entered the transactions under his personal representative code. Barberis negligently failed to verify whether the transactions at issue were subject to the joint production agreement. As a result, the firm's trade confirmations inaccurately reflected Barberis' personal representative code instead of the joint representative code that Barberis shared with the retired representative. Barberis' actions resulted in his receiving higher commissions from the trades than what he was entitled to receive pursuant to the agreement. The firm has since reimbursed the retired representative.

The suspension was in effect from November 7, 2022, through December 6, 2022. (**FINRA Case #2021071531701**)

**Charles Vincent Malico (**CRD #1507282**, Centerport, New York)**
October 11, 2022 – An AWC was issued in which Malico was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Malico is not required to pay restitution to the customer because his member firm has already compensated the customer in connection with the settlement of an arbitration claim filed by the customer. Without admitting or denying the findings, Malico consented to the sanctions and to the entry of findings that he willfully violated the Best Interest Obligation under Rule 15l-1 of the Exchange Act (Reg BI) by recommending a series of transactions in a retail customer's account that was excessive in light of the customer's investment profile. The findings stated that in doing so, Malico placed his and his firm's interests ahead of the interests of the customer. The trades that Malico recommended in the customer's account resulted in an annualized cost-to-equity ratio exceeding 158 percent—meaning that the customer's account would have had to grow by more than 158 percent annually just to break even. Malico's recommendations caused the customer to pay more than $54,000 in commissions and other trading costs and made it virtually impossible for the customer to realize a profit. In fact, the customer lost more than $17,500 as a result of Malico's recommendations.

The suspension is in effect from October 17, 2022, through April 16, 2023. (**FINRA Case #2021069405501**)

**Amit Kumar Bhatia (**CRD #5305020**, Laredo, Texas)**
October 12, 2022 – An AWC was issued in which Bhatia was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Bhatia consented to the sanctions and to the entry of findings that he executed and issued purported letters of credit and an amendment for each of these purported letters of credit for a customer, totaling approximately $3 million in credit, without his member firm's knowledge or authorization. The findings stated that the customer, a former senior executive of the firm's investment banking division, asked Bhatia to sign the letters of credit in support of his business activities. The customer told Bhatia that he could sign the documents in his capacity as senior vice president in the investment banking division. However, the firm did not provide letters of credit to firm customers and Bhatia never confirmed with the firm that he had its authorization to sign letters of credit on its behalf. The customer provided these letters of credit and amendments to a lender. When the firm discovered the unauthorized letters of credit, it advised the customer that the letters of credit he had provided to the lender were not valid. The firm was never required to meet any obligations under the purported letters of credit. Bhatia did not receive any compensation in exchange for signing the purported letters of credit.

The suspension is in effect from October 17, 2022, through January 16, 2023. (**FINRA Case #2020068346501**)

**Steven Albert Bellino (CRD #1278531, Huntington Station, New York)**
October 13, 2022 – An AWC was issued in which Bellino was assessed a deferred fine of $7,500 and suspended from association with any FINRA member in all capacities for 14 months. Without admitting or denying the findings, Bellino consented to the sanctions and to the entry of findings that he participated in a private securities transaction without providing prior written notice to, and receiving approval from, his member firm. The findings stated that Bellino solicited a family member to invest $750,000 in a privately held company with which he was affiliated in exchange for a 50 percent ownership interest. In connection with this investment, Bellino met with the company's sole owner, a customer at the firm, on behalf of the family member and provided information to the family member about the company, including advising the family member on the amount of money to invest and the ownership interest that the family member would receive in exchange for his investment. Bellino facilitated the investment by effectuating wire transfers totaling $750,000 from the family member to the company to purchase 50 percent ownership shares in the company. Bellino did not notify or receive prior written approval from the firm to participate in the family member's investment. The findings also stated the Bellino engaged in an outside business activity (OBA) without providing prior written notice to, or seeking approval from, his firm prior to doing so. Bellino operated the company with its owner by opening commodities trading accounts to conduct trades, providing trading and financial consulting services, and effectuating trades in gold futures and physical gold investments, commodities, and foreign currencies on behalf of the company. Bellino also traveled to metal refineries on behalf of the company to establish trading relationships for which he received expense reimbursement and $10,000 in compensation from the company. In addition, Bellino falsely attested on an annual compliance questionnaire that his previous OBA disclosures submitted to the firm, which stated that he did not participate in any OBAs, were accurate.

The suspension is in effect from October 17, 2022, through December 16, 2023. (FINRA Case #2020068564101)

**Efrain Balderrama Trujillo (CRD #3106482, West Hills, California)**
October 14, 2022 – An AWC was issued in which Trujillo was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for eight months. Without admitting or denying the findings, Trujillo consented to the sanctions and to the entry of findings that he borrowed approximately $335,000 from customers of his member firm without providing prior written notice to, or obtaining written approval from, the firm. The findings stated that the customers were retail customers who were not immediate family members of Trujillo or in the business of lending money. The amounts of the loans ranged from $5,000 to $50,000 and Trujillo primarily used the funds to pay for personal expenses. Although Trujillo

signed promissory notes memorializing the terms, including repayment schedules, for seven of the 15 loans, he did not provide the customers with promissory notes or repayment schedules for the remaining loans. To date, Trujillo has repaid nine of the loans and he is continuing to repay the remaining loans. In addition, Trujillo falsely affirmed on compliance questionnaires that he had never received a loan from his customers.

The suspension is in effect from October 17, 2022, through June 16, 2023. (FINRA Case #2021072406801)

**Terry Tzagarakis (CRD #2796055, Bay Ridge, New York)**
October 14, 2022 – An AWC was issued in which Tzagarakis was assessed a deferred fine of $10,000, suspended from association with any FINRA member in all capacities for 12 months and ordered to pay $246,780, plus interest, in deferred restitution to customers. Without admitting or denying the findings, Tzagarakis consented to the sanctions and to the entry of findings that he excessively traded in customer accounts. The findings stated that Tzagarakis engaged in quantitatively unsuitable trading. Tzagarakis recommended high frequency trading in the customer accounts and his customers routinely followed his recommendations. As a result, Tzagarakis exercised de facto control over the customers' accounts. Tzagarakis' trading resulted in high turnover rates ranging from 17.3 to 33.4, and cost-to-equity ratios ranging from 67 percent to 175 percent. As a result of Tzagarakis' excessive trading, the customers suffered collective realized losses of $842,240, while paying total trading costs of $278,964, including commissions of $246,780.

The suspension is in effect from October 17, 2022, through October 16, 2023. (FINRA Case #2018056490305)

**Mihir Jaimini Patel (CRD #5000904, Pittstown, New Jersey)**
October 17, 2022 – An AWC was issued in which Patel was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for four months. Without admitting or denying the findings, Patel consented to the sanctions and to the entry of findings that he inaccurately recorded (primarily by failing to update) daily marks on corporate bonds in his proprietary trading book, thereby overstating the value of his portfolio ultimately by more than $2.6 million, and as a result, caused his member firm to maintain inaccurate books and records. The findings stated that Patel was responsible for managing a trading book with a nominal value of approximately $20 million. As part of his duties, Patel was responsible for accurately marking to market each of the corporate bonds in his trading book on a daily basis. Volatile market conditions contributed to a decline in the value of various positions in Patel's book, particularly certain short positions in the energy sector. At that time, Patel largely stopped updating his

marks on certain bonds to accurately reflect current fair market values and, to a lesser extent, he updated his marks at incorrect valuations. Patel's discrepant marks generally undervalued the current fair market valuations of bonds he was short and overvalued the current fair market valuations of bonds he was long, at times substantially understating his trading losses on short bond positions by hundreds of thousands of dollars. Patel caused the firm to incorrectly compute its net capital and thus it filed inaccurate monthly Financial and Operational Combined Uniform Single (FOCUS) reports. Patel obtained no renumeration or other financial gain as a result of the inaccurate marks.

The suspension is in effect from October 17, 2022, through February 16, 2023. (FINRA Case #2020068495401)

**Robert Shane Sevcik (CRD #5597558, Medford, Oregon)**
October 18, 2022 – An AWC was issued in which Sevcik was fined $2,500 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Sevcik consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by changing the representative code for trades, which caused the trade confirmations to show an inaccurate representative code. The findings stated that Sevcik entered into an agreement with a retired representative through which he agreed to service certain customer accounts, including executing trades for those accounts, under a joint representative code that he shared with the retired representative. Sevcik also entered into a separate agreement with another retired representative through which he agreed to service additional customer accounts, including executing trades for those accounts, under a joint representative code that he shared with the other retired representative. Each agreement set forth what percentages of the commissions each representative would earn on trades placed using the applicable joint representative code. Although the firm's system correctly prepopulated the trades with the applicable joint representative codes, Sevcik entered the transactions under different representative codes through which he received a higher percentage of commissions than what he was entitled to receive pursuant to the agreements. Sevcik negligently failed to verify whether the transactions at issue were subject to his agreements with the retired representatives. As a result, the firm's trade confirmations inaccurately reflected Sevcik's personal representative code or another representative code instead of the joint representative codes that Sevcik shared with the retired representatives. The firm has since reimbursed the retired representatives.

The suspension was in effect from November 7, 2022, through December 6, 2022. (FINRA Case #2021072096101)

**Chad Mitchell Koehn (CRD #2216169, Salina, Kansas)**
October 21, 2022 – An AWC was issued in which Koehn was assessed a deferred fine of $10,000 and suspended from association with any FINRA member in all capacities for one year. Without admitting or denying the findings, Koehn consented to the sanctions and to the entry of findings that he participated in private securities transactions without providing written notice to, or receiving prior approval from, his member firm. The findings stated that these transactions involved investments by at least 59 individuals in a company that purported to own software development and blockchain technology businesses. Koehn discussed the private placement offering of the company's common stock with the individuals, told them that he intended to invest in the company's private placement, introduced the individuals to the company's founder, and invited the individuals to meetings that Koehn hosted, where the founder delivered presentations regarding the company's business and the private placement. Subsequently, the individuals, approximately 34 of whom were firm customers, invested approximately $1,475,000 in the company's stock. Koehn did not receive selling compensation.

The suspension is in effect from November 7, 2022, through November 6, 2023. (FINRA Case #2021069470101)

**Stephen James Sullivan (CRD #3123249, Massapequa Park, New York)**
October 21, 2022 – An AWC was issued in which Sullivan was fined $10,000, suspended from association with any FINRA member in all capacities for nine months and ordered to pay $49,696.46, plus interest, in restitution to customers. Without admitting or denying the findings, Sullivan consented to the sanctions and to the entry of findings that he engaged in quantitatively unsuitable trading in customer accounts. The findings stated that Sullivan recommended a pattern of high-cost, high-frequency, in-and-out trading in customers' accounts. Sullivan's customers routinely followed his recommendations and, as a result, he exercised de facto control over the customers' accounts. Sullivan's trading resulted in annualized turnover rates ranging from 12.93 to 30.4 and cost-to-equity ratios ranging from 42.61 percent to 135.11 percent. As a result, the customers suffered collective realized losses of $72,476, while paying total trading costs of $49,696, including commissions of $39,996.

The suspension is in effect from November 7, 2022, through August 6, 2023. (FINRA Case #2019061952601)

**Deborah Alonso (CRD #7376473, Miami, Florida)**
October 24, 2022 – An AWC was issued in which Alonso was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for 18 months. Without admitting or denying the findings, Alonso consented to the

sanctions and to the entry of findings that she had access to unauthorized materials while taking the General Securities Representative (Series 7) examination. The findings stated that prior to the examination, Alonso attested that she read and would abide by the Rules of Conduct for representative and principal examinations, which, among other things, require candidates to store all personal items in the locker provided by the test vendor and prohibit accessing, using, or attempting to use any personal items, including notes or study materials, during the examination. However, during an unscheduled break, Alonso had access to study materials that she left in the restroom prior to taking the examination.

The suspension is in effect from November 7, 2022, through May 6, 2024. (FINRA Case #2021073484401)

**Dennis David Karjala (CRD #5918770, Gig Harbor, Washington)**
October 24, 2022 – An AWC was issued in which Karjala was assessed a deferred fine of $10,000 and suspended from association with any FINRA member in all capacities for three months. Without admitting or denying the findings, Karjala consented to the sanctions and to the entry of findings that he provided a guarantee against loss to a customer of his member firm. The findings stated that Karjala's customer made an inquiry via text message about a mutual fund investment Karjala had recommended. In his response, which Karjala sent to the customer via text message using his personal cell phone, he stated that he would give the customer money to guarantee against any future losses in the investment. The findings also stated that Karjala sent the customer text messages that violated the content standards for registered representatives' communications with the public. Karjala stated that a mutual fund in which the customer invested charged only an upfront fee, rather than any additional fees, even though the mutual fund charged ongoing fees. Karjala also stated that the customer already lost 30 percent by holding cash, without providing a basis for calculation. In addition, Karjala stated that he was certain the customer would make plenty of money before retirement and that the customer's investment should double. These statements were false, exaggerated, unwarranted, promissory and/or misleading. The findings also included that Karjala caused his firm to maintain incomplete books and records. Karjala exchanged text messages related to securities business with the customer using his personal cell phone and outside of any firm-approved application. Karjala did not provide copies of these communications to the firm. As a result, the firm did not capture or preserve these messages.

The suspension is in effect from November 7, 2022, through February 6, 2023. (FINRA Case #2021072708801)

**Robert Louis Takacs (**CRD #2954611**, Johns Creek, Georgia)**
October 24, 2022 – An AWC was issued in which Takacs was fined $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Takacs consented to the sanctions and to the entry of findings that he caused his member firm to maintain inaccurate books and records by falsifying the representative code for trades in the firm's order entry system, causing the firm's trade confirmations to show an inaccurate representative code. The findings stated that Takacs entered into agreements through which he agreed to service certain customer accounts, including executing trades for those accounts, under joint representative codes that he shared with another registered representative, a senior member of his team. Each agreement set forth the percentages of the commissions that each representative would earn on trades placed using the applicable joint representative code. Although the firm's system correctly prepopulated the trades with the applicable joint representative code, Takacs changed the code for the trades to his personal representative code or another joint representative code. As a result, the firm's trade confirmations for the trades reflected an inaccurate representative code and Takacs received a higher percentage of commissions than what he was entitled to receive pursuant to the joint production agreements. Takacs did not ask the other representative whether he could change the representative code on the trades at issue prior to each trade. Rather, Takacs mistakenly believed that the other representative had previously agreed that he could change the representative codes so that Takacs would receive higher percentages of commissions than what was set forth in the joint production agreements. The firm has since paid restitution of approximately $63,000 to the other representative, which is the approximate amount of additional commissions Takacs received as a result of changing the representative code on the trades.

The suspension is in effect from November 21, 2022, through May 20, 2023. (FINRA Case #2020065354801)

**Heather S. Skipper (**CRD #2126799**, Kenhorst, Pennsylvania)**
October 25, 2022 – An AWC was issued in which Skipper was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for six months. Without admitting or denying the findings, Skipper consented to the sanctions and to the entry of findings that she forged the electronic signature of her supervisor on commission adjustment letters, reflecting changes to representative codes on customers' annuity accounts, by either copying and pasting the supervisor's electronic signature or signing the supervisor's name electronically. The findings stated that Skipper then caused the letters to be transmitted to the annuity carriers. The supervisor did not give Skipper prior permission to sign their name. In addition, Skipper forged the electronic signature of another supervisor on an internal document used to verify customer information. A customer had failed to

provide certain information on a form designating the beneficiary of the customer's individual retirement account (IRA) at Skipper's member firm. After obtaining the missing information from the customer, Skipper completed a Document Verification Form that the firm required to be signed by a qualified supervisor. Rather than obtaining a supervisor's signature, Skipper affixed a scanned, electronic copy of the other supervisor's signature on the form and submitted it to the firm for processing. The firm rejected the form from processing because Skipper had neglected to sign her name to the form as the submitter. The other supervisor did not give Skipper prior permission to sign their name.

The suspension is in effect from November 7, 2022, through May 6, 2023. (FINRA Case #2021073064901)

**Trent J. Davis (**CRD #5523922**, Lehi, Utah)**
October 26, 2022 – An AWC was issued in which Davis was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for four months. Without admitting or denying the findings, Davis consented to the sanctions and to the entry of findings that he forged documents by cutting and pasting customer signatures from documents previously signed by those customers. The findings stated that although Davis' customers did not give prior permission for the use of their signatures, they authorized the activity set forth on the forms in question. The findings also stated that by forging the documents, Davis caused his member firm to maintain inaccurate books and records.

The suspension is in effect from November 7, 2022, through March 6, 2023. (FINRA Case #2021071333401)

**Teresa Watkins Douberly (**CRD #2477566**, North Lauderdale, Florida)**
October 26, 2022 – An AWC was issued in which Douberly was assessed a deferred fine of $5,000, suspended from association with any FINRA member in any principal capacity for four months and required to attend and satisfactorily complete 20 hours of continuing education concerning supervisory responsibilities. Without admitting or denying the findings, Douberly consented to the sanctions and to the entry of findings that she failed to reasonably supervise recommendations to purchase variable interest rate structured products (VRSPs). The findings stated that Douberly was aware that registered representatives recommended VRSPs, including steepeners, to customers. Nonetheless, Douberly, as the designated principal responsible for supervising the representatives, did not take any steps to confirm whether the recommendations were suitable, such as reviewing the customers' investment objectives and risk tolerances or speaking with the customers to confirm they understood the risks of VRSPs. Nor did Douberly complete an attestation form certifying that she reviewed the recommendations and confirmed they were suitable in light of the customers' risk tolerances and investment objectives. In fact,

the recommendations were not suitable for the customers given their investment objectives and risk tolerances. The customers suffered significant realized losses as a result of their VRSP positions, even after accounting for the income they earned from the investments.

The suspension is in effect from November 7, 2022, through March 6, 2023. (**FINRA Case #2020066723301**)

**Nigel Ronald James (CRD #4490687, Huntington, New York)**
October 26, 2022 – An AWC was issued in which James was fined $5,000 and suspended from association with any FINRA member in all capacities for six months. James is not required to pay restitution because his member firm has agreed to pay as restitution the commissions and other fees charged to customers as a result of his unsuitable securities recommendations. Without admitting or denying the findings, James consented to the sanctions and to the entry of findings that he engaged in excessive and unsuitable trading in customer accounts. The findings stated that the trades that James recommended resulted in annual cost-to-equity ratios ranging from more than 21 percent to more than 45 percent and annual turnover rates ranging from nearly six to more than 14. As a result, the customers collectively had losses in their accounts of approximately $52,000 and paid $77,933.24 in commissions and fees based on the trades James recommended. James' recommendations were excessive and unsuitable in light of the customers' investment profiles.

The suspension is in effect from November 21, 2022, through May 20, 2023. (**FINRA Case #2019063821608**)

**Penny S. Morgan (CRD #2153652, Topeka, Kansas)**
October 28, 2022 – An AWC was issued in which Morgan was assessed a deferred fine of $5,000 and suspended from association with any FINRA member in all capacities for one month. Without admitting or denying the findings, Morgan consented to the sanctions and to the entry of findings that she engaged in OBAs that were outside the scope of her relationship with her member firm without providing prior written notice to the firm. The findings stated that Morgan provided services to senior firm customers in connection with the preparation of their house for sale and their transitioning to an independent-living facility. Morgan sent the customers an invoice for her services, which the customers paid. Morgan also provided services to another customer in connection with the removal of a customer's property from a duplex the customer owned and rented out to others. Morgan also sent that customer an invoice for her services, which the customer paid. Morgan did not disclose either of these business activities to the firm. On the contrary, Morgan also completed annual compliance questionnaires for the firm in which she attested that she had disclosed all of her OBAs when, in fact, she had not.

The suspension was in effect from November 7, 2022, through December 6, 2022.
(FINRA Case #2021070708401)

**M B Schreiber (CRD #1032600, Holmdel, New Jersey)**
October 31, 2022 – An AWC was issued in which Schreiber was fined $5,000 and
suspended from association with any FINRA member in all capacities for three
months. Without admitting or denying the findings, Schreiber consented to the
sanctions and to the entry of findings that he exercised discretionary trading
authority when he executed securities transactions in customer accounts without
the customers providing prior written authorization, and without his member firm
approving the accounts as discretionary. The findings stated that Schreiber caused
the firm to make and preserve inaccurate and incomplete books and records.
Schreiber improperly marked order tickets as "unsolicited" when in fact he had
solicited them by recommending the transactions to the customers. In addition,
Schreiber used his personal email address to communicate with firm customers
about securities transactions in their firm accounts. Schreiber did not disclose his
use of his personal email to the firm or provide the firm with copies of his electronic
correspondence with the customers. Further, Schreiber falsely stated on multiple
firm annual compliance questionnaires that he did not exercise discretionary
authority in any customer accounts and that he did not use a personal email address
for business-related communications.

The suspension is in effect from November 21, 2022, through February 20, 2023.
(FINRA Case #2020065693301)

**Scott Graham Warnock (CRD #2764181, Clearwater, Florida)**
October 31, 2022 – An AWC was issued in which Warnock was assessed a deferred
fine of $5,000 and suspended from association with any FINRA member in all
capacities for three months. Without admitting or denying the findings, Warnock
consented to the sanctions and to the entry of findings that he prepared and signed
documents that purported to be letters of credit issued by his member firm, totaling
approximately $6 million in credit, without his firm's knowledge or authorization.
The findings stated that a customer asked Warnock to prepare the letters of credit to
obtain financing for his business activities. Warnock's job responsibilities at the time
included providing brokerage account-related services to corporate and executive
customers. However, the firm did not provide letters of credit to firm customers.
Warnock did not receive remuneration or otherwise profit from this conduct. The
customer provided these letters of credit to lenders. When the firm discovered the
unauthorized letters of credit, it advised the customer that the letters of credit he
had provided to the lenders were not valid. The customer then provided alternative
letters of credit to the lenders.

The suspension is in effect from November 7, 2022, through February 6, 2023.
(FINRA Case #2020068885201)

## Complaint Filed

**FINRA issued the following complaint. Issuance of a disciplinary complaint represents FINRA's initiation of a formal proceeding in which findings as to the allegations in the complaint have not been made, and does not represent a decision as to any of the allegations contained in the complaint. Because this complaint is unadjudicated, you may wish to contact the respondent before drawing any conclusions regarding these allegations in the complaint.**

**Yoon Sik Chung (**CRD #5978168**, Buena Park, California)**
October 7, 2022 – Chung was named a respondent in a FINRA complaint alleging that he engaged in unethical conduct when he accepted approximately $14,000 from individuals whom he met online but never met in person or spoke to over the phone. The complaint alleges that Chung, acting at the individuals' direction, transferred most of those funds to third parties he did not know, along with additional funds totaling approximately $3,000 that he previously accepted, despite believing that the funds were proceeds of illicit activities and that he was facilitating money laundering. Chung engaged in this activity at least in part to obtain funds to pay for his personal expenses and business expenses at his member firm. (**FINRA Case #2020067734201**)

**Individuals Barred for Failure
to Provide Information or Keep
Information Current Pursuant to
FINRA Rule 9552(h)**

(If the bar has been vacated, the date
follows the bar date.)

**Jay Conan Dougall (CRD #4482425)**
Wilmington, North Carolina
(October 24, 2022)
FINRA Case #2021073518601

**Beth A. Landwehr (CRD #6065758)**
Hilliard, Ohio
(October 3, 2022)
FINRA Case #2022074297901

**Jamie Lemon (CRD #6839775)**
Pawtucket, Rhode Island
(October 17, 2022)
FINRA Case #2021069421302

**Linda Chih Ling Leong (CRD #2202858)**
Rancho Santa Fe, California
(October 31, 2022)
FINRA Case #2021072264101

**Michael Ryan Richie (CRD #7302281)**
Aurora, Colorado
(October 24, 2022)
FINRA Case #2022073752601

**Edward Michael Von Der Schmidt
(CRD #5735379)**
New York, New York
(October 17, 2022)
FINRA Case #2022074027701

**Cedric Matthew Wade (CRD #2550876)**
Mesa, Arizona
(October 11, 2022)
FINRA Case #2021072237001

**Individuals Suspended for Failure
to Provide Information or Keep
Information Current Pursuant to
FINRA Rule 9552(d)**

(The date the suspension began is
listed after the entry. If the suspension
has been lifted, the date follows the
suspension date.)

**Albert Luis Aviles (CRD #1949853)**
New York, New York
(October 3, 2022)
FINRA Case #2018056490304

**Ruth Annma Chambers
(CRD #5103433)**
Gulfport, Florida
(October 7, 2022)
FINRA Case #2022074490601

**Seymour Cohen (CRD #2007478)**
Brookville, New York
(October 7, 2022)
FINRA Case #2021073510001

**Anthony Ciro DiLullo (CRD #6088412)**
Wappingers Falls, New York
(October 7, 2022)
FINRA Case #2021072877201

**John Michael Fabiano (CRD #4576720)**
Mechanicsburg, Pennsylvania
(October 11, 2022)
FINRA Case #2020067438301

**Samuel Nicholas Heavrin
(CRD #6996924)**
Arvada, Colorado
(October 17, 2022)
FINRA Case #2022073912001

**Austin Michael Lazarus (CRD #7088814)**
Anaheim, California
(October 17, 2022)
FINRA Case #2022073963901

**Jason Brett Long (CRD #6058331)**
Lafayette, Georgia
(October 11, 2022)
FINRA Case #2022074634301

**Pamelia C. Owensby (CRD #2078784)**
Como, Mississippi
(October 28, 2022)
FINRA Case #2021073531801

**Alexandra Smith (CRD #6584319)**
Saint Petersburg, Florida
(July 22, 2022 – October 11, 2022)
FINRA Case #2021072535401

---

**Individuals Suspended for Failure to Comply with an Arbitration Award or Related Settlement or an Order of Restitution or Settlement Providing for Restitution Pursuant to FINRA Rule Series 9554**

**(The date the suspension began is listed after the entry. If the suspension has been lifted, the date follows the suspension date.)**

**Christ Elias Baltas (CRD #2570499)**
Hicksville, New York
(October 7, 2022)
FINRA Arbitration Case #21-01716

**Matthew Michael Beaver (CRD #5592864)**
St. Louis, Missouri
(May 15, 2020 – October 14, 2022)
FINRA Arbitration Case #18-00515

**Seymour Cohen (CRD #2007478)**
Brookville, New York
(October 31, 2022)
FINRA Arbitration Case #22-01440

**James Gordon Kirschner (CRD #1445822)**
Wellington, Florida
(October 31, 2022)
FINRA Arbitration Case #21-02630

**Justin Peter Lowe (CRD #3114310)**
Celigny, Switzerland
(October 31, 2022)
FINRA Arbitration Case #21-00086

**Keith Wakefield (CRD #3250539)**
Evanston, Illinois
(October 26, 2022)
FINRA Arbitration Case #22-00910

**Jamie John Worden (CRD #4637404)**
Lloyd Harbor, New York
(October 7, 2022)
FINRA Arbitration Case #21-01931

## FINRA Fines UBS Securities $2.5 Million for Regulation SHO Violations and Supervisory Failures

FINRA announced that it has fined UBS Securities LLC (UBS) $2.5 million for Regulation SHO (Reg SHO) violations and supervisory failures spanning a period of nine years.

Reg SHO is intended to address concerns regarding persistent failures to deliver and potentially abusive "naked" short selling (the sale of securities that an investor does not own or has not borrowed). The rule requires firms to take affirmative action to close out "failure to deliver" positions resulting from short sales in equity securities by borrowing or purchasing the securities by the beginning of regular trading hours the day after the settlement date. Limit orders or other delayed orders do not satisfy the close-out requirement. When a firm does not close out a failure to deliver, the rule prohibits the firm from accepting additional short sale orders in the security without first borrowing or arranging to borrow the security (commonly known as the "penalty box").

FINRA found that, from 2009 to 2018, UBS did not timely close out at least 5,300 failure to deliver positions and routed or executed more than 73,000 short sales in securities with an unsatisfied close-out requirement without first borrowing or arranging to borrow the shares.

UBS's violations of Rule 204 of Reg SHO stemmed from several long-running issues, including:

▶ Using revocable volume weighted average price (VWAP) transactions or limit orders to address buy-in obligations for failures to deliver;

▶ Considering shares released from segregation in connection with customer long sales available to close out a failure to deliver; and

▶ Certain order management systems not always restricting short sales in securities with an unsatisfied close-out requirement.

From 2009 to August 2022, UBS's supervisory systems, including its written procedures, were not reasonably designed to achieve compliance with the requirements of Rule 204 of Reg SHO. Although UBS conducted annual reviews of its Rule 204 systems, it failed to identify its improper treatment of shares associated with a customer long sale. UBS also failed to detect red flags present in the firm's books and records indicating that its VWAP algorithm routed certain buy-in orders as limit orders. UBS also identified its failure to fully enforce Rule 204's "penalty box" only after a system malfunctioned.

"The short sale obligations imposed by Reg SHO afford critical protection to the markets and investors," said Jessica Hopper, Executive Vice President and Head of

FINRA's Department of Enforcement. "Effective supervision focuses on every stage of a firm's Rule 204 compliance and includes testing to confirm that systems and programming operate as intended, without unplanned consequences."

In settling this matter, UBS consented to the entry of FINRA's findings without admitting or denying the charges.

## FINRA Fines Barclays Capital Inc. $2 Million for Best Execution Violations

FINRA announced that it has fined Barclays Capital Inc. (Barclays Capital) $2 million for failing to comply with its best execution obligations in connection with its customers' electronic equity orders.

From January 2014 through February 2019, Barclays Capital owned and operated an alternative trading system known as LX. Barclays Capital routed all its customers' marketable orders to LX, prior to routing to any competing venue, if the order could be filled in LX completely or partially at the National Best Bid and Offer or better, unless customers opted out of this routing preference.

Barclays Capital failed to conduct reasonable reviews of execution quality for its customers' orders. The firm did not review price improvement data for orders routed to LX. The firm also did not review speed of execution for any of the venues to which it routed customers' orders or consider whether the firm could have obtained better execution speed from competing markets.

Barclays Capital also failed to consider alternate routing arrangements even when the firm's own data showed that fill rates in LX were inferior to fill rates at some competing venues. Specifically, the reports reviewed by the firm's Best Execution Working Group indicated that marketable orders routed to LX received lower fill rates as compared to certain competing venues. These reports showed that LX delivered a lower fill rate than the average fill rate of competing venues for every quarter from 2015 to the first quarter of 2019.

In addition, Barclays Capital's supervisory system was not reasonably designed to achieve compliance with its best execution obligations because the firm failed to reasonably review for price improvement for orders routed to LX and speed of execution for any venue. The firm's WSPs also failed to provide reasonable guidance on the factors the firm should consider in determining whether to modify its routing practices.

"FINRA continues to prioritize broker-dealers' compliance with best execution requirements when handling their customers' orders," said Jessica Hopper, Executive Vice President and Head of FINRA's Department of Enforcement. "Firms must continuously monitor their reviews of execution quality and make changes accordingly."

FINRA Rule 5310—Best Execution—requires firms to seek the most favorable terms reasonably available for their customers' orders. To meet this obligation, firms must conduct reviews to evaluate the order execution quality their customers receive under the firm's current routing arrangements, as well as the execution quality their customer orders could receive through different routing arrangements. Rule 5310 lists several factors that firms should consider when conducting these reviews, including price improvement opportunities and speed of execution.

FINRA included best execution as a topic in its 2022 and 2021 FINRA Examination and Risk Monitoring Program reports, as well as its 2020 and 2019 Annual Risk Monitoring and Examination Priorities letters.

In settling this matter, Barclays Capital consented to the entry of FINRA's findings without admitting or denying them.

# EXHIBIT

# "H"

# To Follow . . .

## INTERLOCUTORY APPEAL

Carlson Law Group Seeking victims to Chad M. Koehn investigation

https://www.carlsonlaw.com/salina-advisor-chad-koehn-finra-investigates-ex-sa-stone-rep/

11/7/22, 11:56 AM                    Salina Advisor Chad Koehn: FINRA Investigates Ex-SA Stone Rep

**Free Consultation: 888-976-6111**



Home    Attorneys    Case Types    News & Press    Blog    Contact

# Salina Advisor Chad Koehn: FINRA Investigates Ex-SA Stone Rep

A regulatory investigation into former SA Stone Wealth Management broker Chad Koehn (CRD# 2216169) concluded with a recent determination to bring disciplinary action against him for alleged misconduct. Financial Industry Regulatory Authority and Securities and Exchange Commission records show that the Salina, Kansas advisor is currently registered with United Capital Management of Kansas.

According to a disclosure on Mr. Koehn's BrokerCheck report, FINRA recently determined to bring a disciplinary action against him. The action would allege that he violated FINRA Rules 3280 and 2020 when, as a representative of SA Stone Wealth Management, he "participated in private securities transactions relating to a holdings company without providing prior written notice to SA Stone." The case remains pending.

Mr. Koehn's BrokerCheck report also discloses several customer complaints. The most recent, filed in 2017, alleged that as a Sterne Agee Financial Services representative, he mishandled the claimant's account by placing her investments in a traditional IRA rather than a ROTH IRA. The complaint alleged damages of $5,916 and was denied by the firm.

According to the Financial Industry Regulatory Authority and the Securities and Exchange Commission, Chad Koehn holds 30 years of securities industry experience. Based in Salina, Kansas, he has been an investment advisor with United Capital Management of Kansas since 2012. ~~His~~ past registrations include SA Stone Wealth Management (Salina, Kansas; 2004–2020) and Waddell & Reed (Overland Park, Kansas; 1992–2004). His credentials include the passage of five securities industry qualifying exams: the Investment Company Products/Variable Contracts

Representative Examination, or Series 7; the General Securities Representative Examination, or Series 7; the Securities Industry Essentials Examination, or SIE; the Uniform Securities Agent State Law Examination, or Series 63; and the Uniform Investment Adviser Law Examination, or Series 65. He is not currently registered as a broker. (Information current as of September 20, 2022.)

Carlson Law represents investors throughout the United States in claims against financial advisors and investment firms. If you or a loved one have suffered investment losses, please call us at 888-976-6111 or complete our contact form for a free and confidential consultation.

  

By Chase Carlson | Posted on September 21, 2022



Contact Us For A Free Case Evaluation









© 2017 - 2022 Chase Carlson. All rights reserved. This law blog website
is managed by MileMark Media.

SITE MAP      CONTACT      DISCLAIMER





# EXHIBIT

# " i "

# To Follow . . .

# INTERLOCUTORY APPEAL

Stock Broker Check WARNING Regarding Chad M. Koehn

https://brokercheck.finra.org/individual/summary/2216169

< Back to Results

⤓ Detailed Report    ✉ Share



**CHAD MITCHELL KOEHN**

CRD#: 2216169

(PR) Previously Registered Broker
(IA) Investment Adviser ⓘ

**! SUSPENDED**
FINRA has suspended this individual from acting as a broker. Please see the detailed report for more information

The representative was previously registered as a broker and is currently registered as an investment adviser. Visit IAPD for more information on this individual's investment adviser record.

**GO TO SEC SITE** ⧉

**4**
Disclosures

**28** Years of Experience
**2** Firms

**5**
Exams Passed

**0**
State Licenses

**! Disclosure(s) ⓘ**

View By:  Date  ▾

| 10/21/2022 | Regulatory | Final | ⌄ |
|---|---|---|---|

Initiated By

FINRA

Allegations

Without admitting or denying the findings, Koehn consented to the sanctions and to the entry of findings that he participated in private securities transactions without providing written notice to, or receiving prior approval from, his member firm. The findings stated that these transactions involved investments by at least 59 individuals in a company that purported to own software development and blockchain technology businesses. Koehn discussed the private placement offering of the company's common stock with the individuals, told them that he intended to invest in the company's private placement, introduced the individuals to the company's founder, and invited the individuals to meetings that Koehn hosted, where the founder delivered presentations regarding the company's business and the private placement. Subsequently, the individuals, approximately 34 of whom were firm customers, invested approximately $1,475,000 in the company's stock. Koehn did not receive selling compensation.

Resolution

Acceptance, Waiver & Consent(AWC)

Sanctions

Civil and Administrative Penalty(ies)/Fine(s)

Amount

$10,000.00

Sanctions

Suspension

Registration Capacities Affected

All capacities

Duration

One year

Start Date

11/7/2022

End Date

11/6/2023

| 1/9/2017 | Customer Dispute | Denied | ⌄ |

Allegations

Client alleges the rep mishandled her account by placing her investments into a traditional IRA 1/8/2009 & 2/3/2009 rather than a ROTH IRA. Therefore, resulting in an increase of federal and state taxes.

Damage Amount Requested

$5,916.00

| 10/5/2009 | Customer Dispute | Settled | ⌄ |

Allegations

COMPLAINTANT ALLEGES THAT REP FAILED TO FOLLOW HIS INSTRUCTIONS AND CHECK THE BOX FOR A GUARANTEED INCOME RIDER ON A VARIABLE ANNUITY APPLICATION IN APRIL OF 2007.

Damage Amount Requested

$238,581.71

Broker Comment

SETTLEMENT IS AGREEMENT TO PROVIDE CUSTOMER WITH FULL BENEFIT ELECTED. EXACT DOLLAR AMOUNT OF SETTLEMENT CANNOT BE DETERMINED UNTIL CUSTOMER BEGINS RECEIVING LIFE INCOME PAYMENTS UNDER ANNUITY CONTACT AT SOME FUTURE DATE.

1/7/23, 12:48 PM

CHAD MITCHELL KOEHN - BrokerCheck

| 4/26/2004 | Customer Dispute | Denied | ⌄ |

Allegations

ON 6/25/01, CLIENT INVESTED IN VARIABLE ANNUITY AND ALLEGES THAT RR DID NOT DISCLOSE SURRENDER CHARGES

Damage Amount Requested

$6,850.00

Broker Comment

THERE IS NO SUBSTANCE TO THIS COMPLAINT.[CUSTOMER] ALLEGES THAT SHE WAS NOT INFORMED THAT WITHDRAWALS WOULD INCUR CONTINGENT DEFERRED SALES CHARGES. IN FACT, SHE SIGNED A DISCLOSURE FORM THAT SHOWED THERE WOULD BE CDSC. IN ADDITION, ANOTHER WADDELL & REED SALESPERSON HANDLED THIS PURCHASE FOR [CUSTOMER].

## Examination(s)

### ■ State Securities Law Exam

| (IA) | Series 65 - Uniform Investment Adviser Law Examination | May 6, 2005 |
| (B) | Series 63 - Uniform Securities Agent State Law Examination | Mar 19, 1992 |

### ■ General Industry/Products Exam

| (B) | SIE - Securities Industry Essentials Examination | Oct 1, 2018 |
| (B) | Series 7 - General Securities Representative Examination | Sep 3, 2003 |
| (B) | Series 6 - Investment Company Products/Variable Contracts Representative Examination | Mar 19, 1992 |

Additional information including this individual's professional designations is available in the Detailed Report.

 **Previous Registration(s)**

| | | Name | Location |
|---|---|---|---|
|  B | 01/22/2004 - 10/30/2020 | **SA STONE WEALTH MANAGEMENT INC. (CRD#:18456)** | SALINA, KS |
| B | 03/23/1992 - 01/26/2004 | **WADDELL & REED, INC. (CRD#:866)** | OVERLAND PARK, KS |

**Additional Information**

The content of this summary, and the available detailed report, is governed by FINRA Rule 8312, and is primarily based on information filed on uniform registration forms. Rule 8312, amendments to the rule and notices related to U.S. Securities and Exchange Commission approval orders, can be viewed here.

State regulators are governed by their public records laws (not FINRA Rule 8312), and may provide information not in BrokerCheck, including information no longer required to be reported or updated on uniform registration forms due, for example, to its age or final disposition. You may contact your state regulator to request this additional information.

Click here for more information about how to check on an investment professional.

 Broker

A brokerage firm, also called a broker-dealer, is in the business of buying and selling securities – stocks, bonds, mutual funds, and certain other investment products – on behalf of its customer (as broker), for its own bank (dealer), or both.
Individuals who work for broker-dealers - the sales personnel are commonly referred to as brokers.

 Investment Adviser

An investment adviser is paid for providing advice about securities to clients. In addition, some investment advisers manage investment portfolios and offer financial planning services.
It is common for a financial professional to act as both a broker and an investment adviser. Because of this, we include investment advisers on BrokerCheck, and provide links to the SEC's Investment Adviser Public Disclosure (IAPD) website so you can research further.

 Previously Registered

A Previously Registered broker or brokerage firm is not currently licensed to act as a broker (buying and selling securities on behalf of customers) or as an investment adviser (providing advice about securities to clients). They may still be able to offer other investment-related services if properly licensed to do so. Click here to learn more.

📄 Disclosures

Disclosures can be customer complaints or arbitrations, regulatory actions, employment terminations, bankruptcy filings and certain civil or criminal proceedings that they were a part of.

Use of the BrokerCheck site is subject to
BrokerCheck Terms of Use

©2023 FINRA, All Rights Reserved

FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.

Privacy   |   Legal

# EXHIBIT

# "J"

# To Follow . . .

## INTERLOCUTORY APPEAL

*"Chad Koehn Suspended by FINRA Following Alleged Unapproved Securities*

*Transactions"* https://www.kurtalawfirm.com/blog/chad-koehn/

1/7/23, 12:26 PM                                Chad Koehn Subject of FINRA Suspension and $10,000 Fine



## Chad Koehn Suspended by FINRA Following Alleged Unapproved Securities Transactions

DEC 6, 2022    |    FINRA SUSPENSION

Chad Koehn (CRD #: 2216169), a broker formerly registered with SA Stone Wealth Management, allegedly participated in unapproved private securities transactions, according to his **BrokerCheck record**, accessed on November 21, 2022. Read on to learn more about his conduct as a broker.

## FINRA Suspension

On October 21, 2022, Chad Koehn consented to the entry of findings that he allegedly participated in private securities transactions without providing notice to or receiving approval from a firm, SA Stone Wealth Management, between August and October 2020.

According to a Letter of Acceptance, Waiver & Consent (AWC), Chad Koehn allegedly participated in private securities transactions involving investments by at least 59 individuals in Company A, a company that claimed to own software development and blockchain technology businesses. The AWC alleged that approximately 34 of these individuals were SA Stone Wealth Management clients.

Chad Koehn allegedly discussed the private placement offering of Company A's common stock with these investors, told them he intended to invest in the company's private placement, and introduced them to the company's founder.

Additionally, the AWC alleged that Chad Koehn invited the investors to meetings he himself hosted, where the founder delivered presentations about the company's business and the private placement. Following these meetings, investors allegedly invested approximately $1,475,000 in Company A's stock. Chad Koehn allegedly did not receive selling compensation in these transactions.

The AWC alleged that Chad Koehn did not provide written notice to SA Stone Wealth Management or receive approval to participate in these transactions, in violation of FINRA Rules 3280 and 2010.

## FINRA Rules 3280 and 2010

**FINRA Rule 3280** requires brokers to receive approval from their firm before engaging in private securities transactions.

**FINRA Rule 2010** holds brokers to high standards of commercial honor and just and equitable principles of trade.

## Sanctions

Chad Koehn consented to the following sanctions:



- $10,000 fine
- 1-year suspension

His suspension began on November 7, 2022, and will end on November 6, 2023.

You can read a copy of the AWC **here**.

# Background Information

Chad Koehn has passed the following exams:

- Series 65 — Uniform Investment Adviser Law Examination
- Series 63 — Uniform Securities Agent State Law Examination
- SIE — Securities Industry Essentials Examination
- Series 7 — General Securities Representative Examination
- Series 6 — Investment Company Products/Variable Contracts Representative Examination

He previously worked for SA Stone Wealth Management (CRD#:18456) and Waddell & Reed (CRD#:866).

# Kurta Law Can Help

If you worked with Chad Koehn and you have concerns about your investments, please contact us today at 877-600-0098 or info@kurtalawfirm.com for a free consultation.

For over 20 years, Kurta Law has advocated on behalf of investors who want to recover their investment losses from brokers and brokerage firms. Kurta Law is a nationally recognized law firm and exclusively represents investors against brokers and brokerage firms on a

contingency basis. This means that the firm only earns a fee if our securities attorneys recover money on your behalf.

Victim of Financial Fraud?          Call Now          **KURTA LAW**          Victim of Financial Fraud?          Call Now
                                                      NATIONAL SECURITIES LAW FIRM



SEARCH

Full Name

Email

Phone

Brief Case Description

SUBMIT YOUR FORM



## CATEGORIES

Anti-Money Laundering

Articles

Barred Broker

Blue Sky Laws

Broker Blog

View More +

Victim of Financial Fraud?

Call Now

KURTA LAW
NATIONAL SECURITIES LAW FIRM

Victim of Financial Fraud?

Call Now

# Ready to Recover Your Financial Losses?

## Contact Kurta Law Today.

877-600-0098

info@kurtalawfirm.com

**New York**

295 Madison Avenue
Suite 705
New York, NY 10017

**Jericho**

100 Jericho Quadrangle
Suite 327
Jericho, NY 11753

© 2023 Securities & Investment Lawyer - Kurta Law. All Rights Reserved.
Sitemap | Disclaimer
Law Firm Website Design By Paperstreet

Let's connect

## Get a Free Consultation

Full Name

Email

Phone

Brief Case Description

SUBMIT YOUR FORM

© 2023 Securities & Investment Lawyer - Kurta Law. All Rights Reserved.
Sitemap | Disclaimer
Law Firm Website Design By Paperstreet



1/7/23, 12:26 PM

Chad Koehn Subject of FINRA Suspension and $10,000 Fine





# EXHIBIT

# "K"

# To Follow . . .

## INTERLOCUTORY APPEAL

"American wanted by FBI arrested in Indonesia for suspected child sex crimes" from REUTERS

https://www.reuters.com/article/us-indonesia-crime/american-wanted-by-fbi-arrested-in-indonesia-for-suspected-child-sex-crimes-idUSKBN23N1KB

 

**World**     **Business**     **Markets**     **Breakingviews**     **Video**     **More**

BANKS

JUNE 16, 2020 / 6:34 AM / UPDATED 3 YEARS AGO

# American wanted by FBI arrested in Indonesia for suspected child sex crimes

By Reuters Staff



Russ Albert Medlin, a U.S. national and FBI fugitive, is seen under arrest on charges of sexually abusing minors, according to a spokesman from the Jakarta police, in Jakarta, Indonesia June 16, 2020, in this photo taken by Antara Foto/Reno Esnir/via REUTERS

JAKARTA (Reuters) - A U.S. national wanted by the Federal Bureau of Investigation over a bitcoin scam has been arrested in Indonesia and charged under a child protection law for

three minors, and he was suspected of sex crimes, Jakarta police spokesman Yusri Yunus told a streamed news conference.

Indonesia's child protection law carries a maximum penalty of 15 years in prison.

Reuters was unable to contact Medlin or to find out whether he had legal representation. The U.S. Embassy in Jakarta did not immediately respond to Reuters' request for comment.

Another police officer said that Medlin could also face extradition to the United States.

Medlin has been on an Federal Bureau of Investigation (FBI) wanted list for crimes related to an investment scam in bitcoin stocks, Yunus said, adding the scam totaled $722 million.

Reuters was unable to independently confirm Medlin was on the FBI's wanted list.

Indonesian authorities said they were coordinating with the American embassy.

Reporting by Stanley Widianto and Agustinus Beo Da Costa; Editing by Kate Lamb, Matthew Tostevin and Simon Cameron-Moore

*Our Standards: [The Thomson Reuters Trust Principles.](#)*

---

Apps   Newsletters   Advertise with Us   Advertising Guidelines   Cookies   Terms of Use   Privacy

Do Not Sell My Personal Information



All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

American wanted by FBI arrested in Indonesia for suspected child sex crimes | Reuters

NOW READING   **American wanted by FBI arrested in Indonesia for suspected child sex crimes**

# EXHIBIT

# "L"

# To Follow . . .

## INTERLOCUTORY APPEAL

**Email from:   Andrea_Schreyer@ksd.uscourts.gov**

**Andrea Schreyer Division Manager; United States District Court for the District of Kansas; 444 SE Quincy; Topeka, KS 66683; 785-338-5400**

 **Gmail**                                    Michael Nelson <oklahomaremote@gmail.com>

## Email Issues

1 message

**Andrea Schreyer** <Andrea_Schreyer@ksd.uscourts.gov>                    Mon, Jan 9, 2023 at 5:31 PM
To: "oklahomaremote@gmail.com" <oklahomaremote@gmail.com>

Mr. Nelson-


As I advised on Friday, today I have had the court IT staff look into the issue of your emails being misrouted.  The reason
why is not clear, but you have been added to safe sender lists for the clerk's office intake boxes for all three divisions in
Topeka in addition to the judges chambers you already have been working with so that further emails do not get stuck.
The clerk's office staff does check the junk folder and routed all of your emails from Friday and the weekend to the main
inbox for processing.  If you think something is getting missed moving forward, please feel free to call the clerk's office to
ensure your filings were received.  I am sorry for the inconvenience this has caused you.



**Andrea Schreyer**

Division Manager

United States District Court for the District of Kansas

444 SE Quincy

Topeka, KS 66683

785-338-5400

# <u>EXHIBIT</u>

# "**M**"

# To Follow . . .

## <u>INTERLOCUTORY APPEAL</u>

Reply Response to Order to Show Cause:

https://ia902500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.337.0.pdf

1

**UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS**

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD M. KOEHN** | <mark>**DOCKET NO.:    5:22-CV-04008-JWB-GEB**</mark> <u>**CIVIL ACTION**</u> |
| Plaintiffs, counter-defendants v. Michael Nelson | **Response to SHOW CAUSE Regarding Travel Restrictions** |
| Defendant ;    PRO-Se. | **[Jury Trial Demanded]** |

Comes now, Michel E Nelson. Pro se. and pursuant to the Court's order entered on December 14, 2022 in [Doc. 334] and offers this Court a Response to the Court's Show Cause request Regarding Travel Restrictions, I have previously timely complied with pro se registration per the Order.

"The court orders Defendant to show cause why he should not be sanctioned for falsely alleging that he was prohibited by the court in his Oklahoma criminal case from traveling to Kansas for today's hearing. (Doc. 331 at 3.)  Defendant must submit proof of these travel restrictions to the court by filing a response to this order to show cause, which includes such proof, on or before December 31, 2022.  If Defendant fails to do so, the court may impose sanctions upon Defendant for his lack of candor to the court. Defendant is warned that his statements alone will not suffice for proof of his travel restrictions.   Instead, he must provide copies of orders from the Oklahoma court imposing such restrictions."

<u>**UNCONTROVERTED FACTS to the best of my belief:**</u>

1. The last in writing orders of the Court in Oklahoma, I am aware, are March of 2022:

   **"State + D. Agree D. Can <u>return to reside in Rhode Island,</u> ankle monitor can be removed by agreement. D. <u>Can return to Oklahoma</u> to consult with attorney + for Court Appearances."** <u>(D. = defendant); see Exhibit "B" of Exhibit A attached.</u>

   <u>[For Ease of locating I have also included this "order" herein below after signatures]</u>

2. The Oklahoma court has restricted <u>where I reside and where I am allowed to return.</u>

3. Many restrictions have been placed upon me, some in writing, many oral or implied attached herewith as Exhibit "A" is the filing made by my defense attorneys, which includes the referenced order from March, minutes, original order which mandated I stay in Oklahoma.

2

4. Similar to a witness not being able to recount exactly what they saw or heard, I was unable to recall exactly what was said during the hearing on 12 October 2022, in Oklahoma, where I was taken into custody and to jail.  What I remembered differs from the transcript I have now received and is attached, as exhibit "B".  I recall different things told to me that day, between my attorneys, the Judge, the prosecutor, the bail person, because of my anxiety and fear being taken into custody and back to jail, which happened.

5. **The court in Oklahoma is a criminal state Court, which has stated it must control.**

> **JUDGE:**  "A criminal case is superior to the civil case.  The conditions — the bond conditions in the criminal case are in place for a reason and remain effective throughout this criminal case and until and unless they're changed." *Lines 24 through 24 page 27 and lines 1 through 3 page 28; Exhibit "C"*

6. I am SCARED out of my mind, not to violate any written, implied or verbal orders.

7. Judge Birzer ordered me to engage in email with Christopher J. Kellogg,, *see Court Order Doc. 67*; when I followed those orders, to take a deposition, **Craig Brand ran to the prosecutor to prevent me and I was subsequently taken into custody and to jail.**

8. Prosecutor:  "You cannot violate the bond conditions in Oklahoma **just because you have a civil lawsuit pending in Kansas**.  That is a legal rodeo you have to figure out on your own if you're going to represent yourself pro se in Kansas." *Lines 21 - 23, page 12 Exhibit "C"*

9. I am Pro Se, out of necessity, in lack of funds and resources to assist me; as anyone that helps me will be attacked for "aiding and abetting".

10. I must interpret the bail restrictions as conservatively as possible.

11. **I cannot liberally construe any conditions** which are not a model of clarity.

12. The Court in Oklahoma has dictated where I can reside, and "return to Oklahoma".

13. **There is no other interpretation than to find my travel is restricted to reside in Rhode Island and permitted travel to Oklahoma for explicit purposes.**

14. <u>The prosecutor made the issue abundantly clear:</u>

> **Prosecutor:** "I believe, on the Federal lawsuit in Kansas. This all goes back to I'm
> sorry if you have spent a lot of your money paying for three attorneys in the State of
> Oklahoma bonding out in the State of Oklahoma, and you can't — or no one will
> take your case in Kansas — <u>because that's the other rumor I've heard.</u>
>
> **But just because you don't have anyone to represent you in Kansas, doesn't**
> **mean you get to violate a Judge's order in the State of Oklahoma**"
>
> Page 24 lines 14-23; Exhibit "B"

15. I have a strong conviction and belief that my travel is restricted to reside in Rhode Island

and <u>travel only to see my attorney and for court appearances in</u> **Oklahoma.**

**<u>WHEREFORE, I PRAY this Honorable Court, as will find:</u>**

Under the conditions placed upon me, the limited information that has been provided to me,

no other conclusion can be reached, by a reasonable person than my travel is restricted as to where I

am to reside and where I am allowed to return.   The Orders I am under are not a model of clarity, I

must interpret the Orders as conservatively as possible, <u>to avoid incarceration</u>.   I believe if I were to

travel I need now have permission of the Court in Oklahoma, as I previously stated.

I am terribly sorry and apologetic, I did not immediately inform the Court of my

predicament, and my efforts to comply.   I and my family are under enormous stress, failing health,

and utter confusion as to what all the Courts expect.   I was under the belief I would be able to get

assistance of counsel, to be present on my behalf.   When I realized I would not be able to get

counsel I immediately informed the court.   I pledge I will immediately inform the Court, in the

future as soon as I receive any instructions, or any orders are entered, even if it means I must make

multiple filings.   I will not repeat the mistake of waiting to inform the Court.   I had sincerely

believed I would gain support to secure counsel on my behalf.   Everyone is afraid to help as doing

so will open them to attack, as is evident by the actions of the plaintiffs attacking my dying father.


Respectfully Submitted, this 29th day of December 2022.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com


**Certificate of Service:**
        The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via
electronic-mail:  **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing
electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of
whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;

702-932-3434


        A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct.*

*285*, and "a pro se [pleading], however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall

be so construed as to do substantial justice").   In the interests of substantial justice and to prevent

manifest injustice the Courts generally review "filings generously and with the leniency due pro se

litigants", see *Erickson v. Pardus, U.S.Ct. L.Ed.2d (2007); Andrews v. Heaton*

5

*QUICK REFERENCE TO THE ORDER REFERENCED FROM MARCH 2022*

**IN THE DISTRICT COURT OF WASHINGTON COUNTY, STATE OF OKLAHOMA**

State
_____
Plaintiff(s)

Joe Gullett (33184)
_____
Attorney(s) for Plaintiff(s)

-vs-

Case No. CF-21-304

Michael Eric Nelson
_____
Defendant(s)

Perry Newman
_____
Attorney(s) for Defendant(s)

DISTRICT COURT WASHINGTON CO. OK
III I I BRITZER COURT CLERK

**COURT MINUTE**

MAR 07 2022

Date: Mar. / 7 /2022    Judge Sigler

Court Reporter: None

State + D agree D can return to reside
in Rhode Island, ankle monitor can be
removed by agreement. D can return
to Oklahoma to consult with Attorney
+ for Court Appearances. Continued
No contact with Victims. D to return
for PH on 3/29/22 @ 9:00 am. A to Check
in daily with bondsperson.

Set for further hearing on _____ at ___ M.

12867

3/7/2022
_____
Judge of the District Judge

# EXHIBIT

# "N"

# To Follow . . .

## INTERLOCUTORY APPEAL

**Colorado Man Admits Securities and Tax Offenses Related to $722 Million Fraud Scheme**

https://www.justice.gov/usao-nj/pr/colorado-man-admits-securities-and-tax-offenses-related-722-million-fraud-scheme

JOBY WEEKS, Advisor to Anthem Gold Inc. and HERC crypto currency Stock Coin via

promulgated PPM (Public Placement Memorandum by Chad Mitchell Koehn



**FOR IMMEDIATE RELEASE**
Contact: Matthew Reilly, 973-645-2888
usanj.publicaffairs@usdoj.gov

Nov. 5, 2020

## COLORADO MAN ADMITS SECURITIES AND TAX OFFENSES RELATED TO $722 MILLION FRAUD SCHEME

NEWARK, N.J. – A Colorado man today admitted his role in a conspiracy to offer and sell unregistered securities and tax evasion in connection with a $722 million cryptocurrency mining scheme, U.S. Attorney Craig Carpenito announced.

Jobadiah Sinclair Weeks, 39, of Arvada, Colorado, pleaded guilty by videoconference before U.S. District Judge Claire C. Cecchi to Count Two of an indictment, charging him with conspiracy to offer and sell unregistered securities. Weeks also pleaded guilty to a separate information charging him with tax evasion for the tax years 2015 through 2018.

Weeks and four co-defendants – Matthew Brent Goettsche, Russ Albert Medlin, Catalin Balaci, and Joseph Frank Abel – were charged by indictment in December 2019 in connection with the scheme.

According to documents filed in this case and statements made in court:

From April 2014 through December 2019, the BitClub Network was a fraudulent scheme that solicited money from investors in exchange for shares of purported cryptocurrency mining pools and rewarded investors for recruiting new investors into the scheme. Weeks operated as a large-scale promoter of the BitClub Network, and sold shares despite knowing that the BitClub Network and its operators did not file a registration statement with the U.S. Securities and Exchange Commission.

Weeks admitted taking money from investors in exchange for shares of the BitClub Network's purported mining pools. He admitted that in order to promote shares, he created and posted videos to the internet and gave presentations and speeches about the BitClub Network

throughout the United States and in numerous countries throughout the world. Weeks instructed investors in the United States to use a virtual private network, or "VPN," to hide their U.S.-based IP addresses and evade detection and regulation by U.S. law enforcement.

Weeks also admitted not filing tax returns and failing to report at least $10 million in income, including cryptocurrency income earned from his association with the BitClub Network, for the tax years 2015 through 2018.

The conspiracy charge to which Weeks pleaded guilty carries a maximum penalty of five years in prison and a fine of $250,000, or twice the pecuniary gain to the defendant or loss to the victims. The tax charge to which Weeks pleaded guilty carries a maximum penalty of five years in prison and a fine of $100,000. Sentencing is scheduled for March 17, 2021.

U.S. Attorney Carpenito credited special agents and task force officers of the FBI Los Angeles Division's West Covina Resident Agency, under the direction of Assistant Director in Charge Kristi K. Johnson; special agents of IRS - Criminal Investigation, under the direction of Special Agent in Charge Michael Montanez in Newark and special agents of the IRS Los Angeles Field Office, under the direction of Special Agent in Charge Ryan L. Korner, who conducted this investigation under the initiative of the Joint Chiefs of Global Tax Enforcement; the FBI Criminal Investigative Division, under the supervision of Assistant Director Calvin A. Shivers, and the Financial Crimes Section, under the leadership of Section Chief Steven Merrill; and members of the Ventura Police Department with the investigation leading to today's guilty plea.

Anyone who believes they may be a victim may visit www.justice.gov/usao-nj/bitclub or the Department of Justice's large case website www.justice.gov/largecases. Victims can find more information about the case, including a questionnaire for victims to fill out and submit.

The government is represented by Unit Chief David W. Feder, Assistant U.S. Attorneys Jamie L. Hoxie and Anthony P. Torntore of the Cybercrime Unit, and Unit Chief Sarah Devlin and Assistant U.S. Attorney Joseph Minish of the Asset Recovery and Money Laundering Unit, of the U.S. Attorney's Office in Newark.

20-400

Defense counsel: Simon A. Gaugush Esq., Tampa, Florida, and Michael L. Yaeger Esq., New York

## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| United Capital Management of Kansas, Inc. and CHAD M. KOEHN<br><br>          Plaintiffs, counter-defendants<br>    v.<br>Michael Nelson<br><br>          Defendant; counter-plaintiff<br>PRO-Se. | DOCKET NO.:    5:22-CV-04008-JWB-TJJ<br>CIVIL ACTION<br><br>NOTICE of INTERLOCUTORY APPEAL<br>REQUEST FOR STAY<br>Preliminary Brief - Request of Writ of<br>Mandamus and/or Prohibition for the<br>Protection of US Constitutional Rights<br><br>[Jury Trial Demanded] |

COMES NOW, Michael Nelson, makes "SPECIAL APPEARANCE" for the purposes of filing NOTICE and initial brief of INTERLOCUTORY APPEAL, from Orders of the District Court Judge in Order, for plain error, in ability to travel for the hearing due to restrictions, in a directly parallel criminal matter(s).   I believe this notice and initial brief are filed in compliance with *FRAP 32(a)(7)(B)*.  I seek a STAY of this Civil proceedings until the conclusion of the parallel criminal proceedings.  This Court should "in accord with common practice, [] **stay the civil action until the criminal case** or the likelihood of a criminal case is **ended.**" *Wallace v. Kato, 549 U.S. 384, 393-94 (2007)*.   A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice").   This interlocutory appeal is to prevent further manifest injustice and apprise the Courts of misconduct.

**I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of documents 254, 255, 266, 289, 292; for plain error as I seek STAY of this matter.**

**Complications of Orders appealed** to the District Court from a US Federal Magistrate who has since recused herself, via contrite recusal and "kneecapping" see Ex. B the Federal Magistrate:

      The Plaintiffs are engaged in **"SCORCHED EARTH" litigation against an impoverished pro se, WHISTLEBLOWER having inordinately complicated their SLAPP**

**petition weaponizing the legal system through judicial abuses of processes.**  This matter is

further complicated by the fact the Plaintiffs have previously moved for the RECUSAL of US

Federal Magistrate Judge G.E. Birzer, in a verified motion for recusal Documents 113 and 114.

US Federal Magistrate Judge DENIED the verified motion for recusal in document 182.

Plaintiffs next move was to add Spencer Angell, the son of the US Federal US Chamber Counsel,

Samantha Parks Angell, as a material witness with knowledge of the SLAPP complaint they filed

as a means of contrite recusal of the Federal Magistrate Judge Birzer.  When plaintiffs filed their

mandated rule 26(a), disclosures in July of 2022, Spencer Angell was in their employ SEE

ATTACHED resume of Spencer James Angell, Exhibit "A", yet NOT noticed, within their Rule

26(a) disclosures [https://www.linkedin.com/in/spencer-angell/]

## ISSUES REGARDING SPENCER JAMES ANGELL:   UNCONTROVERTED FACTS:

1.  Samantha Parks Angell is the "Chamber Counsel" of Magistrate Judge G.E. Birzer

2.  James R. Angell is the managing partner of the firm representing the plaintiffs

3.  Spencer J. Angell is the college enrolled child of Samantha and James Angell

4.  Spencer James Angell is a student at Arizona State University & has a HONOR CODE

5.  SPENCER ANGELL has PLEDGED to UPHOLD the Honor Code of ASU "**We pledge
    to act with integrity and honesty and to promote these values among our peers.**"

6.  Spencer James Angell has publicly disseminated a resume attached as Exhibit "A"

7.  SPENCER JAMES AGNELL WAS NOT IDENTIFIED BY PLAINTIFFS IN RULE 26(a) disclosures

8.  Spencer Angell was in employ of UCMK & Koehn when Rule 26(a) disclosures were made

9.  VERIFIED RECUSAL MOTION by CHAD MITCHELL KOEHN of Federal Magistrate was DENIED

10. Plaintiff's then added SPENCER ANGELL as a material witness, just weeks after submission
    of their Rule 26(a) disclosures, after their RECUSAL attempt of the Magistrate was denied

11. Magistrate Judge Birzer has entered the following in an ORDER of the Court Document 335:

    "In reviewing Plaintiffs' interrogatory answers in preparation for Defendant's argument to compel
    further response to be heard at the December 6, 2022 Status Conference, the Court became aware of

**an individual, related to the undersigned's chamber's staff, identified in the discovery response who Plaintiffs "believe has knowledge regarding the facts of this lawsuit."** This individual was not initially identified in any party's Rule 26(a) disclosures as a person likely to have discoverable information submitted in July 2022.

12. It is **SPENCER ANGELL** who is the "individual related to … chamber's staff, identified in the discovery response who Plaintiffs 'believe has knowledge regarding the facts of this lawsuit", per the RECUSAL Order of the Federal Magistrate, who the plaintiffs had previously sought to RECUSE in a bizarre series of events demonstrating clear misogyny.

13. Plaintiff's then claimed in Court that SPENCER ANGELL has no knowledge of the lawsuit, demonstrating clearly they are backdooring RECUSAL of a US Federal Judge

14. Attorneys for the Plaintiffs are using me as a pawn as well as SPENCER ANGELL in order to exact some sort of twisted revenge upon Samantha Parks Angell a US Federal Chambers Counsel stemming from a nasty divorce with James Ryan Angell.

15. Subpoenas for harassment settlements entered into by Koehn and UCMK which are held by James Angell separately from the law firm books were denied.

16. James Angell pays Samanatha Angell more than $10,000 per month

17. Both James Angell & Samantha Angell were aware as demonstrated by Spencer Angell's resume, Spencer Angell worked for the law firm managed by James Angell see Ex. "A"

18. Both James and Samantha Angell and plaintiffs Koehn and UCMK were aware Spencer Angell worked for Koehn and UCMK at the time Rule 26(a) disclosures were made

19. Plaintiffs have been allowed to "backdoor" a recusal of a US Federal Judge via contrite addition of Spencer Angell to a material witness list demonstrating lying under oath.

US Federal Magistrate Judge G.E. Birzer's chambers counsel Samantha Parks Angell is the former spouse of the managing partner of the law firm for the plaintiffs, James Angell. A subpoena had been sought for "settlements" entered into by plaintiffs Chad M. Koehna and/or UCMK, kept by James Angell, behind a "Chinese wall" within the law firm. That subpoena was

denied by the US Federal Magistrate.  Judicial notice and evident knowledge by the mother,

Samantha Parks Angell that her son Spencer Angell was in the employ of plaintiffs UCMK and

Chad M. Koehn, see <u>Resume of Spencer Angell Exhibit A</u>, was obviously known during the

course of the litigation, as was the fact known, Spencer Angell was in the employ of the plaintiffs

when they made their rule 26(a) disclosures.    In fact Spencer Angell is also a former employee

of the law firm representing the plaintiffs in the matter at bar.  Yet during the hearing 14

December 2022, when US District Court Judge John W. Broomes, pressed the issue as to the

addition of Spencer Angell to a list of material witnesses, with knowledge of the facts of the

litigation and likely to be a material witness, the responses are alarming to the Court and certainly

to the Court of Appeals.  See Exhibit B, after much dialogue back and forth between the US

District Court Judge and attorneys for the plaintiffs represented by Christ Kellogg and Larry

Michel (who had filed the Rule 26(a) disclosures Ex. F and filed further disclosures adding

Spencer Agnell), both who were present in the Court room on 14 December 2022 hearing:

> <u>THE COURT: </u>So do you think Mr. Angell has material knowledge that's going to
> be important to this case that he's going to be a likely witness or have something
> substantial to contribute in the litigation of this matter?
> <u>MR. KELLOGG:</u> **I don't believe so, Your Honor.   <u>My client tells me no.</u>"**
> See page 8 lines 7 through 13*

* FURTHER NOTED Chad M. Koehn signed the additional material witness list adding Spencer

Angell and then tells the District court "NO" regarding Spencer Angell, however their Judge

Shopping was already completed, forcing the recusal of the Federal Magistrate who they had

previously demanded recusal via Chad M. Koehn verified motion for recusal.

Having had their verified motion for recusal of US Federal Magistrate Judge G.E. Birzer

was denied by the US Federal Magistrate Judge.  The **<u>next move to "judge shop"</u>** within the US

District of Kansas exerting unfair and unethical control over choices of randomly assigned Judges

the plaintiffs' addition of Spencer Angell was made in a discovery notice they filed, also <u>signed by</u>

<u>Larry G. Michel, as initial disclosures were as well</u>, see Exhibit F, in order to "kneecap" the US

Federal Magistrate Judge via a contrite recusal, see statements by District Judge John W. Broomes in transcript Exhibit B.  US Federal Magistrate Judge G.E. Birzer had then to file an Order recusing herself from the litigation in document 335.   None-the-less prior orders of the US Federal Magistrate Judge G.E. Birzer came for hearing before the District Court, see Exhibit B. The plaintiffs were previously ordered to amend their SLAPP petition to **remove the known racial slur they placed in the originating complaint in place of the defendants given name,** and making other substantial changes.  The Plaintiffs then moved to amend their complaint yet again a second amended complaint, attacking the pro se defendants elderly father, who the district court refused the request to add the pro se defendants elderly father to the litigation filing Order of the Court in Document Order 330, however has now allowed the complaint to be entirely changed though will be subject of a new motion to dismiss.

Despite the sworn declarations by Chad M. Koehn plaintiff and the counter signature of one of his plethora of attorneys, Larry G. Michel, who was present and on the record in the Courtroom on 14 December 2022, hearing, wherein both Larry G. Michel and Chad M. Koehn swore that Spencer Angell, the son of US Federal Magistrate Judge G.E. Birzer's chamber counsel Samantha Parks Angell has material knowledge of the facts of the SLAPP petition filed by the plaintiffs and obviously both Larry Michel and Chad M. Koehn who are friends with James Angell, the ex-spouse of Samantha Parks Angell. Chamber counsel (law clerk) for US Federal Magistrate Judge G.E. Birzer, all knew at the time the Rule 26(a) disclosures (Exhibit F) were made that Spencer Angell was in the employ of the plaintiffs chose to keep this information private, and furthermore chose not to include Spencer Angell in the Rule 26(a) disclosures.

**I appeal Orders of the Court under Documents 334, and denied Magistrate Appeals of documents 254, 255, 266, 289, 292**

**First,** in Order of the Court Document 334, I have complied under protest with Pro Se registration of notice, by the date which the Court Ordered, yet my emails to the Court have continually gone

to junk folders and I have either not received at all or emails from the Court have gone to a

variety of junk folders and/or have been deleted, thus requiring me to continue to rely upon third

party nonprofits to receive notice of documents filed, and I am unable to retrieve "free" or

no-charge documents which are filed in this case, until after third party non-profits such as

Judicial Watch and CourtListener and/or others have retrieved the documents.  I have dutifully in

attempted compliance had the need to take inordinate time of the Courts personnel and the DOJ,

even communicating various Chambers, specialists within the Court **Andrea Schreyer,** Division

Manager, US District of Kansas, see attached Exhibit "L", email from Ms. **Schreyer.**

    **Second,** the Court ordered a show cause regarding travel restrictions in the parallel

criminal matter(s) in Oklahoma.  The *pro hac vice* counsel Craig Alan Brand's deliberate and

intentional misleading of Chambers of US Federal Magistrate Birzer and myself by replying not

from the email address he was sent email as per his affidavit of perjury filed in document 24-1,

which the Court stated he "played fast and loose" meaning was dishonest.  In documents 52 and

57, it is clearly demonstrated to the Court and now the Tenth Circuit Court of Appeals *pro hac*

*vice*, attorney Craig Brand, intentionally misled me and the Court as to a false designation email,

as trickery to have been inadvertently violate the conditions in the parallel criminal case(s).  I

have also followed orders of the Court in Document 67, emailing with attorney Chris Kellogg to

take deposition of an identified witness in plaintiff's initial disclosures under Rule 26(a) which has

seen the prosecutor in the parallel criminal case take me into custody for doing so.  Given the fact

the Oklahoma Court has had constant communication with the attorneys representing the

plaintiffs in this Civil matter, and the criminal matter is being used as a weapon to prevent proper

procedures in the civil matter as is noted, in the States request to increase bond, wherein the State

of Oklahoma states:   *"... on September 15th, 2022, the defendant using the email address*

*oklahomaremote@gmail.com, sent an email to an attorney known to an associate of Cynthia and*

*Anthem Blanchard indicating that he intends to subpoena an employee of HeraSoft in Bartlesville,*

*Oklahoma."* See 3rd page of Exhibit D.   It is evident that this civil proceedings is being

"kneecapped" see Exhibit B, to use the term used by District Court Judge Broomes by the parallel

criminal proceedings.   I cannot interpret the conditions placed upon me in the parallel case

liberally and therefore must interpret them conservatively to avoid incarceration for my

participation in defense of the SLAPP SCORCHED EARTH litigation being pursued by the now

SANCTIONED plaintiff Chad M. Koehn etAl.  I did timely in accordance with Order in

Document 334, file response reply to the show cause, attached as Exhibit "M", document 337:

https://ia902500.us.archive.org/6/items/gov.uscourts.ksd.140013/gov.uscourts.ksd.140013.337.0.pdf

  See Exhibit E Attached motion by my criminal defense attorney regarding the "violation"

of bond as I await trial, for more than a year now in the directly parallel hereto criminal

proceedings being used as a weapon in these civil proceedings.   "Mr. Nelson has good reason to

believe that the Blanchard's **are running a Ponzi scheme.**  The dispute between Mr. Nelson and

the Blanchard's began while he was employed by one of their many companies **over a crypto**

**currency named "HERC",** Mr. Nelson received an email from a fellow shareholder who

informed him that a group of **investors had purchased three million dollars of the crypto**

**currency** and w<u>anted to know where the money was.</u>   "In a document explaining "HERC"

produced by the Blanchard's (see attached Exhibit H, "HERC" White Paper) the Blanchard's are

listed as CEO and President on page 14 and on page 18 is an individual know as Joby Weeks.  Mr.

Weeks is listed as a member of the "Advisory Board".  Mr. Weeks was indicted out of United

States District Court in New Jersey, in the United States of America v. Matthew Brent Goettsche

et al. 18-CR-877-CCC<u>, for conspiracy to engage in wire fraud in connection with his role in</u>

<u>BitClub Network.</u>  Mr. Weeks ultimately entered a plea in that case."  AND "It is not just that the

Blanchard's had a member of the "advisory Board" that was indicted for the "Bitclub

Conspiracy", while Mr. Nelson worked for the Blanchard's he personally witnessed Anthem

Blanchard recruit for and invest money into BitClub." AND "The Blanchard's have also started

multiple companies in recent years and make **astounding claims such as their company is securing the energy gird in California**, claim to be in partnership with the country of the Netherlands, **claim to securing all gold imports and exports to the country of the Netherlands.**" AND "The issue concerning whether or not the Blanchard's **are involved in a "Ponzi scheme"**, and whether or not they are **being assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues involved in the federal litigation in Kansas. AND "What has occurred between these two cases is a board member of Anthem Holdings Company sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District Attorney's office to try and stop Mr. Nelson from defending the federal case.  Mr. Nelson as a constitutional right to participate in the federal litigation pending in the United States District Court of Kansas and he has done nothing wrong by doing so." See Generally Exhibit E.

The parallel criminal case involves largely threats from *pro hac vice*, attorney Craig Alan Brand who is at the center of the parallel criminal case, having threats issued regarding, a DEAD whistleblower, in another criminal case involving Dale Takio, an employee of the companies controlled by the plaintiffs, who is also identified as a witness in the *Rule 26(a)* disclosures.  I am a significant equity interest holder in the companies at dispute and **one of many WHISTLEBLOWERS who reported securities violations** regarding PUMP and DUMP of CRYPTO CURRENCIES.  This entire SLAPP litigation is nothing but an invidious harassment lawsuit to prevent disclosures about potential securities violations to regulators.   "Mr. Nelson has a constitutional right to participate in the defense of the lawsuit filed against him by an associate of the state's complaining witness."  See Generally Exhibit E

> "The right to offer the testimony of witnesses, and to compel their attendance if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own

witnesses to establish a defense,  This right is a fundamental right of due process of law.   ***Washington v. Texas, 388 US 14, 19 (1976)"***  See Generally exhibit E, Motion.

The defendant/counter-plaintiff is proceeding pro se out of necessity in lack of funds, having to fend off the SLAPP (Strategic Lawsuit Against Public Participation) filed by the plaintiffs whilst simultaneously defending criminal charges relating from the same nexus.  The plaintiffs in this SLAPP litigation are directly related to the criminal proceedings.  I APPEAL the District Court Judge John W. Broomes, relating to STAYING this civil case to allow the parallel criminal case to conclude. I have also attempted compliance with all other Orders of the US District of Kansas Federal Court including without limitation registration for pro se notification via email, *see above* though I am not receiving timely notices nor are my emails to the Court being timely processed ever since approximately 13 December 2022, nonetheless using inordinate time of the Court personnel I have been able to get them to find my emails in junk folders, though I still have no way of getting court emails not to go to junk folders or be auto deleted.  I believe my filings have complied substantially and to the best of my ability with those Orders of the Court to register for pro se notification of filings and reply with copies of Order from the Oklahoma criminal court which has dictated where I can reside and am allowed to return. See generally Exhibit "M".   I replied timely to the District Court, providing the order from the Oklahoma Court, dictating where I can reside and where I must return.

**On page 3, of the Appealed Order, the District Court states:**  "Defendant's motions are not models of clarity. The motions are rambling diatribes attempting to ascribe some error to Judge Birzer's previous orders.**"**  Equally the orders and verbal instructions of the parallel criminal case in Oklahoma **are not clear** and **IF** travel to Kansas is permitted, as well as inherent fear that any wrong step will lead to incarceration.   Emailing per Order of the Court in Doc. 67, attorney Chris Kellogg, had **Craig Alan Brand run to the prosecutor in the parallel criminal proceedings** and subsequently I was taken into custody in part for emailing Kellogg, in

accordance with ORDERS of US District of Kansas Federal Court.  **One Court cannot order me to do something, which in turn another court then incarcerates me for** following Orders. I will NOT follow orders which I believe will incarcerate.  **I seek APPEAL to address the "SCORCHED EARTH" litigation policy being pursued by Chad Koehn, a now SANCTIONED former stockbroker who is SUSPENDED by a US Federal Regulator.**

      **Doc. 254, brings matters to the Court for Objection** of the Court not reviewing of documents 52 and 57, regarding a false designation email sent by Craig Alan Brand, *pro hac vice*, where Brand intentionally sent email from an email address other than he was emailed to by Chambers of the Magistrate, Brand's actions intentional were to have me involuntarily violate the orders of the parallel criminal proceedings, see Generally Documents 52 and 57.   Also bringing to attention of the *District Court Gliatta v. Tectum Inc., 211 F. Supp. 2d 992, 1009 (S.D. Ohio 2002)* **(lawsuit brought in bad faith with retaliatory motivation prohibited)**; *Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)* ("baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions"); *Stanerson v. Colorado Boulevard Motors, Inc., No. 06-cv-00856, 2006 U.S. Dist. LEXIS 80124 (D. Colo. Nov. 2, 2006);* Indeed, threatening to sue a whistleblower can be actionable retaliation. *Brach v. Conflict Kinetics Corp.,(2016).*Retaliation is prohibited even if it is undertaken at the request of a government official. *10 USC § 2409 (a)(3)(B).*

      I removed the SLAPP (Strategic Lawsuit Against Public Participation) state petition filed by the plaintiffs and served me in Essex County, New Jersey, which contained **a KNOWN Racial Insult in place of my given name.**  "The Magistrate report again does not take seriously enough the use of the RACIAL SLUR / INSULT.  **My concern is how the Racial INSULT** was used, the FACT two licensed attorneys proof-read and signed the petition and the plaintiff's reviewed the petition for form and substance as required by law**.  All of them KNEW** the term was included and ALL of them allowed it to remain unchecked in the SLAPP petition.

**See page 6, of Doc. 254**

"<u>Magistrate FAILS to lay out all the facts</u>, which include the Magistrate ordered the parties not to file motions/answer until further notice, I unlike the licensed attorneys followed the orders of the Court. At each and every step I am barred from filing motions/answer but the bar licensed **attorneys are allowed to violate the Rules of Professional Conduct, Local and Federal Rules and even ORDERS with impunity.** <u>See generally page 8:</u>

"On page 11 of Order 63 at Footnote (9) the Magistrate Report references a unique, yet brilliantly written document referred to as the "Pillars of Professionalism". Concern is brought forth to the Court, that this document seems to replace and effectively lessen the responsibilities of Licensed Attorneys. Nowhere within the document entitled "The Pillars of Professionalism" <u>**am I adequately protected**</u>. The document appears to give **licensed attorneys a "pass" at their regular violations to the Rules of Professional Conduct."**

"At (E) of Doc 63, the Magistrate errors in the application of the law, only referencing the Atty. General and NOT the SEC (Securities Exchange Commission) a FEDERAL ENTITY.  I respectfully remind the Court that the SEC (Securities and Exchange Commission) is a Federal Commission and as such the Court has the Power to issue writs as granted under the US Constitution and All Writs Act, especially when a matter of law is cited and reason provided given the **material misrepresentations as to "nerve center" to the highly bigoted naming convention of the CRYPTOCURRENCY Hedge Fund "RED NECK High Tech Yacht Fund LP**", obvious and evident material misrepresentations **proof positive of on-going violations to Federal Law**. A writ should be issued to the Securities and Exchange Commission (SEC) a Federal entity, if not also notice of the Attorney General for the State of Kansas, whilst I may not be a citizen of the State of Kansas, I deserve no less protection under the 14th amendment than citizens of the several states."

This matter involves issues with the Advisers Act, Exchange Act, and issues of material misrepresentations, omissions and illegal trading upon US Federal Resources and States, including the use of US MILITARY LOGOS, SEALS by the plaintiffs to imply partnerships where none exist.  I have also requested in February for financial disclosures of the Jurists as I have a right to ensure given the issues involving public companies that no conflicts of interest are present.  <u>Craig Brand's threatens criminal prosecution to gain unfair advantage</u>, he uses his minions to imply the ability to improperly influence Judge's, making wild public claims to be a "policy expert" on a wide range of issues, implying presiding Judge Broomes.  **<u>Brand's</u>** claims <u>WHISTLEBLOWERS, windup DEAD</u>, like the <u>DEAD whistleblower</u> in the Dale Takio criminal

case involving <u>Public Company Simon Properties</u>.  <u>Craig Brand is known for his public statements he</u> **"[CRAIG ALAN BRAND] intentionally provides people false information"** and has **"championed the art of disinformation".**  The Federal Magistrate declared **<u>CRAIG ALAN BRAND to have "played fast and loose", meaning was DISHONEST</u>**, in his affidavit for *pro hac vice* status.  Requests for financial disclosure reports have been denied despite the new **"<u>Courthouse Ethics and Transparency Act</u>** <u>requiring federal judges' financial disclosure reports be made publicly available online</u> and mandates that federal judges submit periodic reports of securities transactions..."  The first amendment to such laws since 1978.  Larry G. Michel refused initially to comply initially with FRCP Rule 7.1(a)&(b), and now given the contrite recusal of a US Federal Magistrate Judge, via addition of the son of the managing member of the plaintiffs law firm and that of Chambers Counsel Samantha Parks Angell, it is more important now than ever that transparency of fair unbiased Judges be demonstrated to the public at large.   The successful JUDGE SHOPPING via lies to the Court in writing demands that the public be protected as well as the undersigned unrepresented pro se litigant.

**<u>See generally page 10, Doc. 254; 14th Amendment Rights not equally applied:</u>**

> "The Court has had the unusual and non-conformity with the rules need to ORDER: "the Court ORDERS Plaintiffs to provide Defendant with a hard copy of any future filings via regular mail and to certify service of same." Each and every filing of the licensed attorneys filed a certificate of service, however, did purposefully and maliciously in bad faith refuse to provide a copy or notice to me PRO SE, indicating proof positive of bad faith, even the Court has found: "The same cannot be said of the represented litigant, for we expect counsel to know the pleading rules of the road without being given personal notice of them by the district court. Our concern here is with the pro se litigant unschooled in the law." *See Erickson, 127 S.Ct. at 2200; Andrews, 483 F.3d at 1076-78*. FOUR (4) different lawyers all working against me, apparently know not the FRCP and are ORDERED time and again to follow FRCP, licensed professional should **know the pleading rules of the road without being given personal notice of them by the district court" id., conversely as I am PRO SE without legal education** and learning as quickly as possible and has yet to be given any direction from the Court as to what I have done wrong or what is not permitted by the rules, <u>the Court should have "concern here is with the pro se litigant unschooled in the law"</u> id. …conversely the role models providing

leadership, opposing counsel … continue to flagrantly flout the very rules at bar including Professional Conduct, Local and Federal"

**Doc. 255, involves violations to rights under: 4th, 5th, 6th, 8th, 14th:**

"The pro se defendant should not have his civil rights further eroded nor constitutional rights under the fifth amendment. Plaintiffs filed the frivolous incongruous SLAPP petition to state court and then laid in wait nearly a year, conspiring as the record and facts so dictate with the claimed "victims" in the parallel criminal matter… both Plaintiffs United Capital Management of Kansas Inc. and Chad Koehn have extensive business ties, and have conducted extensive business interactions. All the while Craig Brand is proceeding to the NEVADA SUPREME COURT, according to the sworn testimony of Cynthia Blanchard, president of Anthem Holdings Company, to further appeal the employment matters there in NEVADA, relating to the genesis corporation Anthem Vault Inc. Anthem Holdings Company, did not and sold instead unregistered, unlicensed securities. The "holding company" of Anthem Holdings Company is in material dispute as to a legitimate "reverse short form mergers", … never had shareholder votes, and the regulation D filing stated no "business combination merger", yet the offering documents state a combination merger to effect and consummate the series of "smurfing" in the reverse "short form mergers", subject of multiple parties whistleblower complaints. The plaintiffs here claim tortious interference in the business of UCMK which is apparently in the business as it claims publicly of leading investments into a variety of investment vehicles, some registered and some not, some in compliance and some not as the record indicates. All the claims of the plaintiffs reference directly back to Anthem Holdings Company and Hera Software Development Inc. which is the company of the moniker Herasoft www.herasoft.com the SAME company and TLD used by *pro hac vice* purported attorney **Craig Alan Brand to mislead the Chambers of Magistrate Judge Birzer and the Pro Se defendant in hopes to get the Pro Se defendant on a technical violation of a bonding in the underlying parallel criminal matter**.."

I have laid out the issues for de novo review of the Magistrate's Report consistent with my

Constitutional rights in the face of the parallel criminal proceedings; *SEE page 14*:

"Matter of *Seper, 705 F.2d 1499 (9th Cir. 1983)* The mere implication of PRO SE defendant's FIFTH Amendment Rights; **Warrants A Stay of this Action Pending Completion of the Criminal Proceedings.** Twice recently stays in civil proceedings pending the resolution of criminal proceedings have been granted, as the fundamental rights of the parties must be protected as a matter of Constitutional Law. *Continental Insurance Co. v. Cota 2008 WL 4298372 (ND Cal. J. Conti presiding); Jones v. Conte 2005 WL 1287017*; as set forth in both cases: "[t]he decision western to stay civil proceedings in the face of a parallel criminal proceeding should be determined based on the circumstances and competing interests involved in the case". Keating v. Office of Thrift Supervision 45 F. 3d 322 (9th Cir. 1995) **When faced with the issue of either allowing a civil action to proceed or protecting the Fifth Amendment rights of individual defendants against self incrimination, the majority of courts have consistently chosen the latter."**

Craig Alan Brand has throughout the course of the contentious litigation used extra judicial harassment, use other proceedings as procedural weapons, he has even used intentional false designation emails to Chambers and Nelson in order to have Nelson involuntarily violate another Court's Order placing Nelson in prison, *See generally Documents 52 & 57.*

**Doc. 289:**

1. "Plaintiffs have directly tied the Criminal pending matter to this case in a way which makes discovery impossible and thus the scheduling order not able to be followed and the orders of this court in direct contravention to the Orders in the criminal proceedings.   In the INTERESTS OF JUSTICE THIS CASE MUST BE STAYED pending resolution of the parallel criminal matters to that ALL PARTIES can be properly and legally JOINED herewith this Civil Matter."   See page 14 of Doc. 289

 IF **"...the integrity of the judicial process is to be maintained, and the appearance of impropriety to be scrupulously avoided, the issue of an allegedly improper representation should be resolved at the outset, "lest a costly and protracted trial be tainted on the merits by an issue collateral thereto."** *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 803 (2dCir. 1974).*   The US District Court continues with a motion for the disqualification of pro hac vice, attorney Craig Alan Brand, which would dramatically reduce the circus act environment of this case and end the SCORCHED EARTH litigation tactics being pursued by the plaintiffs orchestrated by Craig Alan Brand, who publicly in the books he has authored:  "LIFE SUCKS" claims to have "championed the art of disinformation" and that he Craig Alan Brand "intentionally provides people with false information".

**Doc. 292:**

1. The Court errors in plain error, by failing to do substantial justice, wherein I am prohibited from all contact with the attorneys for plaintiff, as they have already run to the prosecutor in the parallel criminal case for emailing to take a deposition of an identified witness,

though they purposefully miss identify the witness as Gil Gilliam when in fact the witnesses true identity is HOWARD LAVON GILLIAM, demonstrating further scorched earth litigation tactics being pursued by *pro hac vice* attorney Craig Brand.

2. In Order to prevent discovery in the matter, plaintiffs have run to the prosecutor in an ongoing directly related parallel criminal case involving substantially all the same parties and events, claiming that emailing with Chris Kellogg as per the Orders of the Court in document 67, violates the bond conditions in the parallel criminal matter(s).

3. The Prosecutor was provided emails between myself, and attorneys for the plaintiffs

4. My criminal defense attorney filed a response: *"Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit. The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard"* See Ex. E

5. **Prosecutor:** "<u>You cannot violate the bond conditions in Oklahoma just because you have a civil lawsuit pending in Kansas</u>. **That is a legal rodeo you have to figure out on your own** if you're going to represent yourself pro se in Kansas." *Lines 21 - 23, p. 12 Ex. "C"*

6. **Prosecutor:** "I believe, on the Federal lawsuit in Kansas. This all goes back to I'm sorry if you have spent a lot of your money paying for three attorneys in the State of Oklahoma bonding out in the State of Oklahoma, and you can't — or no one will take your case in Kansas — **because that's the other rumor I've heard**. But just because you don't have anyone to represent you in Kansas, doesn't mean you get to violate a Judge's order in the State of Oklahoma" *Page 24 lines 14-23; Exhibit "C"*

7. Doc. 292, also involves the issue of the plaintiffs constantly demanding sanctions for my resisting violating the plethora of conditions placed upon me by the same parties suing me. <u>The court is making new law, and overriding case precedents</u> *Brickwood, 369 F.3d at 389 (emphasis added); see also Hamlin v. TD Bank, No. 1:13-CV-00200-MR-DSC, 2014 WL 3101942, at \*3, n.2 (W.D.N.C. July 4, 2014)*

8. The use of the directly parallel criminal proceedings to exact inordinate punitive punishments against the US Constitution for the constitutionally protected activity of defense of the SLAPP lawsuit here, is <u>demonstrable constitutional crisis,</u> must be addressed in separate briefs now requested.   Especially where the constant pursuit of sanctions has the Court here to seek alternative means to punitively sanction an unrepresented pro se party, and overturn its own rulings *Mellott v MSN 4 Communications*

*Inc., 492 Fed. Appx. 887, 888 (2012) (emphasis added); see also Peoples v Wichita State University, No. 18-1010-JWB, 2019*

The attorneys representing the plaintiffs in the civil case above herein referenced have <u>continually run to the prosecutor in the parallel criminal case to prevent, discovery, prevent depositions, and have even succeeded in jailing the undersigned appearing pro se for participation in this civil matter.</u> To say the two cases are joined as essentially one would be an understatement. The plaintiff's even list all their witnesses which are conspicuously absent Spencer Angell, as the employees of Hera Soft aka Hera Software Development Inc. with the identical address in Bartlesville Oklahoma, see Exhibit F, their 26(a) disclosures which are conspicuously void the name Spencer Angell. Kevin Adams my criminal defense attorney made the matter well known the response to the State of Oklahoma, see Exhibit "E", wherein Mr. Adams states: "Mr. Nelson took the action the state complains of during the course of litigation while defending himself, pro se, in a pending federal lawsuit. The lawsuit was filed against him by a board member of the company controlled by Cynthia Blanchard" & *"TO BE CLEAR: Chad Mitchell Koehn, is a member of the board of directors of Anthem Holdings Company. He has even listed himself in SEC Disclosure statements as having a conflict with UCMK in the referral and sale of securities in Anthem Holdings Company."* See Exhibit E.

To further complicate matters, when plaintiff Chad M. Koehn learned on 13 October 2022, that I was bailed out of jail after being taken into custody, in part for following Orders of the Court in Doc. 67, the very next day 14 October 2022, Chad M. Koehn submitted an offer in compromise for a judgment **order against him to a US Federal Regulator, accepting SANCTIONS against plaintiff Chad M. Koehn.** <u>See Exhibit G.</u> The coincidences occurring in this civil litigation in tandem with the criminal prosecution in Oklahoma are not just uncanny, they are nefarious. Now securities fraud attorneys from Coast to Coast are searching for victims, case in point Exhibit H, Carlson Law Group: <u>Salina Advisor Chad Koehn: FINRA Investigates Ex-SA</u>

Stone Rep  Broker Check regarding stock brokers, now carries a "WARNING" regarding Chad M.

Koehn, see Exhibit "i" [https://brokercheck.finra.org/individual/summary/2216169] Broker Blogs

carry stern headlines *"Chad Koehn Suspended by FINRA Following Alleged Unapproved*

*Securities Transactions"* Kurta Law Chad Koehn Violations See Exhibit "J".

    Plaintiff Chad M. Koehn is a FORMER stock broker, currently SANCTIONED by a US

Federal Regulator for volatile conduct in violation of securities laws, rules and regulations, **see**

**Exhibits G, H, i, K** attached herewith.   Fantastically Koehn etAl. also claims to have a contract

with the Country of the Netherlands (Holland), "to verify all gold imports and exports for the

entire nation", implying a direct partnership with the Netherlands, see Exhibit E  Koehn also

regularly advertises using the Great Seal of the State of California and the US Department of

Energy directly implying a working relationship and contract with the US Federal Government

and the State of California.   Demonstrating clear materially false claims, thus materially false

misrepresentations to defraud investors and the public at large  "The issue concerning whether or

not the Blanchard's are involved in a **"Ponzi scheme",** and whether or not **they are being**

**assisted by Chad Koehn** the board member of Anthem Holdings Company, are all issues

involved in the federal litigation in Kansas." See Generally exhibit E, Motion.

"What has occurred between these two cases is a board member of Anthem Holdings Company

sues Mr. Nelson, lists the Blanchards and their employees as witnesses associated with the

Blanchards to defend the federal lawsuit, the Blanchards run to the Washington County District

Attorney's office to try and stop Mr. Nelson from defending the federal case.  Mr. Nelson as a

constitutional right to participate in the federal litigation pending in the United States District

Court of Kansas and he has done nothing wrong by doing so."  See Generally exhibit E, Motion.

    Beginning with a separate entity Chad M. Koehn and UCM are involved with that of

BitClub, an alleged high tech Ponzi scheme, bilking at least $722 million from 10's of thousands

of investors, being prosecuted by US Attorneys in the US District of New Jersey.   Including

previously convicted child sex predator Russ Albert Medlin, currently incarcerated in Indonesia, on further child sex charges, again, see Exhibit "K":  "American wanted by FBI arrested in Indonesia for suspected child sex crimes" from REUTERS

https://www.reuters.com/article/us-indonesia-crime/american-wanted-by-fbi-arrested-in-indonesia-for-suspected-child-sex-crimes-idUSKBN23N1KB   Joby Weeks, who has plead guilty to charges including "knowingly and intentionally conspired and agreed with each other and others to directly and indirectly willfully offer and sell unregistered securities, contrary to Title 15, United States Code, Sections 77e and 77x."  See Generally:

https://storage.courtlistener.com/recap/gov.uscourts.njd.422880/gov.uscourts.njd.422880.1.0.pdf
https://www.justice.gov/usao-nj/bitclub & https://www.justice.gov/usao-nj/page/file/1489316/download

As noted by DOJ Press Releases, see Exhibit "N";   If it pleases the Court to take Judicial Notice that the de facto PPM (Public Placement Memorandum) issued for HERC crypto stock coin, has on page 18, as the advisor Joby Weeks, the same individual referenced herein above in the Bitclub Ponzi scheme as prosecuted by US Attorneys.  A copy of the PPM (Public Placement Memorandum) distributed by Koehn in Exhibit H of Exhibit E.

The Court should also take Judicial Note, that Joby Weeks is described as:

> "As the Prime Minister of Atlantis and Founding Father of Liberland Joby Weeks has found himself in bitcoin since it began as well as has worked in digital currencies since before 2009.  Finding himself at the helm of Liberty Dollar his project minted more than $100mm worth of gold rounds.  Joby is known to be the defender of personal rights and the protector of peace across nations."

If it pleases the Court and for the benefit of the United States of America, as this is an Article III, Constitutional Federal Court, that the Court recognizes that the United States Government neither recognizes "Atlantis" nor "Liberland" as legitimate nation states.

Proceeding pro se out of necessity I have pleaded and begged the Court to stay the matter before the Court of the above herein referenced case, especially given the circumstances and fact.  **I am a whistleblower who is being beaten up in multiple courts while Koehn and crew seek to fight various charges as is evident.**  The Criminal proceedings in Oklahoma, charging me with

stalking, have been levied and have continued in tandem to these civil proceedings where the criminal case and its restrictions are used as a procedural weapon to prevent under threat of incarceration my defense of the SLAPP complaint by Koehn etAl.

**The court in Oklahoma is a criminal state Court, which has stated it must control.**

**JUDGE:** "A criminal case is superior to the civil case. The conditions — the bond conditions in the criminal case are in place for a reason and remain effective throughout this criminal case and until and unless they're changed." *Lines 24 - 24 page 27 & lines 1 - 3 page 28; Exhibit "C"*

The Prosecutor:  "I'd like to respond to some of that, seeing as how I have now been apparently accused of collusion. I think the word would be "prosecutorial misconduct." And I would like to set the record straight. I have never had any – well, I take that back. Mr. Koehn did call me back in December of '21" … "…I have not spoken to Mr. Koehn at all."    "In fact, I find him kind of a jerk, so I don't particularly like Mr. Koehn."  "…some silly civil lawsuit that is happening in a Federal court in Kansas."  See Exhibit C

**The Orders Appealed should be determined "De Novo" not otherwise:**

In Order of the Court by the Honorable United States District Judge John W. Broomes, he writes:  *In reviewing an order by a magistrate judge, the district court "applies a more deferential standard [than de novo review] by which the moving party must show that the magistrate's order is 'clearly erroneous or contrary to law.'" Burton v. R.J. Reynolds Tobacco Co., 177 F.R.D. 491, 494 (D. Kan. 1997) (quoting 28 U.S.C. § 636(b)(1)(A)). The clearly erroneous standard requires that the district court affirm unless on the evidence the district court is left with a definite and firm conviction that the magistrate judge's decision was in error."* See id See generally page 2 of Order of US District Judge John W. Broomes in Document 334.

**Legal Standard for Review of Magistrate Report:**

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  *See Fed. R. Civ. P. 72(b)(1)*  When resolving objections to a Magistrate Judge's

proposal, "[t]he district judge **must determine de novo** any part of the magistrate judge's

disposition that has been properly objected to.  The district judge may accept, reject, or modify

the recommended disposition; receive further evidence; or return the matter to the magistrate

judge with instructions." **Fed. R. Civ. P. 72(b)(3)**.  **Similarly, 28 U.S.C. § 636 provides:**

> **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

**28 U.S.C. § 636(b)(1)(c).**  "'The filing of objections to a magistrate's report enables the district

judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties'

dispute.'" *United States v. One Parcel of Real Prop., with Buildings, Appurtenances,*

*Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla., 73 F.3d 1057, 1059*

*(10th Cir. 1996)*("One Parcel") (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). **As the**

**United States Court of Appeals for the Tenth Circuit** has noted, "the filing of objections

advances the interests that underlie the Magistrate's Act, including judicial efficiency." *One*

*Parcel, 73 F.3d at 1059* (*Niehaus v. Kan. Bar Ass'n,* (10th Cir. 1986), superseded by statute on

other grounds as stated in *De Vargas v. Mason & Hanger-Silas Mason Co., (10th Cir. 1990);*

*United States v. Walters, (6th Cir. 1981)).*

   **The Tenth Circuit has held** "that a party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue **for de novo review** by the

district court or for appellate review." *One Parcel, 73 F.3d at 1060.* "To further advance the

policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s]

adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the

magistrate's findings or recommendations waives appellate review of both factual and legal

questions.'" *One Parcel, 73*   This is NOT the case, here where timely objections have been raised

of specific issues with the Magistrate Judge's Report, and this issue is further complicated by the

FACT the US Federal Magistrate has now recused herself, based upon the appearance of impropriety as referenced herein above regarding the nepotism related to that of one SPENCER ANGELL the son of US Federal Chambers Counsel SAMANTHA PARKS ANGELL.

**The Tenth Circuit has noted,** "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" *One Parcel, 73 F.3d at 1060 (quoting Moore v. United States (10th Cir. 1991)* ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")). *Cf. Thomas v. Arn, 474 U.S. at 154* (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review … *sua sponte* or at the request of a party, under a de novo")

In *One Parcel,* **the Tenth Circuit** also noted that the district judge had decided *sua sponte* to conduct a de novo review despite the lack of specificity in the objections.  Here not only is the undersigned a appearing pro se, out of necessity while a parallel criminal proceeding continue, unabated but no order entered by the Magistrate Judge Birzer, who has now recused herself from the proceedings, carried upon any Magistrate Judge Order the appraisal of the pro se litigant to the effect of the Magistrate Judge's Order(s), nor was the undersigned appearing pro se, permitted to travel for hearing before the US Federal District Court Judge, given the travel restrictions, as noted, as to where the pro se undersigned may reside and return, as fully answered per the show cause in document 337 and its attachments, attached as Exhibit "M".

Nelson a whistleblower regarding far reaching detrimental impacts to the US economy and financial system, including the US Dollar, presented by clear and present danger to the investing public, by a series of CRYPTO CURRENCIES, alleged **"Ponzi like" schemes to defraud and undermine the US Financial System**.  **Koehn is a SUSPENDED** securities

broker, recently **SANCTIONED, and FINED** for Violative Conduct by a US Federal Regulator, is using this litigation & criminal proceedings in Oklahoma to SILENCE the pro se, Nelson.

**Legal Standard REGARDING STAYING of a Civil Case in light of a Criminal One**

Courts have discretion in determining whether to grant a motion to stay. *Landis v. North Am. Co., 299 U.S. 248, 254 (1936)*. As the Supreme Court recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* The determination of whether to stay a proceeding "calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Popoola v. MDIndividual Practice Ass'n., Inc., No. DKC-00- 2946, 2001 WL 579774, at \*2 (D. Md. May 23, 2001) (quoting United States v. Georgia Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977)); Landis, 299 U.S. at 254-55 (noting that the decision as to whether to stay a proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); see also, e.g., In re Mutual Funds Investment Litigation, MDL No. 1568, 2011 WL 1540134, at \*1 (D. Md. Apr. 20, 2011)* (assessing a request for a stay pending appeal and noting that, in striking the balance *Landis* envisioned, courts look to such factors as the length of the stay, the hardship to the movant were the action to proceed, the burden a stay would impose on the non-moving party and **whether the stay would promote judicial economy by avoiding duplicative litigation**).

**A Stay of All Civil Proceedings Until Resolution of the Pending Criminal Matter is Warranted.** Where the same incident gives rise to a civil lawsuit for damages and a criminal prosecution, the civil case ordinarily should be stayed until the criminal proceedings have concluded. *See Estes-El v. Long Island Jewish Med. Ctr., 916 F. Supp. 268, 269 (S.D.N.Y. 1995)* (explaining "[i]t is well-settled that the Court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."); *Guillory v. Wheeler,*

*303 F. Supp. 2d 808, 811 (M.D. La. 2004)* (observing that where criminal charges remain pending, "the better course is to proceed as strongly suggested by the Fifth Circuit Court of Appeals--to stay proceedings ... until the pending criminal case has run its course"); see also, *e.g., Peyton v. Burdick, 358 F. App'x 961, 962 (9th Cir. 2009)* Gallipeau v. Mitchell, No. 07-3522, 2009 WL 539947, at *1 (D.S.C. Mar. 4, 2009)

The Supreme Court, in discussing claim accrual, noted: If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and **in accord with common practice**, **to stay the civil action until the criminal case or the likelihood of a criminal case is ended.** *Wallace, 549 U.S. at 393-94.*

Courts, relying on Wallace, **routinely stay civil actions** pending resolution of ongoing criminal proceedings when those civil suits. *e.g., Dickerson v. City of Charleston Police Dep't, No. 10-1625, 2011 WL 3880958 (D.S.C. Aug. 10, 2011), adopted by 2011 WL 3881041 (D.S.C. Sept. 2, 2011*) Cameron v. Wise, No. 09-967, 2009 WL 3755093 (S.D.N.Y. Nov. 2, 2009); Crooker v. Burns, 544 F. Supp. 2d 59, 60 (D. Mass. 2008); Motley v. Wolf, (E.D. Mo. Dec. 3, 2007).

Even prior to *Wallace*, courts recognized that staying the civil action until resolution of the criminal matter makes sense in most instances because the resolution of the criminal action could contribute significantly to the narrowing of issues in dispute in the civil case, **would avoid potential Fifth Amendment issues and other discovery problems that may arise in parallel proceedings, and should prevent inconsistent rulings.**

*See Estes-El, 916 F. Supp. at 270* (identifying concerns created by proceeding simultaneously in criminal and civil actions); *Guillory, 303 F. Supp. 2d at 810-11 (same)*. Other courts, including state courts, have frequently stayed discovery in civil proceedings when a related criminal prosecution may be undermined by a criminal defendant's use of the broad discovery rules available in the civil case.  Yet, here the plaintiff's seek to constantly bombard the

pro se litigant in multiple courts simultaneously while refusing to provide any discovery themselves. *See, e.g., State v. Deal, 740 N.W.2d 755 (Minn. 2007); State v. Tomasso, 49 Conn.Supp. 327, 878 A.2d 413 (Conn. Super. 2004); Turley v. U.S., 2002 WL 31097225 (W.D. Mo. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Sup.2d 6, 10 (D. Conn. 2002).* The rationale behind such a stay is that a litigant should not be allowed to use the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery and obtain documents he would not otherwise be entitled to for use in his criminal suit. *Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir.1962), cert. denied, 371 U.S. 955 (1963):*

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. But these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. *Id. at 487-88*

In this particular case, the weight of the various interests tip heavily in favor of issuing a temporary stay until the parallel criminal proceedings are resolved. First, were the civil action permitted to move forward prior to resolution of the criminal matter, individual defendants would be forced to defend claims that might ultimately be barred by *Heck v. Humphrey, 512 U.S. 477 (1994).* As the Supreme Court recognized in *Wallace*, it is possible that a conviction in a related criminal case will bar some, if not all, of the claims in the civil action. *Wallace, 549 U.S. at 393-94 (citations omitted)* civil suit would impugn that conviction, Heck [v. Humphrey] will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."); *see also Quinn v. Guerrero, No. 09- 166, 2010 WL 412901, at *3 (E.D. Tex. Jan 28, 2010), adopted by 2010 WL 653477 (E.D. Tex. Feb. 23, 2010) (same); Cameron, 2009 WL 3755093, at *3 (same).* Although litigating claims that may ultimately be barred burdens all parties as well as the Court, the burden is disproportionately borne by Defendant.

        **In addition, the interests of the United States are at issue**, to ensure that the

government's interest in vindicating justice in the criminal case are recognized, as well as in those

investigations initially brought by the whistleblower(s), here the defendant among them for the

CRYPTO CURRENCY financial market manipulations to the detriment of public financial

markets regarding HERC stock coin and other crypto currencies.  This case, to proceed

simultaneously with the criminal action, the defendant would be forced to respond to and defend

claims that might otherwise be resolved by a threshold legal motion.  More importantly, the

overriding interest of the United States in ensuring a fair resolution of the pending criminal

charges would be impaired, as well as the defendant's right to a fair defense.

        Even in instances in which it is unclear whether the claims a plaintiff has raised in a civil

case will necessarily be barred by *Heck* if the plaintiff is convicted, the better course is to stay the

civil action in its entirety while the criminal action is ongoing. *Crooker, 544 F. Supp. 2d at 65*

(noting that the criminal disposition will permit the court to better assess whether *Heck* applies to

claims and rule consistently on any constitutional issues); *Motley, 2007 WL 4270569, at *1*

(determining that a stay was justified because otherwise the parties would be left to "speculate

about whether a prosecution will be brought, whether it will result in conviction, and whether the

impending civil action will impugn that verdict" *(quoting Wallace, 549 U.S. at 393)); Guillory,*

*303 F. Supp. 2d at 811* (explaining that the better course is to stay the civil case in part because it

is difficult to determine without resolution of the criminal proceedings how excessive force claim

would be affected by the criminal matter).  Second, while the temporary stay may impose a slight

burden on Plaintiff, who like all Defendant, ostensibly seeks expeditious resolution, the proposed

stay would not be unduly burdensome because there is no matter imminent and there has been no

indication by other than the plaintiff consistently looking to "JUDGE SHOP" and structure the

Court to their liking, while seeking in person hearings which the undersigned pro se is barred

from attending based upon the underlying criminal proceedings.  Thus **impairing fundamental**

**civil rights of those of due process of law and constitutional rights to defend the SLAPP litigation**.   Moreover, because the incidents at issue in this lawsuit is purportedly from the Plaintiffs' perspective a long running matter and dispute dating back well before the present, there is no danger of lost evidence or a sudden shift in the facts underlying the civil claims on either side, barring plaintiff Chad Koehn being further criminally cited for another fire, as he was just hours prior to service of the originating petition which sat for nearly a year with no attempted service, of the SLAPP petition containing **a known racial insult in the place of the name of the undersigned appearing pro se.**

Perhaps the most compelling reason to stay the pending civil matter is that a temporary stay of the civil matter may serve to protect the defendant, who can avoid the potential for self-incrimination. *See, e.g., Shaw v. Hardberger, No. 06-751, 2007 WL 1465850, at *1-2 (W.D. Tex. May 16, 2007)* (granting plaintiff's motion to stay in part based on potential Fifth Amendment concerns because the civil case arose from the same set of operative facts as the criminal charges and thus "there is a danger of self incrimination"); *Estes-El, 916 F. Supp. at 270* (explaining that permitting the civil action to go forward may prejudice the plaintiff because of "potential Fifth Amendment issues"). The minimal harm a short postponement of the civil matter occasions does not appreciably tip the scales against a stay.

**Third, a stay will promote judicial economy.**   While a stay temporarily will defer the Court's assessment of claims, awaiting the resolution of the criminal matter likely will foster a more efficient evaluation. *Cf., Wallace, 549 U.S. at 394* (noting that "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."). In particular, the postponement of the civil case may streamline review by potentially eliminating some (or all) of the issues in the civil case. *See Quinn, 2010 WL 412901, at *3* (noting "it would be a waste of the Court's limited time and resources to handle claims which may ultimately be barred"); *Cameron,*

27

*2009 WL 3755093, at *3* (observing that the "interest of judicial economy is served by waiting for the outcome of plaintiff's criminal proceeding"); *Estes-El, 916 F. Supp. at 270* (noting that "[t]he interest of judicial economy strongly supports a stay" because disposition of the criminal charges "may well be determinative" of plaintiff's civil claims).

Even if the defendant is ultimately absolved of all charges or avoids criminal prosecution altogether and Plaintiff is able to surmount a *Heck* challenge, courts acknowledge it is still more efficient to await final resolution of the criminal action before proceeding in the civil case. *E.g., Crooker, 544 F. Supp. 2d at 65* (staying Bivens claims and reasoning, "[t]hough it is conceivable that some of the allegedly [improper conduct might] ... escape the *Heck bar*, **conservation of judicial resources dictates a single determination** as to the applicability of *Heck* at the conclusion of all criminal proceedings.").  A stay ensures that this Court is not simultaneously adjudicating the same issues as those before another court in the criminal matter. *Id. at 64*  Therefore, under either scenario (i.e., defendant is found guilty or acquitted), **proceeding seriatim rather than simultaneously is <u>likely to promote judicial economy.</u>**

A stay of the civil action likewise serves the interest of judicial economy because it eliminates the need for the Court to structure civil discovery to account for (or to resolve any discovery disputes that may affect) the pending criminal case. *E.g., Quinn, 2010 WL 412901*, at *3 (staying the civil case in part because "[t]he Court simply cannot fathom how it could construct a discovery plan that would balance the need to protect the interests and rights of all parties in the criminal matter with the need to have productive and relevant discovery in the civil matter"); *Shaw, 2007 WL 1465850, at *2* (citation omitted) (observing, "[i]f this civil action is stayed until the conclusion of the criminal proceedings, there is no need to make rulings regarding potential discovery disputes involving issues that may affect the criminal case.").

Finally, the United States has an interest in preserving the integrity of criminal proceedings and investigation(s) and not jeopardizing an ongoing federal criminal investigation

with civil depositions and discovery and ensuring that criminal defendants do not circumvent the

more limited scope of the criminal discovery rules by obtaining discovery through a civil lawsuit,

especially wherein here now Plaintiff Chad M. Koehn has been SANCTIONED by a US Federal

Regulator and as the exhibits attached herewith indicate he or UCMK may be subject to other

investigations, especially given Koehn's ties to Anthem Holdings Company and HERC crypto

currency among others, wherein at least one directly connected person has plead guilty in the

Bitclub alleged Ponzi scheme and the US awaits extradition of Koehn associate Russ A. Medlin.

The party pursuing the civil matter need not intend to defeat the strictures of criminal discovery.

*Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).* Courts

nonetheless recognize the real risk that, when the issues in the civil and criminal proceedings

overlap.  In other words, regardless of a party's motives, there are inherent risks in allowing civil

discovery to proceed while a criminal case is pending.  *Id.; Javier H. v. Garcia-Botello, 218*

*F.R.D. 72, 75 (W.D.N.Y. 2003)* (observing that allowing civil discovery to proceed would afford

criminal defendants access to evidence not accessible under the criminal discovery rules "and,

thereby, prejudice the proceedings").

  *Bristol v. Nassau County, No. 08-3480, 2010 WL 1660238, at \*1-2 (E.D.N.Y. Apr. 22,*

*2010); Combs v. Nelson, No. 09-329, 2009 WL 2044413, at \*2 n.3 (E.D. Ark. July 10, 2009)*

(observing that "[i]n some cases the government seeks postponement of the noncriminal

proceeding, to prevent the criminal defendant from broadening his rights of criminal discovery

against the government") cf., Shaw, 2007 WL 1465850, at \*2 (stating that **"the public's interest**

**in the integrity of the criminal case is entitled to precedence over the civil litigant"** (quoting

Javier H., 218 F.R.D. at 75)). Accordingly, it is in the interest of justice to stay the civil case until

the criminal case ends provides for Judicial Economy and prevents further manifest injustices.

  **IV. CONCLUSION** For the reasons stated above, all of which establish good cause for

the relief sought, the defendant and counter-plaintiff appearing pro se, so requests that the 10th

Circuit Court of Appeals, overrule the District of Kansas, issuing a writ of prohibition to prevent further erosion of constitutional rights and mandating a stay in the Civil proceedings pending the resolution of the criminal case less than 30 days until trial. **Procedural Due Process Civil**

https://law.justia.com/constitution/us/amendment-14/05-procedural-due-process-civil.html

> "SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

WHEREFORE Appeal, with briefs and oral arguments is requested to the 10th Circuit Court of Appeals on grounds of violations to DUE PROCESS of Law, plain error, violations to the Federal Rules of Civil Procedure, Local Rules and certainly Rules of Professional Conduct, by attorneys for the plaintiffs who have continually abused process in this civil matter, continually making filings to the Court and neither noticing nor providing copies of the filings they have made.   Civil proceedings are used as a weapon in criminal proceedings and any attempt to have fairness under due process of law in these civil proceedings are met with inordinate punitive punishments in the criminal proceedings, demonstrating clearly why these civil proceedings must be stayed in light of the criminal proceedings.  This is a SLAPP litigation:  **"Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."** Judge J. Nicholas Colabella wrote in  *Gordon v. Marrone (N.Y . 1992).*

**WHEREFORE PRAYER FOR RELIEF FROM THE US COURT OF APPEALS FOR THE TENTH CIRCUIT;** Without a STAY of these civil proceedings my rights to defend are prevented by orders in the parallel case, thus MANDATING additional and growing litigations, once those proceedings conclude:

1. Filing of additional briefs as determined by the Court of Appeals

2. ISSUANCE of STAY of the Current pending matter in the US District of Kansas pending resolution of the parallel criminal proceedings in Oklahoma

3.  ISSUANCE of WRIT to PREVENT FURTHER MANIFEST INJUSTICE

4.  ORDER that I NOT be required to "Consent to electronic service of all documents"

    mandating I receive service via electronic delivery, as such service is unreliable.

5.  ORDER that My Constitutional Rights be restored; that the US District of Kansas Court

    be Prohibited via Writ of Prohibition from further erosion of my constitutional rights

    including the Constitutional Right to DEFEND, in light of the parallel proceedings.

6.  INVESTIGATION of MISCONDUCT and SANCTIONS for VIOLATIONS of RULES

    OF PROFESSIONAL CONDUCT by attorneys for the Plaintiffs (SEE TRANSCRIPT of

    hearing held 14 December 2022) Attached herewith, as Exhibit B as opposed to Exhibit F.

I further certify that this initial notice and brief complies with Federal Rules of Appellate

Procedure Rule 32(a)(7)(B), containing less than 11,500 words (excluding certificate of service).

Respectfully Submitted, this 13th day of December 2023.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

phone: 702.932.3434   chadkoehnlawsuit@nosoybean.com

**Certificate of Service:**

The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;  I also further certify that this Notice and initial brief is in compliance with Federal Rules of Appellate Procedure Rule 32(a)(7)(B)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED CAPITAL MANAGEMENT OF KANSAS, INC. and
CHAD M. KOEHN,

        Plaintiffs,

v.                                     Case No.  22-4008-JWB

MICHAEL E. NELSON,

        Defendant.

## MEMORANDUM AND ORDER

This matter came before the court for a motions hearing on December 14, 2022.  Plaintiff

Chad Koehn appeared in person and by his counsel, Chris Kellogg and Larry Michel.  Defendant

Michael Nelson failed to appear as ordered.  For the reasons stated herein, Defendant's motions

(Docs. 254, 255, 266, 289, 292) are DENIED.  Defendant is ordered to submit his Pro Se Electronic

Notification form so he is receiving electronic notifications of filings by December 20, 2022.

Defendant is ordered to show cause as to the travel restrictions imposed by bond conditions or

other order of the Oklahoma criminal court by December 31, 2022.  If Defendant fails to show

cause by December 31, 2022, the court may impose sanctions against Defendant for his lack of

candor to the court.

## I.      Background

This case has been contentious from the start, and Plaintiffs and Defendant have filed more

than 300 docket entries in less than a year.  After many of Defendant's motions were struck for

failure to comply with page limitations, Defendant was also notified "that if the court concludes

that it has reason to believe that any motion, brief, or other filing that remains pending after this

order, or is filed at any time hereafter, is frivolous, vexatious, or otherwise presented for any

improper purpose, the court will set the matter for an in-person hearing at which Defendant will be required to appear to argue the motion." (Doc. 183 at 3.)

Defendant subsequently filed numerous motions, briefs, and other filings, including the five motions and filings at issue for the motions hearing. (Docs. 254, 255, 266, 289, 292.) The court determined that the contents of those motions suggested that they may have been frivolous, vexatious, or otherwise presented for an improper purpose, and accordingly set those five motions for an in-person hearing. (Doc. 320.) The notice of hearing was mailed to Defendant on November 16, 2022. Magistrate Judge Birzer's law clerk also notified Defendant of the December 14, 2022 motions hearing by email on December 5, 2022.

Defendant subsequently filed a motion to continue or reschedule the December 14 hearing on December 13, 2022 at about 1:00 pm. (Doc. 331.) The court denied Defendant's motion and ordered Defendant to notify the court by 6:00 pm on December 13 whether Defendant would attend the December 14 hearing. (Doc. 332 at 4.) Defendant notified the court by email at 5:59 pm that he would not attend the December 14 hearing.

## II.      Standard

In reviewing an order by a magistrate judge, the district court "applies a more deferential standard [than de novo review] by which the moving party must show that the magistrate's order is 'clearly erroneous or contrary to law.'" *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D. Kan. 1997) (quoting 28 U.S.C. § 636(b)(1)(A)). The clearly erroneous standard requires that the district court affirm unless on the evidence the district court is left with a definite and firm conviction that the magistrate judge's decision was in error. *See id.*

## III.     Motions (Docs. 254, 255, 266, 289, 292)

Defendant filed these motions which appeal orders by Magistrate Judge Birzer or otherwise request review or reconsideration of Judge Birzer's orders.  (Docs. 254, 255, 266, 289, 292.) Defendant's motions are not models of clarity.  The motions are rambling diatribes attempting to ascribe some error to Judge Birzer's previous orders.  For this reason, the court wished to provide Defendant an opportunity to appear in-person and explain the alleged errors he finds in the orders. Defendant failed to do so, and this failure to appear, in part, is the reason these motions are denied.

Defendant's first motion at issue (Doc. 254) takes issue with an order by Judge Birzer on various discovery issues (Doc. 63).  The court has reviewed Defendant's motion and Judge Birzer's order and finds no error.  The court denies Defendant's motion.

Defendant's next motion at issue (Doc. 255) appeals Judge Birzer's initial order regarding planning and scheduling (Doc. 70).  The court has reviewed Defendant's motion and Judge Birzer's order and finds no error.  Defendant's motion is denied.

Defendant next appeals (Doc. 266) Judge Birzer's order (Doc. 238) denying Defendant's motions for judicial notice.  Again, the court finds no error in Judge Birzer's order and Defendant's motion is denied.

Judge Birzer entered a scheduling order (Docs. 122, 124) which Defendant appeals (Doc. 289).  The court finds no error and denies Defendant's motion.

Last, Defendant appeals (Doc. 292) Judge Birzer's order arising out of an October 4, 2022, status conference addressing several discovery issues (Doc. 268).  Judge Birzer has subsequently entered an amended order.  (Doc. 274.)  The court has reviewed Defendant's motion and both orders and finds no error.  Defendant's motion is denied.

In sum, Defendant was given an opportunity to appear and argue his motions.  He failed to do so.  The court finds that his motions should be denied on the alternative bases that he failed to

appear as ordered, thus leaving the court unable to find any discernable basis in his motions to overturn Judge Birzer's order; and that the court's independent review of Judge Birzer's orders reveals no errors that warrant correction.

### IV.    CM/ECF

Defendant has not registered for CM/ECF to file documents electronically or to receive notifications of filings electronically.  This has complicated this litigation, as Plaintiffs have been required to mail hard copies of their filings to Defendant.  At times, Defendant has complained about not receiving filings.  Moreover, yesterday's events highlight the difficulties that this situation causes the court.  Defendant filed his meritless motion to continue today's hearing yesterday at 1:00 PM CST.  The hearing was set for today at 9:00 AM.  That left precious little time for the court to consider Defendant's motion and figure out how to get an order to him in time for today's hearing. The court directed that copies of its order denying Defendant's motion to continue be emailed to Defendant's known email addresses.  That order directed Defendant to notify the court by email to the chambers email address by 6:00 PM CST as to whether he intended to attend the next day's hearing.  Defendant responded by email at 5:59 PM CST as directed; however, in a frustrating turn of events, the court's email system routed that response to a junk email folder, leaving the court and its personnel to monitor the chambers email account for hours well into the night in hopes of being able to alert opposing counsel if notified that Defendant would not attend, thereby saving Plaintiff and his counsel the expenses of traveling to the Wichita courthouse if the hearing was going to be a waste of time.  Although in this instance Defendant received and responded to the court's order as sent by email, the court declines to repeat this exercise of wondering whether orders will be timely received and acted on by defendant in the future.  The record in this case reflects that Defendant has vehemently resisted receiving service

by email or CM/ECF electronic notification, demanding instead that he receive service by mail. (Doc. 35.)  The magistrate judge has accommodated Defendant's demands up to this point.  (Doc. 123.)  But the time has come for Defendant's abuse of that privilege to end.

The court orders Defendant to complete the Pro Se Electronic Notice form, https://ksd.uscourts.gov/sites/ksd/files/FINALRevisedProSeNEF-form.pdf.  Defendant is ordered to follow the instructions on the form, which include filling out certain information, affixing his own wet signature to the form, and sending the form either by email, fax, or mail to the appropriate location specified on the form.[1]

This will allow him to receive electronic notification of all filings in this matter so that Plaintiffs will not be required to mail Defendant copies of the filings.  This will not require Defendant to electronically file his own documents and will allow him to continue emailing his filings to the clerk's office for filing.  Defendant is ordered to complete the Pro Se Electronic Notice form and send it in by email, fax, or mail so that he is able to receive electronic notices of filing by December 20, 2022.  Effective December 21, 2022, Plaintiffs may rely on CM/ECF notifications of filing for effectuating service of papers on Defendant as described in Federal Rule of Civil Procedure 5.

V.     **Order to Show Cause**

In Defendant's motion to continue, Defendant argued that he was "banished" from certain parts of the United States and could not travel according to restrictions by the court in his Oklahoma criminal case.  (Doc. 331 at 3.)  Defendant did not attach any order to that motion which would establish that Defendant is prohibited from traveling.  The court undertook every effort it

---

[1] Defendant can find additional resources for pro se parties at the following link: https://ksd.uscourts.gov/resource-materials.

could to uncover any traveling restriction imposed upon Defendant and did not find any such condition.  (*See* Doc. 332 at 3.)

The court orders Defendant to show cause why he should not be sanctioned for falsely alleging that he was prohibited by the court in his Oklahoma criminal case from traveling to Kansas for today's hearing.  (Doc. 331 at 3.)  Defendant must submit proof of these travel restrictions to the court by filing a response to this order to show cause, which includes such proof, on or before December 31, 2022.  If Defendant fails to do so, the court may impose sanctions upon Defendant for his lack of candor to the court.  Defendant is warned that his statements alone will not suffice for proof of his travel restrictions.  Instead, he must provide copies of orders from the Oklahoma court imposing such restrictions.

## VI.     Conclusion

For the reasons stated, Defendant's motions (Docs. 254, 255, 266, 289, 292) are DENIED. Defendant is ordered to submit his completed Pro Se Electronic Notice form so that he is receiving electronic notifications of filing from the CM/ECF system by December 20, 2022.  Defendant is ordered to show cause on or before December 31, 2022, why he should not be sanctioned for making false statements in his recent motion to continue hearing (Doc. 331 at 3.) regarding alleged travel restrictions imposed by the Oklahoma criminal court.  If Defendant fails to show cause on or by December 31, 2022, Defendant may be subject to sanctions for his lack of candor to the court.

IT IS SO ORDERED.  Dated this 14th day of  December 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE