IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED CAPITAL MANAGEMENT OF KANSAS, INC. and
CHAD M. KOEHN,

        Plaintiffs,

v.                                                 Case No. 22-4008-JWB

MICHAEL E. NELSON,

        Defendant.

**MEMORANDUM AND ORDER**

Before the court is Plaintiffs' motion to dismiss (Doc. 85) Defendant's[1] first amended counterclaims (Doc. 83). Defendant has not filed a response, and the time to do so has now expired. The motion is fully briefed and ready for decision. (Doc. 86.) For the reasons stated herein, Plaintiffs' motion is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART. Defendant is granted leave to amend only his counterclaim for defamation.

    **I.**    **Background**

This contentious litigation began in state court when Plaintiffs filed their petition against Defendant alleging defamation and tortious interference with business expectations. (Doc. 1-1.) Defendant removed the case to this court (Doc. 1), and in less than a year, Plaintiffs and Defendant have filed more than 300 entries on the docket.

Defendant originally filed both an answer (Doc. 72) and counterclaims and crossclaims (Doc. 74). Plaintiffs moved to dismiss Defendant's counterclaims and crossclaims. (Doc. 79, 80.)

---

[1] For the sake of clarity, the court will refer to United Capital Management of Kansas, Inc. and Chad M. Koehn as "Plaintiffs" and Michael E. Nelson as "Defendant," although the roles are reversed with respect to Defendant's counterclaims against Plaintiffs.

Defendant opted to file amended counterclaims and crossclaims at that time rather than respond to Plaintiffs' motion to dismiss. (Doc. 83.)

Defendant's first amended counterclaims and crossclaims span 80 pages and include 15 claims against Plaintiffs and others. (*Id.*) The first 51 pages of the pleading appear to be the facts alleged to support Defendant's counterclaims and crossclaims. (*Id.* at 1–51.) Those claims include defamation, tortious interference with business prospects and right of employment, unfair and deceptive trade practices, and securities fraud to name a few. (*Id.* at 51–56.)

Plaintiffs filed this motion to dismiss under Federal Rules 9(b) and 12(b)(6) and District of Kansas Local Rules 7.1(a) and 7.6. (Doc. 86 at 1.) Plaintiffs argue about specific claims Defendant makes but generally argue that Defendant has failed to state a claim upon which relief can be granted. (*Id.*) Defendant has not filed a response to Plaintiffs' motion to dismiss and approximately seven months have elapsed since the motion to dismiss was filed. (*See id.*, filed June 13, 2022.)

**II. Standard**

To withstand a motion to dismiss for failure to state a claim, a complaint or in this case, counterclaim, must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Defendant, the non-moving party. *Id.* Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

The heightened pleading standard under Rule 9(b) is applicable to claims of fraud or mistake. Fed. R. Civ. P. 9(b). "[A] party must state with particularity the circumstances constituting fraud or mistake." *Id.* On a motion to dismiss, a party must "set forth the time, place

and contents of the false representation, the identity of the party making the false statements and consequences thereof." *Andes Cap. Fin. LLC v. Crossed Keys LLC*, Case No. 21-127-KHV, 2022 WL 1658861, at *10 (D. Kan. May 25, 2022) (slip copy) (quoting *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001)).

Under the local rules for the District of Kansas, the court is permitted to decide a motion as uncontested if a response is not filed by the applicable response deadline and will ordinarily grant the motion "without further notice." D. Kan. Rule 7.1(c).[2] "However, the Tenth Circuit has directed that a district court may not grant a motion to dismiss or a motion for summary judgment based solely on the plaintiff's [or counter-plaintiff's] failure to respond." *Ellison v. English*, Case No. 18-3070-SAC, 2019 WL 3716448, at *1 (D. Kan. Aug. 7, 2019) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003)). Accordingly, the court here examines the merits of Defendant's claims.

### III. Choice of Law

In his counterclaims and crossclaims, Defendant suggests that New York or Nevada are the proper jurisdiction and venue for the claims. (Doc. 83 at 7.) Defendant does not mention which state's law should apply to his state law claims. Plaintiffs' memorandum in support of their motion to dismiss analyzes each claim under Kansas law. (*See* Doc. 86.)

"When exercising diversity jurisdiction, the court must apply the forum state's choice of law rules to determine which state's substantive law applies." *Bushnell Corp. v. ITT Corp.*, 973

---

[2] The local rules for the District of Kansas were amended effective December 1, 2022 and on January 4, 2023. One of the rules impacted was D. Kan. Rule 7.1(c). The rule for uncontested motions was previously found at D. Kan. Rule 7.4(b). *Broadnax v. Roberts*, Case No. 21-3268-JAR-KGG, 2022 WL 17142876, at *1 (D. Kan. Nov. 22, 2022) ("If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.") (quoting D. Kan. Rule 7.4(b)). D. Kan. Rule 7.1(c) now reads, in part: "If a response is not filed by the applicable [D. Kan. Rule 6.1(d)] deadline, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice." Accordingly, whether the new or old rules apply, the court is still permitted to consider this motion as uncontested.

F. Supp. 1276, 1286 n.2 (D. Kan. 1997). For tort actions, Kansas applies the doctrine of lex loci delicti. *Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018). Kansas would apply the law of the state where the wrong occurred which is where the injury was suffered. *Id.* Here, the court has concluded that Defendant is a citizen of Nevada (Doc. 31), which is presumably where Defendant was located at the time these events took place, so the court applies Nevada law to Defendant's tort claims.

For Defendant's claims sounding in contract, the analysis is more complicated. A Kansas court would apply an enforceable choice-of-law provision, but here, there are no allegations about a written contract and thus, there is no choice-of-law provision to examine. *Swimwear Solution Inc.*, 309 F. Supp. 3d at 1031. Kansas courts also apply the doctrine of lex loci contractus, applying the law of the state where the contract was formed to disputes about the substance of the contractual obligations. *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009). "It is only when the question goes to the manner and method of performance that the law of the place of performance applies." *Id.*

Defendant's factual allegations and legal claims are not a model of clarity. It is difficult for the court to discern what specific issues he is raising with respect to an alleged breach of contract. Further, Defendant does not identify any facts which would allow the court to determine where a contract was formed or where a contract was to be performed. Accordingly, the court applies Kansas law to Defendant's contract claims, as Defendant does not allege facts about the formation or performance of any contracts, Plaintiffs briefed the issues on Kansas law, and Defendant did not respond to Plaintiffs' motion. To be thorough, the court also looks to Nevada law to determine if the outcome would be different.

**IV.   Analysis**

At the outset, the court will address Defendant's claims against John and Jane Does 1–15 and Doe Corporations 1–15. (Doc. 83 at 1.) Defendant explains that each counterclaim and crossclaim is against Chad Koehn, United Capital Management of Kansas, Inc., all of the John and Jane Does, and all of the Doe Corporations. (*Id.* at 8.) Plaintiffs move to dismiss the counterclaims against them. The court will address Defendant's counterclaims against Plaintiffs. This order does not address Defendant's claims against parties other than Plaintiffs.

### A. Defamation

Defendant brings a claim of defamation against Plaintiffs. Under Nevada law, to state a claim for defamation, a party must show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication." *Lubin v. Kunin*, 17 P.3d 422, 425 (Nev. 2001) (internal quotation omitted). Generally, damages must be proved. *Id.* "However, if the defamatory communication imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009).

It is difficult to narrow down which of Defendant's factual allegations relate to which claims, as Defendant's introduction includes 51 pages of facts. (Doc. 83.) While the court attempts to review the facts Defendant pleads in support of each claim, the court will not take the role of Defendant's attorney in searching the record and making his arguments. *Smith v. Hollinghead*, Case No. 20-3179-SAC, 2022 WL 2355401, *1 (D. Kan. June 30, 2022) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

Defendant alleges that Plaintiffs have contacted individuals disparaging his reputation. (*Id.* at 49–50, ¶195.) Defendant states that Plaintiffs have contacted individuals and businesses with which Defendant had business relationships and with which Defendant had sought employment and that Plaintiffs told these individuals and businesses that Defendant is a convicted felon, criminal, diseased, and is going to prison for life. (*Id.* at 11–12, ¶¶27–34.) Defendant also alleges that Plaintiffs have "contacted individuals and published globally" that Defendant's passport has been flagged and that Defendant is wanted by the FBI and Interpol for criminal acts. (*Id.* at 14, ¶44.) Defendant does not allege when these statements were made or to whom they were made, nor does he plead any facts related to the damages he suffered.

Taking all these factual allegations as true, Defendant has failed to state a claim for defamation. Defendant has not identified to whom Plaintiffs allegedly made these defamatory statements or how the statements were published to these third parties (e.g., by email, text message, letter, etc.). Defendant has also failed to plead any facts related to his damages. While Defendant indicates that these statements were made to individuals with whom he had business relationships or had sought employment from, under the given facts, it is not entirely clear that damages here would be presumed. Because Defendant proceeds pro se, and because the court feels Defendant may be able to allege a plausible claim for defamation, the court grants him leave to amend Count I to allege with specificity to whom the alleged defamatory comments were made, how the statements were made, and the specific damages that Defendant has suffered.

### B. Tortious Interference with Business Prospects and Right of Employment

Under Nevada law, the elements of tortious interference with prospective contractual relationships are: (1) Defendant has a prospective contractual relationship with a third party; (2) Plaintiffs knew about this prospective relationship; (3) Plaintiffs intended to harm Defendant by

preventing this relationship; (4) Plaintiffs were not privileged or justified in their conduct; and (5) actual harm to Defendant because of Plaintiffs' conduct. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1255 (Nev. 1998).

Defendant alleges that businesses contacted by Plaintiffs have or may have a future business relationship with Defendant and that Plaintiffs knew about the relationships or expected relationships. (Doc. 83 at 52–53, ¶¶211–12.) Defendant does not identify the third parties that Plaintiffs allegedly contacted and with whom Defendant had a prospective contractual relationship. Last, Defendant fails to allege any facts which show actual harm to Defendant.

Because Defendant fails to allege sufficient facts to state a plausible claim for tortious interference, the court dismisses Count II.

### C. Unfair and Deceptive Trade Practices

Defendant titles Count III "Unfair and Deceptive Trade Practices." (Doc. 83 at 53.) Defendant does not specifically invoke the Kansas Consumer Protection Act ("KCPA"), but he does cite to a Kansas statute regarding investment adviser registration requirements. (*Id.* at 54) (citing K.S.A. 17-12a403.) Thus, the court finds that Defendant intended to invoke Kansas law for this claim.

To state a claim for deceptive trade practices, Defendant must allege that (1) he is a consumer under the KCPA; (2) Plaintiffs are suppliers under the KCPA; (3) Plaintiffs engaged in an unconscionable act or practice or a deceptive practice, violating K.S.A. 50-626 or 50-627; and (4) Defendant was harmed by the act. *See Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 506, 472 P.3d 110, 116 (2020).

Defendant does not allege that he is a consumer under the KCPA or that Plaintiffs were suppliers under the KCPA. Defendant's factual allegations as to this claim (amongst others) are

7

unclear, and the court finds that Defendant has not sufficiently pleaded a claim for deceptive trade practices. Count III is dismissed.

### D. Threats of Violence to Force Relinquishment of Stock

Defendant titles Count IV: "Threats of Violence to force relinquishment of Stock." (Doc. 83 at 55.) Plaintiffs interpret the claim as a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim based on extortion. (Doc. 86 at 10–11.) The court finds that a claim for extortion matches with what Defendant attempts to allege.

To state a RICO claim, "a plaintiff [or counter-plaintiff] must set forth four elements: (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ferluga v. Eickhoff*, 408 F.Supp.2d 1153, 1159 (D. Kan. 2006). Extortion is defined "as obtaining 'property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" *Id.* at 1160 (quoting 18 U.S.C. § 1951(b)(2)). Racketeering activity includes extortion as a "predicate act." *Id.* at 1159–60. The RICO violation must have proximately caused the injury for the party to have standing to assert a RICO claim. *In re EpiPen*, 336 F. Supp. 3d 1256, 1315 (D. Kan. 2018).

Defendant alleges that "[b]y identifying by name and address counter-plaintiff's elderly parents and sibling and minor child they have inferred danger and threats of violence in efforts to force counter-plaintiff to relinquish control and ownership of 'significant equity interest' in a number of corporations." (Doc. 83 at 55, ¶233.) Earlier in Defendant's lengthy factual discussion, Defendant states:

> Chad Mitchell Koehn etAl. [SIC] have contacted Nelson and made veiled threats identifying by name, address and/or location Nelson's elderly parents, sibling and minor child. Indicating direct threat to life and safety. Nelson has had the need to immediately report the same to authorities.

(*Id.* at 18, ¶65.) These are the only facts the court has identified that relate to threats of violence.

8

Defendant does not sufficiently allege extortion. Defendant alleges that Plaintiffs have attempted to force Defendant to relinquish control and ownership of his significant equity interest in various unnamed corporations. But Defendant does not show or allege that Plaintiffs obtained anything from him. Moreover, Defendant does not show that violence was threatened. Accepting Defendant's factual allegations as true, as the court is required to do at this stage, Plaintiffs identified by name and address or geographic location some of Defendant's immediate family members. But Defendant himself states that by this conduct, Plaintiffs "have inferred danger and threats of violence," making the threats only implied, at most. (*Id.* at 55, ¶233.) Further, Defendant has only alleged one predicate act of extortion. Two or more predicate acts are required to state a RICO claim. *In re EpiPen*, 336 F. Supp. 3d at 1318–19.

For these reasons, Defendant has failed to state a RICO claim and Count IV is dismissed.

### E. Securities Fraud

Plaintiffs argue that Defendant has not sufficiently pleaded a claim for securities fraud. (Doc. 86 at 12–13.) To state a claim for securities fraud under the Securities Exchange Act, 15 U.S.C. § 78j(b), a plaintiff or counter-plaintiff must show: "(1) a material misrepresentation or omission by the defendant [or counter-defendant]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).

Defendant fails to allege any details connecting a specific material misrepresentation or omission to the purchase or sale of a security. Defendant alleges that he is a significant equity interest holder in several companies (Doc. 83 at 8), and the court accepts that factual allegation as

9

true, as it is required to do at this stage. Defendant also makes various other allegations about improper conduct related to securities, none of which connect a sale of a security to a material misrepresentation or omission. (*Id.* at 16.) Defendant also fails to allege reliance on the alleged misrepresentation or omission.

For these reasons, Defendant has failed to state a claim for securities fraud and Count V is dismissed.

### F. Fraud in the Inducement

In Kansas, a claim of fraudulent inducement requires that a party show: (1) a party made false representations as statements of existing and material fact; (2) the party knew the representations were either false or made them recklessly without knowing they were true; (3) the party made the representations intending to induce the other party to rely on them; (4) the other party reasonably relied upon the representations; and (5) the other party sustained damages because of the reliance on those representations. *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083, 1096 (2013).

Defendant does not identify any facts which would support a claim for fraud in the inducement, including identifying how he relied on the alleged false representation. (*See* Doc. 83 at 63–64.) Defendant fails to state a claim for fraud in the inducement and Count VI is dismissed.[3]

### G. Constructive Fraud

---

[3] Kansas and Nevada utilize essentially the same elements for deciding a claim for fraudulent inducement. *Findlay Mgmt. Grp. v. Jenkins*, 131 Nev. 1278 (Table), 2015 WL 5728870, *1 (Nev. Sept. 28, 2015) ("(1) a false representation made by a party, (2) knowledge or belief by the party that the representation was false, or knowledge that it had an insufficient basis for making the representation, (3) intent to induce another party to consent to the contract's formation, (4) the other party justifiably relied upon the misrepresentation, and (5) damage to the other party resulted.") (quoting *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004)). Accordingly, even if Nevada law controls this claim, Defendant has still not alleged sufficient facts and Count VI would be dismissed.

In addition to the claim for fraud in the inducement, discussed above, Defendant brings a claim for constructive fraud. (*Id.* at 64–65.) Under Kansas law, constructive fraud has been defined as "a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty nor purpose or intent to deceive is necessary." *Rail Logistics, L.C. v. Cold Train, L.L.C.*, 54 Kan.App.2d 98, 114, 397 P.3d 1213, 1226 (2017) (alterations and further citations omitted). A plaintiff or counter-plaintiff must also show: "(1) a confidential relationship, and (2) a betrayal of a confidence or breach of a duty imposed by the relationship." *Id.*[4]

Plaintiffs argue that Defendant fails to state a plausible claim for relief. (Doc. 86 at 15.) The court finds that Defendant fails to allege the existence of any confidential relationship. Defendant merely states that he is a significant equity interest holder in several companies but does not explain why that creates a confidential or fiduciary relationship between himself and Plaintiffs. (Doc. 83 at 64–65.) Defendant further fails to allege facts which would show a betrayal of confidence or breach of a specific duty.

The court dismisses Count VII.

### H. Fraud/Fraud in the Inducement

In Count VIII, Defendant reiterates that he believes Plaintiffs are guilty of unfair and deceptive trade practices, fraud in the inducement, and tortious interference. (*Id.* at 66.) The court dismisses each of these counts, as explained above. For this reason, the court dismisses Count VIII as well.

### I. Breach of Contract (Count XV) & Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IX)

---

[4] Under Nevada law, "[c]onstructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential relationship." *Davenport v. Homecomings Fin., LLC*, 130 Nev. 1169 (Table), 2014 WL 1318964, *3 (Nev. Mar. 31, 2014) (quoting *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982). Because Kansas and Nevada law are very similar and both require a showing of a confidential relationship, Defendant's claim fails whether Kansas or Nevada law applies.

Defendant brings a claim for breach of contract in Count XV (*id.* at 74–75) and a claim for breach of the implied covenant of good faith and fair dealing in Count IX (*id.* at 66–67). Under Kansas law,

> The essential elements of a valid informal contract are as follows: (a) A promisor and a promise each of whom has legal capacity to act as such in the proposed contract; (b) manifestation of assent by the parties who form the contract to the terms thereof and by every promisor to the consideration for his or her promise; (c) a sufficient consideration; and (d) the transaction, though satisfying the foregoing requirements, must be one that is not void by statute or by special rules of the common law.

*O'Neill v. Herrington*, 49 Kan.App.2d 896, 902, 317 P.3d 139, 144 (2014).[5]

In Kansas, "[b]reach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a 'legal argument related to a breach-of-contract claim.'" *H&C Animal Health, LLC v. Ceva Animal Health, LLC*, 499 F. Supp. 3d 920, 940 (D. Kan. 2020) (quoting *Classico, LLC v. United Fire & Cas. Co.*, 386 P.3d 529, 2016 WL 7324451, *5 (Kan. Ct. App. Dec. 16, 2016)). In other words, there can be no breach of the implied covenant of good faith and fair dealing without a breach of contract.[6]

---

[5] Nevada follows the same basic contract principles: "an offer and acceptance, meeting of the minds, and consideration." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (quoting *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005)). Here, as explained, Defendant has not alleged facts about the existence of any contract, so Defendant's Count XV fails under both Nevada and Kansas law.

[6] As for breach of the implied covenant of good faith and fair dealing, Nevada law recognizes claims both in contract and in tort. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) (discussing difference between contract and tort breach of good faith and fair dealing). "Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only in rare and exceptional cases when there is a special relationship between the victim and tortfeasor." *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006) (internal quotation omitted). "Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers." *Id.* In contract, damages may be awarded against a party who is unfaithful to the purpose of the contract and who performs in a manner that frustrates the justified expectations of the other party. *Hilton Hotels Corp.*, 808 P.2d at 923. Here, Defendant does not plead any facts that show the existence of a special relationship between himself and Plaintiffs which would permit him to bring a tort claim for breach of the implied covenant of good faith and fair dealing. And because there are no facts to show the existence of a contract, the court cannot conclude that Plaintiffs behaved in a way that was not faithful to the purpose of any contract. Accordingly, whether Kansas or Nevada law applies, Defendant's claim for breach of the implied covenant of good faith and fair dealing fails.

Defendant brings a claim for breach of contract but does not allege facts about the existence of any contract. Count XV focuses on implied or actual contracts in investor memorandums but provides no details about those alleged contracts, including who the parties to the contracts are, when the contracts were entered, and whether any consideration was provided for the promises in those alleged contracts. (Doc. 83 at 75.) Count IX instead focuses on the relationship between the duty of good faith and fair dealing and fiduciary duties. (*Id.* at 66–67.) Because Defendant's allegations are insufficient to state a breach of contract under Kansas law, Defendant's claim for breach of the implied covenant of good faith and fair dealing also fails under Kansas law.

Here, Defendant has plead no facts which would allow the court to conclude that a contract existed and was breached. Counts IX and XV are dismissed.

**J. Negligence**

In Count X, Defendant brings a claim of negligence. Nevada follows the basic law of negligence and requires a party to show: (1) a duty of care; (2) a breach of that duty; (3) legal causation; and (4) damages. *Davenport v. Homecomings Fin., LLC*, 130 Nev. 1169 (Table), 2014 WL 1318964, *4 (Nev. Mar. 31, 2014).

Defendant alleges that Plaintiffs owed him a duty of care, breached that duty of care, and that the breach was the actual and proximate cause of his injury. (*Id.* at 67–68.) The court notes that these allegations are legal conclusions rather than factual allegations. Defendant goes on to note that Plaintiffs owed him a duty of care because they are "members of board of directors and directors to a host of corporations" and he is a significant equity interest holder. (*Id.* at 68.) Those facts do not show that Plaintiffs owed him a duty of care or that they breached that duty of care. Defendant also does not explain how he is injured or connect his injury to a breach of duty.

Because Defendant has failed to allege sufficient facts to show the essential elements of a negligence claim, Count X is dismissed.

### K. Gross Negligence

Defendant purports to bring a claim of gross negligence against Plaintiffs. (*Id.* at 69.) Plaintiffs argue that this count should be dismissed because Kansas does not recognize a separate claim for gross negligence. (Doc. 86 at 18.) As noted above, Nevada law applies to Defendant's tort claims. It is unclear whether Nevada permits recovery for a separate claim of gross negligence in a civil case. Nevertheless, "[g]ross negligence is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care." *Cornella v. Justice Court*, 377 P.3d 97, 102 (Nev. 2016) (internal quotation omitted). If Defendant is permitted to pursue a separate claim for gross negligence, that claim would fail because as with negligence, Defendant has not identified a legal duty that Plaintiffs owed him.

Accordingly, Defendant cannot pursue a claim for gross negligence and Count XI is dismissed.

### L. Negligent Misrepresentation

Defendant brings a claim of negligent misrepresentation against Plaintiffs. (Doc. 83 at 70.) Plaintiffs argue that Defendant fails to state a claim. (Doc. 86 at 18–19.) Under Nevada law, negligent misrepresentation entails the following:

> One who, in the course of his business, profession, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013) (quotations and alteration omitted). If only pecuniary loss results, "[l]iability is only imposed on a party who has supplied

false information, where that information is for the guidance of others and where the party knows that the information will be relied upon by a foreseeable class of persons." *Id.*

Defendant explains that he is a significant equity interest holder in several companies and that Plaintiffs (or unknown John Does) "placed materially false and misleading self created [SIC] press releases into the public in order to artificially pump the price of the securitized crypto currency stock." (Doc. 83 at 70, emphasis omitted.) Defendant does not allege facts to show how he relied on the false and misleading statements or how he was impacted by those statements. Because Defendant does not allege sufficient facts to state a claim for negligent misrepresentation, Count XII is dismissed.

### M. Unjust Enrichment

Defendant alleges a claim of unjust enrichment in Count XIII. (*Id.* at 71–72.) Defendant makes claims about financial irregularities and perceived violations of financial regulations in support of this count. (*Id.*) Defendant argues that Plaintiffs benefited from improper actions through both the denial of dividends to equity holders and in market manipulations. (*Id.* at 71.)

Under Kansas law,[7] unjust enrichment occurs when a party provides a benefit to another, the other party appreciates and understands that benefit, and the other party's acceptance and retention of that benefit would be unfair under the circumstances without the other party paying for that benefit. *Walsh v. Weber*, 379 P.3d 1150 (Table), 2016 WL 4750102, **19 (Kan. Ct. App. 2016) ("To establish an unjust enrichment claim, a plaintiff must establish (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the

---

[7] Nevada law is nearly identical to Kansas law. *See Certified Fire Prot. Inc.,* 283 P.3d at 257.

retention unjust.") (quoting *Univ. of Kan. Hosp. Auth. v. Bd. of Waubaunsee Cnty. Comm'rs*, 299 Kan. 942, 960, 327 P.3d 430 (2014)).

The court does not find that the factual allegations Defendant makes support a claim for unjust enrichment. Here, accepting Defendant's factual allegations as true, Plaintiffs engaged in manipulative practices which impacted the price of stock and which interfered with equity holders receiving dividends. But it is not clear that those actions involved Defendant conferring a benefit upon Plaintiffs, specifically, which Plaintiffs appreciated and did not compensate Defendant for.

The court concludes that Defendant has not alleged facts showing a plausible claim for relief and Count XIII is dismissed.

### N. Professional Malpractice, Deceptive Trade Practices, Fraud, and Misappropriation

Defendant titles Count XIV as a count of "Professional Malpractice, Deceptive Trade Practices, FRAUD, Misappropriation." (Doc. 83 at 73.) The court reads Defendant's allegations as attempting a claim of professional malpractice against Plaintiffs. (*Id.* at 73–74.) Plaintiffs argue that Defendant has not shown that Defendant and Plaintiffs had a professional relationship which would permit Defendant to bring a claim of professional malpractice. (Doc. 86 at 21.)

Because malpractice is a tort, the court looks to Nevada law. "To assert a claim of professional negligence, a party must show '(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Boesiger v. Desert Appraisals, LLC*, 444 P.3d 436, 439 (Nev. 2019) (quoting *Morgano v. Smith*, 879 P.2d 735, 737 n.2 (Nev. 1994)) (alterations omitted).

Here, Defendant has not shown any actual loss or damage as a result of Plaintiffs' conduct, nor has he alleged any facts that suggest Plaintiffs' conduct was the proximate cause of any injury. Defendant argues that Mr. Koehn is an investment or financial advisor and has certain obligations as a licensed professional, and that is true. But here, Defendant has not made the connection between any alleged duty that Mr. Koehn breached and any injury that Defendant has suffered. Moreover, although privity is not an element of professional negligence in Nevada, the court questions whether Defendant factually can make a claim that Mr. Koehn has been negligent in rendering financial advice when Defendant has never been Mr. Koehn or UCM's client.

For these reasons, Defendant fails to state a claim for professional malpractice and Count XIV is dismissed.

### V. Conclusion

For the reasons stated herein, Plaintiffs' motion to dismiss (Doc. 85) Defendant's counterclaims (Doc. 83) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART. Defendant's counterclaims II–XV are dismissed as to Plaintiffs Koehn and United Capital Management. Defendant may file an amended Count I as to those Plaintiffs within 14 days of the filing of this order. Defendant is not permitted to amend or add any other counts in his amended counterclaims; if Defendant files any amended or additional counts, the court will strike the offending counts. If Defendant fails to timely file an amended Count I, the court will grant Plaintiffs' motion to dismiss as to that count without further notice. If Defendant timely files an amended Count I, Plaintiffs may challenge the sufficiency of that count by separate motion.

IT IS SO ORDERED. Dated this 18th day of January 2023.

                                                    s/ John W. Broomes
                                                    JOHN W. BROOMES
                                                    UNITED STATES DISTRICT JUDGE