# UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. and **CHAD M. KOEHN** <br><br> Plaintiffs, counter-defendants <br><br> v. <br><br> Michael Nelson <br><br> Defendant; Counter-Plaintiff PRO-Se. | **DOCKET NO.:** 5:22-CV-04008-JWB-TJJ <br> **CIVIL ACTION** <br><br> **Motion to STRIKE and/or to DISMISS Under KSPA &/or Rule 12(B)(6) and/or due to statute of limitations and Abuse of Process with claims of Deceased Person(s)** <br><br> **[Jury Trial Demanded]** |

This lawsuit by Koehn etAl. from its origin to present is invidious harassment of defendant Michael Nelson, to chill protected speech and freedom of association on matters of public concern, cause public nuisance to lay blame for malfeasances committed by the Plaintiffs. Pursuant to the Kansas Public Speech Protection Act, Nelson moves to strike Plaintiff's defamation and tortious interference claims. Because (1) Koehn/UCMK's claims are "based on, relates to or is in response to [defendant's] exercise of the right of free speech, the right to petition, or the right of association," (KSA §60-5320(d)), and (2) Koehn cannot "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case" of the claims, the Court must grant this motion and strike the claim. Koehn is considered a Public Figure and/or a limited scope public figure in the alternative, *see Ex. A through MM* Nelson moves to dismiss the claims for failure to state a claim upon which relief may be granted pursuant to FRCP 12(b)(6) in the alternative and where absolute and qualified privilege exists &/or under the general principles of Statute of Limitations on the claims.

**Background:** Koehn a SUSPENDED securities broker, who has recently been SANCTIONED, and fined for Violative Conduct by a US Federal Regulator; See Ex. D-i &K-M & GG

Securities Fraud law firms across the US **are seeking victims.**
  a. https://www.kurtalawfirm.com/blog/chad-koehn/ Exhibit F
  b. Chad Koehn lawsuit in Salina Kansas Archives • Israels Neuman, PLC Exhibit G
  c. Salina Advisor Chad Koehn: FINRA Investigates Ex-SA Stone Rep Exhibit H
  d. Mika Meyers Notice on Chad M. Koehn Suspension Exhibit "i"

Initially Koehn etAl. brought this case in Kansas state court, laying in wait nearly a year prior to any attempted service or notification of its existence, it was removed properly to Federal Court pro se.

<u>The Court in Memorandum and Order Document 330, stated, on page 2:</u>

> "Under the [Kansas Public Speech Protection Act1 ("KPSPA")], a defendant may move to strike a claim if it is 'based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association.'" *Zaid v. Boyd, Case No. 22-1089-EFM, 2022 WL 4534633, at \*1 (D. Kan. Sept. 28, 2022) (quoting K.S.A. § 60-5320(d))*. The KPSPA sets a standard for motions to strike:

> "A party bringing the motion to strike has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association. If the moving party meets the burden, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case. If the responding party meets the burden, the court shall deny the motion"

> Because Defendant is proceeding pro se, the court is to liberally construe his filings. United States v. Pinson, 585 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Defendant's behalf. *Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997)*.

<u>Nelson, appearing pro se, does now provide legal argument, legal theory and factual allegations,</u> consistent with **the Court's invitation to do so.**

<u>ARGUMENT & AUTHORITIES:</u> The Kansas Public Speech Protection Act applies in Diversity Cases

Thirty-two states and the District of Columbia have enacted laws to address "strategic lawsuits against public participation" or "SLAPPs," which have a chilling effect on free speech & other constitutional rights. "The hallmark of these statutes is the ability of a defendant to file an early 'motion to strike' so the court can make an initial determination whether the lawsuit has been filed to harass the defendant or to stifle the defendant's right of free speech" and/or petition or association. *T&T Fin. of Kansas City, LLC v. Taylor, 408 P.3d 491, (2017). C*laims <u>involve a public figure Chad M. Koehn</u>, matters of public safety (predators), right of association (shareholders free to converse), & free speech on matters of public concern, discussion amongst shared investors regarding investments.

The Legislature expressed its intent that courts <u>apply and liberally construe</u> the Kansas anti-SLAPP statute "to effectuate its general purposes." *KSA §60-5320(k)*. Judge Broomes in Doc. 330, concurred with the ruling made by Chief Judge Melgren in *Zaid v. Boyd, (D. Kan. 2022)*.

<u>The Kansas Public Speech Protection Act protects three general classes of protected speech:</u>
1. Exercise of the right of free speech, defined as "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1) "Public issue or issue of public interest" includes an issue related to (A) health or safety (B) environment, economic, or community well-being, (C) the government, (D) a public official or public figure, or (E) a good, product, or service in the marketplace. KSA §60-5320(c)(7).
2. Exercise of the right to petition, which includes 13 categories of protected communications, including "a communication in connection with an issue under consideration or review by a … judicial … proceeding." KSA §60-5320(c)(5)(A), (5)(B)-(E).

3. Exercise of the right of association, defined as "a communication between individuals who join together to collectively express, promote, pursue or defend common interests." KSA §60-5320(c)(5)(A).

The first step of a court's inquiry when facing a motion to strike under the Kansas Act is to determine whether the asserted claim concerns a party's exercise of the right of free speech, right to petition <u>or right of association</u>. "Step one of the analysis … only concerns the content of the claims," not the motive, merits, or whether the defendant admits or denies the allegations. *T&T Fin., 2017 WL*. The Kansas Act does not limit protected speech to activity protected by constitutional law – instead, the Kansas legislature "'spelled out the kinds of activity it meant to protect,' t**hen mandated that its statutory language be liberally construed**." *Doe v. KSU, 61 Kan.App.2d 128, 144, 499 P.3d 1136, 1148 (Kan. App. 2021)*. <u>Judge Broomes in Doc. 330, stated on page 6 of the referenced Order:</u>

> "It is Defendant's initial burden to show that the KPSPA provisions apply to the alleged defamatory statements. Zaid, 2022 WL 4534633, at *6 (citing K.S.A. §§ 60-5320(c)(4), 60- 5320(c)(7)). Speech about a "public issue or issue of public interest" is protected. K.S.A. § 60- 5320(c)(4). "Public issue or issue of public interest" is defined as "an issue related to: (A)<u> Health or safety</u>; (B) environmental, economic or <u>community well-being</u>; (C) <u>the government</u>; (D) a public official **or public figure**; or (E) a good, product or service in the marketplace." Id. § 60-5320(c)(7). In his motion, Defendant does not explain why his comments are protected, merely asserting without explanation that the allegations in the complaint on their face show they are based on Defendant's rights."
>
> <u>The majority of these comments are directed at Mr. Koehn personally. Defendant does not argue that Mr. Koehn is a public official or public figure, and the court does not find that he is.</u>

The Court was without the accompanying evidence exhibits A through MM to make the **determination regarding Koehn as a public figure.** Chad M. Koehn **is a public figure as defined by the USSC** and at the very least a limited scope public figure under doctrine, see Exhibits A thru HH. USSC has defined public figures as those who have achieved a role of *"special prominence"* in the affairs of society by <u>reason of **_notoriety_**</u> of their achievements <u>or vigor</u> and/or success **and/or failures** <u>with which they seek public's attention</u>. Koehn has taken advantage of the media to advocate his cause. *Time, Inc. v. Firestone, 424 U.S. 448 (U.S. 1976).* Chad Koehn <u>pursues with vigor</u> seeking to gain the public's attention, see Exhibits A thru MM. <u>Koehn has certainly gained notoriety</u> in the public for which he has sought the "public's attention", both for self proclaimed successes and failures. Koehn is the subject of, SANCTIONS and suspension, See Ex. F - i and K-M & GG. *Vitale v. National Lampoon, Inc., 449 F. Supp 442 (1978).* <u>Koehn has notoriety for mishaps and fires Ex. J</u>, Sanctions Ex A-JJ *Wolston v. Reader's Digest Association, 443 U.S. 157 (1979)* IN FACT Chad M. Koehn heralds himself an

"expert" in BITCOIN and other cryptocurrencies claiming publicly he is **"Entrenched in the world's largest barter system (Bitcoin)"**, www.HeraSoft.com Ex. N code line 1924, *James v. Gannet Co., 40 N.Y.2d 415 (1976).* A person who is "entrenched" in Bitcoin, heralds themselves as "firmly established and difficult or unlikely to change; ingrained", the definition of *entrenched.* Koehn is a public figure as defined by USSC; in the alternative Limited Scope Public Figure, as clearly demonstrated. Chad M. Koehn, has argued he is successful, boasting businesses and pursues with "vigor" seeking public attention. See Ex. S Koehn Ranch and Ex. T & Ex A - M, "Chad Koehn Bitcoin" from DuckDuckGo; Ex. O; Bing Search Results, Ex. P; Ex. Q, investment fraud attorneys listing of Koehn, Ex. A-H & GG again on HeraSoft.com/team Code lines 1850-1856, **being "entrenched" in BITCOIN.** The vigor in which Koehn seeks public attention entrenched in BITCOIN. Conversely Nelson does not seek the public's attention or admiration. Koehn has sought public attention and spotlight in the emerging CRYPTOCURRENCY sector, and BITCOIN, authoring and promulgating dozens of press releases, hosting conferences and seminars (see Ex. FF) selling and trading unregistered and unlicensed securities, promoting the sale of private securities transactions. Koehn invites public attention *Gertz v. Robert Welch Inc.,418 U.S. 323 (U.S. 1974)* hence he is a public figure as defined by law & the United States Supreme Court.

Most critically, Koehn does not and cannot dispute the facts that establish investors reasonably "expected profits from the efforts of others" through their investment in HERC stock coin and other crypto currencies promoted by Koehn**.** Koehn has made an avalanche of public statements representing outlandish untruths, utilizing logos, seals and letterheads of Fortune 100 Public Companies; **the Great Seal of a US State**, see Ex. DD, US Federal Resources **US ARMED SERVICES**, the OFFICIAL Logo & SEAL of the US Air Force Research Lab claiming ENDORSEMENT, see Ex. HH-NN, notice tendered under DoD Directive 1440.1; the United Nations; unauthorized use of the Great Seal of the State of California directly opposite the Official Seal of the US Department of Energy and even claiming contracts with "major sovereigns, all in order to have investors rely upon these untrue

statements. In feverish efforts to attract more investors to the intricate web of companies, and continue to fuel and fund an extravagant lifestyle Koehn's exaggerations and wild insidious machinations constitute *dolus* becoming greater as he seeks to fuel ongoing and continuing investment schemes.

<u>Now Second Amended Complaint,</u> Plaintiffs change their factual assertions entirely now claiming:

> "that the FBI and other law enforcement agencies were investigating Chad Koehn and UCM for criminal actions, that Mr. Koehn was the subject of multiple sexual harassment claims, that Mr. Koehn was a pedophile, that Mr. Koehn was involved in a human tracking [SIC] ring, that Mr. Koehn had been involved in an international money laundering scheme for Anthem Holdings, Anthem Blanchard, and/or Cynthia Blanchard, that Mr. Koehn had falsified documents filed with the SEC, that Mr. Koehn was under criminal investigation, that lawsuits were being filed against Mr. Koehn throughout the United States, that Mr. Koehn had hired a hit team to kill Mr. Nelson, Mr. Nelson's children and his parents, that Plaintiffs' client, whom Mr. Nelson contacted, figured prominently in the ongoing investigations and would be a named party in any pending SEC and/or criminal actions against the Plaintiffs, and that the Plaintiffs were somehow engaged in criminal activities adverse to the United States of America."

Plaintiffs claims, involving whether or not UCM is under investigation, is a matter of public concern and directly <u>involves goods and services in the marketplace</u>, as a result any speech of opinion or fact regarding the existence of or possibility of a criminal investigation is protected speech.

<u>The Court in D. 330, was without all facts, and evidence to speculate on the allegations in the now SECOND amended complaint, when it made a finding:</u>

> "This court finds that the allegations against Mr. Koehn are not related to a good, product, or service in the marketplace, nor do they fall under any other category identified in the KPSPA, making the majority of Defendant's alleged defamatory comments not protected speech."

Koehn and UCMK are inseparable as UCMK is the alter ego of Koehn. The actual malice standard focuses on the defendant's **actual state of mind at the time of publication or words spoken.** There is no actual malice nor even negligence as it is a matter of fact that Chad Koehn is associated with Bitclub and thus Russ A. Medlin, a convicted pedophile. In fact when the FBI put out an INTERPOL, Ex. AA & BB, alert for Russ Albert Medlin, he was detained by authorities in Indonesia on charges of paid sex with minor children, it is fact Medlin had flown to Indonesia via private jet from Dubai, where Koehn claims HeraSoft offices Ex AA & BB. AS referenced in the Public Placement Memorandum (PPM) for HERC crypto currency stock coin, appears on page 18, Joby Weeks, Ex. CC, directly connected to Bitclub Ponzi Scheme, prosecuted AUSA with "convicted twice in 2006 and 2008 for crimes relating to child molestation and flagged by Interpol as a child molester" Ex. Y & Z.  American wanted by FBI entered Indonesia before Interpol's red notice  Chad Koehn's evident connections to Bitclub, and his

heralding himself as "entrenched" in Bitcoin for more than half a decade, demonstrate clearly he is entrenched and in the public eye seeking seeking the public's <u>attention with vigor</u>, for his crypto currency prowess & expertise, *Brewer v. Memphis Publishing Co., 626 F.2d. 1238 (5th Cir. 1980)*<u>, also see RED NECK High Tech Yacht Fund LP, he claims as a "crypto currency" hedge fund.</u>  The allegation claiming allegedly defamatory statements were made regarding Chad Koehn being a "pedophile" and the allegation of multiple "harassment settlements"; can only have been addressed within the pleadings of this matter, as no knowledge of "sexual harassment settlements" was known prior to removal of this matter to Federal Court.  Likewise no knowledge of Koehn's involvement with Bitclub and Joby Weeks and Russ Albert Medlin were known prior to removal either.  It is well settled and known that Russ A. Medlin is a pedophile, it was basically printed right on his INTERPOL Red Notice.**"Interpol had yet to issue a red notice for Russ Albert Medlin who came from Dubai."** [FBI's Fugitive Reasons For Choosing Indonesia](#) <u>see Ex. "AA"</u>  HeraSoft Dubai Ex BB and Y/Z.<u>. ABSOLUTE PRIVILEGE within the pleadings of this matter.  The fact Koehn is a public figure or in the alternative a limited scope public figure with knowledge by the public of his claims to be "entrenched" in BITCOIN the vigor upon which he seeks the public's attention,</u> demonstrate clearly any allegations made are squarely within the KPSPA.  Koehn's troubles do not end here as BOTH Absolute and qualified privilege also exists.   Whether or not Koehn is a PEDOPHILE**, a label Koehn created for himself**, in his now second amended complaint is a matter of public safety and concern.  No statements regarding Koehn's association with a known pedophile, Russ Albert Medlin were made outside these pleadings. UCMK the alter ego of Koehn making them one in the same in the marketplace

<u>TURNING NOW TO UCM aka UCMK, the Court stated in Order D. 330:</u>

> **"Some of the comments allegedly made by Defendant are about UCM. UCM is a business which provides financial services available to the public marketplace.** <u>This potentially brings some of Defendant's comments within the protection of the KPSPA because they may relate to a good, product, or service in the marketplace.</u> Defendant's comments about UCM generally implicate UCM in some type of criminal wrongdoing alongside Mr. Koehn. But it is not clear how that alleged wrongdoing relates to the financial services UCM provides to the marketplace. In fact, any specific allegations about criminal wrongdoing are directed at Mr. Koehn rather than UCM and it is unclear how the entity UCM is implicated at all. Defendant has not

explained in any way why his speech about UCM is considered protected public speech. While the court may liberally construe Defendant's arguments as a pro se party, it cannot construct arguments on his behalf. *Whitney, 113 F.3d at 1173–74.*"

Plaintiff's Defamation Claim Concerns Nelson's Right of Free Speech and Right of Association

The Act defines "exercise of the right of free speech" to mean "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1). An "issue of public interest" includes issues related to "a good, product or service in the marketplace." Id. at (c)(7). In interpreting the "exercise of the right of free speech," Kansas courts broadly interpret the Act's protections, as the legislature intended. In *Doe,* the court held that e-mail correspondence between representatives from two universities regarding disciplinary actions taken and complaints made against a specific student concerned the right of free speech. *499 P.3d 1136 at 1140.AOL, Inc. v. Malouf,* the court held that an article communicating that a dentist had been charged with "defrauding state taxpayer of tens of millions of dollars in Medicaid scam" related to a service in the marketplace *2015 WL 1535669, at \*2 (Tex. App.—Dallas April 2, 2015, no pet.) Krimbill v. Talarico, (Okla. Civ. App. 2017)*. Koehn's claim is based on statements allegedly made by Nelson regarding securities, CRYPTO CURRENCIES sold and purchased within the securities industry—clearly constituting a communication regarding "a good, product, or service in the marketplace." Nelson's alleged statements are no different than those courts have found to be an "exercise of the right of free speech." *Doe, 499 P.3d at 1140; Carachini, 355 F.Supp.3d at 1062; McDonald Oilfield Operations, LLC; AOL, Inc., 2015 WL 1535669, at \*2; Krimbill, 417 P.3d at 1249-1250.* Whether or not UCM is under investigation for "securities irregularities"whether or not unregistered/unlicensed securities were offered and sold in the marketplace are matter concerning good and services in the marketplace, the existence of a person as a whistleblower working with the government, claims regarding "that the FBI and other law enforcement agencies were investigating … UCM for criminal actions" are all issues related to goods in the marketplace. The fact that at 6 of the 2nd AC plaintiffs state *"*UCM has been a financial consulting firm, and Mr. Koehn has been the President of UCM, also performing the functions of a Chief Executive Officer and a Chief Operating Officer of UCM".   UCM is actually the alter ego of Koehn, as

they are inseparable from one another, one not being able to discern any difference between Koehn and the moniker he uses, **UCM/UCMK and Koehn are one in the same,** UCM is nothing more than the alter ego of Koehn. Formulaic titles demonstrate clearly he is the only shareholder, using UCM improperly as a shield, UCM would not exist absent Koehn's state and federal registrations. Chad Koehn as a person by extension is the alter ego of UCM, <u>thus being one in the same.</u> As they are lacking separate identity from <u>each other under alter ego doctrine.</u> Koehn is the proclaimed owner of UCM, signing all regulatory forms as the owner/only shareholder. No distinction can be made between the two, *U.S. Sec. & Exch. Comm'n v. Long Term–Short Term, Inc.,* (E.D.Va. 2011) Koehn's conclusory allegations UCMK is not an alter ego cannot be accepted, *Labram v. Havel* Koehn's naked assertions to hide behind an inadequate corporate veil cannot be accepted by any Court. "A complaint is insufficient if it relies upon <u>"naked assertions devoid of further factual enhancement."</u> *Iqbal, 129 S.Ct. at 1949.* UCMK is the mere alter ego of Koehn, exists not without Koehn's registrations, *Baatz v. Arrow Bar, 452 N.W.2d 138 (S.D. 1990)* Thus any statements are regarding goods in the marketplace, UCM and Koehn are one in the same as alter egos of each other, *Acme Precision Products, Inc. v. American Alloys Corporation, 422 F.2d 1395 (8th Cir.1970); Osler v. Joplin Life Insurance Co., 164 S.W.2d 295 (Mo. 1942)* Ergo the allegations about Koehn are one in the same to UCM **thus concerning goods in the marketplace**. UCM and Koehn fail the test and are in fact alter egos of one another, *Doughty v. CSX Transportation, Inc., 258 Kan. 493, 905 (1995)*

<u>Koehn's Defamation and Tortious Interference Claim Concern Nelson's Right of Association</u>

<u>The Kansas Act defines "exercise of the right of association"</u> to mean "a communication between individuals who join together to collectively express, promote, pursue <u>or defend common interests."</u> *See K.S.A. §60-5320(c)(3)*. Interpreting this provision, *the Doe* court held that the same communications regarding a student's past disciplinary record that constituted an "exercise of the right of free speech" also constituted an "exercise of the right of association," as both university officials

shared a common interest in student safety and welfare. *499 P.3d at 1140.* Similarly, in *Backes v. Misko,* the court held that social media posts regarding horse breeding fell within the purview of the right of association, as the participants shared a common interest. *486 S.W.3d 7, 20-21 (Tex. App.—Dallas 2015).* Nelson's alleged communications regarding Koehn/UCMK were between stockholders all whom have been sold securities and/or CRYPTO CURRENCIES **who share Nelson's interest,** Nelson is a significant equity interest holder **in the mutual and commonly invested enterprises**, as evidenced by the fact of the capitalization table of the common enterprise, see Exhibit "X". Nelson's alleged communications **concern his right of association as a shareholder and in defense of his investment**. Koehn Cannot meet His Burden of Establishing a Likelihood of Prevailing on His Claim by Substantial Competent Evidence to Support a Prima Facie Case **Koehn Lacks Substantial Competent Evidence.** Under the Kansas Act, once the movant meets its burden of establishing that the Act applies to the plaintiff's claim, "the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." KSA §60-5320(d) (emphasis added). "Substantial competent evidence" means "legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion." *Fisher v. Kansas Dept. of Revenue, 58 Kan. App. 2d 421, 423, 471 P.3d 710 (2020).* The Court may consider pleadings, but does not accept the facts in the petition as true, since this "would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint." *Doe 61 Kan.App.2d 148 (quoting DuPont Merck Pharm. Co. v. Superior Ct.,78Cal.App.4th (2000)*, modified (Jan. 25, 2020)). Importantly, baseless opinions and conclusory statements by the plaintiff will not suffice. *Fisher, 58Kan.App2d 423.*

      Under Kansas law, the elements of a defamation claim are (1) false and defamatory words, (2) communicated to a third person, (3) which result in harm to the reputation of the person defamed. *Lloyd v. Quorum Health Resources, LLC, 31 Kan. App. 2d (2003).* A defamation plaintiff must allege and prove actual damages and cannot rely on the theory of presumed damage. *Zoeller v. American Family*

*Mut. Ins. Co.*, 17 Kan. App. 2d 223, 229, 834 P.3d 391 (1992) "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d (10th Cir. 2017). <u>Koehn's 2nd complaint fails in all regards</u>, claiming damage only to sensibilities and not actual provable damage(s) as defined by the law or case precedents,<u> thus MUST be dismissed.</u>

<u>Koehn fails to meet his burden on two fronts</u>. First, his bare bones petition, unsupported by verification, affidavit, or any evidence, offering nothing of verified facts. Instead, the petition consists of generalities and generic statements that the alleged statements were "false" and "defamatory" without more. *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)* ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *Smith-Utter v. Kroger Co., (D. Kan. March 24, 2009)* Second, <u>compounding this fatal lack of detail</u> and specificity as to what specific comments were said to whom, when, where and how, is Koehn's failure to offer any factual specifics to support his alleged "reputational damages." Instead, he relies solely on conclusory allegations that he <u>"has been embarrassed and humiliated in front of his business associates, family and friends and his reputation and good name has been damaged"</u> (2nd amended complaint at 21)<u>, with no support</u>. Kansas courts have repeatedly held that such conclusory allegations <u>fail to establish a valid claim for defamation</u>. *See, Ablulimir v. U-Haul of Kansas, 2011 WL 2731774, at *3 (D. Kan. 2011); Doe, 61 Kan. App. 2d at 150; Rx Sav., LLC v. Besch, 2019 WL 8014669, at *4 (2019); Lindemuth v. Goodyear Tire & Rubber Co., 19 Kan. App. 2d (1993)* (**"injuries to one's sensitivities alone is not enough to support a claim for defamation**."); *Davis v. Hildyard, 34 Kan. App. 2d (2005)* ("<u>Broad and factually unsupported allegations of patient cancellations do not support a claim for damages for alleged defamation.</u>"); *Snyder v. American Kennel Club, 661 F.Supp.2d 1219, 1239 (D. Kan. 2009)* ("Under Kansas law, a plaintiff in a defamation action cannot rest on presumed damages, but must prove damages.")<u> (emphasis added)</u>. Koehn only offers formulaic conclusory allegations that he "<u>has been embarrassed and humiliated</u>" (2nd AC at 21). Embarrassment or

humiliation *do* not nudge a claim over the hurdle.  The claim for <u>alleged defamation must be dismissed as a matter of law in Kansas and substantial case precedents as cited herein,</u>

**<u>Turning to the tortious interference claim</u>**, the fact that Koehn/UCMK have filed a complaint claiming deceased person demonstrates clearly and convincingly to the Court, Koehn/UCMK <u>have failed to investigate their claims prior to bringing action</u>. ***See Ex. U, V & W.*** Koehn and his lawyers **<u>owed a duty of care to the defendant and the Courts</u>**, not bringing frivolous claims about a dead person *"On or about September 6, 2022, and thereafter"* (2nd AC at 18); and goes on to list a bunch of shareholders, **including persons who are DECEASED** see Ex U through W!   In FACT of the gaggle of persons claimed by Koehn at 18, only two (2) were contacted regarding preparation of subpoenas, <u>covered under absolute and qualified privilege.</u>  Listing Marsha Weaver, deceased, passing over a year ago, after a long battle with cancer. Ex U-W, is dilatory <u>and in bad faith</u>. Koehn provides no evidence of having received referrals in the past, **nor the receipt of referrals from persons from beyond the grave**, he does not meet the hurdle to allow for damages; that customers have *"ceased, in whole or in part, as to their business or referrals, ceased, in whole or in part"* (2nd Amended Complaint at 30). "**<u>Broad and factually unsupported allegations of patient cancellations</u>** {emphasis added}<u>do not support a claim for damages</u>"; *Snyder v. American Kennel Club, 661F.Supp.2d (D. Kan. 2009)*

This Court has held that "Plaintiff must provide evidence Defendant's statements caused identifiable damage to her reputation." *Smith-Utter, 2009 WL.*  .KOEHN falls far short of substantial competent evidence to support the damages element of his claim. *Doe, 61 KanApp2d 150-51.*

**<u>The Communications at Issue are Privileged and Not Actionable</u>**:  Koehn's problems do not end there: even if he were able to provide substantial competent evidence, the communications he alleges are subject to ABSOLUTE privilege and/or qualified privilege as they were made in the course of this litigation and to qualified privilege under Kansas law since they were made in the course of Nelson's <u>protection of investment</u> **and** in the pleadings of this very litigation.  The Kansas Supreme Court has made clear that the qualified privilege applies to communications similar to those at issue:

> "A qualified or limited privilege is granted to those with a special interest or duty in the subject matter of the communication. The availability of a limited privilege is generally restricted to those situations where public policy is deemed to favor the free exchange of information over the individual's interest in his or her good reputation. One such qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication"

*Turner v. Halliburton Co., 722 P.2d 1106 (Kan. 1986)* (emphasis added). Applying this same principle, the Kansas Supreme Court previously held that an employer possessed a qualified privilege to communicate information regarding the discharge of a former employee to its customers. *See High v. A.J. Harwi Hardware Co., 223 P. 264, 269 (Kan. 1924)*. The Court noted:

> Satisfactory business relations between wholesale dealer and customer, maintained by mutual good will, confidence, and understanding, are not merely desirable, but are valuable to each. When those relations are likely to be disturbed, strained, or broken, on account of lack of knowledge or misinformation on the part of the customer of the cause of an incident directly affecting the relationship, dealer and customer have a mutual interest in the matter. Id. at 268-269.

"Where a defamatory statement is made in a situation where there is a qualified privilege the injured party has the burden of proving not only that the statements were false, but also that the statements were made with actual malice—with actual evil-mindedness or specific intent to injure." *Lloyd, 31 Kan. App. 2d at 952, 77 P.3d 993* (citing *Turner v. Halliburton Co., 240 Kan. 1, 8, 722 P.2d 1106 (1986)*). "Proof of malice in defamation actions when a qualified privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or with reckless disregard of whether it was false." *Smith-Utter, 2009 WL 790183, at \*4; Smith v. Williams, 2021 WL 4745713, at \*4 (D. Kan. Oct. 12, 2021)*. Koehn, has not even alleged what statements are malice, & is <u>**unable to meet this heightened burden,**</u> thus is unable to establish likelihood of success on claims and **the Court must dismiss.** Koehn Fails to State a Claim Upon Which Relief May be Granted: In the alternative, Koehn's claim(s) must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it does not state a claim upon which relief may be granted. As set forth in greater detail above, <u>generalities and conclusory allegations regarding alleged "reputational damage" are insufficient to support claims under Kansas law,</u> an**d courts routinely dismiss claims on this basis**. *See, e.g., Ablulimir, 2011 WL 2731774, at \*3; Garcia v. Tyson Foods, Inc., 890 F.Supp.2d 1266, 1271-1272 (D. Kan. 2012); RX Savings, LLC v. Besch, 2019 WL 8014669, at \*3 (D. Kan. Oct. 11, 2019)* (<u>because defendants have not adequately pleaded with specificity and have not adequately alleged damages</u>."). If the Court does not strike Plaintiff's claim under the Kansas Public Speech Protection Act, it must do so

under Rule 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "Pleadings," for purposes of a Rule 12(b)(6) motion, however, include attachments to the complaint, documents incorporated into the complaint by reference, and <u>information subject to judicial notice</u>. *Tellabs, Inc,* 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), <u>Koehn provides none</u>. <u>Documents attached to a motion to dismiss are considered part of the pleadings,</u> *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "damages for defamation may not be presumed but <u>must be established by proof of actual damages.</u>" *In re Rockhill Pain Specialists, P.A.*, 55 Kan. App. 2d 161, 186, 412 P.3d (2017). Koehn's claim of embarrassment and humiliation at 21, does not entitle him or his alter ego UCMK to nudge over the hurdle as **injuries to sensibilities alone are insufficient to support a claim for defamation or tortious interference** [EMPHASIS ADDED]

      <u>A general allegation or sworn statement that plaintiff suffered reputational harm unsupported by specific observations will not suffice.</u> *See, e.g., Woodmont Corp. v. Rockwood Ctr. P'ship*, 811 F. Supp. at 1483 (D. Kan. 1993) The plaintiff has failed to "name[] any customer whose business was lost as a result of the statement, nor . . . allege[] the amount of such loss." *Id.* Rather, "plaintiff . . . merely made the general allegation that defendants' … statements damaged its business reputation." <u>Therefore, the court held that the plaintiff had not pled sufficient facts to support a reasonable inference of reputational damages.</u> Koehn's complaint is practically identical to that of the plaintiff in *Woodmont Corp*. Koehn fails to plead either actual damages or facts from which the Court may reasonably infer that Koehn suffered reputational damages, if not for the defendants alleged opinions. The present case, is insufficient to apprise a defendant of what damages must necessarily flow from such alleged reputational harm. There can be no reasonable inference of damages without some sort of alleged facts showing the effects of reputational damage. By failing to show any evidence of actual damages, Koehn has failed the higher burden of showing substantial evidence of such damages. Therefore, Koehn

cannot prove a likelihood of success on his claim. In *Woodmont Corp.*, the plaintiff bringing a defamation case "merely made the general allegation that defendants' public statements damaged its business reputation." *Id. at 1484* (analyzing motion to dismiss, a much lower standard than the one contained in the KPSPA)   Worse, Koehn claims dead persons(s) were contacted; **misses PLEADINGS MARK TO TORTIOUS INTERFERENCE WITH A BUSINESS ADVANTAGE**   The court next turns to plaintiffs' tortious interference with contract claim. Kansas law identifies the elements of a tortious interference with contract claim as: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages. *See Reebles, Inc. v. Bank of Am., N.A.*, 25 P.3d 871, 875 (Kan. Ct. App. 2001) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994)). **This tort is "aimed at preserving existing contracts."** Id. (citing Turner v. Halliburton Co., 722 P.2d 1106, 1115 (Kan. 1986)).  Plaintiffs have missed the pleading mark, they have not pleaded facts that, if proved true, could satisfy all  elements. Defendants demonstrate plaintiffs merely have supplied "conclusions" and "not facts." They focus their attack on three elements of this claim—missing contract existed, second defendant knew about the contract (not possible), and third (intentionally procured contract's breach), also not possible. Reasons that explain themselves, this analysis, like tortious interference contracts, tortious interference with business relations— TIBR, for short—is "predicated on malicious conduct by defendant." *Byers v. Snyder, 237 P.3d 1258, 1269 (Kan. App. 2010)*. Tortious interference with an existing contract "seeks to preserve existing contracts," TIBR "seeks to protect future or potential contractual relations." *Id.*  TIBR requires pleading and **proof of:** "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) **knowledge of the relationship or expectancy by the defendant** (not possible to prove as defendant still knows not who the "propriety people" Koehn/UCMK (alterego) claim as ownership; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages

suffered by plaintiff as a direct cause of the defendant's misconduct." Id. *Turner v. Halliburton Co.,* (Kan. 1986). First the plaintiffs fail to assert facts sufficient to ascertain if the defendant (1) Knew of the existence of a contract (2) **could have conceived the contract was enforce or valid** (3) contact with the "supposed" contract persons was for a valid reason as both the defendant and those contacted were engaged and invested in the same investment **{Right to Association} see Ex X** (4) there is no misconduct discussing with like kind investors in same contractual relationship commonly invested enterprise (5) plaintiff fails to assert damages other than lost leads or prospective appointments;"**Broad and factually unsupported allegations of patient cancellations** do not support a claim for damages");*Snyderv.AmericanKennelClub(2009)*

      **VI. CONCLUSION:** Kansas Public Speech Protection Act protects Nelson from unsupported/unsupportable allegations of "defamation" **and** tortious interference intended to chill his protected speech, petition & association, entitles him to early dismissal of Koehn's claims. The Act forces Koehn to "put his money where his mouth is" or be subject to striking claims and ordering sanctions.(1) Nelson has met his burden of establishing alleged statements are protected activities KPSPA, (2) Koehn lacks requisite substantial competent evidence elements of his claims or tortious interference and no alleged damages. Nelson respectfully requests the Court strike the claims, & award Nelson costs & sanctions to deter similar conduct, & enter further relief as just and proper. In the alternative Nelson seeks relief granted dismissal pursuant to Rule 12(b)(6), not reward the plaintiffs dilatory motives engagement in scorched earth litigation for more than a year to double, 1 year SOL. Respectfully Submitted, this 19th day of January 2023;

*[signature: Michael Nelson]*

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

                            chadkoehnlawsuit@nosoybean.com Phone: 702.932.3434