| | |
|---|---|
| **United Capital Management of Kansas, Inc**. and **CHAD M. KOEHN**<br><br>        Plaintiffs, counter-defendants<br>    v.<br>Michael Nelson<br><br>        Defendant; Counter-Plaintiff PRO-Se. | <mark>**DOCKET NO.:**     **5:22-CV-04008-JWB-TJJ**</mark><br>CIVIL ACTION<br><br>**EXHIBITS**<br><br>**[Jury Trial Demanded]** |

# EXHIBIT



# "i"

# To Follow . . .



Main office: (616) 632-8000

Toll-free: (888) 607-4819

FINRA ARBITRATION     COMMON CLAIMS     CASE RESULTS & TESTIMONIALS     ABOUT US     CONTACT

# Investor Alert – Chad Koehn and SA Stone



**INVESTOR ALERT**

Investor Alert – Chad Koehn and SA Stone

Daniel Broxup    October 28, 2022

Chad Koehn, a former registered representative of securities broker SA Stone, has been suspended from the securities brokerage industry and fined by industry self-regulator FINRA for allegedly participating in unauthorized private securities transactions involving 59 individuals, 34 of whom were SA Stone customers.

According to FINRA, between August 2020 and October 2020, Mr. Koehn participated in the sale of securities by a company that purportedly owned software development and blockchain technology businesses. FINRA's investigation led to findings that Mr. Koehn (a) discussed the private placement offering of the company's common stock with the investors, (b) told the investors that he intended to invest in the private placement, (c) introduced the investors to the company's founder, and (d) invited investors to meetings he hosted where the founder

### Search

SEARCH

## RECEIVE YOUR FREE CASE REVIEW

We will gladly review qualifying cases free of charge. Please contact us to learn more.

Toll-free: (888) 607-4819

Email us

## RECENT POSTS

Investment Fraud Attorneys Investigate Financial Advisor John Matson

Investment Fraud Attorneys Investigating Leonid Yurovsky

GPB Capital – Investor Update

Investor Claims Attorneys Investigate Financial Advisor Jeffrey Eglow

Investor Claims Attorneys Investigate Former Financial Advisor Richard Demetriou

## ARCHIVES

Select Month

## CATEGORIES

delivered presentations regarding the company's business and investment offering.

Customers of Koehn who invested in the outside investments may have legal claims against SA Stone. To prevail on a claim against the firm, the investors will likely have to demonstrate that the firm either knew or should have known about Koehn's unlawful conduct. *See, e.g., McGraw v. Wachovia Securities, L.L.C.*, 756 F. Supp. 2d 1053 (N.D. Iowa, 2010); *As You Sow v. AIG Financial Advisors, Inc.*, 584 F. Supp. 2d 1034 (M.D. Tenn. 2008).

In *McGraw*, two brokerage firms who were sued in connection with a registered representative's "selling away" (i.e. the sale of investments that were not approved by the firms) sought summary dismissal of the claims against them on the grounds that the sales were made outside the scope of the representative's employment with the firms. The court denied the firms' motion as to substantially all of the plaintiffs' claims and reasoned in pertinent part as follows:

> [L]ack of notice or approval of a representative's particular outside activity or private securities transaction does not relieve a firm of its duty to monitor or investigate a representative's outside activities or private securities transactions. . . . The court agrees that the plaintiffs have generated genuine issues of material fact that "sufficiently suspicious" circumstances here may have placed the

Firm News
Industry Cases
Industry News
Investment Products
Investor Alert
Investor Education
Judgments
Uncategorized

> defendants on notice that Lovegren was engaged in improper conduct as to them, giving rise to a duty to monitor and investigate Lovegren's outside activities or private securities transactions.
>
> . . .
>
> Specifically, the McGraws have generated genuine issues of material fact that . . . they received documentation of and other communications about their purported "investments" with Lovegren sent from Lovegren's offices and company e-mail accounts at SCI/Wells Fargo or A.G. Edwards/Wachovia.
>
> . . .
>
> Thus, they have generated genuine issues of material fact that employees and agents of the defendants either knew of Lovegren's "outside" business activities and private securities transactions with the plaintiffs or should have discovered those activities from proper monitoring of incoming and outgoing correspondence and payments to and from Lovegren at his offices at SCI/Wells Fargo or A.G. Edwards/Wachovia, but they neither monitored, investigated, nor discovered Lovegren's misconduct
>
> . . .
>
> Thus, the court concludes that, notwithstanding that there is no documentation that Montross ever had an account with A.G.

> Edwards/Wachovia, and Pestka was no longer a client of A.G. Edwards/Wachovia when she invested in Lovegren's fictitious investment in "Bond Management," all of the plaintiffs may nevertheless have been owed a duty by A.G. Edwards/Wachovia and/or SCI/Wells Fargo to monitor and investigate Lovegren's activities, and that the defendants may have breached that duty by failing to monitor, discover, or investigate Lovegren's outside activities and private securities transactions.

In *As You Sow*, the court also denied a motion to dismiss filed by a FINRA member firm that was sued in connection with alleged selling-away activity by one of its representatives. The court reasoned in pertinent part as follows:

> Stokes's duty was to complete securities transactions in accordance with securities laws and NASD rules. To that extent, the acquisition and disposition of Plaintiffs' assets were within the actual scope of Stokes's duties as the Defendants' agent. Federal courts that have held that broker-dealers are liable under principles of respondeat superior where their affiliated agents steal client's money. See Henricksen v. Henricksen, 640 F.2d 880, 887 (7th Cir.1981), cert denied, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981); Alvarado v. Morgan Stanley Dean Witter. Inc., 448 F.Supp.2d

> 333 (D.P.R. 2006). A contrary rule would cause injury unfair to the investing public.
>
> ...
>
> Broker dealers may not enjoy the benefits of their relationships with affiliated agents without discharging their supervisory duties, including the supervision of private securities transactions. Significantly, the NASD defines "private securities transaction" as a transaction "outside the regular course or scope" of the affiliation. Rule 3040(e) (emphasis added). A private securities transaction is therefore not outside the scope of the affiliation, but simply outside the "regular" or primary scope. Consistent with these principles, the Sixth Circuit has held that "a dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business," even when the investor had no accounts with the firm. Vestax Securities Corp. v. McWood, 280 F.3d 1078, 1082 (6th Cir. 2002). For this tort [negligent supervision], numerous courts have ruled that broker dealers may be held liable under the common law for negligently supervising their registered representatives, even on dealings with investors who had no accounts with the firm.

There are many other examples of courts ruling against FINRA member firms in selling away cases, even when the investors who were involved did not hold accounts with the member firms. *McAdam v.*

*Dean Witter Reynolds, Inc.*, 896 F.2d 750 (3d Cir. 1990): *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 803 F.2d 454 (9th Cir. 1986); *Berthoud v. Veselik*, 2002 WL 1559594, *6–7 (N.D. Ill., 2002); *Javitch v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 940 (N.D. Ohio, 2003)(denying motion to dismiss claims that brokerage firm had negligently supervised its broker); *Burns v. Prudential Secs., Inc.*, 167 Ohio App. 3d 809, 821, 857 N.E.2d 621 (2006) (affirming multi-million dollar verdict in investor suit alleging negligent supervision by broker dealer).

On the regulatory side, FINRA's enforcement division regularly brings actions against member firms for supervisory failures where the member firms have failed to detect "red flags" of selling away. For example, in *FINRA Department of Enforcement v. Metlife Securities, Inc., et al*, FINRA brought an enforcement action against several member firms that failed to detect red flags of selling away contained in emails that flowed through the member firms' email systems. In its finding of facts, FINRA stated as follows:

> *As a result of the Respondents' deficient supervisory systems and procedures for email review, numerous emails that contained indications of misconduct by representatives escaped detection. For example, during the relevant period, two MSI registered representatives engaged in undisclosed outside business activities and private securities transactions without detection by MSI, although*

*the misconduct was reflected in more than 100 separate emails that were sent or received during that period using MSI assigned email addresses. It was ultimately revealed that one of those registered representatives had participated in numerous private securities transactions to raise capital for real estate development companies that he owned, controlled, or had contracted with, and that the representative had misappropriated nearly $6 million from his customers.*

*. . .*

*Respondents' written supervisory policies and procedures prohibit their registered persons from engaging in outside business activities or private securities transactions without prior written authorization. During the relevant period, to monitor compliance with that policy, Respondents' written supervisory procedures directed supervisors to review the incoming emails of registered persons for any indications of unauthorized outside business activities or private securities transactions, and upon identifying any such indications, to take immediate corrective action. However, that procedure was inadequate due to its dependence upon registered persons forwarding their own emails to a supervisor for review. As a result of this inadequate procedure, numerous email communications containing*

> clear indications of Rule 3030 and/or Rule 3040 violations escaped detection.

In *FINRA Department of Enforcement v. MML Investors Services, LLC* , FINRA brought an enforcement action against a member firm that failed to follow up on numerous red flags that its registered representatives were engaging in the unauthorized sale of real estate promissory notes, including email communications sent through the firm's email system. FINRA found that "the Firm did not reasonably monitor for or review these indications to determine whether unapproved private securities transactions were occurring at the Firm." FINRA further found that "[a]s a result of the Firm's supervisory failures, certain [registered representatives] recommended unapproved promissory notes to investors, . . . who sustained losses of up to $760,000 when the issuers of these promissory notes discontinued interest payments." As a result of the enforcement action, the member firm was required to pay restitution to the bilked investors, which including several non-account holders.

In *FINRA Department of Enforcement v. Portfolio Advisors Alliance, Inc.*, FINRA brought an enforcement action against a member firm and its Chief Compliance Officer for failing to follow up on red flags indicative of broker misconduct and for failing to properly review the registered representative's email communications. In that case, the registered representative had repeatedly

disclosed to the member firm and the CCO that he engaged in investment related "outside business activities"; however, the firm and the CCO did nothing to investigate the nature of those activities. Furthermore, the firm and the CCO knew that the registered representative conducted securities business using an outside email address, but never bothered to review the emails transmitted to and from that address.

Need Assistance?

If you suffered investment losses as a result of the malpractice or misconduct of Chad Koehn, the experienced securities law attorneys at Mika Meyers, PLC may be able to assist you in recovering some or all of your losses. Call us toll-free at 888-607-4819 for a free consultation or send us an email message through our "Contact" page to schedule a consultation.

- SA Stone

← Investor Alert – David Austin and JP Morgan Securities

Investor Alert – Stephen Sullivan and SW Financial →






## RECEIVE YOUR FREE CASE REVIEW

We will gladly review qualifying cases free of charge. Please contact us to learn more.

Main office: (616) 632-8000

Toll-free: (888) 607-4819

Email us

## CATEGORIES

- Firm News
- Industry Cases
- Industry News
- Investment Products
- Investor Alert
- Investor Education
- Judgments
- Uncategorized

## INFO

- Log in
- Entries RSS
- Comments RSS
- WordPress.org

Copyright © 2023 Michigan Investment Fraud Attorney

