**UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS**

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD M. KOEHN** <br><br> Plaintiffs, counter-defendants <br><br> v. <br><br> Michael Nelson <br><br> Defendant; Counter-Plaintiff PRO-Se. | <mark>**DOCKET NO.:** **5:22-CV-04008-JWB-TJJ**</mark> <br> **CIVIL ACTION** <br><br> <u>**Motion to Compel Requests for Production and**</u> <br><br> <u>**for Sanctions for Refusal to reply, follow the**</u> <br><br> <u>**rules obstructing discovery & Show Cause**</u> <br><br> **[Jury Trial Demanded]** |

    COMES NOW, Michael Nelson, pro se, pursuant with Order of the Court at Doc. 360, requiring this Motion be filed by 25 Jan. 2023, compelling production of documents and to strike plaintiff's BOILERPLATE repetitive objections, stonewalling the defendant's right to discover documents relevant to the plaintiffs purported cause of action, in in accordance with KSA § 60-5320(e)(1)(2), allowing for limited discovery:

    Defendant seeks ORDER upon plaintiffs to serve full and complete written responses and <u>Produce the Documents</u> in the Defendant's requests for production, a copy of which are attached hereto as Exhibit "A;" (part 1) together with Exhibit "B" (part 2) and the combined responses plaintiffs served. Plaintiffs were provided <u>early Rule 34 requests for production, pursuant with FRCP Rule 26(d)(2)</u>, which became due 30 days after Rule 16 Conference 12 July 2022. Plaintiffs claimed they could not retrieve requests via electronic delivery because Craig Brand stated he is unable or unwilling to utilize Google to retrieve pdf documents. Plaintiffs were able to extend their deadline for production from the 12 July 2022, Rule 16 conference through September, <u>then beg the indulgence of the Court even longer, not providing their responses until the end of November 2022 !</u>

    Plaintiffs' responses are wholly incomplete, and they only choose which queries for production of documents they wish to reply or object. Plaintiffs use BOILERPLATE, improper objection: "irrelevant, immaterial and not reasonably calculate" TWELVE TIMES, <u>repeating the same another two times @ </u>5 and 6 and once past tense, for confusion, see attached herewith Exhibit

"C".  At numbers 2, 3, 4, 7, 8, 9, 12, 15, 16, 18, 21, and under part 2 at number 6.  At number 19 they change it to use "calculated" past tense.

## BOILERPLATE objections are IMPROPER and Violate Ethics:

Federal courts have long disfavored boilerplate objections.  *St. Paul Reinsurance Co., 198 F.R.D. at 512 ("[F]ederal courts have routinely deemed [boilerplate objections] to be improper objections.")*.  District courts often repeat the warning: "Boilerplate, generalized objections are inadequate and <u>tantamount to not making any objection at all.</u>"  *Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted); accord Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[J]udges in this district typically condemn boilerplate objections as legally inadequate or meaningless." (citations omitted) (internal quotation marks omitted)); Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc., No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) (refusing to consider "[b]oilerplate or generalized objections")*.  **The warning reflects the resounding sentiment that boilerplate objections are legally improper, regardless of their practical consequence.**  Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358–59 (D. Md. 2008) ("[B]oilerplate objections . . . persist despite a litany of decisions from courts . . . that such objections are improper unless based on particularized facts." (citations omitted)); <u>This is because objecting parties bear the burden of demonstrating why their objections are proper.</u>  *St. Paul Reinsurance Co., 198 F.R.D. at 511* **(citing Oleson v. Kmart Corp., 175 F.R.D. 560, 565 (D. Kan. 1997))**.  <u>Objecting parties must "provide sufficient information to enable other parties to evaluate the applicability of [their claims]"</u>  *Burlington N. & Santa Fe Ry. Co.*  **A responsive objection is one that states (1) how a discovery request is deficient and (2) how the objecting party would be harmed if they were forced to respond to the request**.  *St. Paul Reinsurance Co., 198 F.R.D. at 512* **(D. KAN. 1997).**  <u>This requires lawyers to forgo the 'familiar litany' of general objections in favor of specifically supporting each objection</u>

individually. *See Design Basics, L.L.C. v. Strawn, 271 F.R.D. 513, 519* **(D. Kan. 2010)** *(quoting Allianz Ins. Co. v. Surface Specialties, Inc., No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534, at \*2* **(D. Kan. Jan. 7, 2005))** *(internal quotation marks omitted).* <u>The Court cannot allow boilerplate objections further.</u> First, their objections <u>unnecessarily obfuscate the discovery process</u>, distracting from the real issues in a case. *Watts v. Allstate Indem. Co., No. 2:08-cv-01877 LKK KJN, 2010 WL 4225561, at \*4 n.4 (E.D. Cal.2010).* Second, **boilerplate objections prevent courts from properly evaluating the objections' underlying merits**. *DL v. Dist. of Columbia, 251 F.R.D. 38, 43 (D.D.C. 2008).* <u>Objections do not exist in isolation.</u> **It is impossible for courts to properly evaluate an objection on its merits when the objection is devoid of sufficient specificity.** <u>Boilerplate objections are fundamentally unfair to the requesting party.</u> *Ingersoll, (D. Colo. 1999)*

<u>Federal courts' typically disfavor</u> for boilerplate objections, as they **violate numerous rules of civil procedure and ethics**, making their use <u>unlawful</u> as opposed to merely inconvenient! Generally, boilerplate objections do not serve the goals of the Federal Rules of Civil Procedure, which are aimed at "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding" FED. R. CIV. P. 1. **Federal discovery is intended to be a liberal process,** <u>encouraging the free flow of information between parties</u>.

<u>Stonewalling a requesting party as has been done in this case,</u> where the plaintiffs first responses took at least 5 months, with boilerplate objections is inconsistent with this vision. **"[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."** *United States ex rel. O'Connell v. Chapman Univ., (C.D. Cal. 2007) ;* **This burden leaves little room for boilerplate objections**. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005).* Here there has been NO FLOW of information from the plaintiffs and only obstructionist tactics boilerplate objections, the definition of <u>scorched earth litigation</u>.

The rule is intended **"to permit wide ranging discovery of information even though the information may not be admissible at the trial."** *United States ex rel. O'Connell, 245 F.R.D. at 648 (citing Jones v. Commander, Kan. Army Ammunitions Plant,* **(D. Kan. 1993)).** <u>A court may impose sanctions on motion by one of the parties, but may also impose sanctions on its own, without any motion before it.</u>  I respectfully request the Court issue Order compelling production and sanctions against the plaintiffs for the unethical, obstructionist tactics aimed at delaying these proceedings.  The purpose of Rules of Professional Conduct is to safeguard the "important procedural right" of an opposing party to obtain evidence during the discovery process.  The unrepresented pro se defendant is unable to get any discovery on any subject of the SLAPP petition, <u>repeatedly amended to no avail of stating a plausible cause upon which relief may be granted.</u>

**It is clear that attorneys do not have unfettered licenses to engage in frivolous discovery tactics**, as in constant claims the unrepresented pro se party not schooled in law has presented every single request as "frivolous", whilst the plethora of attorneys representing the plaintiffs have continually amended their petition and **not provided a shred of evidence to support any version.**  Even if such tactics arise out of attorneys' desire to zealously advocate for their clients, here without cause, their actions are zealotry and not zealous representation.

**Boilerplate objections "constitute[s] only a waste of effort and the resources of both the parties and the court."** *Martin v. Zale Del., Inc.*, No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *2 (M.D. Fla. Dec. 15, 2008); *Guzman v. Irmadan, Inc.,* (S.D. Fla. 2008)

<u>**The cost of engaging in burdensome discovery can be so great that litigants might forgo pursuing a claim in federal court**</u>, *See Joseph, supra note 109, at 62.*  **The PRECISE mission and objective of the plethora of attorneys representing the plaintiffs** who as the Court is now aware faces regulatory actions and is currently SUSPENDED as a stock broker, with dozens of securities attorneys seeking victims.  <u>The pursuit of obstructionist discovery achieves their</u>

purposes as with most SLAPP suits designed not only to wear down the defendant but to serve as a warning to all others similarly situated to simply abandon their claims and not pursue litigation.

ALL DISCOVERY of any sort has been blocked and met with extreme boilerplate repetitive refusal by the plethora of attorneys representing the plaintiffs, who have brought litigation as a SLAPP suit in order to warn off other critics of their investment schemes, whilst they defend as is evident by SANCTIONS already issued, the legions of angry investors and crypto currency 'hodlers' who believed the hype and outright untruths of the plaintiffs.  It is much more difficult to preside over an uncooperative, boilerplate objection-laden discovery process than a cooperative one. *Grider v. Keystone Health Plan Cent., Inc.,(3d Cir. 2009)* ("[I]f given more cooperation, [the judge] would undoubtedly have been able to preside more effectively."); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., (D.D.C. 1984)* ("General objections are not useful to the court ruling on a discovery motion.")  A judge should not have to wade through a sea of boilerplate objections only to discover that the objections did not represent the party's actual position, but were merely used to make the discovery process more difficult. *Hobley v. Burge, (N.D. Ill. 2003)*. By failing to answer discovery requests adequately, a lawyer misses out on the chance to be a refreshingly helpful alternative. *St. Paul ReinsuranceCo.Vs.CommercialFin.Corp., N.D.Iowa2000)*

**Boilerplate objections impose a cost on the legal profession.**  Their use, as with other abusive discovery practices, "lack[s] the civility and professionalism one expects from . . . experienced attorneys." *Grider, 580 F.3d at 125.  The scorched earth tactics* and lack of civility that repeatedly brings disrepute upon lawyers and the legal system, *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1486 (5th Cir. 1990)*.

Fed. R. Civ. P. 34 requires plaintiffs to object with more than boilerplate obstructionist tactics and/or respond to and produce the documents set forth to be produced.  Plaintiffs continue to beg the court's indulgence just a little further with their delay tactics, wherein they have had 5

months for production and have produced nothing, as is clearly noted, they have even had the Federal Magistrate Birzer who they sought recusal extend their time to produce by another 60 days at one point, and have not answered all requests made, in fact have provided nothing.

Fed. R. Civ. P. 37(a)(3)(B) and D. Kan. Rule 7.1 and 37.2 provide for the entry of an Order Compelling the discovery served upon plaintiffs, who continue to demand indulgence of the Court with their delay and obstructionist tactics to produce any competent evidence they have a cause of action. Fed. R. Civ. P. 37 (d) authorizes the Court to order sanctions for failure to comply with Fed. R. Civ. P. 34; Plaintiffs' continuous attempts to delay this litigation are more than sufficient grounds to award costs and fees for the preparation of this motion. Sanctions are needed and necessary in order to help avert such improper behavior and ethical violations moving forward as well as to serve a warning to other licensed attorneys who employ the obstructionist boiler plate repetitive objections and outright refusal to answer discovery requests for production. Defendant seeks entry of an order compelling production of documents requested and sanctions to deter future conduct.

Plaintiffs' objections are improper when they claim "proprietary persons" and/or customers, and then claim no such lists exist and are not required to produce lists. At (2) of plaintiff's responses, it seeks information pertaining to a DAO (decentralized autonomous organisation) of Koehn, who perhaps is the only person with the requested information, promulgated by the plaintiffs, distributing a de facto PPM (Public Placement Memorandum) of the same, Koehn cannot hide behind the Howey Test and not provide the information sought. At (3), (4), (5), and (6) the information sought for production is the information held by plaintiffs regardless of what other companies it concerns it is information they hold. (7) and (8) concerns information they claim as customers' objections are improper when they claim "proprietary persons" then claim no such lists exist and are not required to produce lists. At (12) production relates to regulatory/law enforcement investigations, prior litigation, all at issue with the purported claims made by plaintiffs, the request

is squarely proper. At (13) plaintiffs invoke, "privileged", whilst simultaneously claiming that "memorandum & logs" are open to multiple meanings, they must be compelled to provide and demonstrate privilege log(s), and identify documents they refuse to provide (Rule 34(b)(2)(A).) <u>A privilege log is required</u> if documents are being withheld based on privilege. (Rule 26(b)(5)(A).) At (14) another boilerplate objection "Overbroad and unduly burdensome", must provide more. Both at (19) and under Part 2 at (2), plaintiffs first refuse to provide litigation hold notices and to those issued as immaterial then claim they have made no litigation hold notices. Demonstrably GROSS NEGLIGENCE, if not willful. "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. See *Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 (8th Cir. 1993)* (Sanctions not abuse of discretion in pre-litigation destruction of evidence without showing of bad faith); see also *Zubulake v. UBS Warbrg LLC, 220 F.R.D. 212, 216-18 (S.D.N.Y 2003)*("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure preservation of relevant documents." *Id. at 218)(citing Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Kronish v. United States, 150 F.3d 112, 126 (2d Cir. 1998)*). At a minimum, that means counsel must direct the client to ensure that documents are preserved, not deleted from an electronically stored information system or otherwise destroyed or made unavailable. Failure to do so has been found to be 'grossly negligent.' *Zubulake, 220 F.R.D. at 221." Board of Regents of the Univ. of Nebraska v. BASF Corp., (D. Neb., 2007)*. Eerily spot on to this very litigation where the plaintiffs make claims of "securities irregularities" and a "whistleblower" is *Doe v. Norwalk Community College, 248 F.R.D. 372 (D. Conn. 2007)*, or an SEC investigation into a client's financial irregularities, *see, e.g., Arthur Andersen LLP v. United States, 544 U.S. 696 (2005)*. *Zubulake V* opinion regarding document preservation, "the failure to issue a written litigation hold constitutes gross negligence because that failure is likely to result in

the destruction of relevant information." *Id. at 3 and 18.* Judge Scheindlin, *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 685 F. Supp. 2d 456, 488 (S.D.N.Y. 2010),* this respected jurist concluded that "the failure to issue a written litigation hold in a timely manner amounts to gross negligence." *Judge Scheindlin's per se gross negligence rule has practical consequences.* A finding of gross negligence in failing to preserve potentially relevant evidence establishes the grounds to impose serious spoliation sanctions, including preclusion of evidence and negative inferences at trial. One of the first cases giving teeth to amended Rule 34 was *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, (S.D.N.Y. 2017). The opinion begins by "issu[ing] a discovery wake-up call" as "despite the clarity of the no-longer-new 2015 Amendments, the court still sees too many non-compliant Rule 34 responses." *Id. at *1-2*. The court held that defendants violated Rule 34 by: i) incorporating general objections into each response, ii) objecting to specific requests as "overly broad and unduly burdensome," and iii) failing to indicate a production timeline. *Id.* at *3. EXACTLY as we have here with the PLAINTIFFS!

On 28 August 2022, requests were made to the plaintiff's for production documented in the Court docket, noticing the requests, following the leadership filings made by the plaintiffs licensed attorney Chris Kellogg in document 145 and decorum and proper procedures:

> "NOTICE of Request for Production of all communications with FINCEN or any other State or Federal Regulatory or Law Enforcement Body or entity in the proceeding 5 years from this date as to Chad M. Koehn and UCMK and/or any agent, employee, officer, director, affiliate, contractor, attorney, vendor" **See Document 159**

> "NOTICE of REQUEST for Production of ALL FOIA Confidential Treatment Requests under Rule 83 of SEC's rules and regulations made by UCMK or Chad Mitchell Koehn in the preceding 5 years", **see Document Number 160.**

> "NOTICE of Request for Production of all SEC produced ESI with copies of all SEC subpoenas or other enforcement or regulatory requests made for the production of all ESI relating to UCMK, Koehn, Anthem Holdings Company, HeraSoft, or Hera Software Development Inc, Anthem Vault Inc, Red Neck High Tech Yacht Fund, or any other entity affiliated with Chad Mitchell Koehn in the proceeding 5 years from this date including any and all agent, employee, officer, director, affiliate, contractor, attorney, vendors as to Chad M. Koehn and UCMK" **SEE Document 161**

Apparently Kellogg's actions were in direct contravention and disobedience of Local Rule 26.3, my ignorance for following the leadership and decorum of the licensed attorneys. The Court stated my propounding of the request made in Doc's 159 - 160, was improper, yet it was made following the procedures used by Kellogg in document 145. None-the-less though the plaintiff's have had these requests since JUNE of 2022, made in early Rule 34 requests under Federal Rules of Civil Procedure Rule 26(d)(2), part of FRCP since 2015. I was forced by the Court to propound the same requests yet a fourth time in mailing the same to the plaintiffs as is noticed in the Court docket as Document Number 224 on 12 September 2022. Plaintiffs have directly REFUSED to even address those requests for production.

WHEREFORE, the undersigned unschooled in law, appearing pro se, out out of necessity requests respectfully and BEGS assistance of the Honorable United States Federal Court, in BOTH issuing strong SANCTIONS against the plaintiffs and instructions compelling compliance pursuant to rules to PRODUCE the documents as requested, and to strike their evident BOILERPLATE objection(s), Issuing Order and Sanctions for the plaintiffs to PRODUCE the documents as requested without further obstructionstic and delay tactics.

AND WHEREFORE the defendant seeks SANCTIONS, for the plaintiffs continual non-compliance with previous Order to Compel production in Order of the Court Document 306, wherein the Court Stated:

> "ORDER granting 305 Defendant's Oral Motion to Compel Production of Documents in PDF Format. Plaintiffs shall reproduce the documents discussed during the conference in PDF format, as per the terms of the parties' ESI protocol, no later than 11/18/2022 and certify service of same. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 11/3/2022." See ORDER of the Court at Document 306

Despite Order of the Court to COMPEL production of documents, and being ordered to do so "no later than 11/18/2022, MORE than TWO months later, plaintiffs still willfully disobey, refusing compliance with the Order of the Court. Plaintiff's failed and/or refused to object to and/or provide

any response to the lawful Order of the Court to Compel their compliance.  All efforts to have meaningful discussions with the plaintiffs encouraging compliance, requesting phone conversations to meet and confer have been ignored and/or deflected with refusal to comply with Court Order.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally review "filings generously and with the leniency due pro se litigants", see *Erickson v. Pardus,(2007); Andrews v. Heaton*

Respectfully Submitted, this 24th day of Jan 2023

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com Phone:  702-932-3434

**Certificate of Good Faith Conferral per FRCP 37(a) & D. Kan. Rule 37.2**

D. Kan. Rule 37.2 provides that the Court will not entertain any motion to resolve a discovery dispute pursuant to FRCP 37 unless the movant has made a "reasonable effort to confer" with the opposing party, D. Kan. Rule 37.2; states that the certification required by FRCP 37 **"shall describe with particularity the steps taken by all counsel to resolve the issues in dispute."** D. Kan. Rule 37.2 states that a "reasonable effort to confer" requires the parties to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."  I have tried in vain to bring these issues up to plaintiffs numerous times and at monthly status conferences, emails and/or phone. Plaintiffs refuse/fail to respond.  I have spent considerable effort emailing Kellogg, and asking for phone calls, all to no avail.   I am met with delayed responses and/or no response at all.  I have responded to Kellogg's email(s) when he bothers to respond within 24 hours of receipt, my final attempt to confer was made last week, and Kellogg responded four (4) days later, with a deflection to converse with Craig Brand who is subject of a protective order as a shareholder of Anthem Holdings Company and I am not allowed to converse, as is well known by all counsel.

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com Phone:  702-932-3434