## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| | |
|---|---|
| **United Capital Management of Kansas, Inc**. <u>and</u> **CHAD M. KOEHN**<br><br>    Plaintiffs, counter-defendants<br>  v.<br>Michael Nelson<br><br>    Defendant; Counter-Plaintiff PRO-Se. | **DOCKET NO.:** **5:22-CV-04008-JWB-TJJ**<br>**CIVIL ACTION**<br><br>**Brief in Opposition to Objection in Doc 373**<br><br>**Request for SANCTIONS for violation to Rules**<br><br>**[Jury Trial Demanded]** |

### Reply to Objection in Doc 373 Request for SANCTIONS for violation to Rules

  COMES NOW, Michael Nelson, pro se, who files Memorandum in Opposition to plaintiff's UNAUTHORIZED Motion (Objections) in Doc. 373; and so states and alleges to this Honorable Court requesting the offending document be sticken, and in the alternative seeks SHOW CAUSE ORDER against plaintiffs, Chad M. Koehn and UCMK to produce proper objections if warranted and to Compel plaintiffs to Admit or Deny as per the Rules.

  Federal Rule of Civil Procedure 37(a)(1) and D. Kan. Rule 37.2. Rule 37(a)(1) provides that any motion to compel disclosures or discovery **"must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 26(c)**

  Plaintiff's document 373, demonstrates clearly that plaintiffs have no intention of formulating correct objections as per the rules, and simply begs the indulgence of the Court continually to further delay and cause consternation in the discovery process. First it took the plaintiffs an inordinate time to retrieve their USPS mail and next plaintiffs give blanketed objections, without attempted conferral as required by the rules, conversely I have attempted conferral always responding back to plaintiffs within 24 hours from their communication when they bother to communicate back. Plaintiffs must be compelled to admit or deny or specify with specificity as required by the Rules in the discovery process.

In a similar vein, D. Kan. Rule 37.2 provides that the Court will not entertain any motion to resolve a discovery dispute pursuant to Federal Rule of Civil Procedure 37 unless the movant has made a <u>"reasonable effort to confer"</u> with the opposing party, D. Kan. Rule 37.2; states that the certification required by Federal Rule of Civil Procedure 37 **"shall describe with particularity the steps taken by all counsel to resolve the issues in dispute."** D. Kan. Rule 37.2 states that a *"reasonable effort to confer"* **requires the parties to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."** Reasonable efforts to confer have been made and defendant is either ignored, or deflected to Craig Brand who is subject of no contact order, as all parties are intimately aware both he (Brand) and his partner Adriana L. Soto are a shareholders of Anthem Holdings Company, and Brand has made deliberate attempt to have me violate the underlying criminal court orders by emailing with him and his employer HERASOFT at a HeraSoft.com email address for Brand see documents 52 and 57 and attached exhibits.

### BOILERPLATE objections are IMPROPER and Violate Ethics:

Federal courts have long disfavored boilerplate objections. *St. Paul Reinsurance Co., 198 F.R.D. at 512* ("[F]ederal courts have routinely deemed [boilerplate objections] to be improper objections."). District courts often repeat the warning: "Boilerplate, generalized objections are inadequate and <u>tantamount to not making any objection at all.</u>" *Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999)* (citations omitted); *accord Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 688 (S.D. Fla. 2011)* ("[J]udges in this district typically condemn boilerplate objections as legally inadequate or meaningless." (citations omitted) (internal quotation marks omitted)); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc., No. 09-CV-11783, 2011 WL 669352, at \*2 (E.D. Mich. Feb. 17, 2011)* (refusing to consider "[b]oilerplate or generalized objections"). **The warning reflects the resounding sentiment that boilerplate objections are legally improper, regardless of their practical consequence.**

> Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358–59 (D. Md. 2008) ("[B]oilerplate objections . . . persist despite a litany of decisions from courts . . . that such objections are improper unless based on particularized facts." *(citations omitted))*; A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections … 'overly burdensome and harassing' are improper… especially when a party fails to submit any evidentiary declarations supporting such objections." *(citations omitted))*.

While the lion's share of the case law condemning boilerplate objections comes from district courts, several circuit courts have also spoken out against the use of these objections. *Steed v. EverHome Mortg. Co., 308 F. App'x 364, 371 (11th Cir. 2009) ("We have noted that boilerplate objections may border on a frivolous response to discovery requests." (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1358 (11th Cir. 1997))* Rather than merely stating a tagline, objections to discovery requests must be stated with particularity. *Josephs, 677 F.2d at 992; see* FED. R. CIV. P. 26(b)(5); FED. R. CIV. P. 33(b)(4); FED. R. CIV. P. 34(b)(2); *see also St. Paul Reinsurance Co., 198 F.R.D. at 512 (noting that the boilerplate objections offered failed to articulate any particular harm).* <u>This is because objecting parties bear the burden of demonstrating why their objections are proper.</u> *St. Paul Reinsurance Co., 198 F.R.D. at 511* **(citing *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997)).** <u>Objecting parties must "provide sufficient information to enable other parties to evaluate the applicability of [their claims]"</u> *Burlington N. & Santa Fe Ry. Co.* **A responsive objection is one that states (1) how a discovery request is deficient and (2) how the objecting party would be harmed if they were forced to respond to the request**. *St. Paul Reinsurance Co., 198 F.R.D. at 512* **(D. KAN. 1997).** <u>This requires lawyers to forgo the 'familiar litany' of general objections in favor of specifically supporting each objection individually</u>. *See Design Basics, L.L.C. v. Strawn, 271 F.R.D. 513, 519* **(D. Kan. 2010)** *(quoting Allianz Ins. Co. v. Surface Specialties, Inc., No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534, at \*2* **(D. Kan. Jan. 7, 2005))** *(internal quotation marks omitted).* <u>The Court cannot allow boilerplate objections further.</u>

There are several reasons why general boilerplate objections are so strongly disfavored. First, they <u>unnecessarily obfuscate the discovery process</u>, distracting from the real issues in a case. *Watts v. Allstate Indem. Co., No. 2:08-cv-01877 LKK KJN, 2010 WL 4225561, at \*4 n.4 (E.D. Cal. Oct. 20, 2010)*. Second, **boilerplate objections prevent courts from properly evaluating the objections' underlying merits**. *DL v. Dist. of Columbia, 251 F.R.D. 38, 43 (D.D.C. 2008)*. <u>Objections do not exist in isolation.</u> They are contextual, and the veracity of an objection depends on the underlying facts of a particular discovery request. **It is impossible for courts to properly evaluate an objection on its merits when the objection is devoid of sufficient specificity.**

<u>Boilerplate objections are fundamentally unfair to the requesting party.</u> *See In re Ingersoll, 238 B.R. 202, 204–05 (Bankr. D. Colo. 1999)* Boilerplate objections fail to inform the requesting party why its request is specifically objectionable. If an objection fails to provide an appropriate factual basis, it is relatively difficult for the parties to informally discuss any alleged defects in a discovery request in hope of fixing the defects. <u>Plaintiffs here solely insist on the indulgence of the court just a little bit further</u> with their obstructionist tactics of scorched earth litigation, <u>refusing to provide any basis as to their invidious harassment strategic lawsuit.</u> This inhibits the parties' abilities to resolve discovery disputes on their own, and often requires the requesting party to draft additional, unnecessary motions before receiving a meaningful response, which to date the defendant has yet to receive ANY meaningful response from the **plaintiffs, who have obstructed every discovery attempt**, leaving the parties stalemated, as the plaintiffs consistently have leaned on the Court wasting valuable judicial resources, seeking inordinate time of the Court.

<u>**Federal courts' typically disfavor**</u> for boilerplate objections, stems from more than the practical obstacles posed by these objections. Boilerplate objections **violate numerous rules of civil procedure and ethics**, making their use <u>unlawful</u> as opposed to merely inconvenient! Generally, boilerplate objections do not serve the goals of the Federal Rules of Civil Procedure,

which are aimed at "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding" FED. R. CIV. P. 1. **Federal discovery is intended to be a liberal process, <u>encouraging the free flow of information between parties</u>**. Under this framework, federal courts envision ideal discovery as relatively collegial, timely, and productive:

> "It would be reasonable to expect, in light of all the applicable rules and governing precedents, that experienced attorneys, especially those who have handled major litigation, would be able to proceed through the discovery and pretrial stages with a conciliatory attitude and a minimum of obstruction, and that, under the guiding hand of the district court, the path to ultimate disposition would be a relatively smooth one."

*Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 123 (3d Cir. 2009)*

Stonewalling a requesting party with boilerplate objections is inconsistent with this vision. Boilerplate objections commonly violate either of two subdivisions of Federal Rule of Civil Procedure 26: Rules 26(b)(5) and 26(g). **"[t]he party <u>who resists discovery</u> has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."** *United States ex rel. O'Connell v. Chapman Univ., (C.D. Cal. 2007)* ; **This burden leaves little room for boilerplate objections**. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005).*

Discovery in Federal Court, and requests for admission help the parties WINNOW the issues for trial **"to permit wide ranging discovery of information even though the information may not be admissible at the trial."** *United States ex rel. O'Connell, 245 F.R.D. at 648 (citing Jones v. Commander, Kan. Army Ammunitions Plant,* **(D. Kan. 1993)).** Rule 26(b)(5), Rule 26(g) imposes a signature requirement on discovery objections. Through the WINNOWING of Issues for trial the parties are able to provide for judicial economy and thus do a service unto the Courts and the American Judiciary by aiding in conservation of judicial resources, by limiting a trial to specified issues and facts for the trier of fact, thus providing for a speedy determinatinon of the action without clogging the Courts with frivolous arguments that can be settled through requests for

admission, of which there is no set number as with other aspects of discovery.  Relatively little attention has been paid to the **ethical implications of boilerplate objections.**  *Mancia, 253 F.R.D. at 362–63, 362 n.6 (noting the possible ethical implications of boilerplate objections)*.  Boilerplate objections **are unethical under numerous ethics standards.**

First, boilerplate objections violate Model Rules of Professional Conduct Rule 3.4(d) *See Mancia, 253 F.R.D. at 362–63 & n.6.*  The purpose of this rule is to safeguard the **"important procedural right" of an opposing party to obtain evidence during the discovery process,** The opposing party is unrepresented, impoverished and pro se, and faces a plethora of highly seasoned and experienced attorneys representing the plaintiffs who feel it not just alright but standard operating procedure to obstruct any discovery in the matter, generally make the litigation as difficult as possible for everyone involved, especially the Court. T**he unrepresented pro se defendant is unable to get any discovery at all on any subject of the SLAPP petition** which has been repeatedly amended to no avail of stating a plausible cause upon which relief may be granted, nor will opposing counsel a plethora of them, provide any competent evidence of any claim they make.

Although it may be an older book, all I have access to, I believe **boilerplate objections implicate the Restatement (Third) of the Law Governing Lawyers: Frivolous Advocacy section 110(3)**.  This section echoes the requirements of Model Rule 3.4(d)

Advocates are guided primarily by the goal of advancing their individual clients' interests. They are expected to marshal evidence and legal argument in support of the positions of their respective clients and to cross-examine and otherwise test the evidence and positions of opposing parties, **without personal responsibility for the outcome of the proceeding.**  There are limitations on an advocate's forensic freedom.  General requirement of complying with legal requirements and rulings of tribunals, a lawyer is subject to the constraints concerning frivolous litigation [which includes prohibitions against frivolous advocacy and conduct during discovery].  Frivolous

litigation like claiming deceased people were contacted more than a year after their passing, as they do in their second amended complaint. Claiming formalic recitations of conclusory allegations guised as legitimate causes of action. It is as clear as day to any observer this entire litigation has been brought as a SLAPP lawsuit, to be used as a legal weapon of deterrence against any other shareholder or investor who would even consider filing complaints or taking on litigation. The chilling effects of these scorched litigation SLAPP lawsuits, is much greater than just the defendant being sued, as others who see the litigation become deterred in bringing forth their meritorious claims, as the fear of being sued or caught in scorched earth litigation themselves is one of the goals of such lawsuits, as being pursued here by the plaintiffs.

**It is clear that attorneys do not have unfettered licenses to engage in frivolous discovery tactics**, as in constant claims the unrepresented pro se party not schooled in law has presented every single request as "frivolous", whilst the plethora of attorneys representing the plaintiffs have continually amended their petition and **not provided a shred of evidence to support any version.** Even if such tactics arise out of attorneys' desire to zealously advocate for their clients, here without cause.

Despite the fact that boilerplate objections violate procedural and ethical rules, the lawyers who oppose a single, impoverished, pro se defendant continue to use them unfettered, in hopes of preserving those objections in the future, and to further their invidious harassment scorched earth litigation tactics, as has been recognized by the court. The hope is misplaced for two reasons. First, "there is no provision in the [f]ederal [r]ules that allows a party to assert objections simply to preserve them." *Anderson v. Caldwell Cnty. Sheriff's Office, (W.D.N.C. June 10, 2011)*. Second, issuing a boilerplate objection[s] often results in the opposite of preservation: waiver of the objection. *Mills v. E. Gulf Coal Preparation Co., LLC, 259 F.R.D. 118, 132 (S.D.W. Va. 2009)*

*("Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections." (citing Sabol v. Brooks, 469 F. Supp. 2d 324, 328 (D. Md. 2006)*

This Court the US District of Kansas must set the tone regarding the constant and deliberate obstructionist tactics of scorched earth litigation employed by the plaintiffs <u>plethora of attorneys mounted against a single impoverished pro se (unrepresented) defendant;</u> by dispelling the "urban legend" that boilerplate blanket objections protect a client is unfounded:

> "It is somewhat of an urban legend that good lawyering always requires an introductory, general assertion that information/materials subject to a privilege (whatever that unidentified information or those materials may be) are not being utilized or produced. Counsel then believe they have protected their client by making the response unclearly based such that additional information can later be produced, or have protected their client from having to produce privileged information/material. In fact, and in law, the opposite is true."

*Carmichael Lodge No. 2103, Benevolent & Protective Order of Elks of U.S. of Am. v. Leonard, No. CIV S-07-2665 LKK GGH, 2009 WL 1118896, at *4 (E.D. Cal. Apr. 23, 2009)*

**Boilerplate objections "and constitute[s] only a waste of effort and the resources of both the parties and the court."** *Martin v. Zale Del., Inc., No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *2 (M.D. Fla. Dec. 15, 2008); Guzman v. Irmadan, Inc., (S.D. Fla. 2008)*

It is no secret discovery costs money, and the plaintiffs know the unrepresented, <u>pro se defendant has not the resources to overcome their persistent abuses</u>. Their practice of using boilerplate objections imposes monetary costs on clients and the litigation process. The major cost is time. Evasive discovery responses, such as boilerplate objections, result in excessively costly and time-consuming activities that are usually disproportionate to the nature of the case, as they are here, where a plethora of attorneys are mounted against a single impoverished pro se defendant.

<u>Costs add to an already expensive process of discovery in federal courts.</u> *Gregory P. Joseph, Trial Balloon: Federal Litigation—Where Did It Go Off Track?(2008)* The inordinate boilerplate and blanket responses and outright refusal to comply —"to the point of pricing litigants out of [federal] court." *Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, (D.Md. 2008)* as here.

The plaintiffs constant begging of indulgence of the court to issue blanket and well known boilerplate objections, defeats the purpose of discovery especially when the objection is so broad: " irrelevant, immaterial and not reasonable calculated to lead to evidence which will be admissible", stating: "Plaintiffs ask the Court's indulgence as the Objection is intended to encompass each and every request" see page 1 of doc 373.

<u>The Federal Court's and US Constitution are the last bastion of hope for justice, to any impoverished pro se litigant faced with continual invidious harassment scorched earth SLAPP litigation,</u> whose purpose is not only to wear down and frustrate the defendant but to be used as a procedural weapon against all other disenfranchised investors, in hopes they will be either too scared or have too much fear and forgo their meritorious causes of action or complaints.

**<u>The cost of engaging in burdensome discovery can be so great that litigants might forgo pursuing a claim in federal court</u>**, *See Joseph, supra note 109, at 62.* **The PRECISE mission and objective of the plethora of attorneys representing the plaintiffs** who as the Court is now aware faces regulatory actions and is currently SUSPENDED as a stock broker, with dozens of securities fraud attorneys across the planet seeking victims.

**Boilerplate objections impose a cost on the legal profession.** Their use, as with other abusive discovery practices, <u>"lack[s] the civility and professionalism one expects from . . . experienced attorneys."</u> *Grider, 580 F.3d at 125.* The scorched earth tactics and <u>lack of civility that repeatedly brings disrepute upon lawyers and the legal system</u>, *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1486 (5th Cir. 1990).*

<u>WHEREFORE, the undersigned PRO SE, unrepresented, and unschooled in law</u>, requests respectfully and BEGS of the assistance of the Honorable United States Federal Court, in BOTH issuing strong SANCTIONS against the plaintiffs and instructions for the plaintiffs to plead with the specificity as the Court and opposing party must have to make an informed decision based on their

obvious and evident BOILERPLATE, Blanket objection(s) and for the plaintiffs to be so compelled to provide responses to the requests for admission.

A document filed pro se is "to be liberally construed," *Estelle, 429 U.S., at 106, 97 S.Ct. 285*, and "a pro se complaint [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid. Cf. Fed. Rule Civ. Proc. 8(f)* ("All pleadings shall be so construed as to do substantial justice"). In the interests of substantial justice and to prevent manifest injustice the Courts generally review "filings generously and with the leniency due pro se litigants", see *Erickson v. Pardus,(2007); Andrews v. Heaton*

Respectfully Submitted, this 25th day of Jan 2023

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105

chadkoehnlawsuit@nosoybean.com  Phone: 702-932-3434

**Certificate of Service:**
The undersigned hereby certifies that, on this same date, I filed the foregoing with the Clerk of the Court via electronic-mail: **KSD_Clerks_Topeka** <KSD_Clerks_Topeka@ksd.uscourts.gov> which will send notice of its filing electronically to the attorneys of record, as per the local rules and FRCP, and as to all future filings and pleadings of whatever nature are necessary in this above herein captured matter, per Local Rule 77.1;