```
 1                 IN THE UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
 2

 3   UNITED CAPITAL MANAGEMENT OF
     KANSAS, INCOPORATED,
 4   and CHAD KOEHN,

 5           Plaintiffs,

 6       vs.                           District Court
                                       Case Number
 7   MICHAEL NELSON,                   22-4008

 8           Defendant.

 9

10              TRANSCRIPT OF PROCEEDINGS

11

12           On the 18th day of January, 2023 came on to be
     heard in the MOTION HEARING in the above-entitled and
     numbered cause before the HONORABLE TERESA JAMES,
13   Magistrate Judge of the United States District Court for
     the District of Kansas, Sitting in Wichita.
14           Proceedings recorded electronically via Zoom.
             Transcript produced by mechanical stenography and
15   computer.

16

17   APPEARANCES

18           The Plaintiff appeared by and through:
             Mr. Christopher Kellogg
19           Kennedy, Berkley, Yarnevich & Williamson
             119 West Iron Ave, 7th Floor
20           PO Box 2567
             Salina, Kansas 67402
21
             Mr. Craig Brand
22           The Brand Law Firm, PA
             4650 Indian Creek Rd
23           Loveland, CO 80538

24           The Defendant appeared pro se.

25
```

1          (The following proceedings were electronically

2  recorded and have been requested transcribed:)

3          THE COURT:  Good morning.

4      The Court calls Case Number 22-4008, United

5  Capital Management of Kansas, Inc. v -- and Chad Koehn v.

6  Michael Nelson, and the counter claimant, and counter

7  defendants as well.

8          My name is Teresa James.  I am the recently newly

9  assigned magistrate judge in the case.

10          Let me have you all enter your appearances,

11  starting with counsel for the plaintiff and we'll go from

12  there.

13          MR. KELLOGG:  Your Honor, if it pleases the

14  Court.  Chris Kellogg from the law firm Kennedy Berkley,

15  and Craig Brand from the Brand Law Firm appearing on

16  behalf of the plaintiffs.

17          MR. BRAND:  Hi, Your Honor.  Good morning.

18          THE COURT:  Thank you.  Good morning.

19      And, Mr. Nelson, defendant?

20          MR. NELSON:  Yes, Michael Nelson, if it pleases

21  the Court, as the defendant and the counter plaintiff.

22          THE COURT:  All right.  Good morning.  And

23  welcome, everyone.  Thank you all for Zooming in with us.

24          We have a lot to do today, a lot to accomplish, so

25  I'll just launch into things.

1    I will let you know that in addition to me here in

2  my chambers I have two of my law clerks on the line

3  listening in as well, and we are prepared to proceed with

4  your case today.

5    I have spent considerable time reviewing the more

6  than 350 docket entries in this case.  I'm well aware

7  that the case was removed to this court February 1st,

8  2022 and there's a lot of history in the case, to which I

9  was not privy, and all of you have significantly more

10 history and involvement in the case which, clearly, I

11 don't have.

12    However, I do want you to know I have done my

13 level best to get up to speed here with the help of my

14 law clerks.  And this is by far not the first case I've

15 managed as a magistrate judge involving extraordinarily

16 difficult parties and issues.

17    I assure you that I will do my job to move this

18 case forward as effectively and efficiently as possible

19 in accordance with Federal Rules of Civil Procedure 1.

20 And I expect all counsel and Mr. Nelson to do the same,

21 and in accordance with the pillars of professionalism

22 adopted by this Court which apply to counsel and pro se

23 parties.

24    Obviously every federal magistrate judge has their

25 own way of conducting business.  I have mine.  Judge

1  Birzer has hers.  We all do things a little differently.

2       I know Judge Birzer was holding monthly

3  conferences with you and requiring you to submit your

4  list of issues in advance to be discussed at each

5  conference.  Perhaps you were expecting that would happen

6  on December 6th or prior to today's date, and that you'd

7  be required in advance to submit your issues for

8  discussion.

9       That simply wasn't feasible while allowing me

10  sufficient time to get up to speed with all that has gone

11  on in the case.

12       Additionally, I will tell you I am not going to

13  continue that practice of monthly conferences in this

14  case.  Frankly, because I think that privilege and

15  opportunity has been abused.  I won't stand for that

16  going forward.

17       Instead, as a preview, I intend to rule on the

18  outstanding motions during today's conference, set

19  deadlines, and I will set future hearings as and when I

20  feel appropriate and if I want input from you in advance

21  of the hearing, I'll let you know that.

22       The first issue I want to take up is a minor kind

23  of procedural technical issue.

24       And, Mr. Nelson, it has to do with these John and

25  Jane Does that you have named in your counterclaims.  I

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   5

1   know those folks hadn't been identified.  I want to give

2   you some time yet to do that but you know under our

3   Federal Rules of Civil Procedure, Federal Rule of Civil

4   Procedure 4(m), it requires service on those parties

5   within 90 days after the complaint or counterclaim is

6   filed.

7        And if that's not done, then the claims are to be

8   dismissed against those individuals unless we grant

9   additional time for you to do that.

10        So, Mr. Nelson, it's been, what?  Eleven months

11   since -- well, not since your counterclaims were filed,

12   but it's been more than 90 days, and we still don't have

13   those John and Jane Does identified and served so I want

14   to set a deadline by which you are to do that, to avoid

15   those folks being dismissed from the case if you still

16   want to pursue them.

17        I don't know, Mr. Nelson, are there still some

18   John and Jane Does you think you want to make parties?

19        MR. NELSON:  Yes, Your Honor.

20        THE COURT:  Do you -- do you know who any of

21   them are at this point?

22        Can you give me any names?

23        MR. NELSON:  I -- I believe that the counter

24   defendants have named several within the only discover

25   answer that they have provided to the Court at this time

1   in their -- which is the only discovery documents I've

2   ever received from them so, yes, I -- I believe I can.

3          THE COURT:  Okay.  Well, I am going to give you

4   30 days from today to get those individuals served.

5          And you can look at the federal rules, Rule 4(m)

6   and just know, just like any other party you're going to

7   have to serve those folks to bring them into the case.

8   Do you understand that?

9          MR. NELSON:  I -- I understand that they'll have

10  to be served as John and Jane Does to be brought into the

11  case.

12         The only question I have is for the specific -- in

13  the plaintiffs' second amended counter complaint, they

14  have listed a number of individuals which I intend to

15  proceed with Rule 27, to perpetuate depositions of those

16  individuals within a variety of different states.

17         I've also started other procedures within the U.S.

18  District of New Jersey, New York, and California, as well

19  as a Rule 27 in Nevada.  If -- well, do I only have the

20  30 days in order to add individuals?  Or after the

21  perpetuation of testimony or depositions under Rule 27

22  that I'm able to discover said information --

23         THE COURT:  No.

24         MR. NELSON:  -- from the --

25         THE COURT:  No.

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   7

1            MR. NELSON:  No, okay, that's fine.

2        I can start separate litigations in those states.

3 Thank you, Your Honor.

4            THE COURT:  Your deadline to join additional

5 parties or otherwise amend ran -- I don't remember the

6 date, but months ago, so you're too late to be joining

7 parties in this case.

8        Now if you have specific Jane and John Does that

9 you can identify you're going to have to identify them by

10 name and serve them if you want to include those people

11 going forward in your counterclaims.  So --

12            MR. NELSON:  I understand, Your Honor.

13            THE COURT:  -- that is what we are referring to

14 here.

15            MR. NELSON:  Fair enough.

16            THE COURT:  So you'll have 30 days to do that.

17        I'm sorry but you've already had several months to

18 do it, excuse me.  So I'm just giving you a deadline so

19 you know you need to get that done.

20        All right?

21            MR. NELSON:  Yes, Your Honor.  Thank you.

22            THE COURT:  All right.  Next issue, I want to

23 rule on -- hang on.  Let me make a note.

24            MR. NELSON:  Bless you.

25            THE COURT:  All right.  The first issue I will

1  take up then is defendant's motion to disqualify counsel

2  Craig Brand.

3       Did we lose Mr. Brand?

4       I don't see him on my screen now.

5       MR. KELLOGG:  Oh, he was having some internet

6  trouble, Your Honor, and so he may have experienced that

7  again.

8       THE COURT:  Okay.  Any problem with me

9  proceeding on the motion to disqualify, Mr. Kellogg?

10       MR. KELLOGG:  No, Your Honor.

11       THE COURT:  Okay.  All right.  Then I do want to

12  take up defendant's motion to disqualify counsel Craig

13  Brand.  Docket Entry 250 is the motion.

14       I will note that a previous motion to disqualify,

15  Docket Entry 94, was filed July 22nd, 2022 and denied by

16  Judge Broomes in Docket Entry 183.

17       The current motion raises essentially two claims:

18  One, that -- one, Mr. Brand's alleged dishonesty to the

19  Court and the unrepresented defendant, Mr. Nelson; and,

20  two, a conflict of interest.

21       As to the first issue, the claim of dishonesty is

22  unsubstantiated, including a claim that Judge Birzer

23  stated on the record that Brand, quote, played fast and

24  loose, end quote, meaning he was dishonest in his pro hac

25  vice affidavit, Docket Entry 24.

1          Mr. Nelson provides no citation to the record for

2     the alleged statement by Judge Birzer and nothing in the

3     record indicating any problem.  There's nothing in the

4     record indicating any concerns or problems.

5          That Magistrate Judge Birzer had with the PHB

6     Affidavit, which has been docketed in this case.

7          Mr. Nelson, when you included in quote marks,

8     played fast and loose, end quote, are you representing

9     that Judge Birzer actually said that about Mr. Brand?

10          That he, quote, played fast and loose with his pro

11    hac vice affidavit?

12          MR. NELSON:  Yes.  In fact, Judge Birzer stated,

13    Mr. Brand, you've played fast and loose at number six.

14          THE COURT:  At number six, what does

15    that -- what are you referring to?

16          MR. NELSON:  At number six, referring to number

17    six of his pro hac vice application, the affidavit that

18    he filed with the Court.

19          THE COURT:  Okay.  Do you have a copy of the

20    record where she said he played fast and loose?

21          MR. NELSON:  No, but I believe that it was

22    recorded, and I have been in contact with the court

23    reporter so perhaps that particular hearing can be

24    transcribed and added to the record here.

25          THE COURT:  Well, no, but if you're going to

1 quote somebody, especially a judge, attributing a

2 statement to them, from now on I expect to see a citation

3 to the record.

4      We're not going to do this attributing statements

5 without a citation to the record, especially if it's a

6 judge.

7      I question whether that language was actually used

8 but I'll take you at your word.

9      Are you telling me she actually said those words?

10      MR. NELSON:  I know she said those words and I

11 am going to request a copy of the recording of that

12 hearing and I will ask that it be transcribed, and I will

13 file a formal judicial complaint.

14      THE COURT:  Well, there's no need to file a

15 complaint.

16      Why are you complaining about her language that

17 supports your allegation you're saying?  What --

18      MR. NELSON:  Well, Mr. Brand -- Mr. Brand filed

19 a formal judicial complaint against Judge Birzer so,

20 obviously, if you're questioning whether or not Judge

21 Birzer made those statements, and Mr. Brand has already

22 filed a formal judicial complaint, because I have been

23 contacted by the Department of Justice's Public Integrity

24 Section, which I didn't even know they had a Public

25 Integrity Section, and it apparently is called PIN,

1  P-I-N, which I have no idea why it's called PIN because

2  it says Public Integrity Section not --

3          THE COURT:  Okay, hold on.  Hang on, Mr. Nelson.

4          MR. NELSON:  But in any case, they have a whole

5  gaggle of attorneys that are investigating all sorts of

6  things.

7          THE COURT:  Hold on.

8      Hold on.

9      Mr. Nelson, stop.

10      Mr. Nelson, I don't mean to interrupt you but when

11  you said you'll file a judicial complaint, against whom?

12      What are you talking about?

13          MR. NELSON:  I -- I will get a copy of the

14  recording, Your Honor, I will ask that Jana, or whoever

15  the person is that did the last transcriptions,

16  transcribe that recording.  And I know that the terms

17  "played fast and loose" were used by Judge Birzer.  I

18  will also look at my own recordings of the hearing but I

19  know for a fact that those were the terms used.

20      As far as judicial complaints I will just file

21  this along with the other information to the Public

22  Integrity Section of the Department of Justice, who's

23  monitoring these proceedings.

24          THE COURT:  Well, all I want you to do is from

25  now on if you're going to use quotes around something, or

01/18/2023    UNITED CAPITAL v. NELSON    22-4008    12

1  attribute something to a party, or a judge, you need to

2  cite to the record.

3        Does that make sense?

4        MR. NELSON:  I understand.  Yes, it makes

5  absolute sense, Your Honor.

6        THE COURT:  That's the only point I was trying

7  to make.

8        MR. NELSON:  Okay.  Okay.

9        THE COURT:  So I'm sorry that got you all riled

10  up.

11        MR. NELSON:  I will make sure that I do that in

12  the future and I will -- I will do that in the future.

13        THE COURT:  Okay.  Very good.

14        All right.  So I was ruling on the motion to

15  disqualify counsel, getting back to that.

16        Based upon the fact that Mr. Brand, his pro hac

17  vice affidavit was accepted and has been entered in the

18  court, and I don't find any evidence of dishonesty in the

19  record, I reject and find unpersuasive that argument that

20  Mr. Nelson makes in support of his motion to disqualify

21  Mr. Brand.

22        As for the conflict of interest issue that you

23  raise, Mr. Nelson, it seems to me there's a disconnect

24  here.  I think I understand your argument but there's no

25  evidence that Mr. Brand has ever represented you,

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   13

1  correct?

2          MR. NELSON:  Not me personally as a human

3  being --

4          THE COURT:  Okay.

5          MR. NELSON:  -- as a person, that's correct.

6          THE COURT:  Okay.

7          MR. NELSON:  But I have met Mr. Brand in Las

8  Vegas.

9          THE COURT:  Yeah.  So to the extent you make

10  broad, general claims, for example, that Mr. Brand is

11  simultaneously -- quote, simultaneously representing

12  clients who are directly adverse to each other, end

13  quote, and that Mr. Brand has, quote, dual simultaneous

14  conflicting representations, end quote, including a long

15  list of entities and individuals, and that there is a,

16  quote, plethora of conflicts of interests in multiple

17  conflicting representations of individuals, and a myriad

18  array of corporations involved in these series of

19  disputes, end quote, I see nothing in Mr. Nelson's

20  briefing that demonstrates or identifies any individual

21  or entity Mr. Brand represents that would create a

22  conflict with Mr. Nelson.

23          And if, Mr. Nelson, you're trying to suggest that

24  because you own some shares in an entity or entities

25  Mr. Brand represents, neither does that in and of itself

 1  establish a conflict of interest on the part of

 2  Mr. Brand.

 3         Again, there's been no showing made that Mr. Brand

 4  has ever represented Mr. Nelson, or that Mr. Brand has

 5  any confidential information of Mr. Nelson at issue.

 6         In addition, in making this determination on the

 7  motion to disqualify counsel, I also must weigh a party,

 8  such as plaintiff in this case, its right to be

 9  represented by the legal counsel of its choice, and the

10  risks that an adverse party might use a motion to

11  disqualify that parties' counsel to gain an advantage in

12  the litigation.

13         It seems to me there is a real risk of that here,

14  especially given Mr. Brand's, apparently, extensive

15  representation of plaintiffs in this case since its

16  filing and in other representation involving plaintiffs.

17         The motion to disqualify counsel Mr. Brand is

18  therefore denied.

19         And I want to highlight --

20             MR. NELSON:  Will that --

21             THE COURT:  I'm sorry?

22             MR. NELSON:  Will that be in writing, Your

23  Honor?

24             THE COURT:  I will probably just incorporate

25  what I stated on the record in an order.

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   15

1          MR. NELSON:  In an order.  As a magistrate judge

2    report?

3          THE COURT:  Um, I will be entered in some sort

4    of order referencing incorporating my comments on the

5    record today.

6          MR. NELSON:  Okay.  And if I am in possession of

7    new evidence regarding Mr. Brand and the necessity that

8    he be disqualified, should I bring that to the attention

9    of the District Court Judge?

10         THE COURT:  I guess you need to make that

11   decision.  I would think it would be a motion to recon --

12   for reconsideration that I would decide.  But you'll have

13   to make your decision on your own.

14         MR. NELSON:  Fair enough.

15         THE COURT:  Now more generally related to the

16   ruling I just made, I want to address additional

17   concerns.

18     The filings in this case have consistently been

19   too lengthy and repeat with -- replete with some times

20   rude, lewd, and disparaging comments about opposing

21   parties.

22     Everyone on both sides of the bead should now been

23   aware of our recent amendments to our D.Kan Local Rules

24   which, among other things, impose new page limits.  I

25   expect all of you to abide by the new page limits and I

1  expect you to dispense with the disparaging comments.

2       As Judge Birzer has done in the past, I will not

3  hesitate to strike filings that violate these rules and

4  requirements.

5       Next, I'll turn to plaintiff's motion to quash

6  subpoena to attorney Donald Hoffman regarding this --

7  which is Docket Entry 244, regarding the subpoena at

8  Docket Entry 165 and 165-1, defendant's memo in

9  opposition, Docket Entry 261, and plaintiff's reply,

10 Docket Entry 270.

11      Plaintiffs' motion will be construed as a motion

12 for protective order under Federal Rules of Civil

13 Procedure 26(c).

14      Pursuant to Rule 26(c), Rule 26(b)(2)(C) and the

15 Court's inherent authority, the Court will enter a

16 protective order prohibiting issuance of defendant

17 Nelson's subpoena upon third -- nonparty attorney Donald

18 Hoffman.

19      My rationale is as follows:

20      Although plaintiffs have not established that they

21 have the required standing to prevail on the motion to

22 quash the subpoena, plaintiffs' motion will be construed

23 as a motion for protective order under Federal Rule

24 26(c).

25      Pursuant to Rule 26(c), 26(b)(2)(C) and the

1   Court's inherent authority, the Court will enter that

2   protective order.

3          Even though plaintiffs have not established they

4   have the required standing to obtain an order quashing

5   the Hoffman subpoena under Rule 45(d)(3), the Court is

6   required to limit the extent of discovery otherwise

7   allowable if it determines the proposed discovery is

8   outside the scope permitted by Rule 26(b)(1).

9          Matters falling outside the scope of Rule 26(b)(1)

10   include those not relevant or proportional to meet the

11   needs of the case, considering the importance of the

12   discovery in resolving the issues and those in which the

13   burden or expense of the proposed discovery outweighs the

14   likely benefit.

15          The Court's duty exists irrespective of a motion,

16   as the rule imposes the requirement on a court either on

17   its own motion -- on motion, or on its own motion.  The

18   scope of discovery under a subpoena is the same as the

19   scope of discovery under Rule 26(b).

20          Here, the Court finds the discovery sought by the

21   defendant's broad subpoena for, quote, interrogatories,

22   depositions, files, notes, harassment, settlements, case

23   files pertaining to UCMK and Koehn related to the case

24   *Koehn and UCMK v. Giroux*, end quote, does not appear

25   relevant on its face and defendant Nelson has failed to

1  demonstrate its relevance.

2      Therefore, the subpoena seeks documents outside

3  the permissible scope of discovery permitted by Rule

4  26(b)(1).

5      The Court finds the referenced litigation

6  involving Mr. Giroux is different from this case and has

7  no relevancy to the claims and defenses asserted in this

8  case.

9      Defendant Nelson's statements in his response,

10  Docket Entry 261 to the motion, arguing vociferously to

11  the contrary are discredited by Mr. Hoffman's

12  Declaration, ECF Docket Entry 270-1, which disavows the

13  comments Mr. Nelson attributes to Mr. Hoffman and states

14  unequivocally the *Giroux* case, quote, Was completely

15  different than what he was dealing with in federal court

16  in this case, end quote.

17      And, quote, The statements attributed to him, that

18  is Mr. Hoffman by defendant Nelson in his memorandum in

19  opposition to the motion to quash are false and

20  completely unconnected with the matter in which

21  Mr. Hoffman represented Chris Giroux.

22      And I have added some bracketed language but

23  that's a quote from Mr. Hoffman's Declaration.

24      Additionally, the comments Mr. Nelson attributes

25  to Andrea Swisher in his response to support his

1 relevance argument are disavowed in Ms. Swisher's

2 Declaration.

3       So based upon those declarations, the Court finds

4 that the relevancy argument raised by Mr. Nelson is

5 unpersuasive.  And, in addition, even if they were

6 relevant, the request in the subpoena is disproportionate

7 to the needs of this case.

8       Mr. Nelson, in light of the declarations from

9 Mr. Hoffman and Ms. Swisher, would you like to withdraw

10 your response to the motion to quash?

11         MR. NELSON:  I would like the Court to reference

12 directly that the statements in both affidavits by now

13 Judge Swisher, and by Donald Hoffman, I have -- my

14 understanding from the Federal Bureau of Investigation, I

15 cannot file charges unless the Court utilizes those

16 affidavits in a hearing.

17       So am I to understand that you have just quoted

18 from those affidavits in this hearing, and that you're

19 utilizing those affidavits by Donald Hoffman, and by

20 Judge Swisher in this federal court hearing?

21         THE COURT:  Well, first of all, they're not

22 affidavits, they're declarations.

23       And, secondly, Mr. Kellogg, is there any reason

24 you would not want me to rely upon those declarations in

25 my ruling here today?

1           MR. KELLOGG:  No, Your Honor.

2           THE COURT:  All right.  Yes, I am relying upon

3  them.

4       Do you want to withdraw your response in

5  opposition to the motion to quash?

6           MR. NELSON:  And I'm sorry, Your Honor, which

7  documents are those that you're asking me to --

8           THE COURT:  Your response in opposition to the

9  motion to quash, which would be Docket Entry 261.

10      And what I'm asking is in light of the fact that

11  the arguments you're making in Docket Entry 261 are

12  making arguments that you attribute to Mr. Hoffman and

13  Ms. Swisher, which their declarations disavow, do you

14  want to withdraw 261?

15          MR. NELSON:  One moment, Your Honor.

16      I'm looking for document 261, memorandum in

17  opposition.

18      And which other document, Your Honor?

19          THE COURT:  That's it, 261.

20          MR. NELSON:  Um -- uh, oh.  Ah, here we go.

21  Sorry.

22      I'm sorry, I only have one screen.  I had to look

23  that up.

24      That's fine.  There will be another litigation in

25  California that that can be discussed in so, yeah, you

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   21

1  can go ahead and withdraw those.

2          THE COURT:  All right.

3      The defendant's memorandum in opposition to the

4  motion to quash the subpoena to Donald Hoffman will be

5  withdrawn and stricken from the record.

6      The Court will grant plaintiffs' motion 244 which

7  it construes as a motion for protective order for the

8  reasons I have explained on the record.

9      Mr. Nelson, do you want to say anything about

10 the -- in response to the declarations provided by

11 Mr. Hoffman and Ms. Swisher?

12         MR. NELSON:  I believed that Ms. Swisher was my

13 attorney at the time that I was discussing with her.

14     And I believe that I will be making a additional

15 federal court case against Ms. Swisher -- or I'm sorry,

16 Judge Swisher now, within the U.S. District of Kansas in

17 a federal litigation in the U.S. District of Rhode Island

18 in the First Circuit.

19     I believe that Ms. Swisher's Declaration is

20 untrue, and I believe to have evidentiary evidence to

21 back that up that has also been provided to the federal

22 authorities.

23     As far as Donald Hoffman, Donald Hoffman contacted

24 me.  I have the PIN reports.  Those PIN reports -- not

25 PIN, as in the Public Integrity Section which I still

1 think should be called PIS, but PIN reports as far as

2 telephone logs, Mr. Hoffman contacting me, those have

3 been provided to the federal authorities.

4        I believe that I know exactly what Mr. Hoffman did

5 assert to me via telephone and it's in direct

6 contradiction to Mr. Hoffman's Declaration, although I

7 believe that it -- to be an affidavit, and I believe that

8 Mr. Hoffman to be in possession of the harassment

9 settlements that I sought, as well as the deposition of

10 Mr. Koehn.

11        If the Court doesn't feel that that is relevant to

12 this particular proceeding here in the U.S. District of

13 Kansas, I accept that as the Court is looking to winnow

14 down the issues here, and I will seek those depositions

15 and those settlements in other proceedings.

16        THE COURT:  All right.  Well, you will not be

17 allowed to pursue them here under that subpoena which I

18 am entering a protective order.  You will not be able to

19 serve that subpoena.

20        MR. NELSON:  The subpoena's already been served,

21 Your Honor.

22        THE COURT:  All right.  You won't be able to

23 execute on the subpoena, so -- or you'll be in violation

24 of the Court's order.

25        Is that understood?

1          MR. NELSON:  It -- it's understood.

2      I've only had email with Mr. Hoffman in forwarding

3  the clerk's subpoena that was forwarded to Mr. Hoffman

4  back in, I don't know, September.  And I have had no

5  other interaction personally with Mr. Hoffman since then.

6          THE COURT:  All right.  Well, you won't be able

7  to obtain those documents via the subpoena through

8  Mr. Hoffman.  Is that understood?

9          MR. NELSON:  It is understood.

10      Am I able to obtain those documents in another

11  way?

12          THE COURT:  I don't know what you're referring

13  to and I am not going to make -- I'm not going to give

14  you legal advice, so --

15          MR. NELSON:  I'm not asking for legal advice,

16  Your Honor, I'm asking whether or not -- the documents

17  are directly relevant here to this litigation.

18      Therefore, if I'm not allowed to obtain them

19  because of a Chinese wall, and James Ryan Angel being

20  married -- or formerly married to Samantha Parks Angel,

21  I'm not able to obtain them from the law firm, I'm not

22  able to obtain them from the plaintiffs, and now you're

23  telling me that the opposing party that -- in a prior

24  case that has copies of them, I'm not able to obtain them

25  from them, either, then if I find another legal theory to

1   allow me to obtain the harassment, settlements, and the

2   deposition, am I legally allowed to request such?

3            THE COURT:  I can't answer your generic, vague

4   question.  I don't know what method you're dreaming up so

5   I can't -- I can't answer that question.

6            MR. NELSON:  Okay.

7            THE COURT:  All right.

8            MR. NELSON:  And -- and this will be in an order

9   of a magistrate judge report?

10            THE COURT:  Same as my response earlier.

11            MR. NELSON:  Okay.

12            THE COURT:  All right.  Then, additionally, in

13   their motion to quash which the Court has granted in the

14   form of a motion for protective order, plaintiffs request

15   their attorneys' fees and award of sanctions for his

16   false representation to the Court.

17         The Court will grant that motion and award

18   sanctions based upon the affidavit submitted by

19   Mr. Hoffman and Ms. Swisher, Docket Entry 270-1.

20         By January 31, Mr. Kellogg, your plaintiffs' other

21   counsel shall submit their -- your statement for fees and

22   expenses for preparing the motion to quash, your reply to

23   defendant's response and opposition and costs associated

24   with obtaining the declarations of Mr. Hoffman and Ms.

25   Swisher.

1        MR. KELLOGG:  Yes, Your Honor.

2        THE COURT:  Additionally, as Mr. Nelson has

3  already agreed, defendant's memo in opposition will be

4  stricken from the record.

5        Next up, plaintiffs' oral motion for leave to move

6  for order to show cause why defendant shouldn't be held

7  in contempt for refusal to answer -- supplement answer to

8  Interrogatories 1A through 1H.

9        Now correct me if I'm wrong, but my understanding

10 from reviewing the record is that Judge Birzer denied

11 without prejudice plaintiffs' oral motion but indicated

12 plaintiffs' could refile their motion for order to show

13 cause after resolution of defendant's appeal of

14 Magistrate Judge's -- Judge Birzer's order in Docket

15 Entry 268.

16        Now that appeal was ruled on by Judge Broomes and

17 denied on December 14th so now I think it's time to again

18 address plaintiffs' oral motion for leave to move for

19 order to show cause with regard to those interrogatories.

20        Mr. Kellogg, I haven't heard from you yet.  Is

21 that -- do I understand the history of this particular

22 item correctly?

23        MR. KELLOGG:  Yeah, insofar as anyone can

24 understand the history of this case I think you've got

25 it, Your Honor.

1          THE COURT:  Okay.

2      And, Mr. Nelson, have you supplemented your

3  answers to Interrogatories 1A through H as Judge Birzer

4  had ordered?

5          MR. NELSON:  I have, Your Honor.  In fact, if

6  Your Honor would look at Docket Number 357, Docket Number

7  357 has to do with USPS, or United States Postal Service

8  Certified Mail delivery attempts of three separate United

9  States postal mail mailings, one of which is the

10 supplement that you're referring to.

11      And you'll see that two out of the three have been

12 retrieved by opposing counsel.  One of them still as of

13 present today, 18th of January, 2023, has not been

14 retrieved by counsel yet -- opposing counsel.

15      It has been sitting in their post office box since

16 6:36 a.m. on the 10th of January.  Let the record

17 indicate, over a week ago.

18          THE COURT:  Mr. Kellogg, can you respond to

19 Mr. Nelson's response?

20          MR. KELLOGG:  Your Honor, I can't, except to

21 tell you that I don't pick up my own mail, my staff does

22 that so if anything was left in the box, I'm sure it was

23 inadvertent.  They pick up the mail everyday so beyond

24 that I don't have an answer.

25          THE COURT:  Okay.  And, Mr. Nelson --

```
 1            MR. NELSON:  Your Honor --

 2            THE COURT:  Hold on --

 3            MR. NELSON:  -- I have a response to that.

 4            THE COURT:  Hold on, Mr. Nelson, I'll let you

 5  respond but let me finish my thought.

 6        Mr. Nelson also indicated he' sent you some

 7  previous supplements.  Have you received those?

 8            MR. KELLOGG:  Um, Mr. Nelson referred to three

 9  items that were covered in that Docket Entry 357.  I

10  did -- I have received two of those, yes, Your Honor.

11  And so I have no reason to doubt that he has, in fact, as

12  he says he has, served supplemental responses.

13            THE COURT:  Okay.

14            MR. BRAND:  Your Honor, this is -- this is Craig

15  Brand.

16            THE COURT:  Yes, Mr. Brand.

17            MR. BRAND:  Yeah, hi, Your Honor.

18        Your Honor, while Mr. Nelson did serve some

19  supplemental responses -- some, a review of those

20  supplements provide no additional information as

21  for -- as what was previously required so, for instance,

22  his past medical records, in his counterclaim he's

23  claiming emotional suffering and healthcare issues caused

24  and related due to this lawsuit.

25        We have asked for the contact information, names
```

1  of physicians, pharmacies, et cetera, et cetera, to

2  supplement and that went -- that was -- that was part of

3  a very large hearing.

4       He was ordered to provide all that information to

5  us so that we would be able to further explore those

6  topics directly with the healthcare providers or

7  pharmacies.  All Mr. Nelson did was set -- was put like

8  the names of a doctor, or CVS.  There is absolutely no

9  contact information for which the plaintiffs can proceed

10 upon.

11      So while he thinks he supplemented, he didn't.  I

12 mean, just providing CVS is not going to get us anywhere.

13        THE COURT:  Mr. Nelson, did you in your

14 supplement provide addresses where the -- the sources you

15 identified could be located?  Or contacted?

16        MR. NELSON:  I believe that I did.

17      I also provided the exact dosages of medications

18 that I'm prescribed, what those medications are, each one

19 of the insurance providers, or medical clinics that I

20 have been seeing, to the best of my ability.

21      If there's something there that doesn't meet with

22 Mr. Brand's unique expectations I would be happy to

23 attempt to supplement once again.  But I have

24 supplemented and it did take counsel -- opposing counsel

25 several days before they retrieved that certified mail.

1           And, again, they still have yet to retrieve

2  another certified mail for over a week.

3           I -- certainly I would think that attorneys that

4  are running a legitimate law firm would retrieve a

5  certified USPS mail.

6           I have filed, if it pleases the Court, a document

7  in document -- oh, that was the signature document.

8           I have filed a document to add Steven N. O'Connor,

9  the Postmaster for Salina, Kansas to my witness list.

10          I have also contacted the OIG for the United

11  States Postal Service, and I filed a formal OIG

12  complaint.

13          I also contacted the Department of Justice and

14  filed a formal complaint, both of which are on record and

15  serve as for the federal court to examine that I --

16          THE COURT:  But that's not really relevant.

17          MR. NELSON:  -- have sent those by certified

18  mail.

19          THE COURT:  How -- how is that relevant to the

20  interrogatory A, 1A through 1H?  Is that relevant?

21          MR. NELSON:  Because I sent them responses that

22  they're refusing to pick up from the postal service, Your

23  Honor.

24          THE COURT:  Okay.  I'm still trying to drill

25  down on whether you provided addresses and contact

1  information for CVS and the other responsive

2  information you --

3         [Indiscernible crosstalk.]

4         MR. NELSON:  I am not sure if I provided CVS's

5  address --

6         THE COURT:  Okay.

7         MR. NELSON:  -- but I am pretty certain that I

8  supplemented to the best of my knowledge all of the

9  addresses.

10        They asked a plethora of information from me and I

11 believe that I supplemented it to the best of my ability,

12 Your Honor.

13        THE COURT:  Okay.

14        MR. NELSON:  And I did send it to them and they

15 have signed for it and I have the signature from the US

16 Postal Service.  I believe it was entered into the

17 record.

18        If it's not, I will enter those into the record as

19 they sign for them.

20        I would like Your Honor to instruct them to pick

21 up their postal mail.  I mean, they're

22 literally -- they're literally caught under a Federal

23 Rules of Civil Procedure Rule 1, that's supposed to be

24 the most efficient process.  I'm sending them by United

25 States postal mail, a service of the U.S. Government.  By

1  certified mail.

2        I've spoken personally with the postmaster.  I've

3  opened up an OIG investigation over it.  They are

4  literally not picking up postal mail.

5            THE COURT:  Well, if you can show --

6            MR. NELSON:  What am I to do?

7            THE COURT:  If you can show you sent it to them,

8  then --

9            MR. NELSON:  I can, and it's in the docket.

10            THE COURT:  That's all you have to worry about.

11        And I see Docket Entry 357.

12        So the question here is whether your supplements

13  are adequate or not.  If there's still an issue about

14  that I will allow plaintiffs to -- leave to file their

15  motion for order to show cause why the responses aren't

16  sufficient.

17        Mr. Nelson, you can respond to that if you think

18  they are.  You know, maybe you didn't provide everything

19  that you were supposed to, like addresses of contact

20  information, so from what I'm hearing, there's still an

21  issue about that.

22        I don't know if you have, Mr. Nelson.  You don't

23  sound like you're sure that you provided all that

24  complete information.  Maybe you tried.

25            MR. NELSON:  I provided all the information I

1  have in my brain to provide to them.

2         If there is more information they want, I can't

3  not magically make it go into my brain to give to them.

4         THE COURT:  Well, so there may be an issue about

5  that.

6         All I'm doing is saying I will grant plaintiffs'

7  motion they had made earlier that they could file a

8  motion for order to show cause if they believe your

9  responses to interrogatories are insufficient.

10        Mr. Kellogg, if you do have the information,

11  obviously, I would -- I would hope you would not file a

12  frivolous motion --

13        MR. KELLOGG:  Of course, Your Honor.

14        THE COURT:  -- for order to show cause.

15        But if there is still an issue you can file your

16  motion and, Mr. Nelson, you can file your response.

17        MR. NELSON:  Thank you, Your Honor.

18        THE COURT:  You know, in a typical case, the

19  parties would work this out and we wouldn't have to have

20  written filings.  But the parties are not able to do that

21  in this case so we have to do it the old-fashioned way,

22  where you're going to have to file motions and responses

23  if you can't communicate with each other, so you know

24  there is nothing more I can do.

25        One side says they haven't received proper

1  responses; the other side says maybe I have.

2       I have no way of knowing.  I haven't seen the

3  responses.

4       Mr. Kellogg, if you file a motion, I need you to

5  attach the offending responses that you claim are

6  inadequate.  I can't rule if I don't see what the

7  interrogatories and responses are.

8            MR. KELLOGG:  Yes, Your Honor.

9            THE COURT:  Okay.  Understood?

10           MR. KELLOGG:  Understood.

11           THE COURT:  Thank you.

12           MR. NELSON:  Your Honor, I have an objection to

13  that.

14       The responses to the interrogatories are subject

15  to a protective order because they have to do with my

16  medical history.

17       Mr. Kellogg, and Mr. Mikel, and Mr. Brand have a

18  habit of entering information into the public docket

19  which is protected, and protected under a protective

20  order.

21       If Your Honor is then now ordering them to enter

22  my private medical information into the --

23           THE COURT:  No, no, no, no.

24           MR. NELSON:  -- public --

25           THE COURT:  I am not directing that.

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   34

1          It can be submitted pursuant to the protective

2    order and protected.

3          MR. NELSON:  They haven't done that to-date,

4    Your Honor, so why -- why would they start now all of the

5    sudden adhering to any sort of rules of the Court?

6          THE COURT:  Well, I am not even going to respond

7    to a vague complaint about not complying with the rules

8    of the Court.

9          MR. NELSON:  Specifically then, Your Honor, I

10   would like to place on the record that if opposing

11   counsel enters any of my medical information to a public

12   court record, I will file a separate federal litigation

13   against them.

14         THE COURT:  Mr. Kellogg, you'll abide by the

15   terms of the protective order, correct?

16         MR. KELLOGG:  Correct, Your Honor.

17         THE COURT:  Yes.  All right.

18         MR. BRAND:  Your Honor -- Your Honor, this is

19   Craig Brand.

20         We will redact -- we'll certainly redact

21   Mr. Nelson's medical records.

22         But this -- this is what -- what I just heard is

23   part of the frustration that plaintiffs' lawyers are

24   having to deal with.  Mr. Nelson continues to just say

25   whatever he wants to say.

1         For instance, he just told and represented to the

2   Court that Mr. Kellogg and Mr. Brand have continuously

3   put into public records things that are violating

4   confidentiality orders.

5         I really would like Mr. Nelson to prove to the

6   Court and demonstrate to the Court any such violations

7   instead of continuously getting away with his ability to

8   just -- just lie.  It's frustrating.

9         The plaintiffs' counsel have received two emails

10  in the last two days from Mr. Nelson, one of them even

11  threatening us so -- and, Your Honor, I -- I will

12  actually do a notice of filing of those because he has

13  never been held accountable and it is just -- it's

14  constant prejudice.

15        Even if the plaintiffs' counsels were to ignore it

16  all, our clients can't.  And our clients have to pay for

17  it.  And it keeps getting prejudicial, and prejudicial,

18  and further prejudicial.  And one of the things that we

19  have been complaining about then I'd really like to see

20  it happen, is if Mr. Nelson is going to start making

21  claims against us, I really would like to hold his feet

22  to the fire and have him prove it.

23        32 years of practicing law, practicing in all

24  kinds of federal courts around the country, state courts

25  around the country, I have never been so insulted by any

1  person other than Mr. Nelson, and the things that he has

2  just been allowed to say and accuse and the stories and

3  the fiction have just -- too much, Your Honor.

4          THE COURT:  Mr. Nelson, you did just a minute

5  ago make a vague statement to -- that the plaintiffs'

6  attorneys have been entering things into the record that

7  include your personal information, a violation of the

8  protective order.  You know, you just can't make vague

9  claims like that without any authority or support for

10  your statement so that needs to stop, Mr. Nelson.

11          MR. NELSON:  I --

12          THE COURT:  Just listen to me.

13      Listen to me, Mr. Nelson.

14      You know, I am having a hard time here because you

15  keep accusing plaintiffs' counsel of these things but

16  you're doing -- you're doing exactly what you're accusing

17  them of so you know it has to work both ways.

18      It has to -- you know our justice system is built

19  on everybody being truthful and abiding by the rules and

20  I've already said it earlier -- and this applies to

21  plaintiffs and to you.  I don't want to hear vague claims

22  that people lied, or that they're violating a protective

23  order.

24      Don't be making those claims unless you have a way

25  of substantiating it.  I -- if it is substantiated, fine.

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   37

1   But just to make -- throw out vague claims and accuse

2   people of things without any support for it, you know

3   that's not how the system works.

4           Do you understand me?

5           MR. NELSON:  Yes, Your Honor.  I am looking for

6   the document, I believe it was a document filed by

7   Mr. Kellogg in August.

8           THE COURT:  Well, I'm not going to deal with

9   that on the phone.

10          MR. NELSON:  Because Your Honor has asked for a

11  citation, I'll give the Court a citation of an example of

12  a violation.

13          THE COURT:  Well --

14          MR. KELLOGG:  Your Honor?  Your Honor --

15          MR. NELSON:  Or if it pleases the Court, I can

16  file it in a separate notice to the Court.

17          THE COURT:  No, I don't -- I don't want more

18  filings.  No.

19          I am saying if something comes up going forward

20  and you're going to make an allegation that the

21  protective order has been violated, you better back it

22  up.  You better back it up with substantiation.

23          Is that understood?

24          And, no.  Mr. Nelson, don't be looking for stuff

25  that happened back under Judge Birzer's watch.  I don't

1  want more filings about that stuff.  We're moving

2  forward.

3       And that is a good segue to the next -- oh, first

4  of all, I want to set a deadline for plaintiffs to file

5  any motion for order to show cause with regard to

6  Interrogatory 1A through 1H.

7       I would like to have that in a week.  Is that

8  possible?

9          MR. KELLOGG:  Yes, it is possible, Your Honor.

10         THE COURT:  Okay.  A week from today.

11      And as I said, I need you to attach the

12  interrogatory and response in dispute and then I am going

13  to expedite the briefing.  We're going to get through

14  this quickly.

15      So plaintiffs' motion will be due by a week from

16  today, January 25th.

17      Mr. Nelson, your response in opposition, if any,

18  will be due January 30th.

19      And any reply, which is discouraged, if filed must

20  be filed by February 3rd.

21      All right.  And as I started to say, this is a

22  good segue to my next point which is to discuss the

23  schedule in this case.

24      We have a living March 13th discovery deadline in

25  this case.  I am going to move this case forward.

1         I'm sorry, it's March 10th discovery deadline in

2   this case.  So conduct yourselves accordingly.  You

3   better stop the frivolous -- I'm referring to both sides

4   now -- frivolous, ridiculous filings.

5         We're going to do discovery and get through this.

6   I am going to expedite it at every turn possible and

7   we're going to shoot for that March 10th discovery

8   deadline.  In connection with that, we need to get to

9   work on getting depositions scheduled that the parties

10  intend to take.  So, also, within a week from today I

11  want each side to send me the list of the ten or

12  fewer -- ten is the maximum allowed in the scheduling

13  order, depositions you want to take.

14        You shall list the name of each party you want to

15  depose, where you propose that they will -- the

16  deposition will be taken, a general time frame for taking

17  the deposition, by that I mean month and week if possible

18  between now and March 10th.

19        And, Mr. Nelson, in your case I have reviewed the

20  order of the Oklahoma judge in the criminal case and I

21  know you've been concerned about getting caught in

22  violation of your bond by violating the conditions

23  imposed upon you.  So to the extent you have any concerns

24  that people on your witness list are -- are victims or

25  potential victims that you are not to have any contact

1  with, you need to note that on your witness list and

2  we'll have to deal with that.

3        Now as I understand it, and correct me if I'm

4  wrong, Mr. Nelson, I've read the order of the Oklahoma

5  judge whose name escapes me at the moment, but I read her

6  order from the October hearing and she made it clear that

7  you're to have no contact with victims, including the

8  shareholders of businesses that are owned by the victims.

9        So of course I don't know who all those are, so

10 you're going to have to identify -- if people on your

11 witness list are in that category, you'll need to

12 identify them.  Then, secondly, her order said you can't

13 be present for the deposition.  She said you could listen

14 in and she says you should get an attorney.

15       So, Mr. Nelson, how -- I -- we need to talk about

16 that and how we're going to handle depositions.

17       Are you hiring an attorney to handle any

18 depositions for you?

19         MR. NELSON:  I can't afford an attorney,

20 especially being burdened by all of these different

21 sanctions that are coming my way so I guess I got to send

22 you guys like $13.61 as I get it and a postal money order

23 to the Court.  I can't afford an attorney.

24       They have attacked my father.  They've pushed me

25 to a point where no one will help me in any way in life

1  because they will be attacked by Craig Brand.

2          THE COURT:  Okay.  Now this again is another --

3          MR. BRAND:  Here we go again.

4          THE COURT:  -- example of you making vague

5  allegations against plaintiffs.  I don't -- I don't --

6          MR. NELSON:  Your Honor -- Your Honor --

7          THE COURT:  Mr. Nelson.

8          MR. NELSON:  Your Honor, once you file the

9  magistrate report I have a plethora of police reports and

10 information from the FBI regarding Craig Brand and the

11 same old plot line in every case he's been involved.

12      And I am going to file --

13          THE COURT:  Mr. Nelson.

14          MR. NELSON:  -- hundreds of documents into the

15 court record.

16          THE COURT:  Mr. Nelson, I asked you a simple

17 question.  Are you going to get an attorney to take the

18 depositions for you of people who are your alleged

19 victims?

20          MR. NELSON:  No.

21          THE COURT:  I don't want you to violate your

22 bond in the criminal case so I want to know how --

23          MR. NELSON:  Your Honor, the criminal case comes

24 to trial on the 6th of February.  So who knows?  Maybe

25 I'll be in prison.  Maybe I'll be dead like all the other

```
 1  dead whistle blowers in Craig Brand's cases.

 2          MR. BRAND:  Your Honor.

 3          THE COURT:  Yeah, I don't want to hear it.  I

 4  don't want to hear that.

 5          MR. NELSON:  I'm sure that the Court doesn't

 6  want to hear it but it's the truth.

 7          THE COURT:  I -- I --

 8          MR. NELSON:  You just said, Your Honor, that

 9  this works on rules and the truth.

10          THE COURT:  Right.  And I am not seeing anything

11  that indicates people are dying in Mr. Brand's cases.

12          MR. NELSON:  You haven't?

13          THE COURT:  You keep saying that.

14          MR. NELSON:  I will make sure it's immediately

15  filed.

16          THE COURT:  No, I have not.

17          THE COURT:  No, no.

18          MR. NELSON:  I believe it has already been filed

19  to the Court but I'll make sure that all the information

20  is filed --

21          THE COURT:   No.  Mr. Nelson --

22          MR. NELSON:  -- for the Court.

23          THE COURT:  -- you're still prohibited from

24  filing.

25          You only can file things that I authorize you to
```

1  file so don't -- don't be trying to clutter the record

2  more with your aspersions against plaintiffs' counsel.

3       I want an answer to my question.  How are you

4  going to handle depositions in this case?

5       MR. NELSON:  I guess those depositions will have

6  to be taken after the 6th of February, and after my trial

7  in Oklahoma and if I am in prison then I guess those

8  depositions will have to happen via, I don't know, in

9  writing but I do hope to have numerous Rule 27

10 perpetuation of depositions filed, at least in those

11 states in which the counter defendants or plaintiffs have

12 listed individuals that are located, such as in Minnesota

13 or Arizona or --

14       THE COURT:  All right.

15       MR. NELSON:  -- Florida.

16       THE COURT:  All right.

17       MR. NELSON:  I'll have those filed and then I

18 will have notices filed to the Court for the perpetuation

19 of those depositions under Rule 27.

20       THE COURT:  No, you won't because you're not

21 going to be filing anything unless I authorize you to

22 file it.  And I have authorized you to file a few things,

23 including what I was just trying to talk to you about but

24 then you went off on your tantrum.

25       You are to file your witness list of the ten

1  people you want to depose.

2          MR. NELSON:  Okay.

3          THE COURT:  Ten at the most.

4      And as part of that I said you need to identify

5  who they are, where they are, where you propose to take

6  the deposition and in your instance I need to know if

7  they're people that you can't have contact with under the

8  terms of your bond in the criminal case.  So --

9          MR. NELSON:  I -- I understand that, Your Honor.

10         THE COURT:  And that needs to be filed within a

11  week from today.

12         MR. NELSON:  But, Your Honor, they have not even

13  filed anything with me -- they've not answered any of the

14  interrogatories.

15     Do you not have a -- they have literally not

16  answered any of the interrogatories except spewed out a

17  whole list of more people, another like 30 or 35 people.

18  So how am I to decide who is and who is not someone that

19  I can contact?

20         THE COURT:  Well, I think you know who the

21  alleged victims are of your crime.

22         MR. NELSON:  Of my crime?

23         THE COURT:  Alleged crime.

24         MR. NELSON:  Of -- my alleged crime of

25  protecting my investment of $170,000?  Oh, yeah.

01/18/2023    UNITED CAPITAL v. NELSON    22-4008    45

1           THE COURT:  Well --

2           MR. BRAND:  Your Honor, Craig Brand.

3           THE COURT:  I'm just trying to help you protect

4  your interests, Mr. Nelson, because you've got to comply

5  with the Oklahoma judge's order and so you know

6  you -- and she said you can't have contact with any of

7  the alleged victims.  So you know it's on you to identify

8  who those people are and figure out a way you can have

9  them deposed without you having contact with them.

10          So get me your list within a week, as I said.

11          MR. NELSON:  As soon as there is an order I will

12  be.

13          What -- what about the -- what about my

14  interrogatories?  You have discussed their

15  interrogatories towards me.  What about my

16  interrogatories that they have given boilerplate answers

17  to?

18          Of not -- you know calculated lead to discoverable

19  information; can't have this; can't have that?  What

20  about those interrogatories?  Am I -- am I -- is this

21  just a hanging or am I allowed some basic protection?

22          THE COURT:  Do you have a -- did you file a

23  motion to compel with regard to --

24          MR. NELSON:  For the last hearing the 6th of

25  December I filed the requisite agenda items and I -- in

1  that I asked for a motion to compel plaintiffs to

2  actually provide documents requested in discovery and to

3  answer the basic interrogatories, which plaintiffs

4  refuse.

5      See Exhibit A where plaintiff uses the boilerplate

6  phrase, irrelevant, immaterial, and not reasonably

7  calculate nine times in responses.  And used the same

8  calculated past tense another time.  See attached

9  herewith, please.  First response ever --

10      THE COURT:  Do you have a Docket Entry -- do you

11  have a Docket Entry to cite me to?

12      MR. NELSON:  I -- I do not, Your Honor.

13      It was sent to the previous federal magistrate as

14  pursuant with the Federal Magistrate Birzer's orders to

15  provide.

16      THE COURT:  Okay.  When were -- when were

17  these -- these interrogatories you're referring to?

18      MR. NELSON:  The interrogatories were served

19  upon the plaintiffs months, and months, and months ago.

20      THE COURT:  When were they served?

21      MR. NELSON:  In fact --

22      THE COURT:  When were they served?

23      MR. NELSON:  Um, I don't know.  Back in

24  September.  And they -- and they responded with just

25  boilerplate, after boilerplate, after boilerplate refusal

1  to answer anything.

2      And now they've been served another set of

3  requests for production which they have signed for and

4  they have refused to sign for requests for admission, and

5  refused to sign for answers to 1A through 1H of their own

6  interrogatories.  So this is only a one way street, Your

7  Honor.

8      It is -- they get to demand --

9      MR. BRAND:  Judge -- judge --

10     MR. NELSON:  -- questions of me and things of me

11 and when I ask questions, all that I get is boilerplate

12 responses which I -- I can file to the Court.

13     Under your protective order you tell me to proceed

14 to file under seal and I will do so, but it is a one way

15 street.  You can't have a litigation if it's a one way

16 street.  Otherwise, it's a lynching.

17     THE COURT:  It's not a one way -- been a one way

18 street.

19     I see here now, I'm looking at the docket, I see a

20 November 3rd Docket Entry 309 that says -- ends with, The

21 Court stays defendant's deadline to file any motion to

22 compel related to these requests until the December 6th

23 status conference.

24     Do you see that?

25     MR. NELSON:  Yes, Your Honor.

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   48

1          THE COURT:  Okay.  So are you claiming that you

2    served -- this is a -- I can't tell from this -- it's a

3    request for production.

4          And are you claiming there's not been a

5    satisfactory response to that?

6          MR. NELSON:  Your Honor, the only response that

7    they gave, they gave boilerplate objections to every

8    question that I asked and the only question that they

9    answered and they didn't even answer fully, was they

10   listed down some arbitrary names as they have done in the

11   past, fake names, nicknames, fake phone numbers, no

12   addresses.

13         THE COURT:  Okay, okay.

14         MR. NELSON:  No information of what these people

15   are going to testify to.

16         MR. BRAND:  Wow.

17         THE COURT:  Okay.  Okay.  Hang on.

18         MR. NELSON:  And it --

19         THE COURT:  Hang on.

20       How soon can you file your motion to compel?

21         MR. NELSON:  Um --

22         THE COURT:  As to that request for production?

23         MR. NELSON:  I -- how many pages am I limited to

24   because they didn't answer anything?

25         THE COURT:  It's ten, right?

```
1              MR. NELSON:  Motion to compel.

2              THE COURT:  We're double-checking the local rule

3  on how many pages you get.  Hang on.

4        So --

5              MR. NELSON:  Well, the -- the problem is they

6  just refuse to answer anything.

7              THE COURT:  Okay.

8              MR. NELSON:  Although they give me a garbage of

9  names --

10             THE COURT:  Listen -- listen, Mr. Nelson.

11             MR. NELSON:  -- including the --

12             [Indiscernible crosstalk.]

13             THE COURT:  Mr. Nelson, please listen to me.

14       Okay.  Under the local rule you're limited to ten

15  pages on your motion, discovery motion.

16       So I am going to give you a week from today to

17  file.  Or can you do it more quickly?

18             MR. NELSON:  I don't know if I can even do it a

19  week from today, Your Honor, because I have --

20             THE COURT:  Okay, you get a week from today.

21             MR. NELSON:  A briefing --

22             THE COURT:  Okay.

23             MR. NELSON:  -- to the Tenth Circuit Court of

24  Appeals that I need to file, and I owe another briefing

25  to the U.S. District of New Jersey regarding the IPFS
```

1  application.

2          THE COURT:  Okay.  You get until a week from

3  today.

4      And the most important thing, Mr. Nelson, is I

5  can't rule on these based on vague arguments.  You need

6  to attach the responses that you're arguing are

7  insufficient as an exhibit to your filing.  I need that

8  to make a ruling, okay?

9          MR. NELSON:  I understand.

10          THE COURT:  Okay.  So that takes care of the

11  request for production in -- referenced in 309.  That's

12  what I am allowing you to file a motion to compel with

13  respect to.

14          MR. NELSON:  On the --

15          THE COURT:  Hold on.  So that's --

16          MR. NELSON:  That's only the request for

17  production?

18      What about the answers to the interrogatories?

19          THE COURT:  Well, I'm trying to find them in the

20  docket but my -- what I just ruled is the request for

21  production.

22      Plaintiffs, I'm shortening your response time, it

23  will be a week from -- well, it will be two weeks from

24  today.

25          The motion must be -- to compel must be filed with

1  regard to the request for production noted in Docket

2  Entry 309, let's be specific here.

3        Your motion, Mr. Nelson, to compel must be filed

4  by a week from today.

5        And plaintiffs' response within a week after that.

6        I'll let you know if any reply is necessary,

7  Mr. Nelson.

8           MR. NELSON:  To?  To what?

9           THE COURT:  Their response.

10          MR. NELSON:  To my motion to compel the request

11 for production?

12          THE COURT:  Yes.

13          MR. NELSON:  Okay.

14          THE COURT:  Okay.  And you're limited to ten

15 pages and please don't go off making vague aspersions

16 against the plaintiffs.

17       The argument in your ten pages, you're going to

18 have to be succinct because you only get ten pages,

19 should be as to why their responses to the requests for

20 production are insufficient.  That's the only issue.

21       Okay.  Now, is there some other discovery

22 outstanding you can point me to in the docket?

23          MR. NELSON:  Yes, Your Honor.  There is a -- the

24 request for production, there's also the interrogatories

25 that were served upon the plaintiffs that they also gave

1  vague and unresponsive answers to.

2       You know, it would probably be just easier that I

3  bring up theirs and I just speak rather than -- I have

4  written up and, granted, it was 40 pages which I will cut

5  down and put the legal citations for you but their

6  responses were just -- um -- no, that's the

7  counter -- that's the California complaint.

8           THE COURT:  Well, I see -- Mr. Nelson, I'm --

9           MR. NELSON:  Here -- here we go.

10      I have it, Your Honor, I'm sorry.  It took me a

11  minute.  I've several lawsuits open there.

12      The -- I will file the motion to compel for the

13  requests for production which they boilerplated.  And

14  then I will ask the Court under my -- well, if it pleases

15  the Court, the Court will note that the plaintiffs have

16  not issued any litigation holds or notices as required,

17  but I'll include that with the case law in the motion to

18  compel.

19      In the answers to interrogatories, which was also

20  served at the same time by the plaintiffs, their answers

21  are entirely insufficient as they claim that, quote,

22  discovery is -- lets see.

23          THE COURT:  All right.  I -- I don't need you to

24  argue it now.  Let's set a deadline --

25          MR. NELSON:  How about -- I'm sorry, Your Honor.

1        They have not made -- they have used this scorched

2  litigation practice by squiggling lines and so that the

3  documents are not searchable.  But to give you an example

4  of their answers to interrogatories they answer like,

5  Answer:  To the extent that the questions for production

6  were not objected to, plaintiffs are producing documents

7  in response to the applicable requests for production.

8        Plaintiffs would further state that it has

9  reviewed its client data, financial data, client

10  acquisition information, client continuation information,

11  client activity information, client inactivity

12  information --

13        THE COURT:  Okay, that's enough.

14        MR. NELSON:  -- business dealings.

15        THE COURT:  I don't need to hear all of that,

16  Mr. Nelson.

17        MR. NELSON:  But they provide me no documents,

18  Your Honor.

19        THE COURT:  Mr. Nelson, this is what I am

20  saying.  It's not productive for you to make these

21  arguments.  I need to actually see the requests and the

22  response or the interrogatory and the response.  So

23  you're going to have to file a motion.

24        When were those responses -- answers to

25  interrogatories served on you?

1          MR. NELSON:  Oh.  I believe that they said that

2    they served them on the 10th of November and I don't

3    believe I received them until the end of November.

4          I'm not sure when I received them.

5          THE COURT:  And have you requested to file a

6    motion?

7          MR. NELSON:  Actually, you know --  actually,

8    I -- I can tell you when I received them, I'm sorry, Your

9    Honor.  I'll look that up right now.

10          THE COURT:  Did you request before to Judge

11   Birzer to file a motion to compel with regard to the

12   interrogatories --

13          MR. NELSON:  I believe that was coming up on the

14   6th December status conference --

15          THE COURT:  Okay.

16          MR. NELSON:  -- and that was the materials that

17   I had requested of I think it was Hannah at your

18   chambers, whether all of those documents were transferred

19   to your offices.

20          THE COURT:  Okay.  All right.  Well, here's what

21   we are going to do.

22          I see here a notice of service.  Um, I don't see

23   any notice of service by you of interrogatories.  You're

24   going to have to help me which Docket Entry that is.

25          MR. NELSON:  Of -- of me serving interrogatories

1  on them?

2         THE COURT:  Yeah, because I want to identify

3  what's outstanding and what you're wanting to file a

4  motion to compel on.

5         MR. NELSON:  Oh boy.  It was so long ago because

6  plaintiffs stated that Rule 26(d)(2) did not exist in

7  FRCP, but I had originally made early Rule 34 requests

8  back in, I don't know, June.  So let's see.

9         THE COURT:  Mr. Nelson, okay, let me ask you

10  this.

11         MR. NELSON:  Did the demand --

12         THE COURT:  Hold on.  Hold on.

13         MR. NELSON:  -- that they file those --

14      [Indiscernible crosstalk.]

15         THE COURT:  Let me ask you this, Mr. Nelson.

16      Have you served just one set of interrogatories on

17  plaintiffs?

18         MR. NELSON:  No.

19         THE COURT:  How many sets have you served?

20         MR. NELSON:  Two.  Plaintiffs refuse to retrieve

21  their United States postal mail, as I've stated

22  before and I --

23         THE COURT:  Okay, okay, hang on.

24         MR. NELSON:  -- and this -- at this point, Your

25  Honor, I would request a motion for show cause that

1  plaintiffs be commanded by the Court to retrieve their

2  United States postal mail.

3      What choice do I have to provide documents if

4  attorneys will not retrieve their U.S. postal mail?

5          THE COURT:  Listen, Mr. Nelson, you just have to

6  show you served them.

7          MR. NELSON:  Well, I --

8          THE COURT:  Why are you concerned?

9          MR. NELSON:  I can show I served them.

10          THE COURT:  Okay.

11          MR. NELSON:  But I can also show where they're

12  not picking up their mail.

13          THE COURT:  Okay, well, that's fine, as long as

14  you served them, they have 30 days to respond.

15      I don't know why you're so worked up about them

16  not picking it up.  You've accomplished your task by

17  serving them.

18      How many interrogatories have you served?  You're

19  limited to 25 interrogatories in this case.

20      Did you exceed 25 interrogatories?

21          MR. NELSON:  25?  No, no, I've only served like

22  six.

23          THE COURT:  Yeah.

24          MR. NELSON:  Most of them are like motions to

25  compel -- or I'm sorry, are requests for production and

1  requests for admission.

2      But I have only asked for like six -- six or seven

3  I think interrogatory questions.

4          THE COURT:  Okay, fine.

5          MR. NELSON:  But I'm allowed 25 --

6          THE COURT:  Forget I said that.

7          MR. NELSON:  -- to each of the parties?  Wow.

8          THE COURT:  No, no, forget I said that.

9      All right.  Mr. Nelson, I just want to set a

10  deadline by which you're going to file any motion to

11  compel as to any interrogatories and requests for

12  admissions that you claim are inadequate.  So I will give

13  you two --

14          MR. NELSON:  Well, then they haven't ever

15  responded to a single request for admission, Your Honor.

16      They have not responded to -- they've responded to

17  a couple of requests for production but all with

18  boilerplate answers --

19          THE COURT:  Okay.

20          MR. NELSON:  -- and same with the

21  interrogatories.

22          THE COURT:  Well, Mr. Nelson, whatever they are,

23  or they've failed to respond to, if --

24          MR. NELSON:  You -- you would like copies of

25  them.  And --

1          THE COURT:  Well, you --

2          MR. NELSON:  And a 10-page motion to compel.  I

3 got it.

4          THE COURT:  Yep.  So you'll need to do one

5 for -- we already set a deadline of a week from today for

6 a motion to compel on the request for production

7 discussed in Docket Entry 309.

8          Whatever interrogatories you say you've served I

9 want one motion to compel as to however many sets of

10 interrogatories you say you've served.  One motion to

11 compel as to all interrogatories, and attach the copies

12 of the interrogatories at issue.  And then if there are

13 requests for admissions that you also claim have not been

14 properly responded to --

15          MR. NELSON:  Not at all, Your Honor.

16          THE COURT:  What?

17          MR. NELSON:  They have not at all responded.

18          THE COURT:  Okay, well, then you need to -- you

19 need to file your motion to compel and attach them and

20 set out when they were served, how they were served, that

21 you had not received any response.  That's all you have

22 to do.

23          MR. NELSON:  Okay.

24          THE COURT:  And then they'll respond and I'll

25 decide based upon what's served.

1          You know, it's really not that difficult.  I just

2    need you, Mr. Nelson, to focus on the issue in each of

3    these and not go off telling me about what awful people

4    the plaintiffs are.

5          Each of these is a narrow issue.  You can make

6    your argument on each of them.  Without going off on

7    extraneous stuff not relevant to the motion.

8          Does that make sense?

9           MR. NELSON:  I'm not sure.

10          The -- for example, I thought I was very concise

11   on why they should be compelled to not give boilerplate

12   answers to every single interrogatory but apparently

13   that's not -- not good enough.

14          This case is --

15          THE COURT:  Concise where?  You haven't filed a

16   motion to compel before, have you?

17          MR. NELSON:  No, because I -- I have been

18   prevented.

19          But you know, Your Honor --

20          THE COURT:  So why are you -- wait.  You said

21   you have been very concise.  What are you talking about?

22   You have not filed any.

23          MR. NELSON:  In -- in the information that I

24   have filed for Judge Birzer's status conferences.

25          THE COURT:  Okay, well, I have not seen that and

```
 1  she had delayed any motion filings so now I'm going to

 2  allow you to file a motion on each of these.

 3          MR. NELSON:  Ah, to compel.

 4      And it -- and it is my humble and most apologetic

 5  to the Court, this entire case has caught me off guard

 6  and is just a practice run.

 7      I -- I tell the federal courts that the cases in

 8  New Jersey, New York, the Carolinas, Nevada, Arizona, and

 9  California with Mr. Koehn will be entirely different.  I

10  will have -- I am a quick learner and I'm learning very

11  quickly.

12          THE COURT:  Well, one thing you need to learn is

13  that you know lawyers in law school get taught issue

14  spotting, and to focus --

15          MR. NELSON:  Issue spotting, okay.

16          THE COURT:  And to focus their arguments on a

17  particular issue.

18          MR. NELSON:  This is helpful.

19          THE COURT:  And, Mr. Nelson, you've had this

20  tendency -- I'm just trying to help you here -- of going

21  off on a lot of factual background and stuff that's not

22  relevant on these individual motions.

23      You know, you don't need to make your case in the

24  motion --

25          MR. NELSON:  Okay.
```

```
 1            THE COURT:  -- on a motion to compel.  You need
 2  to just focus on what -- why the answers are not
 3  sufficient under our rules.  That's all we need to hear
 4  from you.
 5            MR. NELSON:  Okay.
 6            THE COURT:  So --
 7            MR. NELSON:  So --
 8            THE COURT:  So we don't need -- ten pages should
 9  be -- you ought to be able to do it in five pages.
10  Just --
11            MR. NELSON:  So -- oh, well, now -- now you
12  bring up a very good point that I have a question.
13       When they -- when you say ten pages, I don't have
14  to stretch it to ten pages, I can --
15            THE COURT:  No, no.  Be as brief as you can.
16  Ten is the maximum.
17            MR. NELSON:  Oh, well then --
18            THE COURT:  That's the page limit.
19            MR. NELSON:  That's an entire revelation, Your
20  Honor, because when I had read the Federal Rules of Civil
21  Procedure it originally said that I was supposed to make
22  each one of them 30 pages and I kept racking my brain --
23            THE COURT:  No, no, no, no, no.
24            MR. NELSON:  -- trying to figure out how to make
25  it 30 pages.
```

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   62

1            THE COURT:  No.  That's why it is called a page

2    limitation.  Ten is the maximum just like a speed limit

3    of 55 is the maximum.  The page limit is ten, that's the

4    most.  You can do -- do far less than that, that will

5    make me happy.

6            MR. NELSON:  So -- so if I can make a motion --

7    if I can make a motion of just three pages, and I can say

8    all the case law and make my points succinctly and do

9    the -- I-R-A-C, the issue, rule, applicability and

10   conclusion in two or three pages, if you know it's a

11   10-page, I can just turn in three pages?

12           THE COURT:  Yes.  Yes.

13           MR. NELSON:  Oh.

14           THE COURT:  Absolutely.

15           MR. NELSON:  Okay.  I --

16           THE COURT:  Shorter is better.

17           MR. NELSON:  I can do stuff like that.  Okay.

18   Wow.

19        All right.  Issue spotting.

20           THE COURT:  And attach the responses, though.

21        I cannot rule if you just make vague arguments

22   that I don't see the responses that you're complaining

23   about.

24           MR. NELSON:  You want the exhibits you're

25   talking about?

1              THE COURT:  Yeah, well, the answers to

2  interrogatories, the responses to the requests for

3  production.  Yeah.

4         You've got to attach the actual responses that

5  are -- you're complaining about.

6              MR. NELSON:  Okay.  I --

7              MR. BRAND:  Your Honor -- Your Honor --

8              MR. NELSON:  I can do that.

9              MR. BRAND:  Your Honor, Craig Brand.

10        Can -- our answers also have confidential

11  information on it so I would like Mr. Nelson to be

12  reminded that he, too, is responsible for redacting

13  anything that would be confidential.

14             THE COURT:  Yeah, that's true, Mr. Nelson.  You

15  have --

16             MR. NELSON:  I -- I understand that, Your Honor.

17             THE COURT:  You have to comply with the

18  protective order.

19             MR. NELSON:  And I will.  The protective order

20  is spelled out very clearly how each party needs to

21  present information that is subject to the protective

22  order.

23        If Mr. Brand is now just saying arbitrarily some

24  vague statement that some answer is subject to the

25  protective order and which was not actually printed on

1   the answers as subject to the protective order pursuant

2   with the protective orders entrance of that order by

3   Judge Birzer, how am I to know what information he's

4   referring?

5          THE COURT:  Mr. Brand, do you want to respond to

6   that?

7          MR. BRAND:  I -- well, the things that just went

8   through my head, Your Honor.

9       Your Honor, it's -- I am not to give Mr. Nelson

10  legal advice.

11      Mr. Nelson has informed Judge Birzer during one of

12  the hearings, as well as he has told other people how

13  much money he has, that he stands behind a fund, that he

14  spends hundreds of thousands of dollars on lawyers, all

15  kinds of wonderful things that have come out of

16  Mr. Nelson's mouth.  And now I'm -- again, and as we have

17  been saying in this case, I want Mr. Nelson accountable

18  for what comes out of his mouth.  He is the one that says

19  he can afford lawyers, let him hire lawyers to give him

20  this advice.

21      It's not -- if Mr. Nelson wants to know the

22  requirements for his redacted information, it's in the

23  rules.

24      If he wants to know what's the requirement for

25  confidential information, it's in the order.  I

1  don't -- I can't speak -- I can't speak

2  specific -- anything further specific to that issue.  And

3  I don't want to play his lawyer.

4         THE COURT:  Yeah, okay.

5      All right, Mr. Nelson --

6         MR. NELSON:  Your Honor --

7         THE COURT:  -- just be careful.

8         MR. NELSON:  -- the protective order that was

9  entered in this case was entered by Judge Birzer and that

10 protective order specifically laid out exactly how each

11 party was to protect information.  So Mr. Brand just

12 giving a blanket statement about lawyers and, Mr. Brand's

13 special, I don't know, trust fund he has or whatever, has

14 no information on me.

15        MR. BRAND:  What is he talking about?

16        THE COURT:  Yeah, just review the protective

17 order and comply with it, Mr. Nelson, before you --

18        MR. NELSON:  I believe that the protective order

19 was entered -- protective order was -- a jointly proposed

20 scheduling protective order was supposed to be due on the

21 31st of August and I believe there was some back and

22 forth regarding that protective order, Your Honor,

23 and --

24        THE COURT:  It was entered September 9th.

25        MR. NELSON:  Okay.

1              THE COURT:  So look at the protective order and

2    you'll have to comply with it.

3         All right?

4         MR. NELSON:  And I have no problem with

5    complying with it but Mr. -- but what Mr. Brand is

6    stating is wanting me to comply with some nebulous aspect

7    of a protective order which I can't possibly --

8              THE COURT:  I didn't get that.

9         MR. NELSON:  -- I can't --

10             THE COURT:  He said you need to read the rules

11   that we're all bound by, Federal Rules of Civil

12   Procedure, and the protective order, and conduct yourself

13   accordingly, and that's right.

14             MR. NELSON:  It -- I'm sorry.

15             THE COURT:  It's not that hard.

16             MR. NELSON:  You say it was September 9th?

17             THE COURT:  Yep, that's what we show.

18             MR. NELSON:  I am not seeing -- September 1st.

19        Where is -- we're in descending.

20             THE COURT:  All right.  Well, anyway --

21             MR. NELSON:  Well -- well, Your Honor, you know,

22   Mr. Brand's made a statement on the record which

23   I -- nothing that they have provided to me have they

24   stated is subject to the protective order.

25             In -- but when I've made my filings I've made

 1  specific of which pieces of information are subject to

 2  the protective order, which is the way that I read

 3  the -- the protective order itself that was issued by

 4  Judge Birzer.

 5          So now I'm just -- I'm going to log into the God

 6  system here --

 7          THE COURT:  Mr. Nelson, I'm not going to quibble

 8  with you or give you legal advice.  Read the protective

 9  order.

10          MR. NELSON:  All I'm -- I'm not asking for that,

11  Your Honor.  But when Mr. Brand makes such a --

12          THE COURT:  I don't --

13          MR. NELSON:  -- vague and --

14          THE COURT:  Just quit going back and --

15          MR. NELSON:  -- he is claiming that things

16  are --

17          THE COURT:  Mr. Nelson.

18          MR. NELSON:  -- subject of a protective order --

19          THE COURT:  Mr. Nelson, we're moving on.

20       We're moving on.

21          MR. NELSON:  And it --

22          THE COURT:  What dates did I give him for filing

23  his motion to compel?

24          UNIDENTIFIED SPEAKER:  You didn't.

25          THE COURT:  Okay.  I did not give you a date

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   68

1  yet.

2       Your motion to compel as to one, the

3  interrogatories, whatever you have outstanding that you

4  find offensive, will be due ten days from today and if

5  that falls on a weekend, the following Monday.

6       Got that, guys?

7       Ten days from today.

8            UNIDENTIFIED SPEAKER:  You had originally set it

9  on February 1st for the interrogatories.

10           THE COURT:  Did I say for the interrogatories?

11           UNIDENTIFIED SPEAKER:  The request for

12  production was a one week, which was January 25th.

13           THE COURT:  Yeah.

14           UNIDENTIFIED SPEAKER:  And the other one was two

15  weeks.

16           THE COURT:  My clerk is reminding me I said

17  February 1st your motion to compel as to the

18  interrogatories will be due.

19       February 1st, same drill.  Plaintiffs' response

20  will be due within a week of that date.

21       And then I will let you know whether I want a

22  reply or not.

23       As to the requests for admissions, if you want to

24  file a motion to compel they will be due also on

25  February -- that motion also will be due on February 1st

01/18/2023   UNITED CAPITAL v. NELSON   22-4008   69

1  with the response due one week later.

2      Got that?

3      MR. NELSON:  Um, I assume this is going to be

4  in -- or I'm sorry, I don't want to assume.

5      But this will be in a written order, Your Honor?

6      THE COURT:  Probably.

7      MR. NELSON:  I mean because I -- I'm having

8  trouble keeping track of the dates right now so I -- I

9  would prefer to see it in a written order, and I was

10  looking up the --

11      THE COURT:  We will -- we will at least do a

12  text order with the deadlines I've set today, yes.

13      MR. NELSON:  Okay.

14      THE COURT:  Okay.

15      MR. NELSON:  Your Honor, just to speak on

16  Mr. Brand's statement that he's supposedly sent me

17  confidential information under --

18      THE COURT:  No, we're moving on.  I heard that.

19      MR. NELSON:  Under --

20      THE COURT:  Mr. Nelson, disconnect that.

21      You keep wanting to go back to Mr. Brand.  We're

22  moving on.

23      Moving on.

24      MR. NELSON:  Well, Your Honor --

25      THE COURT:  I don't need to hear it.

1          MR. NELSON:  Your Honor, I don't want to violate

2   anything within the Court nor do I want to violate any of

3   the rules.

4          And under paragraph 4 of our protective order it

5   sounds like Mr. Brand and/or the gaggle of attorneys on

6   his side has made an inadvertent failure to designate.

7   Therefore, under our protective order he has 30 days

8   after that discovery to designate.

9          Now he wants to designate something from months

10  ago?

11         THE COURT:  I -- I know --

12         MR. NELSON:  I'm confused on how that can be

13  possible.

14         If this is really a court where we're adhering to

15  specific rules, there was an order --

16         THE COURT:  Mr. Nelson.

17         MR. NELSON:  -- the people had inadvertent

18  failure to designate.

19         THE COURT:  Mr. Nelson.

20         MR. NELSON:  I'll attach a motion to my

21  motion --

22         THE COURT:  Mr. Nelson.

23         MR. NELSON:  -- to the motion to compel.

24         THE COURT:  Mr. Nelson, listen careful to me.

25         One more time.  You can file your motion to

1  compel.  You need to read the protective order and comply

2  with it.

3       If you think there's nothing subject to the

4  protective order in your filing then it is what it is.

5       You have to make a judgment about it.

6       If Mr. Brand and Mr. Kellogg have failed to

7  designate something and you think there's some issue,

8  that's your thing to figure out.

9            MR. NELSON:  Well --

10           THE COURT:  But you need to comply with the

11  protective order.  If you -- if you think they haven't

12  designated something, that's your call to make.

13           MR. NELSON:  How --

14           THE COURT:  But we're moving on.

15           MR. NELSON:  How does --

16           THE COURT:  We're moving on.

17           MR. NELSON:  I understand we're moving on, Your

18  Honor, and I appreciate that, and I am commendable to the

19  time that the Court has to deal with this as the judge in

20  the Oklahoma says, silly federal case in Kansas.

21       The question I have regarding Spencer Angel, the

22  son of the previous chamber's counsel --

23           THE COURT:  Not dealing with it.  Not dealing

24  with it.

25       That is an order that has been dealt with by Judge

1  Broomes.  He's above me.  He has superiority over me.  I

2  am not -- I am not dealing with that.

3          MR. NELSON:  Well, no, I -- I understand that's

4  the reason for the contrite refusal of Federal Magistrate

5  Birzer --

6          THE COURT:  No, we're not --

7          MR. NELSON:  -- however --

8          THE COURT:  That decision has been made.  We're

9  moving on.

10         Next item on the agenda.  I want you all to look

11 back at the schedules set in Docket Entry 122.  Bear in

12 mind those deadlines are still in place and we're going

13 to move forward toward those dates.

14         You better quit -- quit all the antics that are

15 going on in this case and focus on getting your discovery

16 done by March 10th.  So just be mindful --

17         MR. NELSON:  Your Honor --

18         THE COURT:  -- that's where we are headed.

19         MR. NELSON:  -- what are we going to do about

20 mediation?

21         The plaintiffs slash counter defendants absolutely

22 refuse to mediate.  So how am I to comply with the

23 scheduling order if they absolutely refuse to mediate, as

24 they have all along in this case?

25         THE COURT:  Well, the mediation deadline is not

1 until March 17th so to say they've refused to mediate

2 there's still plenty of time to do that.

3       But having said that, we're going to stop the

4 recording here in a minute and start a separate recording

5 so it won't be part of the record, and discuss

6 settlement.

7       So hold your thought on that, Mr. Nelson.

8          MR. BRAND:  Your Honor?

9       Your Honor, Craig Brand.

10         MR. NELSON:  Okay.

11         MR. BRAND:  Last point to bring up.  The -- the

12 second amended complaint has not yet been answered by

13 Mr. Nelson.

14         MR. NELSON:  And -- and I appreciate that,

15 Mr. Brand, but I believe I still have time to answer the

16 second amended complaint which will be answered here -- I

17 would have liked to have had it answered today, but most

18 likely it will be answered tomorrow.

19         THE COURT:  Okay.

20         MR. NELSON:  Mr. --

21         THE COURT:  Mr. Brand, anything else you want to

22 say about that?

23         MR. BRAND:  Nothing else, Your Honor.

24         THE COURT:  Okay.

25         MR. NELSON:  Your Honor, if I could, I believe

1  technically the answer is due on Friday.

2       I will have a separate dispositive motion

3  regarding that second amended complaint which I hope to

4  get into the Court by tomorrow.

5       But if it pleases the Court, given the plethora of

6  other documents I have to prepare for the Court, if I

7  could have until Monday at filing a preliminary answer to

8  the second amended complaint, I would appreciate that

9  additional time as I believe that it would allow me to

10 winnow the number of pages, as I realize there is no page

11 limitation to an answer.

12       THE COURT:  When you say "preliminary answer"

13 what -- what do you mean by that?

14       MR. NELSON:  Well, I will be filing a motion to

15 the Court to strike and dismiss certain aspects of the

16 complaint, the second amended complaint, and I would like

17 to try to have that done tomorrow, or maybe Friday at the

18 latest, which is when it is due.

19       And then a preliminary answer would be directed at

20 those other portions of the complaint that are not

21 already moved to be stricken from the record and/or for

22 more definitive statement.

23       THE COURT:  Is there any objection to allowing

24 Mr. Nelson until Monday to file his preliminary answer?

25       MR. KELLOGG:  No, Your Honor.

1          MR. BRAND:  Your Honor, Craig Brand.

2          Yeah, I was going to say I never have problems

3    giving opposing counsel or parties some professional

4    courtesy but you know if this is just another attempt at

5    delay by filing further motions that Judge Broomes has

6    been all over that second amended complaint and ruled on

7    it, you know, I don't -- I don't know what to say other

8    than, you know, the case has to get an issue.

9          THE COURT:  Well, I don't -- I don't think a few

10   more days are going to matter so I'll allow you until

11   Monday for your answer.

12          But you will file by Friday whatever motion you're

13   talking about in response to the second amended

14   complaint.

15          Understood?

16          MR. NELSON:  Yes, Your Honor.

17          THE COURT:  And it is --

18          MR. NELSON:  By Friday.

19          THE COURT:  And that motion is subject to the

20   page limits.

21          MR. NELSON:  Fifteen pages, I understand, Your

22   Honor.

23          THE COURT:  And that's a maximum.  It can be

24   less than that, remember.

25          MR. NELSON:  It can be less than the 15 pages.

1  Got it.

2        THE COURT:  Okay.  All right.  We're going to

3  move to a discussion about settlement or ADR, so I guess

4  we need to note in the record to cut it off here for

5  what's going to be the recording that will be preserved

6  in the record.

7        This following discussion is confidential

8  settlement discussions.  So you guys for the recording --

9        MR. NELSON:  Your Honor, I'm --

10       (End of proceedings.)

11       *********************************************

12                C E R T I F I C A T E

13

14       I, Jana L. McKinney, certified shorthand reporter,

15  certify that the foregoing is a correct transcript from

16  the official electronic sound recording of the

17  proceedings in the above-entitled matter.

18       Dated this 1st day of February, 2023.

19

20

21                s/ Jana L. McKinney_____

22                Jana L. McKinney
                   United States Court Reporter
23

24

25

1                          I  N  D  E  X
                                                        PAGE
2

3   REPORTER'S CERTIFICATE                               76

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25