## UNITED STATES DISTRICT COURT - DISTRICT OF KANSAS

| United Capital Management of Kansas, Inc. and CHAD M. KOEHN<br><br>          Plaintiffs,<br>     v.<br>Michael Nelson<br><br>         Defendant ;    PRO-Se. | **DOCKET NO.:**   **5:22-CV-04008-JWB-GEB**<br>**CIVIL ACTION**<br><br>**EXHIBIT A**<br>**Motion for Protective Order from Abusive**<br>**Discovery Requests of Plaintiffs**<br>**& Motion to Compel Production**<br><br>**[Jury Trial Demanded]** |
| --- | --- |

# EXHIBIT

# "B"

# To Follow . . .

**Motion for Protective Order from Abusive Discovery Requests of Plaintiffs**

**& Motion to Compel Production**

KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, Kansas 67402-2567
T:      (785) 825-4674
F:      (785) 825-5936

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHAD M. KOEHN, ET AL. ,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **vs.** | ) | **Case No. 22-CV-04008-JWB-GEB** |
| | ) | |
| **MICHAEL NELSON,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## PLAINTIFF/COUNTER-DEFENDANTS' SECOND REQUESTS FOR ADMISSIONS TO DEFENDANT/COUNTER-PLAINTIFF, MICHAEL NELSON

Pursuant to Rule 36, Federal Rules of Civil Procedure, Plaintiffs/Counter-Defendants, Chad M. Koehn and United Capital Management of Kansas, Inc., by and through their undersigned counsel, herein propound the following Requests for Admissions to the Defendant/Counter-Plaintiff Michael Nelson, the Responding Party ("Mr. Nelson" or "You").

*Time to Respond; Effect of Not Responding.* A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

*Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

*Objections.* The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

The Responding Party must serve his responses to the Requests for Admissions upon Chris Kellogg, Esq., Kennedy Berkley, 119 West Iron Avenue, 7th Floor, Post Office Box 2567, Salina Kansas, 67402-2567.

## DEFINITIONS

A. "You" or "Your" or "Michael Nelson" means Defendant, MICHAEL NELSON.

B. "Chad M. Koehn" means Plaintiff, CHAD M. KOEHN.

C. "UCM" means Plaintiff, United Capital Management of Kansas, Inc. also known as UNITEDCAPITALMANAGEMENT OF KANSAS, INC., a Kansas corporation.

D. "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

## REQUESTS FOR ADMISSIONS TO MICHAEL NELSON

1. Admit that You have contacted prospective clients of UCM (directly or indeiretcly0 with the intent to interfere with their prospective business relationships with UCM.

2. Admit that You have contacted prospective clients of Chad M. Koehn (directly or indirectly) with the intent to interfere with their prospective business relationships with Chad M. Koehn.

3. Relating to **Mark Cole,** named in Plaintiffs' Second Amended Complaint, admit that You:

   a. Knew that **Mark Cole** was a client of Chad M. Koehn and UCM;

   b. Intentionally contacted **Mark Cole** by telephone.

   c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Mark Cole**;

   d. Either stated to directly by telephone to **Mark Cole** or left a voice mail message for **Mark Cole** stating:
      i. **Mark Cole**'s name is associated with young women;

      ii. Would like to talk to **Mark Cole** man-to-man;

      iii. **Mark Cole** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

2

    iv.   **Mark Cole** would be a named party on any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.   Had researched **Mark Cole'**s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.   There were security irregularities at UCM;

    vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

    x.   Chad M. Koehn was a pedophile;

    xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.   Chad M. Koehn was under criminal investigation;

    xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to cause damage Chad M. Kohn and/or UCM.

4.  Relating to **Connie Cole** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Connie Cole** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Connie Cole** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Connie Cole;**

  d.  Either stated to directly by telephone to **Connie Cole** or left a voice mail message for **Connie Cole** stating:

  i. **Connie Cole** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

  ii. **Connie Cole** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

  iii. You had researched **Connie Cole**'s on-line history, secretary of state filings and use of twitter and other social media applications;

  iv. There were security irregularities at UCM;

  v. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

  vi. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

  vii. Chad M. Koehn and/or UCM stole Your proprietary software;

  viii. Chad M. Koehn was a pedophile;

  ix. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

  x. Chad M. Koehn was under criminal investigation;

  xi. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

  xii. Chad M. Koehn had hired a team to kill Michael Nelson;

  xiii. Chad M. Koehn had hired a team to kill Michael Nelson's children;

  xiv. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

 e. Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.


5. Relating to **Tim Brush,** named in Plaintiffs' Second Amended Complaint, admit that You:

 a. Knew that **Tim Brush** was a client of Chad M. Koehn and UCM;
 b. Intentionally contacted **Tim Brush** by telephone.
 c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Tim Brush**;
 d. Either stated to directly by telephone to **Tim Brush** or left a voice mail message for **Tim Brush** stating:
  i. **Tim Brush**'s name is associated with young women;

    ii.    Would like to talk to **Tim Brush** man-to-man;

    iii.    **Tim Brush** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.    **Tim Brush** would be a named party on any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.    Had researched **Tim Brush's** on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.    There were security irregularities at UCM;

    vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

    x.    Chad M. Koehn was a pedophile;

    xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.    Chad M. Koehn was under criminal investigation;

    xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

   e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to cause damage Chad M. Kohn and/or UCM.

6.  Relating to **Richard Bieker**, named in Plaintiffs' Second Amended Complaint, admit that You:

   a.  Knew that **Richard Bieker** was a client of Chad M. Koehn and UCM;

   b.  Intentionally contacted **Richard Bieker** by telephone.

    c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Richard Bieker**;

    d.   Either stated to directly by telephone to **Richard Bieker** or left a voice mail message for **Richard Bieker** stating:

        i.   Richard Bieker's name is associated with young women;

        ii.   You would like to talk to **Richard Bieker** man-to-man;

        iii.   **Richard Bieker** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.   **Richard Bieker** would be a named party on any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.   You had researched **Richard Bieker's** on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.   There were security irregularities at UCM;

        vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

        x.   Chad M. Koehn was a pedophile;

        xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.   Chad M. Koehn was under criminal investigation;

        xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

7.   Relating to **Stan Byquist**, named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Stan Byquist** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Stan Byquist** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Stan Byquist**;

d.  Either stated to directly by telephone to **Stan Byquist** or left a voice mail message for **Stan Byquist** stating:

    i.  **Stan Byquist**'s name is associated with young women;

    ii.  You would like to talk to **Stan Byquist** man-to-man;

    iii.  **Stan Byquist** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.  **Stan Byquist** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.  You had researched **Stan Byquist**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.  There were security irregularities at UCM;

    vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

    x.  Chad M. Koehn was a pedophile;

    xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.  Chad M. Koehn was under criminal investigation;

    xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

     e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

8.   Relating to **Vince Bengston**, named in Plaintiffs' Second Amended Complaint, admit that You:

     a.   Knew that **Vince Bengston** was a client of Chad M. Koehn and UCM;

     b.   Intentionally contacted **Vince Bengston** by telephone.

     c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Vince Bengston**;

     d.   Either stated to directly by telephone to **Vince Bengston** or left a voice mail message for **Vince Bengston** stating:

        i.   **Vince Bengston**'s name is associated with young women;

        ii.   You would like to talk to **Vince Bengston** man-to-man;

        iii.   **Vince Bengston** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.   **Vince Bengston** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.   You had researched **Vince Bengston**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.   There were security irregularities at UCM;

        vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

        x.   Chad M. Koehn was a pedophile;

        xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.   Chad M. Koehn was under criminal investigation;

        xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

9. Relating to **Susan Deges** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Susan Deges** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Susan Deges** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Susan Deges;**

d.  Either stated to directly by telephone to **Susan Deges** or left a voice mail message for **Susan Deges** stating:

    i.    **Susan Deges** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii.    **Susan Deges** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Susan Deges**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

    v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.    Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.    Chad M. Koehn was under criminal investigation;

xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

10. Relating to **Reed Koehn**, named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Reed Koehn** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Reed Koehn** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Reed Koehn**;

d.  Either stated to directly by telephone to **Reed Koehn** or left a voice mail message for **Reed Koehn** stating:

i.    **Reed Koehn**'s name is associated with young women;

ii.   You would like to talk to **Reed Koehn** man-to-man;

iii.  **Reed Koehn** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.   **Reed Koehn** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.    You had researched **Reed Koehn**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.   There were security irregularities at UCM;

vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.   Chad M. Koehn was under criminal investigation;

xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

11. Relating to **Mark Lofing**, named in Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Mark Lofing** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Mark Lofing** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Mark Lofing**;

d.  Either stated to directly by telephone to **Mark Lofing** or left a voice mail message for **Mark Lofing** stating:

i.     **Mark Lofing**'s name is associated with young women;

ii.    You would like to talk to **Mark Lofing** man-to-man;

iii.   **Mark Lofing** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.    **Mark Lofing** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.     You had researched **Mark Lofing**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.    There were security irregularities at UCM;

vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

     ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

     x.    Chad M. Koehn was a pedophile;

     xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     xii.    Chad M. Koehn was under criminal investigation;

     xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

     xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

12. Relating to **Kelly Leon**, named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Kelly Leon** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Kelly Leon** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Kelly Leon**;

d.   Either stated to directly by telephone to **Kelly Leon** or left a voice mail message for **Kelly Leon** stating:

     i.    **Kelly Leon**'s name is associated with young women;

     ii.    You would like to talk to **Kelly Leon** man-to-man;

     iii.    **Kelly Leon** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     iv.    **Kelly Leon** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     v.    You had researched **Kelly Leon**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     vi.    There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

13. Relating to **Rebecca Leon** named in Exhibit "A" attached to Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Rebecca Leon** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Rebecca Leon** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Rebecca Leon;**

d.    Either stated to directly by telephone to **Rebecca Leon** or left a voice mail message for **Rebecca Leon** stating:

i.    **Rebecca Leon** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.    **Rebecca Leon** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.    You had researched **Rebecca Leon**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.     There were security irregularities at UCM;

    v.     There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.  Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.     Chad M. Koehn was under criminal investigation;

    xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

14. Relating to **Jason Bach**, named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Jason Bach** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Jason Bach** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jason Bach**;

  d.  Either stated to directly by telephone to **Jason Bach** or left a voice mail message for **Jason Bach** stating:

    i.     **Jason Bach**'s name is associated with young women;

    ii.    You would like to talk to **Jason Bach** man-to-man;

    iii.   **Jason Bach** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.   **Jason Bach** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.   You had researched **Jason Bach**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.   There were security irregularities at UCM;

    vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

    x.   Chad M. Koehn was a pedophile;

    xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.   Chad M. Koehn was under criminal investigation;

    xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

15. Relating to **LaDonna Busch** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **LaDonna Busch** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **LaDonna Busch** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **LaDonna Busch;**

  d.  Either stated to directly by telephone to **LaDonna Busch** or left a voice mail message for **LaDonna Busch** stating:

   i. **LaDonna Busch** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

   ii. **LaDonna Busch** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

   iii. You had researched **LaDonna Busch**'s on-line history, secretary of state filings and use of twitter and other social media applications;

   iv. There were security irregularities at UCM;

   v. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

   vi. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

   vii. Chad M. Koehn and/or UCM stole Your proprietary software;

   viii. Chad M. Koehn was a pedophile;

   ix. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

   x. Chad M. Koehn was under criminal investigation;

   xi. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

   xii. Chad M. Koehn had hired a team to kill Michael Nelson;

   xiii. Chad M. Koehn had hired a team to kill Michael Nelson's children;

   xiv. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

 e. Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

16. Relating to **Doug Loewen** named in Plaintiffs' Second Amended Complaint, admit that You:

 a. Knew that **Doug Loewen** was a client of Chad M. Koehn and UCM;

 b. Intentionally contacted **Doug Loewen** by telephone.

 c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Doug Loewen**;

    d.  Either stated to directly by telephone to **Doug Loewen** or left a voice mail message for **Doug Loewen** stating:

      i.  **Doug Loewen**'s name is associated with young women;

      ii.  You would like to talk to **Doug Loewen** man-to-man;

      iii.  **Doug Loewen** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.  **Doug Loewen** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.  You had researched **Doug Loewen**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.  There were security irregularities at UCM;

      vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

      x.  Chad M. Koehn was a pedophile;

      xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      xii.  Chad M. Koehn was under criminal investigation;

      xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

17. Relating to **Sharon Loewen** named in Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Sharon Loewen** was a client of Chad M. Koehn and UCM;

17

b.  Intentionally contacted **Sharon Loewen** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Sharon Loewen;**

d.  Either stated to directly by telephone to **Sharon Loewen** or left a voice mail message for **Sharon Loewen** stating:

     i.  **Sharon Loewen** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     ii.  **Sharon Loewen** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     iii.  You had researched **Sharon Loewen**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     iv.  There were security irregularities at UCM;

     v.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

     vi.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

     vii.  Chad M. Koehn and/or UCM stole Your proprietary software;

     viii.  Chad M. Koehn was a pedophile;

     ix.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     x.  Chad M. Koehn was under criminal investigation;

     xi.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xii.  Chad M. Koehn had hired a team to kill Michael Nelson;

     xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

18. Relating to **David Huard** named in Plaintiffs' Second Amended Complaint, admit that
You:

    a.  Knew that **David Huard** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **David Huard** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business
from **David Huard**;

    d.  Either stated to directly by telephone to **David Huard** or left a voice mail message
for **David Huard** stating:
        i.  **David Huard**'s name is associated with young women;

        ii.  You would like to talk to **David Huard** man-to-man;

        iii.  **David Huard** figured prominently in the ongoing investigations of Chad
M. Koehn and/or UCM;

        iv.  **David Huard** would be a named party in any pending SEC and/or criminal
actions against Chad M. Koehn and/or UCM;

        v.  You had researched **David Huard**'s on-line history, secretary of state
filings and use of twitter and other social media applications;

        vi.  There were security irregularities at UCM;

        vii.  There was a whistleblower at UCM working with the government, implying
that UCM is engaging in illegal activity;

        viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to
the United States of America;

        ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

        x.  Chad M. Koehn was a pedophile;

        xi.  The FBI and other law enforcement agencies were investigation Chad M.
Koehn and UCM for criminal actions;

        xii.  Chad M. Koehn was under criminal investigation;

        xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the
United States;
        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xvi.     Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

19. Relating to **Norma Griffin** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Norma Griffin** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Norma Griffin** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Norma Griffin;**

    d.    Either stated to directly by telephone to **Norma Griffin** or left a voice mail message for **Norma Griffin** stating:

        i.     **Norma Griffin** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        ii.    **Norma Griffin** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        iii.    You had researched **Norma Griffin**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        iv.    There were security irregularities at UCM;

        v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

        viii.    Chad M. Koehn was a pedophile;

        ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        x.    Chad M. Koehn was under criminal investigation;

        xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

20. Relating to **Dan Walter** named in Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Dan Walter** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Dan Walter** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Dan Walter**;

d.    Either stated to directly by telephone to **Dan Walter** or left a voice mail message for **Dan Walter** stating:

    i.    **Dan Walter**'s name is associated with young women;

    ii.    You would like to talk to **Dan Walter** man-to-man;

    iii.    **Dan Walter** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.    **Dan Walter** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.    You had researched **Dan Walter**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.    There were security irregularities at UCM;

    vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

    x.    Chad M. Koehn was a pedophile;

    xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.    Chad M. Koehn was under criminal investigation;

xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

21. Relating to **Craig Piercy** named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Craig Piercy** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Craig Piercy** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Craig Piercy**;

d.   Either stated to directly by telephone to **Craig Piercy** or left a voice mail message for **Craig Piercy** stating:

   i.   **Craig Piercy**'s name is associated with young women;

   ii.   You would like to talk to **Craig Piercy** man-to-man;

   iii.   **Craig Piercy** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

   iv.   **Craig Piercy** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

   v.   You had researched **Craig Piercy**'s on-line history, secretary of state filings and use of twitter and other social media applications;

   vi.   There were security irregularities at UCM;

   vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

   viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

   ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

   x.   Chad M. Koehn was a pedophile;

      xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      xii.    Chad M. Koehn was under criminal investigation;

      xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

22. Relating to **Melissa Piercy** named in Exhibit "A" attached to Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Melissa Piercy** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Melissa Piercy** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Melissa Piercy;**

    d.    Either stated to directly by telephone to **Melissa Piercy** or left a voice mail message for **Melissa Piercy** stating:

      i.    **Melissa Piercy** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      ii.    **Melissa Piercy** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      iii.    You had researched **Melissa Piercy**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      iv.    There were security irregularities at UCM;

      v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

      viii.    Chad M. Koehn was a pedophile;

      ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      x.    Chad M. Koehn was under criminal investigation;

      xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

23. Relating to **Ben Suing** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Ben Suing** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Ben Suing** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Ben Suing**;

  d.  Either stated to directly by telephone to **Ben Suing** or left a voice mail message for **Ben Suing** stating:

      i.    **Ben Suing**'s name is associated with young women;

      ii.    You would like to talk to **Ben Suing** man-to-man;

      iii.    **Ben Suing** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Ben Suing** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.    You had researched **Ben Suing**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.    There were security irregularities at UCM;

      vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

x.  Chad M. Koehn was a pedophile;

xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.  Chad M. Koehn was under criminal investigation;

xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

24. Relating to **Brad Harding** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Brad Harding** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Brad Harding** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Brad Harding**;

d.  Either stated to directly by telephone to **Brad Harding** or left a voice mail message for **Brad Harding** stating:

i.  **Brad Harding**'s name is associated with young women;

ii.  You would like to talk to **Brad Harding** man-to-man;

iii.  **Brad Harding** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.  **Brad Harding** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.  You had researched **Brad Harding**'s on-line history, secretary of state filings and use of twitter and other social media applications;

25

vi.    There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

25. Relating to **Christine Harding** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Christine Harding** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Christine Harding** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Christine Harding;**

d.  Either stated to directly by telephone to **Christine Harding** or left a voice mail message for **Christine Harding** stating:

i.    **Christine Harding** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.    **Christine Harding** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.   You had researched **Christine Harding**'s on-line history, secretary of state filings and use of twitter and other social media applications;

iv.   There were security irregularities at UCM;

v.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

vi.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

viii.   Chad M. Koehn was a pedophile;

ix.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

x.   Chad M. Koehn was under criminal investigation;

xi.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

26. Relating to **Bill Kern** named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Bill Kern** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Bill Kern** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Bill Kern**;

d.   Either stated to directly by telephone to **Bill Kern** or left a voice mail message for **Bill Kern** stating:

i.   **Bill Kern**'s name is associated with young women;

ii.   You would like to talk to **Bill Kern** man-to-man;

iii.   **Bill Kern** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.   **Bill Kern** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.   You had researched **Bill Kern**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.   There were security irregularities at UCM;

    vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

    x.   Chad M. Koehn was a pedophile;

    xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.   Chad M. Koehn was under criminal investigation;

    xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

27. Relating to **Adam McMillin** named in Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Adam McMillin** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Adam McMillin** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Adam McMillin**;

  d.  Either stated to directly by telephone to **Adam McMillin** or left a voice mail message for **Adam McMillin** stating:

    i.   **Adam McMillin**'s name is associated with young women;

    ii.    You would like to talk to **Adam McMillin** man-to-man;

    iii.    **Adam McMillin** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.    **Adam McMillin** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.    You had researched **Adam McMillin**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.    There were security irregularities at UCM;

    vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

    x.    Chad M. Koehn was a pedophile;

    xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.    Chad M. Koehn was under criminal investigation;

    xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

28. Relating to **Travis Scott** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.    Knew that **Travis Scott** was a client of Chad M. Koehn and UCM;

  b.    Intentionally contacted **Travis Scott** by telephone.

   c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Travis Scott**;

   d.  Either stated to directly by telephone to **Travis Scott** or left a voice mail message for **Travis Scott** stating:

      i.  **Travis Scott**'s name is associated with young women;

      ii.  You would like to talk to **Travis Scott** man-to-man;

      iii.  **Travis Scott** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.  **Travis Scott** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.  You had researched **Travis Scott**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.  There were security irregularities at UCM;

      vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

      x.  Chad M. Koehn was a pedophile;

      xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      xii.  Chad M. Koehn was under criminal investigation;

      xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

   e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

29. Relating to **Trisha Scott** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Trisha Scott** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Trisha Scott** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Trisha Scott;**

    d.  Either stated to directly by telephone to **Trisha Scott** or left a voice mail message for **Trisha Scott** stating:

        i.  **Trisha Scott** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        ii.  **Trisha Scott** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        iii.  You had researched **Trisha Scott**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        iv.  There were security irregularities at UCM;

        v.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        vi.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        vii.  Chad M. Koehn and/or UCM stole Your proprietary software;

        viii.  Chad M. Koehn was a pedophile;

        ix.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        x.  Chad M. Koehn was under criminal investigation;

        xi.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xii.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

30. Relating to **Brian Keeler** named in  Plaintiffs' Second Amended Complaint, admit that You:

a. Knew that **Brian Keeler** was a client of Chad M. Koehn and UCM;

b. Intentionally contacted **Brian Keeler** by telephone.

c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Brian Keeler**;

d. Either stated to directly by telephone to **Brian Keeler** or left a voice mail message for **Brian Keeler** stating:
   i. **Brian Keeler**'s name is associated with young women;

   ii. You would like to talk to **Brian Keeler** man-to-man;

   iii. **Brian Keeler** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

   iv. **Brian Keeler** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

   v. You had researched **Brian Keeler**'s on-line history, secretary of state filings and use of twitter and other social media applications;

   vi. There were security irregularities at UCM;

   vii. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

   viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

   ix. Chad M. Koehn and/or UCM stole Your proprietary software;

   x. Chad M. Koehn was a pedophile;

   xi. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

   xii. Chad M. Koehn was under criminal investigation;

   xiii. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

31. Relating to **Sally Keeler** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.    Knew that **Sally Keeler** was a client of Chad M. Koehn and UCM;

  b.    Intentionally contacted **Sally Keeler** by telephone.

  c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Sally Keeler;**

  d.    Either stated to directly by telephone to **Sally Keeler** or left a voice mail message for **Sally Keeler** stating:

      i.    **Sally Keeler** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      ii.    **Sally Keeler** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      iii.    You had researched **Sally Keeler**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      iv.    There were security irregularities at UCM;

      v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

      viii.    Chad M. Koehn was a pedophile;

      ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      x.    Chad M. Koehn was under criminal investigation;

    xi.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

32. Relating to **Jerry Deihl** named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Jerry Deihl** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Jerry Deihl** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jerry Deihl**;

d.   Either stated to directly by telephone to **Jerry Deihl** or left a voice mail message for **Jerry Deihl** stating:

    i.   **Jerry Deihl**'s name is associated with young women;

    ii.   You would like to talk to **Jerry Deihl** man-to-man;

    iii.   **Jerry Deihl** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.   **Jerry Deihl** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.   You had researched **Jerry Deihl**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.   There were security irregularities at UCM;

    vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

    x.   Chad M. Koehn was a pedophile;

      xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      xii.    Chad M. Koehn was under criminal investigation;

      xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

33. Relating to **Dan Rapp** named in Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Dan Rapp** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Dan Rapp** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Dan Rapp**;

    d.    Either stated to directly by telephone to **Dan Rapp** or left a voice mail message for **Dan Rapp** stating:

      i.    **Dan Rapp**'s name is associated with young women;

      ii.    You would like to talk to **Dan Rapp** man-to-man;

      iii.    **Dan Rapp** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Dan Rapp** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.    You had researched **Dan Rapp**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.    There were security irregularities at UCM;

      vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

    x.    Chad M. Koehn was a pedophile;

    xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.    Chad M. Koehn was under criminal investigation;

    xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

34.  Relating to **Shannon Bengston** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Shannon Bengston** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Shannon Bengston** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Shannon Bengston;**

d.    Either stated to directly by telephone to **Shannon Bengston** or left a voice mail message for **Shannon Bengston** stating:

    i.    **Shannon Bengston** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii.    **Shannon Bengston** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Shannon Bengston**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

    v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

viii.  Chad M. Koehn was a pedophile;

ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

x.     Chad M. Koehn was under criminal investigation;

xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

35. Relating to **Richard Risewick** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Richard Risewick** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Richard Risewick** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Richard Risewick**;

d.  Either stated to directly by telephone to **Richard Risewick** or left a voice mail message for **Richard Risewick** stating:

i.     **Richard Risewick**'s name is associated with young women;

ii.    You would like to talk to **Richard Risewick** man-to-man;

iii.   **Richard Risewick** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.    **Richard Risewick** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.     You had researched **Richard Risewick**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.     There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.     Chad M. Koehn and/or UCM stole Your proprietary software;

x.      Chad M. Koehn was a pedophile;

xi.     The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.     Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

36. Relating to **Ron Stratman** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Ron Stratman** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Ron Stratman** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Ron Stratman**;

d.  Either stated to directly by telephone to **Ron Stratman** or left a voice mail message for **Ron Stratman** stating:

i.      **Ron Stratman**'s name is associated with young women;

ii.     You would like to talk to **Ron Stratman** man-to-man;

iii.    **Ron Stratman** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv. **Ron Stratman** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v. You had researched **Ron Stratman**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi. There were security irregularities at UCM;

vii. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix. Chad M. Koehn and/or UCM stole Your proprietary software;

x. Chad M. Koehn was a pedophile;

xi. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii. Chad M. Koehn was under criminal investigation;

xiii. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv. Chad M. Koehn had hired a team to kill Michael Nelson;

xv. Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

37. Relating to **Mike Fechter** named in Plaintiffs' Second Amended Complaint, admit that You:

a. Knew that **Mike Fechter** was a client of Chad M. Koehn and UCM;

b. Intentionally contacted **Mike Fechter** by telephone.

c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Mike Fechter**;

d. Either stated to directly by telephone to **Mike Fechter** or left a voice mail message for **Mike Fechter** stating:
   i. **Mike Fechter**'s name is associated with young women;

ii.    You would like to talk to **Mike Fechter** man-to-man;

iii.    **Mike Fechter** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.    **Mike Fechter** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.    You had researched **Mike Fechter**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.    There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

38. Relating to **Marion Dome** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Marion Dome** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Marion Dome** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Marion Dome**;

    d. Either stated to directly by telephone to **Marion Dome** or left a voice mail message for **Marion Dome** stating:

        i. **Marion Dome**'s name is associated with young women;

        ii. You would like to talk to **Marion Dome** man-to-man;

        iii. **Marion Dome** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv. **Marion Dome** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v. You had researched **Marion Dome**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi. There were security irregularities at UCM;

        vii. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix. Chad M. Koehn and/or UCM stole Your proprietary software;

        x. Chad M. Koehn was a pedophile;

        xi. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii. Chad M. Koehn was under criminal investigation;

        xiii. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv. Chad M. Koehn had hired a team to kill Michael Nelson;

        xv. Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xvi. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e. Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

39. Relating to **April Dome** named in Plaintiffs' Second Amended Complaint, admit that You:

    a. Knew that **April Dome** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **April Dome** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **April Dome;**

d.  Either stated to directly by telephone to **April Dome** or left a voice mail message for **April Dome** stating:

    i.  **April Dome** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii.  **April Dome** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.  You had researched **April Dome**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.  There were security irregularities at UCM;

    v.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.  Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.  Chad M. Koehn was a pedophile;

    ix.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.  Chad M. Koehn was under criminal investigation;

    xi.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.  Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

40. Relating to **Glenn Brands** named in  Plaintiffs' Second Amended Complaint, admit that
You:

    a.  Knew that **Glenn Brands** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Glenn Brands** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business
from **Glenn Brands**;

    d.  Either stated to directly by telephone to **Glenn Brands** or left a voice mail message
for **Glenn Brands** stating:

        i.  **Glenn Brands**'s name is associated with young women;

        ii.  You would like to talk to **Glenn Brands** man-to-man;

        iii.  **Glenn Brands** figured prominently in the ongoing investigations of Chad
M. Koehn and/or UCM;

        iv.  **Glenn Brands** would be a named party in any pending SEC and/or criminal
actions against Chad M. Koehn and/or UCM;

        v.  You had researched **Glenn Brands**'s on-line history, secretary of state
filings and use of twitter and other social media applications;

        vi.  There were security irregularities at UCM;

        vii.  There was a whistleblower at UCM working with the government, implying
that UCM is engaging in illegal activity;

        viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to
the United States of America;

        ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

        x.  Chad M. Koehn was a pedophile;

        xi.  The FBI and other law enforcement agencies were investigation Chad M.
Koehn and UCM for criminal actions;

        xii.  Chad M. Koehn was under criminal investigation;

        xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the
United States;

        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

       xvi.      Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

41. Relating to **Eric Everhart** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Eric Everhart** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Eric Everhart** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Eric Everhart**;

    d.    Either stated to directly by telephone to **Eric Everhart** or left a voice mail message for **Eric Everhart** stating:

       i.      **Eric Everhart**'s name is associated with young women;

       ii.      You would like to talk to **Eric Everhart** man-to-man;

       iii.      **Eric Everhart** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

       iv.      **Eric Everhart** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

       v.      You had researched **Eric Everhart**'s on-line history, secretary of state filings and use of twitter and other social media applications;

       vi.      There were security irregularities at UCM;

       vii.      There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

       viii.      Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

       ix.      Chad M. Koehn and/or UCM stole Your proprietary software;

       x.      Chad M. Koehn was a pedophile;

       xi.      The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

       xii.      Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

42.    Relating to **Valerie Everhart** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Valerie Everhart** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Valerie Everhart** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Valerie Everhart;**

d.    Either stated to directly by telephone to **Valerie Everhart** or left a voice mail message for **Valerie Everhart** stating:

i.    **Valerie Everhart** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.    **Valerie Everhart** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.    You had researched **Valerie Everhart**'s on-line history, secretary of state filings and use of twitter and other social media applications;

iv.    There were security irregularities at UCM;

v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

viii.    Chad M. Koehn was a pedophile;

ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

x.      Chad M. Koehn was under criminal investigation;

xi.     Lawsuits were being prepared against Chad M. Koehn throughout the
        United States;

xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent
    to damage Chad M. Kohn and/or UCM.

43. Relating to **Doug Rempp** named in  Plaintiffs' Second Amended Complaint, admit that
    You:

    a.  Knew that **Doug Rempp** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Doug Rempp** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business
        from **Doug Rempp**;

    d.  Either stated to directly by telephone to **Doug Rempp** or left a voice mail message
        for **Doug Rempp** stating:
        i.      **Doug Rempp**'s name is associated with young women;

        ii.     You would like to talk to **Doug Rempp** man-to-man;

        iii.    **Doug Rempp** figured prominently in the ongoing investigations of Chad
                M. Koehn and/or UCM;

        iv.     **Doug Rempp** would be a named party in any pending SEC and/or criminal
                actions against Chad M. Koehn and/or UCM;

        v.      You had researched **Doug Rempp**'s on-line history, secretary of state
                filings and use of twitter and other social media applications;

        vi.     There were security irregularities at UCM;

        vii.    There was a whistleblower at UCM working with the government, implying
                that UCM is engaging in illegal activity;

        viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to
                the United States of America;

        ix.     Chad M. Koehn and/or UCM stole Your proprietary software;

     x.    Chad M. Koehn was a pedophile;

     xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     xii.    Chad M. Koehn was under criminal investigation;

     xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

     xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

44. Relating to **Michael Braxmeyer** named in Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Michael Braxmeyer** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Michael Braxmeyer** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Michael Braxmeyer**;

  d.  Either stated to directly by telephone to **Michael Braxmeyer** or left a voice mail message for **Michael Braxmeyer** stating:

     i.    **Michael Braxmeyer**'s name is associated with young women;

     ii.    You would like to talk to **Michael Braxmeyer** man-to-man;

     iii.    **Michael Braxmeyer** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     iv.    **Michael Braxmeyer** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     v.    You had researched **Michael Braxmeyer**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     vi.    There were security irregularities at UCM;

     vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

    x.    Chad M. Koehn was a pedophile;

    xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.    Chad M. Koehn was under criminal investigation;

    xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

45. Relating to **Roselene Braxmeyer** named in Exhibit "A" attached to Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Roselene Braxmeyer** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Roselene Braxmeyer** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Roselene Braxmeyer;**

    d.    Either stated to directly by telephone to **Roselene Braxmeyer** or left a voice mail message for **Roselene Braxmeyer** stating:

    i.    **Roselene Braxmeyer** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii.    **Roselene Braxmeyer** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Roselene Braxmeyer**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

    v.      There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.     Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.   Chad M. Koehn was a pedophile;

    ix.     The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.      Chad M. Koehn was under criminal investigation;

    xi.     Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

46. Relating to **Jerry Short** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Jerry Short** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Jerry Short** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jerry Short**;

d.    Either stated to directly by telephone to **Jerry Short** or left a voice mail message for **Jerry Short** stating:

    i.      **Jerry Short**'s name is associated with young women;

    ii.     You would like to talk to **Jerry Short** man-to-man;

    iii.    **Jerry Short** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.    **Jerry Short** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     v.      You had researched **Jerry Short**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     vi.      There were security irregularities at UCM;

     vii.      There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

     viii.      Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

     ix.      Chad M. Koehn and/or UCM stole Your proprietary software;

     x.      Chad M. Koehn was a pedophile;

     xi.      The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     xii.      Chad M. Koehn was under criminal investigation;

     xiii.      Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xiv.      Chad M. Koehn had hired a team to kill Michael Nelson;

     xv.      Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xvi.      Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

47. Relating to **Wayne Cook** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Wayne Cook** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Wayne Cook** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Wayne Cook**;

    d.    Either stated to directly by telephone to **Wayne Cook** or left a voice mail message for **Wayne Cook** stating:

        i.      **Wayne Cook**'s name is associated with young women;

        ii.      You would like to talk to **Wayne Cook** man-to-man;

iii. **Wayne Cook** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv. **Wayne Cook** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v. You had researched **Wayne Cook**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi. There were security irregularities at UCM;

vii. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix. Chad M. Koehn and/or UCM stole Your proprietary software;

x. Chad M. Koehn was a pedophile;

xi. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii. Chad M. Koehn was under criminal investigation;

xiii. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv. Chad M. Koehn had hired a team to kill Michael Nelson;

xv. Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

48. Relating to **Randy Phillips** named in  Plaintiffs' Second Amended Complaint, admit that You:

a. Knew that **Randy Phillips** was a client of Chad M. Koehn and UCM;

b. Intentionally contacted **Randy Phillips** by telephone.

c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Randy Phillips**;

d. Either stated to directly by telephone to **Randy Phillips** or left a voice mail message for **Randy Phillips** stating:

    i. **Randy Phillips**'s name is associated with young women;

    ii. You would like to talk to **Randy Phillips** man-to-man;

    iii. **Randy Phillips** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv. **Randy Phillips** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v. You had researched **Randy Phillips**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi. There were security irregularities at UCM;

    vii. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix. Chad M. Koehn and/or UCM stole Your proprietary software;

    x. Chad M. Koehn was a pedophile;

    xi. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii. Chad M. Koehn was under criminal investigation;

    xiii. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xiv. Chad M. Koehn had hired a team to kill Michael Nelson;

    xv. Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

49. Relating to **Debbie Shirack** named in Plaintiffs' Second Amended Complaint, admit that You:

a. Knew that **Debbie Shirack** was a client of Chad M. Koehn and UCM;

b. Intentionally contacted **Debbie Shirack** by telephone.

c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Debbie Shirack;**

d. Either stated to directly by telephone to **Debbie Shirack** or left a voice mail message for **Debbie Shirack** stating:

    i. **Debbie Shirack** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii. **Debbie Shirack** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii. You had researched **Debbie Shirack**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv. There were security irregularities at UCM;

    v. There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii. Chad M. Koehn and/or UCM stole Your proprietary software;

    viii. Chad M. Koehn was a pedophile;

    ix. The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x. Chad M. Koehn was under criminal investigation;

    xi. Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii. Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii. Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv. Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

50. Relating to **Ronnie Stanley** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Ronnie Stanley** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Ronnie Stanley** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Ronnie Stanley**;

    d.  Either stated to directly by telephone to **Ronnie Stanley** or left a voice mail message for **Ronnie Stanley** stating:

        i.  **Ronnie Stanley**'s name is associated with young women;

        ii.  You would like to talk to **Ronnie Stanley** man-to-man;

        iii.  **Ronnie Stanley** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.  **Ronnie Stanley** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.  You had researched **Ronnie Stanley**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.  There were security irregularities at UCM;

        vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

        x.  Chad M. Koehn was a pedophile;

        xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.  Chad M. Koehn was under criminal investigation;

        xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

51. Relating to **Todd Roberg** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Todd Roberg** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Todd Roberg** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Todd Roberg**;

    d.    Either stated to directly by telephone to **Todd Roberg** or left a voice mail message for **Todd Roberg** stating:

        i.    **Todd Roberg**'s name is associated with young women;

        ii.    You would like to talk to **Todd Roberg** man-to-man;

        iii.    **Todd Roberg** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.    **Todd Roberg** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.    You had researched **Todd Roberg**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.    There were security irregularities at UCM;

        vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

        x.    Chad M. Koehn was a pedophile;

        xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.    Chad M. Koehn was under criminal investigation;

      xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

   e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

52. Relating to **Jurad Busch** named in  Plaintiffs' Second Amended Complaint, admit that You:

   a.   Knew that **Jurad Busch** was a client of Chad M. Koehn and UCM;

   b.   Intentionally contacted **Jurad Busch** by telephone.

   c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jurad Busch**;

   d.   Either stated to directly by telephone to **Jurad Busch** or left a voice mail message for **Jurad Busch** stating:

      i.    **Jurad Busch**'s name is associated with young women;

      ii.    You would like to talk to **Jurad Busch** man-to-man;

      iii.    **Jurad Busch** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Jurad Busch** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.    You had researched **Jurad Busch**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.    There were security irregularities at UCM;

      vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

      x.    Chad M. Koehn was a pedophile;

      xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      xii.    Chad M. Koehn was under criminal investigation;

      xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

53. Relating to **Jim Matney** named in Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Jim Matney** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Jim Matney** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jim Matney**;

d.    Either stated to directly by telephone to **Jim Matney** or left a voice mail message for **Jim Matney** stating:

      i.    **Jim Matney**'s name is associated with young women;

      ii.    You would like to talk to **Jim Matney** man-to-man;

      iii.    **Jim Matney** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Jim Matney** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.    You had researched **Jim Matney**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.    There were security irregularities at UCM;

      vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

54. Relating to **Teresea Matney** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Teresea Matney** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Teresea Matney** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Teresea Matney;**

d.    Either stated to directly by telephone to **Teresea Matney** or left a voice mail message for **Teresea Matney** stating:

i.    **Teresea Matney** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.    **Teresea Matney** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.    You had researched **Teresea Matney**'s on-line history, secretary of state filings and use of twitter and other social media applications;

iv.    There were security irregularities at UCM;

v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

vi.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

vii.  Chad M. Koehn and/or UCM stole Your proprietary software;

viii.  Chad M. Koehn was a pedophile;

ix.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

x.  Chad M. Koehn was under criminal investigation;

xi.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xii.  Chad M. Koehn had hired a team to kill Michael Nelson;

xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

55. Relating to **Carla Kessler** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Carla Kessler** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Carla Kessler** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Carla Kessler;**

d.  Either stated to directly by telephone to **Carla Kessler** or left a voice mail message for **Carla Kessler** stating:

i.  **Carla Kessler** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.  **Carla Kessler** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.  You had researched **Carla Kessler**'s on-line history, secretary of state filings and use of twitter and other social media applications;

iv.  There were security irregularities at UCM;

      v.     There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

      viii.  Chad M. Koehn was a pedophile;

      ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      x.     Chad M. Koehn was under criminal investigation;

      xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

      xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

   e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

56. Relating to **Joe Newman** named in  Plaintiffs' Second Amended Complaint, admit that You:

   a.   Knew that **Joe Newman** was a client of Chad M. Koehn and UCM;

   b.   Intentionally contacted **Joe Newman** by telephone.

   c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Joe Newman**;

   d.   Either stated to directly by telephone to **Joe Newman** or left a voice mail message for **Joe Newman** stating:

      i.     **Joe Newman**'s name is associated with young women;

      ii.    You would like to talk to **Joe Newman** man-to-man;

      iii.   **Joe Newman** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Joe Newman** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

> v.  You had researched **Joe Newman**'s on-line history, secretary of state filings and use of twitter and other social media applications;
>
> vi.  There were security irregularities at UCM;
>
> vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;
>
> viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;
>
> ix.  Chad M. Koehn and/or UCM stole Your proprietary software;
>
> x.  Chad M. Koehn was a pedophile;
>
> xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;
>
> xii.  Chad M. Koehn was under criminal investigation;
>
> xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;
>
> xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;
>
> xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;
>
> xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

57. Relating to **Barry Madden** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Barry Madden** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Barry Madden** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Barry Madden**;

d.  Either stated to directly by telephone to **Barry Madden** or left a voice mail message for **Barry Madden** stating:
> i.  **Barry Madden**'s name is associated with young women;
>
> ii.  You would like to talk to **Barry Madden** man-to-man;

iii.   **Barry Madden** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.   **Barry Madden** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.   You had researched **Barry Madden**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.   There were security irregularities at UCM;

vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

x.   Chad M. Koehn was a pedophile;

xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.   Chad M. Koehn was under criminal investigation;

xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

58. Relating to **Tim Emick** named in Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Tim Emick** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Tim Emick** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Tim Emick**;

d.  Either stated to directly by telephone to **Tim Emick** or left a voice mail message for **Tim Emick** stating:

i.     **Tim Emick**'s name is associated with young women;

ii.    You would like to talk to **Tim Emick** man-to-man;

iii.    **Tim Emick** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.    **Tim Emick** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.    You had researched **Tim Emick**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.    There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

59. Relating to **Peter Hake** named in Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Peter Hake** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Peter Hake** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Peter Hake**;

d.  Either stated to directly by telephone to **Peter Hake** or left a voice mail message for **Peter Hake** stating:
    i.  **Peter Hake**'s name is associated with young women;

    ii.  You would like to talk to **Peter Hake** man-to-man;

    iii.  **Peter Hake** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.  **Peter Hake** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.  You had researched **Peter Hake**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.  There were security irregularities at UCM;

    vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

    x.  Chad M. Koehn was a pedophile;

    xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.  Chad M. Koehn was under criminal investigation;

    xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;
    xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

    xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

60. Relating to **Bob Ott** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Bob Ott** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Bob Ott** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Bob Ott**;

    d.  Either stated to directly by telephone to **Bob Ott** or left a voice mail message for **Bob Ott** stating:

        i.  **Bob Ott**'s name is associated with young women;

        ii.  You would like to talk to **Bob Ott** man-to-man;

        iii.  **Bob Ott** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.  **Bob Ott** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.  You had researched **Bob Ott**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.  There were security irregularities at UCM;

        vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

        x.  Chad M. Koehn was a pedophile;

        xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.  Chad M. Koehn was under criminal investigation;

        xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xvi.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

61. Relating to **Charles Weaver** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Charles Weaver** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Charles Weaver** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Charles Weaver**;

d.  Either stated to directly by telephone to **Charles Weaver** or left a voice mail message for **Charles Weaver** stating:

    i.  **Charles Weaver**'s name is associated with young women;

    ii.  You would like to talk to **Charles Weaver** man-to-man;

    iii.  **Charles Weaver** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.  **Charles Weaver** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.  You had researched **Charles Weaver**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    vi.  There were security irregularities at UCM;

    vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    ix.  Chad M. Koehn and/or UCM stole Your proprietary software;

    x.  Chad M. Koehn was a pedophile;

    xi.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    xii.  Chad M. Koehn was under criminal investigation;

    xiii.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

66

      xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

      xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

62. Relating to **Marsha Weaver** named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Marsha Weaver** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Marsha Weaver** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Marsha Weaver;**

d.   Either stated to directly by telephone to **Marsha Weaver** or left a voice mail message for **Marsha Weaver** stating:

      i.   **Marsha Weaver** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      ii.   **Marsha Weaver** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      iii.   You had researched **Marsha Weaver**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      iv.   There were security irregularities at UCM;

      v.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      vi.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

      viii.   Chad M. Koehn was a pedophile;

      ix.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      x.   Chad M. Koehn was under criminal investigation;

      xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

63. Relating to **Charlotte M. Regan** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Charlotte M. Regan** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Charlotte M. Regan** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Charlotte M. Regan;**

d.   Either stated to directly by telephone to **Charlotte M. Regan** or left a voice mail message for **Charlotte M. Regan** stating:

      i.    **Charlotte M. Regan** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     ii.    **Charlotte M. Regan** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Charlotte M. Regan**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

     v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

   viii.    Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

       x.     Chad M. Koehn was under criminal investigation;

       xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

     xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xiv.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

   e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

64. Relating to **Deborah Shirack** named in  Plaintiffs' Second Amended Complaint, admit that You:

   a.   Knew that **Deborah Shirack** was a client of Chad M. Koehn and UCM;

   b.   Intentionally contacted **Deborah Shirack** by telephone.

   c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Deborah Shirack;**

   d.   Either stated to directly by telephone to **Deborah Shirack** or left a voice mail message for **Deborah Shirack** stating:

       i.     **Deborah Shirack** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

       ii.    **Deborah Shirack** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      iii.   You had researched **Deborah Shirack**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      iv.   There were security irregularities at UCM;

       v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      vi.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

     vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.   Chad M. Koehn was a pedophile;

     ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     x.    Chad M. Koehn was under criminal investigation;

     xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

     xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

65. Relating to **Curt Weninger** named in Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Curt Weninger** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Curt Weninger** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Curt Weninger**;

  d.  Either stated to directly by telephone to **Curt Weninger** or left a voice mail message for **Curt Weninger** stating:

     i.    **Curt Weninger**'s name is associated with young women;

     ii.    You would like to talk to **Curt Weninger** man-to-man;

     iii.    **Curt Weninger** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     iv.    **Curt Weninger** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     v.    You had researched **Curt Weninger**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     vi.    There were security irregularities at UCM;

     vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

     viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

     ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

     x.    Chad M. Koehn was a pedophile;

     xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     xii.    Chad M. Koehn was under criminal investigation;

     xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

     xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

66. Relating to **Lisa Weninger** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.    Knew that **Lisa Weninger** was a client of Chad M. Koehn and UCM;

    b.    Intentionally contacted **Lisa Weninger** by telephone.

    c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Lisa Weninger;**

    d.    Either stated to directly by telephone to **Lisa Weninger** or left a voice mail message for **Lisa Weninger** stating:

     i.    **Lisa Weninger** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     ii.    **Lisa Weninger** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     iii.    You had researched **Lisa Weninger**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     iv.    There were security irregularities at UCM;

     v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.    Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.    Chad M. Koehn was under criminal investigation;

    xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

67. Relating to **Charles Worden** named in Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Charles Worden** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Charles Worden** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Charles Worden**;

d.  Either stated to directly by telephone to **Charles Worden** or left a voice mail message for **Charles Worden** stating:

    i.    **Charles Worden**'s name is associated with young women;

    ii.    You would like to talk to **Charles Worden** man-to-man;

    iii.    **Charles Worden** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    iv.    **Charles Worden** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    v.    You had researched **Charles Worden**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.    There were security irregularities at UCM;

vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

x.    Chad M. Koehn was a pedophile;

xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.    Chad M. Koehn was under criminal investigation;

xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.    Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

68. Relating to **Sandra Worden** named in Plaintiffs' Second Amended Complaint, admit that You:

a.    Knew that **Sandra Worden** was a client of Chad M. Koehn and UCM;

b.    Intentionally contacted **Sandra Worden** by telephone.

c.    Knew that Chad M. Koehn and UCM expected future investment advisory business from **Sandra Worden;**

d.    Either stated to directly by telephone to **Sandra Worden** or left a voice mail message for **Sandra Worden** stating:

i.    **Sandra Worden** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.    **Sandra Worden** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Sandra Worden**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

    v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.    Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.    Chad M. Koehn was under criminal investigation;

    xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

69. Relating to **Jerry Mihm** named in  Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Jerry Mihm** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Jerry Mihm** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jerry Mihm**;

  d.  Either stated to directly by telephone to **Jerry Mihm** or left a voice mail message for **Jerry Mihm** stating:

    i.    **Jerry Mihm**'s name is associated with young women;

    ii.    You would like to talk to **Jerry Mihm** man-to-man;

iii.   **Jerry Mihm** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

iv.   **Jerry Mihm** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

v.   You had researched **Jerry Mihm**'s on-line history, secretary of state filings and use of twitter and other social media applications;

vi.   There were security irregularities at UCM;

vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

viii.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

x.   Chad M. Koehn was a pedophile;

xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

xii.   Chad M. Koehn was under criminal investigation;

xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

70. Relating to **John Horacek** named in Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **John Horacek** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **John Horacek** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **John Horacek**;

    d.  Either stated to directly by telephone to **John Horacek** or left a voice mail message for **John Horacek** stating:

        i.    **John Horacek**'s name is associated with young women;

        ii.    You would like to talk to **John Horacek** man-to-man;

        iii.    **John Horacek** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        iv.    **John Horacek** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        v.    You had researched **John Horacek**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        vi.    There were security irregularities at UCM;

        vii.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        viii.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

        x.    Chad M. Koehn was a pedophile;

        xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        xii.    Chad M. Koehn was under criminal investigation;

        xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

        xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

    e.  Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

71. Relating to **Joyce A. Barkman** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Joyce A. Barkman** was a client of Chad M. Koehn and UCM;

b. Intentionally contacted **Joyce A. Barkman** by telephone.

c. Knew that Chad M. Koehn and UCM expected future investment advisory business from **Joyce A. Barkman;**

d. Either stated to directly by telephone to **Joyce A. Barkman** or left a voice mail message for **Joyce A. Barkman** stating:

    i.    **Joyce A. Barkman** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

    ii.    **Joyce A. Barkman** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

    iii.    You had researched **Joyce A. Barkman**'s on-line history, secretary of state filings and use of twitter and other social media applications;

    iv.    There were security irregularities at UCM;

    v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

    vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.    Chad M. Koehn and/or UCM stole Your proprietary software;

    viii.    Chad M. Koehn was a pedophile;

    ix.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

    x.    Chad M. Koehn was under criminal investigation;

    xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

    xii.    Chad M. Koehn had hired a team to kill Michael Nelson;

    xiii.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

    xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e. Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

72. Relating to **Heather Jantz** named in Plaintiffs' Second Amended Complaint, admit that You:

    a.  Knew that **Heather Jantz** was a client of Chad M. Koehn and UCM;

    b.  Intentionally contacted **Heather Jantz** by telephone.

    c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Heather Jantz;**

    d.  Either stated to directly by telephone to **Heather Jantz** or left a voice mail message for **Heather Jantz** stating:

        i.  **Heather Jantz** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

        ii.  **Heather Jantz** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

        iii.  You had researched **Heather Jantz**'s on-line history, secretary of state filings and use of twitter and other social media applications;

        iv.  There were security irregularities at UCM;

        v.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

        vi.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

        vii.  Chad M. Koehn and/or UCM stole Your proprietary software;

        viii.  Chad M. Koehn was a pedophile;

        ix.  The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

        x.  Chad M. Koehn was under criminal investigation;

        xi.  Lawsuits were being prepared against Chad M. Koehn throughout the United States;

        xii.  Chad M. Koehn had hired a team to kill Michael Nelson;

        xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

        xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

73.   Relating to **Laura Nelson** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Laura Nelson** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Laura Nelson** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Laura Nelson;**

d.   Either stated to directly by telephone to **Laura Nelson** or left a voice mail message for **Laura Nelson** stating:

   i.   **Laura Nelson** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

   ii.   **Laura Nelson** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

   iii.   You had researched **Laura Nelson**'s on-line history, secretary of state filings and use of twitter and other social media applications;

   iv.   There were security irregularities at UCM;

   v.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

   vi.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

   vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

   viii.   Chad M. Koehn was a pedophile;

   ix.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

   x.   Chad M. Koehn was under criminal investigation;

   xi.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

   xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

   xiii.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

79

xiv.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

74. Relating to **Jim Fouts** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.  Knew that **Jim Fouts** was a client of Chad M. Koehn and UCM;

b.  Intentionally contacted **Jim Fouts** by telephone.

c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Jim Fouts**;

d.  Either stated to directly by telephone to **Jim Fouts** or left a voice mail message for **Jim Fouts** stating:

   i.    **Jim Fouts**'s name is associated with young women;

   ii.   You would like to talk to **Jim Fouts** man-to-man;

   iii.  **Jim Fouts** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

   iv.   **Jim Fouts** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

   v.    You had researched **Jim Fouts**'s on-line history, secretary of state filings and use of twitter and other social media applications;

   vi.   There were security irregularities at UCM;

   vii.  There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

   viii. Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

   ix.   Chad M. Koehn and/or UCM stole Your proprietary software;

   x.    Chad M. Koehn was a pedophile;

   xi.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

   xii.  Chad M. Koehn was under criminal investigation;

xiii.   Lawsuits were being prepared against Chad M. Koehn throughout the United States;

xiv.   Chad M. Koehn had hired a team to kill Michael Nelson;

xv.   Chad M. Koehn had hired a team to kill Michael Nelson's children;

xvi.   Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

75. Relating to **Sherri Fouts** named in  Plaintiffs' Second Amended Complaint, admit that You:

a.   Knew that **Sherri Fouts** was a client of Chad M. Koehn and UCM;

b.   Intentionally contacted **Sherri Fouts** by telephone.

c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Sherri Fouts;**

d.   Either stated to directly by telephone to **Sherri Fouts** or left a voice mail message for **Sherri Fouts** stating:

i.   **Sherri Fouts** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

ii.   **Sherri Fouts** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

iii.   You had researched **Sherri Fouts**'s on-line history, secretary of state filings and use of twitter and other social media applications;

iv.   There were security irregularities at UCM;

v.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

vi.   Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

vii.   Chad M. Koehn and/or UCM stole Your proprietary software;

viii.   Chad M. Koehn was a pedophile;

ix.   The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

      x.     Chad M. Koehn was under criminal investigation;

      xi.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

      xii.   Chad M. Koehn had hired a team to kill Michael Nelson;

      xiii.  Chad M. Koehn had hired a team to kill Michael Nelson's children;

      xiv.  Chad M. Koehn had hired a team to kill Michael Nelson's parents;

  e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.

76. Relating to **Joey Errington** named in Plaintiffs' Second Amended Complaint, admit that You:

  a.  Knew that **Joey Errington** was a client of Chad M. Koehn and UCM;

  b.  Intentionally contacted **Joey Errington** by telephone.

  c.  Knew that Chad M. Koehn and UCM expected future investment advisory business from **Joey Errington**;

  d.  Either stated to directly by telephone to **Joey Errington** or left a voice mail message for **Joey Errington** stating:

      i.      **Joey Errington**'s name is associated with young women;

      ii.     You would like to talk to **Joey Errington** man-to-man;

      iii.    **Joey Errington** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

      iv.    **Joey Errington** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

      v.     You had researched **Joey Errington**'s on-line history, secretary of state filings and use of twitter and other social media applications;

      vi.    There were security irregularities at UCM;

      vii.   There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

      viii.  Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

      ix.    Chad M. Koehn and/or UCM stole Your proprietary software;

     x.    Chad M. Koehn was a pedophile;

     xi.    The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     xii.    Chad M. Koehn was under criminal investigation;

     xiii.    Lawsuits were being prepared against Chad M. Koehn throughout the United States;

     xiv.    Chad M. Koehn had hired a team to kill Michael Nelson;

     xv.    Chad M. Koehn had hired a team to kill Michael Nelson's children;

     xvi.    Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.   Made the statements in the previous paragraph d.1-d.xvi. with malice and the intent to damage Chad M. Kohn and/or UCM.

77. Relating to **Alison Errington** named in  Plaintiffs' Second Amended Complaint, admit that You:

    a.   Knew that **Alison Errington** was a client of Chad M. Koehn and UCM;

    b.   Intentionally contacted **Alison Errington** by telephone.

    c.   Knew that Chad M. Koehn and UCM expected future investment advisory business from **Alison Errington;**

    d.   Either stated to directly by telephone to **Alison Errington** or left a voice mail message for **Alison Errington** stating:

     i.    **Alison Errington** figured prominently in the ongoing investigations of Chad M. Koehn and/or UCM;

     ii.    **Alison Errington** would be a named party in any pending SEC and/or criminal actions against Chad M. Koehn and/or UCM;

     iii.    You had researched **Sandra Worden**'s on-line history, secretary of state filings and use of twitter and other social media applications;

     iv.    There were security irregularities at UCM;

     v.    There was a whistleblower at UCM working with the government, implying that UCM is engaging in illegal activity;

     vi.    Chad M. Koehn and/or UCM were engaged in criminal activities adverse to the United States of America;

    vii.     Chad M. Koehn and/or UCM stole Your proprietary software;

   viii.     Chad M. Koehn was a pedophile;

    ix.     The FBI and other law enforcement agencies were investigation Chad M. Koehn and UCM for criminal actions;

     x.     Chad M. Koehn was under criminal investigation;

    xi.     Lawsuits were being prepared against Chad M. Koehn throughout the United States;

   xii.     Chad M. Koehn had hired a team to kill Michael Nelson;

  xiii.     Chad M. Koehn had hired a team to kill Michael Nelson's children;

  xiv.     Chad M. Koehn had hired a team to kill Michael Nelson's parents;

e.  Made the statements in the previous paragraph d.1-d.xiv. with malice and the intent to damage Chad M. Kohn and/or UCM.


Dated February 14, 2023.

                    /s/ Chris J. Kellogg
                    Chris J. Kellogg, #21651
                    KENNEDY BERKLEY
                    119 West Iron Avenue, 7th Floor
                    P.O. Box 2567
                    Salina, KS  67402-2567
                    ckellogg@kenberk.com
                    *Attorneys for Plaintiffs*

                    and

                    S/ Craig A. Brand

                    Craig A. Brand, Esq.
                    Florida Bar No, 896111
                    The Brand Law Firm, P.A.
                    4650 Indian Creek Road
                    Loveland, CO 80538
                    Tel: (305) 878-1477
                    craig@thebrandlawfirm.com
                    *Co-Counsel Pro Hac Vice for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that on February 14, 2023, the foregoing document was served on Defendant, Michael Nelson, at oklahomaremote@gmail.com and chadkoehnlawsuit@nosoybean.com.

/s/ Chris J. Kellogg
Chris J. Kellogg